**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PDVSA US LITIGATION TRUST<br><br>Plaintiff,<br><br>v.<br><br>LUKOIL PAN AMERICAS LLC; LUKOIL PETROLEUM LTD.; COLONIAL OIL INDUSTRIES, INC.; COLONIAL GROUP, INC.; GLENCORE LTD.; GLENCORE INTERNATIONAL A.G.; GLENCORE ENERGY UK LTD.; MASEFIELD A.G.; TRAFIGURA A.G.; TRAFIGURA TRADING LLC; TRAFIGURA BEHEER B.V.; VITOL ENERGY (BERMUDA) LTD.; VITOL S.A.; VITOL, INC.; FRANCISCO MORILLO; LEONARDO BAQUERO; DANIEL LUTZ; LUIS LIENDO; JOHN RYAN; MARIA FERNANDA RODRIGUEZ;HELSINGE HOLDINGS, LLC; HELSINGE, INC.; HELSINGE LTD., SAINT-HÉLIER; WALTROP CONSULTANTS, C.A.; GODELHEIM, INC.; HORNBERG INC.; SOCIETE DOBERAN, S.A.; SOCIETE HEDISSON, S.A.; SOCIETE HELLIN, S.A.; GLENCORE DE VENEZUELA, C.A.; JEHU HOLDING INC.; ANDREW SUMMERS; MAXIMILIANO POVEDA; JOSE LAROCCA; LUIS ALVAREZ; GUSTAVO GABALDON; SERGIO DE LA VEGA; ANTONIO MAARRAOUI; CAMPO ELIAS PAEZ; PAUL ROSADO; BAC FLORIDA BANK; EFG INTERNATIONAL A.G.; BLUE BANK INTERNATIONAL N.V.<br><br>Defendants. | Case No. _____ |

**PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND DELAYED SERVICE**

Dated: March 3 ,
2018

**BOIES SCHILLER FLEXNER LLP**

By: _____

Steven W. Davis
(Bar No.:347442)

Stephen N. Zack
(Bar
No.:145215)
100 SE Second Street, Suite 2800
Miami, Florida 33131
Tel:  (305) 539-8400
Fax: (305) 539-1307

David Boies
Nicholas A. Gravante, Jr.
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel:  (212) 446-2300
Fax: (212) 446-2350

George F. Carpinello
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel:  (518) 434-0600
Fax: (518) 434-0665

Plaintiff PDVSA US Litigation Trust, a New York trust created to prosecute claims held by Petróleos de Venezuela, S.A. ("PDVSA"), moves *ex parte* pursuant to Federal Rule of Civil Procedure 65 for a temporary restraining order ("TRO") and a preliminary injunction ("PI"), and delayed service. In support of its motion, Plaintiff submits this Memorandum of Law; the Complaint with the attached Declarations of John Brennan (the "Brennan Declaration") and John Thackray, and other exhibits; and a proposed TRO. Plaintiff also moves separately for a temporary sealing order so that Defendants do not learn of the action and frustrate the TRO before the TRO can be effectuated.

## PRELIMINARY STATEMENT

This case involves a criminal conspiracy secretly engaging in the electronic theft of PDVSA's confidential commercial information and the bribery of PDVSA's employees in order to facilitate an elaborate bid-rigging and price-fixing scheme by Defendants, all for the purpose of restraining trade and misappropriating PDVSA's assets for Defendants' benefit. This *ex parte* motion seeks to seize the computer records of certain of the Defendants that contain stolen trade secrets and confidential information before these Defendants can destroy or transfer that electronic information, and to freeze the ill-gotten gains of Defendants' conspiracy before those assets can be transferred or dissipated.

## FACTUAL BACKGROUND

As is more fully set forth in the accompanying Complaint, and the Brennan Declaration, Defendants include several major international oil trading companies including: Lukoil, Colonial, Glencore, Masefield, Trafigura, Vitol and various of their subsidiaries (hereinafter the "Oil Company Conspirators"); individual oil traders at the Oil Company Conspirators; and former PDVSA employees Francisco Morillo and Leonardo Baquero, together with their accomplices,

both who have established an oil trading firm and other entities having offices in Miami, Florida.[1] Defendants have perpetrated a scheme of rigging bids by bribing PDVSA employees to give real-time access into PDVSA's computer system for the purpose of obtaining highly confidential advance information of tenders by PDVSA for bids to sell crude oil and to purchase light hydrocarbon products that are used as additives to PDVSA's crude oil. With the assistance of the bribed PDVSA employees, Defendants are also able to intercept bids made by other oil companies. Using these illegal advantages, Defendants can beat others' bids and win contracts at lower prices (for PDVSA's sales) and higher prices (for PDVSA's purchases) than would prevail in honest competition.

