# Exhibit A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# Miami Division

| | |
|---|---|
| PDVSA US LITIGATION TRUST<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LUKOIL PAN AMERICAS LLC; LUKOIL PETROLEUM LTD.; COLONIAL OIL INDUSTRIES, INC.; COLONIAL GROUP, INC.; GLENCORE LTD.; GLENCORE INTERNATIONAL A.G.; GLENCORE ENERGY UK LTD.; MASEFIELD A.G.; TRAFIGURA A.G.; TRAFIGURA TRADING LLC; TRAFIGURA BEHEER B.V.; VITOL ENERGY (BERMUDA) LTD.; VITOL S.A.; VITOL, INC.; FRANCISCO MORILLO; LEONARDO BAQUERO; DANIEL LUTZ; LUIS LIENDO; JOHN RYAN; HELSINGE HOLDINGS, LLC; HELSINGE, INC.; HELSINGE LTD., SAINT-HÉLIER; WALTROP CONSULTANTS, C.A.; GODELHEIM, INC.; HORNBERG INC.; SOCIETE DOBERAN, S.A.; SOCIETE HEDISSON, S.A.; SOCIETE HELLIN, S.A.; GLENCORE DE VENEZUELA, C.A.; JEHU HOLDING INC.; ANDREW SUMMERS; MAXIMILIANO POVEDA; JOSE LAROCCA; LUIS ALVAREZ; GUSTAVO GABALDON; SERGIO DE LA VEGA; ANTONIO MAARRAOUI; CAMPO ELIAS PAEZ; PAUL ROSADO; BAC FLORIDA BANK; EFG INTERNATIONAL A.G.; BLUE BANK INTERNATIONAL N.V.<br><br>　　　　　Defendants. | Case No. _____ |

## DECLARATION OF JOHN BRENNAN

**John Brennan**, being first duly sworn, deposes and states as follows:

1.　I am the founder and Chief Executive Officer of The Brennan Group LLC ("TBG"), a Washington DC-based company which provides professional investigation services to law firms and major corporations in multiple jurisdictions around the world, in particular South America, North America and Europe.



2.      I make this declaration in support of Plaintiff's motion for a temporary restraining order and an order temporarily sealing the file pending execution of the temporary restraining order.

## MY BACKGROUND AND QUALIFICATIONS

3.      I am a graduate of the University of Exeter, in the United Kingdom. I served in the police service of the United Kingdom from 1981 to 1996, where I rose to the position of Senior Detective at New Scotland Yard. During that time, I served within the International and Organized Crime Branch and South East Regional Crime Squad. I contributed to numerous successful and complex investigations working in the UK and abroad.

4.      Subsequently, I held senior positions at several international consulting firms, including Charles River Associates, Guidepost Solutions and Alvarez & Marsal, working at the forefront of the use of innovative undercover operations in complex corporate investigations around the world. I founded TBG in 2015.

5.      Recently, I led a major internal inquiry into fraud, corruption and malfeasance at a listed U.S. multinational company. As a result of my on-the-ground inquiries in multiple jurisdictions, I was asked to personally brief the U.S. Department of Justice and the Securities and Exchange Commission.

6.      In 1989-1990, I was awarded a Bramshill Fellowship (United Kingdom National Police Staff College) for my efforts in investigating organized crime and have lectured extensively in Europe and the USA on white collar crime.

## SUMMARY OF FINDINGS

7.      I have been asked by counsel for Plaintiff herein to undertake an investigation of an ongoing criminal conspiracy among several multinational oil and gas trading companies to engage in bid rigging, commercial bribery, computer fraud and theft of trade secrets,



involving purchases and sales of crude oil and hydrocarbon products by Petróleos de Venezuela, S.A. ("PDVSA").

8. In summary, my investigation has revealed that two Venezuelan-born individuals, Francisco Morillo and Leonardo Baquero, and a number of co-conspirators have bribed PDVSA employees to gain direct electronic access to highly-confidential, internal information at PDVSA. These conspirators have used this access to (1) conspire among themselves to defraud PDVSA and to rig bids; (2) gain knowledge of competing bids so they can beat those bids; (3) obtain information about PDVSA's commodity requirements before they are released to the market; (4) conspire with corrupt PDVSA employees to structure future contract bids to favor clients of Morillo and Baquero; and (5) cheat PDVSA of full payment for oil purchased by the conspirators and short PDVSA of full shipments of products paid for by PDVSA.

