```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2                            MIAMI
                     CASE NO. 18-CV-20818
 3    _____

 4    PDVSA US LITIGATION TRUST,
                         Plaintiff
 5         vs.                              March 14, 2018

 6    LUKOIL PAN AMERICAS, LLC, ET
      AL.,
 7                    Defendant.

 8    _____

 9                       MOTION HEARING

10         BEFORE THE HONORABLE DARRIN P. GAYLES,

11        UNITED STATES DISTRICT COURT JUDGE

12    _____
                       A P P E A R A N C E S
13
      FOR THE PLAINTIFF:     DAVID BOIES, ESQ
14    PDVSA US LITIGATION    GEORGE F. CARPINELLO, ESQ
      TRUST                  STEPHEN N. ZACK, ESQ
15                           STEVEN DAVIS, ESQ
                             Boies Schiller Flexner LLP
16                           100 SE 2nd Street, Suite 2800
                             Miami, FL 33131
17                           (305) 539-8400
                             Dboies@bsfllp.com
18                           Gcarpinello@bsfllp.com.
                             Sdavis@bsfllp.com.
19

20    FOR THE DEFENDANTS:    ISRAEL J. ENCINOSA, ESQ
      HELSINGE, INC.         DAYME SANCHEZ, ESQ
21    HELSINGE, LTD.         Holland and Knight LLP
      DANIEL LUTZ            701 Brickell Avenue, Suite 3000
22                           Miami, FL 33131
                             (305) 789-7602
23                           Israel.encinosa@hklaw.com
                             Dayme.sanchez@hklaw.com
24

25
```

```
 1    FOR THE DEFENDANT:      ETAN MARK, ESQ
      JOHN RYAN               DONALD HAYDEN, ESQ.
 2                            Mark Migdal & Hayden.
                              80 SW 8th Street, Suite 1999
 3                            Miami, FL  33130.
                              (305) 374-0440.
 4                            Etan@markmigdal.com.
                              Don@markmigdal.com
 5

 6    FOR THE DEFENDANT:      NICOLAS SWERDLOFF, ESQ
      BAC FLORIDA BANK        JEFFREY B. GOLDBERG, ESQ
 7                            Hughes Hubbard
                              201 South Biscayne Boulevard
 8                            Miami, FL 33131
                              (305) 379-5571
 9                            Nicolas.swedloff@hugheshubbard.com

10
      FOR THE MATERIAL        JENNIFER ALTMAN, ESQ
11    WITNESS: JOHN DOE       Pillsbury Winthrop Shaw Pittman
                              600 Brickell Avenue, Suite 3100
12                            Miami,  FL  33131
                              (786) 913-4900
13                            Jennifer.altman@pillsburylaw.com

14
      REPORTED BY:            GIZELLA BAAN-PROULX, RPR, FCRR
15                            United States Court Reporter
                              400 North Miami Avenue, Suite 8S32
16                            Miami  FL  33128
                              (305) 523-5294
17                            gizella_baan-proulx@flsd.uscourts.gov

18

19

20

21

22

23

24

25
```

|      |                                                                                     |
|------|-------------------------------------------------------------------------------------|
| 1    | <u>P R O C E E D I N G S</u>                                                         |
| 2    | *(The following proceedings were held in open court.)*                              |
| 3    | **THE COURTROOM DEPUTY**:  Calling PDVSA US Litigation                               |
| 4    | Trust v. Lukoil Pan Americas, LLC, et al., Case Number 18-CV-                        |

02:39   5   20818.

6   Counsel, please make your appearances.

7   **MR. BOIES**:  Good afternoon, Your Honor, David Boies

8   representing the plaintiffs.  With me are my partners George

9   Carpinello, Steve Zack and Steve Davis.

02:39   10   **THE COURT**:  Good afternoon.

11   **MR. ENCINOSA**:  Good afternoon, Your Honor, Israel

12   Encinosa and Dayme Sánchez of Holland and Knight, we're making

13   a limited appearance on behalf of defendants Helsinge, Inc,

14   Helsinge, Ltd., and Daniel Lutz.  We reserve the right to raise

02:39   15   objections regarding sufficiency of process.

16   **THE COURT**:  Okay.

17   **MR. ENCINOSA**:  To preserve jurisdiction.

18   **MR. MARK**:  Good afternoon, Your Honor, Etan Mark from

19   the law firm of Mark Migdal & Hayden representing nonparty

02:39   20   witness Wilmer Maldonado, and also defendant John Ryan, here

21   with my partner as well, Don Hayden.

22   **THE COURT**:  All right.  All right.  Why don't we

23   proceed?

24   **MR. BOIES**:  Thank you, Your Honor.  With the Court's

02:40   25   permission we'd like to call two, and perhaps three, very brief

1  witnesses.

2          THE COURT:  Well, before we proceed, Counsel, are you

3  making your appearance as well?

4          MS. ALTMAN:  Yes, and I apologize, Your Honor, for

02:40  5  interrupting.  We filed an ex parte motion relating to a

6  witness and I'd like to appear side-bar with the Court's

7  permission.

8          My name is Jennifer Altman from the law firm of

9  Pillsbury Winthrop Shaw Pittman.  It was filed earlier today.

02:40  10          THE COURT:  Okay.  Side-bar with all counsel?

11          MS. ALTMAN:  Your Honor, I first prefer to appear

12  alone since we filed a motion ex parte and then defer to the

13  Court as to how you'd like to handle it.

14          THE COURT:  Is there an objection?

02:40  15          MR. BOIES:  No objection, Your Honor.

16          THE COURT:  All right.

17  (Thereupon, there was a side-bar conference outside the presence

18                   and hearing of counsel.)

19

02:41  20  **THEREUPON, THE SEALED PORTION OF THE TRANSCRIPT WAS EXTRACTED**

21

22          THE COURT:  Mr. Boies, counsel is going to speak to

23  you for a moment, and then we'll proceed after you're done.

24  You're welcome to step out if you'd like.

02:48  25          MR. BOIES:  Yes, Your Honor.

1          **MS. ALTMAN:**  Thank you, Your Honor.  He's in

2    agreement.  Thank you.

3          **THE COURT:**  All right.  So in any event, I didn't

4    understand today to be an evidentiary hearing as opposed to the

02:48  5    hearing for a preliminary injunction.  I set this down today,

6    obviously there was the emergency -- well, the first emergency

7    motion for the TRO and then the emergency motion regarding the

8    server at issue that was delivered to FedEx.

9          So, I guess, why don't we talk about that first and

02:49 10    then figure out where we are.  But before we do that, Mr. Ryan

11    looks familiar.  Do I know you?  I'm sorry, which one is

12    Mr. Ryan?

13          **MR. MARK:**  Mr. Ryan is not here.  Mr. Ryan is in

14    Switzerland at the moment.  This is his husband, Mr. Maldonado,

02:49 15    who is the witness who is scheduled to appear today.  And

16    that's Don Hayden, that's my law partner.

17          **THE COURT:**  Right.  That's why I'm getting a little

18    confused because I was like, wait a minute, I thought he was a

19    lawyer.  Okay.

02:50 20          **MR. MARK:**  He'll testify.  No.

21          **THE COURT:**  That solves my problem.  Of course, it's a

22    big courtroom, and I'm looking from a distance but I'm like,

23    wait a minute.  I thought he was an attorney, and he is an

24    attorney.

02:50 25          As you were doing your introductions, I got a little

1  confused.  All right.

2       **MR. BOIES:**  And Your Honor, the reason for calling a

3  couple of witnesses is just to put in context some of the

4  relief that we're seeking.  As the Court knows, the Court

02:50  5  entered a temporary restraining order directing that certain of

6  the defendants should not remove or alter or destroy or tamper

7  with any documents, paper or electronic or otherwise.

8       And as the Court is also aware, a server that was the

9  subject of the Court's order was removed and shipped to

02:50  10  Switzerland.  Now we don't know what else was taken.  One of

11  the reasons that we have subpoenaed Mr. Maldonado to this

12  hearing is to try to inquire about that.  But we do know that

13  the server was taken.

14       Now, they claim that nothing was done to it and it was

02:51  15  simply sent to Switzerland.  We don't have any way of knowing

16  that.  What we know is it was taken out of the Court's

17  jurisdiction in violation of the TRO.

18       **THE COURT:**  Well, I think they dispute that it was in

19  violation of the TRO.  As I understand it, counsel for

02:51  20  Mr. Maldonado indicates that they weren't served until after it

21  had been delivered to FedEx.

22       **MR. BOIES:**  There is a question that they raise as to

23  whether they had knowledge of TRO.  And part of the reason for

24  the evidentiary hearing is to demonstrate that they did have

02:51  25  knowledge of the TRO.

1    It is our understanding that as soon as Mr. Ryan was

2 arrested in Geneva, Switzerland, the morning of March 2nd, I

3 believe, that Mr. Morillo was informed of that.  We know

4 that --

02:52    5    THE COURT:  Just remind me who is Mr. Morillo.

6    MR. BOIES:  Mr. Morillo is one of the alleged key

7 conspirators, Your Honor.  He is one of the principals of

8 Helsinge, and one of the things that has happened with the

9 server being in Switzerland is that the Helsinge has asserted

02:53  10 to the Swiss prosecutor, that is the Helsinge server, as we

11 understand, and has asked that the server be sealed which

12 prevents us from getting access to it.

13    So it's not as simple as them simply trying to

14 cooperate with the Swiss prosecutor, if that's what it was.

02:53  15    One of the things we're going to ask the Court to do

16 is to order Helsinge and Mr. Ryan to consent to our getting

17 access to that server, which we would have had access to if

18 they had not spirited it out of the country.

19    So what we're being faced with here is a situation in

02:53  20 which someone with a history of destroying documents in

21 response to when there was a search warrant coming or when he

22 was informed and the authorities were going to make an

23 investigation.

24    And that's, again, part of the evidence that we have

02:54  25 put on to the Court, that Mr. Morillo has a history of

1   destroying documents to keep them out of court.

2         We think that it's particularly important that we do

3   everything that we can to preserve such evidence that has not

4   already been destroyed.  We also think it's important for the

02:54  5   Court to understand whether the taking of this server was --

6   with or without knowledge of the Court's TRO, the way it was

7   taken, the way that the person took it tried to avoid the

8   people that were at the house surveilling the house at the

9   time, it is not suggested this was simply an innocent attempt

02:55 10   to assist the Swiss prosecutor.

11         If it had been, there would have been no need for the

12   kind of way it was taken, in our view, and there would be no

13   justification for them now trying to block the Swiss prosecutor

14   from making it available to us.

02:55 15         THE COURT:  Okay.  So you're asking me today to do

16   what?

17         MR. BOIES:  What we're asking today is that first you

18   permit us to examine Mr. Maldonado who is the one who took the

19   server, so that the Court is informed as to what role, if any,

02:55 20   Mr. Morillo and Helsinge played in that.

21         THE COURT:  And you say "examine," you mean examine

22   today or through deposition?

23         MR. BOIES:  That would depend on the Court's schedule.

24   If the Court could hear it today, we would do it today.  He is

02:56 25   in court.  If not, we would take his deposition.  We'd like to

1   take his deposition immediately on this limited question in

2   terms of what is his relationship to Mr. Morillo and Helsinge,

3   and what did he know and when did he know it, and what did he

4   do and who told him to do it.

02:56   5          Second, we would like a court order directing Helsinge

6   and Mr. Ryan to withdraw any objections that they have to the

7   Swiss prosecutor and make a copy of the server available to us.

8          Third --

9          **THE COURT:**  Is that something that has to happen now?

02:57   10   I mean, once -- as I understand all the defendants have not

11   been served.  As a part of regular discovery, could that not

12   then be something that perhaps the parties could negotiate

13   without the intervention of the Court?

14         **MR. BOIES:**  Well, Your Honor, one of the -- well, let

02:57   15   me address two parts of that.

16         First, with respect to the other defendants, this is a

17   Helsinge's server, so that the party that has any rights to the

18   server is before the Court now.

19         Second, in terms of waiting, and this is one of the

02:57   20   reasons that I want the Court to hear the evidence that we have

21   about Mr. Morillo and his past conduct.  This is a situation in

22   which there is a serious danger, evidence being destroyed and

23   that server is going to show where various other pieces of

24   evidence are so that we can try to preserve those pieces of

02:58   25   evidence as well.  That server is going to show other

1    connections in terms of electronic files, and the longer it

2    goes without us knowing that, and having a chance to pursue

3    that, the greater the danger that there's going to be

4    spoliation of really relevant and critical evidence.

02:58   5         **THE COURT:**  Are you disputing that the server is in

6    the hands of the Swiss authorities?

7         **MR. BOIES:**  We know a server is in the hands of the

8    Swiss authorities.  Actually, more than one server.  We know

9    that the server that was sent -- a server was sent from the

02:59   10   United States to Switzerland, and we know that is in the hands

11   of the Swiss prosecutors.  And we also know that two other

12   servers, at least, that were seized in Switzerland are in the

13   hands of the Swiss prosecutors, servers seized from the

14   Helsinge office there.

02:59   15        Those servers, and particularly the server that was

16   taken out of the United States a few days ago, are servers that

17   are going to tell us where other relevant evidence is and that

18   information is going to be critical to any attempt that we make

19   to preserve evidence from destruction.

02:59   20        And there's no prejudice to the defendants in terms of

21   having evidence preserved at this point, as we will discuss

22   with the Court on this coming Monday with respect to our TRO.

23        With respect to the defendants other than the

24   so-called Morillo-grouped defendants, all we're asking is for

03:00   25   an order preserving all of the documents that currently exist.

1          **THE COURT:**  Don't you already have that, though?

2          **MR. BOIES:**  We have that.  When we went to the Court

3    for the TRO, we asked for that with respect to the Morillo-

4    grouped defendants.  And we set down for the 12th a motion for

03:00   5    a preliminary injunction hearing that would ask for that relief

6    against the other defendants.

7          One of the things that we have done when defendants

8    had contacted us about postponing that hearing is that we have

9    said to them that if they will simply give us an affidavit,

03:01  10    that there hasn't been any destruction of documents since

11    March 2nd, and stipulate to the application of the TRO to them,

12    the same TRO that was applied to the Morillo-grouped

13    defendants, that we would be prepared to put off the hearing as

14    to them because all we're really asking on the 2nd -- I mean,

03:01  15    on the 19th is that we, A) understand whether there have been

16    any documents destroyed, and B) get an application of exactly

17    the same provisions that the Court ordered applicable to the

18    Morillo-grouped defendants applicable to all the defendants.

19          **THE COURT:**  I was actually surprised when I got the

03:01  20    motion that it didn't ask for the relief for all defendants,

21    just those limited defendants, because, arguably, there was

22    enough information for all defendants.

23          **MR. BOIES:**  I think there was, but because we were

24    proceeding ex parte, we wanted to narrow it as much as we

03:02  25    could.  And the ones where we thought there was the most

1   immediate threat were the Morillo-grouped defendants.

2          **THE COURT:**  But now that most, if not all of the

3   defendants know about the case, whether they have been

4   specifically served or not, there's a prohibition against

03:02   5   spoliation of evidence.  So, I mean, do you even need an order?

6   I mean, at this point, once they become aware of the

7   litigation --

8          **MR. BOIES:**  They have an obligation to preserve the

9   documents.  However, if they fail to fulfill that obligation,

03:02  10   we don't have a remedy of contempt that we would if we had a

11  court order.

12          **THE COURT:**  Okay.  Now, so in addition to the

13  preservation and the motion, the ex parte motion which has now

14  been unsealed, there is other relief requested.

03:03  15          Are you still requesting that relief?

16          **MR. BOIES:**  We are, but that only goes to the Morillo-

17  grouped defendants.  In other words, we asked for certain

18  relief regarding bank accounts.  That relief -- that

19  preliminary injunction relief that we're seeking on the 19th is

03:03  20  something that only goes to the Morillo-grouped defendants.

21          In other words, the TRO gave us document preservation

22  order against the Morillo-grouped defendants.  On the 19th, we

23  are seeking to extend that order to all defendants.  And we are

24  seeking the preliminary injunction relief with respect to bank

03:04  25  records that we sought in the TRO and that the Court denied at

1   a TRO stage, but put over to a preliminary injunction hearing.

2           **THE COURT:** And who wants to respond first?

3           **MR. MARK:** Your Honor, Etan Mark. I'd also like to

4   put a couple of things in context.

03:04  5           **MR. ENCINOSA:** I'm sorry to interrupt, I know you're

6   here on behalf of a third party.

7           **THE COURT:** Yes, I guess I should hear from you first.

8           **MR. MARK:** I'm also here on behalf of Mr. Ryan, who is

9   present.

03:04 10           Go ahead, Counsel, I'll defer.

11           **MR. ENCINOSA:** Thank you. I appreciate that.

12           May I, Your Honor?

13           **THE COURT:** Yes, sir.

14           I'm sorry. Before you begin, have all the defendants,

03:04 15   Mr. Boies, now been served, or no?

16           **MR. BOIES:** No, Your Honor. As was set forth in, I

17   believe it was Mr. Carpinello's declaration that was attached

18   to our motion for alternative service, we have served as many

19   of the corporate defendants as can be served without either

03:05 20   going through the Hague Convention, which will take two or

21   three months, or getting a court order for alternative service.

