```
1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
2                           MIAMI
                    CASE NO. 18-CV-20818
3    _____

4     PDVSA US LITIGATION TRUST,
                          Plaintiff
5           vs.                              March 14, 2018

6     LUKOIL PAN AMERICAS, LLC, ET
      AL.,
7                         Defendant.

8    _____

9                        MOTION HEARING

10           BEFORE THE HONORABLE DARRIN P. GAYLES,

11              UNITED STATES DISTRICT COURT JUDGE

12   _____

                         A P P E A R A N C E S
13
      FOR THE PLAINTIFF:        DAVID BOIES, ESQ
14    PDVSA US LITIGATION       GEORGE F. CARPINELLO, ESQ
      TRUST                     STEPHEN N. ZACK, ESQ
15                              STEVEN DAVIS, ESQ
                                Boies Schiller Flexner LLP
16                              100 SE 2nd Street, Suite 2800
                                Miami, FL 33131
17                              (305) 539-8400
                                Dboies@bsfllp.com
18                              Gcarpinello@bsfllp.com.
                                Sdavis@bsfllp.com.
19

20    FOR THE DEFENDANTS:       ISRAEL J. ENCINOSA, ESQ
      HELSINGE, INC.            DAYME SANCHEZ, ESQ
21    HELSINGE, LTD.            Holland and Knight LLP
      DANIEL LUTZ               701 Brickell Avenue, Suite 3000
22                              Miami, FL 33131
                                (305) 789-7602
23                              Israel.encinosa@hklaw.com
                                Dayme.sanchez@hklaw.com
24

25
```

confused. All right.

**MR. BOIES:** And Your Honor, the reason for calling a couple of witnesses is just to put in context some of the relief that we're seeking. As the Court knows, the Court entered a temporary restraining order directing that certain of the defendants should not remove or alter or destroy or tamper with any documents, paper or electronic or otherwise.

And as the Court is also aware, a server that was the subject of the Court's order was removed and shipped to Switzerland. Now we don't know what else was taken. One of the reasons that we have subpoenaed Mr. Maldonado to this hearing is to try to inquire about that. But we do know that the server was taken.

Now, they claim that nothing was done to it and it was simply sent to Switzerland. We don't have any way of knowing that. What we know is it was taken out of the Court's jurisdiction in violation of the TRO.

**THE COURT:** Well, I think they dispute that it was in violation of the TRO. As I understand it, counsel for Mr. Maldonado indicates that they weren't served until after it had been delivered to FedEx.

**MR. BOIES:** There is a question that they raise as to whether they had knowledge of TRO. And part of the reason for the evidentiary hearing is to demonstrate that they did have knowledge of the TRO.

