UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PDVSA US LITIGATION TRUST

        Plaintiff,

v.

LUKOIL PAN AMERICAS LLC; LUKOIL PETROLEUM LTD.; COLONIAL OIL INDUSTRIES, INC.; COLONIAL GROUP, INC.; GLENCORE LTD.; GLENCORE INTERNATIONAL A.G.; GLENCORE ENERGY UK LTD.; MASEFIELD A.G.; TRAFIGURA A.G.; TRAFIGURA TRADING LLC; TRAFIGURA BEHEER B.V.; VITOL ENERGY (BERMUDA) LTD.; VITOL S.A.; VITOL, INC.; FRANCISCO MORILLO; LEONARDO BAQUERO; DANIEL LUTZ; LUIS LIENDO; JOHN RYAN; MARIA FERNANDA RODRIGUEZ; HELSINGE HOLDINGS, LLC; HELSINGE, INC.; HELSINGE LTD., SAINT-HÉLIER; WALTROP CONSULTANTS, C.A.; GODELHEIM, INC.; HORNBERG INC.; SOCIETE DOBERAN, S.A.; SOCIETE HEDISSON, S.A.; SOCIETE HELLIN, S.A.; GLENCORE DE VENEZUELA, C.A.; JEHU HOLDING INC.; ANDREW SUMMERS; MAXIMILIANO POVEDA; JOSE LAROCCA; LUIS ALVAREZ; GUSTAVO GABALDON; SERGIO DE LA VEGA; ANTONIO MAARRAOUI; CAMPO ELIAS PAEZ; PAUL ROSADO; BAC FLORIDA BANK; EFG INTERNATIONAL A.G.; BLUE BANK INTERNATIONAL N.V.

        Defendants.

Case No. 1:18-CV-20818 (DPG)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MORILLO GROUP DEFENDANTS' MOTION TO QUASH RULE 45 SUBPOENAS AND FOR A PROTECTIVE ORDER [DKT. 192] AND IN SUPPORT OF <u>PLAINTIFF'S CROSS-MOTION TO COMPEL</u>**

Plaintiff PDVSA US Litigation Trust ("Plaintiff") respectfully submits this opposition to Defendants Helsinge, Inc., Helsinge Ltd., Helsinge Holdings, LLC, Francisco Morillo, Leonardo Baquero, Daniel Lutz, Luis Liendo, and John Ryan's (collectively the "Morillo Group Defendants") motion to quash subpoenas for April 4 and for a protective order and in support of Plaintiff's cross motion to compel.

## INTRODUCTION

The Morillo Group Defendants are at the core of a vast conspiracy to defraud PDVSA in the sale and purchase of petroleum products by means of bribery, price-fixing, coercion, theft of computer data and other crimes. The Morillo Group Defendants operated secretly and covered up their conspiratorial activity to avoid detection. Based on the preliminary evidence Plaintiff has of that secret and destructive activity, the Court issued a temporary restraining order against the Morillo Group Defendants on March 5, 2018, enjoining them from destroying records relating to their business, assets and finances or PDVSA. (Dkt. # 9). The Court found that Plaintiff had a likelihood of success on the merits and determined that, absent the restraining order, Plaintiff would be irreparably harmed because the "[Morillo Group] [D]efendants are likely to transfer or destroy the relevant data." Ordering preservation did not burden the Morillo Group Defendants and "further[ed] the public interest." The TRO required preservation pending a preliminary injunction hearing. (Dkt. # 9).

The following week, notwithstanding the Court's orders, a Helsinge server was moved from Miami to Switzerland and Plaintiff sought further preservation relief from the Court. Concerned about the potential destruction of evidence, at that hearing, on March 14, 2018 (and embodied in a March 16, 2018 Order) the Court extended the injunction to enjoin the remaining defendants who acted in concert with and did business with the Morillo Group Defendants from

destroying any records relating to the Morillo Group Defendants, their related businesses and PDVSA. (Dkt. # 95). The Court explained that the preliminary injunction would be addressed at the April 4, 2018 hearing. Far from denying Plaintiff the opportunity to develop and obtain evidence in connection with the preliminary injunction hearing, as the Morillo Group Defendants suggest, the Court specifically ordered an "evidentiary hearing" to be held on April 4, 2018 and "set aside the whole day" to hear evidence and witnesses. *See* Exhibit A, Excerpted Transcript of March 14, 2018, Hearing, at 37-38 (hereinafter "3/14/18 Hrg. Tr. at _.").

