**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PDVSA US LITIGATION TRUST<br><br>Plaintiff,<br><br>v.<br><br>LUKOIL PAN AMERICAS LLC; LUKOIL PETROLEUM LTD.; COLONIAL OIL INDUSTRIES, INC.; COLONIAL GROUP, INC.; GLENCORE LTD.; GLENCORE INTERNATIONAL A.G.; GLENCORE ENERGY UK LTD.; MASEFIELD A.G.; TRAFIGURA A.G.; TRAFIGURA TRADING LLC; TRAFIGURA BEHEER B.V.; VITOL ENERGY (BERMUDA) LTD.; VITOL S.A.; VITOL, INC.; FRANCISCO MORILLO; LEONARDO BAQUERO; DANIEL LUTZ; LUIS LIENDO; JOHN RYAN; MARIA FERNANDA RODRIGUEZ; HELSINGE HOLDINGS, LLC; HELSINGE, INC.; HELSINGE LTD., SAINT-HÉLIER; WALTROP CONSULTANTS, C.A.; GODELHEIM, INC.; HORNBERG INC.; SOCIETE DOBERAN, S.A.; SOCIETE HEDISSON, S.A.; SOCIETE HELLIN, S.A.; GLENCORE DE VENEZUELA, C.A.; JEHU HOLDING INC.; ANDREW SUMMERS; MAXIMILIANO POVEDA; JOSE LAROCCA; LUIS ALVAREZ; GUSTAVO GABALDON; SERGIO DE LA VEGA; ANTONIO MAARRAOUI; CAMPO ELIAS PAEZ; PAUL ROSADO; BAC FLORIDA BANK; EFG INTERNATIONAL A.G.; BLUE BANK INTERNATIONAL N.V.<br><br>Defendants. | **Case No. 1:18-CV-20818 (DPG)** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS HELSINGE INC. AND JOHN RYAN'S**
**MOTION FOR ORDER TO SHOW CAUSE [Dkt. No. 191]**

Plaintiff PDVSA U.S. Litigation Trust files this opposition to Helsinge, Inc. and John Ryan's Motion for Order to Show Cause (the "Motion") and state:

The Motion is baseless.  It accuses Plaintiff's counsel of misrepresenting facts in both motion papers and oral argument.  It accuses Plaintiff of intentionally manipulating events in Switzerland to cause the Ryan server to be sent to Switzerland so as to manufacture a violation of this Court's Temporary Restraining Order issued March 5, 2018 (the "TRO" [Dkt. No. 9]).

Defendants' wild allegations are simply wrong.  Plaintiff will address the accusations, and first will provide a factual account of the events at issue which show why the Motion should be denied.  Plaintiff is filing herewith declarations from both its Swiss counsel, Guerric Canonica, and Boies Schiller Flexner LLP ("BSF") attorney Steven Davis, describing the actual events.

## THE FACTS

The case was filed on March 3, 2018 [Dkt. No. 1]. The Court entered the TRO on March 5, 2018, which included a provision ordering Plaintiff to serve Defendants by March 19, 2018 [Dkt. No. 9].  On March 7, 2018, the Clerk issued summonses for 34 of the Defendants, including Defendant John Ryan [Dkt. No. 29].  On March 8, 2018, the Court ordered that the file in this case be unsealed [Dkt. No. 48].  That same day, Plaintiff began the process of serving the Summons, Amended Complaint and the TRO and supporting papers (the "Service Documents") on all Defendants.[1]  Plaintiff's counsel retained the firm of Serving by Irving, Inc., a professional process server that operates nationwide, and instructed it to begin service immediately.[2]  In order to provide actual notice to the maximum extent feasible, BSF sent many of the Defendants via

---

[1] Davis Decl. at ¶ 4.
[2] *Id*.

