UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20818-CIV-GAYLES

PDVSA US LITIGATION TRUST,

        Plaintiff,

v.

LUKOIL PAN AMERICAS LLC, *et al.*,

        Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR AN ORDER TO SHOW CAUSE AND OTHER RELIEF**

    Defendants Helsinge Inc. and John Ryan (collectively, "Defendants"),[1] submit this Reply in support of their Motion for an Order to Show Cause and Other Relief [ECF No. 191] ("Motion").[2]

**I.    INTRODUCTION**

    Plaintiff's Response to the Motion [ECF No. 246] ("Response") confirms that the "emergency" filing [ECF No. 60] was manufactured by Plaintiff to promote a fictional narrative that Defendant John Ryan, under suspicious circumstances, intentionally violated this Court's temporary restraining order. The Response ignores or glosses over the facts and issues raised in Defendants' Motion and, at times, attempts to further mislead the Court, including by continuing

---

[1] In filing this Reply, Defendants do not waive any objections, defenses or rights available to them, including as to the sufficiency of service of process or lack of personal jurisdiction and to arbitrate any of the claims asserted by the Plaintiff.

[2] All capitalized terms not otherwise defined in this Reply shall have the meaning ascribed to them in the Motion.

to omit material facts. Despite its attempts at obfuscation, Plaintiff's Response confirms several key additional facts that are damning to Plaintiff and conclusively establish that Plaintiff: (i) orchestrated a scheme to circumvent the Court's TRO and obtain a copy of Defendant Helsinge, Inc.'s server; (ii) caused the server to be shipped to Switzerland when only it—and not Mr. Ryan or his counsel—were aware of the TRO; (iii) deprived Helsinge of its rightful possession and use of the server; and (iv) filed a sham Emergency Motion in which it omitted material facts and made affirmative representations to conceal from the Court that Plaintiff caused the server to be shipped to Switzerland in violation of the TRO, to conceal from the Court its attempts to obtain a copy of the server in contravention of the TRO, and to mislead the Court into believing that defendants had violated the TRO for the purpose of convincing the Court to reconsider its denial of Plaintiff's request to seize and copy all of Defendants documents, including servers.

Furthermore, Plaintiff fails to address that (i) Plaintiff's Certification of Emergency contained statements calculated to mislead the Court to believe that an emergency existed and to hide from the Court that Plaintiff both created the purported emergency and that Plaintiff delayed the filing of its Emergency Motion because it was attempting to obtain a copy of the server in contravention of the TRO; and (ii) Plaintiff made false and/or misleading statements to the Court at the March 14, 2018 hearing, including in response to questions posed by the Court.

Accordingly, and for the reasons explained below, the Motion should be granted and the Court should issue an order to show cause and grant the other relief requested.

## II. ARGUMENT

    **A. Plaintiff's Response serves only to further confirm that Plaintiff attempted to obtain a copy of the Helsinge server in contravention of the TRO, caused the server to be shipped to Switzerland in violation of the TRO, deprived Helsinge of its rightful possession and use of its server and, filed a sham Emergency Motion in which it omitted material facts and made affirmative representations to conceal its own wrongful conduct from the Court and mislead the Court into believing that**

2

>  **defendants had violated the TRO for the purpose of convincing the Court to reconsider its decision denying Plaintiff's request to seize and copy all of defendants documents.**

Beyond failing to dispute any of the facts cited in the Motion, Plaintiff confirms several key facts which conclusively demonstrate Plaintiff's wrongful conduct.

Importantly, Plaintiff confirms that when its Swiss counsel informed the Swiss prosecutor, *on the morning of March 9, 2018* (Miami time),[3] of the existence of the server at Mr. Ryan's Miami residence, it *did not* tell the Swiss prosecutor of the TRO preventing the server from being removed from Mr. Ryan's residence. In fact, Plaintiff's Response confirms that it did not inform the Swiss prosecutor of the TRO or the Court's Order [ECF No. 61] directing FedEx to hold shipment of the server (the "FedEx Order") until three days after the server had been shipped. (*See* Canonica Decl. ¶ 11) ("On Monday March 12, 2018, I sent an email to the Swiss prosecutor which informed him of the existence of this Court's Temporary Restraining Order. A copy of my e-mail is attached as part of Exhibit I to Defendants' papers."). It is thus undisputed that Plaintiff waited to tell the Swiss prosecutor about this Court's orders regarding the server until *the server was about to be delivered to the Swiss prosecutor's office in Geneva (Plaintiff does not dispute it was able to track the shipment)*.

