```
1                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
2                        MIAMI DIVISION
                   CASE NO. 18-CV-20818-DPG
3

4   PDVSA US Litigation Trust,        Miami, Florida

5        Plaintiff,                   April 25, 2018

6            vs.                      10:05 a.m. to 12:50 p.m.

7   LUKOIL PAN AMERICAS, LLC, et al.  Pages 1 to 90

8        Defendants.
   _____

9

10

                        TELEPHONIC MOTION HEARING
11          BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
                   UNITED STATES MAGISTRATE JUDGE
12

   APPEARANCES:
13

14  FOR THE PLAINTIFF:         DAVID BOIES, ESQ.
    PDVSA US LITIGATION        STEPHEN N. ZACK, ESQ.
15                             STEVEN DAVIS, ESQ.
                               ALEXANDER BOIES, ESQ.
16                             BRAD SMITH, ESQ.
                               BOIES SCHILLER FLEXNER, LLP
17                             100 S.E. 2nd Street
                               Suite 2800
18                             Miami, Florida 33131
                                    -and-
19                             GEORGE F. CARPINELLO, ESQ.
                               BOIES SCHILLER FLEXNER, LLP
20                             30 South Pearl Street, 11th Floor
                               Albany, New York 12207
21

22  FOR THE DEFENDANTS:        ISRAEL J. ENCINOSA, ESQ.
    HELSINGE, INC.             HOLLAND AND KNIGHT, LLP
23  HELSINGE, LTD              701 Brickell Avenue, Suite 3000
    HELSINGE HOLDINGS          Miami, Florida 33131
24  DANIEL LUTZ
    MARIA F. RODRIGUEZ
25  LUIS LIENDO
```

```
 1                        ---CONTINUED---

 2

 3   FOR THE DEFENDANT:       ETAN MARK, ESQ.
     JOHN RYAN                MARK MIGDAL & HAYDEN
                              80 SW 8th Street, Suite 1999
 4                            Miami, Florida 33130

 5

 6   FOR THE DEFENDANT:       NICOLAS SWERDLOFF, ESQ.
     BAC FLORIDA BANK         JEFFREY B. GOLDBERG, ESQ.
                              HUGHES HUBBARD
 7                            201 South Biscayne Boulevard
                              Miami, Florida 33131
 8

 9   FOR THE DEFENDANTS:      TOMAS McLISH, ESQ.
     FRANCISCO MORILLO        STACY MITCHELL, ESQ.
10   LEONARD BARQUERO         AKIN GUMP STRAUSS HAUER & FELD, LLP
                              1331 New Hampshire Avenue, NW
11                            Washington, DC 20036

12

13   FOR THE DEFENDANT:       STEPHEN H. LEE, ESQ.
     MAXIMILIANO POVEDA       PORTER HEDGES, LLP
                              1000 Main Street, 36th Floor
14                            Houston, Texas 77002

15

16   FOR THE DEFENDANTS:      JESSICA CAREY, ESQ.
     GLENCORE, LTD            BRUCE BIRENBOIM, ESQ.
     GLENCORE ENERGY, UK      1285 Avenue of the Americas
17   GUSTAVO GABALDON         New York, New York 10019
     SERGIO DE LA VEGA             -and-
18   LUIS ALVAREZ             ADAM B. SCHWARTZ, ESQ.
                              PAUL WEISS RIFKIND WHARTON & GARRISON
19                            2001 K. Street NW
                              WASHINGTON, DC 20006
20

21   FOR THE DEFENDANT:       ADAM L. HUDES, ESQ.
     LUKOIL PAN AMERICAS      MAYER BROWN, LLP
22                            1999 K Street N.W.
                              Washington, DC 20006
23                                 -and-
                              JORGE GUTTMAN, ESQ.
24                            GUNSTER
                              600 Brickell Avenue, Suite 3500
25                            Miami, Florida 33131
```

```
 1                         ---CONTINUED---

 2   FOR THE DEFENDANTS:      MICHAEL C. KELSO, ESQ.
     VITOL ENERGY (BERMUDA)   ALEXANDER KAPLAN, ESQ
 3   VITOL, INC.              SUSMAN GODFREY, LLP
     ANTONIO MAARRAOUI        1000 Louisiana St, Suite 5100
 4                            Houston, Texas 77002
                                     -and-
 5                            GERALD GREENBERG, ESQ.
                              GELBER, SCHACHTER & GREENBERG, P.A.
 6                            1221 Brickell Avenue, Suite 2010
                              Miami, Florida 33131
 7

 8   FOR THE DEFENDANT:       ETHAN GLASS, ESQ.
     TRAFIGURA TRADING LLC    QUINN, EMANUEL, URQUHART AND SULLIVAN
 9                            777 6th Street, NW
                              11th Floor
10                            Washington, DC 20001
                                     -and-
11                            CHRISTINA CARDENAS, ESQ.
                              ED MULLINS, ESQ.
12                            REED SMITH
                              1001 Brickell Bay Drive, Suite 900
13                            Miami, Florida 33131

14

     FOR THE DEFENDANTS:      DAVID BURKOFF, ESQ.
15   COLONIAL GROUP, INC.     HUNTER MACLEAN EXLEY & DUNN, P.C.
     COLONIAL OIL INDUSTRIES  200 E. Saint Julian Street
16   PAUL ROSADO              P.O. Box 9848
                              Savannah, Georgia 31412
17                                   -and-
                              CLIFTON GRUHN, ESQ.
18                            CARLTON FIELDS
                              100 SE Second Street
19                            Suite 4200
                              Miami, Florida 33131
20

21   STENOGRAPHICALLY REPORTED BY:

22                            PATRICIA DIAZ, FCRR, RPR, FPR
                              Official Court Reporter
23                            United States District Court
                              400 North Miami Avenue
24                            11th Floor
                              Miami, Florida 33128
25                            (305) 523-5178
```

```
 1                  (Call to the Order of the Court.)

 2             COURTROOM DEPUTY:  PDVSA Litigation Trust versus Lukoil

 3   Pan Americas, LLC, et al., case number 18-20818-CV-Gayles.

 4             THE COURT:  All right.  My courtroom deputy and I agree

 5   it's better that I call out the parties in the order that I

 6   have my list so I don't have to be hunting and pecking.

 7             So, plaintiff.

 8             MR. BOIES:  From the plaintiff, good morning, Your

 9   Honor, this is David Boies.  I have with me on the telephone,

10   my colleagues, from Boies Schiller Flexner, Steven Zack, George

11   Carpinello, Alexander Boies and Brad Smith.

12             THE COURT:  And Steven Davis.

13             MR. BOIES:  And Steven Davis.

14             THE COURT:  All right.  Six people for plaintiff.

15   Correct?

16             MR. BOIES:  Yes, Your Honor.

17             THE COURT:  All right.  Now, defendant, Lukoil Pan

18   Americas, LLC.

19             MR. HUDES:  Good morning, Your Honor, you have Adam

20   Hudes and Mayer Brown, and also on the line is Jorge Guttman of

21   the Gunster firm.

22             THE COURT:  All right.  Then I have defendants Colonial

23   Oil Industry, Colonial Group, Inc., and Paul Rosado.

24             MR. BURKOFF:  Good morning, Your Honor, this is David

25   Burkoff of Hunter McLean.  I am here with Heather Lundy and our
```

```
 1    local counsel, Cliff Gruhn may be here.

 2              THE COURT:  Cliff Gruhn.  Okay.  Got you.

 3              MR. Gruhn:  Yes, Your Honor, I'm Cliff Gruhn.

 4              THE COURT:  All right.  Then I have defendants

 5    Glencore, LTD; Glencore Energy, UK, LTD; Gustavo Gabaldon,

 6    Sergio de la Vega, and Luis Alvarez.

 7              MS. CAREY:  Good morning, Your Honor, Jessica Carey

 8    along from Paul Weiss along with Bruce Birenboim and Adam

 9    Schwartz from Paul Weiss.

10              THE COURT:  All right.

11              Defendant Trafigura Trading, LLC.

12              MR. GLASS:  Hello, Your Honor, Ethan Glass with

13    Cristina Cardenas and Ed Mullins.

14              THE COURT:  All right.

15              Defendant Vitol Energy Bermuda, LTD; Vitol, Inc. and

16    Antonio Maarraoui.

17              MR. KAPLAN:  Good morning, Your Honor, it is Alex

18    Kaplan and Michael Kelso with our co-counsel Gerald Greenberg

19    on behalf of Vitol, Inc., Vitol Energy Bermuda and Anton

20    Maarraoui.

21              THE COURT:  That's how you say it?

22              MR. KAPLAN:  Maarraoui, yes, Your Honor.

23              THE COURT:  I must have it misspelled here.  I have a

24    bunch of As and Rs and Os and Us and Is.

25              Then I have Defendants Francisco Morillo and Leonardo
```

```
 1    Baquero.
 2              MR. MCLISH:  Good morning, Your Honor, you have Tom
 3    McLish and Stacy Mitchell from Akin Gump for Mr. Morillo and
 4    Mr. Baquero.
 5              THE COURT:  All right.  Then I have combined defendants
 6    Daniel Lutz, Helsinge, Inc.; Helsinge, LTD; Maria Fernanda
 7    Rodriguez, Luis Liendo and Helsinge Holdings.
 8              MR. ENCINOSA:  Yes, good morning, Your Honor, Israel
 9    Encinosa of Holland & Knight on behalf of those defendants.
10              THE COURT:  All right.  Defendant John Ryan.
11              MR. MARK:  Good morning, Your Honor, Etan Mark from
12    Mark Migdal and Hayden.
13              THE COURT:  Defendant Maximiliano Poveda.
14              MR. LEE:  Good morning, Your Honor, Stephen Lee with
15    Porter Hedges, LLC.
16              THE COURT:  Defendant BAC Florida Bank.
17              MR. SWERDLOFF:  Good morning, Your Honor, Nick
18    Swerdloff and Jeff Goldberg from Hughes Hubbard.
19              THE COURT:  Okay.  I had something filed by Andres
20    Rivero on behalf of Defendant Campo Elias Paez.
21              Is Mr. Rivero present?
22              Okay.  Anyone else that I didn't mention?
23              All right.  We have everybody.  So, I received late
24    filings from both plaintiff and defendants regarding the issues
25    that you need me to address at this discovery conference.  I
```

 1    will start with plaintiffs' letter.  Plaintiff has two items.

 2    The first one -- well, two paragraphs about some sub items in

 3    paragraph one.  The first paragraph seems to be that plaintiff

 4    want defendants to identify factual issues they wish to explore

 5    in discovery.

 6         I don't know if plaintiff is complaining about the 51

 7    pages of documents that were produced.  There is no specificity

 8    in the letter as to any particular request for production but I

 9    will be happy to address those if there is need to be.

10         From what I can tell, that first paragraph relates to

11    the demand that defendants better define what it is that they

12    are looking for, my word.

13         The second section of the plaintiff's letter has to do

14    with something that I said they could raise today or at a later

15    date, that date to be determined today.

16         We will see how much progress we make on what we really

17    essentially need to address today.  That second matter has to

18    do with discovery for purposes of the preliminary injunction

19    hearing which will not happen until June or July pursuant to

20    Judge Gayles' latest direction to the parties.

21         So, let me hear who will speak for plaintiff.  Let me

22    hear what complaints you have about defendants' discovery with

23    some level of specificity so that I can address them.

24         MR. BOIES:  Thank you, Your Honor.  This is David

25    Boies, and I will be speaking on this issue.  We have two -- as

```
 1   the Court indicates, we have two issues.  The first goes to the

 2   defendants' response to our document request and what the

 3   defendants have done -- and the Court can see this from the

 4   exhibits that we attached to the letter -- they have

 5   essentially made boilerplate objections.

 6          Now, I can't really complain too much about that

 7   because we did pretty much the same thing in our response to

 8   their document request, but the issue that we both have is that

 9   we have each served document requests and each side has

10   responded with very general objections so that it is hard for

11   us to -- and we had a meet and confer yesterday, late

12   afternoon, early evening.

13          I think it is hard for either of us to know exactly

14   what documents, just from the responses, exist and I think that

15   what we need from them is to know whether they are withholding

16   any documents on privilege, whether they have any documents and

17   I think they need to know the same thing from us.

18          With respect to the second item, which is the factual

19   issues, this is something that affects depositions as well as

20   documents.  There is a legal question as to whether or not the

21   Trust has standing, and the defendants have raised a number of

22   legal objections both under New York law and under Venezuelan

23   law concerning the Trust Agreement and whether the Trust

24   Agreement adequately gives the trustees an assignment of the

25   claims.
```

1        We understand those legal arguments and we have put in

2    an expert declaration responding to those.

3        With respect to fact discovery, however, it is not

4    clear from the defendant's papers, at least it's not clear to

5    us, what factual issues they believe exist in order to decide

6    the issue of standing and we have been unable to get them to

7    identify what are the factual issues that they think justify

8    any discovery on the standing issue.

9        THE COURT:  Okay.  Well, let me first address the issue

10    of withholding documents and I don't know who is going to speak

11    on behalf of the defendants.  Is 51 documents all you have been

12    able to gather or are you withholding any documents based on

13    any assertions of relevance, privilege and so on?  Whoever is

14    answering, please identify yourself.

15        MR. BURKOFF:  Good morning, Your Honor, this is Dave

16    Burkoff.  I represent the Colonial defendants but I have been

17    delegated for the sake of efficiency to address many of the

18    document issues today.  So as to the first issue raised by

19    Mr. Boies which are the -- what he terms the boilerplate

20    objection, I guess the first point, our response is different

21    from theirs in that --

22        THE COURT:  Mr. Burkoff, let's just get down to the

23    nitty gritty.  Please answer my questions.

24        Are defendants withholding any documents on any grounds

25    that are sitting in their offices and they are not producing?

1    Simple answer, yes or no.

2         MR. BURKOFF:  The answer is no with a quick

3    qualification, Your Honor.  We have produced the documents we

4    have.  It is expected that it's a small production given that

5    this is the issue related to the plaintiff's standing in the

6    formation of this truth.  The small exception is we have an

7    objection in response to request number nine because it's a

8    little bit ambiguous as to whether they are seeking all

9    communications with Venezuelan or PDVSA authorities, period, as

10   opposed to all communications with Venezuelan or PDVSA

11   authorities related to the validity or the formation of the

12   Trust.  We interpreted it the latter way.  We think that's a

13   fair interpretation and probably what the plaintiffs meant and

14   with that interpretation we are not withholding anything.

15        Then as to privilege, Your Honor, we are not

16   withholding any privilege documents either.

17        I would note that we have said in our response that

18   communications among counsel after the filing of this lawsuit

19   and between counsel and their client, we are not going to put

20   on a privilege log.  I understand that's in accordance with the

21   local rule, and I would stop there and just point out or I

22   could point out later that plaintiffs are not agreeing to

23   adhere to the same standards with respect to production of

24   privilege logs were appropriate.

25        THE COURT:  All right.  Let me say that it is very

1    clear in our local rules that once the litigation starts there

2    is no need to produce a privilege log with regards to work

3    product designation, attorney-client privilege.  Otherwise, it

4    would be a nightmare of huge proportions because practically

5    everything that is talked about once litigation starts related

6    to the litigation would fall under that privilege.  That is the

7    move.  That is how I have applied it on numerous other cases.

8        The other caveat that Mr. Burkoff mentioned, I am

9    looking at request for production number nine, "All

10    communications concerning the validity or formation of the

11    Trust including, but not limited to, all communications with

12    Venezuelan or PDVSA authorities."

13        I don't know if plaintiffs read it differently than how

14    Mr. Burkoff interpreted it.  I think the including but not

15    limited clause modifies the primary clause or communications

16    concerning the validity.  So, if they have produced all such

17    communications and they include communications with Venezuela

18    or PDVSA and with anybody else in the world, then it seems to

19    me that that covers it.  But I will hear from Mr. Boies briefly

20    on that point and see if there is any issues on that point.

21        MR. BOIES:  No, Your Honor, there is no issue.  We

22    agree with the Court's interpretation of Mr. Burkoff's

23    interpretation of request nine.

24        THE COURT:  Okay.  So, bottom line, Mr. Burkoff is

25    saying 51 documents is all they have.  They are not withholding

1    anything based on objections for privilege, and, of course,

2    they are not producing whatever has happened after the lawsuit

3    was filed.  I would imagine that there must be, with this

4    number of defendants, a lot of communications that would fall

5    within the work-product privilege.

6        So, now the next issue, what factual issues --

7    plaintiff is demanding that defendants identify what factual

8    issues they are pursuing through this discovery.  I reviewed

9    the scheduling order which was designed by the parties with

10   their agreement.  I don't see any requirement to identify

11   factual issues.  If I am wrong, please point me to the spot

12   that does that but let me hear further first from Mr. Burkoff

13   and then further from Mr. Boies.

14       MR. BURKOFF:  Your Honor, thank you.  This is

15   Mr. Burkoff.  I apologize, let me add one thing to the earlier

16   discussion which is expert reports which under the schedule are

17   to be submitted on May 9th, to the extent an expert might rely

18   on some authority that we don't have sitting here today but the

19   expert, you know, wants to rely on, we will be producing those

20   in accordance with the schedule.  Now since that will be left

21   unsaid, my understanding from our discussions from plaintiff's

22   counsel is that they take the same position, but I wanted to

23   make that clear.  I'm sorry, go ahead.

24       THE COURT:  Okay.  Keep on going, Mr. Burkoff.

25       MR. BURKOFF:  As to the issues, there are no fact

 1     issues.  First, I agree with and defendants agree with Your

 2     Honor that there is no requirement, nor should there be, that

 3     the defendants at this point come forward with all the fact

 4     issues they want to explore in connection with standing.

 5              And what has been framed by the plaintiff, I think, is

 6     well, the documents produced by the defendants don't raise any

 7     fact issues.

 8              Again, the standing issue relates to the formation of

 9     the Trust, assignment of claims to the Trust.  These documents

10     and this type of information is going to, of necessity, be in

11     either the plaintiff's possession or the possession of PDVSA

12     itself, which is the real party in interest here, the party the

13     plaintiffs purport standing to do so.

14              I am glad to, you know, live some factual issues.  I

15     mean, at the bottom, it's the who, what, when, where, why, but

16     we feel that we should be entitled to take the core issue

17     surrounding who signed the Trust Agreement and when and what

18     were the circumstances, were there objections at the time.

19     Were there -- what Venezuelan government entities have looked

20     at these issues?  What have they concluded?  What United States

21     government entities and otherwise have looked at this?  What

22     have they concluded?  What rights and responsibilities have

23     been retained by PDVSA, the real party and interest here?  Is

24     there disagreement on that, you know, within PDVSA, within

25     other parts of the Venezuelan government?  Who is directing the

1    litigation?  Who will receive the proceeds of this litigation?

2    Those types of issues which we have flagged since first filed

3    to date, those are the type of issues that we think relate very

4    clearly to the question of standing.  And, again, we don't

5    think we should have to make that showing up front.

6            THE COURT:  So you're saying that by your document

7    request you are sort of like hinting at what facts you are

8    looking for?  Is that a fair assessment of what you are saying?

9            MR. BURKOFF:  Sure, Your Honor.  In the document

10   request, yes.  In the cursory briefing that the parties have

11   conducted on standing to date these issues have been flagged,

12   and by that I mean the standing issue was raised in response to

13   the motion for preliminary injunction to some extent, albeit,

14   as Your Honor knows, the parties both intend to brief the issue

15   more fully.  But in broad strokes, what we are trying to do

16   here is request and collect documents from the plaintiffs that

17   relate to standing and then depose the witnesses for those

18   documents so that we can fully agree to present the issue to

19   Your Honor.

20           THE COURT:  All right.  Mr. Boies, what is it that

21   you're after when you raise these factual issues?

22           Are you trying to say that there is no need for

23   discovery or are you trying to get a roadmap as to what

24   discovery would look like?

25           MR. BOIES:  I think we are, really, in the first point

1   primarily, that we are really asserting that there is no

2   justification for factual discovery here, that the issue is a

3   legal issue.

4        Now, there may be some -- for example, if somebody

5   alleged that the Trust Agreement was a forgery, then there

6   might be some, but I don't think there is any good faith

7   allegation of that. But there are -- there is conceivably some

8   basic factual discovery that might be relevant if there were

9   certain claims like, for example, if the Trust Agreement was

10  forgery. But what rights have been retained, that's a function

11  of what the legal documents say. That's a legal question for

12  the Court.

13       One of the things that they ask for in our meet and

14  confer were drafts of the agreement. The drafts of the

15  agreement aren't relevant to whether there is standing or not.

16  Maybe the drafts are relevant to some merits issue, but in

17  terms of standing, what standing is going to turn on is what is

18  the legal significance of the Trust Agreement? Is it bound

19  under New York law? Is it bound under Venezuelan law?

20       And one of the reasons that we are asking for some

21  indication of factual issues is we don't see any factual issues

22  there so we are objecting to the discovery on the grounds that

23  it is not relevant to the standing issue that's now before the

24  Court.

25       THE COURT: Well, I will address your objections to the

1      discovery in a minute when I address defendant's notice of

2      issues to be covered, but we have come up with a framework

3      allowing discovery ahead of the briefing on the issue of

4      standing.

5           I am not planning to foreclose discovery.  I will be

6      glad to address issues that people have with regards to

7      limitations of discovery, but it seems to me that the plan for

8      proceeding is such that we are going to have discovery.  So, to

9      the extent that your demand for factual issues translates to a

10     demand for foreclosing discovery, that demand is respectfully

11     denied.

12          So, I think we have addressed both matters.  The

13     objections that you may have, Mr. Boies, I will be happy to

14     address in the context of your response to the discovery

15     request from defendants.  As I said before, I don't think we

16     quite need to address the issues of the subpoenas for the

17     discovery for the preliminary injunction hearing just yet.  I

18     want to leave that for the tail end so we make sure that we

19     cover what needs to be covered today with this very tight

20     schedule that has been devised.

21          Anything else at this point from the plaintiff

22     regarding their notice before I move on to defendants' notice?

23          MR. BOIES:  The only thing I would ask to just be

24     certain about is that Mr. Burkoff's statement that there are no

25     documents that are being withheld on relevance grounds or

1   privilege grounds other than attorney-client communications

2   after the filing of the lawsuit is a statement that applies to

3   all of the defendants, not merely Mr. Burkoff's own clients but

4   that every defendant's counsel on this call is making that

5   representation to the Court.

6          THE COURT:  All right.  Mr. Burkoff, are you able to

7   make that representation on behalf of all of the defendants?

8          MR. BURKOFF:  Your Honor, with the same caveat

9   regarding the forthcoming expert report to be submitted under

10  the agreed-on schedule, the answer is yes.  Although I say that

11  in the presence of all other counsel so if there is anyone else

12  who feels the need to chime in or add an additional caveat, by

13  all means do so.

14         THE COURT:  Okay.  Anyone has any modification to the

15  statements made by Mr. Burkoff that all documents have been

16  produced except for privilege documents and documents that the

17  experts may be relying on which documents will be produced at

18  the time of the expert report disclosures?

19         Okay.  I don't hear from anyone so does that satisfy

20  your request, Mr. Boies?

21         MR. GLASS:  Thank you, it does, Your Honor.  Thank you.

22         THE COURT:  All right.  I am moving on now to the

23  notice of issues to be addressed during this conference that

24  was filed by defendants and, again, we have the issues of the

25  generic boilerplate and generic objections.  I'd rather just

```
1    get right to the point.

2         Let me address first the document production and I

3    think that's where I told Mr. Boies that I would address his

4    objection.  Defendants seem to be highlighting requests for

5    production 5, 9 and 10.  I don't know if there is anything else

6    that they have issues with.  So, Mr. Burkoff, go ahead and tell

7    me what you want me to resolve.

8         MR. BURKOFF:  Thank you, Your Honor.

9         In short, we're having real trouble getting documents

10   from the plaintiff.  I will get right to the point.  On the

11   scheduling order, there are two dates for production of

12   documents.  The first one was April 19th, I believe, where the

13   plaintiff was to produce any documents it believes were for the

14   extent of standing (unintelligible) to the complaint.  It

15   produced 17 documents.

16        The next date was April 23rd.  On that date the

17   plaintiffs were to produce -- serve any objections and then

18   produce any documents responsive to our request.  They produced

19   on that date one document which is the Trust Agreement, which

20   we already had.  In the context of doing that you see their

21   objection to number four that they only agreed to produce those

22   documents that plaintiff contends to support its standing.

23        In other words, they have not and apparently are

24   unwilling to produce documents that otherwise respond to our

25   request.  That's the overarching -- that is one overarching
```

1  issue that we see when we drill that into each of our requests

2  for production.  There are a couple, and I will just run

3  through them quickly.

4       The second overarching issue, Your Honor, is that they

5  appear to be saying that they don't control the ultimate party

6  at interest, PDVSA, and cannot commit to producing PDVSA's

7  responsive documents even though they are standing in PDVSA's

8  shoes to pursue a claim in that manner they, we believe, are

9  trying to use the framework of the Trust essentially as the

10  shield so that they can, you know, failsafe the documents that

11  they want to rely on to produce and not produce anything else.

12       The point has already been made in some briefing and

13  certainly will be made in future briefing on standing that

14  where the Trust is purporting to assert claims for funds of

15  PDVSA, which stands in PDVSA's shoes for discovery purposes and

16  has an obligation to not only preserve but also to produce

17  PDVSA's information.

18       That's point two.  It's not remotely clear to us and,

19  in fact, it seems to be they are not committing to do that at

20  this point.

