# Exhibit  1

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PDVSA US LITIGATION        )
TRUST,                     )
                           )
      Plaintiff,           )
                           )
VS.                        )   Case No. 1:18-cv-20818-DPG
                           )
LUKOIL PAN AMERICAS        )
LLC, et al.,               )
                           )
      Defendants.          )
                           )
                           )
                           )

*********************************
ORAL AND VIDEOTAPED DEPOSITION OF
COREY PROLOGO
May 15, 2018
*********************************

      ORAL AND VIDEOTAPED DEPOSITION OF COREY PROLOGO,
produced as a witness at the instance of the PLAINTIFF,
and duly sworn, was taken in the above-styled and
numbered cause on May 15, 2018, from 2:59 p.m. to 4:07
p.m., by machine shorthand before LORRAINE BRAZIL, CSR,
RPR, CRR, RMR, in and for the State of Texas, reported
at the offices of Quinn Emanuel, 711 Louisiana, Suite
500, Houston, Texas, pursuant to the Federal Rules of
Civil Procedure and the provisions stated in the record
or attached hereto.



## Page 2

```
 1
 2            A P P E A R A N C E S
 3
   FOR THE PLAINTIFF:
 4
       Mr. Randall Jackson
 5     Mr. Brad Smith
       Boies Schiller Flexner, LLP
 6     575 Lexington Avenue
       New York, New York 10022
 7     T: 212.446.2300
       F: 212.446.2350
 8     rjackson@bsfllp.com
 9  FOR THE DEFENDANTS, HELSINGE, INC.; HELSINGE, LTD;
    HELSINGE, HOLDINGS; HELSINGE, LLC;
10
       Mr. Alex M. Gonzalez
11     Holland & Knight
       701 Brickell Avenue
12     Suite 3300
       Miami, Florida 33131
13     T: 305.789.7666
       F: 305.789.7799
14     alex.gonzalez@khlaw.com
15  FOR THE WITNESS:
16     Mr. William A. Burck
       Quinn Emanuel
17     1300 I Street NW
       Suite 900
18     Washington, D.C. 20005
       T: 202.538.8120
19     F: 202.538.8100
       williamburck@quinnemanuel.com
20
    FOR THE DEFENDANT LUKOIL PAN AMERICAS:
21
       Mr. Michael P. Lennon, Jr.
22     Mayer Brown
       700 Louisiana Street
23     Suite 3400
       Houston, Texas 77001-2730
24     T: 713.908.2561
       F: 713.238.4613
25     mlennon@mayerbrown.com
```

## Page 3

```
 1  FOR DEFENDANT VITOL, INC.:
 2     Mr. Michael C. Kelso
       Susman Godfrey, LLP
 3     1000 Louisiana
       Suite 5100
 4     Houston, Texas 77002-5096
       T: 713.653.7887
 5     F: 713.654.6666
       mkelso@susmangodfrey.com
 6
    FOR DEFENDANTS GLENCORE, LTD.; GLENCORE ENERGY UK LTD.;
 7  SERGIO DE LA VEGA; GUSTAVO GABALDON AND LUIS ALVAREZ:
 8     Mr. Adam B. Schwartz (via telephone)
       Paul, Weiss, Rifkind, Wharton & Garrison LLP
 9     2001 K. Street, NW
       Washington, D.C.  20006-1047
10     T: 202.223.7341
       F: 202.204.7358
11     aschwartz@paulweiss.com
12
    ALSO PRESENT:
13     Mr. Zachary Christenson, Video Technician
14
15            * * * * *
16
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1            COREY PROLOGO,
 2  having been first duly sworn, testified as
 3  follows:
 4        THE VIDEOGRAPHER:   We are now
 5  on the record.  This begins videotape
 6  No. 1, in the deposition of Corey
 7  Prologo in the matter of PDVSA US
 8  Litigation Trust.  Today is May 15th,
 9  2018.  And the time is 2:59 p.m.  This
10  video deposition is being taken at the
11  request of -- I don't have that
12  information.  And the videographer is
13  Zachary Christenson.  The court
14  reporter is Lori Brazil.
15        Will counsel and all parties
16  present state their appearances and
17  whom they represent?
18        MR. JACKSON:  This is Randall
19  Jackson from Boies Schiller on behalf
20  of the plaintiff PDVSA US Litigation
21  Trust.  And I'm joined by Brad Smith,
22  also of Boes Schiller Flexner.
23        MR. BURCK:  This is William
24  Burck of Quinn Emanuel Urquhart &
25  Sullivan on behalf of the defendant,
```

## Page 5

```
 1  Trafigura Trading, LLC and the witness
 2  Corey Prologo.
 3        THE VIDEOGRAPHER:  Will the
 4  court reporter please swear in the
 5  witness?
 6        (Witness sworn in.)
 7            EXAMINATION
 8  QUESTIONS BY MR. JACKSON:
 9     Q.    Good morning, sir.
10     A.    Good morning.
11     Q.    Again, my name is Randall
12  Jackson.  I am an attorney for the plaintiff
13  at Boes Schiller Flexner.  I just want to go
14  over a few ground rules for you today with
15  regard to the deposition.  And if you have
16  any issue with any of them, please let me
17  know.  First of all, I want to inform you
18  that the court reporter is going to be
19  transcribing everything that you say during
20  the course of the deposition.
21        So you should please wait for
22  me to finish each one of my questions before
23  you begin to answer so that we have a clear
24  record.  I also want you to know that it's
25  important that you give only verbal answers
```



Page 6

1  to questions.  So it's impossible even though
2  this is a video deposition for us to have a
3  complete record if you nod your head or if
4  you voice assent with, you know, something
5  like, uh-huh.  If you can give a verbal
6  answer to every question, that will be
7  greatly appreciated.
8          Third, if you have any
9  questions or if there's anything that I have
10 said that you don't understand, please let me
11 know.  And I'll do my best to rephrase the
12 question in a more understandable way.  If
13 you don't tell me that you don't understand a
14 question, I will assume that you do
15 understand the question.
16         If at any time you want to take
17 a break, please let me know.  However, the
18 only thing I would ask is that if there is a
19 question pending at the time that you request
20 a break, I would ask you if you could
21 complete the question -- complete your answer
22 before we take the break.
23         In response to some of my
24 questions today, your attorney may state an
25 objection.  You're still required to answer

Page 7

1  the question if an objection is stated
2  generally.  So I would ask you to note that
3  the objection has been made and continue with
4  your answer to the question unless your
5  counsel expressly directs you not the answer
6  the question.
7          Do you understand that you --
8  do you understand everything that I have said
9  so far?
10 A.    Yes.
11 Q.    Do you have any issue with any
12 of that?
13 A.    No.
14 Q.    Do you understand you're sworn
15 to tell the truth at this deposition?
16 A.    Yes.
17 Q.    Is there any reason that you
18 may not be able to testify truthfully and
19 accurately today?
20 A.    No.
21 Q.    Have you taken any medication
22 or drugs including alcohol or any
23 prescription medication that can impair your
24 ability to think clearly or to testify
25 accurately and fully today?

Page 8

1  A.    No.
2  Q.    All right.  That's it.
3          Could you first tell me what is
4  your -- what is your job at Trafigura?
5  A.    Head of oil trading for
6  Trafigura Trading, LLC.
7  Q.    Can you explain in briefly
8  summary what is Trafigura is?
9  A.    Trafigura is a logistic and
10 trading company.
11 Q.    Can you explain in brief
12 summary what your responsibilities are as
13 head of oil trading for Trafigura?
14 A.    My responsibilities are to
15 manage the overall strategy for the U.S.
16 business.
17 Q.    How long have you had that job?
18 A.    Approximately two years.
19 Q.    How long have you been at
20 Trafigura overall?
21 A.    Approximately six years.
22 Q.    Where are you located
23 physically within the company?
24 A.    Right now, I'm in Houston.
25 Q.    How long have you been in

Page 9

1  Houston?
2  A.    Approximately two years.
3  Q.    Can you tell me about what your
4  other roles were before your current role?
5  A.    At Trafigura?
6  Q.    Sure.
7  A.    I started off in Geneva in
8  December of 2011.  And I was a gasoline
9  trader during that time.
10 Q.    How long did you -- when did
11 you start that role, what year?
12 A.    Early 2012.
13 Q.    How long did you have it?
14 A.    Approximately year and a half
15 for that role.
16 Q.    What did you do after that?
17 A.    In Geneva, also, the global
18 head of gasoline trading.  I had that role
19 for about three years.
20 Q.    And so what year was it that
21 that job ended?
22 A.    It was July or August of '16
23 when I took this current role.
24 Q.    So since July or August of
25 2016, you've had the current job that you're



Page 10

```
1    in right now?
2        A.   Correct.
3        Q.   Now, have you reviewed the
4    deposition notice that is dated April 28th,
5    2018 in connection with this deposition?
6        A.   I've been briefed by my
7    attorneys.
8        Q.   Okay.  I am going to mark as an
9    exhibit the deposition notice.  I'll mark
10   that as Exhibit 1.
11           MR. JACKSON:  I would ask the
12   court reporter to mark it.
13           (Exhibit No. 1 marked.)
14       Q.   (BY MR. JACKSON)  Have you seen
15   that document, sir?
16       A.   No.
17       Q.   So prior to today, you never
18   saw the actual deposition notice in this
19   case?
20       A.   Correct.
21       Q.   Now, you said that you've been
22   briefed by your attorneys about the
23   deposition notice.
24       A.   Correct.
25       Q.   And based on -- well, first of
```

Page 11

```
1    all, besides your attorneys, have you spoken
2    with anyone else about this deposition?
3        A.   No.
4        Q.   When you say you've been
5    briefed by your attorneys, who specifically
6    are you talking about?
7        A.   Internal and external counsel.
8        Q.   Can you give me their names?
9        A.   Internal counsel, James Powell.
10   External counsel, William Burck.
11       Q.   Now, is it your understanding
12   based on the conversations that you've had
13   with whomever you have spoken with of what
14   the topics are of today's deposition?
15       A.   Based on what my attorneys have
16   briefed me on, yes.
17       Q.   Do you understand you've been
18   designated as what's called a 30(b)(6)
19   witness?
20       A.   Yes.
21       Q.   Has it been explained to you
22   what that means?
23       A.   Yes.
24       Q.   What is your understanding of
25   generally what the topics are of the
```

Page 12

```
1    deposition that you were prepared for today?
2        A.   That there are alleged schemes
3    from the trust as relates to PDVSA.
4        Q.   Can you explain what you mean
5    by "alleged schemes from the trust"?
6        A.   So alleged -- alleged bribery
7    schemes as relates to business with PDVSA.
8        Q.   Okay.  Have you discussed with
9    anyone at Trafigura the subject of the
10   standing of the trust?
11       A.   No --
12       Q.   Okay.
13       A.   -- outside of client --
14   attorneys, obviously.
15       Q.   So you have discussed with
16   attorneys in preparation for your testimony
17   today?
18       A.   I've discussed the -- what
19   appears to be the exhibit with the
20   attorneys --
21       Q.   Okay.
22       A.   -- involves that.
23       Q.   So have you actually looked at
24   this -- the -- a copy of the document that's
25   at issue here?
```

