```
 1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
 2                  MIAMI DIVISION
              CASE NO. 18-CV-20818-DPG
 3

 4  PDVSA US Litigation Trust,        Miami, Florida

 5       Plaintiff,                   May 29, 2018

 6          vs.                       3:00 p.m. to 5:25 p.m.

 7  LUKOIL PAN AMERICAS, LLC, et al.   Pages 1 to 83

 8       Defendants.

 9  _____

10                    TELEPHONIC HEARING
             BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
11                UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  FOR THE PLAINTIFF:       DAVID BOIES, ESQ.
    PDVSA US LITIGATION      BOIES SCHILLER FLEXNER, LLP
14                           333 Main Street
                             Armonk, New York
15                             -and-
                             STEVEN DAVIS, ESQ.
16                           STEVEN ZACK, ESQ.
                             ADAM SHAW, ESQ.
17                           BOIES SCHILLER FLEXNER, LLP
                             100 S.E. 2nd Street
18                           Suite 2800
                             Miami, Florida 33131
19                             -and-
                             GEORGE F. CARPINELLO, ESQ.
20                           BOIES SCHILLER FLEXNER, LLP
                             30 South Pearl Street, 11th Floor
21                           Albany, New York 12207
                               -and-
22                           RANDALL JACKSON, ESQ.
                             BRAD SMITH, ESQ.
23                           ELLEN BROCKMAN, ESQ.
                             BOIES SCHILLER FLEXNER, LLP
24                           575 Lexington Avenue
                             7th Floor
25                           New York, New York 10022
```

```
 1    FOR THE DEFENDANT:
      BAC FLORIDA BANK          JEFFREY B. GOLDBERG, ESQ.
 2                              HUGHES HUBBARD
                                201 South Biscayne Boulevard
 3                              Miami, Florida 33131

 4
      FOR THE DEFENDANTS:       DAVID BURKOFF, ESQ.
 5    COLONIAL GROUP, INC.      HUNTER MACLEAN EXLEY & DUNN, P.C.
      Colonial Oil INDUSTRIES   200 E. Saint Julian Street
 6    PAUL ROSADO              P.O. Box 9848
                                Savannah, Georgia 31412
 7                                       -and-
                                CLIFTON GRUHN, ESQ.
 8                              CARLTON FIELDS
                                100 SE Second Street, Suite 4200
 9                              Miami, Florida 33131

10
      FOR THE DEFENDANTS:       JESSICA CAREY, ESQ.
11    GLENCORE, LTD             BRUCE BIRENBOIM, ESQ.
      GLENCORE ENERGY, UK       PAUL WEISS RIFKIND WHARTON & GARRISON
12                              1285 Avenue of the Americas
      GUSTAVO GABALDON          New York, New York 10019
13    SERGIO DE LA VEGA                 -and-
      LUIS ALVAREZ              STEPHEN ROSENTHAL, ESQ.
14                              PODHURST ORSECK
                                1 SE 3rd Avenue, Suite 2300
15                              Miami, Florida 33131

16
      FOR THE DEFENDANTS:       ISRAEL J. ENCINOSA, ESQ.
17    HELSINGE, INC.            ALEX M. GONZALEZ, ESQ.
      HELSINGE, LTD             BRIAN BRIZ, ESQ.
18    HELSINGE HOLDINGS         DAYME SANCHEZ, ESQ.
      DANIEL LUTZ               HOLLAND AND KNIGHT, LLP
19    MARIA F. RODRIGUEZ        701 Brickell Avenue, Suite 3000
      LUIS LIENDO               Miami, Florida 33131
20
      FOR THE DEFENDANT:
21    LUKOIL PAN AMERICAS       MICHAEL P. LENNON, ESQ.
                                MAYER BROWN, LLP
22                              700 Louisiana Street, Suite 3400
                                Houston, Texas 77002
23                                       -and-
      LUKOIL PAN AMERICAS:      JORGE GUTTMAN, ESQ.
24                              GUNSTER
                                600 Brickell Avenue, Suite 3500
25                              Miami, Florida 33131
```

```
 1   FOR THE DEFENDANTS:        TOMAS McLISH, ESQ.
     FRANCISCO MORILLO          STACY MITCHELL, ESQ.
 2   LEONARD BAQUERO            AKIN GUMP STRAUSS HAUER & FELD, LLP
                                1331 New Hampshire Avenue, NW
 3                              Washington, DC 20036

 4
     FOR THE DEFENDANT:         ETAN MARK, ESQ.
 5   JOHN RYAN                  MARK MIGDAL & HAYDEN
                                80 SW 8th Street, Suite 1999
 6                              Miami, Florida 33130

 7
     FOR THE DEFENDANT:         ETHAN GLASS, ESQ.
 8   TRAFIGURA TRADING LLC      QUINN, EMANUEL, URQUHART AND SULLIVAN
                                777 6th Street, NW
 9                              11th Floor
                                Washington, DC 20001
10                                     -and-
                                CHRISTINA OLIVOS, ESQ.
11                              REED SMITH
                                1001 Brickell Bay Drive, Suite 900
12                              Miami, Florida 33131

13
     FOR THE DEFENDANTS:
14   VITOL ENERGY (BERMUDA)     MICHAEL C. KELSO, ESQ.
     VITOL, INC.                SUSMAN GODFREY, LLP
15   ANTONIO MAARRAOUI          1000 Louisiana St, Suite 5100
                                Houston, Texas 77002
16                                     -and-
                                GERALD GREENBERG, ESQ.
17                              GELBER, SCHACHTER & GREENBERG, P.A.
                                1221 Brickell Avenue, Suite 2010
18                              Miami, Florida 33131

19   STENOGRAPHICALLY REPORTED BY:

20                              PATRICIA DIAZ, FCRR, RPR, FPR
                                Official Court Reporter
21                              United States District Court
                                400 North Miami Avenue
22                              11th Floor
                                Miami, Florida 33128
23                              (305) 523-51782

24

25
```

```
 1              (Call to the order of the Court.)

 2              COURTROOM DEPUTY:  Calling the case of PDVSA U.S.

 3    Litigation Trust versus Lukoil Pan Americas, LLC, et al., case

 4    number 18-20818-CV-Judge Gayles.

 5              THE COURT:  Thank you.

 6              Counsel, let me go ahead and do a roll call as I

 7    usually do.

 8              For plaintiff, PDVSA?

 9              MR. D. BOIES:  Your Honor, this is David Boies for

10    plaintiff.  I know there are other people on this call from my

11    firm who I would ask to identify themselves.

12              MR. CARPINELLO:  George Carpinello, Boies Schiller

13    Flexner for the plaintiff.

14              MR. DAVIS:  Steve Davis and Steve Zack, Your Honor,

15    Boies Schiller and Flexner.

16              MS. BROCKMAN:  Ellen Brockman, Boies Schiller.

17              MR. SMITH:  Brad Smith, Boies Schiller.

18              THE COURT:  Wait.  Wait.  Give me a second.

19              All right.  I have Mr. Boies.  I have Mr. Carpinello.

20    I have Mr. Davis and Mr. Zack.

21              Next.

22              MR. JACKSON:  Randall Jackson, Boies Schiller, Your

23    Honor.

24              THE COURT:  Mr. Jackson, Okay.

25              MS. BROCKMAN:  Ellen Brockman.
```

1              MR. SMITH:  Brad Smith.

2              THE COURT:  Ms. Maher -- I'm sorry, who else do I have

3     for plaintiff?

4              MS. BROCKMAN:  Ellen Brockman, B-R-O-C-K-M-A-N.

5              THE COURT:  Brockman.  Okay.

6              MR. SMITH:  Brad Smith.

7              THE COURT:  Brad Smith.

8              Okay.  Who else?  I don't have Mr. Gravante.  I don't

9     have Mr. Shaw, and I don't have Mr. Barrett.  Right?

10             MR. DAVIS:  Mr. Adam Shaw is present with me.

11             THE COURT:  All right.  So, let me recap.  I have

12    Mr. Davis, Mr. Zack, Mr. Boies, Mr. Carpinello, Ms. Brockman,

13    Mr. Shaw, Mr. Jackson and Mr. Smith.

14             Did I miss anybody?

15             No.  Okay.  Lukoil.

16             MR. LENNON:  Michael Lennon from Mayer Brown is on for

17    Lukoil, Your Honor.  I am not sure if Jorge Guttman is also on.

18             MR. GUTTMAN:  Yes, Jorge Guttman is on, Your Honor.

19             THE COURT:  All right.  For Colonial?

20             MR. BURKOFF:  Good afternoon, Your Honor, Dave Burkoff

21    of Hunter Maclean for Colonial Oil, Colonial Group and

22    Mr. Rosado, and Cliff Gruhn from Carlton Fields is also on.

23             MR. GRUHN:  Yes, Your Honor, this is Cliff Gruhn.

24             THE COURT:  All right.  For Glencore?

25             MR. BIRENBOIM:  Good afternoon, Bruce Birenboim and

```
 1    Jessica Carey.

 2            MR. ROSENTHAL:  And Stephen Rosenthal from Podhurst

 3    Orseck, Your Honor.

 4            THE COURT:  All right.  For Trafigura?

 5            MR. GLASS:  Good afternoon, Your Honor, Ethan Glass and

 6    Christina Olivos for Trafigura LLC.

 7            THE COURT:  Good afternoon.  For Vitol?

 8            MR. KELSO:  Good afternoon, Your Honor, Michael Kelso

 9    for --

10            THE COURT REPORTER:  I can't hear him.

11            THE COURT:  Is it Mr. Kelso?

12            MR. KELSO:  Yes.

13            THE COURT:  Okay.  Who else?

14            MR. GREENBERG:  Good afternoon, Gerald Greenberg, from

15    Gelber Schachter and Greenberg, as well.

16            THE COURT:  All right.  On behalf of Morillo and

17    Baquero?

18            MR. MCLISH:  Good afternoon, Your Honor, Tom McLish and

19    Stacey Mitchell from Akin Gump.

20            THE COURT:  Hold on just a second.  Mr. McLish and

21    Stacey Mitchell.  Okay.  I got you.

22            For Helsinge?

23            MR. ENCINOSA:  Good afternoon, Israel Encinosa Holland

24    & Knight together with Alex Gonzalez, Brian Briz, and Dayme

25    Sanchez on behalf of Helsinge, Inc., Helsinge Limited, Helsinge
```

 1   Limited, Daniel Lutz, Luis Liendo and Maria Fernanda Rodriguez.

 2          THE COURT:  And Amy Sanchez?  The other attorney is

 3   Amy?

 4          MR. ENCINOSA:  I apologize, it's Dayme, with a D, Your

 5   Honor.

 6          THE COURT:  I got it, Dayme Sanchez.

 7          All right.  John Ryan.

 8          MR. MARK:  Good afternoon, Etan Mark from Mark, Migdal

 9   & Hayden for John Ryan.

10          THE COURT:  Poveda?  For Poveda?

11          For BAC Florida Bank.

12          MR. GOLDBERG:  Good afternoon, this is Jeff Goldberg

13   from Hughes Hubbard on behalf of BAC Florida Bank.  I am alone

14   today, as Mr. Swerdloff is.

15          THE COURT:  I think I haven't had any appearance by

16   Mr. Rivero for Campos Elias Paez for the last couple of

17   hearings.  Okay.  I think that's it going down the list.

18          Did I miss somebody?  No?

19          Okay.  Going down the list from my fourth discovery

20   order, I have five items to address.  I also have some other

21   things but I want to see if I can catch up on these things that

22   I left over from last time.

23          The first is, issues related to document production by

24   defendants regarding plaintiff's standing as set forth in item

25   four of plaintiff's notice, Docket Entry 386 at 425, and I

```
 1   believe that plaintiffs are looking for an affirmative

 2   statement that there are no more documents to produce from what

 3   I could tell from that notice.

 4          Let me hear whoever is going to speak on behalf of

 5   defendants on that issue.

 6          MR. BURKOFF:  Your Honor, good afternoon again.  It's

 7   Dave Burkoff.  My clients are the Colonial entities.  However,

 8   I believe I am authorized to speak for all defendants on this

 9   issue.  As we understand the notice and following our meet and

10   confer, I think what plaintiff seems to be looking for is a

11   representation that defendants are not withholding on privilege

12   or work product grounds any communications with members of the

13   National Assembly, and I am able to confirm that on behalf of

14   all defendants.

15          THE COURT:  All right.  Does that satisfy your request,

16   Mr. Boies?

17          MR. D. BOIES:  Your Honor, I just want to be clear.

18   What they are saying is that they do not have any

19   communications relating to the trust with the National

20   Assembly, including by counsel representing the defendants.

21          Do I understand that correctly?

22          MR. BURKOFF:  This is Dave Burkoff.  That is my

23   understanding on behalf of all of the defendants and if there

24   is another view among the defense group, counsel can certainly

25   speak up here but that is my understanding.
```

```
1          THE COURT:  All right.  I hear no further comment.

2          Does that satisfy you, Mr. Boies?

3          MR. D. BOIES:  Yes, Your Honor, I accept counsel's

4    representation.  That appeared to be inconsistent with some of

5    the things that had been previously said, but if counsel after

6    an investigation has represented that, I accept the

7    representation.

8          MR. BURKOFF:  We would disagree, for the record, that

9    there is any inconsistencies but that issue seems to be moot

10   anyway.

11         THE COURT:  Okay.  We are putting it to bed, no

12   documents.

13         The next item, which is pretty lengthy, has to do with

14   issues related to plaintiff's privilege log, withholding of

15   documents and document production as set forth in items Roman

16   Numeral I, A through H of defendants' notice.  That's Docket

17   Entry 388 at pages two through nine, and let me find my place

18   here.

19         All right.  So, the first one is production of

20   communications with William, I don't know if I am saying this

21   right, Duker, Carlos Spinelli --

22         MR. BOIES:  Yes, Duker.

23         THE COURT:  Duker, Carlos Spinelli and John Brennan and

24   defendants are saying that these communications with these

25   individuals should not be on the privilege log from what I can
```

 1    tell.

 2          They are saying Mr. Spinelli and Mr. Duker are former

 3    lawyers who were disbarred or resigned from the Bar for

 4    defrauding clients.  That's their statement.

 5          And then as to Mr. Brennan, defendants are admitting

 6    that some communications involving him may be privileged to the

 7    extent he is acting as a traditional investigator, his role is

 8    not so limited, he stands to receive a portion of the proceeds

 9    and so on.

10          So, Mr. Boies, are you prepared to address the

11    rationale for placing communications with these three

12    individuals on your privilege log?

13          MR. D. BOIES:  Yes, Your Honor.  And although I don't

14    think it's critical to the presentation, let me just correct

15    counsel.  Mr. Spinelli is a lawyer in good standing.  All of

16    these people Mr. Duker, Mr. Spinelli and Mr. Brennan are

17    consultants who are supporting the lawyers in terms of

18    litigation and, as such, conversations and communications with

19    them are black letter law privileged.

20          I was deposed, as the Court is aware, and I was asked

21    about the role of these individuals.  And as I testified at the

22    deposition, all of these people are assisting counsel in the

23    litigation.  To the extent I was asked what they did, I

24    explained what they did and explained why what they did was

25    privileged.  So, I think these individuals are normal

 1    litigation consultants.  They are helping us with the work that

 2    we are doing.

 3            It is true that Mr. Brennan has a contingent element of

 4    his compensation, but that does not prevent him from assisting

 5    counsel in a traditional legal assistant and investigative way.

 6    Each of these individuals -- and as I said, I was examined on

 7    this in terms of my deposition and I don't think there was any

 8    instruction not to answer with respect to the kind of work they

 9    did, so I think the record is there that these are individuals

10    who are assisting counsel and are privileged.

11            THE COURT:  Okay.  What about the contention that any

12    communications from or to Mr. Brennan relating to his financial

13    interest in the litigation is not privileged and should be

14    produce?  Aside from him serving as a consultant, what about

15    his financial interest?  Have you put those communications in

16    the privilege log also?

17            MR. D. BOIES:  Your Honor, I would have to confirm that

18    but the financial arrangement with Mr. Brennan is a matter of

19    public record through the documents we have already produced.

20    If there was anything else -- and I don't know whether there

21    was anything else, but I can check and confirm this with the

22    Court.  If there is any other document that has been withheld

23    on privilege grounds with respect to Mr. Brennan, it would have

24    to be a document that had to do with discussions that we would

25    consider to be privileged.

```
1            As I say, there is no dispute about what his financial

2   arrangement is because that is included in the documents we

3   have already produced.

4            THE COURT:  All right.  But the question is if there is

5   anything that maybe somebody was doing the privilege log and

6   said, oh, Brennan is privileged and maybe you go back now and

7   you find something that either in whole or in part relates to

8   his financial arrangements, whether it be a document or a

9   communication, defendants want that to be produced because

10  their contention is that those documents or communications

11  would not be privileged.

12           So, you have agreed to go back and double-check for

13  those?

14           MR. D. BOIES:  I will, Your Honor.  I don't necessarily

15  agree with the defendants that it is not, that those things are

16  not privileged.  However, I will go back and I will identify

17  any documents that are withheld with respect to Mr. Brennan

18  that relate to his consultation.

19           THE COURT:  What would be -- I'm sorry, Mr. Boies, what

20  would be the privilege grounds for withholding those documents

21  that relate to strictly his financial compensation, whether

22  that paragraph is found in the middle of something else or

23  whether it's a totally independent document?

24           MR. D. BOIES:  I think if the only statement in the

25  document is about his compensation, we would be prepared to
```

1    produce those.  However, I don't think there is going to be any

2    document that just relates to his compensation.  We will go

3    back and check, Your Honor.  Let us go back and see what the

4    universe is and then we will report to the Court on that if

5    that's okay.

6         THE COURT:  All right.  Any comments from defendants on

7    this issue?

8         MR. BURKOFF:  Yes, Your Honor, this is Dave Burkoff.

9    Respectfully, this is more of the same.  It's been two weeks

10   since this log has been produced.  We have been urging and

11   pressing plaintiff to supplement the log to give us more

12   details so that we can answer the kinds of questions Your Honor

13   is developing right now.

14        We have a commitment to go back and double-check.

15        By when?  When are we going to receive the

16   non-privileged documents or redacted versions of documents with

17   non-privileged material?  Respectfully, we have a tight time

18   frame on standing-related discovery and that should have

19   already happened.

20        If I can respond to a couple of the points made,

21   Mr. Duker -- Mr. Boies is right, he testified to a degree

22   related to the roles of these individuals.  Broadly speaking,

23   he testified that they were litigation consultants and didn't

24   put a lot of further detail on it.

25        It seems clear that each of these gentlemen have worn

```
1   multiple hats.  With respect to Mr. Duker, Mr. Boies testified
2   that he is with Algamex.  That is the entity -- or an entity
3   that stands to receive a portion of any recovery in this case
4   and many of the communications on the log are from the period
5   of time when Boies Schiller is on the one hand, Algamex is on
6   the other, maybe Mr. Brennan -- not maybe.  Mr. Brennan on the
7   another and PDVSA on yet another were apparently negotiating
8   what the terms of this arrangement would be.  And it's not
9   clear to us remotely why communications, for example, between
10  Algamex and Boies Schiller related to Algamex's financing of
11  this case or potential share in the contingency should be
12  privileged and we shouldn't have to guess on that.
13       There is nothing in this log to explain when plaintiff
14  said that a given communication it is, for example, the
15  attorney-client privilege, who is the lawyer, who is the
16  client, what's the relationship, what was the issue they were
17  talking about, was it truly legal in nature or was it business
18  in nature along the lines of what cut of any recovery is this
19  party going to get.
20       We don't see that on this log and on some level I'm
21  jumping ahead to item B in our notice but they are related.  I
22  mean, frankly, items A through E, Your Honor, all relate to
23  this notion of we have a very generic privileged log with
24  entries that don't give us enough information to assess the
25  various privilege claims.
```

```
 1            So, Your Honor, I would maybe end here with where I
 2   started, which is we need a supplemented log within the next
 3   couple of days so that we can adequately assess plaintiff's
 4   claims, and with that log they should produce any
 5   non-privileged material, including redacted documents where
 6   appropriate that shouldn't have been on the log in the first
 7   place.
 8            THE COURT:  All right.  Go ahead.
 9            MR. D. BOIES:  Your Honor, Mr. Davis is going to
10   address the privilege log issues, but just with respect to
11   these funding documents, I don't know that there are any
12   documents relating either to the Algamex or Mr. Brennan --
13            THE COURT REPORTER:  Excuse me, Judge, I don't know if
14   he's on a speaker but he goes on and off --
15            THE COURT:  I'm sorry, Mr. Boies.  We are having
16   difficulty hearing you clearly.
17            Are you on a speaker phone?
18            MR. D. BOIES:  No.  Can you hear me better now?
19            THE COURT:  Oh, much better.  Thank you.
20            MR. D. BOIES:  Thank you.
21            What I was saying is, I don't know that there are any
22   documents that relate to Algamex's funding that were withheld
23   on privilege.  I don't know that there are any documents that
24   relate to Mr. Brennan's funding that were withheld on
25   privilege.  I said that I would check that and we can check
```

```
 1    that -- we can check that in 24 hours.  Can we not,

 2    Mr. Carpinello?

 3            MR. CARPINELLO:  Yes, we can do that, Your Honor.

 4            THE COURT:  All right.

 5            MR. D. BOIES:  We will check that in 24 hours.  If

 6    there are documents that relate to Algamex's funding or

 7    Mr. Brennan's funding that were withheld on privilege, we will

 8    either produce them or we will produce them in redacted form if

 9    there is a reference to funding in an otherwise privileged

10    document.  But I don't -- I don't believe that this is

11    something that is going to reveal anything that is not already

12    revealed.  Even if there is documents, which I don't know that

13    there are, it won't reveal anything that isn't really already

14    revealed.  They know what the percentages are.  If there is

15    anything that's relevant here it would be that.

16            THE COURT:  Well, let me hear from Mr. Burkoff.  If

17    they give you -- and I will address the matter of the

18    sufficiency of the privilege log in a minute but just zeroing

19    in on Mr. Brennan, it's 24 hours for the review of any

20    privilege log documents involving him and disclosure of

21    anything that in whole or in part relates to financial

22    arrangements, and if it's in part, obviously, redaction of the

23    non-financial arrangement portions of it, does that meet your

24    time deadline and do you want anything else for Spinelli and

25    Duker before we move on to the quality of the privilege log?
```

1          MR. BURKOFF:  Your Honor, I think these things go

2     together.  Yes, 24 hours, you know, we will look at what

3     plaintiffs provide in terms of, you know, after they go through

4     all of the entries related to Spinelli, Duker and Brennan and

5     produce what shouldn't have been on the log but with that they

6     should also supplement the log so that anything still on the

7     log reveals enough information so that we can know whether it's

8     a legitimate claim of privilege or not.

9          THE COURT:  Hold on just a second.  We were talking

10    about Brennan because of his financial interest.

11         Spinelli and Duker, whatever else comes under the

12    privilege log is not detailed enough or are you challenging

13    that they are consultants and providing support for the --

14    litigation support for the lawyers?  Are you challenging that?

15         MR. BURKOFF:  We know from Mr. Boies's deposition that

16    Mr. Duker is with Algamex, so Duker and Brennan are in the same

17    camp with respect to having a contingency interest in the case.

18    In Algamex's case that would be helping to finance the

19    litigation.

20         THE COURT:  Okay.  So, financial arrangement

21    information for both Duker and Brennan.

