# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

PDVSA US LITIGATION TRUST

          Plaintiff,

    v.

LUKOIL PAN AMERICAS LLC; LUKOIL
PETROLEUM LTD.; COLONIAL OIL INDUSTRIES,
INC.; COLONIAL GROUP, INC.; GLENCORE LTD.;
GLENCORE INTERNATIONAL A.G.; GLENCORE
ENERGY UK LTD.; MASEFIELD A.G.;
TRAFIGURA A.G.; TRAFIGURA TRADING LLC;
TRAFIGURA BEHEER B.V.; VITOL ENERGY
(BERMUDA) LTD.; VITOL S.A.; VITOL, INC.;
FRANCISCO MORILLO; LEONARDO BAQUERO;
DANIEL LUTZ; LUIS LIENDO; JOHN RYAN;
MARIA FERNANDA RODRIGUEZ; HELSINGE
HOLDINGS, LLC; HELSINGE, INC.; HELSINGE
LTD., SAINT-HÉLIER; WALTROP
CONSULTANTS, C.A.; GODELHEIM, INC.;
HORNBERG INC.; SOCIETE DOBERAN, S.A.;
SOCIETE HEDISSON, S.A.; SOCIETE HELLIN,
S.A.; GLENCORE DE VENEZUELA, C.A.; JEHU
HOLDING INC.; ANDREW SUMMERS;
MAXIMILIANO POVEDA; JOSE LAROCCA; LUIS
ALVAREZ; GUSTAVO GABALDON; SERGIO DE
LA VEGA; ANTONIO MAARRAOUI; CAMPO
ELIAS PAEZ; PAUL ROSADO; BAC FLORIDA
BANK; EFG INTERNATIONAL A.G.; BLUE BANK
INTERNATIONAL N.V.

          Defendants

**Case No. 1:18-CV-20818 (DPG)**

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' ORDER TO SHOW CAUSE FOR DISCOVERY SANCTIONS AND OTHER RELIEF AGAINST PLAINTIFF

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii-iv

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...............................................................................................................3

DEFENDANTS' "LIMITED" INQUIRY INTO STANDING .........................................4

ARGUMENT .....................................................................................................................5

I.      DEFENDANTS ARE NOT ENTITLED TO SANCTIONS ................................5

        A.      The Information Defendants Purport to Seek Is Immaterial to Plaintiff's
                Standing and Beyond the Scope of Appropriate Discovery ....................6

        B.      The Trust Should Not Be Sanctioned For Events Beyond its Control in a
                Foreign Country ......................................................................................9

        C.      The Proposed Deponents Did Not Refuse to Appear For Depositions.................12

                1.      Depositions Through the Hague Convention Is the Proper Way to
                        Obtain Depositions of Foreign Officials ....................................13

                2.      Defendants Have Rejected the Option of Video Depositions ....................13

                3.      Defendants Have Also Rejected Pursuing Rule 31 Depositions................15

        D.      Plaintiff Did Not Violate Any Court Order .........................................15

CONCLUSION..................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

Cases

*Agudas Chasidei Chabad v. Gourary*,
    833 F.2d 431 (2d Cir. 1987) ............................................................................... 9

*Alfadda v. Fenn*,
    149 F.R.D. 28 (S.D.N.Y.1993) ......................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 8

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
    171 F.R.D. 135 (S.D.N.Y. 1997) ..................................................................... 10

*Collins v. Lake Helen, L.P.*,
    249 F. App'x 116 (11th Cir. 2007) .................................................................. 12

*Crystal Clear Dev., LLC v. Devon Architects of New York, P.C.*,
    7 N.Y.S.3d 361 (App. Div. 2015) ..................................................................... 9

*Dorsey v. Acad. Moving & Storage, Inc.*,
    423 F.2d 858 (5th Cir. 1970) ........................................................................... 12

*Dunbar v. United States*,
    502 F.2d 506 (5th Cir. 1974) ............................................................................. 5

*Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. B.V.*,
    809 F.3d 737 (2d Cir. 2016) .......................................................................... 7-8

*FOGADE v. ENB Revocable Trust*,
    263 F.3d 1274 (11th Cir. 2001) ........................................................................ 7

*Gearbox Software, LLC v. Apogee Software, Ltd.*,
    No. 3:14-CV-710-L, 2014 WL 3109868 (N.D. Tex. July 8, 2014) ................. 15

*Hendrie v. Lowmaster*,
    152 F.2d 83 (6th Cir. 1945) ............................................................................. 16

*In re Infant Formula Antitrust Litig.*,
    No. MDL 878, 1992 WL 503465 (N.D. Fla. Jan. 13, 1992) ........................... 10

*In re Mahoney*,
    251 B.R. 748 (Bankr. S.D. Fla. 2000) ............................................................. 16

*In re Marcus Trusts*,
    769 N.Y.S.2d 56 (App. Div. 2003) ................................................................... 9

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ........................................................................................................ 6

*Int'l Telecommunications Exch. Corp. v. MCI Telecommunications Corp.*,
   892 F. Supp. 1520 (N.D. Ga. 1995) .............................................................................. 9

*Jallali v. USA Funds*,
   No. 11-62510-CIV, 2013 WL 12080903 (S.D. Fla. Feb. 22, 2013) ........................ 13

*JPMorgan Chase Bank v. Winnick*,
   228 F.R.D. 505 (S.D.N.Y. 2005) ................................................................................ 10

*Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*,
   No. 10-24310-CIV, 2011 WL 6190160 (S.D. Fla. Dec. 2, 2011) ............................ 12

*Laydon v. Mizuho Bank, Ltd.*,
   183 F. Supp. 3d 409 (S.D.N.Y. 2016) ....................................................................... 14

*M.S. Textiles, Ltd. v. Rafaella Sportswear, Inc.*,
   739 N.Y.S.2d 386 (App. Div. 2002) .............................................................................. 9

*Malautea v. Suzuki Motor Co.*,
   987 F.2d 1536 (11th Cir.1993) ................................................................................... 12

*McKesson Info. Sols. LLC v. Epic Sys. Corp.*,
   No. 1:06-CV-2965-JTC, 2009 WL 10636314 (N.D. Ga. Feb. 10, 2009) .................. 7

*Miller v. Wells Fargo Bank Int'l Corp.*,
   540 F.2d 548 (2d Cir. 1976) .......................................................................................... 9

*Muhammad v. Bethel-Muhammad*,
   No. CIV.A. 11-0690-WS-B, 2013 WL 5670925 (S.D. Ala. Oct. 17, 2013) ............. 6

*MUNB Loan Holdings, LLC v. Y. Judd Shoval*,
   No. 12-20305-CIV, 2013 WL 12092517 (S.D. Fla. Mar. 1, 2013) ........................... 8

*Natta v. Hogan*,
   392 F.2d 686 (10th Cir. 1968) ................................................................................... 10

*Orentreich v. Prudential Ins. Co. of Am.*,
   713 N.Y.S.2d 330 (App. Div. 2000) .............................................................................. 9

*Preferred Care Partners Holding Corp. v. Humana, Inc.*,
   No. 08-20424-CIV-UNGARO, 2009 WL 982460 (S.D. Fla. Apr. 9, 2009) ............. 6

*Properties Int'l Ltd. v. Turner*,
   706 F.2d 308 (11th Cir. 1983) ................................................................................... 11

*Romero v. Drummond Co. Inc.*,
  552 F.3d 1303 (11th Cir. 2008) ........................................................................ 15

*Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*,
  14 Civ. 2590 (VM)(JCF), 2017 WL 384350 (S.D.N.Y. Jan. 25, 2017) ........................... 10, 11

*S.E.C. v. Gibraltar Glob. Sec., Inc.*,
  13 Civ. 2575 (GBD)(JCF), 2015 WL 1514746 (S.D.N.Y. Apr. 1, 2015) ........................... 14

*Serra Chevrolet, Inc. v. General Motors Corp.*,
  446 F.3d 1137 (11th Cir. 2006) .......................................................................... 6

*Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*,
  357 U.S. 197 (1958) ...................................................................................... 11

*Sterling Nat. Bank v. Polyseal Packaging Corp.*,
  961 N.Y.S.2d 109 (App. Div. 2013) ..................................................................... 9

*Travelers Indem. Co. of Am. v. Kendrick Bros. Roofing*,
  No. 1:10-CV-00604 (BLW), 2013 WL 6681240 (D. Idaho Dec. 18, 2013) ........................ 10

*Underhill v. Hernandez*,
  168 U.S. 250 (1897) ....................................................................................... 7

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.*,
  493 U.S. 400 (1990) ....................................................................................... 7

*Wouters v. Martin Cty., Fla.*,
  9 F.3d 924 (11th Cir. 1993) ............................................................................. 12

*Yarbrough v. Morgan*,
  No. 3:13-CV-613 (MCR)(EMT), 2015 WL 13656987 (N.D. Fla. Aug. 4, 2015) ................... 15

Rules

Federal Rule of Civil Procedure 37 .................................................................. 12, 16

Federal Rule of Civil Procedure Rule 31 ............................................................... 15

Other Authorities

46 Am. Jur. 2d Judgments § 93 (1994) ................................................................ 16

60 C.J.S. Motions and Orders § 74 (2018) ............................................................ 16

## PRELIMINARY STATEMENT

For more than a decade, Defendants paid tens of millions of dollars of bribes to PDVSA officials to rig bids and loot PDVSA, and ultimately the Venezuelan people, of more than $10 billion. Defendants now ask this Court to protect them from even having to respond to the detailed facts and allegations set forth in the Complaint by holding, prior to the scheduled evidentiary hearing, that Plaintiff should be precluded from introducing evidence of its standing to hold Defendants to account.

Defendants' argument is that Plaintiff violated a court order to produce the Procurador General of Venezuela (Dr. Reinaldo Muñoz Pedroza) and the current General Counsel of PDVSA (Dr. Hilda Cabeza) for depositions with respect to Plaintiff's standing, and that that alleged violation justifies the extreme sanctions Defendants seek.

There are four independently dispositive reasons Defendants' argument fails.[1]

First, Defendants recognize that an essential predicate for their motion is a demonstration that the proposed deponents have evidence that is material to Defendants' standing argument. However, there is no good faith basis to contend that the Trust is a forgery and that the persons who Defendants' brief says "purportedly" signed the Trust Agreement did not actually do so; moreover, the evidence (including the contemporaneous documents) make clear that they did. Assuming the Trust is not a forgery, the validity of the Trust is fundamentally a question of law. Why the assignment was made, whether it was a good idea, or whether PDVSA could have made

---

[1] Defendants' motion is also premature. No sanctions can be warranted absent a showing that the evidence sought from the Procurador General and Dr. Cabeza is relevant to Plaintiff's standing, and a complete analysis of relevance cannot take place absent an evidentiary hearing.

a different (or better) deal is not material to the validity of the assignment.[2]  Moreover, as discussed in more detail below, in the absence of coming forward with evidence that the Trust is a forgery, Defendants are not entitled to fishing expeditions.

