# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| PDVSA US LITIGATION TRUST<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LUKOIL PAN AMERICAS LLC; LUKOIL PETROLEUM LTD.; COLONIAL OIL INDUSTRIES, INC.; COLONIAL GROUP, INC.; GLENCORE LTD.; GLENCORE INTERNATIONAL, A.G.; GLENCORE ENERGY UK LTD.; MASEFIELD A.G.; TRAFIGURA A.G.; TRAFIGURA TRADING LLC; TRAFIGURA BEHEER B.V.; VITOL ENERGY (BERMUDA) LTD.; VITOL S.A.; VITOL, INC.; FRANCISCO MORILLO; LEONARDO BAQUERO; DANIEL LUTZ; LUIS LIENDO; JOHN RYAN; MARIA FERNANDA RODRIGUEZ; HELSINGE HOLDINGS, LLC; HELSINGE, INC.; HELSINGE LTD., SAINT-HÉLIER; WALTROP CONSULTANTS, C.A.; GODELHEIM, INC.; HORNBERG INC.; SOCIETE DOBERAN, S.A.; SOCIETE HEDISSON, S.A.; SOCIETE HELLIN, S.A.; GLENCORE DE VENEZUELA, C.A.; JEHU HOLDING INC.; ANDREW SUMMERS; MAXIMILIANO POVEDA; JOSE LAROCCA; LUIS ALVAREZ; GUSTAVO GABALDON; SERGIO DE LA VEGA; ANTONIO MAARRAOUI; CAMPO ELIAS PAEZ; PAUL ROSADO; BAC FLORIDA BANK; EFG INTERNATIONAL A.G.; BLUE BANK INTERNATIONAL N.V.<br><br>　　　　　Defendants. | Case No. 1:18-cv-20818 (DPG) |

## MOTION TO DISMISS FOR LACK OF STANDING

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iv

TABLE OF EXHIBITS ................................................................................ viii

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ................................................................................5

ARGUMENT ................................................................................8

    I.    The Trust's Lack of Standing Mandates Dismissal of Its Claims ...........................8

    II.    The Assignment in the Trust Agreement Is Void Under New York Law ................................................................................10

        A.    The Trust Agreement Violates New York's Prohibition on Champerty................................................................................11

        B.    The Trust Agreement Lacks Mandatory Certificates of Acknowledgment ................................................................................13

        C.    The Trust Is Void Because Its Corpus Is Not Sufficiently Defined................................................................................19

    III.    This Case Must Be Dismissed Under the Political Question Doctrine.................19

    IV.    The Trust Agreement Is Void Under Venezuelan Law .........................................23

        A.    Neither Trust Agreement Signatory Had Authority to Assign the Claims ................................................................................24

        B.    The Trust Agreement Is Void Under Venezuelan Law Because It Was Not Approved By the National Assembly......................................26

        C.    The Act of State Doctrine Does Not Apply Here to Immunize the Trust ................................................................................27

            1.    The Act of State Doctrine Does Not Apply Because the Trust Agreement Was Not Completed in Venezuela....................28

            2.    The Act of State Doctrine Does Not Apply Because the Trust Invoked the Jurisdiction of the United States Courts................................................................................30

CONCLUSION................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed'l Rep. of Yugoslavia,*
    218 F.3d 152 (2d Cir. 2000)......................................................................................4, 22, 26

*Aktepe v. United States,*
    105 F.3d 1400 (11th Cir. 1997) .....................................................................................20, 23

*Alfred Dunhill of London, Inc. v. Rep. of Cuba,*
    425 U.S. 682 (1976).............................................................................................................27

*Allied Bank Int'l v. Banco Credito Agricola de Cartago,*
    757 F.2d 516 (2d Cir. 1985)................................................................................................28

*Am. Iron & Steel Inst. v. Occupational Safety & Health Admin.,*
    182 F.3d 1261 (11th Cir. 1999) .........................................................................................10

*Aretakis v. Caesars Entm't,*
    2018 WL 1069450 (S.D.N.Y. 2018)..............................................................................12, 13

*Bullock v. Clarke,*
    2002 WL 31119931 (N.Y. Sup. Ct. 2002)..................................................................3, 16, 17

*In re Canellas,*
    2012 WL 868772 (M.D. Fla. 2012) ...................................................................................10

*Carmichael v. Kellogg, Brown & Root Svc., Inc.,*
    572 F.3d 1271 (11th Cir. 2009) ......................................................................19, 20, 22, 23

*In re Certain Trusts Created by Certain Agreements,*
    742 N.Y.S.2d 777 (N.Y. Sur. Ct. 2002)..............................................................................16

*Chisholm & Co. v. Bank of Jamaica,*
    643 F. Supp. 1393 (S.D. Fla. 1986) .............................................................................5, 28, 29

*Church v. City of Huntsville,*
    30 F.3d 1332 (11th Cir. 1994) ...........................................................................................10

*Comparelli v. Republica Bolivariana De Venezuela,*
    891 F.3d 1311 (11th Cir. 2018) .........................................................................................28

*In re Doman,*
    890 N.Y.S.2d 632 (N.Y. App. Div. 2009) .......................................................................3, 19

*Dougherty v. Carlisle Transp. Prods., Inc.*,
   610 F. App'x 91 (3d Cir. 2015) .................................................................9, 13

*Drexel Burnham Lambert Grp. v. Galadari*,
   777 F.2d 877 (2d Cir. 1985) ...........................................................................29

*Drexel Burnham Lambert Grp. v. Galadari*,
   610 F. Supp. 114 (S.D.N.Y. 1985) ..................................................................29

*E.F. Hutton & Co. v. Hadley*,
   901 F.2d 979 (11th Cir. 1990) .........................................................................10

*Eckert Int'l, Inc. v. Gov't of Sovereign Dem. Rep. of Fiji*,
   834 F. Supp. 167 (E.D. Va. 1993) ...................................................................28

*In re Estate of Kneznek*,
   727 N.Y.S.2d 180 (N.Y. App. Div. 2001) .......................................................16

*In re Failla*,
   838 F.3d 1170 (11th Cir. 2016) .......................................................................18

*Fasano v. DiGiacomo*,
   853 N.Y.S.2d 657 (N.Y. App. Div. 2008) ....................................14, 15, 17, 18

*Fed'l Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*,
   809 F.3d 737 (2d Cir. 2016) ............................................................................29

*First Merch. Collection Corp. v. Rep. of Argentina*
   190 F. Supp. 2d 1336 (S.D. Fla. 2002) ............................................................29

*Fogade v. ENB Rev. Trust*,
   263 F.3d 1274 (11th Cir. 2001) .......................................................................29

*In re Fontanella's Estate*,
   304 N.Y.S.2d 829 (N.Y. App. Div. 1969) .......................................................19

*Gaines v. City of New York*,
   29 N.Y.S.3d 270 (N.Y. App. Div. 2016) .........................................................14

*Gaines v. City of New York*,
   76 N.E.3d 289 (N.Y. 2017) ........................................................................14, 15

*Galetta v. Galetta*,
   991 N.E.2d 684 (N.Y. 2013) ............................................................................14

*GDG Acquisitions, LLC v. Gov't of Belize*,
   749 F.3d 1024 (11th Cir. 2014) .......................................................................28

iv

*Grupo Protexa, S.A. v. All Am. Marine Slip*,
   1994 A.M.C. 1828 (3d Cir. 1994) ..............................................................5, 15, 30

*Guaranty Trust Co. of New York v. United States*,
   304 U.S. 126 (1938) ......................................................................................22, 23

*Hazell v. Bd. of Elections*,
   637 N.Y.S.2d 530 (1996) ......................................................................................18

*Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*,
   129 F.3d 543 (11th Cir. 1997) ..............................................................................27

*Justinian Capital SPC v. WestLB AG*,
   65 N.E.3d 1253 (N.Y. 2016) ...........................................................2, 11, 12, 13

*In re Klosinski*,
   746 N.Y.S.2d 350 (N.Y. Sur. Ct. 2002) ...............................................................17

*Libra Bank Ltd. v. Banco Nacional De Costa Rica, S.A.*,
   570 F. Supp. 870 (S.D.N.Y. 1983) .................................................................28, 29

*Live Entm't, Inc. v. Digex, Inc.*,
   300 F. Supp. 2d 1273 (S.D. Fla. 2003) ..................................................................9

*Londin v. Londin*,
   420 N.Y.S.2d 326 (N.Y. Sup. Ct. 1979) ..............................................................18

*Luis Medina & Evatech, Inc. v. Wright*,
   2014 WL 12618175 (M.D. Fla. 2014) ..................................................................10

*Made in the USA Found'n v. United States*,
   242 F.3d 1300 (11th Cir. 2001) ............................................................................20

*MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc.*,
   281 F. Supp. 3d 1309 (S.D. Fla. 2017) ..................................................................9

*In re Marcus Trusts*,
   769 N.Y.S.2d 56 (N.Y. App. Div. 2003) ..............................................................15

*Mcfarland v. BAC Home Loans Servicing*,
   2012 WL 2205566 (N.D. Ga. 2012) ....................................................................10

*In re McQuade*,
   2017 WL 3706649 (N.Y. Sur. Ct. 2017) ................................................14, 15, 18

*Mezerhane v. Republica Bolivariana de Venezuela*,
   2013 WL 11322604 (S.D. Fla. 2013) ...................................................................29

v

*Mukamal v. Bakes*,
    383 B.R. 798 (S.D. Fla. 2007) ...................................................................................19

*Mulhall v. UNITE HERE Local 355*,
    618 F.3d 1279 (11th Cir. 2010) ................................................................................10

*Nat. Answers, Inc. v. Smithkline Beecham Corp.*,
    529 F.3d 1325 (11th Cir. 2008) ................................................................................10

*Nicklaw v. CitiMortgage, Inc.*,
    839 F.3d 998 (11th Cir. 2016) ....................................................................................9

*Oswalt v. Sedwick Claims Mgmt. Servs., Inc.*,
    2015 WL 1565033 (M.D. Ala. 2015) .........................................................................10

*Estate of Prince v. Aetna Life Ins. Co.*,
    2008 WL 4327049 (M.D. Fla. 2008) ..........................................................................10

*Procter & Gamble Co. v. Amway Corp.*,
    242 F.3d 539 (5th Cir. 2001) .....................................................................................10

*Rep. of Panama v. Air Panama Int'l, S.A.*,
    745 F. Supp. 669 (S.D. Fla. 1988) ............................................................................22

