UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

PDVSA US LITIGATION TRUST

           Plaintiff,

  v.

LUKOIL PAN AMERICAS LLC; LUKOIL PETROLEUM LTD.; COLONIAL OIL INDUSTRIES, INC.; COLONIAL GROUP, INC.; GLENCORE LTD.; GLENCORE INTERNATIONAL A.G.; GLENCORE ENERGY UK LTD.; MASEFIELD A.G.; TRAFIGURA A.G.; TRAFIGURA TRADING LLC; TRAFIGURA BEHEER B.V.; VITOL ENERGY (BERMUDA) LTD.; VITOL S.A.; VITOL, INC.; FRANCISCO MORILLO; LEONARDO BAQUERO; DANIEL LUTZ; LUIS LIENDO; JOHN RYAN; HELSINGE HOLDINGS, LLC; HELSINGE, INC.; HELSINGE LTD., SAINT-HÉLIER; WALTROP CONSULTANTS, C.A.; GODELHEIM, INC.; HORNBERG INC.; SOCIETE DOBERAN, S.A.; SOCIETE HEDISSON, S.A.; SOCIETE HELLIN, S.A.; GLENCORE DE VENEZUELA, C.A.; JEHU HOLDING INC.; ANDREW SUMMERS; MAXIMILIANO POVEDA; JOSE LAROCCA; LUIS ALVAREZ; GUSTAVO GABALDON; SERGIO DE LA VEGA; ANTONIO MAARRAOUI; CAMPO ELIAS PAEZ; PAUL ROSADO; BAC FLORIDA BANK; EFG INTERNATIONAL A.G.; BLUE BANK INTERNATIONAL N.V.

           Defendants.

Case No. 1:18-CV-20818 (DPG)

**REVISED SUPPLEMENTAL OPINION OF EXPERT WITNESS ROGELIO PEREZ PERDOMO**

PLAINTIFF'S EXHIBIT 36

**SUPPLEMENTAL OPINION OF EXPERT WITNESS ROGELIO PEREZ PERDOMO**

For the reasons, among others, explained in my opinion dated April 9, 2018, and this supplemental opinion, and based on my review of documents produced by the parties and depositions concerning standing, it is my opinion that the PDSVA U.S. Litigation Trust Agreement (the "Agreement) is valid and binding under Venezuelan law.

**1.     On the authority of the Constitutional Chamber of the Venezuelan Supreme Court of Justice (the "Constitutional Chamber")**

1.1.

Venezuela is a modern civil law country, where the supremacy of the current Venezuelan constitution, which came into effect on December 20, 1999 (the "Constitution"), is expressed in the Constitution itself (Article 7) and is universally accepted. There is also a hierarchy of legal rules. After the Constitution, the highest category is organic legislation, then ordinary legislation, and then all other legal norms.

1.2.

Pursuant to Article 335 of the Constitution, the Constitutional Chamber is charged with overseeing, and is empowered to enforce, "constitutional supremacy", in its role as the "maximum and ultimate interpreter" of the Constitution and as part of a "system of control of constitutionality".  This system, established in the Constitution, is "much broader than the prior ones enshrined in Venezuelan law", and is effected through the Constitutional Chamber's power, by virtue of Article 336 of the Constitution, "to decree the nullity of laws that are unconstitutional".  Moreover, Article 336 also establishes that the Constitutional Chamber's decisions concerning "the scope of constitutional standards and principles" are "binding on all the Courts of the Republic including the other Chambers of the Supreme Court".[1]  All of the

---

[1] Badell-Madrid, Rafael: "*Competencias de la Sala Constitucional*". Available at: http://www.badellgrau.com/?pag=27&ct=112

foregoing quotations in this paragraph are from the published works of the Defendants' expert, Dr. Rafael Badell-Madrid, and I agree with them.

**2.      On "national interest contracts"**

2.1.

In its capacity as the ultimate arbiter of the Constitution, the Supreme Court (Constitutional Chamber, decision 2241. Sept 2002. Case Andrés Velázquez and others) has defined contracts of national interest as those that are executed by the National Executive and that relate to purposes of national interest, with a commitment of governmental payment obligations for several years. Venezuelan legal authors agree that this is the law in Venezuela. Lares Martinez[2] explains that the National Executive implies the President of the Republic in Council of Ministers. Caballero Ortiz[3] cites as examples of this type of contract railway-construction and mining entitlements.  Although some authors question if this definition is a good one, there is no doubt that the law in Venezuela is as stated above. For example, Dr. Allan Brewer-Carías, whom Defendants' expert cites repeatedly, accepts this is the law and states, by way of example, that under this definition a contract executed by PDVSA cannot be a national interest contract.  Dr. Brewer- Carías does not like this definition, but he recognizes this is the law.[4]

**3.      On the *Procurador General de la República***

3.1.

