IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORPORATION,

        Plaintiff,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA.,

        Defendant.

C.A. No. 17-mc-00151-UNAC

## DECLARATION OF JOSE IGNACIO HERNANDEZ

I, Jose Ignacio Hernandez, under penalty of perjury, do hereby declare:

### I.  QUALIFICATIONS

1.  I am a Venezuelan citizen.  I have a Law Degree (1997), with the mention *summa cum laude,* granted by the Universidad Católica Andrés Bello (Caracas, Venezuela).  I have an Advanced Study Diploma (2001) by the Universidad Complutense de Madrid, and a Doctoral Degree, *cum laude,* granted by that University in 2002.

2.  I am a tenured professor of Administrative Law at the Universidad Central de Venezuela (Caracas, Venezuela).  I am also a Professor of Administrative Law and Constitutional Law Postgraduate Studies at the Universidad Católica Andrés Bello.  I am the Chairman of the Public Law Center of the Universidad Monteávila (Caracas, Venezuela), and a researcher of the Legal Research Institute of the Universidad Católica Andrés Bello.  I was a visiting researcher at Georgetown University (2014).

3.  I am the Director of the Revista Electrónica de Derecho Administrativo (Electronic Journal of Venezuelan Administrative Law) and the Director of the Revista de la Facultad de Derecho de la Universidad Católica Andrés Bello (Universidad Católica Andrés Bello Law



1

Review).  I am a member of the Ibero-American Association of Regulation (ASIER) and of the International Institute of Administrative Law and the Ibero-American Forum of Administrative Law (FIDA).

4.      I have written fourteen books related to Administrative and Constitutional Law, and more than one hundred articles in those fields published in Venezuela, Colombia, Peru, Brazil, Argentina, Chile, México, Dominican Republic, the United States of America, Spain, Italy and Poland.  Part of my research has been about oil regulation in Venezuela, including my 2016 book *El pensamiento jurídico venezolano en el Derecho de los Hidrocarburos* (*The Venezuelan legal principles in the Hydrocarbons Law*).  I have attached my curriculum vitae to this Report at Appendix A.

## II.    ASSIGNMENT

5.      I have been instructed by Gibson, Dunn & Crutcher LLP on behalf of Crystallex International Corporation ("Crystallex") to provide a report in connection with Plaintiff Crystallex Corporation's Motion for an Order Authorizing the Issuance of a Wirt of Attachment *Fieri Facias* Pursuant to 28 U.S.C. § 1610(c).  In the context of that Motion, I have been asked to opine on the relationship between PDVSA and the Bolivarian Republic of Venezuela ("Venezuela," "Government" or "State") under Venezuelan Law, and whether PDVSA operates as a separate entity from the Venezuelan Government.  In particular, I have been asked to consider the following four (4) questions:

1)      Did Venezuela cause PDVSA's incorporation?

2)      Does Venezuela exercise day-to-day control over PDVSA?

3)      Do Venezuela and PDVSA share common directors and officers, or common business departments?

4)      Is Venezuela the real beneficiary of PDVSA's activities?

## III.   INFORMATION CONSIDERED

6.      To address the questions presented, I have reviewed the Venezuelan Constitution, statutes, official Government documents, tribunal decisions and court judgments, and scholars' opinions concerning the relationship between Venezuela and PDVSA under Venezuelan law.  I have listed the sources upon which I rely at Appendix B.

## IV.   SUMMARY OF OPINION

7.      Venezuela and PDVSA are one and the same as a matter of Venezuelan law.  I have reached this conclusion for a number of reasons, including that:

- PDVSA was created by Presidential Decree, under the Nationalization Policy of 1975. The Venezuelan Constitution affirms that PDVSA is a Venezuelan State entity.

- PDVSA's Articles of Incorporation set out that PDVSA is organized as a State Holding Company, and that Venezuelan Government officials have control over PDVSA's day-to-day business operations.  For example, PDVSA is represented by a Board of Directors that is designated by Presidential Decree.  PDVSA's vice-presidents are also designated by Presidential Decree.  The Government also passes decrees and resolutions to direct PDVSA to perform certain activities to achieve the Government's objectives.

- Several Government Ministers are members of PDVSA's Board of Directors.  For example, Delcy Eloina Rodríguez Gómez, Rodolfo Clemente Marco Torres, and Ricardo Menéndez all serve on PDVSA's Board of Directors and hold high level Government positions (though, Ms. Gómez recently resigned as Venezuela's Foreign Affairs Minister to run for a position in "Venezuela's Constituent Assembly," of which she was recently appointed President).

- The Government uses PDVSA to achieve its social and political objectives, both domestically (*e.g.*, through FONDEN) and abroad (*e.g.*, through Petrocaribe). Venezuela also uses PDVSA to expropriate foreign investments.

- Venezuela's Supreme Court has found that PDVSA enjoys all the "privileges" of the Republic and that "it is beyond doubt, as is affirmed in the Constitution, that the company is part of the general structure" of the Venezuelan Government.

## V.  VENEZUELA CAUSED PDVSA'S INCORPORATION

### A.  PDVSA Was Created By Presidential Decree Under The Nationalization Policy Of 1975

8.  The creation of PDVSA as a company owned by the Venezuelan State should be understood in the context of the Government's nationalization of the oil industry in the mid-1970s.

9.  The Organic Law that Reserves the Hydrocarbons Industry and Commerce ("Nationalization Law") was enacted in 1975, and entered into force the following year.[1] Pursuant to the Nationalization Law, all hydrocarbon activities (including oil-related activities) were reserved to the State.[2] Consequently, only the State was allowed to conduct such activities.[3]

10.  Article 6 of the Nationalization Law stated that the National Executive was in charge of the management and operation of the reserved activities through State companies.[4] Those companies are governed by the Nationalization Law and its regulations, by their own statutes, by the regulations of the National Executive, and by Private Law. The companies are also required to pay taxes and make other contributions required of concessionary companies.[5]

---

[1] *See* Official Gazette N° 1.769 extraordinary, dated August 29, 1975 ("Nationalization Law").

[2] *See* Nationalization Law, Article 1.

[3] *See* Nationalization Law, Article 5. According to this provision, "the State will develop the activities mentioned in article 1 directly though the National Executive or through entities of its own property."

[4] *See* Nationalization Law, Article 6.

[5] *See* Nationalization Law, Article 7.

11.     Accordingly, a report of the "Presidential Commission for the Oil Reversal" concluded that "[t]he creation of the National Oil Administration . . . is necessary in order to control the nationalized oil industry and adapt it to the highest interests of the country."[6]

12.     The "National Oil Administration" was conceived as a group of state-owned companies with technical autonomy in the execution of oil operations but under the total control of the National Government. For this purpose, and pursuant to the Nationalization Law, PDVSA was created by Presidential Decree N° 1.123 of August 30, 1975[7] as a State Holding Company to "comply with and implement the policy on hydrocarbons enacted by the National Executive through the Ministry of Mines and Hydrocarbons for the activities that are entrusted to it."[8] PDVSA controls the operation of its affiliates that were in charge of the exploration and exploitation activities.[9]

13.     PDVSA is considered a State company pursuant to the Public Administration Organic Law ("LOAP").[10] According to the LOAP, while PDVSA nominally has its own legal personality, its activities are controlled by the National Executive Branch by "control agencies or entities."[11] In addition to these controls, which are common to all State-owned companies, PDVSA and its affiliates are subject to governmental controls specific to oil regulation. As I will explain in the

---

[6] Report of the "Presidential Commission for the Oil Reversal," *Archivo de Derecho Público y Ciencias de la Administración, Régimen jurídico de las nacionalizaciones*, Vol. 2, Universidad Central de Venezuela (1974), pp. 565 *et seq*.