Through the bribing of PDVSA employees, Defendants are able to learn of proposed tenders long in advance of competitors so that they may obtain an unfair competitive advantage for the Oil Company Conspirators in making bids for the purchase or sale of products. In return for Defendants' illicit payments, the bribed PDVSA employees rigged the PDVSA computer system to give Defendants real-time access to PDVSA's confidential and proprietary information concerning proposed purchase and sale of products.

In addition, Defendants have collaborated on bids so as to illegally reduce competition among themselves in bidding for PDVSA crude oil or in selling light crude products to PDVSA. Defendants use a web of shell Panamanian companies to funnel funds from the Oil Company Conspirators to the bribed PDVSA employees who receive such funds through complicit banks.

Documents already obtained by Plaintiff indicate that Defendants take extraordinary measures to conceal their communications, including using various fictitious names and destroying

---

[1] These offices, located at 1221 Brickell Avenue, Suite 948, and 1111 Brickell Avenue, 11th Floor, Miami, Florida 33131, house computers containing electronic records stolen from PDVSA.

2

documents.

Plaintiff brings claims under the Federal Sherman Antitrust Act, the Federal Robinson-

Patman Act, the Federal and Florida RICO Acts, the Federal Wiretap Act, the Florida Uniform

Trade Secrets Act, the Federal Stored Communications Act, the Federal Computer Fraud and

Abuse Act, and numerous common law causes of action.

In this Court, Plaintiff seeks a TRO against the Morillo Group Defendants (defined below):

(1) permitting immediate seizure, copying, imaging, downloading and/or cloning of those Defendants' electronic and hard copy records that contain information stolen from PDVSA and evidence of the criminal conspiracy;

(2) restraining those Defendants, and banks through with which they funnel funds, from transferring or dissipating any assets under their control in the U.S. and abroad; and

(3) restraining those Defendants from destroying records relating to their business or to PDVSA.

The exact terms of the relief Plaintiff seeks in the TRO are set forth in the Proposed *Ex*

*Parte* Temporary Restraining Order submitted herewith.

In addition, Plaintiff seeks a PI against all Defendants that would:

(1) preserve all the records seized pursuant to the TRO and continue to restrain the Morillo Group Defendants from destroying or altering any of their documents that are subject to the TRO;

(2) continue to restrain and freeze the bank accounts sought to be frozen pursuant to the TRO; and

(3) restrain all Defendants from removing, alienating, destroying, altering, secreting, mutilating, erasing, concealing, transferring or otherwise disposing of any of their records, documents, communications or notes, either electronic or hard copy, relating in any way to PDVSA.

Defendants that would be the immediate subject of this Court's TRO would be primarily

Defendants operating in Miami who are the central coordinators of the illegal conspiracy, namely,

3

Defendants Francisco Morillo, Leonardo Baquero, Daniel Lutz, Luis Liendo, John Ryan, and their various corporate entities, Helsinge Holdings, LLC, Helsinge, Inc., Helsinge Ltd. Saint-Hélier, Waltrop Consultants, C.A., Godelheim, Inc., Hornberg Inc., Societe Doberan, S.A., Societe Hedisson, S.A., Societe Hellin, S.A., Glencore de Venezuela, C.A., and Jehu Holding Inc. (hereinafter, the "Morillo Group Defendants").

As discussed below, Plaintiff meets the standard for injunctive relief. Pending full discovery and trial, a restraining order will preserve Plaintiff's ability to obtain equitable remedies, including preliminary and permanent injunctive relief, restitution, disgorgement, and an accounting. In addition to equitable relief, Plaintiff's Complaint seeks compensatory and punitive damages. Moreover, *ex parte* relief, with delayed service on Defendants, is appropriate due to the substantial risk that Defendants will otherwise destroy or transfer evidence, or transfer or dissipate assets obtained through their illegal scheme.

## ARGUMENT

## I.     PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

In order to maintain the *status quo* and to preserve Plaintiff's ability to obtain equitable remedies, an *ex parte* TRO, followed by a PI, should issue allowing for immediate seizure of Morillo Group Defendants' electronic and hard copy records, and restraining those Defendants from transferring or dissipating assets.