9. As part of my extensive investigation, I have interviewed numerous individuals in the United States, Venezuela and other countries, reviewed numerous documents that we have obtained, and reviewed a forensic computer analysis recently conducted by John Thackray whose Declaration dated February 12, 2018, is attached as Exhibit B to the Complaint.

### INFORMATION GAINED FROM MORILLO'S ESTRANGED WIFE

10. One source of the information that we have obtained is Ms. Vanessa Friedman, the estranged wife of Morillo.

11. Ms. Friedman and Morillo have known each other since the mid-90s when they were youthful sweethearts. They remained in a relationship for the next 15 years and married in 2005. Ms. Friedman was able to provide extensive details concerning the formation of the entities created by Morillo and Baquero to facilitate their fraud and the conspiracy they are engaged in with other individuals and companies.

3



12. Ms. Friedman also provided me with a hard drive from the laptop computer that both she and Morillo used when they lived together. The hard drive from the computer contains literally thousands of instant messages, e-mail communications, bank records, and other documents evidencing details of the conspiracy.

13. Ms. Friedman explained to me that Morillo and the people he associates with are extremely violent people. Her relationship with Morillo began to break down in 2007 and he began to act violently towards her. His behavior became erratic. At the same time, Morillo began associating with individuals whom she believes were involved in drug trafficking, such as Aniasi Turchio, an alleged drug kingpin, Majed Khalil an alleged funder of terrorism, and people associated with Nicaraguan drug cartels.

14. Ultimately, in 2010, while Morillo was out of Venezuela, Ms. Friedman obtained from a Venezuelan court a temporary restraining order against Morillo and locked him out of the marital home to prevent his entry going forward. Morillo was angered by this action since, among other things, it deprived him of access to their computer. He thereafter made multiple demands that he gain access to the home so that he could obtain the computer and other documents he had left there. Ms. Friedman refused to allow him access.

15. Morillo then began a campaign of terror against his estranged wife. Ms. Friedman received a number of threats from individuals whom she believes were connected to Morillo, since they specifically referenced demands that she give up the laptop computer. Ms. Friedman has also been confronted on multiple occasions in Caracas by individuals making demands on behalf of Morillo for return of the laptop and other documents, and was the subject of an attempted kidnapping.

16. In my interviews with Ms. Friedman, she provided me with numerous details of the formation of this criminal enterprise and how it operates.



17. Many of the details provided by Ms. Friedman have been corroborated by the documents she produced to me; interviews by TBG personnel with other informants; and forensic computer analysis of PDVSA computers.

## DETAILS OF THE CRIMINAL ENTERPRISE

18. In late 2002 or early 2003, Morillo joined PDVSA as a trader of oil-related commodities. Baquero also was employed at PDVSA in a similar capacity. Morillo and Baquero worked together at PDVSA for approximately a year, during which time they associated with another PDVSA employee named Rene Hecker. We understand from our informants that Hecker held the position of business manager of the Commercial and Supply Department of PDVSA until 2013. Morillo and Baquero also became associated with Marco Malave, a product trader whom I know to be currently in custody in Venezuela on an apparently unrelated criminal matter. Hecker remains to this day one of the prime contacts for Morillo within PDVSA, his current role being Head of the PDVSA Joint Venture with Chevron known as Petropiar, S.A.

19. In 2003, Morillo left PDVSA after setting up his own company, Hornberg Inc., a Panamanian company, in 2002, and Baquero partnered with him. Morillo and Baquero had no office at this time and the whole day-to-day business of the company was controlled and executed by Morillo from his laptop at home.

20. In March 2004, Morillo and Baquero established a consulting firm for oil and gas trading called Helsinge Inc., which they incorporated in Panama and which purported to provide advisory services to clients in the energy sector. At about the same time, Morillo and Baquero also set up a number of Panamanian shell entities which they used to receive and transfer funds from clients of Helsinge to, amongst other things, bribe corrupt PDVSA employees. In 2015, Morillo and Baquero set up a new Florida entity, Helsinge Holdings, LLC to perform essentially the same functions as Helsinge, Inc. They also formed an entity



known as Helsinge Ltd. Saint-Hélier in Jersey in the Channel Islands, with its principal office in Geneva, Switzerland.