22           I believe all of the defendants have had actual notice

23   of the complaint, but in terms of formal service of process,

24   there are certain corporations, primarily in Switzerland, where

03:05 25   Swiss law makes it a criminal offense to serve them in

1  Switzerland, except through the Hague Convention.

2  So we must either go through that process which is a

3  two or three-month process, or we need to get an order under

4  the Federal Rules of Civil Procedure for alternative service.

03:06  5  With respect to the individuals, we have served a

6  number of them, but a number of them have, thus far, managed to

7  evade service.  For example, as the Court's aware from our

8  preliminary injunction and TRO application, Mr. Morillo and

9  Mr. Baquero and Mr. Lutz have apartments here in Miami in the

03:06  10  Santa Maria Condominium on Brickell Avenue, and we have sent

11  process servers there, and a person who comes to the door won't

12  open the door, won't accept anything, and won't say who is

13  inside.

14  So we are trying to serve them personally, but, again,

03:07  15  with those individuals, we have made a motion to court for

16  alternative service, since these are people who are, in our

17  view, clearly evading service.

18  As I think the Court is aware from some of the papers

19  that we have filed, for example, a process server appeared.

03:07  20  The wife comes to the door and the husband is heard yelling in

21  the background, "Shut the door, shut the door," and these

22  defendants are going to be difficult to catch personally.

23  We have made an application for alternative service.

24  But we served everybody that we have been able to serve, and

03:07  25  that, as I say, includes a large number of the defendants and

1 those are all indicated in Mr. Carpinello's affidavit.

2        **THE COURT:**  Okay.  All right.  Counsel?

3        **MR. ENCINOSA:**  Thank you, Your Honor.  Your Honor,

4 we're here on the three-page motion that was filed regarding

03:08  5 the motion to sever.  We understand that was set for hearing

6 today and it was not set as an evidentiary hearing.

7        **THE COURT:**  Wait a minute, the motion to sever?

8        MR. ENCINOSA:  No.  Regarding the server.

9        **THE COURT:**  Oh, server.

03:08  10        MR. ENCINOSA:  I apologize.

11        And it was not set as an evidentiary hearing and we

12 would object to testimony being presented.  We haven't had the

13 opportunity to prepare for that.

14        We're concerned this is just an attempt at an end run

03:08  15 around regular discovery, and we don't think that the three-

16 page motion which cites to no cases whatsoever has made, even

17 factually, a prima facie showing that would warrant an

18 evidentiary hearing.

19        **THE COURT:**  But I guess for now, we were just talking

03:08  20 about the preservation of evidence.  Is there an objection to

21 me entering an order as to your clients in order to preserve

22 evidence?

23        **MR. ENCINOSA:**  No, certainly not.  We believe an order

24 has already been entered along those lines.  So we don't know

03:09  25 why an additional order needs to be entered.  But if I may,

 1  Your Honor --

 2         THE COURT:  I'm sorry.  Hold on for just a moment.

 3         Your clients -- oh, they are within what has been

 4  called the Morillo-grouped defendants, correct?

03:09  5         MR. ENCINOSA:  That is correct, Your Honor.

 6         THE COURT:  Okay.

 7         MR. ENCINOSA:  We have recently been retained, and I'm

 8  not sure whether we will appear on behalf of the additional

 9  defendants, we have been engaged by the three defendants that I

03:09 10  mentioned earlier.

11         THE COURT:  Okay.

12         MR. ENCINOSA:  With respect to the motion, Your Honor,

13  what the plaintiff requests here for the Court, is what they

14  say to reconsider its TRO and, specifically, the Court's denial

03:10 15  of the request to seize and copy documents.

16         Again, they cite not a single case in the three-page

17  motion, and most of the facts Mr. Boies just talked about with

18  respect to allegations regarding Mr. Morillo and things that

19  have happened in the proceedings in Switzerland.

03:10 20         None of that is in the motion.  It's the first we hear

21  of it.  But more, I guess, as importantly, the motion and the

22  subsequent filings today, by Mr. Maldonado and Mr. Ryan's

23  attorney, made clear that there are no facts that warrant a

24  reconsideration of the Court's TRO.  They're seeking

03:10 25  extraordinary relief to allow them what they sought originally,

1  which was to seize and copy all the documents that defendants

2  have at large.  And they see this as extraordinary relief for

3  what appears to be an incident of their own making, in fact.

4       Their own motion, and now confirmed by the filings of

03:11  5  Mr. Maldonado and Mr. Ryan today, confirm that -- that it was

6  plaintiff's counsel who was communicating with the Swiss

7  prosecutor, I guess as it were, and they have submitted today a

8  declaration from the Swiss prosecutor, Mr. Ryan's Swiss

9  attorney attaches to his declaration the declaration of a Swiss

03:11  10  prosecutor, which is in French.  In basic Google translate, the

11  prosecutor says, "I requested this server based on my

12  communications with the plaintiff's counsel."

13       So the only facts alleged with respect to this motion

14  are that the plaintiff -- that this server was sent by

03:11  15  Mr. Ryan's husband, at the request of Mr. Ryan's Swiss attorney

16  to -- directly to a Swiss prosecutor, because Mr. Ryan was

17  detained or incarcerated in Switzerland, and he arrived at an

18  arrangement with the Swiss prosecutor where he would be, I

19  guess, let out of jail but have to remain in Switzerland, if he

03:12  20  shipped this server that has been alleged is one of my client's

21  servers, to Switzerland.

22       So what has happened here is that it appears that

23  plaintiff's counsel has been communicating with the Swiss

24  prosecutor, that the Swiss prosecutor requested somebody be

03:12  25  detained in Switzerland to have them send this server that is

1    apparently our client's server, we believe is the allegation,

2    and again, we've just been retained so we're investigating all

3    of this, to Switzerland.

4         And so it's not -- and they're seeking relief against

03:12    5    all the defendants, not just to do what the court order already

6    ordered, because what's already ordered, of course, which is

7    that nothing be destroyed, but now they're saying because of

8    this incident that I just described, somehow that should lead

9    the Court to circumvent the normal discovery process and allow

03:13   10    the plaintiffs to begin copying themselves that server, but not

11    just that server, what they're seeking in this three-page

12    motion is to copy all documents the defendants have.  That's

13    literally what the motion says.

14         **THE COURT:**  When you're talking about the motion,

03:13   15    you're talking about Docket Entry 60, the emergency motion for

16    enforcement of the TRO?

17         **MR. ENCINOSA**:  Correct, Your Honor.  Correct.  We

18    filed it -- so that the Court is aware, we filed a motion today

19    for extension of time regarding this Friday's deadline for

03:13   20    defendants to respond to the motion for preliminary injunction,

21    and two weeks we requested, and then to reschedule the hearing

22    on that until after our response is due.  We have just recently

23    been retained.

24         This is, as Your Honor is aware, not to mention it's a

03:13   25    60-page complaint asserting 19 claims on complicated theories,

1   but it has over 40 defendants, alleges billions of dollars in

2   discovery, there's been ex parte hearings where apparently it's

3   clear based on affidavits submitted by the plaintiff that

4   they've had an investigator investigating matters for months,

03:14   5   and they have declarations of forensic computer experts that

6   have done an investigation, and we cite cases in our motion

7   that we filed today that suggests that due process requires

8   that we have a real opportunity to prepare and respond, and in

9   their cases, the Fifth Circuit is pretty split explaining that

03:14   10   where a party only has two or three days or a number of days to

11   respond to voluminous allegations, that they don't really have

12   a fair opportunity to respond.

13         So I just wanted to make sure that the Court was aware

14   of that.

03:14   15         And so, essentially, Your Honor, we think that the

16   motion that's set for hearing today should be denied in its

17   entirety.  There's no reason to enter a second order.  I mean,

18   that is -- again, this is not what I understand you're seeking.

19   I don't think there's any reason to enter a second order saying

03:15   20   the documents should be preserved.  The Court has already done

21   that.

22         But there's certainly no basis to enter an order

23   regarding -- they say "defendants" in their motion, if they

24   mean the Morillo defendants or how they're defining a group of

03:15   25   defendants to do what the Court already rejected, rejected in

1       the argument in the TRO based on distinguishing the Dell case

2       that they cited and finding that even but for the Dell case

3       being distinguishable, that the way they phrased request is

4       incredibly overbroad, and the Court has denied it on that basis

03:15   5       alone, and that's the same argument that is being presented

6       today, again, we contend with no factual support.

7               The fact that a Swiss prosecutor, after communicating

8       with plaintiff's counsel, sent, essentially, I presume, for the

9       worst, Mr. Ryan because he was detained, and the documents

03:16   10      filed by the Court suggested that if he agreed to some server

11      to the Swiss prosecutor he would be released, that because that

12      happened that in no way should suggest that the Court should

13      revisit its TRO or grant any other relief.

14              **THE COURT:**  Okay.

03:16   15      **MR. MARK:**  Thank you.  I'm not going to repeat what

16      counsel has just stated, just to make a couple of observations.

17              The predicate for the emergency motion, Docket Entry

18      60, was to stop Federal Express from delivering the server to

19      Switzerland.  It's undisputed that that Federal Express package

03:16   20      was brought to the Federal Express place at around ten o'clock

21      a.m., and that the service of process of the TRO, and the

22      complaint occurred after that.

23              It's also undisputed, and counsel for the plaintiff

24      states in their motion that they spoke to Mr. Ryan's Swiss

03:16   25      criminal defense attorney who confirmed that the server is in

1  the possession of the Swiss prosecutor and was given to the

2  Swiss prosecutor at the demand of the Swiss prosecutor.

3          Now, they're trying to conjure some story of sort of

4  screeching tires to secrete this server out of the jurisdiction

03:17  5  in some sort of surreptitious way, and it's just not what

6  occurred.

7          To counsel's point, the relief sought here is moot.

8  There is an injunction hearing -- there is a hearing on the TRO

9  that is coming up.  We were, as well, retained yesterday, I

03:17 10  believe.  So we agree with much of what counsel said with

11  respect to the hearing should proceed on in due course.

12          This was not noticed as an evidentiary hearing, that

13  Mr. Maldonado is here, he is willing to testify to a subpoena,

14  he is obligated to be here.  There is a pending motion for

03:18 15  protective order with respect to that subpoena which was

16  grossly overboard.

17          **THE COURT:**  It sounds like you're telling me something

18  different than what you put in your motion.

19          **MR. MARK:**  I'm sorry?

03:18 20          **THE COURT:**  You said he's here and available to

21  testify, but I thought in your response or in your motion,

22  Docket Entry 79, indicated that he's not prepared to testify

23  because he was just served.

24          **MR. MARK:**  Well, he's -- we spent time together going

03:18 25  through, obviously, the subject of today's hearing.  He was

1  required to appear today, so we brought him here.  It is not my

2  preference that he be forced to testify today, because we don't

3  believe that the subpoena should have been served.  Again, this

4  is not an evidentiary hearing but, of course, if Your Honor so

03:18  5  wishes, he will testify today.

6          THE COURT:  Okay.  Anything else?

7          MR. MARK:  No, Your Honor.  Thank you.

8          THE COURT:  Okay.  So I guess going back to this -- I

9  guess the motion that we are -- the primary motion we're here

03:19  10  for today is the emergency motion for enforcement of the

11  Court's temporary restraining order.  And why shouldn't this

12  just proceed as cases normally do to have the hearing on the

13  preliminary injunction and, if appropriate, to just simply

14  permit discovery in its normal course and proceed that way?

03:19  15          MR. BOIES:  Well, Your Honor, this is not a normal

16  case.  In a normal case, you don't have documents being moved

17  from one country to another.  You don't have defendants who

18  have a history -- that's one of the reasons that we have

19  subpoenaed the witnesses here, to show the Court the history of

03:20  20  some of these defendants in terms of destroying documents in

21  response to government inquiries in civil suits in the past.

22          THE COURT:  But the server is with the Swiss

23  government.  So, presumably, they're not going to destroy it.

24          MR. BOIES:  That -- whatever is with the Swiss

03:20  25  government now is not going to get destroyed.  There's no

1   question about that.  But there were two aspects of it.

2        One was with respect to that server, if it had been

3   here in the United States, we could have gotten expedited

4   discovery from this court of that server and use that server to

03:20   5   identify other evidence.  It's now in the hands of the Swiss

6   prosecutor, and the defendants who are here are telling the

7   Swiss prosecutor not to let us see it.

8        So that is -- that has taken that outside of this

9   Court's jurisdiction in a way that we think is prejudicial.

03:21   10       THE COURT:  Counsel for the defendant said a moment

11   ago that you or other plaintiff's counsel specifically asked

12   the Swiss prosecutor to request that server.  Is that

13   inaccurate?

14       MR. BOIES:  That is inaccurate, Your Honor.  We did

03:21   15   tell the Swiss prosecutor about where we thought evidence was,

16   both here and in Venezuela and in London and in other

17   countries.  And our understanding is that the Swiss prosecutor

18   is pursuing evidence in a variety of places.

19       We did not know that there was a plan to remove this

03:21   20   server until the person doing the surveillance at Mr. Ryan's

21   house discovered the person, Mr. Maldonado, leaving with that

22   server.  That was the first knowledge that we, the lawyers

23   here, had that there was a plan or an idea of removing that

24   server.

03:22   25       THE COURT:  And that was at 10:00 a.m. on Friday?

1        MR. BOIES:  That was Friday morning.

2        THE COURT:  So why did I get an emergency motion

3  Friday night after -- well after close of business?

4        MR. BOIES:  Your Honor, we were trying to track it

03:22  5  down.  We were trying to get the papers prepared.  My

6  understanding was that there was an effort to contact the Court

7  and see a time when people could come.  And if we got there

8  late, I apologize.

9        THE COURT:  I'll just say this as a brief aside.  You

03:22 10 know, I try to be a dedicated public servant, as is my staff.

11 This is two straight weekends where emergency motions were

12 filed and we took a lot of time to review things that weren't

13 necessarily emergencies, and as one of my more senior

14 colleagues quoted, one of our former chief judges, the great

03:23 15 Ned Davis, that the question usually with emergency motions is

16 did anyone die?  And if the answer is no, then it's typically

17 not an emergency.

18        So I'll just say it before the next emergency motion

19 is filed over the weekend, please make sure it's really an

03:23 20 emergency.

21        MR. BOIES:  If we unduly burdened the Court, I

22 apologize.  We thought when we learned that this was being

23 taken out of the country that that was --

24        THE COURT:  I concede, that particular issue is -- as

03:24 25 representative, it was alarming and we acted.  Presumably, it

 1    had already been moved before they could be served with the

 2    order.

 3         **MR. BOIES:**  What I do think, Your Honor, is it's

 4    important to focus on the relatively limited things that we're

03:24  5    asking for here.

 6         **THE COURT:**  All right.

 7         **MR. BOIES:**  And we can take this up on Monday, but on

 8    Monday we're simply asking for an extension with respect to the

 9    defendants other than the Morillo-grouped defendants.

03:24  10        We're simply asking that there be a document order

11    entered as to them the same way the Court entered it with

12    respect to the Morillo-grouped defendants.

13        With respect to the Morillo-grouped defendants, what

14    we're asking for is to try to get kind of access just for

03:25  15    copying.  We don't want to seize anything.  We don't want to

16    take it away from anybody.  We just want to copy documents and

17    electronic files to preserve them, and we want to be sure that

18    the documents are preserved and we have identified five

19    locations here in Miami where Helsinge, Morillo, Lutz, and

03:25  20    Baquero have either an office or an apartment.  And what we're

21    seeking there is simply to get an order that would permit

22    whatever is there to be copied and preserved, and if they don't

23    want to give it to us now, if they want to put the copy, have

24    the copy come to the Court and sit here until we can have

03:26  25    motion practice over it, that would be okay.

1      What we want to do, though, is get it frozen in time,

2  get it copied, so that what is there is preserved.

3      **THE COURT:**  But, I mean, I'm sure you recognize that

4  the relief that you're requesting, the seizure of evidence

03:26  5  using the U.S. marshals and the copying in civil litigation, I

6  mean, that's pretty extraordinary.

7      **MR. BOIES:**  Your Honor --

8      **THE COURT:**  I mean, particularly when it's not a case

9  where a party's asking the Court to allow the seizure of its

03:26 10  own property.  Normally, one would go through the normal

11  discovery process to get that information.

12      **MR. BOIES:**  I want to be clear, Your Honor.  We're not

13  asking to seize the stuff.  The Court makes orders all the time

14  during the discovery phase for inspection and copying, which is

03:27 15  all we want to do.

16      Now it is unusual that we're asking to have that done

17  now.  We're asking to have that done now as opposed to later.

18  But all we're asking -- we're not asking to seize it or take it

19  away from them in any sense.  All we're now asking for is that

03:27 20  the typical kind of order that the Court's going to enter at

21  some point that allows for inspection and copying of documents

22  be entered now, and we recognize that that's unusual because of

23  the timing of it.  But the scope of it is not unusual, and why

24  we're asking to do is now is because we have got defendants

03:28 25  that have a history of destroying documents and we have got a

witness here, we can describe some of that to, Your Honor.

But because of that history, we want to be sure that the documents are preserved.  We're not asking to seize anything.  We're not asking to take anything away from anybody.  We're simply asking for an order that permits us to go in, inspect and copy, and if they want to fight about the relevance of some of the stuff, we're prepared to set it aside until the Court has ruled on those issues.

What we're asking is to get it copied now rather than later so that when the later comes we're sure it's there.