1  Switzerland, except through the Hague Convention.
2       So we must either go through that process which is a
3  two or three-month process, or we need to get an order under
4  the Federal Rules of Civil Procedure for alternative service.
5       With respect to the individuals, we have served a
6  number of them, but a number of them have, thus far, managed to
7  evade service.  For example, as the Court's aware from our
8  preliminary injunction and TRO application, Mr. Morillo and
9  Mr. Baquero and Mr. Lutz have apartments here in Miami in the
10 Santa Maria Condominium on Brickell Avenue, and we have sent
11 process servers there, and a person who comes to the door won't
12 open the door, won't accept anything, and won't say who is
13 inside.
14      So we are trying to serve them personally, but, again,
15 with those individuals, we have made a motion to court for
16 alternative service, since these are people who are, in our
17 view, clearly evading service.
18      As I think the Court is aware from some of the papers
19 that we have filed, for example, a process server appeared.
20 The wife comes to the door and the husband is heard yelling in
21 the background, "Shut the door, shut the door," and these
22 defendants are going to be difficult to catch personally.
23      We have made an application for alternative service.
24 But we served everybody that we have been able to serve, and
25 that, as I say, includes a large number of the defendants and

```
                1   those are all indicated in Mr. Carpinello's affidavit.
                2             THE COURT: Okay. All right. Counsel?
                3             MR. ENCINOSA: Thank you, Your Honor. Your Honor,
                4   we're here on the three-page motion that was filed regarding
03:08           5   the motion to sever. We understand that was set for hearing
                6   today and it was not set as an evidentiary hearing.
                7             THE COURT: Wait a minute, the motion to sever?
                8             MR. ENCINOSA: No. Regarding the server.
                9             THE COURT: Oh, server.
03:08          10             MR. ENCINOSA: I apologize.
               11             And it was not set as an evidentiary hearing and we
               12   would object to testimony being presented. We haven't had the
               13   opportunity to prepare for that.
               14             We're concerned this is just an attempt at an end run
03:08          15   around regular discovery, and we don't think that the three-
               16   page motion which cites to no cases whatsoever has made, even
               17   factually, a prima facie showing that would warrant an
               18   evidentiary hearing.
               19             THE COURT: But I guess for now, we were just talking
03:08          20   about the preservation of evidence. Is there an objection to
               21   me entering an order as to your clients in order to preserve
               22   evidence?
               23             MR. ENCINOSA: No, certainly not. We believe an order
               24   has already been entered along those lines. So we don't know
03:09          25   why an additional order needs to be entered. But if I may,
```

```
 1  Your Honor --
 2            THE COURT:  I'm sorry.  Hold on for just a moment.
 3            Your clients -- oh, they are within what has been
 4  called the Morillo-grouped defendants, correct?
 5            MR. ENCINOSA:  That is correct, Your Honor.
 6            THE COURT:  Okay.
 7            MR. ENCINOSA:  We have recently been retained, and I'm
 8  not sure whether we will appear on behalf of the additional
 9  defendants, we have been engaged by the three defendants that I
10  mentioned earlier.
11            THE COURT:  Okay.
12            MR. ENCINOSA:  With respect to the motion, Your Honor,
13  what the plaintiff requests here for the Court, is what they
14  say to reconsider its TRO and, specifically, the Court's denial
15  of the request to seize and copy documents.
16            Again, they cite not a single case in the three-page
17  motion, and most of the facts Mr. Boies just talked about with
18  respect to allegations regarding Mr. Morillo and things that
19  have happened in the proceedings in Switzerland.
20            None of that is in the motion.  It's the first we hear
21  of it.  But more, I guess, as importantly, the motion and the
22  subsequent filings today, by Mr. Maldonado and Mr. Ryan's
23  attorney, made clear that there are no facts that warrant a
24  reconsideration of the Court's TRO.  They're seeking
25  extraordinary relief to allow them what they sought originally,
```

```
 1  which was to seize and copy all the documents that defendants
 2  have at large.  And they see this as extraordinary relief for
 3  what appears to be an incident of their own making, in fact.
 4          Their own motion, and now confirmed by the filings of
 5  Mr. Maldonado and Mr. Ryan today, confirm that -- that it was
 6  plaintiff's counsel who was communicating with the Swiss
 7  prosecutor, I guess as it were, and they have submitted today a
 8  declaration from the Swiss prosecutor, Mr. Ryan's Swiss
 9  attorney attaches to his declaration the declaration of a Swiss
10  prosecutor, which is in French.  In basic Google translate, the
11  prosecutor says, "I requested this server based on my
12  communications with the plaintiff's counsel."
13          So the only facts alleged with respect to this motion
14  are that the plaintiff -- that this server was sent by