Plaintiff's intention for the hearing is specific and narrow: it seeks limited, conventional preliminary relief to prevent the destruction of documents and the concealment or transfer of assets.

Consistent with that limited objective, and in order for the Court to hear relevant evidence to make a determination at the hearing, Plaintiff issued subpoenas returnable at the hearing for testimony and evidence on the limited issue of what documents have been preserved and what assets have been transferred since January 1, 2018. (The subpoenas are attached to the Morillo Group Defendants Mot., Dkt. # 192-1). Contrary to the Morillo Group Defendants' contention, the subpoenas were not issued in secret; they were served on attorneys for all parties' that have appeared; and those counsel were asked to accept service on behalf of their clients. The number of subpoenas merely reflects that there are many parties. Every subpoena is narrow and focused and simply seeks an answer as to what documents have been preserved and what assets have been transferred since January 1, 2018 – the very question that Plaintiff understands is a subject of the April 4 hearing.

Rather than address that specific question for that hearing, the defendants fired off a barrage of motions. They moved for an expedited deposition and then moved to stop that very

3

deposition. And they filed a series of other procedural motions all apparently designed to avoid having to answer whether or not they have destroyed evidence or transferred assets.

To make matters worse, all the subpoenas, motion practice and the hearing itself could have been avoided. Several times Plaintiff made clear that it was willing to compromise and would withdraw the subpoenas and ask the Court to cancel the hearing if the Morillo Group Defendants would agree to an order requiring Plaintiff and Defendants to preserve records concerning the issues in the case and transfers of assets since January 1, 2018. The Morillo Group Defendants refused, and instead continued their motion blitzkrieg.

Given this intransigence, Plaintiff is entitled to develop evidence to present at the preliminary injunction hearing. Subpoenas are the proper mechanism to obtain testimony and documents for that hearing. The subpoenas are narrowly tailored to find out what documents have been preserved and assets transferred since January 1, 2018, and the Court has already heard enough evidence to determine that preliminary relief preventing destruction is necessary and would not burden the Morillo Group Defendants.

Significantly, the Morillo Group Defendants do not argue that the evidence sought in the subpoenas is irrelevant to the motion before the Court on April 4.

The arguments raised in the motion to quash lack merit. Subpoenas are properly issued before a Rule 26(f) conference for developing evidence for a preliminary injunction hearing concerning preservation; the Morillo Group Defendants received sufficient notice; and the subpoenas were properly served and provide sufficient time for compliance. Furthermore, the subpoenas are narrowly tailored and any concerns about privacy can be alleviated through confidentiality orders.

The Morillo Group Defendants' protestations are a sideshow to avoid having to tell the Court under oath whether they have preserved their documents and assets. The motion to quash should be denied and the Morillo Group Defendants should be compelled to comply with the subpoenas.

## ARGUMENT

**A.    The Subpoenas Properly Seek Evidence and Testimony for the Preliminary Injunction Hearing**

The Morillo Group Defendants argue that the subpoenas are invalid because there has not yet been a Rule 26(f) meet and confer. This argument ignores the actual events and posture of the case. There already have been injunction hearings before the Court. Some of the Morillo Group Defendants already have appeared at these hearings and temporary preservation orders already have been entered against them. The Court has ordered the parties to appear at a further "evidentiary hearing" to take evidence and hear testimony for the "whole day" on the issue of what documents the Morillo Group Defendants have preserved and what assets have they transferred. 3/14/18 Hrg. Tr. at 37-38. It strains credulity to think that none of that is proper because the parties have not had a formal Rule 26(f) conference. Indeed, the hearings address one of the primary concerns of Rule 26(f) – the preservation of evidence.