2

email copies of the Amended Complaint, TRO and supporting papers, and a cover letter informing Defendants of the preliminary injunction hearing scheduled for March 19, 2018.[3]

On March 8, 2018 at 12:31 p.m., BSF sent such an email to defendant Ryan at his Helsinge email account (jack.ryan@helsingeinc.com).[4] In accordance with BSF's instructions, early in the morning of Friday, March 9, 2018, Serving by Irving sent a process server out with the Service Documents to Ryan's residence at 11241 NE 9th Avenue, Biscayne Park, FL 33161.[5] Service was accomplished at that location by hand delivery to Ryan's sister at 12:15 p.m. on March 9, 2018.[6]

In the Swiss criminal proceeding, also on March 9, 2018, PDVSA's Swiss counsel, Guerric Canonica, had a conversation with the Swiss prosecutor in Geneva.[7] Mr. Canonica informed the prosecutor that Defendant John Ryan, who was being held in Swiss police custody, may have had possession of a server in Miami, and that there may be other servers in Caracas and Geneva.[8] That same day, after the process server had been dispatched in Miami, an investigator for Plaintiff (not involved in service of process), who was conducting surveillance at Mr. Ryan's Miami home, at 10:05 a.m. observed a person who was later identified as Mr. Ryan's husband, Wilmer Maldonado, remove what appeared to be a server from the Ryan residence and

---

[3] Davis Decl. at ¶ 4.
[4] *Id.* at ¶ 5 and Exh. 1 thereto.
[5] *Id.*, and Exh. 2 thereto.
[6] *Id.* Service in Miami was necessary because, as set forth in the Canonica Declaration at ¶ 10, under Swiss law it is a criminal violation to attempt to serve United States legal process in Switzerland through any method other than the Hague Convention.
[7] Canonica Decl. ¶¶ 3-4.
[8] *Id.* at ¶ 4.

speed away in an SUV.[9]  Prior to that time, BSF had no knowledge that the server was going to be moved, nor did BSF know where the server was headed.[10]

Plaintiff made inquiries and Mr. Canoncia learned from Mr. Ryan's Swiss attorney, Eve Dolon, that the server was being sent by Federal Express to Geneva.[11]  Ms. Dolon told to Mr. Canoncia that she had asked Mr. Ryan to have the server sent to the prosecutor to demonstrate his cooperation in the Swiss investigation.[12]  Apparently, she hoped to get favorable treatment for Mr. Ryan, perhaps his release from jail.  Ms. Dolon later provided Mr. Canonica with a copy of the Federal Express shipping receipt, which BSF received by about 12:30 p.m.[13]

Because removal of the server from this Court's jurisdiction would violate the TRO, Plaintiff's counsel wanted to discuss the situation with an attorney for Mr. Ryan in Miami.[14]  However, when Mr. Canonica, at BSF's request, asked Ms. Dolon who was representing Mr. Ryan in Miami, she was unable to provide that information.[15]  Following consultations among Plaintiff's litigation team (who were widely dispersed and engaged in other matters), the framework for the requested relief was determined and preparation of the papers continued. [16]

In light of the foregoing, at 4:15 p.m., Mr. Davis called chambers and informed the Court that an emergency motion to stop shipment of the server out of the Court's jurisdiction would be forthcoming.[17] In order to prepare the motion, BSF needed a declaration from its investigator, John Brennan, who arrived at BSF's Miami office at 5:50 p.m.[18]  Plaintiff's Emergency Motion

---

[9]  Davis Decl. at ¶ 6.
[10]  *Id.* at ¶¶ 6, 20.
[11]  *Id*. at ¶¶ 7-8; Canonica Decl. ¶ 8.
[12]  Canonica Decl. at ¶ 9; Davis Decl. at ¶ 8,
[13]  Canonica Decl. at ¶ 8; Davis Decl. at ¶ 8.
[14]  Davis Decl. at ¶ 7.
[15]  Canonica Decl. at ¶ 7.
[16]  Davis Decl. at ¶ 9.
[17]  Davis Decl. ¶10.
[18]  Davis Decl. at ¶11.

4

for Enforcement of Court's Temporary Restraining Order (the "Emergency Motion") [Dkt. No. 60], was then finalized and filed at 8:06 p.m.[19]  The Clerk of Court contacted Mr. Davis at 8:50 p.m. and advised that the Motion would be presented to the Court.[20]

The Emergency Motion disclosed all material facts then known about the circumstances of the movement of the server.  The Emergency Motion disclosed:

- o Plaintiff's counsel had been informed by Mr. Ryan's Swiss counsel that the purpose of removing the server was to deliver it to the legal authorities in Switzerland who are conducting criminal investigations into the events alleged in the Complaint.