Plaintiff does not dispute that even on March 12, 2018, when it first advised the Swiss prosecutor of the TRO and the FedEx Order, it did not provide the Swiss prosecutor with a copy of either order. Still, worse, Plaintiff actually misrepresented to the Swiss prosecutor that the TRO "justified" Plaintiff's request for a copy of the server, despite that the TRO denied Plaintiff's request to copy the server. (*See* Email from Canonica to Johan Droz [ECF No. 191-9]).

---

[3] *See* Declaration of Guerric Canonica ("Canonica Decl.") [ECF No. 246-2] ¶ 4.

3

The Response also confirms that it was Plaintiff's U.S. counsel, the Boies, Schiller, Flexner firm ("BSF"), that asked PDVSA's Swiss counsel, Guerric Canonica ("Canonica"), to advise the Swiss prosecutor, of the existence of the server at the Miami residence of Mr. Ryan. This admission by Plaintiff is buried in paragraph 19 of Mr. Davis' declaration. (*See* Declaration of Steven W. Davis ("Davis Decl.") [ECF No. 246-1] ¶ 19). Specifically, Mr. Davis declares: "The attorneys at BSF did not ask Swiss counsel, Guerric Canonica, to advise the Swiss prosecutor of the location of Ryan's server in Miami in order to 'cause' the server to be removed from the United States." (*Id.*). Tellingly, Plaintiff offers no alternative explanation for ***why it directed*** Plaintiff's Swiss counsel to inform the Swiss prosecutor of the existence of server at Mr. Ryan's residence. Nor does Plaintiff try to explain why it told the Swiss prosecutor about the server on March 9, 2018, just four days after this Court denied Plaintiff's request to copy the server in its TRO. The fact that it was BSF, Plaintiff's counsel in this case, that requested that PDVSA's Swiss counsel inform the Swiss prosecutor of the existence of the server at Mr. Ryan's residence, further confirms the request was part of an orchestrated attempt to try to obtain a copy of the server in contravention of the TRO that had been entered just days earlier. The facts leave no doubt that Plaintiff was implementing a scheme that it hoped would allow it to copy the server either in Miami (by convincing Mr. Ryan's Swiss counsel or this Court to allow it to copy the server) or in Switzerland (by convincing the Swiss prosecutor to allow it to copy the server). Plaintiff devised this scheme even though it involved circumventing and violating the TRO and misleading this Court and the Swiss prosecutor.

Moreover, Plaintiff does not dispute any of the other facts cited in the Motion that demonstrate Plaintiff's wrongful conduct. For example, Plaintiff does not dispute any of the facts which prove that Plaintiff purposefully did not serve or otherwise notify Mr. Ryan, or anyone at

4

his residence, or his Swiss counsel, about the TRO prior to the time the server was removed from Mr. Ryan's Miami residence. (*See generally* Resp.). Indeed, it appears Plaintiff attempts to further mislead the Court by stating in its Response that "it sent . . . an email [with the TRO attached] to defendant Ryan at his Helsinge email account," but omitting from this explanation that it, of course, knew Mr. Ryan was detained in Switzerland as the result of the criminal proceeding PDVSA initiated there, and therefore did not have access to his email. (*Id.* 3). In any event, Plaintiff does not contest that Mr. Ryan did not have notice of the TRO before the server was removed from his residence and delivered to FedEx. (*See generally id.*). And although Plaintiff asserts it sent a process server to Mr. Ryan's residence "*early in the morning* of Friday, March 9, 2018" (Resp. 3), Plaintiff nonetheless admits that the process server did not serve the TRO at the Ryan residence until over two hours after Plaintiff's investigators saw the server leave the residence (*see* Second Declaration of John Brennan [ECF No. 60-1] ¶ 3 (stating that at approximately 10:05 a.m. he saw the server being removed from Mr. Ryan's Miami residence)). The process server's affidavit shows the TRO was served at 12:15 p.m. (*See* Affidavit of Service [ECF No. 246-1] 1).