21       Then the two final points, Your Honor.  One is, they

22  have in a number of their responses are relying on their

23  general objections and then saying, you know, either we

24  produced what we have or we don't have anything, which is

25  improper under Rule 34.  We have no way of knowing what

1    documents that are responsive they may be withholding and on

2    what basis.  And related to that number four, Your Honor, is

3    the issue of their privilege log or privilege I alluded to

4    before.  And one of their general objections they are objecting

5    to producing a privilege log altogether.

6            And, again, we concede that post filing of their

7    complaint attorney-client communications do not need to be

8    logged but if there are other responsive communications -- and,

9    again, there are only about 17 documents produced and only a

10   couple of communications.  None of them are communications that

11   predate the execution of the Trust Agreement, so we are not

12   seeing anything related to the lead-up to the execution of the

13   Trust Agreement.

14           If their position is that those communications are

15   privileged or that other documents are privileged, we should be

16   entitled to know who is on those documents so that we can

17   appropriately assess the privilege claim and challenge where

18   necessary.

19           There are a lot of individuals and entities involved

20   here and it's not remotely clear, at least especially at this

21   stage where we've got such limited information from the

22   plaintiff, what the various roles of those entities are.

23           I am happy to run through the individual request if you

24   would like, Your Honor.

25           THE COURT:  Well, let's just take the broad categories

1    first and then as we need to draw down on a particular request

2    we will.

3          So, the first I think -- from what I hear, the first

4    objection that you may need to resolve is that plaintiff is

5    only willing to produce documents that support standing

6    pursuant to the deadline of April 19th, which reads,

7    "Plaintiffs will produce all documents it contends shows it has

8    standing.  Defendants had counter obligation."

9          But then we have April 23rd, last day to serve

10   objections and state whether documents are being withheld based

11   on privilege and any additional documents responsive to the

12   April 17th document request.

13         So, with those two guide points from the scheduling

14   order, let me hear from Mr. Boies, what appears to be the

15   contention that you need not respond to any request for

16   production, unless the request for production is asking for

17   documents that show that plaintiff has standing.  And I think

18   this kind of rolls into what you were saying about what are the

19   proper factual issues to address here or not.  Maybe if we

20   discuss that, that will set the framework for other objections.

21         So, let me hear from you, Mr. Boies.

22         MR. BOIES:  I think the Court is exactly right that

23   this raises the question that I was referring to before in

24   terms of what are the proper factual issues here.

25         Let me be clear, we are not taking the position that if

```
 1    there is a document that is inconsistent with standing that we
 2    don't have to produce it.  That is, we are not taking the
 3    position that we only produce documents that are supportive of
 4    standing.  If there is a relevant document, an authoritative
 5    document, it goes either way.  That is a document that we have
 6    an obligation to produce.
 7          Our point is that the documents that they -- these
 8    document requests are so broad that they go way beyond any
 9    conceivable relevant factual issue with respect to standing.
10          For example, they ask for all drafts of the Trust
11    Agreement.
12          THE COURT:  I'm sorry, which request is that one?
13          MR. BOIES:  That request I think is -- let me just look
14    at it.
15          MR. BURKOFF:  That's number one, Your Honor.
16          THE COURT:  Okay.
17          MR. BOIES:  Now, they are certainly entitled to the
18    Trust Agreement, addenda, annexes, side agreements, amendments
19    to this Trust Agreement, the -- we have an issue as to whether
20    they are entitled to the engagement letter or not but in terms
21    of drafts, what matters for standing is what the actual
22    agreement says and whether that agreement is valid under New
23    York and Venezuela law.  What the drafts were or what the
24    communications were about the drafts is not something that is
25    relevant to the legal determination that the Court needs to
```

```
 1    make on standing.

 2              That's one kind of premise.

 3              THE COURT:  Okay.  Why don't we just stop there and

 4    address that one?

 5              So, on request for production number one, the request

 6    for any documents concerning the establishment of the Trust to

 7    investigate or pursue claims against the defendants and others,

 8    including any drafts thereof, exhibits, attachments, addenda,

 9    annexes, side agreements or amendments to the Trust Agreement,

10    such as but not limited to the engagement letter and any

11    agreements concerning Algamex.

12              So, you are telling me you have no problem with

13    exhibits, attachments, addenda, annexes and side agreements and

14    amendments but you have problems with the engagement letter.

15    You have problems with the drafts.  This is not asking for

16    communications yet so let's just stick to the documents and

17    agreements concerning Algamex, which I think I read somewhere

18    that Algamex is funding.  I don't want to speak out of turn.

19              MR. BOIES:  Yes, the Court is exactly right.  Algamex

20    is a funding entity and that agreement -- while that agreement

21    might be relevant to some merits issues, might be relevant to

22    damages, conceivably, the funding agreement with Algamex has

23    nothing to do with a standing issue with respect to the Trust.

24    This is simply an attempt to use the standing to get general

25    discovery, to use the standing issue to get the general
```

1   discovery in advance of having general discovery available to

2   both sides.

3        THE COURT:  Well, let me just say this.  If some

4   discovery is pertinent to both standing and merits, then

5   obviously it would be allowed at this time.

6        MR. BOIES:  Absolutely.  I agree with that, absolutely,

7   Your Honor.

8        THE COURT:  So, you're saying that Algamex, anything,

9   any agreements relating to Algamex is purely merits and has

10  nothing to do withstanding.

11       You also say the engagement letter has nothing to do

12  with standing and that drafts of the Trust Agreement have

13  nothing to do with standing.  So, let me hear, Mr. Burkoff, on

14  those three points.

15       MR. BURKOFF:  Thank you, Your Honor.

16       First, as to drafts of the agreement -- and, frankly, I

17  think we have a couple iterations of the Trust Agreement

18  already but clearly there are drafts being withheld.  We didn't

19  know that, I don't think, until this call, because, again, we

20  have no privilege log.  But as to drafts, as we pointed out and

21  will point in our papers our experts will point out, there are

22  significant defects in this agreement in the manner in which it

23  was executed and the claims were assigned.

24       To that point, there may be drafts that -- defects, you

25  know, of this sort that defendants are raising now were raised

1    and there were efforts to address those defects which would go

2    directly to the point we are trying to make for the Court and

3    we will make in our brief, which is that, for example, the

4    assignment reflected in the Trust Agreement is unlawful under

5    Venezuelan law because it didn't have the approval of the

6    National Assembly.  And I note, Your Honor, the National

7    Assembly now just yesterday in this fast-moving set of

8    circumstances has issued a pronouncement that the Trust and the

9    assignment are unconstitutional under Venezuelan law.

10          This is a key set of factual issues that we are

11   entitled to take discovery on, and at this point in time we

12   have no way to challenge what it is the plaintiff is

13   withholding and on what basis.  If there is a privilege claim,

14   you know, great but let's see it and understand who the draft

15   is being exchanged between and what is the relationship between

16   them.

17          As to the engagement letter, that's a document that is

18   specifically referenced in the Trust Agreement more than once

19   and incorporated therein.  The Trust Agreement is the

20   touchstone document here on this inquiry related to standing

21   and so for that reason it seems abundantly clear that that

22   should be produced.  We haven't heard any privilege claims with

23   respect to it.  And then as to Algamex, Your Honor noted

24   Algamex is referenced in the agreement as an entity that is to

25   provide funding for the lawsuit and that does go to standing.

```
 1            I mean, A, you've got Algamex referenced in the
 2     agreement but, B, you know, who is funding, who is sharing in
 3     the cost and the benefits of this case goes to this issue that
 4     the National Assembly raised yesterday.  In their estimation
 5     this whole effort is an effort to unlawfully divert assets of
 6     the Venezuelan state and people to a United States based trust
 7     where those -- you know, the proceeds are not going to flow
 8     back to the people of Venezuela.
 9            So, our position is that all three of the types of
10     documents that Mr. Boies has now objected to producing should
11     be produced.
12            THE COURT:  Well, if the engagement letter is
13     referenced in the Trust Agreement, it seems to me that it would
14     be maybe not explicitly an exhibit but something that maybe
15     it's a side agreement.
16            I don't know.  Anyway, it sounds to me like the
17     engagement letter is part and parcel of the Trust Agreement.
18     The agreements concerning Algamex I think fall under that same
19     category.  It's some kind of side agreement to the Trust
20     Agreement.  You say Algamex is referenced in the Trust
21     Agreement, so I think both of those fall within that category.
22            Now, with regard to the drafts, generally when you
23     have, you know, contract disputes, the drafts of the contracts
24     are produced, sometimes it goes to addressing issues of
25     ambiguity.  I don't know what the issues would be raised here
```

1   but generally drafts of contracts, drafts of agreements are

2   usually produced.

3        If there are privileged claims relating to this trust

4   then, of course, they would be put on a privilege log under

5   normal circumstances.  I will address the issue of whether the

6   plaintiff has to produce the privilege log in a minute, but

7   under that concept I believe that all three categories of

8   documents should be produced, whether actually produced or

9   privilege claim as to them.

10        So, that's my ruling on request for production number

11   one.

12        Now, let me hear Mr. -- I think Mr. Boies was telling

13   me about some other issues that you all had and maybe we can

14   zero in on some particular request to address those issues.

15        So, go ahead, Mr. Boies.

16        MR. BOIES:  Yes, Your Honor, would the Court entertain

17   just brief question about the Court's last ruling?  I don't

18   mean to reargue it, but I am concerned that there is possible

19   confusion between two different things.  One is what is

20   referenced in the Trust Agreement and the other is what is

21   incorporated by reference into the Court Trust Agreement.

22        Some of the things referenced are incorporated by

23   reference and some are not, and the agreement with Algamex --

24   Algamex itself is referred to in the Trust Agreement but I

25   don't believe that the agreement with Algamex is in any way

1   incorporated by reference into the Trust Agreement itself, and

2   the mere fact that Algamex is something that is referenced in

3   the Trust Agreement I would just ask the Court whether that in

4   the Court's view is sufficient to make it producible.

5          THE COURT:  Well, that was not my sole grounds.  If you

6   remember, I said either referenced or side agreement.  I think

7   both the engagement letter and the Algamex agreement could fall

8   under either one of those categories so that's what I based my

9   ruling on.

10          MR. BOIES:  Okay.  And the side agreement would be one

11   relevant to -- the only reason I pursue this at all is whether

12   the side agreement is relevant to the standing issue.  In other

13   words, because we are dealing with standing, I am not saying

14   that things might not be relevant.

15          THE COURT:  Let me cut to the point.  I do find that it

16   is relevant to the Trust Agreement.

17          MR. BOIES:  Okay.

18          THE COURT:  All right.

19          MR. BOIES:  Thank you, Your Honor.

20          THE COURT:  Yes.

21          All right.  So, your next kind of global objections?

22          MR. BURKOFF:  Your Honor, are you asking about a

23   defendant objection or a plaintiff?

24          THE COURT:  You know, I kind of lost track of where we

25   were before we jumped into number one, so whoever was taking

1    the lead on what was happening on the global arguments which I

2    thought we were going to do it globally but then zeroing in on

3    particular requests if they are exemplary of the global issues.

4         MR. BURKOFF:  Yes, we heard from plaintiff that they

5    are not going with all documents because they are work

6    privilege.

7         THE COURT:  Sir, I'm sorry.  For the benefit of the

8    court reporter, I keep getting signals, before you speak, say

9    your name just to help her out.

10        MR. BURKOFF:  I apologize.

11        Again, this is David Burkoff, and the second global

12   issue, so to speak, is that plaintiff appears to be taking the

13   position that it doesn't control PDVSA and can't guarantee the

14   production of PDVSA's documents, and at this juncture it's not

15   clear that they even conducted a thorough search of PDVSA's

16   documents for responsive documents and based on the law related

17   to assignment of claims, that is their obligation to the

18   defendants to do so.

19        THE COURT:  Is there any particular request that they

20   have asserted that objection to?

21        MR. BURKOFF:  We see it in a general objection where

22   they object in number three to producing documents not within

23   the Trust, possession, custody or control and then in e-mails

24   between plaintiffs and defense counsel I think just yesterday

25   or the day before they have taken the position as to witnesses

1    that where defendants have sought to depose PDVSA personnel

2    that plaintiff, the Trust does not control those people.

3            THE COURT:  All right.  Mr. Boies, are you withholding

4    documents that you would need to get from PDVSA to -- that

5    would be responsive but you would need to get from PDVSA to

6    respond to any of these requests for production?

7            MR. BOIES:  No, Your Honor.  Indeed, what I said on the

8    call yesterday evening on the meet and confer was that while we

9    do not control PDVSA, we represent the Trust.  We have made a

10   request to PDVSA for PDVSA to produce any documents that are

11   responsive to the document request.  So, there is no desire in

12   our part to withhold any of those documents.

13           To the extent that we know of them and have them

14   ourselves, we are going to be producing them.  The issue only

15   is whether PDVSA has something in addition to what we know

16   about and with respect to that we are making that request to

17   PDVSA to producing those documents.

18           The issue is simply that as a legal matter we represent

19   the litigation trust and not PDVSA itself.  Obviously, PDVSA is

20   the assignor of the claims and PDVSA should make relevant

21   discovery.  No one is disputing that.  It is simply a question

22   of the extent to which we can in these legal matters speak for

23   PDVSA, which we cannot.

24           THE COURT:  Well, I don't want to get too far afield on

25   that but let me ask you logistically, are you intending for

1    PDVSA, who theoretically is not a party directly in this case,

2    to do production of documents or are you having them send you

3    the documents and then you will produce them?

4         MR. BOIES:  What we have asked them to do is to send us

5    the documents for us to produce them and that is the -- that is

6    the way -- we have already begun to get documents from them in

7    anticipation of merits discovery.

8         With respect to the standing issue and the formation of

9    the Trust, it is not clear to me what documents, if any, they

10   have that we do not have but we have made that inquiry to them

11   and we have asked them to produce any documents that they have

12   that are related to the trusts formation or validity or

13   execution.

14        MR. BURKOFF:  Your Honor, this is David Burkoff.  May I

15   respond briefly?

16        THE COURT:  Yes.

17        MR. BURKOFF:  With all due respect, the plaintiffs have

18   been working on this case for a year, working with PDVSA since

19   last summer.  We are now in late April of 2018.  We have agreed

20   on this very accelerated schedule on the standing issue.  The

21   date for them to produce documents has passed.  So, you know,

22   the fact that they are kind of working on it is though better

23   than nothing, certainly problematic to us.  That's point one.

24        Point two is, you know, they have made -- we hear they

25   have made a request to PDVSA.  They think PDVSA should produce

1     documents.  That's not the same thing as committing to produce

2     PDVSA's documents, which is their obligations under the law.

3     You know, it begs the question whether PDVSA is an

4     indispensable party here, should be a party to this case.

5           You know, if they can't control PDVSA and commit to

6     producing its documents and people in a timely fashion in

7     accordance with the schedule Your Honor has set forth, then I

8     don't know how this lawsuit can proceed.

9           THE COURT:  Well, that's why I said I didn't want to

10    get too far afield.  I just want to get the documents produced

11    at this stage.  The other issues I am sure will be addressed

12    fully later.

13          The deadline for production has come and gone,

14    Mr. Boies, so tell me what you anticipate in terms of time

15    frame for producing any privileged documents that you would be

16    receiving from PDVSA and that needs to be on an expedited

17    basis.

18          MR. BOIES:  Yes, Your Honor, and I would begin by

19    noting that the scheduling order that was entered was explicit

20    that we were both sides retaining the ability to object to any

21    of the discovery requests.

22          I accept the Court's ruling but prior to this telephone

23    call we felt very strongly that a great many of the documents

24    that are called for here are not relevant to the issue of

25    standing.  We have -- I told counsel yesterday at the meet and

```
1    confer --
2            THE COURT:  I'm sorry, Mr. Boies, you are breaking up.
3            MR. BOIES:  I apologize, Your Honor, can you hear me
4    now?
5            THE COURT:  Now yes.
6            MR. BOIES:  I told counsel in the meet and confer
7    yesterday that I anticipated that we would have a response from
8    PDVSA in the next two or three days.
9            I am scheduled -- I am currently scheduled to talk to
10   the General Counsel of PDVSA at 3 o'clock this afternoon, and I
11   have -- I have no reason to believe that they actually have
12   documents relating to the execution or validity or
13   authorization of the Trust other than the documents that we
14   have, but if they do we are going to ask them to produce them
15   and we will promptly inform the defendants of what their
16   response is.
17           THE COURT:  Well, let me just clarify what I see your
18   obligation as and then you tell me if you need further
19   clarification.
20           On the documents that you have agreed to produce,
21   whether they come from you or from PDVSA, they need to be
22   produced.
23           On the objects as to which -- on the documents as to
24   which you have objected to the extent I have overruled your
25   objection, you have to produce them, whether they come from you
```

34

1  or from PDVSA.  So, these are documents responsive to the

2  specific document request.

3       So, when we are done today, I already made the ruling

4  on request for production number one.  When we are done today

5  if there is any other specific objections I need to rule on, I

6  will.  At the end of the day, whatever you need to produce in

7  spite of the source, you -- I mean you the litigation trust or

8  PDVSA -- will need to be produced and hopefully on an expedited

9  basis to make sure that the schedule can be maintained.

10      So, having clarified that issue, let's move along and

11  please remind me before we end to come up with a date on when

12  that supplemental production will be due.

13      Let's see, I think the next point was -- I think

14  defendants just like plaintiffs, defendants want to know what

15  is being withheld based on objections and I guess I can ask

16  Mr. Boies the same question.

17      Are you withholding -- and maybe that's tied up to the

18  privilege question.  Are you withholding documents based on

19  your objections or on privilege and that's tied into the issue

20  of the privilege logs, but let me just hear from Mr. Boies.

21      MR. BOIES:  Yes.  Well, given the -- what the Court has

22  said about the production of draft, the answer would certainly

23  be the documents that we would have with it would hold

24  privilege.

25      THE COURT:  I'm sorry, you are breaking up again.

1          MR. BOIES:  I said that given that the Court has

2     directed that drafts be included among the relevant documents

3     there would certainly be drafts that would be subject to an

4     attorney-client privilege claim, a work product claim.

5          THE COURT:  Okay.

6          MR. BOIES:  So given what the Court has said, there

7     would be a substantial number of documents that would be

8     privileged.

9          THE COURT:  Okay.

10         MR. BOIES:  Because these would be documents to and

11    from attorneys but they would have preceded the actual filing

12    of a lot.  So, on a document we would list on the privilege

13    log.

14         THE COURT:  All right.  So, you would be withholding

15    drafts on the basis of privilege and then they would need to be

16    listed on the privilege log because they would predate the

17    litigation.

18         Any other documents that are being withheld so that

19    defendants will know what they are getting?

20         MR. BOIES:  As we go through the request for

21    production, for example, one of the things that they ask for

22    are any communications about the Trust or the implementation or

23    execution of a trust.

24         THE COURT:  Okay.  Which request is that one?

25         MR. BOIES:  For example, request seven, for example,

1   says any document concerning the collection appointment,

2   replacement, substitution, removal or resignation of any

3   trustee.

4         Now, again, we don't think that is relevant but if the

5   Court were to hold that that was relevant then there would be

6   privilege documents, and request number six says, "Any

7   documents concerning the negotiation, execution or notarization

8   of a trust."  And, obviously, again, we don't think those

9   documents are relevant in the narrow standing that if the Court

10  were to rule that all documents concerning negotiation of Trust

11  Agreement needed to be produced.  There would obviously be a

12  lot of attorney-client privilege documents that would be

13  included.

14        Request number five says, "any documents --" again,

15  this is broad use of the term "any documents" again,

16  "concerning fees, benefits, loans, distribution of proceeds

17  from the lawsuit, intended recipients of any amounts generated

18  by the lawsuit or other financial arrangements with the Trust's

19  trustee, the Trust attorneys, PDVSA, Algamex and any other

20  entity that stands to receive or provide any sort of payment

21  regarding the Trust."

22        That would include every vendor that works and if we

23  were interpreting that broadly, we think these -- we think the

24  breadth, particularly, of request number five, you know, is way

25  overbroad and catches many documents that have no relevance at

1    all to the standing issue.

2           But, then, again, depending on how the Court would rule

3    on that, there would be a great many documents that would be

4    governed.

5           THE COURT:  Okay.  Why don't we take up request number

6    five and this one you said the objection that the way it is

7    phrased it would cover vendors?

8           I don't think defendants are interested in vendors but

9    let me hear from defense counsel.

10          MR. BURKOFF:  Thank you, Your Honor, David Burkoff.

11          That's right.  I mean, this request is geared towards

12   understanding the financial arrangements surrounding the Trust,

13   who or which entities are to benefit from any lawsuit, who is

14   funding this lawsuit and, you know, most pertinently the extent

15   to which any benefits from this lawsuit will flow back to the

16   people from Venezuela, which is the issue that is the primary

17   issue that's been raised back in the country, in the

18   legislature and otherwise we will be raising in our briefing.

19          So, you know, I mean, at this point we have a blanket

20   objection prior to this call to producing anything.  You know,

21   there is certainly the ability on plaintiff's part to say,

22   well, this is too broad but when we interpret it narrowly like

23   this, we will produce X, Y and Z.  I mean, it may be on request

24   five the documents sufficient to show it's acceptable, but the

25   blanket objection without us being able to test it at all

38

1   because we don't know what's being withheld is part of what's

2   so difficult here, Your Honor.

3       THE COURT:  Okay.  So, you agree that you don't need

4   vendors, right, Mr. Burkoff?

5       MR. BURKOFF:  Yes.

6       THE COURT:  You don't need vendors.

7       Okay.  How else is this overbroad in terms of not

8   narrowly designed to extract I think what defendants are

9   driving at which is how logical the proceeds of the litigation

10  be distributed.  Is there anything else other than vendors that

11  you can think of, Mr. Boies, that is totally way out there?

12      MR. BOIES:  I think that if we take the suggestion that

13  this document is sufficient to show as opposed to any

14  documents, I think we can respond to that.

15      THE COURT:  Okay.

16      MR. BOIES:  Because I think that -- I don't disagree

17  that they are entitled to know how the Trust proceeds are going

18  to be distributed and they are entitled to know, you know, who

19  is going to benefit from this.

20      THE COURT:  Okay.  So if the request is modified to

21  read instead of "any documents concerning" reads "documents

22  sufficient to show" and then the rest of the language, is that

23  something that you can producing documents for?

24      MR. BOIES:  Yes, assuming we take out the vendor, the

25  people that are there.

```
 1              THE COURT:  All right.  Excluding vendors.  We will put
 2       that in, excluding vendors.
 3              Anything else you can think of other than vendors?
 4              MR. BOIES:  No, it's really the people that are
 5       providing services to the Trust, other than the lawyers
 6       themselves.
 7              THE COURT:  Okay.
 8              MR. BURKOFF:  Your Honor, this is David Burkoff, just
 9       for the record, I mean, to the extent documents responsive
10       either overlap with other requests, and really what I am
11       thinking of is there may well be communications on this issue
12       that are responsive here where the objections to the validity
13       of these arrangements are raised, I mean, certainly, we want
14       those documents on the basis of the responses to be one or more
15       other request.
16              MR. BOIES:  Judge, I would agree with Mr. Burkoff that
17       if there are documents that dispute --
18              THE COURT:  I'm sorry, Mr. Boies, every once in a while
19       we lose you.
20              MR. BOIES:  I apologize.  I don't know why.  I am on a
21       land line and I am not on a speaker phone.
22              THE COURT:  That's all right.  We will alert you each
23       time.
24              MR. BOIES:  A document like that would be covered by
25       other requests for production.
```

1              THE COURT:  All right.  So, if I make that change,

2     "document sufficient to show," and I put the caveat "excluding

3     vendors," you are prepared, Mr. Boies, to respond to this

4     request with responsive documents?

5              MR. BOIES:  Yes, yes, Your Honor.  The reason I say

6     vendors is, for example, it will come as no surprise that we've

7     got people who have been analyzing the damage claims

8     considerably and that doesn't have to do with who gets the

9     money.  It simply has to do with how much we are going to

10    claim.  That, obviously, is not standing related discovery.

11             THE COURT:  All right.  So, that's the ruling on

12    request for production number five, and you had mentioned

13    number six, any documents concerning the negotiation,

14    execution, so on, of the Trust and prior versions, which kind

15    of goes with the drafts.

16             I already ruled that the drafts should be produced.

17    You are saying that these things will be subject to privilege

18    so that ruling from request number one kind of flows into this

19    one.

20             Request number seven, "selection, appointment,

21    replacement, substitution, removal, or resignation of any

22    trustee," including prior versions that's the drafts.

23             So, let me ask Mr. Burkoff, do you envision documents

24    other than the Trust Agreement itself to dictate how to handle

25    trustees?  What were you looking for here?

1          MR. BURKOFF:  Certainly the agreement, but beyond that,

2    you know, we understand there has been some fluctuation on

3    trustees and, you know, proposed trustees.  We'd like

4    communications surrounding that because we anticipate that some

5    of those documents may show that there were problems with the

6    Trust as a legal matter, that there were concerns raised with

7    respect to the Trust as a legal matter, you know, and on this

8    question of standing we feel that's exactly the type of thing

9    that we are entitled to explore.

10          THE COURT:  Okay.  So, you're not looking for documents

11   that prescribe how to do this but more of having trustees shift

12   around?

13          MR. BURKOFF:  Yes, if the touchstone document

14   prescribing how to do it is the Trust Agreement, we have the

15   Trust Agreement, but documents concerning the operational

16   aspect, you know, once the agreement is in place, what has

17   happened because there has been some -- as I said, some

18   turnover, some movement and it's those types of communications

19   and documents to the extent they're not privileged and if they

20   are privileged documents, they will be logged and we can assess

21   them.

22          THE COURT:  Okay.  Let me hear from Mr. Boies.  It

23   sounds to me like it's almost like documents relating to the

24   operation of the Trust.