Page 13

```
1        A.   No.
2            MR. BURCK:  Objection; asked
3    and answered.
4        Q.   (BY MR. JACKSON)  The question
5    is: Have you looked at a copy of it?
6        A.   No.
7        Q.   But you say that based on your
8    discussions, you believe that the topics that
9    are within the exhibit have been part of your
10   preparation for today?
11       A.   Basis -- the briefing?  Yes.
12       Q.   Can you explain to me what you
13   did to prepare for your deposition today?
14       A.   I was briefed by the attorneys
15   and basically learned what a deposition was.
16       Q.   Okay.  Did you examine any
17   documents in the possession of Trafigura?
18       A.   No.
19       Q.   Did you speak to anyone in
20   Trafigura's press department?
21       A.   No.
22       Q.   Did you speak to anyone --
23   well, let me back up.
24           Are there people at Trafigura
25   who are in charge of strategy?
```



Page 14

1    A.    Business strategy?
2    Q.    Yes.
3    A.    Yes.
4    Q.    Did you speak to any of them
5  about the deposition today?
6    A.    No.
7    Q.    Okay.  Did you speak to anyone
8  -- first of all, do you know what is the C
9  suite of Trafigura?
10   A.    I know what a C suite is.
11   Q.    What is a C suite?
12   A.    It's the executive level of a
13 company as far as as I understand it.
14   Q.    And where generally are the
15 executive level company officers located at
16 Trafigura physically?
17   A.    For Trafigura Trading, LLC,
18 it's based in Houston.  For Trafigura Group,
19 it's based largely in Geneva, yes.
20   Q.    In connection with your
21 testimony -- in connection with your
22 testimony today and your preparation for your
23 testimony, did you speak to any of the high
24 level executives at Trafigura?
25   A.    I have spoken to no one other

Page 15

1  than internal and external counsel about this
2  deposition or case.
3    Q.    Okay.  So the answer is no?
4    A.    Correct.
5    Q.    Okay.  I would like you to take
6  a look at Exhibit 1.  And --
7         MR. BURCK:  Do you have another
8    copy?
9         MR. GONZALEZ:  Do you have any
10   other copies?
11        MR. JACKSON:  Yeah, sure,
12   absolutely.  I have one other copy.
13   I'm sorry.  I didn't know how many
14   people were going to attend this.
15   It's the deposition notice just to be
16   clear.
17   Q.    (BY MR. JACKSON)  So if we take
18 a look at page 3 of the document, sir.
19   A.    Okay.
20   Q.    You'll see that it says
21 "Deposition Topics."  Correct?
22   A.    Yes.
23   Q.    And the first -- could you just
24 read aloud what the first deposition topic
25 is, just the -- just the -- before we get to

Page 16

1  the letters?
2    A.    "The standing of the trust to
3  pursue the claims asserted in the amended
4  complaint" -- do you want me to continue on?
5    Q.    Sure.
6    A.    Okay.  "Included, but not
7  limited to, the establishment of the trust,
8  including but not limited to, the reasons for
9  and the purpose of establishing the trust."
10   Q.    Okay.  Let's stop there.
11        You see then the deposition
12 topic, paragraph 1, there's reference to the
13 amended complaint?
14   A.    Yes.
15   Q.    Do you know what the amended
16 complaint refers to?
17   A.    Not specifically.
18   Q.    Okay.  Have you examined any
19 complaint, legal complaint, to your
20 knowledge, in this case?
21   A.    No.
22   Q.    To your knowledge, has anyone
23 shared with you the details of what's in the
24 amended complaint in any summary fashion?
25   A.    No.

Page 17

1    Q.    Now, in connection with the --
2  let me ask you something, can you read
3  paragraph B in Section 1?
4    A.    Starting with "The Trust
5  Agreement"?
6    Q.    Yes.
7    A.    "The Trust Agreements and
8  documents referenced therein engagement --
9  "example, engagement letters, including but
10 not limited to, the dates on which the Trust
11 Agreement and all other documents referenced
12 in the Trust Agreement and all prior versions
13 of the same were signed and/or notarized by
14 or on behalf of each of the signatories."
15   Q.    Okay.  Now, does your company
16 maintain a centralized document management
17 system?
18   A.    Not that I'm aware of.  They
19 may.  But I'm not -- that's not in my job
20 description to know that.
21   Q.    Sure.  Do you know as a general
22 matter where communications on behalf of the
23 company are stored at the company?
24   A.    No.
25   Q.    Have you spoken with anyone at



Page 18

1  the company about where communications are
2  stored?
3      A.    No.
4      Q.    Have you reviewed any
5  communications of the company in connection
6  with your preparation for your testimony
7  today?
8      A.    Can you repeat that?
9      Q.    Sure.  Have you reviewed any
10 communications at the company in connection
11 with your preparation for your testimony
12 today?
13     A.    No.
14     Q.    Okay.  So you haven't looked at
15 any E-mails?
16     A.    No.
17     Q.    You haven't looked at any text
18 messages?
19     A.    No.
20     Q.    Have you spoken with anyone at
21 the company who could tell you whether or not
22 any E-mails exist that would be relevant to
23 the formation of the trust in this case?
24     A.    No.
25          MR. GONZALEZ:  You mean other

Page 19

1  than counsel.  Right?
2          MR. JACKSON:  I'm just asking a
3  question.  I would ask you not to --
4          MR. GONZALEZ:  I'll make an
5  objection.  To the extent you're
6  seeking attorney-client information,
7  I'll object.
8          MR. JACKSON:  Objection noted.
9  Thank you.
10     Q.    (BY MR. JACKSON)  Have you
11 spoken with anyone at the top to tell you
12 whether or not any E-mails exist that would
13 be relevant to the formation of the trust in
14 this case?
15          MR. GONZALEZ:  Same objection.
16          MR. BURCK:  You can answer.
17     A.    No.
18     Q.    (BY MR. JACKSON)  Your company
19 operates on a -- on more than one continent.
20 Right?
21     A.    Yes.
22     Q.    How many continents does your
23 company operate on?
24          MR. BURCK:  Objection.  The
25 scope of this deposition is limited by

Page 20

1  the court to the standing of the
2  trust.  I fail to understand what the
3  import of how many continents
4  Trafigura works on.
5          MR. GONZALEZ:  Same objection.
6          MR. JACKSON:  Objection noted.
7  I'll get there.
8      Q.    (BY MR. JACKSON)  How many
9  continents does it operate on?
10          MR. BURCK:  Same objection.
11          You can answer.
12     A.    Trafigura Trading, LLC, which I
13 work for operates in the U.S. and the broader
14 Trafigura operates on multiple continents,
15 three to four.
16     Q.    (BY MR. JACKSON)  Okay.  Those
17 continents include South America?
18     A.    Yes.
19     Q.    Correct?  It includes Europe?
20     A.    Yes.
21     Q.    It includes North America?
22     A.    Trafigura Trading, LLC in North
23 America.
24     Q.    Right.  And it includes Asia.
25 Correct?

Page 21

1      A.    Yes.
2      Q.    Now, do the different
3  components of Trafigura communicate between
4  their offices and locations and different
5  parts of the world?
6          MR. BURCK:  Objection, the
7  same.  Not sure how this remotely
8  relates to the scope of this
9  deposition.
10          MR. GONZALEZ:  Same objection.
11 Move to strike the entire line of
12 questioning.
13          MR. JACKSON:  Objection noted.
14     Q.    (BY MR. JACKSON)  You can
15 answer.
16          MR. BURCK:  Actually, I'll tell
17 you you can answer.  You can answer
18 that.
19          MR. JACKSON:  Thanks.
20     A.    Can you repeat the question?
21     Q.    Yeah, sure.
22          MR. JACKSON:  And the objection
23 is noted.
24     Q.    (BY MR. JACKSON)  The question
25 is: Do different components of Trafigura



6 (Pages 18 to 21)

1  communicate between their offices and
2  locations in different parts of the world?
3      A.   Yes.
4      Q.   What is the general manner in
5  which they communicate?
6          MR. BURCK:  Same objection.
7          You can answer.
8      A.   Manner meaning what method do
9  we communicate --
10     Q.   (BY MR. JACKSON) Yes?
11     A.   -- phone, texts, these things?
12     Q.   Yes, exactly.
13     A.   Typically via phone.
14         MR. LENNON:  Could I -- before
15  you ask a question, I assume an
16  objection by one is an objection by
17  all, we don't all have to join?
18         MR. JACKSON:  Absolutely.  I
19  would consider an objection --
20         MR. GONZALEZ:  I'm glad you
21  said that.  That way, we can avoid it.
22         MR. JACKSON:  Yeah, thank you.
23  Thank you.  We will consider an
24  objection by one to be an objection by
25  all.  Thank you.

1      Q.   (BY MR. JACKSON) I think your
2  answer a moment ago was that you said
3  typically by phone.
4      A.   Uh-huh.
5      Q.   Is it also the case that there
6  are E-mails sent within the company?
7      A.   Yes.
8      Q.   Does the company maintain any
9  system for storing E-mail communications
10  between its offices?
11     A.   Not to my knowledge.
12         MR. BURCK:  Objection -- let me
13  -- objection, again, scope.
14         You can answer.
15     A.   Not to my knowledge.
16     Q.   (BY MR. JACKSON) Does the
17  company maintain any system for storing
18  E-mail communications from its offices to
19  individuals who are outside of its offices?
20         MR. BURCK:  Objection -- same
21  objection of scope.
22         You can answer.
23     A.   Not to my knowledge.
24     Q.   (BY MR. JACKSON) When you say
25  not to your knowledge, do you mean that your

1  answer is you don't believe that is the case?
2  Or do you mean that you don't know whether or
3  not such a system exists?
4      A.   I do not --
5          MR. GONZALEZ:  Outside the
6  scope.
7      Q.   (BY MR. JACKSON) You can
8  answer.
9          MR. BURCK:  I have a standing
10  objection to this entire line.
11         MR. JACKSON:  Yeah, I will
12  consider no objections on this topic
13  to the scope waived.  And we can just
14  note there's a standing objection to
15  scope.
16         MR. BURCK:  Okay.
17     Q.   (BY MR. JACKSON) So you can
18  answer the question.  The question, I'll
19  repeat, is:  Does your company maintain any
20  system for storing E-mails from individuals
21  in its offices to individuals who are outside
22  of the company?
23     A.   Not to my knowledge.
24     Q.   Okay.  Now the question I'm
25  asking you is:  When you say not to my

1  knowledge, do you mean that you just don't
2  know?  Or do you mean that it is your belief
3  that such a system does not exist?
4      A.   I genuinely don't know.
5      Q.   Okay.  Have you done anything
6  to try to determine the answer to that
7  question in preparation for your testimony
8  today?
9      A.   No.
10     Q.   Okay.  One of the things -- do
11  you -- are you familiar with your country's
12  -- I'm sorry -- your company's operations in
13  Venezuela?
14     A.   No.
15     Q.   Okay.  You're aware of the fact
16  that your company does operate in Venezuela.
17  Correct?
18     A.   No.
19     Q.   When -- now, you work as head
20  of oil trading?
21     A.   For Trafigura Trading, LLC, in
22  the U.S., yes.
23     Q.   What is the geographic scope of
24  your duties in terms of the oil trading that
25  is done by Trafigura?



Page 26

1    A.   U.S. domestic business.
2    Q.   Okay.
3         MR. BURCK:  Just a standing
4    objection to the use of the word
5    "Trafigura."  Trafigura is an
6    imprecise term.  Trafigura Trading,
7    LLC is the 30(b)(6) witness here
8    today, not Trafigura.
9         But you can answer.
10        MR. JACKSON:  Great.
11   Q.   (BY MR. JACKSON)  So for
12   Trafigura Trading, LLC, are you aware of
13   whether or not any of your trading, any of
14   your operations implicates oil purchased in
15   Venezuela?
16   A.   So repeat it one more time.
17   Q.   Sure.  For your company,
18   Trafigura Trading, LLC, are you aware of
19   whether or not any of your trading implicates
20   oil purchased in Venezuela?
21   A.   None of our trading deals with
22   Venezuela.
23   Q.   And what countries does your
24   trading deal with?
25   A.   The U.S.