22         Okay.  What else?

23         MR. BURKOFF:  The same would go to Mr. Spinelli.  It's

24    not clear what his role is, frankly.  On the log, among other

25    things, we see communications between Mr. Spinelli and PDVSA.

 1    They are marked as attorney-client privilege.  It's not

 2    remotely clear why that would be the case.  So, Your Honor,

 3    that's why these issues dovetail together where we just don't

 4    have enough information on the log to be able to --

 5         THE COURT:  Okay.  But in terms of the role of

 6    Mr. Spinelli, can we put him under the financial arrangement

 7    umbrella, or not?

 8         MR. BURKOFF:  I think all three consultants should be

 9    under that umbrella based on what we know right now but we have

10    limited information with respect to Mr. Spinelli.

11         THE COURT:  Mr. Boies, does Mr. Spinelli stand to

12    recover some monies from this litigation like Mr. Duker and

13    Mr. Brennan?

14         MR. D. BOIES:  No, Your Honor.  He does not have any

15    such arrangement but I will be able to include him in our

16    search because I know there isn't going to be anything there.

17         For Mr. Duker, Mr. Spinelli, Mr. Brennan, Mr. Algamex

18    -- not Mr. Algamex but Algamex, the entity, we will go back and

19    see whether there are any documents that relate to funding or

20    payments that they get as a contingency from the case that were

21    withheld as privilege.

22         I am certain it will not be with respect to

23    Mr. Spinelli.  I doubt very much there will be with respect to

24    Algamex and Mr. Duker.  I think we don't know with respect to

25    Mr. Brennan but we will check that and get back to them in

```
 1   24 hours.

 2         THE COURT:  All right.  So we put them all under the

 3   financial umbrella so we can go to item B, generic descriptions

 4   in plaintiff's privilege log.  Mr. Burkoff has already alluded

 5   to, they don't think this privilege log conforms with the local

 6   rules that require the name and job title or capacity of the

 7   author, and the name, job title or capacity of the recipient,

 8   date, title of document, subject matter, purpose for which it

 9   was prepared and the specific basis of claim.

10         I am reading off of footnote six of Docket Entry 388,

11   page four.

12         Mr. Boies, do you contend that the privilege log does

13   meet in all respects with these requirements or wouldn't you

14   concede that it needs polishing?

15         MR. DAVIS:  Your Honor, Steve Davis.

16         THE COURT:  Oh, Mr. Davis, you are going to address

17   that.  Okay.  Let's hear from you.

18         MR. DAVIS:  Hi, Your Honor.

19         Yes, the privilege log complies with all of the

20   requirements that we have under our rules.  It sets out the

21   document type, whether it's an e-mail, memo, PDF, whatever the

22   format is.  It sets forth the software, whether it's an Outlook

23   e-mail, a Word document a PDF.  It sets forth the date.

24         We took the subject title off of every document that is

25   being logged in that section of the privilege log and that's
```

 1    specifically included there.

 2          We then give you the from or the author of the document

 3    depending upon that particular document, all the addressees,

 4    all the people who it was copied to.

 5          We then, specifically, identify the privilege type and

 6    if I may talk about the people listed on the witness, we have a

 7    log on the very -- on page 38 of our privilege log, Your Honor,

 8    we list all of the individuals and their various positions in

 9    this litigation.  As opposed to listing them separately in each

10    individual item, we created a log, a log for the log, if you

11    will, that identifies each of the lawyers who were involved in

12    preparing this or in having these communications and the

13    consultants involved, as well as the people that were

14    communicated to.

15          Lastly, we described what the e-mail was about

16    describing it was a strategy for the litigation trust or

17    whatever confidential information this involved.

18          You should look at this in context of what the request

19    was asked of us.  We were asked to produce documents relating

20    to the preparation of the trust, the creation of the trust, our

21    engagement.  They have received the trust document.  They have

22    received drafts of the trust document.  They have received the

23    engagement letter.  So, as Mr. Boies described earlier, they

24    already know the end.  They know what the financial

25    arrangements are for the three entities that were listed in the

1   plea agreement.

2          So, looking at this in context, they are asking for

3   documents that were discussed and created among lawyers dealing

4   with the situation of the creation of this trust and there is a

5   very discrete time period of May 2010 -- May of 2017 all the

6   way through August of 2017, in which each of these documents

7   are specifically listed and specifically detailed as to what

8   those communications were.

9          But this log, again, it's not a case in the case cited

10  by them in their papers relating to a company where we don't

11  know an employee or what an employee's role was.

12         This is a case where we have lawyers who are working on

13  this case, some of them are on this call, that are working on

14  this case dealing with documents that detail case strategy,

15  mental impressions of the lawyers and the creation of the

16  documents.

17         One other thing to add here, Your Honor, is we had

18  produced drafts of the various trust agreements as you inquired

19  and it includes our metadata.  So, they have all of the detail

20  that they need and that they have asked for in their request to

21  pursue discovery of the standing issue and we have

22  appropriately raised the attorney client privilege and the work

23  product privilege and common interest privilege to protect

24  documents that were involved in the creation of this trust and

25  the pursuit of the litigation strategy that we are following.

```
 1              So, I believe that in context of what they have asked

 2   for that we have provided appropriate and meticulous detail as

 3   required by the rules of this Court.

 4              THE COURT:  All right.  Mr. Burkoff.

 5              MR. BURKOFF:  Your Honor, we disagree.  If you look at

 6   the subject title information column which they added in the

 7   revised version after we told them that was their obligation,

 8   among other things, it in many cases just says engagement

 9   letter or PDVSA or similar language that doesn't remotely help

10   to identify why a given communication is on this log and

11   whether that's appropriate.

12              If you look to just one example, this is one we pointed

13   out to plaintiffs and I can choose virtually any item on the

14   log, but item 190 on page nine, for example, is an e-mail

15   between Mr. Spinelli, who we discussed a moment ago, who is a

16   litigation consultant, apparently, and Henry Facchinetti, if

17   I'm pronouncing that right, who appears to be with the

18   Procurador General's office.

19              It's just the two of them on the e-mail.  The only

20   description we have is the e-mail containing confidential

21   communications about draft engagement letter and it's being

22   withheld on three separate bases, attorney-client, work product

23   and common interest.

24              What is the attorney-client relationship there?  Who is

25   the attorney?  Who is the client?  Why is this about hiding
```

 1   legal advice as opposed to negotiating the engagement letter at

 2   arm's length?

 3          We know from Mr. Boies's deposition that PDVSA was

 4   separately represented during those negotiations so why is this

 5   privileged on attorney-client grounds, even if Mr. Spinelli as

 6   a consultant is able to act as an agent from the law firm here

 7   which we don't know enough at this point to know whether that

 8   is the case or not.

 9          Work product, there is no way to understand why that is

10   work product.  And common interest, what's common interest?

11          Yes, there is a column that says privileged

12   description, but it doesn't give you enough information to

13   actually understand why they are withholding certain documents.

14          THE COURT:  All right.  So, to zero in on this example,

15   Mr. Facchinetti, according to the who's who page, is somebody

16   who works for the Procurador General's office and his title

17   seems to be general manager of litigation, and then

18   Mr. Spinelli we have been told is a consultant to the Boies

19   Schiller law firm, and the subject matter -- the title is

20   engagement letter, so I don't know who is engaging who.

21          Then we have the three claims, attorney-client, I don't

22   know who the attorney and the clients are; work product, I

23   don't know whose work product.  Presumably it's Mr. Spinelli's

24   work product but it's being disclosed to an outsider.

25          And common interest, I don't know, does the Procurador

1   General have a common interest joint defense agreement or

2   something along those lines with PDVSA?  I don't know.

3        I don't know that these answers can be extracted in

4   this fashion.  That might take us to the next point, which is

5   where defendants are seeking a Rule 30(b)(6) deposition just to

6   find the answers to these questions.

7        Let me hear, Mr. Boies, what's your position on that.

8        MR. D. BOIES:  If all they want is a 30(b)(6)

9   deposition on who these people are, I don't --

10       THE COURT:  No, I'm sorry, the privilege log tells us

11   who they are but this one example, you know, why are there

12   privileges claimed on discussions about -- on an e-mail re:

13   engagement letter between a consultant and an outsider?

14       I guess that's the questions they are asking.

15       MR. D. BOIES:  Sure.  Let me just answer that, which I

16   think is apparent from the law, and I think Mr. Davis can

17   address the extent to which this matches the local rule.

18       Mr. Spinelli is a lawyer working with us.  Because he

19   speaks Spanish very well and most of us don't, he is often the

20   person who is communicating with people in Venezuela on our

21   behalf.  The person he is communicating with here is the

22   general manager for litigation of the Procurador General's

23   office who is working with us in terms of determining whether

24   we are going to take the case on and, if so, under what terms.

25       Those kind of pre-complaint and pre-retention

1    discussions are clearly privileged, and we can submit a brief

2    that demonstrates under New York law, under Florida law, under

3    law generally, those kinds of discussions are privileged.

4         It's not a discussion of work product with a third

5    party because this isn't a third party, and even if it was a

6    third party, that's where the common interest privilege comes

7    in because generally there would have been a common interest,

8    even if it was a third party, which it was not in this

9    particular instance.

10        We believe all of that is apparent from -- if you take

11   the who's who part of the log together with what is provided in

12   the law itself, we think that we have complied, and this is a

13   much more detailed privilege log than many that I've seen.

14        THE COURT:  I hate to interrupt you, but you are saying

15   that this Mr. Facchinetti does not work for PDVSA.  He works

16   for the Office of the Procurador General.  So, you're saying

17   that there is common interest between the Office of the

18   Procurador General and PDVSA, presumably the client for whom

19   the trust was conceived or created.  That's not clear from

20   these papers.  Look at how much explanation it took for you to

21   point us in this direction.

22        It seems to me like maybe the 30(b)(6) depo would be

23   one that would maybe help defendants narrow down what it is

24   they want to fight about.

25        I could tell you, I couldn't tell from this entry on

1    the privilege log what the basis for the privilege is just

2    looking at who's who and the descriptions.

3         So, are you amenable to going that route so that we can

4    narrow this down to the things that really need fighting?

5         MR. BURKOFF:  Your Honor, this is Dave Burkoff, if I

6    can interject.

7         You know, frankly, our view is that this is a last

8    ditch alternative and that it's the plaintiff's obligation here

9    to produce a more fulsome log.

10        I mean, I could tell you, I've got no doubt that many

11   of the entries probably are legitimate or there likely are

12   legitimately privileged items on this log.  It should be the

13   plaintiff's burden and obligation to give us the log that is

14   more detailed so that we can figure out where the challenges

15   might lie, as opposed to putting us in through the pace of

16   needing to go and take a deposition where we are marching

17   through each and entry conceivable.  You know, we ---

18        THE COURT:  They are saying they are technically

19   complying with the local rules because they are giving you, you

20   know, date, who is the sender, who is the recipient and what

21   the subject matter is because they lifted it off of the

22   e-mails, which is the common way to do it, the re line on the

23   e-mails.  And then they are telling you the basis of their

24   privilege claim, and they are saying now that the Office of the

25   Procurador General has a common interest with the PDVSA and the

 1    PDVSA trust.

 2            And, I don't know, if you are ready to accept that and

 3    you are ready to accept this entry to be privileged, under at

 4    least common interest if not attorney-client and work product.

 5    I mean, it's up to you all.  I can't sit here and go through

 6    hundreds of privilege log entries and figure this out for you.

 7    And I don't think that its realistic for me to try to, as it's

 8    customary, get all of the documents that go behind this

 9    privilege log and review each one of them one by one.

10            I would be probably retired by the time I get done with

11    that.  So, I don't know what -- you know, what do you suggest?

12    You're asking -- you want a more fulsome privilege log, but I

13    bet you that when you get that more fulsome privilege log you

14    are still not going to think it's enough.

15            UNIDENTIFIED SPEAKER:  Your Honor we what we --

16            THE COURT REPORTER:  Who's speaking?

17            THE COURT:  Who is speaking?  Is it Mr. Burkoff?

18            MR. BURKOFF:  Yes, Your Honor, I apologize.

19            That this week plaintiff produces a more fulsome log

20    along with the results of its review of the consultant's

21    e-mails that we discussed a few minutes ago and with that

22    revised information our game would be, at a minimum, to whittle

23    down the number of entries that we have questions about and

24    either we can meet and confer and try to resolve those or come

25    back to Your Honor and in that case maybe it's a small step

1    that you can review in camera and there is a fallback if we

2    need a 30(b)(6) time but that seems like something that -- we

3    are getting ahead of ourselves on that.

4           THE COURT:  All right.  Well, define more fulsome

5    because they are saying they are complying with the local rule

6    and they need not to do anything else.

7           So, what in your book is more fulsome?  What do you

8    want?

9           MR. BURKOFF:  Well, using the example we looked at,

10   which is 190, the log would explain who is the attorney, who is

11   the client, why it was legal as opposed to says legal as

12   opposed to an economic or business communication, for example,

13   communications related to the financial arrangements; work

14   product, what's the basis; common interest, who is the common

15   interest between and what is it.

16          THE COURT:  Well, maybe they need to separately define

17   who they are claiming common interest with and what the basis

18   for that is, and that not necessarily going in the privilege

19   log but that's sort of like the who's who log telling you what

20   their basis is there.

21          I honestly -- I don't know, let me hear from Mr. Davis.

22          Are you prepared to do more than what you have done?

23          MR. DAVIS:  Your Honor, I wanted to make sure I didn't

24   hang up when I picked up the speaker phone so that's why I had

25   to pause.

1          Mr. Boies, do you want to speak?

2          MR. D. BOIES:  No, go ahead.

3          MR. DAVIS:  The log complies with the local rules, Your

4     Honor.

5          Again, going back to the context, this is all reviewing

6     draft engagement letters.  And mind you, they have the final

7     engagement letter.  This talking about draft trust agreement,

8     mind you, they have all of the drafts, all of the metadata and

9     they have the final trust agreement.

10         They have all of the information that's on the subject

11    matter of the privilege log and virtually every item here

12    relates to either the trust agreement or the engagement letter.

13    There are some things with attorney notes, and we believe that

14    the log is sufficient.  And perhaps there may be a defenition

15    on the common interest privilege that we are asserting but,

16    Your Honor, you are well aware that the common interest

17    privilege applies on cases like this and it goes through the

18    facts that, you know, we had contact through to Venezuela.  We

19    had contact with PDVSA, and then we ultimately have this log

20    that is produced, all leading up to the creation of the trust.

21         So, these are all going to be, by definition was going

22    to be a significant amount of attorney-client and work product

23    communication in that time period.  So, we believe the log

24    complies with the rules, Your Honor.

25         MR. BURKOFF:  Your Honor, this is Dave Burkoff.  I

1    think a description of what are the attorney-client

2    relationships in play here, what sets of common interest are we

3    talking about and who are they between could potentially go a

4    long way.  You know, I am cognizant of the fact that we are on

5    item B in our minutes and C, D and maybe a couple of the

6    following ones which we will talk about in a minute, all get to

7    these issue.

8           I mean, C, for example, they were withholding

9    communications with Venezuelan officials but we don't have

10   enough to go on to understand why there is privilege there,

11   what's the attorney-client or common interest relationship.

12          MR. CARPINELLO:  Judge.

13          THE COURT:  Yes.

14          MR. CARPINELLO:  George Carpinello.  I was involved

15   with the meet and confer with the defendants on this.  We

16   explained every single question that's now being raised by

17   Mr. Burkoff.  We explained the relationship of Mr. Duker,

18   Spinelli and Brennan.  We explained that they were consultants.

19          We explained the joint interest privilege with the

20   Venezuelan government officials.  The Procurador is the person

21   who authorized and signed the trust agreement.  We explained

22   that the Venezuelan government had an interest, a common

23   interest with PDVSA in terms of collecting on the PDVSA claims

24   against these defendants.

25          If you look at the log and understand that all of these

```
 1    communications were in the relationship of creating a vehicle

 2    to bring this action, it's clear if you look at each of these

 3    items what these documents are.

 4          His example that he gave you is a perfect example.  He

 5    knew what Mr. Facchinetti did.  Mr. Facchinetti was a legal

 6    consultant to Procurador which had a clear common interest with

 7    PDVSA and ultimately the trust when it was created to collect

 8    these sums from the defendant.

 9          These were all explained to them.  The next step -- the

10    only other thing that can be done is for us to write a

11    paragraph about the actual discussions that are in the

12    privileged document, thereby waiving the privilege.  So, we

13    don't think a more fulsome log or even a 30(b)(6) would add

14    anything that they don't already know, and I have to say this

15    because this was all entirely explained to them, I believe, in

16    two separate meet and confers.

17          MR. BURKOFF:  This is Dave Burkoff.  We have,

18    obviously, a disagreement on that.

19          THE COURT:  Hold on just a second.  Hold on.

20          Are you prepared, Mr. Davis, Mr. Carpinello, to

21    supplement the privilege log with an explanation of what is the

22    nature of the common interest privilege that you are claiming

23    and who are the participants in that common interest?

24          MR. D. BOIES:  Your Honor, this is David Boies.  I

25    apologize for injecting myself, but we will do that.  To bring
```

```
 1   this to an end, we will supplement it to provide an explanation

 2   in the privilege log itself.

 3          As Mr. Carpinello said, this was given to them in a

 4   meet and confer but we will supplement the privilege log so

 5   it's right there and if that will move us onto the next item,

 6   we will do that.

 7          THE COURT:  All right.  So, you will supplement the log

 8   with the nature of the common interest privilege that is

 9   claimed and who are the participants in this common interest?

10          MR. D. BOIES:  Yes, Your Honor, we will do that.

11          THE COURT:  Okay.  And I am still not sure,

12   Mr. Burkoff, what you mean by "more fulsome."  If a privilege

13   log technically meets the requirements and with the

14   supplementation of the common interest they would tell us who

15   the players are to this common interest claim, do you want

16   maybe more specificity which you did get already from

17   Mr. Boies' deposition as to what activities these various

18   players are in, like Mr. Major and Mr. Pencu from Meister

19   Seelig, what their role is?  Would that help you figure things

20   out?

21          MR. BURKOFF:  Your Honor, I think that will be helpful

22   and I think, you know, it sounds like in some fashion we

23   already have a commitment to do that with respect to the

24   litigation consultants, and with that additional information

25   and the review of all of those e-mails and potential supplement
```

 1   and production, hopefully that will get us past much of this.

 2   THE COURT:  Okay.  So, are you prepared, Mr. Boies,

 3   Mr. Davis, to also supplement the who's who with the roles of

 4   these various people like the interplay of the two law firms

 5   and the role of the trustees?  And then, obviously, you know,

 6   whatever comes under common interest, can that cover a lot of

 7   grounds so we don't have to worry about attorney-client and

 8   work product which has been added on there and then -- for

 9   example, I am looking here, just jumping at something that

10   doesn't have common interest, 344 e-mail, re:  PDVSA engagement

11   letter between Alexander Pencu and Christopher Major, those are

12   two attorneys within the same law firm.

13   So, I don't know, there is attorney-client work product

14   CI.  It seems to me that that work product would be the only

15   thing that applies there.

16   I'm sorry, maybe you went overboard with your privilege

17   claims a little bit and that's causing some confusion.

18   MR. D. BOIES:  Your Honor, I have to look at the e-mail

19   but it may very well be that not only work product but it

20   discusses attorney-client advice, advice that is given to the

21   client or a fact that we received from the client.

22   THE COURT:  It could be.

23   MR. D. BOIES:  So, the fact that it's simply between

24   two lawyers doesn't necessarily mean it doesn't contain

25   privileged information.

```
 1              THE COURT:  It could be, but it could easily be that
 2     this one qualifies under the work product and we don't have to
 3     worry about the other stuff.  That's sort of like what I am
 4     bringing it under.  So then we can just get rid of a lot of
 5     stuff and really narrow it down to what you all are really
 6     fighting about.
 7              All right.  So, supplement with that as chore number
 8     two with the nature of the common interest privilege and then
 9     the roles that these various people played and maybe with
10     that -- when can you do that by, 24 hours?  I'm kidding.
11              MR. D. BOIES:  Perhaps we can do that by Monday, Your
12     Honor.  We will do that by Monday, Your Honor, if that's okay.
13              THE COURT:  All right.  By Monday the second phase.
14              Okay.  So, we will hold the idea of a Rule 30(b)(6)
15     deposition in abeyance if all else fails.
16              Next, let's see, I am back to C.
17              Did we cover maybe -- as we covered B, did we cover
18     some of the other ones?
19              MR. BURKOFF:  Your Honor, this is Dave Burkoff.  We
20     certainly stand on C and D.  I think we will have some more
21     information on both.
22              On B, I will just point out that where PDVSA was
23     represented by separate counsel in these negotiations, we
24     respectfully don't see the basis for privilege and we now have
25     confirmation from plaintiffs that were represented by ---
```

1            MR. D. BOIES:  Your Honor, if I could address that.

2            In a conventional case when I negotiate with the

3       General Counsel of a company about possible representations,

4       the exchange of that information is always privileged.  We

5       can -- we will fight -- with the Court's permission, we will

6       give the Court a supplemental citation authority on this issue.

7            I mean, I don't think the law is in any way ambiguous

8       and when you are engaged in discussions leading up towards a

9       possible attorney-client relationship, those communications are

10      protected by the attorney-client privilege and that's even if

11      you don't end up actually representing the client.  I think the

12      cases are clear and with the Court's permission, we will submit

13      those to the Court for its consideration.

14           THE COURT:  All right.  Let me just find out.

15      Mr. Burkoff, you said that -- and it wasn't clear.  Maybe you

16      didn't come through clearly.  We have covered item B, and I

17      think we have covered item C with defining who these people are

18      and why they have common interest privilege.

19           Then item D is the one you are saying because they were

20      represented by separate counsel you are entitled to see the

21      communications between the Boies Schiller firm and that counsel

22      regarding the negotiation of the trust agreement?  Is that your

23      contention which Mr. Boies is saying, no, that's all protected?

24      Am I on the right page there?

25           MR. BURKOFF:  You are on the right track, Your Honor.

1    Here Mr. Boies has described a conventional case.  I submit

2    that this is not a conventional case.  Here you have a little

3    bit murky because the law is spare.  But here you would appear

4    to have communications back and forth related to the potential

5    assignment of claims from one entity to another where each

6    entity was represented by separate counsel.  So, we are not

7    talking about Boies Schiller necessarily in its capacity as a

8    lawyer to PDVSA.  We are talking about an arm's length

9    negotiation surrounding these two agreements, the engagement

10   letter and ultimately the trust agreement.  So, it sounds like

11   we have a difference of opinion with the plaintiff on that

12   issue.

13           THE COURT:  So, as this is phrased -- I'm sorry, let me

14   just make sure I am still on the right track.

15           Plaintiff's withholding of communication with PDVSA.

16   So, that's the trust withholding communications with PDVSA, the

17   assignor, regarding the negotiation of financial terms where

18   PDVSA has counsel and presumably the trust has counsel and they

19   want to see that because they are saying that's not protected.