Second, even if there had been a court order (which there was not) and even if the two proposed deponents had refused to provide deposition testimony (which they did not), that refusal would not subject Plaintiff to sanctions.  It is undisputed that the failure of the depositions to take place was beyond Plaintiff's control.  The cases that Defendants cite relate to merits discovery and the principle that under certain circumstances defendants may not be able to fairly defend themselves without certain merits discovery. Discovery related to prudential standing is different. Defendants are not prejudiced if the claims against them are pursued by a Trust rather than by PDVSA directly.  Indeed, as Plaintiff will argue in its brief on standing to prosecute the claims in the Amended Complaint, Defendants themselves lack standing to challenge the assignment of claims where they were not a party to the assignment.

Third, it is not true that either proposed deponent has refused to appear for a deposition. They are not able to leave Venezuela to be deposed, but Defendants cite no authority that the Court has the power to order that – and the Court did not order that.  Defendants have repeatedly been told that there are three ways that the Procurador General and Dr. Cabeza can be deposed: (a) they can be deposed in Venezuela pursuant to the procedures of The Hague Convention; (b) they may also be able to be deposed by video conference with the deponents in Venezuela and counsel in the U.S., and (c) Plaintiff has proposed pursuing Rule 31 depositions on written questions. Defendants do not want to pursue any of those options (presumably because that would moot their

---

[2]  Defendants' claim that they need to depose the Procurador General to test their "champerty" defense is pretextual.  Even if applicable (which it is not), champerty is a defense to the prosecution of the claims, not to the validity of the assignment. Moreover, Defendants had a full opportunity to ask questions about this issue in their deposition of Mr. Boies.

attempt to use this issue to avoid the merits of Plaintiff's claims). But the proposed deponents' ability to be deposed is fatal to Defendants' argument.

Fourth, there was no court order that the Procurador General and Dr. Cabeza be produced for depositions. The court order relied on by Defendants (the Fifth Discovery Order) directed that all depositions on standing be completed by June 11, 2018, but did not order that either deponent appear. Indeed, at the time of Fifth Discovery Order, Defendants and the Court had already been informed that the Procurador General would not be able to travel outside Venezuela for a deposition. Moreover, while at the time of that order it was contemplated that Dr. Cabeza would voluntarily appear for a deposition in Madrid, that deposition was expressly designated by the parties as voluntary.

## BACKGROUND

Defendants are a collection of individuals and corporations who orchestrated and executed a *multi-billion-dollar fraud* on PDVSA and, by extension, the people of Venezuela. As set forth in detail in the Amended Complaint, Defendants accomplished their illicit scheme by bribing numerous officials to obtain, among other things,  proprietary oil trading information and used that information to artificially alter the pricing of crude oil and hydrocarbon products, ultimately bilking PDVSA to the tune of *billions* of dollars. Dkt. 12 at ¶¶ 56-85.

At the heart of the conspiracy was the Miami-based operation of the Morillo/Helsinge Defendants which, with the help of the Bribed PDVSA Employees, (i) hacked into PDVSA's computers, (ii) stole sensitive, internal information concerning PDVSA's business and upcoming bid solicitations for various oil and hydrocarbon products, and (iii) distributed that information out to the various Oil Company Conspirators in exchange for exorbitant kickbacks, enabling the Oil Company Conspirators to rig bids among themselves and collude with one another to the disadvantage of PDVSA. *Id.*

Plaintiff, a litigation trust formed for the express purpose of holding these Defendants accountable for their theft, brought this action on March 3, 2018.  In response, Defendants challenged Plaintiff's standing to bring its claims, contending that the claims had not been validly assigned to it.  Judge Gayles referred the narrow issue of Plaintiff's standing to the Magistrate Judge.  Dkt. 219, 220.  Defendants refused, however, to disclose any factual basis for their position that the Trust lacks standing, despite Plaintiff's request that they do so.  Dkt. 234, April 4 Hr'g Tr. at 10:18-11:23.

## DEFENDANTS' "LIMITED" INQUIRY INTO STANDING

This Court made clear from the outset that there would be "very limited discovery because the defendant seemed to feel that they don't have all the facts as to how this trust was created and so on so it would be very limited to that."  Dkt. 267, April 16 Hr'g Tr. at 34:25-35:4.  And Defendants represented they were seeking only a "prompt, definite and short discovery process" on Plaintiff's standing.  *Id*. at 28:18.

Since then, Defendants have issued multiple document requests, including demands for privileged documents, and Plaintiff has produced hundreds of pages of documents, including the Trust itself, which itself documents the assignment of the litigation claims, as well as numerous prior drafts.  Emails evidencing the exchange of documents and drafts between lawyers, between PDVSA officials, Venezuelan officials, and trustees have also been produced, as have Venezuelan legal opinions and resolutions.  Plaintiff has produced these documents at the Court's direction even though Plaintiff maintains a number of them (e.g. internal drafts and discussions of drafts) are subject to a claim of privilege.  Dkt. 412 at 3-5.