*Rep. of Panama v. Citizens & S. Int'l Bank*,
    682 F. Supp. 1544 (S.D. Fla. 1988) ..........................................................................20

*Rep. of the Philippines v. Marcos*,
    806 F.2d 344 (2d Cir. 1986) ......................................................................................30

*In re Ryan*,
    2011 WL 1375865 (S.D. Fla. 2011) ...........................................................................10

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................................9

*Sussman v. Sussman*,
    402 N.Y.S.2d 421 (N.Y. App. Div. 1978) ...................................................................19

*Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.*,
    392 F.2d 706 (5th Cir. 1968) .....................................................................................28

*Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v.*
    *Gaylord Entm't Grp.*,
    105 F.3d 210 (5th Cir. 1997) .......................................................................................9

*U.S. Fax Law Ctr., Inc. v. iHire, Inc.*,
    476 F.3d 1112 (10th Cir. 2007) ...................................................................................9

*Underhill v. Hernandez*,
    168 U.S. 250 (1897) ........................................................................................29

*Vardag v. Motorola*,
    264 F. Supp. 2d 1056 (S.D. Fla. 2003) .............................................................9

*W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp. Int'l*,
    493 U.S. 400 (1990) ........................................................................................29

*In re Will of D'Elia*,
    964 N.Y.S.2d 877 (N.Y. Sur. Ct. 2013) .....................................................14, 18

*Yocum v. Nationstar Mortg., LLC*,
    2017 WL 3668178 (N.D. Ala. 2017) ..............................................................10

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    135 S. Ct. 2076 (2015) ...............................................................................20, 22

**Statutes**

N.Y. Est. Powers & Trusts Law § 7-1.17 ........................................................... *passim*

N.Y. Jud. Law § 489 ..................................................................................................11, 13

**Other Authorities**

Exec. Order No. 13,808, 82 Fed. Reg. 41155 (Aug. 24, 2017) ......................................8

Exec. Order No. 13,827, 83 Fed. Reg. 12468 (Mar. 19, 2018) ....................................23

Fed. R. Civ. P. 44.1 .......................................................................................................24

Fed. R. Evid. 901(a) ........................................................................................................1

H. Res. 259, 115th ........................................................................................................21

S. Res. 414, 115th ........................................................................................................21

## TABLE OF EXHIBITS

**Exhibit 1** ................................................................................................Engagement Letter

**Exhibit 2** .......................................................................................... National Assembly Resolution

**Exhibit 3** ...............................................PDVSA U.S. Litigation Trust Agreement (cited as "TA")

**Exhibit 4** ........................................... Transcript of the Hearing Held on June 7, 2018 (Excerpts)

**Exhibit 5** .................................................. Transcript of the Deposition of David Boies (Excerpts)

**Exhibit 6** ................................... Transcript of the Second Deposition of Algamex Ltd. (Excerpts)

**Exhibit 7** .........................................Transcript of the First Deposition of Algamex Ltd. (Excerpts)

**Exhibit 8** ................................. Transcript of the Deposition of Rogelio Perez Perdomo (Excerpts)

**Exhibit 9** ...............................................Expert Report of Jose Ignacio Hernandez (cited as "HR")

**Exhibit 10** ........... Expert Report of Rafael Badell Madrid dated March 26, 2018 (cited as "BR1")

**Exhibit 11** ............... Expert Report of Rafael Badell Madrid dated July 10, 2018 (cited as "BR2")

The defendants[1] move to dismiss this case under Rule 12(b)(1) for lack of standing.

## PRELIMINARY STATEMENT

The PDVSA US Litigation Trust purports to bring meritless claims on behalf of the national oil company of Venezuela, PDVSA—a failing enterprise controlled by a corrupt dictatorship condemned by the world community and sanctioned by the United States. The Trust, however, has wholly failed to meet its burden to prove its standing to bring claims ostensibly owned by PDVSA. **None** of the purported signatories to the Trust Agreement—the document that purported to create the Trust and assign the alleged claims—have appeared in this case to authenticate their signatures, Fed. R. Evid. 901(a), establish their authority to sign the agreement, demonstrate they understood the document they were allegedly signing, or otherwise be examined by counsel for the defendants—issues fully briefed in prior filings, ECF 502. The Trust Agreement is thus inadmissible, and without it, the Trust cannot establish its standing.

These discovery failures are all the more pressing given the Trust appears to have been established by individuals purporting to act for PDVSA (but who had no authority to do so) to evade PDVSA's many U.S. creditors and to avoid having to subject themselves to discovery.

Every aspect of this unorthodox arrangement is suspicious: The Trust is controlled by its lawyers, consultants, and financier, Algamex ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ The ex-Petroleum Minister who allegedly signed the Trust Agreement on behalf of PDVSA (but had no authority to do so) has reportedly been jailed in Venezuela for corruption and for signing contracts without

---

[1] Collectively, Lukoil Pan Americas LLC, Colonial Oil Industries, Inc., Colonial Group, Inc., Paul Rosado, Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Sergio de la Vega, Vitol Inc., Vitol Energy (Bermuda) Ltd., Antonio Maarraoui, Trafigura Trading, LLC, BAC Florida Bank, Francisco Morillo, Leonardo Baquero, Helsinge Holdings, LLC, Helsinge, Inc., Helsinge Ltd., Daniel Lutz, Luis Liendo, John Ryan, Luis Alvarez, and Maximiliano Poveda.

authorization. The putative (but illegitimate) *Procurador General* of Venezuela, another alleged Trust Agreement signatory who purportedly "approved" the assignment (though did not himself purport to assign the claims), refuses to appear for a deposition, allegedly on the direct orders of Venezuelan President Nicolas Maduro. And the third and final Venezuelan official alleged to have signed the Trust Agreement has disappeared and reports indicate he is also wanted on corruption charges.

It is thus no wonder that the Venezuelan National Assembly—the "only legitimate legislative body" in Venezuela according to the United States State Department[2]—has denounced the Trust Agreement as "unconstitutional" under Venezuelan law and as a "mechanism to divert the funds and resources" of "the public treasury" of Venezuela.

But even if the Court were to accept the Trust Agreement into evidence, the Trust cannot carry its burden of proving standing for multiple independent reasons:

*First*, the putative assignment of claims from PDVSA is void under New York law (which applies here because the Trust was purportedly created under New York law and includes a New York choice of law provision) on three independent grounds:

 (i) **Violation of New York's Ban on Champerty**.  The assignment is void because it violates New York's ban on champerty.  A recent opinion of the New York Court of Appeals— New York's highest court—is directly on point and dispositive. It holds that New York law prohibits the assignment of claims "with the intent and for the primary purpose of bringing a lawsuit."  *Justinian Capital SPC v. WestLB AG*, 65 N.E.3d 1253, 1254 (N.Y. 2016).  Here, the ***only*** purpose for the creation of the Trust and the assignment of claims was to bring litigation. Thus, the assignment is void under New York law.

---

[2] State Department, Assumption of Legislative Powers in Venezuela (Aug. 18, 2017), *available at* https://www.state.gov/r/pa/prs/ps/2017/08/273543.htm.

(ii) ***Lack of Required Certificates of Acknowledgement***.  New York law requires that a trust agreement be "acknowledged by the person establishing such trust," through a notarized certificate of acknowledgment.  The Trust Agreement lacks a notarized certificate of acknowledgment for the only Venezuelan official who purportedly signed it on behalf of PDVSA, the then-Petroleum Minister.  The Trust is thus invalid for this reason as well.  *Bullock v. Clarke*, 2002 WL 31119931, at *1–*2 (N.Y. Sup. Ct. 2002).

(iii) ***Indefinite Trust Corpus***.  Further, the Trust is invalid because the putatively assigned claims are not "sufficiently designated or identified to enable title of the property to pass to the trustee."  *In re Doman*, 890 N.Y.S.2d 632, 634 (N.Y. App. Div. 2009).

*Second*, even if the assignment and Trust were valid under New York law (they are not), this case should still be dismissed because the Trust Agreement's validity under Venezuelan law presents the Court with non-justiciable political questions in light of the National Assembly's resolution denouncing the Trust as "unconstitutional."  Since political parties opposing President Maduro won a majority in the National Assembly in 2015, Maduro has been engaged in a relentless campaign to gut the National Assembly of lawmaking authority.  The United States has denounced Maduro's efforts to consolidate power, and has sided strongly with the National Assembly in Venezuela's constitutional crisis.

These issues of foreign affairs are directly implicated in this case.  To find standing, the Court would have to undermine the U.S. State Department's clear, continued recognition and support of the Venezuelan National Assembly by directly contravening the National Assembly's express declaration that the Trust is illegal, a decision that would no doubt undermine U.S. foreign policy by strengthening Maduro's hand in his power struggle with the National Assembly.  This case should thus be dismissed on political question grounds.

*Third*, if the Court concludes that the Venezuelan law issues are justiciable, the putative assignment is void under Venezuelan law, for the following reasons:

(i) ***Purported Signatories Lacked Legal Authority***.  Under Venezuelan law, PDVSA can act only through its board of directors and president, but the undisputed record shows the putative assignment here was approved by neither.  It is therefore void.  In contrast, neither of the purported Trust Agreement signatories had the legal authority to assign PDVSA's claims.  The ex-Petroleum Minister had authority only to supervise PDVSA and to vote the government's shares at PDVSA shareholders' meetings, not to act directly for PDVSA.  And even the Trust's own Venezuelan law expert admits that the disputed *Procurador General* lacked authority to assign PDVSA's claims to a third-party.

(ii) ***Violation of National Interest Contract Approval Requirement***.  Further, as declared by the National Assembly, the Trust Agreement constitutes a "national interest contract," a particular class of public contracts under Venezuelan law that implicate national interests.  Such contracts require approval by the National Assembly.  It is undisputed that the Trust Agreement was not presented to, let alone approved by, the National Assembly, and thus it is void.

Finally, the Trust's argument that the act of state doctrine requires this Court to accept the validity of the assignment under Venezuelan law is meritless.  The Trust argues the act of state doctrine applies to the execution of the Trust Agreement by the ex-Petroleum Minister and *Procurador General* but ignores the National Assembly's resolution squarely pronouncing those alleged acts unconstitutional, and offers no explanation for why the National Assembly's official resolution is not the relevant act of state.  These conflicting acts by different actors of a foreign state require dismissal under the political question doctrine, not absolute deference under the act of state doctrine.  Even without the National Assembly's resolution, however, the act of state

doctrine would not apply because PDVSA's alleged assignment of claims to a *New York* trust was not "performed solely within [Venezuela's] own borders," *Chisholm & Co. v. Bank of Jamaica*, 643 F. Supp. 1393, 1403 (S.D. Fla. 1986), and because PDVSA itself purportedly authorized the Trust to file suit in the United States.  *Grupo Protexa, S.A. v. All Am. Marine Slip*, 1994 A.M.C. 1828, 1852 (3d Cir. 1994).