Dr. Badell-Madrid states that the Agreement is invalid because certain procedural requirements contained in Article 12 and Article 13 of the *Ley Orgánica de la Procuraduría General de la*

---

[2] Lares Martínez, Eloy: *Manual de derecho administrativo*. Caracas. Universidad Central de Venezuela, Caracas, 2001.  Page 284.

[3] Caballero Ortíz, Jesús---NOMBRE DEL ARTICULO- en Libro Homenaje Universidad Central de Venezuela, Facultad de Ciencias Jurídicas y Políticas 20 años Especialización en Derecho Administrativo. Tribunal Supremo de Justicia Colección Libros Homenaje No 2. Caracas, Venezuela 2001 p 144

[4] Brewer-Carías, Allan: "*Nuevas consideraciones sobre el régimen jurídico de los contratos de estado en Venezuela*". Available at http://allanbrewercarias.com/wp-content/uploads/2007/08/527.-489.
"En consecuencia, de acuerdo con la doctrina del Tribunal Supremo sobre el artículo 150 de la Constitución de 1999, un contrato suscrito por ejemplo por Petróleos de Venezuela (PDVSA) no podría considerarse como un contrato de interés público nacional. . ." . ("Consequently, in accordance with the doctrine of the Supreme Court regarding Article 150 of the 1999 Constitution, a contract signed, for example, by Petróleos de Venezuela (PDVSA) could not be considered a contract of national public interest…" ).

2

*República* were not followed. However, by its express terms Article 12 is not applicable to the Agreement because it applies only to "contracts subscribed by the Republic that establish arbitration clauses", and the Agreement was not "subscribed by the Republic".

3.2.

In furtherance of the attainment of "the objectives contemplated in the previous Article" 12, Article 13 sets forth certain additional procedures that must be followed with respect to contracts described in, and subject to, Article 12. Therefore, contrary to Dr. Badell-Madrid's assertion, no explicit opinion of the Procurador General on the arbitration clause was required. To the extent approval by the Procurador General might be called for, his signature and "VISTO" stamp show his concurrence that the Agreement is lawful. Moreover, in the ordinary course of business PDVSA regularly executes contracts that contain arbitration clauses and participates in arbitration proceedings involving many billions of dollars, none of which are considered to be subject to Articles 12 and 13.

3.3.

Additionally, Dr. Badell Madrid's argument has the flaw of considering that a fault in the arbitration clause invalidates the entire contract. This is taking the part as a whole, a fallacious argument.

4. **On the National Assembly and the Acuerdo of April 24th, 2018**

4.1.

On April 24, 2018, the National Assembly published an '*acuerdo*' (the "Acuerdo") regarding the Agreement and the PDVSA U.S. Litigation Trust (the "Trust") established pursuant to the Agreement.[5] The Acuerdo declares that the Trust is unconstitutional due to certain asserted procedural defects in its execution. The National Assembly cannot invalidate a contract by means of legislation. Invalidating a contract is a matter for a court of law[6], and when the

---

[5] See document numbered Helsinge-Standing-00052-57.
[6] This is a fundamental principle in civil law countries, arising from the division of powers. This principle was applied by the Sala de Casacion Civil, Tribunal Supremo de Justicia, in the decision RC 01342 of November 15, 2004 (Case Flor de la Chiquinquira Caldera de Ramirez). In this decision the Civil Chamber established that: "Es principio general y universal del derecho contractual la autonomía de la voluntad de las partes, entendiéndose como tal que

3

grounds for invalidation depend on the Constitution, the Constitutional Chamber is the ultimate authority. There have been no court proceedings in Venezuela challenging the constitutionality of the Agreement or a decision of the Constitutional Chamber on the issue.

4.2.