[7] *See* Decree Nº 1.123 (Official Gazette Nº 1.770 extraordinary, dated August 30, 1975) ("Decree Nº 1.123"), Article 1.

[8] *Id*.

[9] *See id.*, Article 2.

[10] *See* Official Gazette Nº 6.147 extraordinary, dated November 17, 2014 ("LOAP").

[11] LOAP, Articles 119, 120.

following paragraphs, under these special controls, PDVSA must act as an instrument to fulfill the oil policies of the Government.

14.     The 1975 Nationalization Law was repealed by the Organic Law of Hydrocarbons of 2001 (the "2001 Hydrocarbons Organic Law"). That law was then reformed in 2006 (the "2006 Hydrocarbons Organic Law").[12] The 2006 Hydrocarbons Organic Law again required that the "primary activities" related to hydrocarbons (exploration and exploitation) should be performed through PDVSA and its affiliates.[13] And, Decree N° 3.299, discussed further below, confirms that PDVSA is mandated to perform the "primary activities" of the Government and "comply with and implement the policy on hydrocarbons enacted by the National Executive Branch."[14]

**B.      The Venezuelan Constitution Affirms PDVSA Is A Venezuelan State Entity**

15.     PDVSA's role as the State entity responsible for hydrocarbons exploration and exploitation is ratified in Article 303 of the Venezuelan Constitution.[15]   Article 303 states that "[f]or reasons of economic and political sovereignty and national strategy, the State shall retain all shares of [PDVSA]."[16]

16.     The Venezuelan Supreme Court has recognized the "importance of PDVSA from the economic, social and constitutional viewpoint"[17] and has found that "although [PDVSA] is a

---

[12]  *See* Official Gazette N° 38.493, dated August 4, 2006.

[13]  *See* 2006 Hydrocarbons Organic Law, Articles 9, 22.

[14]  Decree N° 3.299 that adopted the Articles of Incorporation of PDVSA (Official Gazette Number 38.081, dated December 7, 2004) ("Decree N° 3.299" or "PDVSA Articles of Incorporation"), Article 1; *see also* 2006 Hydrocarbons Organic Law, Article 8.

[15]  Constitution of the Bolivarian Republic of Venezuela (Official Gazette N° 5.908 extraordinary, dated February 19, 2009) ("Venezuela Constitution").

[16]  *Id*. at Article 303.

[17]  Constitutional Chamber of the Supreme Tribunal of Justice, Decision N° 814, dated October 25, 2016 ("Decision N° 814").

company constituted and organized as a corporation, there is no doubt, **and this is reaffirmed by the Constitution of the Bolivarian Republic of Venezuela,** that it falls within the framework of the general structure of [the] National Public Administration."[18]   That same Court considered PDVSA's activities to "play a fundamental role in the national economy, and that the possible allocation of its assets ultimately affects the Nation's assets,"[19] and that PDVSA has all the "privileges" of the Republic.[20]

17.     Further, just last year, the Supreme Court halted an investigation against PDVSA in part due to the "serious or difficult to repair injuries that would be caused to [PDVSA] and even to the Republic" had the investigation continued.[21]   This means that PDVSA and its affiliates are equivalent to the administrative agencies of the Government.

## VI.     VENEZUELA EXERCISES DAY-TO-DAY CONTROL OVER PDVSA

18.     Decree N° 3.299 contains PDVSA's Articles of Incorporation and sets out PDVSA's corporate structure.[22]   As per that Decree, PDVSA is organized as a State Holding Company, and Venezuelan Government officials have control over its day-to-day business operations.  For example, the Articles of Incorporation explain that PDVSA's purpose is to plan, coordinate and supervise the activities of its affiliates and subsidiaries that directly conduct the exploration,     exploitation,     transportation,     manufacturing,     refinement,     storage     and

---

[18]  Constitutional Chamber of the Supreme Tribunal of Justice, Decision N° 464, dated March 18, 2002 (emphasis added).

[19]  Chamber of Social Cassation, Supreme Tribunal of Justice, Decision N° 1481, dated October 2, 2008.

[20]  Constitutional Chamber of the Supreme Tribunal of Justice, Decision N° 281, dated February 26, 2007.

[21]  Decision N° 814, *supra* n. 17.

[22]  *See generally* PDVSA Articles of Incorporation.

commercialization of oil and other hydrocarbons.[23]  But that mission must be achieved under the "**guidelines and policies established or agreed upon by the National Executive.**"[24]

19.     Venezuelan law confirms the same.  Under Venezuelan law, it is the Ministry of Petroleum and Mining—and not PDVSA—that is responsible for formulating the "policies and planning" of hydrocarbons activities.[25]  Thus, PDVSA acts under the direct supervision of the Sector Vice-Presidency of Economy (which coordinates all the activities related to oil and mining) and the Ministry of the People's Power for the Oil,[26] and PDVSA's role is limited to the technical execution of the oil policies adopted by the National Government.  Venezuela even regularly dictates the oil production of PDVSA and its affiliates by official decree.[27]

20.     In light of this relationship, PDVSA has admitted that "[w]e are controlled by the Venezuelan government" and that Venezuela's "National Executive, through the Ministry of Energy and Petroleum, establishes national petroleum policies and also regulates and supervises [PDVSA's] operations,"[28] "exercises control of [PDVSA's] production and export of oil,"[29] and "grants the rights and mining areas as established" under Venezuelan law.[30]

---

[23]  *See* PDVSA Articles of Incorporation, Clause 2.

[24]  *Id.* (emphasis added).

[25]  2006 Hydrocarbons Organic Law.

[26]  *See* Decree N° 2.378 of General Organization of the National Public Administration (Official Gazette N° 6.238 extraordinary, dated July 13, 2016), Articles 14, 43.

[27]  *See* Resolution N° 195, regarding OPEC quotas (Official Gazette N° 41.063, dated December 29, 2016) ("Resolution N° 195").

[28]  PDVSA Offering Circular (November 11, 2011), p. 16.

[29]  Rafael Ramirez Speech (August 5, 2015), formerly *available at* http://www.pdvsa.com/index.php?tpl=interface.en/design/readmenuprinc.tpl.html&newsid_temas=110 (last reviewed February 29, 2016).

[30]  *Id.; see also* Resolution N° 195 (stating that the National Government dictates the oil production of PDVSA and its affiliates).

21.     Further, the Government manages PDVSA's employment policies. For example, in 2006 PDVSA declared that its managers should be trained in accordance with the Government's social policies.[31] The Government also fires PDVSA employees as it sees fit without regard to operational considerations. For instance, then-President Hugo Chávez fired two PDVSA employees on national television[32] and, in 2002, fired seven PDVSA executives and forcibly retired 12 other employees.[33] In 2003, the Government fired nearly 40% of PDVSA's workforce at the time (approximately 18,000 PDVSA employees) because of their role in opposing the Government.[34]

22.     Venezuela has also directed PDVSA and its affiliates to assist in achieving the Government's expropriation objectives. Under Venezuelan law, "[t]he National Executive shall be able to decree the total or partial expropriation of shares or assets of companies that perform the services referred to in the preceding articles, in accordance with that which is established in the Law of Expropriations due to the Cause of Social or Public Utility. The expropriating entity shall be Petróleos de Venezuela S.A., (PDVSA) or the subsidiary that it designates."[35]

---

[31]  *See* statements of Luis Vierma, Former PDVSA Vice President of Exploration and Production (July 11, 2006), PDVSA's website, *available at* http://www.pdvsa.com/index.php?option=com_content&view=article&id=1668:2794&catid=10&Itemid=589&lang=es (last reviewed August 9, 2017).