### A.     The Court Should Enter a TRO on an *Ex Parte* Basis and Authorize Delayed Service on Defendants.

A TRO may be granted without notice to the opposing party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. Civ. P. 65(b)(1)(A).  Here, it is appropriate to issue an *ex parte* TRO because Defendants have a history

4

of illegally transferring data to and from their computers, bribing PDVSA employees, collusively bidding based on stolen trade secrets of PDVSA, and surreptitiously transferring assets and laundering the proceeds of their crimes. Absent a brief delay in notice to Defendants of Plaintiff's application for a TRO, there is a substantial and imminent risk that the Defendants will destroy or transfer electronic records and secrete assets, thereby thwarting Plaintiff's ability to obtain the ultimate relief it seeks. Inasmuch as "TROs are designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction," *United States v. Kaley*, 579 F.3d 1246, 1264 (11th Cir. 2009) (internal quotation marks omitted), courts faced with a defendant's propensity to transfer or dispose of assets have not hesitated to issue a TRO on an *ex parte* basis.[2]

Plaintiff also requests five (5) days to effectuate its seizure and seven (7) days from issuance of the TRO to serve all Defendants so that Plaintiff, will have the ability to effectuate the seizure at the time that is most likely to yield the greatest recovery of relevant documents and information. Plaintiff understands that Morillo and Baquero and several of their accomplices are currently outside the country. Plaintiff wishes to effectuate the seizure when one or more Morillo Group Defendants are at their offices. Plaintiff also wishes to notify certain financial institutions of the TRO before Defendants are alerted to the proceeding. Courts in this Circuit have allowed plaintiffs to secure asset restraints before giving notice to the defendant in order to reduce the risk

---

[2] *See, e.g., Adobe Sys. Inc. v. Bea's Hive LLC*, No. 14-CV-81102, Dkt. No. 13, at 2 (S.D. Fla. Aug. 25, 2014) (entering ex parte TRO and asset restraint upon finding that "Defendants or other persons acting in concert with Defendants may ... frustrat[e] the ultimate relief Plaintiff seeks in this action"); *Abercrombie & Fitch Trading Co. v. 007fashion.com*, 2013 WL 495895, at *4 (S.D. Fla. Feb. 7, 2013) (entering ex parte TRO upon finding that there was "good cause to believe that if Plaintiff proceeds with notice to Defendants" of the TRO motion, Defendants could "thwart[] Plaintiff's ability to obtain meaningful relief"); *Tiffany (NJ), LLC v. 925JewlryMax.com*, No. 12-CV-23518, Dkt. No. 9, at 10 (S.D. Fla. Oct. 2, 2012) (same).

of transfer or dissipation of assets. [3]

## B.   Plaintiff Meets the Standard for Interim Injunctive Relief.

Plaintiff is entitled to a TRO and a PI because it can clearly establish that (1) it is substantially likely to succeed on the merits of its claims; (2) it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to Plaintiff outweighs any damage an injunction may cause Defendants; and (4) an injunction would not be adverse to the public interest. *See Pine v. City of W. Palm Beach,* 762 F.3d 1262, 1268 (11th Cir. 2014) (setting out standard for PI); *Singh v. Prasad*, 2013 WL 4700347, at \*1 (M.D. Fla. Aug. 30, 2013) (applying same standard for TRO).

### 1.   Plaintiff Is Substantially Likely to Succeed on the Merits.

For the reasons discussed below, Plaintiff is substantially likely to prevail on the merits of its claims under the: Federal Computer Fraud and Abuse Act ("CFAA"); the Federal Stored Communication Act ("SCA"); Florida RICO Act and Civil Remedies for Criminal Practices Act (collectively together, "Florida RICO"); the federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO"), and the Florida Trade Secrets Act, all of which authorize preliminary injunctive relief. Plaintiff is also likely to prevail at trial on its federal antitrust and common law claims.

#### a.   *Computer Fraud and Abuse Act (CFAA) and Stored Communication Act (SCA)*

Defendants' actions have violated both the (CFAA) and the SCA.  Defendants' bribery of

---

[3] *See, e.g., Adobe*, Dkt. No. 13, at 10 (service permitted within five business days of seizure); *Abercrombie & Fitch*, 2013 WL 495895, at \*9 (allowing plaintiff to confirm freezing of defendant's assets before "promptly" serving defendants); see also *Tiffany,* Dkt. No. 9, at 19.

6

PDVSA's employees to set up an unauthorized clone server or otherwise obtain direct, real time access to PDVSA's confidential information is a *prima facie* violation of these statutes and entitles Plaintiff to equitable relief. *See* 18 U.S.C. §§ 1030 *et seq.* Section 1030(g) of the CFAA states:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.