21.     In or around 2005, Morillo and Baquero, through corrupt PDVSA employees, were able to obtain unauthorized access to PDVSA's computer system and to set up what can be described for purposes of reference as a "clone server." In essence this was a technical method that allowed Morillo and Baquero to obtain direct and real-time access to PDVSA's confidential information from within the Commercial and Supply Department. This included information concerning PDVSA's intended sales of crude oil and its purchases of hydrocarbon products such as light crude oil additives, like naphtha that are necessary for blending with the heavy crude oil that PDVSA produces. Informants and Mr. Thackray's analysis confirm that such real-time access continues to this day.

22.     An informant, who has extensive knowledge of oil and hydrocarbon trading globally, witnessed Morillo access a computer system from his laptop at a location in the United States in the fall of 2015. Morillo showed the laptop screen to the informant, who could see that Morillo was accessing the live PDVSA system in real time with the ability to alter the official bidding process.

23.     By obtaining real-time access to PDVSA's highly confidential information, Morillo and Baquero have been able, among other things, to do the following: (1) gain early access to proposed tenders for the purchase and sale of products and to manipulate the conditions of the tender so as to favor particular clients of Morillo and Baquero; (2) gain access to competing bids both for the sale of PDVSA's oil and for PDVSA's purchase of light crude products so that Morillo and Baquero's clients could place winning bids just high enough (or low enough) to win contracts; (3) facilitate collusive bidding among Morillo and Baquero's clients so that they could agree on bids and allocate bids among themselves; and (4) give their clients advance notice of tenders so that they could obtain necessary credit,



procure the necessary tankers and arrange for shipments to particular ports well in advance of competitors.

24. The companies that have received this inside information through Morillo and Baquero include: Lukoil; Colonial; Glencore; Masefield; Trafigura; and Vitol (sometimes referred to herein as the "Oil Company Conspirators"). The Oil Company Conspirators are among the largest buyers of PDVSA's crude oil and sellers of light crude oil products to PDVSA. Their transactions with PDVSA during the past 15 years have totaled tens of billions of dollars.

25. The Oil Company Conspirators have paid Morillo and Baquero and their companies handsomely for this inside information. Morillo and Baquero live lavish life styles in Florida, Geneva, Switzerland and Madrid, Spain where they own property, and travel frequently around the world.

26. The Oil Company Conspirators have also provided funds to Morillo and Baquero for the payment of bribes to corrupt PDVSA employees. Morillo and Baquero use the Panamanian shell companies to funnel funds from the Oil Company Conspirators to the bribed PDVSA employees who receive such funds through the complicit banks.

27. Despite knowing and/or being on notice of the irregular nature of Defendants' payments, numerous banks facilitated Defendants' scheme. These banks include EFG International A.G., Blue Bank International N.V. and BAC Florida Bank. Defendants have also utilized accounts at Credit Suisse.

28. Individuals at the Oil Company Conspirators that participated in the alleged conspiracy include: Maximiliano Poveda; Jose Larocca and Andrew Summers of Trafigura; Luis Alvarez; Gustavo Gabaldon and Sergio De La Vega of Glencore; Antonio Maarraoui of Vitol; and Paul Rosado of Colonial. We have identified the bank accounts used to make the payments.



29. In order to conceal their scheme, Morillo and Baquero frequently created multiple public email addresses using aliases or fictitious names in order to avoid detection.

30. We have been able to confirm the use of these fictitious names from emails and informants. Thus, Morillo has multiple fictitious names such as "Skito," "George White," "Piccolo" and "Junior"; Maximiliano Poveda, a senior trader for Trafigura, is identified in the documents as "Che"; Gustavo Gabaldon, a senior trader for Glencore is identified in the documents as s "Tobo"; Rene Hecker a senior PDVSA manager is identified as "Tombo"; Luis Liendo, a corrupt former PDVSA employee who set up the "clone-live server" and facilitated direct access for Morillo and Baquero is referred to as "the Nerd"; and Hecker's father-in-law, Antonio Veleiro Fernandez, a Spanish national who may be identified as "Gigante."