THE COURT:  And can you proffer to me what this evidence of the defendants have previously destroyed evidence is?

MR. BOIES:  I'm sorry, Your Honor?

THE COURT:  Can you proffer to me what the evidence is that the defendants previously destroyed evidence?

MR. BOIES:  There were -- I've not personally interviewed the witness, Your Honor.  And, in fact, I have not personally met her.  I saw her when she was brought into the courtroom today.  But my understanding, based upon an interview that my partner Mr. Pravadi (ph.) had with her earlier today is that she will describe situations in which Mr. Morillo, for example, was informed that there would be a search warrant and he shredded documents, took a hammer to electronic devices, to prevent them from being discovered.

1        There were -- she will describe instances in which

2   Mr. Morillo bribed various officials in Venezuela and when that

3   was investigated, destroyed the evidence.  And I think

4   Mr. Carpinello gives me a note that says that in Exhibit P to

03:31   5   the complaint, there is a quote, "Delete the file" reference.

6   But I think that this is a case where there is a serious danger

7   of destruction of evidence.  And what we're asking for is not

8   going to prejudice anybody because we're not asking to seize

9   the documents.  We're not asking to take them.  All we're

03:31   10   asking for is an order of inspection and copying.  Have people

11   go there, copy what's there, and, as I said to the Court

12   before, once that copy is made, if we want to set it aside in

13   some secure place before we even look at it, so that the

14   Court's process can proceed in an orderly way, that would be

03:32   15   satisfactory.  Our issue is simply to try to prevent the

16   destruction of this evidence.

17        THE COURT:  Okay.  Well, Counsel, specifically

18   referring to Exhibit P, which is Docket Entry 12-16, there are

19   conversations, it looks like back in 2005, with Mr. Morillo

03:32   20   saying -- talking about deleting something tomorrow morning.

21   It's part of this conversation.  I'm assuming you reviewed

22   that.  I'm talking to you.

23        MR. ENCINOSA:  To me, Your Honor?

24        THE COURT:  Yes.

03:32   25        MR. ENCINOSA:  Yes, as I said, Your Honor, we have

1  just recently been retained so we're still getting up to speed.

2  Mr. Morillo is not one of the defendants that we're

3  representing.  Would you like me to read this document now and

4  address it or address the general point?

03:33  5          THE COURT:  Well, if you're able to read it now and

6  respond, that would be great.

7          MR. ENCINOSA:  (Complies).

8          Your Honor, reading the document I don't know that I

9  can be very helpful with respect to this document, other than

03:33  10  to say it says what it says.

11          I don't know that -- I don't believe this document

12  would warrant -- first of all, I don't know that the Court

13  should be hearing the issue today.  The issue Mr. Boies is

14  referring to I believe is an issue that the Court was going to

03:34  15  hear whenever it hears the preliminary injunction motion.  And

16  all I hear is that it's an attempt to make an end run around

17  the discovery process.

18          THE COURT:  All right.

19          MR. ENCINOSA:  When Mr. Boies says, all we're asking

03:34  20  for is that it be preserved, one of the main problems with that

21  is that the "it" that he's referring to is every document that

22  a group of defendants has.  And that's not what would normally

23  happen.  It's not advancing the ball on something that would

24  ordinarily happen.  What ordinarily happens is you follow the

03:34  25  Rules of Procedure and Requests For Production are served and

1　objections are made to relevance and attorney/client privilege

2　and other such issues.

3　　　　Again, we filed our motion for extension of time

4　because we're still getting up to speed on things.  There were

03:35　5　only two declarations that were attached to the ex parte motion

6　that was submitted, that is the motion that would then be heard

7　again with respect to the preliminary injunction, an

8　investigator and a forensic accountant.  We're hearing

9　references to additional witnesses that are going to provide

03:35　10　information regarding Mr. Morillo, again, not one of my

11　clients.  Allegations that he's deleted documents at some point

12　in the past.

13　　　　None of these things were attached.  There's no

14　declaration from these individuals.  We don't even know who

03:35　15　those individuals are.

16　　　　We contend that to the extent that plaintiffs want to

17　make arguments based on testimony such as that, that we be

18　afforded a due process and at least be provided with a

19　declaration or be allowed to take depositions in advance of any

03:35　20　hearing.

21　　　　For example, the two declarations that are attached,

22　one is the declaration of a private investigator who spent

23　months investigating, apparently, and says that he obtained a

24　laptop computer, which I believe the complaint says this is

03:36　25　where these documents came from which are attached to the

1  complaint from Mr. Morillo's former wife, and she just handed

2  Mr. Morillo's personal laptop over to this investigator and

3  plaintiffs apparently went through it, without regard for

4  potential privileged information or anything of the sort.

03:36  5      Again, that's all I can glean from looking at

6  documents.  I'm not even sure that it's appropriate for the

7  plaintiff to have these documents.  These are all issues that

8  we're looking into.  We've just recently been retained.

9      There are a whole host of issues now, and in the

03:36  10  motion that was set for hearing today, the three-page motion

11  that was set today and the prior motions that have been filed,

12  we don't see anything that in any way suggests that we should

13  just ignore the discovery process and the civil case and

14  somehow proceed as if this is a prosecution.

03:36  15      And then on top of it all, we think we're here on an

16  emergency based on the fact that we have the declaration of the

17  Swiss prosecutor that was filed today that says, yeah, I asked

18  for the server because I spoke with the plaintiff and they told

19  me about the servers, so I asked for it.

03:37  20      So we're here on an emergency, so-called emergency

21  that's based on communications plaintiffs have been having with

22  the prosecutors in other countries.

23      THE COURT:  Okay.  And Mr. Boies, the defendants have

24  asked for -- asked that the preliminary injunction hearing be

03:37  25  reset.  Is there any objection to that?

1          **MR. BOIES:**  You mean to put this over until Monday?

2          **THE COURT:**  No, they want it moved from Monday to a

3    later date.  They've asked for two weeks.

4          **MR. BOIES:**  We certainly object to it unless we get

03:37  5    the assurances that we have asked for.  For example, one of the

6    things we have said to them is -- and I've got to distinguish

7    between two groups of defendants.  There are the

8    Morillo-grouped defendants, and when counsel says Morillo is

9    not his client, it is true, I accept that Mr. Morillo

03:38  10   personally has not retained him.  But Mr. Morillo is the person

11   who founded and runs and owns Helsinge.

12          So what Mr. Morillo does and Mr. Morillo's

13   predilections is something that Helsinge is not able to run

14   away from.  And I respectfully suggest that when Mr. Morillo

03:38  15   writes, "Dude, delete the file and/or transfer it so that there

16   is no evidence," that is not an ambiguous statement.

17          **THE COURT:**  That was for something unrelated, for

18   something in 2005, though.

19          **MR. BOIES:**  That was in 2005.  And the evidence that

03:38  20   we have from the witness that we want to put on of other

21   instances of document destruction do not relate to this

22   specific issue that we have before the Court.

23          But what we are saying is that this is a person with a

24   history of destroying documents when he knows the heat is on.

03:39  25   And that that makes this a somewhat unusual -- different case

1   than the usually civil case that the Court is confronted with.

2        Mr. Carpinello tells me that some of the document

3   destruction that our witness can testify to is, in fact,

4   related to the conspiracy that was ongoing over a number of

**03:39** 5   years.

6        As I said, I have not personally interviewed the

7   witness so I don't have personal knowledge about that.  But

8   what I can say to the Court is that this is a situation in

9   which you have a group of defendants who have destroyed

**03:40** 10   documents, a history of that.  What we're trying to do is, with

11   respect to that group of defendants, copy and preserve the

12   evidence.

13       **THE COURT:**  One thing that struck me from the

14   complaint, the motion for TRO, a lot of the relevant

**03:40** 15   information actually came from the plaintiffs.  I mean, I

16   understand the trust was set up for the recovery.  But it came

17   from the company from which you are seeking to recover,

18   correct, or the entity that you're seeking to recover?

19       **MR. BOIES:**  Some of it came from evidence, some of it

**03:41** 20   came from Helsinge and Morillo.  Some of it came from other

21   defendants.  The evidence originated both on the plaintiff's

22   side and the defendant's side, if you will.

23       **THE COURT:**  Okay.  And there has been this years long

24   investigation.  I mean, I guess what I'm getting at is don't

**03:41** 25   you pretty much already know what all this information is?

1          **MR. BOIES:**  No.  No.  Your Honor, I mean we have a

2    great deal of information.  But the full extent of it and,

3    indeed, major parts of it are stuff that is in these servers,

4    in these electronic devices, in these paper files.

03:41  5          The -- what we have is what we have been able to glean

6    without any court order, without any discovery.  And there is a

7    very substantial amount of that that we have been able to

8    develop similar.  But there is a vast amount of evidence that's

9    out there that is of critical importance.  And I can't stress

03:42  10   enough that we are not trying to -- we would like to have

11   discovery go as fast as we could, of course, but that's not the

12   point here of accelerating discovery.

13          This is a preservation issue with respect to the

14   defendants, other than the Morillo defendants, we want a court

03:42  15   order ordering them to preserve the documents just as the

16   Morillo defendants have been wanting to preserve.

17          **THE COURT:**  Okay.  So I've actually already ruled on

18   the emergency motion, obviously, following the issuance of the

19   temporary restraining order.  And, I, of course, ordered that

03:43  20   FedEx retain that server that was delivered to it, but

21   apparently it was too late because by the time I issued the

22   order -- well, I issued it pretty quickly after I received it

23   Friday night on March 9th, the server had been, in fact --

24   yeah, at 10:20 p.m., shortly after receiving the motion, I

03:43  25   issued that order.  But the server, as I learned this morning,

1   had been delivered that morning to FedEx and had already been

2   shipped.

3         I didn't find a basis to go beyond the relief I had

4   granted in the TRO, meaning the seizure and the copying of

03:44   5   evidence at stage.  I still don't find that that is

6   appropriate, and it's pretty extraordinary relief.  It's a

7   broad seizure of items which may or may not have evidentiary

8   value.  I just don't think it's appropriate.

9         And, in fact, it's perhaps more than a criminal

03:44   10   prosecutor could even get without a showing of probable cause.

11   And I think the appropriate procedure is the procedure that is

12   in place in all cases and Rules of Evidence and Civil Procedure

13   will apply and I will make appropriate determinations as the

14   case goes forward.

03:45   15         Now, as I indicated earlier when I reviewed the

16   temporary restraining order, the relief was limited as to the

17   plaintiff referred to as the Morillo defendants, but I found

18   that there was a sufficient basis to grant the relief as to all

19   defendants.  So I will modify the temporary restraining order

03:45   20   to prohibit all the defendants from destroying any records

21   related to their business with PDVSA, and there's no prejudice

22   that would be required to retain that information anyway.

23         Regarding the preliminary injunction, under the

24   circumstances, there are several parties, they have not been

03:46   25   served.  There's a multi-count complaint.  It's about 161 pages

1    or so.  There's a lot of pretty detailed information in the

2    affidavit or the declaration in addition to the complaint.

3         I do find good cause to continue the hearing on the

4    preliminary injunction.  I will give the defense two weeks from

03:46  5    today to file its written response.  And then we'll set a

6    hearing shortly thereafter.  And presumably that will give the

7    defense enough time to serve.

8         So if -- actually, ten days from today is March 26th.

9    Can you file what you need to file by close of business that

03:48  10   day?

11        **MR. ENCINOSA**:  Yes, Your Honor.  We'll do whatever we

12   have to do.

13        **THE COURT**:  All right.  So we'll make the defense

14   response due by March 26th by 5:00 p.m., and we can, if

03:48  15   everyone's available, reset the evidentiary hearing for the

16   preliminary injunction on Thursday, the 5th of April, leave the

17   day open if you want to look at your respective calendars.

18        **MR. BOIES**:  Your Honor, I'm scheduled to be in court

19   in Birmingham, Alabama later on the 5th.  And I'm not -- it

03:48  20   could be handled by somebody else.

21        **THE COURT**:  I can find another day if you'd like to be

22   here.

23        **MR. BOIES**:  Would the 4th be at all possible?

24        **THE COURT**:  It's looks like I'm open on the 4th as

03:49  25   well.

|    |    |
|----|----|
| 1  | **MR. BOIES:**  Either the 3rd or the 4th. |
| 2  | **MR. ENCINOSA:**  I apologize, Your Honor, I had my phone |
| 3  | turned off. |
| 4  | **THE COURT:**  The 3rd is open as well.  I'm available |
| 03:49  5 | the 3rd or the 4th. |
| 6  | **MR. ENCINOSA:**  I believe either of those days is fine |
| 7  | for myself. |
| 8  | **MR. MARK:**  Your Honor, for us the 4th is better. |
| 9  | **THE COURT:**  Can you live with the 4th? |
| 03:49 10 | **MR. BOIES:**  Yes.  The 4th would be great, Your Honor. |
| 11 | **THE COURT:**  I've got some trials, but I'm trying to |
| 12 | see if any of these are likely to go that are set for that |
| 13 | Monday. |
| 14 | All right.  So why don't we set this down for the |
| 03:50 15 | preliminary injunction hearing which will be an evidentiary |
| 16 | hearing for 9:30 a.m. on Wednesday, the 4th? |
| 17 | Do you have some indication of how long your case will |
| 18 | take? |
| 19 | **MR. BOIES:**  I don't think more than half a day, Your |
| 03:50 20 | Honor. |
| 21 | **THE COURT:**  Okay.  Any estimate? |
| 22 | **MR. ENCINOSA:**  Your Honor -- |
| 23 | **THE COURT:**  I know you're still looking at everything. |
| 24 | **MR. ENCINOSA:**  -- it's difficult for me to predict |
| 03:50 25 | that at this point.  If it's okay with the Court, we'd like a |

1   few days to inform the Court as to timing.

2        Also, one thing that's difficult for us to predict is

3   with respect to how many witnesses plaintiffs will call.

4   There's only two declarations attached to their motions and it

03:51  5   sounds like they're anticipating calling additional witnesses.

6        THE COURT:  I'll set aside the whole day and hopefully

7   that's enough time.

8        MR. BOIES:  Your Honor, could I inquire whether the

9   Court would permit us to take brief custodian of records

03:51 10   depositions, not to seek production of any documents, but just

11   to take brief custodian of records deposition of each of the

12   defendants so that by the time we get to the preliminary

13   injunction hearing, we know A) whether there have been

14   documents destroyed in the interim, and B) where the documents

03:51 15   are located?

16        MR. MARK:  Your Honor, if I may, Mr. Ryan is in

17   Switzerland.  He's in Genova certainly for the next few weeks.

18   I assume Mr. Boies is referring to corporate defendants and

19   records custodians of those corporate defendants?

03:52 20        MR. BOIES:  Yes, I was referring to the corporate

21   defendants.

22        MR. ENCINOSA:  Your Honor, we would object for the

23   same reasons as before.  It's plaintiff's burden on the

24   preliminary injunction.  We have enough work as it is to do

03:52 25   just getting up to speed on the complaint and meeting their

1  potential witnesses, based on the two declarations we have.

2  I was going to ask the Court that we be permitted to

3  at least have declarations for additional individuals that they

4  intend to call.  But we don't think that -- it's just, again,

03:52  5  this is now more discovery in advance of a hearing to discover

6  what documents there may be, presumably, based on what

7  Mr. Boies said, to try to discover, you know, additional facts,

8  either they have a basis to seek a preliminary injunction, they

9  can meet their standard or not.  For all the same reasons, we

03:52  10  discussed today we don't think --

11  THE COURT:  So, presumably, within an hour of us

12  concluding today, I'll issue a modified order extending the

13  same relief that I previously granted as to all defendants.

14  MR. SWERDLOFF:  I apologize for my late entry, Your

03:53  15  Honor.  My name is Nick Swerdloff, I'm with Hughes Hubbard, and

16  we represent one of the bank defendants, BAC Florida Bank,

17  which is alleged to have aided and abetted the alleged scheme

18  at issue in this case, because of their accounts there that are

19  maintained -- held on behalf of certain other defendants.

03:53  20  And I had no intention of appearing and speaking

21  today, we just got served, I was just retained.  And I

22  understood the purpose of today's meeting had nothing to do

23  with any injunctive relief against my client, the bank, that

24  was supposed to be -- the question of relief against my client

03:54  25  was supposed to be part of the PI hearing which -- and

1   specifically the question of an injunction to preserve

2   documents.

3           We are a state chartered bank.  Perhaps you've seen us

4   on Miracle Mile in downtown Coral Gables.  It's right in the

03:54  5   building where Morton's Steakhouse is.  The big name is right

6   on top, BAC Florida Bank.  We've been a bank for over 30 years

7   here and we're regulated by state authorities and the FDIC.  Of

8   course, we are maintaining documents in the ordinary course of

9   business and certainly after receiving notice of this lawsuit.

03:54  10          There really is no basis to court order us on a TRO

11   basis today, before a preliminary injunction hearing, for us to

12   preserve documents.  We are preserving documents.  That's what

13   we do.  We're a bank.  We're not some other type of entity.

14          In reading through the papers which, honestly, I have

03:55  15   just recently seen, I see nothing in there suggesting any

16   concern about my client, a third party bank, destroying

17   evidence.  There's just nothing in there.  There's no basis for

18   that relief.

19          As Your Honor said earlier, in the ordinary course of

03:55  20   discovery you have obligations to preserve documents.  We are

21   preserving documents.  So I don't really see where this TRO

22   needs to be expanded to include this third party bank that's

23   just been added to this case.