15  Mr. Ryan's husband, at the request of Mr. Ryan's Swiss attorney
16  to -- directly to a Swiss prosecutor, because Mr. Ryan was
17  detained or incarcerated in Switzerland, and he arrived at an
18  arrangement with the Swiss prosecutor where he would be, I
19  guess, let out of jail but have to remain in Switzerland, if he
20  shipped this server that has been alleged is one of my client's
21  servers, to Switzerland.
22          So what has happened here is that it appears that
23  plaintiff's counsel has been communicating with the Swiss
24  prosecutor, that the Swiss prosecutor requested somebody be
25  detained in Switzerland to have them send this server that is
```

```
 1               MR. BOIES:  That was Friday morning.
 2               THE COURT:  So why did I get an emergency motion
 3   Friday night after -- well after close of business?
 4               MR. BOIES:  Your Honor, we were trying to track it
 5   down.  We were trying to get the papers prepared.  My
 6   understanding was that there was an effort to contact the Court
 7   and see a time when people could come.  And if we got there
 8   late, I apologize.
 9               THE COURT:  I'll just say this as a brief aside.  You
10   know, I try to be a dedicated public servant, as is my staff.
11   This is two straight weekends where emergency motions were
12   filed and we took a lot of time to review things that weren't
13   necessarily emergencies, and as one of my more senior
14   colleagues quoted, one of our former chief judges, the great
15   Ned Davis, that the question usually with emergency motions is
16   did anyone die?  And if the answer is no, then it's typically
17   not an emergency.
18               So I'll just say it before the next emergency motion
19   is filed over the weekend, please make sure it's really an
20   emergency.
21               MR. BOIES:  If we unduly burdened the Court, I
22   apologize.  We thought when we learned that this was being
23   taken out of the country that that was --
24               THE COURT:  I concede, that particular issue is -- as
25   representative, it was alarming and we acted.  Presumably, it
```

```
             1            MR. BOIES:  No.  No.  Your Honor, I mean we have a
             2   great deal of information.  But the full extent of it and,
             3   indeed, major parts of it are stuff that is in these servers,
             4   in these electronic devices, in these paper files.
   03:41     5            The -- what we have is what we have been able to glean
             6   without any court order, without any discovery.  And there is a
             7   very substantial amount of that that we have been able to
             8   develop similar.  But there is a vast amount of evidence that's
             9   out there that is of critical importance.  And I can't stress
   03:42    10   enough that we are not trying to -- we would like to have
            11   discovery go as fast as we could, of course, but that's not the
            12   point here of accelerating discovery.
            13            This is a preservation issue with respect to the
            14   defendants, other than the Morillo defendants, we want a court
   03:42    15   order ordering them to preserve the documents just as the
            16   Morillo defendants have been wanting to preserve.
            17            THE COURT:  Okay.  So I've actually already ruled on
            18   the emergency motion, obviously, following the issuance of the
            19   temporary restraining order.  And, I, of course, ordered that
   03:43    20   FedEx retain that server that was delivered to it, but
            21   apparently it was too late because by the time I issued the
            22   order -- well, I issued it pretty quickly after I received it
            23   Friday night on March 9th, the server had been, in fact --
            24   yeah, at 10:20 p.m., shortly after receiving the motion, I
   03:43    25   issued that order.  But the server, as I learned this morning,
```

```
 1  had been delivered that morning to FedEx and had already been
 2  shipped.
 3          I didn't find a basis to go beyond the relief I had
 4  granted in the TRO, meaning the seizure and the copying of
 5  evidence at stage.  I still don't find that that is
 6  appropriate, and it's pretty extraordinary relief.  It's a
 7  broad seizure of items which may or may not have evidentiary
 8  value.  I just don't think it's appropriate.
 9          And, in fact, it's perhaps more than a criminal
10  prosecutor could even get without a showing of probable cause.
11  And I think the appropriate procedure is the procedure that is
12  in place in all cases and Rules of Evidence and Civil Procedure
13  will apply and I will make appropriate determinations as the
14  case goes forward.
15          Now, as I indicated earlier when I reviewed the
16  temporary restraining order, the relief was limited as to the
17  plaintiff referred to as the Morillo defendants, but I found
18  that there was a sufficient basis to grant the relief as to all
19  defendants.  So I will modify the temporary restraining order
20  to prohibit all the defendants from destroying any records
21  related to their business with PDVSA, and there's no prejudice
22  that would be required to retain that information anyway.
23          Regarding the preliminary injunction, under the
24  circumstances, there are several parties, they have not been
25  served.  There's a multi-count complaint.  It's about 161 pages
```