The Court has the power to control the manner and form of obtaining and hearing evidence for the preliminary injunction hearing. *Johnson v. Bd. Of Regents*, 263 F.3d 1234, 1269 (11th Cir. 2001); *Bostwick Labs., Inc. v. Farley*, 2014 WL 12580031, at *2 (S.D. Fl. May 16, 2014) (ordering production of evidence to develop record for preliminary injunction hearing); *Nobelbiz, Inc. v. Wesson*, 2014 WL 1588715, at *1-2 (S.D. Cal. Apr. 18, 2014) (same); *Bonus of America, Inc. v. Angel Falls Services, LLC*, 2010 WL 2218574, at *4 (D. Minn. May 28, 2010) (same). And clearly parties can obtain evidence and secure witnesses for a preliminary

5

injunction hearing, even before formal discovery has begun. *See, e.g., Hospitalists Mgmt. Group, LLC v. Florida Medial Affiliates, Inc*., 2014 WL 2565675, at *1-2 (M.D. Fl. June 6, 2014) (exercising discretion to order expedited discovery before Rule 26(f) conference); *Welsco, Inc. v. Brace*, 2012 WL 3025141, at * 2 (E.D. Ark. July 24, 2012) (ordering limited discovery in connection with a preliminary injunction hearing before formal discovery has started). *See also* Advisory Notes to Rule 26(d): 1993 Amendment ("Discovery can begin earlier . . . [and] will be appropriate in some cases, such as those involving request for a preliminary injunction . . . .").

Courts also have broad discretion in deciding whether to order that evidence be preserved. *Zaccone v. Ford Motor Co.*, 2016 WL 2744837, at *1 (M.D. Fla. May 11, 2016); *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 431 (W.D. Pa. 2004) ("orders directing parties to preserve materials or documents are common" when "evidence is subject to being destroyed or lost").

Nothing in Rule 26(f) prohibits an order or obtaining evidence prior to the discovery planning meeting. In fact, parties are often required to provide evidence prior to formal discovery when that evidence relates to the preservation of documents and the transfer of assets. *Arkin v. Gracey-Danna, Inc.*, 2016 WL 3959611, at *1 (M.D. Fla. July 22, 2016); *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc*., 2016 WL 1657922, at *3 (S.D. Ohio Apr. 27, 2016) (ordering a subpoena for preservation evidence prior to a Rule 26(f) conference where there was a "real danger that relevant evidence . . . will be destroyed absent a court order"); *Haraburda v. Arcelor Mittal USA, Inc*., 2011 WL 2600756, at *2-3 (N.D. Ill. June 28, 2011) (requiring preservation prior to Rule 26(f) meeting). That is exactly what is required here.

There is an impending preliminary injunction hearing concerning the Morillo Group Defendants' preservation or destruction of evidence and their transfer of assets. The Court has

already heard some evidence of the Morillo Group Defendants' efforts to secrete documents, hide their activities and cover up their conspiratorial activities. The subpoenas follow up directly on those issues and narrowly seek evidence of what documents the Morillo Group Defendants preserved (or destroyed) and what assets they have transferred since January 1, 2018. The Court has already preliminarily determined that requiring preservation under those circumstances is necessary because the "[Morillo Group] [D]efendants are likely to transfer or destroy the relevant data." Providing the requested information will not burden the Morillo Group Defendants and they have not purported to identify any burden in providing the limited evidence. They do not – and cannot – make any argument that the evidence or testimony is irrelevant or would not otherwise be produced as essential information in the case. *See Loren v. Blue Cross and Blue Shield*, 2006 WL 587829 (E.D. Mich. Mar. 9, 2006) (denying motion to quash subpoenas that issued prior to discovery conference where the subpoenas were in connection with a preliminary injunction hearing and sought documents that were essential to the case).[1]

Contrary to the Morillo Group Defendants' argument, Plaintiff is not circumventing federal discovery and evidence rules in seeking to obtain this evidence; it is properly using the Federal Rules of Civil Procedure and Evidence to ensure that the evidence of document and asset preservation are presented to the Court on April 4.