- o Swiss counsel had informed Plaintiff's counsel that the server was taken to Federal Express for delivery to the Swiss authorities in Geneva.

- o Plaintiff requested this Court to order that such transport cease and that the server be kept within the jurisdiction of the Court so that the evidence that it contained could be preserved and copied by means of appropriate forensic methods for electronically-stored data that would not alter or damage the server.

- o Although Plaintiff had no objection to the server being shipped and delivered to the Swiss authorities, Plaintiff requested an opportunity to copy and preserve the evidence contained in the server before it left the country.

- o Regardless of the motive, the action of removing the server violated the Court's TRO as to preserving the evidence in this case and the TRO must be enforced.

Emergency Motion [Dkt. No. 60], at Paragraphs 3-6.

The Emergency Motion contained an accurate and complete description of the facts. Among other things, it disclosed that Ryan's counsel had said that the server was being sent to Geneva in connection with Ryan's cooperation with the Swiss authorities in the criminal investigation.  The Court entered an Order at 10:27 p.m. on March 9, 2018 [Dkt. No. 61],

---

[19] *Id*. at ¶12.
[20] *Id*. at ¶13.

granting the Emergency Motion in part (the "Order") and directing Federal Express to maintain possession of the package pending further order of the Court.[21]

Mr. Davis then called multiple telephone numbers at Federal Express, as he attempted to inform Federal Express of the Order, but he was unable to reach anyone.[22] Based on instructions from the Federal Express website, at about 11:30 p.m., Mr. Davis submitted a form in which he notified Federal Express of the Order, including that it required Federal Express to retain the package and not deliver it to Geneva.[23] At 11:37 p.m., Federal Express sent Mr. Davis an email which acknowledged receipt of his submission.[24] In response, Mr. Davis sent another email notice to Federal Express at 11:56 p.m., again advising it of the Order and attaching a copy of Order itself as well.[25] In reply, Mr. Davis received an email sent by Federal Express at 12:17 a.m. which stated that Federal Express had received his 11:56 p.m. email and promising a further response.[26] Plaintiff never received any other communications from Federal Express.[27] The Order also was hand-delivered on Saturday, March 10, 2018, to the Federal Express Shipping Center at 2600 SW 39th Street in Fort Lauderdale.[28] Despite Federal Express's acknowledged receipt of these communications, including a copy of the Order itself, Plaintiff has never received any further response from Federal Express.[29]

Accordingly, Plaintiff made every reasonable effort to notify Federal Express. Unfortunately, Federal Express ignored the notice and, on Monday morning March 12, 2018 in

---

[21] Davis Decl. at ¶ 14.
[22] *Id*. at ¶ 15.
[23] *Id*. at ¶ 16
[24] *Id*. and Exh. 3 thereto.
[25] *Id*. and Exh. 4 thereto.
[26] Davis Decl. at ¶ 17, and Exh. 5 thereto.
[27] Davis Decl. at ¶18.
[28] *Id*.
[29] *Id*.

6

Geneva, the package was delivered to the Swiss prosecutor.[30] Thus, by business hours on March 12 in Miami (where the time is six hours behind Switzerland), there was nothing further that could be done in terms of dealing with Federal Express because the package was already out of its possession and control. As the foregoing demonstrates, Plaintiff attempted to enforce the TRO and the Order so that the server would remain in the Court's jurisdiction, but Federal Express ignored the Order.

## ARGUMENT

It appears that what really may be happening here is that Helsinge, which allowed its employee Ryan to keep the server at his residence, is desperately trying to regain control of the server – presumably because it contains incriminating evidence. Ryan's Swiss counsel advised him to arrange for the server's removal from Miami to Geneva in an attempt to secure favorable treatment for Ryan, who was in custody. By giving Ryan possession of the server, Helsinge took the risk that he would use the server for his own purposes. With Ryan having done just that, Helsinge is trying to blame Plaintiff for its own decision. Defendants' cynical ploy, based on false allegations, should be rejected.