Plaintiff also does not dispute that it did not attempt to serve the TRO at the Ryan residence earlier despite that: (i) when it moved for a TRO it listed Mr. Ryan's residence as one of four locations where it asked the Court to permit it to seize items including servers; (ii) it had Mr. Ryan's house under surveillance and on the morning of March 9, 2018 (the same day the Swiss prosecutor was informed of the existence of the server at Mr. Ryan's residence), it had multiple investigators outside his home including Plaintiff's lead investigator—Mr. Brennan. Plaintiff also does not dispute that its investigators did not mention the TRO to Mr. Maldonado (Mr. Ryan's husband) as he left the house with the server on his way to FedEx.

Furthermore, Plaintiff does not contest that it chose not to serve the TRO on Mr. Ryan's Swiss counsel, Ms. Dolon, despite the fact that PDVSA's Swiss counsel and BSF knew she was representing Mr. Ryan in the Swiss proceeding and even communicated with her on March 9 about the server, but only after the server had been removed from the Ryan residence. (*See* Resp. 4).[4] The declaration of Plaintiff's Swiss counsel, Mr. Canonica, states that *after* the server had been delivered to FedEx he "told Ms. Dolon that the U.S. judge had issued a temporary restraining order (TRO), which *appeared* to prohibit removing the server" (Canonica Decl. ¶ 8 (emphasis added)). The email Mr. Canonica sent Ms. Dolon, however, which copied two BSF attorneys (Messrs. Carpinello and Barrett), makes abundantly clear that far from explaining to Ms. Dolon that the TRO in any way prohibited the server from being shipped to Switzerland, *Mr. Canonica represented to Ms. Dolon that Plaintiff had **no issues with the server being shipped to Switzerland** and that **Plaintiff simply wanted to make a copy** in case the server were to be damaged in transit to Switzerland*. (*See* Canonica email to Dolon #1 [ECF No. 191-5]).

Plaintiff does not dispute that, although its investigators observed the server leave Mr. Ryan's residence at 10:05 a.m., it delayed filing its Emergency Motion until 8:07 p.m., ten hours

---

[4] Plaintiff's purported excuse for not sending Ms. Dolon a copy of the TRO when it emailed her to request to copy the server is that "under Swiss law, it is a criminal offense (Article 271 of the Swiss Penal Code) to deliver or transmit legal process, including a court order, to a defendant except through formal service under the Hague Convention." (Canonica Decl. ¶ 10). Article 271 of the Swiss Penal Code states: "*Any person who carries out activities on behalf of a foreign state on Swiss territory without lawful authority*, where such activities are the responsibility of a public authority or public official, any person who carries out such activities for a foreign party or organization, any person who encourages such activities, is liable to a custodial sentence not exceeding three years or to a monetary penalty, or in serious cases to a custodial sentence of not less than one year." (*See* Article 271 (emphases added), attached as **Exhibit A**). Article 271 makes no mention of delivering legal papers, and the Court has the authority "to conduct [its] own independent research to interpret foreign law." *Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Int'l, Inc.*, 331 F. Supp. 2d 290, 293–94 (D.N.J. 2004).