25          MR. BOIES:  If they are documents relating to how the

1    Trust operates, we don't have an objection to that if we

2    produce those, but if there are documents that relate -- I

3    mean, this is any documents concerning very broad language, the

4    selection of point and replacement substitution, removal or

5    designation, that doesn't have anything to do, I respectfully

6    suggest, to the standing issue.

7         They may be interested in that for a variety of reasons

8    but it doesn't have anything to do with the standing.  If a

9    trustee -- now, if a trustee resigns because the trustee says

10   the Trust is not authorized, then they get that document

11   because they get documents when people are saying the Trust is

12   not authorized, but just a garden variety document concerning a

13   trustee's appointment or selection or resignation, that doesn't

14   have anything to do with the standing issue.

15        THE COURT:  Well, it sounds to me like he is looking

16   exactly for that, trustees who have been appointed who have

17   declined, who have resigned and you are saying they are getting

18   that already under some other document request.

19        MR. BOIES:  If, for example, if in their resignation

20   they said anything about the Trust -- I don't think there is a

21   resignation letter but if there was a letter, we don't want

22   time because we don't think this is authorized but if they

23   simply have, simply a judgment of any --

24        THE COURT:  I'm sorry, Mr. Boies, again --

25        MR. BOIES:  If there is simply a discussion of whether

1    one trustee or another trustee would make a better trustee,

2    that doesn't have anything to do with standing, and I ask the

3    Court to just keep in mind that these discovery requests are

4    supposed to be limited just to the standing issue.

5          THE COURT:  All right.  Mr. Burkoff, are you satisfied

6    with if any trustee is removed or resigned, anything that is

7    adverse to the validity to the Trust that previews that, are

8    you looking to anything else that relates to standing?

9          MR. BURKOFF:  Respectfully, I do have some concerns

10   with that.  First, it's in the eye of the beholder, so what

11   plaintiff views as related to this issue of someone resigning

12   in connection with the validity of the Trust, it may not be the

13   same as that is argued (unintelligible) on that.

14         I mean, we have heard that the request, as written, is

15   too broad on the one hand but on the other hand Mr. Boies is

16   making sure there is any resignation letter.  It's not remotely

17   clear that it could be that document responsive here.  It's

18   likely a limited sense of communications and, frankly, the

19   ultimate question is whether these trustees have authority to

20   pursue these claims in this court, claims that belong or seem

21   to belong and may still belong to PDVSA.

22         You know, on that basis we think the documents go

23   directly to the selection.

24         THE COURT:  Okay.  So, let me see if I can narrow this

25   in some fashion.  So, if we say any documents that reflect the

44

1    selection, appointment, replacement, substitution, removal, or

2    resignation of the trustees or punitive trustees, that would

3    basically be the operation of the Trust, somebody in, somebody

4    out.  Is that something that you can produce, Mr. Boies?

5           MR. BOIES:  Again, if it were documents sufficient to

6    show who came in and who came out, that we could easily do.

7           THE COURT:  Okay.  Documents sufficient to show.  All

8    right.

9           MR. BURKOFF:  Your Honor, I don't want to reargue it

10   and this is David Burkoff.  You know, that permits the

11   plaintiff to cherry-pick the documents and, again, it's at the

12   eye of the beholder where we really have some concerns.

13          THE COURT:  They are not really cherry-picking because

14   they don't get to pick the reason, documents sufficient to show

15   the selection and so on.  So, whoever is in or out, whatever

16   has happened, they need to produce documents that show those

17   developments and then presumably with those documents you can

18   drill down if you think that those documents in any way help

19   you attack the validity of the Trust.

20          So, that will be my ruling on request number seven.

21          So, let me see, I think I have covered the ones that

22   were pointed to us, examples.  Let me just say, there will be a

23   privilege log that will need to be produced for anything that

24   didn't happen after the filing of the lawsuit so all of these

25   rulings on number five, six and seven, and, of course, on

1   number one, are subject to, you know, producing non-privileged

2   documents and listing privileged ones on a privileged log.

3           MR. CARPINELLO:  George Carpinello, Your Honor.

4           THE COURT:  Yes, sir.

5           I'm sorry, we can't hear you.  Hello, we can't hear

6   you.

7           MR. CARPINELLO:  Your Honor, can you hear me?

8           THE COURT:  Now we can.

9           MR. CARPINELLO:  Although the defendants' activities

10  with their attorneys began with the lawsuit, obviously, as

11  Mr. Burkoff explained, our attorneys have been actively

12  involved in preparing for the case for several months, so a log

13  would include literally hundreds of pages for of

14  attorney-client materials relating to these various topics, and

15  I think we would ask that we get the same ruling with regard,

16  after we began the commencement of the investigation for

17  litigation in terms of our attorney communications and attorney

18  documents.

19          THE COURT:  And who is it that is speaking again?

20          MR. CARPINELLO:  I'm sorry, it's George Carpinello.

21          THE COURT:  You represent the plaintiffs.

22          MR. CARPINELLO:  Yes, Your Honor with Mr. Boies.

23          THE COURT:  And you are saying that the ruling with

24  regards to the privilege log which the local law says you don't

25  have to put things since the litigation starts, you want to say

1    that you don't want to put things related to the work you did

2    in preparing for the litigation.  Am I hearing you correct?

3              MR. CARPINELLO:  Correct, for the same reason, which is

4    that the attorneys would be actively involved in communications

5    among themselves and with clients and with anyone with a joint

6    privilege and it would be literally probably hundreds, if not

7    thousands, of separate documents.

8              THE COURT:  Okay.  Do the defendants have any

9    objections to that request?

10             MR. BURKOFF:  This is Dave Burkoff.  We do, Your Honor,

11   a couple of points.  First, that request, to be clear, diverges

12   from the very clear and plain terms of the local rules which

13   requires a log with respect to all communications withheld on

14   privilege cases other than those after the commencement of the

15   action.

16             Here we've got a, frankly, a unique situation that

17   cuts, you know, even farther in that direction because the

18   operative agreement is this Trust Agreement which the

19   plaintiff's lawyers were intricately involved, it appears.  We

20   believe they are referenced in the agreement, with negotiating

21   and preparing and the issue to our understanding is how this

22   agreement came about and whether it was lawful.

23             So, you know, if they come back and say, Your Honor,

24   there are 5,000 documents and this is too onerous to do by this

25   Friday, I get it.  We can have that discussion, but, you know,

```
 1    we are not there yet and we would like to see those

 2    communication logs.

 3            THE COURT:  Okay.  The ruling will be in adhering to

 4    the local rule.  If it presents a problem for plaintiffs,

 5    obviously, the privilege log is not documents that would be

 6    produced.  That would be subject to challenges to the

 7    privilege.  So, put your efforts on the documents that will be

 8    produced and, again, I will come up with dates for the

 9    production of the privilege log.

10            If it becomes a problem, try to talk among each other.

11    Try to resolve it.  It may be that a lot of it is an exercise

12    in futility, but if you can't agree, then I will address it.

13            All right.  Anything else that I need it address with

14    regard to plaintiff's response to say the document request that

15    has in the been ruled on directly or maybe by implication based

16    on rulings that I have made?

17            MR. BURKOFF:  Your Honor, this is Dave Burkoff.  We

18    haven't yet addressed, if I am counting right, two, three,

19    four, eight, nine and ten, and we've got various general

20    objections incorporated in their responses, plus objections on

21    this basic theme that the documents requested don't relate to

22    standing.

23            If there is a representation by plaintiff's counsel

24    that, you know, they are not withholding anything or that they

25    won't once they get PDVSA documents withholding things on the
```

```
 1    basis of various objections then maybe if you give us

 2    30 seconds to flip through here, we may not need to discuss

 3    anything else.  But I have just included an assumption on that

 4    statement.  So, respectfully, we may want to hear from

 5    plaintiffs on that.

 6          MR. BOIES:  What was the assumption?

 7          MR. BURKOFF:  The assumption is that with regard to the

 8    other requests that plaintiffs are not withholding documents on

 9    the basis of their general objection or their objections

10    essentially for relevance, other than, you know, documents that

11    are forthcoming from PDVSA or privileged documents that will be

12    listed on the log.

13          THE COURT:  If you need me to rule on any particular

14    request, I will be happy to do that.  Why don't we take like a

15    little five-minute break and give everybody a chance to look

16    over and if there is any particular rulings that you need, then

17    I will be happy to address them so there is nothing left in

18    doubt.

19          All right.  So, we will just put it on -- well, you all

20    can -- let's see how we can do this.

21          You all are on the Court's line.  I wanted to give you

22    the privacy to talk this among yourselves.  We will leave the

23    courtroom, myself and my clerk, and when you are ready to tell

24    me what you need to address, my clerk will get me and that way

25    you have privacy, and the court reporter will not take any of
```

```
 1    this down.

 2          Five minutes.

 3          MR. BOIES:  Thank you, Your Honor.

 4          COURTROOM DEPUTY:  Court is in recess.

 5          (Brief recess.)

 6          THE COURT:  Okay.  Thank you.

 7          COURTROOM DEPUTY:  Court is again in session.

 8          THE COURT:  Okay.  Thank you very much.

 9          Any other specific request you may need me to deal with

10    at this time?

11          MR. BOIES:  I think only two, Your Honor.  We went

12    through request two, three, four, eight, nine, and ten.

13          THE COURT:  Okay.

14          MR. BOIES:  And with respect to two, three, four and

15    eight, plaintiff has agreed that it will log the documents

16    withheld.  With respect to nine and ten, we do not believe that

17    those are relevant standing issue, at least in terms of their

18    breadth because, for example, the nine would require us to

19    either produce or log any document that we had in which lawyers

20    were internally discussing U.S. agencies, regulatory body and

21    whether to get, apply for an exemption.

22          We don't have any objection to producing any documents

23    that actually relate to requests to the U.S. agencies or

24    statements to or from the agency but internal discussions

25    about -- we don't see how that is relevant withstanding.
```

```
 1            THE COURT:  Okay.  Let me hear from defense from that

 2    point.

 3            MR. BURKOFF:  Your Honor, so we are on nine.  I did

 4    just hear the statement of counsel.  I think we can live with

 5    that where internal communications within the Boies Schiller

 6    firm concerning whether or not there is a need to make certain

 7    applications or communicate otherwise with regulators, I think

 8    those can be excepted out of this request.

 9            MR. BOIES:  Thank you.

10            THE COURT:  All right.  So, you have agreement on nine

11    and ten.

12            MR. BOIES:  I think in the spirit of cooperation, we

13    will recede on ten, so we don't have a problem with that

14    either.

15            THE COURT:  So all the requests for production having

16    been resolved or ruled on.  Let me hear from Mr. Boies in terms

17    of any dates for supplemental production and dates for the --

18    and dates for the privilege log.

19            MR. BOIES:  With respect to the privilege log, Your

20    Honor, because this relates to all of the work that the firms

21    did in the several months leading up to the filing, that's

22    going to be an enormous group of documents that are going to

23    have to be gone through.

24            These are not documents that we would be producing but

25    we have to identify them for purposes of the privilege log so
```

1    we have to go back and go through all of our files to find all

2    of the internal communications that took place in that many

3    month period of time.

4          What I would ask on that is that we have 48 hours to

5    try to size the problem and try to get a sense of whether we're

6    talking about, you know, 500 or a thousand or 5,000 of

7    documents.

8          With respect to the supplemental production, with

9    respect to the documents that we have, ourselves, those, I

10   think -- I am going to ask George Carpinello to help me on this

11   but those I think we out to be able to produce.

12         The documents -- if there are documents from PDVSA

13   those are documents that we are going to request and with

14   respect to that, again, I would ask for 48 hours to get back

15   first to defense counsel and then if we can't agree to the

16   Court because our ability to get a quick turnaround from

17   Venezuela has been limited and it may be that the answer is

18   that they don't have any documents that we don't already have

19   and that makes it easy, but if they do have documents or if

20   they need to undertake an extensive search for those documents,

21   I am not in a position right now to be able to give the Court a

22   good date.

23         I can do it for the stuff that we have but at least

24   until I talk to the General Counsel of PDVSA this afternoon, I

25   don't think I am in a position to give you a realistic date on

1    that.

2         THE COURT:  Okay.  So, whatever you have you can

3    produce in a week.  Is that good enough for defendants?

4         MR. BOIES:  Yes.

5         THE COURT:  Okay.  So, whatever you have handy produce

6    in a week, and then you want 48 hours to come up with a date

7    for the documents that PDVSA may or may not have and for a date

8    for the privilege log and then you all can maybe hash it out

9    among yourselves and come up with a livable date.

10         Would that be an acceptable approach, Mr. Burkoff?

11         MR. BURKOFF:  Your Honor, yes, that's an acceptable

12    approach.  So, by this Friday we will hear from the plaintiffs

13    with a proposal on deadlines from PDVSA's documents and their

14    privilege logs.

15         I just note that many other dates on this other

16    schedule, if not all, flow from that so if we could discuss how

17    to deal with that, and I know remaining for this call is a

18    discussion of witnesses and depositions but, you know,

19    currently we have a deadline of next Friday to depose fact

20    witnesses but at this point we are not going to have documents.

21         THE COURT:  Well, next Friday to depose fact witnesses

22    and they are telling you that they will give you what they have

23    by way of documents by next Wednesday so at least you will have

24    that.

25         MR. BURKOFF:  Yes, but we won't have a privilege log to

1    assess the various claims of privilege.  Frankly, Your Honor,

2    right now we have a commitment to produce their documents by

3    next week but not PDVSA's documents.

4         THE COURT:  Right.  But they are going to talk to you

5    by Friday about it and give you an estimate and maybe -- I

6    don't know what the status of electronic communications are

7    with Venezuela but maybe things can be, if there are documents

8    in the possession of PDVSA maybe those can be expedited.

9         But if you have issues, then, of course, I will be

10   happy to address them, but I am just giving counsel the first

11   shot of trying to work out those deadlines because you always

12   will know more about your situations than I will.

13        Let's move on to the next issues which is the

14   depositions and the availability of fact witnesses and so on.

15        Let me locate that in the notice.

16        So, you all have -- I saw defendant has provided notice

17   of filing subpoenas for 30(b)(6) depositions.  That's Docket

18   Entry 277 that was filed earlier this morning, notice of

19   deposition of PDVSA, notice of deposition of PDVSA, U.S.

20   Litigation Trust.  Obviously, that's a party.  No subpoena is

21   needed.  The notice is sufficient.

22        I think we have the issue of whether PDVSA itself will

23   be -- the corporate rep will be available for deposition.

24        We have issues as to that entity and then the

25   individual deponent being available here or in Venezuela and I

1   think we also have issues as to who the deponent will be.

2          Is plaintiff looking to take depositions of defendants?

3   Do we have any issues I need to address with that related to

4   standing?  Obviously, you want the other stuff for the

5   preliminary injunction but do I need to address anything there?

6          MR. BOIES:  We will also be taking depositions of the

7   defendants, either of the individuals, of the individuals and

8   of the 30(b)(6) of the corporations.  Relating to the same

9   subjects that the defendants are going to want to inquire and

10  which the Court has held they may inquire into related to the

11  statements about the authority of the Trust, authorizations and

12  the like.

13         So, we will be taking, essentially, the same

14  depositions of the defendants that they are taking of us.

15         THE COURT:  Okay.  But do I need -- my question was

16  because that was not mentioned in your letter and I want to

17  know if I need to handle anything there before I jump into the

18  issue of defendants taking depositions?

19         MR. BOIES:  No, our reference in the letter was simply

20  to say that if the Court held that this was relevant standing,

21  it was appropriate for standing that we would want to give --

22         THE COURT:  I'm sorry, you broke up again.

23         MR. BOIES:  What we said in the letter was if the Court

24  did decide that discovery was -- we would want to have

25  depositions of the defendants.

1        MR. BURKOFF:  This is Dave Burkoff.  Our view is this

2   should be addressed because we would have objections to that, I

3   believe.  But we have a division of labor among the defense

4   group for efficiency.  I believe Mr. Encinosa is going to speak

5   about deposition issues, although, I'm glad to do it otherwise.

6        THE COURT:  Okay.  Let me handle that first because I

7   think it's better to crystalize the issue that the defendants

8   have with taking the plaintiff's depositions and then we will

9   move on to other issues.

10        From what I can tell is it seems like plaintiff is not

11   making anybody available for deposition other than the 30(b)(6)

12   deponent for plaintiff itself.  Is that a correct statement?

13        MR. ENCINOSA:  Your Honor, this is Israel Encinosa.  As

14   Mr. Burkoff said, I have been designated by the defendants to

15   take lead.  Based on our meet and confer conference yesterday,

16   my understanding is that the plaintiff does not agree to make

17   anybody available for deposition, including the Trust's

18   30(b)(6) at this point.

19        THE COURT:  Okay.  The reason for that is?

20        MR. BOIES:  I don't think that's accurate, Your Honor.

21   What we have said is that we would produce 30(b)(6) witness for

22   the Litigation Trust, assuming that the Court ruled as the

23   Court has ruled that factual discovery is appropriate for the

24   standing issue.

25        THE COURT:  Okay.

1          MR. BOIES:  So, I don't think that the issue is with

2     respect to the Litigation Trust.

3          With respect to PDVSA, we will also -- just as we are

4     going to ask them to produce documents, we are going to ask

5     them to produce a 30(b)(6) witness that can be, whose

6     deposition can be taken and I have no reason to believe that

7     they will not produce a 30(b)(6) witness.  As I said, I can't

8     make that commitment on behalf of them, but they are either

9     going to produce it or they will be subpoenaed to produce

10    somebody.

11         THE COURT:  Okay.  So, are you all going to work that

12    out or do you need me to help you?

13         MR. ENCINOSA:  Your Honor, this is Israel Encinosa,

14    again.  I understood Your Honor wanted to leave the issue of

15    depositions that the plaintiffs want to take on standing to the

16    end but to address that briefly now if Your Honor would like, I

17    can address it before we get back to the other issue or we can

18    leave it until the end.

19         THE COURT:  I want to address the depositions that

20    defendants want to take first.  We just heard from Mr. Boies

21    that the Trust will produce its own corporate rep that I don't

22    know and that's where it wasn't clear, but I don't know if

23    Mr. Boies is going to say if PDVSA will voluntarily produce a

24    corporate rep or if they need to be subpoenaed, but that brings

25    in the issue of where the subpoena will take place because, as

1    I understand it, PDVSA is not a local entity.  So, that's why I

2    wanted to know if you all are going to try to work that out or

3    do you need me to make rulings right now?

4         MR. ENCINOSA:  Your Honor, Israel Encinosa again.  We

5    had a meet and confer to try to work it out and we were unable

6    to work it out, so we believe we need Your Honor's assistance

7    with that issue as well as with depositions of individuals that

8    they, you know, refused or haven't made anybody available for

9    deposition including, you know, for very significant reasons

10   the Trust, among others.

11        Now, to be clear, what happened here is under the

12   scheduling order the parties were supposed to begin on

13   April 23rd because that's the day the documents were to be

14   produced and theoretically the parties would then be able to

15   review the documents to gain further insight into the potential

16   deponent.

17        But even with that deadline, we provided the plaintiffs

18   with the list of I think it was about seven individuals and

19   then a couple of categories like 30(b)(6) witnesses and asked

20   the plaintiff to let us know, the defendants, which individuals

21   on that list, you know, that either controlled or was willing

22   to make available for deposition.  The response was that it

23   didn't control any of them and as of right now and despite our

24   meet and confer yesterday they hadn't agreed to make any of

25   them available for deposition.

```
1              THE COURT:  Okay.  Let's take them in order.

2              The Trust is available for deposition.  Can you confirm

3    that, Mr. Boies?

4              MR. BOIES:  Yes.  Yes, confirmed.

5              THE COURT:  PDVSA, when will you know if PDVSA is

6    available for deposition and where that deposition would take

7    place?

8              MR. BOIES:  I will know that within the same 48 hours

9    that I will know about the documents and maybe sooner.  I may

10   know that as early as the end of the day based on assuming the

11   conversation that's scheduled to go forward actually goes

12   forward.

13             I will know that within the 48 hours that we conferred

14   to before.

15             THE COURT:  Okay.  Then what is the position on if

16   PDVSA does not voluntarily offer its corporate representative

17   for deposition on the service of a subpoena on PDVSA?

18             Is it your contention that you no have authority to

19   accept such a subpoena?  It is your contention that such a

20   deposition has to take place in Venezuela?

21             Give us some idea of what the disputes are so I can

22   give you some guidance.

23             MR. BOIES:  Sure.  If PDVSA would not produce one

24   voluntarily, I will ask for their permission to accept service

25   of a subpoena on their behalf.
```

1          I believe that they will want that deposition to take

2     place in Venezuela because that's where they are located and

3     that's where all of the high officials of the Government are.

4          Now, we have talked about the possibility of having a

5     deposition taken by video conference.

6          THE COURT:  It sounds to me like that's the only viable

7     way to do it.

8          MR. BOIES:  I think you are right, Your Honor, but I

9     will know about the subpoena issue and whether they will do it

10    voluntarily, which I am going to strongly urge them to do -- I

11    will know that within the next 48 hours.

12         THE COURT:  All right.  So as to that entity, then, I

13    will again allow you the 48-hour time period to meet and confer

14    and it sounds to me that it might be a good idea to circle back

15    on Monday to see if you have resolved these issues or if you

16    need my further assistance, but let's keep that in mind as a

17    possibility.

18         Now, what about the individuals?

19         There was -- let me see if I can find out.  There was a

20    list of two people and then some other potential people.

21         MR. ENCINOSA:  Yes, Your Honor, this is Israel

22    Encinosa.  So, the way we did it is under the scheduling order

23    each side is permitted four fact depositions on standing and

24    then that gives the ability to have additional depositions upon

25    a showing of good cause.  What we have intended to do and, of

```
 1   course, not having the benefit of plaintiff's full production

 2   yet but what we attempted to do is to structure them to arrange

 3   them potentially so that indicates that the ones we would take

 4   arrange within the four that we are allowed.  Again, the issue

 5   being that plaintiff hasn't made any of them available for

 6   deposition and we presume plaintiff will raise issues as to

 7   whether they control or make certain people available for

 8   depositions so that's why we sort of rank them for ease of

 9   reference for this hearing today.

10            THE COURT:  Okay.  I am looking at an e-mail that's

11   docketed at 276-3.  Is that the list in there?

12            MR. ENCINOSA:  I believe that that is, Your Honor.

13            THE COURT:  Okay.  So, obviously you want the 30(b)(6)

14   representative of the Trust and of PDVSA.  That's two out of

15   the four that you get.  Right?

16            MR. ENCINOSA:  Correct.

17            THE COURT:  So, who are the other two that you want to

18   get?

19            MR. ENCINOSA:  The maximum we have on the list is

20   Reynaldo Munoz Pedrosa.  He is one of the individuals that

21   signed the Trust Agreement itself and is the one that the

22   plaintiff authorized PDVSA to assign its claims to the Trust.

23   He is the -- purported to be or has the title, although there

24   is dispute because the National Assembly recognized that he is

25   not validly -- he does not validly hold this title of
```

```
 1    Procurador General of Venezuela.  So, he would be the first

 2    individual that we would want to depose.

 3              THE COURT:  Okay.  Mr. Boies, what's the story with

 4    this person?  Obviously, this was an individual --

 5              MR. BOIES:  He is a high government official in

 6    Venezuela.  He is a general attorney of Venezuela, which

 7    Venezuela may have two people who devoid the possibility --

 8              THE COURT:  I'm sorry, you are breaking up again.

 9              MR. BOIES:  In Venezuela there are two people who

10    divide the responsibilities that are united in the Attorney

11    General of the United States, and this individual is one of

12    those two people.  He is a high government official.  We do not

13    control him.

14              I am not sure, really, what relevant factual

15    information they are going to have on standing, but I have met

16    this person and I think he might very well be prepared to make

17    himself available for a deposition, but that is a decision that

18    he and the Venezuela government would make.  I could not

19    control that.

20              THE COURT:  So, how would the defendants go about

21    serving a subpoena on this gentleman being that he resides in

22    Venezuela?

23              You know, obviously, going through the Hague convention

24    is just undoable, so let me ask Mr. Encinosa, is your approach

25    to try to get whoever from this list that's willing to appear
```

1    voluntarily?  Is that what you are trying to do?

2         MR. ENCINOSA:  No, Your Honor.  Our approach would be

3    to get the individuals that we most want to take and we just

4    listed the others because it's an expedited proceeding so we

5    don't want any time to be wasted.  But we do feel that

6    Mr. Pedrosa is a very important witness we think under the same

7    law regarding assignment of claims where the plaintiff's claims

8    in the shoes of the parties' assignment claims that

9    Mr. Pedrosa, as the individual in Venezuela, who is the one who

10   purportedly authorized PDVSA's transfer of claims to this trust

11   that he should be made available by --

12        THE COURT:  But made available by whom?  Who has the

13   power to make this gentleman available?

14        MR. ENCINOSA:  Your Honor, my understanding and based

15   on the research we've done on assignment law is that the

16   plaintiff because is the one who was assigned the claims stands

17   in the shoes of assignor for purposes of discovery.  So, if the

18   plaintiff can't comply with the obligation, the Trust can't

19   provide documents, can't provide witnesses from the entity that

20   assigned the claim, then essentially they can't proceed with

21   the claim.  They have this obligation to provide discovery.

22        THE COURT:  Okay.  But let's see about the logistics

23   here.  I follow the whole concept of the Trust asking PDVSA

24   because PDVSA is the assignor of the claims to the Trust but

25   now this gentleman is an individual, a high-level official of

1    the Venezuelan government.  There is no way that the Court can

2    exercise compulsory process on him.  The methodology would be

3    the Hague Convention, which is out of the question.  So, I

4    don't -- what I am trying to get at, and I don't seem to maybe

5    articulate it properly is, is Mr. Boies going to pick up the

6    phone and call this gentleman and say, hey, do you want to

7    appear for deposition and if he says, yes, then it's arranged.