Page 27

1    Q.   Only oil from the U.S.?
2    A.   Yes.
3    Q.   Okay.
4    A.   As relates to domestic-focused
5    business.  We do import and we export.  But
6    it is all as relates to our U.S. domestic
7    business.
8    Q.   Now, when you say you do import
9    and export, where are you importing from?
10   A.   The various countries depending
11   on price.
12   Q.   Do any of those countries
13   include Venezuela?
14   A.   We don't know until we
15   purchase -- purchase the oil.
16   Q.   Are you aware of whether any
17   oil has been purchased in the past from
18   Venezuela?
19   A.   By Trafigura Trading, LLC, no
20   is the answer.
21   Q.   The answer you don't --
22   A.   It has not been purchased from
23   Venezuela by Trafigura Trading, LLC.
24   Q.   Okay.  Now, are you aware of
25   whether or not anyone in your company has

Page 28

1    communicated with anyone in any component of
2    the Venezuelan government?
3    A.   I am not aware.
4    Q.   Have you spoken with anyone at
5    your company to try to determine whether
6    anyone has communicated with anyone in any
7    component of the Venezuelan government?
8    A.   No.
9    Q.   Are you familiar with the
10   National Assembly in Venezuela?
11   A.   No.
12   Q.   Are you familiar with the
13   Venezuelan Parliament?
14   A.   No.
15   Q.   Are you familiar with any
16   aspects of the Venezuelan governmental
17   structure?
18   A.   No.
19   Q.   Have you endeavored to
20   determine whether anyone at your company is
21   familiar with any aspects of the components
22   of --
23        (Clarification requested by the
24   reporter.)
25   Q.   (BY MR. JACKSON)  Let me

Page 29

1    restart the question.
2         Have you endeavored to
3    determine whether anyone at your company is
4    familiar with any aspects of the Venezuelan
5    governmental structure?
6    A.   No.
7         MR. GONZALEZ:  Again, to the
8    extent it's not clear, I'll object to
9    this whole line of questions in regard
10   to standing --
11        MR. JACKSON:  That's correct.
12        MR. GONZALEZ:  -- unless you
13   can articulate why.
14        MR. JACKSON:  Thank you.
15   Q.   (BY MR. JACKSON)  Now, are you
16   aware of whether the Venezuelan National
17   Assembly or any other component of the
18   Venezuelan government has made any public
19   pronouncements related to the trust in this
20   case and its standing?
21   A.   No.
22   Q.   Have you looked into that topic
23   at all in preparation for your testimony
24   today?
25   A.   No.



Page 30

1      Q.    Are you aware of whether anyone
2   at your company has looked into that topic?
3      A.    No.
4      Q.    Have you spoken with anyone at
5   your company to try to determine whether
6   anyone at your company is familiar with
7   whether the Venezuelan National Assembly or
8   any other component of the Venezuelan
9   government has made any public pronouncements
10  related to the trust in this case?
11     A.    No.
12     Q.    Are you aware of whether or not
13  your company has conducted any analysis of
14  the standing of the trust in this case?
15         MR. BURCK:  Objection to the
16     extent that it calls for
17     communications between attorney and
18     client, I'm directing him not to
19     answer that question.
20         MR. JACKSON:  I'm not asking
21     for any privileged communications.
22     Q.    (BY MR. JACKSON)  With that
23  objection noted and that qualification, can
24  you answer the question?
25     A.    Do you mind repeating?

Page 31

1      Q.    Yes.  Thank you.
2         Are you aware of whether or not
3   anyone at your company has conducted any
4   analysis of the standing of the trust in this
5   case?
6         MR. BURCK:  Except for lawyers.
7      A.    No.
8      Q.    (BY MR. JACKSON)  No?
9      A.    No.
10  Okay.  And have you taken any steps to
11  attempt to determine the answer to that
12  question?
13     A.    No.
14     Q.    Have you ever seen the Trust
15  Agreement that is at issue in this case?
16     A.    No.
17     Q.    Have you discussed the Trust
18  Agreement with anyone in preparation for your
19  testimony today?
20     A.    Excluding attorneys, no.
21     Q.    Does your company have a
22  compliance department?
23         MR. BURCK:  Objection; beyond
24     scope of the deposition.
25         But you can answer.

Page 32

1      A.    Yes.
2      Q.    (BY MR. JACKSON)  Is a
3   component of the compliance department's duty
4   helping individuals at the company to
5   understand what their responsibilities are
6   with regard to dealing with foreign
7   countries?
8         MR. BURCK:  Same objection.
9         You can answer.
10     A.    Yes.
11     Q.    (BY MR. JACKSON)  Have you
12  spoken with anyone in the compliance
13  department at your company about whether or
14  not any analysis has been done regarding the
15  trust in this company and its standing?
16         MR. BURCK:  Objection, two
17     parts:  One, beyond the scope; second,
18     asked and answered.
19     Q.    (BY MR. JACKSON)  You can
20  answer.
21     A.    No.
22     Q.    Are you aware by any means of
23  whether or not the compliance department at
24  your company has done any analysis regarding
25  the standing of the trust in this country --

Page 33

1   in this litigation?
2      A.    No.
3      Q.    If you could focus your
4   attention on Exhibit 1 again.  I would ask
5   you to turn your attention to the fourth page
6   of this.  I'd ask you to read aloud paragraph
7   4 under "Deposition Topics."
8      A.    Starting with "Any
9   communications"?
10     Q.    Yes, sir, please.
11     A.    "Any communications concerning
12  whether or not the trust has authority or
13  standing to pursue in the contributed claims
14  against the defendants in the lawsuit
15  including any issue concerning delegation of
16  authority or authorization or approval by
17  PDVSA, audit letters or other opinions
18  prepared by or on behalf of PDVSA or any
19  Venezuelan government official or ministry
20  concerning whether the trust agreement itself
21  and/or any of the purported assignments in
22  the Trust Agreement are valid or invalid."
23     Q.    Okay.  Now, did you take any
24  steps in your preparation today to be
25  prepared to respond to questions on that

Page 34

1  topic?
2      A.   No.
3      Q.   Do you know whether Trafigura
4  Trading, LLC, has any documents in its
5  possession that are responsive to that topic?
6          MR. BURCK:  Objection to the
7      form of the question.
8          Go ahead.  You can answer.
9      A.   No.
10     Q.   (BY MR. JACKSON) Do you know
11  whether your company has any documents that
12  are responsive to that topic?
13         MR. BURCK:  Objection; asked
14     and answered.
15     A.   No.
16     Q.   (BY MR. JACKSON) Have you
17  taken any steps today to determine whether or
18  not there are in your preparation for your
19  testimony today to determine whether or not
20  there are any documents at your company that
21  are responsive to that topic?
22     A.   No.
23     Q.   Have you spoken with anyone at
24  your company to try to determine whether or
25  not there are any documents that are

Page 35

1  responsive to that topic?
2          MR. BURCK:  Objection to the
3      extent that it calls for communication
4      between attorney-client, either
5      outside or in-house counsel, I direct
6      you to not answer that question.
7      Q.   (BY MR. JACKSON) With the
8  qualification that I'm not seeking any
9  privileged information or I'm not asking
10  about any attorney-client communications, can
11  you answer my question?
12     A.   I'm sorry.  Do you mind
13  repeating again?
14     Q.   Sure.  My question is:  Have
15  you spoken with anyone at your company to try
16  to determine whether or not there are any
17  documents that are responsive to that topic,
18  the subject 4 we just looked at?
19     A.   No.
20     Q.   Can you please read aloud on
21  page 5 of the deposition notice, the fifth
22  paragraph?
23     A.   "Any consideration,
24  authorization, or approval, or lack thereof,
25  by any official or agent of PDVSA, the

Page 36

1  Venezuelan government, or any Venezuelan
2  agency including the ministry of People's
3  Petroleum Power or the Procurator General
4  concerning the establishment of the trust or
5  the transfer, assignment, delivery, or scope
6  of the contributed claims to the trust."
7      Q.   Do you know what the ministry
8  of the People's Petroleum Power is?
9      A.   No.
10     Q.   Do you know what the Procurator
11  General is?
12     A.   No.
13     Q.   Do you know which reference
14  here when we talk -- where references
15  contributed claims to the trust?
16     A.   No.
17     Q.   In your preparation today, did
18  you take any steps to try to prepare to be
19  responsive to questions on that topic?
20         MR. BURCK:  Objection to the
21     extent it calls for discussion or
22     revelation of communication between
23     your client -- I mean, attorney and
24     client, I am going to direct you not
25     to answer that question.

Page 37

1      Q.   (BY MR. JACKSON) Apart from
2  any client -- attorney-client communications,
3  can you please answer my question?
4      A.   The answer is no.
5      Q.   Can I ask you to read paragraph
6  7 of this document?
7      A.   Yup.  "Any communication
8  concerning the negotiations, execution, or
9  notarization of the Trust Agreement and the
10  dates in which the Trust Agreement including
11  any exhibit, attachments, addenda, annexes,
12  side agreements or amendments to the Trust
13  Agreement or any prior versions of the same
14  was, were, signed and/or notarized in whole
15  or in part."
16     Q.   Putting aside attorney-client
17  communications, did you take any steps in
18  your preparation today to prepare to respond
19  to questions on that topic?
20     A.   No.
21     Q.   Are you aware of whether or not
22  there are any documents in the possession of
23  your company that are relevant to that topic?
24     A.   No.
25     Q.   Are you aware of whether or not



Page 38

```
1    there are any E-mails or records of other
2    communications including notes of phone calls
3    at your company that are responsive to that
4    topic?
5        A.    No.
6        Q.    By the way, do you know whether
7    when phone calls are made at your company
8    related to official business of the company,
9    whether it is the practice or policy of your
10   company, to maintain notes of those phone
11   calls?
12       A.    Meaning the individuals on the
13   call taking notes?
14       Q.    Sure.
15       A.    No.
16       Q.    You don't know?
17       A.    No.
18       Q.    Have you reviewed any notes of
19   any phone calls in connection with your
20   preparation today?
21       A.    No.
22       Q.    Can you read topic 8, please?
23       A.    "Any communication concerning
24   the selection, appointments, replacement,
25   substitution, removal, or resignation of any
```

Page 39

```
1    trustee of the trust or any of the punitive"
2    -- "or punitive trustees identified in any
3    prior versions of the Trust Agreement,
4    whether or not such persons ultimately
5    actually become trustees of the trust."
6        Q.    Do you know whether there have
7    been any communications at your company
8    related to that subject?
9        A.    No.
10       Q.    Have you taken any steps to try
11   to determine the answer to that question?
12       A.    No.
13       Q.    Can we look at topic No. 10?
14       A.    Yes.
15       Q.    Could you read that aloud,
16   please?
17       A.    "Any communications concerning
18   the authority or lack of authority of PDVSA
19   or any other entity or individual to direct
20   litigation strategy, to hire or replace
21   litigation counsel, to enter into settlement
22   agreements or to voluntarily dismiss or
23   otherwise compromise claims in the lawsuit."
24       Q.    Are you aware of any -- of
25   whether there are any documents at your
```