20           Now, are you saying that this also comes under the

21   common interest privilege?  Is that what you are alluding to,

22   Mr. Boies?

23           MR. D. BOIES:  It is both that, Your Honor, and it is

24   in addition -- this is explained in my deposition that they

25   took and, again, with the Court's permission, we don't want to

```
 1   overly burden the Court, it might be useful for the Court to

 2   have the benefit of that deposition.  Because as I explained in

 3   that deposition, there was an initial period when we were

 4   discussing with representatives of PDVSA whether we would

 5   represent PDVSA in directly bringing these claims.  That is,

 6   PDVSA would be the plaintiff.

 7        We also were discussing with PDVSA whether PDVSA would

 8   assign the claims to a litigation trust and ultimately it was

 9   decided that the claims would be assigned to a litigation trust

10   and at that point we became counsel for the Litigation Trust.

11        Throughout this discussion, there were pre retention

12   discussions about representing PDVSA in which confidential

13   information was disclosed, and as I say, I think the cases are

14   clear that that is privileged and protected.

15        THE COURT:  I'm sorry, Mr. Boies, but they are talking

16   about -- they seem to be talking about something after which is

17   regarding negotiation of financial terms of trust agreement.

18   They are sort of talking past that stage to the point where

19   PDVSA now has its own counsel.

20        You are representing the trust.  Somebody else is

21   representing PDVSA and now counsel is negotiating the financial

22   terms of the agreement.  You are no longer -- it's no longer --

23   that's why it would seem to me that you would be claiming

24   common interest because, obviously, PDVSA still has an interest

25   in this thing.
```

1           I don't know that this carry over from, you know,

2    negotiating, representation or not really applies to this

3    circumstances.

4           MR. D. BOIES:  I agree with the Court entirely that it

5    is common interest.  That is the simplest way to look at it but

6    the Court may want to keep in mind that there is no

7    compensation that flows through to the trust.  The trust --

8    what the trust receives, the trust receives for PDVSA.

9           There is negotiation of compensation for the lawyers,

10   for the funder, for the investigator but that was a negotiation

11   relating to how they would be compensated as part of this

12   prospective representation.

13          It was not a negotiation between the trust on the one

14   hand and PDVSA on the other because the trust isn't getting

15   anything.  The only beneficiary of the trust is PDVSA.

16          THE COURT:  So, you are saying that they are not really

17   capturing -- with this sub D, they are not really capturing

18   what's happening.

19          MR. D. BOIES:  Exactly, Your Honor.

20          THE COURT:  All right.

21          MR. D. BOIES:  As I say, I think that's clear from my

22   deposition which we will file with the Court so the Court has

23   it.

24          THE COURT:  Okay.  With those clarifications,

25   Mr. Burkoff, do you want anything else under sub D?

```
 1              MR. BURKOFF:  Your Honor, negotiation with a financing

 2       firm, with the investigator, with other separately represented

 3       parties regarding how a case will be financed, I think we have

 4       this agreement that the case law supports there is common

 5       interest there.  It may be a common interest but it's economic

 6       and not legal.

 7              THE COURT:  All right.  Mr. Boies, could you look at

 8       that concept again and see if maybe the common interest is not

 9       quite legal, just like you are going to look at Mr. Spinelli,

10       Duker and Brennan and see if anything that is purely money

11       there that you are claiming as privileged?

12              MR. D. BOIES:  I will look at that, Your Honor.  I will

13       look at that.

14              THE COURT:  All right.  Okay.

15              MR. BURKOFF:  I apologize.  Is that the same Monday

16       deadline for that?

17              THE COURT:  Yes, everything related to the privilege

18       log has to be by Monday.

19              Letter E, production or logging of responsive

20       communications between August 9th, 2017, and the filing of

21       plaintiff's complaint.

22              Mr. Boies, we have the local rule that says once the

23       complaint is filed you don't have to do any privilege logging.

24       It sounds to me like you extended that a little bit earlier in

25       terms of preparation for filing the complaint, things like
```

 1    that, and you were going to produce a privilege log for that

 2    but has that been produced?

 3          MR. D. BOIES:  Your Honor, I would let Mr. Carpinello

 4    respond to that.  I think the answer was that we were not

 5    withholding any documents as privileged during that period of

 6    time but Mr. Carpinello will correct me if I am wrong about

 7    that.

 8          MR. CARPINELLO:  That is actually correct.  There are

 9    no documents.  We are not withholding any documents.  We didn't

10    extend the line.  We looked for documents during those time

11    periods and as Mr. Boies explained in his deposition.  There

12    were no discussions about the trust or the standing of the

13    trust during that time period so there were no documents.

14          THE COURT:  So you are limiting that to the standing of

15    the trust as opposed to -- obviously, there had to be

16    communications as to, oh, when is the complaint going to be

17    filed and what's going to be in it and so on.

18          You are saying there are no documents relating to

19    standing?  Is that an accurate statement?

20          MR. CARPINELLO:  Right.  I mean, the premise has always

21    been in all this discovery that we are doing documents relating

22    to the standing of the trust.  And, obviously, there is many

23    communications about the merits of the claim or the drafts of

24    the complaint that are investigations exactly, Your Honor, but

25    not with regard to standing of the trust.

1           THE COURT:  Okay.  Here the defendants are saying it's

2     unlikely that neither plaintiff nor PDVSA has any

3     communications or other documents concerning the establishment

4     of the trust from this period.

5           So, you are saying the trust was established, done, now

6     I'm concentrating on filing the complaint and we don't need to

7     talk about the establishment of the trust anymore and there are

8     no documents regarding that.

9           That's your representation?

10          MR. CARPINELLO:  Yes, Your Honor.

11          THE COURT:  All right.  Mr. Burkoff?

12          MR. BURKOFF:  Your Honor, that's right.  We pointed out

13    to the plaintiff that we had ten specific document requests.

14    They have already represented to us and to the Court that they

15    have produced all responsive documents subject to the couple of

16    modifications Your Honor made to our request in one of your

17    earlier orders.

18          We pointed out, however, that we've got zero documents

19    from the seven month time frame and it seemed unlikely that

20    there were none.  And, you know, the other example here on our

21    notice is request number two, seeking any communications or

22    documents related to any investigations of the trust.

23          At the end of the day, of course, we take counsel at

24    their word.  If they have done a diligent investigation and

25    there are no such communications that are responsive to our

1    request during that period either in the trust or PDVSA's

2    possession, we will move forward on that.

3           THE COURT:  All right.  Let's move forward then.  We

4    have that representation.

5           Production of agreements concerning Algamex and the

6    Brennan group, does this come back into the rechecking for

7    Brennan documents?

8           MR. D. BOIES:  It does, Your Honor, and we will check

9    whether we withheld any -- as I say, I do not believe -- this

10   is something that I think we checked before and we will check

11   it again.  I do not believe that the trust has any documents

12   relating to that, but we will check again.

13          THE COURT:  All right.

14          MR. BURKOFF:  Your Honor, this is Dave Burkoff.

15          This is in our notice because plaintiff seemed to be

16   rationing back their interpretation of what's required of them

17   and limiting it to any agreements that are either referenced in

18   the trust explicitly or between the trust and others whereas

19   Your Honor's order was to produce agreements with the Brennan

20   Group or Algamex that relates to the trust for the assignment

21   of claims regardless of whether the trust itself is a party.

22   So, that's the reason with the venue.

23          THE COURT:  All right.  But Algamex and Brennan are the

24   money entity and person and they are going to check back to any

25   money things related to Brennan and Algamex, so I think we will

```
 1   be covered there.

 2              MR. D. BOIES:  Yes.

 3              THE COURT:  What about plaintiff's designation of

 4   documents as confidential and attorneys' eyes only?

 5              The contention here is that there is no confidentiality

 6   order in place so you don't have the right to do that yet.

 7              Mr. Boies, are you all working on a confidentiality

 8   agreement and order?

 9              MR. D. BOIES:  We are, Your Honor, and I thought that a

10   draft had been given to the defendants but, in fact,

11   Mr. Carpinello, can you clarify that?

12              MR. CARPINELLO:  Yes.  We sent a proposed

13   confidentiality agreement to the defendants last week.

14              MR. D. BOIES:  When did we do that?

15              MR. CARPINELLO:  Last week, I think about the middle of

16   last week.

17              MR. D. BOIES:  So, they have a proposed confidentiality

18   order.  I don't know if they've got any comments on it or not.

19   If they don't, the Court would enter it.  If they do have

20   comments, perhaps they can give it to us and we can work it

21   out.

22              THE COURT:  Okay.  If you can get it to me by tomorrow,

23   if it's agreed, I will sign it.  If not, I will allow

24   designations of confidential and attorneys' eyes only documents

25   subject to the entry of a confidentiality agreement and order.
```

1   Hopefully by the time I come back you will have sorted out your

2   disagreements.

3       MR. BURKOFF:  Your Honor, this is Dave Burkoff.  The

4   point of including this in the notice was not so much that we

5   didn't have an order in place.  The plaintiff has, at our

6   request, given us the draft.  We are working through it.  We

7   have lots of defendants but we expect to have send it back to

8   them shortly.

9       Really, a large part of what we are objecting to is

10  they have asked us to keep from our own clients many documents,

11  including the engagement letter, the privilege log itself and,

12  you know, that is an extraordinary remedy that would not

13  remotely appear to be called for in this case.  Limiting use of

14  documents to this litigation for many of the documents may make

15  sense but to have an attorneys' eyes only designation, so far

16  nothing they have produced would seem to rise to that level.

17  That really prejudices defendants' counsel from working through

18  issues in this case with their own clients.

19      THE COURT:  Okay.  Generally, these confidentiality

20  agreement and orders have provisions for those designations and

21  for challenging those designations.

22      I encourage you to work together in terms of any

23  designations that you think are objectionable.  If you can't

24  work it through, then once we have the framework of the

25  confidentiality agreement and order, then you can formally

```
 1    challenge it because that's how it's done.
 2            Obviously, there has to be a reason for confidential
 3    designation.  There has to be a reason for attorneys' eyes only
 4    designation.  That's usually spelled out in the confidentiality
 5    agreement and orders saying what will be designated as such.
 6            So, work through it.  I think maybe plaintiff has, in
 7    an abundance of caution, designated these things ahead of time.
 8    There may be some room for negotiation there.
 9            I leave it to you all to work that through.  And the
10    last one, statements from PDVSA concerning production of all
11    responsive documents.  The famous letter apparently was finally
12    provided in Spanish saying we ain't got no more.  So, where are
13    we on that?
14            You want to ask Ms. Cabeza about this subject matter?
15            MR. BURKOFF:  We provided the letter, Your Honor.
16            THE COURT:  Yes, the letter was provided.
17            Do you want to ask Ms. Cabeza to confirm that they have
18    no more documents?  I am assuming it is she who is going to
19    travel to Spain?
20            MR. BURKOFF:  Yes, Your Honor.
21            THE COURT:  So, do you want to pursue this at her
22    standing deposition and ask her if she really, really doesn't
23    have any more documents?
24            MR. BURKOFF:  Your Honor, this is Dave Burkoff.
25            I think that's the perfect segue to to a set of issues
```

1    surrounding depositions, if I may cede the floor to

2    Mr. Birenboim on that subject.

3         THE COURT:  Give me just a second.  I am going through

4    my little list here.

5         I have covered from my fourth discovery order item

6    number two.  We are putting aside number three.

7         I have two more items here which have to do with

8    scheduling, the timing of privilege dispute resolutions and

9    whether to adjust the schedule.  I am happy to address the

10   status of depositions because that will obviously impact

11   scheduling.  I have received the notice that says, from what I

12   can tell, that all four of the depositions to be taken by

13   defendant have pretty much gelled.

14        Mr. Boies's deposition took place already.  The

15   Procurador General, as I understand it, unless there has been a

16   change, is scheduled for tomorrow.  Dr. Cabeza will be going to

17   Spain June 7th, and Algamex is June 1st in Albany, New York.

18        Has there been any change to those schedules?

19        MR. D. BOIES:  Your Honor, this is David Boies.  As we

20   advised counsel over the weekend, we have had a scheduling

21   problem, half of which we have worked out today and half of

22   which we have not worked out.

23        At the aftermath of the elections down in Venezuela and

24   other political events, people were told, high officials in

25   Venezuela were told that they could not travel to the United

47

1    States, which because we were going to have the Procurador

2    General travel to the United States and have a deposition

3    taken, presented a problem and that deposition will not go

4    forward tomorrow.

5         Originally, we were told and we informed counsel that

6    it might not be possible for Dr. Cabeza to leave the country

7    either.  We have, in consultation with both the Procurador

8    General and other government officials and Dr. Cabeza,

9    confirmed that she will be able to travel to Spain for her

10   deposition.  We are going to request that it be moved from the

11   7th to the 8th, but she will be able to be deposed.

12        With respect to Dr. Reinaldo Muñoz Pedrosa, the

13   Procurador General, that is a deposition that we have not yet

14   been able to figure out how we can take other than by the Hague

15   Convention, which is obviously a very lengthy, lengthy process.

16        So, we have -- I think it's fair to say that we have

17   three of the four depositions gelled, but the fourth one came

18   ungelled as a result of the political situation in Venezuela.

19        THE COURT:  All right.  Is his problem that he cannot

20   leave Venezuela because of the elections or can he travel to

21   Spain like Dr. Cabeza did and just not travel to the U.S.?

22        MR. D. BOIES:  Right now he is not able to travel

23   outside of Venezuela.

24        We are trying any way that we can to find a way to have

25   a deposition taken.  We continue to believe, contrary to the

1    belief of defendants, that deposition by videotape can be taken

2    in Venezuela, but we are trying to see if there is a way that

3    we can get an exception for the Procurador General for this

4    case.  We have not succeeded in doing that.  We were first

5    informed of this, I think, on Friday or Saturday after the

6    elections.

7            THE COURT:  Now, wasn't the Procurador General the one

8    who said in his opinion that depositions by video could be

9    taken in Venezuela?

10           MR. D. BOIES:  Yes.  So, I think, you know, a real

11   possibility would be, if the defendants were prepared to do

12   this, to have his deposition taken by video in Venezuela.

13           THE COURT:  Well, let me ask defendants, if this is the

14   gentleman that is giving that opinion and he is in that

15   position and it is his own deposition, do you still have

16   concerns?  And I know Mr. Birenboim was the one who was

17   addressing this issue working off of the State Department

18   website.

19           MR. BIRENBOIM:  Your Honor, this is Mr. Birenboim.  May

20   I speak, Your Honor?

21           THE COURT:  Yes, go ahead.

22           MR. BIRENBOIM:  I think defendants would still have an

23   issue, Your Honor.  The basis for our position, and I'm not

24   going to reargue it, but it's not because it was said in the

25   State Department bulletin.

1          It's because Venezuela is a signatory to the Hague

2     Convention and there is a section of the Hague Convention for

3     the voluntary taking of depositions that a nation can either

4     sign onto or not sign onto, and Venezuela declined to do that;

5     therefore, the depositions must take place in Venezuela under

6     the regular Hague accord, which Mr. Boies referred to.

7          And while, obviously, we have not looked at anything

8     the Procurador General may provide on this, at least from our

9     perspective right now, the nation of Venezuela has signed on to

10    certain parts of the Hague Convention and it has not signed on

11    to others.

12         What it has not signed onto is the voluntary taking of

13    depositions.  So, until Venezuela changes its status with the

14    Hague, I think our position is clear.

15         THE COURT:  Well, it's up to you, obviously, but the

16    point I was making is, this is the gentleman who opines that it

17    can be done and it would be his deposition that would be taken.

18         So, I don't know who would complain.  I don't know if

19    your concern is the plaintiffs would then turn around and say

20    the deposition is not admissible in proceedings here.  I don't

21    know if you are concerned that somebody would come and, you

22    know, interrupt the deposition and say you are doing something

23    illegal and, therefore, you know, it cannot go forward anymore.

24         I don't know what your concerns are.  I am just saying

25    that in terms of, you know, this being the person who says it

1    can be done and this being his deposition, it might be

2    something that you might consider as to whether it is feasible

3    to get it done by video.  But if you can't, and if you don't

4    want to, I can't force you.  Obviously, it's your call.

5         MR. BIRENBOIM:  Your Honor, with all due respect, it is

6    not our call.  It is illegal for counsel to take a voluntary

7    deposition in Venezuela, even with the permission of the

8    deponent.  That's our reading of the law.

9         So, I don't concur in the view that this is just up to

10   us.  There are many situations where counsel could take

11   depositions in violation of the laws of the country just by

12   getting someone on the phone and taking a deposition but that's

13   not the way we typically operate.

14        The second point I would make, Your Honor, is one needs

15   to step back and remember that this is the plaintiff in the

16   case who is not apparently able to produce what I think

17   everyone agrees, including Mr. Boies, who referred to Mr. Munoz

18   Pedrosa over and over and over again as a central person on the

19   issue of this trust agreement.

20        This is plaintiff's burden to produce a central witness

21   in a jurisdiction where the deposition could be taken.  If that

22   can't be done, then it can't be done, and we will argue what

23   flows from that.  But we certainly don't expect to see any

24   declarations from that person or any evidence from that person

25   or any experts relying on that person.

 1          THE COURT:  All right.  Well, like I said, I am not

 2   trying to tell you how to do things.  It just seemed to me that

 3   that was an option that you had.  You, obviously, do not feel

 4   that that's an appropriate option and I, obviously, respect

 5   that decision.  You know better than the Court how to litigate

 6   your case.  So, I offered it as a common sense option but I

 7   would not in any way dream of forcing anything like that on

 8   you.

 9          So, let's make sure that we are clear.

10          MR. BIRENBOIM:  Your Honor, we are of the view and

11   continue to be of the view that Your Honor has the legal

12   authority to require the trust to produce the assignor or

13   representative of the assignor for deposition, and we think

14   Your Honor has the authority to order that.

15          We understand that that may not be possible based upon

16   what Mr. Boies said and we respect that, but we want to make

17   the record clear on that because we want to argue whatever

18   inferences come from that.

19          THE COURT:  I understand, and you're making your record

20   that in your view it is illegal -- notwithstanding the

21   Procurador General's opinion, it would be illegal for you to

22   take deposition by video in Venezuela.  You have made that

23   position perfectly clear.

24          We also know that at this point in time he cannot

25   travel outside of Venezuela due to political reasons, orders of

1    the Government or whatever it is that Mr. Boies is alluding to.

2    So, the question is how long -- and I think what you are sort

3    of hinting on is for me to give them a deadline and say,

4    produce him by this deadline or not produce him.  I think

5    that's where you are going.

6              MR. BIRENBOIM:  I think, Your Honor, that is correct,

7    that unless this schedule is going to change we would just like

8    the clarity of knowing at some point in time that he is able to

9    leave and go to Madrid or the United States, or not.  That's

10   it.

11             THE COURT:  How long do you need to figure that out

12   Mr. Boies?

13             MR. D. BOIES:  Your Honor, I wish I could give you a

14   really definitive answer, but I think that Dr. Cabeza's

15   deposition, if we take her on the 8th -- if we cannot produce

16   the Procurador General, I think the 8th is a Friday.  If we

17   cannot produce her by the following Monday, I think we will

18   have to say we cannot produce them.

19             THE COURT:  By the 11th then?

20             MR. D. BOIES:  Yes.

21             THE COURT:  All right.  There is the deadline, by

22   June 11th.  Produce them by then or state that you cannot.

23             All right.

24             MR. D. BOIES:  We will do that, Your Honor.

25             DEFENSE ATTORNEY:  Thank you, Your Honor.

```
 1            THE COURT:  That gives us the outside limit.  We have

 2    one done next June 1st, June 8th and limit of June 11th.

 3            Now, with regard to the Plaintiff's request to ask more

 4    questions of the Trafigura corporate representative, I looked

 5    at the -- I went through the notice of deposition.  I went

 6    through the entire transcript.  I received additional

 7    submissions, one on May 24th from Trafigura and then a reply,

 8    what I am calling a reply.  They called it a response from

 9    plaintiff on the 25th, that was Friday.

10            The reason I wasn't prepared to rule on this without

11    hearing from counsel a little bit more is this, and I guess

12    this question, who is going to address Trafigura?  Who is --

13            MR. GLASS:  Your Honor, Ethan Glass on behalf of

14    Trafigura Trading.

15            THE COURT:  Okay.  Mr. Grass.

16            All right.  My first question is this:  There were a

17    number of instances during the deposition where you said he can

18    talk about it, except his communications with counsel and the

19    extent and -- let's see, his name is Mr. Prologo -- the extent

20    of Mr. Prologo's preparation for the deposition was, based on

21    his testimony, consultation with in-house counsel and outside

22    counsel.

23            Now, I kind of knew this from other cases but the

24    plaintiff brings it out.  The factual information that a

25    corporate representative gets from discussions with counsel is
```

```
1    not -- cannot be protected because basically you could say --
2    you could prepare somebody entirely by talking to counsel and
3    then that somebody would say I can't talk about anything that I
4    talked to the attorneys about and that's the end of the
5    deposition.  And I think that's a little bit of what plaintiffs
6    are saying happened here.
7            But my question is, when you were making all of these
8    objections at the deposition, he can't talk about what he
9    talked about with counsel, were you encompassing whatever
10   preparation he had to prepare him for the deposition so that --
11   and I will just give you an outrageous example.
12           If part of the conversation was, it rained yesterday
13   and for whatever reason, let's say that's relevant to the
14   deposition, are you saying he couldn't talk about it rained
15   yesterday because he got that information from counsel or were
16   you delineating and saying whatever advice he got from counsel
17   he couldn't talk about but factual information that he got from
18   counsel he could talk about?
19           That's not clear to me from reviewing the deposition
20   transcript.
21           MR. GLASS:  Thank you, Your Honor, Ethan Glass on be
22   Trafigura Trading, LLC.
23           The objections as to privilege were only about
24   attorney-client communications for the purpose of rendering
25   legal advice, not to hide some factual inquiry.
```

1          Your Honor, as you know, Mr. Prologo is a very senior

2    executive at Trafigura Trading.  We thought he was the right

3    person to say Trafigura Trading doesn't know anything about the

4    trust.  Of course, we've had conversations with Mr. Prologo

5    about this case since it was instituted, so objections to

6    privilege were to caution the witness to not disclose the

7    communications that inside or outside counsel have had with

8    Mr. Prologo about case strategy or about the advice that we

9    were dispensing with regard to this case.  But there were no

10   facts that were withheld under those privilege objections.

11         THE COURT:  So, where you say that -- let me see.  In

12   your submission, you said that they got the -- at the

13   deposition they got the answer that they were looking for,

14   which is do you -- you know, have you had conversations with

15   outside people, do you know anything about standing and you're

16   saying basically he answered that question.

17         Can you point me where in the deposition exactly he

18   answered that question, which in your mind or in Trafigura's

19   position should have been the beginning and the end of the

20   deposition?

21         MR. GLASS:  Yes, absolutely, Your Honor, if you will

22   give me just a moment.  I'm pulling up the deposition.

23         Part of the trouble that we had, as I am looking, is

24   it's proving a negative.  Trafigura Trading was not involved in

25   the trust or the assignment so what can we do other than put up

1    the head of our office to testify on behalf of the company and

2    give them the deposition testimony that they sought in addition

3    to the attorney representations.

4        THE COURT:  Well, but, for example, there was a

5    question which is I think what was brought up at the last

6    hearing where they were asking has Trafigura had conversations

7    with outside people, I think Venezuelan government, and the way

8    that it was answered it wasn't a straight no.  It was like, no,

9    I haven't -- I am just going by memory so don't quote me on

10   this.

11       From what I remember, no, I haven't looked into it or

12   something along those lines.  So that they, from their point of

13   view, plaintiff's point of view were not really getting a

14   straight answer, my word, to it.

15       And a lot of times -- and I looked at it and a lot of

16   times Mr. Prologo was asked, you know -- oh, here, I think it

17   was page 40 something from what I remember that was quoted to

18   me.