At Defendants' request, Plaintiff also produced its lead attorney for a lengthy deposition, provided an extensive privilege log, and produced a 30(b)(6) witness from a litigation funder. Defendants initially asked for a Rule 30(b)(6) deposition of the Trust – an obviously logical

4

deposition.  Declaration of Adam Shaw, dated June 28, 2018 (the "Shaw Decl."), at Ex. A. However, after Plaintiff agreed to that deposition, Defendants changed tactics and began to seek depositions of others instead.  *Id.* at Ex. B.

In their motion for discovery sanctions, Defendants misstate Plaintiff's discovery efforts. They claim, for instance, that Plaintiff has failed to produce any PDVSA documents.  This is simply untrue.  Plaintiff has produced a letter from PDVSA stating that PDVSA has also produced all responsive documents.  Defendants attempt to insert doubt about PDVSA's document collection efforts by taking Dr. Cabeza's words out of context.  They quote Dr. Cabeza as saying "I confirm that, after a reasonable search, PDVSA has not found any additional document…." Defs' Br. at 2, 8 ("what does the word 'additional' mean, and how could it possibly have no 'additional' responsive documents?")

What Dr. Cabeza actually wrote was:  "I confirm that, after a reasonable search, PDVSA has not found any additional documents that respond to the requests referenced in paragraphs (i) and (ii) of the immediately preceding paragraph that are not already in the possession of the attorneys for the Trust."  Shaw Decl., Ex. C (emphasis added).

## ARGUMENT

## I.    DEFENDANTS ARE NOT ENTITLED TO SANCTIONS.

As an initial matter, Defendants' motion, made in advance of the evidentiary hearing on standing, is premature.  At that hearing, it will become clear that the testimony that Defendants seek has no relevance or materiality to the standing issues.  This is not something to be decided absent an evidentiary hearing.  *See Dunbar v. United States*, 502 F.2d 506, 510 n.2 (5th Cir. 1974) (reversing imposition of harsh discovery sanctions because evidence sought was irrelevant to the claims and defenses at issue, and noting that "the less relevant [the requested] information becomes, the less appropriate a Rule 37 sanction is"); *Muhammad v. Bethel-Muhammad*, No.

CIV.A. 11-0690-WS-B, 2013 WL 5670925, at *6 (S.D. Ala. Oct. 17, 2013), *aff'd*, 574 F. App'x 922 (11th Cir. 2014) (finding that it would be "wildly inappropriate" to impose severe discovery sanctions against a party "merely for failing to respond to irrelevant questions").

Moreover, as already noted, Defendants' motion for sanctions is without basis for at least four independently dispositive reasons.

### A.   The Information Defendants Purport to Seek Is Immaterial to Plaintiff's Standing and Beyond the Scope of Appropriate Discovery.

Even if Defendants were otherwise entitled to sanctions against Plaintiff (and they are not), the fact that the information Defendants seek is immaterial to the issue of Plaintiff's standing, dooms their argument.

"It is important to recognize the strong preference [in Federal Courts] for a determination on the merits of a dispute." *Preferred Care Partners Holding Corp. v. Humana, Inc*., No. 08-20424-CIV-UNGARO, 2009 WL 982460, at *4 (S.D. Fla. Apr. 9, 2009).

Even where sanctions are appropriate, in order to comply with the Due Process Clause, a court must impose sanctions that are both "just" and "specifically related to the particular claim or defense affected by the [alleged] misconduct." *Id*., citing *Serra Chevrolet, Inc. v. General Motors Corp*., 446 F.3d 1137, 1151 (11th Cir. 2006) (internal citation omitted), quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).  If a defendant can prove that any discovery they failed to receive substantially prejudiced their defense, sanctions that restrict the evidence a plaintiff can submit may be appropriate.

Defendants have entirely failed to demonstrate that the testimony they seek from the proposed deponents materially prejudices them.  Defendants claim the Procurador General and Dr. Cabeza are "key witness[es]" on several issues.  Defs' Br. at 8-9.  First, they claim they need these witnesses to understand "who represented PDVSA in the Trust Agreement negotiations." *Id*.  This

information is utterly irrelevant to Plaintiff's standing.  Moreover, even if this information *were* relevant, *Defendants already have it*.  It was included among the hundreds of pages of documents Plaintiff has already produced in this action, which included emails between and among the Trust's attorneys, PDVSA officials, and Venezuelan officials evidencing exchanges of proposals, documents, and drafts of the Trust Agreement.  *See* Shaw Decl., Ex. D and Ex. E.  It was also covered extensively during Defendants' lengthy deposition of Plaintiff's lead attorney.  Shaw Decl., Ex. F, Boies Dep. Tr. at 62:11-64:7.