Therefore, the Court should dismiss the case for lack of standing.

## FACTUAL BACKGROUND

*The Creation of the Trust*.  Algamex II 29:25–30:20, 35:25–37:7; *United States v. Duker*, Dkt. 12, Case No. 1:97-cr-00822-SS (S.D.N.Y. Dec. 11, 1997). , Algamex II 9:5–11, 64:8–18, , Algamex I 115:13–17.

But rather than asserting the (meritless) claims in this case directly on behalf of PDVSA—and thereby subjecting PDVSA to U.S. jurisdiction and discovery and the reach of its many creditors—plaintiff's counsel, ███, and certain Venezuelan officials formed a new entity to bring the case.  Together, they purported to form a trust, created under and governed by New York law, that ostensibly took assignment of certain PDVSA claims so as to bring suit on those claims in the United States in the name of the Trust rather than in PDVSA's own name.[3]  This resulted in the Trust Agreement, the instrument that purports both to create the Trust under New

_____

[3] The Trust Agreement's New York choice-of-law provision states: "This Litigation Trust Agreement shall be governed by, and construed and enforced in accordance the laws of the State of New York, without giving effect to the principles of conflicts of law thereof."   TA § 9.3.

York law and to assign litigation claims from PDVSA to the Trust.

The Trust Agreement was supposedly signed by two Venezuelan officials: (i) Nelson Martinez, the then-Petroleum Minister; and (ii) Reinaldo Munoz Pedroza ("Munoz"), the professed, but legally illegitimate, *Procurador General*. TA, at 15. Martinez purported to sign for PDVSA and to assign PDVSA's claims to the Trust, TA, at 1, while Munoz purported to sign the Trust Agreement to provide certain legal approvals required under Venezuelan law, TA § 9.8. The Trust Agreement provides for three trustees who purportedly control and manage the Trust, TA §§ 4.1(a)–(c), yet two of the trustees are appointed by plaintiff's counsel. TA § 4.1(c). The Petroleum Minister appoints the final trustee, and he supposedly appointed Alexis Arellano, who is also alleged to have signed the Trust Agreement. TA § 4.1, 15.

None of the three Venezuelan officials who supposedly signed the Trust Agreement has appeared in this case to authenticate their signatures or otherwise defend the Trust Agreement. Martinez has been arrested and imprisoned on charges of corruption and (significantly) executing contracts without proper authorization.[4] The Trust claims Arellano cannot be located; news reports suggest he, too, faces corruption charges.[5] And Munoz failed to appear for his deposition, which was cancelled three days before it was scheduled to occur. The defendants' ability to discover the facts regarding the putative assignment have been impaired by Maduro and PDVSA President Manuel Quevedo, both of whom have—according to plaintiff's counsel—

---

[4] *Venezuela's Ex-Oil Minister and Ex-PDVSA Head Arrested*, British Broadcasting Corporation (Nov. 30, 2017), *available at* https://www.bbc.com/news/world-latin-america-42182289; *Venezuela Confirms Ex-Oil Bosses Del Pino, Martinez Detained*, Reuters (Nov. 30, 2017), *available at* https://www.reuters.com/article/us-venezuela-oil-prosectuor/venezuela-confirms-ex-oil-bosses-del-pino-martinez-detained-idUSKBN1DU279.
[5] *Caso de Corrupcion: La Conexion Venezolana*, Expreso, (Aug. 31, 2017), *available at* http://www.expreso.ec/actualidad/odebrecht-dpvsa-venezuela-ecuador-corrupcion-AB1663552.

interfered in this lawsuit by instructing key witnesses not to appear for depositions.[6] The Trust's failure to present these witnesses precludes it from authenticating the Trust Agreement under the Federal Rules of Evidence and has severely prejudiced the defendants' ability to defend this case, meriting dispositive sanctions, issues fully briefed in prior submissions.[7]

The Trust's discovery failures have also deprived the defendants of the opportunity to probe whether PDVSA itself (as opposed to a small group of unauthorized and illegitimate Venezuelan officials) supports the Trust and intended to assign the alleged claims. Troublingly, the Trust Agreement was not signed by PDVSA's president, and the Trust has failed to demonstrate that the Trust Agreement was ever presented to, let alone approved by, PDVSA's board of directors. Likewise, the Trust Agreement evaded all of the standard legal processes mandated for national interest contracts under Venezuelan law, including approval by the National Assembly. HR ¶¶ 86–102. Moreover, under the Trust Agreement, the lion's share of any recovery in this case—*66%*—would go to parties other than PDVSA ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████. Ex. 1, at 1. Remarkably, only 34% of any recovery in this case would actually make its way to PDVSA. Ex. 1, at 1.

*Political Developments in Venezuela*. While the plaintiff's lawyers and financier were forming the Trust, the already-volatile political situation in Venezuela was deteriorating. President Maduro has been engaged in a relentless campaign to consolidate power by gutting the National Assembly since political parties opposing him won a majority in the National Assembly in 2015. HR ¶¶ 20–23. Those efforts culminated in 2017 when Maduro created a new, parallel legislature to replace the National Assembly, the "National Constituent Assembly," which

---

[6] ECF 430-1, at 7, 11; Hr'g Tr. 12:8–11 (June 7, 2018).
[7] ECF 430; ECF 466; ECF 478; ECF 483; ECF 486; ECF 502.

Maduro packed with loyalist cadres in elections rejected as rigged by the United States.[8]  HR

¶ 23.  The United States has strongly denounced Maduro's efforts, recognizing the National

Assembly as "the only legitimate legislature" in Venezuela and imposing repeated sanctions

based on "establishment of an illegitimate National Constituent Assembly, which has usurped

the power of the democratically elected National Assembly."[9]

*The National Assembly's Resolution*.  After the Trust filed this lawsuit, the National

Assembly issued a resolution declaring the Trust Agreement "unconstitutional" under

Venezuelan law.   Ex. 2.   The National Assembly's resolution concludes that the Trust

Agreement is a "National Interest Contract," a category of public contracts under Venezuelan

law implicating national interests and which thus require the approval of the legislature—

approval the Trust never sought, much less received.  *Id.*  The resolution also declared the Trust

Agreement unconstitutional because Munoz "has usurped the functions" of the office of

*Procurador General*, as he was not officially appointed by Maduro nor "authorized by the

National Assembly," as required by the Venezuelan constitution.  *Id.*  The National Assembly's

resolution also denounced the Trust Agreement as "a mechanism to divert the funds and

resources" of the state-owned PDVSA from "the public treasury," no doubt a reference to the

Trust Agreement's indefensible fee—under which 66% percent of any recovery on claims

purportedly owned by PDVSA goes to ███████████████████████████.  *Id.*  Notably,

no other government body in Venezuela has disputed the National Assembly's resolution.

## ARGUMENT

### I.   The Trust's Lack of Standing Mandates Dismissal of Its Claims

This case must be dismissed because the Trust lacks Article III standing.   To prove

---

[8]  State Department, Venezuela's Illegitimate National Constituent Assembly (Aug. 3, 2017),
*available at* https://www.state.gov/r/pa/prs/ps/2017/08/273024.htm.
[9]  Exec. Order No. 13,808, 82 Fed. Reg. 41155 (Aug. 24, 2017).

Article III standing, the plaintiff must prove it suffered an "injury in fact." *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016) ("The 'irreducible constitutional minimum of standing' comprises three elements: injury in fact, causation, and redressability." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."). Here, the Trust *itself* suffered no such injury in fact. It never did business with any defendant from which it could allege some injury. Rather, the Trust relies exclusively on its putative assignment to assert claims based on *PDVSA's* alleged injury.

But because that putative assignment is void, as demonstrated *infra*, the Trust has no injury in fact, and thus no Article III standing. *See U.S. Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007) (holding a plaintiff without a valid assignment lacks an injury in fact); *Dougherty v. Carlisle Transp. Prods., Inc.*, 610 F. App'x 91, 93–94 (3d Cir. 2015) (dismissing a case based on a void, champertous assignment for lack of standing); *Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Grp.*, 105 F.3d 210, 213 (5th Cir. 1997) (holding an assignee lacked standing where the assignment was invalid).

Courts in this district regularly dismiss for lack of Article III standing cases based on an invalid assignment. *See, e.g.*, *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc.*, 281 F. Supp. 3d 1309, 1313–14, 1316 (S.D. Fla. 2017) (holding plaintiffs "utterly failed to show that they ha[d] standing" by not alleging "the essential terms" of purported assignments); *Vardag v. Motorola*, 264 F. Supp. 2d 1056, 1062 (S.D. Fla. 2003) (dismissing for lack of standing "in the absence of a valid assignment"); *Live Entm't, Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273, 1275, 1279 (S.D. Fla. 2003) (holding, where the plaintiff "suffered no injury in fact by the [d]efendant as a result of the alleged breach," "[the plaintiff] ha[d] no standing" as "the

9

Agreement was never lawfully assigned").  The same result is required here.

The Trust has argued in prior briefing that the invalid assignment of claims is a matter of prudential, rather than Article III, standing.[10]  That is demonstrably incorrect, under the case law cited above, but the Trust's point is also immaterial: if a plaintiff fails to demonstrate *either* Article III *or* prudential standing, its case must be dismissed.  *See E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984–85 (11th Cir. 1990) ("[A] party claiming standing also must demonstrate that prudential considerations do not constrain the trial court from hearing the case."); *see also Nat. Answers, Inc. v. Smithkline Beecham Corp.*, 529 F.3d 1325, 1330–33 (11th Cir. 2008) (dismissal for lack of prudential standing); *In re Ryan*, 2011 WL 1375865, at *3 (S.D. Fla. 2011) (same).[11]

Thus, if the assignment of claims is invalid (it is), the Trust lacks standing, whether characterized as a lack of Article III or prudential standing, and this case must be dismissed.