The National Assembly's Acuerdo, in clauses 6 and 7, says that Dr. Reinaldo Enrique Muñoz Pedroza is not a validly-acting Procurador General de la República and is a usurper of the Procurador General's functions. These statements are inconsistent with Article 49 of the *Ley Orgánica de la Procuraduría General de la República*, which establishes that in case of the Procurador General's temporary or permanent absence, the Viceprocurador General becomes acting Procurador General. This interim situation continues until the appointment of a new Procurador General by the President of the Republic with the agreement of the National Assembly.[7] In accordance with law, Dr. Muñoz Pedroza was appointed Viceprocurador General on December 19, 2014 by the acting Procurador General at that time, Dr. Manuel Enrique Galindo Ballesteros. The appointment of Dr. Muñoz Pedroza took effect on December 22, 2014, when it was published in the Official Gazette.[8] Also on December 22, 2014, the National Assembly issued an '*acuerdo*' in connection with the appointment of Dr. Galindo Ballesteros to the position of Contralor [Controller] General de la República, which was published in the Official Gazette and took effect that same day.[9] When Dr. Galindo Ballesteros took office in the

---

éstas son libres para crear, modificar, reglamentar o extinguir sus relaciones jurídicas de carácter contractual. No obstante, esa libertad contractual no es ilimitada, y las partes o un tercero pueden solicitar ante el órgano jurisdiccional su nulidad si contraviene las leyes de la República, el orden público o las buenas costumbres". ("The autonomy of the will of the parties is a general and universal principle of contract law, understood to mean that they are free to create, modify, regulate or extinguish their legal relationships of a contractual nature. However, that contractual liberty is not unlimited, and the parties or a third party can apply to the court for nullity if it contravenes the laws of the Republic, public order or good morals.").

[7] *Ley Orgánica de la Procuraduría General de la República*. Artículo 49. "Las faltas del Procurador o Procuradora General de la República podrán ser absolutas o temporales… Las faltas temporales . . . y absolutas serán suplidas por el Viceprocurador o la Viceprocuradora General de la República…". ("The absence of the Procurador General de la República could be permanent or temporary. . . Temporary. . .and permanent absences will be filled by the Viceprocurador General . . . ").

[8] *Resolución del Procurador General de la República* N° 078/2014 of December 19 2014, published in *Gaceta Oficial de la República Bolivariana de Venezuela* ("*Gaceta Oficial*") N° 40.567 on December 22, 2014.

[9] Acuerdo of the Asamblea Nacional of December 22, 2014, published in *Gaceta Oficial* N° 40.567 on December 22, 2014.

4

new position, Dr. Muñoz Pedroza became acting Procurador General in accordance with Article 49.

4.3.

This sequence of events shows that the National Assembly was aware at the time that Dr. Muñoz Pedroza would become acting Procurador General. When the National Assembly issued its '*acuerdo*' in connection with the appointment of Dr. Galindo Ballesteros to the position of Contralor General, it did so knowing he had just appointed Dr. Muñoz Pedroza as Viceprocurador, who would succeed him as acting Procurador General. Because of ongoing political conflict between the President of the Republic and the National Assembly, no vote has been taken on approval (or disapproval) of Dr. Muñoz Pedroza as Procurador General. The result is that pursuant to Article 49 of the *Ley Orgánica de la Procuraduría General de la República*, Dr. Muñoz Pedroza was properly exercising the powers of Procurador General de la República in July and August 2017, when the Agreement was made and executed, and he continues to do so as acting Procurador General.

**5.     On the legal standing of PDVSA's bylaws**

5.1.

PDVSA is public corporation and its bylaws are established by executive decree.[10] As such, the bylaws rank below ordinary legislation in the hierarchy of Venezuelan legal rules. PDVSA's bylaws cannot be enforced if they are contrary to any organic or ordinary legislation and must be interpreted consistently with higher legislation. As noted, the Minister of the People's Power for Petroleum is empowered by organic and other laws higher than the bylaws to act on behalf of the 100% shareholder of PDVSA. For example, Article 8 of the *Ley Orgánica de Hidrocarburos* confers ample power to the Minister of the People's Power for Petroleum for planning and control of all activities relating to PDVSA.[11] The bylaws must be read consistently

---

[10] Estatutos de la Empresa Estatal Petróleos de Venezuela Sociedad Anónima (PDVSA bylaws) were approved by an executive decree on December 10, 2002, published in *Gaceta Oficial* N° 37.588 on December 10, 2002.

[11] Artículo 8. "Corresponde al Ministerio de Energía y Petróleo la formulación, regulación y seguimiento de las políticas y la planificación, realización y fiscalización de las actividades en materia de hidrocarburos… En tal sentido, el Ministro del Poder Popular de Petróleo es el órgano nacional competente en todo lo relacionado con la

5

with this higher legislation, and considering that the 100% shareholder appoints the Board of Directors it is clear that the 100% shareholder, acting through the Minister of the People's Power for Petroleum, is in complete control of PDVSA.

5.2.