[32]  *See* video of former Venezuelan President Hugo Chávez firing two PDVSA executives during a televised address that was published to YouTube on September 21, 2016, *available at* https://www.youtube.com/watch?v=4VCf2aPMJd8 (last reviewed July 17, 2017).

[33]  *See* ICIS News Report, "Venezuela's Chávez Fires 7 PDVSA Exec Rebel Leaders" (April 8, 2002), *available at* https://www.icis.com/resources/news/2002/04/08/160702/venezuela-s-chavez-fires-7-pdvsa-exec-rebel-leaders/ (last reviewed August 9, 2017).

[34]  CNBC News Report, "Venezuela, Oil and Chávez a Tangled Tale" (January 11, 2013), *available at* https://www.cnbc.com/id/100373746 (last reviewed August 9, 2017).

[35]  Organic Law that Reserves to the State the assets and services related to the hydrocarbons primary activities (Official Gazette Nº 39.173 ordinary, dated May 7, 2009), Article 6.

23.    For example, PDVSA (on behalf of Venezuela) conducted the expropriation of: (1) 11 drilling rigs; (2) a cement company; (3) the assets of "Central Azucarero Guanare;" (4) Veneco and other lubricants companies; and (5) Norpro Venezuela, a producer of proppants used in hydraulic fracturing.[36]

24.    Moreover, in 2006, Venezuela enacted a law that required the private oil contracts entered into during the 1990s to be converted into joint agreement companies under the control of PDVSA.[37]  Also, on February 26, 2007, then-President Chávez issued Decree N° 5200, which ordered that associations located in the Orinoco Oil Belt be "migrated" into new mixed companies under the 2001 Hydrocarbons Organic Law, in which PDVSA or one of its subsidiaries would hold at least a 60% participation interest.[38]  Importantly, Article 5 of Decree N° 5200 provided that, if no agreement was reached on the operations of the new mixed companies by the end of four months, Venezuela "through [PDVSA] or any of its affiliates . . . shall directly assume the

---

[36]  An ICSID tribunal decided that "all of PDVSA's actions with regard to [Norpro Venezuela's] plant can and have to be attributed to [Venezuela]."  *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, Decision on Liability and the Principles of Quantum (December 30, 2016).

[37]  *See Law for the regularization of the private contracts in the primary activities subject to the Hydrocarbons Law* ("Ley de Regularización de la Participación Privada en las Actividades Primarias Previstas en el Decreto N° 1.510 con Fuerza de Ley Orgánica de Hidrocarburos") (Official Gazette N° 38.419, dated April 18, 2006).  Article 4 states that Venezuela, directly or through stated-owned companies, will assume the oil activities performed by private contractors.  To comply with this law, PDVSA's affiliates entered into mixed company agreements under the terms and conditions approved by the National Assembly and published under Official Gazette N° 38.410, dated March 31, 2006.

[38]  Decree N° 5.200, with Rank and Force of Law for the conversion to mixed companies of the associations agreements of the Orinoco Belt and the joint exploration risk and revenues ("Ley de Migración, a Empresas Mixtas, de los Convenios de Asociación de la Faja Petrolifera del Orinoco; así como de los Convenios de Exploración a Riesgo y Ganacias Compartidas") (Official Gazette N° 38.632 ordinary, dated February, 26, 2007) ("Decree N° 5.200").

activities of the associations."[39]    Pursuant to this Decree, Venezuela—through PDVSA—

expropriated the rights of certain subsidiaries of Exxon Mobil Corporation in Venezuela.[40]

25.    I also understand that Venezuela gave to PDVSA for no consideration a number

of mining rights, including rights in Las Cristinas (the gold deposit in which Crystallex has a

mining license).[41]  Thereafter, PDSVA sold to the Venezuelan Central Bank 40% of its shares in

the affiliate that was created to exercise those mining rights for approximately $2.4 billion.[42]

26.    Based on this day-to-day control over PDVSA, several learned commentators have

confirmed that PDVSA and its affiliates are considered a state company of a unique nature.

According to Venezuelan professor Allan R. Brewer-Carías:

> Petróleos de Venezuela, S.A., is a "state company" exclusively owned by the
> State and it must answer to the policies enacted by it, and as such, it is

---

[39] *Id.*, Article 5. This article was ratified by article 3 of the *Law that Regulates the Consequence of the Conversion to Mixed Companies of the Associations Agreements of the Orinoco Belt and the Joint Exploration Risk and Revenues* ("*Ley sobre los Efectos del Proceso de Migración a Empresas Mixtas de los Convenios de Asociación de la Faja Petrolífera del Orinoco; así como de los Convenios de Exploración a Riesgo y Ganancias Compartidas*"), published in Official Gazette N° 38.785 dated October 8, 2007).  According to article 3, PDVSA will assume the control over the assets of the private partners in the associations agreements.

[40] *Venezuela Holdings, B.V. et. al. v. the Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/27 (October 9, 2014) ("[t]he Parties agree that the Claimant's investments were expropriated on 27 June 2007 in implementation of Decree-Law 5.200").

[41] The Venezuelan Government granted to PDVSA mining rights within the areas Bloque Guasipati-El Callao, Bloque Sifontes Sur, Bloque El Callao and Bloque Sifontes Norte. Resolution Nº 177 adopted by the People's Power Ministry of Oil and Mining (Official Gazette N° 6.094 extraordinary, dated December 28, 2012), amended in the Official Gazette N° 40.663, dated May 19, 2015, and Decree N° 9.368 (Official Gazette N° 40.109, dated February 13, 2013).  *Las Cristinas*, the gold deposit related to which Crystallex had a mining operating contract (MOC), is localized within the Sifontes Municipality.  *See* Decree Nº 1.757 (Official Gazette N° 37.437, dated May 7, 2002).

[42] *See* 2013 Annual Report presented by the Ministry of Petroleum and Mines to the National Assembly of Venezuela.  The Venezuelan Central Bank purchased the 40% of the shares of the company "*Empresa Nacional Aurífera (ENA)*," which is a PDVSA affiliate, as is recognized, among others, in Decree N° 1.683 (Official Gazette N° 40.631, dated March 30, 2015).

integrated within the general organization of the State Administration, as an entity of the decentralized administration, but with a legal nature of a corporation, meaning that of a private law individual.[43]

27.       In a similar way, Venezuelan professor Isabel Boscán de Ruesta concluded that PDVSA is "a legal entity of a public nature."[44]  I have similarly written that PDVSA and its affiliates were created as instrumental tools of the Government with their only purpose being to execute the Government's oil policies.[45]

## VII.   VENEZUELA AND PDVSA SHARE COMMON DIRECTORS AND OFFICERS

28.       PDVSA's Board of Directors are appointed by Presidential Decree.[46]  PDVSA also has vice-presidents and a Shareholder Council, which are also designated by Presidential Decree.[47]  Consequently, several Government Ministers are members of PDVSA's Board of Directors, and Government officials regularly hold parallel positions in PDVSA's management.