18 U.S.C. § 1030(g).

Plaintiff has alleged facts and has evidence that shows Defendants have committed multiple, repeated violations of the CFAA, including violations of sections 1030(a)(4) and (5) thereof. The CFAA was enacted specifically to prevent unauthorized access of computer systems, which have become a preferred method of storing sensitive business information.

A claim under section 1030(a)(4) has four elements: (1) defendant has accessed a "protected computer"; (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so "knowingly" and with "intent to defraud"; and (4) as a result has "further[ed] the intended fraud and obtain[ed] anything of value." *P.C. Yonkers, Inc. v Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005); *ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087, 1100 (N.D. Cal. 2006); *Pacific Aerospace & Elecs., Inc. v Taylor*, 295 F. Supp. 2d 1188, 1195 (E.D. Wash. 2003). Here, there is no doubt that those elements are met. Defendants have allegedly accessed PDVSA's computer system; they did so without authorization by bribing disloyal employees; they did so with the intent to steal confidential PDVSA information; and they thereby obtained an illegal advantage in obtaining PDVSA bids.

Plaintiff's CFAA claim also includes a claim under section 1030(a)(5) for Defendants' transfer of files from PDVSA's servers without authorization. That section imposes liability on whoever:

> (A)(i)   knowingly causes the transmission of a program,

information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage; and

(B) by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused (or, in the case of an attempted offense, would, if completed, have caused)-

(i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value. . . .

18 U.S.C. § 1030(a)(5)(A) & (B)

Courts routinely issue TROs in cases involving the unauthorized copying, access or tampering with a plaintiff's computer systems in violation of CFAA and have granted relief that includes mandating that defendants cooperate with plaintiffs in copying, mirror imaging or recovering data on defendants' computer systems and otherwise preventing the destruction, mutilation, erasure, altering, transferring or disposal of computer data. *See*, *e.g. Skidata, Inc. v. Goudie*, 2012 WL 12883837, at *1 (M.D. Fla. Nov. 2, 2012) ( TRO based upon violation of CFAA allowing plaintiffs to access and copy defendants' computer files); *Pharmerica, Inc. v. Arledge*, 2007 WL 865510, at *6 (M.D. Fla. Mar. 21, 2007) (directing defendants to turn over computer files allegedly taken in violation of CFAA); *Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1212 (11th Cir. 2003) (vacating on other grounds an injunction issued requiring defendants to turn over computer records allegedly obtained in violation of CFAA). For example, in *Skidata*, the district court ordered, among other things, that defendants:

[I]mmediately take all steps necessary to fully cooperate, and continue to

8

> grant access to SKIDATA, and its employees, contractors, agents, attorneys and assigns to the premises of LAZ, including, without limitation, the Plaza Garage in Orlando, Florida, and fully cooperate in SKIDATA's efforts to examine and copy data from the Parking Management Systems in any manner SKIDATA deems advisable. . . .

*Skidata, Inc.*, 2012 WL 12883837, at \*4.

In *PharMerica,* defendants were ordered to:

> Within two days of his receipt of the Order, deliver the Computer Equipment to PharMerica's computer expert, Adam Sharp, E-Hounds, Inc., 2045 Lawson Road, Clearwater, Florida 33763, so that PharMerica's expert can examine and copy the information on the computer Equipment.

*Pharmerica, Inc.*, 2007 WL 865510, at \*9.

And, in *Four Seasons*, defendants were ordered to:

> . . . [R]eturn to Four Seasons' custody and control certain items of computer equipment, including a three-com switch, a server, and a computer used by Eduardo Bencomo, and any information obtained through access to Four Seasons' computer systems.

*Four Seasons,* 320 F.3d at 1209.

Courts in other circuits have ordered the impounding of computers where, among other offenses, defendants are alleged to have violated the CFAA. *See*, *e.g.*, *Shefts v. Petrakis*, 758 F. Supp. 2d 620, 626–27 (C.D. Ill. 2010) (TRO directed seizure and impoundment of computers and enjoined defendant from destroying or hiding documents related to prior interception of electronic communications); *Avvo Inc. v. Chang Liang*, 2016 WL 8738247, at \*3 (D. Ariz. Apr. 4, 2016) (ordering impoundment of: (1) all copies of plaintiff's works, in any format, in defendants' possession or under their control; (2) all hard drives, computers, or other storage devices that contain plaintiff's data).