31. Morillo and Baquero have implemented the Defendants' conspiracy primarily through three offices: one located at Room 948, 1221 Brickell Avenue, Miami, Florida; another office on the 11th floor of 1111 Brickell Avenue in Miami; and one located in Geneva, Switzerland. The Miami office at 1221 Brickell Avenue is administered by a U.S. citizen by the name of John Robert ("Jack") Ryan and a Venezuelan citizen and U.S. resident, Daniel Lutz, who is also a childhood friend of Morillo's.

32. Ryan works for of an entity called Waltrop Consultants, C.A., a Venezuelan corporation organized by Morillo and Baquero in March 2001 for the purpose of carrying on clandestine communications with the other conspirators. We have confirmed that Waltrop is still in operation at its Miami office. Waltrop's internet domain name, WTRPC.com, and specific communications by Jack Ryan and another Waltrop employee, Yanir Marcano, appear in recent months on metadata fragments in computers at PDVSA, indicating that Ryan and Marcano are continuing to access confidential business information of PDVSA without authorization. Earlier in my investigation I was provided by an informant a photograph of a

8



Waltrop Consultants business card in the name of Francisco H. Morillo V. with an email address thereon of fm@wrtpc.com. Furthermore, TBG has obtained a Waltrop Consulting business card for Ryan that is identical in format and bears an email address of jr@wrtpc.com which he is currently using.

33. TBG's investigation has determined that Ryan carries out accounting functions and maintains electronic and hard-copy business records for Morillo, Baquero and their companies at the Helsinge office location in Miami.

34. As Mr. Thackray describes in his declaration, the evidence indicates that the internal PDVSA computer system used by the Commerce and Supply Department to formulate, tenders, accept bids and award contracts for the purchase and sale of hydrocarbon products by PDVSA has been compromised to allow direct real-time access by individuals outside of PDVSA. That evidence indicates that corrupt PDVSA employees set up this access for Morillo and Baquero by means of a "clone server" or other methods. When Mr. Thackray inspected the PDVSA server room in Caracas, he found a number of unusual and suspicious features, and was prevented, under suspicious circumstances, from fully examining the so-called Core 9 server, which contains highly confidential communications concerning bidding and tenders. He was able to ascertain that Core 9 has a "gateway server" called Metcam85 that provides complete and unrestricted access to Core 9. This unusual setup allows external access to the Core 9 information. Thackray further determined that the Core 9 was set up, again in an unusual and suspicious manner, so that certain communications, from the domains cantv.net and cantv.com and addressed to the domain "pdva.com" (a look-alike variation of pdvsa.com that is a typical ploy of fraudsters) would go directly to individuals at PDVSA who are associated with the freight and operations functions of the Commerce and Supply Department without being tracked by the PDVSA system. This

9



supports the fact that rogue PDVSA employees are still conspiring with Morillo and Baquero to manipulate tenders to the advantage of Morillo and Baquero's clients.

### DOCUMENTARY EVIDENCE OF THE ENTERPRISE

35. The conspiracy is confirmed by emails among the conspirators that have been obtained from the Friedman/Morillo laptop hard drive and from informants.

36. For example, attached as Exhibit C to the Complaint, is an email exchange[1] dated April 27, 2005 between a [former] bribed PDVSA employee Luis Liendo ("the Nerd") and Morillo and Helsinge's then bookkeeper, Alejandro Vizcarrondo Morillo, the cousin of Francisco Morillo, discussing the initial steps in creating and installing the "clone server."

37. Attached as Exhibit D to the Complaint, is a May 30, 2005 email from Liendo to Morillo and his bookkeeper, Vizcarrondo, stating that Liendo is testing the new clone system along with links to Morillo's company along with "built-in aliases."

38. Attached as Exhibit E to the Complaint, is a general ledger statement of payments out of the account at Premier Bank International N.V. (now Blue Bank International N.V.), of Hornberg Inc., an entity set up by Morillo, which shows payments to "Gigante," believed to be the alias for the father-in-law of a corrupt PDVSA employee Rene Hecker.