24          So I will brief this, obviously, in connection with

03:55  25   the PI hearing, but I had no intention of speaking here today

1    because I heard Mr. Boies clearly differentiate between the

2    types of defendants and saying he was, at the PI hearing,

3    going to seek to extend the order to preserve evidence against

4    other defendants at the PI hearing and not today, and so that

03:55  5    was -- I apologize for not speaking earlier but that was the

6    reason.

7              THE COURT:  I'm sorry, you represent which entity?

8              MR. SWERDLOFF:  BAC Florida Bank.  It's at the bottom

9    of the caption.

03:56  10             THE COURT:  I've got it here.

11             So you're agreeing to preserve whatever evidence you

12    have absent --

13             MR. SWERDLOFF:  Yes.

14             THE COURT:  -- an order?

03:56  15             MR. SWERDLOFF:  Absolutely.

16             THE COURT:  And Mr. Greenberg stood up as well.  And

17    you're representing?

18             MR. GREENBERG:  Good afternoon, Your Honor.  We're

19    representing Vitol, Inc. and Antonio Maarraoui.  We're so new

03:56  20    in the case that I'm mispronouncing my client's name.

21             THE COURT:  I'm sorry, which defendants?

22             MR. KELSO:  Vitol, Inc., Your Honor, and Antonio

23    Maarraoui.

24             And, Judge, my name is Michael Kelso.  I'm a lawyer

03:56  25    with Susman Godfrey out of Houston.  I apologize we have been

1   retained recently and haven't had an opportunity to pro hac in

2   yet.  Mr. Greenberg is working with us on this case.

3            THE COURT:  Okay.  I'm sorry.  Vitol S.A. --

4            MR. KELSO:  Inc., Your Honor.

03:57   5            THE COURT:  You're representing both of those

6   entities?

7            MR. KELSO:  We're representing them.  We're only

8   appearing today, Your Honor, on behalf of Vitol, Inc., and

9   Antonio Morillo, who is one of the individual trader

03:57  10   defendants, I think, is the way he's defined in the complaint.

11            THE COURT:  Okay.

12            MR. KELSO:  And, Judge, I should note, we're obviously

13   appearing here today subject to all of our Rule 12(b) defenses

14   and any other defenses without waiving those defenses, I hope,

03:57  15   Your Honor.  That's certainly our intention, is not to waive

16   any such Rule 12 defense.

17            Your Honor, we're concerned with the application of

18   the TRO to all defendants in that we are already subject, as

19   Your Honor observed, to the same document preservation rules

03:57  20   under the Federal Rules of Civil Procedure.  And plaintiffs

21   have alleged no specific facts that would justify an emergency

22   relief as to Vitol, Inc. or as to Mr. Morillo, to take this

23   case outside of the normal federal rules.

24            Mr. Boies said something that was interesting, and I

03:58  25   wrote it down when Your Honor raised that point.  He said the

1  point of asking for this TRO was so that if there was ever any

2  accusations that anyone violated or did made some misstep in

3  discovery, they could turn it into a contempt proceeding rather

4  than a normal Rule 37 motion.

03:58  5          And Mr. Boies keeps saying in his argument that

6  defendants have a history of destroying documents.  And

7  whatever the merit or lack of merit of that argument may be

8  with respect to the Morillo-grouped defendants, Mr. Boies has

9  set out no evidence that that is true with respect to Vitol,

03:58  10  Inc.

11          So we respectfully think, Your Honor, that there is no

12  basis to extend the TRO, the extraordinary emergency ex parte

13  relief Mr. Boies has asked for to the non-Morillo-grouped

14  defendants who are subject to the federal rules and we are

03:59  15  confident Your Honor will be able to deal with appropriately

16  under the rules in the event there are any issues with document

17  preservation or discovery going forward.

18          We obviously have no intent of destroying any evidence

19  or getting rid of any evidence or moving it out of the country.

03:59  20  We just think it should stay within the normal federal rules,

21  at least until the Court has a chance to hear the issue on the

22  preliminary injunction hearing.

23          THE COURT:  So to alleviate these concerns, Mr. Boies,

24  with all the fine lawyers you have there, do you just want to

03:59  25  modify your motion and be specific on who you want that relief

1  extended to, and you've got attorneys here and perhaps you

2  could reach some agreement without the need for an order?  I

3  guess, I'm sure the biggest concern are the people who have not

4  been served.

04:00  5          **MR. BOIES:**  It includes the people who have not been

6  served, but it includes people who have been served, and, of

7  course, I know all of the attorneys here are going to do

8  everything they can to prevent the destruction of documents.

9          **THE COURT:**  All right.  So as opposed --

04:00  10          **MR. BOIES:**  However, Your Honor, if I could say, there

11  are some things I've asked for that were unusual.  Okay.  But a

12  document preservation order in a civil case is not at all

13  unusual.  I mean, I have these cases all the time and it

14  doesn't require proof that somebody has destroyed documents in

04:00  15  the past.  It is something that courts routinely order in civil

16  cases that people preserve their documents.

17          And particularly in a situation in which you have

18  people who are alleged to have taken bribes and these are not

19  just bare allegations.  We have put into the complaint a lot of

04:01  20  evidence of where traders and big companies were engaged in

21  giving and taking of bribes.  That is something that is fraught

22  with the danger of document tampering.

23          **THE COURT:**  So I guess -- well, Counsel, you're

24  standing here.  So as opposed to your clients, I guess, falling

04:01  25  under the umbrella of a TRO, are you fine with just an agreed

1  order to preserve evidence?  I mean that seems to accomplish

2  the same thing.

3       MR. KELSO:  Judge, we reached out to counsel for the

4  plaintiffs on Monday or Tuesday to try to work something like

04:01  5  this out and the responses we got were sort of varying.

6       What I'd like is just to get a chance to talk to them,

7  maybe we could submit and moot this entire issue rather than

8  entering a TRO here today.

9       THE COURT:  And Counsel?

04:01  10       MR. SWERDLOFF:  Yes, Your Honor, I'd like to talk to

11  him as well.  I'm pretty sure we can work something out.

12  Obviously, if not we'll be back.

13       THE COURT:  Well, you're here.  You've told me that

14  you're going to preserve the evidence anyway.  I'll enter an

04:02  15  agreed order, not put Vitol, Inc. or Mr. Morillo or BAC Florida

16  Bank under a modified TRO, and you can speak to one of these

17  fine lawyers here for the plaintiff, give me some agreed

18  language, and I'll enter that agreed upon language.  Okay?

19       MR. SWERDLOFF:  Thank you, Your Honor.

04:02  20       MR. BOIES:  Thank you, Your Honor.

21       THE COURT:  Anything else?

22       MR. MARK:  Etan Mark.  Quickly, just a point of

23  clarification.  I want to confirm that the full -- that the

24  extent of the relief sought in the pending motion, which is now

04:03  25  set for hearing on April 3rd, is to secure -- I'm sorry,

1 April 4th, is to secure and preserve evidence, that that's the

2 relief sought here in the TRO.  That's what I heard him say a

3 few times and --

4       **THE COURT:**  Well, I ruled.  My ruling was in the

04:03 5 context of the TRO.  I mean, depending on what I hear, I may

6 modify relief.  I don't know.  So we'll -- I'll wait to hear

7 what I hear and then make a decision accordingly.

8       I mean, plaintiff can request whatever they want and

9 we'll see if I grant it.

04:03 10       **MR. BOIES:**  And we have requested broader relief than

11 document production in the temporary injunction.

12       **THE COURT:**  Anything else?

13       **MR. KELSO:**  I hate to come up --

14       **THE COURT:**  But you're going to do it anyway.

04:03 15       **MR. KELSO:**  -- but I'm going to do it anyway, if you

16 don't mind.

17       We're in a precarious position because two of our

18 clients haven't been served yet, so I'm really not appearing on

19 their behalf today, but I would just ask that we be granted --

04:04 20 you know, afforded the same courtesy with respect to Vitol,

21 S.A. and Vitol Bermuda Limited, to just talk to the plaintiffs

22 before any TRO is extended to them and see if we can come up

23 with something.

24       **THE COURT:**  I'm getting mixed up now, and you're

04:04 25 representing which parties?

1    **MR. KELSO**:  I know it's an odd situation.  We also

2  represent Vitol, S.A. and Vitol Bermuda Limited.  We're not

3  appearing on their behalf today in court.  But I am asking Your

4  Honor to just not extend the TRO to them until we have a chance

04:04  5  to talk to plaintiff's counsel.

6    **THE COURT**:  All right.  So I'll give the parties until

7  this Friday, the 16th, by close of business.  Is that enough

8  time to talk about --

9    **MR. KELSO**:  It certainly is for us, Your Honor.

04:05  10    **THE COURT**:  All right.  So I'll hold off on Vitol

11  Energy, Bermuda and Vitol until you all have had a chance to

12  speak.  You're all here, so hopefully you can iron a lot of

13  that out today.

14    Okay.  We're in recess.  Thank you.

04:05  15    **MR. BOIES**:  Your Honor, Your Honor, we have a motion

16  on alternative service.  It doesn't have anything to do with

17  what we talked about today and it's not on for today.  But I

18  would just inquire, since we're here, how the Court would like

19  to deal with that motion.

04:05  20    **THE COURT**:  I don't think I need a hearing on that.  I

21  will just look at it.  I hadn't looked at that one in

22  anticipation of today.  I'll look at it today and make a

23  decision.

24    (Thereupon, the above portion of the hearing was

25  concluded.)

1                          **C E R T I F I C A T E**

2

3            I hereby certify that the foregoing is an accurate

4    transcription of the proceedings in the above-entitled

5    matter.

6

8        03/19/2018                 _____

9        DATE COMPLETED        GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**0**

**03/19/2018** [1] - 48:8

**1**

**100** [1] - 1:16
**10:00** [1] - 23:25
**10:20** [1] - 34:24
**12** [1] - 42:16
**12(b** [1] - 42:13
**12-16** [1] - 28:18
**12th** [1] - 11:4
**14** [1] - 1:5
**161** [1] - 35:25
**16th** [1] - 47:7
**18-CV** [1] - 3:4
**18-CV-20818** [1] - 1:2
**19** [1] - 18:25
**1999** [1] - 2:2
**19th** [3] - 11:15, 12:19, 12:22

**2**

**2005** [3] - 28:19, 32:18, 32:19
**201** [1] - 2:7
**2018** [1] - 1:5
**20818** [1] - 3:5
**26th** [2] - 36:8, 36:14
**2800** [1] - 1:16
**2nd** [4] - 1:16, 7:2, 11:11, 11:14

**3**

**30** [1] - 40:6
**3000** [1] - 1:21
**305** [5] - 1:17, 1:22, 2:3, 2:8, 2:16
**3100** [1] - 2:11
**33128** [1] - 2:16
**33130** [1] - 2:3
**33131** [4] - 1:16, 1:22, 2:8, 2:12
**37** [1] - 43:4
**374-0440** [1] - 2:3
**379-5571** [1] - 2:8
**3rd** [4] - 37:1, 37:4, 37:5, 45:25

**4**

**40** [1] - 19:1
**400** [1] - 2:15
**4th** [9] - 36:23, 36:24, 37:1, 37:5, 37:8, 37:9, 37:10, 37:16, 46:1

**5**

**523-5294** [1] - 2:16
**539-8400** [1] - 1:17
**5:00** [1] - 36:14
**5th** [2] - 36:16, 36:19

**6**

**60** [2] - 18:15, 20:18
**60-page** [1] - 18:25
**600** [1] - 2:11

**7**

**701** [1] - 1:21
**786** [1] - 2:12
**789-7602** [1] - 1:22
**79** [1] - 21:22

**8**

**80** [1] - 2:2
**8S32** [1] - 2:15
**8th** [1] - 2:2

**9**

**913-4900** [1] - 2:12
**9:30** [1] - 37:16
**9th** [1] - 34:23

**A**

**a.m** [3] - 20:21, 23:25, 37:16
**abetted** [1] - 39:17
**able** [6] - 14:24, 29:5, 32:13, 34:5, 34:7, 43:15
**above-entitled** [1] - 48:4
**absent** [1] - 41:12
**absolutely** [1] - 41:15
**accelerating** [1] - 34:12
**accept** [2] - 14:12, 32:9
**access** [3] - 7:12, 7:17, 25:14
**accomplish** [1] - 45:1
**accordingly** [1] - 46:7
**accountant** [1] - 30:8
**accounts** [2] - 12:18, 39:18
**accurate** [1] - 48:3
**accusations** [1] - 43:2
**acted** [1] - 24:25
**actual** [1] - 13:22
**added** [1] - 40:23
**addition** [2] - 12:12, 36:2
**additional** [6] - 15:25, 16:8, 30:9, 38:5, 39:3, 39:7
**address** [3] - 9:15, 29:4
**advance** [2] - 30:19, 39:5
**advancing** [1] - 29:23
**affidavit** [3] - 11:9, 15:1,

36:2
**affidavits** [1] - 19:3
**afforded** [2] - 30:18, 46:20
**afternoon** [5] - 3:7, 3:10, 3:11, 3:18, 41:18
**ago** [2] - 10:16, 23:11
**agree** [1] - 21:10
**agreed** [5] - 20:10, 44:25, 45:15, 45:17, 45:18
**agreeing** [1] - 41:11
**agreement** [2] - 5:2, 44:2
**ahead** [1] - 13:10
**aided** [1] - 39:17
**AL** [1] - 1:6
**al** [1] - 3:4
**Alabama** [1] - 36:19
**alarming** [1] - 24:25
**allegation** [1] - 18:1
**allegations** [4] - 16:18, 19:11, 30:11, 44:19
**alleged** [7] - 7:6, 17:13, 17:20, 39:17, 42:21, 44:18
**alleges** [1] - 19:1
**alleviate** [1] - 43:23
**allow** [3] - 16:25, 18:9, 26:9
**allowed** [1] - 30:19
**allows** [1] - 26:21
**alone** [2] - 4:12, 20:5
**alter** [1] - 6:6
**alternative** [6] - 13:18, 13:21, 14:4, 14:16, 14:23, 47:16
**ALTMAN** [4] - 2:10, 4:4, 4:11, 5:1
**Altman** [1] - 4:8
**ambiguous** [1] - 32:16
**AMERICAS** [1] - 1:6
**Americas** [1] - 3:4
**amount** [2] - 34:7, 34:8
**answer** [1] - 24:16
**anticipating** [1] - 38:5
**anticipation** [1] - 47:22
**Antonio** [3] - 41:19, 41:22, 42:9
**anyway** [4] - 35:22, 45:14, 46:14, 46:15
**apartment** [1] - 25:20
**apartments** [1] - 14:9
**apologize** [8] - 4:4, 15:10, 24:8, 24:22, 37:2, 39:14, 41:5, 41:25
**appear** [5] - 4:6, 4:11, 5:15, 16:8, 22:1
**appearance** [2] - 3:13, 4:3
**appearances** [1] - 3:6
**appeared** [1] - 14:19
**appearing** [5] - 39:20, 42:8, 42:13, 46:18, 47:3
**applicable** [2] - 11:17,

11:18
**application** [5] - 11:11, 11:16, 14:8, 14:23, 42:17
**applied** [1] - 11:12
**apply** [1] - 35:13
**appreciate** [1] - 13:11
**appropriate** [6] - 22:13, 31:6, 35:6, 35:8, 35:11, 35:13
**appropriately** [1] - 43:15
**April** [3] - 36:16, 45:25, 46:1
**arguably** [1] - 11:21
**argument** [4] - 20:1, 20:5, 43:5, 43:7
**arguments** [1] - 30:17
**arrangement** [1] - 17:18
**arrested** [1] - 7:2
**arrived** [1] - 17:17
**aside** [4] - 24:9, 27:7, 28:12, 38:6
**aspects** [1] - 23:1
**asserted** [1] - 7:9
**asserting** [1] - 18:25
**assist** [1] - 8:10
**assume** [1] - 38:18
**assuming** [1] - 28:21
**assurances** [1] - 32:5
**attached** [6] - 13:17, 30:5, 30:13, 30:21, 30:25, 38:4
**attaches** [1] - 17:9
**attempt** [4] - 8:9, 10:18, 15:14, 29:16
**attorney** [6] - 5:23, 5:24, 16:23, 17:9, 17:15, 20:25
**attorney/client** [1] - 30:1
**attorneys** [2] - 44:1, 44:7
**authorities** [4] - 7:22, 10:6, 10:8, 40:7
**available** [5] - 8:14, 9:7, 21:20, 36:15, 37:4
**Avenue** [4] - 1:21, 2:11, 2:15, 14:10
**avoid** [1] - 8:7
**aware** [7] - 6:8, 12:6, 14:7, 14:18, 18:18, 18:24, 19:13

**B**

**BAAN** [2] - 2:14, 48:9
**BAAN-PROULX** [2] - 2:14, 48:9
**BAC** [5] - 2:6, 39:16, 40:6, 41:8, 45:15
**background** [1] - 14:21
**ball** [1] - 29:23
**Bank** [4] - 39:16, 40:6, 41:8, 45:16
**bank** [9] - 12:18, 12:24, 39:16, 39:23, 40:3, 40:6,