B.   **The Morillo Group Defendants Received Sufficient Notice of the Subpoenas**

As an initial matter, a party is only entitled to notice of a subpoena prior to service "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial." Fed. R. Civ. P. 45(a)(4). Thus, the

---

[1] The Morillo Group Defendants' cases are not to the contrary because none involve subpoenas issued for a Court ordered preliminary injunction hearing prior to commencement of formal discovery.

7

Morillo Group Defendants' argument about a purported lack of notice is irrelevant to the testimonial subpoenas.

And, as to the other subpoenas, this Court has declined to quash subpoenas for late notice where a party failed to articulate any prejudice. *Ochoa v. Empresas ICA, S.A.B. de C.V.*, 2012 WL 13050519, at *7 (S.D. Fla. July 2, 2012) ("Topete, however, does not appear to have been prejudiced by late notice, if any, nor has Topete articulated any prejudice that resulted from any late notice.  Therefore, the undersigned finds quashing these two subpoenas on the basis of late notice inappropriate under these circumstances."); *Steel Works Rebar Fabricators, LLC v. Alterra Am. Ins. Co.,* 2012 WL 1918704, at *2 (S.D. Fla. May 25, 2012) ("To the extent that Defendant claims it was deprived of its right to object to the respective subpoenas, the Defendant has failed to articulate a sufficiently specific objection.  Thus, it appears that Defendant has not been prejudiced by the late notice.").

Here, with the exception of three subpoenas issued on March 23, 2018, all of the subpoenas seeking documentary evidence were issued on March 20.  The majority of those subpoenas were served on March 21 and March 22.  The Morillo Group Defendants received notice of all of the subpoenas through their counsel a few days later, on March 26, 2018.  The Morillo Group Defendants have not suffered any prejudice due to the timing of the notice, nor have they identified any prejudice.  Indeed, they have been able to marshal their resources and file the pending motion to quash and a slew of other motions to attempt to forestall the hearing.

By contrast, Plaintiff would be prejudiced if the motions were quashed for lack of notice because Plaintiff cannot re-issue the subpoenas in advance of the April 4th preliminary injunction hearing.  The present motion therefore differs from cases in which courts have exercised their discretion to quash subpoenas for lack of notice, where quashing simply required

a party to re-issue the subpoenas and receive documents at a slightly later date. Quashing is not appropriate here because it would deprive Plaintiff of evidence at a critical juncture in this case. *Cf. Warren v. Delvista Towers Condo. Ass'n, Inc.*, 2014 WL 1608369, at *1 (S.D. Fla. Apr. 22, 2014) ("Defendants conceded at the hearing that they did not give the prior notice required under Rule 45 to Warren. Nevertheless, the Undersigned finds that quashing the subpoenas is not prudent here," in part because "quashing the subpoenas at this late stage of the case—discovery is set to close in less than 10 days—would deprive Defendants of relevant discovery to which they are entitled.") (emphasis removed).

**C.     Service of the Subpoenas Was Proper**

Serving a subpoena means "delivering" a copy to the named person. Fed. R. Civ. P. 45(b)(1). "Nothing in the language of Rule 45 requires personal service, nor is there any reference or mention of personal service." *In re Falcon Air Exp., Inc.*, 2008 WL 2038799, at *2 (Bankr. S.D. Fla. May 8, 2008). "Recent decisions on this very issue have established that the requirement for 'delivery' under Rule 45 is satisfied so long as, service is made in a manner that reasonably insures actual receipt of the subpoena by the witness." *Id.* (quotation omitted). *See also Bozo v. Bozo*, 2013 WL 12128680, at *1 (S.D. Fla. Aug. 16, 2013) ("several courts in this circuit have concluded that Rule 45 does not require personal service, but rather requires service reasonably calculated to insure receipt of the subpoena by the witness."). Here, Plaintiff attempted service on the Morillo Group Defendants through their counsel by email on March 20, 2018, and also served Defendant Luis Liendo through his wife on March 26 after he refused to accept in-person service at his home on March 23. Moreover, all the Panamanian shell companies were served through the Florida Secretary of State on March 22, and John Ryan's counsel accepted service on his behalf on March 21. Courts in the Eleventh Circuit permit this