### A.   Plaintiff did not "orchestrate a scheme" to violate the TRO

Defendants' accusation that Plaintiff sought to violate the TRO (Motion at 4-12) is false. Mr. Canonica informed the Swiss prosecutor that server might be located at Ryan's home in Miami, and in Geneva and Caracas. Defendants' reliance on the Swiss prosecutor's letter to Ms. Dolon[31] is misplaced. The letter says only that the prosecutor was told about the "possible"

---

[30] Davis Decl. at ¶ 18.
[31] Exhibit A to the Motion [Dkt. No. 191].

existence of the server at Ryan's domicile.[32] It does not say that Mr. Canonica urged the prosecutor to obtain the server – which Mr. Canonica specifically denies.[33]

Defendants argue that Mr. Canonica confirmed there was a scheme to get the server out of Miami because, in an e-mail written in French, he purportedly told the prosecutor that BSF was "reluctant" to inform this Court that the server had been removed from Ryan's home. Motion at 10. This argument is based on a mistranslation of the email that appears as Defendants' Exhibit I to the Motion. As Mr. Canonica states in his Declaration:

> What I actually said in my email in paragraph 3 – which I wrote in French – was that the **lawyers at BSF were *obligated* to inform the presiding judge** about removal of the server (". . . ont été contraints d'informer le juge . . ."). The word "reluctant" as used in the English translation in Exhibit I is incorrect. (emphasis original and supplied) [34]

From the outset of this case, Plaintiff's counsel has been concerned with protecting evidence and once they ascertained that the server was being placed at risk, they took steps to prevent it from leaving the jurisdiction.

### B. Plaintiff accurately described the facts to the Court which justified the filing of the Emergency Motion.

Defendants call the Emergency Motion a "sham." Motion at 12. The facts set out in the Emergency Motion were well-founded. First, Plaintiff hid nothing from the Court. Plaintiff did not cause the server to be shipped to Switzerland – Mr. Ryan and his Swiss counsel did so. Once Plaintiff learned the destination of the server, it tried to learn the identity of Mr. Ryan's Miami counsel – but no information was provided. Thereafter, Plaintiff filed the Emergency Motion in an effort to prevent removal of the server in violation of the TRO.

---

[32] *See* Canonica Decl. at ¶ 4.
[33] *Id*. at ¶ 5; *see* Davis Decl. at ¶ 19.
[34] Cononica Decl., at ¶ 12. A certified translation confirming Mr. Canonica's understanding is attached as Exhibit 6 to the Davis Declaration. Mr. Canonica is, of course, best equipped to explain what he meant in his own writing.

### C. The Certification of Emergency was true and correct.

As set forth above and in the Davis Declaration, an emergency existed. Mr. Davis executed the Certification of Emergency setting forth the very specific requirements required by local rule, which were satisfied by the circumstances on March 9. The server was leaving Miami and Plaintiff tried to stop it. Because BSF was unable to learn if Mr. Ryan had Miami counsel, there was no one to speak to about the situation. The Emergency Motion described that BSF was in contact with Mr. Ryan's Swiss counsel, who had been informed of the TRO and explained that she had asked Ryan to send the server to the Geneva prosecutor. The server was then in the custody of Federal Express, so a court order was imminently necessary to prevent its removal from the jurisdiction.

### D. There was no attempt by Plaintiff to "circumvent" the TRO by obtaining a copy of the server.

This accusation by Defendants (Motion at 16) is wrong as well. When Plaintiff learned Ryan was removing the server from the jurisdiction, it properly sought to enforce the TRO. Plaintiff also recognized that Ryan was acting to cooperate with the Swiss prosecutor. In order that the contents of the server could be maintained in the Court's jurisdiction, while at the same time Ryan might be able to cooperate with the Swiss prosecutor, Plaintiff asked the Court to authorize copying before the server was removed. (Emergency Motion [Dkt. No. 60] ¶7). This request was entirely reasonable under the circumstances. In issuing the Order, the Court attempted to maintain the server within its jurisdiction for further consideration at the March 14 hearing. This was thwarted, however, by the combined actions of Ryan and Federal Express.