6

later.  (*See* Davis Decl. ¶ 9).  Plaintiff's purported excuse for the delay is that it had to "consult among [its] litigation team, who were widely dispersed and engaged in other matters." (*Id.*).  This conclusory assertion, however, is belied by all of the communications with Mr. Ryan's Swiss counsel wherein Plaintiff was focused on obtaining a copy of the server and not on preventing the server from leaving the jurisdiction.  (*See, e.g.*, Canonica email to Dolon #1 & #2 [ECF No. 191-6]).  There is nothing in the record to indicate that Plaintiff believed that a true emergency had arisen and that it acted diligently with respect to the emergency.  To the contrary, the facts show that the purported "emergency"—the shipment of the server to Switzerland—was of Plaintiff's own making and actually desired by Plaintiff.  The record establishes that Plaintiff was focused on obtaining a copy of the server without regard for potential violations of the TRO and only filed its "emergency" motion over ten hours after the purported emergency arose for the sole purpose of trying to have the Court order that it be permitted to copy the server after its other attempts to copy the server had failed.

Furthermore, Plaintiff's allegations regarding its attempts to serve FedEx with a copy of the Court's FedEx Order (*see* Davis Decl. ¶¶ 14–18), only serve to demonstrate that Plaintiff—unhappy that the Court's FedEx Order did not permit it to copy the server (as it had again requested)—did not make any serious attempt to have FedEx comply with the Order.  Plaintiff evidently hoped that the shipment of the server to the Swiss prosecutor would be completed so Plaintiff could try to convince the Swiss prosecutor to allow Plaintiff to copy the server, as it ultimately tried to do.  Among other things, Plaintiff does not explain why it did not continue to try to communicate with FedEx regarding the order or bring FedEx's failure to comply with the order to the Court's attention despite that the package was in FedEx's possession for three days through March 12, 2018.

Finally, Plaintiff does not dispute the authenticity of the email its Swiss counsel sent to the Swiss prosecutor on March 12, 2018 (*see* Email from Canonica to Johan Droz [ECF No. 191-9]), just as the server was about to be delivered to him and in which Plaintiff's Swiss counsel advises the Swiss prosecutor for the first time of the existence of the TRO, without attaching a copy of it, and falsely states the TRO entitled Plaintiff to a "full copy of the server." (*Id.*). Instead of addressing the various statements in its March 12 email, Plaintiff quibbles with the translation of a single word in the email. (*See* Resp. 7–8). But whether the word translated as "reluctant" should have been translated as "obligated" (or, as translated in new translations obtained by Defendants as "forced," attached as **Exhibit B**) does not at all impact the arguments made in the Motion.

> **B.   Plaintiff does not make a meaningful attempt to contest that its Certification of Emergency contained false and misleading statements and, in fact, attempts to further mislead the Court in its Response.**

In the one short paragraph it devotes to this issue, Plaintiff fails to provide any reason for why this Court should not find that Plaintiff made multiple false statements to the Court in its Certification of Emergency. (*See* Resp. 9). Plaintiff argues: "The server was leaving Miami and Plaintiff tried to stop it." (*Id.*). For the reasons already explained, Plaintiff offers no support for this conclusory statement and the record establishes the opposite. Plaintiff's only other argument is that: "Because BSF was unable to learn if Mr. Ryan had Miami counsel, there was no one to speak to about the situation." (*Id.*). Just as in the Certification of Emergency itself, this is a misrepresentation that is contradicted not only by the emails with Mr. Ryan's Swiss counsel discussed above, but by the declaration of Plaintiff's Swiss counsel attached to the Response which confirms the authenticity of those emails. (*See generally* Canonica Decl.).

In any event, Plaintiff's failure to address the arguments raised in the Motion on this issue, warrants that the Motion be granted. It was disingenuous for Plaintiff to state in its Certification

of Emergency that the purported emergency was "not caused by a lack of due diligence on [its] part." (Certification of Emergency [ECF No. 60-2]).  Furthermore, it was not only also plainly inaccurate for Plaintiff to certify that it had "not made an effort to resolve the matter without the necessity of emergency action" but, moreover, this false statement appears to have been calculated to disguise the fact that Plaintiff had engaged in various communications with Mr. Ryan's Swiss counsel to try and obtain a copy of the server prior to filing its Emergency Motion. (*Id.*).

### C. Plaintiff also does not make a meaningful attempt to contest that it made false and/or misleading statements at the March 14, 2018 hearing.