8    And if he says no, then we move on to somebody else.  I am

9    trying to see what the plan is, how I can help expedite it with

10   the limited powers that the Court has as to this individual.

11        I can see that PDVSA could make its employees available

12   for deposition because it is the assignee of the Trust but this

13   guy is not an employee of PDVSA.  He is the Procurador General

14   de Venezuela.

15        MR. DAVIS:  Yes.

16        MR. ENCINOSA:  Yes, Your Honor, that is correct.  This

17   is a unique circumstance and among the arguments made why the

18   Trust doesn't have standing is that the only person that could

19   assign, that could transfer these claims to the Trust would be

20   the board of PDVSA, whose bylaws is having board approval, and

21   then the president of PDVSA, another individual that signed the

22   Trust Agreement.  But in this case what happened is that that

23   didn't happen and another individual who happened to be the

24   Procurador General of Venezuela signed it on the face of the

25   document purporting to assign PDVSA's claims.

1          So, it's a unique situation where what you have is an

2     individual who the plaintiffs are admitting by title is not

3     part of the PDVSA but who on the face of the Trust document is

4     purporting to act on PDVSA's behalf.  So, on its face it's at

5     least the agency, so --

6          THE COURT:  I'm sorry, you are breaking up.

7     Mr. Encinosa, try again.  On its face?

8          MR. ENCINOSA:  I apologize.  What I was saying is when

9     you then marry out with the case law regarding assignment and

10    obligations of the party who assign claims to provide

11    discovery, in this particular instance, although Mr. Pedrosa

12    may not typically be an employee or agent or part of PDVSA, he

13    purports to act on PDVSA's behalf on this Trust.

14         MR. BOIES:  He acted in his official capacity, I

15    believe.  He acted in his official capacity as the Procurador

16    General of Venezuela.

17         THE COURT:  Mr. Boies, what is your plan?  Are you

18    going to pick up the phone and call Mr. Pedrosa and ask him do

19    you want to appear for deposition and if he says no, that's the

20    end of it?  How are we going to handle this?

21         MR. BOIES:  I think I would write him just -- my

22    Spanish is not great and his English is not great so I think

23    that I would write him so that there is no misunderstanding and

24    make the request for him to appear for deposition.  If he

25    declines, I don't think there is a practical solution because I

1   don't think that he is subject to process in the United States.

2          And even if it would be appropriate to do so with a

3   person of his position in a foreign sovereign government --

4          THE COURT:  All right.  Within the next 48 hours, I am

5   assuming when you said you write him, you send him an e-mail

6   because of snail mail.

7          MR. BOIES:  I will write him an letter that I will

8   e-mail to him.

9          THE COURT:  So, within 48 hours you will be able to say

10  whether he says yea or nay?

11         MR. BOIES:  Yes.

12         THE COURT:  That takes care of him.

13         Who is number four, Mr. Encinosa?

14         MR. ENCINOSA:  I want to clarify something, the fourth

15  is Nelson Martinez, who was the Minister of the Ministry of the

16  People's Petroleum who was the other individual who signed the

17  Trust purportedly on behalf of PDVSA.

18         My understanding is he was removed from office and

19  jailed in Venezuela.

20         THE COURT:  Jailed?  Did I hear jailed?

21         MR. ENCINOSA:  Yes, Your Honor, in Venezuela last year.

22  I am assuming that plaintiff will take the position that he is

23  not and cannot be made available for deposition.  I just need

24  to confirm that and I can move on to the next one.

25         MR. BOIES:  I do not know what his exact status is and

1    whether he could be made available for deposition or not.  I

2    strongly suspect that he is not going to voluntarily appear for

3    deposition and any deposition that did take place of him would

4    obviously have to be in Venezuela.

5            THE COURT:  Is he, in fact, in jail?  Do you know that?

6            MR. BOIES:  I know he was arrested.  What his exact

7    status is, I don't know.

8            THE COURT:  Okay.  He doesn't seem like a good prospect

9    to me, Mr. Encinosa.

10           MR. ENCINOSA:  Your Honor, since we are in the mode of

11   waiting to hear back from plaintiff's counsel for these

12   individuals, perhaps we should address the next two

13   individuals.

14           THE COURT:  Is there somebody -- let me put it this

15   other way.  Is there somebody else that Mr. Boies can reach out

16   to and see if that person would make himself or herself

17   available for deposition from this list?

18           MR. BOIES:  One of the thoughts that I had, Your Honor,

19   is I am going to be talking to the General Counsel of PDVSA.

20   I'm scheduled to.  I have to say I am scheduled to talk because

21   I was scheduled to talk yesterday and the call got cancelled.

22           I am scheduled to talk to the General Counsel of PDVSA

23   and what I would do is raise with her the request for

24   deposition and try to see if she can suggest someone who could

25   speak in an authoritative way to this issue and who would be

1    willing to have their deposition taken.

2         THE COURT:  But these people on this list are people

3    who either signed the Trust Agreement or had some involvement

4    because we are already expecting a 30(b)(6) rep from PDVSA to

5    cover things from PDVSA's point of view.  So, would this PDVSA

6    General Counsel have the ability to reach out to any of these

7    people on this list and see if any of them are willing to make

8    themselves available for deposition?

9         MR. BOIES:  I would ask her to do that.  I don't know

10   if she would be willing to but I would ask her to do that.

11        THE COURT:  All right.  Do you want to all work out

12   among yourselves the order of this list that Mr. Boies would

13   share with the General Counsel of PDVSA and see if we can get a

14   hit from one of these people?

15        MR. ENCINOSA:  Yes, Your Honor, Israel again.  We are

16   happy to do that.  The last two individuals, just for the

17   record, both would be PDVSA individuals so they wouldn't be

18   subject to the other issue which is Alexis Arellano and Manuel

19   Quevedo.

20        THE COURT:  Oh, okay.  Well, that's good.  So, Arellano

21   and Manuel Quevedo are employees of PDVSA?

22        MR. ENCINOSA:  Yes, but I would -- the list and the

23   e-mails is not in the order.  The way I would rank them next is

24   Alexis Arellano, who is the PDVSA appointed trustee in the

25   second version of the Trust Agreement, and then Manuel Quevedo,

```
 1    who is the -- he is the president of PDVSA, so under PDVSA's
 2    bylaws, he is authorized, the only individual who is authorized
 3    at the time to act on behalf of --
 4         THE COURT:  All right.  So, you all worked out the
 5    order that you want Mr. Boies to address with PDVSA's General
 6    Counsel and see if you can get those two people, those two
 7    additional people.
 8         All right.  Now, I think obviously our best bet would
 9    be to circle back on Monday.  Let me just check my schedule and
10    I can get a report of all the 48-hour investigation results and
11    then we can go from there on anything else that we need to do.
12         Let me check my schedule for Monday.  I have something
13    at 10:00.  I have a lunch meeting from 12:00 to 1:00 and I have
14    something at 2:00.  So, I can do it at 3:00 on Monday if that
15    works for everybody, a telephone conference.  You can give me a
16    report on all the 48-hour negotiations, attempts and then we
17    can hopefully resolve the dates for those supplemental
18    production in the hands of PDVSA, the date for the privilege
19    log, who will deposed, whether PDVSA voluntarily agrees to be
20    deposed, whether we can get two other people and then you all
21    can then have a working list of depositions on plaintiff's
22    side.
23         Then what about who did you want to depose, Mr. Boies,
24    on defendant's side?
25         Did you want to depose -- I thought there was a limit
```

1    of four depositions per side?  Who do you want to depose on the

2    standing issue on defense's side?

3         MR. BOIES:  We would want to depose Mr. Morillo,

4    Mr. Baquero, Mr. Liendo and a 30(b)(6) deposition.

5         One of the issues that we have are that there are so

6    many related entities that we are trying to figure out exactly

7    who is the right, you know, entity to respond to this.  The

8    first three would be Morillo, Baquero and Liendo.

9         THE COURT:  Morillo, Baquero and Liendo.

10        Whoever represents those individuals, can you work out

11   with Mr. Boies making these people available?

12        Are they in Miami?  Are they somewhere else?  Who wants

13   to address that?

14        MR. ENCINOSA:  I represent Mr. Liendo, not Mr. Morillo

15   or Mr. Baquero, but I want to address an additional matter.  We

16   were never told -- this is the first time we are hearing this

17   list of witnesses, so there was no attempts to reach out to

18   defendants to request any depositions.  Yesterday during our

19   meet and confer on our request to take depositions for the

20   first time opposing counsel mentioned that they might want to

21   take defendants' deposition as to the issue of standing so that

22   is all without listing the names.

23        THE COURT:  Well, the schedule says parties will

24   identify potential deponents as promptly after April 23rd as

25   possible.  Mr. Boies is identifying them now on April 25th.

70

1   You all can work this out.  I am not going to get into this

2   finger pointing business.

3        Morillo and Baquero, again, you can all work it out and

4   we can revisit it on Monday, but my question was do we have any

5   logistic things?  Are these people in Miami?  Are they

6   somewhere else?  Do we have to worry about how we are going to

7   get them?

8        MR. MCLISH:  Your Honor, this is Tom McLish from Akin

9   Gump representing Mr. Morillo and Mr. Baquero.

10        Neither of them are in the United States.  Neither of

11   them have been served with process to bring them into this case

12   and we believe the Court does not have personal jurisdiction

13   over either of them.  So, there is those issues, but also, just

14   the fundamental issue of what could these people possibly say

15   about the validity of the Trust Agreement.  They weren't --

16   there is no suggestion that they were involved in the creation

17   of the Trust or have any personal knowledge of anything

18   relating to the validity of the Trust.  So, we just question

19   altogether the idea of taking these depositions where there is

20   no reason to believe they could lead to any information that's

21   relevant to the standing issue.

22        THE COURT:  Let me ask you this question; why does it

23   say here parties will identify potential deponents as promptly

24   after April 23rd as possible?  It seems to me when you say

25   parties, it means each side will identify potential deponents.

1    And when you all talked about you contemplate plaintiff taking

2    depositions of defendants, I am just trying to implement

3    whatever your agreement was here.

4         MR. ENCINOSA:  This is Israel Encinosa.  I was involved

5    in the negotiation of that agreement.  We questioned at the

6    time that if -- we proposed a deposition and then sort of as an

7    afterthought the plaintiff said we reserve the right to take

8    some.  We don't have anybody in mind.  We probably won't take

9    anybody.  They certainly didn't mention that they will be

10   taking depositions of the defendants who as Mr. McLish pointed

11   out, you know, they can't possibly have them produced.  This

12   complaint, the existence of the Trust was not known to anybody

13   until last month when the complaint was unsealed.  So, as far

14   as the negotiations and scheduling them, that's what I have for

15   the Court.

16        MR. BOIES:  Your Honor, this is David Boies.  I

17   respectfully disagree with that characterization.

18        The agreement was explicit that the parties "plural"

19   were going to and we were explicit that if depositions were

20   going to be taken, we were going to want to take depositions as

21   well.

22        The defendants, when they want document production and

23   when they want deposition, are taking the position that they

24   can inquire as to whether people have challenged the Trust

25   authority.  We ought to be able to similarly inquire whether

1    people have recognized the Trust authority.

2         They have said that they are going to ask us about any

3    communications with the National Assembly.  We ought to be able

4    to ask them about any communications with the National

5    Assembly.  The way the parties agreed to this scheduling order

6    was that it was a two-way street and each side got the ability

7    to have the same rights as the other.  Otherwise, we never

8    would have agreed to it.

9         THE COURT:  Well, let me just say this; the next entry,

10   May 4th, says the last day for fact depositions on plaintiff's

11   standing.  So, yes, you can take depositions on plaintiff's

12   standing.  Depositions shall be limited only to plaintiff's

13   standing, so if you want to assert that right which seems to be

14   implied in this entry for April 27th, parties will identify

15   potential deponent, you are going to be limited to the issue of

16   plaintiff's standing.

17        I don't see those depositions being very long because I

18   don't see these people knowing a heck of a lot about the Trust

19   Agreement and how it was formulated and so on, but giving you

20   that right, you cannot then go and ask these people about

21   things on merits discovery or things outside of this limited

22   schedule.

23        MR. BOIES:  Absolutely right, Your Honor.  We accept

24   that and I assume that that is true for both sides, it's

25   limited to the standing issue.

1      THE COURT:  All right.  Mr. Morillo, Mr. Baquero are

2   not in the U.S.  They have not been served but we are doing

3   standing discovery even though people have not been served and

4   we are certainly doing this in a very unorthodox way, but

5   that's how we are doing it.

6      So, counsel for these individuals, can you make them

7   available for either a telephonic or video conference

8   deposition?

9      MR. MCLISH:  Your Honor, this is Tom McLish for

10   Mr. Morillo and Mr. Baquero.  I think the answer to that is

11   going to be no.  They are not currently before the Court

12   properly in the case and -- so, we don't think that's going to

13   be possible.  I would just note that this is the first time we

14   are being asked that question, so if we could be given some

15   additional time to respond perhaps in 48 hours.

16      THE COURT:  All right.  We will revisit that issue on

17   Monday also, but let me just say, I know they haven't been

18   served.  I know the technicality.  I know that we have put off

19   their motions challenging process, challenging personal

20   jurisdiction.  We have put those off by what appear to be

21   agreement of the parties.  So, I would recommend that, you

22   know, preserving all your rights that this be conducted so that

23   we can flush out this whole standing issue and proceed to the

24   briefing schedule.

25      What about Mr. Liendo?  Mr. Encinosa, I believe you

1   said you represent him.

2            MR. ENCINOSA:  That's correct.  I believe he is in the

3   United States.  I don't have an issue.  This is the first that

4   we hear this request.  We request at least a 48-hour period.

5            THE COURT:  All right.  So, again, you will try to work

6   things out and then we will address things on Monday.  But,

7   again, I am making the same observation to you as I make to

8   counsel for Morillo and -- I can't remember the guys' name.

9            MR. BOIES:  Baquero.

10           THE COURT:  All of this would be without prejudice to

11   their asserting objections to personal jurisdiction service.

12   They haven't been served.  In a sense, they would be testifying

13   not even as parties yet because they haven't been served.  But

14   I would encourage cooperation so that we can get this off first

15   base and keep moving.  And then you will work out, Mr. Boies,

16   who this 30(b)(6) deposition is going to be.

17           MR. BOIES:  Yes.

18           THE COURT:  I may, at the next hearing, limit the time

19   of the deposition as something that I would consider.  When I

20   make depositions very limited I usually try to put a time limit

21   so people realize the strength of the limitation so that's

22   something else that we could discuss on Monday.

23           So, have we covered everything that we can resolve for

24   the moment?

25           MR. BOIES:  I think we have, Your Honor.  But the only

1    thing I want to just note because I don't want the record to be

2    unclear is that we accept that Mr. Morillo and Mr. Baquero

3    challenge service but the Court should be aware that we believe

4    they were validly served.

5         THE COURT:  Well, we will fight -- well, you will

6    fight.  I won't fight.  I will decide those issues.  But,

7    again, with all kinds of reservations of right which have been

8    made explicit throughout.  So, is Monday at 3:00 good for

9    whoever is going to participate?

10        MR. BOIES:  Yes, we will make that work, Your Honor.

11        MR. CARPINELLO:  Judge, may I interrupt?

12        THE COURT:  Yes.

13        MR. CARPINELLO:  George Carpinello.

14        THE COURT:  Yes, sir.

15        MR. CARPINELLO:  Mr. Boies is not aware of this.

16   Mr. Encinosa e-mailed me yesterday and asked me if we would

17   make available any declarants, any additional declarants that

18   we were going to supply the declarations to the Court available

19   for deposition, and I said that we would.  And I asked him

20   whether the defendants would make the same commitments but I

21   got no response.

22        UNIDENTIFIED SPEAKER:  We can talk about that.

23        THE COURT:  All right.  If you have issues, you can

24   bring it up on Monday.

25        I'm sorry, one more thing.  We can revisit on Monday

1   the issue of discovery and preparation for the preliminary

2   injunction hearing.  So, I will set the hearing.  I don't need

3   you to give me a notice because I will list all these things

4   that I am reserving for Monday and then I will have a catchall

5   thing.  Any other discovery disputes relating to standing that

6   you all wish to address and that will be Monday at 3 o'clock

7   telephonic.  You will get the same call-in instructions that

8   you did for today.

9           Anything else?

10          MR. MULLINS:  This is Ed Mullins for Trafigura.  Thank

11   you for your time today.  I appreciate all the effort.

12          It does sound like there is quite a bit of work that's

13   going to be done and this is not on the agenda but can we talk

14   about revisiting the deadlines for the briefings, the experts

15   and the hearings.  I don't think it's going to be feasible

16   given a lot of these documents will be in Spanish and they have

17   to be translated.  These depositions will have to be held in

18   foreign countries, apparently.  I want the Court to look at

19   that on Monday.

20          THE COURT:  All right.  I will have a catchall category

21   and you can raise it.  We will start at 3:00 and we will keep

22   going until we finish.  All right.

23          MR. BOIES:  Thank you, Your Honor.

24          MR. BURKOFF:  Thank you, Your Honor.

25          MR. ENCINOSA:  Thank you, Your Honor.

```
 1              COURTROOM DEPUTY:  Court is adjourned.

 2              (Proceedings were adjourned at 12:50 p.m.)

 3

 4                    C E R T I F I C A T E

 5

 6         I hereby certify that the foregoing is an

 7

 8  accurate transcription of the proceedings in the

 9

10  above-entitled matter.

11

12

13  April 26, 2018        /s/Patricia Diaz
    DATE                  PATRICIA DIAZ, FCRR, RPR, FPR
14                        Official Court Reporter
                          United States District Court
15                        400 North Miami Avenue, 11th Floor
                          Miami, Florida 33128
16                        (305) 523-5178

17

18

19

20

21

22

23

24

25
```

**/**

**/s/Patricia** [1] - 78:10

**1**

**10** [1] - 18:5
**100** [1] - 3:18
**1000** [1] - 3:3
**1001** [1] - 3:12
**10:00** [1] - 68:13
**11th** [3] - 3:9, 3:24, 78:12
**1221** [1] - 3:6
**12:00** [1] - 68:13
**12:50** [1] - 77:2
**17** [2] - 18:15, 20:9
**17th** [1] - 21:12
**18-20818-CV-Gayles** [1] - 4:3
**19th** [2] - 18:12, 21:6
**1:00** [1] - 68:13

**2**

**200** [1] - 3:15
**20001** [1] - 3:10
**2010** [1] - 3:6
**2018** [2] - 31:19, 78:10
**23rd** [5] - 18:16, 21:9, 57:13, 69:24, 70:24
**25th** [1] - 69:25
**26** [1] - 78:10
**276-3** [1] - 60:11
**277** [1] - 53:18
**27th** [1] - 72:14
**2:00** [1] - 68:14

**3**

**3** [2] - 33:10, 76:6
**30** [1] - 48:2
**30(b)(6** [12] - 53:17, 54:8, 55:11, 55:18, 55:21, 56:5, 56:7, 57:19, 60:13, 67:4, 69:4, 74:16
**305** [2] - 3:25, 78:13
**31412** [1] - 3:16
**33128** [2] - 3:24, 78:12
**33131** [3] - 3:6, 3:13, 3:19
**34** [1] - 19:25
**3:00** [3] - 68:14, 75:8,

76:21

**4**

**400** [2] - 3:23, 78:12
**4200** [1] - 3:19
**48** [9] - 51:4, 51:14, 52:6, 58:8, 58:13, 59:11, 65:4, 65:9, 73:15
**48-hour** [4] - 59:13, 68:10, 68:16, 74:4
**4th** [1] - 72:10

**5**

**5** [1] - 18:5
**5,000** [2] - 46:24, 51:6
**500** [1] - 51:6
**51** [3] - 7:6, 9:11, 11:25
**5100** [1] - 3:3
**523-5178** [2] - 3:25, 78:13

**6**

**6th** [1] - 3:9

**7**

**77002** [1] - 3:4
**777** [1] - 3:9

**9**

**9** [1] - 18:5
**900** [1] - 3:12
**9848** [1] - 3:16
**9th** [1] - 12:17

**A**

**ability** [6] - 32:20, 37:21, 51:16, 59:24, 67:6, 72:6
**able** [9] - 9:12, 17:6, 37:25, 51:11, 51:21, 57:14, 65:9, 71:25, 72:3
**above-entitled** [1] - 78:7
**absolutely** [3] - 24:6, 72:23
**abundantly** [1] -

25:21
**accelerated** [1] - 31:20
**accept** [5] - 32:22, 58:19, 58:24, 72:23, 75:2
**acceptable** [3] - 37:24, 52:10, 52:11
**accordance** [3] - 10:20, 12:20, 32:7
**accurate** [2] - 55:20, 78:5
**act** [3] - 64:4, 64:13, 68:3
**acted** [2] - 64:14, 64:15
**action** [1] - 46:15
**actively** [2] - 45:11, 46:4
**activities** [1] - 45:9
**actual** [2] - 22:21, 35:11
**Adam** [2] - 4:19, 5:8
**add** [2] - 12:15, 17:12
**addenda** [3] - 22:18, 23:8, 23:13
**addition** [1] - 30:15
**additional** [7] - 17:12, 21:11, 59:24, 68:7, 69:15, 73:15, 75:17
**address** [34] - 6:25, 7:9, 7:17, 7:23, 9:9, 9:17, 15:25, 16:1, 16:6, 16:14, 16:16, 18:2, 18:3, 21:19, 23:4, 25:1, 27:5, 27:14, 47:12, 47:13, 48:17, 48:24, 53:10, 54:3, 54:5, 56:16, 56:17, 56:19, 66:12, 68:5, 69:13, 69:15, 74:6, 76:6
**addressed** [5] - 16:12, 17:23, 32:11, 47:18, 55:2
**addressing** [1] - 26:24
**adequately** [1] - 8:24
**adhere** [1] - 10:23
**adhering** [1] - 47:3
**adjourned** [2] - 77:1, 77:2
**admitting** [1] - 64:2
**advance** [1] - 24:1
**adverse** [1] - 43:7
**affects** [1] - 8:19
**afield** [2] - 30:24, 32:10

**afternoon** [3] - 8:12, 33:10, 51:24
**afterthought** [1] - 71:7
**agencies** [2] - 49:20, 49:23
**agency** [2] - 49:24, 64:5
**agenda** [1] - 76:13
**agent** [1] - 64:12
**agree** [11] - 4:4, 11:22, 13:1, 14:18, 24:6, 38:3, 39:16, 47:12, 51:15, 55:16
**agreed** [8] - 17:10, 18:21, 31:19, 33:20, 49:15, 57:24, 72:5, 72:8
**agreed-on** [1] - 17:10
**agreeing** [1] - 10:22
**agreement** [30] - 12:10, 15:14, 15:15, 22:22, 23:20, 23:22, 24:16, 24:22, 25:24, 26:2, 26:15, 26:19, 27:23, 27:25, 28:6, 28:7, 28:10, 28:12, 41:1, 41:16, 46:18, 46:20, 46:22, 50:10, 71:3, 71:5, 71:18, 73:21
**Agreement** [39] - 8:23, 8:24, 13:17, 15:5, 15:9, 15:18, 18:19, 20:11, 20:13, 22:11, 22:18, 22:19, 23:9, 24:12, 24:17, 25:4, 25:18, 25:19, 26:13, 26:17, 26:20, 26:21, 27:20, 27:21, 27:24, 28:1, 28:3, 28:16, 36:11, 40:24, 41:14, 41:15, 46:18, 60:21, 63:22, 67:3, 67:25, 70:15, 72:19
**agreements** [8] - 22:18, 23:9, 23:11, 23:13, 23:17, 24:9, 26:18, 27:1
**agrees** [1] - 68:19
**ahead** [4] - 12:23, 16:3, 18:6, 27:15
**Akin** [2] - 6:3, 70:8
**al** [1] - 4:3
**albeit** [1] - 14:13
**alert** [1] - 39:22
**Alex** [1] - 5:17
**Alexander** [1] - 4:11
**ALEXANDER** [1] -

3:2
**Alexis** [2] - 67:18, 67:24
**Algamex** [18] - 23:11, 23:17, 23:18, 23:19, 23:22, 24:8, 24:9, 25:23, 25:24, 26:1, 26:18, 26:20, 27:23, 27:24, 27:25, 28:2, 28:7, 36:19
**allegation** [1] - 15:7
**alleged** [1] - 15:5
**allow** [1] - 59:13
**allowed** [2] - 24:5, 60:4
**allowing** [1] - 16:3
**alluded** [1] - 20:3
**almost** [1] - 41:23
**altogether** [2] - 20:5, 70:19
**Alvarez** [1] - 5:6
**ambiguity** [1] - 26:25
**ambiguous** [1] - 10:8
**amendments** [3] - 22:18, 23:9, 23:14
**Americas** [2] - 4:3, 4:18
**amounts** [1] - 36:17
**analyzing** [1] - 40:7
**AND** [1] - 3:8
**Andres** [1] - 6:19
**annexes** [3] - 22:18, 23:9, 23:13
**answer** [7] - 9:23, 10:1, 10:2, 17:10, 34:22, 51:17, 73:10
**answering** [1] - 9:14
**anticipate** [2] - 32:14, 41:4
**anticipated** [1] - 33:7
**anticipation** [1] - 31:7
**Anton** [1] - 5:19
**ANTONIO** [1] - 3:3
**Antonio** [1] - 5:16
**anyway** [1] - 26:16
**apologize** [5] - 12:15, 29:10, 33:3, 39:20, 64:8
**appear** [7] - 19:5, 61:25, 63:7, 64:19, 64:24, 66:2, 73:20
**applications** [1] - 50:7
**applied** [1] - 11:7
**applies** [1] - 17:2
**apply** [1] - 49:21
**appointed** [2] - 42:16, 67:24
**appointment** [4] -