Page 40

```
1    company that are responsive to that topic?
2        MR. BURCK:    Objection.    To the
3    extent that it calls for disclosure of
4    attorney-client communication, I'll
5    direct you not to answer that.
6        Q.    (BY MR. JACKSON)  Expecting
7    attorney-client communications, are you aware
8    of whether there are any communications at
9    your company that are responsive to that
10   topic?
11       A.    No.
12       Q.    Have you taken any steps to try
13   to determine whether there are any such
14   documents?
15       A.    No.
16       Q.    Have you reviewed any of the
17   filings in this litigation that relate to
18   standing?
19       A.    No.
20       Q.    Have you reviewed the
21   transcripts of any of the court conferences
22   in this case that relate to standing?
23       A.    No.
24       Q.    Do you feel like you have an
25   understanding of what the standing issue is
```

Page 41

```
1    in this case?
2        A.    Can you define "the standing
3    issue"?
4        Q.    No.  I'm just asking you, as
5    you sit here today, do you believe you have
6    an understanding of what the standing issue
7    is in this case?
8        A.    Yes.
9        Q.    And is your understanding based
10   on communications with anyone apart from
11   counsel?
12       A.    No.
13       Q.    Is it based on any review of
14   any communications apart from communication
15   with counsel?
16       A.    No.
17       Q.    When did you first become aware
18   of this -- of this matter?
19       MR. BURCK:    Objection.    Just a
20   more precise question.    Which matter?
21       MR. JACKSON:    Sure.    Let me
22   withdraw the question.
23       Q.    (BY MR. JACKSON)  When did you
24   first become aware of the litigation that's
25   at issue today?
```

MAGNA
LEGAL SERVICES

Page 42

```
 1        A.    A few months ago on a press
 2   release.
 3        Q.    After you saw that press
 4   release, did you have conversations with
 5   anyone at the company regarding the
 6   litigation apart from your -- apart from the
 7   attorneys?
 8        A.    No.
 9        Q.    Have you seen any media
10   coverage or press regarding the trust and its
11   standing?
12        A.    No.
13        Q.    Has anyone at the company
14   discussed any media coverage regarding the
15   trust and its standing with you?
16        A.    No.
17             MR. BURCK:  Except for
18   attorneys.  You can answer except for
19   attorneys.
20        A.    Yeah.  Except for attorneys,
21   no.
22        Q.    (BY MR. JACKSON)  Have you ever
23   -- in your personal capacity, do you do any
24   work with PDVSA?
25        A.    No.
```

Page 43

```
 1        Q.    Have you ever done any work
 2   with PDVSA?
 3        A.    No.
 4        Q.    Do you know whether anyone at
 5   your company does any work with PDVSA?
 6        A.    No.
 7        Q.    Have you taken any steps to try
 8   to learn that?
 9        A.    No.
10        Q.    Have you taken any steps to try
11   to learn who, if anyone, at your company will
12   be responsible for communications with PDVSA?
13        A.    No.
14        Q.    Is there a person at your
15   company with centralized authority over
16   communications with individuals in foreign
17   governments?
18        A.    No.
19        Q.    Have you -- you're not -- when
20   you say no, do you mean that the answer is no
21   or do you mean that you don't know the answer
22   to that question?
23        A.    The answer is no.
24        Q.    And how is it that you know
25   that?
```

Page 44

```
 1        A.    In Trafigura Trading, LLC,
 2   there is no one in that company that is
 3   designated to deal with governments.
 4        Q.    Can you explain to me the
 5   corporate relationship of Trafigura Trading,
 6   LLC to its parent?
 7             MR. BURCK:  Objection; beyond
 8   the scope.
 9             I'll let you answer.
10             MR. JACKSON:  Thank you.
11        A.    Trafigura Trading, LLC, has a
12   direct parent in the U.S., Trafigura U.S.,
13   Inc.  Above that is Trafigura Group PTE.
14        Q.    (BY MR. JACKSON)  And you are
15   an employee only of Trafigura Trading, LLC?
16        A.    Yes.
17        Q.    Are you familiar with a company
18   known as Helsinge?
19        A.    No.
20        Q.    Have you ever heard of
21   Helsinge?
22        A.    No.
23        Q.    Are you familiar with an
24   individual named Francisco Murillo?
25        A.    No.
```

Page 45

```
 1        Q.    Are you familiar with an
 2   individual named Leonardo de Carroll?
 3        A.    No.
 4             MR. GONZALEZ:  I'll object.
 5   All those questions have nothing to do
 6   with standing.
 7             MR. JACKSON:  I'll note for the
 8   record that those were preparatory
 9   questions to questions that I would
10   have about standing that are not
11   relevant if the witness has no
12   familiarity.
13        Q.    (BY MR. JACKSON)  Now, you made
14   reference today to attorneys for Trafigura.
15   And I believe you said that there are two
16   Trafigura attorneys that you communicated
17   with in connection with your preparation for
18   your testimony today.
19        A.    I gave one name earlier which
20   was James Powell, as internal counsel; and
21   external counsel, William Burck.
22        Q.    Are you -- do you know whether
23   attorneys on behalf of Trafigura have had any
24   communications regarding standing with anyone
25   outside of the company?
```

MAGNA
LEGAL SERVICES

Page 46

1    MR. BURCK: Objection. Calls
2  clearly for attorney-client
3  communications.
4    I am going to direct you not to
5  answer that question.
6    Q.   (BY MR. JACKSON) Let me make
7  the express qualification that I would like
8  you to except, any privileged communications.
9  And the question that I am asking you is: Do
10  you know whether any attorneys on behalf of
11  your company have had any communications
12  regarding the standing of the trust in this
13  case with anyone outside of the company?
14    MR. BURCK: Same objection.
15    You can answer to the extent
16  that you have learned such information
17  not from attorneys.
18  A.   The answer is no.
19    MR. JACKSON: Okay. I am going
20  to -- I'm just going to just quibble a
21  bit with the qualification that he can
22  answer the question to the extent that
23  he has learned it, such information
24  not from attorneys.
25    Q.   (BY MR. JACKSON) And I am

Page 47

1  going to ask you if whether or not from any
2  source you have learned of communications on
3  behalf of Trafigura's attorneys,
4  nonprivileged communications, to individuals
5  related to the standing of the trust outside
6  of the company?
7    MR. BURCK: Same objection.
8  I'm directing you not to answer. He's
9  not a lawyer. If you want to define
10  what you mean by "nonprivileged" in
11  some way that would be understandable
12  to him as a nonlawyer, then
13  potentially it could be answered.
14  Otherwise, I'm directing him not to
15  answer because, again, it could very
16  well call for communications between
17  counsel and client.
18    MR. JACKSON: Your objection is
19  noted. Let me --
20    MR. LENNON: Also potentially
21  calls for communication between
22  counsel and other counsel that have a
23  common interest privilege.
24    MR. BURCK: Also true.
25    Q.   (BY MR. JACKSON) Okay. Let me

Page 48

1  just ask a question that precedes that
2  question.
3    Have you taken -- without
4  asking you what the nature of the
5  communications are, I'm just asking you:
6  Have you taken any steps to try to determine
7  whether there are nonprivileged
8  communications that have been made by
9  attorneys for Trafigura to individuals
10  outside of the company?
11    MR. BURCK: Same objection.
12  Again, unless you can define what you
13  mean by "nonprivileged."
14    MR. JACKSON: Would just
15  asking, are you directing him not to
16  answer that question?
17    MR. BURCK: No. He can answer
18  the question but it doesn't -- I'll
19  just say it's not a waiver of the
20  prior litany of objections. I don't
21  frankly understand the question. But
22  if you want to ask the question, I am
23  going to object to form, object to
24  scope, object to relevance but he can
25  answer.

Page 49

1    Q.   (BY MR. JACKSON) Let me state
2  the question again. Okay?
3    Again, without asking you about
4  the nature of any of their communications,
5  the question I'm asking you is: Have you
6  taken any steps to try to determine whether
7  there are nonprivileged communications that
8  have been made by attorneys for Trafigura to
9  individuals outside of the company related to
10  the standing of the trust in this case?
11    MR. BURCK: Same objection.
12    But you can answer.
13  A.   No.
14    Q.   (BY MR. JACKSON) Okay. Thank
15  you.
16    MR. JACKSON: Would everybody
17  be all right if we took a five-minute
18  break at this point?
19    THE VIDEOGRAPHER: We are off
20  the record. The time is 3:45 p.m.
21    (Recess was taken.)
22    THE VIDEOGRAPHER: Okay. We
23  are back on the record. The time is
24  3:53 p.m.
25    Q.   (BY MR. JACKSON) Now, during

MAGNA
LEGAL SERVICES

Page 50

1  our brief recess without getting into any of
2  the subjects of your communications, did you
3  have any communications with your attorney?
4      A.  Yes.--
5      Q.  Now --
6      A.  To be clear, not pertaining to
7  this at all.
8      Q.  Thank you.  Now, we went
9  through a number of different topics with
10  regard to the specific notice that's the
11  subject of Exhibit 1.  Correct?
12     A.  Yes.
13     Q.  And it is your understanding
14 that you are the designated 30(b)(6) witness
15 for each of the topics that we discussed.
16 Correct?
17     A.  For Trafigura Trading, LLC,
18 yes.
19     Q.  Are there any aspects of your
20 preparation for your testimony today that I
21 have -- that my questions are not covered?
22     A.  Can you repeat the question?
23        MR. BURCK:  Objection to form.
24     Q.  (BY MR. JACKSON) Let me ask it
25 in a little bit less of a vague fashion.

Page 51

1  I've asked you a number of specific questions
2  about the nature of your preparation for your
3  testimony today.
4      A.  Yes.
5      Q.  Is there anything about your
6  preparation for your testimony today that you
7  think has not been addressed that's
8  important?
9      A.  No.
10     Q.  What is the total amount of
11 time that you spent preparing for the
12 deposition testimony today?
13     A.  One to two hours.
14     Q.  Did any employee, agent, or
15 representative of Trafigura have any
16 communications that relate to the standing of
17 the trust to pursue these claims?
18        MR. BURCK:  Objection to the
19 extent that it calls for disclosure of
20 communication of attorney-client,
21 instruct him not to answer.  If it
22 does not call for that, he can answer.
23     A.  Can you repeat?
24     Q.  (BY MR. JACKSON) Yes.
25        Did any employee or agent or

Page 52

1  representative of Trafigura have any
2  communications that relate to the standing of
3  the trust to pursue the claims of this
4  litigation?
5        MR. BURCK:  Objection to the
6  form.
7        You can answer, if you can.
8        MR. LENNON:  Common interest
9  objection as well.
10        (Clarification requested by the
11 reporter.)
12        MR. LENNON:  Common interest
13 objection as well.
14     Q.  (BY MR. JACKSON) You can
15 answer the question?
16     A.  Not to my knowledge.
17     Q.  When you say not to your
18 knowledge, do you mean that you don't know?
19 Or you believe that there is no such
20 communication?
21     A.  I believe there is no such
22 communications.
23     Q.  What is that based on?
24        MR. BURCK:  Objection to the
25 extent that it calls for

Page 53

1  communications between
2  attorney-client, I am going to direct
3  you not to answer the question.
4      Q.  (BY MR. JACKSON) Apart from
5  communications with your attorneys, have you
6  done anything to try to determine the answer
7  to that question?
8      A.  No.
9      Q.  Did any employee or agent or
10 representative of Trafigura do any
11 investigation concerning the standing of the
12 trust in connection with the litigation in
13 this case?
14        MR. BURCK:  Same objection.  To
15 the extent that it calls for
16 attorney-client communications, I'm
17 directing him not to answer that.  So
18 he can answer to the extent -- he
19 knows something relating to your
20 question if it does not come from
21 attorneys.
22     Q.  (BY MR. JACKSON) Go ahead.
23 You can answer?
24     A.  No.
25     Q.  So the answer is no?