19       MR. GLASS:  Bottom of 45, Your Honor.

20       THE COURT:  So, "Do you know whether attorneys on

21   behalf of Trafigura have had any communication regarding

22   standing with anyone outside of the company?"

23       And then there were objections, "I am going to direct

24   you not to answer."  Then it was narrowed, and they said,

25   "Except for privilege," and then the objection was, "You know,

1    you can answer to the extent that you have learned such

2    information not from attorneys."

3         Well, that's a factual question so that did not narrow

4    it down to this is only a fact.  So, you see what I'm saying?

5         It's not really clear that the representation you just

6    made, Mr. Glass, that he was told that he could answer factual

7    questions but not strategy questions.  Maybe you call this a

8    strategy question, I don't know, that he couldn't answer.

9         And then -- I'm sorry, and then it just goes on and

10   objections keep flying and there is an objection that he

11   doesn't know what non-privilege means.  Theoretically, he would

12   have been educated on that.  And then "potentially calls for

13   communications between counsel and other counsel," which would

14   be common interest privilege.

15        So, bottom line, they didn't get an answer to that

16   question.

17        MR. GLASS:  Your Honor, we understand that plaintiffs

18   still had questions about that specific inquiry.  They asked us

19   in e-mail whether or not there were any such communications

20   between counsel representing Trafigura and anyone else and we

21   told them no.  So, that question has actually been answered

22   expressly and that Mr. Prologo wasn't in the middle of it

23   doesn't change that there have been none.

24        The answer to that question is there are no

25   communications that have been made by the attorneys for

1   Trafigura to people outside the company other than

2   communications we might be having with other defense counsel.

3            I think what this goes to, Your Honor, is the

4   plaintiffs have been very interested in finding out what

5   communications either a company or their lawyers have had with

6   the Venezuelan government or the Venezuelan National Assembly,

7   and to the extent that was what that question was getting at, I

8   think Mr. Prologo would have been able to answer it more

9   directly had the question been more precise.

10           Since then, that question has been pressed by

11  plaintiffs and Trafigura as well as many of the other

12  defendants affirmed that there is no communications either by

13  our clients or by the lawyers on behalf of the clients with the

14  Venezuelan government or the National Assembly.

15           Your Honor, I understand that both the question and

16  answer are potentially ambiguous, but that has been clarified

17  since this deposition.

18           THE COURT:  All right.  Mr. Boies, are you really

19  satisfied?

20           MR. D. BOIES:  No, Your Honor.

21           THE COURT:  I could have guessed that answer.

22           MR. D. BOIES:  As Was pointed out at an earlier hearing

23  with the Court, a party that produces a 30(b)(6) witness has a

24  certain obligation to have that witness prepared.  The witness

25  has to do an investigation.  The witness can't simply show up

```
 1   and say I don't know this myself.  They are corporate
 2   representatives with an obligation to inform themselves.  This
 3   witness testified that he did nothing to prepare himself except
 4   to talk to counsel.
 5        THE COURT:  Well, that could have been enough if
 6   counsel had done the research and communicated the information
 7   to him.
 8        MR. D. BOIES:  It could have been enough.  It could
 9   have been enough, but in order to test whether it was enough we
10   have to be able to ask him what counsel told him, not in terms
11   of legal advice but what did counsel tell him to prepare him
12   for this deposition.
13        THE COURT:  All right.  And Mr. Glass is saying that he
14   was at liberty to discuss anything that counsel told him except
15   for legal advice.  Did you get the sense that he was telling
16   you that during the depo?
17        MR. D. BOIES:  No, Your Honor.  Mr. Jackson was taking
18   the deposition.  He was there but -- and he may want to add to
19   this, but I think the transcript is clear that he did not give
20   us any information about what his counsel told him.  Now, the
21   counsel's instruction I think could reasonably have been
22   interpreted by the witness to include anything that counsel
23   told him.  But however it could be interpreted, he interpreted
24   it as saying that he didn't have to say anything counsel told
25   him because he didn't tell us anything counsel told him.
```

60

```
1            No one other than counsel told him anything, and we
2     were blocked from asking them what counsel told him to prepare
3     him for the deposition.  That is, if he is going to rely on
4     counsel's preparation for this deposition, we are entitled to
5     know what did counsel tell you to prepare you to answer these
6     questions, and we never got that.
7            THE COURT:  Well, you are entitled to have that -- I'm
8     sorry, I would phrase it a little bit differently.
9            I would phrase it, you are entitled to answers and you,
10    yourself, cited the case.
11           You are entitled to factual answers.  You don't need to
12    go chapter and verse into the whole discussion between him and
13    counsel.  You are entitled -- he cannot invoke the attorney --
14    or his counsel cannot invoke the attorney-client privilege for
15    factual answers to your questions.
16           He doesn't have to tell you everything that he did with
17    counsel to prepare because that would go into legal advice, but
18    I read the through the deposition, I read through the notice.
19    Obviously, Mr. Boies, at some other hearing you said you had
20    just taken whatever defendant's notice was and used it
21    yourself.  Obviously, you are asking things that the
22    representative of Trafigura has no information at all.
23           I think you need to narrow it down to what you really
24    need to know from Trafigura.  I think you said that you wanted
25    to know if they have talked to officials of the Venezuelan
```

1    government.  Mr. Glass says you have gotten the answer to that.

2    I don't know if you are prepared to accept that as a

3    representation of counsel or if you want to put Mr. Prologo

4    under oath with that specific question, which, as I went

5    through page 46, it didn't really read very smoothly and it

6    went back and forth and at the end it didn't seem to get to any

7    conclusion.

8         I don't know what else you want to get out of

9    Mr. Prologo.  I will comment that I did see a lot of questions

10   that you are saying were preparatory with regard to the

11   structure of Trafigura and all of that.  I think that went a

12   little bit over the line, but that's water under the bridge.

13   It's done.  I am not going to -- it cannot be undone.  The

14   questions were asked.  The answers were given.

15        So, other than this specific question that Mr. Glass is

16   telling me you already have the answer and theoretically you

17   want somebody under oath and give me that answer because it's

18   not enough to have it from counsel, what more do you want to

19   get out from Mr. Prologo?

20        MR. D. BOIES:  Your Honor, what we want to get out of

21   him is he answered not just one question but a whole series of

22   questions in the negative.

23        He testified that he had not done anything himself to

24   check with people --

25        THE COURT:  I understand why you said that, but let's

```
1    get down to what you want.  You said he didn't do anything

2    himself, but tell me because there were a bunch of questions

3    here that even if he had searched high and low he wouldn't have

4    had the answer to those questions because you were just going

5    off the defendants' script.

6              So, I want you to narrow it down and tell me really

7    what you really need for him to answer straight without

8    invocation of attorney-client privilege.

9              I will give an example of what I am thinking that you

10   don't need.  At the bottom of page 38, any communication

11   concerning the selection, appointment, replacement,

12   substitution, removal or resignation of any trustee of the

13   trust or any punitive -- putative trustees, I think, identified

14   in prior versions of the trust agreement, whether or not such

15   persons ultimately actually become trustees of the trust.

16             I can agree with Mr. Glass that there is no way that

17   Mr. Prologo, no matter how much search he does, would know

18   about that because that's an internal matter of the trust.

19             Now, the patter about has Trafigura spoken to

20   Venezuelan officials, members of the Assembly, that is a

21   factual question that he could have the answer to without

22   invocation of attorney-client privilege.  Those are sort of

23   like two extremes of the issues that we are facing.

24             MR. D. BOIES:  I think Your Honor, if I could -- I see

25   what -- I see exactly the question the Court is asking and I
```

1    think basically what we are asking is has Trafigura or any of

2    its representatives, including counsel, communicated with

3    people outside Trafigura other than defense counsel in this

4    case about the trust, the authority of the trust, the formation

5    of the trust, any of those aspects, and the witness said that

6    there were particular people that were responsible for

7    communicating.  He said he did not personally talk to those

8    people but I assume counsel did, and I assume that if I ask the

9    witness were there such communications, he will say no.  And I

10   will say, how did you know that and he will say because counsel

11   told me that they get checked and that there were none.

12          Now, if that is the answer, I think we are entitled to

13   that answer, and what I was going to suggest is that perhaps

14   Mr. Glass and I discuss what the most effective way is to get

15   that answer based on the guide that the Court has given us.  I

16   think with the guide the Court has given us the two of us ought

17   to be able to work that out.

18          We have worked out other more difficult issues on this

19   case and I think we probably can work this one out.

20          THE COURT:  All right.  That would be the limit of what

21   you want to get from Mr. Prologo.

22          You will work it out whether it's by answer to a

23   written question, whether it's a telephonic question and

24   answer, however you want to work it out.  I think you are

25   entitled to a straight answer to that question and I don't

```
 1    think anything else is really -- merits any further deposition

 2    unless you come up with something else, Mr. Boies.

 3           MR. D. BOIES:  I have the Court's guidance and I

 4    believe that Mr. Glass and I will work it out.  If we can't, we

 5    will come back to the Court, but I don't think we will need to.

 6           THE COURT:  Mr. Glass, are you in agreement?

 7           MR. GLASS:  Yes.  As Mr. Boies has said, I think we

 8    have worked out harder issues than this one so I am optimistic

 9    that if Your Honor would give Mr. Boies and Trafigura Trading a

10    little bit of its time, we will probably set aside without need

11    to go re-open the deposition or even trouble Your Honor.

12           THE COURT:  All right.  How long do you want?  Do you

13    want to set a deadline for that?  Do you want to get that done

14    by the same date of the -- by next Monday, the same date as the

15    privilege supplementation?

16           MR. D. BOIES:  If you could just give us until Tuesday,

17    we will get the privilege stuff done and we will get this

18    worked out on Tuesday.

19           THE COURT:  Okay.  So, by Tuesday.

20           All right.  So, what about the scheduling issues?  I

21    think somebody said they were looking at the scheduling issues

22    and had some proposals to give at this hearing.

23           I know I have one more matter to address but I want to

24    leave that for the end.

25           Let me address this scheduling issue next.
```

1          MR. GLASS:  Your Honor, this is Ethan Glass for the

2     Trafigura Trading.  I believe I was the one to bring attention

3     to the scheduling issues at the last hearing.  I think the

4     issue is with the expert report the deadline was today.  We had

5     agreed with plaintiff that that should be put off.

6          We think that there should be some tweaking with the

7     schedule to make sure that the order is fact depositions are

8     completed, then expert reports are exchanged, and then expert

9     depositions are completed and then the hearing, Your Honor.

10          But there is, I guess, two issues that I have been

11     unable in advance to speak with defendants because they are on

12     this call.

13          One is the deadline for plaintiffs to identify whether

14     or not Mr. Muñoz Pedrosa will be available for deposition.

15          THE COURT:  Well, we have a deadline for him now of

16     June 11th.

17          MR. GLASS:  Yes, Your Honor.

18          The second one is Ms. Cabeza's deposition going forward

19     on the 8th.  So, I can't speak for all of the traders or the

20     bank, but I can say that, you know, for Trafigura Trading, as

21     long as the expert report is due a few days after I guess the

22     11th and then the expert depositions have been promptly such

23     that we can keep our hearing date with Your Honor, that would

24     be our preference.

25          THE COURT:  All right.  So, I am looking at the

```
 1    schedule right now.  We had a deadline of May 28th -- I'm

 2    sorry, let me back that up.

 3            The last day for fact depositions of May 22nd and now

 4    we have an outside window of June 11th for that.  So then that

 5    kind of ripples through everything.  I don't know if we have

 6    enough room there between that new June 11th date and the

 7    serving of briefs and keeping the hearing June 28th and 29th.

 8            I have availability in July.  If you need to move that

 9    hearing, those hearing dates by a few dates I can do that.

10            I don't know if you want to submit, if I give you my

11    availability if you want to work and submit a second

12    supplemental, proposed supplemental and amended scheduling

13    order.  Maybe we can go about it that way and I can tell you

14    what you my availability is.

15            MR. GLASS:  Yes, Your Honor.  This is Ethan Glass.  I

16    mean, that's what my preference would be, if Your Honor can

17    provide us with her availability now and then the traders can

18    coordinate.  As you know, there is just a lot of lawyers.  So

19    if the traders can coordinate also with the Helsinge Morillo

20    defendants and plaintiffs, we have been able to work out these

21    scheduling issues in the past and I am optimistic we will be

22    able to work them out now.  It's just, I don't know if it's

23    worth the Court's time to try to figure it out on the phone as

24    I know from experience it's harder than it seems.

25            THE COURT:  No, I agree.  That's why I am looking as we
```

67

1   speak at what my schedule looks like in July so I can tell you

2   what availability I have and I can hold those dates open until

3   I hear from you.

4          MR. GLASS:  Thank you, Your Honor.

5          THE COURT:  Give me a second.

6          So, going past the June 28th and 29th dates that we had

7   set aside, for me I have pretty much availability right now the

8   week of July 2nd, of course, with the exception of the 4th of

9   July and the week of July 9th.  The week of July 16th I have

10  duty magistrate week so I could not accommodate it during that

11  week.

12         I don't know if we want to go much farther than that

13  but at the present time those two weeks are available and all

14  we need is one day and an overflow date.  So, if you pick two

15  days -- I know with the July 4th week, the 4th of July holiday

16  that's probably going to create all kinds of problems so it may

17  be the week of July 9th may be more doable for everybody.

18         MR. D. BOIES:  Your Honor, this is David Boies.  The

19  only week in July that I have an issue with is July 9th.  I

20  have a dispositive motion to argue in California federal court

21  on the 10th and then on the -- I think it is the 12th I am the

22  keynote speaker at the Nevada Bar Association annual meeting.

23         THE COURT:  Well, that kind of kills that week,

24  Mr. Boies.

25         MR. D. BOIES:  Yes, the 9th is the one week I have

1    difficulty with.  I could do it the week of July 2nd.

2         THE COURT:  Okay.  I thought that would create problems

3    for people taking, you know, vacation either the two days

4    before or the two days after.  I will be here.  So, I don't

5    know, you all work it out.  I am giving you -- I have

6    opening -- I have open and I will keep it open until I hear

7    from you the week of July 2nd and the week of July 9th, minus

8    the 4th of July.

9         If you cannot fit it then, then the other option that I

10   have for you is July 24th through the 27th.  Those days are

11   free right now and open.  So, hopefully you can find two days.

12        MR. D. BOIES:  We will try to work it out, Your Honor.

13        THE COURT:  Hopefully you will be able to find two days

14   and even though I will be out my clerks will be monitoring

15   everything, so if you can submit your new proposed order and

16   pick one of those dates in there, a main day and an overflow

17   day, they should be able to handle that so you don't have to

18   wait until I get back on the 11th, well, back to work after the

19   11th.  I return to Miami on the 11th.

20        All right.  That's it for the schedule.  That's it for

21   everything except one more item that I need to address.

22        Does anybody have anything to address with me?

23        If not, then I would like plaintiff's counsel and

24   counsel for Morillo and Baquero to stay on the line to address

25   something that only concerns them and I would ask other counsel

```
 1    to hang up.

 2         MR. GLASS:  Your Honor, this is Ethan Glass for

 3    Trafigura.  I will hang up in a moment, if I may steal just

 4    another two minutes of your time.

 5         Since I know you will be traveling while monitoring

 6    your docket, these dates that we are talking about now are

 7    going to require a change to the dispositive motion deadline,

 8    the last day to answer or otherwise respond and we can work

 9    with -- everybody can work together about what the right day

10    is.  If Your Honor can just confirm that we shouldn't be

11    worrying about working on that simultaneous with the standing

12    work, that would be very helpful.

13         THE COURT:  Are you telling me I should tell you it's

14    okay to change Judge Gayles' schedule?  Are you looking for my

15    blessing there?

16         MR. GLASS:  Your Honor, I certainly would never put you

17    in that position.  No, this is in your order.

18         July 13th was the date that Your Honor had said based

19    upon agreement of all the parties for the last date to

20    otherwise respond.  I am not asking Your Honor -- we are still

21    going to work on the dates with Judge Gayles.

22         THE COURT:  I am with you.  Yes, you can push that out

23    also.  That's part of my order.

24         MR. GLASS:  Thank you, Your Honor.

25         MR. ENCINOSA:  Your Honor, Israel Encinosa, Holland &
```

```
 1   Knight.  Quickly, I want to point out that the date for

 2   Ms. Cabeza, June 8th, we were just informed of that so we just

 3   want the opportunity to confirm that that date works for us as

 4   well as the Algamex deposition, I believe Your Honor was going

 5   off the notice that plaintiff filed before they gave us other

 6   alternative dates.  I want to make sure those dates are not

 7   part of an order or something.

 8            THE COURT:  Let me just put it this way, you have an

 9   outside window of June 11th.  I am hoping that you all can work

10   inside of that.

11            MR. ENCINOSA:  Understood.  Thank you, Your Honor.

12            THE COURT:  All right.  Anything else?

13            All right.  Who do I have on the phone now?

14            MR. GLASS:  Thank you, Your Honor, we will hang up.

15            THE COURT:  All counsel with the exception of the

16   plaintiff's attorneys and the attorneys for Morillo and Baquero

17   will hang up please.

18            (The unsealed portion of the proceedings were concluded

19   at 5:00 p.m.)

20

21

22

23

24

25
```

1               C E R T I F I C A T E

2

3           I hereby certify that the foregoing is an

4   accurate transcription of the proceedings in the

5   above-entitled matter.

6

7
    May 30, 2018          /s/Patricia Diaz
8   DATE                  PATRICIA DIAZ, FCRR, RPR, FPR
                          Official Court Reporter
9                         United States District Court
                          400 North Miami Avenue, 11th Floor
10                        Miami, Florida 33128
                          (305) 523-5178
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

**/s/Patricia** [1] - 71:7

## 1

**1000** [1] - 3:15
**1001** [1] - 3:11
**10th** [1] - 67:21
**11th** [14] - 3:9, 3:22, 52:19, 52:22, 53:2, 65:16, 65:22, 66:4, 66:6, 68:18, 68:19, 70:9, 71:9
**1221** [1] - 3:17
**12th** [1] - 67:21
**1331** [1] - 3:2
**13th** [1] - 69:18
**16th** [1] - 67:9
**18-20818-CV-Judge** [1] - 4:4
**190** [2] - 22:14, 28:10
**1999** [1] - 3:5
**1st** [2] - 46:17, 53:2

## 2

**20001** [1] - 3:9
**20036** [1] - 3:3
**2010** [2] - 3:17, 21:5
**2017** [3] - 21:5, 21:6, 39:20
**2018** [1] - 71:7
**22nd** [1] - 66:3
**24** [6] - 16:1, 16:5, 16:19, 17:2, 19:1, 34:10
**24th** [2] - 53:7, 68:10
**25th** [1] - 53:9
**27th** [1] - 68:10
**28th** [3] - 66:1, 66:7, 67:6
**29th** [2] - 66:7, 67:6
**2nd** [3] - 67:8, 68:1, 68:7

## 3

**30** [1] - 71:7
**30(b)(6** [7] - 24:5, 24:8, 25:22, 28:2, 31:13, 34:14, 58:23
**305** [2] - 3:23, 71:10
**33128** [2] - 3:22, 71:10
**33130** [1] - 3:6
**33131** [2] - 3:12, 3:18

**344** [1] - 33:10
**38** [2] - 20:7, 62:10
**386** [1] - 7:25
**388** [2] - 9:17, 19:10

## 4

**40** [1] - 56:17
**400** [2] - 3:21, 71:9
**425** [1] - 7:25
**45** [1] - 56:19
**46** [1] - 61:5
**4th** [4] - 67:8, 67:15, 68:8

## 5

**5100** [1] - 3:15
**523-5178** [1] - 71:10
**523-51782** [1] - 3:23
**5:00** [1] - 70:19

## 6

**6th** [1] - 3:8

## 7

**77002** [1] - 3:15
**777** [1] - 3:8
**7th** [2] - 46:17, 47:11

## 8

**80** [1] - 3:5
**8th** [7] - 3:5, 47:11, 52:15, 52:16, 53:2, 65:19, 70:2

## 9

**900** [1] - 3:11
**9th** [6] - 39:20, 67:9, 67:17, 67:19, 67:25, 68:7

## A

**abeyance** [1] - 34:15
**able** [17] - 8:13, 18:4, 18:15, 23:6, 47:9, 47:11, 47:14, 47:22, 50:16, 52:8, 58:8, 59:10, 63:17, 66:20, 66:22, 68:13, 68:17

**above-entitled** [1] - 71:5
**absolutely** [1] - 55:21
**abundance** [1] - 45:7
**accept** [5] - 9:3, 9:6, 27:2, 27:3, 61:2
**accommodate** [1] - 67:10
**accord** [1] - 49:6
**according** [1] - 23:15
**accurate** [2] - 40:19, 71:4
**act** [1] - 23:6
**acting** [1] - 10:7
**action** [1] - 31:2
**activities** [1] - 32:17
**actual** [1] - 31:11
**Adam** [1] - 5:10
**add** [3] - 21:17, 31:13, 59:18
**added** [2] - 22:6, 33:8
**addition** [1] - 36:24, 56:2
**additional** [2] - 32:24, 53:6
**address** [14] - 7:20, 10:10, 15:10, 16:17, 19:16, 24:17, 35:1, 46:9, 53:12, 64:23, 64:25, 68:21, 68:22, 68:24
**addressees** [1] - 20:3
**addressing** [1] - 48:17
**adequately** [1] - 15:3
**adjust** [1] - 46:9
**admissible** [1] - 49:20
**admitting** [1] - 10:5
**advance** [1] - 65:11
**advice** [9] - 23:1, 33:20, 54:16, 54:25, 55:8, 59:11, 59:15, 60:17
**advised** [1] - 46:20
**affirmed** [1] - 58:12
**aftermath** [1] - 46:23
**afternoon** [1] - 5:20, 5:25, 6:5, 6:7, 6:8, 6:14, 6:18, 6:23, 7:8, 7:12, 8:6
**agent** [1] - 23:6
**ago** [2] - 22:15, 27:21
**agree** [4] - 12:15, 38:4, 62:16, 66:25
**agreed** [3] - 12:12,

43:23, 65:5
**agreement** [21] - 21:1, 24:1, 29:7, 29:9, 29:12, 30:21, 35:22, 36:10, 37:17, 37:22, 39:4, 43:8, 43:13, 43:25, 44:20, 44:25, 45:5, 50:19, 62:14, 64:6, 69:19
**agreements** [5] - 21:18, 36:9, 42:5, 42:17, 42:19
**agrees** [1] - 50:17
**ahead** [7] - 4:6, 14:21, 15:8, 28:3, 29:2, 45:7, 48:21
**ain't** [1] - 45:12
**Akin** [1] - 6:19
**AKIN** [1] - 3:2
**al** [1] - 4:3
**Albany** [1] - 46:17
**Alex** [1] - 6:24
**Alexander** [1] - 33:11
**Algamex** [15] - 14:2, 14:5, 14:10, 15:12, 17:16, 18:17, 18:18, 18:24, 42:5, 42:20, 42:23, 42:25, 46:17, 70:4
**Algamex's** [4] - 14:10, 15:22, 16:6, 17:18
**allow** [1] - 43:23
**alluded** [1] - 19:4
**alluding** [1] - 36:21, 52:1
**alone** [1] - 7:13
**alternative** [2] - 26:8, 70:6
**ambiguous** [2] - 35:7, 58:16
**amenable** [1] - 26:3
**amended** [1] - 66:12
**Americas** [1] - 4:3
**amount** [1] - 29:22
**Amy** [2] - 7:2, 7:3
**AND** [1] - 3:8
**annual** [1] - 67:22
**answer** [30] - 11:8, 13:12, 24:15, 40:4, 52:14, 55:13, 56:14, 56:24, 57:1, 57:6, 57:8, 57:15, 57:24, 58:8, 58:16, 58:21, 60:5, 61:1, 61:16, 61:17, 62:4, 62:7, 62:21, 63:12, 63:13, 63:15, 63:22, 63:24, 63:25, 69:8
**answered** [5] -