Next, Defendants claim the Procurador General can provide information about whether the signatories to the Trust Agreement had the authority to sign on PDVSA's behalf.  This, however, is purely a question of Venezuelan law, and even if the Procurador General could be compelled to provide testimony on this subject (which he cannot)[3], it would have no impact on the question of Plaintiff's standing.  Under the act of state doctrine, the acts of a foreign sovereign exercising governmental authority are not a proper subject for adjudication by a U.S. Court.  *See W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.,* 493 U.S. 400, 406 (1990); *Underhill v. Hernandez,* 168 U.S. 250 (1897); *FOGADE v. ENB Revocable Trust,* 263 F.3d 1274 (11th Cir. 2001).  It is thus beyond the Court's adjudicative power to determine the legality of decisions made by Venezuelan government officials (like the Procurador General), when they are made pursuant to Venezuelan law and within the sovereign territory of Venezuela.  *See, e.g.*, *FOGADE*, 263 F.3d at 1294-96 (Act of State doctrine barred "defendants' affirmative defenses questioning the standing of plaintiffs to sue because of the alleged illegality" of actions of Venezuelan officials); *Federal*

---

[3]  A party may not compel legal opinion testimony.  "Even though a request may be phrased to appear factual, if it encroaches on legal turf, or reaches the ultimate decision of the court, the requests will be seen as seeking a legal conclusion and cannot be compelled."  *McKesson Info. Sols. LLC v. Epic Sys. Corp.*, No. 1:06-CV-2965-JTC, 2009 WL 10636314, at *2 (N.D. Ga. Feb. 10, 2009) (internal citations omitted).

*Treasury Enterprise Sojuzplodoimport v. Spirits Intern. B.V.*, 809 F.3d 737, 743-44 (2d Cir. 2016) (overturning district court decision that plaintiff lacked standing because assignment of claims was invalid under Russian law; district court had conducted extensive hearings, including expert testimony on Russian law).

Defendants also say they seek the proposed deponents' testimony to determine whether the Procurador General and Mr. Martinez, the former Minister of Oil, had the proper authority under Venezuelan law to form the Trust and assign PDVSA's claims to it.  These are legal questions. And again, any actions that the Procurador General and Mr. Martinez took vis-à-vis the Trust were actions taken in their official capacities, within the territory of Venezuela, pursuant to Venezuelan law.  *See* Dkt. 247-2, Testimony of Rogelio Perez Perdomo at ¶¶ 5.2-5.6.  The validity of those actions thus cannot be determined by a U.S. court for purposes of Defendants' standing-related defense, and any testimony Defendants sought from the Procurador General (or Dr. Cabeza) on this subject is therefore irrelevant.

Finally, Defendants claim they need information from the Procurador General "at the most basic level of whether the signatures on the document are even authentic."  Defs' Br. at 9. Defendants have presented no evidence that any signatures are forgeries and the Federal Rules require that a party alleging a fraud recite more than bare allegations in order to "unlock the doors of discovery." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *MUNB Loan Holdings, LLC v. Y. Judd Shoval*, No. 12-20305-CIV, 2013 WL 12092517, at *2 (S.D. Fla. Mar. 1, 2013) (without a more specific challenge to plaintiff's standing, defendant's request is simply "a court-sanctioned fishing expedition").

Furthermore, authenticated signatures are not required to validate the Trust or the assignment of claims under the applicable law.  The Trust contains a choice-of-law provision mandating that the document be construed under New York law.

Under New York law an assignment "need not be in writing." *See Sterling Nat. Bank v. Polyseal Packaging Corp.*, 961 N.Y.S.2d 109, 109–10 (App. Div. 2013);  *accord M.S. Textiles, Ltd. v. Rafaella Sportswear, Inc.*, 739 N.Y.S.2d 386, 386–87 (App. Div. 2002) (Defendant's claim that the assignment was not reduced to writing and thus was invalid . . . is without merit"); *Int'l Telecommunications Exch. Corp. v. MCI Telecommunications Corp.*, 892 F. Supp. 1520, 1533–34 (N.D. Ga. 1995) (Under New York law "any act or words are sufficient which show an intention of transferring the chose in action"); *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir. 1976); *Crystal Clear Dev., LLC v. Devon Architects of New York, P.C.*, 7 N.Y.S.3d 361, 363 (App. Div. 2015) (same).  Since the assignment would be valid without any signatures, any testimony to "authenticate" the signatures of Mr. Martinez and Mr. Arellano is immaterial given the extensive contemporaneous documentation that an assignment was intended.

To the extent Defendants are challenging the creation of the Trust (as opposed to the assignment), their contentions are equally meritless.  As with assignments, under New York law a "trust may be created orally or in writing; no particular form of words is necessary, and it may arise by implication from the settlor's conduct." *In re Marcus Trusts*, 769 N.Y.S.2d 56, 57 (App. Div. 2003), citing *Orentreich v. Prudential Ins. Co. of Am.*, 713 N.Y.S.2d 330, 331 (App. Div. 2000); *Agudas Chasidei Chabad v. Gourary*, 833 F.2d 431, 434 (2d Cir. 1987).  Therefore, a grantor's failure to sign a trust document does not invalidate a trust.  *Marcus Trusts*, 769 N.Y.S.2d at 57.  Again, the intention to create a Trust is clear from documentary evidence – and will be further confirmed at the evidentiary hearing in August.

### B.    The Trust Should Not Be Sanctioned For Events Beyond its Control in a Foreign Country.

There is no basis to sanction the Trust.  Even if there had been a court order (which there was not) and even if the two proposed deponents had refused to provide deposition testimony

(which they did not), that refusal would not subject Plaintiff to sanctions, particularly where, as here, any failure to make discovery was beyond the Plaintiff's control.  Indeed, Defendants cite no cases in which an assignee has been sanctioned because an assignor has not appeared for a deposition.