## II.     The Assignment in the Trust Agreement Is Void Under New York Law

The Trust cannot carry its burden of proving the validity of its supposed assignment of claims and thus its Article III standing, because the Trust Agreement and the assignment of claims are void under New York law.  Pursuant to its choice-of-law clause, the Trust Agreement

---

[10] The cases the Trust cited in a prior filing (ECF 221 at 25–26) on this point are inapposite. Unlike here, *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010), and *Estate of Prince v. Aetna Life Ins. Co.*, 2008 WL 4327049, at *3–4 (M.D. Fla. 2008), involved statutory grants of prudential standing, not assignments.  In *Church v. City of Huntsville*, 30 F.3d 1332, 1336–37 (11th Cir. 1994), the plaintiffs had *personally* suffered deprivations of constitutional rights, unlike the Trust here.  In two other cases cited by the Trust (ECF 221 at 26–27), the standing defect was moot or cured, also not the case here. *See Luis Medina & Evatech, Inc. v. Wright*, 2014 WL 12618175, at *2–3 (M.D. Fla. 2014); *Am. Iron & Steel Inst. v. Occupational Safety & Health Admin.*, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999).

[11] In fact, the majority of the cases the Trust previously cited on this point (ECF 221 at 25–27) *dismissed the case* for lack of prudential standing.  *See Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 561–62, 564 (5th Cir. 2001) (dismissal on prudential standing grounds); *Yocum v. Nationstar Mortg., LLC*, 2017 WL 3668178, at *10–11 (N.D. Ala. 2017) (same); *Oswalt v. Sedwick Claims Mgmt. Servs., Inc.*, 2015 WL 1565033, at *3–6 (M.D. Ala. 2015) (same); *Mcfarland v. BAC Home Loans Servicing*, 2012 WL 2205566, at *3–4 (N.D. Ga. 2012) (same); *In re Canellas*, 2012 WL 868772, at *3–4 (M.D. Fla. 2012) (same).

is "governed by, and construed and enforced in accordance" with New York law.  TA § 9.3.

### A.    The Trust Agreement Violates New York's Prohibition on Champerty

First, the Trust Agreement's assignment of claims is void because it plainly violates New York's ban on champerty. New York's champerty statute "prohibits the purchase of notes, securities, or other instruments or claims with the intent and for the primary purpose of bringing a lawsuit." *Justinian Capital SPC v. WestLB AG*, 65 N.E.3d 1253, 1254 (N.Y. 2016).  This statutory prohibition specifically applies to "taking an assignment of . . . any claim or demand." N.Y. Jud. Law § 489(1). "[T]he champerty doctrine was developed 'to prevent or curtail the commercialization of or trading in litigation.'" *Justinian*, 65 N.E.3d at 1254 (quoting *Bluebird Ptrs. v. First Fid. Bank*, 731 N.E.2d 581, 582 (N.Y. 2000)).

The recent, controlling opinion of the New York Court of Appeals—New York's highest court—in *Justinian*, is directly on point and dispositive.  In *Justinian*, a company held notes indirectly issued by a German bank.  *Id.* at 1254.  When the value of the notes declined, the company considered suing the bank, but the company's "fear of repercussions from bringing a direct lawsuit led [the company] to consider another option in which a third party would bring the lawsuit and remit a portion of any proceeds to [the company]."  *Id.*  The company then conveyed the notes to "a Cayman Islands shell company with few or no assets."  *Id.*  The shell company's business plan was to "commence litigation to recover the loss on the investment," "remit the recovery from such litigation to the company, minus a cut taken by [the shell company]," and then "partner with specific law firms . . . to conduct litigation."  *Id.* at 1255.

The New York Court of Appeals held the assignment was void under New York's champerty law.  *Id.* at 1257.  The court reasoned "the impetus for the assignment of the notes to [the shell company] was [the assignor]'s desire to sue [the bank] for causing the notes' decline in value and not to be named as a plaintiff in the lawsuit."  *Id.*  "[The shell company]'s business

11

plan, in turn, was acquiring investments that suffered major losses in order to sue on them, and it did so here within days after it was assigned the notes." *Id.* The court concluded "the lawsuit was not merely an incidental or secondary purpose of the assignment, but its very essence." *Id.* "[The shell company]'s sole purpose in acquiring the notes was to bring this action and hence, its acquisition was champertous." *Id.*

Since *Justinian* was decided, another federal court has applied the decision to dismiss cases based on assignments that violated New York's ban on champerty. *See, e.g.*, *Aretakis v. Caesars Entm't*, 2018 WL 1069450, at *10 (S.D.N.Y. 2018) (holding the "attempted assignment to Plaintiff constitutes champerty and is thus void" because "the purpose of the assignment was to allow Plaintiff to prepare and file a lawsuit seeking to obtain the funds to which Plaintiff claims [the would-be assignor] is entitled").

The controlling decision in *Justinian* mandates dismissal of this case. Here, as in *Justinian*, there is no question the Trust entered into the assignment "with the intent and for the primary purpose of bringing a lawsuit." *Id.* at 1254. The evidence on this point is conclusive:

- The only purpose for the Trust set forth in the Trust Agreement's opening paragraph is "to facilitate *the prosecution of claims* PDVSA has against various entities and individuals and the distribution of the Proceeds thereof." TA at 1 (emphasis added).

- Similarly, the recital provisions confirm the purpose of the assignment and trust were "to *ensure the engagement of legal counsel and the investigators* who have already expended substantial time, effort, and money investigating, analyzing and preparing *the forthcoming litigation*, and *to provide for the orderly and consensual distribution of the Proceeds of the Assigned Actions*, whether by pre-suit settlement, post-suit settlement, or judgment, to PDVSA," and "to further *investigate, commence one or more civil actions (the 'Assigned Actions'), and prosecute the Assigned Actions to conclusion*." TA at 1 (emphasis added).

[REDACTED]

- The Trust was not a pre-existing legal entity with other business. Rather, the Trust was specifically created for the sole purpose of taking assignment of these particular

12

litigation claims and bringing this lawsuit.  TA at 1; ████████████████
████████████████████████

In fact, the case for champerty here is even stronger than in *Justinian*, because in that case, the shell company took assignment of not just the claims but also the actual underlying assets, the notes issued by the defendant.  *See* 65 N.E.3d 1254.  Here, the Trust purported to take assignment of **only the litigation claims**—no underlying contracts, no accounts receivables, no other assets of PDVSA.  *See* TA at 1.[12]

On its face and in substance, "[the Trust]'s sole purpose in acquiring the [assigned claims] was to bring this action," and thus, under *Justinian*, the assignment "was champertous" and is void.  65 N.E.3d 1257; *see also Aretakis*, 2018 WL 1069450, at *10 (holding "[the assignor]'s purpose—to allow Plaintiff to prosecute this case to obtain a money judgment—is clear from the face of the document by which he attempted to assign his rights to Plaintiff" and the "assignment to Plaintiff is void for violating the prohibition on champerty").[13]

## B.    The Trust Agreement Lacks Mandatory Certificates of Acknowledgment

Further, the Trust Agreement suffers from another dispositive legal defect.  It is missing the certificates of acknowledgment required by New York law, and the Trust is thus invalid and any putative assignment is null and void.

---

[12] The Trust previously argued that "champerty is a defense to the prosecution of the claims, not to the validity of the assignment."  ECF 459, at 2 n.2.  That is incorrect.  Under New York law, a champertous assignment is void, *see Justinian*, 65 N.E.3d at 1255, 1257, and, as demonstrated above in Part I, a plaintiff with a void assignment lacks Article III standing.  *See Dougherty*, 610 F. App'x at 93–94 (holding "the assignment of this claim to [the plaintiff] was champertous and [the plaintiff] is not permitted to litigate it" as "once the assignment is deemed invalid, [the plaintiff] does not have standing to assert the underlying claim").

[13] New York's champerty statute includes a safe-harbor for claims with "an aggregate purchase price of at least five-hundred thousand dollars," N.Y. Jud. Law § 489(2), but that safe-harbor does not apply here, because the Trust Agreement does not provide **any** purchase price for the assigned claims.  Further, *Justinian* held the safe harbor does not apply to contingent payment obligations, 65 N.E.3d at 1259, as all the Trust's obligations to remit funds to PDVSA are here.

New York law provides that "[e]very lifetime trust shall be in writing and shall be executed ***and acknowledged*** by the person establishing such trust and, unless such person is the sole trustee, by at least one trustee thereof."  N.Y. Est. Powers & Trusts Law § 7-1.17(a).  One of the "requisites of a proper acknowledgement" is a notarized certificate of acknowledgement attached to the trust agreement.  *Galetta v. Galetta*, 991 N.E.2d 684, 687 (N.Y. 2013).  These strict formal requirements not only prove the identity of the trust signatories—they also serve to "impose[] on the signer a measure of deliberation in the act of signing the document" by "underscor[ing] the weighty personal choices to relinquish significant property."  *Id.*

"When a grantor fails to complete the formalities associated with setting up a trust, a valid trust is not created," and "[w]here no valid trust [i]s created ***any transfer into or out of the putative trust is null and void***." *In re McQuade*, 2017 WL 3706649, at *3 (N.Y. Sur. Ct. 2017).[14]

Here, the Trust Agreement fails to comply with the requirements of New York Estates Powers & Trusts Law § 7-1.17.  The Trust Agreement states "[t]he Parties hereby establish a trust which shall be known as the 'PDVSA US Litigation Trust.'"  TA § 2.1  The Trust Agreement defines "the 'Parties'" as "PDVSA and the Litigation Trustees" and states that PDVSA is "acting in this matter through the Minister of the People's Petroleum Power, as a representative duly authorized to take action on behalf of PDVSA."  TA at 1.  But the signature

---

[14] All emphasis is added unless otherwise noted.  See also *Gaines v. City of New York*, 29 N.Y.S.3d 270, 271 (N.Y. App. Div. 2016) ("[D]ecedent's failure to complete the formalities associated with setting up the [trust] prior to her death was fatal to the [trust]'s existence. Neither decedent nor the putative trustee executed or acknowledged the proposed trust agreement, and the [trust] was never properly funded with the settlement proceeds."), *aff'd by* 76 N.E.3d 289, 289 (N.Y. 2017) ("Under the circumstances of this case, a valid supplemental needs trust was never effected."); *Fasano v. DiGiacomo*, 853 N.Y.S.2d 657, 659 (N.Y. App. Div. 2008) (holding where the putative trustee failed to execute the trust agreement as required by § 7-1.17, "no valid trust was created, and any transfer into or out of the putative trust on August 4, 1998, was null and void"); *In re Will of D'Elia*, 964 N.Y.S.2d 877, 878, 880 (N.Y. Sur. Ct. 2013) (holding, where the trustee had not executed a trust agreement at the time a will incorporating the trust by reference was executed, "the trust was not in existence at the time the will was signed").