Dr. Badell Madrid is reading PDVSA's bylaws incorrectly. The seventh clause of the bylaws establishes that "the supreme direction and administration" of PDVSA "reside in [its] Shareholder Assembly".[12] The fourteenth clause of the bylaws authorizes the Shareholder Assembly to create operating companies for "activities and business dealings inherent in the petroleum business".[13]  The pursuit of litigation arising from business operations is unquestionably a component of the "direction and administration" of a large corporation like PDVSA. Accordingly, the Minister of the People's Power for Petroleum, who represents 100% of the shares of PDVSA and constitutes PDVSA's Shareholder Assembly under the bylaws, had the power and authority to execute the Agreement to facilitate PDVSA's enforcement of claims through litigation.  Moreover, although the twenty-seventh clause of PDVSA's bylaws states that its "Board of Directors shall exercise the supreme administration of the company's business affairs",[14]  this must be understood in the context of the entire organization of PDVSA and the Venezuelan legal order.   Because, as discussed above, the Minister of the People's Power for Petroleum has the power to exercise the Republic's rights in the Shareholder Assembly, that power ranks above the delegation to the Board of Directors of administrative authority with respect to PDVSA's business affairs[15].

---

administración de los hidrocarburos y en consecuencia tiene la facultad de inspeccionar los trabajos y actividades inherentes a los mismos, así como las de fiscalizar las operaciones que causen los impuestos, tasas o contribuciones establecidos en esta Ley y revisar las contabilidades respectivas". ("The Ministry of Energy and Petroleum is responsible for the formulation, regulation and monitoring of policies and the planning, execution and fiscalization of activities related to hydrocarbons ... In this sense, the Minister of the People's Power for Petroleum is the competent national body in all matters related to the administration of hydrocarbons and consequently has the power to inspect the work and activities inherent to them, as well as to fiscalize the operations that cause the taxes, fees or contributions established under this Law and to review the respective accounts.").

[12] "La suprema dirección y administración de la sociedad radica en la Asamblea".
[13] ". . . las actividades y negocios inherentes a la industria petrolera".
[14] "La Junta Directiva ejercerá la suprema administración de los negocios de la sociedad. . .".
[15] *Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública*. Article 78: "It is in the power of cabinet ministers… 14. To represent the Republic's shares in the public corporations that are under their

5.3.

Mr. Nelson Martínez, who signed the Agreement, was arrested on serious charges on November 30, 2017. The Venezuelan political scene is complex, and my understanding of the Agreement would indicate that its purpose is to insulate the recovery of litigious rights from the ups and downs of political conflict in Venezuela. When Mr. Martinez executed the Agreement, he had full authority to act as the Minister of the People's Power for Petroleum. Mr. Martinez's arrest some months later and his current status do not affect the validity of the Trust or the Agreement, which was executed and in effect when he was duly appointed and serving as the Minister of the People's Power for Petroleum. Under the Venezuelan Constitution, the only institution with power to declare a contract invalid is the Courts. The Trust and the Agreement have not been challenged in Venezuelan courts and there is no decision that would invalidate them.

Caracas, July 10th, 2018

*[signature]*

Rogelio Pérez Perdomo

---

supervision and practice the derived share-holders' control". (14. "Ejercer la representación de las acciones pertenecientes a la República en las empresas del Estado que se les asigne, así como el correspondiente control accionario.").

7

**LIST OF MATERIALS CONSIDERED**

1. Plaintiff's Productions Bates stamped PDVSATRUST-0000001-PDVSATRUST-0001029.
2. Defendants' Productions Bates stamped Helsinge-Standing-00001-Helsinge-Standing-00057.
3. PDVSA U.S. Litigation Trust Agreement, dated July 27, 2017.
4. Amended Complaint, dated March 5, 2018 (Dkt. No. 12).
5. Affidavit of Rafael Badell Madrid, dated March 26, 2018 (Dkt. No. 161-2).
6. Legal Opinion of Rafael Badell Madrid, dated April 5, 2018.
7. Deposition Transcript of Trafigura Trading, LLC (Corey Prologo), dated May 15, 2018, including Exhibit 1.
8. Deposition Transcript of Boies Schiller Flexner LLP (David Boies), dated May 25, 2018, including Exhibits 1-7.
9. Deposition Transcript of Algamex (David Evans), dated June 8, 2018, including Exhibits 8-11.
10. Deposition Transcript of Daniel Lutz, dated June 11, 2018.
11. Deposition Transcript of Algamex (William Duker), dated July 5, 2018, including Exhibits 12-13.