29.       Since at least 2002, it has been commonplace for PDVSA's president to also serve as the Minister in charge of Venezuela's oil sector. This arrangement allowed the Government to control the daily operations of PDVSA. For example, Eulogio Del Pino was both the Minister of People's Power for Oil and Mining and President of PDVSA at the same time,[48] and before him

---

[43]  Allan Brewer-Carías, *El carácter de Petróleos de Venezuela S.A. como instrumento del Estado en la Industria Petrolera*," Revista de Derecho Público N° 23 (1985), p. 81.

[44]  Isabel Boscán de Ruesta, *Consideraciones sobre la naturaleza legal de Petróleos de Venezuela, S.A.*, Revista de Derecho Público N° 9, (1982), p. 60; *see also* Corte Primera de lo Contencioso Administrativo, decision dated May 10, 2002, in the case Gabriel García and others v. PDVSA Petróleo y Gas S.A. (noting PDVSA's place at the top of the "hierarchically organized entities that are in charge of public tasks").

[45]  *See* José Ignacio Hernández,  *El pensamiento jurídico venezolano en el Derecho de los Hidrocarburos,* Academia de Ciencias Políticas y Sociales, (2016) p. 66.

[46]  *See* PDVSA Articles of Incorporation, Articles 16, 17.

[47]  *See* PDVSA Articles of Incorporation, Articles 35, 38.

[48]  *See* Decree N° 1.945 (Official Gazette N° 40.727 ordinary, dated August 19, 2015).  Mr. Del Pino was appointed as both President of PDVSA and CITGO Holding.  *See also* Citgo

Rafael Ramirez held both positions.[49]  Nelson Martinez left his position as CEO of PDVSA's indirect subsidiary, CITGO, in January 2017 and assumed the role of Minister of Popular Power of Oil.[50]  Venezuela's President recently asked Mr. Martinez to assume the job of President of PDVSA.

      30.     In addition to shared personnel, Venezuela's Ministry of Petroleum and Mining and PDVSA also share physical office space.[51]

      31.     PDVSA's current Board of Directors was appointed by Decree N° 2703.[52]  Delcy Eloina Rodriguez Gomez, Venezuela's Foreign Affairs Minister until June 21, 2017 (when she resigned her position in order to run for a position in Venezuela's Constituent Assembly), and now President of the newly created Constituent Assembly, is also a director of PDVSA, and PDVSA's

---

Preliminary Offering Memorandum (January 28, 2015); PDVSA's Annual Management Report (2015), *available at* http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes%20Anuales/informe%20de%20gestion/2015/Informe%20Gestio%CC%81n%20Anual%20%202015.pdf (last reviewed August 7, 2017).

[49]  *See* PDVSA Form 6-K (July 2005).

[50]  *See* Bloomberg News Report, "PDVSA Said to Replace Refining Managers as Shakeup Deepens," (March 20, 2017), *available at* https://www.bloomberg.com/news/articles/2017-03-20/pdvsa-said-to-replace-refining-managers-as-shakeup-deepens (last reviewed August 7, 2017).

[51]  Venezuela's Ministry of Petroleum and Mining and PDVSA share physical office space for its headquarters, located at Avenida. Libertador con calle El Empalme, Complejo Min Petróleo, La Campiña, Caracas, Venezuela.  *See* Venezuela's Ministry of Petroleum and Mining website identifying its address, *available at* http://www.mpetromin.gob.ve/portalmenpet/secciones.php?option=view&idS=106 (last reviewed August 7, 2017); *see also* PDVSA's website titled "PDVSA in the World" *available at* http://www.pdvsa.com/index.php?option=com_content&view=article&id=6581&Itemid=898&lang=en (last reviewed June 26, 2017).

[52]  Decree N° 2.703 (Official Gazette N° 6.284 extraordinary, dated January 29, 2017) ("Decree N° 2.703").

Vice President of Foreign Affairs.[53]  Other PDVSA directors include Venezuela's Planning Minister, Ricardo Menendez Prieto and Venezuela's Food Minister, Rodelfo Clemente Marco Torres.[54]

32.    President Maduro appointed Simón Alejandro Zerpa Delgado as PDVSA's Vice-President of Finance, arguably the most important post in the company.  Mr. Delgado is also the President of Fondo Nacional para el Desarrollo Nacional ("FONDEN")—a fund created by then-President Hugo Chávez to which PDVSA was forced to contribute billions of dollars each year.[55] He also chairs the Venezuelan Economic and Social Development Bank ("BANDES") and was named as a commissioner of the Venezuelan Chinese Fund, the vehicle through which funds received from China—in exchange for PDVSA's oil at below-market rates—are invested in Venezuela.[56]  He is the son of the Venezuelan ambassador to China and former secretary of the National Assembly, Ivan Zerpa Guerrero.[57]  Mr. Delgado is currently the subject of sanctions

---

[53]  *See id*.  Currently, Delcy Eloina Rodriguez Gomez is also the President of the Venezuela's Constituent Assembly.  *See* BBC Mundo News Report, "Quien es Delcy Rodriguez, la Presidenta de la Todopoderosa Assamblea Nacional Constituyente de Venezuela," August 4, 2017,  *available at*  http://www.bbc.com/mundo/noticias-america-latina-40834084  (last reviewed August 7, 2017).

[54]  *See* Decree N° 2.703.

[55]  *See* Decree N° 1.359 (Official Gazette N° 40.529 ordinary, dated October, 29, 2014).

[56]  *See* Cuentasclarasdigital.org News Report, "Conozca a los poderosos nuevos directivos de Pdvsa:  Simón  Zerpa  y  Maribel  Parra,"  *available  at*  http://www.cuentasclarasdigital.org/2017/01/conozca-a-los-poderosos-nuevos-directivos-de-pdvsa-simon-zerpa-y-maribel-parra/  (last reviewed August 7, 2017).

[57]  *See id*.

imposed by the United States government in connection with his alleged role in Venezuelan Government corruption.[58]

33.    In addition, President Maduro created a new post: Executive Vice-President of PDVSA—and appointed Vice-Admiral Maribel del Carmen Parra de Mestre to the position.[59] Vice-Admiral Parra de Mestre is a member of Compañía Anonima Militar de Industrias Mineras, Petroliferas y de Gas ("Camimpeg"), a company formed by the Government and the Venezuelan military to provide services to PDVSA, and chairs the Military Transport Company.[60]

## VIII.   VENEZUELA IS THE REAL BENEFICIARY OF PDVSA'S ACTIVITIES

### A.    The Establishment Of The "New PDVSA"

34.    In 2002, the National Executive increased its direct control over PDVSA through a series of reorganizations, which led the restructured company to be called, informally, the "New PDVSA." A consequence of this transformation was that the Government increased its control over PDVSA and its affiliates to now achieve its social and political policies through activities directly performed by PDVSA and its affiliates. As a consequence of these actions, the technical nature of PDVSA and its subsidiaries was replaced and the companies took on a political role under the socialist model.

---

[58] *See* U.S. Department of the Treasury Press Center Report (July, 26, 2017) *available at* https://www.treasury.gov/press-center/press-releases/Pages/sm0132.aspx    (last    reviewed August 7, 2017).

[59] *See* Cuentasclarasdigital.org News Report, "Conozca a los poderosos nuevos directivos de Pdvsa:    Simón    Zerpa    y    Maribel    Parra,"    *available    at* http://www.cuentasclarasdigital.org/2017/01/conozca-a-los-poderosos-nuevos-directivos-de-pdvsa-simon-zerpa-y-maribel-parra/ (last reviewed August 7, 2017).