In addition, the SCA provides for both criminal and civil actions against "whoever intentionally accesses without authorization a facility through which an electronic communication service is provided." 18 U.S.C. § 2701. Like the CFAA, the SCA specifically authorizes "such

preliminary and other equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2707. For the reasons shown above, Plaintiff has shown it is entitled to a TRO and PI under the SCA.

### *b.* *Florida and Federal RICO*

The Florida RICO statute is patterned after its federal counterpart, and the analysis under both statutes is generally similar. *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004).

To prove a federal RICO violation, a plaintiff must show "(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated, either directly or indirectly, in the enterprise's affairs; and (5) that the defendant participated through a pattern of racketeering activity." *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014) (analyzing 18 U.S.C. § 1962(c)). A plaintiff must make a similar showing under Florida RICO with minor differences not relevant here. *See, e.g.*, *Shimek v. State*, 610 So. 2d 632, 635 (Fla. Dist. Ct. App. 1992). Defendants have violated Florida and Federal RICO by directing their illegal scheme from Florida to bribe and steal PDVSA's confidential electronic information and use it to rig bids and fix prices for their benefit, thereby causing injury.

**The Enterprise**. An "enterprise" "includes ... any individual, partnership, corporation, association, or other legal entity, ... or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This definition has "a wide reach" and is to be "liberally construed to effectuate [RICO's] remedial purposes." *Boyle v. United States*, 556 U.S. 938, 944 & n.2 (2009) (internal quotation marks omitted). An "association-in-fact" enterprise need only have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. Beyond that, virtually any "continuing unit" suffices, regardless of whether it lacks regular meetings, a formal decision-making process,

consistent activity, or a hierarchical structure. *Id.* at 948. An enterprise may be "readily proven by what it does, rather than by [an] abstract analysis of its structure." *Id.* at 951.

In this case, the association among the Defendants "furnishes a vehicle for the commission of the alleged predicate acts" and constitutes an association-in-fact enterprise. *See Crossdale v. Burdandt*, 2015 WL 1277829, at *3 (M.D. Fla. Mar. 20, 2015) (internal quotation marks omitted).

**Interstate Commerce.** An enterprise for purposes of Federal RICO must be "engaged in," or its activities must "affect[]," interstate or foreign commerce.[4] 18 U.S.C. § 1962(c). Here, the enterprise has done both. *First*, Defendants have conducted the affairs of the enterprise by effectuating the electronic transfer of stolen computer records from Venezuela into the U.S. and the transfer of stolen records and money into, out of, and within the U.S. Defendants have downloaded PDVSA's electronically-stored information in Venezuela onto computers in Miami and have then shared it within the U.S. with other Defendants. Similarly, they have transferred ill-gotten gains out of the U.S to bribed employees in Venezuela. *Second*, in conducting the affairs of the enterprise, Defendants have traveled into and out of the U.S. and foreign countries, including Venezuela. Such activity satisfies the interstate commerce requirement. *See, e.g., United States v. Flores*, 572 F.3d 1254, 1267-68 (11th Cir. 2009).

**Association and Participation.** "The third and fourth elements of a RICO violation–that the defendant was associated with the enterprise and that he participated in its affairs–substantially overlap." *Godwin*, 765 F.3d at 1320. Both elements are satisfied here because each Defendant was involved in one or more acts in furtherance of the conspiracy.

**Pattern of Criminal and Racketeering Activity.** The required pattern is established

---

[4] The Florida RICO statute does not contain an interstate commerce requirement, although if plaintiff is relying on federal law predicate acts, they may require a connection with interstate commerce.

under Florida RICO when a defendant "engag[es] in at least two incidents of criminal activity" or "racketeering conduct" within five years of each other, Fla. Stat. §§ 772.102(4), 895.02(4): and under Federal RICO "when [a] defendant commits at least two distinct but related predicate acts" within ten years of each other, *Smith v. Bank of Am. Home Loans*, 968 F. Supp. 2d 1159, 1168-69

Fla. 2013); 18 U.S.C. § 1961(5). Here, Defendants' criminal activity has continued for at least 15 years.

*First*, Defendants have engaged in numerous acts of criminal wire fraud and money laundering statutes. *See* Fla. Stat. §§ 772.102(1)(b), 895.02(1)(b); 18 U.S.C. § 1961(1). For example, a person is guilty of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) when:

> (1)    the defendant conducted or attempted to conduct a financial transaction;
>
> (2)    the transaction involved the proceeds of a statutorily specified unlawful activity; (3) the defendant knew the proceeds were from some form of illegal activity; and (4) the defendant knew a purpose of the transaction was to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

*United States v. Miles*, 290 F.3d 1341, 1355 (11th Cir. 2002).   Each element is present here.