39. Attached as Exhibit F to the Complaint, is a communication between the bookkeeper, Vizcarrondo, and Trafigura's senior trader, Maximiliano Poveda, under his alias "Che," sending him a list of corrupt payments paid to Trafigura traders during the period from March 2005 to February 2006. These payments exceed $1.75 million.

---

[1] Each email or instant messaging attached as an exhibit is in Spanish with an English translation.

10



40.     Attached as Exhibit G to the Complaint, is an email reflecting a payment made by one of the Panamanian shell companies, Hornberg, to the wife of one of the Trafigura senior traders, Maximiliano Poveda, on March 17, 2006.

41.     Attached as Exhibit H to the Complaint, is an email dated April 29, 2005 from Morillo, to a trader at Colonial Group, Paul Rosado, showing the Oil Company Conspirators' access to the competing bids of other Oil Company Conspirators for fuel oil, gasoline, low-sulfur diesel fuel, and heating oil.

42.     Attached as Exhibit I to the Complaint, is an email exchange from February 2005 between Morillo and Maximiliano Poveda, Trafigura's senior trader, complaining about the fact that Lukoil was getting inside information about PDVSA tenders.

43.     Attached as Exhibit J to the Complaint, are December 6, 2005 instant messages between Morillo, using the alias "George White" and a Colonial trader discussing their receipt in real time of competing bids of other Oil Company Conspirators for the purchase of crude oil and their strategy to win the tender using this inside information.

44.     Attached as Exhibit K to the Complaint, are instant messages on March 27, 2006 and March 30, 2006 between Morillo (alias "George White"), Maximiliano Poveda, the Trafigura trader, and another Trafigura trader, discussing competing bidding information hacked from PDVSA's computers and discussing a strategy to win the bid using such knowledge.

45.     Attached as Exhibit L to the Complaint, is an April 25, 2006 email from Morillo to traders at Trafigura disclosing a competing oil company's bid.

46.     Attached as Exhibit M to the Complaint, is an email dated August 16, 2005 from one of the bribed PDVSA employees, Antonio Vicentelli (using the alias "Pedro Sanchez"), acting on behalf of bribed PDVSA employee Edgar Garcia (alias "El Hermano Mayor "), to Morillo and Baquero in which Sanchez provides an update on the upcoming

11



tenders concerning chartered vessels used to transport the PDVSA crude products and instructs Morillo using his alias "Junior" to delete the instant message communications between them. In addition, Vicentelli provides his bank account for Morillo and Baquero to pay a bribe in the amount of $100,000 for the award of these upcoming tenders.

47.     Attached as Exhibit N to the Complaint, is a series of email communications dated August 29, 2005 between Morillo and senior Glencore traders discussing how to manipulate PDVSA's tender offer for the purchase of Russian crude oil so as to advantage a bid by Glencore. These communications also discuss how Glencore could provide the bribed PDVSA officials with pre-textual reasons for changing the terms of the tender if any changes were questioned by others at PDVSA. Glencore's comments were forwarded to the private email of Rene Hecker so that he could change the tender before PDVSA officially released the tender to the general market.

48.     Attached as Exhibit O to the Complaint, is a series of messages in August 2005 between Morillo and the Trafigura traders discussing the fact that, because of their illicit access to PDVSA confidential information, Trafigura and Morillo have the opportunity "to write the terms of the [light crude] tenders," and to "get rid of a lot of people that will like to get in the way."

49.     These are but a few examples of the numerous communications and other documents in Plaintiff's counsel's possession establishing the nature and breadth of this criminal conspiracy.

50.     The fact that Morillo and Baquero are still accessing PDVSA's internal computers is confirmed by forensic analysis conducted by Mr. Thackray.

51.     Given the nature of the conspiracy and the brazen criminal acts already committed, I have no doubt that the key players in this conspiracy will attempt to destroy their records and secrete assets as soon as they learn of this proceeding. Attached as Exhibit



P to the Complaint, are several email exchanges between Morillo and various co-conspirators in which they reference deleting the email messages.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 1st day of March, 2018

*John Brennan*
John Brennan