40:13, 40:16, 40:22
**BANK** [1] - 2:6
**Baquero** [2] - 14:9, 25:20
**bar** [3] - 4:6, 4:10, 4:17
**bare** [1] - 44:19
**based** [9] - 17:11, 19:3, 20:1, 27:20, 30:17, 31:16, 31:21, 39:1, 39:6
**basic** [1] - 17:10
**basis** [9] - 19:22, 20:4, 35:3, 35:18, 39:8, 40:10, 40:11, 40:17, 43:12
**become** [1] - 12:6
**BEFORE** [1] - 1:10
**begin** [2] - 13:14, 18:10
**behalf** [8] - 3:13, 13:6, 13:8, 16:8, 39:19, 42:8, 46:19, 47:3
**Bermuda** [3] - 46:21, 47:2, 47:11
**better** [1] - 37:8
**between** [2] - 32:7, 41:1
**beyond** [1] - 35:3
**big** [3] - 5:22, 40:5, 44:20
**biggest** [1] - 44:3
**billions** [1] - 19:1
**Birmingham** [1] - 36:19
**Biscayne** [1] - 2:7
**block** [1] - 8:13
**BOIES** [46] - 1:13, 3:7, 3:24, 4:15, 4:25, 6:2, 6:22, 7:6, 8:17, 8:23, 9:14, 10:7, 11:2, 11:23, 12:8, 12:16, 13:16, 22:15, 22:24, 23:14, 24:1, 24:4, 24:21, 25:3, 25:7, 26:7, 26:12, 27:14, 27:17, 32:1, 32:4, 32:19, 33:19, 34:1, 36:18, 36:23, 37:1, 37:10, 37:19, 38:8, 38:20, 44:5, 44:10, 45:20, 46:10, 47:15
**Boies** [16] - 1:15, 3:7, 4:22, 13:15, 16:17, 29:13, 29:19, 31:23, 38:18, 39:7, 41:1, 42:24, 43:5, 43:8, 43:13, 43:23
**bottom** [1] - 41:8
**Boulevard** [1] - 2:7
**bribed** [1] - 28:2
**bribes** [2] - 44:18, 44:21
**Brickell** [3] - 1:21, 2:11, 14:10
**brief** [5] - 3:25, 24:9, 38:9, 38:11, 40:24
**broad** [1] - 35:7
**broader** [1] - 46:10
**brought** [3] - 20:20, 22:1, 27:19
**building** [1] - 40:5
**burden** [1] - 38:23
**burdened** [1] - 24:21

**business** [5] - 24:3, 35:21, 36:9, 40:9, 47:7
**BY** [1] - 2:14

## C

**calendars** [1] - 36:17
**caption** [1] - 41:9
**CARPINELLO** [1] - 1:14
**Carpinello** [3] - 3:9, 28:4, 33:2
**Carpinello's** [2] - 13:17, 15:1
**case** [19] - 12:3, 16:16, 20:1, 20:2, 22:16, 26:8, 28:6, 31:13, 32:25, 33:1, 35:14, 37:17, 39:18, 40:23, 41:20, 42:2, 42:23, 44:12
**CASE** [1] - 1:2
**Case** [1] - 3:4
**cases** [7] - 15:16, 19:6, 19:9, 22:12, 35:12, 44:13, 44:16
**catch** [1] - 14:22
**certain** [4] - 6:5, 12:17, 13:24, 39:19
**certainly** [7] - 15:23, 19:22, 32:4, 38:17, 40:9, 42:15, 47:9
**certify** [1] - 48:3
**chance** [5] - 10:2, 43:21, 45:6, 47:4, 47:11
**chartered** [1] - 40:3
**chief** [1] - 24:14
**Circuit** [1] - 19:9
**circumstances** [1] - 35:24
**circumvent** [1] - 18:9
**cite** [2] - 16:16, 19:6
**cited** [1] - 20:2
**cites** [1] - 15:16
**civil** [6] - 22:21, 26:5, 31:13, 33:1, 44:12, 44:15
**Civil** [3] - 14:4, 35:12, 42:20
**claim** [1] - 6:14
**claims** [1] - 18:25
**clarification** [1] - 45:23
**clear** [3] - 16:23, 19:3, 26:12
**clearly** [2] - 14:17, 41:1
**client** [4] - 32:9, 39:23, 39:24, 40:16
**client's** [3] - 17:20, 18:1, 41:20
**clients** [5] - 15:21, 16:3, 30:11, 44:24, 46:18
**close** [3] - 24:3, 36:9, 47:7
**colleagues** [1] - 24:14
**coming** [3] - 7:21, 10:22, 21:9
**communicating** [3] - 17:6,

17:23, 20:7
**communications** [2] - 17:12, 31:21
**companies** [1] - 44:20
**company** [1] - 33:17
**complaint** [12] - 13:23, 18:25, 20:22, 28:5, 30:24, 31:1, 33:14, 35:25, 36:2, 38:25, 42:10, 44:19
**COMPLETED** [1] - 48:9
**complicated** [1] - 18:25
**complies** [1] - 29:7
**computer** [2] - 19:5, 30:24
**concede** [1] - 24:24
**concern** [2] - 40:16, 44:3
**concerned** [2] - 15:14, 42:17
**concerns** [1] - 43:23
**concluded** [1] - 47:25
**concluding** [1] - 39:12
**Condominium** [1] - 14:10
**conduct** [1] - 9:21
**conference** [1] - 4:17
**confident** [1] - 43:15
**confirm** [2] - 17:5, 45:23
**confirmed** [2] - 17:4, 20:25
**confronted** [1] - 33:1
**confused** [2] - 5:18, 6:1
**conjure** [1] - 21:3
**connection** [1] - 40:24
**connections** [1] - 19:2
**consent** [1] - 7:16
**conspiracy** [1] - 33:4
**conspirators** [1] - 7:7
**contact** [1] - 24:6
**contacted** [1] - 11:8
**contempt** [2] - 12:10, 43:3
**contend** [2] - 20:6, 30:16
**context** [3] - 6:3, 13:4, 46:5
**continue** [1] - 36:3
**Convention** [2] - 13:20, 14:1
**conversation** [1] - 28:21
**conversations** [1] - 28:19
**cooperate** [1] - 7:14
**copied** [2] - 25:22, 26:2, 27:9
**copy** [11] - 9:7, 16:15, 17:1, 18:12, 25:16, 25:23, 25:24, 27:6, 28:11, 28:12, 33:11
**copying** [7] - 18:10, 25:15, 26:5, 26:14, 26:21, 28:10, 35:4
**Coral** [1] - 40:4
**corporate** [4] - 13:19, 38:18, 38:19, 38:20
**corporations** [1] - 13:24
**correct** [5] - 16:4, 16:5, 18:17, 33:18

**counsel** [17] - 4:10, 4:18, 4:22, 6:19, 15:2, 17:6, 17:12, 17:23, 20:8, 20:16, 20:23, 21:10, 23:10, 23:11, 32:8, 45:3, 47:5
**Counsel** [6] - 3:6, 4:2, 13:10, 28:17, 44:23, 45:9
**counsel's** [1] - 21:7
**count** [1] - 35:25
**countries** [2] - 23:17, 31:22
**country** [4] - 7:18, 22:17, 24:23, 43:19
**couple** [3] - 6:3, 13:4, 20:16
**course** [11] - 5:21, 18:6, 21:11, 22:4, 22:14, 34:11, 34:19, 40:8, 40:19, 44:7
**Court** [47] - 2:15, 4:13, 6:4, 6:8, 7:15, 7:25, 8:5, 8:19, 8:24, 9:13, 9:18, 9:20, 10:22, 11:2, 11:17, 12:25, 14:18, 16:13, 18:9, 18:18, 19:13, 19:20, 19:25, 20:4, 20:10, 20:12, 22:19, 24:6, 24:21, 25:11, 25:24, 26:9, 26:13, 27:8, 28:11, 29:12, 29:14, 32:22, 33:1, 33:8, 37:25, 38:1, 38:9, 39:2, 43:21, 47:18
**COURT** [91] - 1:1, 1:11, 3:10, 3:16, 3:22, 4:2, 4:10, 4:14, 4:16, 4:22, 5:3, 5:17, 5:21, 6:18, 7:5, 8:15, 8:21, 9:9, 10:5, 11:1, 11:19, 12:2, 12:12, 13:2, 13:7, 13:13, 15:2, 15:7, 15:9, 15:19, 16:2, 16:6, 16:11, 18:14, 20:14, 21:17, 21:20, 22:6, 22:8, 22:22, 23:10, 23:25, 24:2, 24:9, 24:24, 25:6, 26:3, 26:8, 27:11, 27:15, 28:17, 28:24, 29:5, 29:18, 31:23, 32:2, 32:17, 33:13, 33:23, 34:17, 36:13, 36:21, 36:24, 37:4, 37:9, 37:11, 37:21, 37:23, 38:6, 39:11, 41:7, 41:10, 41:14, 41:16, 41:21, 42:3, 42:5, 42:11, 43:23, 44:9, 44:23, 45:9, 45:13, 45:21, 46:4, 46:12, 46:14, 46:24, 47:6, 47:10, 47:20
**court** [14] - 3:2, 8:1, 8:25, 9:5, 12:11, 13:21, 14:15, 18:5, 23:4, 34:6, 34:14, 36:18, 40:10, 47:3
**Court's** [13] - 3:24, 4:6, 6:9, 6:16, 8:6, 8:23, 14:7, 16:14, 16:24, 22:11, 23:9, 26:20, 28:14
**courtesy** [1] - 46:20
**courtroom** [2] - 5:22, 27:20

**COURTROOM** [1] - 3:3
**courts** [1] - 44:15
**criminal** [3] - 13:25, 20:25, 35:9
**critical** [3] - 10:4, 10:18, 34:9
**custodian** [2] - 38:9, 38:11
**custodians** [1] - 38:19

# D

**danger** [4] - 9:22, 10:3, 28:6, 44:22
**Daniel** [1] - 3:14
**DANIEL** [1] - 1:21
**DARRIN** [1] - 1:10
**DATE** [1] - 48:9
**date** [1] - 32:3
**David** [1] - 3:7
**DAVID** [1] - 1:13
**Davis** [2] - 3:9, 24:15
**DAVIS** [1] - 1:15
**Dayme** [1] - 3:12
**DAYME** [1] - 1:20
**dayme.sanchez@hklaw. com** [1] - 1:23
**days** [6] - 10:16, 19:10, 36:8, 37:6, 38:1
**dboies@bsfllp.com** [1] - 1:17
**deadline** [1] - 18:19
**deal** [3] - 34:2, 43:15, 47:19
**decision** [2] - 46:7, 47:23
**declaration** [9] - 13:17, 17:8, 17:9, 30:14, 30:19, 30:22, 31:16, 36:2
**declarations** [6] - 19:5, 30:5, 30:21, 38:4, 39:1, 39:3
**dedicated** [1] - 24:10
**DEFENDANT** [2] - 2:1, 2:6
**defendant** [3] - 1:7, 3:20, 23:10
**defendant's** [1] - 33:22
**defendants** [77] - 3:13, 6:6, 9:10, 9:16, 10:20, 10:23, 10:24, 11:4, 11:6, 11:7, 11:13, 11:18, 11:20, 11:21, 11:22, 12:1, 12:3, 12:17, 12:20, 12:22, 12:23, 13:14, 13:19, 13:22, 14:22, 14:25, 16:4, 16:9, 17:1, 18:5, 18:12, 18:20, 19:1, 19:23, 19:24, 19:25, 22:17, 22:20, 23:6, 25:9, 25:12, 25:13, 26:24, 27:12, 27:16, 29:2, 29:22, 31:23, 32:7, 32:8, 33:9, 33:11, 33:21, 34:14, 34:16, 35:17, 35:19, 35:20, 38:12, 38:18, 38:19, 38:21, 39:13, 39:16, 39:19, 41:2, 41:4,

41:21, 42:10, 42:18, 43:6, 43:8, 43:14
**DEFENDANTS** [1] - 1:20
**defense** [5] - 20:25, 36:4, 36:7, 36:13, 42:16
**defenses** [3] - 42:13, 42:14
**defer** [2] - 4:12, 13:10
**defined** [1] - 42:10
**defining** [1] - 19:24
**Delete** [1] - 28:5
**delete** [1] - 32:15
**deleted** [1] - 30:11
**deleting** [1] - 28:20
**delivered** [4] - 5:8, 6:21, 34:20, 35:1
**delivering** [1] - 20:18
**Dell** [2] - 20:1, 20:2
**demand** [1] - 21:2
**demonstrate** [1] - 6:24
**denial** [1] - 16:14
**denied** [3] - 12:25, 19:16, 20:4
**deposition** [4] - 8:22, 8:25, 9:1, 38:11
**depositions** [2] - 30:19, 38:10
**DEPUTY** [1] - 3:3
**describe** [3] - 27:1, 27:22, 28:1
**described** [1] - 18:8
**destroy** [2] - 6:6, 22:23
**destroyed** [11] - 8:4, 9:22, 11:16, 18:7, 22:25, 27:12, 27:16, 28:3, 33:9, 38:14, 44:14
**destroying** [9] - 7:20, 8:1, 22:20, 26:25, 32:24, 35:20, 40:16, 43:6, 43:18
**destruction** [7] - 10:19, 11:10, 28:7, 28:16, 32:21, 33:3, 44:8
**detailed** [1] - 36:1
**detained** [3] - 17:17, 17:25, 20:9
**determinations** [1] - 35:13
**develop** [1] - 34:8
**devices** [2] - 27:24, 34:4
**die** [1] - 24:16
**different** [2] - 21:18, 32:25
**differentiate** [1] - 41:1
**difficult** [3] - 14:22, 37:24, 38:2
**directing** [2] - 6:5, 9:5
**directly** [1] - 17:16
**discover** [2] - 39:5, 39:7
**discovered** [2] - 23:21, 27:25
**discovery** [17] - 9:11, 15:15, 18:9, 19:2, 22:14, 23:4, 26:11, 26:14, 29:17,

31:13, 34:6, 34:11, 34:12, 39:5, 40:20, 43:3, 43:17
**discuss** [1] - 10:21
**discussed** [1] - 39:10
**dispute** [1] - 6:18
**disputing** [1] - 10:5
**distance** [1] - 5:22
**distinguish** [1] - 32:6
**distinguishable** [1] - 20:3
**distinguishing** [1] - 20:1
**DISTRICT** [3] - 1:1, 1:1, 1:11
**Docket** [4] - 18:15, 20:17, 21:22, 28:18
**document** [14] - 12:21, 25:10, 29:3, 29:8, 29:9, 29:11, 29:21, 32:21, 33:2, 42:19, 43:16, 44:12, 44:22, 46:11
**documents** [42] - 6:7, 7:20, 8:1, 10:25, 11:10, 11:16, 12:9, 16:15, 17:1, 18:12, 19:20, 20:9, 22:16, 22:20, 25:16, 25:18, 26:21, 26:25, 27:3, 27:24, 28:9, 30:11, 30:25, 31:6, 31:7, 32:24, 33:10, 34:15, 38:10, 38:14, 39:6, 40:2, 40:8, 40:12, 40:20, 40:21, 43:6, 44:8, 44:14, 44:16
**DOE** [2] - 2:11
**dollars** [1] - 19:1
**Don** [2] - 3:21, 5:16
**don@markmigdal.com** [1] - 2:4
**DONALD** [1] - 2:1
**done** [7] - 4:23, 6:14, 11:7, 19:6, 19:20, 26:16, 26:17
**door** [5] - 14:11, 14:12, 14:20, 14:21
**down** [5] - 5:5, 11:4, 24:5, 37:14, 42:25
**downtown** [1] - 40:4
**Dude** [1] - 32:15
**due** [5] - 18:22, 19:7, 21:11, 30:18, 36:14
**during** [1] - 26:14

# E

**effort** [1] - 24:6
**either** [6] - 13:19, 14:2, 25:20, 37:1, 37:6, 39:8
**electronic** [5] - 6:7, 10:1, 25:17, 27:24, 34:4
**emergencies** [1] - 24:13
**emergency** [18] - 5:6, 5:7, 18:15, 20:17, 22:10, 24:2, 24:11, 24:15, 24:17, 24:18, 24:20, 31:16, 31:20, 34:18,