9

type of service under Rule 45. *See* S*ec. & Exch. Comm'n v. Pence*, 2017 WL 5624271, at *1 (S.D. Fla. Nov. 20, 2017) (permitting service of subpoena on party's attorney); *In re Falcon*, 2008 WL 2038799, at *2 (permitting service on party's spouse at party's residence). Moreover, the Morillo Group Defendants indisputably received notice of the subpoenas, because their counsel responded by email on March 22 regarding the subpoenas and subsequently filed the pending motion to quash. *See In re Falcon*, 2008 WL 2038799, at *4 (declining to quash subpoenas where "the substitute service was reasonably calculated to insure receipt of the subpoena by the witness, as evidenced by the fact that Fajardo both timely received the subpoena from his wife, and was able to file a timely motion to quash the subpoena"). Requiring Plaintiff to re-issue the subpoenas under these circumstances would not only waste time and resources but also prejudice Plaintiff by denying it access to evidence at the upcoming hearing.

The Morillo Group Defendants also vaguely allege that they are "unaware of any defendants who . . . have received the fees and mileage requires for attendance at a hearing." As a preliminary matter, complaints regarding travel fees are irrelevant to the subpoenas for documentary evidence. *Ferguson v. Destefano*, 2011 WL 146716, at *2 (S.D. Fla. Jan. 18, 2011) ("Plaintiff's subpoena is clearly marked as being one only for production of documents and therefore in fact does not violate Rule 45 by omitting attendance and mileage fees."). With respect to the testimonial subpoenas, Plaintiff is only seeking employees who would testify on behalf of the defendant corporations as the functional equivalent of a party. Under such circumstances, the motion to quash should be denied. *Chiles v. Novartis Pharm. Corp.*, 2013 WL 12157928, at *2 (M.D. Fla. Feb. 15, 2013) (denying motion to quash for failure to tender mileage fees where employees "would clearly be testifying on behalf of the corporation, not in his/her individual capacity") (quotation omitted). Indeed, with respect to the subpoenas seeking

the testimony of corporate representatives, it is not even possible for Plaintiff to provide proper fees until the Morillo Group Defendants designate representatives. *Conyers v. Balboa Ins. Co.*, 2013 WL 2450108, at *2 (M.D. Fla. June 5, 2013) ("As asserted by Plaintiffs, it is not possible to pay travel expenses in advance when the identity and the location of the witness have not been disclosed by Balboa. Plaintiffs represent that they are willing, ready, and able to pay any applicable fees and costs once the corporate representative has been identified. Accordingly, Balboa's arguments concerning nonpayment of fees and costs are unavailing."). Moreover, Plaintiff did tender mileage fees to all defendants in the United States.

Finally, the Morillo Group Defendants lack standing to assert procedural challenges regarding the manner of service and mileage fees with respect to the third party subpoenas issued to BAC Florida Bank and Jehu Holdings, Inc. *Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 11322922, at *2 (N.D. Ga. Mar. 4, 2008) ("Plaintiff Ireh's attack on the subpoena issued to Morehouse School of Medicine, to the extent based on its form, issuance, service and response requirements, exceeds the scope of his standing to bring a motion to quash.") (collecting cases), *adhered to on reconsideration*, 2008 WL 11324057 (N.D. Ga. Apr. 9, 2008).

**D.     The Subpoenas Seek Relevant Evidence and Are Narrowly Tailored**

The subpoenas seek evidence concerning any payments to or from Plaintiff and Defendants and information relating to the destruction, concealment, or transfer of documents related to Plaintiff or Defendants. These requests go to the heart of the allegations in this case: that the Morillo Group Defendants orchestrated an elaborate bid-rigging and price-fixing scheme and that the Morillo Group Defendants are attempting to transfer the ill-gotten gains of their conspiracy in an attempt to cover it up. Although the Morillo Group Defendants clip quotations from *TIC Park Ctr. 9, LLC v. Cabot*, 2017 WL 3034547 (S.D. Fla. July 18, 2017), in support of