### E. **Plaintiff made accurate and complete statements at the hearing.**

Defendants claim that, at the March 14 hearing, Plaintiff's counsel "made several statements that appear false and/or misleading." Motion at 16. The Motion then identifies two supposed such statements:

1. "And as the Court is aware, a server that was subject of the Court's Order was removed and shipped to Switzerland … Now they claim that nothing was done to it and it was simply sent to Switzerland. We don't have any way of knowing that. What we know is that it was taken out of the Court's jurisdiction in violation of the TRO."

2. "Your Honor, we were trying to track it down. We were trying to get papers prepared. My understanding was that there was an effort to contact Court and see a time when people could come. And if we got there late, I apologize."

These statements are true, correct and complete. Plaintiff's Declarations filed herewith show there was a great deal of activity on March 9 regarding the server and Plaintiff's actions sought in good faith to ensure compliance with the TRO and preserve evidence.

### F. **Plaintiff did not intentionally delay service of the TRO on Ryan.**

Plaintiff began serving and giving notice to all of the Defendants on March 8, 2018. Ryan was sent an email on March 8, 2018 attaching the Summons and Complaint and the TRO papers at 12:31 p.m. That same day the process server was instructed to make personal service at Ryan's residence, which occurred through service on Ryan's sister at his residence at 12:15 p.m. on March 9, 2018. Plaintiff made no effort to delay service on Ryan until after the server was removed. The Court file was under seal until the morning of March 8, and Plaintiff began the process of notice and service on all Defendants immediately. Plaintiff did not know that the server was going to be removed until Maldonado sped off with the server at 10:05 a.m., on March 9, 2018. It was thus impossible for Plaintiff to have delayed service to await the

occurrence of an event about which it had no knowledge. The process of serving Ryan began the day before the event and was completed within two hours thereafter.

### G. Plaintiff did not violate the TRO.

Defendants assert that Plaintiff violated the TRO by attempting to prevent the removal of the server and obtain a copy of its contents. Motion at 18. Again, Defendants are wrong. In issuing the TRO, the Court denied Plaintiff's request to obtain access to the Morillo Group Defendants' premises to make copies to preserve the contents of their computers and electronic devices. However, the Court also enjoined the Morillo Group Defendants (including Ryan) from, among other things, "removing" or "transferring" "electronic records." Yet that is exactly what was occurring on March 9. Even if Ryan and Dolon were not aware of the TRO at the moment the server was removed from Ryan's house, Dolon was informed of the TRO shortly thereafter and apparently did not attempt to stop the ongoing shipment.

In terms of Plaintiff's actions, on March 9, a major change in circumstances had occurred – an important piece of evidence was being "removed" from the Court's jurisdiction in violation of the TRO. That change alone justified Plaintiff's informing the Court and renewing its request to copy the server's contents. While that Court did not grant that particular relief, the Order did direct that Federal Express return the server to Miami and hold it there, apparently so that Plaintiff's request for copying could be considered in due course. Moreover, Plaintiff's proposed relief attempted to protect both the interest in maintaining the evidentiary data from the server in Miami, while recognizing the interest of the Swiss authorities in obtaining the server. This was entirely appropriate under the fast developing circumstances.

## **CONCLUSION**

Plaintiff and its counsel provided the Court with accurate, truthful and complete information and requested enforcement of the TRO in good faith. The Motion should be denied.

Dated: April 13, 2018.

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Steven W. Davis*
Steven W. Davis (Bar No.: 347442)
Bank of America Tower
100 Southeast 2nd St., Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
Fax: (305) 539-1307

David Boies
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
Nicholas A. Gravante, Jr.
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

George F. Carpinello
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel: (518) 434-0600
Fax: (518) 434-0665
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document was filed on April __, 2018, with the Clerk of the Court via CM/ECF. I further certify that the foregoing document is being served this date on all counsel of record to all parties via transmission of Notices of Electronic Filing.

By: */s/ Steven W. Davis*