Plaintiff does not meaningfully address the false and/or misleading statements Plaintiff made at the March 14 hearing. (*Id.* 10).  Instead, Plaintiff merely quotes the statements[5] and states, without any explanation, that they are "true, correct, and complete." (*Id.* 10).  But again, the two statements omit it was Plaintiff itself that caused the server to be shipped and that it delayed filing the Emergency Motion until the night of March 9, 2018 because Plaintiff first tried to reach an agreement with Mr. Ryan's Swiss counsel to copy the server. (*See* Canonica email to Dolon #1

---

[5] The first statement is:

> And as the Court is also aware, a server that was the subject of the Court's order was removed and shipped to Switzerland. . . . .  Now they claim that nothing was done to it and it was simply sent to Switzerland. We don't have any way of knowing that. What we know is that it was taken out of the Court's jurisdiction in violation of the TRO.

(Mar. 14 Hr'g Tr. [ECF No. 191-10] 6:8–10, 14–17).  And the second statement is:

> Your Honor, we were trying to track it down. We were trying to get the papers prepared. My understanding was that there was an effort to contact the Court and see a time when people could come. And if we got there late, I apologize.

(*Id.* 24:4–8).

9

(Asking: "Would your client *agree to a copy of the server* in question being made prior to it being definitively transported?" (emphases added)).

### D. An Order to Show Cause and the other relief requested in the Motion is warranted.

An order to show cause why Plaintiff should not be held in contempt is warranted for the reasons explained above and in the Motion. As part of an order to show cause, the Court should require Plaintiff to produce all communications with the Swiss prosecutor regarding the server and provide declarations documenting its Swiss and U.S. counsels' communications with the Swiss prosecutor regarding the server. This is particularly warranted given Plaintiff's failure to explain why it informed the Swiss prosecutor of the existence of the server at the Ryan residence when it did, and in light of the other facts already explained. The Court should also require Plaintiff to produce all documents and otherwise explain in detail its attempts to have FedEx comply with the Court's FedEx Order and its tracking of the shipment of the server, as well as its communications with its process servers and investigators regarding service of the TRO at the Ryan residence and the surveillance of the Ryan residence. To the extent Plaintiff asserts a claim of privilege, Defendants have no objection to an *in camera* review.

Additionally, the other relief requested by the Motion is warranted, including, but not limited to, ordering Plaintiff to refrain from any further attempts to obtain a copy of the server or otherwise circumvent the Court's TRO and FedEx Order and denial of Plaintiff's Motion for Preliminary Injunction in light of Plaintiff's circumvention and violation of the TRO.

### III.  CONCLUSION

For all of the foregoing reasons, the Court should grant the Motion.

Dated:  April 20, 2018                    Respectfully submitted,

**HOLLAND & KNIGHT LLP**
*Attorneys for Defendants Helsinge Inc., Helsinge Ltd., Helsing Holdings, LLC, Daniel Lutz and Luis Liendo*
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799

By: *s/Alex M. Gonzalez*
    Alex M. Gonzalez
    Florida Bar No. 991200
    alex.gonzalez@hklaw.com
    Israel J. Encinosa
    Florida Bar No. 0046083
    israel.encinosa@hklaw.com
    Brian A. Briz
    Florida Bar No. 657557
    brian.briz@hklaw.com
    David Kully (admitted *pro hac vice*)
    david.kully@hklaw.com

and

**MARK MIGDAL & HAYDEN**
*Attorneys for John Ryan*
80 SW 8th Street
Suite 1999
Miami, FL 33130
Telephone: 305-374-0440

By: *s/Etan Mark*
Etan Mark, Esq.
Florida Bar No. 720852
etan@markmigdal.com
Donald J. Hayden, Esq.
Florida Bar No. 097136
don@markmigdal.com
Lara O'Donnell Grillo, Esq.
Florida Bar No. 37735
lara@markmigdal.com
eservice@markmigdal.com

## CERTIFICATE OF SERVICE

I certify that on April 20, 2018, I filed this document with the Clerk of Court using CM/ECF, which will serve this document on all counsel of record.

<em>s/Alex M. Gonzalez</em>