36:1, 40:20, 42:13,
44:1
    **appreciate** [1] -
76:11
    **approach** [4] - 52:10,
52:12, 61:24, 62:2
    **appropriate** [4] -
10:24, 54:21, 55:23,
65:2
    **appropriately** [1] -
20:17
    **approval** [2] - 25:5,
63:20
    **April** [12] - 18:12,
18:16, 21:6, 21:9,
21:12, 31:19, 57:13,
69:24, 69:25, 70:24,
72:14, 78:10
    **Arellano** [3] - 67:18,
67:20, 67:24
    **argued** [1] - 43:13
    **arguments** [3] - 9:1,
29:1, 63:17
    **arrange** [1] - 60:2,
60:4
    **arranged** [1] - 63:7
    **arrangements** [3] -
36:18, 37:12, 39:13
    **arrested** [1] - 66:6
    **articulate** [1] - 63:5
    **aspect** [1] - 41:16
    **Assembly** [6] - 25:6,
25:7, 26:4, 60:24,
72:3, 72:5
    **assert** [2] - 19:14,
72:13
    **asserted** [1] - 29:20
    **asserting** [2] - 15:1,
74:11
    **assertions** [1] - 9:13
    **assess** [3] - 20:17,
41:20, 53:1
    **assessment** [1] -
14:8
    **assets** [1] - 26:5
    **assign** [4] - 60:22,
63:19, 63:25, 64:10
    **assigned** [3] - 24:23,
62:16, 62:20
    **assignee** [1] - 63:12
    **assignment** [9] -
8:24, 13:9, 25:4, 25:9,
29:17, 62:7, 62:8,
62:15, 64:9
    **assignor** [3] - 30:20,
62:17, 62:24
    **assistance** [2] -
57:6, 59:16
    **assume** [1] - 72:24
    **assuming** [5] -

38:24, 55:22, 58:10,
65:5, 65:22
    **assumption** [3] -
48:3, 48:6, 48:7
    **attached** [1] - 8:4
    **attachments** [2] -
23:8, 23:13
    **attack** [1] - 44:19
    **attempt** [1] - 23:24
    **attempted** [1] - 60:2
    **attempts** [2] - 68:16,
69:17
    **Attorney** [1] - 61:10
    **attorney** [9] - 11:3,
17:1, 20:7, 35:4,
36:12, 45:14, 45:17,
61:6
    **attorney-client** [6] -
11:3, 17:1, 20:7, 35:4,
36:12, 45:14
    **attorneys** [5] - 35:11,
36:19, 45:10, 45:11,
46:4
    **authoritative** [2] -
22:4, 66:25
    **authorities** [3] -
10:9, 10:11, 11:12
    **authority** [6] - 12:18,
43:19, 54:11, 58:18,
71:25, 72:1
    **authorization** [1] -
33:13
    **authorizations** [1] -
54:11
    **authorized** [7] -
42:10, 42:12, 42:22,
60:22, 62:10, 68:2
    **availability** [1] -
53:14
    **available** [25] - 24:1,
53:23, 53:25, 55:11,
55:17, 57:8, 57:22,
57:25, 58:2, 58:6,
60:5, 60:7, 61:17,
62:11, 62:12, 62:13,
63:11, 65:23, 66:1,
66:17, 67:8, 69:11,
73:7, 75:17, 75:18
    **Avenue** [3] - 3:6,
3:23, 78:12
    **aware** [2] - 75:3,
75:15

## B

    **BAC** [1] - 6:16
    **Bank** [1] - 6:16
    **Baquero** [12] - 6:1,
6:4, 69:4, 69:8, 69:9,

69:15, 70:3, 70:9,
73:1, 73:10, 74:9,
75:2
    **base** [1] - 74:15
    **based** [12] - 9:12,
12:1, 21:10, 26:6,
28:8, 29:16, 34:15,
34:18, 47:15, 55:15,
58:10, 62:14
    **basic** [2] - 15:8,
47:21
    **basis** [9] - 20:2,
25:13, 32:17, 34:9,
35:15, 39:14, 43:22,
48:1, 48:9
    **Bay** [1] - 3:12
    **becomes** [1] - 47:10
    **began** [2] - 45:10,
45:16
    **begin** [2] - 32:18,
57:12
    **begs** [1] - 32:3
    **begun** [1] - 31:6
    **behalf** [11] - 5:19,
6:9, 6:20, 9:11, 17:7,
56:8, 58:25, 64:4,
64:13, 65:17, 68:3
    **beholder** [2] - 43:10,
44:12
    **believes** [1] - 18:13
    **belong** [3] - 43:20,
43:21
    **benefit** [4] - 29:7,
37:13, 38:19, 60:1
    **benefits** [3] - 26:3,
36:16, 37:15
    **BERMUDA** [1] - 3:2
    **Bermuda** [2] - 5:15,
5:19
    **best** [1] - 68:8
    **bet** [1] - 68:8
    **better** [5] - 4:5, 7:11,
31:22, 43:1, 55:7
    **between** [5] - 10:19,
25:15, 27:19, 29:24
    **beyond** [2] - 22:8,
41:1
    **Birenboim** [1] - 5:8
    **bit** [2] - 10:8, 76:12
    **blanket** [2] - 37:19,
37:25
    **board** [2] - 63:20
    **body** [1] - 49:20
    **BOIES** [74] - 4:8,
4:13, 4:16, 7:24,
11:21, 14:25, 16:23,
21:22, 22:13, 22:17,
23:19, 24:6, 27:16,
28:10, 28:17, 28:19,
30:7, 31:4, 32:18,

33:3, 33:6, 34:21,
35:1, 35:6, 35:10,
35:20, 35:25, 38:12,
38:16, 38:24, 39:4,
39:16, 39:20, 39:24,
40:5, 41:25, 42:19,
42:25, 44:5, 48:6,
49:3, 49:11, 49:14,
50:9, 50:12, 50:19,
52:4, 54:6, 54:19,
54:23, 55:20, 56:1,
58:4, 58:8, 58:23,
59:8, 61:5, 61:9,
64:14, 64:21, 65:7,
65:11, 65:25, 66:6,
66:18, 67:9, 69:3,
71:16, 72:23, 74:9,
74:17, 74:25, 75:10,
76:23
    **Boies** [46] - 4:9,
4:10, 4:11, 7:25, 9:19,
11:19, 12:13, 14:20,
16:13, 17:20, 18:3,
21:14, 21:21, 26:10,
27:12, 27:15, 30:3,
32:14, 33:2, 34:16,
34:20, 38:11, 39:18,
40:3, 41:22, 42:24,
43:15, 44:4, 45:22,
50:5, 50:16, 56:20,
56:23, 58:3, 61:3,
63:5, 64:17, 66:15,
67:12, 68:5, 68:23,
69:11, 69:25, 71:16,
74:15, 75:15
    **boilerplate** [3] - 8:5,
9:19, 17:25
    **bottom** [2] - 11:24,
13:15
    **bound** [2] - 15:18,
15:19
    **Box** [1] - 3:16
    **Brad** [1] - 4:11
    **breadth** [2] - 36:24,
49:18
    **break** [1] - 48:15
    **breaking** [4] - 33:2,
34:25, 61:8, 64:6
    **Brickell** [2] - 3:6,
3:12
    **Brief** [1] - 49:5
    **brief** [3] - 14:14,
25:3, 27:17
    **briefing** [6] - 14:10,
16:3, 19:12, 19:13,
37:18, 73:24
    **briefings** [1] - 76:14
    **briefly** [3] - 11:19,
31:15, 56:16
    **bring** [2] - 70:11,

75:24
    **brings** [1] - 56:24
    **broad** [7] - 14:15,
20:25, 22:8, 36:15,
37:22, 42:3, 43:15
    **broadly** [1] - 36:23
    **broke** [1] - 54:22
    **Brown** [1] - 4:20
    **Bruce** [1] - 5:8
    **bunch** [1] - 5:24
    **BURKOFF** [32] -
3:14, 4:24, 9:15, 10:2,
12:14, 12:25, 14:9,
17:8, 18:8, 22:15,
24:15, 28:22, 29:4,
29:10, 29:21, 31:14,
31:17, 37:10, 38:5,
39:8, 41:1, 41:13,
43:9, 44:9, 46:10,
47:17, 48:7, 50:3,
52:11, 52:25, 55:1,
76:24
    **Burkoff** [28] - 4:25,
9:16, 9:22, 11:8,
11:14, 11:24, 12:12,
12:15, 12:24, 17:6,
17:15, 18:6, 24:13,
29:11, 31:14, 37:10,
38:4, 39:8, 39:16,
40:23, 43:5, 44:10,
45:11, 46:10, 47:17,
52:10, 55:1, 55:14
    **Burkoff's** [3] - 11:22,
16:24, 17:3
    **business** [1] - 70:2
    **BY** [1] - 3:21
    **bylaws** [1] - 63:20,
68:2

## C

    **call-in** [1] - 76:7
    **Campo** [1] - 6:20
    **cancelled** [1] - 66:21
    **cannot** [4] - 19:6,
30:23, 65:23, 72:20
    **capacity** [2] - 64:14,
64:15
    **CARDENAS** [1] -
3:11
    **Cardenas** [1] - 5:13
    **care** [1] - 65:12
    **CAREY** [1] - 5:7
    **Carey** [1] - 5:7
    **CARLTON** [1] - 3:18
    **CARPINELLO** [9] -
45:3, 45:7, 45:9,
45:20, 45:22, 46:3,
75:11, 75:13, 75:15

**Carpinello** [5] - 4:11, 45:3, 45:20, 51:10, 75:13

**case** [10] - 4:3, 26:3, 31:1, 31:18, 32:4, 45:12, 63:22, 64:9, 70:11, 73:12

**cases** [2] - 11:7, 46:14

**catchall** [2] - 76:4, 76:20

**catches** [1] - 36:25

**categories** [4] - 20:25, 27:7, 28:8, 57:19

**category** [3] - 26:19, 26:21, 76:20

**caveat** [4] - 11:8, 17:8, 17:12, 40:2

**certain** [4] - 15:9, 16:24, 50:6, 60:7

**certainly** [10] - 19:13, 22:17, 31:23, 34:22, 35:3, 37:21, 39:13, 41:1, 71:9, 73:4

**certify** [1] - 78:3

**challenge** [3] - 20:17, 25:12, 75:3

**challenged** [1] - 71:24

**challenges** [1] - 47:6

**challenging** [2] - 73:19

**chance** [1] - 48:15

**change** [1] - 40:1

**characterization** [1] - 71:17

**check** [2] - 68:9, 68:12

**cherry** [2] - 44:11, 44:13

**cherry-pick** [1] - 44:11

**cherry-picking** [1] - 44:13

**chime** [1] - 17:12

**CHRISTINA** [1] - 3:11

**circle** [2] - 59:14, 68:9

**circumstance** [1] - 63:17

**circumstances** [3] - 13:18, 25:8, 27:5

**claim** [9] - 19:8, 20:17, 25:13, 27:9, 35:4, 40:10, 62:20, 62:21

**claims** [24] - 8:25, 13:9, 15:9, 19:14,

23:7, 24:23, 25:22, 27:3, 29:17, 30:20, 40:7, 43:20, 53:1, 60:22, 62:7, 62:8, 62:10, 62:16, 62:24, 63:19, 63:25, 64:10

**clarification** [1] - 33:19

**clarified** [1] - 34:10

**clarify** [2] - 33:17, 65:14

**clause** [2] - 11:15

**clear** [15] - 9:4, 11:1, 12:23, 19:18, 20:20, 21:25, 25:21, 29:15, 31:9, 43:17, 46:11, 46:12, 56:22, 57:11

**clearly** [2] - 14:4, 24:18

**clerk** [2] - 48:23, 48:24

**client** [7] - 10:19, 11:3, 17:1, 20:7, 35:4, 36:12, 45:14

**clients** [2] - 17:3, 46:5

**cliff** [1] - 5:2

**Cliff** [2] - 5:1, 5:3

**CLIFTON** - 3:17

**co** [1] - 5:18

**co-counsel** [1] - 5:18

**colleagues** [1] - 4:10

**collect** [1] - 14:16

**collection** [1] - 36:1

**Colonial** [3] - 4:22, 4:23, 9:16

**COLONIAL** [2] - 3:15, 3:15

**combined** [1] - 6:5

**commencement** [2] - 45:16, 46:14

**commit** [2] - 19:6, 32:5

**commitment** [2] - 53:2, 56:8

**commitments** [1] - 75:20

**committing** [2] - 19:19, 32:1

**communicate** [1] - 50:7

**communication** [1] - 47:2

**communications** [30] - 10:9, 10:10, 10:18, 11:10, 11:11, 11:15, 11:17, 12:4, 17:1, 20:7, 20:8, 20:10, 20:14, 22:24, 23:16, 35:22, 39:11,

41:4, 41:18, 43:18, 45:17, 46:4, 46:13, 50:5, 51:2, 53:6, 72:3, 72:4

**complain** [1] - 8:6

**complaining** [1] - 7:6

**complaint** [4] - 18:14, 20:7, 71:12, 71:13

**complaints** [1] - 7:22

**comply** [1] - 62:18

**compulsory** [1] - 63:2

**concede** [1] - 20:6

**conceivable** [1] - 22:9

**conceivably** [2] - 15:7, 23:22

**concept** [2] - 27:7, 62:23

**concerned** [1] - 27:18

**concerning** [17] - 8:23, 11:10, 11:16, 23:6, 23:11, 23:17, 26:18, 36:1, 36:7, 36:10, 36:16, 38:21, 40:13, 41:15, 42:3, 42:12, 50:6

**concerns** [3] - 41:6, 43:9, 44:12

**concluded** [2] - 13:20, 13:22

**conducted** [3] - 14:11, 29:15, 73:22

**confer** [10] - 8:11, 15:14, 30:8, 33:1, 33:6, 55:15, 57:5, 57:24, 59:13, 69:19

**conference** [6] - 6:25, 17:23, 55:15, 59:5, 68:15, 73:7

**conferred** [1] - 58:13

**confirm** [1] - 58:2, 65:24

**confirmed** [1] - 58:4

**confusion** [1] - 27:19

**connection** [2] - 13:4, 43:12

**consider** [1] - 74:19

**considerably** [1] - 40:8

**contemplate** [1] - 71:1

**contends** [2] - 18:22, 21:7

**contention** [3] - 21:15, 58:18, 58:19

**context** [2] - 16:14, 18:20

**CONTINUED** [1] - 3:1

**contract** [1] - 26:23

**contracts** [2] - 26:23, 27:1

**control** [10] - 19:5, 29:13, 29:23, 30:2, 30:9, 32:5, 57:23, 60:7, 61:13, 61:19

**controlled** [1] - 57:21

**convention** [1] - 61:23

**Convention** [1] - 63:3

**conversation** [1] - 58:11

**cooperation** [2] - 50:12, 74:14

**core** [1] - 13:16

**corporate** [4] - 53:23, 56:21, 56:24, 58:16

**corporations** [1] - 54:8

**correct** [7] - 4:15, 46:2, 46:3, 55:12, 60:16, 63:16, 74:2

**cost** [1] - 26:3

**Counsel** [7] - 33:10, 51:24, 66:19, 66:22, 67:6, 67:13, 68:6

**counsel** [19] - 5:1, 5:18, 10:18, 10:19, 12:22, 17:4, 17:11, 29:24, 32:25, 33:6, 37:9, 47:23, 50:4, 51:15, 53:10, 66:11, 69:20, 73:6, 74:8

**counter** [1] - 21:8

**counting** [1] - 47:18

**countries** [1] - 76:18

**country** [1] - 37:17

**couple** [5] - 19:2, 20:10, 24:17, 46:11, 57:19

**course** [5] - 12:1, 27:4, 44:25, 53:9, 60:1

**Court** [39] - 3:22, 3:23, 4:1, 8:1, 8:3, 15:12, 15:24, 17:5, 21:22, 22:25, 23:19, 25:2, 27:16, 27:21, 28:3, 34:21, 35:1, 35:6, 36:5, 36:9, 37:2, 43:3, 51:16, 51:21, 54:10, 54:20, 54:23, 55:22, 55:23, 63:1, 63:10, 70:12, 71:15,

73:11, 75:3, 75:18, 76:18, 78:11, 78:11

**court** [6] - 29:8, 43:20, 48:25, 49:4, 49:7, 77:1

**COURT** [137] - 4:4, 4:12, 4:14, 4:17, 4:22, 5:2, 5:4, 5:10, 5:14, 5:21, 5:23, 6:5, 6:10, 6:13, 6:16, 6:19, 9:9, 9:22, 10:25, 11:24, 12:24, 14:6, 14:20, 15:25, 17:6, 17:14, 17:22, 20:25, 22:12, 22:16, 23:3, 24:3, 24:8, 26:12, 28:5, 28:15, 28:18, 28:20, 28:24, 29:7, 29:19, 30:3, 30:24, 31:16, 32:9, 33:2, 33:5, 33:17, 34:25, 35:5, 35:9, 35:14, 35:24, 37:5, 38:3, 38:6, 38:15, 38:20, 39:1, 39:7, 39:18, 39:22, 40:1, 40:11, 41:10, 41:22, 42:15, 42:24, 43:5, 43:24, 44:7, 44:13, 45:4, 45:8, 45:19, 45:21, 45:23, 46:8, 47:3, 48:13, 49:6, 49:8, 49:13, 50:1, 50:10, 50:15, 52:2, 52:5, 52:21, 53:4, 54:15, 54:22, 55:6, 55:19, 55:25, 56:11, 56:19, 58:1, 58:5, 58:15, 59:6, 59:12, 60:10, 60:13, 60:17, 61:3, 61:8, 61:20, 62:12, 62:22, 64:6, 64:17, 65:4, 65:9, 65:12, 65:20, 66:5, 66:8, 66:14, 67:2, 67:11, 67:20, 68:4, 69:9, 69:23, 70:22, 72:9, 73:1, 73:16, 74:5, 74:10, 74:18, 75:5, 75:12, 75:14, 75:23, 76:20

**Court's** [5] - 11:22, 27:17, 28:4, 32:22, 48:21

**courtroom** [2] - 4:4, 48:23

**COURTROOM** [4] - 4:2, 49:4, 49:7, 77:1

**cover** [3] - 16:19, 37:7, 67:5

**covered** [5] - 16:2,

16:19, 39:24, 44:21, 74:23

**covers** [1] - 11:19
**creation** [1] - 70:16
**Cristina** [1] - 5:13
**crystalize** [1] - 55:7
**cursory** [1] - 14:10
**custody** [1] - 29:23
**cut** [1] - 28:15
**cuts** [1] - 46:17

# D

**damage** [1] - 40:7
**damages** [1] - 23:22
**Daniel** [1] - 6:6
**DATE** [1] - 78:10
**date** [15] - 7:15, 14:3, 14:11, 18:16, 18:19, 31:21, 34:11, 51:22, 51:25, 52:6, 52:7, 52:9, 68:18
**dates** [7] - 18:11, 47:8, 50:17, 50:18, 52:15, 68:17
**Dave** [4] - 9:15, 46:10, 47:17, 55:1
**David** [9] - 4:9, 4:24, 7:24, 29:11, 31:14, 37:10, 39:8, 44:10, 71:16
**DAVID** [1] - 3:14
**DAVIS** [1] - 63:15
**Davis** [2] - 4:12, 4:13
**days** [1] - 33:8
**DC** [1] - 3:10
**de** [2] - 5:6, 63:14
**deadline** [4] - 21:6, 32:13, 52:19, 57:17
**deadlines** [3] - 52:13, 53:11, 76:14
**deal** [2] - 49:9, 52:17
**dealing** [1] - 28:13
**decide** [3] - 9:5, 54:24, 75:6
**decision** [1] - 61:17
**declarants** [2] - 75:17
**declaration** [1] - 9:2
**declarations** [1] - 75:18
**declined** [1] - 42:17
**declines** [1] - 64:25
**defects** [3] - 24:22, 24:24, 25:1
**DEFENDANT** [1] - 3:8
**Defendant** [1] - 6:20
**defendant** [8] - 4:17,

5:11, 5:15, 6:10, 6:13, 6:16, 28:23, 53:16
**defendant's** [4] - 9:4, 16:1, 17:4, 68:24
**Defendants** [1] - 5:25
**defendants** [51] - 4:22, 5:4, 6:5, 6:9, 6:24, 7:4, 7:11, 8:3, 8:21, 9:11, 9:16, 9:24, 12:4, 12:7, 13:1, 13:3, 13:6, 16:15, 17:3, 17:17, 17:24, 18:4, 21:8, 23:7, 24:25, 29:18, 30:1, 33:15, 34:14, 35:19, 37:8, 38:8, 46:8, 52:3, 54:2, 54:7, 54:9, 54:14, 54:18, 54:25, 55:7, 55:14, 56:20, 57:20, 61:20, 69:18, 71:2, 71:10, 71:22, 75:20
**DEFENDANTS** [2] - 3:2, 3:14
**defendants'** [5] - 7:22, 8:2, 16:22, 45:9, 69:21
**defense** [5] - 29:24, 37:9, 50:1, 51:15, 55:3
**defense's** [1] - 69:2
**define** [1] - 7:11
**delegated** [1] - 9:17
**demand** [4] - 7:11, 16:9, 16:10
**demanding** [1] - 12:7
**denied** [1] - 16:11
**deponent** [5] - 53:25, 54:1, 55:12, 57:16, 72:15
**deponents** [3] - 69:24, 70:23, 70:25
**depose** [9] - 14:17, 30:1, 52:19, 52:21, 61:2, 68:23, 68:25, 69:1, 69:3
**deposed** [2] - 68:19, 68:20
**deposition** [39] - 53:19, 53:23, 55:5, 55:11, 55:17, 56:6, 57:9, 57:22, 57:25, 58:2, 58:6, 58:17, 58:20, 59:1, 59:5, 60:6, 61:17, 63:7, 63:12, 64:19, 64:24, 65:23, 66:1, 66:3, 66:17, 66:24, 67:1, 67:8, 69:4, 69:21, 71:6, 71:23, 73:8,

74:16, 74:19, 75:19
**depositions** [31] - 8:19, 52:18, 53:14, 53:17, 54:2, 54:6, 54:14, 54:18, 54:25, 55:8, 56:15, 56:19, 57:7, 59:23, 59:24, 60:8, 68:21, 69:1, 69:18, 69:19, 70:19, 71:2, 71:10, 71:19, 71:20, 72:10, 72:11, 72:12, 72:17, 74:20, 76:17
**DEPUTY** [4] - 4:2, 49:4, 49:7, 77:1
**deputy** [1] - 4:4
**designated** [1] - 55:14
**designation** [2] - 11:3, 42:5
**designed** [2] - 12:9, 38:8
**desire** [1] - 30:11
**despite** [1] - 57:23
**determination** [1] - 22:25
**determined** [1] - 7:15
**developments** [1] - 44:17
**devised** [1] - 16:20
**devoid** [1] - 61:7
**Diaz** [1] - 78:10
**DIAZ** [2] - 3:22, 78:10
**dictate** [1] - 40:24
**different** [2] - 9:20, 27:19
**differently** [1] - 11:13
**difficult** [1] - 38:2
**directed** [1] - 35:2
**directing** [1] - 13:25
**direction** [2] - 7:20, 46:17
**directly** [4] - 25:2, 31:1, 43:23, 47:15
**disagree** [2] - 38:16, 71:17
**disagreement** [1] - 13:24
**disclosures** [1] - 17:18
**discovery** [40] - 6:25, 7:5, 7:18, 7:22, 9:3, 9:8, 12:8, 14:23, 14:24, 15:2, 15:8, 15:22, 16:1, 16:3, 16:5, 16:7, 16:8, 16:10, 16:14, 16:17,

19:15, 23:25, 24:1, 24:4, 25:11, 30:21, 31:7, 32:21, 40:10, 43:3, 54:24, 55:23, 62:17, 62:21, 64:11, 72:21, 73:3, 76:1, 76:5
**discuss** [4] - 21:20, 48:2, 52:16, 74:22
**discussing** [1] - 49:20
**discussion** [4] - 12:16, 42:25, 46:25, 52:18
**discussions** [2] - 12:21, 49:24
**dispute** [2] - 39:17, 60:24
**disputes** [3] - 26:23, 58:21, 76:5
**disputing** [1] - 30:21
**distributed** [2] - 38:10, 38:18
**distribution** [1] - 36:16
**District** [2] - 3:23, 78:11
**diverges** [1] - 46:11
**divert** [1] - 26:5
**divide** [1] - 61:10
**division** [1] - 55:3
**Docket** [1] - 53:17
**docketed** [1] - 60:11
**document** [33] - 8:2, 8:8, 8:9, 9:18, 14:6, 14:9, 18:2, 18:19, 21:12, 22:1, 22:4, 22:5, 22:8, 25:17, 25:20, 30:11, 34:2, 35:12, 36:1, 38:13, 39:24, 40:2, 41:13, 42:10, 42:12, 42:18, 43:17, 47:14, 49:19, 63:25, 64:3, 71:22
**documents** [154] - 7:7, 8:14, 8:16, 8:20, 9:10, 9:11, 9:12, 9:24, 10:3, 10:16, 11:25, 13:6, 13:9, 14:16, 14:18, 15:11, 16:25, 17:15, 17:16, 17:17, 18:9, 18:12, 18:13, 18:15, 18:18, 18:22, 18:24, 19:7, 19:10, 20:1, 20:9, 20:15, 20:16, 21:5, 21:7, 21:10, 21:11, 21:17, 22:3, 22:7, 23:6, 23:16, 26:10, 27:8, 29:5, 29:14, 29:16,