Page 54

1      A.    The answer is not to my
2  knowledge, I believe it not to be the case.
3      Q.    And what is that based on
4  again?
5           MR. BURCK:  Again, same
6      objection.  To the extent it calls for
7      communication between attorney and
8      client, he's directed not to answer.
9      A.    It's a not-to-my-knowledge
10 answer.
11     Q.    (BY MR. JACKSON)  Have you
12 taken any steps in preparation for your
13 testimony today to determine what the answer
14 to that question is?
15     A.    No.
16     Q.    Now, did any employee, agent,
17 or representative of Trafigura have any
18 communication or conduct any investigation
19 concerning the negotiation, execution, or
20 notarization of the trust agreement in this
21 case?
22          MR. BURCK:  Objection, same,
23     attorney-client.  I direct you not to
24     answer if it calls for attorney-client
25     communications.  Otherwise, you can

Page 55

1      answer the question.
2      A.    Not to my knowledge.
3      Q.    (BY MR. JACKSON)  Did you take
4  any steps in order to try to determine what
5  the answer to that question was?
6      A.    No.
7      Q.    Did any employee, agent, or
8  representative of Trafigura have any
9  communications or do any investigation
10 concerning possible approvals, licenses,
11 consents or other authorizations concerning
12 the trust and its standing in this
13 litigation?
14          MR. BURCK:  Same objection.
15     To the extent that it does not
16     call for attorney-client
17     communications, you can answer.
18     A.    Not to my knowledge.
19     Q.    (BY MR. JACKSON)  Did you take
20 any steps to try to determine the answer to
21 that question?
22     A.    No.
23     Q.    Have you reviewed any expert
24 opinions in this case that may have been
25 prepared by Trafigura or on behalf of

Page 56

1  Trafigura?
2      A.    No.
3      Q.    Are you familiar with whether
4  there are any expert opinions that have been
5  prepared on behalf of Trafigura or by
6  Trafigura?
7           MR. BURCK:  Objection; form.
8      Objection to the extent that it calls
9      for disclosure of attorney-client
10     communications, you're directed not
11     to answer.  But to the extent it does
12     not, you may.
13     A.    No.
14     Q.    (BY MR. JACKSON)  So you're not
15 aware?
16     A.    Correct.
17     Q.    Did you take any steps to
18 determine whether or not there are expert
19 opinions that exist that have been prepared
20 by or on behalf of Trafigura related to
21 standing in this case?
22     A.    No.
23     Q.    Have you taken any steps to
24 determine whether anyone at your company
25 apart from attorneys engaged in privileged

Page 57

1  communications has had any communications
2  with anyone at any of the other defendant
3  companies?
4      A.    No.
5      Q.    Do you know what the other
6  defendant companies are in this litigation?
7      A.    I know that Lukoil was
8  mentioned, but I don't know the comprehensive
9  list.
10     Q.    Have you studied the
11 comprehensive list at all?
12     A.    No.
13     Q.    Has anyone shown you the
14 comprehensive list?
15     A.    No.
16     Q.    Are you familiar with a company
17 called Trafigura AG?
18     A.    Yes.  It was formerly Trafigura
19 Trading, LLC.  It's the same company.
20     Q.    What about Trafigura Beheer BV?
21     A.    Yes.
22     Q.    What is that company?
23     A.    That is a company in the
24 overall corporate structure.
25     Q.    What is the relation between



Page 58

1  your company and that company?
2        MR. BURCK:  Objection, scope.
3        But you can answer.
4     A.   It is in the parental
5  structure.  Exactly where it sits, I don't
6  know.
7     Q.   (BY MR. JACKSON)  Have you
8  taken any steps to determine whether or not
9  there has been any communication that was not
10 made by an attorney, a privileged
11 communication, between anyone at your company
12 and any of its parents or affiliates like
13 Trafigura AG or Trafigura Beheer related to
14 the issue of the standing of the trust in
15 connection with this litigation?
16    A.   No.
17    Q.   Just one moment, please.
18        Do you know whether or not your
19 company has a document retention policy?
20        MR. BURCK:  Objection, beyond
21 the scope.
22        You can answer.
23    A.   No.
24    Q.   (BY MR. JACKSON)  Have you
25 spoken with anyone about whether there's a

Page 59

1  document retention policy?
2        MR. BURCK:  Objection, beyond
3  the scope.  And to the extent that it
4  calls for communication between
5  attorney-client, I direct you not to
6  answer the question.  If you know
7  about something related to a document
8  retention policy beyond -- except from
9  the lawyers, you can answer the
10 question.
11    A.   No.
12    Q.   (BY MR. JACKSON)  Do you know
13 how far back E-mails are maintained at your
14 company?
15        MR. BURCK:  Objection, beyond
16 the scope.  Asked and answered.
17        You can answer.
18    A.   No.
19    Q.   (BY MR. JACKSON)  Have you
20 taken any steps to try to determine whether
21 or not there are any documents that may have
22 existed which no longer exist at your company
23 as a result of any document or E-mail
24 retention policies that relate to the subject
25 of standing?

Page 60

1        MR. BURCK:  Objection, beyond
2  the scope.  Objection based on form.
3        But you can answer.
4     A.   No.
5     Q.   (BY MR. JACKSON)  Have you
6  taken any steps to determine whether or not
7  there are any documents related to the
8  subject of the standing of the trust in this
9  case that are maintained outside of the
10 company but are still within the company's
11 control?
12        MR. BURCK:  Objection to the
13 form.
14        But you can answer.
15    A.   No.
16    Q.   (BY MR. JACKSON)  So you've
17 taken no steps?
18    A.   Correct.
19        MR. JACKSON:  At this time, I
20 don't have any additional questions
21 for this witness.
22        MR. BURCK:  I've got no
23 redirect.  You guys have anything?
24        MR. LENNON:  No.
25        THE VIDEOGRAPHER:  We're now

Page 61

1  off the record.  The time is 4:07 p.m.
2  This will be the end of video one.
3        * * * * *
4  (Signature Waived)
5        * * * * *
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 62

```
 1    COUNTY OF HARRIS )
 2    STATE OF TEXAS )
 3              REPORTER'S CERTIFICATE
 4        I, LORRAINE BRAZIL, Certified Shorthand Reporter in
 5    and for the State of Texas, hereby certify that this
 6    transcript is a true record of the testimony given.
 7        That COREY PROLOGO, was duly sworn by the officer
 8    and that the transcript of the oral deposition is a true
 9    record of the testimony given by the witness;
10        I further certify that I am neither attorney nor
11    counsel for, related to, nor employed by any of the
12    parties to the action in which this testimony was taken.
13    Further, I am not a relative or employee of any attorney
14    of record in this cause, nor do I have a financial
15    interest in the action.
16        Subscribed and sworn to on this the 16th day of
17    May, 2018.
18
19        _____
20        LORRAINE BRAZIL, CSR 3119
          Expiration Date:  12-31-19
21        Magna Legal Services
          866-624-6221
22        www.MagnaLS.com
23
24
25
```



**A**

**ability** 7:24
**able** 7:18
**above-styled** 1:18
**absolutely** 15:12
22:18
**accurately** 7:19,25
**action** 62:12,15
**actual** 10:18
**Adam** 3:8
**addenda** 37:11
**additional** 60:20
**addressed** 51:7
**affiliates** 58:12
**AG** 57:17 58:13
**agency** 36:2
**agent** 35:25 51:14
51:25 53:9 54:16
55:7
**ago** 23:2 42:1
**agreement** 17:5,11
17:12 31:15,18
33:20,22 37:9,10
37:13 39:3 54:20
**agreements** 17:7
37:12 39:22
**ahead** 34:8 53:22
**al** 1:9
**alcohol** 7:22
**Alex** 2:10
**alex.gonzalez@k...**
2:14
**alleged** 12:2,5,6,6
**aloud** 15:24 33:6
35:20 39:15
**ALVAREZ** 3:7
**amended** 16:3,13
16:15,24
**amendments** 37:12
**America** 20:17,21
20:23
**AMERICAS** 1:8
2:20
**amount** 51:10
**analysis** 30:13 31:4

32:14,24
**and/or** 17:13 33:21
37:14
**annexes** 37:11
**answer** 5:23 6:6,21
6:25 7:4,5 15:3
19:16 20:11 21:15
21:17,17 22:7
23:2,14,22 24:1,8
24:18 25:6 26:9
27:20,21 30:19,24
31:11,25 32:9,20
34:8 35:6,11
36:25 37:3,4
39:11 40:5 42:18
43:20,21,23 44:9
46:5,15,18,22
47:8,15 48:16,17
48:25 49:12 51:21
51:22 52:7,15
53:3,6,17,18,23
53:25 54:1,8,10
54:13,24 55:1,5
55:17,20 56:11
58:3,22 59:6,9,17
60:3,14
**answered** 13:3
32:18 34:14 47:13
59:16
**answers** 5:25
**apart** 37:1 41:10,14
42:6,6 53:4 56:25
**appearances** 4:16
**appears** 12:19
**appointments**
38:24
**appreciated** 6:7
**approval** 33:16
35:24
**approvals** 55:10
**Approximately**
8:18,21 9:2,14
**April** 10:4
**articulate** 29:13
**aschwartz@paul...**
3:11

**Asia** 20:24
**aside** 37:16
**asked** 13:2 32:18
34:13 51:1 59:16
**asking** 19:2 24:25
30:20 35:9 41:4
46:9 48:4,5,15
49:3,5
**aspects** 28:16,21
29:4 50:19
**Assembly** 28:10
29:17 30:7
**assent** 6:4
**asserted** 16:3
**assignment** 36:5
**assignments** 33:21
**assume** 6:14 22:15
**attached** 1:25
**attachments** 37:11
**attempt** 31:11
**attend** 15:14
**attention** 33:4,5
**attorney** 5:12 6:24
30:17 36:23 50:3
54:7 58:10 62:10
62:13
**attorneys** 10:7,22
11:1,5,15 12:14
12:16,20 13:14
31:20 42:7,18,19
42:20 45:14,16,23
46:10,17,24 47:3
48:9 49:8 53:5,21
56:25
**attorney-client**
19:6 35:4,10 37:2
37:16 40:4,7 46:2
51:20 53:2,16
54:23,24 55:16
56:9 59:5
**audit** 33:17
**August** 9:22,24
**authority** 33:12,16
39:18,18 43:15
**authorization**
33:16 35:24

**authorizations**
55:11
**Avenue** 2:6,11
**avoid** 22:21
**aware** 17:18 25:15
26:12,18 27:16,24
28:3 29:16 30:1
30:12 31:2 32:22
37:21,25 39:24
40:7 41:17,24
56:15