55:16, 55:18, 56:8, 57:21, 61:21
**answers** [6] - 24:3, 24:6, 60:9, 60:11, 60:15, 61:14
**ANTONIO** [1] - 3:15
**anyway** [1] - 9:10
**apologize** [4] - 7:4, 27:18, 31:25, 39:15
**apparent** [2] - 24:16, 25:10
**appear** [2] - 36:3, 44:13
**appearance** [1] - 7:15
**appeared** [1] - 9:4
**applies** [3] - 29:17, 33:15, 38:2
**appointment** [1] - 62:11
**appropriate** [4] - 15:6, 22:2, 22:11, 51:4
**appropriately** [1] - 21:22
**argue** [2] - 50:22, 51:17, 67:20
**arm's** [2] - 23:2, 36:8
**arrangement** [7] - 11:18, 12:2, 14:8, 16:23, 17:20, 18:6, 18:15
**arrangements** [4] - 12:8, 16:22, 20:25, 28:13
**aside** [4] - 11:14, 46:6, 64:10, 67:7
**aspects** [1] - 63:5
**Assembly** [5] - 8:13, 8:20, 58:6, 58:14, 62:20
**asserting** [1] - 29:15
**assess** [2] - 14:24, 15:3
**assign** [1] - 37:8
**assigned** [1] - 37:9
**assignment** [3] - 36:5, 42:20, 55:25
**assignor** [3] - 36:17, 51:12, 51:13
**assistant** [1] - 11:5
**assisting** [3] - 10:22, 11:4, 11:10
**Association** [1] - 67:22
**assume** [2] - 63:8
**assuming** [1] - 45:18
**attention** [1] - 65:2
**ATTORNEY** [1] - 52:25

**attorney** [27] - 7:2, 14:15, 18:1, 21:22, 22:22, 22:24, 22:25, 23:5, 23:21, 23:22, 27:4, 28:10, 29:13, 29:22, 30:1, 30:11, 33:7, 33:13, 33:20, 35:9, 35:10, 54:24, 56:3, 60:13, 60:14, 62:8, 62:22

**attorney-client** [19] - 14:15, 18:1, 22:22, 22:24, 23:5, 23:21, 27:4, 29:22, 30:1, 30:11, 33:7, 33:13, 33:20, 35:9, 35:10, 54:24, 60:14, 62:8, 62:22

**attorneys** [7] - 33:12, 54:4, 56:20, 57:2, 57:25, 70:16

**attorneys'** [4] - 43:4, 43:24, 44:15, 45:3

**August** [2] - 21:6, 39:20

**author** [2] - 19:7, 20:2

**authority** [4] - 35:6, 51:12, 51:14, 63:4

**authorized** [2] - 8:8, 30:21

**availability** [6] - 66:8, 66:11, 66:14, 66:17, 67:2, 67:7

**available** [2] - 65:14, 67:13

**Avenue** [4] - 3:2, 3:17, 3:21, 71:9

**aware** [2] - 10:20, 29:16

**B**

**B-R-O-C-K-M-A-N** [1] - 5:4

**BAC** [2] - 7:11, 7:13

**bank** [1] - 65:20

**Bank** [2] - 7:11, 7:13

**Baquero** [3] - 6:17, 68:24, 70:16

**BAQUERO** [1] - 3:2

**Bar** [2] - 10:3, 67:22

**Barrett** [1] - 5:9

**based** [5] - 18:9, 51:15, 53:20, 63:15, 69:18

**bases** [1] - 22:22

**basis** [8] - 19:9, 26:1, 26:23, 28:14, 28:17,

28:20, 34:24, 48:23

**Bay** [1] - 3:11

**became** [1] - 37:10

**become** [1] - 62:15

**bed** [1] - 9:11

**beginning** [1] - 55:19

**behalf** [11] - 6:16, 6:25, 7:13, 8:4, 8:13, 8:23, 24:21, 53:13, 56:1, 56:21, 58:13

**behind** [1] - 2:17

**belief** [1] - 48:1

**beneficiary** [1] - 38:15

**benefit** [1] - 37:2

**BERMUDA** [1] - 3:14

**bet** [1] - 27:13

**better** [3] - 15:18, 15:19, 51:5

**between** [17] - 14:9, 17:25, 22:15, 24:13, 25:17, 28:15, 30:3, 33:11, 33:23, 35:21, 38:13, 39:20, 42:18, 57:13, 57:20, 60:12, 66:6

**BIRENBOIM** [6] - 5:25, 48:19, 48:22, 50:5, 51:10, 52:6

**Birenboim** [4] - 5:25, 46:2, 48:16, 48:19

**bit** [8] - 33:17, 36:3, 39:24, 53:11, 54:5, 60:8, 61:12, 64:10

**black** [1] - 10:19

**blessing** [1] - 69:15

**blocked** [1] - 60:2

**BOIES** [50] - 4:9, 8:17, 9:3, 9:22, 10:13, 11:17, 12:14, 12:24, 15:9, 15:18, 15:20, 16:5, 18:14, 24:8, 24:15, 29:2, 31:24, 32:10, 33:18, 33:23, 34:11, 35:1, 36:23, 38:4, 38:19, 38:21, 39:12, 40:3, 42:8, 43:2, 43:9, 43:14, 43:17, 46:19, 47:22, 48:10, 52:13, 52:20, 52:24, 58:20, 58:22, 59:8, 59:17, 61:20, 62:24, 64:3, 64:16, 67:18, 67:25, 68:12

**Boies** [48] - 4:9, 4:12, 4:15, 4:16, 4:17, 4:19, 4:22, 5:12, 8:16, 9:2, 10:10, 12:19, 13:21, 14:1, 14:5, 14:10, 15:15, 18:11,

19:12, 20:23, 23:18, 24:7, 29:1, 31:24, 33:2, 35:21, 35:23, 36:1, 36:7, 36:22, 37:15, 39:7, 39:22, 40:11, 43:7, 46:19, 49:6, 50:17, 51:16, 52:1, 52:12, 58:18, 60:19, 64:2, 64:7, 64:9, 67:18, 67:24

**Boies'** [1] - 32:17

**Boies's** [3] - 17:15, 23:3, 46:14

**book** [1] - 28:7

**bottom** [3] - 56:19, 57:15, 62:10

**Brad** [4] - 4:17, 5:1, 5:6, 5:7

**Brennan** [27] - 9:23, 10:5, 10:16, 11:3, 11:12, 11:18, 11:23, 12:6, 12:17, 14:6, 15:12, 16:19, 17:4, 17:10, 17:16, 17:21, 18:13, 18:17, 18:25, 30:18, 39:10, 42:6, 42:7, 42:19, 42:23, 42:25

**Brennan's** [2] - 15:24, 16:7

**Brian** [1] - 6:24

**Brickell** [2] - 3:11, 3:17

**bridge** [1] - 61:12

**brief** [1] - 25:1

**briefs** [1] - 66:7

**bring** [3] - 31:2, 31:25, 65:2

**bringing** [2] - 34:4, 37:5

**brings** [1] - 53:24

**Briz** [1] - 6:24

**broadly** [1] - 13:22

**BROCKMAN** [3] - 4:16, 4:25, 5:4

**Brockman** [5] - 4:16, 4:25, 5:4, 5:5, 5:12

**brought** [1] - 56:5

**Brown** [1] - 5:16

**Bruce** [1] - 5:25

**bulletin** [1] - 48:25

**bunch** [1] - 62:2

**burden** [3] - 26:13, 37:1, 50:20

**BURKOFF** [26] - 5:20, 8:6, 8:22, 9:8, 13:8, 17:1, 17:15, 17:23, 18:8, 22:5, 26:5, 27:18, 28:9, 29:25, 31:17, 32:21,

34:19, 35:25, 39:1, 39:15, 41:12, 42:14, 44:3, 45:15, 45:20, 45:24

**Burkoff** [20] - 5:20, 8:7, 8:22, 13:8, 16:16, 19:4, 22:4, 26:5, 27:17, 29:25, 30:17, 31:17, 32:12, 34:19, 35:15, 38:25, 41:11, 42:14, 44:3, 45:24

**business** [2] - 14:17, 28:12

**BY** [1] - 3:19

**C**

**Cabeza** [7] - 45:14, 45:17, 46:16, 47:6, 47:8, 47:21, 70:2

**Cabeza's** [2] - 52:14, 65:18

**California** [1] - 67:20

**camera** [1] - 28:1

**camp** [1] - 17:17

**Campos** [1] - 7:16

**cannot** [12] - 47:19, 49:23, 51:24, 52:15, 52:17, 52:18, 52:22, 54:1, 60:13, 60:14, 61:13, 68:9

**capacity** [1] - 19:6, 19:7, 36:7

**capturing** [2] - 38:17

**Carey** [1] - 6:1

**Carlos** [2] - 9:21, 9:23

**Carlton** [1] - 5:22

**CARPINELLO** [9] - 4:12, 16:3, 30:12, 30:14, 40:8, 40:20, 41:10, 43:12, 43:15

**Carpinello** [10] - 4:12, 4:19, 5:12, 16:2, 30:14, 31:20, 32:3, 40:3, 40:6, 43:11

**carry** [1] - 38:1

**case** [33] - 4:2, 4:3, 14:3, 14:11, 17:17, 17:18, 18:2, 18:20, 21:9, 21:12, 21:13, 21:14, 23:8, 24:24, 27:25, 35:2, 36:1, 36:2, 39:3, 39:4, 44:13, 44:18, 48:4, 50:16, 51:6, 55:5, 55:8, 55:9, 60:10, 63:4, 63:19

**cases** [5] - 22:8,

29:17, 35:12, 37:13, 53:23

**catch** [1] - 7:21

**causing** [1] - 33:17

**caution** [2] - 45:7, 55:6

**cede** [1] - 46:1

**central** [2] - 50:18, 50:20

**certain** [4] - 18:22, 23:13, 49:10, 58:24

**certainly** [4] - 8:24, 34:20, 50:23, 69:16

**certify** [1] - 71:3

**challenge** [1] - 45:1

**challenges** [1] - 26:14

**challenging** [3] - 17:12, 17:14, 44:21

**change** [6] - 46:16, 46:18, 52:7, 57:23, 69:7, 69:14

**changes** [1] - 49:13

**chapter** [1] - 60:12

**check** [14] - 11:21, 12:12, 13:3, 13:14, 15:25, 16:1, 16:5, 18:25, 42:8, 42:10, 42:12, 42:24, 61:24

**checked** [2] - 42:10, 63:11

**choose** [1] - 22:13

**chore** [1] - 34:7

**Christina** [1] - 6:6

**CHRISTINA** [1] - 3:10

**Christopher** [1] - 33:11

**CI** [1] - 33:14

**circumstances** [1] - 38:3

**citation** [1] - 35:6

**cited** [2] - 21:9, 60:10

**claim** [5] - 17:8, 19:9, 26:24, 32:15, 40:23

**claimed** [2] - 24:12, 32:9

**claiming** [4] - 28:17, 31:22, 37:23, 39:11

**claims** [10] - 14:25, 15:4, 23:21, 30:23, 33:17, 36:5, 37:5, 37:8, 37:9, 42:21

**clarifications** [1] - 38:24

**clarified** [1] - 58:16

**clarify** [1] - 43:11

**clarity** [1] - 52:8

**clear** [19] - 8:17,

13:25, 14:9, 17:24, 18:2, 25:19, 31:2, 31:6, 35:12, 35:15, 37:14, 38:21, 49:14, 51:9, 51:17, 51:23, 54:19, 57:5, 59:19

**clearly** [3] - 15:16, 25:1, 35:16

**clerks** [1] - 68:14

**client** [27] - 14:15, 14:16, 18:1, 21:22, 22:22, 22:24, 22:25, 23:5, 23:21, 25:18, 27:4, 28:11, 29:22, 30:1, 30:11, 33:7, 33:13, 33:20, 33:21, 35:9, 35:10, 35:11, 54:24, 60:14, 62:8, 62:22

**clients** [7] - 8:7, 10:4, 23:22, 44:10, 44:18, 58:13

**Cliff** [2] - 5:22, 5:23

**cognizant** [1] - 30:4

**collect** [1] - 31:7

**collecting** [1] - 30:23

**Colonial** [4] - 5:19, 5:21, 8:7

**column** [2] - 22:6, 23:11

**comment** [2] - 9:1, 61:9

**comments** [3] - 13:6, 43:18, 43:20

**commitment** [2] - 13:14, 32:23

**common** [39] - 21:23, 22:23, 23:10, 23:25, 24:1, 25:6, 25:7, 25:17, 26:22, 26:25, 27:4, 28:14, 28:17, 29:15, 29:16, 30:2, 30:11, 30:22, 31:6, 31:22, 31:23, 32:8, 32:9, 32:14, 32:15, 33:6, 33:10, 34:8, 35:18, 36:21, 37:24, 38:5, 39:4, 39:5, 39:8, 51:6, 57:14

**communicated** [3] - 20:14, 59:6, 63:2

**communicating** [3] - 24:20, 24:21, 63:7

**communication** [8] - 12:9, 14:14, 22:10, 28:12, 29:23, 36:15, 56:21, 62:10

**communications** [39] - 8:12, 8:19, 9:20,

9:24, 10:6, 10:11, 10:18, 11:12, 11:15, 12:10, 14:4, 14:9, 17:25, 20:12, 21:8, 22:21, 28:13, 30:9, 31:1, 35:9, 35:21, 36:4, 36:16, 39:20, 40:16, 40:23, 41:3, 41:21, 41:25, 53:18, 54:24, 55:7, 57:13, 57:19, 57:25, 58:2, 58:5, 58:12, 63:9

**company** [6] - 21:10, 35:3, 56:1, 56:22, 58:1, 58:5

**compensated** [1] - 38:11

**compensation** [6] - 11:4, 12:21, 12:25, 13:2, 38:7, 38:9

**complain** [1] - 49:18

**complaint** [7] - 24:25, 39:21, 39:23, 39:25, 40:16, 40:24, 41:6

**completed** [2] - 65:8, 65:9

**complied** [1] - 25:12

**complies** [3] - 19:19, 29:3, 29:24

**complying** [2] - 26:19, 28:5

**concede** [1] - 19:14

**conceivable** [1] - 26:17

**conceived** [1] - 25:19

**concentrating** [1] - 41:6

**concept** [1] - 39:8

**concern** [1] - 49:19

**concerned** [1] - 49:21

**concerning** [4] - 41:3, 42:5, 45:10, 62:11

**concerns** [3] - 48:16, 49:24, 68:25

**concluded** [1] - 70:18

**conclusion** [1] - 61:7

**concur** [1] - 50:9

**confer** [4] - 8:10, 27:24, 30:15, 32:4

**confers** [1] - 31:16

**confidential** [6] - 20:17, 22:20, 37:12, 43:4, 43:24, 45:2

**confidentiality** [8] - 43:5, 43:7, 43:13,

43:17, 43:25, 44:19, 44:25, 45:4

**confirm** [6] - 8:13, 11:17, 11:21, 45:17, 69:10, 70:3

**confirmation** [1] - 34:25

**confirmed** [1] - 47:9

**conforms** [1] - 19:5

**confusion** [1] - 33:17

**consider** [2] - 11:25, 50:2

**consideration** [1] - 35:13

**consultant** [6] - 11:14, 22:16, 23:6, 23:18, 24:13, 31:6

**consultant's** [1] - 27:20

**consultants** [8] - 11:15, 11:23, 13:23, 17:13, 18:8, 20:13, 30:18, 32:24

**consultation** [3] - 12:18, 47:7, 53:21

**contact** [2] - 29:18, 29:19

**contain** [1] - 33:24

**containing** [1] - 22:20

**contend** [1] - 19:12

**contention** [4] - 11:11, 12:10, 35:23, 43:5

**context** [4] - 20:18, 21:2, 22:1, 29:5

**contingency** [3] - 14:11, 17:17, 18:20

**contingent** [1] - 11:3

**continue** [2] - 47:25, 51:11

**contrary** [1] - 47:25

**Convention** [4] - 47:15, 49:2, 49:10

**conventional** [3] - 35:2, 36:1, 36:2

**conversation** [1] - 54:12

**conversations** [4] - 10:18, 55:4, 55:14, 56:6

**coordinate** [2] - 66:18, 66:19

**copied** [1] - 20:4

**corporate** [1] - 53:4, 53:25, 59:1

**correct** [4] - 10:14, 40:6, 40:8, 52:6

**correctly** [1] - 8:21

**counsel** [63] - 4:6,

8:20, 8:24, 9:5, 10:15, 10:22, 11:5, 11:10, 34:23, 35:20, 35:21, 36:6, 36:18, 37:10, 37:19, 37:21, 41:23, 44:17, 46:20, 47:5, 50:6, 50:10, 53:11, 53:18, 53:21, 53:22, 53:25, 54:2, 54:9, 54:15, 54:16, 54:18, 55:7, 57:13, 57:20, 58:2, 59:4, 59:6, 59:10, 59:11, 59:14, 59:20, 59:22, 59:24, 59:25, 60:1, 60:2, 60:5, 60:13, 60:14, 60:17, 61:3, 61:18, 63:2, 63:3, 63:8, 63:10, 68:23, 68:24, 68:25, 70:15

**Counsel** [1] - 35:3

**counsel's** [3] - 9:3, 59:21, 60:4

**country** [2] - 47:6, 50:11

**couple** [5] - 7:16, 13:20, 15:3, 30:5, 41:15

**course** [3] - 41:23, 55:4, 67:8

**Court** [25] - 3:20, 3:21, 4:1, 10:20, 11:22, 13:4, 22:3, 35:6, 35:13, 37:1, 38:4, 38:6, 38:22, 41:14, 43:19, 51:5, 58:23, 62:25, 63:15, 63:16, 64:5, 71:8, 71:9

**court** [1] - 67:20

**COURT** [115] - 4:5, 4:18, 4:24, 5:2, 5:5, 5:7, 5:11, 5:19, 5:24, 6:4, 6:7, 6:10, 6:11, 6:13, 6:16, 6:20, 7:2, 7:6, 7:10, 7:15, 8:15, 9:1, 9:11, 9:23, 11:11, 12:4, 12:19, 13:6, 15:8, 15:13, 15:15, 15:19, 16:4, 16:16, 17:9, 17:20, 18:5, 18:11, 19:2, 19:16, 22:4, 23:14, 24:10, 25:14, 26:18, 27:16, 27:17, 28:4, 28:16, 30:13, 31:19, 32:7, 32:11, 33:2, 33:22, 34:1, 34:13, 35:14, 36:13, 37:15, 38:16, 38:20, 38:24, 39:7,

39:14, 39:17, 40:14, 41:1, 41:11, 42:3, 42:13, 42:23, 43:3, 43:22, 44:19, 45:16, 45:21, 46:3, 47:19, 48:7, 48:13, 48:21, 49:15, 51:1, 51:19, 52:11, 52:19, 52:21, 53:1, 53:15, 55:11, 56:4, 56:20, 58:18, 58:21, 59:5, 59:13, 60:7, 61:25, 63:20, 64:6, 64:12, 64:19, 65:15, 65:25, 66:25, 67:5, 67:23, 68:2, 68:13, 69:13, 69:22, 70:8, 70:12, 70:15

**Court's** [5] - 35:5, 35:12, 36:25, 64:3, 66:23

**COURTROOM** [1] - 4:2

**cover** [3] - 33:6, 34:17

**covered** [5] - 34:17, 35:16, 35:17, 43:1, 46:5

**create** [2] - 67:16, 68:2

**created** [4] - 20:10, 21:3, 25:19, 31:7

**creating** [1] - 31:1

**creation** [5] - 20:20, 21:4, 21:15, 21:24, 29:20

**critical** [1] - 10:14

**customary** [1] - 27:8

**cut** [1] - 14:18

# D

**Daniel** [1] - 7:1

**date** [12] - 19:8, 19:23, 26:20, 64:14, 65:23, 66:6, 67:14, 69:18, 69:19, 70:1, 70:3

**DATE** [1] - 71:8

**dates** [9] - 66:9, 67:2, 67:6, 68:16, 69:6, 69:21, 70:6

**Dave** [11] - 5:20, 8:7, 8:22, 13:8, 26:5, 29:25, 31:17, 34:19, 42:14, 44:3, 45:24

**David** [4] - 4:9, 31:24, 46:19, 67:18

**DAVIS** [6] - 4:14, 5:10, 19:15, 19:18,

28:23, 29:3
**Davis** [10] - 4:14, 4:20, 5:12, 15:9, 19:15, 19:16, 24:16, 28:21, 31:20, 33:3
**Dayme** [3] - 6:24, 7:4, 7:6
**days** [8] - 15:3, 65:21, 67:15, 68:3, 68:4, 68:10, 68:11, 68:13
**DC** [2] - 3:3, 3:9
**deadline** [11] - 16:24, 39:16, 52:3, 52:4, 52:21, 64:13, 65:4, 65:13, 65:15, 66:1, 69:7
**dealing** [2] - 21:3, 21:14
**decided** [1] - 37:9
**decision** [1] - 51:5
**declarations** [1] - 50:24
**declined** [1] - 49:4
**defendant** [2] - 31:8, 46:13
**DEFENDANT** [2] - 3:4, 3:7
**defendant's** [1] - 60:20
**defendants** [27] - 7:24, 8:5, 8:8, 8:11, 8:14, 8:20, 8:23, 9:24, 10:5, 12:9, 12:15, 13:6, 24:5, 25:23, 30:15, 30:24, 41:1, 43:10, 43:13, 44:7, 48:1, 48:11, 48:13, 48:22, 58:12, 65:11, 66:20
**DEFENDANTS** [2] - 3:1, 3:13
**defendants'** [3] - 9:16, 44:17, 62:5
**defenition** [1] - 29:14
**defense** [4] - 8:24, 24:1, 58:2, 63:3
**DEFENSE** [1] - 52:25
**define** [2] - 28:4, 28:16
**defining** [1] - 35:17
**definition** [1] - 29:21
**definitive** [1] - 52:14
**defrauding** [1] - 10:4
**degree** [1] - 13:21
**delineating** [1] - 54:16
**demonstrates** [1] - 25:2
**Department** [2] -