The cases that Defendants do cite relate to merits discovery and the principle that under certain circumstances defendants will not be able to fairly defend themselves without certain important discovery.[4]  *See* Defs' Br. at 9, citing  *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005) (administrative agent under a credit agreement with 50 banks was obligated to produce merits discovery from the banks as part of a lawsuit against a borrower for making multiple, fraudulent loan applications where banks had started the litigation prior to assigning their claims); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd*., 171 F.R.D. 135, 148 (S.D.N.Y. 1997) (assignee who entered into the assignment of claims one year after litigation commenced was obligated to produce certain discovery on the merits from assignor); *In re Infant Formula Antitrust Litig*., No. MDL 878, 1992 WL 503465, at *9 (N.D. Fla. Jan. 13, 1992) (holding that retailers who assigned their antitrust claims to State of Florida would be obligated to provide paper discovery on the merits to defendants); *Natta v. Hogan*, 392 F.2d 686, 691 (10th Cir. 1968) (compelling merits discovery from patent assignee in lawsuit where assignor was already a party); *Travelers Indem. Co. of Am. v. Kendrick Bros. Roofing*, No. 1:10-CV-00604-BLW, 2013 WL

---

[4]  The majority of cases cited by Defendants involve paper discovery only.  The few cases that also concern witness testimony are distinguishable either because the assignor was involved in the litigation prior to the assignment (*JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005)(bankers assigned claims after litigation began); *Travelers Indem. Co. of Am. v. Kendrick Bros. Roofing*, No. 1:10-CV-00604-BLW, 2013 WL 6681240, at *1 (D. Idaho Dec. 18, 2013)) or because the assignee had bargained for the production of discovery as part of the assignment.  *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 2017 WL 384350, at *1 (S.D.N.Y. Jan. 25, 2017).  In addition, even where assignees have been obligated to produce witnesses, the assignee has been given great latitude in setting up depositions, including by substituting its own chosen witnesses for those demanded by the other party.  *Id*.

10

6681240, at *1 (D. Idaho Dec. 18, 2013) (where insurance company entered into settlement by which former parties to litigation assigned their claims to insurer and agreed to "provide reasonable cooperation in all matters . . . with respect to the prosecution" of the assigned claims, insurer had an obligation to produce discovery on behalf of assignors); *Properties Int'l Ltd. v. Turner*, 706 F.2d 308, 311 (11th Cir. 1983) (assignee that was substituted as plaintiff after action was commenced could not argue that the assignor had control of its copies of the note and mortgage that had been assigned). *Compare Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 2590 (VM)(JCF), 2017 WL 384350, at *1 (S.D.N.Y. Jan. 25, 2017) (quashing deposition notices for "marginal and potentially uncooperative deponents" where assignee offered a "compelling argument" that merits discovery should first be sought from two cooperative witnesses who likely possessed "substantially greater information").

Discovery related to prudential standing is different. Defendants are not prejudiced if the claims against them are pursued by the Trust rather than by PDVSA directly. Defendants' liability is the same under either scenario. And, as already noted, sanctions are inappropriate where the alleged discovery violation does not result in prejudice to defendants.

There is no precedent for the sanctions Defendants request. This is hardly surprising given the high bar for sanctions which is especially demanding when the most severe sanctions – such as dismissal or preclusion – are at issue, as they are here.

The law is clear that a district court "may only impose a severe sanction, such as dismissal of an action, when it has been established that the offending party's failure to comply with its discovery obligations is due to the party's willfulness, bad faith, or fault." *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 212 (1958) (Rule 37 should not be construed to authorize dismissal of a complaint because of noncompliance with a pretrial production order when it has been established that failure to comply

11

has been due to inability, and not to willfulness, bad faith, or any fault of the party); *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co*., No. 10-24310-CIV, 2011 WL 6190160, at *4 (S.D. Fla. Dec. 2, 2011).  The Court's discretion to impose sanctions pursuant to Federal Rule of Civil Procedure 37 "is not unbridled."  *Wouters v. Martin Cty., Fla.*, 9 F.3d 924, 933 (11th Cir. 1993). Dismissal, the most drastic of the various sanctions available to the court, "is justified only in extreme circumstances and as a last resort." *Id.* "Simple negligence, misunderstanding, or inability to comply does not justify severe sanctions." *Id*., citing *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1539, 1542 (11th Cir.1993).  Nor are sanctions appropriate "when the failure 'was due to inability fostered neither by [the party's] own conduct nor by circumstances within its control.'" *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970), quoting *Rogers*, 357 U.S. at 211; *see also Collins v. Lake Helen, L.P.*, 249 F. App'x 116, 120 (11th Cir. 2007).

Acknowledging, as they must, that there has been no willful or bad faith conduct on behalf of Plaintiff, Defendants instead claim that the willful conduct in this case was the direction by the president of Venezuela to the effect that government officials could not travel outside of Venezuela. Defs' Br. at 13.  Defendants claim this was done solely to thwart Defendants' conduct of depositions in this case.  *Id.*  Since Plaintiff clearly does not control the President of Venezuela, even if the President acted in bad faith, that bad faith cannot be imputed to Plaintiff.  Moreover, as discussed above, the Act of State Doctrine precludes the very argument Defendants attempt to make.

### C.    The Proposed Deponents Did Not Refuse to Appear For Depositions.

Neither the Procurador General nor Dr. Cabeza has refused to appear for a deposition. They are unable to leave Venezuela, but the Court never ordered any Venezuelan official to leave Venezuela for a deposition, and Defendants cite no authority that the Court has the power to order them to leave.