14

of Martinez—the purported representative of PDVSA and thus the "person establishing such trust" under § 7-1.17(a)—is not accompanied by the required notarized certificate of acknowledgment.  Thus, "no valid trust was created" and the putative "transfer" of the claims in this litigation "into or out of the putative trust is null and void."  *In re McQuade*, 2017 WL 3706649, at *3; *see also Gaines*, 76 N.E.3d at 289.

In a meritless effort to avoid this dispositive legal defect, the Trust previously argued that "under New York law a 'trust may be created orally or in writing; no particular form of words is necessary, and it may arise by implication from the settlor's conduct,'" and "[t]herefore, a grantor's failure to sign a trust document does not invalidate a trust."  ECF 459, at 9 (quoting *In re Marcus Trusts*, 769 N.Y.S.2d 56, 57 (N.Y. App. Div. 2003)).  The Trust is wrong, and its argument was highly misleading because *all* of the cases the Trust cited for that proposition addressed trusts created *before* 1997,[15] when New York *amended its trust statute* to explicitly require "[e]very lifetime trust *shall be in writing* and *shall be executed and acknowledged* by the person establishing such trust."  N.Y. Est. Powers & Trusts Law § 7-1.17(a); *see Fasano*, 853 N.Y.S.2d at 659 ("EPTL 7-1.17 was enacted in 1997 to impose certain formal requirements for the creation, amendment, and revocation of lifetime trusts. Until the passage of this statute in 1997, New York, a state with strict and rigid requirements for wills did not have any formal requirements for lifetime trusts." (quotation marks and ellipses omitted)).[16]  Unlike the pre-1997

---

[15] *See* ECF 459, at 9 (citing *Marcus Trusts*, 769 N.Y.S.2d at 641 ("The contention of [the appellants] that *the 1972 MG2 Trust* was not validly formed because a complete trust agreement was never executed is not persuasive."); *Orentreich v. Prudential Ins. Co. of Am.*, 713 N.Y.S.2d 330, 331 (N.Y. App. Div. 2000) ("Plaintiffs' argument that *the 1994 Trust* was not validly formed because a complete trust agreement was never executed is not persuasive.")).  The Trust's final cited case was decided before New York trust law was amended.  *See* ECF 459, at 9 (citing *Agudas Chasidei Chabad v. Gourary*, 833 F.2d 431, 434 (2d Cir. 1987)).

[16] In fact, the trial court opinion in *In re Marcus Trusts*—the very case the Trust quoted to this Court to argue "a trust may be created orally or in writing"—expressly noted the trust in that

trusts in the inapposite cases the Trust cited to this Court, the Trust here was created in 2017 and its failure to comply with the requirements of § 7-1.17(a) is fatal.

The decision in *Bullock v. Clarke*, 2002 WL 31119931 (N.Y. Sup. Ct. 2002), is directly on point.  In *Bullock*, the trust agreement "was signed by the settlor and the trustee, but was neither acknowledged nor witnessed."  *Id.* at *1.  The Court held "the trust agreement does not comply with the requirements of section 7-1.17 and the trust is not valid as a receptacle for the settlor's testamentary disposition of her home."  *Id.* at *2.  The exact same is true here.  For the purported signature of the would-be settlor, Martinez, "there is no acknowledgement at all and no other indicator of authenticity," and thus "the trust agreement does not comply with the requirements of section 7-1.17 and the trust is not valid as a receptacle for the" putative assignment of the claims in this case.  *Id.* at *2.

The Trust also previously argued "New York courts routinely uphold the validity of legal instruments, including trusts, that have no acknowledgments where there are other indicia of reliability."  ECF 221, at 28.  But the Trust's cited cases either involved settlors' signatures that (unlike here) *were* accompanied by a notarized certificate of acknowledgment (the certificate was merely alleged to be technically defective) or the lack of acknowledgements was cured.[17] Indeed, the court in *Bullock* distinguished the Trust's cited cases on those grounds in its on-point

---

case "was settled *in March, 1972*, and is *unaffected* by EPTL 7–1.17 which *requires lifetime trusts established on or after December 25, 1997 to be in writing to be valid*."  742 N.Y.S.2d 777, 779 n.1 (N.Y. Sur. Ct. 2002); *see also In re Estate of Kneznek*, 727 N.Y.S.2d 180, 181 & n.2 (N.Y. App. Div. 2001) (noting § 7-1.17 was "not applicable to" a trust created in 1990).

[17] See ECF 221 at 28–29 (citing *In re Klosinski*, 746 N.Y.S.2d 350, 359 (N.Y. Sur. Ct. 2002) (noting "[t]he acknowledgment fails to state that the officer taking the acknowledgment knew or had satisfactory evidence, that the person executing the Trust was the decedent"); *Estate of O'Brien*, 627 N.Y.S.2d 544, 545 (N.Y. Sur. Ct. 1995) (noting "the trust instrument was signed by a notary public, stating that it was 'signed, sealed and delivered' in her presence"); *People ex rel. Sayville Steamboat Co. v. Kempner*, 63 N.Y.S. 199, 200 (N.Y. App. Div. 1900) (noting "[t]he certificate signed by the appellant here was defective")).  See also *infra* n.20.

decision.  *See, e.g.*, 2002 WL 31119931, at *1–*2 ("In *Klosinski*, there was also an acknowledgment, alleged to be defective. . . .  In this case, there is no acknowledgment at all and no other indicator of authenticity.").

Finally, and tacitly admitting the Trust Agreement lacks the requisite acknowledgments, the Trust previously suggested that it cured the missing certificates of acknowledgment by "providing the sworn acknowledgments of two of the trustees" during this litigation.  ECF 221, at 29.  The Trust also produced (long after the close of fact discovery) a declaration from Munoz stating his signature on the Trust Agreement is authentic.  But the Trust has provided no such (improper) after-the-fact declaration from Martinez, the person supposedly acting for PDVSA.

These after-the-fact acknowledgments fail to cure the Trust's non-compliance with § 7-1.17(a).  First, the certificates of acknowledgment from two of the trustees are insufficient; a trust agreement must be acknowledged **both** "by the person establishing such trust **and**, unless such person is the sole trustee, by at least one trustee thereof."  N.Y. Est. Powers & Trusts Law § 7-1.17(a) (emphasis added); *see Fasano*, 853 N.Y.S. at 685 (holding "no valid trust was created" where the settlor had executed the trust instrument but the putative trustee had not).

Second, the Trust's belated acknowledgment from Munoz—which should be excluded for the reasons set forth in the defendants' motion for an order to show cause, ECF 430—also fails to cure the Trust's non-compliance with § 7-1.17(a).  As noted above, Martinez—not Munoz—is "the person establishing such trust" under the Trust Agreement.  *See* TA at 1 & § 2.1.  Munoz (allegedly) signed only to grant a required legal approval of the Trust Agreement, *see* TA § 9.8, a fact confirmed by the Trust's own expert, Perez 73:25–74:16  But even if Munoz were a "person establishing such trust," § 7-1.17(a)'s plain language requires a certificate of acknowledgement from **each** "person establishing such trust" by providing that a trust need only

be acknowledged by "at least one trustee thereof"—but making no equivalent provision for the "person establishing such trust."[18] Thus, because the Trust has only provided a declaration from Munoz—but not Martinez—the Trust has failed to cure its non-compliance with § 7-1.17(a).

But even if Munoz were considered a "person establishing such trust" (he is not) and even if an acknowledgment from only Munoz, and not Martinez, were enough to validly acknowledge the Trust Agreement (it is not), the Trust was still void ***at the time the purported assignment was executed***, and thus the purported assignment of the claims into the putative trust was, and remains, "null and void," *In re McQuade*, 2017 WL 3706649, at *3 ("When no valid trust was created any transfer into or out of the putative trust is null and void."). The opinion in *Will of D'Elia* is on point. In that case, "the trust was signed by the decedent as settlor" at the time he executed his will but not by the trustee. 964 N.Y.S.2d at 880. Even though the trustee later executed the trust, the Court held that "the trust was not in existence at the time the will was signed" and "the unavoidable result" was the bequest to the trust "under the decedent's purported will fail[ed]." *Id.* at 880, 881; *see Fasano*, 853 N.Y.S.2d at 659 (holding because the trustee never executed the trust agreement as required by § 7-1.17, "no valid trust was created, and any transfer into or out of the putative trust on August 4, 1998, was null and void.").[19]

In sum, the Trust Agreement lacks the requisite acknowledgements under New York law, and hence the Trust and the assignment of claims to it is null and void.

---

[18] See *In re Failla*, 838 F.3d 1170, 1176 (11th Cir. 2016) ("The presumption of consistent usage instructs that a word or phrase is presumed to bear the same meaning throughout a text and that a material variation in terms suggests a variation in meaning." (quotation marks omitted)).

[19] *Hazell* and *Londin* (previously cited by the Trust) are not to the contrary. ECF 221, at 29. While those cases may stand for the proposition that the creation of ***the Trust itself*** could be cured by providing proper certificates of acknowledgment, neither case addressed a transfer of property to an entity not validly formed at the time of the putative transfer. *See Hazell v. Bd. of Elections*, 637 N.Y.S.2d 530, 531 (1996) (failure to acknowledge a certificate of nomination cured); *Londin v. Londin*, 420 N.Y.S.2d 326, 327 (N.Y. Sup. Ct. 1979) (failure to acknowledge a marital separation agreement cured).

### C.     The Trust Is Void Because Its Corpus Is Not Sufficiently Defined

Further, the Trust is invalid because its corpus is not sufficiently defined.  A valid trust under New York law requires "a fund or other property **sufficiently designated or identified** to enable title of the property to pass to the trustee."  *In re Doman*, 890 N.Y.S.2d 632, 634 (N.Y. App. Div. 2009).  The "Contributed Claims" purportedly assigned to the Trust are defined as "claims against multiple individuals and entities (the 'Conspirators') arising out of" certain enumerated categories of conduct.  TA at 1.  But the Trust Agreement wholly fails to identify the "multiple individuals and entities" the claims against which the Trust Agreement purports to transfer.  Thus, the Court and the defendants have no way of determining whether the claims against the defendants here were actually putatively transferred to the Trust, a situation that risks subjecting the defendants to duplicative liability.  *Sussman v. Sussman*, 402 N.Y.S.2d 421, 422, 423 (N.Y. App. Div. 1978) (holding a description of trust property as "the U.S. bonds furnished and their interest" failed to "make[] them definitely ascertainable").  Accordingly, the "property" purportedly assigned to the Trust is not "sufficiently designated or identified," and the Trust is invalid.  *See Sussman*, 402 N.Y.S.2d at 423; *Mukamal v. Bakes*, 383 B.R. 798, 811 (S.D. Fla. 2007) (dismissing for lack of standing where the claims brought were not assigned to the trust).[20]

## III.     This Case Must Be Dismissed Under the Political Question Doctrine

Even if the assignment and Trust were valid under New York law (they are not), this case should still be dismissed because the Trust Agreement's validity under Venezuelan law presents non-justiciable political questions in light of the National Assembly's resolution denouncing the Trust as unconstitutional.  *See Carmichael v. Kellogg, Brown & Root Svc., Inc.*,

---

[20] The Trust previously cited *In re Fontanella's Estate*, 304 N.Y.S.2d 829 (N.Y. App. Div. 1969), to argue "the rule identified by Defendants concerns 'personal property' trusts, not litigation of claims belonging to a foreign sovereign," ECF 221, at 30, but that case did not address litigation trusts at all or draw any distinction between litigation claims (which are personal property) and any other form of property.