[60] *See id.*

35.     The Government's increased control over PDVSA and its affiliates is established in both the Government's and PDVSA's strategic plans. The Government's six-year "Homeland Plan" for 2013-2019 has as its "Historical Objective Number 1" that the State "[m]aintain and guarantee control by the State over Petróleos de Venezuela S.A. (PDVSA)."[61] Similarly, the PDVSA Strategic Socialist Plan 2016-2026 confirmed that PDVSA was no longer a technically-oriented company, but rather was continuing its Government-mandated transformation into a "Socialist and Revolutionary PDVSA."[62]

36.     According to the Minister of the People's Power for Oil, "[the New PDVSA] is a national company, subordinated to the Venezuelan State and deeply committed to the true owner of the oil: the Venezuelan people."[63] PDVSA itself has stated that it is "a fundamental tool at the service of the Venezuelan State."[64]

37.     Among other things, as was previously explained, in 2006, the Government ordered that the private oil contracts entered into during the 1990s were to be converted into joint agreement companies under the control of PDVSA. The private companies that did not agree to this conversion had their assets expropriated.[65] The Government also began to increase its control

---

[61]  Official Gazette N° 6.118 extraordinary, dated December 4, 2013.

[62]  PDVSA Strategic Socialist Plan 2016-2026, pp. 33, 34, *available at* http://www.pdvsa.com/images/pdf/pes.pdf (last reviewed August 7, 2017).

[63]  Minister of the People's Power for Oil News Report, "Petróleos de Venezuela S.A. (PDVSA) y sus empresa filiales y empresas mixtas," *available at* http://www.mpetromin.gob.ve/portalmenpet/secciones.php?option=view&idS=36 (last reviewed August 7, 2017).

[64]  PDVSA's Annual Management Report (2004).

[65]  *See* PDVSA´s Operational and Financial Information of December 31, 2006, *available at* http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes %20Anuales/informe%20de%20gestion/2006/Informacio%CC%81n%20financiera%20y%2 0operacional%20al%2031%20de%20diciembre%20de%202006.PDF (last reviewed August 7, 2017).

over downstream activities. As a result, only PDVSA affiliates were allowed to carry on oil activities. This policy was called, by PDVSA, the "Whole Oil Sovereignty."

38.     As a consequence, the Government now controls the State's oil resources, through PDVSA, much more intimately than it did before, and benefits significantly from that control both socially and politically and not just economically.

**B.     Venezuela Uses PDVSA To Achieve Its Social Objectives**

39.     The Government has assigned to PDVSA various objectives to further its socialist planning as part of a policy known as the "Oil Sowing Plan." According to this plan, PDVSA's activities must aim to satisfy collective necessities under the control of the Government. Because of this, PDVSA assumed economic activities, such as agricultural activities, that are outside of its "primary activities."

40.     In the 2012 Annual Management Report, PDVSA summarized this policy as follows:

> Within the new PDVSA's transformation and change process, the Corporation has promoted the strengthening of the new national socio-productive model, through the creation of the so-called Non-Oil Subsidiaries. These companies have become the cornerstone for the construction of a new socialist business model to leverage the process of transformation and change of the national production system.[66]

41.     These non-oil affiliates include, among others:[67]

- **PDVSA Agrícola S.A.** Its purpose is to promote the State's agricultural and industrial infrastructure and produce food like cereals (rice, for example), legumes (such as beans) and animal protein products like chicken meat, pork meat and beef.

---

[66] PDVSA Annual Management Report (2012), p. 16 *available at* http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes %20Anuales/informe%20de%20gestion/2012/Informe%20de%20Gestio%CC%81n%20Anu al%202012%20(parte%201).PDF (last reviewed August 7, 2017).

[67] PDVSA Annual Management Report (2015), p. 107 *et seq*.

- **PDVSA Desarrollos Urbanos S.A.** Its purpose is to carry on housing projects in the context of National Government programs, such as the "Great Mission Venezuela Housing" (*Gran Misión Vivienda Venezuela*).

42.     The economic contribution of PDVSA to the National Government social programs is summarized on PDVSA's webpage as follows:

> PDVSA designs and implements social development projects aligned with and in coordination with the social plans of Venezuela for the benefit of its communities. Oil revenues are used for health, food, investment, roads and various funds, including: Independence Fund 200, Simon Bolívar Fund for Comprehensive Reconstruction, Asphalt Fund, and the Socially Owned Companies Fund (EPS), in addition to contributions to the National Development Fund (FONDEN) and the Chinese Fund. In this way we closely link oil with social matters for the welfare of the country.[68]

43.     To fulfill the political objectives of the "Oil Sowing Plan" mentioned above, the Government assigned to PDVSA "duties of social responsibilities." The Government also increased its control over PDVSA's revenues through extra-budgetary funds that were administered pursuant to the discretionary decisions of the President, such as FONDEN.[69] Particularly, PDVSA supported National Government social programs, called "missions," in activities such as food and housing.

44.     This is summarized in the PDVSA Annual Management Report 2015:

> In accordance with articles 302 and 3011 of the Constitution and article 5 of the [2006] Hydrocarbons Organic Law, that regulates the PDVSA duties in the social development of the country, the Company is the main supporter of the Venezuelan economy, contributing actively to the current process of XXI Century Socialism under

---

[68] PDVSA's website, "PDVSA Social Development," *available at* http://www.pdvsa.com/index.php?option=com_content&view=article&id=6566&Itemid=897 &lang=en (last reviewed August 7, 2017).

[69] In 2012, almost 70% of PDVSA's contribution to the national budget was made through FONDEN. *See* Pedro Luis Rodríguez y Luis Roberto Rodríguez, *El Petróleo como instrumento de progreso,* IESA (2013), p. 118. FONDEN was created by Decree N° 3.854 (Official Gazette N° 38.261, dated August 30, 2005). In creating FONDEN, it was made clear that "the remaining foreign currencies obtained from hydrocarbons exports, will be transferred to the Fund."

the Homeland Plan, that contains the Second Socialist Plan of Social and Economic Development of the Nation 2013-2019.[70]

45.      Where PDVSA did not implement the "Oil Sowing Plan" directly through one of its subsidiaries created for that purpose, it did so indirectly by funding FONDEN, the Government's discretionary so-called "slush fund" to which PDVSA contributes billions of dollars each year.

46.      There were basically two ways in which the National Government captured PDVSA's revenues through FONDEN:

- First, in 2005, the Venezuelan Central Bank Law was amended to allow PDVSA to maintain foreign currencies derived from oil exports. FONDEN (a state-owned company) was created to receive from the Venezuelan Central Bank the "excedentary reserves."[71] The Law was amended again in 2009 to require PDVSA to transfer to FONDEN, without consideration, the foreign currency not sold to the Venezuelan Central Bank.[72] In 2014, a new law was promulgated, whereby the Government directed PDVSA to sell its foreign currencies derived from the oil exportation to the Venezuelan Central Bank at an artificially low U.S. Dollar to Bolivar exchange rate (to the detriment of PDVSA), and transfer to FONDEN the excedentary reserves.[73]

- Second, in 2008, PDVSA and its affiliates were levied with a special contribution based on the "extraordinary oil prices."[74] The incomes obtained from this special contribution were also transferred to FONDEN. As a result of these and other

---

[70] PDVSA's Annual Management Report (2015), p. 16.

[71] *See* Reform of the Venezuelan Central Bank Law (Official Gazette N° 38.232, dated July 20, 2005), Article 113. The Venezuelan Central Bank manages the international reserves, including the currencies sold by PDVSA from oil exports. In 2005, the Law created the concept of "excedentary reserves," which is a surplus fixed by the Venezuelan Central Bank in its discretion. Those excedentary reserves were transferred to FONDEN.