The Complaint recites numerous illegal transactions that involved tens of billions of dollars and the Brennan Declaration cites to documents that demonstrate the illegal nature of those transactions *Second*, Defendants transferred, received, and concealed stolen and fraudulently-obtained assets in violation of 18 U.S.C. §§ 2314 and 2315.[5] As discussed, Defendants have

---

[5] Section 2314 is violated, *inter alia*, when one transports, transmits, or transfers in interstate or foreign commerce any goods, securities, or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud. 18 U.S.C. § 2314; *see United States v. Davis*, 608 F.2d 555, 556 (5th Cir. 1979) ("[Section] 2314 makes it a crime to move goods stolen in a foreign country into the United States, even though the stolen goods do not then move in interstate commerce."). Section 2315 is violated, *inter alia*, when one receives, possesses, conceals, sells, or disposes of goods, securities, or money, of the value of $5,000 or more, that has crossed a State or U.S. boundary, knowing the same to have been stolen, converted, or taken. 18 U.S.C. § 2315; *see United States v. King*, 87 F.3d 1255, 1255 (11th Cir. 1996). Both are RICO

transferred and received proceeds to and from accounts in the U.S. and around the world and concealed such proceeds, knowing that they constitute profits from fraud.

**Closed- and Open-Ended Pattern.** The pattern of racketeering alleged by a plaintiff may be either closed- or open-ended. *See United States v. Browne,* 505 F.3d 1229, 1259-60 (11th Cir. 2007); *H.J. Inc. v. Nw. Bell Tel.* Co., 492 U.S. 229, 239 (1989). A closed-ended pattern may be demonstrated by "proving a series of related predicates extending over a substantial period of time." *Browne*, 505 F.3d at 1259. An open-ended theory of continuity relies "on the threat of continuity extending into the future," *i.e.*, that the pattern is ongoing and part of a general way of doing business, or there are specific threats of continuation into the future. *Id.* (internal quotation marks and emphasis omitted).

Here, Defendants have engaged in an effort of vast dimensions, over at least fifteen years, to steal PDVSA's confidential electronic information and conceal and launder hundreds of millions of dollars of fraudulently obtained funds. There is every reason to believe that Defendants will continue this effort indefinitely unless they are stopped. Accordingly, Defendants' acts of racketeering satisfy the pattern requirement as part of both an open- and close-ended pattern.

**Injury**. PDVSA has been injured in its "business or property" "by reason of" Defendants' RICO violations. *See, e.g., Wagner v. Lee Cty.*, 2014 WL 3695383, at \*5-6 (M.D. Fla. July 24, 2014). Defendants' racketeering conduct included the use of PDVSA's own computers to unknowingly cheat PDVSA out of billions of dollars in revenue. At the same time, oil trading competitors in the United States were deprived of contracts for the purchase and sale of oil contracts from and to PDVSA because of Defendants' rigging of the bidding process.

---

predicate offenses. *See* 18 U.S.C. § 1961(1).

### c.     *Florida Trade Secrets Act*

The Florida Trade Secrets Act (the "TSA," F.S.A § 688.01 *et seq.*) protects against the "misappropriation" of any "information" that:

(a)     Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic values from its disclosure or use; and

(b)     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

F.S.A § 688.002(4)

Injunctive relief may be granted to stop misappropriation (F.S.A. § 688.003) and "[i]n appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order." F.S.A. § 688.003(3). Such affirmative orders include making the computers of the offending party available for inspection by plaintiff's computer forensic expert. *See, e.g., Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 24 1268, 1326-27 (S.D. Fla. 2003), *aff'd in part, rev'd in part,* 138 Fed. Appx 297 (11th Cir. 205) (computer inspection ordered under Florida TSA based on theft of customer information through electronic means). This relief is analogous to an *ex parte* seizure order available for trademark infringement. *See Dell Inc. v. Belgium Domains, LLC* 2007 WL 6862341 **5-6 (S.D. Fla. 2007) (recognizing that "electronic [evidence is] subject to quick, easy, untraceable destruction by Defendants" (at *2)).

### 2.     Plaintiff Will Suffer Irreparable Injury in the Absence of a TRO and PI.

Without injunctive relief, Plaintiff will suffer irreparable injury because Defendants, and, especially, the Morillo Group Defendants, will destroy or transfer the computer records they illegally possess and will continue to conceal proceeds that they control. A plaintiff faces a threat of irreparable injury that is neither too remote nor too speculative when defendants have a

14

demonstrated history of disposing of assets that do not belong to them. Once notified of this action and the allegations it contains, Defendants will be motivated to destroy or hide all evidence and will have more reason than ever to conceal the proceeds.