42:21, 43:12
**ENCINOSA** [23] - 1:20, 3:11, 3:17, 13:5, 13:11, 15:3, 15:8, 15:10, 15:23, 16:5, 16:7, 16:12, 18:17, 28:23, 28:25, 29:7, 29:19, 36:11, 37:2, 37:6, 37:22, 37:24, 38:22
**Encinosa** [1] - 3:12
**end** [2] - 15:14, 29:16
**Energy** [1] - 47:11
**enforcement** [2] - 18:16, 22:10
**engaged** [2] - 16:9, 44:20
**enter** [6] - 19:17, 19:19, 19:22, 26:20, 45:14, 45:18
**entered** [6] - 6:5, 15:24, 15:25, 25:11, 26:22
**entering** [2] - 15:21, 45:8
**entire** [1] - 45:7
**entirety** [1] - 19:17
**entities** [1] - 42:6
**entitled** [1] - 48:4
**entity** [3] - 33:18, 40:13, 41:7
**Entry** [4] - 18:15, 20:17, 21:22, 28:18
**entry** [1] - 39:14
**ESQ** [11] - 1:13, 1:14, 1:14, 1:15, 1:20, 1:20, 2:1, 2:1, 2:6, 2:6, 2:10
**essentially** [2] - 19:15, 20:8
**estimate** [1] - 37:21
**et** [1] - 3:4
**ET** [1] - 1:6
**Etan** [3] - 3:18, 13:3, 45:22
**ETAN** [1] - 2:1
**etan@markmigdal.com** [1] - 2:4
**evade** [1] - 14:7
**evading** [1] - 14:17
**event** [2] - 5:3, 43:16
**Evidence** [1] - 35:12
**evidence** [41] - 7:24, 8:3, 9:20, 9:22, 9:24, 9:25, 10:4, 10:17, 10:19, 10:21, 12:5, 15:20, 15:22, 23:5, 23:15, 23:18, 26:4, 27:12, 27:15, 27:16, 28:3, 28:7, 28:16, 32:16, 32:19, 33:12, 33:19, 33:21, 34:8, 35:5, 40:17, 41:3, 41:11, 43:9, 43:18, 43:19, 44:20, 45:1, 45:14, 46:1
**evidentiary** [10] - 5:4, 6:24, 15:6, 15:11, 15:18, 21:12, 22:4, 35:7, 36:15, 37:15
**ex** [7] - 4:5, 4:12, 11:24, 12:13, 19:2, 30:5, 43:12
**exactly** [1] - 11:16

**examine** [3] - 8:18, 8:21
**example** [5] - 14:7, 14:19, 27:23, 30:21, 32:5
**except** [1] - 14:1
**Exhibit** [2] - 28:4, 28:18
**exist** [1] - 10:25
**expanded** [1] - 40:22
**expedited** [1] - 23:3
**experts** [1] - 19:5
**explaining** [1] - 19:9
**Express** [3] - 20:18, 20:19, 20:20
**extend** [4] - 12:23, 41:3, 43:12, 47:4
**extended** [2] - 44:1, 46:22
**extending** [1] - 39:12
**extension** [3] - 18:19, 25:8, 30:3
**extent** [3] - 30:16, 34:2, 45:24
**EXTRACTED** [1] - 4:20
**extraordinary** [5] - 16:25, 17:2, 26:6, 35:6, 43:12

## F

**faced** [1] - 7:19
**facie** [1] - 15:17
**fact** [7] - 17:3, 20:7, 27:18, 31:16, 33:3, 34:23, 35:9
**facts** [5] - 16:17, 16:23, 17:13, 39:7, 42:21
**factual** [1] - 20:6
**factually** [1] - 15:17
**fail** [1] - 12:9
**fair** [1] - 19:12
**falling** [1] - 44:24
**familiar** [1] - 5:11
**far** [1] - 14:6
**fast** [1] - 34:11
**FCRR** [2] - 2:14, 48:9
**FDIC** [1] - 40:7
**federal** [3] - 42:23, 43:14, 43:20
**Federal** [5] - 14:4, 20:18, 20:19, 20:20, 42:20
**FedEx** [4] - 5:8, 6:21, 34:20, 35:1
**few** [4] - 10:16, 38:1, 38:17, 46:3
**Fifth** [1] - 19:9
**fight** [1] - 27:6
**figure** [1] - 5:10
**file** [5] - 28:5, 32:15, 36:5, 36:9
**filed** [14] - 4:5, 4:9, 4:12, 14:19, 15:4, 18:18, 19:7, 20:10, 24:12, 24:19, 30:3, 31:11, 31:17
**files** [3] - 10:1, 25:17, 34:4

**filings** [2] - 16:22, 17:4
**fine** [4] - 37:6, 43:24, 44:25, 45:17
**firm** [2] - 3:19, 4:8
**first** [10] - 4:11, 5:6, 5:9, 8:17, 9:16, 13:2, 13:7, 16:20, 23:22, 29:12
**five** [1] - 25:18
**FL** [6] - 1:16, 1:22, 2:3, 2:8, 2:12, 2:16
**Flexner** [1] - 1:15
**Florida** [4] - 39:16, 40:6, 41:8, 45:15
**FLORIDA** [2] - 1:1, 2:6
**focus** [1] - 25:4
**follow** [1] - 29:24
**following** [2] - 3:2, 34:18
**FOR** [5] - 1:13, 1:20, 2:1, 2:6, 2:10
**forced** [1] - 22:2
**foregoing** [1] - 48:3
**forensic** [2] - 19:5, 30:8
**formal** [1] - 13:23
**former** [2] - 24:14, 31:1
**forth** [1] - 13:16
**forward** [2] - 35:14, 43:17
**founded** [1] - 32:11
**fraught** [1] - 44:21
**French** [1] - 17:10
**Friday** [5] - 23:25, 24:1, 24:3, 34:23, 47:7
**Friday's** [1] - 18:19
**frozen** [1] - 26:1
**fulfill** [1] - 5:17
**full** [2] - 34:2, 45:23

## G

**Gables** [1] - 40:4
**GAYLES** [1] - 1:10
**gcarpinello@bsfllp.com** [1] - 1:18
**general** [1] - 29:4
**Geneva** [1] - 7:2
**Genova** [1] - 38:17
**George** [1] - 3:8
**GEORGE** [1] - 1:14
**given** [1] - 21:1
**GIZELLA** [2] - 2:14, 48:9
**gizella_baan** [1] - 2:17
**gizella_baan-proulx@flsd.uscourts.gov** [1] - 2:17
**glean** [2] - 31:5, 34:5
**Godfrey** [1] - 41:25
**GOLDBERG** [1] - 2:6
**Google** [1] - 17:10
**government** [2] - 22:21, 22:23, 22:25
**grant** [3] - 20:13, 35:18, 46:9

**granted** [3] - 35:4, 39:13, 46:19
**great** [4] - 24:14, 29:6, 34:2, 37:10
**greater** [1] - 10:3
**Greenberg** [2] - 41:16, 42:2
**GREENBERG** [1] - 41:18
**grossly** [1] - 21:16
**group** [4] - 19:24, 29:22, 33:9, 33:11
**grouped** [15] - 10:24, 11:4, 11:12, 11:18, 12:1, 12:17, 12:20, 12:22, 16:4, 25:9, 25:12, 25:13, 32:8, 43:8, 43:13
**groups** [1] - 32:7
**guess** [12] - 5:9, 13:7, 15:19, 16:21, 17:7, 17:19, 22:8, 22:9, 33:24, 44:3, 44:23, 44:24

## H

**hac** [1] - 42:1
**Hague** [2] - 13:20, 14:1
**half** [1] - 37:19
**hammer** [1] - 27:24
**handed** [1] - 31:1
**handle** [1] - 4:13
**handled** [1] - 36:20
**hands** [5] - 10:6, 10:7, 10:10, 10:13, 23:5
**hate** [1] - 46:13
**HAYDEN** [1] - 2:1
**Hayden** [4] - 2:2, 3:19, 3:21, 5:16
**hear** [10] - 8:24, 9:20, 13:7, 16:20, 29:15, 29:16, 43:21, 46:5, 46:6, 46:7
**heard** [4] - 14:20, 30:6, 41:1, 46:2
**HEARING** [1] - 1:9
**hearing** [43] - 4:18, 5:4, 5:5, 6:12, 6:24, 11:5, 11:8, 11:13, 13:1, 15:5, 15:6, 15:11, 15:18, 18:21, 19:16, 21:8, 21:11, 21:12, 21:25, 22:4, 22:12, 29:13, 30:8, 30:20, 31:10, 31:24, 36:3, 36:6, 36:15, 37:15, 37:16, 38:13, 39:5, 39:25, 40:11, 40:25, 41:2, 41:4, 43:22, 45:25, 47:20, 47:24
**hearings** [1] - 19:2
**hears** [1] - 29:15
**heat** [1] - 32:24
**held** [2] - 3:2, 39:19
**helpful** [1] - 29:9
**HELSINGE** [2] - 1:20, 1:21
**Helsinge** [14] - 3:13, 3:14,

**7:8, 7:9, 7:10, 7:16, 8:20, 9:2, 9:5, 10:14, 25:19, 32:11, 32:13, 33:20**
**Helsinge's** [1] - 9:17
**hereby** [1] - 48:3
**history** [9] - 7:20, 7:25, 22:18, 22:19, 26:25, 27:2, 32:24, 33:10, 43:6
**hold** [2] - 16:2, 47:10
**Holland** [1] - 1:21, 3:12
**honestly** [1] - 40:14
**Honor** [68] - 3:7, 3:11, 3:18, 3:24, 4:4, 4:11, 4:15, 4:25, 5:1, 6:2, 7:7, 9:14, 13:3, 13:12, 13:16, 15:3, 16:1, 16:5, 16:12, 18:17, 18:24, 19:15, 22:4, 22:7, 22:15, 23:14, 24:4, 25:3, 26:7, 26:12, 27:1, 27:14, 27:18, 28:23, 28:25, 29:8, 34:1, 36:11, 36:18, 37:2, 37:8, 37:10, 37:20, 37:22, 38:8, 38:16, 38:22, 39:15, 40:19, 41:18, 41:22, 42:4, 42:8, 42:15, 42:17, 42:19, 42:25, 43:11, 43:15, 44:10, 45:10, 45:19, 45:20, 47:4, 47:9, 47:15
**HONORABLE** [1] - 1:10
**hope** [1] - 42:14
**hopefully** [2] - 38:6, 47:12
**host** [1] - 31:9
**hour** [1] - 39:11
**house** [3] - 8:8, 23:21
**Houston** [1] - 41:25
**Hubbard** [2] - 2:7, 39:15
**Hughes** [2] - 2:7, 39:15
**husband** [3] - 5:14, 14:20, 17:15

## I

**idea** [1] - 23:23
**identified** [1] - 25:18
**identify** [1] - 23:5
**ignore** [1] - 31:13
**immediate** [1] - 12:1
**immediately** [1] - 9:1
**importance** [1] - 34:9
**important** [3] - 8:2, 8:4, 25:4
**importantly** [1] - 16:21
**inaccurate** [2] - 23:13, 23:14
**Inc** [8] - 3:13, 41:19, 41:22, 42:4, 42:8, 42:22, 43:10, 45:15
**INC** [1] - 1:20
**incarcerated** [1] - 17:17
**incident** [2] - 17:3, 18:8

**include** [1] - 40:22
**includes** [3] - 14:25, 44:5, 44:6
**incredibly** [1] - 20:4
**indeed** [1] - 34:3
**indicated** [3] - 15:1, 21:22, 35:15
**indicates** [1] - 6:20
**indication** [1] - 37:17
**individual** [1] - 42:9
**individuals** [5] - 14:5, 14:15, 30:14, 30:15, 39:3
**inform** [1] - 38:1
**information** [10] - 10:18, 11:22, 26:11, 30:10, 31:4, 33:15, 33:25, 34:2, 35:22, 36:1
**informed** [4] - 7:3, 7:22, 8:19, 27:23
**injunction** [23] - 5:5, 11:5, 12:19, 12:24, 13:1, 14:8, 18:20, 21:8, 22:13, 29:15, 30:7, 31:24, 35:23, 36:4, 36:16, 37:15, 38:13, 38:24, 39:8, 40:1, 40:11, 43:22, 46:11
**injunctive** [1] - 39:23
**innocent** [1] - 8:9
**inquire** [3] - 6:12, 38:8, 47:18
**inquiries** [1] - 22:21
**inside** [1] - 14:13
**inspect** [1] - 27:6
**inspection** [3] - 26:14, 26:21, 28:10
**instances** [2] - 28:1, 32:21
**intend** [1] - 39:4
**intent** [1] - 43:18
**intention** [3] - 39:20, 40:25, 42:15
**interesting** [1] - 42:24
**interim** [1] - 38:14
**interrupt** [1] - 13:5
**interrupting** [1] - 4:5
**intervention** [1] - 9:13
**interview** [1] - 27:20
**interviewed** [2] - 27:18, 33:6
**introductions** [1] - 5:25
**investigated** [1] - 28:3
**investigating** [3] - 18:2, 19:4, 30:23
**investigation** [3] - 7:23, 19:6, 33:24
**investigator** [4] - 19:4, 30:8, 30:22, 31:2
**iron** [1] - 47:12
**ISRAEL** [1] - 1:20
**Israel** [1] - 3:11
**israel.encinosa@hklaw.**

**com** [1] - 1:23
**issuance** [1] - 34:18
**issue** [12] - 5:8, 24:24, 28:15, 29:13, 29:14, 32:22, 34:13, 39:12, 39:18, 43:21, 45:7
**issued** [3] - 34:21, 34:22, 34:25
**issues** [5] - 27:8, 30:2, 31:7, 31:9, 43:16
**items** [1] - 35:7

**J**

**jail** [1] - 17:19
**JEFFREY** [1] - 2:6
**Jennifer** [1] - 4:8
**JENNIFER** [1] - 2:10
**jennifer.altman@ pillsburylaw.com** [1] - 2:13
**JOHN** [2] - 2:1, 2:11
**John** [1] - 3:20
**JUDGE** [1] - 1:11
**Judge** [2] - 41:24, 42:12
**judge** [1] - 45:3
**judges** [1] - 24:14
**jurisdiction** [4] - 3:17, 6:17, 21:4, 23:9
**justification** [1] - 8:13
**justify** [1] - 42:21

**K**

**keep** [1] - 8:1
**keeps** [1] - 43:5
**KELSO** [9] - 41:22, 42:4, 42:7, 42:12, 45:3, 46:13, 46:15, 47:1, 47:9
**Kelso** [1] - 41:24
**key** [1] - 7:6
**kind** [3] - 8:12, 25:14, 26:20
**Knight** [2] - 1:21, 3:12
**knowing** [2] - 6:15, 10:2
**knowledge** [5] - 6:23, 6:25, 8:6, 23:22, 33:7
**knows** [2] - 6:4, 32:24

**L**

**lack** [1] - 43:7
**language** [2] - 45:18
**laptop** [2] - 30:24, 31:2
**large** [2] - 14:25, 17:2
**late** [3] - 24:8, 34:21, 39:14
**law** [4] - 3:19, 4:8, 5:16, 13:25
**lawsuit** [1] - 40:9
**lawyer** [2] - 5:19, 41:24
**lawyers** [3] - 23:22, 43:24, 45:17
**lead** [1] - 18:8

**learned** [2] - 24:22, 34:25
**least** [4] - 10:12, 30:18, 39:3, 43:21
**leave** [1] - 36:16
**leaving** [1] - 23:21
**likely** [1] - 37:12
**Limited** [2] - 46:21, 47:2
**limited** [5] - 3:13, 9:1, 11:21, 25:4, 35:16
**lines** [1] - 15:24
**literally** [1] - 18:13
**LITIGATION** [2] - 1:4, 1:14
**Litigation** [1] - 3:3
**litigation** [2] - 12:7, 26:5
**live** [1] - 37:9
**LLC** [2] - 1:6, 3:4
**LLP** [2] - 1:15, 1:21
**located** [1] - 38:15
**locations** [1] - 25:19
**London** [1] - 23:16
**look** [4] - 28:13, 36:17, 47:21, 47:22
**looked** [1] - 47:21
**looking** [4] - 5:22, 31:5, 31:8, 37:23
**looks** [3] - 5:11, 28:19, 36:24
**LTD** [1] - 1:21
**Ltd** [1] - 3:4
**LUKOIL** [1] - 1:6
**Lukoil** [1] - 3:4
**Lutz** [3] - 3:14, 14:9, 25:19
**LUTZ** [1] - 1:21

**M**

**Maarraoui** [2] - 41:19, 41:23
**main** [1] - 29:20
**maintained** [1] - 39:19
**maintaining** [1] - 40:8
**major** [1] - 34:3
**Maldonado** [9] - 3:20, 5:14, 6:11, 6:20, 8:18, 16:22, 17:5, 21:13, 23:21
**managed** [1] - 14:6
**March** [6] - 1:5, 7:2, 11:11, 34:23, 36:8, 36:14
**Maria** [1] - 14:10
**MARK** [13] - 2:1, 3:18, 5:13, 5:20, 13:3, 13:8, 20:15, 21:19, 21:24, 22:7, 37:8, 38:16, 45:22
**Mark** [5] - 2:2, 3:18, 3:19, 13:3, 45:22
**marshals** [1] - 26:5
**MATERIAL** [1] - 2:10
**matter** [1] - 48:5
**matters** [1] - 19:4
**mean** [18] - 8:21, 9:10,