11

their claim that their financial records cannot be disclosed, that decision clearly explains why the evidence Plaintiff is seeking is highly probative and must be produced:

> As such, Defendants believe that any relevancy is outweighed by the sensitive and private nature of the financial records requested. However, Defendants' arguments have already been rejected in the Court's prior Order on various motions to quash Plaintiff's subpoenas. [D.E. 85]. In that Order, the Court found that the financial information of Michael and Catherine Cabot were central to the fraudulent conduct alleged because the Cabots purportedly pursued the fraudulent scheme at issue in this action for their own personal gain. The financial scheme allegedly included transfers among both personal and business accounts as a way to conceal the illegal activity . . . . Defendants' arguments, with respect to the personal financial information of the Cabots, lack merit because the information requested relates directly to the level of fraudulent activity engaged in during the relevant time period.

*Id.* at *7.

Moreover, although the Morillo Group Defendants contend that the subpoenas are overbroad, the subpoenas are narrowly tailored to primarily seek documentary evidence created on or after January 1, 2018 – *i.e.*, just a three-month period – and concerning defined entities. Even if the requests were overbroad, however, it would not follow that the subpoenas should be quashed. Rather, it would simply be a basis for narrowing the scope of the subpoenas.

**E.     The Subpoenas Provide a Reasonable Time for Compliance Under the Present Circumstances**

A subpoena need only allow "a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i). "Although the rule does not specify what constitutes reasonable time to comply, common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case." *Minor I Doe through Parent I Doe v. Sch. Bd. for Santa Rosa Cty., Fla.*, 2009 WL 10674249, at *2 (N.D. Fla. Nov. 23, 2009) (citing Wright & Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008)). The Morillo Group

Defendants, as the "movants[,] have the burden to demonstrate that the subpoenas should be quashed" on this ground. *Id.*

The majority of Plaintiff's document subpoenas were issued on March 20, 2018 and served by March 22, 2018, well in advance of the hearing scheduled for April 4, 2018. *Noel-Wagstaffe v. Metro. Cas. Ins. Co.*, 2017 WL 6047679, at *2 (S.D. Fla. Dec. 7, 2017) ("fourteen days from the date of service is presumptively reasonable") (collecting cases).

The testimonial subpoenas were issued on March 26, 2018, a reasonable time for compliance under the pressing circumstances present here, so that Plaintiff can obtain evidence for the April 4th preliminary injunction hearing. *See State Farm Fire & Cas. Co. v. Hood*, 2007 WL 3268434, at *2 (S.D. Miss. Oct. 31, 2007) ("Mr. Wyatt also argues that because the Subpoena was served only three days before the scheduled hearing, it fails to allow a reasonable time for compliance, citing Fed.R.Civ.P. 45(c)(3)(A)(I). However, the court finds that because of the expedited nature of this case, the fact that the preliminary injunction hearing was scheduled on October 23, 2007, the fact that this court only recently (on October 25, 2007) clarified its order sealing the case to allow the parties to contact and subpoena witnesses for the hearing, and the fact that the Subpoena does not require the production of documents, the short notice given to Mr. Wyatt is not unreasonable.").

Finally, the Morillo Group Defendants do not have standing to complain on behalf of third party witnesses about the alleged lack of sufficient time to respond. *Ireh*, 2008 WL 11322922, at *2. *See also Steel Works Rebar Fabricators, LLC v. Alterra Am. Ins. Co.*, 2012 WL 1918704, at *2 (S.D. Fla. May 25, 2012) ("To the extent that Defendant complains about the lack of sufficient time for the non-parties to respond to the subpoenas, the Defendant lacks standing to make such a challenge.").

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (a) deny the Morillo Group Defendants' motion to quash subpoenas for April 4 and for a protective order and (b) grant Plaintiff's cross motion to compel.

Dated: April 2, 2018

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Steven W. Davis*
Steven W. Davis
(Bar No.: 347442)

David Boies
Nicholas A. Gravante, Jr.
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

George F. Carpinello
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel: (518) 434-0600
Fax: (518) 434-0665

*Attorneys for Plaintiff*