29:22, 30:4, 30:10, 30:12, 30:17, 31:2, 31:3, 31:5, 31:6, 31:9, 31:11, 31:21, 32:1, 32:2, 32:6, 32:10, 32:15, 32:23, 33:12, 33:13, 33:20, 33:23, 34:1, 34:18, 34:23, 35:2, 35:7, 35:10, 35:18, 36:6, 36:7, 36:9, 36:10, 36:12, 36:14, 36:15, 36:25, 37:3, 37:24, 38:14, 38:21, 38:23, 39:9, 39:14, 39:17, 40:4, 40:13, 40:23, 41:5, 41:10, 41:15, 41:19, 41:20, 41:23, 41:25, 42:2, 42:3, 42:11, 43:22, 43:25, 44:5, 44:7, 44:11, 44:14, 44:16, 44:17, 44:18, 45:2, 45:18, 46:7, 46:24, 47:5, 47:7, 47:21, 47:25, 48:8, 48:10, 48:11, 49:15, 49:22, 50:22, 50:24, 51:7, 51:9, 51:12, 51:13, 51:18, 51:19, 51:20, 52:7, 52:13, 52:20, 52:23, 53:2, 53:3, 53:7, 56:4, 57:13, 57:15, 58:9, 62:19, 76:16
**done** [5] - 8:3, 34:3, 34:4, 62:15, 76:13
**doubt** [1] - 48:18
**down** [4] - 9:22, 21:1, 44:18, 49:1
**draft** [2] - 25:14, 34:22
**drafts** [24] - 15:14, 15:16, 22:10, 22:21, 22:23, 22:24, 23:8, 23:15, 24:12, 24:16, 24:18, 24:20, 24:24, 26:22, 26:23, 27:1, 35:2, 35:3, 35:15, 40:15, 40:16, 40:22
**draw** [1] - 21:1
**drill** [2] - 19:1, 44:18
**Drive** [1] - 3:12
**driving** [1] - 38:9
**due** [2] - 31:17, 34:12
**DUNN** [1] - 3:15
**during** [2] - 17:23, 69:18

## E

**e-mail** [3] - 60:10, 65:5, 65:8
**e-mailed** [1] - 75:16
**e-mails** [2] - 29:23, 67:23
**early** [2] - 8:12, 58:10
**ease** [1] - 60:8
**easily** [1] - 44:6
**easy** [1] - 51:19
**ED** [1] - 3:11
**Ed** [2] - 5:13, 76:10
**efficiency** [2] - 9:17, 55:4
**effort** [2] - 26:5, 76:11
**efforts** [2] - 25:1, 47:7
**eight** [3] - 47:19, 49:12, 49:15
**either** [16] - 8:13, 10:16, 13:11, 19:23, 22:5, 28:6, 28:8, 39:10, 49:19, 50:14, 54:7, 56:8, 57:21, 67:3, 70:13, 73:7
**electronic** [1] - 53:6
**Elias** [1] - 6:20
**EMANUEL** [1] - 3:8
**employee** [2] - 63:13, 64:12
**employees** [2] - 63:11, 67:21
**ENCINOSA** [21] - 6:8, 55:13, 56:13, 57:4, 59:10, 60:12, 60:16, 60:19, 62:2, 62:14, 63:16, 64:8, 65:14, 65:21, 66:10, 67:15, 67:22, 69:14, 71:4, 74:2, 76:25
**Encinosa** [13] - 6:9, 55:4, 55:13, 56:13, 57:4, 59:22, 61:24, 64:7, 65:13, 66:9, 71:4, 73:25, 75:16
**encourage** [1] - 74:14
**end** [7] - 16:18, 34:6, 34:11, 56:16, 56:18, 58:10, 64:20
**ENERGY** [1] - 3:2
**Energy** [3] - 5:5, 5:15, 5:19
**engagement** [8] - 22:20, 23:10, 23:14, 24:11, 25:17, 26:12, 26:17, 28:7

**English** [1] - 64:22
**enormous** [1] - 50:22
**entered** [1] - 32:19
**entertain** [1] - 27:16
**entities** [6] - 13:19, 13:21, 20:19, 20:22, 37:13, 69:6
**entitled** [9] - 13:16, 20:16, 22:17, 22:20, 25:11, 38:17, 38:18, 41:9, 78:7
**entity** [8] - 23:20, 25:24, 36:20, 53:24, 57:1, 59:12, 62:19, 69:7
**Entry** [1] - 53:18
**entry** [2] - 72:9, 72:14
**envision** [1] - 40:23
**especially** [1] - 20:20
**ESQ** [8] - 3:2, 3:2, 3:5, 3:8, 3:11, 3:11, 3:14, 3:17
**essentially** [6] - 7:17, 8:5, 19:9, 48:10, 54:13, 62:20
**establishment** [1] - 23:6
**estimate** [1] - 53:5
**estimation** [1] - 26:4
**et** [1] - 4:3
**Etan** [1] - 6:11
**ETHAN** [1] - 3:8
**Ethan** [1] - 5:12
**evening** [2] - 8:12, 30:8
**exact** [2] - 65:25, 66:6
**exactly** [6] - 8:13, 21:22, 23:19, 41:8, 42:16, 69:6
**example** [10] - 15:4, 15:9, 22:10, 25:3, 35:21, 35:25, 40:6, 42:19, 49:18
**examples** [1] - 44:22
**except** [1] - 17:16
**excepted** [1] - 50:8
**exception** [1] - 10:6
**exchanged** [1] - 25:15
**excluding** [1] - 39:1, 39:2, 40:2
**executed** [1] - 24:23
**execution** [7] - 20:11, 20:12, 31:13, 33:12, 35:23, 36:7, 40:14
**exemplary** [1] - 29:3

**exemption** [1] - 49:21
**exercise** [2] - 47:11, 63:2
**exhibit** [1] - 26:14
**exhibits** [3] - 8:4, 23:8, 23:13
**exist** [2] - 8:14, 9:5
**existence** [1] - 71:12
**EXLEY** [1] - 3:15
**expected** [1] - 10:4
**expecting** [1] - 67:4
**expedite** [1] - 63:9
**expedited** [4] - 32:16, 34:8, 53:8, 62:4
**expert** [6] - 9:2, 12:16, 12:17, 12:19, 17:9, 17:18
**experts** [3] - 17:17, 24:21, 76:14
**explained** [1] - 45:11
**explicit** [4] - 32:19, 71:18, 71:19, 75:8
**explicitly** [1] - 26:14
**explore** [3] - 7:4, 13:4, 41:9
**extensive** [1] - 51:20
**extent** [10] - 12:17, 14:13, 16:9, 18:14, 30:13, 30:22, 33:24, 37:14, 39:9, 41:19
**extract** [1] - 38:8
**eye** [2] - 43:10, 44:12

## F

**face** [4] - 63:24, 64:3, 64:4, 64:7
**fact** [13] - 9:3, 12:25, 13:3, 13:7, 19:19, 28:2, 31:22, 52:19, 52:21, 53:14, 59:23, 66:5, 72:10
**facts** [1] - 14:7
**factual** [20] - 7:4, 8:18, 9:5, 9:7, 12:6, 12:7, 12:11, 13:14, 14:21, 15:2, 15:8, 15:21, 16:9, 21:19, 21:24, 22:9, 25:10, 55:23, 61:14
**failsafe** [1] - 19:10
**fair** [2] - 10:13, 14:8
**faith** [1] - 15:6
**fall** [5] - 11:6, 12:4, 26:18, 26:21, 28:7
**far** [3] - 30:24, 32:10, 71:13

**fashion** [2] - 32:6, 43:25
**fast** [1] - 25:7
**fast-moving** [1] - 25:7
**FCRR** [2] - 3:22, 78:10
**feasible** [1] - 76:15
**fees** [1] - 36:16
**felt** [1] - 32:23
**Fernanda** [1] - 6:6
**FIELDS** [1] - 3:18
**fight** [3] - 75:5, 75:6
**figure** [1] - 69:6
**filed** [5] - 6:19, 12:3, 14:2, 17:24, 53:18
**files** [1] - 51:1
**filing** [7] - 10:18, 17:2, 20:6, 35:11, 44:24, 50:21, 53:17
**filings** [1] - 6:24
**final** [1] - 19:21
**financial** [2] - 36:18, 37:12
**finger** [1] - 70:2
**finish** [1] - 76:22
**firm** [4] - 4:21, 50:6
**firms** [1] - 50:20
**first** [30] - 7:2, 7:3, 7:10, 8:1, 9:9, 9:18, 9:20, 12:12, 13:1, 14:2, 14:25, 18:2, 18:12, 21:1, 21:3, 24:16, 43:10, 46:11, 51:15, 53:10, 55:6, 56:20, 61:1, 69:8, 69:16, 69:20, 73:13, 74:3, 74:14
**five** [8] - 36:14, 36:24, 37:6, 37:24, 40:12, 44:25, 48:15, 49:2
**five-minute** [1] - 48:15
**flagged** [2] - 14:2, 14:11
**Flexner** [1] - 4:10
**flip** [1] - 48:2
**Floor** [3] - 3:9, 3:24, 78:12
**Florida** [6] - 3:6, 3:13, 3:19, 3:24, 6:16, 78:12
**flow** [3] - 26:7, 37:15, 52:16
**flows** [1] - 40:18
**fluctuation** [1] - 41:2
**flush** [1] - 73:23
**follow** [1] - 62:23
**FOR** [3] - 3:2, 3:8,

3:14
**foreclose** [1] - 16:5
**foreclosing** [1] - 16:10
**foregoing** [1] - 78:3
**foreign** [2] - 65:3, 76:18
**forgery** [2] - 15:5, 15:10
**formation** [6] - 10:6, 10:11, 11:10, 13:8, 31:8, 31:12
**formulated** [1] - 72:19
**forth** [1] - 32:7
**forthcoming** [2] - 17:9, 48:11
**forward** [3] - 13:3, 58:11, 58:12
**four** [10] - 18:21, 20:2, 47:19, 49:12, 49:14, 59:23, 60:4, 60:15, 65:13, 69:11
**fourth** [1] - 65:14
**FPR** [2] - 3:22, 78:10
**frame** [1] - 32:15
**framed** [1] - 13:5
**framework** [3] - 16:2, 19:9, 21:20
**Francisco** [1] - 5:25
**frankly** [24] - 24:16, 43:18, 46:16, 53:1
**Friday** [5] - 46:25, 52:12, 52:19, 52:21, 53:5
**front** [1] - 14:5
**full** [1] - 60:1
**fully** [3] - 14:15, 14:18, 32:12
**function** [1] - 15:10
**fundamental** [1] - 70:14
**funding** [6] - 23:18, 23:20, 23:22, 25:25, 26:2, 37:14
**funds** [1] - 19:14
**futility** [1] - 47:12
**future** [1] - 19:13

## G

**Gabaldon** [1] - 5:5
**gain** [1] - 57:15
**garden** [1] - 42:12
**gather** [1] - 9:12
**Gayles'** [1] - 7:20
**geared** [1] - 37:11
**GELBER** [1] - 3:5
**general** [10] - 8:10,

19:23, 20:4, 23:24, 23:25, 24:1, 29:21, 47:19, 48:9, 61:6
**General** [12] - 33:10, 51:24, 61:1, 61:11, 63:13, 63:24, 64:16, 66:19, 66:22, 67:6, 67:13, 68:5
**generally** [2] - 26:22, 27:1
**generated** [1] - 36:17
**generic** [2] - 17:25
**gentleman** [4] - 61:21, 62:13, 62:25, 63:6
**George** [5] - 4:10, 45:3, 45:20, 51:10, 75:13
**Georgia** [1] - 3:16
**GERALD** [1] - 3:5
**Gerald** [1] - 5:18
**given** [6] - 10:4, 34:21, 35:1, 35:6, 73:14, 76:16
**glad** [3] - 13:14, 16:6, 55:5
**Glass** [1] - 5:12
**GLASS** [3] - 3:8, 5:12, 17:21
**Glencore** [2] - 5:5
**global** [4] - 28:21, 29:1, 29:3, 29:11
**globally** [1] - 29:2
**GODFREY** [1] - 3:3
**Goldberg** [1] - 6:18
**governed** [1] - 37:4
**government** [8] - 13:19, 13:21, 13:25, 61:5, 61:12, 61:18, 63:1, 65:3
**Government** [1] - 59:3
**great** [5] - 25:14, 32:23, 37:3, 64:22
**GREENBERG** [2] - 3:5, 3:5
**Greenberg** [1] - 5:18
**gritty** [1] - 9:23
**grounds** [5] - 9:24, 15:22, 16:25, 17:1, 28:5
**group** [2] - 50:22, 55:4
**Group** [1] - 4:23
**GROUP** [1] - 3:15
**Gruhn** [4] - 5:1, 5:2, 5:3
**GRUHN** [1] - 3:17
**guarantee** [1] - 29:13
**guess** [2] - 9:20,

34:15
**guidance** [1] - 58:22
**guide** [1] - 21:13
**Gump** [2] - 6:3, 70:9
**Gunster** [1] - 4:21
**Gustavo** [1] - 5:5
**Guttman** [1] - 4:20
**guy** [1] - 63:13
**guys'** [1] - 74:8

## H

**Hague** [2] - 61:23, 63:3
**hand** [2] - 43:15
**handle** [4] - 40:24, 54:17, 55:6, 64:20
**hands** [1] - 68:18
**handy** [1] - 52:5
**happy** [7] - 7:9, 16:13, 20:23, 48:14, 48:17, 53:10, 67:16
**hard** [2] - 8:10, 8:13
**hash** [1] - 52:8
**Hayden** [1] - 6:12
**hear** [26] - 7:21, 7:22, 11:19, 12:12, 17:19, 21:3, 21:14, 21:21, 24:13, 27:12, 31:24, 33:3, 34:20, 37:9, 41:22, 45:5, 45:7, 48:4, 50:1, 50:4, 50:16, 52:12, 65:20, 66:11, 74:4
**heard** [4] - 25:22, 29:4, 43:14, 56:20
**hearing** [8] - 7:19, 16:17, 46:2, 60:9, 69:16, 74:18, 76:2
**hearings** [1] - 76:15
**Heather** [1] - 4:25
**heck** [1] - 72:18
**Hedges** [1] - 6:15
**held** [3] - 54:10, 54:20, 76:17
**hello** [1] - 5:12
**Hello** [1] - 45:5
**help** [5] - 29:9, 44:18, 51:10, 56:12, 63:9
**Helsinge** [3] - 6:6, 6:7
**hereby** [1] - 78:3
**herself** [1] - 66:16
**high** [4] - 59:3, 61:5, 61:12, 62:25
**high-level** [1] - 62:25
**highlighting** [1] - 18:4

**himself** [2] - 61:17, 66:16
**hinting** [1] - 14:7
**hit** [1] - 67:14
**hold** [3] - 34:23, 36:5, 60:25
**Holdings** [1] - 6:7
**Holland** [1] - 6:9
**Honor** [86] - 4:9, 4:16, 4:19, 4:24, 5:3, 5:7, 5:12, 5:17, 5:22, 6:2, 6:8, 6:11, 6:14, 6:17, 7:24, 9:15, 10:3, 10:15, 11:21, 12:14, 13:2, 14:9, 14:14, 14:19, 17:8, 17:21, 18:8, 19:4, 19:21, 20:2, 20:24, 22:15, 24:7, 24:15, 25:6, 25:23, 27:16, 28:19, 28:22, 30:7, 31:14, 32:7, 32:18, 33:3, 37:10, 38:2, 39:8, 40:5, 44:9, 45:3, 45:7, 45:22, 46:10, 46:23, 47:17, 49:3, 49:11, 50:3, 50:20, 52:11, 53:1, 55:13, 55:20, 56:13, 56:14, 56:16, 57:4, 59:8, 59:21, 60:12, 62:2, 62:14, 63:16, 65:21, 66:10, 66:18, 67:15, 70:8, 71:16, 72:23, 73:9, 74:25, 75:10, 76:23, 76:24, 76:25
**Honor's** [1] - 57:6
**hopefully** [2] - 34:8, 68:17
**hours** [9] - 51:4, 51:14, 52:6, 58:8, 58:13, 59:11, 65:4, 65:9, 73:15
**Houston** [1] - 3:4
**Hubbard** [1] - 6:9
**HUDES** [1] - 4:19
**Hudes** [1] - 4:20
**huge** [1] - 11:4
**Hughes** [1] - 6:18
**hundreds** [2] - 45:13, 46:6
**HUNTER** [1] - 3:15
**Hunter** [1] - 4:25
**hunting** [1] - 4:6

## I

**idea** [3] - 58:21, 59:14, 70:19

**identify** [10] - 7:4, 9:7, 9:14, 12:7, 12:10, 50:25, 69:24, 70:23, 70:25, 72:14
**identifying** [1] - 69:25
**imagine** [1] - 12:3
**implement** [1] - 71:2
**implementation** [1] - 35:22
**implication** [1] - 47:15
**implied** [1] - 72:14
**important** [1] - 62:6
**improper** [1] - 19:25
**INC** [2] - 3:3, 3:15
**Inc** [4] - 4:23, 5:15, 5:19, 6:6
**include** [3] - 11:17, 36:22, 45:13
**included** [3] - 35:2, 36:13, 48:3
**including** [6] - 11:11, 11:14, 23:8, 40:22, 55:17, 57:9
**inconsistent** [1] - 22:1
**incorporated** [5] - 25:19, 27:21, 27:22, 28:1, 47:20
**indeed** [1] - 30:7
**indicates** [2] - 8:1, 60:3
**indication** [1] - 15:21
**indispensable** [1] - 32:4
**individual** [13] - 20:23, 53:25, 61:2, 61:4, 61:11, 62:9, 62:25, 63:10, 63:21, 63:23, 64:2, 65:16, 68:2
**individuals** [15] - 20:19, 54:7, 57:7, 57:18, 57:20, 59:18, 60:22, 62:3, 66:12, 66:13, 67:16, 67:17, 69:10, 73:6
**INDUSTRIES** [1] - 3:15
**Industry** [1] - 4:23
**inform** [1] - 33:15
**information** [5] - 13:10, 19:17, 20:21, 61:15, 70:20
**injunction** [5] - 7:18, 14:13, 16:17, 54:5, 76:2
**inquire** [1] - 54:9, 54:10, 71:24, 71:25

**inquiry** [2] - 25:20, 31:10
**insight** [1] - 57:15
**instance** [1] - 64:11
**instead** [1] - 38:21
**instructions** [1] - 76:7
**intend** [1] - 14:14
**intended** [2] - 36:17, 59:25
**intending** [1] - 30:25
**interest** [3] - 13:12, 13:23, 19:6
**interested** [2] - 37:8, 42:7
**internal** [3] - 49:24, 50:5, 51:2
**internally** [1] - 49:20
**interpret** [1] - 37:22
**interpretation** [4] - 10:13, 10:14, 11:22, 11:23
**interpreted** [2] - 10:12, 11:14
**interpreting** [1] - 36:23
**interrupt** [1] - 75:11
**intricately** [1] - 46:19
**investigate** [1] - 23:7
**investigation** [2] - 45:16, 68:10
**involved** [6] - 20:19, 45:12, 46:4, 46:19, 70:16, 71:4
**involvement** [1] - 67:3
**Israel** [7] - 6:8, 55:13, 56:13, 57:4, 59:21, 67:15, 71:4
**issue** [70] - 7:25, 8:8, 9:6, 9:8, 9:9, 9:18, 10:5, 11:21, 12:6, 13:8, 13:16, 14:12, 14:14, 14:18, 15:2, 15:3, 15:16, 15:23, 16:3, 19:1, 19:4, 20:3, 22:9, 22:19, 23:23, 23:25, 26:3, 27:5, 28:12, 29:12, 30:14, 30:18, 31:8, 31:20, 32:24, 34:10, 34:19, 37:1, 37:16, 37:17, 39:11, 42:6, 42:14, 43:4, 43:11, 46:21, 49:17, 53:22, 54:18, 55:7, 55:24, 56:1, 56:14, 56:17, 56:25, 57:7, 59:9, 60:4, 66:25, 67:18, 69:2, 69:21, 70:14, 70:21,

72:15, 72:25, 73:16, 73:23, 74:3, 76:1
**issued** [1] - 25:8
**issues** [53] - 6:24, 7:4, 8:1, 8:19, 9:5, 9:7, 9:18, 11:20, 12:6, 12:8, 12:11, 12:25, 13:1, 13:4, 13:7, 13:14, 13:20, 14:2, 14:3, 14:11, 14:21, 15:21, 16:2, 16:6, 16:9, 16:16, 17:23, 17:24, 18:6, 21:19, 21:24, 23:21, 25:10, 26:24, 26:25, 27:13, 27:14, 29:3, 32:11, 53:9, 53:13, 53:24, 54:1, 54:3, 55:5, 55:9, 59:15, 60:6, 69:5, 70:13, 75:6, 75:23
**item** [1] - 8:18
**items** [2] - 7:1, 7:2
**iterations** [1] - 24:17
**itself** [8] - 13:12, 27:24, 28:1, 30:19, 40:24, 53:22, 55:12, 60:21

## J

**jail** [1] - 66:5
**jailed** [3] - 65:19, 65:20
**Jeff** [1] - 6:18
**Jessica** [1] - 5:7
**John** [1] - 6:10
**joint** [1] - 46:5
**Jorge** [1] - 4:20
**Judge** [3] - 7:20, 39:16, 75:11
**judgment** [1] - 42:23
**Julian** [1] - 3:15
**July** [1] - 7:19
**jump** [1] - 54:17
**jumped** [1] - 28:25
**juncture** [1] - 29:14
**June** [1] - 7:19
**jurisdiction** [3] - 70:12, 73:20, 74:11
**justification** [1] - 15:2
**justify** [1] - 9:7

## K

**Kaplan** [1] - 5:18
**KAPLAN** [3] - 3:2, 5:17, 5:22
**keep** [6] - 12:24,

29:8, 43:3, 59:16, 74:15, 76:21
**KELSO** [1] - 3:2
**Kelso** [1] - 5:18
**key** [1] - 25:10
**kind** [8] - 21:18, 23:2, 26:19, 28:21, 28:24, 31:22, 40:14, 40:18
**kinds** [1] - 75:7
**Knight** [1] - 6:9
**knowing** [2] - 19:25, 72:18
**knowledge** [1] - 70:17
**known** [1] - 71:12
**knows** [1] - 14:14

## L

**labor** [1] - 55:3
**land** [1] - 39:21
**language** [2] - 38:22, 42:3
**last** [7] - 21:9, 27:17, 31:19, 65:21, 67:16, 71:13, 72:10
**late** [4] - 6:23, 8:11, 31:19
**latest** [1] - 7:20
**latter** [1] - 10:12
**law** [13] - 8:22, 8:23, 15:19, 22:23, 25:5, 25:9, 29:16, 32:2, 45:24, 62:7, 62:15, 64:9
**lawful** [1] - 46:22
**lawsuit** [12] - 10:18, 12:2, 17:2, 25:25, 32:8, 36:17, 36:18, 37:13, 37:14, 37:15, 44:24, 45:10
**lawyers** [3] - 39:5, 46:19, 49:19
**lead** [4] - 20:12, 29:1, 55:15, 70:20
**lead-up** [1] - 20:12
**leading** [1] - 50:21
**least** [7] - 9:4, 20:20, 49:17, 51:23, 52:23, 64:5, 74:4
**leave** [4] - 16:18, 48:22, 56:14, 56:18
**LEE** [1] - 6:14
**Lee** [1] - 6:14
**left** [2] - 12:20, 48:17
**legal** [12] - 8:20, 8:22, 9:1, 15:3, 15:11, 15:18, 22:25, 30:18,

30:22, 41:6, 41:7
**legislature** [1] - 37:18
**Leonardo** [1] - 5:25
**letter** [19] - 7:1, 7:8, 7:13, 8:4, 22:20, 23:10, 23:14, 24:11, 25:17, 26:12, 26:17, 28:7, 42:21, 43:16, 54:16, 54:19, 54:23, 65:7
**level** [2] - 7:23, 62:25
**Liendo** [6] - 6:7, 69:4, 69:8, 69:9, 69:14, 73:25
**likely** [1] - 43:18
**limit** [3] - 68:25, 74:18, 74:20
**limitation** [1] - 74:21
**limitations** [1] - 16:7
**limited** [13] - 11:11, 11:15, 20:21, 23:10, 43:4, 43:18, 51:17, 63:10, 72:12, 72:15, 72:21, 72:25, 74:20
**list** [16] - 4:6, 35:12, 57:18, 57:21, 59:20, 60:11, 60:19, 61:25, 66:17, 67:2, 67:7, 67:12, 67:22, 68:21, 69:17, 76:3
**listed** [1] - 35:16, 48:12, 62:4
**listing** [2] - 45:2, 69:22
**literally** [2] - 45:13, 46:6
**litigation** [12] - 11:1, 11:5, 11:6, 14:1, 30:19, 34:7, 35:17, 38:9, 45:17, 45:25, 46:2
**Litigation** [4] - 4:2, 53:20, 55:22, 56:2
**livable** [1] - 52:9
**live** [2] - 13:14, 50:4
**LLC** [5] - 3:8, 4:3, 4:18, 5:11, 6:15
**LLP** [1] - 3:3
**loans** [1] - 36:16
**local** [7] - 5:1, 10:21, 11:1, 45:24, 46:12, 47:4, 57:1
**locate** [1] - 53:15
**located** [1] - 59:2
**log** [25] - 10:20, 11:2, 20:3, 20:5, 24:20, 27:4, 27:6, 35:13,