**B**

**B** 3:8 17:3
**back** 13:23 49:23
59:13
**based** 10:25 11:12
11:15 13:7 14:18
14:19 41:9,13
52:23 54:3 60:2
**basically** 13:15
**Basis** 13:11
**begins** 4:5
**behalf** 4:19,25
17:14,22 33:18
45:23 46:10 47:3
55:25 56:5,20
**Beheer** 57:20 58:13
**belief** 25:2
**believe** 13:8 24:1
41:5 45:15 52:19
52:21 54:2
**best** 6:11
**beyond** 31:23 32:17
44:7 58:20 59:2,8
59:15 60:1
**bit** 46:21 50:25
**Boes** 4:22 5:13
**Boies** 2:5 4:19
**Brad** 2:5 4:21
**Brazil** 1:20 4:14
62:4,20
**break** 6:17,20,22
49:18
**bribery** 12:6
**Brickell** 2:11

**brief** 8:11 50:1
**briefed** 10:6,22
11:5,16 13:14
**briefing** 13:11
**briefly** 8:7
**broader** 20:13
**Brown** 2:22
**Burck** 2:16 4:23,24
11:10 13:2 15:7
19:16,24 20:10
21:6,16 22:6
23:12,20 24:9,16
26:3 30:15 31:6
31:23 32:8,16
34:6,13 35:2
36:20 40:2 41:19
42:17 44:7 45:21
46:1,14 47:7,24
48:11,17 49:11
50:23 51:18 52:5
52:24 53:14 54:5
54:22 55:14 56:7
58:2,20 59:2,15
60:1,12,22
**business** 8:16 12:7
14:1 26:1 27:5,7
38:8
**BV** 57:20

**C**

**C** 2:2 3:2 14:8,10
14:11
**call** 38:13 47:16
51:22 55:16
**called** 11:18 57:17
**calls** 30:16 35:3
36:21 38:2,7,11
38:19 40:3 46:1
47:21 51:19 52:25
53:15 54:6,24
56:8 59:4
**capacity** 42:23
**Carroll** 45:2
**case** 1:7 10:19 15:2
16:20 18:23 19:14
23:5 24:1 29:20



30:10,14 31:5,15
40:22 41:1,7
46:13 49:10 53:13
54:2,21 55:24
56:21 60:9
**cause** 1:19 62:14
**centralized** 17:16
43:15
**CERTIFICATE**
62:3
**Certified** 62:4
**certify** 62:5,10
**charge** 13:25
**Christenson** 3:13
4:13
**Civil** 1:24
**claims** 16:3 33:13
36:6,15 39:23
51:17 52:3
**Clarification** 28:23
52:10
**clear** 5:23 15:16
29:8 50:6
**clearly** 7:24 46:2
**client** 12:13 30:18
36:23,24 37:2
47:17 54:8
**come** 53:20
**common** 47:23
52:8,12
**communicate** 21:3
22:1,5,9
**communicated**
28:1,6 45:16
**communication**
35:3 36:22 37:7
38:23 40:4 41:14
47:21 51:20 52:20
54:7,18 58:9,11
59:4
**communications**
17:22 18:1,5,10
23:9,18 30:17,21
33:9,11 35:10
37:2,17 38:2 39:7
39:17 40:7,8

41:10,14 43:12,16
45:24 46:3,8,11
47:2,4,16 48:5,8
49:4,7 50:2,3
51:16 52:2,22
53:1,5,16 54:25
55:9,17 56:10
57:1,1
**companies** 57:3,6
**company** 8:10,23
14:13,15 17:15,23
17:23 18:1,5,10
18:21 19:18,23
23:6,8,17 24:19
24:22 25:16 26:17
27:25 28:5,20
29:3 30:2,5,6,13
31:3,21 32:4,13
32:15,24 34:11,20
34:24 35:15 37:23
38:3,7,8,10 39:7
40:1,9 42:5,13
43:5,11,15 44:2
44:17 45:25 46:11
46:13 47:6 48:10
49:9 56:24 57:16
57:19,22,23 58:1
58:1,11,19 59:14
59:22 60:10
**company's** 25:12
60:10
**complaint** 16:4,13
16:16,19,19,24
**complete** 6:3,21,21
**compliance** 31:22
32:3,12,23
**component** 28:1,7
29:17 30:8 32:3
**components** 21:3
21:25 28:21
**comprehensive**
57:8,11,14
**compromise** 39:23
**concerning** 33:11
33:15,20 36:4
37:8 38:23 39:17

53:11 54:19 55:10
55:11
**conduct** 54:18
**conducted** 30:13
31:3
**conferences** 40:21
**connection** 10:5
14:20,21 17:1
18:5,10 38:19
45:17 53:12 58:15
**consents** 55:11
**consider** 22:19,23
24:12
**consideration**
35:23
**continent** 19:19
**continents** 19:22
20:3,9,14,17
**continue** 7:3 16:4
**contributed** 33:13
36:6,15
**control** 60:11
**conversations**
11:12 42:4
**copies** 15:10
**copy** 12:24 13:5
15:8,12
**Corey** 1:13,16 4:1,6
5:2 62:7
**corporate** 44:5
57:24
**correct** 10:2,20,24
15:4,21 20:19,25
25:17 29:11 50:11
50:16 56:16 60:18
**counsel** 4:15 7:5
11:7,9,10 15:1
19:1 35:5 39:21
41:11,15 45:20,21
47:17,22,22 62:11
**countries** 26:23
27:10,12 32:7
**country** 32:25
**country's** 25:11
**COUNTY** 62:1
**course** 5:20

**court** 1:2 4:13 5:4
5:18 10:12 20:1
40:21
**coverage** 42:10,14
**covered** 50:21
**CRR** 1:21
**CSR** 1:20 62:20
**current** 9:4,23,25

**D**

**Date** 62:20
**dated** 10:4
**dates** 17:10 37:10
**day** 62:16
**de** 3:7 45:2
**deal** 26:24 44:3
**dealing** 32:6
**deals** 26:21
**December** 9:8
**defendant** 2:20 3:1
4:25 57:2,6
**defendants** 1:10
2:9 3:6 33:14
**define** 41:2 47:9
48:12
**delegation** 33:15
**delivery** 36:5
**department** 13:20
31:22 32:13,23
**department's** 32:3
**depending** 27:10
**deposition** 1:13,16
4:6,10 5:15,20 6:2
7:15 10:4,5,9,18
10:23 11:2,14
12:1 13:13,15
14:5 15:2,15,21
15:24 16:11 19:25
21:9 31:24 33:7
35:21 51:12 62:8
**description** 17:20
**designated** 11:18
44:3 50:14
**details** 16:23
**determine** 25:6
28:5,20 29:3 30:5

31:11 34:17,19,24
35:16 39:11 40:13
48:6 49:6 53:6
54:13 55:4,20
56:18,24 58:8
59:20 60:6
**different** 21:2,4,25
22:2 50:9
**direct** 35:5 36:24
39:19 40:5 44:12
46:4 53:2 54:23
59:5
**directed** 54:8 56:10
**directing** 30:18
47:8,14 48:15
53:17
**directs** 7:5
**disclosure** 40:3
51:19 56:9
**discussed** 12:8,15
12:18 31:17 42:14
50:15
**discussion** 36:21
**discussions** 13:8
**dismiss** 39:22
**DISTRICT** 1:2,3
**DIVISION** 1:3
**document** 10:15
12:24 15:18 17:16
37:6 58:19 59:1,7
59:23
**documents** 13:17
17:8,11 34:4,11
34:20,25 35:17
37:22 39:25 40:14
59:21 60:7
**domestic** 26:1 27:6
**domestic-focused**
27:4
**drugs** 7:22
**duly** 1:18 4:2 62:7
**duties** 25:24
**duty** 32:3
**D.C** 2:18 3:9

**E**



E 2:2,2
earlier 45:19
Early 9:12
either 35:4
Emanuel 1:22 2:16 4:24
employed 62:11
employee 44:15 51:14,25 53:9 54:16 55:7 62:13
endeavored 28:19 29:2
ended 9:21
ENERGY 3:6
engaged 56:25
engagement 17:8,9
enter 39:21
entire 21:11 24:10
entity 39:19
establishing 16:9
establishment 16:7 36:4
et 1:9
Europe 20:19
everybody 49:16
exactly 22:12 58:5
EXAMINATION 5:7
examine 13:16
examined 16:18
example 17:9
Excluding 31:20
execution 37:8 54:19
executive 14:12,15
executives 14:24
exhibit 10:9,10,13 12:19 13:9 15:6 33:4 37:11 50:11
exist 18:22 19:12 25:3 56:19 59:22
existed 59:22
exists 24:3
Expecting 40:6
expert 55:23 56:4 56:18

Expiration 62:20
explain 8:7,11 12:4 13:12 44:4
explained 11:21
export 27:5,9
express 46:7
expressly 7:5
extent 19:5 29:8 30:16 35:3 36:21 40:3 46:15,22 51:19 52:25 53:15 53:18 54:6 55:15 56:8,11 59:3
external 11:7,10 15:1 45:21
E-mail 23:9,18 59:23
E-mails 18:15,22 19:12 23:6 24:20 38:1 59:13

F
F 2:7,13,19,24 3:5 3:10
fact 25:15
fail 20:2
familiar 25:11 28:9 28:12,15,21 29:4 30:6 44:17,23 45:1 56:3 57:16
familiarity 45:12
far 7:9 14:13 59:13
fashion 16:24 50:25
Federal 1:23
feel 40:24
fifth 35:21
filings 40:17
financial 62:14
finish 5:22
first 4:2 5:17 8:3 10:25 14:8 15:23 15:24 41:17,24
five-minute 49:17
Flexner 2:5 4:22 5:13
Florida 1:3 2:12

focus 33:3
follows 4:3
foreign 32:6 43:16
form 34:7 48:23 50:23 52:6 56:7 60:2,13
formation 18:23 19:13
formerly 57:18
four 20:15
fourth 33:5
Francisco 44:24
frankly 48:21
fully 7:25
further 62:10,13

G
GABALDON 3:7
Garrison 3:8
gasoline 9:8,18
general 17:21 22:4 36:3,11
generally 7:2 11:25 14:14
Geneva 9:7,17 14:19
genuinely 25:4
geographic 25:23
getting 50:1
give 5:25 6:5 11:8
given 62:6,9
glad 22:20
GLENCORE 3:6,6
global 9:17
go 5:13 34:8 53:22
Godfrey 3:2
going 5:18 10:8 15:14 36:24 46:4 46:19,20 47:1 48:23 53:2
Gonzalez 2:10 15:9 18:25 19:4,15 20:5 21:10 22:20 24:5 29:7,12 45:4
Good 5:9,10
government 28:2,7

29:18 30:9 33:19 36:1
governmental 28:16 29:5
governments 43:17 44:3
Great 26:10
greatly 6:7
ground 5:14
Group 14:18 44:13
GUSTAVO 3:7
guys 60:23

H
half 9:14
HARRIS 62:1
head 6:3 8:5,13 9:18 25:19
heard 44:20
helping 32:4
Helsinge 2:9,9,9,9 44:18,21
hereto 1:25
high 14:23
hire 39:20
HOLDINGS 2:9
Holland 2:11
hours 51:13
Houston 1:23 2:23 3:4 8:24 9:1 14:18

I
identified 39:2
impair 7:23
implicates 26:14,19
import 20:3 27:5,8
important 5:25 51:8
importing 27:9
impossible 6:1
imprecise 26:6
include 20:17 27:13
Included 16:6
includes 20:19,21 20:24
including 7:22 16:8

17:9 33:15 36:2 37:10 38:2
individual 39:19 44:24 45:2
individuals 23:19 24:20,21 32:4 38:12 43:16 47:4 48:9 49:9
inform 5:17
information 4:12 19:6 35:9 46:16 46:23
instance 1:17
instruct 51:21
interest 47:23 52:8 52:12 62:15
internal 11:7,9 15:1 45:20
invalid 33:22
investigation 53:11 54:18 55:9
involves 12:22
in-house 35:5
issue 5:16 7:11 12:25 31:15 33:15 40:25 41:3,6,25 58:14