48:17, 48:25
**depo** [2] - 25:22, 59:16
**deponent** [1] - 50:8
**deposed** [2] - 10:20, 47:11
**deposition** [58] - 10:22, 11:7, 17:15, 23:3, 24:5, 24:9, 26:16, 32:17, 34:15, 36:24, 37:2, 37:3, 38:22, 40:11, 45:22, 46:14, 47:2, 47:3, 47:10, 47:13, 47:25, 48:1, 48:12, 48:15, 49:17, 49:20, 49:22, 50:1, 50:7, 50:12, 50:21, 51:13, 51:22, 52:15, 53:5, 53:17, 53:20, 54:5, 54:8, 54:10, 54:14, 54:19, 55:13, 55:17, 55:20, 55:22, 56:2, 58:17, 59:12, 59:18, 60:3, 60:4, 60:18, 64:1, 64:11, 65:14, 65:18, 70:4
**depositions** [13] - 46:1, 46:10, 46:12, 47:17, 48:8, 49:3, 49:5, 49:13, 50:11, 65:7, 65:9, 65:22, 66:3
**DEPUTY** [1] - 4:2
**described** [3] - 20:15, 20:23, 36:1
**describing** [1] - 20:16
**description** [3] - 22:20, 23:12, 30:1
**descriptions** [2] - 19:3, 26:2
**designated** [2] - 45:5, 45:7
**designation** [4] - 43:3, 44:15, 45:3, 45:4
**designations** [4] - 43:24, 44:20, 44:21, 44:23
**detail** [4] - 13:24, 21:14, 21:19, 22:2
**detailed** [4] - 17:12, 21:7, 25:13, 26:14
**details** [1] - 13:12
**determining** [1] - 24:23
**developing** [1] - 13:13
**DIAZ** [2] - 3:20, 71:8

**Diaz** [1] - 71:7
**difference** [1] - 36:11
**differently** [1] - 60:8
**difficult** [1] - 63:18
**difficulty** [1] - 15:16, 68:1
**diligent** [1] - 41:24
**direct** [1] - 56:23
**direction** [1] - 25:21
**directly** [2] - 37:5, 58:9
**disagree** [2] - 9:8, 22:5
**disagreement** [1] - 31:18
**disagreements** [1] - 44:2
**disbarred** [1] - 10:3
**disclose** [1] - 55:6
**disclosed** [2] - 23:24, 37:13
**disclosure** [1] - 16:20
**discovery** [5] - 7:19, 13:18, 21:21, 40:21, 46:5
**discrete** [1] - 21:5
**discuss** [2] - 59:14, 63:14
**discussed** [3] - 21:3, 22:15, 27:21
**discusses** [1] - 33:20
**discussing** [2] - 37:4, 37:7
**discussion** [3] - 25:4, 37:11, 60:12
**discussions** [9] - 11:24, 24:12, 25:1, 25:3, 31:11, 35:8, 37:12, 40:12, 53:25
**dispensing** [1] - 55:9
**dispositive** [2] - 67:20, 69:7
**dispute** [2] - 12:1, 46:8
**District** [2] - 3:21, 71:9
**ditch** [1] - 26:8
**doable** [1] - 67:17
**Docket** [3] - 7:25, 9:16, 19:10
**docket** [1] - 69:6
**document** [19] - 7:23, 9:15, 11:22, 11:24, 12:8, 12:23, 12:25, 13:2, 16:10, 19:8, 19:21, 19:23, 19:24, 20:2, 20:3, 20:21, 20:22, 31:12,

41:13
**documents** [50] - 8:2, 9:12, 9:15, 11:19, 12:2, 12:10, 12:17, 12:20, 13:16, 15:5, 15:11, 15:12, 15:22, 15:23, 16:6, 16:12, 16:20, 18:19, 20:19, 21:3, 21:6, 21:14, 21:16, 21:24, 23:13, 27:8, 31:3, 40:5, 40:9, 40:10, 40:13, 40:18, 40:21, 41:3, 41:8, 41:15, 41:18, 41:22, 42:7, 42:11, 43:4, 43:24, 44:10, 44:14, 45:11, 45:18, 45:23
**done** [17] - 27:10, 28:22, 31:10, 41:5, 41:24, 45:1, 49:17, 50:1, 50:3, 50:22, 53:2, 59:6, 61:13, 61:23, 64:13, 64:17
**double** [2] - 12:12, 13:14
**double-check** [2] - 12:12, 13:14
**doubt** [2] - 18:23, 26:10
**dovetail** [1] - 18:3
**down** [11] - 7:17, 7:19, 25:23, 26:4, 27:23, 34:5, 46:23, 57:4, 60:23, 62:1, 62:6
**Dr** [6] - 46:16, 47:6, 47:8, 47:12, 47:21, 52:14
**draft** [5] - 22:21, 29:6, 29:7, 43:10, 44:6
**drafts** [4] - 20:22, 21:18, 29:8, 40:23
**dream** [1] - 51:7
**Drive** [1] - 3:11
**due** [3] - 50:5, 51:25, 65:21
**Duker** [18] - 9:21, 9:22, 9:23, 10:2, 10:16, 13:21, 14:1, 16:25, 17:4, 17:11, 17:16, 17:21, 18:12, 18:17, 18:24, 30:17, 39:10
**during** [8] - 23:4, 40:5, 40:10, 40:13, 42:1, 53:17, 59:16, 67:10
**duty** [1] - 67:10

# E

**e-mail** [10] - 19:21, 19:23, 20:15, 22:14, 22:19, 22:20, 24:12, 33:10, 33:18, 57:19
**e-mails** [4] - 26:22, 26:23, 27:21, 32:25
**easily** [1] - 34:1
**economic** [2] - 28:12, 39:5
**educated** [1] - 57:12
**effective** [1] - 63:14
**either** [12] - 12:7, 15:12, 16:8, 27:24, 29:12, 42:1, 42:17, 47:7, 49:3, 58:5, 58:12, 68:3
**elections** [3] - 46:23, 47:20, 48:6
**element** [1] - 11:3
**Elias** [1] - 7:16
**Ellen** [3] - 4:16, 4:25, 5:4
**EMANUEL** [1] - 3:8
**employee** [1] - 21:11
**employee's** [1] - 21:11
**ENCINOSA** [4] - 6:23, 7:4, 69:25, 70:11
**Encinosa** [2] - 6:23, 69:25
**encompassing** [1] - 54:9
**encourage** [1] - 44:22
**end** [9] - 15:1, 20:24, 32:1, 35:11, 41:23, 54:4, 55:19, 61:6, 64:24
**ENERGY** [1] - 3:14
**engaged** [1] - 35:8
**engagement** [13] - 20:21, 20:23, 22:8, 22:21, 23:1, 23:20, 24:13, 29:6, 29:7, 29:12, 33:10, 36:9, 44:11
**engaging** [1] - 23:20
**enter** [1] - 43:19
**entire** [1] - 53:6
**entirely** [3] - 31:15, 38:4, 54:2
**entities** [2] - 8:7, 20:25
**entitled** [9] - 35:20, 60:4, 60:7, 60:9, 60:11, 60:13, 63:12,

63:25, 71:5
**entity** [6] - 14:2,
18:18, 36:5, 36:6,
42:24
**entries** [5] - 14:24,
17:4, 26:11, 27:6,
27:23
**entry** [4] - 25:25,
26:17, 27:3, 43:25
**Entry** [3] - 7:25, 9:17,
19:10
**ESQ** [7] - 3:1, 3:1,
3:4, 3:7, 3:10, 3:14,
3:16
**established** [1] -
41:5
**establishment** [2] -
41:3, 41:7
**et** [1] - 4:3
**Etan** [1] - 7:8
**ETAN** [1] - 3:4
**Ethan** [6] - 6:5,
53:13, 54:21, 65:1,
66:15, 69:2
**ETHAN** [1] - 3:7
**events** [1] - 46:24
**evidence** [1] - 50:24
**exactly** [4] - 38:19,
40:24, 55:17, 62:25
**examined** [1] - 11:6
**example** [16] - 14:9,
14:14, 22:12, 22:14,
23:14, 24:11, 28:9,
28:12, 30:8, 31:4,
33:9, 41:20, 54:11,
56:4, 62:9
**Except** [1] - 56:25
**except** [4] - 53:18,
59:3, 59:14, 68:21
**exception** [3] - 48:3,
67:8, 70:15
**exchange** [1] - 35:4
**exchanged** [1] - 65:8
**Excuse** [1] - 15:13
**executive** [1] - 55:2
**expect** [2] - 44:7,
50:23
**experience** [1] -
66:24
**expert** [5] - 65:4,
65:8, 65:21, 65:22
**experts** [1] - 50:25
**explain** [2] - 14:13,
28:10
**explained** [12] -
10:24, 30:16, 30:17,
30:18, 30:19, 30:21,
31:9, 31:15, 36:24,
37:2, 40:11
**explanation** [3] -

25:20, 31:21, 32:1
**explicitly** [1] - 42:18
**expressly** [1] - 57:22
**extend** [1] - 40:10
**extended** [1] - 39:24
**extent** [7] - 10:7,
10:23, 24:17, 53:19,
57:1, 58:7
**extracted** [1] - 24:3
**extraordinary** [1] -
44:12
**extremes** [1] - 62:23
**eyes** [4] - 43:4,
43:24, 44:15, 45:3

## F

**Facchinetti** [5] -
22:16, 23:15, 25:15,
31:5
**facing** [1] - 62:23
**fact** [7] - 30:4, 33:21,
33:23, 43:10, 57:4,
65:7, 66:3
**facts** [2] - 29:18,
55:10
**factual** [8] - 53:24,
54:17, 54:25, 57:3,
57:6, 60:11, 60:15,
62:21
**fails** [1] - 34:15
**fair** [1] - 47:16
**fallback** [1] - 28:1
**famous** [1] - 45:11
**far** [1] - 44:15
**fashion** [2] - 24:4,
32:22
**FCRR** [2] - 3:20, 71:8
**feasible** [1] - 50:2
**federal** [1] - 67:20
**FELD** [1] - 3:2
**Fernanda** [1] - 7:1
**few** [3] - 27:21,
65:21, 66:9
**Fields** [1] - 5:22
**fight** [2] - 25:24, 35:5
**fighting** [2] - 26:4,
34:6
**figure** [1] - 26:14,
27:6, 32:19, 47:14,
52:11, 66:23
**file** [1] - 38:22
**filed** [1] - 39:23,
40:17, 70:5
**filing** [3] - 39:20,
39:25, 41:6
**final** [2] - 29:6, 29:9
**finally** [1] - 45:11
**finance** [1] - 17:18

**financed** [1] - 39:3
**financial** [17] - 11:12,
11:15, 11:18, 12:1,
12:8, 12:21, 16:21,
16:23, 17:10, 17:20,
18:6, 19:3, 20:24,
28:13, 36:17, 37:17,
37:21
**financing** [2] - 14:10,
39:1
**firm** [6] - 4:11, 23:6,
23:19, 33:12, 35:21,
39:2
**firms** [1] - 33:4
**first** [5] - 7:23, 9:19,
15:6, 48:4, 53:16
**fit** [1] - 68:9
**five** [1] - 7:20
**Flexner** [2] - 4:13,
4:15
**floor** [1] - 46:1
**Floor** [3] - 3:9, 3:22,
71:9
**Florida** [8] - 3:6,
3:12, 3:18, 3:22, 7:11,
7:13, 25:2, 71:10
**flows** [2] - 38:7,
50:23
**flying** [1] - 57:10
**following** [4] - 8:9,
21:25, 30:6, 52:17
**footnote** [1] - 19:10
**FOR** [4] - 3:1, 3:4,
3:7, 3:13
**force** [1] - 50:4
**forcing** [1] - 51:7
**foregoing** [1] - 71:3
**form** [1] - 16:8
**formally** [1] - 44:25
**format** [1] - 19:22
**formation** [1] - 63:4
**former** [1] - 10:2
**forth** [6] - 7:24, 9:15,
19:22, 19:23, 36:4,
61:6
**forward** [5] - 42:2,
42:3, 47:4, 49:23,
65:18
**four** [4] - 7:25, 19:11,
46:12, 47:17
**fourth** [3] - 7:19,
46:5, 47:17
**FPR** [2] - 3:20, 71:8
**frame** [2] - 13:18,
41:19
**framework** [1] -
44:24
**FRANCISCO** [1] -
3:1
**frankly** [3] - 14:22,

17:24, 26:7
**free** [1] - 68:11
**Friday** [3] - 48:5,
52:16, 53:9
**fulsome** [8] - 26:9,
27:12, 27:13, 27:19,
28:4, 28:7, 31:13,
32:12
**funder** [1] - 38:10
**funding** [7] - 15:11,
15:22, 15:24, 16:6,
16:7, 16:9, 18:19

## G

**game** [1] - 27:22
**Gayles** [2] - 4:4,
69:21
**Gayles'** [1] - 69:14
**GELBER** [1] - 3:17
**Gelber** [2] - 6:15
**gelled** [2] - 46:13,
47:17
**general** [2] - 23:17,
24:22
**General** [13] - 24:1,
25:16, 25:18, 26:25,
35:3, 46:15, 47:2,
47:8, 47:13, 48:3,
48:7, 49:8, 52:16
**General's** [4] - 22:18,
23:16, 24:22, 51:21
**generally** [2] - 25:3,
25:7, 44:19
**generic** [2] - 14:23,
19:3
**gentleman** [2] -
48:14, 49:16
**gentlemen** [1] -
13:25
**George** [2] - 4:12,
30:14
**Gerald** [1] - 6:14
**GERALD** [1] - 3:16
**given** [9] - 14:14,
22:10, 32:3, 33:20,
43:10, 44:6, 61:14,
63:15, 63:16
**GLASS** [16] - 3:7,
6:5, 53:13, 54:21,
55:21, 56:19, 57:17,
64:7, 65:1, 65:17,
66:15, 67:4, 69:2,
69:16, 69:24, 70:14
**Glass** [14] - 6:5,
53:13, 54:21, 57:6,
59:13, 61:1, 61:15,
62:16, 63:14, 64:4,
64:6, 65:1, 66:15,

69:2
**Glencore** [1] - 5:24
**GODFREY** [1] - 3:14
**GOLDBERG** [3] -
7:12
**Goldberg** [1] - 7:12
**Gonzalez** [1] - 6:24
**government** [7] -
30:20, 30:22, 47:8,
56:7, 58:6, 58:14,
61:1
**Government** [1] -
52:1
**Grass** [1] - 53:15
**Gravante** [1] - 5:8
**GREENBERG** [3] -
3:16, 3:17, 6:14
**Greenberg** [2] - 6:14,
6:15
**grounds** [5] - 8:12,
11:23, 12:20, 23:5,
33:7
**Group** [2] - 5:21,
42:20
**group** [2] - 8:24, 42:6
**GRUHN** [1] - 5:23
**Gruhn** [2] - 5:22,
5:23
**guess** [5] - 14:12,
14:14, 53:11, 65:10,
65:21
**guessed** [1] - 58:21
**guidance** [1] - 64:3
**guide** [2] - 63:15,
63:16
**Gump** [1] - 6:19
**GUMP** [1] - 3:2
**Guttman** [2] - 5:17,
5:18
**GUTTMAN** [1] - 5:18

## H

**Hague** [6] - 47:14,
49:1, 49:2, 49:6,
49:10, 49:14
**half** [2] - 46:21
**Hampshire** [1] - 3:2
**hand** [2] - 14:5,
38:14
**handle** [1] - 68:17
**hang** [5] - 28:24,
69:1, 69:3, 70:14,
70:17
**happy** [1] - 46:9
**harder** [2] - 64:8,
66:24
**hate** [1] - 25:14
**hats** [1] - 14:1

**HAUER** [1] - 3:2
**Hayden** [1] - 7:9
**HAYDEN** [1] - 3:5
**head** [1] - 56:1
**hear** [10] - 6:10, 8:4, 9:1, 15:18, 16:16, 19:17, 24:7, 28:21, 67:3, 68:6
**hearing** [12] - 15:16, 53:11, 56:6, 58:22, 60:19, 64:22, 65:3, 65:9, 65:23, 66:7, 66:9
**hearings** [1] - 7:17
**help** [3] - 22:9, 25:23, 32:19
**helpful** [2] - 32:21, 69:12
**helping** [2] - 11:1, 17:18
**Helsinge** [5] - 6:22, 6:25, 66:19
**Henry** [1] - 22:16
**hereby** [1] - 71:3
**hi** [1] - 19:18
**hide** [1] - 54:25
**hiding** [1] - 22:25
**high** [2] - 46:24, 62:3
**himself** [3] - 59:3, 61:23, 62:2
**hinting** [1] - 52:3
**hold** [6] - 6:20, 17:9, 31:19, 34:14, 67:2
**holiday** [1] - 67:15
**Holland** [2] - 6:23, 69:25
**honestly** [1] - 28:21
**Honor** [113] - 4:9, 4:14, 4:23, 5:17, 5:18, 5:20, 5:23, 6:3, 6:5, 6:8, 6:18, 7:5, 8:6, 8:17, 9:3, 10:13, 11:17, 12:14, 13:3, 13:8, 13:12, 14:22, 15:1, 15:9, 16:3, 17:1, 18:2, 18:14, 19:15, 19:18, 20:7, 21:17, 22:5, 26:5, 27:15, 27:18, 27:25, 28:23, 29:4, 29:16, 29:24, 29:25, 31:24, 32:10, 32:21, 33:18, 34:12, 34:19, 35:1, 35:25, 36:23, 38:19, 39:1, 39:12, 40:3, 40:24, 41:10, 41:12, 41:16, 42:8, 42:14, 43:9, 44:3, 45:15, 45:20, 45:24, 46:19, 48:19, 48:20, 48:23, 50:5,

50:14, 51:10, 51:11, 51:14, 52:6, 52:13, 52:24, 52:25, 53:13, 54:21, 55:1, 55:21, 56:19, 57:17, 58:3, 58:15, 58:20, 59:17, 61:20, 62:24, 64:9, 64:11, 65:1, 65:9, 65:17, 65:23, 66:15, 66:16, 67:4, 67:18, 68:12, 69:2, 69:10, 69:16, 69:18, 69:20, 69:24, 69:25, 70:4, 70:11, 70:14
**Honor's** [1] - 42:19
**hopefully** [4] - 33:1, 44:1, 68:11, 68:13
**hoping** [1] - 70:9
**hours** [6] - 16:1, 16:5, 16:19, 17:2, 19:1, 34:10
**house** [1] - 53:21
**Houston** [1] - 3:15
**Hubbard** [1] - 7:13
**Hughes** [1] - 7:13
**hundreds** [1] - 27:6
**Hunter** [1] - 5:21

**I**

**idea** [1] - 34:14
**identified** [1] - 62:13
**identifies** [1] - 20:11
**identify** [5] - 4:11, 12:16, 20:5, 22:10, 65:13
**illegal** [4] - 49:23, 50:6, 51:20, 51:21
**impact** [1] - 46:10
**impressions** [1] - 21:15
**in-house** [1] - 53:21
**Inc** [1] - 6:25
**INC** [1] - 3:14
**include** [2] - 18:15, 59:22
**included** [2] - 12:2, 20:1
**includes** [1] - 21:19
**including** [8] - 8:20, 15:5, 44:4, 44:11, 50:17, 63:2
**inconsistencies** [1] - 9:9
**inconsistent** [1] - 9:4
**independent** [1] - 12:23
**individual** [1] - 20:10
**individuals** [8] -

9:25, 10:12, 10:21, 10:25, 11:6, 11:9, 13:22, 20:8
**inferences** [1] - 51:18
**inform** [1] - 59:2
**information** [22] - 14:24, 17:7, 17:21, 18:4, 18:10, 20:17, 22:6, 23:12, 27:22, 29:10, 32:24, 33:25, 34:21, 35:4, 37:13, 53:24, 54:15, 54:17, 57:2, 59:6, 59:20, 60:22
**informed** [3] - 47:5, 48:5, 70:2
**initial** [1] - 37:3
**injecting** [1] - 31:25
**inquired** [1] - 21:18
**inquiry** [2] - 54:25, 57:18
**inside** [1] - 55:7, 70:10
**instance** [1] - 25:9
**instances** [1] - 53:17
**instituted** [1] - 55:5
**instruction** [2] - 11:8, 59:21
**interest** [44] - 11:13, 11:15, 17:10, 17:17, 21:23, 22:23, 23:10, 23:25, 24:1, 25:6, 25:7, 25:17, 26:25, 27:4, 28:14, 28:15, 28:17, 29:15, 29:16, 30:2, 30:11, 30:19, 30:22, 30:23, 31:6, 31:22, 31:23, 32:8, 32:9, 32:14, 32:15, 33:6, 33:10, 34:8, 35:18, 36:21, 37:24, 38:5, 39:5, 39:8, 57:14
**interested** [1] - 58:4
**interject** [1] - 26:6
**internal** [1] - 62:18
**interplay** [1] - 33:4
**interpretation** [1] - 42:16
**interpreted** [3] - 59:22, 59:23
**interrupt** [2] - 25:14, 49:22
**investigation** [3] - 9:6, 41:24, 58:25
**investigations** [2] - 40:24, 41:22
**investigative** [1] - 11:5

**investigator** [3] - 10:7, 38:10, 39:2
**invocation** [2] - 62:8, 62:22
**invoke** [2] - 60:13, 60:14
**involved** [6] - 20:11, 20:13, 20:17, 21:24, 30:14, 55:24
**involving** [1] - 10:6, 16:20
**Israel** [2] - 6:23, 69:25
**issue** [15] - 8:5, 8:9, 9:9, 13:7, 14:16, 21:21, 30:7, 35:6, 36:12, 48:17, 48:23, 50:19, 64:25, 65:4, 67:19
**issues** [14] - 7:23, 9:14, 15:10, 18:3, 44:18, 45:25, 62:23, 63:18, 64:8, 64:20, 64:21, 65:3, 65:10, 66:21
**item** [15] - 7:24, 9:13, 14:21, 19:3, 20:10, 22:13, 22:14, 29:11, 30:5, 32:5, 35:16, 35:17, 35:19, 46:5, 68:21
**items** [6] - 7:20, 9:15, 14:22, 26:12, 31:3, 46:7
**itself** [4] - 25:12, 32:2, 42:21, 44:11

**J**

**JACKSON** [1] - 4:22
**Jackson** [4] - 4:22, 4:24, 5:13, 59:17
**Jeff** [1] - 7:12
**Jessica** [1] - 6:1
**job** [2] - 19:6, 19:7
**JOHN** [1] - 3:5
**John** [3] - 7:7, 7:9, 9:23
**joint** [2] - 24:1, 30:19
**Jorge** [2] - 5:17, 5:18
**Judge** [4] - 15:13, 30:12, 69:14, 69:21
**July** [17] - 66:8, 67:1, 67:8, 67:9, 67:15, 67:17, 67:19, 68:1, 68:7, 68:8, 68:10, 69:18
**jumping** [2] - 14:21, 33:9

**June** [13] - 46:17, 52:22, 53:2, 65:16, 66:4, 66:6, 66:7, 67:6, 70:2, 70:9
**jurisdiction** [1] - 50:21

**K**

**keep** [5] - 38:6, 44:10, 57:10, 65:23, 68:6
**keeping** [1] - 66:7
**Kelso** [2] - 6:8, 6:11
**KELSO** [3] - 3:14, 6:8, 6:12
**keynote** [1] - 67:22
**kidding** [1] - 34:10
**kills** [1] - 67:23
**kind** [5] - 11:8, 24:25, 53:23, 66:5, 67:23
**kinds** [3] - 13:12, 25:3, 67:16
**Knight** [2] - 6:24, 70:1
**knowing** [1] - 52:8