Defendants have repeatedly been told that there are three ways that the Procurador General and Dr. Cabeza *can* be deposed: (a) in Venezuela pursuant to the procedures of the Hague Convention, (b) by video conference with the deponents in Venezuela and counsel in the U.S., and (c) by a deposition on written questions.  Defendants do not want to accept any of those options (presumably because that would moot their attempt to use the standing issue to avoid the merits of Plaintiff's claims).  But the proposed deponents' willingness to be deposed is fatal to Defendants' argument.  *See Jallali v. USA Funds*, No. 11-62510-CIV, 2013 WL 12080903, at *5 (S.D. Fla. Feb. 22, 2013), *report and recommendation adopted*, No. 11-62510-CIV, 2013 WL 12080740 (S.D. Fla. May 8, 2013) (Magistrate Judge Otazo-Reyes) (any prejudice from plaintiff's non-appearance at two prior depositions would be remedied by plaintiff's newly scheduled deposition).

1.    **Depositions Through the Hague Convention Is the Proper Way to Obtain Depositions of Foreign Officials.**

Venezuela is a party to the Hague Convention, and Defendants provide no explanation for why they have not attempted to notice depositions of their proposed deponents through the Hague Convention.   Plaintiff has repeatedly urged Defendants to proceed pursuant to the Hague Convention if they really believe these depositions are important.  (E.g., "They [the depositions] can go forward by video in Venezuela which we continue to believe is appropriate or they can go forward through the Hague Convention, and while that is a longer process, we believe it could be expedited." (Dkt. 445, 6/19/2018 Hr'g Tr., at 27:25-28:1-3)).  Defendants continue to refuse to proceed under the Hague Convention, but that is their choice.

2.    **Defendants Have Rejected the Option of Video Depositions.**

Defendants acknowledge, as they must, that Plaintiff has repeatedly proposed attempting to take the depositions of the Procurador General and Dr. Cabeza by video conference.  Shaw Decl., Ex. G, Ex. H at 27:22-28:9, 28:18-29:3, and ¶¶ 12-13; Dkt. 386 at 5; Dkt. 395, May 23 Hr'g

Tr. at 28:25-32:20; Dkt. 408, May 29 Hr'g Tr. at 47:22-48:12.  As the Court has acknowledged, this would be a "common sense option."  Dkt. 408, May 29 Hr'g Tr. at 51:1-8.  Defendants have offered shifting rationales for why such a deposition would be improper under Venezuelan law (Defs' Br. at 7 n.2), but they have failed to offer any authoritative evidence that video depositions are not allowed (though that is Defendants' burden).  On the contrary, through official filings with the Hague Convention, Venezuelan officials have indicated that such depositions <u>are</u> allowed: "In Venezuelan legislation there are no express prohibitions for foreign courts to obtain evidence by videoconference [of witnesses in Venezuela]" and also that depositions may be taken via Skype. Shaw Decl., Ex. I.

Defendants have never identified any authoritative proof of their assertion to the contrary, but instead claim that Plaintiff must prove that video depositions are legal in Venezuela.  Plaintiff has no such burden; even if it did, Venezuela's Hague Convention filing would satisfy it.

Defendants have the burden of establishing that Venezuelan law is an obstacle to taking video depositions in Venezuela.  *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 413 (S.D.N.Y. 2016) (where a party claims foreign law is an obstacle to discovery, "the burden of proving what that law is and demonstrating why it impedes production" falls on the party raising foreign law as an obstacle), citing *S.E.C. v. Gibraltar Glob. Sec., Inc.*, 13 Civ. 2575 (GBD)(JCF), 2015 WL 1514746 at *2 (S.D.N.Y. Apr. 1, 2015) (same); *accord Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y.1993).

Defendants rely solely upon the State Department's website for their assertion that video depositions are illegal, but (1) the website does not purport to address video depositions, (2) the

14

website is not authoritative[5] and, (3) at best, the information provided stands for the proposition

that depositions of willing witnesses taken by attorneys within the borders of Venezuela must be

taken pursuant to a request to the Venezuelan Central Authority.   Defendants make much of the

website's warning that "Private attorneys from the United States attempting to conduct voluntary

depositions of willing witnesses in Venezuela are subject to the penalties of local Venezuelan law."

*Id*.  (emphasis added).  But even if this information was authoritative, and it is not, the link provided

by Defendants makes no reference at all to video depositions.  Furthermore, in other cases in which

potential deponents are located in Venezuela, courts have ordered their appearance from

Venezuela via video.  *E.g. Romero v. Drummond Co. Inc*., 552 F.3d 1303, 1310 (11th Cir. 2008).

### 3.      Defendants Have Also Rejected Pursuing Rule 31 Depositions.

Defendants have also rejected seeking depositions of the Venezuelan deponents in

accordance with Federal Rule of Civil Procedure Rule 31, which authorizes depositions by written

questions.   Depositions by written questions are particularly appropriate when a party seeks to

depose "high ranking government officials."    *Yarbrough v. Morgan*, No. 3:13-CV-613

(MCR)(EMT), 2015 WL 13656987, at *2 (N.D. Fla. Aug. 4, 2015).