572 F.3d 1271, 1280 (11th Cir. 2009) ("Political questions have been held to be nonjusticiable

and therefore not a 'case or controversy' as defined by Article III." (quotation marks omitted)).

A dispute raises a non-justiciable political question if ***any one*** of the following

characteristics is present:

> (1) a textually demonstrable constitutional commitment of the issue to a coordinate
> political department; (2) a lack of judicially discoverable and manageable standards for
> resolving it; (3) the impossibility of deciding without an initial policy determination of a
> kind clearly for nonjudicial discretion; (4) the impossibility of a court's undertaking
> independent resolution without expressing lack of the respect due coordinate branches of
> government; (5) an unusual need for unquestioning adherence to a political decision
> already made; or (6) the potentiality of embarrassment from multifarious pronouncements
> by various departments on one question.

*Carmichael*, 572 F.3d at 1280 (quoting *Aktepe v. United States*, 105 F.3d 1400, 1402–03 (11th

Cir. 1997)); *Made in the USA Found'n v. United States*, 242 F.3d 1300, 1312 (11th Cir. 2001)

("[A]ny one of the above-listed characteristics may be sufficient to preclude judicial review.").

"'[M]atters intimately related to foreign policy and national security are rarely proper

subjects for judicial intervention,'" as "[t]he Constitution commits the conduct of foreign affairs

to the executive and legislative branches of government." *Aktepe*, 105 F.3d at 1403 (quoting

*Haig v. Agee*, 453 U.S. 280, 292 (1981)). In particular, recognition of foreign governments is

***always*** beyond the purview of the Courts, as it is a matter textually committed to the Executive

Branch: "[I]t is for the President alone to make the specific decision of what foreign power he

will recognize as legitimate, both for the Nation as a whole and for the purpose of making his

own position clear within the context of recognition in discussions and negotiations with foreign

nations." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2090 (2015); *Rep. of Panama v.

Citizens & S. Int'l Bank*, 682 F. Supp. 1544, 1545 (S.D. Fla. 1988) (recognizing "[t]he Executive

branch's exclusive power to recognize and legitimize a foreign government.").

Here, the National Assembly's resolution denouncing the Trust as "unconstitutional"

under Venezuelan law presents the Court with non-justiciable political questions. The Maduro government has undermined the constitutional authority of the National Assembly since political parties opposing his regime won a majority in that body in 2015. HR ¶¶ 20–23. The United States, through the Executive Branch, has endorsed the National Assembly and denounced Maduro's attacks on that body in the strongest possible terms, continuing to recognize the National Assembly as the "only legitimate legislative body" in Venezuela.[21] The U.S. House of Representatives has similarly adopted a resolution "urg[ing] the Government of Venezuela to . . . respect the constitutional rights of the National Assembly," H. Res. 259, 115th Congress (2017), and the Senate has introduced a similar resolution.[22]

The National Assembly's resolution denounced the Trust as "unconstitutional" on two bases squarely implicating the political question doctrine: (1) the Trust Agreement was a national interest contract; and (2) Reinaldo Munoz has "usurped the functions" of *Procurador General*.

To find standing here, the Court would necessarily have to disregard the National Assembly's resolution, despite the U.S. State Department's clear continuing recognition of and support for that body. Indeed, the scope of the National Assembly's authority over "national interest contracts"—squarely at issue in this case—is a key separation of powers issue under Venezuelan law and has played a central role in the power struggle between Maduro and the National Assembly. HR ¶ 21. A decision that the assignment here is valid, notwithstanding the National Assembly's clear pronouncement to the contrary, risks undermining the Executive Branch's recognition of that body as the "only legitimate legislature" in Venezuela. *See*

---

[21] State Dep't, Assumption of Legislative Powers in Venezuela (Aug. 18, 2017), *available at* https://www.state.gov/r/pa/prs/ps/2017/08/273543.htm.
[22] S. Res. 414, 115th Cong. (referred to the S. Comm. on Foreign Relations) ("[T]he Senate . . . condemns the steps taken by President Maduro . . . to undermine the independence of democratic institutions such as the National Assembly of Venezuela . . . .").

*Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 137 (1938) ("What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government."); *Rep. of Panama v. Air Panama Int'l, S.A.*, 745 F. Supp. 669, 673–74 (S.D. Fla. 1988) ("[I]t is well-settled that all matters of recognition of a foreign government are political questions that fall exclusively within the province of the Executive Branch.").  The Judiciary's rebuke of the only Venezuelan legislative body recognized by the Executive Branch would thus undermine the long-standing principle that "[r]ecognition is a topic on which the Nation must speak . . . with one voice."  *Zivotofsky*, 135 S. Ct. at 2086 (quotation marks omitted).

Such a decision also would risk "embarrassment from multifarious pronouncements by various departments on one question," *Carmichael*, 572 F.3d at 1280 (quoting *Aktepe*, 105 F.3d at 1402), with the Executive Branch recognizing the National Assembly's authority but the Judiciary countermanding the National Assembly's conclusions about its own authority as against the Maduro regime.  *See 767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed'l Rep. of Yugoslavia*, 218 F.3d 152, 160–61 (2d Cir. 2000) (holding recognition of which newly-formed state succeeded to assets of the former Yugoslavia was "precisely the type of determination that is reserved to the Executive in the first instance" and absent a recognition decision "such a determination" by the judiciary "could conflict with a future determination by the President").

Indeed, just this March, the United States imposed sanctions barring transactions in a newly-issued Venezuelan digital currency, relying expressly on the fact that the digital currency was issued "***in a process that Venezuela's democratically elected National Assembly has***

*denounced as unlawful*" in a resolution exactly like the resolution issued here.[23] Contravening the National Assembly's similar resolution here, aimed specifically at the Trust, would thus risk "express[ing a] lack of the respect due coordinate branches of government," *Carmichael*, 572 F.3d at 1280 (quoting *Aktepe*, 105 F.3d at 1403), in an area "[c]onstitution[ally] commit[ted]" to "to the executive and legislative branches of government." *Aktepe*, 105 F.3d at 1403.

Further, one of the primary bases on which the National Assembly denounced the Trust as unconstitutional is that Munoz does not validly hold the office of *Procurador General*, as he has not received an official appointment ratified by the National Assembly as required by the Venezuelan constitution. Ex. 2. To find standing, the Court necessarily must decide whether Munoz had lawful authority to provide the required legal approval for the Trust Agreement under Venezuelan law, which necessarily would include determining whether he validly holds the office of *Procurador General*. Answering that question in the affirmative would undermine the Executive Branch's recognition of the National Assembly as the "only legitimate legislature" in Venezuela, as the Court would have to either conclude the National Assembly lacks constitutional authority to approve executive appointments or give effect to the Maduro regime's practice of circumventing National Assembly review by having officials *de facto* hold office without appointment. Such an issue is entirely non-justiciable. *Guaranty Trust*, 304 U.S. at 137.

Thus, if the Court reaches these Venezuelan law issues, the Court must dismiss this case under the political question doctrine.

## IV. The Trust Agreement Is Void Under Venezuelan Law

Alternatively, if the Court concludes the Venezuelan law issues are justiciable, then this

---

[23] Exec. Order No. 13,827, 83 Fed. Reg. 12468 (Mar. 19, 2018). The related National Assembly resolution is *Acuerdo Sobre la Emision de la Criptomoneda (Petro)* (Jan. 9, 2018), *available at* http://www.asambleanacional.gob.ve/actos/_acuerdo-sobre-la-emision-de-la-criptomoneda-petro.

case should still be dismissed because the putative assignment is likewise void under Venezuelan law on several grounds.  "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1.

### A.        Neither Trust Agreement Signatory Had Authority to Assign the Claims

The Trust Agreement is void because neither Martinez nor Munoz had the authority under Venezuelan law to assign the claims at issue.  Rather, the authority to assign claims owned by PDVSA rests exclusively with PDVSA's board of directors and president, neither of which approved the assignment here.  These fatal defects are explained fully in the expert reports of Jose Ignacio Hernandez and Rafael Badell Madrid, both law professors at the Andres Bello Catholic University in Venezuela and experts in Venezuelan administrative law.[24]

Although PDVSA is a state-owned company, it is formed as a corporation under Venezuelan law.  HR ¶ 29; BR1 ¶ 36–38.  Just as private companies are separate legal entities from their shareholders under Venezuelan law, PDVSA too is considered a separate legal entity from its shareholder, the Venezuelan government.  HR ¶ 30; BR1 ¶ 16.  Under Venezuelan law, PDVSA's board of directors is the sole entity with lawful authority to decide which agreements PDVSA subscribes.  HR ¶ 35; BR2 ¶ 28.  Thus, for PDVSA to assign claims or enter into contracts, including the Trust Agreement, those assignments or contracts must be approved by PDVSA's board of directors and then signed by PDVSA's president.  HR ¶ 37; BR1 ¶ 66–69; BR2 ¶ 28.  For example, the contracts creating joint ventures between PDVSA affiliates and private companies for oil exploration were approved by the affiliates' boards of directors, and signed by the affiliates' presidents.  HR ¶ 38.  Similarly, PDVSA's bond prospectuses from 2016 all state they were "authorized by the resolutions of [PDVSA's] board of directors."  HR ¶ 39.

---

[24] Professor Hernandez is also currently a visiting fellow at Harvard.

But here, the Trust has produced no evidence that PDVSA's board of directors or president even saw the Trust Agreement before it was executed, much less approved it. Thus, the putative assignment of claims owned by PDVSA is void. Indeed, the Trust has failed to prove the assigned claims were even owned by PDVSA (as opposed to its subsidiaries), in which case any assignment would have to be approved by the relevant subsidiary's board. HR ¶ 43.