[72] *See* Official Gazette N° 39.301, dated November 6, 2009, Article 113.

[73] *See* Official Gazette N° 6.155, dated November 19, 2014, Article 125. In this new regulation, PDVSA must sell oil currencies to the Venezuelan Central Bank reserves, which was obliged to transfer the excedentaries reserves to FONDEN.

[74] The special contribution for the "extraordinary oil prices" was adopted by the Special Contribution Law over Extraordinary Prices in the International Hydrocarbons Market. *See* Official Gazette N° 38.910, ordinary, dated April 15, 2008.

contributions, Venezuela has been described as using PDVSA "as a piggy bank for [its] socialist revolution." [75]

47.    At present, due to depressed oil prices, PDVSA does not make special contributions to FONDEN. However, PDVSA revenues continue to be channeled to FONDEN through the Venezuelan Central Bank's currency exchange program. [76]

### C.    Venezuela Uses PDVSA To Achieve Its Political Objectives

48.    Another legal manifestation of the "New PDVSA" is seen in the National Government's use of PDVSA as an instrument to fulfill the Government's international agreements and foreign policy objectives.

49.    For instance, PDVSA is the tool through which the Government exercises its obligations in "Petrocaribe," a program characterized as promoting the social and economic development of the Caribbean. [77] As part of this regime, Venezuela has entered into several Energetic Cooperation Agreements that establish obligations for PDVSA and its affiliates with respect to the provision of oil, among other things. [78]

---

[75] The Economist News Report, "Up in Smoke" (August 27, 2012), *available at* https://www.economist.com/blogs/americasview/2012/08/venezuelas-oil-industry, (last reviewed August 7, 2017) (internal quotations omitted).

[76] *See* Partial Reform Law of Special Contribution Law over Extraordinary Prices in the International Hydrocarbons Market (Official Gazette N° 40.114 ordinary, dated February 20, 2013).

[77] *See* The Energetic Cooperation Agreement "Petrocaribe," of 2005 (Official Gazette N° 38.344 ordinary, dated December 27, 2005), Article II (creating an international fund granted by Venezuela to promote social and economic development in the Caribbean). Venezuela assumes the obligation to provide oil on favorable terms to certain Caribbean countries. *See id.*, Article IV. PDV Caribe, a subsidiary of PDVSA, was designated to carry out Venezuela's obligation under the Agreement. *See id.*, Article III.

[78] These Agreements have been entered into with, among others, Argentina, Uruguay, Bolivia, Cuba, Nicaragua and Portugal. *See* Juan Cristóbal Carmona Borjas, *Actividad Petrolera y*

50.     The Government similarly imposes on PDVSA the duty to provide oil to China to cover its debt obligations.   This arrangement is established by a 2008 Covenant regarding the Venezuela-China Joint Financing Fund, as amended in 2012.[79]

\* \* \* \*

51.     In summary, the Government has passed several laws and decrees mandating PDVSA's conduct to be aligned with its social and political goals.  Similarly, it uses PDVSA as a political tool to achieve its domestic and international objectives.  PDVSA, in turn, must follow these obligations dictated to it by the Government.

---

*Finanzas Públicas en Venezuela,* Academia de Ciencias Políticas y Sociales, Caracas (2016), p. 357 *et seq.*

[79] *See* Venezuela and China Covenant regarding the *Joint Financing Fund* (Official Gazette N° 39.019 ordinary, dated September 18, 2008), amended by Amendment of the China Covenant regarding the *Joint Financing Fund* (Official Gazette N° 39.927 ordinary, dated May 22, 2012).  For a summary of how this program operated, *see* Juan Cristóbal Carmona Borjas, *Actividad Petrolera y Finanzas Públicas en Venezuela,* Academia de Ciencias Políticas y Sociales, Caracas, 2016, pp. 344 *et seq.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 13, 2017.

_____

José Ignacio Hernández G.

# Appendix A

## Appendix A – Curriculum Vitae

**José Ignacio Hernandez G.**

| | |
|---|---|
| **Studies** | **1992-1997. Universidad Católica Andrés Bello (Caracas, Venezuela).** |
| | Law Degree (*Summa Cum Laude* diploma) |
| | **1999-2001. Universidad Complutense de Madrid** |
| | Diploma in Higher Education |
| | **1999-2002 Universidad Complutense de Madrid** |
| | Juris Doctor (JD) |
| **Academic Activities** | 2004- Administrative Law Professor, Universidad Central de Venezuela. |
| | 2004- Administrative Law Professor, Universidad Católica Andrés Bello. |
| | 2007 Chaiman. Public Law Center, Universidad Monteávila. |
| | Visiting Researcher, Georgetown University, 2014. |
| **Other Distinctions** | Award of the Political and Social Academy (2004) |
| | Member of the Ibero American Economic Regulation Association (ASIER) |
| | Vice Director of the *Revista de Derecho Público* |
| | Director of the *Revista Electrónica de Derecho Administrativo Venezolana* |
| | Member of the Ibero American Forum of Administrative Law |
| | Member of the International Association of Administrative Law |
| **Professional activities** | 2006- Partner, Grau, García, Hernández & Mónaco, Socio Fundador. |
| | Legal expert on Venezuelan Law in international investment arbitration proceedings |
| **Main Publications** | ▪ Books |
| | ▪ *La libertad de empresa y sus garantías jurídicas. Estudio comparado del Derecho Español y Venezolano,* FUNEDA-IESA, Caracas, 2004 |
| | *Reflexiones críticas sobre las bases constitucionales de la responsabilidad patrimonial de la Administración en Venezuela,* FUNEDA, Caracas, 2004. |

23

*Introducción a la nueva Ley de Protección al Consumidor y al Usuario,*
FUNEDA, Caracas, 2004.

*El régimen legal del servicio universal de telecomunicaciones en
Venezuela,* FUNEDA, Caracas, 2005.

*Derecho administrativo y regulación económica,* Editorial Jurídica
Venezolana, Caracas, 2006.

*Reflexiones sobre la Constitución económica y el modelo socioeconómico
en Venezuela,* FUNEDA, Caracas, 2008.

*Comentarios a la Ley Antiacaparamiento,* FUNEDA, Caracas, 2008.

*Introducción al concepto constitucional de Administración Pública,*
Editorial Jurídica Venezolana, Caracas, 2011.

*Lecciones de procedimiento administrativo,* FUNEDA, Caracas, 2012.

*Administración Pública, Desarrollo y Libertad en Venezuela,* Caracas,
2012.

*Comentarios a la nueva Ley de Régimen Cambiario y sus Ilícitos,*
FUNEDA, Caracas, 2014.

*La expropiación en el Derecho administrativo venezolano,* UCAB,
Caracas, 2014.

*El pensamiento jurídico venezolano en el Derecho de los Hidrocarburos,*
Academia de Ciencias Jurídicas Venezolanas, Caracas, 2016.

*Derecho administrativo y arbitraje internacional de inversiones,* CIDEP-
Editorial Juríca Venezolana, Caracas, 2016.