Moreover, much of the electronic data on Defendants' computers *belongs to PDVSA*. In the absence of injunctive relief, Plaintiff will have no adequate remedy at law. Once destroyed or removed from Defendants' computers, that electronic information will be lost. And if Defendants are permitted to hide and spend their ill-gotten gains over the course of this case, the legal remedies available to PDVSA at the time of judgment may well be illusory.[6]

Under such circumstances, courts in this Circuit have ordered the immediate turnover of computer data as part of a TRO. *See Skidata, Inc.; Pharmerica, Inc.; Four Seasons Hotels*, all discussed at pp. 7-8 above.

**3.    The Threatened Injuries to Plaintiff Outweigh Any Damage a TRO and a PI May Cause Defendants.**

The threatened injuries to Plaintiff, discussed above, are both severe and irreversible. By contrast, Defendants will suffer no harm from being prevented from further use of the stolen computer records or from concealing and dissipating assets that never rightfully belonged to them in the first place. *See United States v. Grant*, 2013 WL 1729380, at *4 (S.D. Fla. Apr. 22, 2013) ("[T]he balance of hardships weighs heavily in favor of [plaintiff] because the trust assets which [defendant] is dissipating are attached with a federal tax lien, and thus, do not belong to her or her

---

[6] *See, e.g., Eagle Fruit Traders, LLC v. Fla. Fresh Int'l, Inc.,* 2008 WL 4186966, at *2 (S.D. Fla. Sept. 8, 2008) ("The likelihood of irreparable harm to Plaintiff is great because absent injunctive relief, Defendants will continue to violate their statutory duties, resulting in dissipation of trust assets that will be difficult or impossible to recover."); *ITT Cmty. Dev. Corp. v. Barton*, 457 F. Supp. 224, 233-34 (M.D. Fla. 1978) ("If [defendants'] funds are dissipated, then the plaintiff's legal remedies will prove inadequate and no res will exist upon which the Court may impose a constructive trust. Irreparable harm will therefore result if transfer of the funds is not preliminarily enjoined.").

children."). Moreover, the proposed TRO specifically provides that Defendants may request the Court, upon an appropriate showing, to allow access to computer records or frozen funds that are needed for legitimate day-to-day operations or counsel fees. *Absolute Activist Value Master Fund Ltd. V. Devine*, 2015 WL 12638168, *25 (M.D.Fla. July 1, 2015); *Dell v. BelgiumDomains, LLC*, 2007 WL 6862341, *7 (S.D.Fla. Nov. 21, 2007).

## 4. The Issuance of a TRO and PI Will Serve the Public Interest.

Finally, the relief requested by Plaintiff would serve the public interest, as "[i]t is in the public interest to protect against fraud and to make victims of fraud whole, while preventing wrongdoers from benefiting from their deceit." *Buffets, Inc. v. LVDC II Inc.*, 2011 WL 3664548, at *8 (M.D. Fla. Aug. 16, 2011) (internal quotation marks omitted). Achieving that public goal in this case is highlighted by the CFAA, which seeks to eliminate the ongoing theft of electronic information.

### C. An Asset Freeze Is Appropriate

Plaintiff is entitled to an asset freeze for at least two reasons. *First*, the Florida RICO statute expressly provides for injunctive and other equitable relief. Fla. Stat. § 895.05; *see Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998). Where, as here, the plaintiff meets the traditional four-pronged standard for a preliminary injunction, makes a showing of immediate danger of significant loss or damage, and has no adequate remedy at law in the absence of an injunction, federal courts in Florida "have used this statutory basis to place prejudgment restrictions on a defendant's right to dispose of assets." *Bardfield v. Chisolm Props. Circuit Events, LLC*, 2009 WL 1659641, at *2 & n.3 (N.D. Fla. June 12, 2009); Fla. Stat. § 895.05(6).[7]

---

[7] Plaintiff also is entitled to equitable relief on its Federal RICO claims. *See, e.g., Motorola Credit*

16

*Second*, the Court has inherent power to restrain assets to preserve the availability of final equitable relief. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). Pending such relief, an asset freeze is appropriate and necessary to preserve the availability of equitable relief sought by the plaintiff. *See generally FTC v. IAB Marketing Assocs. LP*, 746 F.3d 1228, 1234 (11th Cir. 2014) (noting that "[a]n asset freeze is within the district court's equitable powers" (quoting *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005)); *Founding Partners*, Dkt. No. 56, at 7-8 ("A district court may enter an order freezing all of a defendant's assets, even though the assets are not related to the alleged fraud" and such an order "may remain in effect until the district court determines whether it can make informed determination of the amount of unlawful proceeds retained by defendants, and, if it can, what that amount may approximate.") (internal quotation marks and brackets omitted).