11:14, 12:5, 12:6, 19:17, 19:24, 26:3, 26:6, 26:8, 32:1, 33:15, 33:24, 34:1, 44:13, 45:1, 46:5, 46:8
**meaning** [1] - 35:4
**meet** [1] - 39:9
**meeting** [2] - 38:25, 39:22
**mention** [1] - 18:24
**mentioned** [1] - 16:10
**merit** [2] - 43:7
**met** [1] - 27:19
**MIAMI** [1] - 1:2
**Miami** [9] - 1:16, 1:22, 2:3, 2:8, 2:12, 2:15, 2:16, 14:9, 25:19
**Michael** [1] - 41:24
**Migdal** [2] - 2:2, 3:19
**Mile** [1] - 40:4
**mind** [1] - 46:16
**minute** [3] - 5:18, 5:23, 15:7
**Miracle** [1] - 40:4
**mispronouncing** [1] - 41:20
**misstep** [1] - 43:2
**mixed** [1] - 46:24
**modified** [2] - 39:12, 45:16
**modify** [3] - 35:19, 43:25, 46:6
**moment** [4] - 4:23, 5:14, 16:2, 23:10
**Monday** [7] - 10:22, 25:7, 25:8, 32:1, 32:2, 37:13, 45:4
**month** [1] - 14:3
**months** [3] - 13:21, 19:4, 30:23
**moot** [2] - 21:7, 45:7
**Morillo** [43] - 7:3, 7:5, 7:6, 7:25, 8:20, 9:2, 9:21, 10:24, 11:3, 11:12, 11:18, 12:1, 12:16, 12:20, 12:22, 14:8, 16:4, 16:18, 19:24, 25:9, 25:12, 25:13, 25:19, 27:22, 28:2, 28:19, 29:2, 30:10, 32:8, 32:9, 32:10, 32:12, 32:14, 33:20, 34:14, 34:16, 35:17, 42:9, 42:22, 43:8, 43:13, 45:15
**Morillo's** [3] - 31:1, 31:2, 32:12
**Morillo-grouped** [12] - 10:24, 11:12, 11:18, 12:1, 12:20, 12:22, 16:4, 25:9, 25:12, 25:13, 32:8, 43:8
**morning** [5] - 7:2, 24:1, 28:20, 34:25, 35:1
**Morton's** [1] - 40:5
**most** [3] - 11:25, 12:2, 16:17
**motion** [54] - 4:5, 4:12, 5:7, 11:4, 11:20, 12:13, 13:18,

14:15, 15:4, 15:5, 15:7, 15:16, 16:12, 16:17, 16:20, 16:21, 17:4, 17:13, 18:12, 18:13, 18:14, 18:15, 18:18, 18:20, 19:6, 19:16, 19:23, 20:17, 20:24, 21:14, 21:18, 21:21, 22:9, 22:10, 24:2, 24:18, 25:25, 29:15, 30:3, 30:5, 30:6, 31:10, 33:14, 34:18, 34:24, 43:4, 43:25, 45:24, 47:15, 47:19
**MOTION** [1] - 1:9
**motions** [4] - 24:11, 24:15, 31:11, 38:4
**moved** [3] - 22:16, 25:1, 32:2
**moving** [1] - 43:19
**MR** [95] - 3:7, 3:11, 3:17, 3:18, 3:24, 4:15, 4:25, 5:13, 5:20, 6:2, 6:22, 7:6, 8:17, 8:23, 9:14, 10:7, 11:2, 11:23, 12:8, 12:16, 13:3, 13:5, 13:8, 13:11, 13:16, 15:3, 15:8, 15:10, 15:23, 16:5, 16:7, 16:12, 18:17, 20:15, 21:19, 21:24, 22:7, 22:15, 22:24, 23:14, 24:1, 24:4, 24:21, 25:3, 25:7, 26:7, 26:12, 27:14, 27:17, 28:23, 28:25, 29:7, 29:19, 32:1, 32:4, 32:19, 33:19, 34:1, 36:11, 36:18, 36:23, 37:1, 37:2, 37:6, 37:8, 37:10, 37:19, 37:22, 37:24, 38:8, 38:16, 38:20, 38:22, 39:14, 41:8, 41:13, 41:15, 41:18, 41:22, 42:4, 42:7, 42:12, 44:5, 44:10, 45:3, 45:10, 45:19, 45:20, 45:22, 46:10, 46:13, 46:15, 47:1, 47:9, 47:15
**MS** [3] - 4:4, 4:11, 5:1
**multi** [1] - 35:25
**multi-count** [1] - 35:25
**must** [1] - 14:2

## N

**name** [5] - 4:8, 39:15, 40:5, 41:20, 41:24
**narrow** [1] - 11:24
**necessarily** [1] - 24:13
**Ned** [1] - 24:15
**need** [6] - 8:11, 12:5, 14:3, 36:9, 44:2, 47:20
**needs** [2] - 15:25, 40:22
**negotiate** [1] - 9:12
**new** [1] - 41:19
**next** [2] - 24:18, 38:17
**Nick** [1] - 39:15
**NICOLAS** [1] - 2:6
**nicolas.swedloff@**

hugheshubbard.com [1] - 2:9
**night** [2] - 24:3, 34:23
**NO** [1] - 1:2
**non** [1] - 43:13
**non-Morillo-grouped** [1] - 43:13
**none** [2] - 16:20, 30:13
**nonparty** [1] - 3:19
**normal** [8] - 18:9, 22:14, 22:15, 22:16, 26:10, 42:23, 43:4, 43:20
**normally** [3] - 22:12, 26:10, 29:22
**North** [1] - 2:15
**note** [2] - 28:4, 42:12
**nothing** [5] - 6:14, 18:7, 39:22, 40:15, 40:17
**notice** [2] - 13:22, 40:9
**noticed** [1] - 21:12
**Number** [1] - 3:4
**number** [5] - 14:6, 14:25, 19:10, 33:4

## O

**o'clock** [1] - 20:20
**object** [3] - 15:12, 32:4, 38:22
**objection** [4] - 4:14, 4:15, 15:20, 31:25
**objections** [3] - 3:15, 9:6, 30:1
**obligated** [1] - 21:14
**obligation** [2] - 12:8, 12:9
**obligations** [1] - 40:20
**observations** [1] - 20:16
**observed** [1] - 42:19
**obtained** [1] - 30:23
**obviously** [7] - 5:6, 21:25, 34:18, 40:24, 42:12, 43:18, 45:12
**occurred** [2] - 20:22, 21:6
**odd** [1] - 47:1
**OF** [2] - 1:1, 4:20
**offense** [1] - 13:25
**office** [2] - 10:14, 25:20
**officials** [1] - 28:2
**once** [3] - 9:10, 12:6, 28:12
**one** [29] - 5:11, 6:10, 7:6, 7:7, 7:8, 7:15, 8:18, 9:14, 9:19, 10:8, 11:7, 17:20, 22:17, 22:18, 23:2, 24:13, 24:14, 26:10, 29:2, 29:20, 30:10, 30:22, 32:5, 33:13, 38:2, 39:16, 42:9, 45:16, 47:21
**ones** [1] - 11:25
**ongoing** [1] - 33:4
**open** [5] - 3:2, 14:12, 36:17,

36:24, 37:4
**opportunity** [4] - 15:13, 19:8, 19:12, 42:1
**opposed** [4] - 5:4, 26:17, 44:9, 44:24
**order** [43] - 6:5, 6:9, 7:16, 9:5, 10:25, 12:5, 12:11, 12:22, 12:23, 13:21, 14:3, 15:21, 15:23, 15:25, 18:5, 19:17, 19:19, 19:22, 21:15, 22:11, 25:2, 25:10, 25:21, 26:20, 27:5, 28:10, 34:6, 34:15, 34:19, 34:22, 34:25, 35:16, 35:19, 39:12, 40:10, 41:3, 41:14, 44:2, 44:12, 44:15, 45:1, 45:15
**ordered** [4] - 11:17, 18:6, 34:19
**ordering** [1] - 34:15
**orderly** [1] - 28:14
**orders** [1] - 26:13
**ordinarily** [2] - 29:24
**ordinary** [2] - 40:8, 40:19
**originally** [1] - 16:25
**originated** [1] - 33:21
**otherwise** [1] - 6:7
**outside** [4] - 4:17, 23:8, 42:23
**overbroad** [2] - 20:4, 21:16
**own** [3] - 17:3, 17:4, 26:10
**owns** [1] - 32:11

## P

**p.m** [2] - 34:24, 36:14
**package** [1] - 20:19
**page** [5] - 15:4, 15:16, 16:16, 18:11, 31:10
**pages** [1] - 35:25
**PAN** [1] - 1:6
**Pan** [1] - 3:4
**paper** [2] - 6:7, 34:4
**papers** [3] - 14:18, 24:5, 40:14
**part** [5] - 6:23, 7:24, 9:11, 28:21, 39:25
**parte** [7] - 4:5, 4:12, 11:24, 12:13, 19:2, 30:5, 43:12
**particular** [1] - 24:24
**particularly** [4] - 8:2, 10:15, 26:8, 44:17
**parties** [4] - 9:12, 35:24, 46:25, 47:6
**partner** [3] - 3:21, 5:16, 27:21
**partners** [1] - 3:8
**parts** [2] - 9:15, 34:3
**party** [5] - 9:17, 13:6, 19:10, 40:16, 40:22
**party's** [1] - 26:9

**past** [4] - 9:21, 22:21, 30:12, 44:15
**PDVSA** [4] - 1:4, 1:14, 3:3, 35:21
**pending** [2] - 21:14, 45:24
**people** [9] - 8:8, 14:16, 24:7, 28:10, 44:3, 44:5, 44:6, 44:16, 44:18
**perhaps** [5] - 3:25, 9:12, 35:9, 40:3, 44:1
**permission** [2] - 3:25, 4:7
**permit** [4] - 8:18, 22:14, 25:21, 38:9
**permits** [1] - 27:5
**permitted** [1] - 39:2
**person** [6] - 8:7, 14:11, 23:20, 23:21, 32:10, 32:23
**personal** [2] - 31:2, 33:7
**personally** [6] - 14:14, 14:22, 27:17, 27:19, 32:10, 33:6
**ph** [1] - 27:21
**phase** [1] - 26:14
**phone** [1] - 37:2
**phrased** [1] - 20:3
**PI** [4] - 39:25, 40:25, 41:2, 41:4
**pieces** [2] - 9:23, 9:24
**Pillsbury** [2] - 2:11, 4:9
**Pittman** [2] - 2:11, 4:9
**place** [2] - 20:20, 28:13, 35:12
**places** [1] - 23:18
**plaintiff** [10] - 1:4, 16:13, 17:14, 19:3, 20:23, 31:7, 31:18, 35:17, 45:17, 46:8
**PLAINTIFF** [1] - 1:13
**plaintiff's** [8] - 17:6, 17:12, 17:23, 20:8, 23:11, 33:21, 38:23, 47:5
**plaintiffs** [10] - 3:8, 18:10, 30:16, 31:3, 31:21, 33:15, 38:3, 42:20, 45:4, 46:21
**plan** [2] - 23:19, 23:23
**played** [1] - 8:20
**point** [11] - 10:21, 12:6, 21:7, 26:21, 29:4, 30:11, 34:12, 37:25, 42:25, 43:1, 45:22
**PORTION** [1] - 4:20
**portion** [1] - 47:24
**position** [1] - 46:17
**possession** [1] - 21:1
**possible** [1] - 36:23
**postponing** [1] - 11:8
**potential** [2] - 31:4, 39:1
**practice** [1] - 25:25
**Pravadi** [1] - 27:21
**precarious** [1] - 46:17
**predicate** [1] - 20:17

**predict** [2] - 37:24, 38:2
**predilections** [1] - 32:13
**prefer** [1] - 4:11
**preference** [1] - 22:2
**prejudice** [3] - 10:20, 28:8, 35:21
**prejudicial** [1] - 23:9
**preliminary** [20] - 5:5, 11:5, 12:19, 12:24, 13:1, 14:8, 18:20, 22:13, 29:15, 30:7, 31:24, 35:23, 36:4, 36:16, 37:15, 38:12, 38:24, 39:8, 40:11, 43:22
**prepare** [2] - 15:13, 19:8
**prepared** [4] - 11:13, 21:22, 24:5, 27:7
**presence** [1] - 4:17
**present** [1] - 13:9
**presented** [2] - 15:12, 20:5
**preservation** [7] - 12:13, 12:21, 15:20, 34:13, 42:19, 43:17, 44:12
**preserve** [19] - 3:17, 8:3, 9:24, 10:19, 12:8, 15:21, 25:17, 33:11, 34:15, 34:16, 40:1, 40:12, 40:20, 41:3, 41:11, 44:16, 45:1, 45:14, 46:1
**preserved** [7] - 10:21, 19:20, 25:18, 25:22, 26:2, 27:3, 29:20
**preserving** [3] - 10:25, 40:12, 40:21
**presumably** [5] - 22:23, 24:25, 36:6, 39:6, 39:11
**presume** [1] - 20:8
**pretty** [7] - 19:9, 26:6, 33:25, 34:22, 35:6, 36:1, 45:11
**prevent** [3] - 27:25, 28:15, 44:8
**prevents** [1] - 7:12
**previously** [3] - 27:12, 27:16, 39:13
**prima** [1] - 15:17
**primarily** [1] - 13:24
**primary** [1] - 22:9
**principals** [1] - 7:7
**private** [1] - 30:22
**privilege** [1] - 30:1
**privileged** [1] - 31:4
**pro** [1] - 42:1
**probable** [1] - 35:10
**problem** [1] - 5:21
**problems** [1] - 29:20
**Procedure** [4] - 14:4, 29:25, 35:12, 42:20
**procedure** [2] - 35:11
**proceed** [8] - 3:23, 4:2, 4:23, 21:11, 22:12, 22:14,

28:14, 31:14
**proceeding** [2] - 11:24, 43:3
**proceedings** [3] - 3:2, 16:19, 48:4
**process** [14] - 3:15, 13:23, 14:2, 14:3, 14:11, 14:19, 18:9, 19:7, 20:21, 26:11, 28:14, 29:17, 30:18, 31:13
**production** [2] - 38:10, 46:11
**Production** [1] - 29:25
**proffer** [2] - 27:11, 27:15
**prohibit** [1] - 35:20
**prohibition** [1] - 12:4
**proof** [1] - 44:14
**property** [1] - 26:10
**prosecution** [1] - 31:14
**prosecutor** [5] - 7:10, 7:14, 8:10, 8:13, 9:7, 17:7, 17:8, 17:10, 17:11, 17:16, 17:18, 17:24, 20:7, 20:11, 21:1, 21:2, 23:6, 23:7, 23:12, 23:15, 23:17, 31:17, 35:10
**prosecutors** [3] - 10:11, 10:13, 31:22
**protective** [1] - 21:15
**PROULX** [2] - 2:14, 48:9
proulx@flsd.uscourts.
gov [1] - 2:17
**provide** [1] - 30:9
**provided** [1] - 30:18
**provisions** [1] - 11:17
**public** [1] - 24:10
**purpose** [1] - 39:22
**pursue** [1] - 10:2
**pursuing** [1] - 23:18
**put** [11] - 6:3, 7:25, 11:13, 13:1, 13:4, 21:18, 25:23, 32:1, 32:20, 44:19, 45:15

# Q

**quickly** [2] - 34:22, 45:22
**quote** [1] - 28:5
**quoted** [1] - 24:14

# R

**raise** [2] - 3:14, 6:22
**raised** [1] - 42:25
**rather** [3] - 27:9, 43:3, 45:7
**reach** [1] - 44:2
**reached** [1] - 45:3
**read** [2] - 29:3, 29:5
**reading** [2] - 29:8, 40:14
**real** [1] - 19:8
**really** [7] - 10:4, 11:14, 19:11, 24:19, 40:10, 40:21, 46:18
**reason** [5] - 6:2, 6:23,

19:17, 19:19, 41:6
**reasons** [5] - 6:11, 9:20, 22:18, 38:23, 39:9
**received** [1] - 34:22
**receiving** [2] - 34:24, 40:9
**recently** [6] - 16:7, 18:22, 29:1, 31:8, 40:15, 42:1
**recess** [1] - 47:14
**recognize** [2] - 26:3, 26:22
**reconsider** [1] - 16:14
**reconsideration** [1] - 16:24
**records** [5] - 12:25, 35:20, 38:9, 38:11, 38:19
**recover** [2] - 33:17, 33:18
**recovery** [1] - 33:16
**reference** [1] - 28:5
**references** [1] - 30:9
**referred** [1] - 35:17
**referring** [5] - 28:18, 29:14, 29:21, 38:18, 38:20
**regard** [1] - 31:3
**regarding** [10] - 3:15, 5:7, 12:18, 15:4, 15:8, 16:18, 18:19, 19:23, 30:10, 35:23
**regular** [2] - 9:11, 15:15
**regulated** [1] - 40:7
**rejected** [2] - 19:25
**relate** [1] - 32:21
**related** [2] - 33:4, 35:21
**relating** [1] - 4:5
**relationship** [1] - 9:2
**relatively** [1] - 25:4
**released** [1] - 20:11
**relevance** [2] - 27:6, 30:1
**relevant** [3] - 10:4, 10:17, 33:14
**relief** [30] - 6:4, 11:5, 11:20, 12:14, 12:15, 12:18, 12:19, 12:24, 16:25, 17:2, 18:4, 20:13, 21:7, 26:4, 35:3, 35:6, 35:16, 35:18, 39:13, 39:23, 39:24, 40:18, 42:22, 43:13, 43:25, 45:24, 46:2, 46:6, 46:10
**remain** [1] - 17:19
**remedy** [1] - 12:10
**remind** [1] - 7:5
**remove** [2] - 6:6, 23:19
**removed** [1] - 6:9
**removing** [1] - 23:23
**repeat** [1] - 20:15
**REPORTED** [1] - 2:14
**Reporter** [1] - 2:15
**represent** [3] - 39:16, 41:7, 47:2
**representative** [1] - 24:25
**representing** [8] - 3:8, 3:19, 29:3, 41:17, 41:19, 42:5, 42:7, 46:25