35:16, 44:23, 45:2, 45:12, 45:24, 46:13, 47:5, 47:9, 48:12, 49:15, 49:19, 50:18, 50:19, 50:25, 52:8, 52:25, 68:19
**logged** [2] - 20:8, 41:20
**logical** [1] - 38:9
**logistic** [1] - 70:5
**logistically** [1] - 30:25
**logistics** [1] - 62:22
**logs** [4] - 10:24, 34:20, 47:2, 52:14
**look** [4] - 14:24, 22:13, 48:15, 76:18
**looked** [2] - 13:19, 13:21
**looking** [7] - 7:12, 11:9, 14:8, 40:25, 41:10, 42:15, 43:8, 54:2, 60:10
**lose** [1] - 39:19
**lost** [1] - 28:24
**Louisiana** [1] - 3:3
**LTD** [4] - 5:5, 5:15, 6:6
**Luis** [2] - 5:6, 6:7
**Lukoil** [2] - 4:2, 4:17
**lunch** [1] - 68:13
**Lundy** [1] - 4:25
**Lutz** [1] - 6:6

## M

**MAARRAOUI** [1] - 3:3
**Maarraoui** [3] - 5:16, 5:20, 5:22
**MACLEAN** [1] - 3:15
**mail** [4] - 60:10, 65:5, 65:6, 65:8
**mailed** [1] - 75:16
**mails** [2] - 29:23, 67:23
**maintained** [1] - 34:9
**manner** [2] - 19:8, 24:22
**Manuel** [3] - 67:18, 67:21, 67:25
**Maria** [1] - 6:6
**MARK** [1] - 6:11
**Mark** [2] - 6:11, 6:12
**marry** [1] - 64:9
**Martinez** [1] - 65:15
**materials** [1] - 45:14
**matter** [6] - 7:17, 30:18, 41:6, 41:7,

69:15, 78:7
**matters** [3] - 16:12, 22:21, 30:22
**Maximiliano** [1] - 6:13
**maximum** [1] - 60:19
**Mayer** [1] - 4:20
**McLean** [1] - 4:25
**MCLISH** [3] - 6:2, 70:8, 73:9
**McLish** [4] - 6:3, 70:8, 71:10, 73:9
**mean** [12] - 13:15, 14:12, 26:1, 27:18, 34:7, 37:11, 37:19, 37:23, 39:9, 39:13, 42:3, 43:14
**means** [2] - 17:13, 70:25
**meant** [1] - 10:13
**meet** [10] - 8:11, 15:13, 30:8, 32:25, 33:6, 55:15, 57:5, 57:24, 59:13, 69:19
**meeting** [1] - 68:13
**mention** [2] - 6:22, 71:9
**mentioned** [4] - 11:8, 40:12, 54:16, 69:20
**mere** [1] - 28:2
**merely** [1] - 17:3
**merits** [6] - 15:16, 23:21, 24:4, 24:9, 31:7, 72:21
**met** [1] - 61:15
**methodology** [1] - 63:2
**Miami** [9] - 3:6, 3:13, 3:19, 3:23, 3:24, 69:12, 70:5, 78:12, 78:12
**Michael** [1] - 5:18
**MICHAEL** [1] - 3:2
**Migdal** [1] - 6:12
**might** [9] - 12:17, 15:6, 15:8, 23:21, 28:14, 59:14, 61:16, 69:20
**mind** [3] - 43:3, 59:16, 71:8
**Minister** [1] - 65:15
**Ministry** [1] - 65:15
**minute** [3] - 16:1, 27:6, 48:15
**minutes** [1] - 49:2
**misspelled** [1] - 5:23
**misunderstanding** [1] - 64:23
**Mitchell** [1] - 6:3
**mode** [1] - 66:10

**modification** [1] - 17:14
**modified** [1] - 38:20
**modifies** [1] - 11:15
**moment** [1] - 74:24
**Monday** [14] - 59:15, 68:9, 68:12, 68:14, 70:4, 73:17, 74:6, 74:22, 75:8, 75:24, 75:25, 76:4, 76:6, 76:19
**money** [1] - 40:9
**month** [2] - 51:3, 71:13
**months** [2] - 45:12, 50:21
**Morillo** [12] - 5:25, 6:3, 69:3, 69:8, 69:9, 69:14, 70:3, 70:9, 73:1, 73:10, 74:8, 75:2
**morning** [12] - 4:8, 4:19, 4:24, 5:7, 5:17, 6:2, 6:8, 6:11, 6:14, 6:17, 9:15, 53:18
**most** [2] - 37:14, 62:3
**motion** [1] - 14:13
**motions** [1] - 73:19
**move** [7] - 11:7, 16:22, 34:10, 53:13, 55:9, 63:8, 65:24
**movement** [1] - 41:18
**moving** [3] - 17:22, 25:7, 74:15
**MR** [149] - 4:8, 4:13, 4:16, 4:19, 4:24, 5:3, 5:12, 5:17, 5:22, 6:2, 6:8, 6:11, 6:14, 6:17, 7:24, 9:15, 10:2, 11:21, 12:14, 12:25, 14:9, 14:25, 16:23, 17:8, 17:21, 18:8, 21:22, 22:13, 22:15, 22:17, 23:19, 24:6, 24:15, 27:16, 28:10, 28:17, 28:19, 28:22, 29:4, 29:10, 29:21, 30:7, 31:4, 31:14, 31:17, 32:18, 33:3, 33:6, 34:21, 35:1, 35:6, 35:10, 35:20, 35:25, 37:10, 38:5, 38:12, 38:16, 38:24, 39:4, 39:8, 39:16, 39:20, 39:24, 40:5, 41:1, 41:13, 41:25, 42:19, 42:25, 43:9, 44:5, 44:9, 45:3, 45:7,

45:9, 45:20, 45:22, 46:3, 46:10, 47:17, 48:6, 48:7, 49:3, 49:11, 49:14, 50:3, 50:9, 50:12, 50:19, 52:4, 52:11, 52:25, 54:6, 54:19, 54:23, 55:1, 55:13, 55:20, 56:1, 56:13, 57:4, 58:4, 58:8, 58:23, 59:8, 59:21, 60:12, 60:16, 60:19, 61:5, 61:9, 62:2, 62:14, 63:15, 63:16, 64:8, 64:14, 64:21, 65:7, 65:11, 65:14, 65:21, 65:25, 66:6, 66:10, 66:17, 67:15, 67:22, 69:3, 69:14, 70:8, 71:4, 71:16, 72:23, 73:9, 74:2, 74:9, 74:17, 74:25, 75:10, 75:11, 75:13, 75:15, 76:10, 76:23, 76:24, 76:25
**MS** [1] - 5:7
**MULLINS** [2] - 3:11, 76:10
**Mullins** [2] - 5:13, 76:10
**Munoz** [1] - 60:20
**must** [2] - 5:23, 12:3

## N

**name** [2] - 29:9, 74:8
**names** [1] - 69:22
**narrow** [2] - 36:9, 43:24
**narrowly** [1] - 37:22, 38:8
**National** [6] - 25:6, 26:4, 60:24, 72:3, 72:4
**nay** [1] - 65:10
**necessary** [1] - 20:18
**necessity** [1] - 13:10
**need** [45] - 6:25, 7:9, 7:17, 8:15, 8:17, 11:2, 14:22, 16:16, 17:12, 20:7, 21:1, 21:4, 21:15, 30:4, 30:5, 33:18, 33:21, 34:5, 34:6, 34:8, 35:15, 38:3, 38:6, 44:16, 44:23, 47:13, 48:2, 48:13, 48:16, 48:24, 49:9, 50:6, 51:20, 54:3, 54:5, 54:15,

54:17, 56:12, 56:24, 57:3, 57:6, 59:16, 65:23, 68:11, 76:2
**needed** [2] - 36:11, 53:21
**needs** [3] - 16:19, 22:25, 32:16
**negotiating** [1] - 46:20
**negotiation** [4] - 36:7, 36:10, 40:13, 71:5
**negotiations** [2] - 68:16, 71:14
**Nelson** [1] - 65:15
**never** [2] - 69:16, 72:7
**New** [3] - 8:22, 15:19, 22:22
**next** [17] - 12:6, 18:16, 28:21, 33:8, 34:13, 52:19, 52:21, 52:23, 53:3, 53:13, 59:11, 65:4, 65:24, 66:12, 67:23, 72:9, 74:18
**Nick** [1] - 6:17
**nightmare** [1] - 11:4
**nine** [9] - 10:7, 11:9, 11:23, 47:19, 49:12, 49:16, 49:18, 50:3, 50:10
**nitty** [1] - 9:23
**non** [1] - 45:1
**non-privileged** [1] - 45:1
**none** [1] - 20:10
**normal** [1] - 27:5
**North** [2] - 3:23, 78:12
**notarization** [1] - 36:7
**note** [5] - 10:17, 25:6, 52:15, 73:13, 75:1
**noted** [1] - 25:23
**nothing** [6] - 23:23, 24:10, 24:11, 24:13, 31:23, 48:17
**notice** [10] - 16:1, 16:22, 17:23, 53:15, 53:16, 53:18, 53:19, 53:21, 76:3
**noting** [1] - 32:19
**number** [27] - 4:3, 8:21, 10:7, 11:9, 12:4, 18:21, 19:22, 20:2, 22:15, 23:5, 27:10, 28:25, 29:22, 34:4, 35:7, 36:6, 36:14,

36:24, 37:5, 40:12, 40:13, 40:18, 40:20, 44:20, 44:25, 45:1, 65:13
**numerous** [1] - 11:7
**NW** [1] - 3:9

## O

**o'clock** [2] - 33:10, 76:6
**object** [2] - 29:22, 32:20
**objected** [2] - 26:10, 33:24
**objecting** [1] - 15:22, 20:4
**objection** [15] - 9:20, 10:7, 18:4, 18:21, 21:4, 28:23, 29:20, 29:21, 33:25, 37:6, 37:20, 37:25, 42:1, 48:9, 49:22
**objections** [25] - 8:5, 8:10, 8:22, 12:1, 13:18, 15:25, 16:13, 17:25, 18:17, 19:23, 20:4, 21:10, 21:20, 28:21, 34:5, 34:15, 34:19, 39:12, 46:9, 47:20, 48:1, 48:9, 55:2, 74:11
**objects** [1] - 33:23
**obligation** [7] - 19:16, 21:8, 22:6, 29:17, 33:18, 62:18, 62:21
**obligations** [2] - 32:2, 64:10
**observation** [1] - 74:7
**obviously** [14] - 24:5, 30:19, 36:8, 36:11, 40:10, 45:10, 47:5, 53:20, 54:4, 60:13, 61:4, 61:23, 66:4, 68:8
**offer** [1] - 58:16
**office** [1] - 65:18
**offices** [1] - 9:25
**official** [6] - 3:22, 61:5, 61:12, 62:25, 64:14, 64:15
**Official** [1] - 78:11
**officials** [1] - 59:3
**Oil** [1] - 4:23
**OIL** [1] - 3:15
**once** [6] - 11:1, 11:5, 25:18, 39:18, 41:16,

47:25
**one** [43] - 7:2, 7:3, 12:15, 15:13, 15:20, 18:12, 18:19, 18:25, 19:21, 20:4, 22:12, 22:15, 23:2, 23:4, 23:5, 27:11, 27:19, 28:8, 28:10, 28:25, 30:21, 31:23, 34:4, 35:21, 35:24, 37:6, 39:14, 40:18, 40:19, 43:1, 43:15, 45:1, 58:23, 60:20, 60:21, 61:11, 62:9, 62:16, 65:24, 66:18, 67:14, 69:5, 75:25
**onerous** [1] - 46:24
**ones** [3] - 44:21, 45:2, 60:3
**operates** [1] - 42:1
**operation** [2] - 41:24, 44:3
**operational** [1] - 41:15
**operative** [1] - 46:18
**opposed** [2] - 10:10, 38:13
**opposing** [1] - 69:20
**Order** [1] - 4:1
**order** [13] - 4:5, 9:5, 12:9, 18:11, 21:14, 32:19, 57:12, 58:1, 59:22, 67:12, 67:23, 68:5, 72:5
**Os** [1] - 5:24
**otherwise** [7] - 11:3, 13:21, 18:24, 37:18, 50:7, 55:5, 72:7
**ought** [1] - 71:25, 72:3
**ourselves** [2] - 30:14, 51:9
**outside** [1] - 72:21
**overarching** [3] - 18:25, 19:4
**overbroad** [2] - 36:25, 38:7
**overlap** [1] - 39:10
**overruled** [1] - 33:24
**own** [2] - 17:3, 56:21

## P

**P.A** [1] - 3:5
**P.C** [1] - 3:15
**p.m** [1] - 77:2
**P.O** [1] - 3:16
**Paez** [1] - 6:20
**pages** [2] - 7:7,

45:13
**Pan** [2] - 4:3, 4:17
**papers** [2] - 9:4, 24:21
**paragraph** [3] - 7:3, 7:10
**paragraphs** [1] - 7:2
**parcel** [1] - 26:17
**part** [6] - 26:17, 30:12, 37:21, 38:1, 64:3, 64:12
**participate** [1] - 75:9
**particular** [8] - 7:8, 21:1, 27:14, 29:3, 29:19, 48:13, 48:16, 64:11
**particularly** [1] - 36:24
**parties** [15] - 4:5, 7:20, 12:9, 14:10, 14:14, 57:12, 57:14, 69:23, 70:23, 70:25, 71:18, 72:5, 72:14, 73:21, 74:13
**parties'** [1] - 62:8
**parts** [1] - 13:25
**party** [9] - 13:12, 13:23, 19:5, 31:1, 32:4, 53:20, 64:10
**passed** [1] - 31:21
**PATRICIA** [2] - 3:22, 78:10
**Paul** [3] - 4:23, 5:8, 5:9
**PAUL** [1] - 3:16
**payment** [1] - 36:20
**PDVSA** [76] - 4:2, 10:9, 10:10, 11:12, 11:18, 13:11, 13:23, 13:24, 19:6, 19:15, 29:13, 30:1, 30:4, 30:5, 30:9, 30:10, 30:15, 30:17, 30:19, 30:20, 30:23, 31:1, 31:18, 31:25, 32:3, 32:5, 32:16, 33:8, 33:10, 33:21, 34:1, 34:8, 36:19, 43:21, 47:25, 48:11, 51:12, 51:24, 52:7, 53:8, 53:19, 53:22, 56:3, 56:23, 57:1, 58:5, 58:16, 58:17, 58:23, 60:14, 60:22, 62:23, 62:24, 63:11, 63:13, 63:20, 63:21, 64:3, 64:12, 65:17, 66:19, 66:22, 67:4, 67:5, 67:13, 67:17, 67:21, 67:24, 68:1, 68:18,

68:19
**PDVSA's** [16] - 19:6, 19:7, 19:15, 19:17, 29:14, 29:15, 32:2, 52:13, 53:3, 62:10, 63:25, 64:4, 64:13, 67:5, 68:1, 68:5
**pecking** [1] - 4:6
**Pedrosa** [5] - 60:20, 62:6, 62:9, 64:11, 64:18
**people** [33] - 4:14, 16:6, 26:6, 26:8, 30:2, 32:6, 37:16, 38:25, 39:4, 40:7, 42:11, 59:20, 60:7, 61:7, 61:9, 61:12, 67:2, 67:7, 67:14, 68:6, 68:7, 68:20, 69:11, 70:5, 70:14, 71:24, 72:1, 72:18, 72:20, 73:3, 74:21
**People's** [1] - 65:16
**per** [1] - 69:1
**perhaps** [2] - 66:12, 73:15
**period** [4] - 10:9, 51:3, 59:13, 74:4
**permission** [1] - 58:24
**permits** [1] - 44:10
**permitted** [1] - 59:23
**person** [5] - 61:4, 61:16, 63:18, 65:3, 66:16
**personal** [4] - 70:12, 70:17, 73:19, 74:11
**personnel** [1] - 30:1
**pertinent** [1] - 24:4
**pertinently** [1] - 37:14
**Petroleum** [1] - 65:16
**phone** [3] - 39:21, 63:6, 64:18
**phrased** [1] - 37:7
**pick** [4] - 44:11, 44:14, 63:5, 64:18
**picking** [1] - 44:13
**place** [7] - 41:16, 51:2, 56:25, 58:7, 58:20, 59:2, 66:3
**plain** [1] - 46:12
**plaintiff** [39] - 4:7, 4:8, 4:14, 6:24, 7:1, 7:3, 7:6, 7:21, 12:7, 13:5, 16:21, 18:10, 18:13, 18:22, 20:22, 21:4, 21:17, 25:12, 27:6, 28:23, 29:4,

29:12, 30:2, 43:11, 44:11, 49:15, 54:2, 55:10, 55:12, 55:16, 57:20, 60:5, 60:6, 60:22, 62:16, 62:18, 65:22, 71:1, 71:7
**plaintiff's** [17] - 7:13, 10:5, 12:21, 13:11, 37:21, 46:19, 47:14, 47:23, 55:8, 60:1, 62:7, 66:11, 68:21, 72:10, 72:11, 72:12, 72:16
**plaintiffs** [17] - 10:13, 10:22, 11:13, 13:13, 14:16, 18:17, 29:24, 31:17, 34:14, 45:21, 47:4, 48:5, 48:8, 52:12, 56:15, 57:17, 64:2
**Plaintiffs** [1] - 21:7
**plaintiffs'** [1] - 7:1
**plan** [3] - 16:7, 63:9, 64:17
**planning** [1] - 16:5
**plural** [1] - 71:18
**plus** [1] - 47:20
**point** [30] - 9:20, 10:21, 10:22, 11:20, 12:11, 13:3, 14:25, 16:21, 18:1, 18:10, 19:12, 19:18, 19:20, 22:7, 24:21, 24:24, 25:2, 25:11, 28:15, 31:23, 31:24, 34:13, 37:19, 42:4, 50:2, 52:20, 55:18, 67:5
**pointed** [3] - 24:20, 44:22, 71:10
**pointing** [1] - 70:2
**points** [4] - 19:21, 21:13, 24:14, 46:11
**Porter** [1] - 6:15
**position** [13] - 12:22, 20:14, 21:25, 22:3, 26:9, 29:13, 29:25, 51:21, 51:25, 58:15, 65:3, 65:22, 71:23
**possession** [4] - 13:11, 29:23, 53:8
**possibility** [3] - 59:4, 59:17, 61:7
**possible** [4] - 27:18, 69:25, 70:24, 73:13
**possibly** [2] - 70:14, 71:11
**post** [1] - 20:6
**potential** [6] - 57:15, 59:20, 69:24, 70:23, 70:25, 72:15

**potentially** [1] - 60:3
**Poveda** [1] - 6:13
**power** [1] - 62:13
**powers** [1] - 63:10
**practical** [1] - 64:25
**practically** [1] - 11:4
**preceded** [1] - 35:11
**predate** [2] - 20:11, 35:16
**prejudice** [1] - 74:10
**preliminary** [5] - 7:18, 14:13, 16:17, 54:5, 76:1
**premise** [1] - 23:2
**preparation** [1] - 76:1
**prepared** [2] - 40:3, 61:16
**preparing** [3] - 45:12, 46:2, 46:21
**prescribe** [1] - 41:11
**prescribing** [1] - 41:14
**presence** [1] - 17:11
**present** [2] - 6:21, 14:18
**presents** [1] - 47:4
**preserve** [1] - 19:16
**preserving** [1] - 73:22
**president** [2] - 63:21, 68:1
**presumably** [1] - 44:17
**presume** [1] - 60:6
**pretty** [1] - 8:7
**previews** [1] - 43:7
**primarily** [1] - 15:1
**primary** [2] - 11:15, 37:16
**privacy** [2] - 48:22, 48:25
**privilege** [51] - 8:16, 9:13, 10:15, 10:16, 10:20, 10:24, 11:2, 11:3, 11:6, 12:1, 12:5, 17:1, 17:16, 20:3, 20:5, 20:17, 21:11, 24:20, 25:13, 25:22, 27:4, 27:6, 27:9, 29:6, 34:18, 34:19, 34:20, 34:24, 35:4, 35:12, 35:15, 35:16, 36:6, 36:12, 40:17, 44:23, 45:24, 46:6, 46:14, 47:5, 47:7, 47:9, 50:18, 50:19, 50:25, 52:8, 52:14, 52:25, 53:1, 68:18
**privileged** [11] -

20:15, 27:3, 32:15, 35:8, 41:19, 41:20, 45:1, 45:2, 48:11
**problem** [5] - 23:12, 47:4, 47:10, 50:13, 51:5
**problematic** [1] - 31:23
**problems** [3] - 23:14, 23:15, 41:5
**proceed** [3] - 32:8, 62:20, 73:23
**proceeding** [2] - 16:8, 62:4
**Proceedings** [1] - 77:2
**proceedings** [1] - 78:5
**proceeds** [5] - 14:1, 26:7, 36:16, 38:9, 38:17
**process** [4] - 63:2, 65:1, 70:11, 73:19
**Procurador** [4] - 61:1, 63:13, 63:24, 64:15
**produce** [44] - 11:2, 18:13, 18:17, 18:18, 18:21, 18:24, 19:11, 19:16, 21:5, 21:7, 22:2, 22:3, 22:6, 27:6, 30:10, 31:3, 31:5, 31:11, 31:21, 31:25, 32:1, 33:14, 33:20, 33:25, 34:6, 37:23, 42:2, 44:4, 44:16, 49:19, 51:11, 52:3, 52:5, 53:2, 55:21, 56:4, 56:5, 56:7, 56:9, 56:21, 56:23, 58:23
**produced** [26] - 7:7, 10:3, 11:16, 13:6, 17:16, 17:17, 18:15, 18:18, 19:24, 20:9, 25:22, 26:11, 26:24, 27:2, 27:8, 32:10, 33:22, 34:8, 36:11, 40:16, 44:23, 47:6, 47:8, 57:14, 71:11
**producible** [1] - 28:4
**producing** [16] - 9:25, 12:2, 12:19, 19:6, 20:5, 26:10, 29:22, 30:14, 30:17, 32:6, 32:15, 37:20, 38:23, 45:1, 49:22, 50:24
**product** [3] - 11:3, 12:5, 35:4
**production** [29] -

7:8, 10:4, 10:23, 11:9, 18:2, 18:5, 18:11, 19:2, 21:16, 23:5, 27:10, 29:14, 30:6, 31:2, 32:13, 34:4, 34:12, 34:22, 35:21, 39:25, 40:12, 47:9, 50:15, 50:17, 51:8, 60:1, 68:18, 71:22

**progress** [1] - 7:16
**promptly** [3] - 33:15, 69:24, 70:23
**pronouncement** [1] - 25:8
**proper** [2] - 21:19, 21:24
**properly** [2] - 63:5, 73:12
**proportions** [1] - 11:4
**proposal** [1] - 52:13
**proposed** [2] - 41:3, 71:6
**prospect** [1] - 66:8
**provide** [6] - 25:25, 36:20, 62:19, 62:21, 64:10
**provided** [2] - 53:16, 57:17
**providing** [1] - 39:5
**punitive** [1] - 44:2
**purely** [1] - 24:9
**purport** [1] - 13:13
**purported** [1] - 60:23
**purportedly** [2] - 62:10, 65:17
**purporting** [3] - 19:14, 63:25, 64:4
**purports** [1] - 64:13
**purposes** [4] - 7:18, 19:15, 50:25, 62:17
**pursuant** [2] - 7:19, 21:6
**pursue** [4] - 19:8, 23:7, 28:11, 43:20
**pursuing** [1] - 12:8
**put** [13] - 9:1, 10:19, 27:4, 39:1, 40:2, 45:25, 46:1, 47:7, 48:19, 66:14, 73:18, 73:20, 74:20

## Q

**qualification** [1] - 10:3
**questioned** [1] - 71:5
**questions** [1] - 9:23
**Quevedo** [3] - 67:19,

67:21, 67:25
**quick** [2] - 10:2, 51:16
**quickly** [1] - 19:3
**QUINN** [1] - 3:8
**quite** [2] - 16:16, 76:12

## R

**raise** [6] - 7:14, 13:6, 14:21, 60:6, 66:23, 76:21
**raised** [9] - 8:21, 9:18, 14:12, 24:25, 26:4, 26:25, 37:17, 39:13, 41:6
**raises** [1] - 21:23
**raising** [2] - 24:25, 37:18
**rank** [2] - 60:8, 67:23
**rather** [1] - 17:25
**reach** [3] - 66:15, 67:6, 69:17
**read** [3] - 11:13, 23:17, 38:21
**reads** [2] - 21:6, 38:21
**ready** [1] - 48:23
**real** [3] - 13:12, 13:23, 18:9
**realistic** [1] - 51:25
**realize** [1] - 74:21
**really** [9] - 7:16, 8:6, 14:25, 15:1, 39:4, 39:10, 44:12, 44:13, 61:14
**reargue** [2] - 27:18, 44:9
**reason** [9] - 25:21, 28:11, 33:11, 40:5, 44:14, 46:3, 55:19, 56:6, 70:20
**reasons** [3] - 15:20, 42:7, 57:9
**recede** [1] - 50:13
**receive** [2] - 14:1, 36:20
**received** [1] - 6:23
**receiving** [1] - 32:16
**recess** [2] - 49:4, 49:5
**recipients** [1] - 36:17
**recognized** [2] - 60:24, 72:1
**recommend** [1] - 73:21
**record** [3] - 39:9, 67:17, 75:1