J
Jackson 2:4 4:18 4:19 5:8,12 10:11 10:14 13:4 15:11 15:17 19:2,8,10 19:18 20:6,8,16 21:13,14,19,22,24 22:10,18,22 23:1 23:16,24 24:7,11 24:17 26:10,11 28:25 29:11,14,15 30:20,22 31:8 32:2,11,19 34:10 34:16 35:7 37:1 40:6 41:21,23 42:22 44:10,14 45:7,13 46:6,19 46:25 47:18,25



48:14 49:1,14,16
  49:25 50:24 51:24
  52:14 53:4,22
  54:11 55:3,19
  56:14 58:7,24
  59:12,19 60:5,16
  60:19
**James** 11:9 45:20
**job** 8:4,17 9:21,25
  17:19
**join** 22:17
**joined** 4:21
**Jr** 2:21
**July** 9:22,24

### K

**K** 3:9
**Kelso** 3:2
**Knight** 2:11
**know** 5:17,24 6:4
  6:11,17 14:8,10
  15:13 16:15 17:20
  17:21 24:2 25:2,4
  27:14 34:3,10
  36:7,10,13 38:6
  38:16 39:6 43:4
  43:21,24 45:22
  46:10 52:18 57:5
  57:7,8 58:6,18
  59:6,12
**knowledge** 16:20
  16:22 23:11,15,23
  23:25 24:23 25:1
  52:16,18 54:2
  55:2,18
**known** 44:18
**knows** 53:19

### L

**LA** 3:7
**lack** 35:24 39:18
**largely** 14:19
**lawsuit** 33:14 39:23
**lawyer** 47:9
**lawyers** 31:6 59:9
**learn** 43:8,11

**learned** 13:15
  46:16,23 47:2
**legal** 16:19 62:21
**Lennon** 2:21 22:14
  47:20 52:8,12
  60:24
**Leonardo** 45:2
**letters** 16:1 17:9
  33:17
**Let's** 16:10
**level** 14:12,15,24
**Lexington** 2:6
**licenses** 55:10
**limited** 16:7,8
  17:10 19:25
**line** 21:11 24:10
  29:9
**list** 57:9,11,14
**litany** 48:20
**litigation** 1:5 4:8,20
  33:1 39:20,21
  40:17 41:24 42:6
  52:4 53:12 55:13
  57:6 58:15
**little** 50:25
**LLC** 1:9 2:9 5:1 8:6
  14:17 20:12,22
  25:21 26:7,12,18
  27:19,23 34:4
  44:1,6,11,15
  50:17 57:19
**LLP** 2:5 3:2,8
**located** 8:22 14:15
**locations** 21:4 22:2
**logistic** 8:9
**long** 8:17,19,25
  9:10,13
**longer** 59:22
**look** 15:6,18 39:13
**looked** 12:23 13:5
  18:14,17 29:22
  30:2 35:18
**Lori** 4:14
**LORRAINE** 1:20
  62:4,20
**Louisiana** 1:22

2:22 3:3
**LUIS** 3:7
**Lukoil** 1:8 2:20
  57:7

### M

**M** 2:10
**machine** 1:20
**Magna** 62:21
**maintain** 17:16
  23:8,17 24:19
  38:10
**maintained** 59:13
  60:9
**manage** 8:15
**management** 17:16
**manner** 22:4,8
**mark** 10:8,9,12
**marked** 10:13
**matter** 4:7 17:22
  41:18,20
**Mayer** 2:22
**mean** 12:4 18:25
  23:25 24:2 25:1,2
  36:23 43:20,21
  47:10 48:13 52:18
**meaning** 22:8
  38:12
**means** 11:22 32:22
**media** 42:9,14
**medication** 7:21,23
**mentioned** 57:8
**messages** 18:18
**method** 22:8
**Miami** 1:3 2:12
**Michael** 2:21 3:2
**mind** 30:25 35:12
**ministry** 33:19 36:2
  36:7
**mkelso@susman...**
  3:5
**mlennon@mayer...**
  2:25
**moment** 23:2 58:17
**months** 42:1
**morning** 5:9,10

**Move** 21:11
**multiple** 20:14
**Murillo** 44:24

### N

**N** 2:2
**name** 5:11 45:19
**named** 44:24 45:2
**names** 11:8
**National** 28:10
  29:16 30:7
**nature** 48:4 49:4
  51:2
**negotiation** 54:19
**negotiations** 37:8
**neither** 62:10
**never** 10:17
**New** 2:6,6
**nod** 6:3
**nonlawyer** 47:12
**nonprivileged** 47:4
  47:10 48:7,13
  49:7
**North** 20:21,22
**notarization** 37:9
  54:20
**notarized** 17:13
  37:14
**note** 7:2 24:14 45:7
**noted** 19:8 20:6
  21:13,23 30:23
  47:19
**notes** 38:2,10,13,18
**notice** 10:4,9,18,23
  15:15 35:21 50:10
**not-to-my-knowl...**
  54:9
**number** 50:9 51:1
**numbered** 1:19
**NW** 2:17 3:9

### O

**object** 19:7 29:8
  45:4 48:23,23,24
**objection** 6:25 7:1
  7:3 13:2 19:5,8,15

19:24 20:5,6,10
  21:6,10,13,22
  22:6,16,16,19,24
  22:24 23:12,13,20
  23:21 24:10,14
  26:4 30:15,23
  31:23 32:8,16
  34:6,13 35:2
  36:20 40:2 41:19
  44:7 46:1,14 47:7
  47:18 48:11 49:11
  50:23 51:18 52:5
  52:9,13,24 53:14
  54:6,22 55:14
  56:7,8 58:2,20
  59:2,15 60:1,2,12
**objections** 24:12
  48:20
**obviously** 12:14
**officer** 62:7
**officers** 14:15
**offices** 1:22 21:4
  22:1 23:10,18,19
  24:21
**official** 33:19 35:25
  38:8
**oil** 8:5,13 25:20,24
  26:14,20 27:1,15
  27:17
**Okay** 10:8 12:8,12
  12:21 13:16 14:7
  15:3,5,19 16:6,10
  16:18 17:15 18:14
  20:16 24:16,24
  25:5,10,15 26:2
  27:3,24 31:10
  33:23 46:19 47:25
  49:2,14,22
**operate** 19:23 20:9
  25:16
**operates** 19:19
  20:13,14
**operations** 25:12
  26:14
**opinions** 33:17
  55:24 56:4,19



**oral** 1:13,16 62:8
**order** 55:4
**outside** 12:13 23:19
25:4,21 35:5
45:25 46:13 47:5
48:10 49:9 60:9
**overall** 8:15,20
57:24

**P**

**P** 2:2,2,21
**page** 15:18 33:5
35:21
**PAN** 1:8 2:20
**paragraph** 16:12
17:3 33:6 35:22
37:5
**parent** 44:6,12
**parental** 58:4
**parents** 58:12
**Parliament** 28:13
**part** 13:9 37:15
**parties** 4:15 62:12
**parts** 21:5 22:2
32:17
**Paul** 3:8
**PDVSA** 1:5 4:7,20
12:3,7 33:17,18
35:25 39:18 42:24
43:2,5,12
**pending** 6:19
**people** 13:24 15:14
**People's** 36:2,8
**person** 43:14
**personal** 42:23
**persons** 39:4
**pertaining** 50:6
**Petroleum** 36:3,8
**phone** 22:11,13
23:3 38:2,7,10,19
**physically** 8:23
14:16
**plaintiff** 1:6,17 2:3
4:20 5:12
**please** 5:4,16,21
6:10,17 33:10

35:20 37:3 38:22
39:16 58:17
**point** 49:18
**policies** 59:24
**policy** 38:9 58:19
59:1,8
**possession** 13:17
34:5 37:22
**possible** 55:10
**potentially** 47:13
47:20
**Powell** 11:9 45:20
**Power** 36:3,8
**practice** 38:9
**precedes** 48:1
**precise** 41:20
**preparation** 12:16
13:10 14:22 18:6
18:11 25:7 29:23
31:18 33:24 34:18
36:17 37:18 38:20
45:17 50:20 51:2
51:6 54:12
**preparatory** 45:8
**prepare** 13:13
36:18 37:18
**prepared** 12:1
33:18,25 55:25
56:5,19
**preparing** 51:11
**prescription** 7:23
**present** 3:12 4:16
**press** 13:20 42:1,3
42:10
**price** 27:11
**prior** 10:17 17:12
37:13 39:3 48:20
**privilege** 47:23
**privileged** 30:21
35:9 46:8 56:25
58:10
**Procedure** 1:24
**Procurator** 36:3,10
**produced** 1:17
**Prologo** 1:13,16 4:1
4:7 5:2 62:7

**pronouncements**
29:19 30:9
**provisions** 1:24
**PTE** 44:13
**public** 29:18 30:9
**punitive** 39:1,2
**purchase** 27:15,15
**purchased** 26:14
26:20 27:17,22
**purported** 33:21
**purpose** 16:9
**pursuant** 1:23
**pursue** 16:3 33:13
51:17 52:3
**Putting** 37:16
**p.m** 1:19,20 4:9
49:20,24 61:1

**Q**

**qualification** 30:23
35:8 46:7,21
**question** 6:6,12,14
6:15,19,21 7:1,4,6
13:4 19:3 21:20
21:24 22:15 24:18
24:18,24 25:7
29:1 30:19,24
31:12 34:7 35:6
35:11,14 36:25
37:3 39:11 41:20
41:22 43:22 46:5
46:9,22 48:1,2,16
48:18,21,22 49:2
49:5 50:22 52:15
53:3,7,20 54:14
55:1,5,21 59:6,10
**questioning** 21:12
**questions** 5:8,22
6:1,9,24 29:9
33:25 36:19 37:19
45:5,9,9 50:21
51:1 60:20
**quibble** 46:20
**Quinn** 1:22 2:16
4:24

**R**

**R** 2:2
**Randall** 2:4 4:18
5:11
**read** 15:24 17:2
33:6 35:20 37:5
38:22 39:15
**reason** 7:17
**reasons** 16:8
**recess** 49:21 50:1
**record** 1:24 4:5
5:24 6:3 45:8
49:20,23 61:1
62:6,9,14
**records** 38:1
**redirect** 60:23
**reference** 16:12
36:13 45:14
**referenced** 17:8,11
**references** 36:14
**refers** 16:16
**regard** 5:15 29:9
32:6 50:10
**regarding** 32:14,24
42:5,10,14 45:24
46:12
**relate** 40:17,22
51:16 52:2 59:24
**related** 29:19 30:10
38:8 39:8 47:5
49:9 56:20 58:13
59:7 60:7 62:11
**relates** 12:3,7 21:8
27:4,6
**relating** 53:19
**relation** 57:25
**relationship** 44:5
**relative** 62:13
**release** 42:2,4
**relevance** 48:24
**relevant** 18:22
19:13 37:23 45:11
**remotely** 21:7
**removal** 38:25
**repeat** 18:8 21:20