**L**

**language** [1] - 22:9
**large** [1] - 44:9
**last** [12] - 7:16, 7:22, 26:7, 43:13, 43:15, 43:16, 45:10, 56:5, 65:3, 66:3, 69:8, 69:19
**lastly** [1] - 20:15
**law** [14] - 10:19, 23:6, 23:19, 24:16, 25:2, 25:3, 25:12, 33:4, 33:12, 35:7, 36:3, 39:4, 50:8
**laws** [1] - 50:11
**lawyer** [4] - 10:15, 14:15, 24:18, 36:8
**lawyers** [12] - 10:3, 10:17, 17:14, 20:11, 21:3, 21:12, 21:15, 33:24, 38:9, 58:5, 58:13, 66:18
**leading** [2] - 29:20, 35:8
**learned** [1] - 57:1
**least** [2] - 27:4, 49:8
**leave** [5] - 45:9, 47:6, 47:20, 52:9, 64:24
**left** [1] - 7:22
**legal** [13] - 11:5,

14:17, 23:1, 28:11, 31:5, 39:6, 39:9, 51:11, 54:25, 59:11, 59:15, 60:17

**legitimate** [2] - 17:8, 26:11

**legitimately** [1] - 26:12

**length** [2] - 23:2, 36:8

**lengthy** [3] - 9:13, 47:15

**LENNON** [1] - 5:16

**Lennon** [1] - 5:16

**LEONARD** [1] - 3:2

**letter** [16] - 10:19, 20:23, 22:9, 22:21, 23:1, 23:20, 24:13, 29:7, 29:12, 33:11, 36:10, 39:19, 44:11, 45:11, 45:15, 45:16

**letters** [1] - 29:6

**level** [2] - 14:20, 44:16

**liberty** [1] - 59:14

**lie** [1] - 26:15

**Liendo** [1] - 7:1

**lifted** [1] - 26:21

**likely** [1] - 26:11

**limit** [3] - 53:1, 53:2, 63:20

**Limited** [2] - 6:25, 7:1

**limited** [2] - 10:8, 18:10

**limiting** [3] - 40:14, 42:17, 44:13

**line** [5] - 26:22, 40:10, 57:15, 61:12, 68:24

**lines** [3] - 14:18, 24:2, 56:12

**list** [4] - 7:17, 7:19, 20:8, 46:4

**listed** [3] - 20:6, 20:25, 21:7

**listing** [1] - 20:9

**litigate** [1] - 51:5

**Litigation** [2] - 4:3, 37:10

**litigation** [18] - 10:18, 10:23, 11:1, 11:13, 13:23, 17:14, 17:19, 18:12, 20:9, 20:16, 21:25, 22:16, 23:17, 24:22, 32:24, 37:8, 37:9, 44:14

**LLC** [4] - 3:8, 4:3, 6:6, 54:22

**LLP** [2] - 3:2, 3:14

**local** [6] - 19:5, 24:17, 26:19, 28:5, 29:3, 39:22

**log** [67] - 9:14, 9:25, 10:12, 11:16, 12:5, 13:10, 13:11, 14:4, 14:13, 14:20, 14:23, 15:2, 15:4, 15:6, 15:10, 16:18, 16:20, 16:25, 17:5, 17:6, 17:7, 17:12, 17:24, 18:4, 19:4, 19:5, 19:12, 19:19, 19:25, 20:7, 20:10, 21:9, 22:10, 22:14, 24:10, 25:11, 25:13, 26:1, 26:9, 26:12, 26:13, 27:6, 27:9, 27:12, 27:13, 27:19, 28:10, 28:19, 29:3, 29:11, 29:14, 29:19, 29:23, 30:25, 31:13, 31:21, 32:2, 32:4, 32:7, 32:13, 39:18, 40:1, 44:11

**logged** [1] - 19:25

**logging** [2] - 39:19, 39:23

**look** [13] - 17:2, 20:18, 22:5, 22:12, 25:20, 30:25, 31:2, 33:18, 38:5, 39:7, 39:9, 39:12, 39:13

**looked** [6] - 28:9, 40:10, 49:7, 53:4, 56:11, 56:15

**looking** [11] - 8:1, 8:10, 21:2, 26:2, 33:9, 55:13, 55:23, 64:21, 65:25, 66:25, 69:14

**looks** [1] - 67:1

**Louisiana** [1] - 3:15

**low** [1] - 62:3

**Luis** [1] - 7:1

**Lukoil** [3] - 4:3, 5:15, 5:17

**Lutz** [1] - 7:1

**M**

**MAARRAOUI** [1] - 3:15

**Maclean** [1] - 5:21

**Madrid** [1] - 52:9

**magistrate** [1] - 67:10

**Maher** [1] - 5:2

**mail** [10] - 19:21, 19:23, 20:15, 22:14,

22:19, 22:20, 24:12, 33:10, 33:18, 57:19

**mails** [4] - 26:22, 26:23, 27:21, 32:25

**main** [1] - 68:16

**Major** [2] - 32:18, 33:11

**manager** [2] - 23:17, 24:22

**marching** [1] - 26:16

**Maria** [1] - 7:1

**Mark** [2] - 7:8

**MARK** [3] - 3:4, 3:5, 7:8

**marked** [1] - 18:1

**matches** [1] - 24:17

**material** [2] - 13:17, 15:5

**matter** [11] - 11:18, 16:17, 19:8, 23:19, 26:21, 29:11, 45:14, 62:17, 62:18, 64:23, 71:5

**Mayer** [1] - 5:16

**MCLISH** [1] - 6:18

**McLish** [2] - 3:1, 6:18, 6:20

**mean** [9] - 14:22, 26:10, 27:5, 30:8, 32:12, 33:24, 35:7, 40:20, 66:16

**means** [1] - 57:11

**meet** [7] - 8:9, 16:23, 19:13, 27:24, 30:15, 31:16, 32:4

**meeting** [1] - 67:22

**meets** [1] - 32:13

**Meister** [1] - 32:18

**members** [2] - 8:12, 62:20

**memo** [1] - 19:21

**memory** [1] - 56:9

**mental** [1] - 21:15

**merits** [2] - 40:23, 64:1

**metadata** [2] - 21:19, 29:8

**meticulous** [1] - 22:2

**Miami** [8] - 3:6, 3:12, 3:18, 3:21, 3:22, 68:19, 71:9, 71:10

**Michael** [2] - 5:16, 6:8

**MICHAEL** [1] - 3:14

**middle** [3] - 12:22, 43:15, 57:22

**Migdal** [1] - 7:8

**MIGDAL** [1] - 3:5

**might** [7] - 24:4, 26:15, 37:1, 47:6,

50:1, 50:2, 58:2

**mind** [4] - 29:6, 29:8, 38:6, 55:18

**minimum** [1] - 27:22

**minus** [1] - 68:7

**minute** [2] - 16:18, 30:6

**minutes** [3] - 27:21, 30:5, 69:4

**miss** [2] - 5:14, 7:18

**MITCHELL** [1] - 3:1

**Mitchell** [2] - 6:19, 6:21

**modifications** [1] - 41:16

**moment** [3] - 22:15, 55:22, 69:3

**Monday** [7] - 34:11, 34:12, 34:13, 39:15, 39:18, 52:17, 64:14

**money** [3] - 39:10, 42:24, 42:25

**monies** [1] - 18:12

**monitoring** [2] - 68:14, 69:5

**month** [1] - 41:19

**moot** [1] - 9:9

**MORILLO** [1] - 3:1

**Morillo** [4] - 6:16, 66:19, 68:24, 70:16

**most** [2] - 24:19, 63:14

**motion** [2] - 67:20, 69:7

**move** [5] - 16:25, 32:5, 42:2, 42:3, 66:8

**moved** [1] - 47:10

**MR** [130] - 4:9, 4:12, 4:14, 4:17, 4:22, 5:1, 5:6, 5:10, 5:16, 5:18, 5:20, 5:23, 5:25, 6:2, 6:5, 6:8, 6:12, 6:14, 6:18, 6:23, 7:4, 7:8, 7:12, 8:6, 8:17, 8:22, 9:3, 9:8, 9:22, 10:13, 11:17, 12:14, 12:24, 13:8, 15:9, 15:18, 15:20, 16:3, 16:5, 17:1, 17:15, 17:23, 18:8, 18:14, 19:15, 19:18, 22:5, 24:8, 24:15, 26:5, 27:18, 28:9, 28:23, 29:2, 29:3, 29:25, 30:12, 30:14, 31:17, 31:24, 32:10, 32:21, 33:18, 33:23, 34:11, 34:19, 35:1, 35:25, 36:23, 38:4, 38:19, 38:21, 39:1, 39:12, 39:15,

50:1, 50:2, 58:2

40:3, 40:8, 40:20, 41:10, 41:12, 42:8, 42:14, 43:2, 43:9, 43:12, 43:14, 43:15, 43:17, 44:3, 45:15, 45:20, 45:24, 46:19, 47:22, 48:10, 48:19, 48:22, 50:5, 51:10, 52:6, 52:13, 52:20, 52:24, 53:13, 54:21, 55:21, 56:19, 57:17, 58:20, 58:22, 59:8, 59:17, 61:20, 62:24, 64:3, 64:7, 64:16, 65:1, 65:17, 66:15, 67:4, 67:18, 67:25, 68:12, 69:2, 69:16, 69:24, 69:25, 70:11, 70:14

**MS** [3] - 4:16, 4:25, 5:4

**multiple** [1] - 14:1

**Munoz** [1] - 50:17

**murky** [1] - 36:3

**must** [1] - 49:5

**Muñoz** [2] - 47:12, 65:14

**N**

**name** [3] - 19:6, 19:7, 53:19

**narrow** [6] - 25:23, 26:4, 34:5, 57:3, 60:23, 62:6

**narrowed** [1] - 56:24

**nation** [2] - 49:3, 49:9

**National** [4] - 8:13, 8:19, 58:6, 58:14

**nature** [5] - 14:17, 14:18, 31:22, 32:8, 34:8

**necessarily** [4] - 12:14, 28:18, 33:24, 36:7

**need** [18] - 15:2, 21:20, 26:4, 28:2, 28:6, 28:16, 41:6, 52:11, 60:11, 60:23, 60:24, 62:7, 62:10, 64:5, 64:10, 66:8, 67:14, 68:21

**needing** [1] - 26:16

**needs** [2] - 19:14, 50:14

**negative** [2] - 55:24, 61:22

**negotiate** [1] - 35:2

**negotiating** [4] - 14:7, 23:1, 37:21, 38:2
**negotiation** [9] - 35:22, 36:9, 36:17, 37:17, 38:9, 38:10, 38:13, 39:1, 45:8
**negotiations** [2] - 23:4, 34:23
**Nevada** [1] - 67:22
**never** [2] - 60:6, 69:16
**new** [2] - 66:6, 68:15
**New** [3] - 3:2, 25:2, 46:17
**next** [10] - 4:21, 9:13, 15:2, 24:4, 31:9, 32:5, 34:16, 53:2, 64:14, 64:25
**nine** [2] - 9:17, 22:14
**non** [2] - 13:16, 13:17, 15:5, 16:23, 57:11
**non-financial** [1] - 16:23
**non-privilege** [1] - 57:11
**non-privileged** [3] - 13:16, 13:17, 15:5
**none** [3] - 41:20, 57:23, 63:11
**normal** [1] - 10:25
**North** [2] - 3:21, 71:9
**notes** [1] - 29:13
**nothing** [3] - 14:13, 44:16, 59:3
**notice** [13] - 7:25, 8:3, 8:9, 9:16, 14:21, 41:21, 42:15, 44:4, 46:11, 53:5, 60:18, 60:20, 70:5
**notion** [1] - 14:23
**notwithstanding** [1] - 51:20
**number** [7] - 4:4, 27:23, 34:7, 41:21, 46:6, 53:17
**Numeral** [1] - 9:16
**NW** [2] - 3:2, 3:8

**O**

**oath** [2] - 61:4, 61:17
**objecting** [1] - 44:9
**objection** [2] - 56:25, 57:10
**objectionable** [1] - 44:23
**objections** [6] - 54:8,
54:23, 55:5, 55:10, 56:23, 57:10
**obligation** [5] - 22:7, 26:8, 26:13, 58:24, 59:2
**obviously** [16] - 16:22, 31:18, 33:5, 37:24, 40:15, 40:22, 45:2, 46:10, 47:15, 49:7, 49:15, 50:4, 51:3, 51:4, 60:19, 60:21
**offered** [1] - 51:6
**office** [4] - 22:18, 23:16, 24:23, 56:1
**Office** [3] - 25:16, 25:17, 26:24
**Official** [1] - 71:8
**official** [1] - 3:20
**officials** [6] - 30:9, 30:20, 46:24, 47:8, 60:25, 62:20
**often** [1] - 24:19
**Oil** [1] - 5:21
**OLIVOS** [1] - 3:10
**Olivos** [1] - 6:6
**once** [2] - 39:22, 44:24
**one** [34] - 9:19, 14:5, 21:17, 22:12, 24:11, 25:23, 27:9, 34:2, 35:19, 36:5, 38:13, 44:16, 45:10, 47:17, 48:7, 48:16, 50:14, 53:2, 53:7, 60:1, 61:21, 63:19, 64:8, 64:23, 65:2, 65:13, 65:18, 67:14, 67:25, 68:16, 68:21
**ones** [2] - 30:6, 34:18
**open** [5] - 64:11, 67:2, 68:6, 68:11
**opening** [1] - 68:6
**operate** [1] - 50:13
**opines** [1] - 49:16
**opinion** [4] - 36:11, 48:8, 48:14, 51:21
**opportunity** [1] - 70:3
**opposed** [6] - 20:9, 23:1, 26:15, 28:11, 28:12, 40:15
**optimistic** [2] - 64:8, 66:21
**option** [4] - 51:3, 51:4, 51:6, 68:9
**order** [18] - 4:1, 7:20, 42:19, 43:6, 43:8, 43:18, 43:25, 44:5,
44:25, 46:5, 51:14, 59:9, 65:7, 66:13, 68:15, 69:17, 69:23, 70:7
**orders** [4] - 41:17, 44:20, 45:5, 51:25
**originally** [1] - 47:5
**Orseck** [1] - 6:3
**otherwise** [3] - 16:9, 69:8, 69:20
**ought** [1] - 63:16
**ourselves** [1] - 28:3
**Outlook** [1] - 19:22
**outrageous** [1] - 54:11
**outside** [12] - 47:23, 51:25, 53:1, 53:21, 55:7, 55:15, 56:7, 56:22, 58:1, 63:3, 66:4, 70:9
**outsider** [2] - 23:24, 24:13
**overboard** [1] - 33:16
**overflow** [2] - 67:14, 68:16
**overly** [1] - 37:1
**own** [4] - 37:19, 44:10, 44:18, 48:15

**P**

**P.A** [1] - 3:17
**p.m** [1] - 70:19
**pace** [1] - 26:15
**Paez** [1] - 7:16
**page** [8] - 19:11, 20:7, 22:14, 23:15, 35:24, 56:17, 61:5, 62:10
**pages** [1] - 9:17
**Pan** [1] - 4:3
**papers** [2] - 21:10, 25:20
**paragraph** [2] - 12:22, 31:11
**part** [10] - 12:7, 16:21, 16:22, 25:11, 38:11, 44:9, 54:12, 55:23, 69:23, 70:7
**participants** [2] - 31:23, 32:9
**particular** [3] - 20:3, 25:9, 63:6
**parties** [2] - 39:3, 69:19
**parts** [1] - 49:10
**party** [7] - 14:19, 25:5, 25:6, 25:8,
42:21, 58:23
**past** [4] - 33:1, 37:18, 66:21, 67:6
**PATRICIA** [2] - 3:20, 71:8
**patter** [1] - 62:19
**pause** [1] - 28:25
**payments** [1] - 18:20
**PDF** [2] - 19:21, 19:23
**PDVSA** [35] - 4:2, 4:8, 14:7, 17:25, 22:9, 23:3, 24:2, 25:15, 25:18, 26:25, 27:1, 29:19, 30:23, 31:7, 33:10, 34:22, 36:8, 36:15, 36:16, 36:18, 37:4, 37:5, 37:6, 37:7, 37:12, 37:19, 37:21, 37:24, 38:8, 38:14, 38:15, 41:2, 45:10
**PDVSA's** [1] - 42:1
**Pedrosa** [3] - 47:12, 50:18, 65:14
**Pencu** [2] - 32:18, 33:11
**people** [20] - 4:10, 10:16, 10:22, 20:4, 20:6, 20:13, 24:9, 24:20, 33:4, 34:9, 35:17, 46:24, 55:15, 56:7, 58:1, 61:24, 63:3, 63:6, 63:8, 68:3
**percentages** [1] - 16:14
**perfect** [2] - 31:4, 45:25
**perfectly** [1] - 51:23
**perhaps** [4] - 29:14, 34:11, 43:20, 63:13
**period** [8] - 14:4, 21:5, 29:23, 37:3, 40:5, 40:13, 41:4, 42:1
**periods** [1] - 40:11
**permission** [4] - 35:5, 35:12, 36:25, 50:7
**person** [10] - 24:20, 24:21, 30:20, 42:24, 49:25, 50:18, 50:24, 50:25, 55:3
**personally** [1] - 63:7
**persons** [1] - 62:15
**perspective** [1] - 49:9
**phase** [1] - 34:13
**phone** [5] - 15:17, 28:24, 50:12, 66:23, 70:13
**phrase** [2] - 60:8, 60:9
**phrased** [1] - 36:13
**pick** [2] - 67:14, 68:16
**picked** [1] - 28:24
**place** [6] - 9:17, 15:7, 43:6, 44:5, 46:14, 49:5
**placing** [1] - 10:11
**plaintiff** [20] - 4:8, 4:10, 4:13, 5:3, 8:10, 13:11, 14:13, 27:19, 36:11, 37:6, 41:2, 41:13, 42:15, 44:5, 45:6, 50:15, 53:9, 53:24, 65:5, 70:5
**Plaintiff's** [1] - 53:3
**plaintiff's** [14] - 7:24, 7:25, 9:14, 15:3, 19:4, 26:8, 26:13, 36:15, 39:21, 43:3, 50:20, 56:13, 68:23, 70:16
**plaintiffs** [11] - 8:1, 17:3, 22:13, 34:25, 49:19, 54:5, 57:17, 58:4, 58:11, 65:13, 66:20
**play** [1] - 30:2
**played** [1] - 34:9
**players** [2] - 32:15, 32:18
**plea** [1] - 21:1
**Podhurst** [1] - 6:2
**point** [15] - 23:7, 24:4, 25:21, 34:22, 37:10, 37:18, 44:4, 49:16, 50:14, 51:24, 52:8, 55:17, 56:12, 56:13, 70:1
**pointed** [4] - 22:12, 41:12, 41:18, 58:22
**points** [1] - 13:20
**polishing** [1] - 19:14
**political** [3] - 46:24, 47:18, 51:25
**portion** [3] - 10:8, 14:3, 70:18
**portions** [1] - 16:23
**position** [7] - 24:7, 48:15, 48:23, 49:14, 51:23, 55:19, 69:17
**positions** [1] - 20:8
**possession** [1] - 42:2
**possibility** [1] - 48:11
**possible** [4] - 35:3, 35:9, 47:6, 51:15
**potential** [3] - 14:11,

32:25, 36:4
**potentially** [3] - 30:3, 57:12, 58:16
**Poveda** [2] - 7:10
**pre** [3] - 24:25, 37:11
**pre-complaint** [1] - 24:25
**pre-retention** [1] - 24:25
**precise** [1] - 58:9
**preference** [2] - 65:24, 66:16
**prejudices** [1] - 44:17
**premise** [1] - 40:20
**preparation** [5] - 20:20, 39:25, 53:20, 54:10, 60:4
**preparatory** [1] - 61:10
**prepare** [7] - 54:2, 54:10, 59:3, 59:11, 60:2, 60:5, 60:17
**prepared** [10] - 10:10, 12:25, 19:9, 28:22, 31:20, 33:2, 48:11, 53:10, 58:24, 61:2
**preparing** [1] - 20:12
**present** [2] - 5:10, 67:13
**presentation** [1] - 10:14
**presented** [1] - 47:3
**pressed** [1] - 58:10
**pressing** [1] - 13:11
**presumably** [3] - 23:23, 25:18, 36:18
**pretty** [3] - 9:13, 46:13, 67:7
**prevent** [1] - 11:4
**previously** [1] - 9:5
**privilege** [76] - 8:11, 9:14, 9:25, 10:12, 11:16, 11:23, 12:5, 12:20, 14:15, 14:25, 15:10, 15:23, 15:25, 16:7, 16:18, 16:20, 16:25, 17:8, 17:12, 18:1, 18:21, 19:4, 19:5, 19:12, 19:19, 19:25, 20:5, 20:7, 21:22, 21:23, 24:10, 25:6, 25:13, 26:1, 26:24, 27:6, 27:9, 27:12, 27:13, 28:18, 29:11, 29:15, 29:17, 30:10, 30:19, 31:12, 31:21, 31:22, 32:2, 32:4, 32:8, 32:12,

33:16, 34:8, 34:24, 35:10, 35:18, 36:21, 39:17, 39:23, 40:1, 44:11, 46:8, 54:23, 55:6, 55:10, 56:25, 57:11, 57:14, 60:14, 62:8, 62:22, 64:15, 64:17
**privileged** [27] - 10:6, 10:19, 10:25, 11:10, 11:13, 11:25, 12:6, 12:11, 12:16, 13:16, 13:17, 14:12, 14:23, 15:5, 16:9, 23:5, 23:11, 25:1, 25:3, 26:12, 27:3, 31:12, 33:25, 35:4, 37:14, 39:11, 40:5
**privileges** [1] - 24:12
**problem** [3] - 46:21, 47:3, 47:19
**problems** [2] - 67:16, 68:2
**proceedings** [3] - 49:20, 70:18, 71:4
**proceeds** [1] - 10:8
**process** [1] - 47:15
**Procurador** [18] - 22:18, 23:16, 23:25, 24:22, 25:16, 25:18, 26:25, 30:20, 31:6, 46:15, 47:1, 47:7, 47:13, 48:3, 48:7, 49:8, 51:21, 52:16
**produce** [20] - 8:2, 11:14, 13:1, 15:4, 16:8, 17:5, 20:19, 26:9, 40:1, 42:19, 50:16, 50:20, 51:12, 52:4, 52:15, 52:17, 52:18, 52:22
**produced** [9] - 11:19, 12:3, 12:9, 13:10, 21:18, 29:20, 40:2, 41:15, 44:16
**produces** [2] - 27:19, 58:23
**product** [17] - 8:12, 21:23, 22:22, 23:9, 23:10, 23:22, 23:23, 23:24, 25:4, 27:4, 28:14, 29:22, 33:8, 33:13, 33:14, 33:19, 34:2
**production** [7] - 7:23, 9:15, 9:19, 33:1, 39:19, 42:5, 45:10
**Prologo** [12] - 53:19, 55:1, 55:4, 55:8, 56:16, 57:22, 58:8,

61:3, 61:9, 61:19, 62:17, 63:21
**Prologo's** [1] - 53:20
**promptly** [1] - 65:22
**pronouncing** [1] - 22:17
**proposals** [1] - 64:22
**proposed** [4] - 43:12, 43:17, 66:12, 68:15
**prospective** [1] - 38:12
**protect** [1] - 21:23
**protected** [5] - 35:10, 35:23, 36:19, 37:14, 54:1
**provide** [4] - 17:3, 32:1, 49:8, 66:17
**provided** [5] - 22:2, 25:11, 45:12, 45:15, 45:16
**providing** [1] - 17:13
**proving** [1] - 55:24
**provisions** [1] - 44:20
**public** [1] - 11:19
**pulling** [1] - 55:22
**punitive** [1] - 62:13
**purely** [1] - 39:10
**purpose** [2] - 19:8, 54:24
**pursue** [2] - 21:21, 45:21
**pursuit** [1] - 21:25
**push** [1] - 69:22
**put** [9] - 11:15, 13:24, 18:6, 19:2, 55:25, 61:3, 65:5, 69:16, 70:8
**putative** [1] - 62:13
**putting** [3] - 9:11, 26:15, 46:6