Plaintiff proposed sending Rule 31 written deposition questions to the two Venezuelan

officials identified by Defendants (as well as Minister Martinez and Trustee Arellano to the extent

---

[5]  DISCLAIMER: THE INFORMATION IS PROVIDED FOR GENERAL INFORMATION
ONLY AND MAY NOT BE TOTALLY ACCURATE IN A SPECIFIC CASE. QUESTIONS
INVOLVING INTERPRETATION OF SPECIFIC FOREIGN LAWS SHOULD BE
ADDRESSED TO THE APPROPRIATE FOREIGN AUTHORITIES OR FOREIGN
COUNSEL. State Department, Judicial Assistance Country Information:
Venezuela,https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-
Information.html (last visited June 23, 2018).  Other courts have also discounted the information
provided on the website relied upon by Defendants. *See Gearbox Software, LLC v. Apogee
Software, Ltd*., No. 3:14-CV-710-L, 2014 WL 3109868, at *2–3 (N.D. Tex. July 8, 2014)
(ordering plaintiff to allow defendants to appear for deposition via Skype despite the fact that the
State Department website indicated telephone depositions are illegal in Denmark).

they can be reached).  Defendants have refused to agree.

### D.       Plaintiff Did Not Violate Any Court Order.

Defendants claim (i) that the cancellation of the Procurador General's and Dr. Cabeza's depositions constitutes a violation of the Court's Fifth Discovery Order (Dkt. No. 404); and (ii) that this purported violation warrants the most draconian sanctions available under Federal Rule of Civil Procedure 37, up to and including the dismissal of the entire action.  Defendants are flatly wrong on both counts.

The Court's Fifth Discovery Order (Dkt. No. 404) (the "Order") provides, in relevant part: "With regard to the pending fact depositions on the issue of Plaintiff's standing, those depositions must be completed by June 11, 2018."  Defendants seek to construe this language as an order specifically compelling Plaintiff to produce the Procurador General and Dr. Cabeza for in-person depositions on or before June 11, 2018, no matter the circumstance — even if their leaving Venezuela would violate Venezuelan law.  That interpretation, however, is completely untenable, both on the face of the Order and in light of the Court's statements during the May 29 telephonic hearing, on which the Order is based.  *See In re Mahoney*, 251 B.R. 748, 754 (Bankr. S.D. Fla. 2000), quoting 46 Am. Jur. 2d *Judgments* § 93 (1994) ("Judgments are to be construed like other written instruments"); *Hendrie v. Lowmaster*, 152 F.2d 83, 85 (6th Cir. 1945) ("The meaning of an ambiguous judgment or order must be determined by what preceded it and what it was intended to execute."); 60 C.J.S. *Motions and Orders* § 74 (2018) ("The entire record should be taken into consideration in determining the intent of an order . . . [including] the trial court judge's prior statements regarding the order's intended effect").

*First*, the text of the Fifth Discovery Order[6] is clear on its face: it simply sets a deadline for the taking of fact depositions on the issue of Plaintiff's standing. The Order set a deadline; it did not affirmatively order these particular depositions to occur. Indeed, at the time the Order was issued, the Procurador General's deposition had already been cancelled and had not been rescheduled. Dkt. 408, May 29 Hr'g Tr. at 46:19-47:18.

*Second*, even if the Order were reasonably susceptible to another interpretation, the Court's comments during the May 29 telephonic hearing eliminate any doubt: the Order was intended to set a deadline for Plaintiff to either produce the Procurador General and Dr. Cabeza for depositions, *or state that producing them outside of Venezuela would not be possible*, allowing the parties to move on and agree to another alternative.

> THE COURT: . . . We also know that at this point in time [the Procurador General] cannot travel outside of Venezuela due to political reasons, orders of the Government or whatever it is that Mr. Boies is alluding to. So, the question is how long -- and *I think what [Defendants] are sort of hinting on is for me to give them a deadline and say, produce him by this deadline or not produce him*. I think that's where you are going.

> MR. BIRENBOIM: I think, Your Honor, *that is correct*, that unless this schedule is going to change *we would just like the clarity of knowing at some point in time that he is able to leave and go to Madrid or the United States, or not*. That's it.
> . . . .

> THE COURT: All right. *There is the deadline, by June 11th. Produce them by then or state that you cannot*.

Dkt. 408, May 29 Hr'g Tr. at 51:24-52:22 (emphasis added).

In light of the political situation in Venezuela, and the President of Venezuela's order for the Procurador General and Dr. Cabeza not to leave the country, producing them for an in-person deposition before June 11 was not possible. On June 6, as soon as this became clear, Plaintiff

---

[6] The Order set a deadline; it did not affirmatively order these particular depositions to occur, at the time the Order was issued, the Procurador General's deposition had already been cancelled and had not been rescheduled. Dkt. 408, May 29 Hr'g Tr. at 46:19-47:18.

promptly notified Defendants that the contemplated in-person depositions would not occur.  There was no violation of the Fifth Discovery Order.

<b><u>CONCLUSION</u></b>

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Sanctions Motion in all respects.

Dated:  June 28, 2018

Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**

By:  */s/ Steven W. Davis*
Steven W. Davis (Bar No.: 347442)
Stephen N. Zack (Bar No.: 145215)
Bank of America Tower
100 Southeast 2nd St., Suite 2800
Miami, FL 33131
Tel:  (305) 539-8400
Fax:  (305) 539-1307

David Boies
Helen M. Maher
333 Main Street
Armonk, New York 10504
Tel: (914) 749-8200
Fax: (914) 749-8300

Nicholas A. Gravante, Jr.
David A. Barrett
Randall Jackson
Ellen Brockman
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

George F. Carpinello
Teresa A. Monroe
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel:  (518) 434-0600

Fax:  (518) 434-0665

*Attorneys for Plaintiff*