(a) ***Nelson Martinez***. Martinez, the Petroleum Minister when the Trust Agreement was executed, lacked authority to assign PDVSA's claims. Under Venezuelan law, the Petroleum Minister does not directly manage or act for PDVSA; those powers are vested in PDVSA's board of directors and president. HR ¶ 54; BR1 ¶ 70; BR2 ¶¶ 28–29. To argue to the contrary, the Trust Agreement incorrectly cites statutes stating the minister may exercise the Venezuelan government's rights as PDVSA's shareholder, meaning he is able to vote PDVSA's shares at shareholder's meetings. HR ¶¶ 53–54, 56; BR1 ¶ 71; BR2 ¶ 36. But the stockholders of a corporation under Venezuelan law (including PDVSA) lack the authority to directly act for the corporation—that authority lies with the corporation's board. HR ¶¶ 54–56; BR2 ¶ 29.[25]

(b) ***Reinaldo Munoz***. Even the Trust does not contend Munoz had the authority to assign PDVSA's claims. Munoz's signature instead purports to reflect legal approval of the Trust Agreement required under Venezuelan law. TA § 9.8. Indeed, the Trust's own expert witness testified that Munoz did not—and would not have had authority to—purport to sign the Trust Agreement for PDVSA, only to grant legal approval of the contract as required by Venezuelan law. Perez 73:25–74:16. Even this regulatory approval is invalid. Venezuelan law requires the *Procurador General*'s approval to be provided in a separate written opinion prior to the

---

[25] The Trust Agreement also cites provisions giving the Petroleum Minister the authority to advise PDVSA (called "tutelage control"), but again this does not entail the authority to act for PDVSA. HR ¶ 47; BR2 ¶¶ 37–41.

execution of the relevant contract.  BR1 ¶ 51; BR2 ¶ 80.  Further, and for the reasons set out above, Munoz does not validly hold the office of *Procurador General*.  HR ¶ 71; BR2 ¶ 95.

### B.   The Trust Agreement Is Void Under Venezuelan Law Because It Was Not Approved By the National Assembly

The Trust Agreement is also void because it was not approved by the National Assembly. Under Venezuelan law, public contracts that qualify as "national interest contracts" must be approved by the National Assembly to be effective.  HR ¶ 89; BR1 ¶ 91; BR2 ¶ 132.

The National Assembly concluded in its resolution that the Trust Agreement is a national interest contract.  Ex. 2.  Under Venezuelan law, the National Assembly's resolution on this matter is ***conclusive*** and can be reversed only by a judgment of the Venezuelan Supreme Court. HR ¶ 91.  There has been no such judgment.  Accordingly, because the Trust Agreement was not approved by the National Assembly, it is null and void.  HR ¶ 99; BR1 ¶ 152; BR2 ¶ 146.

Even if the National Assembly had not issued a binding resolution, the Trust Agreement would constitute a national interest contract.  A contract is a national interest contract if: (a) it is "subscribed by the Executive Branch with foreign entities;" (b) its purpose is "strongly related to the national sovereignty;" and (c) it has "a deep impact on Venezuela's economy" and creates obligations to be paid in subsequent fiscal years.  HR ¶ 92; BR1 ¶¶ 120–30.

The Trust Agreement meets all these elements.  *First*, contracts with state-owned enterprises (like PDVSA) are considered contracts with "the Executive Branch," and the Trust is a "foreign entity" because it was created under New York law.  HR ¶ 94; BR1 ¶¶ 121–22. *Second*, the Trust's ostensible purpose, to recover compensation for injury to Venezuela's public property (i.e. PDVSA's assets), is "strongly related to national sovereignty."  HR ¶ 95; BR1 ¶¶ 123–24; Perez 142:14–144:6.  *Third*, the Trust has national economic significance because the Trust Agreement claims that injury to public property constituted "vast damage," HR ¶ 96; BR1

¶ 125–27, alleged to be "more than \$10 billion," ECF 459, at 1, and creates obligations (the contingent fees) that will be paid after the year the Trust Agreement was executed, BR1 ¶ 125. Thus, the Trust Agreement is a national interest contract under Venezuelan law, and the National Assembly's refusal to approve the Trust Agreement renders it void.  HR ¶ 99; BR1 ¶ 131.

## C.        The Act of State Doctrine Does Not Apply Here to Immunize the Trust

The Trust has argued that the act of state doctrine requires this Court to accept the validity of the assignment under Venezuelan law, but the Trust cannot carry its "burden of proving" the act of state applies doctrine here.  *See Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*, 129 F.3d 543, 550 (11th Cir. 1997).

At the outset, although the Trust claims the act of state doctrine applies to the assignment executed by Martinez and Munoz, it ignores entirely the National Assembly's resolution denouncing the Trust as "unconstitutional" under Venezuelan law.  That resolution is an official pronouncement of the Venezuelan legislature, which the United States recognizes as "the only legitimate legislature" in Venezuela.  *See Alfred Dunhill of London, Inc. v. Rep. of Cuba*, 425 U.S. 682, 695 (1976) (act of state doctrine would apply to a "statute, order, or resolution").[26]  As a result, even assuming the unlawful acts of Martinez and Munoz qualify as acts of state (they do not), the Court would be confronted with conflicting acts of a foreign sovereign—two officials purporting to take certain actions, and the National Assembly adopting a resolution squarely pronouncing *those very actions* ultra vires and unconstitutional.   In these circumstances, resolving that conflict presents a non-justiciable political question, under the case law cited in Part III(A) above, and this case should be dismissed.  But even without the National Assembly's resolution, the act of state doctrine does not apply here for two independent reasons.

_____

[26] See also Restatement (Second) of Foreign Relations § 443 cmt.i (stating "[t]he act of state doctrine applies to acts such as constitutional amendments, statutes, decrees and proclamations").

### 1.     The Act of State Doctrine Does Not Apply Because the Trust Agreement Was Not Completed in Venezuela

First, the act of state doctrine does not apply because PDVSA's alleged assignment was not "performed solely within [Venezuela's] own borders." *Chisholm & Co. v. Bank of Jamaica*, 643 F. Supp. 1393, 1403 (S.D. Fla. 1986); *Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1320 (11th Cir. 2018) (act of state doctrine applies to "acts a recognized foreign sovereign power *committed within its own territory*." (quotation marks omitted)).

For example, the act of state doctrine does not apply to a foreign sovereign's repudiation of a contract *to be performed* outside of the sovereign's territory. *See Chisholm*, 643 F. Supp. at 1403.[27]   The doctrine also does not apply to a foreign sovereign's expropriation of debts or accounts payable to the debtor in the United States.  *See Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.*, 392 F.2d 706, 715–16 (5th Cir. 1968) ("[W]hatever efforts were made by the Cuban government dealing with Tabacalera, these acts are to be recognized under the Act of State Doctrine only insofar as they were able to come to complete fruition within the dominion of the Cuban government.").[28]

---

[27] See also *Eckert Int'l, Inc. v. Gov't of Sovereign Dem. Rep. of Fiji*, 834 F. Supp. 167, 172 (E.D. Va. 1993) ("The 1991 contract explicitly noted that it was for services to be performed in this country, not Fiji. No doubt Eckert received instructions and payment in this country, as well as performed its services here. Fiji's argument to the contrary ignores the contract's essential nexus with this country, ignores that the contract was to be performed here, and focuses only on the situs of the decision to terminate or break the contract."); *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1032 (11th Cir. 2014) (declining dismissal based on international comity where "[t]he [contract] was negotiated and signed in the United States. Intelco completed its performance by presenting the telephone equipment for acceptance in Florida.  GDG, one of the parties to the litigation, is an American entity.").

[28] See also *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 521 (2d Cir. 1985) ("The Costa Rican banks conceded jurisdiction in New York and they agreed to pay the debt in New York City in United States dollars. Allied, the designated syndicate agent, is located in the United States, specifically in New York; some of the negotiations between the parties took place in the United States."); *Libra Bank Ltd. v. Banco Nacional De Costa Rica, S.A.*, 570 F. Supp. 870, 882 (S.D.N.Y. 1983) (holding the act of state doctrine did not apply where, under the terms of the loan agreement, Banco Nacional was to make all payments in New York).

This is not a close case under these legal principles.  Here, PDVSA purportedly hired New York-based lawyers to draft an assignment of the claims in this litigation to and create a New York trust, governed under New York law and managed by New York-based trustees, to receive the claims for the purpose of bringing litigation in the U.S. seeking relief under U.S. federal and state laws.  Indeed, the very name of the entity PDVSA is alleged to have created and assigned claims is the "PDVSA *U.S.* Litigation Trust."  As a result, there is no question the alleged assignment in this case was not "performed solely within [Venezuela's] own borders," *Chisholm*, 643 F. Supp. at 1403, and hence the act of state doctrine does not apply.[29]

Moreover, courts uniformly hold that the act of state doctrine does not apply to contracts that include a forum selection or choice of law clause specifying U.S. courts or U.S. law, as the Trust Agreement does here.  *See* TA §§ 9.3 (choice of law), 9.5 (forum selection); *Drexel Burnham Lambert Grp. v. Galadari*, 610 F. Supp. 114, 119 (S.D.N.Y. 1985) (act of state doctrine did not apply where defendants "negotiated, executed, and delivered the Note in New York, consented to the jurisdiction of this court and to the construction of the Note in accordance with New York law"),[30] *Libra*, 570 F. Supp. at 881–82 (act of state doctrine did not apply where,

---

[29] For this reason, the cases the Trust cited in previous filings are inapposite.  *See* ECF 221, at 28; ECF 459, at 7–8. In *First Merch. Collection Corp. v. Rep. of Argentina*, the Argentine government confiscated *in Argentina* "merchandise [that had] illegally entered Argentina."  190 F. Supp. 2d 1336, 1337 (S.D. Fla. 2002).  Similarly, in *Mezerhane v. Republica Bolivariana de Venezuela*, a Venezuelan national was seeking to challenge Venezuelan judicial decisions that expropriated his ownership interest in Venezuelan companies.  2013 WL 11322604, at *2 (S.D. Fla. 2013).   And in *Underhill v. Hernandez*, the plaintiff was detained by a Venezuelan revolutionary (later recognized by the United States) *in Venezuela*.  168 U.S. 250, 251 (1897). *Fogade v. ENB Rev. Trust* challenged the Venezuelan government's confiscation in Venezuela of stock in a Venezuelan company owned by Venezuelan nationals.  263 F.3d 1274, 1295, 1296 (11th Cir. 2001).   And in *Fed'l Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, one Russian government agency assigned trademark rights to another Russian government agency in Russia.  809 F.3d 737, 742, 744 (2d Cir. 2016).  The Court in *W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp. Int'l*, held the act of state doctrine *did not apply*.  493 U.S. 400, 409–10 (1990).
[30] Affirmed in relevant part by the Second Circuit. 777 F.2d 877, 881–82 (2d Cir. 1985).

under the loan agreement, "Banco Nacional consented to the jurisdiction of this court" and "also consented to have the letter agreement construed in accordance with New York law").