Main articles

1. "El Amparo sobrevenido como medida cautelar, con especial
   referencia al contencioso administrativo", en *Revista de Derecho
   Administrativo número 4*, Editorial Sherwood, Caracas, 1998.
2. "Un ensayo sobre el concepto de servicio público en el Derecho
   venezolano", en *Revista de Derecho Público número No. 89-
   90/91-92,* Caracas, 2002.
3. "Cauces de intervención de la iniciativa económica pública y
   privada en la nueva Ley Orgánica de Hidrocarburos", en *Revista
   Derecho y Sociedad número 3,* Universidad Monteávila, Caracas,
   2002.
4. "Reflexiones sobre la nueva ordenación de los hidrocarburos
   gaseosos en Venezuela", en *Temas de Derecho Administrativo.
   Libro Homenaje a Gonzalo Pérez Luciani, Tomo I,* Tribunal
   Supremo de Justicia, Caracas, 2002.
5. "Imposición Directa y Discriminación", *Revista Impuestos-Legis,*
   Bogotá, 2003.

6. "Disciplina jurídico-administrativa de la libertad económica", en *VII Jornadas Internacionales de Derecho Administrativo "Allan R. Brewer-Carías", Tomo I,* FUNEDA, Caracas, 2005.

7. "Contratos de la administración y contencioso administrativo. Ensayo sobre la necesaria superación de una tesis anacrónica", en *VIII Jornadas Internacionales de Derecho Administrativo "Allan Randolph Brewer Carías", Tomo I,* FUNEDA, Caracas, 2006.

8. Hernández G., José Ignacio, "Evolución y situación actual de la regulación de los hidrocarburos en Venezuela", en *Revista de Derecho de las telecomunicaciones e infraestructuras en red N° 27,* Madrid, 2006

9. "Regulación económica y Derecho mercantil venezolano a comienzos del siglo XXI", en *Foro de Derecho Mercantil. Revista Internacional, N° 21,* Bogotá, 2008.

10. "El contrato administrativo en la Ley de contrataciones públicas venezolana", en *Revista de Administración Pública N° 176,* Madrid, 2008.

11. Hacia los orígenes históricos del derecho administrativo venezolano: la construcción del contrato administrativo, entre el derecho público y el derecho privado", en *Boletín de la Academia de Ciencias Políticas y Sociales No. 147,* Caracas, 2009

12. "La regulación económica de actividades de interés general y la vuelta a modelos estatistas", en *Modernizando el Estado para un país mejor. IV Congreso Nacional de Derecho Administrativo,* Lima, 2010.

13. "El Derecho Administrativo Global y el concepto de Buena Administración", *Anuario de la Facultad de Derecho,* Universidad La Coruña, España, 2012.

14. "El arbitraje internacional de inversiones, la intervención administrativa en la economía y el Derecho administrativo global", en *XVII Jornadas Centenarias Internacionales. Constitución, Derecho administrativo y proceso,* Colegio de Abogados del Estado Carabobo, FUNEDA, Caracas, 2014.

15. "Eduardo García De Enterría y la renovación del Derecho administrativo. Reflexiones desde la Carta iberoamericana de los derechos y deberes del ciudadano en relación con la Administración pública", en *La protección de los derechos frente al poder de la administración*, Editorial Jurídica Venezolana, Temis, Tirant Lo Blanch, Bogotá, 2014

16. "Control judicial, justicia administrativa y el arbitraje internacional de inversiones", *Foro Iberoamericano de Derecho Administrativo,* 2015.

17. "El arbitraje internacional de inversiones desde el Derecho Administrativo Global", en *Revista Internacional de Arbitraje N° 24,* Bogotá, 2016.

1. *What to Expect from the Arbitration Center of the Union of South American Nations (UNASUR)?,* en *TDM Vol 13. Issue 2,* 2016.

2. "Regulación económica y arbitraje internacional de inversiones", en *Revista Electrónica de Derecho N° 1,* 2007, Universidad de Porto, Porto, 2016.

3. "La lucha contra las inmunidades del poder y el Derecho Administrativo venezolano", en *Revista Electrónica de Derecho Administrativo Venezolano N° 8,* Caracas, 2016.

4. "Justicia constitucional y poder político en Venezuela", en *Anuario de Derecho Constitucional Latinaomericano 2016,* Fundación Konrad Adenauer Stiftung, 2016.
5. "Interdicción a la arbitrariedad desde el derecho administrativo global", en *Revista Española de Derecho Administrativo N° 181,* Madrid, 2016.
6. La ordenación jurídica del agua en Venezuela", en *Perfiles de la ordenación jurídica del agua en Italia, España y América Latina,* G. Giappichelli Editore-Tirant Lo Blanch, Italia-España, 2017.

# Appendix B

**Appendix B – Sources**

1. *See* Official Gazette N° 1.769 extraordinary, dated August 29, 1975 ("Nationalization Law")

2. Report of the "Presidential Commission for the Oil Reversal," *Archivo de Derecho Público y Ciencias de la Administración, Régimen jurídico de las nacionalizaciones*, Vol. 2, Universidad Central de Venezuela (1974)

3. *See* Decree Nº 1.123 (Official Gazette Nº 1.770 extraordinary, dated August 30, 1975)

4. Public Administration Organic Law (Official Gazette Nº 6.147 extraordinary, dated November 17, 2014) ("LOAP")

5. Official Gazette Nº 38.493, dated August 4, 2006 ("2006 Hydrocarbons Organic Law")

6. Decree N° 3.299 that adopted the Articles of Incorporation of PDVSA (Official Gazette Number 38.081, dated December 7, 2004) ("Decree N° 3.299" or "PDVSA Articles of Incorporation")

7. Constitution of the Bolivarian Republic of Venezuela (Official Gazette Nº 5.908 extraordinary, dated February 19, 2009)

8. Constitutional Chamber of the Supreme Tribunal of Justice, Decision N° 814, dated October 25, 2016

9. Constitutional Chamber of the Supreme Tribunal of Justice, Decision N° 464, dated March 18, 2002

10. Chamber of Social Cassation, Supreme Tribunal of Justice, Decision N° 1481, dated October 2, 2008

11. Constitutional Chamber of the Supreme Tribunal of Justice, Decision N° 281, dated February 26, 2007.

12. Decree N° 2.378 of General Organization of the National Public Administration (Official Gazette N° 6.238 extraordinary, dated July 13, 2016

13. Resolution N° 195 (Official Gazette N° 41.063, dated December 29, 2016)

14. PDVSA Offering Circular (November 11, 2011)

15. Rafael Ramirez Speech (August 5, 2015), formerly *available at* http://www.pdvsa.com/index.php?tpl=interface.en/design/readmenuprinc.tpl.html&newsid_te mas=110

16. Statements of Luis Vierma, Former PDVSA Vice President of Exploration and Production (July 11, 2006), PDVSA's website, *available at*

http://www.pdvsa.com/index.php?option=com_content&view=article&id=1668:2794&catid=1
0&Itemid=589&lang=es

17. Video of former Venezuelan President Hugo Chávez firing two PDVSA executives during a
    televised address that was published to YouTube on September 21, 2016, *available at*
    https://www.youtube.com/watch?v=4VCf2aPMJd8

18. ICIS News Report, "Venezuela's Chávez Fires 7 PDVSA Exec Rebel Leaders" (April 8,
    2002), *available at* https://www.icis.com/resources/news/2002/04/08/160702/venezuela-s-
    chavez-fires-7-pdvsa-exec-rebel-leaders/

19. CNBC News Report, "Venezuela, Oil and Chávez a Tangled Tale" (January 11, 2013),
    *available at* https://www.cnbc.com/id/100373746

20. Organic Law that Reserves to the State the assets and services related to the hydrocarbons
    primary activities (Official Gazette Nº 39.173 ordinary, dated May 7, 2009)

21. Decree N° 5.200 (Official Gazette Nº 38.632 ordinary, dated February, 26, 2007)

22. *Venezuela Holdings, B.V. et. al. v. the Bolivarian Republic of Venezuela*, ICSID Case No.
    ARB/07/27 (October 9, 2014)

23. Resolution Nº 177 adopted by the People's Power Ministry of Oil and Mining (Official Gazette
    number 6.094 extraordinary dated December 28, 2012), amended in the Official Gazette
    number 40.663 dated May 19, 2015, and Decree number 9.368, (Official Gazette number
    40.109 dated February 13, 2013).