Courts in this Circuit have not hesitated to order asset freezes in similar circumstances. *See, e.g., Absolute Activist Value Master Fund Ltd. v. Devine*, 2016 WL 1572388, at \*3 (M.D. Fla. Apr. 19, 2016) (assets frozen under Florida RICO statute), *appeal dismissed*, 2017 WL 5991848 (11th Cir. Aug. 18, 2017); *Bardfield v. Chisholm Props. Circuit Events, LLC,* 2009 WL 1659641, at \*2 (N.D. Fla. June 12, 2009) (assets frozen under the Florida RICO statute); *Bloomfield,* No. 10-CV-1475, Dkt. No. 6 (M.D. Fla. July 1, 2010); *CFTC v. Chilcott,* No. 02-CV-00094, Dkt. No. 8, at 7 (M.D. Fla. Mar. 7, 2002*); Chanel, Inc. v. 7perfecthandbags.com*, 2013 WL 1857137, at \*7-8 (S.D. Fla. May 2, 2013). Courts have imposed broad asset freezes restraining individuals from "transferring, selling, alienating, … or otherwise disposing of any

---

*Corp. v. Uzan*, 202 F. Supp. 2d 239, 244 (S.D.N.Y. 2002); *but see Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1080-89 (9th Cir. 1986) (holding that equitable relief is not available under RICO). Neither the Supreme Court nor the Eleventh Circuit has addressed this question.

17

asset ... except as ... otherwise ordered by the Court." *CFTC v. Chilcott*, No. 02-CV-00094, Dkt. No. 8, at 3 (M.D. Fla. Mar. 7, 2002) (*ex parte* order restraining three individuals); *accord Founding Partners*, Dkt. No. 56, at 9-10.[8]

## II.    A BOND OF $10,000 IS SUFFICIENT

In light of the unequivocal evidence of Defendants' criminal activity and unjust enrichment, Plaintiff respectfully submits that a bond, or certified or attorney's check, of $10,000 is more than sufficient. *See* Fed. R. Civ. P. 65(c). "[T]he amount of security required by [Rule 65(c)] is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (internal quotation marks and alterations omitted).    A bond of $10,000 will cover any costs or damages that Defendants may sustain as a result of being required merely to maintain the *status quo* until the Preliminary Injunction Hearing. Also, because the emergency nature of the relief sought, Plaintiff respectfully requests that it be given five (5) days to submit the bond to the Court.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant its *Ex Parte* Motion for a Temporary Restraining Order and a Preliminary Injunction, and for delayed

---

8 *See also FTC v. Home Assure, LLC*, 2009 WL 1043956, at *2-3 & n.9, *8 (M.D. Fla. Apr. 16, 2009) (individual defendants "are hereby restrained and enjoined from ... [t]ransferring, liquidating, converting, encumbering, selling, concealing, dissipating, ... or otherwise disposing of any funds, credit instruments, real or personal property, accounts," and "are [further] hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of the Named Defendants' foreign assets"); *FTC v. FTN Promotions, Inc.*, 2008 WL 821937, at *1 (M.D. Fla. Mar. 26, 2008) (Plaintiff made "sufficient showing that the three individuals were involved in, and profited from, the telemarketing scheme, so that they should be included in the preliminary injunction and the asset freeze"); see also *AT&T Broadband v. Tech Commc'ns, Inc.*, No. 02-CV-61596, Dkt. No. 91, at 1-2 (S.D. Fla. Feb. 4, 2003) (refusing to dissolve "asset freeze" imposed on individual, including restraint on Florida home); *Adobe*, Dkt. No. 13, at 5-6.

service.

Dated: March 3 ,
2018

**BOIES SCHILLER FLEXNER LLP**

By: _____

Steven W. Davis
(Bar No.:347442)

Stephen N. Zack
(Bar
No.:145215)
100 SE Second Street, Suite 2800
Miami, Florida 33131
Tel: (305) 539-8400
Fax: (305) 539-1307

David Boies
Nicholas A. Gravante, Jr.
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

George F. Carpinello
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel: (518) 434-0600
Fax: (518) 434-0665