**request** [5] - 16:15, 17:15, 20:3, 23:12, 46:8
**requested** [5] - 12:14, 17:11, 17:24, 18:21, 46:10
**requesting** [2] - 12:15, 26:4
**Requests** [1] - 29:25
**requests** [1] - 16:13
**require** [1] - 44:14
**required** [2] - 22:1, 35:22
**requires** [1] - 19:7
**reschedule** [1] - 18:21
**reserve** [1] - 3:14
**reset** [2] - 31:25, 36:15
**respect** [23] - 9:16, 10:22, 10:23, 11:3, 12:24, 14:5, 16:12, 16:18, 17:13, 21:11, 21:15, 23:2, 25:8, 25:12, 25:13, 29:9, 30:7, 33:11, 34:13, 38:3, 43:8, 43:9, 46:20
**respectfully** [2] - 32:14, 43:11
**respective** [1] - 36:17
**respond** [6] - 13:2, 18:20, 19:8, 19:11, 19:12, 29:6
**response** [6] - 7:21, 18:22, 21:21, 22:21, 36:5, 36:14
**responses** [1] - 45:5
**restraining** [5] - 6:5, 22:11, 34:19, 35:16, 35:19
**retain** [2] - 34:20, 35:22
**retained** [9] - 16:7, 18:2, 18:23, 21:9, 29:1, 31:8, 32:10, 39:21, 42:1
**review** [1] - 24:12
**reviewed** [2] - 28:21, 35:15
**revisit** [1] - 20:13
**rid** [1] - 43:19
**rights** [1] - 9:17
**role** [1] - 8:19
**routinely** [1] - 44:15
**RPR** [2] - 2:14, 48:9
**Rule** [3] - 42:13, 42:16, 43:4
**ruled** [3] - 27:8, 34:17, 46:4
**Rules** [4] - 14:4, 29:25, 35:12, 42:20
**rules** [5] - 42:19, 42:23, 43:14, 43:16, 43:20
**ruling** [1] - 46:4
**run** [3] - 15:14, 29:16, 32:13
**runs** [1] - 32:11
**RYAN** [1] - 2:1
**Ryan** [13] - 3:20, 5:10, 5:12, 5:13, 7:1, 7:16, 9:6, 13:8, 17:5, 17:16, 20:9, 38:16
**Ryan's** [6] - 16:22, 17:8, 17:15, 20:24, 23:20

## S

**S.A** [3] - 42:3, 46:21, 47:2
**SANCHEZ** [1] - 1:20
**Santa** [1] - 14:10
**satisfactory** [1] - 28:15
**saw** [1] - 27:19
**schedule** [1] - 8:23
**scheduled** [2] - 5:15, 36:18
**scheme** [1] - 39:17
**Schiller** [1] - 1:15
**scope** [1] - 26:23
**screeching** [1] - 21:4
**sdavis@bsfllp.com** [1] -
1:18
**SE** [1] - 1:16
**sealed** [1] - 7:11
**SEALED** [1] - 4:20
**search** [2] - 7:21, 27:23
**second** [4] - 9:5, 9:19,
19:17, 19:19
**secrete** [1] - 21:4
**secure** [3] - 28:13, 45:25,
46:1
**see** [9] - 17:2, 23:7, 24:7,
31:12, 37:12, 40:15, 40:21,
46:9, 46:22
**seek** [3] - 38:10, 39:8, 41:3
**seeking** [11] - 6:4, 12:19,
12:23, 12:24, 16:24, 18:4,
18:11, 19:18, 25:21, 33:17,
33:18
**seize** [7] - 16:15, 17:1,
25:15, 26:13, 26:18, 27:3,
28:8
**seized** [2] - 10:12, 10:13
**seizure** [4] - 26:4, 26:9,
35:4, 35:7
**send** [1] - 17:25
**senior** [1] - 24:13
**sense** [1] - 26:19
**sent** [6] - 6:15, 10:9, 14:10,
17:14, 20:8
**serious** [2] - 9:22, 28:6
**servant** [1] - 24:10
**serve** [4] - 13:25, 14:14,
14:24, 36:7
**served** [18] - 6:20, 9:11,
12:4, 13:15, 13:18, 13:19,
14:5, 14:24, 21:23, 22:3,
25:1, 29:25, 35:25, 39:21,
44:4, 44:6, 46:18
**server** [46] - 5:8, 6:8, 6:13,
7:9, 7:10, 7:11, 7:17, 8:5,
8:19, 9:7, 9:17, 9:18, 9:23,
9:25, 10:5, 10:7, 10:8, 10:9,
10:15, 14:19, 15:8, 15:9,
17:11, 17:14, 17:20, 17:25,
18:1, 18:10, 18:11, 20:10,
20:18, 20:25, 21:4, 22:22,

23:2, 23:4, 23:12, 23:20,
23:22, 23:24, 31:18, 34:20,
34:23, 34:25
**servers** [8] - 10:12, 10:13,
10:15, 10:16, 14:11, 17:21,
31:19, 34:3
**service** [10] - 13:18, 13:21,
13:23, 14:4, 14:7, 14:16,
14:17, 14:23, 20:21, 47:16
**set** [18] - 5:5, 11:4, 13:16,
15:5, 15:6, 15:11, 19:16,
27:7, 28:12, 31:10, 31:11,
33:16, 36:5, 37:12, 37:14,
38:6, 43:9, 45:25
**sever** [2] - 15:5, 15:7
**several** [1] - 35:24
**Shaw** [2] - 2:11, 4:9
**shipped** [3] - 6:9, 17:20,
35:2
**shortly** [2] - 34:24, 36:6
**show** [3] - 9:23, 9:25, 22:19
**showing** [2] - 15:17, 35:10
**shredded** [1] - 27:24
**Shut** [1] - 14:21
**shut** [1] - 14:21
**side** [5] - 4:6, 4:10, 4:17,
33:22
**side-bar** [3] - 4:6, 4:10,
4:17
**similar** [1] - 34:8
**simple** [1] - 7:13
**simply** [10] - 6:15, 7:13,
8:9, 11:9, 22:13, 25:8, 25:10,
25:21, 27:5, 28:15
**single** [1] - 16:16
**sit** [1] - 25:24
**situation** [5] - 7:19, 9:21,
33:8, 44:17, 47:1
**situations** [1] - 27:22
**so-called** [2] - 10:24, 31:20
**solves** [1] - 5:21
**someone** [1] - 7:20
**somewhat** [1] - 32:25
**soon** [1] - 7:1
**sorry** [10] - 5:11, 13:5,
13:14, 16:2, 21:19, 27:14,
41:7, 41:21, 42:3, 45:25
**sort** [4] - 21:3, 21:5, 31:4,
45:5
**sought** [5] - 12:25, 16:25,
21:7, 45:24, 46:2
**sounds** [2] - 21:17, 38:5
**South** [1] - 2:7
**SOUTHERN** [1] - 1:1
**speaking** [3] - 39:20, 40:25,
41:5
**specific** [3] - 32:22, 42:21,
43:25
**specifically** [5] - 12:4,
16:14, 23:11, 28:17, 40:1

**speed** [3] - 29:1, 30:4,
38:25
**spent** [2] - 21:24, 30:22
**spirited** [1] - 7:18
**split** [1] - 19:9
**spoliation** [2] - 10:4, 12:5
**staff** [1] - 24:10
**stage** [2] - 13:1, 35:5
**standard** [1] - 39:9
**standing** [1] - 44:24
**state** [2] - 40:3, 40:7
**statement** [1] - 32:16
**STATES** [2] - 1:1, 1:11
**states** [1] - 20:24
**States** [4] - 2:15, 10:10,
10:16, 23:3
**stay** [1] - 43:20
**Steakhouse** [1] - 40:5
**step** [1] - 4:24
**STEPHEN** [1] - 1:14
**Steve** [1] - 3:9
**STEVEN** [1] - 1:15
**still** [5] - 12:15, 29:1, 30:4,
35:5, 37:23
**stipulate** [1] - 11:11
**stood** [1] - 41:16
**stop** [1] - 20:18
**story** [1] - 21:3
**straight** [1] - 24:11
**Street** [1] - 1:16, 2:2
**stress** [1] - 34:9
**struck** [1] - 33:13
**stuff** [3] - 26:13, 27:7, 34:3
**subject** [5] - 6:9, 21:25,
42:13, 42:18, 43:14
**submit** [1] - 45:7
**submitted** [3] - 17:7, 19:3,
30:6
**subpoena** [3] - 21:13,
21:15, 22:3
**subpoenaed** [2] - 6:11,
22:19
**subsequent** [1] - 16:22
**substantial** [1] - 34:7
**sufficiency** [1] - 3:15
**sufficient** [1] - 35:18
**suggest** [2] - 20:12, 32:14
**suggested** [2] - 8:9, 20:10
**suggesting** [1] - 40:15
**suggests** [2] - 19:7, 31:12
**Suite** [5] - 1:16, 1:21, 2:2,
2:11, 2:15
**suits** [1] - 22:21
**support** [1] - 20:6
**supposed** [2] - 39:24,
39:25
**surprised** [1] - 11:19
**surreptitious** [1] - 21:5
**surveillance** [1] - 23:20

**surveilling** [1] - 8:8
**Susman** [1] - 41:25
**SW** [1] - 2:2
**Swerdloff** [1] - 39:15
**SWERDLOFF** [7] - 2:6,
39:14, 41:8, 41:13, 41:15,
45:10, 45:19
**Swiss** [33] - 7:10, 7:14,
8:10, 8:13, 9:7, 10:6, 10:8,
10:11, 10:13, 13:25, 17:6,
17:8, 17:9, 17:15, 17:16,
17:18, 17:23, 17:24, 20:7,
20:11, 20:24, 21:1, 21:2,
22:22, 22:24, 23:5, 23:7,
23:12, 23:15, 23:17, 31:17
**Switzerland** [17] - 5:14,
6:10, 6:15, 7:2, 7:9, 10:10,
10:12, 13:24, 14:1, 16:19,
17:17, 17:19, 17:21, 17:25,
18:3, 20:19, 38:17
**Sánchez** [1] - 3:12

## T

**tamper** [1] - 6:6
**tampering** [1] - 44:22
**temporary** [6] - 6:5, 22:11,
34:19, 35:16, 35:19, 46:11
**ten** [2] - 20:20, 36:8
**terms** [6] - 9:2, 9:19, 10:1,
10:20, 13:23, 22:20
**testify** [7] - 5:20, 21:13,
21:21, 21:22, 22:2, 22:5,
33:3
**testimony** [2] - 15:12,
30:17
**THE** [99] - 1:1, 1:10, 1:13,
1:20, 2:1, 2:6, 2:10, 3:3,
3:10, 3:16, 3:22, 4:2, 4:10,
4:14, 4:16, 4:20, 4:22, 5:3,
5:17, 5:21, 6:18, 7:5, 8:15,
8:21, 9:9, 10:5, 11:1, 11:19,
12:2, 12:12, 13:2, 13:7,
13:13, 15:2, 15:7, 15:9,
15:19, 16:2, 16:6, 16:11,
18:14, 20:14, 21:17, 21:20,
22:6, 22:8, 22:22, 23:10,
23:25, 24:2, 24:9, 24:24,
25:6, 26:3, 26:8, 27:11,
27:15, 28:17, 28:24, 29:5,
29:18, 31:23, 32:2, 32:17,
33:13, 33:23, 34:17, 36:13,
36:21, 36:24, 37:4, 37:9,
37:11, 37:21, 37:23, 38:6,
39:11, 41:7, 41:10, 41:14,
41:16, 41:21, 42:3, 42:5,
42:11, 43:23, 44:9, 44:23,
45:9, 45:13, 45:21, 46:4,
46:12, 46:14, 46:24, 47:6,
47:10, 47:20
**themselves** [1] - 18:10

**theories** [1] - 18:25
**thereafter** [1] - 36:6
**Thereupon** [2] - 4:17, 47:24
**THEREUPON** [1] - 4:20
**they've** [2] - 19:4, 32:3
**third** [4] - 9:8, 13:6, 40:16, 40:22
**threat** [1] - 12:1
**three** [10] - 3:25, 13:21, 14:3, 15:4, 15:15, 16:9, 16:16, 18:11, 19:10, 31:10
**three-month** [1] - 14:3
**three-page** [4] - 15:4, 16:16, 18:11, 31:10
**Thursday** [1] - 36:16
**timing** [2] - 26:23, 38:1
**tires** [1] - 21:4
**today** [45] - 4:9, 5:4, 5:5, 5:15, 8:15, 8:17, 8:22, 8:24, 15:6, 16:22, 17:5, 17:7, 18:18, 19:7, 19:16, 20:6, 22:1, 22:2, 22:5, 22:10, 27:20, 27:21, 29:13, 31:10, 31:11, 31:17, 36:5, 36:8, 39:10, 39:12, 39:21, 40:11, 40:25, 41:4, 42:8, 42:13, 45:8, 46:19, 47:3, 47:13, 47:17, 47:22
**today's** [2] - 21:25, 39:22
**together** [1] - 21:24
**tomorrow** [1] - 28:20
**took** [4] - 8:7, 8:18, 24:12, 27:24
**top** [2] - 31:15, 40:6
**track** [1] - 24:4
**trader** [1] - 42:9
**traders** [1] - 44:20
**TRANSCRIPT** [1] - 4:20
**transcription** [1] - 48:4
**transfer** [1] - 32:15
**translate** [1] - 17:10
**trials** [1] - 37:11
**tried** [1] - 8:7
**TRO** [35] - 5:7, 6:17, 6:19, 6:23, 6:25, 8:6, 10:22, 11:3, 11:11, 11:12, 12:21, 12:25, 13:1, 14:8, 16:14, 16:24, 18:16, 20:1, 20:13, 20:21, 21:8, 33:14, 35:4, 40:10, 40:21, 42:18, 43:1, 43:12, 44:25, 45:8, 45:16, 46:2, 46:5, 46:22, 47:4
**true** [2] - 32:9, 43:9
**TRUST** [2] - 1:4, 1:14
**Trust** [1] - 3:4
**trust** [1] - 33:16
**try** [7] - 6:12, 9:24, 24:10, 25:14, 28:15, 39:7, 45:4
**trying** [9] - 7:13, 8:13, 14:14, 21:3, 24:4, 24:5,

33:10, 34:10, 37:11
**Tuesday** [1] - 45:4
**turn** [1] - 43:3
**turned** [1] - 37:3
**two** [17] - 3:25, 9:15, 10:11, 13:20, 14:3, 18:21, 19:10, 23:1, 24:11, 30:5, 30:21, 32:3, 32:7, 36:4, 38:4, 39:1, 46:17
**type** [1] - 40:13
**types** [1] - 41:2
**typical** [1] - 26:20
**typically** [1] - 24:16

## U

**U.S** [1] - 26:5
**umbrella** [1] - 44:25
**under** [6] - 14:3, 35:23, 42:20, 43:16, 44:25, 45:16
**understood** [1] - 39:22
**undisputed** [2] - 20:19, 20:23
**unduly** [1] - 24:21
**UNITED** [2] - 1:1, 1:11
**United** [4] - 2:15, 10:10, 10:16, 23:3
**unless** [1] - 32:4
**unrelated** [1] - 32:17
**unsealed** [1] - 12:14
**unusual** [6] - 26:16, 26:22, 26:23, 32:25, 44:11, 44:13
**up** [10] - 21:9, 25:7, 29:1, 30:4, 33:16, 38:25, 41:16, 46:13, 46:22, 46:24
**US** [3] - 1:4, 1:14, 3:3

## V

**value** [1] - 35:8
**variety** [1] - 23:18
**various** [2] - 9:23, 28:2
**varying** [1] - 45:5
**vast** [1] - 34:8
**Venezuela** [2] - 23:16, 28:2
**view** [2] - 8:12, 14:17
**violated** [1] - 43:2
**violation** [2] - 6:17, 6:19
**Vitol** [13] - 41:19, 41:22, 42:3, 42:8, 42:22, 43:9, 45:15, 46:20, 46:21, 47:2, 47:10, 47:11
**voluminous** [1] - 19:11
**vs** [1] - 1:5

## W

**wait** [4] - 5:18, 5:23, 15:7, 46:6
**waiting** [1] - 9:19
**waive** [1] - 42:15

**waiving** [1] - 42:14
**wants** [1] - 13:2
**warrant** [5] - 7:21, 15:17, 16:23, 27:23, 29:12
**WAS** [1] - 4:20
**Wednesday** [1] - 37:16
**weekend** [1] - 24:19
**weekends** [1] - 24:11
**weeks** [4] - 18:21, 32:3, 36:4, 38:17
**welcome** [1] - 4:24
**whatsoever** [1] - 15:16
**whole** [2] - 31:9, 38:6
**wife** [2] - 14:20, 31:1
**willing** [1] - 21:13
**Wilmer** [1] - 3:20
**Winthrop** [2] - 2:11, 4:9
**wishes** [1] - 22:5
**withdraw** [1] - 9:6
**witness** [8] - 3:20, 4:6, 5:15, 27:1, 27:18, 32:20, 33:3, 33:7
**WITNESS** [1] - 2:11
**witnesses** [7] - 4:1, 6:3, 22:19, 30:9, 38:3, 38:5, 39:1
**words** [2] - 12:17, 12:21
**worst** [1] - 20:9
**writes** [1] - 32:15
**written** [1] - 36:5
**wrote** [1] - 42:25

## Y

**years** [3] - 33:5, 33:23, 40:6
**yelling** [1] - 14:20
**yesterday** [1] - 21:9

## Z

**Zack** [1] - 3:9
**ZACK** [1] - 1:14