**REED** [1] - 3:12
**reference** [5] - 27:21, 27:23, 28:1, 54:19, 60:9
**referenced** [10] - 25:18, 25:24, 26:1, 26:13, 26:20, 27:20, 27:22, 28:2, 28:6, 46:20
**referred** [1] - 27:24
**referring** [1] - 21:23
**reflect** [1] - 43:25
**reflected** [1] - 25:4
**refused** [1] - 57:8
**regard** [4] - 26:22, 45:15, 47:14, 48:7
**regarding** [6] - 6:24, 16:22, 17:9, 36:21, 62:7, 64:9
**regards** [3] - 11:2, 16:6, 45:24
**regulators** [1] - 50:7
**regulatory** [1] - 49:20
**relate** [5] - 14:3, 14:17, 42:2, 47:21, 49:23
**related** [14] - 10:5, 10:11, 11:5, 20:2, 20:12, 25:20, 29:16, 31:12, 40:10, 43:11, 46:1, 54:3, 54:10, 69:6
**relates** [4] - 7:10, 13:8, 43:8, 50:20
**relating** [9] - 24:9, 27:3, 33:12, 41:23, 41:25, 45:14, 54:8, 70:18, 76:5
**relationship** [1] - 25:15
**relevance** [4] - 9:13, 16:25, 36:25, 48:10
**relevant** [24] - 15:8, 15:15, 15:16, 15:23, 22:4, 22:9, 22:25, 23:21, 28:11, 28:12, 28:14, 28:16, 30:20, 32:24, 35:2, 36:4, 36:5, 36:9, 49:17, 49:25, 54:20, 61:14, 70:21
**rely** [3] - 12:17, 12:19, 19:11
**relying** [2] - 17:17, 19:22
**remaining** [1] - 52:17
**remember** [2] - 28:6, 74:8
**remind** [1] - 34:11

**remotely** [3] - 19:18, 20:20, 43:16
**removal** [4] - 36:2, 40:21, 42:4, 44:1
**removed** [2] - 43:6, 65:18
**rep** [4] - 53:23, 56:21, 56:24, 67:4
**replacement** [4] - 36:2, 40:21, 42:4, 44:1
**report** [4] - 17:9, 17:18, 68:10, 68:16
**REPORTED** [1] - 3:21
**reporter** [2] - 29:8, 48:25
**Reporter** [2] - 3:22, 78:11
**reports** [1] - 12:16
**represent** [6] - 9:16, 30:9, 30:18, 45:21, 69:14, 74:1
**representation** [3] - 17:5, 17:7, 47:23
**representative** [2] - 58:16, 60:14
**representing** [1] - 70:9
**represents** [1] - 69:10
**request** [63] - 7:8, 8:2, 8:8, 10:7, 11:9, 11:23, 14:7, 14:10, 14:16, 16:15, 17:20, 18:18, 18:25, 20:23, 21:1, 21:12, 21:15, 21:16, 22:12, 22:13, 23:5, 27:10, 27:14, 29:19, 30:10, 30:11, 30:16, 31:25, 34:2, 34:4, 35:20, 35:24, 35:25, 36:6, 36:14, 36:24, 37:5, 37:11, 37:23, 38:20, 39:15, 40:4, 40:12, 40:18, 40:20, 42:18, 43:14, 44:20, 46:9, 46:11, 47:14, 48:14, 49:9, 49:12, 50:8, 51:13, 64:24, 66:23, 69:18, 69:19, 74:4
**requested** [1] - 47:21
**requests** [13] - 8:9, 18:4, 19:1, 22:8, 29:3, 30:6, 32:21, 39:10, 39:25, 43:3, 48:8, 49:23, 50:15
**require** [1] - 49:18
**requirement** [2] -

12:10, 13:2
**requires** [1] - 46:13
**research** [1] - 62:15
**reservations** [1] - 75:7
**reserve** [1] - 71:7
**reserving** [1] - 76:4
**resides** [1] - 61:21
**resignation** [7] - 36:2, 40:21, 42:13, 42:19, 42:21, 43:16, 44:2
**resigned** [2] - 42:17, 43:6
**resigning** [1] - 43:11
**resigns** [1] - 42:9
**resolve** [5] - 18:7, 21:4, 47:11, 68:17, 74:23
**resolved** [2] - 50:16, 59:15
**respect** [19] - 8:18, 9:3, 10:23, 22:9, 23:23, 25:23, 30:16, 31:8, 31:17, 41:7, 46:13, 49:14, 49:16, 50:19, 51:8, 51:9, 51:14, 56:2, 56:3
**respectfully** [5] - 16:10, 42:5, 43:9, 48:4, 71:17
**respond** [8] - 18:24, 21:15, 30:6, 31:15, 38:14, 40:3, 69:7, 73:15
**responded** [1] - 8:10
**responding** [1] - 9:2
**response** [12] - 8:2, 8:7, 9:20, 10:7, 10:17, 14:12, 16:14, 33:7, 33:16, 47:14, 57:22, 75:21
**responses** [4] - 8:14, 19:22, 39:14, 47:20
**responsibilities** [2] - 13:22, 61:10
**responsive** [13] - 18:18, 19:7, 20:1, 20:8, 21:11, 29:16, 30:5, 30:11, 34:1, 39:9, 39:12, 40:4, 43:17
**rest** [1] - 38:22
**results** [1] - 68:10
**retained** [2] - 13:23, 15:10
**retaining** [1] - 32:20
**review** [1] - 57:15
**reviewed** [1] - 12:8
**revisit** [3] - 70:4,

73:16, 75:25
**revisiting** [1] - 76:14
**Reynaldo** [1] - 60:20
**rights** [4] - 13:22,
15:10, 72:7, 73:22
**Rivero** [2] - 6:20,
6:21
**roadmap** [1] - 14:23
**Rodriguez** [1] - 6:7
**roles** [1] - 20:22
**rolls** [1] - 21:18
**ROSADO** [1] - 3:16
**Rosado** [1] - 4:23
**RPR** [2] - 3:22, 78:10
**Rs** [1] - 5:24
**rule** [6] - 10:21, 34:5,
36:10, 37:2, 47:4,
48:13
**Rule** [1] - 19:25
**ruled** [5] - 40:16,
47:15, 50:16, 55:22,
55:23
**rules** [2] - 11:1,
46:12
**ruling** [11] - 27:10,
27:17, 28:9, 32:22,
34:3, 40:11, 40:18,
44:20, 45:15, 45:23,
47:3
**rulings** [4] - 44:25,
47:16, 48:16, 55:3
**run** [2] - 19:2, 20:23
**Ryan** [1] - 6:10

## S

**Saint** [1] - 3:15
**sake** [1] - 9:17
**satisfied** [1] - 43:5
**satisfy** [1] - 17:19
**Savannah** [1] - 3:16
**saw** [1] - 53:16
**SCHACHTER** [1] -
3:5
**schedule** [13] -
12:16, 12:20, 16:20,
17:10, 31:20, 32:7,
34:9, 52:16, 68:9,
68:12, 69:23, 72:22,
73:24
**scheduled** [7] - 33:9,
58:11, 66:20, 66:21,
66:22
**scheduling** [8] -
12:9, 18:11, 21:13,
32:19, 57:12, 59:22,
71:14, 72:5
**Schiller** [2] - 4:10,
50:5

**Schwartz** [1] - 5:9
**SE** [1] - 3:18
**search** [2] - 29:15,
51:20
**second** [6] - 7:13,
7:17, 8:18, 19:4,
29:11, 67:25
**Second** [1] - 3:18
**seconds** [1] - 48:2
**section** [1] - 7:13
**see** [28] - 7:16, 8:3,
11:20, 12:10, 15:21,
18:20, 19:1, 25:14,
29:21, 33:17, 34:13,
43:24, 44:21, 47:1,
48:20, 49:25, 59:15,
59:19, 62:22, 63:9,
63:11, 66:16, 66:24,
67:7, 67:13, 68:6,
72:17, 72:18
**seeing** [1] - 20:12
**seeking** [1] - 10:8
**seem** [4] - 18:4,
43:20, 63:4, 66:8
**selection** [6] - 40:20,
42:4, 42:13, 43:23,
44:1, 44:15
**send** [3] - 31:2, 31:4,
65:5
**sense** [3] - 43:18,
51:5, 74:12
**separate** [1] - 46:7
**Sergio** [1] - 5:6
**serve** [2] - 18:17,
21:9
**served** [8] - 8:9,
70:11, 73:2, 73:3,
73:18, 74:12, 74:13,
75:4
**service** [4] - 58:17,
58:24, 74:11, 75:3
**services** [1] - 39:5
**serving** [1] - 61:21
**session** [1] - 49:7
**set** [5] - 21:20, 25:7,
25:10, 32:7, 76:2
**seven** [5] - 35:25,
40:20, 44:20, 44:25,
57:18
**several** [2] - 45:12,
50:21
**shall** [1] - 72:12
**share** [1] - 67:13
**sharing** [1] - 26:2
**shield** [1] - 19:10
**shift** [1] - 41:11
**shoes** [4] - 19:8,
19:15, 62:8, 62:17
**short** [1] - 18:9
**shot** [1] - 53:11

**show** [10] - 21:17,
37:24, 38:13, 38:22,
40:2, 41:5, 44:6, 44:7,
44:14, 44:16
**showing** [2] - 14:5,
59:25
**shows** [1] - 21:7
**side** [16] - 8:9, 22:18,
23:9, 23:13, 26:15,
26:19, 28:6, 28:10,
28:12, 59:23, 68:22,
68:24, 69:1, 69:2,
70:25, 72:6
**sides** [3] - 24:2,
32:20, 72:24
**signals** [1] - 29:8
**signed** [6] - 13:17,
60:21, 63:21, 63:24,
65:16, 67:3
**significance** [1] -
15:18
**significant** [2] -
24:22, 57:9
**similarly** [1] - 71:25
**simple** [1] - 10:1
**simply** [6] - 23:24,
30:18, 30:21, 40:9,
42:23, 42:25, 54:19
**sitting** [2] - 9:25,
12:18
**situation** [2] - 46:16,
64:1
**situations** [1] - 53:12
**six** [4] - 4:14, 36:6,
40:13, 44:25
**size** [1] - 51:5
**small** [2] - 10:4, 10:6
**Smith** [1] - 4:11
**SMITH** [1] - 3:12
**snail** [1] - 65:6
**sole** [1] - 28:5
**solution** [1] - 64:25
**someone** [2] - 43:11,
66:24
**sometimes** [1] -
26:24
**somewhere** [3] -
23:17, 69:12, 70:6
**sooner** [1] - 58:9
**sorry** [13] - 12:23,
22:12, 29:7, 33:2,
34:25, 39:18, 42:24,
45:5, 45:20, 54:22,
61:8, 64:6, 75:25
**sort** [5] - 14:7, 24:25,
36:20, 60:8, 71:6
**sought** [1] - 30:1
**sound** [1] - 76:12
**sounds** [5] - 26:16,
41:23, 42:15, 59:6,

59:14
**source** [1] - 34:7
**sovereign** [1] - 65:3
**Spanish** [2] - 64:22,
76:16
**speaker** [1] - 39:21
**SPEAKER** [1] - 75:22
**speaking** [2] - 7:25,
45:19
**specific** [3] - 34:2,
34:5, 49:9
**specifically** [1] -
25:18
**specificity** [2] - 7:7,
7:23
**spirit** [1] - 50:12
**spite** [1] - 34:7
**spot** [1] - 12:11
**St** [1] - 3:3
**Stacy** [1] - 6:3
**stage** [2] - 20:21,
32:11
**standards** [1] - 10:23
**standing** [72] - 8:21,
9:6, 9:8, 10:5, 13:4,
13:8, 13:13, 14:4,
14:11, 14:12, 14:17,
15:15, 15:17, 15:23,
16:4, 18:14, 18:22,
19:7, 19:13, 21:5,
21:8, 21:17, 22:1,
22:4, 22:9, 22:21,
23:1, 23:23, 23:24,
23:25, 24:4, 24:12,
24:13, 25:20, 25:25,
28:12, 28:13, 31:8,
31:20, 32:25, 36:9,
37:1, 40:10, 41:8,
42:6, 42:8, 42:14,
43:2, 43:4, 43:8,
47:22, 49:17, 54:4,
54:20, 54:21, 55:24,
56:15, 59:23, 61:15,
63:18, 69:2, 69:21,
70:21, 72:11, 72:12,
72:13, 72:16, 72:25,
73:3, 73:23, 76:5
**stands** [3] - 19:15,
36:20, 62:16
**start** [2] - 7:1, 76:21
**starts** [3] - 11:1,
11:5, 45:25
**state** [2] - 21:10,
26:6
**statement** [5] -
16:24, 17:2, 48:4,
50:4, 55:12
**statements** [3] -
17:15, 49:24, 54:11
**States** [8] - 3:23,

13:20, 26:6, 61:11,
65:1, 70:10, 74:3,
78:11
**status** [3] - 53:6,
65:25, 66:7
**STENOGRAPHICA
LLY** [1] - 3:21
**Stephen** [1] - 6:14
**Steven** [3] - 4:10,
4:12, 4:13
**stick** [1] - 23:16
**still** [1] - 43:21
**stop** [2] - 10:21, 23:3
**story** [1] - 61:3
**street** [1] - 72:6
**Street** [3] - 3:9, 3:15,
3:18
**strength** [1] - 74:21
**strokes** [1] - 14:15
**strongly** [3] - 32:23,
59:10, 66:2
**structure** [1] - 60:2
**stuff** [2] - 51:23, 54:4
**sub** [1] - 7:2
**subject** [6] - 35:3,
40:17, 45:1, 47:6,
65:1, 67:18
**subjects** [1] - 54:9
**submitted** [2] -
12:17, 17:9
**subpoena** [7] -
53:20, 56:25, 58:17,
58:19, 58:25, 59:9,
61:21
**subpoenaed** [2] -
56:9, 56:24
**subpoenas** [2] -
16:16, 53:17
**substantial** [1] - 35:7
**substitution** [4] -
36:2, 40:21, 42:4,
44:1
**sufficient** [9] - 28:4,
37:24, 38:13, 38:22,
40:2, 44:5, 44:7,
44:14, 53:21
**suggest** [2] - 42:6,
66:24
**suggestion** [2] -
38:12, 70:16
**Suite** [4] - 3:3, 3:6,
3:12, 3:19
**SULLIVAN** [1] - 3:8
**summer** [1] - 31:19
**supplemental** [4] -
34:12, 50:17, 51:8,
68:17
**supply** [1] - 75:18
**support** [2] - 18:22,
21:5

**supportive** [1] - 22:3
**supposed** [2] - 43:4,
57:12
**surprise** [1] - 40:6
**surrounding** [3] -
13:17, 37:12, 41:4
**SUSMAN** [1] - 3:3
**suspect** [1] - 66:2
**SWERDLOFF** [1] -
6:17
**Swerdloff** [1] - 6:18

# T

**tail** [1] - 16:18
**technicality** [1] -
73:18
**telephone** [3] - 4:9,
32:22, 68:15
**telephonic** [2] - 73:7,
76:7
**ten** [5] - 47:19,
49:12, 49:16, 50:11,
50:13
**term** [1] - 36:15
**terms** [10] - 9:19,
15:17, 21:24, 22:20,
32:14, 38:7, 45:17,
46:12, 49:17, 50:16
**test** [1] - 37:25
**testifying** [1] - 74:12
**Texas** [1] - 3:4
**THE** [140] - 3:2, 3:8,
3:14, 4:4, 4:12, 4:14,
4:17, 4:22, 5:2, 5:4,
5:10, 5:14, 5:21, 5:23,
6:5, 6:10, 6:13, 6:16,
6:19, 9:9, 9:22, 10:25,
11:24, 12:24, 14:6,
14:20, 15:25, 17:6,
17:14, 17:22, 20:25,
22:12, 22:16, 23:3,
24:3, 24:8, 26:12,
28:5, 28:15, 28:18,
28:20, 28:24, 29:7,
29:19, 30:3, 30:24,
31:16, 32:9, 33:2,
33:5, 33:17, 34:25,
35:5, 35:9, 35:14,
35:24, 37:5, 38:3,
38:6, 38:15, 38:20,
39:1, 39:7, 39:18,
39:22, 40:1, 40:11,
41:10, 41:22, 42:15,
42:24, 43:5, 43:24,
44:7, 44:13, 45:4,
45:8, 45:19, 45:21,
45:23, 46:8, 47:3,
48:13, 49:6, 49:8,

49:13, 50:1, 50:10,
50:15, 52:2, 52:5,
52:21, 53:4, 54:15,
54:22, 55:6, 55:19,
55:25, 56:11, 56:19,
58:1, 58:5, 58:15,
59:6, 59:12, 60:10,
60:13, 60:17, 61:3,
61:8, 61:20, 62:12,
62:22, 64:6, 64:17,
65:4, 65:9, 65:12,
65:20, 66:5, 66:8,
66:14, 67:2, 67:11,
67:20, 68:4, 69:9,
69:23, 70:22, 72:9,
73:1, 73:16, 74:5,
74:10, 74:18, 75:5,
75:12, 75:14, 75:23,
76:20
**theirs** [1] - 9:21
**theme** [1] - 47:21
**themselves** [3] -
39:6, 46:5, 67:8
**theoretically** [2] -
31:1, 57:14
**therein** [1] - 25:19
**thereof** [1] - 23:8
**thinking** [1] - 39:11
**thorough** [1] - 29:15
**thoughts** [1] - 66:18
**thousand** [1] - 51:6
**thousands** [1] - 46:7
**three** [9] - 24:14,
26:9, 27:7, 29:22,
33:8, 47:18, 49:12,
49:14, 69:8
**throughout** [1] - 75:8
**tied** [2] - 34:17,
34:19
**tight** [1] - 16:19
**timely** [1] - 32:6
**title** [3] - 60:23,
60:25, 64:2
**today** [1] - 7:14,
7:15, 7:17, 9:18,
12:18, 16:19, 34:3,
34:4, 60:9, 76:8,
76:11
**Tom** [3] - 6:2, 70:8,
73:9
**took** [1] - 51:2
**topics** [1] - 45:14
**totally** [1] - 38:11
**touchstone** [2] -
25:20, 41:13
**towards** [1] - 37:11
**track** [1] - 28:24
**TRADING** [1] - 3:8
**Trading** [1] - 5:11
**TRAFIGURA** [1] - 3:8

**Trafigura** [2] - 5:11,
76:10
**transcription** [1] -
78:5
**transfer** [2] - 62:10,
63:19
**translated** [1] - 76:17
**translates** [1] - 16:9
**trouble** [1] - 18:9
**true** [1] - 72:24
**trust** [7] - 26:6, 27:3,
30:19, 34:7, 35:23,
36:8, 62:10
**Trust** [96] - 4:2, 8:21,
8:23, 10:12, 11:11,
13:9, 13:17, 15:5,
15:9, 15:18, 18:19,
19:9, 19:14, 20:11,
20:13, 22:10, 22:18,
22:19, 23:6, 23:9,
23:23, 24:12, 24:17,
25:4, 25:8, 25:18,
25:19, 26:13, 26:17,
26:19, 26:20, 27:20,
27:21, 27:24, 28:1,
28:3, 28:16, 29:23,
30:2, 30:9, 31:9,
33:13, 35:22, 36:10,
36:19, 36:21, 37:12,
38:17, 39:5, 40:14,
40:24, 41:6, 41:7,
41:14, 41:15, 41:24,
42:1, 42:10, 42:11,
42:20, 43:7, 43:12,
44:3, 44:19, 46:18,
53:20, 54:11, 55:22,
56:2, 56:21, 57:10,
58:2, 60:14, 60:21,
60:22, 62:18, 62:23,
62:24, 63:12, 63:18,
63:19, 63:22, 64:3,
64:13, 65:17, 67:3,
67:25, 70:15, 70:17,
70:18, 71:12, 71:24,
72:1, 72:18
**Trust's** [2] - 36:18,
55:17
**trustee** [11] - 36:3,
36:19, 40:22, 42:9,
43:1, 43:6, 67:24
**trustee's** [1] - 42:13
**trustees** [9] - 8:24,
40:25, 41:3, 41:11,
42:16, 43:19, 44:2
**trusts** [1] - 31:12
**truth** [1] - 10:6
**try** [11] - 47:10,
47:11, 51:5, 57:2,
57:5, 61:25, 64:7,
66:24, 74:5, 74:20

**trying** [1] - 14:15,
14:22, 14:23, 19:9,
25:2, 53:11, 62:1,
63:4, 63:9, 69:6, 71:2
**turn** [2] - 15:17,
23:18
**turnaround** [1] -
51:16
**turnover** [1] - 41:18
**two** [27] - 7:1, 7:2,
7:25, 8:1, 18:11,
19:18, 19:21, 21:13,
27:19, 31:24, 33:8,
47:18, 49:11, 49:12,
49:14, 59:20, 60:14,
60:17, 61:7, 61:9,
61:12, 66:12, 67:16,
68:6, 68:20, 72:6
**two-way** [1] - 72:6
**type** [3] - 13:10,
14:3, 41:8
**types** [3] - 14:2,
26:9, 41:18
**typically** [1] - 64:12

# U

**U.S** [4] - 49:20,
49:23, 53:19, 73:2
**UK** [1] - 5:5
**ultimate** [2] - 19:5,
43:19
**unable** [2] - 9:6, 57:5
**unclear** [1] - 75:2
**unconstitutional** [1]
- 25:9
**under** [21] - 8:22,
11:6, 12:16, 15:19,
17:9, 19:25, 22:22,
25:4, 25:9, 26:18,
27:4, 27:7, 28:8, 32:2,
42:18, 57:11, 59:22,
62:6, 68:1
**understood** [1] -
56:14
**undertake** [1] - 51:20
**undoable** [1] - 61:24
**UNIDENTIFIED** [1] -
75:22
**unintelligible** [2] -
18:14, 43:13
**unique** [2] - 46:16,
63:17, 64:1
**united** [2] - 3:23,
61:10
**United** [7] - 13:20,
26:6, 61:11, 65:1,
70:10, 74:3, 78:11
**unlawful** [1] - 25:4

**unlawfully** [1] - 26:5
**unless** [1] - 21:16
**unorthodox** [1] -
73:4
**unsaid** [1] - 12:21
**unsealed** [1] - 71:13
**unwilling** [1] - 18:24
**up** [18] - 14:5, 16:2,
20:12, 33:2, 34:11,
34:17, 34:25, 37:5,
47:8, 50:21, 52:6,
52:9, 54:22, 61:8,
63:5, 64:6, 64:18,
75:24
**urge** [1] - 59:10
**URQUHART** [1] - 3:8

# V

**valid** [1] - 22:22
**validity** [11] - 10:11,
11:10, 11:16, 31:12,
33:12, 39:12, 43:7,
43:12, 44:19, 70:15,
70:18
**validly** [3] - 60:25,
75:4
**variety** [2] - 42:7,
42:12
**various** [5] - 20:22,
45:14, 47:19, 48:1,
53:1
**Vega** [1] - 5:6
**vendor** [2] - 36:22,
38:24
**vendors** [10] - 37:7,
37:8, 38:4, 38:6,
38:10, 39:1, 39:2,
39:3, 40:3, 40:6
**Venezuela** [23] -
11:17, 22:23, 26:8,
37:16, 51:17, 53:7,
53:25, 58:20, 59:2,
61:1, 61:6, 61:7, 61:9,
61:18, 61:22, 62:9,
63:14, 63:24, 64:16,
65:19, 65:21, 66:4
**Venezuelan** [11] -
8:22, 10:9, 10:10,
11:12, 13:19, 13:25,
15:19, 25:5, 25:9,
26:6, 63:1
**version** [1] - 67:25
**versions** [2] - 40:14,
40:22
**versus** [1] - 4:2
**viable** [1] - 59:6
**video** [2] - 59:5, 73:7
**view** [3] - 28:4, 55:1,

67:5
  **views** [1] - 43:11
  **VITOL** [2] - 3:2, 3:3
  **Vitol** [4] - 5:15, 5:19
  **voluntarily** [7] -
56:23, 58:16, 58:24,
59:10, 62:1, 66:2,
68:19

## W

  **waiting** [1] - 66:11
  **wants** [2] - 12:19,
69:12
  **Washington** [1] -
3:10
  **wasted** [1] - 62:5
  **Wednesday** [1] -
52:23
  **week** [3] - 52:3, 52:6,
53:3
  **Weiss** [2] - 5:8, 5:9
  **whole** [3] - 26:5,
62:23, 73:23
  **willing** [6] - 21:5,
57:21, 61:25, 67:1,
67:7, 67:10
  **wish** [2] - 7:4, 76:6
  **withheld** [8] - 16:25,
21:10, 24:18, 34:15,
35:18, 38:1, 46:13,
49:16
  **withhold** [1] - 30:12
  **withholding** [16] -
8:15, 9:10, 9:12, 9:24,
10:14, 10:16, 11:25,
20:1, 25:13, 30:3,
34:17, 34:18, 35:14,
47:24, 47:25, 48:8
  **withstanding** [2] -
24:10, 49:25
  **witness** [4] - 55:21,
56:5, 56:7, 62:6
  **witnesses** [9] -
14:17, 29:25, 52:18,
52:20, 52:21, 53:14,
57:19, 62:19, 69:17
  **word** [1] - 7:12
  **words** [2] - 18:23,
28:13
  **work-product** [1] -
12:5
  **works** [2] - 36:22,
68:15
  **world** [1] - 11:18
  **worry** [1] - 70:6
  **write** [4] - 64:21,
64:23, 65:5, 65:7
  **written** [1] - 43:14

## Y

  **year** [2] - 31:18,
65:21
  **yesterday** [12] - 8:11,
25:7, 26:4, 29:24,
30:8, 32:25, 33:7,
55:15, 57:24, 66:21,
69:18, 75:16
  **York** [3] - 8:22,
15:19, 22:23
  **yourself** [1] - 9:14
  **yourselves** [3] -
48:22, 52:9, 67:12

## Z

  **Zack** [1] - 4:10
  **zero** [1] - 27:14
  **zeroing** [1] - 29:2