24:19 26:16 50:22
51:23
**repeating** 30:25
35:13
**rephrase** 6:11
**replace** 39:20
**replacement** 38:24
**reported** 1:21
**reporter** 4:14 5:4
5:18 10:12 28:24
52:11 62:4
**REPORTER'S**
62:3
**represent** 4:17
**representative**
51:15 52:1 53:10
54:17 55:8
**request** 4:11 6:19
**requested** 28:23
52:10
**required** 6:25
**resignation** 38:25
**respond** 33:25
37:18
**response** 6:23
**responsibilities**
8:12,14 32:5
**responsible** 43:12
**responsive** 34:5,12
34:21 35:1,17
36:19 38:3 40:1,9
**restart** 29:1
**result** 59:23
**retention** 58:19
59:1,8,24
**revelation** 36:22
**review** 41:13
**reviewed** 10:3 18:4
18:9 38:18 40:16
40:20 55:23
**Rifkind** 3:8
**right** 8:2,24 10:1
19:1,20 20:24
49:17
**rjackson@bsfllp....**
2:8



MAGNA ▶
LEGAL SERVICES

**RMR** 1:21
**role** 9:4,11,15,18,23
**roles** 9:4
**RPR** 1:21
**rules** 1:23 5:14

---
**S**

**S** 2:2
**saw** 10:18 42:3
**says** 15:20
**schemes** 12:2,5,7
**Schiller** 2:5 4:19,22
  5:13
**Schwartz** 3:8
**scope** 19:25 21:8
  23:13,21 24:6,13
  24:15 25:23 31:24
  32:17 36:5 44:8
  48:24 58:2,21
  59:3,16 60:2
**second** 32:17
**Section** 17:3
**see** 15:20 16:11
**seeking** 19:6 35:8
**seen** 10:14 31:14
  42:9
**selection** 38:24
**sent** 23:6
**SERGIO** 3:7
**Services** 62:21
**settlement** 39:21
**shared** 16:23
**shorthand** 1:20
  62:4
**shown** 57:13
**side** 37:12
**signatories** 17:14
**Signature** 61:4
**signed** 17:13 37:14
**sir** 5:9 10:15 15:18
  33:10
**sit** 41:5
**sits** 58:5
**six** 8:21
**Smith** 2:5 4:21
**sorry** 15:13 25:12

35:12
**source** 47:2
**South** 20:17
**SOUTHERN** 1:3
**speak** 13:19,22
  14:4,7,23
**specific** 50:10 51:1
**specifically** 11:5
  16:17
**spent** 51:11
**spoken** 11:1,13
  14:25 17:25 18:20
  19:11 28:4 30:4
  32:12 34:23 35:15
  58:25
**standing** 12:10
  16:2 20:1 24:9,14
  26:3 29:10,20
  30:14 31:4 32:15
  32:25 33:13 40:18
  40:22,25 41:2,6
  42:11,15 45:6,10
  45:24 46:12 47:5
  49:10 51:16 52:2
  53:11 55:12 56:21
  58:14 59:25 60:8
**start** 9:11
**started** 9:7
**Starting** 17:4 33:8
**state** 1:21 4:16 6:24
  49:1 62:2,5
**stated** 1:24 7:1
**STATES** 1:2
**steps** 31:10 33:24
  34:17 36:18 37:17
  39:10 40:12 43:7
  43:10 48:6 49:6
  54:12 55:4,20
  56:17,23 58:8
  59:20 60:6,17
**stop** 16:10
**stored** 17:23 18:2
**storing** 23:9,17
  24:20
**strategy** 8:15 13:25
  14:1 39:20

**Street** 2:17,22 3:9
**strike** 21:11
**structure** 28:17
  29:5 57:24 58:5
**studied** 57:10
**subject** 12:9 35:18
  39:8 50:11 59:24
  60:8
**subjects** 50:2
**Subscribed** 62:16
**substitution** 38:25
**suite** 1:22 2:12,17
  2:23 3:3 14:9,10
  14:11
**Sullivan** 4:25
**summary** 8:8,12
  16:24
**sure** 9:6 15:11 16:5
  17:21 18:9 21:7
  21:21 26:17 35:14
  38:14 41:21
**Susman** 3:2
**swear** 5:4
**sworn** 1:18 4:2 5:6
  7:14 62:7,16
**system** 17:17 23:9
  23:17 24:3,20
  25:3

---
**T**

**T** 2:7,13,18,24 3:4
  3:10
**take** 6:16,22 15:5
  15:17 33:23 36:18
  37:17 55:3,19
  56:17
**taken** 1:18 4:10
  7:21 31:10 34:17
  39:10 40:12 43:7
  43:10 48:3,6 49:6
  49:21 54:12 56:23
  58:8 59:20 60:6
  60:17 62:12
**talk** 36:14
**talking** 11:6
**Technician** 3:13

**telephone** 3:8
**tell** 6:13 7:15 8:3
  9:3 18:21 19:11
  21:16
**term** 26:6
**terms** 25:24
**testified** 4:2
**testify** 7:18,24
**testimony** 12:16
  14:21,22,23 18:6
  18:11 25:7 29:23
  31:19 34:19 45:18
  50:20 51:3,6,12
  54:13 62:6,9,12
**Texas** 1:21,23 2:23
  3:4 62:2,5
**text** 18:17
**texts** 22:11
**thank** 19:9 22:22
  22:23,25 29:14
  31:1 44:10 49:14
  50:8
**Thanks** 21:19
**thereof** 35:24
**thing** 6:18
**things** 22:11 25:10
**think** 7:24 23:1
  51:7
**Third** 6:8
**three** 9:19 20:15
**time** 4:9 6:16,19
  9:9 26:16 49:20
  49:23 51:11 60:19
  61:1
**today** 4:8 5:14 6:24
  7:19,25 10:17
  12:1,17 13:10,13
  14:5,22 18:7,12
  25:8 26:8 29:24
  31:19 33:24 34:17
  34:19 36:17 37:18
  38:20 41:5,25
  45:14,18 50:20
  51:3,6,12 54:13
**today's** 11:14
**top** 19:11

**topic** 15:24 16:12
  24:12 29:22 30:2
  34:1,5,12,21 35:1
  35:17 36:19 37:19
  37:23 38:4,22
  39:13 40:1,10
**topics** 11:14,25
  13:8 15:21 33:7
  50:9,15
**total** 51:10
**trader** 9:9
**trading** 5:1 8:5,6
  8:10,13 9:18
  14:17 20:12,22
  25:20,21,24 26:6
  26:12,13,18,19,21
  26:24 27:19,23
  34:4 44:1,5,11,15
  50:17 57:19
**Trafigura** 5:1 8:4,6
  8:8,9,13,20 9:5
  12:9 13:17,24
  14:9,16,17,18,24
  20:4,12,14,22
  21:3,25 25:21,25
  26:5,5,6,8,12,18
  27:19,23 34:3
  44:1,5,11,12,13
  44:15 45:14,16,23
  48:9 49:8 50:17
  51:15 52:1 53:10
  54:17 55:8,25
  56:1,5,6,20 57:17
  57:18,20 58:13,13
**Trafigura's** 13:20
  47:3
**transcribing** 5:19
**transcript** 62:6,8
**transcripts** 40:21
**transfer** 36:5
**true** 47:24 62:6,8
**trust** 1:5 4:8,21
  12:3,5,10 16:2,7,9
  17:4,7,10,12
  18:23 19:13 20:2
  29:19 30:10,14



31:4,14,17 32:15
32:25 33:12,20,22
36:4,6,15 37:9,10
37:12 39:1,3,5
42:10,15 46:12
47:5 49:10 51:17
52:3 53:12 54:20
55:12 58:14 60:8
**trustee** 39:1
**trustees** 39:2,5
**truth** 7:15
**truthfully** 7:18
**try** 25:6 28:5 30:5
34:24 35:15 36:18
39:10 40:12 43:7
43:10 48:6 49:6
53:6 55:4,20
59:20
**turn** 33:5
**two** 8:18 9:2 32:16
45:15 51:13
**typically** 22:13
23:3

**U**

**uh-huh** 6:5 23:4
**UK** 3:6
**ultimately** 39:4
**understand** 6:10,13
6:15 7:7,8,14
11:17 14:13 20:2
32:5 48:21
**understandable**
6:12 47:11
**understanding**
11:11,24 40:25
41:6,9 50:13
**UNITED** 1:2
**Urquhart** 4:24
**use** 26:4
**U.S** 8:15 20:13
25:22 26:1,25
27:1,6 44:12,12

**V**

**vague** 50:25

**valid** 33:22
**various** 27:10
**VEGA** 3:7
**Venezuela** 25:13,16
26:15,20,22 27:13
27:18,23 28:10
**Venezuelan** 28:2,7
28:13,16 29:4,16
29:18 30:7,8
33:19 36:1,1
**verbal** 5:25 6:5
**versions** 17:12
37:13 39:3
**video** 3:13 4:10 6:2
61:2
**videographer** 4:4
4:12 5:3 49:19,22
60:25
**videotape** 4:5
**VIDEOTAPED**
1:13,16
**VITOL** 3:1
**voice** 6:4
**voluntarily** 39:22
**VS** 1:7

**W**

**wait** 5:21
**waived** 24:13 61:4
**waiver** 48:19
**want** 5:13,17,24
6:16 16:4 47:9
48:22
**Washington** 2:18
3:9
**way** 6:12 22:21
38:6 47:11
**Weiss** 3:8
**went** 50:8
**We're** 60:25
**Wharton** 3:8
**William** 2:16 4:23
11:10 45:21
**williamburck@q...**
2:19
**withdraw** 41:22

**witness** 1:17 2:15
5:1,5,6 11:19 26:7
45:11 50:14 60:21
62:9
**word** 26:4
**work** 20:13 25:19
42:24 43:1,5
**works** 20:4
**world** 21:5 22:2
**www.MagnaLS.c...**
62:22

**Y**

**Yeah** 15:11 21:21
22:22 24:11 42:20
**year** 9:11,14,20
**years** 8:18,21 9:2
9:19
**York** 2:6,6
**Yup** 37:7

**Z**

**Zachary** 3:13 4:13

**1**

**1** 4:6 10:10,13 15:6
16:12 17:3 33:4
50:11
**1:18-cv-20818-D...**
1:7
**10** 39:13
**1000** 3:3
**10022** 2:6
**12-31-19** 62:20
**1300** 2:17
**15** 1:14,19
**15th** 4:8
**16** 9:22
**16th** 62:16

**2**

**2:59** 1:19 4:9
**20005** 2:18
**20006-1047** 3:9
**2001** 3:9
**2011** 9:8

**2012** 9:12
**2016** 9:25
**2018** 1:14,19 4:9
10:5 62:17
**202.204.7358** 3:10
**202.223.7341** 3:10
**202.538.8100** 2:19
**202.538.8120** 2:18
**212.446.2300** 2:7
**212.446.2350** 2:7
**28th** 10:4

**3**

**3** 15:18
**3:45** 49:20
**3:53** 49:24
**30(b)(6)** 11:18 26:7
50:14
**305.789.7666** 2:13
**305.789.7799** 2:13
**3119** 62:20
**3300** 2:12
**33131** 2:12
**3400** 2:23

**4**

**4** 33:7 35:18
**4:07** 1:19 61:1

**5**

**5** 35:21
**500** 1:23
**5100** 3:3
**575** 2:6

**7**

**7** 37:6
**700** 2:22
**701** 2:11
**711** 1:22
**713.238.4613** 2:24
**713.653.7887** 3:4
**713.654.6666** 3:5
**713.908.2561** 2:24
**77001-2730** 2:23
**77002-5096** 3:4

**8**

**8** 38:22
**866-624-6221** 62:21

**9**

**900** 2:17