### Q

**qualifies** [1] - 34:2
**quality** [1] - 16:25
**questions** [15] - 13:12, 24:6, 24:14, 27:23, 53:4, 57:7, 57:18, 60:6, 60:15, 61:9, 61:14, 61:22, 62:2, 62:4
**quickly** [1] - 70:1
**QUINN** [1] - 3:8
**quite** [1] - 39:9
**quote** [1] - 56:9
**quoted** [1] - 56:17

### R

**rained** [2] - 54:12, 54:14
**raised** [2] - 21:22, 30:16
**Randall** [1] - 4:22
**rationale** [1] - 10:11
**rationing** [1] - 42:16
**re** [4] - 24:12, 26:22, 33:10, 64:11
**re-open** [1] - 64:11
**read** [3] - 60:18, 61:5
**reading** [2] - 19:10, 50:8
**ready** [2] - 27:2, 27:3
**real** [1] - 48:10
**realistic** [1] - 27:7
**really** [20] - 16:13, 26:4, 34:5, 38:2, 38:16, 38:17, 44:9, 44:17, 45:22, 52:14, 56:13, 57:5, 58:18, 60:23, 61:5, 62:6, 62:7, 64:1
**reargue** [1] - 48:24
**reason** [5] - 42:22, 45:2, 45:3, 53:10, 54:13
**reasonably** [1] - 59:21
**reasons** [1] - 51:25
**recap** [1] - 5:11
**receive** [3] - 10:8, 13:15, 14:3
**received** [6] - 20:21, 20:22, 33:21, 46:11, 53:6
**receives** [2] - 38:8
**rechecking** [1] - 42:6
**recipient** [2] - 19:7, 26:20
**record** [5] - 9:8, 11:9, 11:19, 51:17, 51:19
**recover** [1] - 18:12
**recovery** [2] - 14:3, 14:18
**redacted** [3] - 13:16, 15:5, 16:8
**redaction** [1] - 16:22
**REED** [1] - 3:11
**reference** [1] - 16:9
**referenced** [1] - 42:17
**referred** [2] - 49:6, 50:17
**regard** [4] - 40:25, 53:3, 55:9, 61:10
**regarding** [7] - 7:24,

35:22, 36:17, 37:17, 39:3, 41:8, 56:21
**regardless** [1] - 42:21
**regular** [1] - 49:6
**Reinaldo** [1] - 47:12
**relate** [7] - 12:18, 12:21, 14:22, 15:22, 15:24, 16:6, 18:19
**related** [12] - 7:23, 9:14, 13:18, 13:22, 14:10, 14:21, 17:4, 28:13, 36:4, 39:17, 41:22, 42:25
**relates** [5] - 12:7, 13:2, 16:21, 29:12, 42:20
**relating** [8] - 8:19, 11:12, 15:12, 20:19, 21:10, 38:11, 40:18, 40:21, 42:12
**relationship** [6] - 14:16, 22:24, 30:11, 30:17, 31:1, 35:9
**relationships** [1] - 30:2
**relevant** [2] - 16:15, 54:13
**rely** [1] - 60:3
**relying** [1] - 50:25
**remedy** [1] - 44:12
**remember** [3] - 50:15, 56:11, 56:17
**remotely** [4] - 14:9, 18:2, 22:9, 44:13
**removal** [1] - 62:12
**rendering** [1] - 54:24
**replacement** [1] - 62:11
**reply** [2] - 53:7, 53:8
**report** [3] - 13:4, 65:4, 65:21
**REPORTED** [1] - 3:19
**REPORTER** [3] - 6:10, 15:13, 27:16
**Reporter** [2] - 3:20, 71:8
**reports** [1] - 65:8
**represent** [1] - 37:5
**representation** [9] - 8:11, 9:4, 9:7, 38:2, 38:12, 41:9, 42:4, 57:5, 61:3
**representations** [2] - 35:3, 56:3
**representative** [4] - 51:13, 53:4, 53:25, 60:22
**representatives** [3] -

37:4, 59:2, 63:2
**represented** [8] -
9:6, 23:4, 34:23,
34:25, 35:20, 36:6,
39:2, 41:14
**representing** [6] -
8:20, 35:11, 37:12,
37:20, 37:21, 57:20
**request** [9] - 8:15,
20:18, 21:20, 41:16,
41:21, 42:1, 44:6,
47:10, 53:3
**requests** [1] - 41:13
**require** [3] - 19:6,
51:12, 69:7
**required** [2] - 22:3,
42:16
**requirements** [3] -
19:13, 19:20, 32:13
**research** [1] - 59:6
**resignation** [1] -
62:12
**resigned** [1] - 10:3
**resolutions** [1] -
46:8
**resolve** [1] - 27:24
**respect** [15] - 11:8,
11:23, 12:17, 14:1,
15:10, 17:17, 18:10,
18:22, 18:23, 18:24,
32:23, 47:12, 50:5,
51:4, 51:16
**respectfully** [3] -
13:9, 13:17, 34:24
**respects** [1] - 19:13
**respond** [4] - 13:20,
40:4, 69:8, 69:20
**response** [1] - 53:8
**responsible** [1] -
63:6
**responsive** [4] -
39:19, 41:15, 41:25,
45:11
**result** [1] - 47:18
**results** [1] - 27:20
**retention** [2] - 24:25,
37:11
**retired** [1] - 27:10
**return** [1] - 68:19
**reveal** [2] - 16:11,
16:13
**revealed** [2] - 16:12,
16:14
**reveals** [1] - 17:7
**review** [5] - 16:19,
27:9, 27:20, 28:1,
32:25
**reviewing** [1] - 29:5,
54:19
**revised** [2] - 22:7,

27:22
**rid** [1] - 34:4
**ripples** [1] - 66:5
**rise** [1] - 44:16
**Rivero** [1] - 7:16
**Rodriguez** [1] - 7:1
**role** [7] - 10:7, 10:21,
17:24, 18:5, 21:11,
32:19, 33:5
**roles** [3] - 13:22,
33:3, 34:9
**roll** [1] - 4:6
**Roman** [1] - 9:15
**room** [2] - 45:8, 66:6
**Rosado** [1] - 5:22
**ROSENTHAL** [1] -
6:2
**Rosenthal** [1] - 6:2
**route** [1] - 26:3
**RPR** [2] - 3:20, 71:8
**Rule** [2] - 24:5, 34:14
**rule** [4] - 24:17, 28:5,
39:22, 53:10
**rules** [6] - 19:6,
19:20, 22:3, 26:19,
29:3, 29:24
**RYAN** [1] - 3:5
**Ryan** [2] - 7:7, 7:9

## S

**Sanchez** [3] - 6:25,
7:2, 7:6
**satisfied** [1] - 58:19
**satisfy** [2] - 8:15, 9:2
**Saturday** [1] - 48:5
**SCHACHTER** [1] -
3:17
**Schachter** [1] - 6:15
**schedule** [7] - 46:9,
52:7, 65:7, 66:1, 67:1,
68:20, 69:14
**scheduled** [1] -
46:16
**schedules** [1] -
46:18
**scheduling** [9] -
46:8, 46:11, 46:20,
64:20, 64:21, 64:25,
65:3, 66:12, 66:21
**Schiller** [10] - 4:12,
4:15, 4:16, 4:17, 4:22,
14:5, 14:10, 23:19,
35:21, 36:7
**script** [1] - 62:5
**search** [2] - 18:16,
62:17
**searched** [1] - 62:3
**second** [10] - 4:18,

6:20, 17:9, 31:19,
34:13, 46:3, 50:14,
65:18, 66:11, 67:5
**section** [2] - 19:25,
49:2
**see** [19] - 7:21, 13:3,
14:20, 17:25, 18:19,
34:16, 34:24, 35:20,
36:19, 39:8, 39:10,
48:2, 50:23, 53:19,
55:11, 57:4, 61:9,
62:24, 62:25
**seeking** [2] - 24:5,
41:21
**Seelig** [1] - 32:19
**seem** [4] - 37:16,
37:23, 44:16, 61:6
**segue** [1] - 45:25
**selection** [1] - 62:11
**send** [1] - 44:7
**sender** [1] - 26:20
**senior** [1] - 55:1
**sense** [3] - 44:15,
51:6, 59:15
**sent** [1] - 43:12
**separate** [5] - 22:22,
31:16, 34:23, 35:20,
36:6
**separately** [4] - 20:9,
23:4, 28:16, 39:2
**series** [1] - 61:21
**serving** [2] - 11:14,
66:7
**set** [6] - 7:24, 9:15,
45:25, 64:10, 64:13,
67:7
**sets** [4] - 19:20,
19:22, 19:23, 30:2
**seven** [1] - 41:19
**share** [1] - 14:11
**Shaw** [3] - 5:9, 5:10,
5:13
**shortly** [1] - 44:8
**show** [1] - 58:25
**sign** [3] - 43:23, 49:4
**signatory** [1] - 49:1
**signed** [4] - 30:21,
49:9, 49:10, 49:12
**significant** [1] -
29:22
**similar** [1] - 22:9
**simplest** [1] - 38:5
**simply** [2] - 33:23,
58:25
**simultaneous** [1] -
69:11
**single** [1] - 30:16
**sit** [1] - 27:5
**situation** [2] - 21:4,
47:18

**situations** [1] - 50:10
**six** [1] - 19:10
**small** [1] - 27:25
**Smith** [5] - 4:17, 5:1,
5:6, 5:7, 5:13
**SMITH** [4] - 3:11,
4:17, 5:1, 5:6
**smoothly** [1] - 61:5
**software** [1] - 19:22
**someone** [1] - 50:12
**sorry** [10] - 5:2,
12:19, 15:15, 24:10,
33:16, 36:13, 37:15,
57:9, 60:8, 66:2
**sort** [5] - 28:19, 34:3,
37:18, 52:2, 62:22
**sorted** [1] - 44:1
**sought** [1] - 56:2
**sounds** [3] - 32:22,
36:10, 39:24
**Spain** [4] - 45:19,
46:17, 47:9, 47:21
**Spanish** [2] - 24:19,
45:12
**spare** [1] - 36:3
**SPEAKER** [2] - 27:15
**speaker** [4] - 15:14,
15:17, 28:24, 67:22
**speaking** [3] - 13:22,
27:16, 27:17
**speaks** [1] - 24:19
**specific** [5] - 19:9,
41:13, 57:18, 61:4,
61:15
**specifically** [4] -
20:1, 20:5, 21:7
**specificity** [1] -
32:16
**spelled** [1] - 45:4
**Spinelli** [21] - 9:21,
9:23, 10:2, 10:15,
10:16, 16:24, 17:4,
17:11, 17:23, 17:25,
18:6, 18:10, 18:11,
18:17, 18:23, 22:15,
23:5, 23:18, 24:18,
30:18, 39:9
**Spinelli's** [1] - 23:23
**spoken** [1] - 62:19
**St** [1] - 3:15
**Stacey** [2] - 6:19,
6:21
**STACY** [1] - 3:1
**stage** [1] - 37:18
**stand** [2] - 18:11,
34:20
**standing** [13] - 7:24,
10:15, 13:18, 21:21,
40:12, 40:14, 40:19,
40:22, 40:25, 45:22,

55:15, 56:22, 69:11
**standing-related** [1]
- 13:18
**stands** [2] - 10:8,
14:3
**started** [1] - 15:2
**state** [1] - 52:22
**State** [2] - 48:17,
48:25
**statement** [4] - 8:2,
10:4, 12:24, 40:19
**statements** [1] -
45:10
**States** [5] - 3:21,
47:1, 47:2, 52:9, 71:9
**status** [2] - 46:10,
49:13
**stay** [1] - 68:24
**steal** [1] - 69:3
**STENOGRAPHICA
LLY** [1] - 3:19
**step** [3] - 27:25,
31:9, 50:15
**Stephen** [1] - 6:2
**Steve** [3] - 4:14,
19:15
**still** [9] - 17:6, 27:14,
32:11, 36:14, 37:24,
48:15, 48:22, 57:18,
69:20
**straight** [4] - 56:8,
56:14, 62:7, 63:25
**strategy** [6] - 20:16,
21:14, 21:25, 55:8,
57:7, 57:8
**STRAUSS** [1] - 3:2
**Street** [2] - 3:5, 3:8
**strictly** [1] - 21:10
**structure** [1] - 61:11
**stuff** [3] - 34:3, 34:5,
64:17
**sub** [2] - 38:17,
38:25
**subject** [10] - 19:8,
19:24, 22:6, 23:19,
26:21, 29:10, 41:15,
43:25, 45:14, 46:2
**submission** [1] -
55:12
**submissions** [1] -
53:7
**submit** [6] - 25:1,
35:12, 36:1, 66:10,
66:11, 68:15
**substitution** [1] -
62:12
**succeeded** [1] - 48:4
**sufficiency** [1] -
16:18
**sufficient** [1] - 29:14

**suggest** [2] - 27:11, 63:13
**Suite** [4] - 3:5, 3:11, 3:15, 3:17
**SULLIVAN** [1] - 3:8
**sums** [1] - 31:8
**supplement** [9] - 13:11, 17:6, 31:21, 32:1, 32:4, 32:7, 32:25, 33:3, 34:7
**supplemental** [3] - 35:6, 66:12
**supplementation** [2] - 32:14, 64:15
**supplemented** [1] - 15:2
**support** [2] - 17:13, 17:14
**supporting** [1] - 10:17
**supports** [1] - 39:4
**surrounding** [2] - 36:9, 46:1
**SUSMAN** [1] - 3:14
**SW** [1] - 3:5
**Swerdloff** [1] - 7:14

**T**

**technically** [2] - 26:18, 32:13
**telephonic** [1] - 63:23
**ten** [1] - 41:13
**terms** [15] - 10:17, 11:7, 14:8, 17:3, 18:5, 24:23, 24:24, 30:23, 36:17, 37:17, 37:22, 39:25, 44:22, 49:25, 59:10
**test** [1] - 59:9
**testified** [6] - 10:21, 13:21, 13:23, 14:1, 59:3, 61:23
**testify** [1] - 56:1
**testimony** [2] - 53:21, 56:2
**Texas** [1] - 3:15
**THE** [119] - 3:1, 3:4, 3:7, 3:13, 4:5, 4:18, 4:24, 5:2, 5:5, 5:7, 5:11, 5:19, 5:24, 6:4, 6:7, 6:10, 6:11, 6:13, 6:16, 6:20, 7:2, 7:6, 7:10, 7:15, 8:15, 9:1, 9:11, 9:23, 11:11, 12:4, 12:19, 13:6, 15:8, 15:13, 15:15, 15:19, 16:4, 16:16,

17:9, 17:20, 18:5, 18:11, 19:2, 19:16, 22:4, 23:14, 24:10, 25:14, 26:18, 27:16, 27:17, 28:4, 28:16, 30:13, 31:19, 32:7, 32:11, 33:2, 33:22, 34:1, 34:13, 35:14, 36:13, 37:15, 38:16, 38:20, 38:24, 39:7, 39:14, 39:17, 40:14, 41:1, 41:11, 42:3, 42:13, 42:23, 43:3, 43:22, 44:19, 45:16, 45:21, 46:3, 47:19, 48:7, 48:13, 48:21, 49:15, 51:1, 51:19, 52:11, 52:19, 52:21, 53:1, 53:15, 55:11, 56:4, 56:20, 58:18, 58:21, 59:5, 59:13, 60:7, 61:25, 63:20, 64:6, 64:12, 64:19, 65:15, 65:25, 66:25, 67:5, 67:23, 68:2, 68:13, 69:13, 69:22, 70:8, 70:12, 70:15
**themselves** [2] - 4:11, 59:2
**theoretically** [2] - 57:11, 61:16
**thereby** [1] - 31:12
**therefore** [2] - 49:5, 49:23
**they've** [1] - 43:18
**thinking** [1] - 62:9
**third** [4] - 25:4, 25:5, 25:6, 25:8
**three** [7] - 10:11, 18:8, 20:25, 22:22, 23:21, 46:6, 47:17
**throughout** [1] - 37:11
**tight** [1] - 13:17
**timing** [1] - 46:8
**title** [7] - 19:6, 19:7, 19:8, 19:24, 22:6, 23:16, 23:19
**today** [3] - 7:14, 46:21, 65:4
**together** [6] - 6:24, 17:2, 18:3, 25:11, 44:22, 69:9
**Tom** [1] - 6:18
**TOMAS** [1] - 3:1
**tomorrow** [1] - 43:22, 46:16, 47:4
**took** [4] - 19:24, 25:20, 36:25, 46:14
**totally** [1] - 12:23

**towards** [1] - 35:8
**track** [2] - 35:25, 36:14
**traders** [3] - 65:19, 66:17, 66:19
**TRADING** [1] - 3:8
**Trading** [8] - 53:14, 54:22, 55:2, 55:3, 55:24, 64:9, 65:2, 65:20
**traditional** [2] - 10:7, 11:5
**Trafigura** [25] - 6:4, 6:6, 53:4, 53:7, 53:12, 53:14, 54:22, 55:2, 55:3, 55:24, 56:6, 56:21, 57:20, 58:1, 58:11, 60:22, 60:24, 61:11, 62:19, 63:1, 63:3, 64:9, 65:2, 65:20, 69:3
**TRAFIGURA** [1] - 3:8
**Trafigura's** [1] - 55:18
**transcript** [1] - 53:6, 54:20, 59:19
**transcription** [1] - 71:4
**travel** [8] - 45:19, 46:25, 47:2, 47:9, 47:20, 47:21, 47:22, 51:25
**traveling** [1] - 69:5
**trouble** [2] - 55:23, 64:11
**true** [1] - 11:3
**truly** [1] - 14:17
**Trust** [2] - 4:3, 37:10
**trust** [58] - 8:19, 20:16, 20:20, 20:21, 20:22, 21:4, 21:18, 21:24, 25:19, 27:1, 29:7, 29:9, 29:12, 29:20, 30:21, 31:7, 35:22, 36:10, 36:16, 36:18, 37:8, 37:9, 37:17, 37:20, 38:7, 38:8, 38:13, 38:14, 38:15, 40:12, 40:13, 40:15, 40:22, 40:25, 41:4, 41:5, 41:7, 41:22, 42:1, 42:11, 42:18, 42:20, 42:21, 50:19, 51:12, 55:4, 55:25, 62:13, 62:14, 62:15, 62:18, 63:4, 63:5
**trustee** [1] - 62:12
**trustees** [3] - 33:5, 62:13, 62:15

**try** [4] - 27:7, 27:24, 66:23, 68:12
**trying** [1] - 47:24, 48:2, 51:2
**Tuesday** [3] - 64:16, 64:18, 64:19
**turn** [1] - 49:19
**tweaking** [1] - 65:6
**two** [22] - 9:17, 13:9, 22:19, 31:16, 33:4, 33:12, 33:24, 34:8, 36:9, 41:21, 46:6, 46:7, 62:23, 63:16, 65:10, 67:13, 67:14, 68:3, 68:4, 68:11, 68:13, 69:4
**type** [2] - 19:21, 20:5
**typically** [1] - 50:13

**U**

**U.S** [2] - 4:2, 47:21
**ultimately** [5] - 29:19, 31:7, 36:10, 37:8, 62:15
**umbrella** [3] - 18:7, 18:9, 19:3
**unable** [1] - 65:11
**under** [20] - 17:11, 18:6, 18:9, 19:2, 19:20, 24:24, 25:2, 27:3, 33:6, 34:2, 34:4, 36:20, 38:25, 49:5, 55:10, 61:4, 61:12, 61:17
**understood** [1] - 70:11
**undone** [1] - 61:13
**ungelled** [1] - 47:18
**UNIDENTIFIED** [1] - 27:15
**united** [1] - 3:21
**United** [4] - 46:25, 47:2, 52:9, 71:9
**universe** [1] - 13:4
**unless** [3] - 46:15, 52:7, 64:2
**unlikely** [2] - 41:2, 41:19
**unsealed** [1] - 70:18
**up** [20] - 7:21, 8:25, 27:5, 28:24, 29:20, 35:8, 35:11, 49:15, 50:9, 55:22, 55:25, 56:5, 58:25, 64:2, 66:2, 69:1, 69:3, 70:14, 70:17
**urging** [1] - 13:10
**URQUHART** [1] - 3:8

**useful** [1] - 37:1

**V**

**vacation** [1] - 68:3
**various** [6] - 14:25, 20:8, 21:18, 32:17, 33:4, 34:9
**vehicle** [1] - 31:1
**Venezuela** [18] - 24:20, 29:18, 46:23, 46:25, 47:18, 47:20, 47:23, 48:2, 48:9, 48:12, 49:1, 49:4, 49:5, 49:9, 49:13, 50:7, 51:22, 51:25
**Venezuelan** [9] - 30:9, 30:20, 30:22, 56:7, 58:6, 58:14, 60:25, 62:20
**venue** [1] - 42:22
**verse** [1] - 60:12
**version** [1] - 22:7
**versions** [2] - 13:16, 62:14
**versus** [1] - 4:3
**video** [4] - 48:8, 48:12, 50:3, 51:22
**videotape** [1] - 48:1
**view** [8] - 8:24, 26:7, 50:9, 51:10, 51:11, 51:20, 56:13
**violation** [1] - 50:11
**virtually** [2] - 22:13, 29:11
**Vitol** [1] - 6:7
**VITOL** [2] - 3:14, 3:14
**voluntary** [3] - 49:3, 49:12, 50:6

**W**

**wait** [3] - 4:18, 68:18
**waiving** [1] - 31:12
**Washington** [2] - 3:3, 3:9
**water** [1] - 61:12
**website** [1] - 48:18
**week** [17] - 27:19, 43:13, 43:15, 43:16, 67:8, 67:9, 67:10, 67:11, 67:15, 67:17, 67:19, 67:23, 67:25, 68:1, 68:7
**weekend** [1] - 46:20
**weeks** [2] - 13:9, 67:13
**whereas** [1] - 42:18

**whittle** [1] - 27:22
**whole** [4] - 12:7, 16:21, 60:12, 61:21
**William** [1] - 9:20
**window** [2] - 66:4, 70:9
**wish** [1] - 52:13
**withheld** [9] - 11:22, 12:17, 15:22, 15:24, 16:7, 18:21, 22:22, 42:9, 55:10
**withholding** [9] - 8:11, 9:14, 12:20, 23:13, 30:8, 36:15, 36:16, 40:5, 40:9
**witness** [11] - 20:6, 50:20, 55:6, 58:23, 58:24, 58:25, 59:3, 59:22, 63:5, 63:9
**word** [2] - 41:24, 56:14
**Word** [1] - 19:23
**works** [3] - 23:16, 25:15, 70:3
**worn** [1] - 13:25
**worry** [2] - 33:7, 34:3
**worrying** [1] - 69:11
**worth** [1] - 66:23
**write** [1] - 31:10
**written** [1] - 63:23

## Y

**yesterday** [2] - 54:12, 54:15
**York** [2] - 25:2, 46:17
**yourself** [2] - 60:10, 60:21

## Z

**Zack** [3] - 4:14, 4:20, 5:12
**zero** [2] - 23:14, 41:18
**zeroing** [1] - 16:18