Because the putative assignment here was not completed wholly within Venezuela's own territory and expressly invokes U.S. jurisdiction, the act of state doctrine does not apply.

### 2. The Act of State Doctrine Does Not Apply Because the Trust Invoked the Jurisdiction of the United States Courts

This Court should also decline to apply the act of state doctrine because the Trust itself put the relevant Venezuelan law issues before this Court by filing this lawsuit in the United States. In *Grupo Protexa, S.A. v. All American Marine Slip*, for example, the Third Circuit refused to allow a plaintiff, who "chose to bring this action in the United States," "to obtain an outcome determinative advantage from its forum selection" by "activat[ing] the act of state doctrine and preclud[ing] inquiry into the validity of" government acts essential to establishing the plaintiff's claims. 1994 A.M.C. 1828, 1852 (3d Cir. 1994). Likewise, the Second Circuit has held "when a state comes into our courts and asks that our courts scrutinize its actions, the justification for application of the doctrine may well be significantly weaker." *Rep. of the Philippines v. Marcos*, 806 F.2d 344, 359 (2d Cir. 1986). These principles apply with even greater force here. It would be unfair in the extreme to permit the Trust to come into a U.S. court and seek relief under U.S. law, with the only basis for its claimed standing being a putative assignment, while "obtain[ing] an outcome determinative advantage" by "activat[ing] the act of state doctrine and preclud[ing] inquiry into the validity of" that very assignment.

## CONCLUSION

The Court should dismiss this case for lack of standing.

Respectfully submitted,

**GELBER SCHACHTER & GREENBERG,
P.A.**

SUSMAN GODFREY L.L.P.

*/s/ Gerald E. Greenberg*
Gerald E. Greenberg
Florida Bar No. 440094
ggreenberg@gsgpa.com
Adam M. Schachter
Florida Bar No. 647101
aschachter@gsgpa.com
Mikayla Espinosa
Florida Bar No. 1008227
mikaylaespinosa@gsgpa.com
1221 Brickell Avenue, Suite 2010
Miami, Florida 33131
Telephone: (305) 728-0950
Facsimile: (305) 728-0951
E-service: efilings@gsgpa.com

*Counsel for Vitol Inc., Vitol Energy (Bermuda)
Ltd., and Antonio Maarraoui*

*/s/ Michael C. Kelso*
Neal S. Manne
*Admitted Pro Hac Vice*
nmanne@susmangodfrey.com
Alexander L. Kaplan
*Admitted Pro Hac Vice*
akaplan@susmangodfrey.com
Weston O'Black
*Admitted Pro Hac Vice*
woblack@susmangodfrey.com
Michael C. Kelso
*Admitted Pro Hac Vice*
mkelso@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Michael Gervais
*Admitted Pro Hac Vice*
mgervais@susmangodfrey.com
1301 Avenue of the Americas
32nd Floor
New York, NY 10019-6023
Telephone: (202) 336-8330

*Counsel for Vitol Inc., Vitol Energy (Bermuda)
Ltd., and Antonio Maarraoui*

31

**REED SMITH LLP**

*/s/ Edward M. Mullins*
Edward Mullins, Esq.
Florida Bar No. 863920
emullins@reedsmith.com
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ William A. Burck*
William A. Burck, Esq.
*Admitted Pro Hac Vice*
williamburck@quinnemanuel.com
Ethan Glass, Esq.
*Admitted Pro Hac Vice*
ethanglass@quinnemanuel.com
Adam B. Wolfson, Esq.
*Admitted Pro Hac Vice*
adamwolfson@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Attorneys for Defendant Trafigura Trading, LLC*

**PODHURST ORSECK, P.A.**

*/s/Stephen F. Rosenthal*
Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458
srosenthal@podhurst.com
Robert C. Josefsberg, Esq.
Florida Bar No. 040856
rjosefsberg@podhurst.com
One S.E. 3rd Ave., Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile: (305) 358-2382

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**

*/s/ Bruce Birenboim*
Bruce Birenboim, Esq.
*Admitted Pro Hac Vice*
bbirenboim@paulweiss.com
Brad S. Karp, Esq.
*Admitted Pro Hac Vice*
bkarp@paulweiss.com
Jessica S. Carey, Esq.
*Admitted Pro Hac Vice*
jcarey@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Adam B. Schwartz, Esq.
*Admitted Pro Hac Vice*
aschwartz@paulweiss.com
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

*Attorneys for Defendants Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Sergio de la Vega, and Luis Alvarez*

**GUNSTER**

*/s/ Jorge Guttman*
Jorge D. Guttman, Esq.
Florida Bar No. 015319
jguttman@gunster.com
Jonathan H. Kaskel, Esq.
Florida Bar No. 52718
jkaskel@gunster.com
600 Brickell Avenue Suite 3500
Miami, Florida 33131
Telephone: (305) 376-6000
Facsimile: (305) 376-6010

**MAYER BROWN LLP**

*/s/ Mark W. Ryan*
Mark W. Ryan, Esq.
*Admitted Pro Hac Vice*
mryan@mayerbrown.com
Adam L. Hudes, Esq.
*Admitted Pro Hac Vice*
ahudes@mayerbrown.com
Stephen M. Medlock, Esq.
*Admitted Pro Hac Vice*
smedlock@mayerbrown.com
1999 K Street NW
Washington, D.C. 20006-1101
Telephone: (202) 263-3312
Facsimile: (202) 263-5312

Michael P. Lennon, Jr.
*Admitted Pro Hac Vice*
mlennon@mayerbrown.com
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone: (713) 238-2667
Facsimile: (713) 238-4613

*Attorneys for Defendant*
*Lukoil Pan Americas LLC*

**CARLTON FIELDS JORDEN BURT, P.A.**

*/s/ Benjamine Reid*
Benjamine Reid, Esq.
Florida Bar No. 183522
breid@carltonfields.com
Clifton R. Gruhn, Esq.
Florida Bar No. 72542
cgruhn@carltonfields.com
Miami Tower
100 S.E. Second St., Ste. 4200
Miami, Florida 33131-2113
Telephone: (305) 539-7228
Facsimile: (305) 530-0055

**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**

*/s/ David M. Burkoff*
David M. Burkoff, Esq.
*Admitted Pro Hac Vice*
dburkoff@huntermaclean.com
Allan C. Galis, Esq.
*Admitted Pro Hac Vice*
agalis@huntermaclean.com
Heather H. Lundy, Esq.
*Admitted Pro Hac Vice*
hlundy@huntermaclean.com
200 E. Saint Julian Street
P.O. Box 9848
Savannah, GA 31412-0048
Telephone: (912) 236-0261
Facsimile: (912) 236-4936

*Attorneys for Defendants Colonial Group, Inc.,*
*Colonial Oil Industries, Inc., and Paul Rosado*

**HOLLAND & KNIGHT LLP**

*/s/ Israel J. Encinosa*
Alex M. Gonzalez
Florida Bar No. 991200
alex.gonzalez@hklaw.com
Israel J. Encinosa
Florida Bar No. 0046083
israel.encinosa@hklaw.com
Brian A. Briz
Florida Bar No. 657557
brian.briz@hklaw.com
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

David Kully
*Admitted Pro Hac Vice*
david.kully@hklaw.com
800 17th Street N.W.
Suite 1100
Washington, DC 20006
Telephone: (202) 955-3000
Facsimile: (202) 955-5564

*Attorneys for Defendants Helsinge, Inc., Helsinge Ltd., Helsinge Holdings, LLC, Daniel Lutz, and Luis Liendo*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/ Kimberly Ann Pathman*
Kimberly A. Pathman
Florida Bar No. 118844
kpathman@akingump.com
Mark J. MacDougall
*Admitted Pro Hac Vice*
mmacdougall@akingump.com
Thomas P. McLish
*Admitted Pro Hac Vice*
tmclish@akingump.com
Stacey H. Mitchell
*Admitted Pro Hac Vice*
shmitchell@akingump.com
Connor Mullin
*Admitted Pro Hac Vice*
cmullin@akingump.com
1333 New Hampshire Avenue NW
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Attorneys for Defendants Francisco Morillo and Leonardo Baquero*

**MARK MIGDAL & HAYDEN**

*/s/ Etan Mark*
Etan Mark, Esq.
Florida Bar No. 720852
etan@markmigdal.com
Donald J. Hayden, Esq.
Florida Bar No. 097136
don@markmigdal.com
Lara O'Donnell Grillo, Esq.
Florida Bar No. 37735
lara@markmigdal.com
eservice@markmigdal.com
80 SW 8th Street
Suite 1999
Miami, FL 33130
Telephone: 305-374-0440

*Attorneys for Defendant John Ryan*

**CLARKE SILVERGLATE, P.A.**

/s/ Spencer Silverglate
Spencer H. Silverglate
Florida Bar No. 769223
ssilverglate@cspalaw.com
mpedraza@cspalaw.com
Francisco Ramos, Jr.
Florida Bar No. 114766
framos@cspalaw.com
socd@cspalaw.com
cdeleon@cspalaw.com
799 Brickell Plaza, Suite 900
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile: (305) 377-3001

**PORTER HEDGES LLP**

/s/ Stephen H. Lee
Stephen H. Lee, Esq.
*Admitted Pro Hac Vice*
slee@porterhedges.com
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: 713-226-6686

*Attorneys for Defendant Maximiliano Poveda*

**FOWLER WHITE BURNETT, P.A.**

/s/ Alice K. Sum
Alice K. Sum
Florida Bar No. 354510
asum@fowler-white.com
Stephanie M. Chaissan
Florida Bar No. 60813
schaissan@fowler-white.com
Lindsay M. Massillon
Florida Bar No. 92098
lmassillon@fowler-white.com
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

*Attorneys for Defendant BAC Florida Bank*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 23, 2018, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Florida, using the electronic filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/Gerald E. Greenberg*
Gerald E. Greenberg

36