24. Resolution Nº 177 adopted by the People's Power Ministry of Oil and Mining (Official Gazette
    N° 6.094 extraordinary, dated December 28, 2012), amended in the Official Gazette N°
    40.663, dated May 19, 2015

25. Decree N° 9.368 (Official Gazette N° 40.109, dated February 13, 2013)

26. Decree Nº 1.757 (Official Gazette N° 37.437, dated May 7, 2002)

27. 2013 Annual Report presented by the Ministry of Petroleum and Mines to the National
    Assembly of Venezuela.

28. Decree N° 1.683 (Official Gazette number 40.631 dated March 30, 2015)

29. Allan Brewer-Carías, *El carácter de Petróleos de Venezuela S.A. como instrumento del Estado
    en la Industria Petrolera*," Revista de Derecho Público N° 23 (1985)

30. Isabel Boscán de Ruesta, *Consideraciones sobre la naturaleza legal de Petróleos de
    Venezuela, S.A.*, Revista de Derecho Público N° 9 (1982)

31. José Ignacio Hernández, *El pensamiento jurídico venezolano en el Derecho de los
    Hidrocarburos,* Academia de Ciencias Políticas y Sociales (2016)

32.  *See* Decree N° 1.945 (Official Gazette N° 40.727 ordinary,  dated August 19, 2015)

33.  Citgo Preliminary  Offering Memorandum  (January 28, 2015)

34.  PDVSA's Annual Management Report (2015),  *available at*
http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes%
20Anuales/informe%20de%20gestion/2015/Informe%20Gestio%CC%81n%20Anual%20%20
2015.pdf

35.  PDVSA Form 6-K (July 2005).

36.  Bloomberg News Report, "PDVSA Said to Replace Refining  Managers as Shakeup Deepens,"
(March 20, 2017),  *available at* https://www.bloomberg.com/news/articles/2017-03-20/pdvsa-
said-to-replace-refining-managers-as-shakeup-deepens

37.  Venezuela's Ministry of Petroleum and Mining website identifying  its address, *available at*
http://www.mpetromin.gob.ve/portalmenpet/secciones.php?option=view&idS=106

38.  PDVSA's website titled  "PDVSA in the World"  *available at*
http://www.pdvsa.com/index.php?option=com_content&view=article&id=6581&Itemid=898&
lang=en

39.  Decree N° 2.703 (Official Gazette N° 6.284 extraordinary,  dated January 29, 2017)

40.  BBC Mundo News Report, "Quien es Delcy Rodriguez,  la Presidenta de la Todopoderosa
Assamblea Nacional Constituyente  de Venezuela," August 4, 2017, *available at*
http://www.bbc.com/mundo/noticias-america-latina-40834084

41.  Decree N° 1.359 (Official Gazette N° 40.529 ordinary,  dated October, 29, 2014).

42.  Cuentasclarasdigital.org  News Report, "Conozca a los poderosos nuevos directivos  de Pdvsa:
Simón Zerpa y Maribel Parra," *available at*
http://www.cuentasclarasdigital.org/2017/01/conozca-a-los-poderosos-nuevos-directivos-de-
pdvsa-simon-zerpa-y-maribel-parra/

43.  U.S. Department of the Treasury Press Center Report (July, 26, 2017) *available at*
https://www.treasury.gov/press-center/press-releases/Pages/sm0132.aspx

44.  Homeland Plan that contains the Second Socialist  Plan of Social and Economic  Development
of the Nation 2013-2019  (Official Gazette N° 6.118 extraordinary,  dated December 4, 2013)

45.  BBC Mundo News Report "Maduro  confirma que "Timochenko"  viajó a La Habana en avión
de PDVSA" (September 28, 2015)

46.  PDVSA Strategic Socialist  Plan 2016-2026, *available at*
http://www.pdvsa.com/images/pdf/pes.pdf

47.    Minister of the People's Power for Oil News Report, *available at*
       http://www.mpetromin.gob.ve/portalmenpet/secciones.php?option=view&idS=36

48.    PDVSA's Annual Management Report (2004).

49.    PDVSA´s Operational and Financial Information of December 31, 2006, *available at*
       http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes%
       20Anuales/informe%20de%20gestion/2006/Informacio%CC%81n%20financiera%20y%20ope
       racional%20al%2031%20de%20diciembre%20de%202006.PDF

50.    PDVSA Annual Management Report (2012), *available at*
       http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes%
       20Anuales/informe%20de%20gestion/2012/Informe%20de%20Gestio%CC%81n%20Anual%
       202012%20(parte%201).PDF

51.    PDVSA Social Development, available at:
       http://www.pdvsa.com/index.php?option=com_content&view=article&id=6566&Itemid=897&
       lang=en

52.    Pedro Luis Rodríguez y Luis Roberto Rodríguez, *El Petróleo como instrumento de progreso,*
       IESA, Caracas (2013)

53.    Decree N° 3.854 (Official Gazette N° 38.261 ordinary, dated August 30, 2005)

54.    Reform of the Venezuelan Central Bank Law (Official Gazette N° 38.232 ordinary, dated July
       20, 2005)

55.    Official Gazette N° 39.301, dated November 6, 2009

56.    Official Gazette N° 6.155 dated November 19, 2014

57.    Special Contribution Law over Extraordinary Prices in the International Hydrocarbons Market
       (Official Gazette N° 38.910 ordinary, dated April 15, 2008)

58.    The Economist News Report, "Up in Smoke" (August 27, 2012)

59.    Partial Reform Law of Special Contribution Law over Extraordinary Prices in the International
       Hydrocarbons Market (Official Gazette number 40.114 ordinary, dated February 20, 2013)

60.    Energetic Cooperation Agreement "Petrocaribe" of 2005 (Official Gazette N° 38.344 ordinary,
       dated December 27, 2005)

61.    Venezuela and China Covenant regarding the *Joint Financing Fund* (Official Gazette Nº
       39.019 ordinary, dated September 18, 2008)

62.    Amendment of the China Covenant regarding the *Joint Financing Fund* (Official Gazette N°
       39.927 ordinary, dated May 22, 2012)

63. Juan Cristóbal Carmona Borjas, *Actividad Petrolera y Finanzas Públicas en Venezuela, Academia de Ciencias Políticas y Sociales*, Caracas (2016)

64. *Law for the regularization of the private contracts in the primary activities subject to the Hydrocarbons Law* ("Ley de Regularización de la Participación Privada en las Actividades Primarias Previstas en el Decreto N° 1.510 con Fuerza de Ley Orgánica de Hidrocarburos") (Official Gazette N° 38.419, dated April 18, 2006)

65. *Law that regulates the consequence of the conversion to mixed companies of the associations agreements of the Orinoco Belt and the joint exploration risk and revenues* ("*Ley sobre los Efectos del Proceso de Migración a Empresas Mixtas de los Convenios de Asociación de la Faja Petrolífera del Orinoco; así como de los Convenios de Exploración a Riesgo y Ganancias Compartidas*"), (Official Gazette N° 38.785, dated October 8, 2007)