# GACETA OFICIAL

## DE LA REPUBLICA BOLIVARIANA DE VENEZUELA

AÑO CXXXVI—MES V       Caracas, jueves 19 de febrero de 2009       Nº 5.908 Extraordinario

### SUMARIO
**Asamblea Nacional**
Constitución de la República Bolivariana de Venezuela, con la Enmienda Nº 1 aprobada por el Pueblo Soberano, mediante Referendo Constitucional, a los quince días del mes de febrero de dos mil nueve. Año 198º de la Independencia, 149º de la Federación y 11º de la Revolución Bolivariana.

## ASAMBLEA NACIONAL

## *Constitución de la República Bolivariana de Venezuela*



*Con la Enmienda Nº 1 de fecha 15 de febrero de 2009.*


DEFENDANT'S EXHIBIT
DX-07

## LA ASAMBLEA NACIONAL CONSTITUYENTE

En nombre y representación del pueblo soberano de Venezuela, en ejercicio del poder constituyente originario otorgado por éste mediante referendo aprobado democráticamente el veinticinco de abril de mil novecientos noventa y nueve, para transformar el Estado y crear un nuevo ordenamiento jurídico que permita el funcionamiento efectivo de una democracia social y participativa, y en concordancia con el Artículo 1° del Estatuto de Funcionamiento de la ASAMBLEA NACIONAL CONSTITUYENTE;

### CONSIDERANDO

que el día quince de diciembre de mil novecientos noventa y nueve el pueblo de Venezuela, mediante referendo constituyente, aprobó la Constitución de la República Bolivariana de Venezuela, la cual fue proclamada por la Asamblea Nacional Constituyente el día veinte de diciembre de mil novecientos noventa y nueve,

### DECRETA

la siguiente

### EXPOSICIÓN DE MOTIVOS DE LA CONSTITUCIÓN DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA

#### TÍTULO I
#### PRINCIPIOS FUNDAMENTALES

El primer Título de la Constitución, referido a los principios fundamentales, consagra la condición libre e independiente de la República Bolivariana de Venezuela; condición permanente e irrenunciable que fundamenta en el ideario de Simón Bolívar, el Libertador, su patrimonio moral y los valores de libertad, igualdad, justicia y paz internacional.

De esta manera se rescata el legado histórico de la generación emancipadora, que en la gesta heroica de la independencia de Venezuela luchó para forjarnos una patria libre, soberana e independiente de toda potencia extranjera. Al mencionar la figura paradigmática de esa revolución inicial, el Libertador Simón Bolívar, se recoge el sentimiento popular que lo distingue como símbolo de unidad nacional y de lucha incesante y abnegada por la libertad, la justicia, la moral pública y el bienestar del pueblo, en virtud de lo cual se establece que la Nación venezolana, organizada en Estado, se denomina República Bolivariana de Venezuela.

Se define la organización jurídicopolítica que adopta la Nación venezolana como un Estado democrático y social de Derecho y de Justicia. De acuerdo con esto, el Estado propugna el bienestar de los venezolanos, creando las condiciones necesarias para su desarrollo social y espiritual, y procurando la igualdad de oportunidades para que todos los ciudadanos puedan desarrollar libremente su personalidad, dirigir su destino, disfrutar los derechos humanos y buscar su felicidad.

Los principios de la solidaridad social y del bien común conducen al establecimiento de ese Estado social, sometido al imperio de la Constitución y de la ley, convirtiéndolo, entonces, en un Estado de Derecho. Estado social de Derecho que se nutre de la voluntad de los ciudadanos, expresada libremente por los medios de participación política y social para conformar el Estado democrático. Estado social y democrático de Derecho comprometido con el progreso integral que los venezolanos aspiran, con el desarrollo humano que permita una calidad de vida digna, aspectos que configuran el concepto de Estado de Justicia.

Se corresponde esta definición con una de las principales motivaciones expresadas en el Preámbulo, es decir, el fin supremo de refundar la República para establecer una sociedad democrática. Ya no sólo es el Estado el qué debe ser democrático, sino también la sociedad. Siendo democrática la sociedad, todos los elementos que la integran deben estar signados por los principios democráticos y someterse a ellos.

Se establece que la educación y el trabajo son los procesos fundamentales para garantizar los fines del Estado. De esta manera, los ciudadanos y las organizaciones sociales tienen el deber y el derecho de concurrir a la instauración y preservación de esas condiciones mínimas y de esa igualdad de oportunidades, aportando su propio esfuerzo, vigilando y controlando las actividades estatales, concienciando a los demás ciudadanos de la necesaria cooperación recíproca, promoviendo la participación individual y comunitaria en el orden social y estatal, censurando la pasividad, la indiferencia y la falta de solidaridad. Las personas y los grupos sociales han de empeñarse en la realización y ejercicio de sus derechos y en el cumplimiento de sus deberes, mientras que el Estado es un instrumento para la satisfacción de tales fines.

Por ello se incorporan al texto constitucional como valores superiores del ordenamiento jurídico del Estado y de su actuación, la vida, la libertad, la justicia, la igualdad, la solidaridad, la democracia, la responsabilidad individual y social, la preeminencia de los derechos humanos, la ética pública y el pluralismo político.

En cuanto a la estructura del Estado venezolano, el diseño constitucional consagra un Estado Federal que se define como descentralizado, para así expresar la voluntad de transformar el anterior Estado centralizado en un verdadero modelo federal con las especificidades que requiere nuestra realidad. En todo caso, el régimen federal venezolano se regirá por los principios de integridad territorial, cooperación, solidaridad, concurrencia y corresponsabilidad que son características de un modelo federal cooperativo, en el que las comunidades y autoridades de los distintos niveles politicoterritoriales participan en la formación de las políticas públicas comunes a la Nación, integrándose en una esfera de gobierno compartida para el ejercicio de las competencias que concurren. De esta manera, la acción de gobierno de los municipios, de los estados y del Poder Nacional se armoniza y coordina, para garantizar los fines del Estado venezolano al servicio de la sociedad.

Se modificó el artículo tradicional sobre el idioma oficial al declarar que el idioma oficial de Venezuela es el castellano, pero se reconocen los idiomas de los pueblos

indígenas como oficiales en las comunidades donde son lenguas maternas, pudiendo usarse al igual que el castellano.

En las disposiciones fundamentales se consagran los principios de supremacía y fuerza normativa de la Constitución, según los cuales ella es la norma de mayor jerarquía y alcanza su vigencia a través de esa fuerza normativa o su capacidad de operar en la vida histórica de forma determinante o reguladora. Dichos principios constituyen el fundamento de todos los sistemas constitucionales del mundo y representan la piedra angular de la democracia, de la protección de los derechos fundamentales y de la justicia constitucional.

Con base en lo anterior, todos los órganos que ejercen el Poder Público, sin excepción, están sometidos a los principios y disposiciones consagrados en la Constitución, y por tanto, todos sus actos pueden ser objeto del control jurisdiccional de la constitucionalidad.

#### TÍTULO II
#### DEL ESPACIO GEOGRÁFICO Y DE LA DIVISIÓN POLÍTICA

##### Capítulo I
##### *Del territorio y demás espacios geográficos*

Se realizaron cambios importantes en la definición del espacio geográfico venezolano. En este sentido, se adoptó la expresión más amplia de *espacio geográfico* para sustituir la de *territorio*. En efecto, espacio geográfico alude a los espacios continentales, insulares y marítimos, quedando el territorio como componente del primero de los citados. Sin embargo, no se altera la determinación del espacio geográfico nacional al reiterar la versión histórica de la Constitución del año 1830 y que se repite hasta la de 1961, es decir, el que correspondía a la Capitanía General de Venezuela para el 19 de abril de 1810.

No obstante, se agregó la frase *con las modificaciones resultantes de los tratados y laudos arbitrales no viciados de nulidad*. Con ello se corrige la omisión del Congreso Constituyente de 1961 con relación a los laudos y arbitrajes determinantes de nuestras fronteras actuales, como son los de los años 1865, 1891, 1899 y 1922; y se establece de una manera categórica que Venezuela no reconoce los laudos viciados de nulidad, como es el caso del Laudo de París de 1899, que despojó a Venezuela del espacio situado en la margen occidental del Río Esequibo.

Por otra parte, se deslinda conceptualmente el espacio insular como parte de la organización politicoterritorial de Venezuela y como espacio sujeto a la soberanía venezolana. Por tal razón se mencionan las islas por sus nombres y se extiende en ámbito de la soberanía hasta las demás islas, islotes, cayos y bancos situados o que emerjan dentro del mar territorial, en el que cubre la plataforma continental o dentro de los límites de la zona económica exclusiva.

Como una consecuencia de los valores fundamentales que inspiran a la República Bolivariana de Venezuela, se declara expresamente al espacio geográfico venezolano como zona de paz, en virtud de lo cual se prohíbe establecer en él bases militares extranjeras o cualquier instalación de potencia o coalición de potencias que tengan propósitos militares.

##### Capítulo II
##### *De la división política*

Con el fin de organizar políticamente la República se divide el territorio nacional en el de los Estados, el del Distrito Capital, el de las dependencias federales y el de los territorios federales, mientras que el territorio se organiza en Municipios. En este sentido, la Constitución prevé que mediante una ley orgánica que garantice la autonomía municipal y la descentralización politicoadministrativa, se regule la división politicoterritorial de la República.

Por otra parte, se establece la ciudad de Caracas como la capital de la República y asiento de los órganos del Poder Nacional, lo cual no impide el ejercicio del Poder Nacional en otros lugares de la República.

Destaca en este Capítulo que mediante ley especial se establecerá la unidad politicoterritorial de la ciudad de Caracas que integre en un sistema de gobierno municipal a dos niveles, los Municipios del Distrito Capital y los correspondientes del Estado Miranda. En todo caso, dicha ley establecerá su organización, gobierno, administración, competencia y recursos, para alcanzar el desarrollo armónico e integral de la ciudad, garantizando el carácter democrático y participativo de su gobierno.

#### TÍTULO III
#### DE LOS DERECHOS HUMANOS Y GARANTÍAS, Y DE LOS DEBERES

##### Capítulo I
##### *Disposiciones generales*

Inspirada por las principales tendencias que se han desarrollado en derecho comparado y en los tratados internacionales sobre derechos humanos, la Constitución reconoce expresamente el principio de progresividad en la protección de tales derechos, conforme al cual el Estado garantizará a toda persona natural o jurídica, sin discriminación alguna, el respeto, el goce y el ejercicio irrenunciable, indivisible e interdependiente de los mismos.

Se reconocen como fuentes en la protección de los derechos humanos a la Constitución, a los tratados internacionales suscritos y ratificados por la República en esta materia, y a las leyes que los desarrollen. Al respecto, con el objeto de reforzar la protección de los referidos derechos se establece que los tratados, pactos y convenciones internacionales en esta materia, suscritos y ratificados por Venezuela, prevalecen en el orden interno en la medida en que contengan normas sobre el goce y ejercicio de los derechos humanos más favorables a las contenidas en la Constitución y en las leyes, siendo sus disposiciones de aplicación directa e inmediata por los tribunales de la República y demás órganos que ejercen el Poder Público. Por ello, en el caso de que un tratado internacional suscrito y ratificado por Venezuela reconozca y garantice un determinado derecho humano, en forma más

amplia y favorable que la Constitución, prevalece en todo caso el instrumento internacional y debe ser aplicado en forma preferente, directa e inmediata por los tribunales y demás órganos del Estado.

Se reconocen los derechos al libre desenvolvimiento de la personalidad y a la igualdad. En relación con éste último, se refuerza y amplía la protección constitucional al prohibir no sólo las discriminaciones fundadas en la raza, el sexo o la condición social, sino además, aquellas que, en general, tengan por objeto o por resultado anular o menoscabar el reconocimiento, goce o ejercicio en condiciones de igualdad, de los derechos y libertades de toda persona. Lo anterior obedece a que en la dinámica social suele presentar situaciones de discriminación que deben su origen a razones distintas de la raza, el sexo o la condición social.

Por otra parte, la Constitución amplía conceptualmente la protección de los derechos humanos con una marcada influencia *ius naturalista*, al disponer que la enunciación de los derechos y garantías contenidos en la Constitución y en los instrumentos internacionales sobre derechos humanos no debe entenderse como negación de otros que, siendo inherentes a la persona, no figuren expresamente en ellos. Por tal motivo se establece que la falta de ley reglamentaria de esos derechos no menoscaba el ejercicio de los mismos. Además, a fin de incluir dentro de tal protección a los derechos inherentes a las personas jurídicas, se elimina la distinción que hacía la Constitución de 1961 y que abarcaba únicamente a los derechos inherentes a la persona humana.

Se consagra la garantía de no retroactividad de las leyes y de las disposiciones normativas y se amplía su alcance a fin de que en caso de dudas sobre su vigencia temporal, se aplique la norma que beneficie al reo.

Se mantiene la garantía según la cual todo acto dictado en ejercicio del Poder Público que viole o menoscabe los derechos garantizados por la Constitución y la ley es nulo; y los funcionarios públicos que lo ordenen o ejecuten incurren en responsabilidad penal, civil y administrativa, según los casos, sin que les sirvan de excusa órdenes superiores. La Constitución incluye dentro del supuesto de esta garantía, los derechos humanos garantizados por la Constitución, así como los reconocidos por las leyes, en atención al sistema de fuentes que en esta materia consagra el texto constitucional, y con el objeto de ampliar y reforzar la protección de los derechos humanos.

Se reconocen los derechos de acceso a la justicia y tutela judicial efectiva, en virtud de los cuales toda persona puede acceder a los órganos de administración de justicia para obtener la tutela judicial efectiva de sus derechos e intereses, incluidos los colectivos o difusos. A tal efecto, los referidos órganos están representados por las cortes y tribunales que forman parte del Poder Judicial, así como por los demás órganos del sistema de justicia previsto en la Constitución, entre los cuales se encuentran los ciudadanos que participan en la administración de justicia o que ejercen la función jurisdiccional de conformidad con la ley.

Como una de las implicaciones del Estado democrático y social de Derecho y de Justicia en que se constituye a Venezuela por obra de la Constitución, y con el fin de erradicar uno de los principales problemas de la Nación venezolana, en virtud del cual el Poder Judicial se caracterizó por su corrupción, lentitud e ineficacia y, especialmente, por restringir el acceso de la población de escasos recursos a la justicia; la Constitución exige al Estado garantizar una justicia gratuita, accesible, imparcial, idónea, transparente, autónoma, independiente, responsable, equitativa y expedita, sin dilaciones indebidas, sin formalismos o reposiciones inútiles.

De esta forma se consagra la justicia gratuita como un derecho humano que encuentra su principal fundamento en los derechos a la igualdad y a la tutela judicial efectiva que reconoce la Constitución y que tiene por objeto permitir el libre acceso de toda persona a la justicia, sin discriminación alguna. Como una de las consecuencias del referido derecho, la Constitución establece en su Título V Capítulo III, que el Poder Judicial no está facultado para establecer tasas, aranceles, ni exigir pago alguno por sus servicios, al tiempo que prevé el servicio de defensa pública.

El amparo se reconoce como una *garantía del derecho constitucional*, cuya finalidad es la tutela judicial reforzada de los derechos humanos, aún de aquellos inherentes a la persona humana que no figuren expresamente en la Constitución o en los instrumentos internacionales sobre derechos humanos. Al respecto, se dispone que el procedimiento que deberá establecer la ley correspondiente en materia de amparo constitucional, será oral, público, breve, gratuito y no sujeto a formalidad, todo ello con el objeto de garantizar su eficacia.

En lo que se refiere al *hábeas corpus* o amparo a la libertad o seguridad personal, se establece una acción popular y se prevé que el detenido sea puesto bajo custodia del tribunal correspondiente de manera inmediata.

Se reconoce por vez primera en el constitucionalismo venezolano, el *hábeas data* o el derecho de las personas de acceso a la información que sobre sí mismas o sobre sus bienes consten en registros oficiales o privados, con las excepciones que establezca la ley. El *hábeas data* incluye el derecho de las personas de conocer el uso que se haga de tales registros y su finalidad, y de solicitar ante el tribunal competente su actualización, rectificación o destrucción, si fuesen erróneos o afectasen ilegítimamente sus derechos.

Por otra parte, como una conquista de la lucha por la protección integral de los derechos humanos, la Constitución impone al Estado la obligación de investigar y sancionar legalmente los delitos contra los derechos humanos cometidos por sus autoridades, al tiempo que establece, sin excepción, que las violaciones de tales derechos y los delitos de lesa humanidad serán investigados y juzgados por tribunales ordinarios, a fin de excluir tribunales militares o de excepción de cualquier investigación al respecto.

Igualmente, se impone al Estado la obligación de indemnizar integralmente a las víctimas de violaciones de los derechos humanos que le sean imputables, o a sus derechohabientes, incluido el pago de daños y perjuicios, todo lo cual constituye una consecuencia del principio de la responsabilidad patrimonial del Estado reconocido por la Constitución.

## Capítulo II
### De la nacionalidad y de la ciudadanía
#### Sección primera: de la nacionalidad

Se mantienen los criterios atributivos de la nacionalidad originaria propios de la tendencia constitucional venezolana, marcada por la presencia del *ius soli* absoluto y del *ius sanguinis*.

En esta materia destaca que siendo la nacionalidad venezolana por nacimiento un derecho inherente a la persona humana, no podrá privarse de ella a quienes, conforme a la Constitución, cumplieron los requisitos para obtenerla.

En cuanto a la nacionalidad derivada o por naturalización, en aras de garantizar el vínculo y compromiso efectivo de los venezolanos por naturalización con la Nación venezolana, con su pueblo, sus costumbres y su destino, se exige que las personas que opten a la carta de naturaleza, posean domicilio con residencia ininterrumpida en el territorio de Venezuela de, por lo menos, diez años inmediatamente anteriores a la fecha de la respectiva solicitud. Esta exigencia se rebaja a cinco años, en el caso de aquellas personas que tuvieren la nacionalidad originaria de España, Portugal, Italia, países latinoamericanos y del Caribe. En todo caso, la expresión *residencia ininterrumpida* a que se refiere el texto constitucional, debe interpretarse en el sentido de que la persona interesada no se haya ausentado del territorio nacional con el ánimo de establecerse permanente y definitivamente en el extranjero. Ello no impide, por tanto, que dicha persona se ausente temporalmente del territorio nacional por razones de turismo, trabajo, estudios u otros de similar naturaleza, siempre que tengan carácter temporal.

Se consagra sin discriminación alguna el derecho del cónyuge extranjero casado con venezolano o venezolana por nacimiento, de obtener la nacionalidad venezolana por naturalización, transcurridos por lo menos cinco años a partir de la fecha del matrimonio.

Por otra parte, siguiendo las orientaciones de los ordenamientos constitucionales contemporáneos, se admite la doble nacionalidad y el carácter renunciable de la nacionalidad venezolana, todo ello con el objeto de facilitar a la República la suscripción de tratados internacionales en la materia.

Finalmente, con el objeto de completar y darle eficacia a la regulación constitucional se promueve la suscripción de tratados internacionales en materia de nacionalidad con los Estados o países fronterizos y, especialmente, con España, Portugal, Italia, países latinoamericanos y del Caribe.

#### Sección segunda: de la ciudadanía

Esta Sección, al referirse a la ciudadanía, expresa la condición jurídica o vínculo de una persona con el Estado, que le permite el ejercicio de los derechos políticos. Dicha condición en principio pertenece a los venezolanos y venezolanas no sujetos a interdicción civil o inhabilitación política, en las condiciones de edad que establezca la Constitución para el ejercicio de los derechos políticos. No obstante, se otorga potestad electoral activa a los extranjeros que hayan cumplido dieciocho años de edad, con más de diez años de residencia en el país y no estén sometidos a interdicción civil o inhabilitación política, para votar en las elecciones parroquiales, municipales y estadales.

En esta materia destaca, además, la ampliación de los derechos políticos de los venezolanos por naturalización con el objeto de integrarlos más estrechamente a la vida y destino del país. Por ello, se les permite el desempeño de cargos públicos hasta ahora reservados constitucionalmente a los venezolanos por nacimiento. Así, los venezolanos por naturalización, si tienen domicilio con residencia ininterrumpida en el país no menor de quince años, podrán desempeñarse como diputados a la Asamblea Nacional, aunque no podrán ejercer la Presidencia o Vicepresidencia de dicho cuerpo; como Ministros, menos en los cargos relacionados con la seguridad de la Nación, finanzas, energía y minas y educación; o como Gobernadores o Alcaldes, excepción hecha de los Estados fronterizos.

Además, se reconoce a los venezolanos por naturalización que hubieren ingresado al país antes de cumplir siete años de edad y hayan residido permanentemente en él, la posibilidad de gozar los mismos derechos de los venezolanos por nacimiento, en virtud de lo cual podrán acceder a todos los cargos públicos. En todo caso, la *residencia permanente* a que se refiere el texto constitucional en esta materia, debe interpretarse en el sentido de que la persona interesada no se haya ausentado del territorio nacional con el ánimo de establecerse permanente y definitivamente en el extranjero. Ello no impide, por tanto, que dicha persona se ausente temporalmente del territorio nacional por razones de turismo, trabajo, estudios u otros de similar naturaleza, siempre que tengan carácter temporal.

## Capítulo III
### De los derechos civiles

En el Capítulo III se recogen y amplían los derechos civiles de las personas, con base en una regulación progresiva que establece normas y principios contenidos en tratados internacionales suscritos y ratificados por la República en materia de derechos humanos.

Se reafirma el derecho a la vida como derecho fundamental, base para disfrutar y ejercer los demás derechos, comprometiendo al Estado a proteger la vida de las personas que se encuentren privadas de su libertad, como procesados o condenados, cualquiera fuere el motivo, así como la de aquellas personas que estén prestando servicio militar o civil, o sometidos a su autoridad en cualquier otra forma.

Se prohíbe en forma absoluta y sin excepciones, aun en estado de emergencia o de excepción o restricción de garantías, practicar, permitir o tolerar la desaparición forzada de personas. Se establecen mayores garantías para proteger el derecho de

las personas a su integridad física, psíquica y moral, así como el debido proceso, el cual se aplicará a todo tipo de actuaciones judiciales y administrativas.

En el marco de la protección a las personas, se prevén los principios que orientarán la organización y funciones de los cuerpos de seguridad del Estado, los cuales deberá adecuar su actuación al respeto a la dignidad de las personas y sus derechos humanos, en razón de lo cual el uso de armas y sustancias tóxicas estará sujeto a los principios de necesidad, conveniencia, oportunidad y proporcionalidad.

Se garantiza la libertad de expresión sin que sea posible censura alguna. Por ser consustancial con ese derecho, quien lo ejerza asume la plena responsabilidad por todo lo expresado. Así mismo, se reconoce el derecho a una información veraz, oportuna, imparcial y sin censura. Esta regulación responde a la necesidad de elevar a rango constitucional los parámetros éticos indispensables para el ejercicio del derecho a la información, con el objeto de que los medios de comunicación como parte de su actividad y de la responsabilidad que ella genera, establezcan mecanismos de autoevaluación informativa a los que tenga acceso toda persona, natural o jurídica, pública o privada, que se considere perjudicada por informaciones emitidas por los medios de comunicación y que tengan relación con ella, a fin de que se revise la veracidad y oportunidad de la información.

El derecho a la información veraz, oportuna, imparcial y sin censura, acogiendo una tendencia presente en derecho comparado, versa sobre hechos que constituyan información y que sean transmitidos por los medios de comunicación, no sobre las opiniones o juicios de valor que los medios de comunicación o periodistas ofrezcan sobre tales hechos.

De igual manera, se garantiza el derecho de los niños y adolescentes a recibir una información adecuada para su desarrollo integral, en virtud de lo cual los medios de comunicación deberán ajustar su actividad y programación a tales fines, con el objeto de permitir un sano y normal desarrollo del proceso educativo y de formación de las futuras generaciones.

### Capítulo IV
#### De los derechos políticos y del referendo popular

##### Sección primera: de los derechos políticos

En materia de Derechos Políticos se incluyen modificaciones sustanciales en relación con la Democracia Representativa y de Partidos establecida en la Constitución anterior.

Se inicia el Capítulo con la consagración amplia del derecho a la participación en los asuntos públicos de todos los venezolanos y ciudadanas, ejercido de manera directa, semidirecta o indirecta. Este derecho no queda circunscrito al derecho al sufragio, ya que es entendido en un sentido amplio, abarcando la participación en el proceso de formación, ejecución y control de la gestión pública. Como contrapartida el Estado y la sociedad deben facilitar la apertura de estos espacios para que la participación ciudadana, así concebida, se pueda materializar.

Esta regulación responde a una sentida aspiración de la sociedad civil organizada que pugna por cambiar la cultura política generada por tantas décadas de paternalismo estatal y del dominio de las cúpulas partidistas que mediatizaron el desarrollo de los valores democráticos. De esta manera, la participación no queda limitada a los procesos electorales, ya se reconoce la necesidad de la intervención del pueblo en los procesos de formación, formulación y ejecución de las políticas públicas, lo cual redundaría en la superación de los déficits de gobernabilidad que han afectado nuestro sistema político debido a la carencia de sintonía entre el Estado y la sociedad.

Concebir la gestión pública como un proceso en el cual se establece una comunicación fluida entre gobernantes y pueblo, implica modificar la orientación de las relaciones entre el Estado y la sociedad, para devolverle a ésta última su legítimo protagonismo. Es precisamente este principio consagrado como derecho, el que orienta este Capítulo referido a los derechos políticos.

Se reconoce el sufragio como un derecho, mas no como un deber, a diferencia de la Constitución de 1961. Se establece el ejercicio del mismo mediante votaciones libres, universales, directas y secretas. La consagración de la personalización del sufragio debe conciliarse con el principio de la representación proporcional, requerido para obtener órganos conformados de manera plural, en representación de las diferentes preferencias electorales del pueblo.

En cuanto a la definición de los electores se da ese carácter a los venezolanos y venezolanas que hayan cumplido dieciocho años de edad, ampliándose este derecho a los extranjeros que hayan cumplido dicha edad, pero limitado a las elecciones parroquiales, municipales y estadales, exigiéndose en todo caso como condición el que tengan más de diez años de residencia en el país.

En cuanto a las diferentes etapas de los procesos electorales se otorga a los ciudadanos amplias posibilidades de participación superando las restricciones del sistema partidocrático que nos rigió. En este sentido, tanto en la fase de la postulación de candidatos como en el ejercicio de la supervisión y vigilancia del proceso electoral se consagra constitucionalmente la participación por iniciativa propia, de partidos políticos o de otras asociaciones con fines políticos.

El derecho a desempeñar funciones públicas y ejercer cargos de elección popular se les otorga de manera igualitaria a los electores venezolanos y venezolanas, que sepan leer y escribir, con las solas restricciones derivadas del propio texto constitucional o de las condiciones de aptitud exigidas por las leyes, para determinados cargos.

Como una respuesta a las demandas de los venezolanos ante las graves desviaciones del sistema político y a la corrupción desmedida, se incluye la prohibición de optar a cargos de elección popular a aquellas personas que hayan sido condenadas por delitos cometidos durante el tiempo en que ejercieron las funciones públicas, así como otros delitos que afecten el patrimonio público.

En el mismo contexto de la anterior disposición, se consagra el derecho al control por parte del pueblo de los representantes electos, el cual abarca la rendición de cuentas públicas, transparentes y periódicas. Tal derecho obliga al representante a cumplir a cabalidad con el programa de gobierno presentado al electorado, así como a mantener una comunicación permanente con el pueblo que lo eligió.

En este capítulo se produce la ruptura con el sistema partidocrático que ocupó un largo espacio en nuestra historia política reciente, al eliminarse la sumisión de la participación democrática a la organización en estructuras partidistas como único vehículo a utilizar. Por el contrario, se consagra el derecho de asociación con fines políticos con amplitud, garantizando la aplicación de principios democráticos en la constitución, organización, funcionamiento e igualdad ante la ley, dado el interés público de las actividades que cumplen las organizaciones con fines políticos. De esta manera, se establece con rango constitucional limitaciones importantes a la conformación de cúpulas partidistas y a la estructuración vertical de organización política que lejos de fomentar y desarrollar la cultura y los valores propios de la democracia han obstaculizado su profundización.

Se prevé igualmente el control del financiamiento de estas organizaciones, así como los límites de gastos en campañas electorales, y el establecimiento de mecanismos de control para garantizar la licitud de las contribuciones y el manejo pulcro de las mismas.

La Constitución consagra como un derecho político consustancial con la vida democrática, el de la manifestación pacífica y sin armas. Dadas las trágicas y dramáticas experiencias vividas por los venezolanos en el ejercicio de este derecho a expresar su descontento con el ejercicio de las funciones de gobierno, se incluyen prohibiciones que persiguen limitar la acción represiva de los cuerpos policiales y de seguridad. En este sentido, se consagra la prohibición del uso de armas de fuego y sustancias tóxicas para enfrentar manifestaciones pacíficas.

Igualmente se reconocen y garantizan los derechos de asilo y refugio, como principios reconocidos universalmente.

##### Sección segunda: del referendo popular

En relación con los medios de participación en los cuales se concretizan los derechos de los ciudadanos a ejercer su soberanía, se consagran las diversas formas de referendo popular a la que se dedica una sección en particular que regula el referendo consultivo, revocatorio, aprobatorio y abrogatorio.

### Capítulo V
#### De los derechos sociales y de las familias

Los derechos sociales contenidos en la Constitución consolidan las demandas sociales, jurídicas, políticas, económicas y culturales de la sociedad en un momento histórico en que los venezolanos y venezolanas se redescubren como actores de la construcción de un nuevo país, inspirado en los saberes populares que le dan una nueva significación al conocimiento sociopolítico y jurídico del nuevo tiempo.

La corresponsabilidad entre sociedad y Estado, el sentido de progresividad de los derechos, la indivisibilidad e interdependencia de los derechos humanos constituyen una herramienta doctrinaria que define una nueva relación de derechos y obligaciones entre sujetos que participan solidariamente en la construcción de una sociedad democrática, participativa, autogestionaria y protagónica. La equidad de género que transversaliza todo el texto constitucional define la nueva relación que en lo jurídico, en lo familiar, en lo político, en lo socioeconómico y cultural, caracteriza a la nueva sociedad, en el uso y disfrute de las oportunidades. Queda evidenciado a lo largo de todo el texto constitucional el uso del género femenino, expresamente indicado de acuerdo con las recomendaciones de la Organización para la Educación y la Cultura de las Naciones Unidas (UNESCO) o de diversas organizaciones no gubernamentales, todo lo cual se inscribe dentro del principio de igualdad y no discriminación reconocido por el texto constitucional, con el objeto de evitar dudas o equívocas interpretaciones de la Constitución.

La participación directa de la gente en la toma de decisiones para la solución de sus problemas y los de su comunidad, crea una nueva relación ciudadana que en el ámbito de los derechos sociales, desarrolla la tríada solidaria entre sociedad, familia y Estado, lo que coloca al legislador y a los órganos que integran el sistema de justicia, en un nuevo espacio de interpretación de la democracia social y del Estado de Derecho y de Justicia.

La pluralidad de las familias, el rescate de la tradición oral de los ancianos y de las ancianas, como patrimonio familiar para una educación cotidiana; la garantía de la autonomía funcional de los seres humanos con discapacidad o necesidades especiales; la ciudadanía progresiva de los niños y de las niñas definidos como prioridad absoluta del Estado; los adolescentes y jóvenes entendidos como sujetos estratégicos para el desarrollo sustentable; el significado del trabajo productivo del ama de casa; el consumo protegido y la seguridad alimentaria; la vivienda como hábitat que humaniza las relaciones familiares y comunitarias; la información como mecanismo que coadyuva a la formación de la cultura ciudadana, son nuevos elementos elevados a rango constitucional que requieren una interpretación acorde con su finalidad, no sujeta a formalismos jurídicos alejados de la realidad social.

Se garantiza para todos la seguridad social, la cual debe responder a los conceptos de solidaridad, universalidad, integralidad, unicidad, participación y eficiencia. La salud, asociada indisolublemente a la calidad de vida y al desarrollo humano, constituye un derecho social fundamental que el Estado garantiza a partir de un sistema sanitario de servicios gratuitos, definido como único, universal, descentralizado y participativo. Asimismo, consecuente con el principio de corresponsabilidad, la Constitución promueve la participación ciudadana en la formulación y ejecución de las políticas y planes de salud, a fin de lograr un ambiente sano y saludable.

En el campo laboral se reconocen los derechos individuales al trabajo, a la estabilidad y a las vacaciones, así como los derechos colectivos de sindicalización, contratación colectiva y derecho a la huelga por parte de los trabajadores y de las trabajadoras.

Todos estos derechos constituyen la base fundamental del nuevo ordenamiento jurídico en el que la vida, la ética, la moral, la libertad, la justicia, la dignidad, la igualdad, la solidaridad, el compromiso, los deberes ciudadanos y la seguridad jurídica son valores que concurren en la acción transformadora del Estado, la Nación, el gobierno y la sociedad, en un propósito de realización compartida para producir la gobernabilidad corresponsable, la estabilidad política y la legitimidad jurídica necesarias para el funcionamiento de la sociedad democrática.

### Capítulo VI
#### De los derechos culturales y educativos

A través de artículos específicos transversalizados axiológicamente, en la Constitución quedan expresados los criterios y ejes fundamentales que reconocen y sintetizan los derechos culturales y educativos.

En las primeras disposiciones de este capítulo se garantiza la absoluta libertad en la creación cultural, tanto para la inversión en ella como para su producción y divulgación. Conforme a esta libertad el Estado reconoce el derecho a la propiedad intelectual de la obra creada. Se otorga rango constitucional a la protección, preservación, conservación y restauración del patrimonio cultural venezolano y, con ello, a la memoria histórica de la Nación, lo cual obliga crear una legislación que consagre la autonomía de la administración cultural. Esa legislación debe estimular a quienes puedan y quieran enriquecer dicho patrimonio, y también debe establecer sanciones o penas a las personas naturales o jurídicas que le infieran daños o perjuicios. Adicionalmente, se enfatiza el principio de igualdad de las culturas y el de la interculturalidad, y se destaca la promoción de las expresiones populares que conforman y modelan cada naturaleza autóctona regional, para luego constituir una entrecruzada sumatoria de creaciones que configuren el conjunto definitorio de la Nación.

Para lograr esos objetivos constitucionales, la legislación correspondiente deberá establecer incentivos y estímulos para quienes promuevan, apoyen, desarrollen o financien, actividades relacionadas con la cultura, tanto en el país como en el exterior.

Se garantiza a los trabajadores culturales su incorporación a un sistema de seguridad social; y se prevé a través de una legislación perentoria la figura del mecenazgo.

El articulado garantiza igualmente, la obligatoriedad de la información cultural, con el objeto de corregir la desigualdad comunicacional que frente a nuestra propia cultura exhiben los medios de comunicación. Por ello se establece el deber de dichos medios de coadyuvar a la difusión de los valores y aportes de los creadores venezolanos.

Las disposiciones siguientes están dedicadas a derechos y definiciones de carácter educativo.

Es innecesario, por reiterativo, exponer motivaciones para justificar el carácter insoslayablemente fundamental y prioritario que tiene la educación para cualquier sociedad. Por consiguiente se proclama la educación como un derecho humano y como un deber constitutivo de la raíz más esencial de la democracia, y se la declara gratuita y obligatoria, y la asume el Estado como función indeclinable y de servicio público.

De acuerdo con la Constitución, la Educación es plural en su apertura a todas las corrientes del pensamiento universal, como instrumento del conocimiento científico, humanístico y tecnológico. Debe estar orientada al desarrollo pleno de la personalidad y el disfrute de una existencia digna, que transcurra con una valoración ética del trabajo y con una conciencia de participación ciudadana. El propósito es que cada venezolano se sienta parte de una sociedad democrática, de la cual sea activamente solidario en su transformación hacia un país con una firme identidad geohistórica nacional y, al mismo tiempo, con vocación latinoamericana y universal.

A tales fines, la educación debe ser integral de calidad, permanente, en igualdad de condiciones y oportunidades para acceder a ella; igualdad que incluye a quienes califiquen en condiciones especiales, o estén discapacitados, o que se encuentren privados de su libertad.

Se incluye en el proceso educativo formal el nivel maternal, y se establece con carácter obligatorio hasta el nivel medio diversificado. En las instituciones del Estado se consagra la gratuidad de la educación en todos los niveles hasta el pregrado universitario.

En todo caso, la inversión presupuestaria que para estos fines realice el Estado tendrá carácter prioritario y estará en concordancia con las recomendaciones de la UNESCO en esta área.

Se reconoce el derecho de las personas naturales y jurídicas de fundar y mantener instituciones educativas privadas, previa aceptación del Estado y bajo su estricta inspección y vigilancia. Esa exigencia constitucional responde al hecho de que si bien existen centros de educación privada que con probidad, eficiencia académica y honestidad, han aportado y aportan una invalorable contribución a la formación de venezolanos, lamentablemente, también es verdad que a lo largo del tiempo han proliferado, sin control alguno, deplorables centros educativos cuyo único objetivo es el lucro desmedido, el cual ha generado la violación de la normativa legal y el irrespeto a la dignidad humana, a través de comportamientos ajenos a los nobles propósitos del apostolado educativo y con actuaciones que han defraudado la más hermosa fe y confianza de gran cantidad de estudiantes.

La legislación debe garantizar la dignificación del docente, tanto del que ejerce en las instituciones públicas como en las privadas, consagrando un régimen de remuneración, prestaciones y seguridad sociales que le garanticen niveles de vida acordes con su elevada misión. A los efectos, de su ingreso, ascenso y permanencia en el sistema educativo, los docentes deberán someterse a una rigurosa evaluación que responda a criterios de méritos éticos y académicos, con prescindencia de cualquier injerencia partidista.

Para ser incluidas en los diseños curriculares, se les dio rango constitucional a las materias relativas al ambiente, a lo lingüístico y a lo geohistórico. En efecto, la formación ambiental debe estar presente en todos los niveles del sistema educativo, aun en la educación no formal. La enseñanza de la lengua castellana es obligatoria hasta el ciclo diversificado, tanto en las instituciones públicas como privadas. Esta misma obligatoriedad se establece para las materias patrias, la historia de Venezuela y la geografía de Venezuela, rescatando así su categoría de materias autónomas, ante la imperiosa necesidad de afianzar la identidad nacional. Coadyuvará a lograr este objetivo la enseñanza del ideario bolivariano, igualmente establecida como obligatoria en el artículo 107 de la Constitución.

Se enfatiza la necesidad de incorporar al sistema educativo el manejo de las innovaciones tecnológicas y el desarrollo de servicios públicos de radios, televisión, redes bibliotecarias e informáticas, con el objeto además, de permitir el acceso universal a la información.

La Constitución delega en la ley la determinación de las profesiones que requieren título y las condiciones que debe cumplirse para ejercerlas, incluyendo la colegiación. Al respecto, la Disposición Transitoria Decimoquinta dispone que hasta tanto se apruebe la legislación en esa materia, se mantendrá en vigencia el ordenamiento jurídico aplicable antes de la sanción de la Constitución.

Por otra parte, la ley deberá garantizar que en las asociaciones gremiales y colegios profesionales se establezcan estructuras organizativas que permitan afiliaciones, gerencias académicas y gestiones electorales más adecuadas a la calidad profesional de sus integrantes y directivos.

Además, por ser inherente a la naturaleza de la universidad, se reconoce la autonomía universitaria como principio y jerarquía que permite a los profesores, estudiantes y egresados de su comunidad, dedicarse a la búsqueda del conocimiento a través de la investigación científica, humanística y tecnológica, para el beneficio espiritual y material de la Nación. Esa autonomía universitaria implica, en especial, la libertad para planificar, organizar, elaborar y actualizar los programas de investigación, docencia y extensión, así como la inviolabilidad del recinto universitario. En todo caso, la autonomía universitaria debe garantizar una permanente adecuación de la institución al incesante desarrollo del conocimiento.

Como consecuencia de lo anterior, también se dispone que las universidades autónomas se darán sus propias normas de gobierno, funcionamiento y administración, bajo el control y vigilancia que establezca la ley. Por su parte, las universidades nacionales experimentales para alcanzar su autonomía deberán cumplir con los requisitos que establezca la ley.

La ciencia, la tecnología, el conocimiento en general, la innovación y sus aplicaciones y los servicios de información, se declaran de interés público, por ser instrumentos fundamentales para el desarrollo económico, social y político del país, así como para la seguridad y soberanía nacional. A tales fines, el Estado creará un sistema nacional de ciencia y tecnología que agrupe, coordine y fomente el desarrollo de la investigación en el país, al cual destinará recursos suficientes. La empresa privada también deberá contribuir con sus recursos al desarrollo de esta actividad.

Uno de los mandatos más significativos de la Constitución en esta materia, es el que obliga al Estado a garantizar el cumplimiento de los principios éticos y legales, en las actividades relacionadas con la investigación científica, humanística y tecnológica, todo lo cual será regulado por la ley.

Siendo el deporte, la educación física y la recreación actividades indispensables de toda persona para su integral desenvolvimiento corporal y espiritual, así como para su incorporación al desarrollo del país, con el objeto de formar una población sana y apta para el estudio y el trabajo, se reconocen tales actividades como un derecho humano, cuyo libre ejercicio beneficia la calidad de vida individual y colectiva. En consecuencia, su enseñanza y práctica se inscriben dentro del proceso educativo y son materia obligatoria en instituciones públicas y privadas hasta el ciclo diversificado. Los recursos para su promoción y desarrollo estarán garantizados por el Estado como parte de una política de educación y salud pública.

Lo anterior responde, además, a que concibe la recreación no solo como ocio, sino como una actividad individual y colectiva que permite el desarrollo espiritual y la gestación de elevadas formas de conciencia sociocultural.

Finalmente, en esta materia, el Estado garantizará la atención integral de los deportistas sin discriminación alguna, así como el apoyo al deporte de alta competencia. Además, con el objeto de garantizar la eficacia de los postulados constitucionales, el Estado promoverá la evaluación y regulación de las entidades deportivas del sector público y del sector privado, conforme a los mecanismos que prevea la ley, la cual también establecerá incentivos y estímulos a las personas y comunidades que promuevan a los atletas y desarrollen o financien planes, programas y actividades deportivas en el país.

### Capítulo VII
#### De los derechos económicos

En este Capítulo referido a los derechos económicos, se establece el derecho que tienen los consumidores a disponer de bienes y servicios de calidad y a un tratamiento digno y no discriminatorio. En consecuencia, el Estado se obliga a tomar las medidas necesarias para combatir toda práctica que afecte la libre formación de precios, sea ella originada en la morfología del mercado, como los monopolios, o en el abuso de posición dominante.

El derecho de propiedad se garantiza sin ambigüedades, sin obviar las consideraciones de utilidad pública e interés general, en tanto que la acción del Estado, considerada como esencial en la definición de un marco institucional apropiado para el crecimiento y el bienestar, está sometida al imperio de la ley.

### Capítulo VIII
#### De los derechos de los pueblos indígenas

Actualmente habitan en Venezuela, al igual que en el resto del continente americano, pueblos cuya existencia antecede a la llegada de los primeros europeos,

así como a la formación de los estados nacionales, razón por la cual se les denomina pueblos indígenas. Sus antepasados ocuparon durante miles de años estas tierras, desarrollando formas de organización social, política y económica, culturas, idiomas y tecnologías muy diferentes entre sí y respecto a las conocidas por los europeos de entonces. Ante la invasión, conquista y colonización europea, los indígenas defendieron heroicamente sus tierras y vidas. Durante más de quinientos años han mantenido su resistencia y lucha por el reconocimiento pleno de su existencia como pueblos, así como del derecho sobre sus tierras, lo cual hoy se materializa con la refundación de la República.

De la misma manera, como consecuencia de esta lucha y de sus particulares condiciones de vulnerabilidad, los derechos de los pueblos indígenas han sido reconocidos internacionalmente como derechos específicos y originarios.

Este mismo reconocimiento en la Constitución implica un profundo cambio de perspectiva política y cultural que reorienta la conducción del Estado venezolano, al reconocer su carácter multiétnico, pluricultural y multilingüe.

En el seno de los diferentes ordenamientos jurídicos latinoamericanos se han realizado notables esfuerzos en el avance, reconocimiento y profundización de los derechos de los pueblos indígenas, tanto en el ámbito legislativo como en el constitucional. En este sentido, es importante destacar que la mayoría de las constituciones latinoamericanas actuales establecen principios claros sobre los derechos de los pueblos indígenas, como un reconocimiento a la diversidad cultural de América Latina.

En Venezuela también se ha dado un progresivo reconocimiento jurídico de la realidad de la diversidad cultural nacional representada por los pueblos indígenas venezolanos, tanto legal como jurisdiccionalmente. Así, el Estado venezolano recoge una situación de hecho preexistente, que al tratarse de reconocer jurídicamente, fortalece el sentido de pertenencia nacional, al valorarse el aporte de la indianidad en la formación de la venezolanidad y de sus instituciones sociales básicas.

En este sentido, en el ordenamiento jurídico venezolano existen muchas referencias normativas distintas relativas a la realidad indígena, las cuales incluyen leyes aprobatorias de tratados internacionales en materia de derechos indígenas, así como diferentes leyes orgánicas, ordinarias y especiales así como decretos, resoluciones ministeriales y reglamentos, que regulan diferentes áreas vinculadas a su realidad en el contexto nacional. Igualmente, dentro de las instituciones del Estado existen dependencias específicas para atender los diversos aspectos de la realidad de los pueblos indígenas, dentro de su complejidad. Por su parte, en tiempos recientes, la jurisprudencia venezolana ha desarrollado también el contenido de los derechos humanos de los indígenas, en diferentes sentencias para casos específicos.

Sobre esta base el Capítulo referido a los derechos indígenas reconoce ampliamente la existencia de los pueblos indígenas, sus formas de organización, culturas e idiomas propios, así como sus hábitats y los derechos originarios sobre las tierras que ancestral y tradicionalmente ocupan y que son indispensables para garantizar su continuidad biológica y sociocultural, las cuales además son asiento de sus referentes sagrados e históricos. Todo ello implica un profundo cambio en la perspectiva política y jurídica del país.

Se establece que las tierras indígenas son inalienables, imprescriptibles, inembargables e intransferibles y que corresponde al Estado conjuntamente con los pueblos indígenas la demarcación de dichas tierras. Una ley especial desarrollará lo específico de tal demarcación a fin de asegurar la propiedad colectiva de las tierras a los pueblos y comunidades indígenas que las habitan.

Se garantiza la integridad de los hábitats indígenas y se consagra el aprovechamiento racional de los recursos naturales allí existentes. Se reconoce el derecho de las comunidades indígenas a recibir información previa y a ser consultadas sobre actividades de aprovechamiento de los recursos naturales. Los beneficios que corresponden a los pueblos indígenas por concepto de este aprovechamiento por parte del Estado serán de carácter colectivo.

En oposición a las políticas indigenistas que hasta ahora imperaron en el país y que han significado la destrucción y desaparición de sus culturas, se consagra el derecho de cada pueblo indígena a mantener y desarrollar su identidad étnica y cultural, cosmovisión, valores, espiritualidad y preservar sus lugares sagrados y de culto. La valoración del patrimonio cultural y lingüístico de los pueblos indígenas concierne a todos los venezolanos; en consecuencia, el Estado velará por el mantenimiento, continuidad, enriquecimiento y reproducción del mismo.

Dado que toda sociedad posee su propio sistema y procesos de socialización y de endoculturación mediante los cuales educan a sus miembros según sus costumbres y tradiciones, el Estado reconoce y respeta los sistemas educativos de los indígenas y garantiza la atención educativa, mediante la modalidad de un régimen de educación intercultural bilingüe, que combina la educación formal con los sistemas educativos tradicionales indígenas e implica igualmente el uso de las lenguas maternas y el castellano.

Como parte de la valoración del patrimonio cultural indígena, el Estado reconoce las prácticas médicas tradicionales de los pueblos indígenas, las cuales hasta el presente han sido desconocidas y descalificadas. El Estado garantizará a los pueblos indígenas, mediante una perspectiva intercultural que permita la combinación de los dos saberes, la salud integral adaptando los servicios de salud a las especificidades y necesidades culturales de cada uno de los pueblos indígenas.

Los pueblos indígenas tienen el derecho de mantener y promover sus prácticas económicas, por lo que no se les podrá imponer planes y proyectos de desarrollo ajenos a sus intereses y necesidades. El Estado asegurará dentro de una perspectiva de desarrollo sustentable, con identidad y en articulación con la economía nacional, los recursos financieros, la capacitación y la asistencia técnica requerida, así como la participación en la economía del país.

Con el fin de salvaguardar los conocimientos, saberes, prácticas e innovaciones intelectuales y recursos genéticos de los pueblos indígenas, de la apropiación ilegal

y el aprovechamiento comercial por parte de personas naturales y jurídicas, el Estado garantiza y protege la propiedad colectiva de los mismos prohibiendo su patentabilidad.

Al garantizarse la participación política de los pueblos indígenas con una representación en la Asamblea Nacional y en los cuerpos deliberantes de las entidades federales y locales con población indígena se consagra una de las principales aspiraciones de los pueblos indígenas, tal como se expresa en las disposiciones transitorias. Ello les permitirá estar presentes en la elaboración de las distintas leyes y reglamentos del país, además de garantizarles su participación directa en las instancias de toma de decisiones de los poderes públicos que integran el Estado.

Los pueblos indígenas forman parte de la sociedad nacional y del pueblo venezolano que se reconoce como único, soberano e indivisible. El uso del término pueblo, tal como lo expresa claramente el texto constitucional, significa el reconocimiento de su identidad específica, de las características sociales, culturales y económicas que les son propias y que los diferencian del resto de la sociedad, por tanto el uso de dicho término no podrá interpretarse en el sentido que se le da en el derecho internacional.

Pero aunado a este Capítulo dedicado a los derechos indígenas, la Constitución consagra otras disposiciones en la materia.

Así, la Constitución establece que las lenguas indígenas tienen un valor primordial en sí mismas por ser el máximo instrumento intelectual de los pueblos que las usan, el más completo inventario de su cultura y la mejor imagen de su vida inmaterial y espiritual.

Por constituir un derecho de los pueblos indígenas y un patrimonio cultural de la Nación y de la humanidad, además del castellano, los idiomas indígenas también son de uso oficial para los pueblos indígenas y deben ser respetados en todo el territorio de la República. En tal virtud, los idiomas indígenas se emplearán en todos los procesos administrativos y judiciales en que sea necesario.

Por otra parte, se prevé que la legislación municipal establezca la organización del régimen de gobierno y administración local que corresponderá a los municipios con población indígena, tomando en cuenta la organización social y cultural específica de cada municipio indígena, sus autoridades tradicionales, así como el tipo de economía que estas comunidades practiquen, a fin de establecer una administración municipal que reconozca la capacidad de participación indígena en su hábitat y en el marco de su desarrollo sociocultural. Asimismo, se excluyen las tierras correspondientes a las comunidades y pueblos indígenas de la calidad de ejidos.

Por último, la Constitución se refiere al derecho que tienen los pueblos indígenas de seguir practicando sus sistemas normativos internos, para la regulación, sanción y restauración de la paz social. Este derecho a la justicia es un mecanismo de protección a los indígenas venezolanos, que históricamente han vivido en una sociedad que los excluyó y discriminó; en este caso no se trata de códigos o leyes escritas, sino de formas de justicia que han permitido a estos pueblos regularse internamente, enfrentar los conflictos y seguir manteniendo la cohesión colectiva mediante la aplicación de un sistema normativo reparatorio.

## Capítulo IX
### De los derechos ambientales

En lo que se refiere a los derechos ambientales, la Constitución, además de establecer por vez primera en nuestra historia constitucional un Capítulo especialmente dedicado a los mismos, supera, con una visión sistemática o de totalidad, la concepción del conservacionismo clásico que sólo procuraba la protección de los recursos naturales como parte de los bienes económicos.

En efecto, anteriormente la protección jurídica del ambiente se caracterizaba por una regulación parcial cuyo principal objeto era la conservación de los recursos naturales. Ahora, impulsados por una necesidad y una tendencia mundial, los postulados constitucionales exigen que la normativa en esta materia responda a políticas ambientales de amplio alcance que se inscriban en los parámetros contenidos en los tratados internacionales de carácter ambiental, todo ello con el objeto de garantizar un desarrollo ecológico, social y económicamente sustentable, en el que el uso de los recursos por parte de las presentes generaciones no comprometa el patrimonio de las futuras.

La Constitución en su preámbulo señala entre sus fines que debe promover nuestra sociedad, la protección del equilibrio ecológico y de los bienes jurídicos ambientales como patrimonio común e irrenunciable de la humanidad. Consecuente con ello, el texto constitucional se caracteriza por desarrollar con la amplitud necesaria, los derechos y deberes ambientales de cada generación, y por reconocer el derecho que ellas tienen a un medio ambiente seguro, sano y ecológicamente equilibrado. Destaca, en este sentido, la necesidad de mantener un eficaz desarrollo de la seguridad ambiental en las fábricas y complejos industriales.

Así, el Estado, con el objeto de garantizar un desarrollo ecológico, social y económicamente sustentable, protegerá el ambiente, la diversidad biológica, los recursos genéticos, los procesos ecológicos, los parques nacionales y monumentos naturales y demás áreas de especial importancia ecológica; al tiempo que velará por un medio ambiente libre de contaminación, en donde el aire, el agua, los suelos, las costas, el clima, la capa de ozono, las especies vivas, gocen de especial protección. De igual manera, el Estado desarrollará una política de ordenación del territorio que atienda a las exigencias del desarrollo sustentable, la cual deberá contar con la participación ciudadana.

Por otra parte, como una garantía insoslayable para la protección del ambiente se dispone que en todos los contratos que la República celebre, o en los permisos que se otorguen, que afecten recursos naturales, se considerará incluida, aun cuando no estuviere expresa, la obligación de conservar el equilibrio ecológico, de permitir el acceso a la tecnología y la transferencia de la misma en condiciones mutuamente convenidas y de restablecer el ambiente a su estado natural si éste resultare alterado, todo ello en los términos que determine la ley.

Aunado a ello, los principios contenidos en este Capítulo encuentran su transversalización axiológica en el texto constitucional, a través de otras disposiciones y principios que tienen como finalidad el desarrollo ecológico, social y económicamente sustentable de la Nación. Así, encuentra fundamento constitucional la obligatoriedad de la educación ambiental, las limitaciones a la libertad económica por razones de protección del ambiente, el carácter de bienes de dominio público que se le atribuye a las aguas, la agricultura sustentable como base estratégica del desarrollo rural integral, la protección del hábitat de los pueblos indígenas, entre otros.

## Capítulo X
### De los deberes

En este Capítulo, retomando principios de nuestra historia constitucional se consagran los deberes de los venezolanos. El origen de los deberes es la Declaración de los Derechos del Pueblo en 1811, publicada en la Gaceta de Caracas el 23 de julio de ese mismo año, en la cual se desarrollaron los derechos y deberes del hombre en sociedad. Luego, en la Constitución Federal de Venezuela de 1811 publicada en la Gaceta de Caracas el 27 de diciembre de ese mismo año, en su parte final se consagraron los deberes del hombre en sociedad conjuntamente con los deberes del cuerpo social, con fundamento en la figura romana del buen padre de familia.

Se consagra el deber de honrar y defender la Patria, independientemente de cualquier tipo de corriente ideológica, como una obligación consustancial con la nacionalidad. Este deber implica no sólo resguardar y proteger la soberanía, la nacionalidad y nuestra integridad territorial, sino además, defender y promover la autodeterminación política, territorial, cultural y social de la Nación. Además, rescatando nuestra historia republicana se extiende ese deber a la promoción y defensa de todo lo que identifica nuestra Nación, como los símbolos patrios y valores culturales.

Como consecuencia del principio de supremacía y fuerza normativa de la Constitución, así como del principio de legalidad, se consagra el deber de toda persona de cumplir y acatar el Texto Fundamental, las leyes y demás actos que en ejercicio de sus funciones legítimas dicten los órganos que ejercen el Poder Público.

Promoviendo una sociedad plural, armónica, solidaria, abierta, integrada y comprometida en todos sus ámbitos, se consagra el deber de toda persona de cumplir los requerimientos sociales y participar en la vida política, civil y comunitaria del país. En la búsqueda de estos propósitos se establece la obligación de promover y defender los derechos humanos siempre con fundamento en la convivencia democrática y en la paz social.

En virtud del principio de solidaridad social, se consagra el deber de toda persona de coadyuvar, en la medida de sus posibilidades, a los gastos públicos.

En armonía con los principios de participación y solidaridad social se consagra el deber de toda persona de prestar servicio civil, militar y electoral, cuando sea necesario para la defensa, preservación y desarrollo de la Nación, o bien para hacer frente a situaciones de calamidad pública.

No obstante, las obligaciones que tiene el Estado conforme a la Constitución y a la ley, se consagra el deber de toda persona de coadyuvar según su capacidad y aptitud, al cumplimiento de los fines que impone el bienestar social general, con base en los principios de solidaridad, responsabilidad social y asistencia humanitaria. Por ello, quienes aspiren al ejercicio de cualquier profesión deberán prestar servicio a la comunidad durante el tiempo, lugar y condiciones que determine la ley.

## TÍTULO IV
### DEL PODER PÚBLICO

#### Capítulo I
##### De las disposiciones fundamentales
###### Sección primera: disposiciones generales

El presente título referente al Poder Público, adquiere especial significación dado que se propone rescatar la legitimidad del Estado y de sus instituciones, recuperando la moral pública y la eficiencia y eficacia de la función administrativa del Estado, características complementarias e indispensables para superar la crisis de credibilidad y de gobernabilidad que se ha instaurado en el país en los últimos tiempos.

En las Disposiciones Generales, en primer lugar se consagra la conocida distribución vertical del Poder Público: Poder Municipal, Estadal y Nacional; colocados en este orden según su cercanía con el ciudadano, sujeto protagónico de este modelo de democracia participativa.

En lo que respecta a la distribución horizontal del Poder Público Nacional se incorporan, además de las funciones tradicionales, la innovación de los denominados Poder Electoral y Poder Ciudadano. La razón de esta novedosa inclusión se entiende en un contexto social y político en el cual se deben dar signos claros del respeto a la independencia y autonomía funcional de la que deben gozar los órganos encargados de desarrollar las funciones respectivas, para facilitar la recuperación de la legitimidad perdida en terrenos tan delicados como el de los procesos electorales, así como el de la función contralora y la defensa de los derechos humanos.

Se consagra, igualmente, una división de las funciones que corresponden a cada rama del Poder Público, tanto en sentido vertical como horizontal. Pero si bien se acepta la especialidad de la tarea asignada a cada una de ellas, se establece un régimen de colaboración entre los órganos que van a desarrollarlas para la mejor consecución de los fines generales del Estado.

Se establece el principio restrictivo de la competencia, según el cual los órganos que ejercen el Poder Público sólo pueden realizar aquellas atribuciones que les son expresamente consagradas por la Constitución y la ley.

La usurpación de autoridad, consistente en la invasión del Poder Público por parte de personas que no gocen de la investidura pública, se considera ineficaz y los actos dictados se consideran nulos.

En cuanto a la responsabilidad individual consecuencia del ejercicio del Poder Público, se abarca tanto el abuso de poder, la desviación de poder, así como la violación de la Constitución y la Ley. Esta disposición es una de las que ha adolecido de ineficacia, por lo cual su consagración en esta Constitución implica generar los mecanismos legales para su aplicación efectiva.

Finalmente, en las disposiciones generales, se establece bajo una perspectiva de derecho público moderna la obligación directa del Estado de responder patrimonialmente por los daños que sufran los particulares en cualquiera de sus bienes y derechos, siempre que la lesión sea imputable al funcionamiento, normal o anormal, de los servicios públicos y por cualesquiera actividades públicas, administrativas, judiciales, legislativas, ciudadanas o electorales, de los entes públicos e incluso de personas privadas en ejercicio de tales funciones.

#### Sección segunda: de la administración pública

Por definición, la función ejercida por la Administración Pública está sujeta al servicio público o interés general, por ende debe estar al servicio de la ciudadanía sin ningún tipo de distinciones, de privilegios o discriminaciones. En este contexto la aplicación de este contenido implica el cambio de una cultura y de unos hábitos organizacionales que han enturbiado y obstaculizado el ejercicio de esta función del Estado, desvinculándola hacia la satisfacción de intereses subalternos, con lo cual se ha facilitado la corrupción y la ineficacia e ineficiencia. Es por ello que se precisan los principios que deben fundamentar a la Administración Pública, los cuales no requieren de mayor explicación: honestidad, participación, celeridad, eficacia, eficiencia, transparencia, rendición de cuentas y responsabilidad. Principios que expresan con claridad el nuevo camino que deben seguir los funcionarios que ejerzan el Poder Público. Además de estos principios rectores se reitera el sometimiento a la ley y al derecho, es decir, el principio de la legalidad de la actividad administrativa.

Los institutos autónomos son materia de reserva legal. Asimismo están sometidos, conjuntamente con los intereses públicos en entidades, al control estatal según sea desarrollado en la ley.

Se consagra en favor de ciudadanos y ciudadanas, el derecho a la información oportuna y veraz por parte de la Administración Pública. Este derecho adquiere suficiente amplitud y precisión, ya que abarca lo relativo a las actuaciones de las cuales sean parte interesada, así como al conocimiento de las resoluciones definitivas que se dictaren, y acceso a los archivos y registros administrativos, salvo las excepciones legales. Como complemento a esta disposición se establece la prohibición absoluta de la censura a los funcionarios públicos en relación con su deber correlativo al derecho a la información consagrado en esta disposición.

#### Sección tercera: de la función pública

Como introducción a la regulación establecida en esta Sección conviene resaltar la importancia y significación que la nueva Constitución le otorga a la función pública, en la medida en que la honestidad, la eficiencia y la eficacia de su ejercicio constituyen prioridades indiscutibles dentro de las exigencias que la sociedad venezolana ha manifestado con mensajes precisos y contundentes. Los vicios más enraizados en el sistema político, como el clientelismo, que tanto daño ha causado al pueblo venezolano, están relacionados íntimamente con la falta de líneas claras en torno a lo que debe ser la función pública y la creación de una política de recursos humanos concisa con los ideales de la gerencia pública moderna. La gobernabilidad, entendida como la satisfacción plena de las demandas sociales, sólo puede alcanzarse en la medida que se adopten políticas orientadas en este sentido.

Se consagra la creación del Estatuto de la función pública mediante ley, en la cual se regulará lo relativo a la política de recursos humanos aplicable a los funcionarios de la Administración Pública. Se deberá regular el ingreso, ascenso, traslado, suspensión y retiro y, asimismo, la incorporación de los mismos a la seguridad social. Igualmente se consagrará por vía legal las funciones y requisitos para el ejercicio de los cargos respectivos. Es precisamente en el marco de estas normativas donde deberán ser desarrolladas por la ley, el espacio en el cual se debe garantizar los niveles de idoneidad tanto profesional como ético de las personas que ingresen en la Administración Pública. El principal freno a las conductas contrarias a la legalidad y a la moral pública depende, en buena parte, de las políticas de ingreso, permanencia y ascenso en la carrera administrativa.

Contrario a los hábitos organizacionales generados por el clientelismo político, se establece el deber de los funcionarios o funcionarias públicos de servir al Estado, y por ende, al ciudadano y no a parcialidad alguna. Como complemento se establece que el nombramiento y remoción no podrán vincularse a la afiliación política. Tal aspecto se convierte en punto fundamental de este proceso de refundación del Estado, ya que el mismo depende de una voluntad política firme que convierta en realidad lo que hasta ahora ha sido una fantasía irrealizable. Evidentemente por vía legal y reglamentaria se deben afinar los mecanismos para garantizar el fiel cumplimiento de esta norma. Igualmente se prohíbe a quienes estén al servicio de los municipios, estados, República o demás personas jurídicas estatales de derecho público o privado la celebración de contratos con estas entidades, por sí mismos o por interpósita persona, salvo las excepciones legales.

Se establece como principio general que los cargos de la Administración Pública son de carrera, salvo los cargos de elección popular, los de libre nombramiento y remoción, los contratados y los obreros, así como otros tipos que indique la Ley. Este aspecto del

Case 1:18-cv-20818-DPG   Document 570-8   Entered on FLSD Docket 08/13/2018   Page 8 of 48

establecimiento de la carrera administrativa, constituye un pilar necesario para poder sustentar el edificio de una Administración Pública moderna, dinámica y eficiente. La depuración de la función pública, el rescate de la imagen del Estado, requiere de un compromiso ineludible con la satisfacción de esta exigencia que la sociedad ha expresado reiteradamente.

En este mismo contexto el ingreso a la carrera administrativa será exclusivamente por concurso público que garantice la selección de los mejores, tanto en el aspecto ético como en el de la preparación técnica y profesional. Por ello dicho concurso se sujeta a los principios de honestidad, idoneidad y eficiencia. En adelante, no se podrá acceder a la carrera administrativa por designaciones o contrataciones que obvien este mecanismo de selección objetivo, ni se podrá adquirir estabilidad por el transcurso del tiempo en el ejercicio de algún cargo de carrera. Sólo el concurso público dará acceso a la carrera administrativa y a la consecuente estabilidad del funcionario.

Igualmente, para el ascenso, se someterá a un sistema de evaluación que reporte una calificación de méritos de los funcionarios públicos en forma periódica. Ello implica una evaluación objetiva de la gestión personal de los funcionarios y un programa de formación y capacitación al cual se deberán someter. De esta forma el ascenso debe encontrarse vinculado a la eficiencia, disciplina y desarrollo de los conocimientos, destrezas y habilidades del funcionario.

De otra parte, la permanencia del funcionario en la carrera administrativa tiene que estar relacionada con un resultado positivo de la evaluación de su desempeño. Esta evaluación debe ser objetiva y periódica. De esta forma se potencia el esfuerzo del funcionario por mejorar su gestión, y en ese sentido gozará de estabilidad, ascenderá y obtendrá mayores beneficios laborales. Por el contrario, si el resultado de la evaluación del desempeño del funcionario es negativa, el funcionario será removido de la función pública.

Tales principios deben ser desarrollados por vía legal de manera de restringir la discrecionalidad en la toma de decisiones relacionadas con estos aspectos, estableciendo las exigencias para poder optar a dichos concursos y así poder ascender en la carrera administrativa. Correlativo a ello deberá avanzarse hacia la conformación de instancias estatales que contribuyan a la formación y actualización permanente del funcionario público.

La ocupación de cargos públicos remunerados requiere como exigencia indispensable la previsión presupuestaria respectiva. Por vía reglamentaria y según la ley, se establecerán las escalas de salarios, pudiendo establecerse los límites razonables a las remuneraciones en las diferentes ramas del Poder Público municipal, estadal o nacional. Igualmente, por ley nacional se establecerá el régimen de jubilaciones y prestaciones a estos niveles. El objetivo de esta norma es mantener dentro de los parámetros razonables y en el contexto de la situación económica del país los niveles de las remuneraciones de los funcionarios públicos.

Para evitar las irregularidades que se han cometido continuamente en desmedro de la eficiencia y de la eficacia de la Administración Pública, se prohíbe expresamente desempeñar más de un destino público remunerado, salvo las excepciones de cargos académicos, accidentales, asistenciales o docentes según la ley. Para darle eficacia a este dispositivo se requiere la existencia de archivos confiables y actualizados que impidan la recurrencia en este vicio que constituye un verdadero fraude al interés colectivo. Igualmente se consagra la prohibición del disfrute de más de una jubilación o pensión, salvo las excepciones legales.

Como exigencia indispensable para la aceptación de cargos, honores o recompensas de gobiernos extranjeros se requiere la autorización de la Asamblea Nacional.

### Sección cuarta: de los contratos de interés público

En materia de contratos de interés público se mantiene, en general, la regulación constitucional existente, aunque se mejora su redacción. Se prevé, así, como regla general que los contratos de interés público nacional deberán ser aprobados por la Asamblea Nacional en los casos que determine la ley. No obstante, se establece con carácter preceptivo esta aprobación en los supuestos de contratos de interés público nacional, estadal o municipal si los mismos pretenden celebrarse con Estados o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela.

Por otra parte, se conserva como regla general el sometimiento de dichos contratos a las leyes y a la jurisdicción venezolana. Sin embargo, por vía de excepción, en los casos en que la naturaleza del negocio así lo permita, determinadas controversias del contrato podrán someterse a otra jurisdicción.

### Sección quinta: de las relaciones internacionales

En la Constitución las relaciones internacionales de la República responden a los fines del Estado en el ejercicio de la soberanía y de los intereses del pueblo. En esta sección se establecen los principios de independencia, igualdad entre los estados, libre determinación y no intervención, solución pacífica de los conflictos internacionales, cooperación, respeto de los derechos humanos, solidaridad entre los pueblos. Además de la defensa de estos principios, la Constitución impone a la República la práctica democrática en la participación y toma de decisiones en el seno de organismos e instituciones internacionales.

Se promueve la integración latinoamericana y caribeña, la cual adquiere carácter constitucional en la búsqueda de la creación de una Comunidad de Naciones. A tales fines, se permite la suscripción y ratificación de tratados internacionales, bilaterales o multilaterales, en el marco de procesos de integración que tengan carácter supranacional. Como consecuencia de ello, las decisiones que adopten los órganos supranacionales que surjan de los procesos de integración, son de aplicación directa e inmediata en Venezuela.

En todo caso, el reconocimiento y fortalecimiento que la Constitución ofrece a los procesos de integración con carácter supranacional, ha tenido entre otros objetivos, darle un marco constitucional sólido a los procesos de integración de los cuales Venezuela es parte, así como reconocer la validez de todos los tratados que han

sido suscritos y ratificados por Venezuela en dicho proceso, y de todas las decisiones o directivas dictadas hasta la entrada en vigencia de la nueva Constitución, por los órganos supranacionales de la Comunidad Andina.

### Capítulo II
### De la competencia del Poder Público Nacional

En esta Constitución se actualizan las competencias del Poder Nacional, incorporando materias nuevas tales como la determinación de los tipos impositivos o alícuotas de los tributos estadales o municipales; la creación y organización de impuestos territoriales o sobre predios rurales, así como transacciones inmobiliarias, cuya recaudación y control corresponderá a los municipios; la administración del espectro electromagnético; el régimen general de los servicios públicos domiciliarios; el manejo de la política de fronteras; la legislación en materia de pueblos indígenas y territorios por ellos ocupados; así como la organización y funcionamiento de los órganos del Poder Público Nacional y demás órganos e instituciones del Estado.

A continuación se incluye una declaración general sobre la valoración del concepto de descentralización, como lineamiento estratégico de la política de desarrollo, no sólo a los fines de la democratización de lo público sino también como elemento decisivo para promover la efectividad y eficiencia de los cometidos estatales.

### Capítulo III
### Del Poder Público Estadal

Comienza con la caracterización de los estados como entidades autónomas e iguales en lo político, con el atributo de personalidad jurídica plena, haciendo mención expresa del compromiso de mantener la integridad nacional y cumplir y hacer cumplir la Constitución y las leyes de la República, que es la esencia del pacto federal.

Se definen los órganos superiores de las entidades estadales, a saber, el gobernador y el Consejo Legislativo, con las funciones de gobierno y administración el primero, y de legislación y de deliberación política el segundo. Se señalan los requisitos del cargo y el período de duración del mandato del gobernador, además de la obligación de rendición de cuenta ante el Contralor del Estado y la presentación de un informe del mismo ante el Consejo Legislativo y el Consejo de Planificación y Coordinación de Políticas Públicas.

En el caso de la rama legislativa y deliberante de los estados, se define su órgano que es el Consejo Legislativo, su conformación, sus atribuciones y sus requisitos para ser integrante del Consejo Legislativo.

Se establece la existencia en cada estado de una Contraloría que gozará de autonomía orgánica y funcional.

En la distribución de competencias que corresponden a la Constitución se definen en este capítulo la competencia exclusiva de los estados, manteniéndose y ampliándose las previstas en la Ley Orgánica de Descentralización. En cuanto a las competencias concurrentes se adopta la experiencia del Derecho Comparado en materia de descentralización y se asume que las leyes nacionales tienen la naturaleza de leyes bases, en las que se establecen conceptos generales, básicos y orientadores; y las leyes estadales son leyes de desarrollo de esos principios básicos, lo que permitirá mejores condiciones para la delimitación de competencias. Se prevé la creación en cada estado de un Consejo de Planificación y Coordinación de Políticas Públicas, dejando su organización y funcionamiento a lo que determine la ley.

Se definen los ingresos de los estados dentro de una visión integral de la materia hacendística pública, con especial atención al problema del financiamiento de las autonomías territoriales. Todo ello en un esfuerzo de armonización de las distintas potestades fiscales, para el desarrollo de estados y municipios.

### Capítulo IV
### Del Poder Público Municipal

Se inicia con una norma de caracterización del Municipio, en la cual se incluye el reconocimiento expreso de la autonomía municipal con la definición del contenido mínimo que corresponde a esa cualidad esencial, así como la garantía jurisdiccional de la misma. Se incorpora una declaración general sobre la participación como elemento consustancial con la naturaleza del gobierno y la administración municipal.

Se estableció la remisión a la legislación de la materia correspondiente al desarrollo de los principios constitucionales relativos a los municipios y demás entidades locales, imponiéndose a tal efecto, la necesidad de partir de la diversidad municipal de modo imperativo y no como una simple orientación al legislador, abarcando no sólo la organización municipal propiamente tal, sino también en lo que respecta a sus competencias y recursos. Se enfatiza la necesidad de que dicha legislación establecerá opciones para la organización de gobierno y administración de los municipios indígenas.

Se ha previsto la posibilidad de que los municipios se asocien en mancomunidades, así como la creación de modalidades asociativas intergubernamentales.

Se prevé la organización de los municipios en distritos metropolitanos mediante ley, lo que permite el diseño de un régimen más auténtico para la organización distrital que no debe quedar constreñido a una forzada reproducción a escala de la organización municipal.

Se propone una habilitación general al legislador para crear condiciones de elegibilidad, prohibiciones y causales de inhibición para la postulación y ejercicio de las funciones de alcaldes y concejales.

Respecto a los ingresos, se consagran y caracterizan en la Constitución los ramos de ingresos, incluyendo aquellos de naturaleza tributaria que corresponden al municipio de manera irrestricta, dejando abierta la posibilidad de que por vía del desarrollo legislativo puedan ser creados otros impuestos, tasas y contribuciones especiales.

Además del enunciado del sistema de ingresos se consagra que la potestad tributaria de los municipios es distinta y autónoma de las potestades reguladoras que esta Constitución o las leyes atribuyan al Poder Nacional o Estadal. Asimismo, se establecen las inmunidades frente a la potestad impositiva de los municipios a favor de los demás entes politicoterritoriales, se extiende sólo a las personas jurídicas estatales creadas por ellos, pero no a concesionarios ni a otros contratistas.

Se ha incluido una norma que establece la presunción del carácter de ejidos de los terrenos ubicados en el área urbana de las Municipios, sin menoscabo de legítimos y mejores títulos de terceras personas, válidamente constituidos. Igualmente, se constituyen en ejidos las tierras baldías ubicadas en el área urbana, dejándoles la excepción para las tierras correspondientes a las comunidades y pueblos indígenas.

Se ha incorporado la creación del Consejo Local de Planificación Pública que tiene por objeto la planificación, coordinación y cooperación en la definición y ejecución de las políticas públicas.

Se incluye una norma que consagra la creación mediante ley, de los mecanismos necesarios para que los estados y municipios formalicen el compromiso de descentralización hacia las comunidades y grupos vecinales, organizando los servicios que éstos gestionen previa demostración de su capacidad.

### Capítulo V
### Del Consejo Federal de Gobierno

Como órgano constitucional de carácter interterritorial se crea el Consejo Federal de Gobierno, reflejo en el plano de la organización del Estado de los principios de integridad territorial, cooperación, solidaridad, concurrencia y responsabilidad sancionados en el Título 1 de la Constitución relativo a los Principios Fundamentales. Es, pues, un órgano producto de la fase más avanzada del federalismo, el federalismo cooperativo, superación histórica de lo que ha sido denominado federalismo dual que entendía al Estado como producto de un pacto entre los distintos entes politicoterritoriales los cuales tendrían una esfera de soberanía no delegada a la Unión y, en principio, intangible a la acción del Poder Federal.

Las funciones de este Consejo Federal de Gobierno serán básicamente las de planificar y coordinar horizontalmente las políticas y acciones para el desarrollo del proceso de descentralización y la administración del Fondo de Compensación Interterritorial destinado al financiamiento de inversiones públicas con el fin de promover el desarrollo equilibrado de las regiones de menor desarrollo relativo.

En fin, es clara la superación que representa esta figura organizativa con respecto a la Convención de Gobernadores, único mecanismo cooperativo previsto en la Constitución precedente de 1961.

### TÍTULO V
### DE LA ORGANIZACIÓN DEL PODER PÚBLICO NACIONAL

#### Capítulo I
#### Del Poder Legislativo Nacional
##### Sección primera: disposiciones generales

El Poder Legislativo Nacional es ejercido por una Asamblea Nacional cuya estructura unicameral responde al propósito de simplificar el procedimiento de formación de las leyes, reducir los costos de funcionamiento del parlamento, erradicar la duplicación de órganos de administración y control y la duplicación de comisiones permanentes, entre otras cosas.

Los diputados que integran la Asamblea Nacional son elegidos, en cada entidad federal, según una base poblacional de uno coma uno por ciento de la población total del país; además, corresponderán tres diputados por cada entidad federal y habrá tres diputados en representación de los pueblos indígenas. El período de duración del mandato es de cinco años, pudiendo ser reelegidos hasta por dos períodos consecutivos como máximo. De acuerdo con lo expuesto, el número de diputados de la Asamblea Nacional sólo aumentará o disminuirá en la misma medida en que aumente o disminuya la población, en una o varias entidades federales.

Con esta forma de integración y con la estructura unicameral del órgano legislativo nacional desaparecen los llamados diputados adicionales; además, en virtud de la eliminación del Senado, desaparece la figura del senador vitalicio.

La representación parlamentaria, de acuerdo con el artículo 186 del texto constitucional, reviste un doble carácter. El diputado es, al mismo tiempo, representante de la entidad federal y representante popular, lo cual reafirma el artículo 201 al expresar que los diputados son representantes del pueblo y de los Estados en su conjunto.

Ese doble carácter de la representación parlamentaria exige de los candidatos haber residido en la entidad federal en los cuatro años que aspiran ser elegidos, por lo menos, durante los cuatro años anteriores a la fecha de la elección. Este requisito de elegibilidad unido a la obligación de la Asamblea Nacional de consultar a los Estados cuando ella trate de materias relativas a los mismos, acerca de palabra a los Estados en el proceso de formación de las leyes relativas a ellos y la iniciativa legislativa por parte de los Consejos Legislativos de los Estados, son complementos tanto del carácter federal de la representación parlamentaria como del contenido federal del Estado venezolano.

Por otra parte, el texto constitucional consagra los principios de la personalización de las elecciones y de la representación proporcional, dejando a la ley la tarea de gantizar la presencia de estos principios que constituyen parte sustancial del sistema democrático.

Respecto a las condiciones de inelegibilidad de los diputados, se obliga a la separación absoluta de sus cargos a los aspirantes, por lo menos tres meses antes de las elecciones, en los casos expresamente señalados, sin perjuicio de los que por ley puedan establecerse.

Las atribuciones de la Asamblea Nacional son las propias de todo órgano legislativo en un sistema de gobierno semipresidencial o semiparlamentario, como el nuestro. Destacan la función legislativa, la función de control político sobre la Administración Pública Nacional y sobre el Gobierno, las autorizaciones y, en particular, los mecanismos de control del órgano legislativo sobre el Poder Ejecutivo a través del voto de censura al Vicepresidente y a los Ministros, cuyo procedimiento es especial y requiere de votación calificada. Otros mecanismos de control son las interpelaciones, las investigaciones, las preguntas, las autorizaciones y las aprobaciones. La Asamblea Nacional podrá declarar la responsabilidad política de los funcionarios públicos y solicitar al Poder Ciudadano que intente las acciones para hacerla efectiva. Los funcionarios públicos están obligados a asistir a las comisiones y a suministrar las informaciones y documentos que éstas requieran para el cumplimiento de sus funciones. Esta obligación incumbe también a los particulares, sin perjuicio de los derechos y garantías que la Constitución consagra. El valor probatorio de los resultados obtenidos en ejercicio de esta función será establecido de conformidad con la ley.

El voto de censura, dado por las tres quintas partes de los diputados, da lugar a la remoción del Vicepresidente o de los Ministros, según sea el caso. En el caso de la remoción del Vicepresidente en tres oportunidades, dentro de un mismo período constitucional, la Constitución faculta al Presidente de la República, como un mecanismo de equilibrio democrático, para disolver la Asamblea Nacional y convocar a elecciones anticipadas dentro de los sesenta días siguientes a la disolución para elegir una nueva legislatura, todo lo cual se hará mediante Decreto aprobado en Consejo de Ministros. No podrá disolverse la Asamblea Nacional en el último año de su período constitucional.

La Asamblea Nacional promoverá la organización y la participación ciudadana en los asuntos de su competencia y tendrá iniciativa en materia de leyes, enmienda, reforma y Asamblea Constituyente.

En lo relativo a la organización y funcionamiento de la Asamblea Nacional, el número de comisiones queda limitado a quince, aun cuando mediante votación calificada de las dos terceras partes de los diputados se pueda disminuir o aumentar su número. Igualmente se definen las figuras del Presidente, dos Vicepresidentes, un Secretario y un Subsecretario de la Asamblea Nacional, remitiéndose al reglamento las formas de resolver las faltas temporales y absolutas de estos cargos.

La Comisión Delegada se integra con la Junta Directiva de la Asamblea Nacional y los Presidentes de las Comisiones Permanentes atendiéndose al criterio del conocimiento en una determinada materia que corresponde a sus integrantes.

En cuanto al control sobre los diputados, se busca el ejercicio efectivo y eficiente de la función parlamentaria, al tiempo que obliga a la vinculación con las entidades federales y el pueblo. El Estado requiere un desarrollo legislativo acorde con los cambios del país y un eficiente control sobre la Administración Pública y el Gobierno. De allí que el ejercicio de la función parlamentaria sea a dedicación exclusiva, salvo las excepciones establecidas. Los diputados están obligados a mantener vinculación permanente con sus electores, atendiendo sus opiniones y sugerencias, informándolos acerca de su gestión y la de la Asamblea; que rindan cuenta anualmente de la gestión y que estén sometidos al referendo revocatorio del mandato, con la consecuencia inmediata, en caso de producirse, de no poder ejercer cargos de elección popular dentro del período siguiente.

Un elemento imprescindible para el logro de lo señalado es asegurarle al diputado una retribución económica que asegure su independencia, sin que su condición de parlamentario implique privilegios personales ni abuso de las prerrogativas garantizadas por la Constitución ni la percepción de beneficios económicos indebidos.

Se consagra la inmunidad parlamentaria como una garantía del ejercicio autónomo de las funciones legislativas respecto de los otros poderes y como garantía para el mejor y efectivo cumplimiento de la función parlamentaria. Sin embargo, la inmunidad sólo está referida al ejercicio de las funciones parlamentarias desde el momento de la proclamación por parte del órgano electoral competente hasta la conclusión del mandato. Su desconocimiento por parte de los funcionarios públicos ocasiona sanciones de naturaleza penal que el legislador deberá establecer en la ley correspondiente.

En cuanto a los presuntos delitos cometidos por los diputados, conocerá el Tribunal Supremo de Justicia en forma privativa, siendo la única autoridad que, previa autorización de la Asamblea Nacional, podrá ordenar la detención o continuar el enjuiciamiento, según sea el caso. En caso de delito flagrante cometido por algún diputado, la autoridad competente pondrá a éste bajo custodia en su residencia y comunicará de manera inmediata el hecho al Tribunal Supremo de Justicia.

El texto constitucional incorpora un conjunto de cambios en cuanto a la definición de la ley y en cuanto a las leyes orgánicas. La ley es todo acto sancionado por la Asamblea Nacional como cuerpo legislador, entendiéndose que para ello deberá seguirse el procedimiento que el propio texto constitucional establece.

Por otra parte, la Constitución establece cinco tipos de leyes orgánicas: las que ella misma denomina como tales, las que se dictan para organizar los poderes públicos, las que se dictan para desarrollar derechos constitucionales, las que sirvan de marco normativo a otras leyes y las que hayan sido calificadas como tales por la Asamblea Nacional, en cuyo caso éstas habrán de ser remitidas a la Sala Constitucional del Máximo Tribunal, para que se pronuncie acerca de la constitucionalidad de su carácter orgánico, esto con el propósito de evitar el uso indiscriminado de tal denominación.

En cuanto a la iniciativa legislativa se incorporan al texto constitucional tres nuevos elementos de iniciativa, el Poder Ciudadano, el Poder Electoral y los Consejos Legislativos Estadal, cuando se trate de leyes relativas a los Estados. Se destaca la obligatoriedad de la Asamblea Nacional de discutir los proyectos de ley presentados por iniciativa ciudadana y el sometimiento de dichos proyectos a referendo aprobatorio, cuando no fuere discutido por la Asamblea.

En la etapa de discusión y aprobación de los proyectos de ley, se introduce la obligación de abrir procesos de consulta a los otros órganos del Estado, a los ciudadanos y a la sociedad organizada. Cada proyecto de ley recibirá dos discusiones en el seno de la Asamblea, en días diferentes, no consecutivos. La primera discusión versará sobre la exposición de motivos y la pertinencia del proyecto de ley, leyéndose el articulado en conjunto, mientras que la segunda se realizará artículo por artículo.

### Capítulo II
### Del Poder Ejecutivo Nacional

La Constitución eleva el período presidencial a seis años debido a la modificación del sistema de controles politicosociales sobre el Ejecutivo Nacional. Y, como una innovación estructuralmente importante, desde el punto de vista de la legitimidad y responsabilidad del Presidente en el ejercicio del Ejecutivo Nacional, se permite su reelección inmediata por una sola vez para un nuevo período.

Esta nueva regulación constitucional trula la irresponsabilidad política de los Presidentes que caracterizó el período republicano que culmina con la aprobación de la nueva Constitución. De esta manera, quien sea titular de la Presidencia puede ser evaluado políticamente por su gestión en dos oportunidades: la primera, cumplida más de la mitad del período presidencial de seis años, por la solicitud del veinte por ciento o más de los electores para efectuar un referendo revocatorio del mandato; y la segunda, por la postulación del Presidente a la reelección popular para un segundo mandato. En ambos casos, el pueblo determina la suerte del Presidente, confirmando su confianza para que se mantenga en el cargo, o retirándole su apoyo, con la consecuencia de su retiro forzado. En realidad, es un medio de profundización de la democracia mediante dos mecanismos de control social sobre la gestión del Estado que se particularizan en la sujeción del Presidente a la voluntad popular.

Una de las innovaciones más importantes del texto constitucional consiste en la sustancial modificación del sistema de gobierno, al incorporar un diseño de sistema semipresidencial que se puede calificar como flexible.

Este nuevo arreglo institucional se sustenta en dos importantes orientaciones: la primera, la distinción y separación orgánica flexible entre las funciones de jefatura de Estado y de jefatura de gobierno; y la segunda, el establecimiento de una nueva relación entre el Poder Legislativo y el Poder Ejecutivo a manera de sistema de controles y equilibrios de poder.

La ingeniería constitucional del nuevo sistema de gobierno semipresidencial flexible se sustenta en la creación de la figura del Vicepresidente Ejecutivo. Esta nueva institución, a pesar de su denominación de Vicepresidente, es mucho más que la tradicional figura vicepresidencial que acostumbran los sistemas de gobierno americanos. En propiedad, el Vicepresidente que contempla la Constitución no es el típico cargo que tiene la función de resolver la sucesión presidencial por la ausencia temporal o absoluta del Presidente de la República. Más que ello, el Vicepresidente es una institución que comparte con el Presidente el ejercicio de su jefatura de gobierno y responde políticamente por la gestión general del gobierno frente al Parlamento.

Las funciones otorgadas por la Constitución al Vicepresidente de la República son esenciales para el normal desenvolvimiento del Ejecutivo Nacional y de las relaciones entre éste y la Asamblea Nacional. La primera de ellas se refiere a la colaboración con el Presidente en la dirección de la acción del Gobierno y, como competencia que le es propia, la coordinación de la Administración Pública Nacional con las instrucciones que le imparta el Presidente. Esta función consagra a la Vicepresidencia en el medio fundamental de apoyo del Presidente y la convierte en una instancia de dirección y coordinación sobre la Administración Pública Nacional que supone, con la competencia de proponer el nombramiento y remoción de los Ministros, una jerarquía directa sobre éstos y sobre las demás autoridades del Poder Ejecutivo Nacional. En tal sentido, la Vicepresidencia es el órgano natural de rectoría del sistema de registro, seguimiento y control de las decisiones presidenciales, se producen éstas por cuentas ministeriales o en Consejo de Ministros, y de los sistemas de seguimiento, evaluación y control de las políticas públicas sectoriales.

La segunda función del Vicepresidente corresponde a sus facultades para dirigir y coordinar el proceso descentralizador, para armonizar los intereses nacionales, estadales y municipales y para garantizar el debido equilibrio en el desarrollo económico social de las regiones. Estas facultades las ejerce el Vicepresidente de la República a través de la Presidencia del Consejo Federal de Gobierno, al cual se adscribe el Fondo de Compensación Interterritorial. La creación de este Fondo conlleva a la transformación del actual Fondo Intergubernamental para la Descentralización. De esta manera, el Vicepresidente es un doble instrumento o instancia para la coordinación, una coordinación horizontal del Gobierno Nacional y otra vertical entre los gobiernos territoriales.

La tercera función consiste en la asesoría que requiere el Presidente de la República como Jefe de Estado, para la formación de las políticas de Estado de largo alcance en el tiempo. Esta función la ejerce el Vicepresidente al presidir el Consejo de Estado que crea la Constitución. Este Consejo se encuentra, además, integrado por representantes de la Asamblea Nacional, del Tribunal Supremo de Justicia y de los gobernadores de los estados, convirtiéndolo en una instancia de confluencia de poderes para el acuerdo de políticas de Estado.

La cuarta función del Vicepresidente es la que lo encarga de las relaciones entre el Ejecutivo Nacional y la Asamblea Nacional. Función que convierte al Vicepresidente en el natural vocero del Gobierno ante la Asamblea Nacional.

Son estas funciones, más las atribuciones que el Presidente le puede delegar, las que convierten al Vicepresidente en un órgano fundamental para el funcionamiento del Estado, con poder suficiente para la coordinación interna del Poder Ejecutivo Nacional y la coordinación con los otros Poderes del Estado venezolano. El calificar el sistema presidencial como flexible se debe a que las atribuciones del Vicepresidente serán aún mayores en tanto el Presidente de la República le delegue sus propias atribuciones.

Por esta particular suma de funciones el Vicepresidente, como ejecutor de atribuciones de la jefatura de Gobierno, es sujetado por el control político de la Asamblea Nacional, como corresponde a un sistema de gobierno semipresidencial. Esta relación entre la Asamblea Nacional y el Vicepresidente se ha consagrado para permitir un clima de mayor comunicación entre el Legislativo y el Ejecutivo, que posibilite el acuerdo consensuado de políticas públicas y la colaboración general de los poderes en el cumplimiento de los fines y propósitos del Estado.

Una acción de gobierno que no cuente con cierto aval del Legislativo conllevaría, en algún momento, a la posibilidad de que la Asamblea Nacional aprobara un voto de censura sobre el Vicepresidente, con el cual quedaría automáticamente removido de su cargo. Pero, como equilibrio de este poder de control político de la Asamblea Nacional y para que la remoción constante de vicepresidentes no se convierta en una práctica obstruccionista, la Constitución sabiamente consagra la facultad del Presidente de convocar a elecciones anticipadas de la Asamblea Nacional cuando ésta remueva por tercera vez un Vicepresidente dentro de un período presidencial de seis años. Esta facultad es de ejercicio discrecional por el Presidente.

Este doble control entre el Legislativo y el Ejecutivo constituye un sistema de equilibrio del poder que permite, además, las salidas institucionales a las crisis políticas o crisis de gobierno, incrementando el nivel de gobernabilidad de la democracia. Así se posibilita un rango de estabilidad politicoinstitucional para la democracia y se evitan las salidas extrainstitucionales.

En cuanto se refiere a la protección de los derechos de la persona humana, la Constitución regula adecuadamente el principio de responsabilidad en el ejercicio del Poder Público, al establecer que la declaración de los estados de excepción no eximen de responsabilidad al Presidente de la República, al Vicepresidente Ejecutivo o a los Ministros.

La sección primera de este Capítulo II es nítida en lo referente a las faltas absolutas o temporales del Presidente de la República. En este sentido, adquiere un rol de particular importancia el Vicepresidente Ejecutivo de la República, al ser el suplente formal del Presidente de la República en las diferentes hipótesis de faltas tanto absolutas como temporales que contempla el texto constitucional.

La Sección Segunda detalla las competencias del Presidente de la República. En este sentido hay aspectos a resaltar que significan una mayor flexibilidad en el manejo de los asuntos públicos y una conducción más operativa de la Administración Pública por parte del Presidente de la República. Así, y siguiendo la tendencia del derecho comparado, se le permite al Presidente fijar el número, denominación, competencia y organización de los ministerios y otros organismos de la Administración Pública Nacional, así como también la organización y funcionamiento del Consejo de Ministros, dentro de los principios y lineamientos señalados por la correspondiente ley orgánica. Con esto se permite agilizar los trámites para hacer efectivas las exigencias de adaptabilidad de las estructuras administrativas, convirtiéndose el Presidente en el verdadero rector de la Administración Pública Nacional.

Finaliza el Capítulo del Poder Ejecutivo Nacional creando la institución del Consejo de Estado que, en el derecho comparado, como nos lo demuestran las experiencias francesa y colombiana, ha marcado, con estructura y funciones análogas, pauta en la profesionalización del ejercicio del Poder Público. En Venezuela será un órgano superior de consulta del Gobierno y la Administración Pública Nacional que recomendará políticas de interés nacional en aquellos asuntos que el Presidente de la República reconozca de especial trascendencia y requieran su opinión.

Queda así estructurado un Poder Ejecutivo Nacional moderno, dinámico, profesional, sujeto a controles políticos y al mismo tiempo generador de dinámicas políticas novedosas. Se trata de un capítulo que abre a Venezuela las puertas de una modificación profunda de sus instituciones políticas.

### Capítulo III
### Del Poder Judicial y del Sistema de Justicia

El Estado democrático y social de Derecho y de Justicia consagrado por la Constitución, al implicar fundamentalmente división de los poderes del Estado, imperio de la Constitución y las leyes como expresión de la soberanía popular, sujeción de todos los poderes públicos a la Constitución y al resto del ordenamiento jurídico, y garantía procesal efectiva de los derechos humanos y de las libertades públicas, requiere la existencia de unos órganos que, institucionalmente caracterizados por su independencia, tengan la potestad constitucional que les permita ejecutar y aplicar imparcialmente las normas que expresan la voluntad popular, someter a todos los poderes públicos al cumplimiento de la Constitución y las leyes, controlar la legalidad de la actuación administrativa y ofrecer a todas las personas tutela efectiva en el ejercicio de sus derechos e intereses legítimos.

El conjunto de órganos que desarrollan esa función constituyen el Poder Judicial y el Sistema de Justicia que se consagra en el Capítulo III del Título V de la Constitución, configurándolo como uno de los poderes del Estado.

En el referido Capítulo, la Constitución, con fundamento en el principio de soberanía, declara que la potestad de administrar justicia emana de los ciudadanos y se imparte en nombre de la República y por autoridad de la ley.

Sobre esta base, el Texto Constitucional constituye el sistema de justicia integrado por el Tribunal Supremo de Justicia, los demás tribunales que determine la ley, el Ministerio Público, la Defensoría Pública, los órganos de investigación penal, los auxiliares y funcionarios de justicia, el sistema penitenciario y los abogados autorizados para el ejercicio.

Por otra parte, se incorporan al sistema de justicia, los medios alternativos para la resolución de controversias, tales como el arbitraje, la mediación y la conciliación,

todo ello con el objeto de que el Estado los fomente y promueva sin perjuicio de las actividades que en tal sentido puedan desarrollar las academias, universidades, cámaras de comercio y la sociedad civil en general.

Asimismo, siendo que la administración de justicia no es monopolio exclusivo del Estado aunque sólo éste puede ejercer la tutela coactiva de los derechos, es decir, la ejecución forzosa de las sentencias, la Constitución incorpora al sistema de justicia a los ciudadanos que participan en el ejercicio de la función jurisdiccional integrando jurados o cualquier otro mecanismo que la ley prevea.

Además, como consecuencia del principio y derecho a la justicia gratuita consagrado en el Texto Constitucional, se establece que el Poder Judicial no está facultado para establecer tasas, aranceles, ni para exigir pago alguno por sus servicios.

El ingreso a la carrera judicial y el ascenso de los jueces será por concursos de oposición públicos, que aseguren la idoneidad, capacidad y probidad de los jueces designados. En tal virtud, todos los cargos de jueces o magistrados de tribunales o cortes, unipersonales o colegiados, distintos al Tribunal Supremo de Justicia, deberán ser designados mediante concurso público de oposición.

Se prevé que la ley regule lo referente a la capacitación y especialización de los jueces con la participación de las universidades, las cuales deberán organizar estudios universitarios al nivel de posgrado en el área de derecho, dirigidas a la especialización en la rama judicial.

La jurisdicción penal militar será integrante del Poder Judicial y sus jueces serán seleccionados por concurso. La competencia de los tribunales militares se limita a la materia estrictamente militar. En todo caso, los delitos comunes, violaciones de los derechos humanos o crímenes de lesa humanidad, serán procesados y juzgados por los tribunales ordinarios, sin excepción alguna.

Se constituye el Tribunal Supremo de Justicia como el máximo tribunal de la República y rector del Poder Judicial, el cual estará integrado por las Salas Constitucional, Politicoadministrativa, Electoral, de Casación Civil, de Casación Penal y de Casación Social.

Los Magistrados del Tribunal Supremo durarán en ejercicio de sus funciones doce años, no pudiendo ser reelectos. A los efectos de su elección se prevé la postulación correspondiente ante el Comité de Postulaciones Judiciales y un procedimiento especial que tiene por objeto una selección y elección pública, objetiva, transparente e imparcial de los candidatos. Será en definitiva la Asamblea Nacional la encargada de elegir a los Magistrados.

Corresponderá al Tribunal Supremo de Justicia, a través de la Dirección Ejecutiva de la Magistratura, el Gobierno y Administración del Poder Judicial, así como todo lo relacionado con la inspección y vigilancia de los tribunales de la República y la elaboración y ejecución del presupuesto del Poder Judicial.

### Capítulo IV
### Del Poder Ciudadano

Adaptando a nuestro tiempo las ideas inmortales del Libertador Simón Bolívar, la Constitución rompe con la clásica división de los poderes públicos y crea los Poderes Ciudadano y Electoral. El primero de ellos se inspira, en parte, en el Poder Moral propuesto por el Libertador en su proyecto de Constitución presentado al Congreso de Angostura el 15 de febrero de 1819. El Poder Electoral por su parte, encuentra su inspiración en el Proyecto de Constitución que el Libertador redactó para Bolivia en 1826.

El Libertador concibió el Poder Moral como la institución que tendría a su cargo la conciencia nacional, velando por la formación de ciudadanos a fin de que pudiera purificarse "lo que se haya corrompido en la República; que acuse la ingratitud, el egoísmo, la frialdad del amor a la patria, el ocio, la negligencia de los ciudadanos". Con ello, Simón Bolívar quería fundar una República con base en un pueblo que amara a la patria, a las leyes, a los magistrados, porque esas "son las nobles pasiones que deben absorber exclusivamente el alma de un republicano".

El Poder Moral del Libertador tenía entre sus misiones velar por la educación de los ciudadanos, en cuyo proceso se debía sembrar el respeto y el amor a la Constitución y a las instituciones republicanas, sobre la base de que "si no hay un respeto sagrado por la patria, por las leyes y por las autoridades, la sociedad es una confusión, un abismo".

Inspirada en esas ideas y adaptándolas a nuestro tiempo, la Constitución crea el Poder Ciudadano, el cual se ejercerá por el Consejo Moral Republicano integrado por el Defensor del Pueblo, el Fiscal General de la República y el Contralor General de la República.

El Poder Ciudadano es independiente de los demás poderes públicos y sus órganos gozan de autonomía funcional, financiera y administrativa, para lo cual se les asignará una partida anual variable dentro del presupuesto general del Estado.

En general, los órganos que ejercen el Poder Ciudadano tienen a su cargo la prevención, investigación y sanción de los hechos que atenten contra la ética pública y la moral administrativa. Además, deben velar por la buena gestión y la legalidad en el uso del patrimonio público, por el cumplimiento y la aplicación del principio de la legalidad en la actividad administrativa del Estado. De igual forma, deben promover en el ámbito de sus competencias, la educación como proceso creador de la ciudadanía, así como la solidaridad, la libertad, la democracia, la responsabilidad social y el trabajo, todo ello conforme a lo establecido en la Constitución y en las leyes.

Recogiendo una institución que nace en los países escandinavos y que ha tenido auge en Europa y en gran parte de América Latina, se crea la Defensoría del Pueblo como órgano del Consejo Moral Republicano que tiene a su cargo la promoción, defensa y vigilancia de los derechos y garantías establecidos en la Constitución y en los tratados internacionales sobre derechos humanos, además de los intereses legítimos, colectivos o difusos de los ciudadanos. La Defensoría del Pueblo

representa la institución del Poder Público más vinculada y cercana a los ciudadanos, cuyas funciones son esenciales para controlar los excesos del poder y garantizar que el sistema democrático no sólo sea una proyección constitucional, sino una forma de vida en sociedad con eficacia y realidad concreta, donde los derechos e intereses de los ciudadanos sean respetados.

Se atribuyen al Defensor del Pueblo las más amplias funciones y competencias en las materias antes señaladas, tales como velar por el efectivo respeto y garantía de los derechos humanos consagrados en esta Constitución y en los tratados, convenios y acuerdos internacionales sobre derechos humanos ratificados por la República.

Al Ministerio Público se le atribuyen todas aquellas funciones necesarias para el cumplimiento de los fines que debe gestionar ante la Administración de Justicia, tales como garantizar en los procesos judiciales el respeto de los derechos y garantías constitucionales, garantizar la celeridad y buena marcha de la administración de justicia, el juicio previo y el debido proceso.

La Contraloría General de la República, por su parte, será el órgano de control, vigilancia y fiscalización de los ingresos, gastos y bienes públicos, así como de las operaciones relativas a los mismos, para lo cual le otorga las más amplias competencias. Se prevé un sistema nacional de control fiscal, el cual será desarrollado por la ley.

### Capítulo V
### Del Poder Electoral

Como expresión del salto cualitativo que supone el tránsito de la democracia representativa a una democracia participativa y protagónica, se crea una nueva rama del Poder Público, el Poder Electoral, ejercido por órgano del Consejo Nacional Electoral que tiene por objeto regular el establecimiento de las bases, mecanismos y sistemas que garanticen el advenimiento del nuevo ideal u objetivo democrático. Una nueva cultura electoral cimentada sobre la participación ciudadana.

Para dimensionar su contenido es necesario integrar las disposiciones en este Capítulo V del Título V con las establecidas en el Capítulo IV de los derechos políticos y del Referendo Popular perteneciente al Título III del nuevo texto constitucional.

El nuevo esquema conlleva una modificación sustancial en la práctica electoral sobre la cual se edificó el anterior modelo, desde la concepción del sufragio como derecho, hasta la consagración de nuevas formas de participación que trascienden, con creces a la simple formulación de propuestas comiciales. Se expresa esta nueva concepción a través de la implementación de instituciones políticas como la elección de cargos públicos, el referendo, la consulta popular, la revocatoria del mandato, la iniciativa legislativa, constitucional y constituyente, el cabildo abierto y las Asambleas de ciudadanos y ciudadanas, cuyas decisiones revisten el carácter de vinculante, entre otros. Son estos, entonces, los novedosos medios que le garantizan al pueblo la participación y protagonismo en el ejercicio de su soberanía.

En tal sentido, resultan trascendentes las formas en que el ciudadano puede participar en la formación, ejecución y control de la gestión pública, pues ella no se limita a la intermediación de los partidos políticos, sino que puede hacerse en forma directa, en perfecta sujeción al concepto de soberanía que en forma expresa prevé el artículo 5 del novísimo texto constitucional.

En general, se atribuye al Poder Electoral la facultad atinente a la constitución, renovación y cancelación de asociaciones con fines políticos, lo que viene relacionado con el origen o nacimiento de dichas organizaciones al mismo tiempo que con su funcionamiento y desarrollo, el cual se sujeta al estricto respeto de los mecanismos de consulta democrática y participativa consagrados en la Constitución, a los cuales deben igualmente sujetarse los estatutos que regulen la vida de estas instituciones.

Como principios que debe desarrollar y garantizar la legislación en materia electoral se encuentran la igualdad, confiabilidad, imparcialidad, transparencia y eficiencia de los procesos electorales, así como la aplicación de la personalización y la representación proporcional en las elecciones. Estos principios constituyen atributos o cualidades que deben conformar los nuevos sistemas electorales que se adopten y, en tal sentido deben ser asumidos como elementos diferenciadores de los que constituyen las bases de integración de los distintos cargos de elección popular, la que referida fundamentalmente a la Asamblea Nacional está integrada por tres condicionantes, a saber: la base poblacional, la representación federativa de cada entidad y la representación de las minorías, en nuestro caso los pueblos indígenas. Se adopta de esta manera un criterio de integración cerrado, conformado por un número fijo de representantes cuya modificación sólo vendría dada por el incremento de la base poblacional; tal es la interpretación que se deriva de la disposición contenida en el artículo 186, propia de la concepción unicameral que para el Poder Legislativo Nacional preceptúa el texto constitucional, convertido en virtud de tal disposición en un claustro legislativo.

Especial mención, en la consagración de este nuevo Poder, merece por su novedad la integración del Registro Civil y Electoral, cuya organización, dirección y supervisión se atribuye al Poder Electoral; busca esta fórmula la posibilidad de explotar el desarrollo de mecanismos armónicos que permitan la conformación y depuración adecuada de un registro nacional como base fundamental para garantizar la transparencia de dicha institución.

Así, como rama del Poder Público, el Poder Electoral se rige por los principios de independencia orgánica, autonomía funcional y presupuestaria, despartidización de los organismos electorales, imparcialidad y participación ciudadana, descentralización de la administración electoral, transparencia y celeridad del acto de votación y escrutinio, para lo cual se crea un Comité de Postulaciones Electorales integrado por representantes de diferentes sectores de la sociedad, organismo que tendrá a su cargo hacer viables las elecciones de los miembros del Consejo Nacional Electoral, que en un número de cinco, provienen tres de la

sociedad civil, uno de las Facultades de Ciencias Jurídicas y Políticas de las Universidades Nacionales y uno del Poder Ciudadano.

Asimismo, el Poder Electoral asume no sólo las funciones que eran ejercidas por el anterior Consejo Nacional Electoral, extendidas o ampliadas a la organización y realización de los actos electorales destinados a la elección de cargos públicos, sino también las atinentes al régimen refrendario, elecciones de sindicatos, gremios profesionales y asociaciones con fines políticos, cuya regulación se remite a la Ley. Igualmente se establece la posibilidad de que el Poder Electoral participe en la organización de procesos electorales de otras organizaciones de la sociedad civil, previa solicitud de éstas con miras al desarrollo de vías o mecanismos de autofinanciamiento.

En tal sentido, y en atención al control jurisdiccional necesario de los actos, omisiones, vías de hecho emanados del Poder Electoral, a propósito de los procesos comiciales referidos y a su funcionamiento, el nuevo texto constitucional creó la Jurisdicción Contencioso Electoral, ejercida por la Sala Electoral del Tribunal Supremo de Justicia.

## TÍTULO VI
## DEL SISTEMA SOCIOECONÓMICO

### Capítulo I
### Del régimen socioeconómico y de la función
### del Estado en la economía

El Título VI de la Constitución se refiere al sistema socioeconómico. El régimen socioeconómico no se define de forma rígida, no obstante se consagran principios de justicia social, eficiencia, democracia, libre competencia e iniciativa, defensa del ambiente, productividad y solidaridad, fuera de cualquier dogmatismo ideológico con relación a la ya superada disputa sobre los roles del mercado y el Estado, evitando una visión extrema y excluyente de los contenidos sociales de todo sistema económico, pero sentando las bases de una economía de respeto a la acción individual.

El Estado no está ausente, tiene un papel fundamental como regulador de la economía para asegurar el desarrollo humano integral, defender el ambiente, promover la creación de valor agregado nacional y de fuentes de trabajo, garantizando la seguridad jurídica para fomentar, junto con la iniciativa privada, el desarrollo armónico de la economía nacional y la justa distribución de la riqueza. En suma, se plantea un equilibrio entre Estado y mercado, en razón de que el problema no es más Estado o menos Estado, sino un mejor Estado y el mercado no es un fin en sí mismo, sino un medio para satisfacer las necesidades colectivas; ese equilibrio debe prevalecer entre productividad y solidaridad, entre eficiencia económica y justicia social, dando libertad a la iniciativa privada y preservando el interés del colectivo.

El Estado debe orientar las políticas macroeconómicas y sectoriales para promover el crecimiento y el bienestar. Se reconoce como esencial la acción reguladora del Estado para establecer un marco normativo estable que brinde seguridad jurídica a la actividad económica, postulando una economía abierta a las inversiones extranjeras y garantizando que éstas estarán sujetas a las mismas condiciones de la inversión nacional.

Por conveniencia nacional el Estado queda facultado para reservarse determinadas actividades económicas, de manera particular en el sector minero y petrolero. De forma transparente se reconoce que el dominio sobre esas áreas puede hacerse de acuerdo con el sector privado, dejando claramente establecido que el Estado puede entrar en convenios de asociación con el sector privado para el desarrollo y la explotación de esas actividades. Se le otorga rango constitucional a la nacionalización petrolera, pero al mismo tiempo establece la posibilidad de continuar en convenios de asociación con el sector privado siempre y cuando sean de interés para el país, y no desnaturalice el espíritu, propósito y razón de la nacionalización petrolera.

El Estado se compromete a ejercer acciones prioritarias en algunos sectores económicos para darle dinamismo, sustentabilidad y equidad al desarrollo económico, tales como la actividad agropecuaria, la pequeña y mediana industria, el turismo, el sector de cooperativas y demás formas de la economía popular. La actividad de producción de alimentos queda establecida como esencial para el país, consagrándose el principio de la seguridad alimentaria en función del acceso oportuno y permanente de alimentos por parte de los consumidores.

### Capítulo II
### Del régimen fiscal y monetario

Otra importante innovación del texto fundamental es la introducción de principios constitucionales dirigidos a establecer como una obligación del Estado velar por la estabilidad macroeconómica, promoviendo un ambiente propicio para el crecimiento y la generación de bienestar para los ciudadanos.

La estabilidad macroeconómica se establece con base en tres principios fundamentales, a saber: equilibrio fiscal y un nivel prudente de deuda pública; autonomía del Banco Central en el cumplimiento de sus funciones, con un claro mecanismo de rendición de cuentas y coordinación transparente de las políticas macroeconómicas.

### Sección primera: del régimen presupuestario

El principio de equilibrio fiscal obliga que las finanzas públicas estén en orden, y en un plazo razonable de tiempo los ingresos ordinarios sean suficientes para cubrir los gastos ordinarios; ese plazo razonable de tiempo estará definido de acuerdo con la ley, en el plazo del marco plurianual del presupuesto. El equilibrio fiscal además debe ser consistente con un nivel prudente de deuda, aspectos sobre los cuales deberá hacerse legislación específica.

Se establece un límite al endeudamiento de acuerdo con la ley. El Estado debe mantener un nivel prudente de deuda pública acorde con el tamaño de la economía, la inversión productiva y la capacidad de generar ingresos para cubrir el servicio de la deuda.

Al establecer una regla de equilibrio presupuestario sostenible se dota a la política económica de un efectivo antídoto contra el endeudamiento público descontrolado. En el marco plurianual del presupuesto, que se fijará por ley, los ingresos ordinarios tienen que ser suficientes para cubrir los gastos ordinarios, es decir el Estado no puede endeudarse para cubrir el servicio de intereses de la deuda. Esta noción de equilibrio en el marco plurianual implica que es posible tener déficit en uno o dos años y luego corregir el desequilibrio, de forma de compensar déficits o superávits fiscales en el tiempo.

Se definen los plazos, reglas y facultades del Parlamento en la aprobación del presupuesto. En cuanto a los créditos adicionales, se restringe la opción de tal mecanismo a la existencia efectiva de recursos en tesorería, así se logra una disposición sana en el manejo presupuestario para enfrentar situaciones imprevistas, sin introducir perturbaciones en la disciplina fiscal, gracias a la presencia de una regla efectiva de equilibrio presupuestario, la cual es una de las innovaciones más importantes de la Constitución.

### Sección segunda: del sistema tributario

Se mantiene que en la Constitución sólo deben estar los principios básicos que definan y regulen el sistema tributario. Este criterio de brevedad y sencillez coincide con recientes Constituciones de América Latina.

El sistema tributario procurará la justa distribución de las cargas públicas según la capacidad económica del contribuyente, atendiendo al principio de progresividad, así como a la protección de la economía nacional y a la elevación del nivel de vida de la población, y deberá sustentarse para ello en un sistema eficiente para la recaudación de los tributos. Se establece que la evasión fiscal, sin perjuicio de otras sanciones establecidas por la ley, podrá ser castigada penalmente.

Como disposición transitoria se prevé que dentro de los dos años siguientes a la entrada en vigencia de esta Constitución, la Asamblea Nacional dicte una reforma del Código Orgánico Tributario que contribuya a modernizar la administración tributaria, ampliando las facultades de regulación, control y penalización del fraude fiscal.

### Sección tercera: del sistema monetario nacional

Se le da rango constitucional a la autonomía del Banco Central de Venezuela en el ejercicio de sus funciones para alcanzar un objetivo único y exclusivo. Este se precisa como el de estabilizar el nivel de precios para preservar el valor de la moneda. La autonomía del Banco Central implica que la autoridad monetaria debe ser independiente del Gobierno y se prohíbe constitucionalmente toda práctica que obligue al Banco Central a financiar o convalidar políticas fiscales deficitarias. En el ejercicio de sus funciones el Banco Central de Venezuela no podrá emitir dinero sin respaldo.

La autonomía también implica asumir responsabilidades ante la sociedad y exige establecer un mecanismo de rendición de cuentas ante el Poder Nacional, en particular ante la Asamblea Nacional como representación de la voluntad popular. Se establece que el incumplimiento del objetivo, sin causa justificada, dará lugar a la remoción del directorio de acuerdo con la ley. Es decir, todo lo relativo a las causas específicas y mecanismo preciso de remoción, se deja a la legislación correspondiente.

Esto se complementa con la vigilancia y supervisión que deben establecer los organismos e instancias competentes sobre la gestión del Banco Central de Venezuela, como la Contraloría General de la República y el organismo público de supervisión bancaria. La labor de la Contraloría se ceñirá al control posterior y tan sólo de la gestión administrativa, evaluando la legalidad, eficiencia y oportunidad del gasto, referida ésta a la correcta ejecución temporal del mismo en cada ejercicio.

El presupuesto de gastos de operación del Banco Central requerirá la aprobación de la Asamblea Nacional. Este presupuesto está sólo referido a los gastos operativos, tanto corrientes como de capital, así como a los gastos por acuñación y emisión de especies monetarias, proyectos de inversión y otros gastos administrativos especiales. No se considera sujeto al Parlamento lo relativo al presupuesto de política monetaria y las inversiones financieras del Banco Central.

En cuanto a la designación de las autoridades la Constitución remite el mecanismo a la ley, el cual deberá contemplar un procedimiento público de evaluación de los méritos y credenciales de los postulados a dichos cargos. La ley que regule el Banco Central de Venezuela deberá atribuir al Poder Ejecutivo la designación del presidente del Banco Central de Venezuela y, al menos, de la mitad de sus directores, y establecerá los términos de participación del Poder Legislativo en la ratificación de estas autoridades. Se deja también a la ley, mediante disposición transitoria expresa, los detalles de las funciones, organización, así como algo muy importante: un régimen de incompatibilidades para sus altos funcionarios, para evitar los conflictos de intereses y el manejo de información privilegiada.

### Sección cuarta: de la coordinación macroeconómica

Dada la relevancia que tienen en Venezuela los efectos monetarios de la gestión fiscal, se plantea la necesidad de establecer adecuadas reglas que garanticen la coordinación de política macroeconómica, que fijen el marco institucional en que se deben desarrollar políticas específicas.

El principio de coordinación requiere que el Banco Central de Venezuela y el Ministerio encargado de las Finanzas coordinen sus políticas y a través de un programa o acuerdo que defina un curso anunciado con anticipación, consistente con el logro de determinados objetivos. Se establece un mecanismo para la

resolución de conflictos entre un Banco Central de Venezuela autónomo y el Fisco, en función de evitar las tradicionales contradicciones entre la política monetaria y la fiscal.

Se plantea un conjunto de reglas básicas de transparencia y coordinación en el cual se desarrollen de manera armónica las políticas fiscal, cambiaria y monetaria, estableciendo que los objetivos y acciones deben ser anunciadas, el compromiso de coordinación entre el Banco Central de Venezuela y el Fisco Nacional y que los responsables de esas políticas deben rendir cuentas de sus actuaciones, en los términos que fije la ley. Esto no es otra cosa que la introducción de reglas claras para el desarrollo de la actividad económica, como premisa básica para generar y mantener la confianza.

Finalmente, se le otorga rango constitucional al Fondo de Estabilización Macroeconómica para garantizar la estabilidad del presupuesto y conservar, más allá de las contingencias por cambios de gobierno y de las leyes, un dispositivo que permita amortiguar las fluctuaciones de los ingresos fiscales.

### TÍTULO VII
### DE LA SEGURIDAD DE LA NACIÓN

#### Capítulo I
#### Disposiciones generales

En el Título VII de la Constitución se definen los principios que rigen la seguridad de la Nación, la cual es responsabilidad no sólo del Estado, sino de todos los venezolanos, así como de las personas naturales o jurídicas que se encuentren en el espacio geográfico nacional.

Se crea un Consejo de Defensa de la Nación con el objeto de que sea el máximo órgano administrativo de consulta, para la planificación y asesoramiento del Poder Público en los asuntos relacionados con la defensa integral de la Nación, su soberanía y la integridad de su espacio geográfico, sin perjuicio de las atribuciones que tengan los diferentes órganos del Estado conforme a esta Constitución y las leyes. En tal sentido le corresponde establecer la dirección estratégica de la Nación, para prevenir o minimizar cualquier amenaza. Dicho Consejo estará integrado por el Presidente de la República, el Vicepresidente de la República, el Presidente de la Asamblea Nacional, el Presidente del Tribunal Supremo de Justicia y el Presidente del Consejo Moral Republicano, y los ministros de los sectores de defensa, seguridad interior, relaciones exteriores y de planificación.

Se reserva al Estado la posesión y uso de armas de guerra. La Fuerza Armada Nacional, por órgano del Presidente de la República, quien actuará en su carácter de Comandante en Jefe, reglamentará y controlará, de acuerdo con la ley, todo lo referente a otras armas, municiones y explosivos.

Se faculta al Ejecutivo Nacional para clasificar y divulgar aquellos asuntos que guarden relación directa con la planificación y ejecución de operaciones concernientes a la seguridad de la Nación, en los términos que la ley establezca, siempre que ello no signifique una violación del libre ejercicio de los derechos y garantías reconocidos por la Constitución. Esta facultad, en todo caso, debe estar sometida a la revisión judicial y no podrá ser un obstáculo de la función que ejercen los tribunales de la República.

#### Capítulo II
#### De los principios de seguridad de la Nación

En el Capítulo II de este Título se establecen los principios de seguridad de la Nación, la cual se fundamentará en la corresponsabilidad entre el Estado y la sociedad civil para dar cumplimiento a los principios de independencia, democracia, igualdad, paz, libertad, justicia, solidaridad, promoción y conservación ambiental y afirmación de los derechos humanos, así como en la satisfacción progresiva de las necesidades individuales y colectivas de los venezolanos y venezolanas, sobre las bases de un desarrollo sustentable y productivo de plena cobertura para la comunidad nacional.

Con el objeto de promover el desarrollo de las zonas fronterizas venezolanas, dichas áreas se declaran de atención prioritaria. A tal efecto, se establece una franja de seguridad de fronteras que será regulada por la ley, que permitirá establecer su amplitud, regímenes especiales económicos y sociales, para promover el desarrollo de sus actividades productivas y mejorar las condiciones de vida de sus pobladores, protegiendo de manera expresa los parques nacionales, el hábitat de los pueblos indígenas allí asentados y demás áreas bajo régimen de administración especial.

#### Capítulo III
#### De la Fuerza Armada Nacional

Para la mejor ejecución de los altos fines que le han sido encomendados por la Constitución, se unifica a las Fuerzas Armadas Nacionales en un cuerpo militar uniforme denominado la Fuerza Armada Nacional, pero manteniendo cada uno de los cuatro componentes integrantes de la institución, sus características y especificidad como Fuerza; siendo esta institución esencialmente profesional, sin militancia política alguna, subordinada a la autoridad civil, organizada por el Estado para garantizar la independencia y soberanía de la Nación y asegurar la integridad del espacio geográfico, mediante la defensa militar, la cooperación en el mantenimiento del orden interno y la participación activa en el desarrollo nacional, de acuerdo con esta Constitución y la ley.

En el cumplimiento de sus funciones, la Fuerza Armada Nacional está al servicio exclusivo de la Nación y de la Constitución, en ningún caso al de la persona o parcialidad política alguna. Sus pilares fundamentales son la disciplina, la obediencia y la subordinación conforme a lo establecido en la Constitución y las leyes.

La Fuerza Armada Nacional está integrada por el Ejército, la Armada, la Aviación y la Guardia Nacional, que funcionarán de manera integral dentro del marco de su competencia para el cumplimiento de su misión, con un régimen de seguridad social integral propio, según lo establezca su respectiva ley orgánica.

Se establece como responsabilidad de los órganos que integran la Fuerza Armada Nacional, la planificación, ejecución y control de las operaciones militares requeridas para asegurar la defensa de la Nación. En todo caso, la Guardia Nacional cooperará en el desarrollo de dichas operaciones y tendrá como responsabilidad básica la conducción de las operaciones exigidas para el mantenimiento del orden interno del país, consolidándose éste como el estado en el cual se administra la justicia, se consolidan los valores de libertad, democracia, independencia, paz, solidaridad, bien común, integridad territorial, convivencia e imperio de la Constitución y la ley. Todo ello armonizado en un escenario donde predominan y se practican los principios constitucionales y preceptos bolivarianos, en un clima de absoluta participación democrática.

Finalmente, siguiendo una tendencia en derecho comparado con el objeto de no establecer discriminaciones entre los ciudadanos, se permite que los integrantes de la Fuerza Armada Nacional en situación de actividad ejerzan el derecho al sufragio de conformidad con la ley. No obstante, se les mantiene la prohibición de optar a cargo de elección popular, o participar en actos de propaganda, militancia o proselitismo político.

En materia de ascensos militares, se establecen criterios para lograr la transparencia y objetividad, a través de la publicación del escalafón de méritos periódicamente y la determinación de las plazas vacantes, eliminándose el factor de corrección por ser muy subjetivo. Este nuevo proceso permite ascender cualquier día del año y que el personal conozca su ubicación en el escalafón de méritos. El ascenso será un derecho, si se han cumplido los requisitos necesarios, acabando con la discrecionalidad de las juntas de evaluación, las cuales se limitarán a respetar los resultados de las calificaciones de mérito.

#### Capítulo IV
#### De los órganos de seguridad ciudadana

Con el objeto de mantener y restablecer el orden público, proteger a los ciudadanos, hogares y familias, apoyar las decisiones de las autoridades competentes y asegurar el pacífico disfrute de las garantías y derechos reconocidos por la Constitución, se le impone al Ejecutivo Nacional la obligación de organizar, de conformidad con la ley, un cuerpo uniformado de policía nacional, un cuerpo de investigaciones científicas, penales y administrativas, un cuerpo de bomberos y de administración de emergencias de carácter civil y una organización de protección civil y administración de desastres.

### TÍTULO VIII
### DE LA PROTECCIÓN DE ESTA CONSTITUCIÓN

#### Capítulo I
#### De la garantía de esta Constitución

Siguiendo una tendencia presente en España, Francia, Italia, Portugal, Rumania y en algunos países latinoamericanos, cuyas constituciones regulan la justicia constitucional en un título o capítulo distinto del que se refiere al Poder Judicial, la Constitución incluye en el Título VIII un capítulo denominado *De la Garantía de esta Constitución*, que contiene las disposiciones fundamentales sobre la justicia constitucional y consagra las principales competencias que corresponden a la Sala Constitucional del Tribunal Supremo de Justicia. Dicho Capítulo da eficacia a los postulados contenidos en el artículo 7 del Título I, que consagra los principios de supremacía y fuerza normativa de la Constitución, base sobre la cual descansa la justicia constitucional en el mundo.

En el mencionado Capítulo se describe el sistema venezolano de justicia constitucional y al efecto se indica que todos los jueces de la República están en la obligación de asegurar la integridad de la Constitución en el ámbito de sus competencias y conforme a lo previsto en su texto y en las leyes, reafirmándose de esta manera que la justicia constitucional en Venezuela la ejercen todos los tribunales de la República, no sólo mediante el control difuso de la constitucionalidad, sino además, por otros medios, acciones o recursos previstos en la Constitución y en las leyes, como la acción de amparo constitucional, destinada a ofrecer una tutela judicial reforzada de los derechos humanos reconocidos y garantizados expresa o implícitamente en la Constitución.

Como consecuencia de ello, se eleva a rango constitucional una norma presente en nuestra legislación desde 1897, característica de nuestro sistema de justicia constitucional y según la cual, en caso de incompatibilidad entre la Constitución y una ley u otra norma jurídica, serán aplicables en todo caso las disposiciones constitucionales, correspondiendo a los tribunales en cualquier causa, aun de oficio, decidir lo conducente. En otras palabras, se consagra el control difuso de la constitucionalidad de las leyes y de las disposiciones normativas.

Al mismo tiempo, se consagra el control concentrado de la constitucionalidad de las leyes y de los demás actos de los órganos que ejercen el Poder Público dictados en ejecución directa e inmediata de la Constitución, el cual corresponde exclusivamente a la Sala Constitucional del Tribunal Supremo de Justicia. En consecuencia, se trasladaron a la Sala Constitucional las competencias que en esta materia tenía la extinta Corte Suprema de Justicia en Pleno, con el objeto de especializar el órgano que ejerce la jurisdicción constitucional y descongestionar de atribuciones a la nueva Sala Plena, para que sólo ejerza las competencias que le son asignadas en el artículo 266, numerales 2 y 3 del texto constitucional, no teniendo en consecuencia, competencia ni atribución alguna en materia constitucional.

La exclusividad de la Sala Constitucional en el ejercicio de la jurisdicción constitucional, implica que sólo a dicho órgano le corresponde ejercer el control concentrado de la constitucionalidad de las leyes y demás actos de los órganos que ejercen el Poder Público dictados en ejecución directa e inmediata de la Constitución, pero no impide que la propia Constitución o las leyes, le atribuyan otras competencias en materia constitucional.

De esta forma, se esboza el sistema venezolano de justicia constitucional, reafirmándose la coexistencia de los métodos de control concentrado, difuso y extraordinario de la constitucionalidad, los cuales se ejercen a través de la acción popular de inconstitucionalidad, la aplicación preferente de la Constitución respecto a leyes o normas inconstitucionales en un caso concreto, y la acción de amparo.

Ante la Asamblea Nacional Constituyente se presentaron algunas propuestas con el objeto de crear una Corte o Tribunal Federal Constitucional, en lugar de una Sala Constitucional en el Tribunal Supremo de Justicia. No obstante, prevaleció por consenso esta última tesis. Sin embargo, la Constitución en el Capítulo referido a la *Garantía de esta Constitución*, dota a la Sala Constitucional del carácter y de las competencias que tiene en derecho comparado cualquier Corte o Tribunal Constitucional. Por ello se indica que el Tribunal Supremo de Justicia garantizará la supremacía y efectividad de las normas y principios constitucionales; será el máximo y último intérprete de la Constitución y velará por su uniforme interpretación y aplicación, cualidad y potestades que únicamente posee un Sala Constitucional dado que ésta ejerce con exclusividad el control concentrado de la constitucionalidad.

En efecto, las facultades interpretativas que en tal sentido se otorgan al Tribunal Supremo de Justicia, en consonancia con las características básicas de la justicia constitucional en derecho comparado, sólo pueden ser ejercidas por órgano de la Sala Constitucional, pues a ella le corresponde exclusivamente el ejercicio de la jurisdicción constitucional. Además, con fundamento en el principio de división de poderes, tales facultades no pueden ejercerse de oficio o mediante *acuerdos*, sino con motivo de una acción popular de inconstitucionalidad, acción de amparo, recurso de interpretación de leyes u otro caso concreto de carácter jurisdiccional cuya competencia esté atribuida a la Sala Constitucional.

En esta materia, se consagra una herramienta indispensable para que la Sala Constitucional pueda garantizar la supremacía y efectividad de las normas constitucionales. Así, se indica que las interpretaciones que establezca la Sala Constitucional sobre el contenido o alcance de las normas y principios constitucionales serán vinculantes para las demás Salas del Tribunal Supremo de Justicia y demás tribunales de la República, todo ello con el objeto de garantizar la uniforme interpretación y aplicación de tales normas y principios.

En todo caso, la ley orgánica respectiva establecerá los correctivos y las sanciones necesarias para aquellas Salas del Tribunal Supremo de Justicia y tribunales de la República que violen la Constitución o las interpretaciones que sobre sus normas o principios establezca la Sala Constitucional. Del mismo modo, la ley orgánica deberá consagrar un mecanismo de carácter extraordinario mediante el cual la Sala Constitucional pueda revisar los actos o sentencias de las demás Salas del Tribunal Supremo de Justicia que contraríen la Constitución o las interpretaciones que sobre sus normas o principios haya previamente fijado la Sala Constitucional, a fin de dar eficacia a los principios de supremacía y fuerza normativa de la Constitución consagrados en el artículo 7, conforme a los cuales todos los órganos que ejercen el poder público, sin excepción, están sujetos a la Constitución.

En definitiva, el carácter vinculante de las interpretaciones de las normas y principios constitucionales será el principal instrumento de la Sala Constitucional para fortalecer la justicia constitucional, darle eficacia al Texto Fundamental y brindar mayor seguridad jurídica a los ciudadanos.

En lo que atañe a las competencias de la Sala Constitucional, el fundamento de aquellas que le atribuye la Constitución y de las que se le asignarán mediante ley, está representado por los principios de supremacía y fuerza normativa de la Constitución consagrados en el artículo 7 y en virtud de los cuales, todo acto del Poder Público, sin excepción, debe estar sometido al control constitucional. Por tal razón, a la Sala Constitucional se le atribuye competencia para controlar la constitucionalidad de todos los actos de los órganos que ejercen el Poder Público dictados en ejecución directa e inmediata de la Constitución o que tengan rango de ley. En todo caso, la ley orgánica respectiva garantizará que ningún órgano del Poder Público quede fuera del control constitucional, estableciendo entre otros aspectos, la competencia de la Sala Constitucional para controlar la constitucionalidad de las actuaciones de las demás Salas del Tribunal Supremo de Justicia, mediante el mecanismo extraordinario que considere más adecuado.

Con base en lo anterior, se atribuye a la Sala Constitucional competencias en ejercicio del control represivo de la constitucionalidad, para declarar la nulidad total o parcial de las leyes nacionales, Constituciones y leyes estadales, ordenanzas municipales y demás actos dictados por cualesquiera de los órganos que ejercen el Poder Público, en ejecución directa e inmediata de la Constitución.

En materia de control preventivo, se atribuye a la Sala Constitucional la potestad de verificar la constitucionalidad de los tratados internacionales suscritos por la República antes de su ratificación.

En derecho comparado, una de las principales funciones de la justicia constitucional es el control de la constitucionalidad de los acuerdos y tratados internacionales, a través de un control preventivo que se ejerce antes de su ratificación y entrada en vigencia. Particularmente en las constituciones europeas, así como en varias constituciones de países de América Latina, se prevé ese mecanismo con el objeto de que las relaciones entre el derecho internacional público o el derecho comunitario, por una parte, y el derecho interno de cada Estado, por la otra, se presenten con la mayor armonía y uniformidad posible.

Se consideró necesario el control preventivo de la constitucionalidad de los tratados internacionales dado que luego del proceso de conclusión de un tratado internacional, es decir, de su ratificación y entrada en vigencia por las vías previstas en el derecho constitucional y en el derecho internacional público, la eventual y posterior declaración de inconstitucionalidad del mismo o de alguna de sus

disposiciones por parte de la Sala Constitucional no podría, en principio, ser opuesta como una justificación para incumplir dicho tratado sin que se comprometa la responsabilidad internacional de la República.

En todo caso, el objetivo de ese mecanismo de control preventivo, no sólo es que se verifique la constitucionalidad de un acuerdo o tratado internacional sin que se compromete la responsabilidad internacional de la República, sino además que, en el caso de que alguna de sus disposiciones resulte inconstitucional, se ratifique con la debida reserva, siempre que se desee su ratificación, o si el mismo no admite reservas, se evalúe la necesidad y conveniencia de ratificarlo luego de una enmienda o reforma de la Constitución en los aspectos que sean necesarios, para lograr así la mayor armonía posible en las relaciones entre el derecho internacional o comunitario y el derecho interno venezolano.

La potestad de activar el control preventivo de los tratados internacionales corresponderá al Presidente de la República o a la Asamblea Nacional, siendo facultativo su ejercicio. Se descartó así la posibilidad de un control preventivo con carácter obligatorio, dado que podría traducirse en un obstáculo para la fluidez y la buena marcha de las relaciones internacionales de la República.

Otra competencia de la Sala Constitucional en materia de control preventivo será la de verificar la constitucionalidad de las leyes antes de su promulgación, conforme al procedimiento establecido en el Título V Capítulo I Sección Cuarta de la Constitución, para el caso del reparo presidencial fundamentado en razones de inconstitucionalidad. En esta materia, la Asamblea Nacional Constituyente consideró inconveniente extender la legitimación para activar el mecanismo de control preventivo a otras personas con determinado interés u órganos del Poder Público distintos al Presidente de la República. Al respecto, se tuvo en cuenta que con posterioridad a la promulgación de una ley, todas las personas tienen a su alcance la acción popular clásica del sistema de justicia constitucional venezolano y, además, la Sala Constitucional tiene el poder cautelar propio de toda Corte o Tribunal Constitucional en derecho comparado, en virtud del cual puede dictar cualquier medida que fuere necesaria para proteger los derechos humanos y garantizar la integridad de la Constitución.

Finalmente, en esta materia, conforme al Título V Capítulo I Sección Cuarta de la Constitución, la Sala Constitucional ejercerá el control preventivo de la constitucionalidad del carácter orgánico de una ley que haya sido calificada como tal por la Asamblea Nacional.

Aunado a ello e inspirada nuevamente en una tendencia presente en derecho comparado, la Constitución atribuye a la Sala Constitucional la potestad para decidir sobre la inconstitucionalidad de las omisiones legislativas, mecanismo que ha tenido un auge creciente en países como Argentina, Brasil, Costa Rica, Hungría y, especialmente, Portugal.

La inconstitucionalidad por omisión se produce por la falta de desarrollo por parte del Poder Legislativo, durante un tiempo excesivamente largo, de aquellas normas constitucionales de obligatorio y concreto desarrollo, de forma tal que impida su eficaz aplicación. Con este mecanismo se persigue evitar situaciones como las que se originaron en el caso del artículo 49 de la Constitución de 1961 y la falta de una legislación sobre amparo constitucional, durante casi treinta años.

En lo que se refiere a la protección de los derechos humanos, la Sala Constitucional tendrá importantes funciones. En primer lugar, con el objeto de reforzar la protección de los derechos humanos reconocidos y garantizados expresa o implícitamente en la Constitución, se acoge un mecanismo consagrado en alguna Constitución de América Latina, en virtud del cual la Sala Constitucional debe, en todos los casos y aun de oficio, controlar la constitucionalidad de los decretos que declaren estado de excepción. Esta será la única competencia que podrá ejercer de oficio la Sala Constitucional y ello por tratarse de la protección de los derechos humanos, razón por la cual se ha previsto expresamente en el texto constitucional.

Además, con motivo de su creación, de la entrada en vigencia de la Constitución y de la naturaleza esencialmente constitucional de los derechos humanos y de la acción de amparo, la Sala Constitucional podrá asumir las competencias que en materia de amparo constitucional tenían las diferentes Salas de la extinta Corte Suprema de Justicia, en los casos de amparo autónomo contra altas autoridades de rango constitucional, amparo contra decisiones judiciales y apelaciones o consultas en amparo, dado que la Sala Constitucional pasa a ser el Tribunal Supremo de Justicia con la competencia afín para conocer y decidir tales asuntos.

Por su parte, como consecuencia de lo anterior y dado que sólo la Sala Constitucional será competente para resolver las acciones de amparo en el Tribunal Supremo de Justicia, la ley orgánica respectiva deberá eliminar la acción cautelar de amparo que se ejerce conjuntamente con el recurso contencioso administrativo de nulidad y que permite a las Salas Politicoadministrativa y Electoral, suspender los efectos de los actos administrativos cuya nulidad les corresponde conocer y decidir. Para ello, la legislación deberá dotar al juez contencioso administrativo de todo el poder cautelar necesario para decretar de oficio o a instancia de parte, cualquier tipo de medida cautelar que fuere necesaria para garantizar la tutela judicial efectiva de los administrados y el restablecimiento de las situaciones jurídicas infringidas mientras dure el proceso de que se trate, bien sea a través de la suspensión de los efectos del acto administrativo correspondiente, o a través de ordenes de hacer o no hacer, incluyendo el pago de sumas de dinero, que se impongan a la administración dependiendo del caso concreto.

De igual manera y con el objeto de hacer efectiva la tutela judicial de los administrados y garantizar su derecho de libre acceso a la justicia, la ley orgánica deberá eliminar la carga que tienen los administrados de agotar la vía administrativa antes de interponer el recurso contencioso administrativo de nulidad, lo cual debe quedar como una opción a elección del interesado, pero no como un requisito de cumplimiento obligatorio. Aunado a ello, la legislación deberá establecer expresamente que en caso de que un acto administrativo estuviere viciado de inconstitucionalidad o de algún vicio que acarree su nulidad absoluta, no operará en modo alguno, el plazo de caducidad para el

ejercicio del recurso contencioso administrativo de nulidad. Lo anterior tiene por objeto ofrecer al administrado una protección de sus derechos humanos acorde con el principio de progresividad consagrado en la Constitución, una vez eliminada la acción de amparo cautelar contra actos administrativos.

Por otra parte, consecuente con lo antes expuesto, la ley orgánica respectiva eliminará la acción de amparo cautelar que se ejerce conjuntamente con la acción popular de inconstitucionalidad contra leyes y disposiciones normativas, teniendo en cuenta que en este sentido la Sala Constitucional tiene el poder cautelar propio de toda Corte o Tribunal Constitucional en derecho comparado, en virtud del cual puede decretar cualquier medida cautelar que fuere necesaria para proteger los derechos humanos y garantizar la integridad de la Constitución, incluyendo la suspensión de los efectos de la norma cuya nulidad se solicite, únicamente para la situación concreta de los accionantes, partes o terceros que intervinieren en el proceso y mientras dure el juicio de nulidad correspondiente.

La Constitución establece como competencia de la Sala Constitucional resolver las controversias constitucionales que se susciten entre cualesquiera de los órganos que ejercen el Poder Público. Al respecto, destacan dos elementos esenciales; en primer lugar, que se trata de controversias entre cualesquiera de los órganos que la Constitución prevé en la distribución horizontal o vertical del Poder Público y, en segundo lugar, que deben tratarse de controversias constitucionales, es decir, de aquellas cuya decisión depende del examen, interpretación y aplicación de normas constitucionales, tales como las que se refieren al reparto competencial entre los diferentes órganos del Estado, especialmente, las que distribuyen el poder en los niveles nacional, estadal y municipal.

De esta forma, todas aquellas controversias constitucionales entre la República y alguno de los estados o municipios, es decir, entre el poder central y el descentralizado territorialmente, serán resueltas por la Sala Constitucional dentro del procedimiento que se establecerá en la ley orgánica respectiva. En todo caso, esta atribución tiene por objeto que la Sala Constitucional como garante y máximo defensor de los principios consagrados en el Texto Fundamental ajuste la actuación de los órganos que ejercen el Poder Público, al cauce constitucional.

Finalmente y al margen de su competencia para conocer de acciones de amparo, se atribuye a la Sala Constitucional la competencia para revisar las decisiones definitivamente firmes dictadas por los tribunales de la República en materia de amparo constitucional y control difuso de la constitucionalidad, a través de un mecanismo extraordinario que deberá establecer la ley orgánica que regule la jurisdicción constitucional, sólo con el objeto de garantizar la uniformidad en la interpretación de las normas y principios constitucionales, la eficacia del Texto Fundamental y la seguridad jurídica.

Ahora bien, la referida competencia de la Sala Constitucional no puede ni debe entenderse como parte de los derechos a la defensa, tutela judicial efectiva y amparo consagrados en la Constitución, sino, según lo expuesto, como un mecanismo extraordinario de revisión cuya finalidad constituye únicamente darle uniformidad a la interpretación de las normas y principios constitucionales.

Por ello, no siendo un derecho y teniendo en cuenta que el legislador puede ensayar y errar en forma evolutiva en la búsqueda del mecanismo extraordinario más adecuado, la Asamblea Nacional Constituyente decidió dejar a la ley orgánica respectiva su desarrollo concreto. Siendo así, la ley orgánica podrá establecer, por ejemplo, un mecanismo extraordinario de revisión de ejercicio discrecional por la Sala Constitucional, tal como el *writ of certiorari* que utiliza la Suprema Corte de los Estados Unidos de América; un mecanismo cuyos rasgos de discrecionalidad no sean absolutos, como el utilizado por el Tribunal Constitucional Federal de Alemania; o bien, un mecanismo cuyos requisitos de admisibilidad y procedencia estén preestablecidos en la ley, como el que se puede evidenciar en algunos ejemplos de derecho comparado.

En todo caso, el mecanismo extraordinario de revisión que se deberá establecer por ley orgánica, vinculará por vez primera y dejando a salvo la temprana regulación de la Constitución de 1901, los métodos de control difuso y concentrado de la constitucionalidad que han coexistido en nuestro ordenamiento jurídico por más de cien años, respondiendo con ello a la principal crítica formulada a nuestro sistema de justicia constitucional, que reconocía la coexistencia de los mencionados métodos de control, pero destacaba que entre uno y otro no existía realmente una coordinación, vínculo o conexión que procurara armonizarlos o articularlos para lograr una interpretación uniforme de la Constitución, razón por la cual no podía ser calificado como integral, dado que existían modalidades de control paralelas, establecidas una al lado de la otra, sin conexión entre sí. Por tal razón, la Constitución consagra un sistema mixto e integrado de control de la constitucionalidad, atribuyéndole a la Sala Constitucional la función de coordinar los métodos de control mediante la armonización de la jurisprudencia constitucional y la interpretación uniforme del Texto Fundamental.

### Capítulo II
### De los estados de excepción

El primero de los preceptos dedicados a esta materia recoge dos principios básicos rectores de los estados de excepción: el de estricta necesidad y el de temporalidad. Se circunscriben tales situaciones jurídicas a aquellas circunstancias extraordinarias que afecten gravemente la seguridad de las personas, de la Nación o de las instituciones, y que no puedan ser afrontadas mediante las facultades ordinarias de los órganos del Poder Público. Se destaca, igualmente, la temporalidad de esas situaciones.

Por otro lado, el precepto menciona los principales derechos que no pueden ser suspendidos o restringidos durante los estados de excepción. Se trata de un listado meramente enunciativo, pues tampoco son susceptibles de suspensión o restricción los derechos señalados en los artículos 4.2 del Pacto Internacional de Derechos Civiles y Políticos y 27.2 de la Convención Americana sobre Derechos Humanos.

Importa subrayar que entre los derechos intangibles se encuentran las garantías judiciales necesarias para la defensa de los derechos.

El segundo de los preceptos que componen este Capítulo contempla los distintos estados de excepción, estableciendo, de conformidad con el principio de gradualidad, las circunstancias fácticas que pueden justificarlos y su limitación temporal. Se remite a una ley orgánica la regulación de los detalles del régimen de los estados de excepción.

El último de los preceptos de este Capítulo establece, en primer lugar, que el decreto declaratorio del estado de excepción deberá señalar, para preservar la seguridad política, las medidas que podrán tomarse con fundamento en el mismo. En segundo término, dada la trascendencia de la decisión correspondiente, se prevé la intervención de los tres Poderes clásicos en la declaración de los estados de excepción: en virtud de la urgencia que los caracteriza, se faculta al Presidente de la República, en Consejo de Ministros, para dictar el·Decreto respectivo, pero se prescribe su remisión a la Asamblea Nacional, la cual, como instancia deliberante y representativa por excelencia de la soberanía popular, puede revocarlo si estima que las circunstancias invocadas no justifican la declaración de un estado de excepción o si considera que las medidas previstas para hacerle frente son excesivas. Si la Asamblea Nacional se encuentra en receso al dictarse el decreto correspondiente, éste debe ser remitido a la Comisión Delegada, la cual ejercerá las facultades respectivas.

A lo anterior se suma un control judicial automático atribuido a la Sala Constitucional del Tribunal Supremo de Justicia, la cual habrá de pronunciarse sobre la constitucionalidad o no del estado de excepción y de lo establecido en el decreto que lo declaró, a menos que la Asamblea Nacional, o la Comisión Delegada, haya revocado previamente ese decreto. Por otra parte, se otorga al Ejecutivo Nacional y a la Asamblea Nacional la atribución de revocar el decreto que haya declarado un estado de excepción, al cesar las causas que lo motivaron.

### TÍTULO IX
### DE LA REFORMA CONSTITUCIONAL

La Constitución ha mantenido la clasificación que distingue entre la Enmienda y la Reforma Constitucional, incorporando, a su vez, la facultad de convocar a una Asamblea Nacional Constituyente, para ser consecuentes con la idea de que es el pueblo el legítimo depositario del poder constituyente originario. Esto guarda concordancia con lo establecido en la misma Constitución que hace residir la soberanía en el pueblo quien puede ejercerla de manera directa o indirecta.

Se establece una serie de mecanismos a través de los cuales las posibilidades de modificación del texto constitucional sean factibles y accesibles, para evitar el divorcio entre la norma fundamental del sistema jurídico y la realidad social, política, cultural y económica. La contraposición entre una Constitución formal y una Constitución real genera distorsiones que agravan consideradamente las crisis de gobernabilidad y de legitimidad del sistema político, al no existir opciones para superarlas. Prueba de ello la encontramos en nuestra experiencia en el marco de una democracia formal y representativa, en la cual las que debían impulsar los cambios constitucionales eran las cúpulas más renuentes a producirlos, lo cual explica el entrabamiento y obstaculización de los intentos de reformar la Constitución anterior.

La democracia moderna insertada en un mundo globalizado y condicionado por la dinámica de la vida actual, a su vez determinada por los cambios tecnológicos requiere de una institucionalidad lo suficientemente flexible para poder adaptarse a los cambios que se van generando.

De allí que nuestra Constitución a pesar de tener la rigidez de las constituciones escritas ha de incluir elementos que permitan esa adaptación a la realidad. Uno de esos elementos lo constituye la existencia de un Alto Tribunal que mediante una interpretación de carácter histórico progresivo, fundamentada en la comprensión del momento histórico, permita la mejor aplicación posible del máximo cuerpo normativo a la realidad que le corresponde regir; tal como se prevé en esta Constitución con la creación de la Sala Constitucional del Tribunal Supremo de Justicia.

Pero, además, debe incluir elementos de flexibilidad en el aspecto más rígido de las constituciones escritas que lo conforman las previsiones relativas a la forma y mecanismos para la modificación de la propia Constitución.

En este sentido, las posibilidades de modificación de la base jurídica del país deben ser amplias y estar efectivamente en manos de una pluralidad de actores políticos y sociales. Una democracia participativa y protagónica no puede construir una rígida y petrificada normativa constitucional. Al contrario, debe dejar abiertas muchas ventanas para que los procesos participativos se desarrollen a plenitud, evitando·el divorcio profundo entre la norma y la realidad.

El protagonismo del pueblo en la conducción de su destino debe quedar explícitamente consagrado con especial énfasis en este punto de la reforma constitucional. Un pueblo deseoso de ejercer la soberanía no debe tener que pasar por toda clase de vicisitudes y superar un cúmulo de obstáculos para lograr los cambios que las estructuras jurídicas requieren. Es principio consustancial con este texto constitucional la facilitación de los procesos en los cuales el pueblo se manifiesta para solicitar la modificación de normas constitucionales.

En este contexto se debe entender que el ejercicio de la soberanía por parte del pueblo, lejos de afectar el proceso de refundación de la República y de lograr el objetivo de la profundización democrática, se convierte en herramienta indispensable del protagonismo popular, desterrando el sistema de cónclaves que decidían los destinos del país a espaldas de la sociedad.

En lo que respecta al procedimiento de enmienda, se superan las limitaciones establecidas en la Constitución de 1961, que hacían complicada la consecución de resultados efectivos. En el nuevo texto constitucional se ha previsto una manera más ágil y flexible y se procede a formular una definición de enmienda, entendida como la

adición o modificación de artículos del texto, siempre y cuando no se altere la estructura fundamental.

La iniciativa de la reforma se le atribuye a la Asamblea Nacional, por la mayoría de sus miembros; al Presidente de la República en Consejo de Ministros o a los electores o electoras inscritas en el registro electoral en número no menor del quince por ciento. Una vez cumplidos estos requisitos se inicia la tramitación ante la Asamblea Nacional la cual realizará tres discusiones antes de la aprobación del proyecto para la cual tiene un plazo no mayor de dos años. Para esta aprobación se requiere una mayoría calificada de dos terceras partes de sus miembros. El proyecto aprobado será sometido a referendo dentro de los treinta días siguientes y bastará para su aprobación con un número mayor de votos positivos.

Finalmente, en este Título se consagra expresamente la Asamblea Nacional Constituyente, instrumento fundamental para garantizar al pueblo de Venezuela la posibilidad abierta de modificar sustancialmente el Estado y crear un nuevo ordenamiento jurídico, creando un nuevo texto constitucional. Esta posibilidad inexistente formalmente en la Constitución de 1961 hubo de ser incorporada por vía de interpretación de la Corte Suprema de Justicia, para hacer posible la convocatoria de la Asamblea Nacional Constituyente que produjo esta Constitución. En el presente texto constitucional pasa a ser norma vigente, expresiva de la más acertada definición democrática en torno a la soberanía popular.

Dada, firmada y sellada en Ciudad Bolívar, Estado Bolívar, a los treinta días del mes de enero del año 2000. Años 189° de la Independencia y 140° de la Federación.


EL PRESIDENTE,

*LUIS MIQUILENA*

EL PRIMER VICEPRESIDENTE (E),

*ARISTÓBULO ISTÚRIZ*

EL SEGUNDO VICEPRESIDENTE,

*ARISTÓBULO ISTÚRIZ*

LOS CONSTITUYENTES,

**CONSTITUYENTES NACIONALES**
ALFREDO PEÑA
ALLAN BREWER CARÍAS (AUSENTE)
ANGELA ZAGO
EARLE HERRERA
EDMUNDO CHIRINOS
EUSTOQUIO CONTRERAS
GUILLERMO GARCÍA PONCE
HERMANN ESCARRÁ
JESÚS RAFAEL SULBARÁN
LEOPOLDO PUCHI
LUIS VALLENILLA
MANUEL QUIJADA
MARISABEL DE CHÁVEZ
PABLO MEDINA
PEDRO ORTEGA DÍAZ
REYNA ROMERO GARCÍA
RICARDO COMBELLAS
TAREK WILLIAM SAAB
VINICIO ROMERO MARTÍNEZ

**CONSTITUYENTES POR DISTRITO FEDERAL**
DESIRÉE SANTOS AMARAL
ELIÉZER REINALDO OTAIZA CASTILLO
ERNESTO ALVARENGA
FREDDY ALIRIO BERNAL ROSALES
JULIO CÉSAR ALVIÁREZ
NICOLÁS MADURO MOROS
SEGUNDO MELÉNDEZ
VLADIMIR VILLEGAS

**CONSTITUYENTES POR AMAZONAS**
LIBORIO GUARULLA GARRIDO
NELSON SILVA

**CONSTITUYENTES POR ANZOÁTEGUI**
ÁNGEL RODRÍGUEZ
DAVID DE LIMA SALAS
DAVID FIGUEROA
ELÍAS LÓPEZ PORTILLO
GUSTAVO PEREIRA

**CONSTITUYENTES POR APURE**
CRISTÓBAL JIMÉNEZ
RAFAEL RODRÍGUEZ FERNÁNDEZ

**CONSTITUYENTES POR ARAGUA**
ALBERTO JORDÁN HERNÁNDEZ
ANTONIO DI GIAMPAOLO BOTTINI
CARLOS TABLANTE
HUMBERTO PRIETO
OSCAR FEO

**CONSTITUYENTES POR BARINAS**
FRANCISCO EFRAÍN VISCONTI OSORIO
JOSÉ LEÓN TAPIA CONTRERAS

**CONSTITUYENTES POR BOLÍVAR**
ALEJANDRO DE JESÚS SILVA MARCANO
ANTONIO BRICEÑO
DANIEL DÍAZ
LEONEL JIMÉNEZ CARUPE
VICTORIA MATA

**CONSTITUYENTES POR CARABOBO**
ELIO GÓMEZ GRILLO
MANUEL VADELL GRATEROL
AMÉRICO DÍAZ NÚÑEZ
BLANCANIEVE PORTOCARRERO
DIEGO SALAZAR
FRANCISCO JOSÉ AMELIACH ORTA
JUAN JOSÉ MARÍN LAYA
OSCAR NAVAS TORTOLERO
SAÚL ORTEGA

**CONSTITUYENTES POR COJEDES**
HAYDÉE DE FRANCO
JUAN BAUTISTA PÉREZ

**CONSTITUYENTES POR DELTA AMACURO**
CÉSAR PÉREZ MARCANO
RAMÓN ANTONIO YÁNEZ

**CONSTITUYENTES POR FALCÓN**
JESÚS MONTILLA APONTE
SOL MUSSETT DE PRIMERA
YOEL ACOSTA CHIRINOS

**CONSTITUYENTES POR GUÁRICO**
ÁNGEL EUGENIO LANDAETA
PEDRO SOLANO PERDOMO
RUBEN ALFREDO ÁVILA ÁVILA

**CONSTITUYENTES POR LARA**
ANTONIO JOSÉ GARCÍA GARCÍA
ENRIQUE PERAZA
HENRI FALCÓN
LENÍN ROMERO
LUIS REYES REYES
MIRNA TERESA VIES DE ÁLVAREZ
REINALDO ROJAS

**CONSTITUYENTES POR MÉRIDA**
ADÁN CHÁVEZ FRÍAS
FLORENCIO ANTONIO PORRAS ECHEZURÍA
PAUSIDES SEGUNDO REYES GÓMEZ

**CONSTITUYENTES POR MIRANDA**
ELÍAS JAUA MILANO
FREDDY GUTIÉRREZ
HAYDÉE MACHÍN
JOSÉ GREGORIO VIELMA MORA
JOSÉ VICENTE RANGEL ÁVALOS
LUIS GAMARGO
MIGUEL MADRIZ
RAÚL ESTÉ
RODOLFO SANZ
WILLIAM LARA
WILLIAM OJEDA

**CONSTITUYENTES POR MONAGAS**
JOSÉ GREGORIO BRICEÑO TORREALBA
MARELIS PÉREZ MARCANO
NUMA ROJAS VELÁSQUEZ

**CONSTITUYENTES POR NUEVA ESPARTA**
ALEXIS NAVARRO ROJAS
VIRGILIO ÁVILA VIVAS

**CONSTITUYENTES POR PORTUGUESA**
ANTONIA MUÑOZ
MIGUEL A. GARRANCHÁN VELÁSQUEZ
WILMAR ALFREDO CASTRO SOTELDO

**CONSTITUYENTES POR SUCRE**
JESÚS MOLINA VILLEGAS
JOSÉ LUIS MEZA
LUIS AUGUSTO ACUÑA CEDEÑO

**CONSTITUYENTES POR TÁCHIRA**
MARÍA IRIS VARELA RANGEL
RONALD BLANCO LA CRUZ
SAMUEL LÓPEZ
TEMÍSTOCLES SALAZAR

**CONSTITUYENTES POR TRUJILLO**
GERARDO MÁRQUEZ
GILMER VILORIA

**CONSTITUYENTES POR VARGAS**
ANTONIO RODRÍGUEZ
JAIME BARRIOS

**CONSTITUYENTES POR YARACUY**
BRAULIO ÁLVAREZ
NÉSTOR LEÓN HEREDIA

**CONSTITUYENTES POR ZULIA**
ALBERTO URDANETA
ATALA URIANA
FROILÁN BARRIOS NIEVES
GASTÓN PARRA LUZARDO
GEOVANY DARÍO FINOL FERNÁNDEZ
JORGE LUIS DURÁN CENTENO
LEVY ARRON ALTER VALERO
MARÍA DE QUEIPO
MARIO ISEA BOHÓRQUEZ
RAFAEL COLMENÁREZ
ROBERTO JIMÉNEZ MAGGIOLO
SILVESTRE VILLALOBOS
YLDEFONSO FINOL

**CONSTITUYENTES POR LAS COMUNIDADES INDÍGENAS**
GUILLERMO GUEVARA
JOSÉ LUIS GONZÁLEZ
NOELÍ POCATERRA DE OBERTO

LOS SECRETARIOS,

ELVIS AMOROSO                    ALEJANDRO ANDRADE

## PREÁMBULO

El pueblo de Venezuela, en ejercicio de sus poderes creadores e invocando la protección de Dios, el ejemplo histórico de nuestro Libertador Simón Bolívar y el heroísmo y sacrificio de nuestros antepasados aborígenes y de los precursores y forjadores de una patria libre y soberana;

con el fin supremo de refundar la República para establecer una sociedad democrática, participativa y protagónica, multiétnica y pluricultural en un Estado de justicia, federal y descentralizado, que consolide los valores de la libertad, la independencia, la paz, la solidaridad, el bien común, la integridad territorial, la convivencia y el imperio de la ley para esta y las futuras generaciones; asegure el derecho a la vida, al trabajo, a la cultura, a la educación, a la justicia social y a la igualdad sin discriminación ni subordinación alguna; promueva la cooperación pacífica entre las naciones e impulse y consolide la integración latinoamericana de acuerdo con el principio de no intervención y autodeterminación de los pueblos, la garantía universal e indivisible de los derechos humanos, la democratización de la sociedad internacional, el desarme nuclear, el equilibrio ecológico y los bienes jurídicos ambientales como patrimonio común e irrenunciable de la humanidad;

en ejercicio de su poder originario representado por la Asamblea Nacional Constituyente mediante el voto libre y en referendo democrático,

decreta la siguiente

## CONSTITUCIÓN

### TÍTULO I
### PRINCIPIOS FUNDAMENTALES

**Artículo 1.** La República Bolivariana de Venezuela es irrevocablemente libre e independiente y fundamenta su patrimonio moral y sus valores de libertad, igualdad, justicia y paz internacional en la doctrina de Simón Bolívar, el Libertador.

Son derechos irrenunciables de la Nación la independencia, la libertad, la soberanía, la inmunidad, la integridad territorial y la autodeterminación nacional.

**Artículo 2.** Venezuela se constituye en un Estado democrático y social de Derecho y de Justicia, que propugna como valores superiores de su ordenamiento jurídico y de su actuación, la vida, la libertad, la justicia, la igualdad, la solidaridad, la democracia, la responsabilidad social y, en general, la preeminencia de los derechos humanos, la ética y el pluralismo político.

**Artículo 3.** El Estado tiene como fines esenciales la defensa y el desarrollo de la persona y el respeto a su dignidad, el ejercicio democrático de la voluntad popular, la construcción de una sociedad justa y amante de la paz, la promoción de la prosperidad y bienestar del pueblo y la garantía del cumplimiento de los principios, derechos y deberes reconocidos y consagrados en esta Constitución.

La educación y el trabajo son los procesos fundamentales para alcanzar dichos fines.

**Artículo 4.** La República Bolivariana de Venezuela es un Estado federal descentralizado en los términos consagrados en esta Constitución, y se rige por los principios de integridad territorial, cooperación, solidaridad, concurrencia y corresponsabilidad.

**Artículo 5.** La soberanía reside intransferiblemente en el pueblo, quien la ejerce directamente en la forma prevista en esta Constitución y en la ley, e indirectamente, mediante el sufragio, por los órganos que ejercen el Poder Público.

Los órganos del Estado emanan de la soberanía popular y a ella están sometidos.

**Artículo 6.** El gobierno de la República Bolivariana de Venezuela y de las entidades políticas que la componen es y será siempre democrático, participativo, electivo, descentralizado, alternativo, responsable, pluralista y de mandatos revocables.

**Artículo 7.** La Constitución es la norma suprema y el fundamento del ordenamiento jurídico. Todas las personas y los órganos que ejercen el Poder Público están sujetos a esta Constitución.

**Artículo 8.** La bandera nacional con los colores amarillo, azul y rojo; el himno nacional *Gloria al bravo pueblo* y el escudo de armas de la República son los símbolos de la patria.

La ley regulará sus características, significados y usos.

**Artículo 9.** El idioma oficial es el castellano. Los idiomas indígenas también son de uso oficial para los pueblos indígenas y deben ser respetados en todo el territorio de la República, por constituir patrimonio cultural de la Nación y de la humanidad.

### TÍTULO II
### DEL ESPACIO GEOGRÁFICO Y DE LA DIVISIÓN POLÍTICA

#### Capítulo I
#### Del territorio y demás espacios geográficos

**Artículo 10.** El territorio y demás espacios geográficos de la República son los que correspondían a la Capitanía General de Venezuela antes de la transformación política iniciada el 19 de abril de 1810, con las modificaciones resultantes de los tratados y laudos arbitrales no viciados de nulidad.

**Artículo 11.** La soberanía plena de la República se ejerce en los espacios continental e insular, lacustre y fluvial, mar territorial, áreas marinas interiores, históricas y vitales y las comprendidas dentro de las líneas de base rectas que ha adoptado o adopte la República; el suelo y subsuelo de éstos; el espacio aéreo continental, insular y marítimo y los recursos que en ellos se encuentran, incluidos los genéticos, los de las especies migratorias, sus productos derivados y los componentes intangibles que por causas naturales allí se hallen.

El espacio insular de la República comprende el archipiélago de Los Monjes, archipiélago de Las Aves, archipiélago de Los Roques, archipiélago de La Orchila, isla La Tortuga, isla La Blanquilla, archipiélago Los Hermanos, islas de Margarita, Cubagua y Coche, archipiélago de Los Frailes, isla La Sola, archipiélago de Los Testigos, isla de Patos e isla de Aves; y, además, las islas, islotes, cayos y bancos situados o que emerjan dentro del mar territorial, en el que cubre la plataforma continental o dentro de los límites de la zona económica exclusiva.

Sobre los espacios acuáticos constituidos por la zona marítima contigua, la plataforma continental y la zona económica exclusiva, la República ejerce derechos exclusivos de soberanía y jurisdicción en los términos, extensión y condiciones que determinen el derecho internacional público y la ley.

Corresponden a la República derechos en el espacio ultraterrestre suprayacente y en las áreas que son o puedan ser patrimonio común de la humanidad, en los términos, extensión y condiciones que determinen los acuerdos internacionales y la legislación nacional.

**Artículo 12.** Los yacimientos mineros y de hidrocarburos, cualquiera que sea su naturaleza, existentes en el territorio nacional, bajo el lecho del mar territorial, en la zona económica exclusiva y en la plataforma continental, pertenecen a la República, son bienes del dominio público y, por tanto, inalienables e imprescriptibles. Las costas marinas son bienes del dominio público.

**Artículo 13.** El territorio nacional no podrá ser jamás cedido, traspasado, arrendado, ni en forma alguna enajenado, ni aun temporal o parcialmente, a Estados extranjeros u otros sujetos de derecho internacional.

El espacio geográfico venezolano es una zona de paz. No se podrán establecer en él bases militares extranjeras o instalaciones que tengan de alguna manera propósitos militares, por parte de ninguna potencia o coalición de potencias.

Los Estados extranjeros u otros sujetos de derecho internacional sólo podrán adquirir inmuebles para sedes de sus representaciones diplomáticas o consulares dentro del área que se determine y mediante garantías de reciprocidad, con las limitaciones que establezca la ley. En dicho caso quedará siempre a salvo la soberanía nacional.

Las tierras baldías existentes en las dependencias federales y en las islas fluviales o lacustres no podrán enajenarse, y su aprovechamiento sólo podrá concederse en forma que no implique, directa ni indirectamente, la transferencia de la propiedad de la tierra.

**Artículo 14.** La ley establecerá un régimen jurídico especial para aquellos territorios que por libre determinación de sus habitantes y con aceptación de la Asamblea Nacional, se incorporen al de la República.

**Artículo 15.** El Estado tiene la obligación de establecer una política integral en los espacios fronterizos terrestres, insulares y marítimos, preservando la integridad territorial, la soberanía, la seguridad, la defensa, la identidad nacional, la diversidad

y el ambiente, de acuerdo con el desarrollo cultural, económico, social y la integración. Atendiendo a la naturaleza propia de cada región fronteriza a través de asignaciones económicas especiales, una ley orgánica de fronteras determinará las obligaciones y objetivos de esta responsabilidad.

### Capítulo II
### De la división política

**Artículo 16.** Con el fin de organizar políticamente la República, el territorio nacional se divide en el de los Estados, el del Distrito Capital, el de las dependencias federales y el de los territorios federales. El territorio se organiza en Municipios.

La división político-territorial será regulada por ley orgánica que garantice la autonomía municipal y la descentralización político-administrativa. Dicha ley podrá disponer la creación de territorios federales en determinadas áreas de los Estados, cuya vigencia queda supeditada a la realización de un referendo aprobatorio en la entidad respectiva. Por ley especial podrá darse a un territorio federal la categoría de Estado, asignándosele la totalidad o una parte de la superficie del territorio respectivo.

**Artículo 17.** Las dependencias federales son las islas marítimas no integradas en el territorio de un Estado, así como las islas que se formen o aparezcan en el mar territorial o en el que cubra la plataforma continental. Su régimen y administración estarán señalados en la ley.

**Artículo 18.** La ciudad de Caracas es la capital de la República y el asiento de los órganos del Poder Nacional.

Lo dispuesto en este artículo no impide el ejercicio del Poder Nacional en otros lugares de la República.

Una ley especial establecerá la unidad político-territorial de la ciudad de Caracas que integre en un sistema de gobierno municipal a dos niveles, los Municipios del Distrito Capital y los correspondientes del Estado Miranda. Dicha ley establecerá su organización, gobierno, administración, competencia y recursos, para alcanzar el desarrollo armónico e integral de la ciudad. En todo caso, la ley garantizará el carácter democrático y participativo de su gobierno.

### TÍTULO III
### DE LOS DERECHOS HUMANOS Y GARANTÍAS, Y DE LOS DEBERES

### Capítulo I
### Disposiciones generales

**Artículo 19.** El Estado garantizará a toda persona, conforme al principio de progresividad y sin discriminación alguna, el goce y ejercicio irrenunciable, indivisible e interdependiente de los derechos humanos. Su respeto y garantía son obligatorios para los órganos del Poder Público, de conformidad con esta Constitución, con los tratados sobre derechos humanos suscritos y ratificados por la República y con las leyes que los desarrollen.

**Artículo 20.** Toda persona tiene derecho al libre desenvolvimiento de su personalidad, sin más limitaciones que las que derivan del derecho de los demás y del orden público y social.

**Artículo 21.** Todas las personas son iguales ante la ley; en consecuencia:

1. No se permitirán discriminaciones fundadas en la raza, el sexo, el credo, la condición social o aquellas que, en general, tengan por objeto o por resultado anular o menoscabar el reconocimiento, goce o ejercicio en condiciones de igualdad, de los derechos y libertades de toda persona.

2. La ley garantizará las condiciones jurídicas y administrativas para que la igualdad ante la ley sea real y efectiva; adoptará medidas positivas a favor de personas o grupos que puedan ser discriminados, marginados o vulnerables; protegerá especialmente a aquellas personas que por alguna de las condiciones antes especificadas, se encuentren en circunstancia de debilidad manifiesta y sancionará los abusos o maltratos que contra ellas se cometan.

3. Sólo se dará el trato oficial de ciudadano o ciudadana, salvo las fórmulas diplomáticas.

4. No se reconocen títulos nobiliarios ni distinciones hereditarias.

**Artículo 22.** La enunciación de los derechos y garantías contenidos en esta Constitución y en los instrumentos internacionales sobre derechos humanos no debe entenderse como negación de otros que, siendo inherentes a la persona, no figuren expresamente en ellos. La falta de ley reglamentaria de estos derechos no menoscaba el ejercicio de los mismos.

**Artículo 23.** Los tratados, pactos y convenciones relativos a derechos humanos, suscritos y ratificados por Venezuela, tienen jerarquía constitucional y prevalecen en el orden interno, en la medida en que contengan normas sobre su goce y ejercicio más favorables a las establecidas en esta Constitución y en las leyes de la República, y son de aplicación inmediata y directa por los tribunales y demás órganos del Poder Público.

**Artículo 24.** Ninguna disposición legislativa tendrá efecto retroactivo, excepto cuando imponga menor pena. Las leyes de procedimiento se aplicarán desde el momento mismo de entrar en vigencia, aun en los procesos que se hallaren en curso; pero en los procesos penales, las pruebas ya evacuadas se estimarán en cuanto beneficien al reo o a la rea, conforme a la ley vigente para la fecha en que se promovieron.

Cuando haya dudas se aplicará la norma que beneficie al reo o a la rea.

**Artículo 25.** Todo acto dictado en ejercicio del Poder Público que viole o menoscabe los derechos garantizados por esta Constitución y la ley es nulo; y los funcionarios públicos y funcionarias públicas que lo ordenen o ejecuten incurren en responsabilidad penal, civil y administrativa, según los casos, sin que les sirvan de excusa órdenes superiores.

**Artículo 26.** Toda persona tiene derecho de acceso a los órganos de administración de justicia para hacer valer sus derechos e intereses, incluso los colectivos o difusos; a la tutela efectiva de los mismos y a obtener con prontitud la decisión correspondiente.

El Estado garantizará una justicia gratuita, accesible, imparcial, idónea, transparente, autónoma, independiente, responsable, equitativa y expedita, sin dilaciones indebidas, sin formalismos o reposiciones inútiles.

**Artículo 27.** Toda persona tiene derecho a ser amparada por los tribunales en el goce y ejercicio de los derechos y garantías constitucionales, aun de aquellos inherentes a la persona que no figuren expresamente en esta Constitución o en los instrumentos internacionales sobre derechos humanos.

El procedimiento de la acción de amparo constitucional será oral, público, breve, gratuito y no sujeto a formalidad; y la autoridad judicial competente tendrá potestad para restablecer inmediatamente la situación jurídica infringida o la situación que más se asemeje a ella. Todo tiempo será hábil y el tribunal lo tramitará con preferencia a cualquier otro asunto.

La acción de amparo a la libertad o seguridad podrá ser interpuesta por cualquier persona; y el detenido o detenida será puesto o puesta bajo la custodia del tribunal de manera inmediata, sin dilación alguna.

El ejercicio de este derecho no puede ser afectado, en modo alguno, por la declaración del estado de excepción o de la restricción de garantías constitucionales.

**Artículo 28.** Toda persona tiene el derecho de acceder a la información y a los datos que sobre sí misma o sobre sus bienes consten en registros oficiales o privados, con las excepciones que establezca la ley, así como de conocer el uso que se haga de los mismos y su finalidad, y de solicitar ante el tribunal competente la actualización, la rectificación o la destrucción de aquellos, si fuesen erróneos o afectasen ilegítimamente sus derechos. Igualmente, podrá acceder a documentos de cualquier naturaleza que contengan información cuyo conocimiento sea de interés para comunidades o grupos de personas. Queda a salvo el secreto de las fuentes de información periodística y de otras profesiones que determine la ley.

**Artículo 29.** El Estado estará obligado a investigar y sancionar legalmente los delitos contra los derechos humanos cometidos por sus autoridades.

Las acciones para sancionar los delitos de lesa humanidad, violaciones graves de los derechos humanos y los crímenes de guerra son imprescriptibles. Las violaciones de derechos humanos y los delitos de lesa humanidad serán investigados y juzgados por los tribunales ordinarios. Dichos delitos quedan excluidos de los beneficios que puedan conllevar su impunidad, incluidos el indulto y la amnistía.

**Artículo 30.** El Estado tendrá la obligación de indemnizar integralmente a las víctimas de violaciones de los derechos humanos que le sean imputables, o a sus derechohabientes, incluido el pago de daños y perjuicios.

El Estado adoptará las medidas legislativas y de otra naturaleza para hacer efectivas las indemnizaciones establecidas en este artículo.

El Estado protegerá a las víctimas de delitos comunes y procurará que los culpables reparen los daños causados.

**Artículo 31.** Toda persona tiene derecho, en los términos establecidos por los tratados, pactos y convenciones sobre derechos humanos ratificados por la República, a dirigir peticiones o quejas ante los órganos internacionales creados para tales fines, con el objeto de solicitar el amparo a sus derechos humanos.

El Estado adoptará, conforme a procedimientos establecidos en esta Constitución y en la ley, las medidas que sean necesarias para dar cumplimiento a las decisiones emanadas de los órganos internacionales previstos en este artículo.

### Capítulo II
### De la nacionalidad y de la ciudadanía
### Sección primera: de la nacionalidad

**Artículo 32.** Son venezolanos y venezolanas por nacimiento:

1. Toda persona nacida en el territorio de la República.

2. Toda persona nacida en territorio extranjero, hijo o hija de padre venezolano por nacimiento y madre venezolana por nacimiento.

3. Toda persona nacida en territorio extranjero, hijo o hija de padre venezolano por nacimiento o madre venezolana por nacimiento, siempre que establezca su residencia en el territorio de la República o declare su voluntad de acogerse a la nacionalidad venezolana.

4. Toda persona nacida en territorio extranjero, de padre venezolano por naturalización o madre venezolana por naturalización, siempre que antes de cumplir dieciocho años de edad establezca su residencia en el territorio de la República y antes de cumplir veinticinco años de edad declare su voluntad de acogerse a la nacionalidad venezolana.

**Artículo 33.** Son venezolanos y venezolanas por naturalización:

1. Los extranjeros o extranjeras que obtengan carta de naturaleza. A tal fin, deberán tener domicilio en Venezuela con residencia ininterrumpida de,

por lo menos, diez años inmediatamente anteriores a la fecha de la respectiva solicitud.

El tiempo de residencia se reducirá a cinco años en el caso de aquellos y aquellas que tuvieren la nacionalidad originaria de España, Portugal, Italia, países latinoamericanos y del Caribe.

2. Los extranjeros o extranjeras que contraigan matrimonio con venezolanas o venezolanos desde que declaren su voluntad de serlo, transcurridos por lo menos cinco años a partir de la fecha del matrimonio.

3. Los extranjeros o extranjeras menores de edad para la fecha de la naturalización del padre o de la madre que ejerza sobre ellos la patria potestad, siempre que declaren su voluntad de ser venezolanos o venezolanas antes de cumplir los veintiún años de edad y hayan residido en Venezuela, ininterrumpidamente, durante los cinco años anteriores a dicha declaración.

**Artículo 34.** La nacionalidad venezolana no se pierde al optar o adquirir otra nacionalidad.

**Artículo 35.** Los venezolanos y venezolanas por nacimiento no podrán ser privados o privadas de su nacionalidad. La nacionalidad venezolana por naturalización sólo podrá ser revocada mediante sentencia judicial, de acuerdo con la ley.

**Artículo 36.** Se puede renunciar a la nacionalidad venezolana. Quien renuncie a la nacionalidad venezolana por nacimiento puede recuperarla si se domicilia en el territorio de la República por un lapso no menor de dos años y manifiesta su voluntad de hacerlo. Los venezolanos y venezolanas por naturalización que renuncien a la nacionalidad venezolana podrán recuperarla cumpliendo nuevamente con los requisitos exigidos en el artículo 33 de esta Constitución.

**Artículo 37.** El Estado promoverá la celebración de tratados internacionales en materia de nacionalidad, especialmente con los Estados fronterizos y los señalados en el numeral 1 del artículo 33 de esta Constitución.

**Artículo 38.** La ley dictará, de conformidad con las disposiciones anteriores, las normas sustantivas y procesales relacionadas con la adquisición, opción, renuncia y recuperación de la nacionalidad venezolana, así como con la revocación y nulidad de la naturalización.

### Sección segunda: de la ciudadanía

**Artículo 39.** Los venezolanos y venezolanas que no estén sujetos o sujetas a inhabilitación política ni a interdicción civil, y en las condiciones de edad previstas en esta Constitución, ejercen la ciudadanía; en consecuencia, son titulares de derechos y deberes políticos de acuerdo con esta Constitución.

**Artículo 40.** Los derechos políticos son privativos de los venezolanos y venezolanas, salvo las excepciones establecidas en esta Constitución.

Gozan de los mismos derechos de los venezolanos y venezolanas por nacimiento los venezolanos y venezolanas por naturalización que hubieren ingresado al país antes de cumplir los siete años de edad y residido en él permanentemente hasta alcanzar la mayoridad.

**Artículo 41.** Sólo los venezolanos y venezolanas por nacimiento y sin otra nacionalidad podrán ejercer los cargos de Presidente o Presidenta de la República, Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, Presidente o Presidenta y Vicepresidentes o Vicepresidentas de la Asamblea Nacional, magistrados o magistradas del Tribunal Supremo de Justicia, Presidente o Presidenta del Consejo Nacional Electoral, Procurador o Procuradora General de la República, Contralor o Contralora General de la República, Fiscal General de la República, Defensor o Defensora del Pueblo, Ministros o Ministras de los despachos relacionados con la seguridad de la Nación, finanzas, energía y minas, educación; Gobernadores o Gobernadoras y Alcaldes o Alcaldesas de los Estados y Municipios fronterizos y de aquellos contemplados en la Ley Orgánica de la Fuerza Armada Nacional.

Para ejercer los cargos de diputados o diputadas a la Asamblea Nacional, Ministros o Ministras; Gobernadores o Gobernadoras y Alcaldes o Alcaldesas de Estados o Municipios no fronterizos, los venezolanos y venezolanas por naturalización deben tener domicilio con residencia ininterrumpida en Venezuela no menor de quince años y cumplir los requisitos de aptitud previstos en la ley.

**Artículo 42.** Quien pierda o renuncie a la nacionalidad pierde la ciudadanía. El ejercicio de la ciudadanía o de alguno de los derechos políticos sólo puede ser suspendido por sentencia judicial firme en los casos que determine la ley.

### Capítulo III
### De los derechos civiles

**Artículo 43.** El derecho a la vida es inviolable. Ninguna ley podrá establecer la pena de muerte, ni autoridad alguna aplicarla. El Estado protegerá la vida de las personas que se encuentren privadas de su libertad, prestando el servicio militar o civil, o sometidas a su autoridad en cualquier otra forma.

**Artículo 44.** La libertad personal es inviolable; en consecuencia:

1. Ninguna persona puede ser arrestada o detenida sino en virtud de una orden judicial, a menos que sea sorprendida in fraganti. En este caso, será llevada ante una autoridad judicial en un tiempo no mayor de cuarenta y ocho horas a partir del momento de la detención. Será juzgada en libertad, excepto por las razones determinadas por la ley y apreciadas por el juez o jueza en cada caso.

La constitución de caución exigida por la ley para conceder la libertad de la persona detenida no causará impuesto alguno.

2. Toda persona detenida tiene derecho a comunicarse de inmediato con sus familiares, abogado o abogada, o persona de su confianza; y éstos o éstas, a su vez, tienen el derecho a ser informados o informadas sobre el lugar donde se encuentra la persona detenida; a ser notificados o notificadas inmediatamente de los motivos de la detención y a que dejen constancia escrita en el expediente sobre el estado físico y psíquico de la persona detenida, ya sea por sí mismos o por sí mismas, o con el auxilio de especialistas. La autoridad competente llevará un registro público de toda detención realizada, que comprenda la identidad de la persona detenida, lugar, hora, condiciones y funcionarios o funcionarias que la practicaron.

Respecto a la detención de extranjeros o extranjeras se observará, además, la notificación consular prevista en los tratados internacionales sobre la materia.

3. La pena no puede trascender de la persona condenada. No habrá condenas a penas perpetuas o infamantes. Las penas privativas de la libertad no excederán de treinta años.

4. Toda autoridad que ejecute medidas privativas de la libertad estará obligada a identificarse.

5. Ninguna persona continuará en detención después de dictada orden de excarcelación por la autoridad competente, o una vez cumplida la pena impuesta.

**Artículo 45.** Se prohíbe a la autoridad pública, sea civil o militar, aun en estado de emergencia, excepción o restricción de garantías, practicar, permitir o tolerar la desaparición forzada de personas. El funcionario o funcionaria que reciba orden o instrucción para practicarla, tiene la obligación de no obedecerla y denunciarla a las autoridades competentes. Los autores o autoras intelectuales y materiales, cómplices y encubridores o encubridoras del delito de desaparición forzada de personas, así como la tentativa de comisión del mismo, serán sancionados o sancionadas de conformidad con la ley.

**Artículo 46.** Toda persona tiene derecho a que se respete su integridad física, psíquica y moral; en consecuencia:

1. Ninguna persona puede ser sometida a penas, torturas o tratos crueles, inhumanos o degradantes. Toda víctima de tortura o trato cruel, inhumano o degradante practicado o tolerado por parte de agentes del Estado, tiene derecho a la rehabilitación.

2. Toda persona privada de libertad será tratada con el respeto debido a la dignidad inherente al ser humano.

3. Ninguna persona será sometida sin su libre consentimiento a experimentos científicos, o a exámenes médicos o de laboratorio, excepto cuando se encontrare en peligro su vida o por otras circunstancias que determine la ley.

4. Todo funcionario público o funcionaria pública que, en razón de su cargo, infiera maltratos o sufrimientos físicos o mentales a cualquier persona, o que instigue o tolere este tipo de tratos, será sancionado o sancionada de acuerdo con la ley.

**Artículo 47.** El hogar doméstico y todo recinto privado de persona son inviolables. No podrán ser allanados sino mediante orden judicial, para impedir la perpetración de un delito o para cumplir, de acuerdo con la ley, las decisiones que dicten los tribunales, respetando siempre la dignidad del ser humano.

Las visitas sanitarias que se practiquen, de conformidad con la ley, sólo podrán hacerse previo aviso de los funcionarios o funcionarias que las ordenen o hayan de practicarlas.

**Artículo 48.** Se garantiza el secreto e inviolabilidad de las comunicaciones privadas en todas sus formas. No podrán ser interferidas sino por orden de un tribunal competente, con el cumplimiento de las disposiciones legales y preservándose el secreto de lo privado que no guarde relación con el correspondiente proceso.

**Artículo 49.** El debido proceso se aplicará a todas las actuaciones judiciales y administrativas; en consecuencia:

1. La defensa y la asistencia jurídica son derechos inviolables en todo estado y grado de la investigación y del proceso. Toda persona tiene derecho a ser notificada de los cargos por los cuales se le investiga; de acceder a las pruebas y de disponer del tiempo y de los medios adecuados para ejercer su defensa. Serán nulas las pruebas obtenidas mediante violación del debido proceso. Toda persona declarada culpable tiene derecho a recurrir del fallo, con las excepciones establecidas en esta Constitución y en la ley.

2. Toda persona se presume inocente mientras no se pruebe lo contrario.

3. Toda persona tiene derecho a ser oída en cualquier clase de proceso, con las debidas garantías y dentro del plazo razonable determinado legalmente por un tribunal competente, independiente e imparcial establecido con anterioridad. Quien no hable castellano, o no pueda comunicarse de manera verbal, tiene derecho a un intérprete.

4. Toda persona tiene derecho a ser juzgada por sus jueces naturales en las jurisdicciones ordinarias o especiales, con las garantías establecidas en esta Constitución y en la ley. Ninguna persona podrá ser sometida a juicio sin conocer la identidad de quien la juzga, ni podrá ser procesada por tribunales de excepción o por comisiones creadas para tal efecto.

5. Ninguna persona podrá ser obligada a confesarse culpable o declarar contra sí misma, su cónyuge, concubino o concubina, o pariente dentro del cuarto grado de consanguinidad y segundo de afinidad.

La confesión solamente será válida si fuere hecha sin coacción de ninguna naturaleza.

6. Ninguna persona podrá ser sancionada por actos u omisiones que no fueren previstos como delitos, faltas o infracciones en leyes preexistentes.

7. Ninguna persona podrá ser sometida a juicio por los mismos hechos en virtud de los cuales hubiese sido juzgada anteriormente.

8. Toda persona podrá solicitar del Estado el restablecimiento o reparación de la situación jurídica lesionada por error judicial, retardo u omisión injustificados. Queda a salvo el derecho del o de la particular de exigir la responsabilidad personal del magistrado o de la magistrada, del juez o de la jueza; y el derecho del Estado de actuar contra éstos o éstas.

**Artículo 50.** Toda persona puede transitar libremente y por cualquier medio por el territorio nacional, cambiar de domicilio y residencia, ausentarse de la República y volver, trasladar sus bienes y pertenencias en el país, traer sus bienes al país o sacarlos, sin más limitaciones que las establecidas por la ley. En caso de concesión de vías, la ley establecerá los supuestos en los que debe garantizarse el uso de una vía alterna. Los venezolanos y venezolanas pueden ingresar al país sin necesidad de autorización alguna.

Ningún acto del Poder Público podrá establecer la pena de extrañamiento del territorio nacional contra venezolanos o venezolanas.

**Artículo 51.** Toda persona tiene el derecho de representar o dirigir peticiones ante cualquier autoridad, funcionario público o funcionaria pública sobre los asuntos que sean de la competencia de éstos o éstas, y de obtener oportuna y adecuada respuesta. Quienes violen este derecho serán sancionados o sancionadas conforme a la ley, pudiendo ser destituidos o destituidas del cargo respectivo.

**Artículo 52.** Toda persona tiene el derecho de asociarse con fines lícitos, de conformidad con la ley. El Estado estará obligado a facilitar el ejercicio de este derecho.

**Artículo 53.** Toda persona tiene el derecho de reunirse, pública o privadamente, sin permiso previo, con fines lícitos y sin armas. Las reuniones en lugares públicos se regirán por la ley.

**Artículo 54.** Ninguna persona podrá ser sometida a esclavitud o servidumbre. La trata de personas y, en particular, la de mujeres, niños, niñas y adolescentes en todas sus formas, estará sujeta a las penas previstas en la ley.

**Artículo 55.** Toda persona tiene derecho a la protección por parte del Estado, a través de los órganos de seguridad ciudadana regulados por ley, frente a situaciones que constituyan amenaza, vulnerabilidad o riesgo para la integridad física de las personas, sus propiedades, el disfrute de sus derechos y el cumplimiento de sus deberes.

La participación de los ciudadanos y ciudadanas en los programas destinados a la prevención, seguridad ciudadana y administración de emergencias será regulada por una ley especial.

Los cuerpos de seguridad del Estado respetarán la dignidad y los derechos humanos de todas las personas. El uso de armas o sustancias tóxicas por parte del funcionariado policial y de seguridad estará limitado por principios de necesidad, conveniencia, oportunidad y proporcionalidad, conforme a la ley.

**Artículo 56.** Toda persona tiene derecho a un nombre propio, al apellido del padre y al de la madre y a conocer la identidad de los mismos. El Estado garantizará el derecho a investigar la maternidad y la paternidad.

Toda persona tiene derecho a ser inscrita gratuitamente en el registro civil después de su nacimiento y a obtener documentos públicos que comprueben su identidad biológica, de conformidad con la ley. Éstos no contendrán mención alguna que califique la filiación.

**Artículo 57.** Toda persona tiene derecho a expresar libremente sus pensamientos, sus ideas u opiniones de viva voz, por escrito o mediante cualquier otra forma de expresión y de hacer uso para ello de cualquier medio de comunicación y difusión, sin que pueda establecerse censura. Quien haga uso de este derecho asume plena responsabilidad por todo lo expresado. No se permite el anonimato, ni la propaganda de guerra, ni los mensajes discriminatorios, ni los que promuevan la intolerancia religiosa.

Se prohíbe la censura a los funcionarios públicos o funcionarias públicas para dar cuenta de los asuntos bajo sus responsabilidades.

**Artículo 58.** La comunicación es libre y plural y comporta los deberes y responsabilidades que indique la ley. Toda persona tiene derecho a la información oportuna, veraz e imparcial, sin censura, de acuerdo con los principios de esta Constitución, así como a la réplica y rectificación cuando se vea afectada directamente por informaciones inexactas o agraviantes. Los niños, niñas y adolescentes tienen derecho a recibir información adecuada para su desarrollo integral.

**Artículo 59.** El Estado garantizará la libertad de religión y de culto. Toda persona tiene derecho a profesar su fe religiosa y cultos y a manifestar sus creencias en privado o en público, mediante la enseñanza u otras prácticas, siempre que no se opongan a la moral, a las buenas costumbres y al orden público. Se garantiza, así mismo, la independencia y la autonomía de las iglesias y confesiones religiosas, sin más limitaciones que las derivadas de esta Constitución y de la ley. El padre y la madre tienen derecho a que sus hijos o hijas reciban la educación religiosa que esté de acuerdo con sus convicciones.

Nadie podrá invocar creencias o disciplinas religiosas para eludir el cumplimiento de la ley ni para impedir a otro u otra el ejercicio de sus derechos.

**Artículo 60.** Toda persona tiene derecho a la protección de su honor, vida privada, intimidad, propia imagen, confidencialidad y reputación.

La ley limitará el uso de la informática para garantizar el honor y la intimidad personal y familiar de los ciudadanos y ciudadanas y el pleno ejercicio de sus derechos.

**Artículo 61.** Toda persona tiene derecho a la libertad de conciencia y a manifestarla, salvo que su práctica afecte su personalidad o constituya delito. La objeción de conciencia no puede invocarse para eludir el cumplimiento de la ley o impedir a otros su cumplimiento o el ejercicio de sus derechos.

**Capítulo IV**
**De los derechos políticos y del referendo popular**

**Sección primera: de los derechos políticos**

**Artículo 62.** Todos los ciudadanos y ciudadanas tienen el derecho de participar libremente en los asuntos públicos, directamente o por medio de sus representantes elegidos o elegidas.

La participación del pueblo en la formación, ejecución y control de la gestión pública es el medio necesario para lograr el protagonismo que garantice su completo desarrollo, tanto individual como colectivo. Es obligación del Estado y deber de la sociedad facilitar la generación de las condiciones más favorables para su práctica.

**Artículo 63.** El sufragio es un derecho. Se ejercerá mediante votaciones libres, universales, directas y secretas. La ley garantizará el principio de la personalización del sufragio y la representación proporcional.

**Artículo 64.** Son electores o electoras todos los venezolanos y venezolanas que hayan cumplido dieciocho años de edad y que no estén sujetos a interdicción civil o inhabilitación política.

El voto para las elecciones parroquiales, municipales y estadales se hará extensivo a los extranjeros o extranjeras que hayan cumplido dieciocho años de edad, con más de diez años de residencia en el país, con las limitaciones establecidas en esta Constitución y en la ley, y que no estén sujetos a interdicción civil o inhabilitación política.

**Artículo 65.** No podrán optar a cargo alguno de elección popular quienes hayan sido condenados o condenadas por delitos cometidos durante el ejercicio de sus funciones y otros que afecten el patrimonio público, dentro del tiempo que fije la ley, a partir del cumplimiento de la condena y de acuerdo con la gravedad del delito.

**Artículo 66.** Los electores y electoras tienen derecho a que sus representantes rindan cuentas públicas, transparentes y periódicas sobre su gestión, de acuerdo con el programa presentado.

**Artículo 67.** Todos los ciudadanos y ciudadanas tienen el derecho de asociarse con fines políticos, mediante métodos democráticos de organización, funcionamiento y dirección. Sus organismos de dirección y sus candidatos o candidatas a cargos de elección popular serán seleccionados o seleccionadas en elecciones internas con la participación de sus integrantes. No se permitirá el financiamiento de las asociaciones con fines políticos con fondos provenientes del Estado.

La ley regulará lo concerniente al financiamiento y las contribuciones privadas de las organizaciones con fines políticos, y los mecanismos de control que aseguren la pulcritud en el origen y manejo de las mismas. Así mismo regulará las campañas políticas y electorales, su duración y límites de gastos propendiendo a su democratización.

Los ciudadanos y ciudadanas, por iniciativa propia, y las asociaciones con fines políticos, tienen derecho a concurrir a los procesos electorales postulando candidatos o candidatas. El financiamiento de la propaganda política y de las campañas electorales será regulado por la ley. Las direcciones de las asociaciones con fines políticos no podrán contratar con entidades del sector público.

**Artículo 68.** Los ciudadanos y ciudadanas tienen derecho a manifestar, pacíficamente y sin armas, sin otros requisitos que los que establezca la ley.

Se prohíbe el uso de armas de fuego y sustancias tóxicas en el control de manifestaciones pacíficas. La ley regulará la actuación de los cuerpos policiales y de seguridad en el control del orden público.

**Artículo 69.** La República Bolivariana de Venezuela reconoce y garantiza el derecho de asilo y refugio.

Se prohíbe la extradición de venezolanos y venezolanas.

**Artículo 70.** Son medios de participación y protagonismo del pueblo en ejercicio de su soberanía, en lo político: la elección de cargos públicos, el referendo, la consulta popular, la revocación del mandato, las iniciativas legislativa, constitucional y constituyente, el cabildo abierto y la asamblea de ciudadanos y ciudadanas cuyas decisiones serán de carácter vinculante, entre otros; y en lo social y económico: las instancias de atención ciudadana, la autogestión, la cogestión, las cooperativas en todas sus formas incluyendo las de carácter financiero, las cajas de ahorro, la empresa comunitaria y demás formas asociativas guiadas por los valores de la mutua cooperación y la solidaridad.

La ley establecerá las condiciones para el efectivo funcionamiento de los medios de participación previstos en este artículo.

**Sección segunda: del referendo popular**

**Artículo 71.** Las materias de especial trascendencia nacional podrán ser sometidas a referendo consultivo por iniciativa del Presidente o Presidenta de la República en

Consejo de Ministros; por acuerdo de la Asamblea Nacional, aprobado por el voto de la mayoría de sus integrantes; o a solicitud de un número no menor del diez por ciento de los electores y electoras inscritos en el Registro Civil y Electoral.

También podrán ser sometidas a referendo consultivo las materias de especial trascendencia parroquial, municipal y estadal. La iniciativa le corresponde a la Junta Parroquial, al Concejo Municipal, o al Consejo Legislativo, por acuerdo de las dos terceras partes de sus integrantes; al Alcalde o Alcaldesa, o al Gobernador o Gobernadora de Estado, o a un número no menor del diez por ciento del total de inscritos e inscritas en la circunscripción correspondiente, que lo soliciten.

**Artículo 72.** Todos los cargos y magistraturas de elección popular son revocables.

Transcurrida la mitad del período para el cual fue elegido el funcionario o funcionaria, un número no menor del veinte por ciento de los electores o electoras inscritos en la correspondiente circunscripción podrá solicitar la convocatoria de un referendo para revocar su mandato.

Cuando igual o mayor número de electores y electoras que eligieron al funcionario o funcionaria hubieren votado a favor de la revocación, siempre que haya concurrido al referendo un número de electores o electoras igual o superior al veinticinco por ciento de los electores o electoras inscritos o inscritas, se considerará revocado su mandato y se procederá de inmediato a cubrir la falta absoluta conforme a lo dispuesto en esta Constitución y en la ley.

La revocación del mandato para los cuerpos colegiados se realizará de acuerdo con lo que establezca la ley.

Durante el período para el cual fue elegido el funcionario o funcionaria no podrá hacerse más de una solicitud de revocación de su mandato.

**Artículo 73.** Serán sometidos a referendo aquellos proyectos de ley en discusión por la Asamblea Nacional, cuando así lo decidan por lo menos las dos terceras partes de los o las integrantes de la Asamblea. Si el referendo concluye en un sí aprobatorio, siempre que haya concurrido el veinticinco por ciento de los electores y electoras inscritos e inscritas en el Registro Civil y Electoral, el proyecto correspondiente será sancionado como ley.

Los tratados, convenios o acuerdos internacionales que pudieren comprometer la soberanía nacional o transferir competencias a órganos supranacionales, podrán ser sometidos a referendo por iniciativa del Presidente o Presidenta de la República en Consejo de Ministros; por el voto de las dos terceras partes de los o las integrantes de la Asamblea; o por el quince por ciento de los electores o electoras inscritos e inscritas en el Registro Civil y Electoral.

**Artículo 74.** Serán sometidas a referendo, para ser abrogadas total o parcialmente, las leyes cuya abrogación fuere solicitada por iniciativa de un número no menor del diez por ciento de los electores y electoras inscritos e inscritas en el Registro Civil y Electoral o por el Presidente o Presidenta de la República en Consejo de Ministros.

También podrán ser sometidos a referendo abrogatorio los decretos con fuerza de ley que dicte el Presidente o Presidenta de la República en uso de la atribución prescrita en el numeral 8 del artículo 236 de esta Constitución, cuando fuere solicitado por un número no menor del cinco por ciento de los electores y electoras inscritos e inscritas en el Registro Civil y Electoral.

Para la validez del referendo abrogatorio será indispensable la concurrencia de, por lo menos, el cuarenta por ciento de los electores y electoras inscritos e inscritas en el Registro Civil y Electoral.

No podrán ser sometidas a referendo abrogatorio las leyes de presupuesto, las que establezcan o modifiquen impuestos, las de crédito público ni las de amnistía, ni aquellas que protejan, garanticen o desarrollen los derechos humanos y las que aprueben tratados internacionales.

No podrá hacerse más de un referendo abrogatorio en un período constitucional para la misma materia.

### Capítulo V
### De los derechos sociales y de las familias

**Artículo 75.** El Estado protegerá a las familias como asociación natural de la sociedad y como el espacio fundamental para el desarrollo integral de las personas. Las relaciones familiares se basan en la igualdad de derechos y deberes, la solidaridad, el esfuerzo común, la comprensión mutua y el respeto recíproco entre sus integrantes. El Estado garantizará protección a la madre, al padre o a quienes ejerzan la jefatura de la familia.

Los niños, niñas y adolescentes tienen derecho a vivir, ser criados o criadas y a desarrollarse en el seno de su familia de origen. Cuando ello sea imposible o contrario a su interés superior, tendrán derecho a una familia sustituta, de conformidad con la ley. La adopción tiene efectos similares a la filiación y se establece siempre en beneficio del adoptado o la adoptada, de conformidad con la ley. La adopción internacional es subsidiaria de la nacional.

**Artículo 76.** La maternidad y la paternidad son protegidas integralmente, sea cual fuere el estado civil de la madre o del padre. Las parejas tienen derecho a decidir libre y responsablemente el número de hijos o hijas que deseen concebir y a disponer de la información y de los medios que les aseguren el ejercicio de este derecho. El Estado garantizará asistencia y protección integral a la maternidad, en general a partir del momento de la concepción, durante el embarazo, el parto y el puerperio, y asegurará servicios de planificación familiar integral basados en valores éticos y científicos.

El padre y la madre tienen el deber compartido e irrenunciable de criar, formar, educar, mantener y asistir a sus hijos o hijas, y éstos tienen el deber de asistirlos o asistirlas cuando aquel o aquella no puedan hacerlo por sí mismos o por

sí mismas. La ley establecerá las medidas necesarias y adecuadas para garantizar la efectividad de la obligación alimentaria.

**Artículo 77.** Se protege el matrimonio entre un hombre y una mujer, fundado en el libre consentimiento y en la igualdad absoluta de los derechos y deberes de los cónyuges. Las uniones estables de hecho entre un hombre y una mujer que cumplan los requisitos establecidos en la ley producirán los mismos efectos que el matrimonio.

**Artículo 78.** Los niños, niñas y adolescentes son sujetos plenos de derecho y estarán protegidos por la legislación, órganos y tribunales especializados, los cuales respetarán, garantizarán y desarrollarán los contenidos de esta Constitución, la Convención sobre los Derechos del Niño y demás tratados internacionales que en esta materia haya suscrito y ratificado la República. El Estado, las familias y la sociedad asegurarán, con prioridad absoluta, protección integral, para lo cual se tomará en cuenta su interés superior en las decisiones y acciones que les conciernan. El Estado promoverá su incorporación progresiva a la ciudadanía activa y creará un sistema rector nacional para la protección integral de los niños, niñas y adolescentes.

**Artículo 79.** Los jóvenes y las jóvenes tienen el derecho y el deber de ser sujetos activos del proceso de desarrollo. El Estado, con la participación solidaria de las familias y la sociedad, creará oportunidades para estimular su tránsito productivo hacia la vida adulta y, en particular, para la capacitación y el acceso al primer empleo, de conformidad con la ley.

**Artículo 80.** El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de seguridad social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**Artículo 81.** Toda persona con discapacidad o necesidades especiales tiene derecho al ejercicio pleno y autónomo de sus capacidades y a su integración familiar y comunitaria. El Estado, con la participación solidaria de las familias y la sociedad, le garantizará el respeto a su dignidad humana, la equiparación de oportunidades, condiciones laborales satisfactorias, y promoverá su formación, capacitación y acceso al empleo acorde con sus condiciones, de conformidad con la ley. Se les reconoce a las personas sordas o mudas el derecho a expresarse y comunicarse a través de la lengua de señas venezolana.

**Artículo 82.** Toda persona tiene derecho a una vivienda adecuada, segura, cómoda, higiénica, con servicios básicos esenciales que incluyan un hábitat que humanice las relaciones familiares, vecinales y comunitarias. La satisfacción progresiva de este derecho es obligación compartida entre los ciudadanos y ciudadanas y el Estado en todos sus ámbitos.

El Estado dará prioridad a las familias y garantizará los medios para que éstas, y especialmente las de escasos recursos, puedan acceder a las políticas sociales y al crédito para la construcción, adquisición o ampliación de viviendas.

**Artículo 83.** La salud es un derecho social fundamental, obligación del Estado, que lo garantizará como parte del derecho a la vida. El Estado promoverá y desarrollará políticas orientadas a elevar la calidad de vida, el bienestar colectivo y el acceso a los servicios. Todas las personas tienen derecho a la protección de la salud, así como el deber de participar activamente en su promoción y defensa, y el de cumplir con las medidas sanitarias y de saneamiento que establezca la ley, de conformidad con los tratados y convenios internacionales suscritos y ratificados por la República.

**Artículo 84.** Para garantizar el derecho a la salud, el Estado creará, ejercerá la rectoría y gestionará un sistema público nacional de salud, de carácter intersectorial, descentralizado y participativo, integrado al sistema de seguridad social, regido por los principios de gratuidad, universalidad, integralidad, equidad, integración social y solidaridad. El sistema público nacional de salud dará prioridad a la promoción de la salud y a la prevención de las enfermedades, garantizando tratamiento oportuno y rehabilitación de calidad. Los bienes y servicios públicos de salud son propiedad del Estado y no podrán ser privatizados. La comunidad organizada tiene el derecho y el deber de participar en la toma de decisiones sobre la planificación, ejecución y control de la política específica en las instituciones públicas de salud.

**Artículo 85.** El financiamiento del sistema público nacional de salud es obligación del Estado, que integrará los recursos fiscales, las cotizaciones obligatorias de la seguridad social y cualquier otra fuente de financiamiento que determine la ley. El Estado garantizará un presupuesto para la salud que permita cumplir con los objetivos de la política sanitaria. En coordinación con las universidades y los centros de investigación, se promoverá y desarrollará una política nacional de formación de profesionales, técnicos y técnicas y una industria nacional de producción de insumos para la salud. El Estado regulará las instituciones públicas y privadas de salud.

**Artículo 86.** Toda persona tiene derecho a la seguridad social como servicio público de carácter no lucrativo, que garantice la salud y asegure protección en contingencias de maternidad, paternidad, enfermedad, invalidez, enfermedades catastróficas, discapacidad, necesidades especiales, riesgos laborales, pérdida de empleo, desempleo, vejez, viudedad, orfandad, vivienda, cargas derivadas de la vida familiar y cualquier otra circunstancia de previsión social. El Estado tiene la obligación de asegurar la efectividad de este derecho, creando un sistema de seguridad social universal, integral, de financiamiento solidario, unitario, eficiente

y participativo, de contribuciones directas o indirectas. La ausencia de capacidad contributiva no será motivo para excluir a las personas de su protección. Los recursos financieros de la seguridad social no podrán ser destinados a otros fines. Las cotizaciones obligatorias que realicen los trabajadores y las trabajadoras para cubrir los servicios médicos y asistenciales y demás beneficios de la seguridad social podrán ser administrados sólo con fines sociales bajo la rectoría del Estado. Los remanentes netos del capital destinado a la salud, la educación y la seguridad social se acumularán a los fines de su distribución y contribución en esos servicios. El sistema de seguridad social será regulado por una ley orgánica especial.

**Artículo 87.** Toda persona tiene derecho al trabajo y el deber de trabajar. El Estado garantizará la adopción de las medidas necesarias a los fines de que toda persona pueda obtener ocupación productiva, que le proporcione una existencia digna y decorosa y le garantice el pleno ejercicio de este derecho. Es fin del Estado fomentar el empleo. La ley adoptará medidas tendientes a garantizar el ejercicio de los derechos laborales de los trabajadores y trabajadoras no dependientes. La libertad de trabajo no será sometida a otras restricciones que las que la ley establezca.

Todo patrono o patrona garantizará a sus trabajadores o trabajadoras condiciones de seguridad, higiene y ambiente de trabajo adecuados. El Estado adoptará medidas y creará instituciones que permitan el control y la promoción de estas condiciones.

**Artículo 88.** El Estado garantizará la igualdad y equidad de hombres y mujeres en el ejercicio del derecho al trabajo. El Estado reconocerá el trabajo del hogar como actividad económica que crea valor agregado y produce riqueza y bienestar social. Las amas de casa tienen derecho a la seguridad social de conformidad con la ley.

**Artículo 89.** El trabajo es un hecho social y gozará de la protección del Estado. La ley dispondrá lo necesario para mejorar las condiciones materiales, morales e intelectuales de los trabajadores y trabajadoras. Para el cumplimiento de esta obligación del Estado se establecen los siguientes principios:

1. Ninguna ley podrá establecer disposiciones que alteren la intangibilidad y progresividad de los derechos y beneficios laborales. En las relaciones laborales prevalece la realidad sobre las formas o apariencias.

2. Los derechos laborales son irrenunciables. Es nula toda acción, acuerdo o convenio que implique renuncia o menoscabo de estos derechos. Sólo es posible la transacción y convenimiento al término de la relación laboral, de conformidad con los requisitos que establezca la ley.

3. Cuando hubiere dudas acerca de la aplicación o concurrencia de varias normas, o en la interpretación de una determinada norma, se aplicará la más favorable al trabajador o trabajadora. La norma adoptada se aplicará en su integridad.

4. Toda medida o acto del patrono o patrona contrario a esta Constitución es nulo y no genera efecto alguno.

5. Se prohíbe todo tipo de discriminación por razones de política, edad, raza, sexo o credo o por cualquier otra condición.

6. Se prohíbe el trabajo de adolescentes en labores que puedan afectar su desarrollo integral. El Estado los o las protegerá contra cualquier explotación económica y social.

**Artículo 90.** La jornada de trabajo diurna no excederá de ocho horas diarias ni de cuarenta y cuatro horas semanales. En los casos en que la ley lo permita, la jornada de trabajo nocturna no excederá de siete horas diarias ni de treinta y cinco semanales. Ningún patrono o patrona podrá obligar a los trabajadores o trabajadoras a laborar horas extraordinarias. Se propenderá a la progresiva disminución de la jornada de trabajo dentro del interés social y del ámbito que se determine y se dispondrá lo conveniente para la mejor utilización del tiempo libre en beneficio del desarrollo físico, espiritual y cultural de los trabajadores y trabajadoras.

Los trabajadores y trabajadoras tienen derecho al descanso semanal y vacaciones remunerados en las mismas condiciones que las jornadas efectivamente laboradas.

**Artículo 91.** Todo trabajador o trabajadora tiene derecho a un salario suficiente que le permita vivir con dignidad y cubrir para sí y su familia las necesidades básicas materiales, sociales e intelectuales. Se garantizará el pago de igual salario por igual trabajo y se fijará la participación que debe corresponder a los trabajadores y trabajadoras en el beneficio de la empresa. El salario es inembargable y se pagará periódica y oportunamente en moneda de curso legal, salvo la excepción de la obligación alimentaria, de conformidad con la ley.

El Estado garantizará a los trabajadores y trabajadoras del sector público y del sector privado un salario mínimo vital que será ajustado cada año, tomando como una de las referencias el costo de la canasta básica. La ley establecerá la forma y el procedimiento.

**Artículo 92.** Todos los trabajadores y trabajadoras tienen derecho a prestaciones sociales que les recompensen la antigüedad en el servicio y los amparen en caso de cesantía. El salario y las prestaciones sociales son créditos laborales de exigibilidad inmediata. Toda mora en su pago genera intereses, los cuales constituyen deudas de valor y gozarán de los mismos privilegios y garantías de la deuda principal.

**Artículo 93.** La ley garantizará la estabilidad en el trabajo y dispondrá lo conducente para limitar toda forma de despido no justificado. Los despidos contrarios a esta Constitución son nulos.

**Artículo 94.** La ley determinará la responsabilidad que corresponda a la persona natural o jurídica en cuyo provecho se presta el servicio mediante intermediario o contratista, sin perjuicio de la responsabilidad solidaria de éstos. El Estado establecerá, a través del órgano competente, la responsabilidad que corresponda a

los patronos o patronas en general, en caso de simulación o fraude, con el propósito de desvirtuar, desconocer u obstaculizar la aplicación de la legislación laboral.

**Artículo 95.** Los trabajadores y las trabajadoras, sin distinción alguna y sin necesidad de autorización previa, tienen derecho a constituir libremente las organizaciones sindicales que estimen convenientes para la mejor defensa de sus derechos e intereses, así como a afiliarse o no a ellas, de conformidad con la ley. Estas organizaciones no están sujetas a intervención, suspensión o disolución administrativa. Los trabajadores y trabajadoras están protegidos y protegidas contra todo acto de discriminación o de injerencia contrario al ejercicio de este derecho. Los promotores o promotoras y los o las integrantes de las directivas de las organizaciones sindicales gozarán de inamovilidad laboral durante el tiempo y en las condiciones que se requieran para el ejercicio de sus funciones.

Para el ejercicio de la democracia sindical, los estatutos y reglamentos de las organizaciones sindicales establecerán la alternabilidad de los y las integrantes de las directivas y representantes mediante el sufragio universal, directo y secreto. Los y las integrantes de las directivas y representantes sindicales que abusen de los beneficios derivados de la libertad sindical para su lucro o interés personal, serán sancionados o sancionadas de conformidad con la ley. Los y las integrantes de las directivas de las organizaciones sindicales estarán obligados u obligadas a hacer declaración jurada de bienes.

**Artículo 96.** Todos los trabajadores y las trabajadoras del sector público y del privado tienen derecho a la negociación colectiva voluntaria y a celebrar convenciones colectivas de trabajo, sin más requisitos que los que establezca la ley. El Estado garantizará su desarrollo y establecerá lo conducente para favorecer las relaciones colectivas y la solución de los conflictos laborales. Las convenciones colectivas ampararán a todos los trabajadores y trabajadoras activos y activas al momento de su suscripción y a quienes ingresen con posterioridad.

**Artículo 97.** Todos los trabajadores y trabajadoras del sector público y del sector privado tienen derecho a la huelga, dentro de las condiciones que establezca la ley.

## Capítulo VI
## De los derechos culturales y educativos

**Artículo 98.** La creación cultural es libre. Esta libertad comprende el derecho a la inversión, producción y divulgación de la obra creativa, científica, tecnológica y humanística, incluyendo la protección legal de los derechos del autor o de la autora sobre sus obras. El Estado reconocerá y protegerá la propiedad intelectual sobre las obras científicas, literarias y artísticas, invenciones, innovaciones, denominaciones, patentes, marcas y lemas de acuerdo con las condiciones y excepciones que establezcan la ley y los tratados internacionales suscritos y ratificados por la República en esta materia.

**Artículo 99.** Los valores de la cultura constituyen un bien irrenunciable del pueblo venezolano y un derecho fundamental que el Estado fomentará y garantizará, procurando las condiciones, instrumentos legales, medios y presupuestos necesarios. Se reconoce la autonomía de la administración cultural pública en los términos que establezca la ley. El Estado garantizará la protección y preservación, enriquecimiento, conservación y restauración del patrimonio cultural, tangible e intangible, y la memoria histórica de la Nación. Los bienes que constituyen el patrimonio cultural de la Nación son inalienables, imprescriptibles e inembargables. La ley establecerá las penas y sanciones para los daños causados a estos bienes.

**Artículo 100.** Las culturas populares constitutivas de la venezolanidad gozan de atención especial, reconociéndose y respetándose la interculturalidad bajo el principio de igualdad de las culturas. La ley establecerá incentivos y estímulos para las personas, instituciones y comunidades que promuevan, apoyen, desarrollen o financien planes, programas y actividades culturales en el país, así como la cultura venezolana en el exterior. El Estado garantizará a los trabajadores y trabajadoras culturales su incorporación al sistema de seguridad social que les permita una vida digna, reconociendo las particularidades del quehacer cultural, de conformidad con la ley.

**Artículo 101.** El Estado garantizará la emisión, recepción y circulación de la información cultural. Los medios de comunicación tienen el deber de coadyuvar a la difusión de los valores de la tradición popular y la obra de los y las artistas, escritores, escritoras, compositores, compositoras, cineastas, científicos, científicas y demás creadores y creadoras culturales del país. Los medios televisivos deberán incorporar subtítulos y traducción a la lengua de señas, para las personas con problemas auditivos. La ley establecerá los términos y modalidades de estas obligaciones.

**Artículo 102.** La educación es un derecho humano y un deber social fundamental, es democrática, gratuita y obligatoria. El Estado la asumirá como función indeclinable y de máximo interés en todos sus niveles y modalidades, y como instrumento del conocimiento científico, humanístico y tecnológico al servicio de la sociedad. La educación es un servicio público y está fundamentada en el respeto a todas las corrientes del pensamiento, con la finalidad de desarrollar el potencial creativo de cada ser humano y el pleno ejercicio de su personalidad en una sociedad democrática basada en la valoración ética del trabajo y en la participación activa, consciente y solidaria en los procesos de transformación social, consustanciados con los valores de la identidad nacional y con una visión latinoamericana y universal. El Estado, con la participación de las familias y la sociedad, promoverá el proceso de educación ciudadana, de acuerdo con los principios contenidos en esta Constitución y en la ley.

**Artículo 103.** Toda persona tiene derecho a una educación integral de calidad, permanente, en igualdad de condiciones y oportunidades, sin más limitaciones que las derivadas de sus aptitudes, vocación y aspiraciones. La educación es obligatoria en todos sus niveles, desde el maternal hasta el nivel medio diversificado. La

impartida en las instituciones del Estado es gratuita hasta el pregrado universitario. A tal fin, el Estado realizará una inversión prioritaria, de conformidad con las recomendaciones de la Organización de las Naciones Unidas. El Estado creará y sostendrá instituciones y servicios suficientemente dotados para asegurar el acceso, permanencia y culminación en el sistema educativo. La ley garantizará igual atención a las personas con necesidades especiales o con discapacidad y a quienes se encuentren privados o privadas de su libertad o carezcan de condiciones básicas para su incorporación y permanencia en el sistema educativo.

Las contribuciones de los particulares a proyectos y programas educativos públicos a nivel medio y universitario serán reconocidas como desgravámenes al impuesto sobre la renta según la ley respectiva.

*Artículo 104.* La educación estará a cargo de personas de reconocida moralidad y de comprobada idoneidad académica. El Estado estimulará su actualización permanente y les garantizará la estabilidad en el ejercicio de la carrera docente, bien sea pública o privada, atendiendo a esta Constitución y a la ley, en un régimen de trabajo y nivel de vida acorde con su elevada misión. El ingreso, promoción y permanencia en el sistema educativo, serán establecidos por ley y responderá a criterios de evaluación de méritos, sin injerencia partidista o de otra naturaleza no académica.

*Artículo 105.* La ley determinará las profesiones que requieren título y las condiciones que deben cumplirse para ejercerlas, incluyendo la colegiación.

*Artículo 106.* Toda persona natural o jurídica, previa demostración de su capacidad, cuando cumpla de manera permanente con los requisitos éticos, académicos, científicos, económicos, de infraestructura y los demás que la ley establezca, puede fundar y mantener instituciones educativas privadas bajo la estricta inspección y vigilancia del Estado, previa aceptación de éste.

*Artículo 107.* La educación ambiental es obligatoria en los niveles y modalidades del sistema educativo, así como también en la educación ciudadana no formal. Es de obligatorio cumplimiento en las instituciones públicas y privadas, hasta el ciclo diversificado, la enseñanza de la lengua castellana, la historia y la geografía de Venezuela, así como los principios del ideario bolivariano.

*Artículo 108.* Los medios de comunicación social, públicos y privados, deben contribuir a la formación ciudadana. El Estado garantizará servicios públicos de radio, televisión y redes de bibliotecas y de informática, con el fin de permitir el acceso universal a la información. Los centros educativos deben incorporar el conocimiento y aplicación de las nuevas tecnologías, de sus innovaciones, según los requisitos que establezca la ley.

*Artículo 109.* El Estado reconocerá la autonomía universitaria como principio y jerarquía que permite a los profesores, profesoras, estudiantes, egresados y egresadas de su comunidad dedicarse a la búsqueda del conocimiento a través de la investigación científica, humanística y tecnológica, para beneficio espiritual y material de la Nación. Las universidades autónomas se darán sus normas de gobierno, funcionamiento y la administración eficiente de su patrimonio bajo el control y vigilancia que a tales efectos establezca la ley. Se consagra la autonomía universitaria para planificar, organizar, elaborar y actualizar los programas de investigación, docencia y extensión. Se establece la inviolabilidad del recinto universitario. Las universidades nacionales experimentales alcanzarán su autonomía de conformidad con la ley.

*Artículo 110.* El Estado reconocerá el interés público de la ciencia, la tecnología, el conocimiento, la innovación y sus aplicaciones y los servicios de información necesarios por ser instrumentos fundamentales para el desarrollo económico, social y político del país, así como para la seguridad y soberanía nacional. Para el fomento y desarrollo de esas actividades, el Estado destinará recursos suficientes y creará el sistema nacional de ciencia y tecnología de acuerdo con la ley. El sector privado deberá aportar recursos para las mismas. El Estado garantizará el cumplimiento de los principios éticos y legales que deben regir las actividades de investigación científica, humanística y tecnológica. La ley determinará los modos y medios para dar cumplimiento a esta garantía.

*Artículo 111.* Todas las personas tienen derecho al deporte y a la recreación como actividades que benefician la calidad de vida individual y colectiva. El Estado asumirá el deporte y la recreación como política de educación y salud pública y garantizará los recursos para su promoción. La educación física y el deporte cumplen un papel fundamental en la formación integral de la niñez y adolescencia. Su enseñanza es obligatoria en todos los niveles de la educación pública y privada hasta el ciclo diversificado, con las excepciones que establezca la ley. El Estado garantizará la atención integral de los y las deportistas sin discriminación alguna, así como el apoyo al deporte de alta competencia y la evaluación y regulación de las entidades deportivas del sector público y del privado, de conformidad con la ley.

La ley establecerá incentivos y estímulos a las personas, instituciones y comunidades que promuevan a los y las atletas y desarrollen o financien planes, programas y actividades deportivas en el país.

**Capítulo VII**
**De los derechos económicos**

*Artículo 112.* Todas las personas pueden dedicarse libremente a la actividad económica de su preferencia, sin más limitaciones que las previstas en esta Constitución y las que establezcan las leyes, por razones de desarrollo humano, seguridad, sanidad, protección del ambiente u otras de interés social. El Estado promoverá la iniciativa privada, garantizando la creación y justa distribución de la riqueza, así como la producción de bienes y servicios que satisfagan las necesidades de la población, la libertad de trabajo, empresa, comercio, industria,

sin perjuicio de su facultad para dictar medidas para planificar, racionalizar y regular la economía e impulsar el desarrollo integral del país.

*Artículo 113.* No se permitirán monopolios. Se declaran contrarios a los principios fundamentales de esta Constitución cualesquier acto, actividad, conducta o acuerdo de los y las particulares que tengan por objeto el establecimiento de un monopolio o que conduzcan, por sus efectos reales e independientemente de la voluntad de aquellos o aquellas, a su existencia, cualquiera que fuere la forma que adoptare en la realidad. También es contrario a dichos principios el abuso de la posición de dominio que un o una particular, un conjunto de ellos o de ellas, o una empresa o conjunto de empresas, adquiera o haya adquirido en un determinado mercado de bienes o de servicios, con independencia de la causa determinante de tal posición de dominio, así como cuando se trate de una demanda concentrada. En todos los casos antes indicados, el Estado adoptará las medidas que fueren necesarias para evitar los efectos nocivos y restrictivos del monopolio, del abuso de la posición de dominio y de las demandas concentradas, teniendo como finalidad la protección del público consumidor, de los productores y productoras, y el aseguramiento de condiciones efectivas de competencia en la economía.

Cuando se trate de explotación de recursos naturales propiedad de la Nación o de la prestación de servicios de naturaleza pública con exclusividad o sin ella, el Estado podrá otorgar concesiones por tiempo determinado, asegurando siempre la existencia de contraprestaciones o contrapartidas adecuadas al interés público.

*Artículo 114.* El ilícito económico, la especulación, el acaparamiento, la usura, la cartelización y otros delitos conexos, serán penados severamente de acuerdo con la ley.

*Artículo 115.* Se garantiza el derecho de propiedad. Toda persona tiene derecho al uso, goce, disfrute y disposición de sus bienes. La propiedad estará sometida a las contribuciones, restricciones y obligaciones que establezca la ley con fines de utilidad pública o de interés general. Sólo por causa de utilidad pública o interés social, mediante sentencia firme y pago oportuno de justa indemnización, podrá ser declarada la expropiación de cualquier clase de bienes.

*Artículo 116.* No se decretarán ni ejecutarán confiscaciones de bienes sino en los casos permitidos por esta Constitución. Por vía de excepción podrán ser objeto de confiscación, mediante sentencia firme, los bienes de personas naturales o jurídicas, nacionales o extranjeras, responsables de delitos cometidos contra el patrimonio público, los bienes de quienes se hayan enriquecido ilícitamente al amparo del Poder Público y los bienes provenientes de las actividades comerciales, financieras o cualesquiera otras vinculadas al tráfico ilícito de sustancias psicotrópicas y estupefacientes.

*Artículo 117.* Todas las personas tendrán derecho a disponer de bienes y servicios de calidad, así como a una información adecuada y no engañosa sobre el contenido y características de los productos y servicios que consumen; a la libertad de elección y a un trato equitativo y digno. La ley establecerá los mecanismos necesarios para garantizar esos derechos, las normas de control de calidad y cantidad de bienes y servicios, los procedimientos de defensa del público consumidor, el resarcimiento de los daños ocasionados y las sanciones correspondientes por la violación de estos derechos.

*Artículo 118.* Se reconoce el derecho de los trabajadores y trabajadoras, así como de la comunidad para desarrollar asociaciones de carácter social y participativo, como las cooperativas, cajas de ahorro, mutuales y otras formas asociativas. Estas asociaciones podrán desarrollar cualquier tipo de actividad económica, de conformidad con la ley. La ley reconocerá las especificidades de estas organizaciones, en especial, las relativas al acto cooperativo, al trabajo asociado y su carácter generador de beneficios colectivos.

El Estado promoverá y protegerá estas asociaciones destinadas a mejorar la economía popular y alternativa.

**Capítulo VIII**
**De los derechos de los pueblos indígenas**

*Artículo 119.* El Estado reconocerá la existencia de los pueblos y comunidades indígenas, su organización social, política y económica, sus culturas, usos y costumbres, idiomas y religiones, así como su hábitat y derechos originarios sobre las tierras que ancestral y tradicionalmente ocupan y que son necesarias para desarrollar y garantizar sus formas de vida. Corresponderá al Ejecutivo Nacional, con la participación de los pueblos indígenas, demarcar y garantizar el derecho a la propiedad colectiva de sus tierras, las cuales serán inalienables, imprescriptibles, inembargables e intransferibles de acuerdo con lo establecido en esta Constitución y en la ley.

*Artículo 120.* El aprovechamiento de los recursos naturales en los hábitats indígenas por parte del Estado se hará sin lesionar la integridad cultural, social y económica de los mismos e, igualmente, está sujeto a previa información y consulta a las comunidades indígenas respectivas. Los beneficios de este aprovechamiento por parte de los pueblos indígenas están sujetos a esta Constitución y a la ley.

*Artículo 121.* Los pueblos indígenas tienen derecho a mantener y desarrollar su identidad étnica y cultural, cosmovisión, valores, espiritualidad y sus lugares sagrados y de culto. El Estado fomentará la valoración y difusión de las manifestaciones culturales de los pueblos indígenas, los cuales tienen derecho a una educación propia y a un régimen educativo de carácter intercultural y bilingüe, atendiendo a sus particularidades socioculturales, valores y tradiciones.

*Artículo 122.* Los pueblos indígenas tienen derecho a una salud integral que considere sus prácticas y culturas. El Estado reconocerá su medicina tradicional y las terapias complementarias, con sujeción a principios bioéticos.

*Artículo 123.* Los pueblos indígenas tienen derecho a mantener y promover sus propias prácticas económicas basadas en la reciprocidad, la solidaridad y el intercambio; sus actividades productivas tradicionales, su participación en la economía nacional y a definir sus prioridades. Los pueblos indígenas tienen derecho a servicios de formación profesional y a participar en la elaboración, ejecución y gestión de programas específicos de capacitación, servicios de asistencia técnica y financiera que fortalezcan sus actividades económicas en el marco del desarrollo local sustentable. El Estado garantizará a los trabajadores y trabajadoras pertenecientes a los pueblos indígenas el goce de los derechos que confiere la legislación laboral.

*Artículo 124.* Se garantiza y protege la propiedad intelectual colectiva de los conocimientos, tecnologías e innovaciones de los pueblos indígenas. Toda actividad relacionada con los recursos genéticos y los conocimientos asociados a los mismos perseguirán beneficios colectivos. Se prohíbe el registro de patentes sobre estos recursos y conocimientos ancestrales.

*Artículo 125.* Los pueblos indígenas tienen derecho a la participación política. El Estado garantizará la representación indígena en la Asamblea Nacional y en los cuerpos deliberantes de las entidades federales y locales con población indígena, conforme a la ley.

*Artículo 126.* Los pueblos indígenas, como culturas de raíces ancestrales, forman parte de la Nación, del Estado y del pueblo venezolano como único, soberano e indivisible. De conformidad con esta Constitución tienen el deber de salvaguardar la integridad y la soberanía nacional.

El término pueblo no podrá interpretarse en esta Constitución en el sentido que se le da en el derecho internacional.

### Capítulo IX
### De los derechos ambientales

*Artículo 127.* Es un derecho y un deber de cada generación proteger y mantener el ambiente en beneficio de sí misma y del mundo futuro. Toda persona tiene derecho individual y colectivamente a disfrutar de una vida y de un ambiente seguro, sano y ecológicamente equilibrado. El Estado protegerá el ambiente, la diversidad biológica, los recursos genéticos, los procesos ecológicos, los parques nacionales y monumentos naturales y demás áreas de especial importancia ecológica. El genoma de los seres vivos no podrá ser patentado, y la ley que se refiera a los principios bioéticos regulará la materia.

Es una obligación fundamental del Estado, con la activa participación de la sociedad, garantizar que la población se desenvuelva en un ambiente libre de contaminación, en donde el aire, el agua, los suelos, las costas, el clima, la capa de ozono, las especies vivas, sean especialmente protegidos, de conformidad con la ley.

*Artículo 128.* El Estado desarrollará una política de ordenación del territorio atendiendo a las realidades ecológicas, geográficas, poblacionales, sociales, culturales, económicas, políticas, de acuerdo con las premisas del desarrollo sustentable, que incluya la información, consulta y participación ciudadana. Una ley orgánica desarrollará los principios y criterios para este ordenamiento.

*Artículo 129.* Todas las actividades susceptibles de generar daños a los ecosistemas deben ser previamente acompañadas de estudios de impacto ambiental y sociocultural. El Estado impedirá la entrada al país de desechos tóxicos y peligrosos, así como la fabricación y uso de armas nucleares, químicas y biológicas. Una ley especial regulará el uso, manejo, transporte y almacenamiento de las sustancias tóxicas y peligrosas.

En los contratos que la República celebre con personas naturales o jurídicas, nacionales o extranjeras, o en los permisos que se otorguen, que afecten los recursos naturales, se considerará incluida aun cuando no estuviere expresa, la obligación de conservar el equilibrio ecológico, de permitir el acceso a la tecnología y la transferencia de la misma en condiciones mutuamente convenidas y de restablecer el ambiente a su estado natural si éste resultare alterado, en los términos que fije la ley.

### Capítulo X
### De los deberes

*Artículo 130.* Los venezolanos y venezolanas tienen el deber de honrar y defender a la patria, sus símbolos, valores culturales; resguardar y proteger la soberanía, la nacionalidad, la integridad territorial, la autodeterminación y los intereses de la Nación.

*Artículo 131.* Toda persona tiene el deber de cumplir y acatar esta Constitución, las leyes y los demás actos que en ejercicio de sus funciones dicten los órganos del Poder Público.

*Artículo 132.* Toda persona tiene el deber de cumplir sus responsabilidades sociales y participar solidariamente en la vida política, civil y comunitaria del país, promoviendo y defendiendo los derechos humanos como fundamento de la convivencia democrática y de la paz social.

*Artículo 133.* Toda persona tiene el deber de coadyuvar a los gastos públicos mediante el pago de impuestos, tasas y contribuciones que establezca la ley.

*Artículo 134.* Toda persona, de conformidad con la ley, tiene el deber de prestar los servicios civil o militar necesarios para la defensa, preservación y desarrollo del país, o para hacer frente a situaciones de calamidad pública. Nadie puede ser sometido a reclutamiento forzoso.

Toda persona tiene el deber de prestar servicios en las funciones electorales que se le asignen de conformidad con la ley.

*Artículo 135.* Las obligaciones que correspondan al Estado, conforme a esta Constitución y a la ley, en cumplimiento de los fines del bienestar social general, no excluyen las que, en virtud de la solidaridad y responsabilidad social y asistencia humanitaria, correspondan a los o a las particulares según su capacidad.

La ley proveerá lo conducente para imponer el cumplimiento de estas obligaciones en los casos en que fuere necesario. Quienes aspiren al ejercicio de cualquier profesión, tienen el deber de prestar servicio a la comunidad durante el tiempo, lugar y condiciones que determine la ley.

### TÍTULO IV
### DEL PODER PÚBLICO

#### Capítulo I
#### De las disposiciones fundamentales

#### Sección primera: disposiciones generales

*Artículo 136.* El Poder Público se distribuye entre el Poder Municipal, el Poder Estadal y el Poder Nacional. El Poder Público Nacional se divide en Legislativo, Ejecutivo, Judicial, Ciudadano y Electoral.

Cada una de las ramas del Poder Público tiene sus funciones propias, pero los órganos a los que incumbe su ejercicio colaborarán entre sí en la realización de los fines del Estado.

*Artículo 137.* Esta Constitución y la ley definen las atribuciones de los órganos que ejercen el Poder Público, a las cuales deben sujetarse las actividades que realicen.

*Artículo 138.* Toda autoridad usurpada es ineficaz y sus actos son nulos.

*Artículo 139.* El ejercicio del Poder Público acarrea responsabilidad individual por abuso o desviación de poder o por violación de esta Constitución o de la ley.

*Artículo 140.* El Estado responderá patrimonialmente por los daños que sufran los o las particulares en cualquiera de sus bienes y derechos, siempre que la lesión sea imputable al funcionamiento de la Administración Pública.

#### Sección segunda: de la administración pública

*Artículo 141.* La Administración Pública está al servicio de los ciudadanos y ciudadanas y se fundamenta en los principios de honestidad, participación, celeridad, eficacia, eficiencia, transparencia, rendición de cuentas y responsabilidad en el ejercicio de la función pública, con sometimiento pleno a la ley y al derecho.

*Artículo 142.* Los institutos autónomos sólo podrán crearse por ley. Tales instituciones, así como los intereses públicos en corporaciones o entidades de cualquier naturaleza, estarán sujetas al control del Estado, en la forma que la ley establezca.

*Artículo 143.* Los ciudadanos y ciudadanas tienen derecho a ser informados e informadas oportuna y verazmente por la Administración Pública, sobre el estado de las actuaciones en que estén directamente interesados e interesadas, y a conocer las resoluciones definitivas que se adopten sobre el particular. Asimismo, tienen acceso a los archivos y registros administrativos, sin perjuicio de los límites aceptables dentro de una sociedad democrática en materias relativas a seguridad interior y exterior, a investigación criminal y a la intimidad de la vida privada, de conformidad con la ley que regule la materia de clasificación de documentos de contenido confidencial o secreto. No se permitirá censura alguna a los funcionarios públicos o funcionarias públicas que informen sobre asuntos bajo su responsabilidad.

#### Sección tercera: de la función pública

*Artículo 144.* La ley establecerá el Estatuto de la función pública mediante normas sobre el ingreso, ascenso, traslado, suspensión y retiro de los funcionarios o funcionarias de la Administración Pública, y proveerá su incorporación a la seguridad social.

La ley determinará las funciones y requisitos que deben cumplir los funcionarios públicos y funcionarias públicas para ejercer sus cargos.

*Artículo 145.* Los funcionarios públicos y funcionarias públicas están al servicio del Estado y no de parcialidad alguna. Su nombramiento o remoción no podrán estar determinados por la afiliación u orientación política. Quien esté al servicio de los Municipios, de los Estados, de la República y demás personas jurídicas de derecho público o de derecho privado estatales, no podrá celebrar contrato alguno con ellas, ni por sí ni por interpósita persona, ni en representación de otro u otra, salvo las excepciones que establezca la ley.

*Artículo 146.* Los cargos de los órganos de la Administración Pública son de carrera. Se exceptúan los de elección popular, los de libre nombramiento y remoción, los contratados y contratadas, los obreros y obreras al servicio de la Administración Pública y los demás que determine la ley.

El ingreso de los funcionarios públicos y las funcionarias públicas a los cargos de carrera será por concurso público, fundamentado en principios de honestidad, idoneidad y eficiencia. El ascenso estará sometido a métodos científicos basados en el sistema de méritos, y el traslado, suspensión o retiro será de acuerdo con su desempeño.

*Artículo 147.* Para la ocupación de cargos públicos de carácter remunerado es necesario que sus respectivos emolumentos estén previstos en el presupuesto correspondiente.

Las escalas de salarios en la Administración Pública se establecerán reglamentariamente conforme a la ley.

La ley orgánica podrá establecer límites razonables a los emolumentos que devenguen los funcionarios públicos y funcionarias públicas municipales, estadales y nacionales.

La ley nacional establecerá el régimen de las jubilaciones y pensiones de los funcionarios públicos y funcionarias públicas nacionales, estadales y municipales.

*Artículo 148.* Nadie podrá desempeñar a la vez más de un destino público remunerado, a menos que se trate de cargos académicos, accidentales, asistenciales o docentes que determine la ley. La aceptación de un segundo destino que no sea de los exceptuados en este artículo, implica la renuncia del primero, salvo cuando se trate de suplentes, mientras no reemplacen definitivamente al principal.

Nadie podrá disfrutar más de una jubilación o pensión, salvo los casos expresamente determinados en la ley.

*Artículo 149.* Los funcionarios públicos y funcionarias públicas no podrán aceptar cargos, honores o recompensas de gobiernos extranjeros sin la autorización de la Asamblea Nacional.

*Sección cuarta: de los contratos de interés público*

*Artículo 150.* La celebración de los contratos de interés público nacional requerirá la aprobación de la Asamblea Nacional en los casos que determine la ley.

No podrá celebrarse contrato alguno de interés público municipal, estadal o nacional con Estados o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela, ni traspasarse a ellos sin la aprobación de la Asamblea Nacional.

La ley podrá exigir en los contratos de interés público determinadas condiciones de nacionalidad, domicilio o de otro orden, o requerir especiales garantías.

*Artículo 151.* En los contratos de interés público, si no fuere improcedente de acuerdo con la naturaleza de los mismos, se considerará incorporada, aun cuando no estuviere expresa, una cláusula según la cual las dudas y controversias que puedan suscitarse sobre dichos contratos y que no llegaren a ser resueltas amigablemente por las partes contratantes, serán decididas por los tribunales competentes de la República, de conformidad con sus leyes, sin que por ningún motivo ni causa puedan dar origen a reclamaciones extranjeras.

*Sección quinta: de las relaciones internacionales*

*Artículo 152.* Las relaciones internacionales de la República responden a los fines del Estado en función del ejercicio de la soberanía y de los intereses del pueblo; ellas se rigen por los principios de independencia, igualdad entre los Estados, libre determinación y no intervención en sus asuntos internos, solución pacífica de los conflictos internacionales, cooperación, respeto a los derechos humanos y solidaridad entre los pueblos en la lucha por su emancipación y el bienestar de la humanidad. La República mantendrá la más firme y decidida defensa de estos principios y de la práctica democrática en todos los organismos e instituciones internacionales.

*Artículo 153.* La República promoverá y favorecerá la integración latinoamericana y caribeña, en aras de avanzar hacia la creación de una comunidad de naciones, defendiendo los intereses económicos, sociales, culturales, políticos y ambientales de la región. La República podrá suscribir tratados internacionales que conjuguen y coordinen esfuerzos para promover el desarrollo común de nuestras naciones, y que garanticen el bienestar de los pueblos y la seguridad colectiva de sus habitantes. Para estos fines, la República podrá atribuir a organizaciones supranacionales, mediante tratados, el ejercicio de las competencias necesarias para llevar a cabo estos procesos de integración. Dentro de las políticas de integración y unión con Latinoamérica y el Caribe, la República privilegiará relaciones con Iberoamérica, procurando sea una política común de toda nuestra América Latina. Las normas que se adopten en el marco de los acuerdos de integración serán consideradas parte integrante del ordenamiento legal vigente y de aplicación directa y preferente a la legislación interna.

*Artículo 154.* Los tratados celebrados por la República deben ser aprobados por la Asamblea Nacional antes de su ratificación por el Presidente o Presidenta de la República, a excepción de aquellos mediante los cuales se trate de ejecutar o perfeccionar obligaciones preexistentes de la República, aplicar principios expresamente reconocidos por ella, ejecutar actos ordinarios en las relaciones internacionales o ejercer facultades que la ley atribuya expresamente al Ejecutivo Nacional.

*Artículo 155.* En los tratados, convenios y acuerdos internacionales que la República celebre, se insertará una cláusula por la cual las partes se obliguen a resolver por las vías pacíficas reconocidas en el derecho internacional o previamente convenidas por ellas, si tal fuere el caso, las controversias que pudieren suscitarse entre las mismas con motivo de su interpretación o ejecución si

no fuere improcedente y así lo permita el procedimiento que deba seguirse para su celebración.

*Capítulo II*
*De la competencia del Poder Público Nacional*

*Artículo 156.* Es de la competencia del Poder Público Nacional:

1. La política y la actuación internacional de la República.

2. La defensa y suprema vigilancia de los intereses generales de la República, la conservación de la paz pública y la recta aplicación de la ley en todo el territorio nacional.

3. La bandera, escudo de armas, himno, fiestas, condecoraciones y honores de carácter nacional.

4. La naturalización, la admisión, la extradición y expulsión de extranjeros o extranjeras.

5. Los servicios de identificación.

6. La policía nacional.

7. La seguridad, la defensa y el desarrollo nacional.

8. La organización y régimen de la Fuerza Armada Nacional.

9. El régimen de la administración de riesgos y emergencias.

10. La organización y régimen del Distrito Capital y de las dependencias federales.

11. La regulación de la banca central, del sistema monetario, del régimen cambiario, del sistema financiero y del mercado de capitales; la emisión y acuñación de moneda.

12. La creación, organización, recaudación, administración y control de los impuestos sobre la renta, sobre sucesiones, donaciones y demás ramos conexos, el capital, la producción, el valor agregado, los hidrocarburos y minas; de los gravámenes a la importación y exportación de bienes y servicios; de los impuestos que recaigan sobre el consumo de licores, alcoholes y demás especies alcohólicas, cigarrillos y demás manufactura del tabaco; y de los demás impuestos, tasas y rentas no atribuidas a los Estados y Municipios por esta Constitución o por la ley.

13. La legislación para garantizar la coordinación y armonización de las distintas potestades tributarias; para definir principios, parámetros y limitaciones, especialmente para la determinación de los tipos impositivos o alícuotas de los tributos estadales y municipales; así como para crear fondos específicos que aseguren la solidaridad interterritorial.

14. La creación y organización de impuestos territoriales o sobre predios rurales y sobre transacciones inmobiliarias, cuya recaudación y control corresponda a los Municipios, de conformidad con esta Constitución.

15. El régimen del comercio exterior y la organización y régimen de las aduanas.

16. El régimen y administración de las minas e hidrocarburos; el régimen de las tierras baldías; y la conservación, fomento y aprovechamiento de los bosques, suelos, aguas y otras riquezas naturales del país.

    El Ejecutivo Nacional no podrá otorgar concesiones mineras por tiempo indefinido.

    La ley establecerá un sistema de asignaciones económicas especiales en beneficio de los Estados en cuyo territorio se encuentren situados los bienes que se mencionan en este numeral, sin perjuicio de que también puedan establecerse asignaciones especiales en beneficio de otros Estados.

17. El régimen de metrología legal y control de calidad.

18. Los censos y estadísticas nacionales.

19. El establecimiento, coordinación y unificación de normas y procedimientos técnicos para obras de ingeniería, de arquitectura y de urbanismo, y la legislación sobre ordenación urbanística.

20. Las obras públicas de interés nacional.

21. Las políticas macroeconómicas, financieras y fiscales de la República.

22. El régimen y organización del sistema de seguridad social.

23. Las políticas nacionales y la legislación en materia naviera, de sanidad, vivienda, seguridad alimentaria, ambiente, aguas, turismo y ordenación del territorio.

24. Las políticas y los servicios nacionales de educación y salud.

25. Las políticas nacionales para la producción agrícola, ganadera, pesquera y forestal.

26. El régimen de la navegación y del transporte aéreo, terrestre, marítimo, fluvial y lacustre, de carácter nacional; de los puertos, aeropuertos y su infraestructura.

27. El sistema de vialidad y de ferrocarriles nacionales.

28. El régimen del servicio de correo y de las telecomunicaciones, así como el régimen y la administración del espectro electromagnético.

29. El régimen general de los servicios públicos domiciliarios y, en especial, electricidad, agua potable y gas.

30. El manejo de la política de fronteras con una visión integral del país, que permita la presencia de la venezolanidad y el mantenimiento territorial y la soberanía en esos espacios.

31. La organización y administración nacional de la justicia, del Ministerio Público y de la Defensoría del Pueblo.

32. La legislación en materia de derechos, deberes y garantías constitucionales; la civil, mercantil, penal, penitenciaria, de procedimientos y de derecho internacional privado; la de elecciones; la de expropiación por causa de utilidad pública o social; la de crédito público; la de propiedad intelectual, artística e industrial; la del patrimonio cultural y arqueológico; la agraria; la de inmigración y poblamiento; la de pueblos indígenas y territorios ocupados por ellos; la del trabajo, previsión y seguridad sociales; la de sanidad animal y vegetal; la de notarías y registro público; la de bancos y la de seguros; la de loterías, hipódromos y apuestas en general; la de organización y funcionamiento de los órganos del Poder Público Nacional y demás órganos e instituciones nacionales del Estado; y la relativa a todas las materias de la competencia nacional.

33. Toda otra materia que la presente Constitución atribuya al Poder Público Nacional, o que le corresponda por su índole o naturaleza.

**Artículo 157.** La Asamblea Nacional, por mayoría de sus integrantes, podrá atribuir a los Municipios o a los Estados determinadas materias de la competencia nacional, a fin de promover la descentralización.

**Artículo 158.** La descentralización, como política nacional, debe profundizar la democracia, acercando el poder a la población y creando las mejores condiciones, tanto para el ejercicio de la democracia como para la prestación eficaz y eficiente de los cometidos estatales.

*Capítulo III*
*Del Poder Público Estadal*

**Artículo 159.** Los Estados son entidades autónomas e iguales en lo político, con personalidad jurídica plena, y quedan obligados a mantener la independencia, soberanía e integridad nacional, y a cumplir y hacer cumplir esta Constitución y las leyes de la República.

**Artículo 160.** El gobierno y administración de cada Estado corresponde a un Gobernador o Gobernadora. Para ser Gobernador o Gobernadora se requiere ser venezolano o venezolana, mayor de veinticinco años y de estado seglar.

El Gobernador o Gobernadora será elegido o elegida por un período de cuatro años por mayoría de las personas que voten. El Gobernador o Gobernadora podrá ser reelegido o reelegida, de inmediato y por una sola vez, para un nuevo período.
*(Ver Enmienda N° 1 de fecha 15 de febrero de 2009)*

**Artículo 161.** Los Gobernadores o Gobernadoras rendirán, anual y públicamente, cuenta de su gestión ante el Contralor o Contralora del Estado y presentarán un informe de la misma ante el Consejo Legislativo y el Consejo de Planificación y Coordinación de Políticas Públicas.

**Artículo 162.** El Poder Legislativo se ejercerá en cada Estado por un Consejo Legislativo conformado por un número no mayor de quince ni menor de siete integrantes, quienes proporcionalmente representarán a la población del Estado y de los Municipios. El Consejo Legislativo tendrá las atribuciones siguientes:

1. Legislar sobre las materias de la competencia estadal.

2. Sancionar la Ley de Presupuesto del Estado.

3. Las demás que establezcan esta Constitución y la ley.

Los requisitos para ser integrante del Consejo Legislativo, la obligación de rendición anual de cuentas y la inmunidad en su jurisdicción territorial, se regirán por las normas que esta Constitución establece para los diputados y diputadas a la Asamblea Nacional, en cuanto les sean aplicables. Los legisladores o legisladoras estadales serán elegidos o elegidas por un período de cuatro años, pudiendo ser reelegidos o reelegidas por dos períodos consecutivos como máximo. La ley nacional regulará el régimen de la organización y el funcionamiento del Consejo Legislativo.
*(Ver Enmienda N° 1 de fecha 15 de febrero de 2009)*

**Artículo 163.** Cada Estado tendrá una Contraloría que gozará de autonomía orgánica y funcional. La Contraloría del Estado ejercerá, conforme a esta Constitución y a la ley, el control, la vigilancia y la fiscalización de los ingresos, gastos y bienes estadales, sin menoscabo del alcance de las funciones de la Contraloría General de la República. Dicho órgano actuará bajo la dirección y responsabilidad de un Contralor o Contralora, cuyas condiciones para el ejercicio del cargo serán determinadas por la ley, la cual garantizará su idoneidad e independencia, así como la neutralidad en su designación, que será mediante concurso público.

**Artículo 164.** Es de la competencia exclusiva de los Estados:

1. Dictar su Constitución para organizar los poderes públicos, de conformidad con lo dispuesto en esta Constitución.

2. La organización de sus Municipios y demás entidades locales y su división políticoterritorial, conforme a esta Constitución y a la ley.

3. La administración de sus bienes y la inversión y administración de sus recursos, incluso de los provenientes de transferencias, subvenciones o asignaciones especiales del Poder Nacional, así como de aquellos que se les asignen como participación en los tributos nacionales.

4. La organización, recaudación, control y administración de los ramos tributarios propios, según las disposiciones de las leyes nacionales y estadales.

5. El régimen y aprovechamiento de minerales no metálicos, no reservados al Poder Nacional, las salinas y ostrales y la administración de las tierras baldías en su jurisdicción, de conformidad con la ley.

6. La organización de la policía y la determinación de las ramas de este servicio atribuidas a la competencia municipal, conforme a la legislación nacional aplicable.

7. La creación, organización, recaudación, control y administración de los ramos de papel sellado, timbres y estampillas.

8. La creación, régimen y organización de los servicios públicos estadales.

9. La ejecución, conservación, administración y aprovechamiento de las vías terrestres estadales.

10. La conservación, administración y aprovechamiento de carreteras y autopistas nacionales, así como de puertos y aeropuertos de uso comercial, en coordinación con el Ejecutivo Nacional.

11. Todo lo que no corresponda, de conformidad con esta Constitución, a la competencia nacional o municipal.

**Artículo 165.** Las materias objeto de competencias concurrentes serán reguladas mediante leyes de bases dictadas por el Poder Nacional, y leyes de desarrollo aprobadas por los Estados. Esta legislación estará orientada por los principios de la interdependencia, coordinación, cooperación, corresponsabilidad y subsidiariedad.

Los Estados descentralizarán y transferirán a los Municipios los servicios y competencias que gestionen y que éstos estén en capacidad de prestar, así como la administración de los respectivos recursos, dentro de las áreas de competencias concurrentes entre ambos niveles del Poder Público. Los mecanismos de transferencia estarán regulados por el ordenamiento jurídico estadal.

**Artículo 166.** En cada Estado se creará un Consejo de Planificación y Coordinación de Políticas Públicas, presidido por el Gobernador o Gobernadora e integrado por los Alcaldes o Alcaldesas, los directores o directoras estadales de los ministerios; y una representación de los legisladores elegidos o legisladoras elegidas por el Estado a la Asamblea Nacional, del Consejo Legislativo, de los concejales o concejalas y de las comunidades organizadas, incluyendo las indígenas donde las hubiere. El mismo funcionará y se organizará de acuerdo con lo que determine la ley.

**Artículo 167.** Son ingresos de los Estados:

1. Los procedentes de su patrimonio y de la administración de sus bienes.

2. Las tasas por el uso de sus bienes y servicios, multas y sanciones, y las que les sean atribuidas.

3. El producto de lo recaudado por concepto de venta de especies fiscales.

4. Los recursos que le correspondan por concepto de situado constitucional. El situado es una partida equivalente a un máximo del veinte por ciento del total de los ingresos ordinarios estimados anualmente por el Fisco Nacional, la cual se distribuirá entre los Estados y el Distrito Capital en la forma siguiente: un treinta por ciento de dicho porcentaje por partes iguales, y el setenta por ciento restante en proporción a la población de cada una de dichas entidades.

En cada ejercicio fiscal, los Estados destinarán a la inversión un mínimo del cincuenta por ciento del monto que les corresponda por concepto de situado. A los Municipios de cada Estado les corresponderá, en cada ejercicio fiscal, una participación no menor del veinte por ciento del situado y de los demás ingresos ordinarios del respectivo Estado.

En caso de variaciones de los ingresos del Fisco Nacional que impongan una modificación del Presupuesto Nacional, se efectuará un reajuste proporcional del situado.

La ley establecerá los principios, normas y procedimientos que propendan a garantizar el uso correcto y eficiente de los recursos provenientes del situado constitucional y de la participación municipal en el mismo.

5. Los demás impuestos, tasas y contribuciones especiales que se les asignen por ley nacional, con el fin de promover el desarrollo de las haciendas públicas estadales.

Las leyes que creen o transfieran ramos tributarios a favor de los Estados podrán compensar dichas asignaciones con modificaciones de los ramos de ingresos señalados en este artículo, a fin de preservar la equidad interterritorial. El porcentaje del ingreso nacional ordinario estimado que se destine al situado constitucional, no será menor al quince por ciento del ingreso ordinario estimado, para lo cual se tendrá en cuenta la situación y sostenibilidad financiera de la Hacienda Pública Nacional, sin menoscabo de la capacidad de las administraciones estadales para atender adecuadamente los servicios de su competencia.

6. Los recursos provenientes del Fondo de Compensación Interterritorial y de cualquier otra transferencia, subvención o asignación especial, así como de aquellos que se les asignen como participación en los tributos nacionales, de conformidad con la respectiva ley.

*Capítulo IV*
*Del Poder Público Municipal*

**Artículo 168.** Los Municipios constituyen la unidad política primaria de la organización nacional, gozan de personalidad jurídica y autonomía dentro de los límites de esta Constitución y de la ley. La autonomía municipal comprende:

1. La elección de sus autoridades.

2. La gestión de las materias de su competencia.

3. La creación, recaudación e inversión de sus ingresos.

Las actuaciones del Municipio en el ámbito de sus competencias se cumplirán incorporando la participación ciudadana al proceso de definición y ejecución de la gestión pública y al control y evaluación de sus resultados, en forma efectiva, suficiente y oportuna, conforme a la ley.

Los actos de los Municipios no podrán ser impugnados sino ante los tribunales competentes, de conformidad con esta Constitución y con la ley.

**Artículo 169.** La organización de los Municipios y demás entidades locales se regirá por esta Constitución, por las normas que para desarrollar los principios constitucionales establezcan las leyes orgánicas nacionales, y por las disposiciones legales que de conformidad con aquellas dicten los Estados.

La legislación que se dicte para desarrollar los principios constitucionales relativos a los Municipios y demás entidades locales, establecerá diferentes regímenes para su organización, gobierno y administración, incluso en lo que respecta a la determinación de sus competencias y recursos, atendiendo a las condiciones de población, desarrollo económico, capacidad para generar ingresos fiscales propios, situación geográfica, elementos históricos y culturales y otros factores relevantes. En particular, dicha legislación establecerá las opciones para la organización del régimen de gobierno y administración local que corresponderá a los Municipios con población indígena. En todo caso, la organización municipal será democrática y responderá a la naturaleza propia del gobierno local.

**Artículo 170.** Los Municipios podrán asociarse en mancomunidades o acordar entre sí o con los demás entes públicos territoriales, la creación de modalidades asociativas intergubernamentales para fines de interés público relativos a materias de su competencia. Por ley se determinarán las normas concernientes a la agrupación de dos o más Municipios en distritos metropolitanos.

**Artículo 171.** Cuando dos o más Municipios pertenecientes a una misma entidad federal tengan relaciones económicas, sociales y físicas que den al conjunto características de un área metropolitana, podrán organizarse como distritos metropolitanos. La ley orgánica que al efecto se dicte garantizará el carácter democrático y participativo del gobierno metropolitano y establecerá sus competencias funcionales, así como el régimen fiscal, financiero y de control. También asegurará que en los órganos de gobierno metropolitano tengan adecuada participación los respectivos Municipios, y señalará la forma de convocar y realizar las consultas populares que decidan la vinculación de estos últimos al distrito metropolitano.

La ley podrá establecer diferentes regímenes para la organización, gobierno y administración de los distritos metropolitanos atendiendo a las condiciones de población, desarrollo económico y social, situación geográfica y otros factores de importancia. En todo caso, la atribución de competencias para cada distrito metropolitano tendrá en cuenta esas condiciones.

**Artículo 172.** El Consejo Legislativo, previo pronunciamiento favorable mediante consulta popular de la población afectada, definirá los límites del distrito metropolitano y lo organizará según lo establecido en la ley orgánica nacional, determinando cuáles de las competencias metropolitanas serán asumidas por los órganos de gobierno del respectivo distrito metropolitano.

Cuando los Municipios que deseen constituirse en un distrito metropolitano pertenezcan a entidades federales distintas, corresponderá a la Asamblea Nacional su creación y organización.

**Artículo 173.** El Municipio podrá crear parroquias conforme a las condiciones que determine la ley. La legislación que se dicte para desarrollar los principios constitucionales sobre régimen municipal establecerá los supuestos y condiciones para la creación de otras entidades locales dentro del territorio municipal, así como los recursos de que dispondrán, concatenadas a las funciones que se les asignen, incluso su participación en los ingresos propios del Municipio. Su creación atenderá a la iniciativa vecinal o comunitaria, con el objeto de promover la desconcentración de la administración del Municipio, la participación ciudadana y la mejor prestación de los servicios públicos. En ningún caso las parroquias serán asumidas como divisiones exhaustivas o imperativas del territorio del Municipio.

**Artículo 174.** El gobierno y la administración del Municipio corresponderán al Alcalde o Alcaldesa, quien será también la primera autoridad civil. Para ser Alcalde o Alcaldesa se requiere ser venezolano o venezolana, mayor de veinticinco años y de estado seglar. El Alcalde o Alcaldesa será elegido o elegida por un período de cuatro años por mayoría de las personas que votan, y podrá ser reelegido o reelegida, de inmediato y por una sola vez, para un nuevo período.
*(Ver Enmienda N° 1 de fecha 15 de febrero de 2009)*

**Artículo 175.** La función legislativa del Municipio corresponde al Concejo, integrado por concejales elegidos o concejalas elegidas en la forma establecida en esta Constitución, en el número y condiciones de elegibilidad que determine la ley.

**Artículo 176.** Corresponde a la Contraloría Municipal el control, vigilancia y fiscalización de los ingresos, gastos y bienes municipales, así como las operaciones relativas a los mismos, sin menoscabo del alcance de las atribuciones de la Contraloría General de la República, y será dirigida por el Contralor o Contralora Municipal, designado o designada por el Concejo mediante concurso público que garantice la idoneidad y capacidad de quien sea designado o designada para el cargo, de acuerdo con las condiciones establecidas por la ley.

**Artículo 177.** La ley nacional podrá establecer principios, condiciones y requisitos de residencia, prohibiciones, causales de inhibición e incompatibilidades para la postulación y ejercicio de las funciones de Alcaldes o Alcaldesas y concejales o concejalas.

**Artículo 178.** Son de la competencia del Municipio el gobierno y administración de sus intereses y la gestión de las materias que le asignen esta Constitución y las leyes nacionales, en cuanto concierne a la vida local, en especial la ordenación y

promoción del desarrollo económico y social, la dotación y prestación de los servicios públicos domiciliarios, la aplicación de la política referente a la materia inquilinaria con criterios de equidad, justicia y contenido de interés social, de conformidad con la delegación prevista en la ley que rige la materia, la promoción de la participación, y el mejoramiento, en general, de las condiciones de vida de la comunidad, en las siguientes áreas:

1. Ordenación territorial y urbanística; patrimonio histórico; vivienda de interés social; turismo local; parques y jardines, plazas, balnearios y otros sitios de recreación; arquitectura civil, nomenclatura y ornato público.

2. Vialidad urbana; circulación y ordenación del tránsito de vehículos y personas en las vías municipales; servicios de transporte público urbano de pasajeros y pasajeras.

3. Espectáculos públicos y publicidad comercial, en cuanto concierne a los intereses y fines específicos municipales.

4. Protección del ambiente y cooperación con el saneamiento ambiental; aseo urbano y domiciliario, comprendidos los servicios de limpieza, de recolección y tratamiento de residuos y protección civil.

5. Salubridad y atención primaria en salud, servicios de protección a la primera y segunda infancia, a la adolescencia y a la tercera edad; educación preescolar, servicios de integración familiar de la persona con discapacidad al desarrollo comunitario, actividades e instalaciones culturales y deportivas; servicios de prevención y protección, vigilancia y control de los bienes y las actividades relativas a las materias de la competencia municipal.

6. Servicio de agua potable, electricidad y gas doméstico; alcantarillado, canalización y disposición de aguas servidas; cementerios y servicios funerarios.

7. Justicia de paz, prevención y protección vecinal y servicios de policía municipal, conforme a la legislación nacional aplicable.

8. Las demás que le atribuyan esta Constitución y la ley.

Las actuaciones que correspondan al Municipio en la materia de su competencia no menoscaban las competencias nacionales o estadales que se definan en la ley conforme a esta Constitución.

**Artículo 179.** Los Municipios tendrán los siguientes ingresos:

1. Los procedentes de su patrimonio, incluso el producto de sus ejidos y bienes.

2. Las tasas por el uso de sus bienes o servicios; las tasas administrativas por licencias o autorizaciones; los impuestos sobre actividades económicas de industria, comercio, servicios, o de índole similar, con las limitaciones establecidas en esta Constitución; los impuestos sobre inmuebles urbanos, vehículos, espectáculos públicos, juegos y apuestas lícitas, propaganda y publicidad comercial; y la contribución especial sobre plusvalías de las propiedades generadas por cambios de uso o de intensidad de aprovechamiento con que se vean favorecidas por los planes de ordenación urbanística.

3. El impuesto territorial rural o sobre predios rurales, la participación en la contribución por mejoras y otros ramos tributarios nacionales o estadales, conforme a las leyes de creación de dichos tributos.

4. Los derivados del situado constitucional y otras transferencias o subvenciones nacionales o estadales.

5. El producto de las multas y sanciones en el ámbito de sus competencias y las demás que les sean atribuidas.

6. Los demás que determine la ley.

**Artículo 180.** La potestad tributaria que corresponde a los Municipios es distinta y autónoma de las potestades reguladoras que esta Constitución o las leyes atribuyan al Poder Nacional o Estadal sobre determinadas materias o actividades.

Las inmunidades frente a la potestad impositiva de los Municipios, a favor de los demás entes politicoterritoriales, se extiende sólo a las personas jurídicas estatales creadas por ellos, pero no a concesionarios ni a otros contratistas de la Administración Nacional o de los Estados.

**Artículo 181.** Los ejidos son inalienables e imprescriptibles. Sólo podrán enajenarse previo cumplimiento de las formalidades previstas en las ordenanzas municipales y en los supuestos que las mismas señalen, conforme a esta Constitución y a la legislación que se dicte para desarrollar sus principios.

Los terrenos situados dentro del área urbana de las poblaciones del Municipio, carentes de dueño o dueña, son ejidos, sin menoscabo de legítimos derechos de terceros, válidamente constituidos. Igualmente, se constituyen en ejidos las tierras baldías ubicadas en el área urbana. Quedarán exceptuadas las tierras correspondientes a las comunidades y pueblos indígenas. La ley establecerá la conversión en ejidos de otras tierras públicas.

**Artículo 182.** Se crea el Consejo Local de Planificación Pública, presidido por el Alcalde o Alcaldesa e integrado por los concejales y concejalas, los Presidentes o Presidentas de las juntas parroquiales y representantes de organizaciones vecinales y otras de la sociedad organizada, de conformidad con las disposiciones que establezca la ley.

**Artículo 183.** Los Estados y los Municipios no podrán:

1. Crear aduanas ni impuestos de importación, de exportación o de tránsito sobre bienes nacionales o extranjeros, o sobre las demás materias rentísticas de la competencia nacional.

2. Gravar bienes de consumo antes de que entren en circulación dentro de su territorio.

3. Prohibir el consumo de bienes producidos fuera de su territorio, ni gravarlos en forma diferente a los producidos en él.

Los Estados y Municipios sólo podrán gravar la agricultura, la cría, la pesca y la actividad forestal en la oportunidad, forma y medida que lo permita la ley nacional.

**Artículo 184.** La ley creará mecanismos abiertos y flexibles para que los Estados y los Municipios descentralicen y transfieran a las comunidades y grupos vecinales organizados los servicios que éstos gestionen previa demostración de su capacidad para prestarlos, promoviendo:

1. La transferencia de servicios en materia de salud, educación, vivienda, deporte, cultura, programas sociales, ambiente, mantenimiento de áreas industriales, mantenimiento y conservación de áreas urbanas, prevención y protección vecinal, construcción de obras y prestación de servicios públicos. A tal efecto, podrán establecer convenios cuyos contenidos estarán orientados por los principios de interdependencia, coordinación, cooperación y corresponsabilidad.

2. La participación de las comunidades y de ciudadanos o ciudadanas, a través de las asociaciones vecinales y organizaciones no gubernamentales, en la formulación de propuestas de inversión ante las autoridades estadales y municipales encargadas de la elaboración de los respectivos planes de inversión, así como en la ejecución, evaluación y control de obras, programas sociales y servicios públicos en su jurisdicción.

3. La participación en los procesos económicos estimulando las expresiones de la economía social, tales como cooperativas, cajas de ahorro, mutuales y otras formas asociativas.

4. La participación de los trabajadores o trabajadoras y comunidades en la gestión de las empresas públicas mediante mecanismos autogestionarios y cogestionarios.

5. La creación de organizaciones, cooperativas y empresas comunales de servicios, como fuentes generadoras de empleo y de bienestar social, propendiendo a su permanencia mediante el diseño de políticas en las cuales aquellas tengan participación.

6. La creación de nuevos sujetos de descentralización a nivel de las parroquias, las comunidades, los barrios y las vecindades a los fines de garantizar el principio de la corresponsabilidad en la gestión pública de los gobiernos locales y estadales y desarrollar procesos autogestionarios y cogestionarios en la administración y control de los servicios públicos estadales y municipales.

7. La participación de las comunidades en actividades de acercamiento a los establecimientos penales y de vinculación de éstos con la población.

**Capítulo V**
**Del Consejo Federal de Gobierno**

**Artículo 185.** El Consejo Federal de Gobierno es el órgano encargado de la planificación y coordinación de políticas y acciones para el desarrollo del proceso de descentralización y transferencia de competencias del Poder Nacional a los Estados y Municipios. Estará presidido por el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva e integrado por los Ministros o Ministras, los Gobernadores o Gobernadoras, un Alcalde o Alcaldesa por cada Estado y representantes de la sociedad organizada, de acuerdo con la ley.

El Consejo Federal de Gobierno contará con una Secretaría, integrada por el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, dos Ministros o Ministras, tres Gobernadores o Gobernadoras y tres Alcaldes o Alcaldesas. Del Consejo Federal de Gobierno dependerá el Fondo de Compensación Interterritorial, destinado al financiamiento de inversiones públicas para promover el desarrollo equilibrado de las regiones, la cooperación y complementación de las políticas e iniciativas de desarrollo de las distintas entidades públicas territoriales, y a apoyar especialmente la dotación de obras y servicios esenciales en las regiones y comunidades de menor desarrollo relativo. El Consejo Federal de Gobierno, con base en los desequilibrios regionales, discutirá y aprobará anualmente los recursos que se destinarán al Fondo de Compensación Interterritorial y las áreas de inversión prioritaria a las cuales se aplicarán dichos recursos.

**TÍTULO V**
**DE LA ORGANIZACIÓN DEL PODER PÚBLICO NACIONAL**

**Capítulo I**
**Del Poder Legislativo Nacional**

**Sección primera: disposiciones generales**

**Artículo 186.** La Asamblea Nacional estará integrada por diputados y diputadas elegidos o elegidas en cada entidad federal por votación universal, directa, personalizada y secreta con representación proporcional, según una base poblacional del uno coma uno por ciento de la población total del país.

Cada entidad federal elegirá, además, tres diputados o diputadas.

Los pueblos indígenas de la República Bolivariana de Venezuela elegirán tres diputados o diputadas de acuerdo con lo establecido en la ley electoral, respetando sus tradiciones y costumbres.

Cada diputado o diputada tendrá un suplente o una suplente, escogido o escogida en el mismo proceso.

**Artículo 187.** Corresponde a la Asamblea Nacional:

1. Legislar en las materias de la competencia nacional y sobre el funcionamiento de las distintas ramas del Poder Nacional.

2. Proponer enmiendas y reformas a esta Constitución, en los términos establecidos en ésta.

3. Ejercer funciones de control sobre el Gobierno y la Administración Pública Nacional, en los términos consagrados en esta Constitución y en la ley. Los elementos comprobatorios obtenidos en el ejercicio de esta función, tendrán valor probatorio, en las condiciones que la ley establezca.

4. Organizar y promover la participación ciudadana en los asuntos de su competencia.

5. Decretar amnistías.

6. Discutir y aprobar el presupuesto nacional y todo proyecto de ley concerniente al régimen tributario y al crédito público.

7. Autorizar los créditos adicionales al presupuesto.

8. Aprobar las líneas generales del plan de desarrollo económico y social de la Nación, que serán presentadas por el Ejecutivo Nacional en el transcurso del tercer trimestre del primer año de cada período constitucional.

9. Autorizar al Ejecutivo Nacional para celebrar contratos de interés nacional, en los casos establecidos en la ley. Autorizar los contratos de interés público municipal, estadal o nacional con Estados o entidades oficiales extranjeros o con sociedades no domiciliadas en Venezuela.

10. Dar voto de censura al Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva y a los Ministros o Ministras. La moción de censura sólo podrá ser discutida dos días después de presentada a la Asamblea, la cual podrá decidir, por las tres quintas partes de los diputados o diputadas, que el voto de censura implica la destitución del Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva o del Ministro o Ministra.

11. Autorizar el empleo de misiones militares venezolanas en el exterior o extranjeras en el país.

12. Autorizar al Ejecutivo Nacional para enajenar bienes inmuebles del dominio privado de la Nación, con las excepciones que establezca la ley.

13. Autorizar a los funcionarios públicos o funcionarias públicas para aceptar cargos, honores o recompensas de gobiernos extranjeros.

14. Autorizar el nombramiento del Procurador o Procuradora General de la República y de los Jefes o Jefas de Misiones Diplomáticas Permanentes.

15. Acordar los honores del Panteón Nacional a venezolanos y venezolanas ilustres que hayan prestado servicios eminentes a la República, después de transcurridos veinticinco años de su fallecimiento. Esta decisión podrá tomarse por recomendación del Presidente o Presidenta de la República, de las dos terceras partes de los Gobernadores o Gobernadoras de Estado o de los rectores o rectoras de las Universidades Nacionales en pleno.

16. Velar por los intereses y autonomía de los Estados.

17. Autorizar la salida del Presidente o Presidenta de la República del territorio nacional cuando su ausencia se prolongue por un lapso superior a cinco días consecutivos.

18. Aprobar por ley los tratados o convenios internacionales que celebre el Ejecutivo Nacional, salvo las excepciones consagradas en esta Constitución.

19. Dictar su reglamento y aplicar las sanciones que en él se establezcan.

20. Calificar a sus integrantes y conocer de su renuncia. La separación temporal de un diputado o diputada sólo podrá acordarse por el voto de las dos terceras partes de los diputados y las diputadas presentes.

21. Organizar su servicio de seguridad interna.

22. Acordar y ejecutar su presupuesto de gastos, tomando en cuenta las limitaciones financieras del país.

23. Ejecutar las resoluciones concernientes a su funcionamiento y organización administrativa.

24. Todo lo demás que le señalen esta Constitución y la ley.

**Artículo 188.** Las condiciones para ser elegido o elegida diputado o diputada a la Asamblea Nacional son:

1. Ser venezolano o venezolana por nacimiento, o por naturalización con, por lo menos, quince años de residencia en territorio venezolano.

2. Ser mayor de veintiún años de edad.

3. Haber residido cuatro años consecutivos en la entidad correspondiente antes de la fecha de la elección.

**Artículo 189.** No podrán ser elegidos o elegidas diputados o diputadas:

1. El Presidente o Presidenta de la República, el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, los Ministros o Ministras, el Secretario o Secretaria de la Presidencia de la República y los Presidentes o Presidentas y Directores o Directoras de los institutos autónomos y empresas del Estado, hasta tres meses después de la separación absoluta de sus cargos.

2. Los Gobernadores o Gobernadoras y Secretarios o Secretarias de gobierno, de los Estados y autoridades de similar jerarquía del Distrito Capital, hasta tres meses después de la separación absoluta de sus cargos.

3. Los funcionarios o funcionarias municipales, estadales o nacionales, de institutos autónomos o empresas del Estado, cuando la elección tenga lugar en la jurisdicción en la cual actúa, salvo si se trata de un cargo accidental, asistencial, docente o académico.

La ley orgánica podrá establecer la inelegibilidad de otros funcionarios o funcionarias.

**Artículo 190.** Los diputados o diputadas a la Asamblea Nacional no podrán ser propietarios o propietarias, administradores o administradoras o directores o directoras de empresas que contraten con personas jurídicas estatales, ni podrán gestionar causas particulares de interés lucrativo con las mismas. Durante la votación sobre causas en las cuales surjan conflictos de intereses económicos, los o las integrantes de la Asamblea Nacional, que estén involucrados o involucradas en dichos conflictos, deberán abstenerse.

**Artículo 191.** Los diputados o diputadas a la Asamblea Nacional no podrán aceptar o ejercer cargos públicos sin perder su investidura, salvo en actividades docentes, académicas, accidentales o asistenciales, siempre que no supongan dedicación exclusiva.

**Artículo 192.** Los diputados o diputadas a la Asamblea Nacional durarán cinco años en el ejercicio de sus funciones, pudiendo ser reelegidos o reelegidas por dos períodos consecutivos como máximo.
*(Ver Enmienda Nº 1 de fecha 15 de febrero de 2009)*

*Sección segunda: de la organización de la Asamblea Nacional*

**Artículo 193.** La Asamblea Nacional nombrará Comisiones Permanentes, ordinarias y especiales. Las Comisiones Permanentes, en un número no mayor de quince, estarán referidas a los sectores de actividad nacional. Igualmente, podrá crear Comisiones con carácter temporal para investigación y estudio, todo ello de conformidad con su reglamento. La Asamblea Nacional podrá crear o suprimir Comisiones Permanentes con el voto favorable de las dos terceras partes de sus integrantes.

**Artículo 194.** La Asamblea Nacional elegirá de su seno un Presidente o Presidenta y dos Vicepresidentes o Vicepresidentas, un Secretario o Secretaria y un Subsecretario o Subsecretaria fuera de su seno, por un período de un año. El reglamento establecerá las formas de suplir las faltas temporales y absolutas.

**Artículo 195.** Durante el receso de la Asamblea funcionará la Comisión Delegada integrada por el Presidente o Presidenta, los Vicepresidentes o Vicepresidentas y los Presidentes o Presidentas de las Comisiones Permanentes.

**Artículo 196.** Son atribuciones de la Comisión Delegada:

1. Convocar la Asamblea Nacional a sesiones extraordinarias, cuando así lo exija la importancia de algún asunto.
2. Autorizar al Presidente o Presidenta de la República para salir del territorio nacional.
3. Autorizar al Ejecutivo Nacional para decretar créditos adicionales.
4. Designar Comisiones temporales integradas por miembros de la Asamblea.
5. Ejercer las funciones de investigación atribuidas a la Asamblea.
6. Autorizar al Ejecutivo Nacional por el voto favorable de las dos terceras partes de sus integrantes para crear, modificar o suspender servicios públicos en caso de urgencia comprobada.
7. Las demás que establezcan esta Constitución y la ley.

*Sección tercera: de los diputados y diputadas a la Asamblea Nacional*

**Artículo 197.** Los diputados o diputadas a la Asamblea Nacional están obligados u obligadas a cumplir sus labores a dedicación exclusiva, en beneficio de los intereses del pueblo y a mantener una vinculación permanente con sus electores y electoras, atendiendo sus opiniones y sugerencias y manteniéndolos informados e informadas acerca de su gestión y la de la Asamblea. Deben dar cuenta anualmente de su gestión a los electores y electoras de la circunscripción por la cual fueron elegidos o elegidas y estarán sometidos o sometidas al referendo revocatorio del mandato en los términos previstos en esta Constitución y en la ley sobre la materia.

**Artículo 198.** El diputado o diputada a la Asamblea Nacional, cuyo mandato fuere revocado, no podrá optar a cargos de elección popular en el siguiente período.

**Artículo 199.** Los diputados o diputadas a la Asamblea Nacional no son responsables por votos y opiniones emitidos en el ejercicio de sus funciones. Sólo responderán ante los electores o electoras y el cuerpo legislativo de acuerdo con esta Constitución y con los reglamentos.

**Artículo 200.** Los diputados o diputadas a la Asamblea Nacional gozarán de inmunidad en el ejercicio de sus funciones desde su proclamación hasta la conclusión de su mandato o la renuncia del mismo. De los presuntos delitos que cometan los o las integrantes de la Asamblea Nacional conocerá en forma privativa el Tribunal Supremo de Justicia, única autoridad que podrá ordenar, previa autorización de la Asamblea Nacional, su detención y continuar su enjuiciamiento. En caso de delito flagrante cometido por un parlamentario o parlamentaria, la autoridad competente lo o la pondrá bajo custodia en su residencia y comunicará inmediatamente el hecho al Tribunal Supremo de Justicia.

Los funcionarios públicos o funcionarias públicas que violen la inmunidad de los o las integrantes de la Asamblea Nacional, incurrirán en responsabilidad penal y serán castigados o castigadas de conformidad con la ley.

**Artículo 201.** Los diputados o diputadas son representantes del pueblo y de los Estados en su conjunto, no sujetos o sujetas a mandatos ni instrucciones, sino sólo a su conciencia. Su voto en la Asamblea Nacional es personal.

*Sección cuarta: de la formación de las leyes*

**Artículo 202.** La ley es el acto sancionado por la Asamblea Nacional como cuerpo legislador. Las leyes que reúnan sistemáticamente las normas relativas a determinada materia se podrán denominar códigos.

**Artículo 203.** Son leyes orgánicas las que así denomina esta Constitución; las que se dicten para organizar los poderes públicos o para desarrollar los derechos constitucionales y las que sirvan de marco normativo a otras leyes.

Todo proyecto de ley orgánica, salvo aquel que esta Constitución califique como tal, será previamente admitido por la Asamblea Nacional, por el voto de las dos terceras partes de los o las integrantes presentes antes de iniciarse la discusión del respectivo proyecto de ley. Esta votación calificada se aplicará también para la modificación de las leyes orgánicas.

Las leyes que la Asamblea Nacional haya calificado de orgánicas serán remitidas antes de su promulgación a la Sala Constitucional del Tribunal Supremo de Justicia, para que se pronuncie acerca de la constitucionalidad de su carácter orgánico. La Sala Constitucional decidirá en el término de diez días contados a partir de la fecha de recibo de la comunicación. Si la Sala Constitucional declara que no es orgánica, la ley perderá este carácter.

Son leyes habilitantes las sancionadas por la Asamblea Nacional por las tres quintas partes de sus integrantes, a fin de establecer las directrices, propósitos y marco de las materias que se delegan al Presidente o Presidenta de la República, con rango y valor de ley. Las leyes habilitantes deben fijar el plazo de su ejercicio.

**Artículo 204.** La iniciativa de las leyes corresponde:

1. Al Poder Ejecutivo Nacional.
2. A la Comisión Delegada y a las Comisiones Permanentes.
3. A los y las integrantes de la Asamblea Nacional, en número no menor de tres.
4. Al Tribunal Supremo de Justicia, cuando se trate de leyes relativas a la organización y procedimientos judiciales.
5. Al Poder Ciudadano, cuando se trate de leyes relativas a los órganos que lo integran.
6. Al Poder Electoral, cuando se trate de leyes relativas a la materia electoral.
7. A los electores y electoras en un número no menor del cero coma uno por ciento de los inscritos e inscritas en el Registro Civil y Electoral.
8. Al Consejo Legislativo, cuando se trate de leyes relativas a los Estados.

**Artículo 205.** La discusión de los proyectos de ley presentados por los electores y electoras conforme a lo dispuesto en el artículo anterior, se iniciará a más tardar en el período de sesiones ordinarias siguiente al que se haya presentado. Si el debate no se inicia dentro de dicho lapso, el proyecto se someterá a referendo aprobatorio de conformidad con la ley.

**Artículo 206.** Los Estados serán consultados por la Asamblea Nacional, a través del Consejo Legislativo, cuando se legisle en materias relativas a los mismos. La ley establecerá los mecanismos de consulta a la sociedad civil y demás instituciones de los Estados, por parte del Consejo, en dichas materias.

**Artículo 207.** Para convertirse en ley todo proyecto recibirá dos discusiones, en días diferentes, siguiendo las reglas establecidas en esta Constitución y en los reglamentos respectivos. Aprobado el proyecto, el Presidente o Presidenta de la Asamblea Nacional declarará sancionada la ley.

**Artículo 208.** En la primera discusión se considerará la exposición de motivos y se evaluarán sus objetivos, alcance y viabilidad, a fin de determinar la pertinencia de la ley, y se discutirá el articulado. Aprobado en primera discusión, el proyecto será remitido a la Comisión directamente relacionada con la materia objeto de la ley. En caso de que el proyecto de ley esté relacionado con varias Comisiones Permanentes, se designará una comisión mixta para realizar el estudio y presentar el informe.

Las Comisiones que estudien proyectos de ley presentarán el informe correspondiente en un plazo no mayor de treinta días consecutivos.

**Artículo 209.** Recibido el informe de la Comisión correspondiente, se dará inicio a la segunda discusión del proyecto de ley, la cual se realizará artículo por artículo. Si se aprobare sin modificaciones, quedará sancionada la ley. En caso contrario, si sufre modificaciones, se devolverá a la Comisión respectiva para que ésta las incluya en un plazo no mayor de quince días continuos; leída la nueva versión del proyecto de ley en la plenaria de la Asamblea Nacional, ésta decidirá por mayoría de votos lo que fuere procedente respecto a los artículos en que hubiere discrepancia y a los que tuvieren conexión con éstos. Resuelta la discrepancia, la Presidencia declarará sancionada la ley.

**Artículo 210.** La discusión de los proyectos que quedaren pendientes al término de las sesiones, podrá continuarse en las sesiones siguientes o en sesiones extraordinarias.

**Artículo 211.** La Asamblea Nacional o las Comisiones Permanentes, durante el procedimiento de discusión y aprobación de los proyectos de leyes, consultarán a los otros órganos del Estado, a los ciudadanos y ciudadanas y a la sociedad organizada para oír su opinión sobre los mismos. Tendrán derecho de palabra en la discusión de las leyes los Ministros o Ministras en representación del Poder

Ejecutivo; el magistrado o magistrada del Tribunal Supremo de Justicia a quien éste designe, en representación del Poder Judicial; el o la representante del Poder Ciudadano designado o designada por el Consejo Moral Republicano; los o las integrantes del Poder Electoral; los Estados a través de un o una representante designado o designada por el Consejo Legislativo y los o las representantes de la sociedad organizada, en los términos que establezca el reglamento de la Asamblea Nacional.

**Artículo 212.** Al texto de las leyes precederá la siguiente fórmula: "La Asamblea Nacional de la República Bolivariana de Venezuela decreta:"

**Artículo 213.** Una vez sancionada la ley, se extenderá por duplicado con la redacción final que haya resultado de las discusiones. Ambos ejemplares serán firmados por el Presidente o Presidenta, los dos Vicepresidentes o Vicepresidentas y el Secretario o Secretaria de la Asamblea Nacional, con la fecha de su aprobación definitiva. Uno de los ejemplares de la ley será enviado por el Presidente o Presidenta de la Asamblea Nacional al Presidente o Presidenta de la República a los fines de su promulgación.

**Artículo 214.** El Presidente o Presidenta de la República promulgará la ley dentro de los diez días siguientes a aquel en que la haya recibido. Dentro de ese lapso podrá, en acuerdo con el Consejo de Ministros, solicitar a la Asamblea Nacional, mediante exposición razonada, que modifique alguna de las disposiciones de la ley o levante la sanción a toda la ley o a parte de ella.

La Asamblea Nacional decidirá acerca de los aspectos planteados por el Presidente o Presidenta de la República, por mayoría absoluta de los diputados o diputadas presentes y le remitirá la ley para la promulgación.

El Presidente o Presidenta de la República debe proceder a promulgar la ley dentro de los cinco días siguientes a su recibo, sin poder formular nuevas observaciones.

Cuando el Presidente o Presidenta de la República considere que la ley o alguno de sus artículos es inconstitucional solicitará el pronunciamiento de la Sala Constitucional del Tribunal Supremo de Justicia, en el lapso de diez días que tiene para promulgar la misma. El Tribunal Supremo de Justicia decidirá en el término de quince días contados desde el recibo de la comunicación del Presidente o Presidenta de la República. Si el Tribunal negare la inconstitucionalidad invocada o no decidiere en el lapso anterior, el Presidente o Presidenta de la República promulgará la ley dentro de los cinco días siguientes a la decisión del Tribunal o al vencimiento de dicho lapso.

**Artículo 215.** La ley quedará promulgada al publicarse con el correspondiente "Cúmplase" en la Gaceta Oficial de la República Bolivariana de Venezuela.

**Artículo 216.** Cuando el Presidente o Presidenta de la República no promulgare la ley en los lapsos señalados, el Presidente o Presidenta y los dos Vicepresidentes o Vicepresidentas de la Asamblea Nacional procederán a su promulgación, sin perjuicio de la responsabilidad en que aquel o aquella incurriere por su omisión.

**Artículo 217.** La oportunidad en que deba ser promulgada la ley aprobatoria de un tratado, de un acuerdo o de un convenio internacional, quedará a la discreción del Ejecutivo Nacional, de acuerdo con los usos internacionales y la conveniencia de la República.

**Artículo 218.** Las leyes se derogan por otras leyes y se abrogan por referendo, salvo las excepciones establecidas en esta Constitución. Podrán ser reformadas total o parcialmente. La ley que sea objeto de reforma parcial se publicará en un solo texto que incorpore las modificaciones aprobadas.

**Sección quinta: de los procedimientos**

**Artículo 219.** El primer período de las sesiones ordinarias de la Asamblea Nacional comenzará, sin convocatoria previa, el cuatro de enero de cada año o el día posterior más inmediato posible y durará hasta el quince de agosto.

El segundo período comenzará el quince de septiembre o el día posterior más inmediato posible y terminará el quince de diciembre.

**Artículo 220.** La Asamblea Nacional se reunirá en sesiones extraordinarias para tratar las materias expresadas en la convocatoria y las que les fueren conexas. También podrá considerar las que fueren declaradas de urgencia por la mayoría de sus integrantes.

**Artículo 221.** Los requisitos y procedimientos para la instalación y demás sesiones de la Asamblea Nacional, y para el funcionamiento de sus Comisiones, serán determinados por el reglamento.

El quórum no podrá ser en ningún caso inferior a la mayoría absoluta de los o las integrantes de la Asamblea Nacional.

**Artículo 222.** La Asamblea Nacional podrá ejercer su función de control mediante los siguientes mecanismos: las interpelaciones, las investigaciones, las preguntas, las autorizaciones y las aprobaciones parlamentarias previstas en esta Constitución y en la ley, y mediante cualquier otro mecanismo que establezcan las leyes y su reglamento. En ejercicio del control parlamentario, podrán declarar la responsabilidad política de los funcionarios públicos o funcionarias públicas y solicitar al Poder Ciudadano que intente las acciones a que haya lugar para hacer efectiva tal responsabilidad.

**Artículo 223.** La Asamblea o sus Comisiones podrán realizar las investigaciones que juzguen convenientes en las materias de su competencia, de conformidad con el reglamento.

Todos los funcionarios públicos o funcionarias públicas están obligados u obligadas, bajo las sanciones que establezcan las leyes, a comparecer ante dichas Comisiones y a suministrarles las informaciones y documentos que requieran para el cumplimiento de sus funciones.

Esta obligación comprende también a los y las particulares, a quienes se les respetarán los derechos y garantías que esta Constitución reconoce.

**Artículo 224.** El ejercicio de la facultad de investigación no afecta las atribuciones de los demás poderes públicos. Los jueces o juezas estarán obligados u obligadas a evacuar las pruebas para las cuales reciban comisión de la Asamblea Nacional o de sus Comisiones.

**Capítulo II**
**Del Poder Ejecutivo Nacional**
**Sección primera: del Presidente o Presidenta de la República**

**Artículo 225.** El Poder Ejecutivo se ejerce por el Presidente o Presidenta de la República, el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, los Ministros o Ministras y demás funcionarios o funcionarias que determinen esta Constitución y la ley.

**Artículo 226.** El Presidente o Presidenta de la República es el Jefe o Jefa del Estado y del Ejecutivo Nacional, en cuya condición dirige la acción del Gobierno.

**Artículo 227.** Para ser elegido Presidente de la República o elegida Presidenta de la República se requiere ser venezolano o venezolana por nacimiento, no poseer otra nacionalidad, ser mayor de treinta años, de estado seglar y no estar sometido o sometida a condena mediante sentencia definitivamente firme y cumplir con los demás requisitos establecidos en esta Constitución.

**Artículo 228.** La elección del Presidente o Presidenta de la República se hará por votación universal, directa y secreta, de conformidad con la ley. Se proclamará electo o electa el candidato o la candidata que hubiere obtenido la mayoría de votos válidos.

**Artículo 229.** No podrá ser elegido Presidente o elegida Presidenta de la República quien esté en ejercicio del cargo de Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, Ministro o Ministra, Gobernador o Gobernadora, o Alcalde o Alcaldesa, en el día de su postulación o en cualquier momento entre esta fecha y la de la elección.

**Artículo 230.** El período presidencial es de seis años. El Presidente o Presidenta de la República puede ser reelegido o reelegida, de inmediato y por una sola vez, para un nuevo período.

· *(Ver Enmienda N° 1 de fecha 15 de febrero de 2009)*

**Artículo 231.** El candidato elegido o candidata elegida tomará posesión del cargo de Presidente o Presidenta de la República el diez de enero del primer año de su período constitucional, mediante juramento ante la Asamblea Nacional. Si por cualquier motivo sobrevenido el Presidente o Presidenta de la República no pudiese tomar posesión ante la Asamblea Nacional, lo hará ante el Tribunal Supremo de Justicia.

**Artículo 232.** El Presidente o Presidenta de la República es responsable de sus actos y del cumplimiento de las obligaciones inherentes a su cargo.

Está obligado u obligada a procurar la garantía de los derechos y libertades de los venezolanos y venezolanas, así como la independencia, integridad, soberanía del territorio y defensa de la República. La declaración de los estados de excepción no modifica el principio de su responsabilidad, ni la del Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, ni la de los Ministros o Ministras, de conformidad con esta Constitución y con la ley.

**Artículo 233.** Serán faltas absolutas del Presidente o Presidenta de la República: su muerte, su renuncia, o su destitución decretada por sentencia del Tribunal Supremo de Justicia; su incapacidad física o mental permanente certificada por una junta médica designada por el Tribunal Supremo de Justicia y con aprobación de la Asamblea Nacional; el abandono del cargo, declarado como tal por la Asamblea Nacional, así como la revocación popular de su mandato.

Cuando se produzca la falta absoluta del Presidente electo o Presidenta electa antes de tomar posesión, se procederá a una nueva elección universal, directa y secreta dentro de los treinta días consecutivos siguientes. Mientras se elige y toma posesión el nuevo Presidente o la nueva Presidenta, se encargará de la Presidencia de la República el Presidente o Presidenta de la Asamblea Nacional.

Si la falta absoluta del Presidente o de la Presidenta de la República se produce durante los primeros cuatro años del período constitucional, se procederá a una nueva elección universal, directa y secreta dentro de los treinta días consecutivos siguientes. Mientras se elige y toma posesión el nuevo Presidente o la nueva Presidenta, se encargará de la Presidencia de la República el Vicepresidente Ejecutivo o la Vicepresidenta Ejecutiva.

En los casos anteriores, el nuevo Presidente o Presidenta completará el período constitucional correspondiente.

Si la falta absoluta se produce durante los últimos dos años del período constitucional, el Vicepresidente Ejecutivo o la Vicepresidenta Ejecutiva asumirá la Presidencia de la República hasta completar dicho período.

**Artículo 234.** Las faltas temporales del Presidente o Presidenta de la República serán suplidas por el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva hasta por noventa días, prorrogables por decisión de la Asamblea Nacional hasta por noventa días más.

Si una falta temporal se prolonga por más de noventa días consecutivos, la Asamblea Nacional decidirá por mayoría de sus integrantes si debe considerarse que hay falta absoluta.

**Artículo 235.** La ausencia del territorio nacional por parte del Presidente o Presidenta de la República requiere autorización de la Asamblea Nacional o de la Comisión Delegada, cuando se prolongue por un lapso superior a cinco días consecutivos.

### Sección segunda: de las atribuciones del Presidente o Presidenta de la República

**Artículo 236.** Son atribuciones y obligaciones del Presidente o Presidenta de la República:

1. Cumplir y hacer cumplir esta Constitución y la ley.
2. Dirigir la acción del Gobierno.
3. Nombrar y remover al Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva; nombrar y remover los Ministros o Ministras.
4. Dirigir las relaciones exteriores de la República y celebrar y ratificar los tratados, convenios o acuerdos internacionales.
5. Dirigir la Fuerza Armada Nacional en su carácter de Comandante en Jefe, ejercer la suprema autoridad jerárquica de ella y fijar su contingente.
6. Ejercer el mando supremo de la Fuerza Armada Nacional, promover sus oficiales a partir del grado de coronel o coronela o capitán o capitana de navío, y nombrarlos o nombrarlas para los cargos que les son privativos.
7. Declarar los estados de excepción y decretar la restricción de garantías en los casos previstos en esta Constitución.
8. Dictar, previa autorización por una ley habilitante, decretos con fuerza de ley.
9. Convocar la Asamblea Nacional a sesiones extraordinarias.
10. Reglamentar total o parcialmente las leyes, sin alterar su espíritu, propósito y razón.
11. Administrar la Hacienda Pública Nacional.
12. Negociar los empréstitos nacionales.
13. Decretar créditos adicionales al Presupuesto, previa autorización de la Asamblea Nacional o de la Comisión Delegada.
14. Celebrar los contratos de interés nacional conforme a esta Constitución y a la ley.
15. Designar, previa autorización de la Asamblea Nacional o de la Comisión Delegada, al Procurador o Procuradora General de la República y a los jefes o jefas de las misiones diplomáticas permanentes.
16. Nombrar y remover a aquellos funcionarios o aquellas funcionarias cuya designación le atribuyen esta Constitución y la ley.
17. Dirigir a la Asamblea Nacional, personalmente o por intermedio del Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, informes o mensajes especiales.
18. Formular el Plan Nacional de Desarrollo y dirigir su ejecución previa aprobación de la Asamblea Nacional.
19. Conceder indultos.
20. Fijar el número, organización y competencia de los ministerios y otros organismos de la Administración Pública Nacional, así como también la organización y funcionamiento del Consejo de Ministros, dentro de los principios y lineamientos señalados por la correspondiente ley orgánica.
21. Disolver la Asamblea Nacional en el supuesto establecido en esta Constitución.
22. Convocar referendos en los casos previstos en esta Constitución.
23. Convocar y presidir el Consejo de Defensa de la Nación.
24. Las demás que le señalen esta Constitución y la ley.

El Presidente o Presidenta de la República ejercerá en Consejo de Ministros las atribuciones señaladas en los numerales 7, 8, 9, 10, 12, 13, 14, 18, 20, 21, 22 y las que le atribuya la ley para ser ejercidas en igual forma.

Los actos del Presidente o Presidenta de la República, con excepción de los señalados en los ordinales 3 y 5, serán refrendados para su validez por el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva y el Ministro o Ministra o Ministros o Ministras respectivos.

**Artículo 237.** Dentro de los diez primeros días siguientes a la instalación de la Asamblea Nacional, en sesiones ordinarias, el Presidente o Presidenta de la República presentará cada año personalmente a la Asamblea un mensaje en que dará cuenta de los aspectos políticos, económicos, sociales y administrativos de su gestión durante el año inmediatamente anterior.

### Sección tercera: del Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva

**Artículo 238.** El Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva es órgano directo y colaborador inmediato del Presidente o Presidenta de la República en su condición de Jefe o Jefa del Ejecutivo Nacional.

El Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva reunirá las mismas condiciones exigidas para ser Presidente o Presidenta de la República, y no podrá tener ningún parentesco de consanguinidad ni de afinidad con éste.

**Artículo 239.** Son atribuciones del Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva:

1. Colaborar con el Presidente o Presidenta de la República en la dirección de la acción del Gobierno.

1. Coordinar la Administración Pública Nacional de conformidad con las instrucciones del Presidente o Presidenta de la República.
2. Proponer al Presidente o Presidenta de la República el nombramiento y la remoción de los Ministros o Ministras.
3. Presidir, previa autorización del Presidente o Presidenta de la República, el Consejo de Ministros.
4. Coordinar las relaciones del Ejecutivo Nacional con la Asamblea Nacional.
5. Presidir el Consejo Federal de Gobierno.
6. Nombrar y remover, de conformidad con la ley, los funcionarios o funcionarias nacionales cuya designación no esté atribuida a otra autoridad.
7. Suplir las faltas temporales del Presidente o Presidenta de la República.
8. Ejercer las atribuciones que le delegue el Presidente o Presidenta de la República.
9. Las demás que le señalen esta Constitución y la ley.

**Artículo 240.** La aprobación de una moción de censura al Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, por una votación no menor de las tres quintas partes de los integrantes de la Asamblea Nacional, implica su remoción. El funcionario removido o funcionaria removida no podrá optar al cargo de Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, o de Ministro o Ministra por el resto del período presidencial.

La remoción del Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva en tres oportunidades dentro de un mismo período constitucional, como consecuencia de la aprobación de mociones de censura, faculta al Presidente o Presidenta de la República para disolver la Asamblea Nacional. El decreto de disolución conlleva la convocatoria de elecciones para una nueva legislatura dentro de los sesenta días siguientes a su disolución.

La Asamblea no podrá ser disuelta en el último año de su período constitucional.

**Artículo 241.** El Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva es responsable de sus actos, de conformidad con esta Constitución y con la ley.

### Sección cuarta: de los Ministros o Ministras y del Consejo de Ministros

**Artículo 242.** Los Ministros o Ministras son órganos directos del Presidente o Presidenta de la República, y reunidos o reunidas conjuntamente con éste o ésta y con el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, integran el Consejo de Ministros.

El Presidente o Presidenta de la República presidirá las reuniones del Consejo de Ministros, pero podrá autorizar al Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva para que las presida cuando no pueda asistir a ellas. Las decisiones adoptadas deberán ser ratificadas por el Presidente o Presidenta de la República, para su validez.

De las decisiones del Consejo de Ministros son solidariamente responsables el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva y los Ministros o Ministras que hubieren concurrido, salvo aquellos o aquellas que hayan hecho constar su voto adverso o negativo.

**Artículo 243.** El Presidente o Presidenta de la República podrá nombrar Ministros o Ministras de Estado, los o las cuales, además de participar en el Consejo de Ministros, asesorarán al Presidente o Presidenta de la República y al Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva en los asuntos que les fueren asignados.

**Artículo 244.** Para ser Ministro o Ministra se requiere poseer la nacionalidad venezolana y ser mayor de veinticinco años, con las excepciones establecidas en esta Constitución.

Los Ministros o Ministras son responsables de sus actos de conformidad con esta Constitución y con la ley, y presentarán ante la Asamblea Nacional, dentro de los primeros sesenta días de cada año, una memoria razonada y suficiente sobre la gestión del despacho en el año inmediatamente anterior, de conformidad con la ley.

**Artículo 245.** Los Ministros o Ministras tienen derecho de palabra en la Asamblea Nacional y en sus Comisiones. Podrán tomar parte en los debates de la Asamblea Nacional, sin derecho al voto.

**Artículo 246.** La aprobación de una moción de censura a un Ministro o Ministra por una votación no menor de las tres quintas partes de los o las integrantes presentes de la Asamblea Nacional, implica su remoción. El funcionario removido o funcionaria removida no podrá optar al cargo de Ministro ni de Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva por el resto del período presidencial.

### Sección quinta: de la Procuraduría General de la República

**Artículo 247.** La Procuraduría General de la República asesora, defiende y representa judicial y extrajudicialmente los intereses patrimoniales de la República, y será consultada para la aprobación de los contratos de interés público nacional.

La ley orgánica determinará su organización, competencia y funcionamiento.

**Artículo 248.** La Procuraduría General de la República estará a cargo y bajo la dirección del Procurador o Procuradora General de la República, con la colaboración de los demás funcionarios o funcionarias que determine su ley orgánica.

**Artículo 249.** El Procurador o Procuradora General de la República reunirá las mismas condiciones exigidas para ser magistrado o magistrada del Tribunal

Supremo de Justicia. Será nombrado o nombrada por el Presidente o Presidenta de la República con la autorización de la Asamblea Nacional.

*Artículo 250.* El Procurador o Procuradora General de la República asistirá, con derecho a voz, a las reuniones del Consejo de Ministros.

### Sección sexta: del Consejo de Estado

*Artículo 251.* El Consejo de Estado es el órgano superior de consulta del Gobierno y de la Administración Pública Nacional. Será de su competencia recomendar políticas de interés nacional en aquellos asuntos a los que el Presidente o Presidenta de la República reconozca de especial trascendencia y requieran de su opinión.

La ley determinará sus funciones y atribuciones.

*Artículo 252.* El Consejo de Estado lo preside el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva y estará conformado, además, por cinco personas designadas por el Presidente o Presidenta de la República; un o una representante designado o designada por la Asamblea Nacional; un o una representante designado o designada por el Tribunal Supremo de Justicia y un Gobernador designado o Gobernadora designada por el conjunto de mandatarios o mandatarias estadales.

### Capítulo III
### Del Poder Judicial y del Sistema de Justicia

### Sección primera: disposiciones generales

*Artículo 253.* La potestad de administrar justicia emana de los ciudadanos y ciudadanas y se imparte en nombre de la República por autoridad de la ley.

Corresponde a los órganos del Poder Judicial conocer de las causas y asuntos de su competencia mediante los procedimientos que determinen las leyes, y ejecutar o hacer ejecutar sus sentencias.

El sistema de justicia está constituido por el Tribunal Supremo de Justicia, los demás tribunales que determine la ley, el Ministerio Público, la Defensoría Pública, los órganos de investigación penal, los o las auxiliares y funcionarios o funcionarias de justicia, el sistema penitenciario, los medios alternativos de justicia, los ciudadanos o ciudadanas que participan en la administración de justicia conforme a la ley y los abogados autorizados o abogadas autorizadas para el ejercicio.

*Artículo 254.* El Poder Judicial es independiente y el Tribunal Supremo de Justicia gozará de autonomía funcional, financiera y administrativa. A tal efecto, dentro del presupuesto general del Estado se le asignará al sistema de justicia una partida anual variable, no menor del dos por ciento del presupuesto ordinario nacional, para su efectivo funcionamiento, el cual no podrá ser reducido o modificado sin autorización previa de la Asamblea Nacional. El Poder Judicial no está facultado para establecer tasas, aranceles, ni exigir pago alguno por sus servicios.

*Artículo 255.* El ingreso a la carrera judicial y el ascenso de los jueces o juezas se hará por concursos de oposición públicos que aseguren la idoneidad y excelencia de los o las participantes y serán seleccionados o seleccionadas por los jurados de los circuitos judiciales, en la forma y condiciones que establezca la ley. El nombramiento y juramento de los jueces o juezas corresponde al Tribunal Supremo de Justicia. La ley garantizará la participación ciudadana en el procedimiento de selección y designación de los jueces o juezas. Los jueces o juezas sólo podrán ser removidos o removidas o suspendidos o suspendidas de sus cargos mediante los procedimientos expresamente previstos en la ley.

La ley propenderá a la profesionalización de los jueces o juezas y las universidades colaborarán en este propósito, organizando en los estudios universitarios de Derecho la especialización judicial correspondiente.

Los jueces o juezas son personalmente responsables, en los términos que determine la ley, por error, retardo u omisiones injustificadas, por la inobservancia sustancial de las normas procesales, por denegación, parcialidad y por los delitos de cohecho y prevaricación en que incurran en el desempeño de sus funciones.

*Artículo 256.* Con la finalidad de garantizar la imparcialidad y la independencia en el ejercicio de sus funciones, los magistrados o las magistradas, los jueces o las juezas; los fiscales o las fiscales del Ministerio Público y los defensores públicos o las defensoras públicas, desde la fecha de su nombramiento y hasta su egreso del cargo respectivo, no podrán, salvo el ejercicio del voto, llevar a cabo activismo político partidista, gremial, sindical o de índole semejante, ni realizar actividades privadas lucrativas incompatibles con su función, ni por sí ni por interpósita persona, ni ejercer ninguna otra función pública a excepción de actividades educativas.

Los jueces o las juezas no podrán asociarse entre sí.

*Artículo 257.* El proceso constituye un instrumento fundamental para la realización de la justicia. Las leyes procesales establecerán la simplificación, uniformidad y eficacia de los trámites y adoptarán un procedimiento breve, oral y público. No se sacrificará la justicia por la omisión de formalidades no esenciales.

*Artículo 258.* La ley organizará la justicia de paz en las comunidades. Los jueces o juezas de paz serán elegidos o elegidas por votación universal, directa y secreta, conforme a la ley.

La ley promoverá el arbitraje, la conciliación, la mediación y cualesquiera otros medios alternativos para la solución de conflictos.

*Artículo 259.* La jurisdicción contenciosoadministrativa corresponde al Tribunal Supremo de Justicia y a los demás tribunales que determine la ley. Los órganos de la jurisdicción contenciosoadministrativa son competentes para anular los actos administrativos generales o individuales contrarios a derecho, incluso por desviación de poder; condenar al pago de sumas de dinero y a la reparación de

daños y perjuicios originados en responsabilidad de la Administración; conocer de reclamos por la prestación de servicios públicos y disponer lo necesario para el restablecimiento de las situaciones jurídicas subjetivas lesionadas por la actividad administrativa.

*Artículo 260.* Las autoridades legítimas de los pueblos indígenas podrán aplicar en su hábitat instancias de justicia con base en sus tradiciones ancestrales y que sólo afecten a sus integrantes, según sus propias normas y procedimientos, siempre que no sean contrarios a esta Constitución, a la ley y al orden público. La ley determinará la forma de coordinación de esta jurisdicción especial con el sistema judicial nacional.

*Artículo 261.* La jurisdicción penal militar es parte integrante del Poder Judicial, y sus jueces o juezas serán seleccionados o seleccionadas por concurso. Su ámbito de competencia, organización y modalidades de funcionamiento se regirán por el sistema acusatorio y de acuerdo con lo previsto en el Código Orgánico de Justicia Militar. La comisión de delitos comunes, violaciones de derechos humanos y crímenes de lesa humanidad, serán juzgados por los tribunales ordinarios. La competencia de los tribunales militares se limita a delitos de naturaleza militar.

La ley regulará lo relativo a las jurisdicciones especiales y a la competencia, organización y funcionamiento de los tribunales en cuanto no esté previsto en esta Constitución.

### Sección segunda: del Tribunal Supremo de Justicia

*Artículo 262.* El Tribunal Supremo de Justicia funcionará en Sala Plena y en las Salas Constitucional, Politicoadministrativa, Electoral, de Casación Civil, de Casación Penal y de Casación Social, cuyas integraciones y competencias serán determinadas por su ley orgánica.

La Sala Social comprenderá lo referente a la casación agraria, laboral y de menores.

*Artículo 263.* Para ser magistrado o magistrada del Tribunal Supremo de Justicia se requiere:

1. Tener la nacionalidad venezolana por nacimiento, y no poseer otra nacionalidad.

2. Ser ciudadano o ciudadana de reconocida honorabilidad.

3. Ser jurista de reconocida competencia, gozar de buena reputación, haber ejercido la abogacía durante un mínimo de quince años y tener título universitario de posgrado en materia jurídica; o haber sido profesor universitario o profesora universitaria en ciencia jurídica durante un mínimo de quince años y tener la categoría de profesor o profesora titular; o ser o haber sido juez o jueza superior en la especialidad correspondiente a la Sala para la cual se postula, con un mínimo de quince años en el ejercicio de la carrera judicial, y reconocido prestigio en el desempeño de sus funciones.

4. Cualesquiera otros requisitos establecidos por la ley.

*Artículo 264.* Los magistrados o magistradas del Tribunal Supremo de Justicia serán elegidos o elegidas por un único período de doce años. La ley determinará el procedimiento de elección. En todo caso, podrán postularse candidatos o candidatas ante el Comité de Postulaciones Judiciales, por iniciativa propia o por organizaciones vinculadas con la actividad jurídica. El Comité, oída la opinión de la comunidad, efectuará una preselección para su presentación al Poder Ciudadano, el cual efectuará una segunda preselección que será presentada a la Asamblea Nacional, la cual hará la selección definitiva.

Los ciudadanos y ciudadanas podrán ejercer fundamentar objeciones a cualquiera de los postulados o postuladas ante el Comité de Postulaciones Judiciales o ante la Asamblea Nacional.

*Artículo 265.* Los magistrados o magistradas del Tribunal Supremo de Justicia podrán ser removidos o removidas por la Asamblea Nacional mediante una mayoría calificada de las dos terceras partes de sus integrantes, previa audiencia concedida al interesado o interesada, en caso de faltas graves ya calificadas por el Poder Ciudadano, en los términos que la ley establezca.

*Artículo 266.* Son atribuciones del Tribunal Supremo de Justicia:

1. Ejercer la jurisdicción constitucional conforme al Título VIII de esta Constitución.

2. Declarar si hay o no mérito para el enjuiciamiento del Presidente o Presidenta de la República o quien haga sus veces y, en caso afirmativo, continuar conociendo de la causa previa autorización de la Asamblea Nacional, hasta sentencia definitiva.

3. Declarar si hay o no mérito para el enjuiciamiento del Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, de los o las integrantes de la Asamblea Nacional o del propio Tribunal Supremo de Justicia, de los Ministros o Ministras, del Procurador o Procuradora General, del Fiscal o la Fiscal General, del Contralor o Contralora General de la República, del Defensor o Defensora del Pueblo, los Gobernadores o Gobernadoras, oficiales, generales y almirantes de la Fuerza Armada Nacional y de los jefes o jefas de misiones diplomáticas de la República y, en caso afirmativo, remitir los autos al Fiscal o la Fiscal General de la República o a quien haga sus veces, si fuere el caso; y si el delito fuere común, continuará conociendo de la causa hasta la sentencia definitiva.

4. Dirimir las controversias administrativas que se susciten entre la República, algún Estado, Municipio u otro ente público, cuando la otra parte sea alguna de esas mismas entidades, a menos que se trate de controversias entre Municipios de un mismo Estado, caso en el cual la ley podrá atribuir su conocimiento a otro tribunal.

5. Declarar la nulidad total o parcial de los reglamentos y demás actos administrativos generales o individuales del Ejecutivo Nacional, cuando sea procedente.

6. Conocer de los recursos de interpretación sobre el contenido y alcance de los textos legales, en los términos contemplados en la ley.

7. Decidir los conflictos de competencia entre tribunales, sean ordinarios o especiales, cuando no exista otro tribunal superior o común a ellos en el orden jerárquico.

8. Conocer del recurso de casación.

9. Las demás que establezca la ley.

La atribución señalada en el numeral 1 será ejercida por la Sala Constitucional; las señaladas en los numerales 2 y 3, en Sala Plena; y las contenidas en los numerales 4 y 5, en Sala Politicoadministrativa. Las demás atribuciones serán ejercidas por las diversas Salas conforme a lo previsto en esta Constitución y en la ley.

### Sección tercera: del gobierno y de la administración del Poder Judicial

**Artículo 267.** Corresponde al Tribunal Supremo de Justicia la dirección, el gobierno y la administración del Poder Judicial, la inspección y vigilancia de los tribunales de la República y de las Defensorías Públicas. Igualmente, le corresponde la elaboración y ejecución de su propio presupuesto y del presupuesto del Poder Judicial.

La jurisdicción disciplinaria judicial estará a cargo de los tribunales disciplinarios que determine la ley.

El régimen disciplinario de los magistrados o magistradas y jueces o juezas estará fundamentado en el Código de Ética del Juez Venezolano o Jueza Venezolana, que dictará la Asamblea Nacional. El procedimiento disciplinario será público, oral y breve, conforme al debido proceso, en los términos y condiciones que establezca la ley.

Para el ejercicio de estas atribuciones, el Tribunal Supremo en pleno creará una Dirección Ejecutiva de la Magistratura, con sus oficinas regionales.

**Artículo 268.** La ley establecerá la autonomía y organización, funcionamiento, disciplina e idoneidad del servicio de defensa pública, con el objeto de asegurar la eficacia del servicio y de garantizar los beneficios de la carrera del defensor o defensora.

**Artículo 269.** La ley regulará la organización de circuitos judiciales, así como la creación y competencias de tribunales y cortes regionales a fin de promover la descentralización administrativa y jurisdiccional del Poder Judicial.

**Artículo 270.** El Comité de Postulaciones Judiciales es un órgano asesor del Poder Judicial para la selección de los candidatos o candidatas a magistrados o magistradas del Tribunal Supremo de Justicia. Igualmente, asesorará a los colegios electorales judiciales para la elección de los jueces o juezas de la jurisdicción disciplinaria. El Comité de Postulaciones Judiciales estará integrado por representantes de los diferentes sectores de la sociedad, de conformidad con lo que establezca la ley.

**Artículo 271.** En ningún caso podrá ser negada la extradición de los extranjeros o extranjeras responsables de los delitos de deslegitimación de capitales, drogas, delincuencia organizada internacional, hechos contra el patrimonio público de otros Estados o contra los derechos humanos. No prescribirán las acciones judiciales dirigidas a sancionar los delitos contra los derechos humanos, o contra el patrimonio público o el tráfico de estupefacientes. Asimismo, previa decisión judicial, serán confiscados los bienes provenientes de las actividades relacionadas con los delitos contra el patrimonio público o con el tráfico de estupefacientes.

El procedimiento referente a los delitos mencionados será público, oral y breve, respetándose el debido proceso, estando facultada la autoridad judicial competente para dictar las medidas cautelares preventivas necesarias contra bienes propiedad del imputado o de sus interpósitas personas, a los fines de garantizar su eventual responsabilidad civil.

**Artículo 272.** El Estado garantizará un sistema penitenciario que asegure la rehabilitación del interno o interna y el respeto a sus derechos humanos. Para ello, los establecimientos penitenciarios contarán con espacios para el trabajo, el estudio, el deporte y la recreación; funcionarán bajo la dirección de penitenciaristas profesionales con credenciales académicas universitarias y se regirán por una administración descentralizada, a cargo de los gobiernos estadales o municipales, pudiendo ser sometidos a modalidades de privatización. En general, se preferirá en ellos el régimen abierto y el carácter de colonias agrícolas penitenciarias. En todo caso, las fórmulas de cumplimiento de penas no privativas de la libertad se aplicarán con preferencia a las medidas de naturaleza reclusoria. El Estado creará las instituciones indispensables para la asistencia pospenitenciaria que posibilite la reinserción social del exinterno o exinterna y propiciará la creación de un ente penitenciario con carácter autónomo y con personal exclusivamente técnico.

## Capítulo IV
## Del Poder Ciudadano

### Sección primera: disposiciones generales

**Artículo 273.** El Poder Ciudadano se ejerce por el Consejo Moral Republicano integrado por el Defensor o Defensora del Pueblo, el Fiscal o la Fiscal General y el Contralor o Contralora General de la República.

Los órganos del Poder Ciudadano son la Defensoría del Pueblo, el Ministerio Público y la Contraloría General de la República, uno o una de cuyos o cuyas titulares será designado o designada por el Consejo Moral Republicano como su Presidente o Presidenta por períodos de un año, pudiendo ser reelegido o reelegida.

El Poder Ciudadano es independiente y sus órganos gozan de autonomía funcional, financiera y administrativa. A tal efecto, dentro del presupuesto general del Estado se le asignará una partida anual variable.

Su organización y funcionamiento se establecerá en ley orgánica.

**Artículo 274.** Los órganos que ejercen el Poder Ciudadano tienen a su cargo, de conformidad con esta Constitución y con la ley, prevenir, investigar y sancionar los hechos que atenten contra la ética pública y la moral administrativa; velar por la buena gestión y la legalidad en el uso del patrimonio público, el cumplimiento y la aplicación del principio de la legalidad en toda la actividad administrativa del Estado; e, igualmente, promover la educación como proceso creador de la ciudadanía, así como la solidaridad, la libertad, la democracia, la responsabilidad social y el trabajo.

**Artículo 275.** Los o las representantes del Consejo Moral Republicano formularán a las autoridades, funcionarios o funcionarias de la Administración Pública, las advertencias sobre las faltas en el cumplimiento de sus obligaciones legales. De no acatarse estas advertencias, el Consejo Moral Republicano podrá imponer las sanciones establecidas en la ley. En caso de contumacia, el Presidente o Presidenta del Consejo Moral Republicano presentará un informe al órgano o dependencia al cual esté adscrito o adscrita el funcionario público o la funcionaria pública, para que esa instancia tome los correctivos de acuerdo con el caso, sin perjuicio de las sanciones a que hubiere lugar de conformidad con la ley.

**Artículo 276.** El Presidente o Presidenta del Consejo Moral Republicano y los o las titulares de los órganos del Poder Ciudadano presentarán un informe anual ante la Asamblea Nacional en sesión plenaria. Así mismo, presentarán los informes que en cualquier momento les sean solicitados por la Asamblea Nacional.

Tanto los informes ordinarios como los extraordinarios se publicarán.

**Artículo 277.** Todos los funcionarios o funcionarias de la Administración Pública están obligados u obligadas, bajo las sanciones que establezca la ley, a colaborar con carácter preferente y urgente con los o las representantes del Consejo Moral Republicano en sus investigaciones. Éste podrá solicitarles las declaraciones y documentos que consideren necesarios para el desarrollo de sus funciones, incluidos aquellos que hayan sido clasificados o catalogados con carácter confidencial o secreto de acuerdo con la ley. En todo caso, el Poder Ciudadano sólo podrá suministrar la información contenida en documentos confidenciales o secretos mediante los procedimientos que establezca la ley.

**Artículo 278.** El Consejo Moral Republicano promoverá todas aquellas actividades pedagógicas dirigidas al conocimiento y estudio de esta Constitución, al amor a la patria, a las virtudes cívicas y democráticas, a los valores trascendentales de la República y a la observancia y respeto de los derechos humanos.

**Artículo 279.** El Consejo Moral Republicano convocará un Comité de Evaluación de Postulaciones del Poder Ciudadano, el cual estará integrado por representantes de diversos sectores de la sociedad; adelantará un proceso público de cuyo resultado se obtendrá una terna por cada órgano del Poder Ciudadano, la cual será sometida a la consideración de la Asamblea Nacional. Esta, mediante el voto favorable de las dos terceras partes de sus integrantes, escogerá en un lapso no mayor de treinta días continuos, al o a la titular del órgano del Poder Ciudadano que esté en consideración. Si concluido este lapso no hay acuerdo en la Asamblea Nacional, el Poder Electoral someterá la terna a consulta popular.

En caso de no haber sido convocado el Comité de Evaluación de Postulaciones del Poder Ciudadano, la Asamblea Nacional procederá, dentro del plazo que determine la ley, a la designación del titular o la titular del órgano del Poder Ciudadano correspondiente.

Los o las integrantes del Poder Ciudadano serán removidos o removidas por la Asamblea Nacional, previo pronunciamiento del Tribunal Supremo de Justicia, de acuerdo con lo establecido en la ley.

### Sección segunda: de la Defensoría del Pueblo

**Artículo 280.** La Defensoría del Pueblo tiene a su cargo la promoción, defensa y vigilancia de los derechos y garantías establecidos en esta Constitución y en los tratados internacionales sobre derechos humanos, además de los intereses legítimos, colectivos o difusos de los ciudadanos y ciudadanas.

La Defensoría del Pueblo actuará bajo la dirección y responsabilidad del Defensor o Defensora del Pueblo, quien será designado o designada por un único período de siete años.

Para ser Defensor o Defensora del Pueblo se requiere ser venezolano o venezolana por nacimiento y sin otra nacionalidad, mayor de treinta años, con manifiesta y demostrada competencia en materia de derechos humanos y cumplir con las exigencias de honorabilidad, ética y moral que establezca la ley. Las faltas absolutas o temporales del Defensor o Defensora del Pueblo serán cubiertas de acuerdo con lo dispuesto en la ley.

**Artículo 281.** Son atribuciones del Defensor o Defensora del Pueblo:

1. Velar por el efectivo respeto y garantía de los derechos humanos reconocidos en esta Constitución y en los tratados, convenios y acuerdos internacionales sobre derechos humanos ratificados por la República, investigando de oficio o a instancia de parte las denuncias que lleguen a su conocimiento.

2. Velar por el correcto funcionamiento de los servicios públicos, amparar y proteger los derechos e intereses legítimos, colectivos o difusos de las personas, contra las arbitrariedades, desviaciones de poder y errores cometidos en la prestación de los mismos, interponiendo cuando fuere

procedente las acciones necesarias para exigir al Estado el resarcimiento a las personas de los daños y perjuicios que les sean ocasionados con motivo del funcionamiento de los servicios públicos.

3. Interponer las acciones de inconstitucionalidad, amparo, hábeas corpus, hábeas data y las demás acciones o recursos necesarios para ejercer las atribuciones señaladas en los numerales anteriores, cuando fuere procedente de conformidad con la ley.

4. Instar al Fiscal o a la Fiscal General de la República para que intente las acciones o recursos a que hubiere lugar contra los funcionarios públicos o funcionarias públicas, responsables de la violación o menoscabo de los derechos humanos.

5. Solicitar al Consejo Moral Republicano que adopte las medidas a que hubiere lugar respecto a los funcionarios públicos o funcionarias públicas responsables de la violación o menoscabo de los derechos humanos.

6. Solicitar ante el órgano competente la aplicación de los correctivos y las sanciones a que hubiere lugar por la violación de los derechos del público consumidor y usuario, de conformidad con la ley.

7. Presentar ante los órganos legislativos municipales, estadales o nacionales, proyectos de ley u otras iniciativas para la protección progresiva de los derechos humanos.

8. Velar por los derechos de los pueblos indígenas y ejercer las acciones necesarias para su garantía y efectiva protección.

9. Visitar e inspeccionar las dependencias y establecimientos de los órganos del Estado, a fin de garantizar la protección de los derechos humanos.

10. Formular ante los órganos correspondientes las recomendaciones y observaciones necesarias para la eficaz protección de los derechos humanos, en virtud de lo cual desarrollará mecanismos de comunicación permanente con órganos públicos o privados, nacionales e internacionales, de protección y defensa de los derechos humanos.

11. Promover y ejecutar políticas para la difusión y efectiva protección de los derechos humanos.

12. Las demás que establezcan esta Constitución y la ley.

**Artículo 282.** El Defensor o Defensora del Pueblo gozará de inmunidad en el ejercicio de sus funciones y, por lo tanto, no podrá ser perseguido o perseguida, detenido o detenida, ni enjuiciado o enjuiciada por actos relacionados con el ejercicio de sus funciones. En cualquier caso concocerá de manera privativa el Tribunal Supremo de Justicia.

**Artículo 283.** La Ley determinará lo relativo a la organización y funcionamiento de la Defensoría del Pueblo en los ámbitos municipal, estadal, nacional y especial. Su actividad se regirá por los principios de gratuidad, accesibilidad, celeridad, informalidad e impulso de oficio.

*Sección tercera: del Ministerio Público*

**Artículo 284.** El Ministerio Público estará bajo la dirección y responsabilidad del Fiscal o la Fiscal General de la República, quien ejercerá sus atribuciones directamente con el auxilio de los funcionarios o funcionarias que determine la ley.

Para ser Fiscal General de la República se requieren las mismas condiciones de elegibilidad de los magistrados o magistradas del Tribunal Supremo de Justicia. El Fiscal o la Fiscal General de la República será designado o designada por un período de siete años.

**Artículo 285.** Son atribuciones del Ministerio Público:

1. Garantizar en los procesos judiciales el respeto a los derechos y garantías constitucionales, así como a los tratados, convenios y acuerdos internacionales suscritos por la República.

2. Garantizar la celeridad y buena marcha de la administración de justicia, el juicio previo y el debido proceso.

3. Ordenar y dirigir la investigación penal de la perpetración de los hechos punibles para hacer constar su comisión con todas las circunstancias que puedan influir en la calificación y responsabilidad de los autores o las autoras y demás participantes, así como el aseguramiento de los objetos activos y pasivos relacionados con la perpetración.

4. Ejercer en nombre del Estado la acción penal en los casos en que para intentarla o proseguirla no fuere necesaria instancia de parte, salvo las excepciones establecidas en la ley.

5. Intentar las acciones a que hubiere lugar para hacer efectiva la responsabilidad civil, laboral, militar, penal, administrativa o disciplinaria en que hubieren incurrido los funcionarios o funcionarias del sector público, con motivo del ejercicio de sus funciones.

6. Las demás que establezcan esta Constitución y la ley.

Estas atribuciones no menoscaban el ejercicio de los derechos y acciones que correspondan a los o las particulares o a otros funcionarios o funcionarias de acuerdo con esta Constitución y la ley.

**Artículo 286.** La ley determinará lo relativo a la organización y funcionamiento del Ministerio Público en los ámbitos municipal, estadal y nacional y proveerá lo conducente para asegurar la idoneidad, probidad y estabilidad de los fiscales o las fiscales del Ministerio Público. Asimismo, establecerá las normas para garantizar un sistema de carrera para el ejercicio de su función.

*Sección cuarta: de la Contraloría General de la República*

**Artículo 287.** La Contraloría General de la República es el órgano de control, vigilancia y fiscalización de los ingresos, gastos, bienes públicos y bienes nacionales, así como de las operaciones relativas a los mismos. Goza de autonomía funcional, administrativa y organizativa, y orienta su actuación a las funciones de inspección de los organismos y entidades sujetas a su control.

**Artículo 288.** La Contraloría General de la República estará bajo la dirección y responsabilidad del Contralor o Contralora General de la República, quien debe ser venezolano o venezolana por nacimiento y sin otra nacionalidad, mayor de treinta años y con probada aptitud y experiencia para el ejercicio del cargo.

El Contralor o Contralora General de la República será designado o designada para un período de siete años.

**Artículo 289.** Son atribuciones de la Contraloría General de la República:

1. Ejercer el control, la vigilancia y fiscalización de los ingresos, gastos y bienes públicos, así como las operaciones relativas a los mismos, sin perjuicio de las facultades que se atribuyan a otros órganos, en el caso de los Estados y Municipios, de conformidad con la ley.

2. Controlar la deuda pública, sin perjuicio de las facultades que se atribuyan a otros órganos en el caso de los Estados y Municipios, de conformidad con la ley.

3. Inspeccionar y fiscalizar los órganos, entidades y personas jurídicas del sector público sometidos a su control; practicar fiscalizaciones, disponer el inicio de investigaciones sobre irregularidades contra el patrimonio público, así como dictar las medidas, imponer los reparos y aplicar las sanciones administrativas a que haya lugar de conformidad con la ley.

4. Instar al Fiscal o a la Fiscal de la República a que ejerzan las acciones judiciales a que hubiere lugar con motivo de las infracciones y delitos cometidos contra el patrimonio público y de los cuales tenga conocimiento en el ejercicio de sus atribuciones.

5. Ejercer el control de gestión y evaluar el cumplimiento y resultado de las decisiones y políticas públicas de los órganos, entidades y personas jurídicas del sector público sujetos a su control, relacionadas con sus ingresos, gastos y bienes.

6. Las demás que establezcan esta Constitución y la ley.

**Artículo 290.** La ley determinará lo relativo a la organización y funcionamiento de la Contraloría General de la República y del sistema nacional de control fiscal.

**Artículo 291.** La Contraloría General de la Fuerza Armada Nacional es parte integrante del sistema nacional de control. Tendrá a su cargo la vigilancia, control y fiscalización de los ingresos, gastos y bienes públicos afectos a la Fuerza Armada Nacional y sus órganos adscritos, sin menoscabo del alcance y competencia de la Contraloría General de la República. Su organización y funcionamiento lo determinará la ley respectiva y estará bajo la dirección y responsabilidad del Contralor o Contralora General de la Fuerza Armada Nacional, quien será designado o designada mediante concurso de oposición.

*Capítulo V*
*Del Poder Electoral*

**Artículo 292.** El Poder Electoral se ejerce por el Consejo Nacional Electoral como ente rector; y son organismos subordinados a éste, la Junta Electoral Nacional, la Comisión de Registro Civil y Electoral y la Comisión de Participación Política y Financiamiento, con la organización y el funcionamiento que establezca la ley orgánica respectiva.

**Artículo 293.** El Poder Electoral tiene por funciones:

1. Reglamentar las leyes electorales y resolver las dudas y vacíos que éstas susciten o contengan.

2. Formular su presupuesto, el cual tramitará directamente ante la Asamblea Nacional y administrará autónomamente.

3. Dictar directivas vinculantes en materia de financiamiento y publicidad político-electorales y aplicar sanciones cuando no sean acatadas.

4. Declarar la nulidad total o parcial de las elecciones.

5. La organización, administración, dirección y vigilancia de todos los actos relativos a la elección de los cargos de representación popular de los poderes públicos, así como de los referendos.

6. Organizar las elecciones de sindicatos, gremios profesionales y organizaciones con fines políticos en los términos que señale la ley. Así mismo, podrán organizar procesos electorales de otras organizaciones de la sociedad civil a solicitud de éstas, o por orden de la Sala Electoral del Tribunal Supremo de Justicia. Las corporaciones, entidades y organizaciones aquí referidas cubrirán los costos de sus procesos eleccionarios.

7. Mantener, organizar, dirigir y supervisar el Registro Civil y Electoral.

8. Organizar la inscripción y registro de las organizaciones con fines políticos y velar porque éstas cumplan las disposiciones sobre su régimen establecidas en la Constitución y en la ley. En especial, decidirá sobre las solicitudes de constitución, renovación y cancelación de organizaciones con fines políticos, la determinación de sus autoridades legítimas y sus denominaciones provisionales, colores y símbolos.

9. Controlar, regular e investigar los fondos de financiamiento de las organizaciones con fines políticos.

10. Las demás que determine la ley.

Los órganos del Poder Electoral garantizarán la igualdad, confiabilidad, imparcialidad, transparencia y eficiencia de los procesos electorales, así como la aplicación de la personalización del sufragio y la representación proporcional.

**Artículo 294.** Los órganos del Poder Electoral se rigen por los principios de independencia orgánica, autonomía funcional y presupuestaria, despartidización de los organismos electorales, imparcialidad y participación ciudadana; descentralización de la administración electoral, transparencia y celeridad del acto de votación y escrutinios.

**Artículo 295.** El Comité de Postulaciones Electorales de candidatos o candidatas a integrantes del Consejo Nacional Electoral estará integrado por representantes de los diferentes sectores de la sociedad, de conformidad con lo que establezca la ley.

**Artículo 296.** El Consejo Nacional Electoral estará integrado por cinco personas no vinculadas a organizaciones con fines políticos; tres de ellos o ellas serán postuladas o postuladas por la sociedad civil, uno o una por las facultades de ciencias jurídicas y políticas de las universidades nacionales y uno o una por el Poder Ciudadano.

Los o las tres integrantes postulados o postuladas por la sociedad civil tendrán seis suplentes en secuencia ordinal y cada designado o designada por las universidades y el Poder Ciudadano tendrá dos suplentes, respectivamente. La Junta Nacional Electoral, la Comisión de Registro Civil y Electoral y la Comisión de Participación Política y Financiamiento, serán presididas cada una por un o una integrante postulado o postulada por la sociedad civil. Los o las integrantes del Consejo Nacional Electoral durarán siete años en sus funciones y serán elegidos o elegidas por separado: los tres postulados o postuladas por la sociedad civil al inicio de cada período de la Asamblea Nacional, y los otros dos a la mitad del mismo.

Los o las integrantes del Consejo Nacional Electoral serán designados o designadas por la Asamblea Nacional con el voto de las dos terceras partes de sus integrantes. Los o las integrantes del Consejo Nacional Electoral escogerán de su seno a su Presidente o Presidenta, de conformidad con la ley.

Los o las integrantes del Consejo Nacional Electoral serán removidos o removidas por la Asamblea Nacional, previo pronunciamiento del Tribunal Supremo de Justicia.

**Artículo 297.** La jurisdicción contenciosoelectoral será ejercida por la Sala Electoral del Tribunal Supremo de Justicia y los demás tribunales que determine la ley.

**Artículo 298.** La ley que regule los procesos electorales no podrá modificarse en forma alguna en el lapso comprendido entre el día de la elección y los seis meses inmediatamente anteriores a la misma.

**TÍTULO VI**
**DEL SISTEMA SOCIOECONÓMICO**

**Capítulo I**
*Del régimen socioeconómico y de la función del Estado en la economía*

**Artículo 299.** El régimen socioeconómico de la República Bolivariana de Venezuela se fundamenta en los principios de justicia social, democracia, eficiencia, libre competencia, protección del ambiente, productividad y solidaridad, a los fines de asegurar el desarrollo humano integral y una existencia digna y provechosa para la colectividad. El Estado, conjuntamente con la iniciativa privada, promoverá el desarrollo armónico de la economía nacional con el fin de generar fuentes de trabajo, alto valor agregado nacional, elevar el nivel de vida de la población y fortalecer la soberanía económica del país, garantizando la seguridad jurídica, solidez, dinamismo, sustentabilidad, permanencia y equidad del crecimiento de la economía, para lograr una justa distribución de la riqueza mediante una planificación estratégica democrática, participativa y de consulta abierta.

**Artículo 300.** La ley nacional establecerá las condiciones para la creación de entidades funcionalmente descentralizadas para la realización de actividades sociales o empresariales, con el objeto de asegurar la razonable productividad económica y social de los recursos públicos que en ellas se invierten.

**Artículo 301.** El Estado se reserva el uso de la política comercial para defender las actividades económicas de las empresas nacionales públicas y privadas. No se podrá otorgar a personas, empresas u organismos extranjeros regímenes más beneficiosos que los establecidos para los nacionales. La inversión extranjera está sujeta a las mismas condiciones que la inversión nacional.

**Artículo 302.** El Estado se reserva, mediante la ley orgánica respectiva, y por razones de conveniencia nacional, la actividad petrolera y otras industrias, explotaciones, servicios y bienes de interés público y de carácter estratégico. El Estado promoverá la manufactura nacional de materias primas provenientes de la explotación de los recursos naturales no renovables, con el fin de asimilar, crear e innovar tecnologías, generar empleo y crecimiento económico, y crear riqueza y bienestar para el pueblo.

**Artículo 303.** Por razones de soberanía económica, política y de estrategia nacional, el Estado conservará la totalidad de las acciones de Petróleos de Venezuela, S.A., o del ente creado para el manejo de la industria petrolera, exceptuando las de las filiales, asociaciones estratégicas, empresas y cualquier otra que se haya constituido o se constituya como consecuencia del desarrollo de negocios de Petróleos de Venezuela, S.A.

**Artículo 304.** Todas las aguas son bienes de dominio público de la Nación, insustituibles para la vida y el desarrollo. La ley establecerá las disposiciones necesarias a fin de garantizar su protección, aprovechamiento y recuperación, respetando las fases del ciclo hidrológico y los criterios de ordenación del territorio.

**Artículo 305.** El Estado promoverá la agricultura sustentable como base estratégica del desarrollo rural integral a fin de garantizar la seguridad alimentaria de la población; entendida como la disponibilidad suficiente y estable de alimentos en el ámbito nacional y el acceso oportuno y permanente a éstos por parte del público consumidor. La seguridad alimentaria se alcanzará desarrollando y privilegiando la producción agropecuaria interna, entendiéndose como tal la proveniente de las actividades agrícola, pecuaria, pesquera y acuícola. La producción de alimentos es de interés nacional y fundamental para el desarrollo económico y social de la Nación. A tales fines, el Estado dictará las medidas de orden financiero, comercial, transferencia tecnológica, tenencia de la tierra, infraestructura, capacitación de mano de obra y otras que fueren necesarias para alcanzar niveles estratégicos de autoabastecimiento. Además, promoverá las acciones en el marco de la economía nacional e internacional para compensar las desventajas propias de la actividad agrícola.

El Estado protegerá los asentamientos y comunidades de pescadores o pescadoras artesanales, así como sus caladeros de pesca en aguas continentales y los próximos a la línea de costa definidos en la ley.

**Artículo 306.** El Estado promoverá las condiciones para el desarrollo rural integral, con el propósito de generar empleo y garantizar a la población campesina un nivel adecuado de bienestar, así como su incorporación al desarrollo nacional. Igualmente fomentará la actividad agrícola y el uso óptimo de la tierra mediante la dotación de las obras de infraestructura, insumos, créditos, servicios de capacitación y asistencia técnica.

**Artículo 307.** El régimen latifundista es contrario al interés social. La ley dispondrá lo conducente en materia tributaria para gravar las tierras ociosas y establecerá las medidas necesarias para su transformación en unidades económicas productivas, rescatando igualmente las tierras de vocación agrícola. Los campesinos o campesinas y demás productores agropecuarios y productoras agropecuarias tienen derecho a la propiedad de la tierra, en los casos y formas especificados en la ley respectiva. El Estado protegerá y promoverá las formas asociativas y particulares de propiedad para garantizar la producción agrícola. El Estado velará por la ordenación sustentable de las tierras de vocación agrícola para asegurar su potencial agroalimentario.

Excepcionalmente se crearán contribuciones parafiscales con el fin de facilitar fondos para financiamiento, investigación, asistencia técnica, transferencia tecnológica y otras actividades que promuevan la productividad y la competitividad del sector agrícola. La ley regulará lo conducente a esta materia.

**Artículo 308.** El Estado protegerá y promoverá la pequeña y mediana industria, las cooperativas, las cajas de ahorro, así como también la empresa familiar, la microempresa y cualquier otra forma de asociación comunitaria para el trabajo, el ahorro y el consumo, bajo régimen de propiedad colectiva, con el fin de fortalecer el desarrollo económico del país, sustentándolo en la iniciativa popular. Se asegurará la capacitación, la asistencia técnica y el financiamiento oportuno.

**Artículo 309.** La artesanía e industrias populares típicas de la Nación gozarán de protección especial del Estado, con el fin de preservar su autenticidad, y obtendrán facilidades crediticias para promover su producción y comercialización.

**Artículo 310.** El turismo es una actividad económica de interés nacional, prioritaria para el país en su estrategia de diversificación y desarrollo sustentable. Dentro de las fundamentaciones del régimen socioeconómico previsto en esta Constitución, el Estado dictará las medidas que garanticen su desarrollo. El Estado velará por la creación y fortalecimiento del sector turístico nacional.

**Capítulo II**
*Del régimen fiscal y monetario*

**Sección primera: del régimen presupuestario**

**Artículo 311.** La gestión fiscal estará regida y será ejecutada con base en principios de eficiencia, solvencia, transparencia, responsabilidad y equilibrio fiscal. Esta se equilibrará en el marco plurianual del presupuesto, de manera que los ingresos ordinarios deben ser suficientes para cubrir los gastos ordinarios.

El Ejecutivo Nacional presentará a la Asamblea Nacional, para su sanción legal, un marco plurianual para la formulación presupuestaria que establezca los límites máximos de gasto y endeudamiento que hayan de contemplarse en los presupuestos nacionales. La ley establecerá las características de este marco, los requisitos para su modificación y los términos de su cumplimiento.

El ingreso que se genere por la explotación de la riqueza del subsuelo y los minerales, en general, propenderá a financiar la inversión real productiva, la educación y la salud.

Los principios y disposiciones establecidos para la administración económica y financiera nacional, regularán la de los Estados y Municipios en cuanto sean aplicables.

**Artículo 312.** La ley fijará límites al endeudamiento público de acuerdo con un nivel prudente en relación con el tamaño de la economía, la inversión reproductiva y la capacidad de generar ingresos para cubrir el servicio de la deuda pública. Las operaciones de crédito público requerirán, para su validez, una ley especial que las autorice, salvo las excepciones que establezca la ley orgánica. La ley especial indicará las modalidades de las operaciones y autorizará los créditos presupuestarios correspondientes en la respectiva ley de presupuesto.

La ley especial de endeudamiento anual será presentada a la Asamblea Nacional conjuntamente con la Ley de Presupuesto.

El Estado no reconocerá otras obligaciones que las contraídas por órganos legítimos del Poder Nacional, de acuerdo con la ley.

*Artículo 313.* La administración económica y financiera del Estado se regirá por un presupuesto aprobado anualmente por ley. El Ejecutivo Nacional presentará a la Asamblea Nacional, en la oportunidad que señale la ley orgánica, el proyecto de Ley de Presupuesto. Si el Poder Ejecutivo, por cualquier causa, no hubiese presentado a la Asamblea Nacional el proyecto de Ley de Presupuesto dentro del plazo establecido legalmente, o el mismo fuere rechazado por ésta, seguirá vigente el presupuesto del ejercicio fiscal en curso.

La Asamblea Nacional podrá alterar las partidas presupuestarias, pero no autorizará medidas que conduzcan a la disminución de los ingresos públicos ni gastos que excedan el monto de las estimaciones de ingresos del proyecto de Ley de Presupuesto.

Con la presentación del marco plurianual del presupuesto, la ley especial de endeudamiento y el presupuesto anual, el Ejecutivo Nacional hará explícitos los objetivos de largo plazo para la política fiscal, y explicará cómo dichos objetivos serán logrados, de acuerdo con los principios de responsabilidad y equilibrio fiscal.

*Artículo 314.* No se hará ningún tipo de gasto que no haya sido previsto en la Ley de Presupuesto. Sólo podrán decretarse créditos adicionales al presupuesto para gastos necesarios no previstos o cuyas partidas resulten insuficientes, siempre que el Tesoro Nacional cuente con recursos para atender la respectiva erogación; a este efecto, se requerirá previamente el voto favorable del Consejo de Ministros y la autorización de la Asamblea Nacional o, en su defecto, de la Comisión Delegada.

*Artículo 315.* En los presupuestos públicos anuales de gastos, en todos los niveles de gobierno, se establecerá de manera clara, para cada crédito presupuestario, el objetivo específico a que esté dirigido, los resultados concretos que se espera obtener y los funcionarios públicos o funcionarias públicas responsables para el logro de tales resultados. Estos se establecerán en términos cuantitativos, mediante indicadores de desempeño, siempre que ello sea técnicamente posible. El Poder Ejecutivo, dentro de los seis meses posteriores al vencimiento del ejercicio anual, presentará a la Asamblea Nacional la rendición de cuentas y el balance de la ejecución presupuestaria correspondiente a dicho ejercicio.

#### Sección segunda: del sistema tributario

*Artículo 316.* El sistema tributario procurará la justa distribución de las cargas públicas según la capacidad económica del o la contribuyente, atendiendo al principio de progresividad, así como la protección de la economía nacional y la elevación del nivel de vida de la población; para ello se sustentará en un sistema eficiente para la recaudación de los tributos.

*Artículo 317.* No podrán cobrarse impuestos, tasas, ni contribuciones que no estén establecidos en la ley, ni concederse exenciones o rebajas, ni otras formas de incentivos fiscales, sino en los casos previstos por las leyes. Ningún tributo puede tener efecto confiscatorio.

No podrán establecerse obligaciones tributarias pagaderas en servicios personales. La evasión fiscal, sin perjuicio de otras sanciones establecidas por la ley, podrá ser castigada penalmente.

En el caso de los funcionarios públicos o funcionarias públicas se establecerá el doble de la pena.

Toda ley tributaria fijará su lapso de entrada en vigencia. En ausencia del mismo se entenderá fijado en sesenta días continuos. Esta disposición no limita las facultades extraordinarias que acuerde el Ejecutivo Nacional en los casos previstos por esta Constitución.

La administración tributaria nacional gozará de autonomía técnica, funcional y financiera de acuerdo con lo aprobado por la Asamblea Nacional y su máxima autoridad será designada por el Presidente o Presidenta de la República, de conformidad con las normas previstas en la ley.

#### Sección tercera: del sistema monetario nacional

*Artículo 318.* Las competencias monetarias del Poder Nacional serán ejercidas de manera exclusiva y obligatoria por el Banco Central de Venezuela. El objetivo fundamental del Banco Central de Venezuela es lograr la estabilidad de precios y preservar el valor interno y externo de la unidad monetaria. La unidad monetaria de la República Bolivariana de Venezuela es el bolívar. En caso de que se instituya una moneda común en el marco de la integración latinoamericana y caribeña, podrá adoptarse la moneda que sea objeto de un tratado que suscriba la República.

El Banco Central de Venezuela es persona jurídica de derecho público con autonomía para la formulación y el ejercicio de las políticas de su competencia. El Banco Central de Venezuela ejercerá sus funciones en coordinación con la política económica general, para alcanzar los objetivos superiores del Estado y la Nación.

Para el adecuado cumplimiento de su objetivo, el Banco Central de Venezuela tendrá entre sus funciones las de formular y ejecutar la política monetaria, participar en el diseño y ejecutar la política cambiaria, regular la moneda, el crédito y las tasas de interés, administrar las reservas internacionales, y todas aquellas que establezca la ley.

*Artículo 319.* El Banco Central de Venezuela se regirá por el principio de responsabilidad pública, a cuyo efecto rendirá cuenta de las actuaciones, metas y resultados de sus políticas ante la Asamblea Nacional, de acuerdo con la ley. También rendirá informes periódicos sobre el comportamiento de las variables macroeconómicas del país y sobre los demás asuntos que se le soliciten e incluirá los análisis que permitan su evaluación. El incumplimiento sin causa justificada del objetivo o de las metas, dará lugar a la remoción del directorio y a sanciones administrativas, de acuerdo con la ley.

El Banco Central de Venezuela estará sujeto al control posterior de la Contraloría General de la República y a la inspección y vigilancia del organismo público de supervisión bancaria, el cual remitirá a la Asamblea Nacional informes de las inspecciones que realice. El presupuesto de gastos operativos del Banco Central de Venezuela requerirá la discusión y aprobación de la Asamblea Nacional y sus cuentas y balances serán objeto de auditoría externa en los términos que fije la ley.

#### Sección cuarta: de la coordinación macroeconómica

*Artículo 320.* El Estado debe promover y defender la estabilidad económica, evitar la vulnerabilidad de la economía y velar por la estabilidad monetaria y de precios, para asegurar el bienestar social.

El ministerio responsable de las finanzas y el Banco Central de Venezuela contribuirán a la armonización de la política fiscal con la política monetaria, facilitando el logro de los objetivos macroeconómicos. En el ejercicio de sus funciones, el Banco Central de Venezuela no estará subordinado a directivas del Poder Ejecutivo y no podrá convalidar o financiar políticas fiscales deficitarias.

La actuación coordinada del Poder Ejecutivo y del Banco Central de Venezuela se dará mediante un acuerdo anual de políticas, en el cual se establecerán los objetivos finales de crecimiento y sus repercusiones sociales, balance externo e inflación, concernientes a las políticas fiscal, cambiaria y monetaria; así como los niveles de las variables intermedias e instrumentales requeridos para alcanzar dichos objetivos finales. Dicho acuerdo será firmado por el Presidente o Presidenta del Banco Central de Venezuela y el o la titular del ministerio responsable de las finanzas, y se divulgará en el momento de la aprobación del presupuesto por la Asamblea Nacional. Es responsabilidad de las instituciones firmantes del acuerdo que las acciones de política sean consistentes con sus objetivos. En dicho acuerdo se especificarán los resultados esperados, las políticas y las acciones dirigidas a lograrlos. La ley establecerá las características del acuerdo anual de política económica y los mecanismos de rendición de cuentas.

*Artículo 321.* Se establecerá por ley un fondo de estabilización macroeconómica destinado a garantizar la estabilidad de los gastos del Estado en los niveles municipal, regional y nacional, ante las fluctuaciones de los ingresos ordinarios. Las reglas de funcionamiento del fondo tendrán como principios básicos la eficiencia, la equidad y la no discriminación entre las entidades públicas que aporten recursos al mismo.

### TÍTULO VII
### DE LA SEGURIDAD DE LA NACIÓN
#### Capítulo I
#### Disposiciones generales

*Artículo 322.* La seguridad de la Nación es competencia esencial y responsabilidad del Estado, fundamentada en el desarrollo integral de ésta y su defensa es responsabilidad de los venezolanos y venezolanas; también de las personas naturales y jurídicas, tanto de derecho público como de derecho privado, que se encuentren en el espacio geográfico nacional.

*Artículo 323.* El Consejo de Defensa de la Nación es el máximo órgano de consulta para la planificación y asesoramiento del Poder Público en los asuntos relacionados con la defensa integral de la Nación, su soberanía y la integridad de su espacio geográfico. A tales efectos, le corresponde también establecer el concepto estratégico de la Nación. Presidido por el Presidente o Presidenta de la República, lo conforman, además, el Vicepresidente Ejecutivo o Vicepresidenta Ejecutiva, el Presidente o Presidenta de la Asamblea Nacional, el Presidente o Presidenta del Tribunal Supremo de Justicia, el Presidente o Presidenta del Consejo Moral Republicano y los Ministros o Ministras de los sectores de la defensa, la seguridad interior, las relaciones exteriores y la planificación, y otros cuya participación se considere pertinente. La ley orgánica respectiva fijará su organización y atribuciones.

*Artículo 324.* Sólo el Estado puede poseer y usar armas de guerra. Todas las que existan, se fabriquen o se introduzcan en el país pasarán a ser propiedad de la República sin indemnización ni proceso. La Fuerza Armada Nacional será la institución competente para reglamentar y controlar, de acuerdo con la ley respectiva, la fabricación, importación, exportación, almacenamiento, tránsito, registro, control, inspección, comercio, posesión y uso de otras armas, municiones y explosivos.

*Artículo 325.* El Ejecutivo Nacional se reserva la clasificación y divulgación de aquellos asuntos que guarden relación directa con la planificación y ejecución de operaciones concernientes a la seguridad de la Nación, en los términos que la ley establezca.

#### Capítulo II
#### De los principios de seguridad de la Nación

*Artículo 326.* La seguridad de la Nación se fundamenta en la corresponsabilidad entre el Estado y la sociedad civil, para dar cumplimiento a los principios de independencia, democracia, igualdad, paz, libertad, justicia, solidaridad, promoción y conservación ambiental y afirmación de los derechos humanos, así como en la satisfacción progresiva de las necesidades individuales y colectivas de los venezolanos y venezolanas, sobre las bases de un desarrollo sustentable y productivo de plena cobertura para la comunidad nacional. El principio de la corresponsabilidad se ejerce sobre los ámbitos económico, social, político, cultural, geográfico, ambiental y militar.

*Artículo 327.* La atención de las fronteras es prioritaria en el cumplimiento y aplicación de los principios de seguridad de la Nación. A tal efecto, se establece una franja de seguridad de fronteras cuya amplitud, regímenes especiales en lo económico y social, poblamiento y utilización serán regulados por la ley,

protegiendo de manera expresa los parques nacionales, el hábitat de los pueblos indígenas allí asentados y demás áreas bajo régimen de administración especial.

### Capítulo III
### De la Fuerza Armada Nacional

**Artículo 328.** La Fuerza Armada Nacional constituye una institución esencialmente profesional, sin militancia política, organizada por el Estado para garantizar la independencia y soberanía de la Nación y asegurar la integridad del espacio geográfico, mediante la defensa militar, la cooperación en el mantenimiento del orden interno y la participación activa en el desarrollo nacional, de acuerdo con esta Constitución y con la ley. En el cumplimiento de sus funciones, está al servicio exclusivo de la Nación y en ningún caso al de persona o parcialidad política alguna. Sus pilares fundamentales son la disciplina, la obediencia y la subordinación. La Fuerza Armada Nacional está integrada por el Ejército, la Armada, la Aviación y la Guardia Nacional, que funcionan de manera integral dentro del marco de su competencia para el cumplimiento de su misión, con un régimen de seguridad social integral propio, según lo establezca su respectiva ley orgánica.

**Artículo 329.** El Ejército, la Armada y la Aviación tienen como responsabilidad esencial la planificación, ejecución y control de las operaciones militares requeridas para asegurar la defensa de la Nación. La Guardia Nacional cooperará en el desarrollo de dichas operaciones y tendrá como responsabilidad básica la conducción de las operaciones exigidas para el mantenimiento del orden interno del país. La Fuerza Armada Nacional podrá ejercer las actividades de policía administrativa y de investigación penal que le atribuya la ley.

**Artículo 330.** Los o las integrantes de la Fuerza Armada Nacional en situación de actividad tienen derecho al sufragio de conformidad con la ley, sin que les esté permitido optar a cargo de elección popular, ni participar en actos de propaganda, militancia o proselitismo político.

**Artículo 331.** Los ascensos militares se obtienen por mérito, escalafón y plaza vacante. Son competencia exclusiva de la Fuerza Armada Nacional y estarán regulados por la ley respectiva.

### Capítulo IV
### De los órganos de seguridad ciudadana

**Artículo 332.** El Ejecutivo Nacional, para mantener y restablecer el orden público, proteger a los ciudadanos y ciudadanas, hogares y familias, apoyar las decisiones de las autoridades competentes y asegurar el pacífico disfrute de las garantías y derechos constitucionales, de conformidad con la ley, organizará:

1. Un cuerpo uniformado de policía nacional.
2. Un cuerpo de investigaciones científicas, penales y criminalísticas.
3. Un cuerpo de bomberos y bomberas y administración de emergencias de carácter civil.
4. Una organización de protección civil y administración de desastres.

Los órganos de seguridad ciudadana son de carácter civil y respetarán la dignidad y los derechos humanos, sin discriminación alguna.

La función de los órganos de seguridad ciudadana constituye una competencia concurrente con los Estados y Municipios en los términos establecidos en esta Constitución y en la ley.

## TÍTULO VIII
## DE LA PROTECCIÓN DE ESTA CONSTITUCIÓN

### Capítulo I
### De la garantía de esta Constitución

**Artículo 333.** Esta Constitución no perderá su vigencia si dejare de observarse por acto de fuerza o porque fuere derogada por cualquier otro medio distinto al previsto en ella.

En tal eventualidad, todo ciudadano investido o ciudadana investida o no de autoridad, tendrá el deber de colaborar en el restablecimiento de su efectiva vigencia.

**Artículo 334.** Todos los jueces o juezas de la República, en el ámbito de sus competencias y conforme a lo previsto en esta Constitución y en la ley, están en la obligación de asegurar la integridad de esta Constitución.

En caso de incompatibilidad entre esta Constitución y una ley u otra norma jurídica, se aplicarán las disposiciones constitucionales, correspondiendo a los tribunales en cualquier causa, aun de oficio, decidir lo conducente.

Corresponde exclusivamente a la Sala Constitucional del Tribunal Supremo de Justicia, como jurisdicción constitucional, declarar la nulidad de las leyes y demás actos de los órganos que ejercen el Poder Público dictados en ejecución directa e inmediata de esta Constitución o que tengan rango de ley, cuando colidan con aquella.

**Artículo 335.** El Tribunal Supremo de Justicia garantizará la supremacía y efectividad de las normas y principios constitucionales; será el máximo y último intérprete de esta Constitución y velará por su uniforme interpretación y aplicación. Las interpretaciones que establezca la Sala Constitucional sobre el contenido o alcance de las normas y principios constitucionales son vinculantes para las otras Salas del Tribunal Supremo de Justicia y demás tribunales de la República.

**Artículo 336.** Son atribuciones de la Sala Constitucional del Tribunal Supremo de Justicia:

1. Declarar la nulidad total o parcial de las leyes nacionales y demás actos con rango de ley de la Asamblea Nacional, que colidan con esta Constitución.

2. Declarar la nulidad total o parcial de las Constituciones y leyes estadales, de las ordenanzas municipales y demás actos de los cuerpos deliberantes de los Estados y Municipios dictados en ejecución directa e inmediata de esta Constitución y que colidan con ella.

3. Declarar la nulidad total o parcial de los actos con rango de ley dictados por el Ejecutivo Nacional, que colidan con esta Constitución.

4. Declarar la nulidad total o parcial de los actos en ejecución directa e inmediata de esta Constitución, dictados por cualquier otro órgano estatal en ejercicio del Poder Público, cuando colidan con ésta.

5. Verificar, a solicitud del Presidente o Presidenta de la República o de la Asamblea Nacional, la conformidad con esta Constitución de los tratados internacionales suscritos por la República, antes de su ratificación.

6. Revisar en todo caso, aun de oficio, la constitucionalidad de los decretos que declaren estados de excepción dictados por el Presidente o Presidenta de la República.

7. Declarar la inconstitucionalidad de las omisiones del poder legislativo municipal, estadal o nacional cuando haya dejado de dictar las normas o medidas indispensables para garantizar el cumplimiento de esta Constitución, o las haya dictado en forma incompleta; y establecer el plazo y, de ser necesario, los lineamientos de su corrección.

8. Resolver las colisiones que existan entre diversas disposiciones legales y declarar cuál debe prevalecer.

9. Dirimir las controversias constitucionales que se susciten entre cualesquiera de los órganos del Poder Público.

10. Revisar las sentencias definitivamente firmes de amparo constitucional y de control de constitucionalidad de leyes o normas jurídicas dictadas por los tribunales de la República, en los términos establecidos por la ley orgánica respectiva.

11. Las demás que establezcan esta Constitución y la ley.

### Capítulo II
### De los estados de excepción

**Artículo 337.** El Presidente o Presidenta de la República, en Consejo de Ministros, podrá decretar los estados de excepción. Se califican expresamente como tales las circunstancias de orden social, económico, político, natural o ecológico, que afecten gravemente la seguridad de la Nación, de las instituciones y de los ciudadanos y ciudadanas, a cuyo respecto resultan insuficientes las facultades de las cuales se disponen para hacer frente a tales hechos. En tal caso, podrán ser restringidas temporalmente las garantías consagradas en esta Constitución, salvo las referidas a los derechos a la vida, prohibición de incomunicación o tortura, el derecho al debido proceso, el derecho a la información y los demás derechos humanos intangibles.

**Artículo 338.** Podrá decretarse el estado de alarma cuando se produzcan catástrofes, calamidades públicas u otros acontecimientos similares que pongan seriamente en peligro la seguridad de la Nación, o de sus ciudadanos y ciudadanas. Dicho estado de excepción durará hasta treinta días, siendo prorrogable hasta por treinta días más.

Podrá decretarse el estado de emergencia económica cuando se susciten circunstancias económicas extraordinarias que afecten gravemente la vida económica de la Nación. Su duración será de hasta sesenta días, prorrogable por un plazo igual.

Podrá decretarse el estado de conmoción interior o exterior en caso de conflicto interno o externo, que ponga seriamente en peligro la seguridad de la Nación, de sus ciudadanos y ciudadanas, o de sus instituciones. Se prolongará hasta por noventa días, siendo prorrogable hasta por noventa días más.

La aprobación de la prórroga de los estados de excepción corresponde a la Asamblea Nacional. Una ley orgánica regulará los estados de excepción y determinará las medidas que pueden adoptarse con base en los mismos.

**Artículo 339.** El decreto que declare el estado de excepción, en el cual se regulará el ejercicio del derecho cuya garantía se restringe, será presentado, dentro de los ocho días siguientes de haberse dictado, a la Asamblea Nacional o a la Comisión Delegada, para su consideración y aprobación, y a la Sala Constitucional del Tribunal Supremo de Justicia, para que se pronuncie sobre su constitucionalidad. El decreto cumplirá con las exigencias, principios y garantías establecidos en el Pacto Internacional de Derechos Civiles y Políticos y en la Convención Americana sobre Derechos Humanos. El Presidente o Presidenta de la República podrá solicitar su prórroga por un plazo igual, y será revocado por el Ejecutivo Nacional o por la Asamblea Nacional o por su Comisión Delegada, antes del término señalado, al cesar las causas que lo motivaron.

La declaración del estado de excepción no interrumpe el funcionamiento de los órganos del Poder Público.

## TÍTULO IX
## DE LA REFORMA CONSTITUCIONAL

### Capítulo I
### De las enmiendas

**Artículo 340.** La enmienda tiene por objeto la adición o modificación de uno o varios artículos de esta Constitución, sin alterar su estructura fundamental.

**Artículo 341.** Las enmiendas a esta Constitución se tramitarán en la forma siguiente:

1. La iniciativa podrá partir del quince por ciento de los ciudadanos inscritos y las ciudadanas inscritas en el Registro Civil y Electoral; o de un treinta por ciento de los o las integrantes de la Asamblea Nacional o del Presidente o Presidenta de la República en Consejo de Ministros.

2. Cuando la iniciativa parta de la Asamblea Nacional, la enmienda requerirá la aprobación de ésta por la mayoría de sus integrantes y se discutirá, según el procedimiento establecido en esta Constitución para la formación de leyes.

3. El Poder Electoral someterá a referendo las enmiendas a los treinta días siguientes a su recepción formal.

4. Se considerarán aprobadas las enmiendas de acuerdo con lo establecido en esta Constitución y en la ley relativa al referendo aprobatorio.

5. Las enmiendas serán numeradas consecutivamente y se publicarán a continuación de esta Constitución sin alterar el texto de ésta, pero anotando al pie del artículo o artículos enmendados la referencia de número y fecha de la enmienda que lo modificó.

### Capítulo II
### De la reforma constitucional

**Artículo 342.** La reforma constitucional tiene por objeto una revisión parcial de esta Constitución y la sustitución de una o varias de sus normas que no modifiquen la estructura y principios fundamentales del texto constitucional.

La iniciativa de la reforma de esta Constitución podrán tomarla la Asamblea Nacional mediante acuerdo aprobado por el voto de la mayoría de sus integrantes; el Presidente o Presidenta de la República en Consejo de Ministros; o un número no menor del quince por ciento de los electores inscritos y electoras inscritas en el Registro Civil y Electoral que lo soliciten.

**Artículo 343.** La iniciativa de reforma constitucional será tramitada por la Asamblea Nacional en la forma siguiente:

1. El proyecto de reforma constitucional tendrá una primera discusión en el período de sesiones correspondiente a la presentación del mismo.

2. Una segunda discusión por Título o Capítulo, según fuere el caso.

3. Una tercera y última discusión artículo por artículo.

4. La Asamblea Nacional aprobará el proyecto de reforma constitucional en un plazo no mayor de dos años, contados a partir de la fecha en la cual conoció y aprobó la solicitud de reforma.

5. El proyecto de reforma se considerará aprobado con el voto de las dos terceras partes de los o las integrantes de la Asamblea Nacional.

**Artículo 344.** El proyecto de reforma constitucional aprobado por la Asamblea Nacional se someterá a referendo dentro de los treinta días siguientes a su sanción. El referendo se pronunciará en conjunto sobre la reforma, pero podrá votarse separadamente hasta una tercera parte de ella, si así lo aprobara un número no menor de una tercera parte de la Asamblea Nacional o si en la iniciativa de reforma así lo hubiere solicitado el Presidente o Presidenta de la República o un número no menor del cinco por ciento de los electores inscritos y electoras inscritas en el Registro Civil y Electoral.

**Artículo 345.** Se declarará aprobada la reforma constitucional si el número de votos afirmativos es superior al número de votos negativos. La iniciativa de reforma constitucional que no sea aprobada, no podrá presentarse de nuevo en un mismo período constitucional a la Asamblea Nacional.

**Artículo 346.** El Presidente o Presidenta de la República estará obligado u obligada a promulgar las enmiendas o reformas dentro de los diez días siguientes a su aprobación. Si no lo hiciere, se aplicará lo previsto en esta Constitución.

### Capítulo III
### De la Asamblea Nacional Constituyente

**Artículo 347.** El pueblo de Venezuela es el depositario del poder constituyente originario. En ejercicio de dicho poder, puede convocar una Asamblea Nacional Constituyente con el objeto de transformar el Estado, crear un nuevo ordenamiento jurídico y redactar una nueva Constitución.

**Artículo 348.** La iniciativa de convocatoria a la Asamblea Nacional Constituyente podrán tomarla el Presidente o Presidenta de la República en Consejo de Ministros; la Asamblea Nacional, mediante acuerdo de las dos terceras partes de sus integrantes; los Concejos Municipales en cabildo, mediante el voto de las dos terceras partes de los mismos; o el quince por ciento de los electores inscritos y electoras inscritas en el Registro Civil y Electoral.

**Artículo 349.** El Presidente o Presidenta de la República no podrá objetar la nueva Constitución.

Los poderes constituidos no podrán en forma alguna impedir las decisiones de la Asamblea Nacional Constituyente.

Una vez promulgada la nueva Constitución, ésta se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela o en la Gaceta de la Asamblea Nacional Constituyente.

**Artículo 350.** El pueblo de Venezuela, fiel a su tradición republicana, a su lucha por la independencia, la paz y la libertad, desconocerá cualquier régimen, legislación o autoridad que contraríe los valores, principios y garantías democráticos o menoscabe los derechos humanos.

### DISPOSICIÓN DEROGATORIA

**Única.** Queda derogada la Constitución de la República de Venezuela decretada el veintitrés de enero de mil novecientos sesenta y uno. El resto del ordenamiento jurídico mantendrá su vigencia en todo lo que no contradiga esta Constitución.

### DISPOSICIONES TRANSITORIAS

**Primera.** La ley especial sobre el régimen del Distrito Capital, prevista en el artículo 18 de esta Constitución, será aprobada por la Asamblea Nacional Constituyente y preservará la integridad territorial del Estado Miranda. Mientras se aprueba la ley especial, se mantiene en vigencia el régimen previsto en la Ley Orgánica del Distrito Federal y en la Ley Orgánica de Régimen Municipal.

**Segunda.** Mientras se dicta la ley prevista en el artículo 38 de esta Constitución, sobre adquisición, opción, renuncia y recuperación de la nacionalidad, se considerarán con domicilio en Venezuela los extranjeros o extranjeras que habiendo ingresado y permanecido legalmente en el territorio nacional, hayan declarado su intención de fijar domicilio en el país, tengan medios lícitos de vida y hayan residido en Venezuela ininterrumpidamente durante dos años.

Por residencia se entenderá la estadía en el país con ánimo de permanecer en él. Las declaraciones de voluntad previstas en los artículos 32, 33 y 36 de esta Constitución se harán en forma auténtica por la persona interesada cuando sea mayor de edad, o por su representante legal, si no ha cumplido veintiún años.

**Tercera.** La Asamblea Nacional, dentro de los primeros seis meses siguientes a su instalación, aprobará:

1. Una reforma parcial del Código Penal para incluir el delito de desaparición forzada de personas, previsto en el artículo 45 de esta Constitución. Mientras no se apruebe esta reforma se aplicará, en lo que sea posible, la Convención Interamericana Sobre Desaparición Forzada de Personas.

2. Una ley orgánica sobre estados de excepción.

3. Una ley especial para establecer las condiciones y características de un régimen especial para los Municipios José Antonio Páez y Rómulo Gallegos, del Estado Apure. Para la elaboración de esta ley, se oirá la opinión del Presidente o Presidenta de la República, de la Fuerza Armada Nacional, de la representación que designe el Estado en cuestión y demás instituciones involucradas en la problemática fronteriza.

**Cuarta.** Dentro del primer año, contado a partir de su instalación, la Asamblea Nacional aprobará:

1. La legislación sobre la sanción a la tortura, ya sea mediante ley especial o reforma del Código Penal.

2. Una ley orgánica sobre refugiados o refugiadas y asilados o asiladas, acorde con los términos de esta Constitución y los tratados internacionales sobre la materia ratificados por Venezuela.

3. Mediante la reforma de la Ley Orgánica del Trabajo, un nuevo régimen para el derecho a prestaciones sociales reconocido en el artículo 92 de esta Constitución, el cual integrará el pago de este derecho de forma proporcional al tiempo de servicio y calculado de conformidad con el último salario devengado, estableciendo un lapso para su prescripción de diez años. Durante este lapso, mientras no entre en vigencia la reforma de la ley seguirá aplicándose de forma transitoria el régimen de la prestación de antigüedad establecido en la Ley Orgánica del Trabajo vigente. Asimismo, contemplará un conjunto de normas integrales que regulen la jornada laboral y propendan a su disminución progresiva, en los términos previstos en los acuerdos y convenios de la Organización Internacional del Trabajo suscritos por la República.

4. Una ley orgánica Procesal del Trabajo que garantice el funcionamiento de una jurisdicción laboral autónoma y especializada, y la protección del trabajador o trabajadora en los términos previstos en esta Constitución y en las leyes. La Ley Orgánica Procesal del Trabajo estará orientada por los principios de gratuidad, celeridad, oralidad, inmediatez, prioridad de la realidad de los hechos, la equidad y rectoría del juez o jueza en el proceso.

5. La legislación referida al Sistema Judicial, a la Administración Pública Nacional, al Poder Ciudadano, al Poder Electoral y a la legislación tributaria, de régimen presupuestario y de crédito público.

Una ley orgánica sobre la defensa pública. Hasta tanto se sancione dicha ley, la Comisión de Funcionamiento y Reestructuración del Sistema Judicial estará a cargo del desarrollo y operatividad efectiva del Sistema Autónomo de la Defensa Pública, a los fines de garantizar el derecho a la defensa.

6. Una ley que desarrolle la hacienda pública estadal estableciendo, con apego a los principios y normas de esta Constitución, los tributos que la compongan, los mecanismos de su aplicación y las disposiciones que la regulen.

7. La legislación que desarrolle los principios constitucionales sobre el régimen municipal. De conformidad con ella, los órganos legislativos de los Estados procederán a sancionar los instrumentos normativos que correspondan a la potestad organizadora que tienen asignada con respecto a los Municipios y demás entidades locales y a la división político territorial en cada jurisdicción. Se mantienen los Municipios y parroquias existentes hasta la sanción al nuevo régimen previsto en dicho ordenamiento.

8. La ley a la cual se ajustará el Banco Central de Venezuela. Dicha ley fijará, entre otros aspectos, el alcance de las funciones y forma de organización

del instituto; el funcionamiento, período, forma de elección, remoción, régimen de incompatibilidades y requisitos para la designación de su Presidente o Presidenta y Directores o Directoras; las reglas contables para la constitución de sus reservas y el destino de sus utilidades; la auditoría externa anual de las cuentas y balances, a cargo de firmas especializadas, seleccionadas por el Ejecutivo Nacional; y el control posterior por parte de la Contraloría General de la República en lo que se refiere a la legalidad, sinceridad, oportunidad, eficacia y eficiencia de la gestión administrativa del Banco Central de Venezuela.

La ley establecerá que el Presidente o Presidenta y demás integrantes del Directorio del Banco Central de Venezuela representarán exclusivamente el interés de la Nación, a cuyo efecto fijará un procedimiento público de evaluación de los méritos y credenciales de las personas postuladas a dichos cargos.

La ley establecerá que el Poder Ejecutivo corresponderá la designación del Presidente o Presidenta del Banco Central de Venezuela y, al menos, de la mitad de sus Directores o Directoras; y establecerá los términos de participación del Poder Legislativo Nacional en la designación y ratificación de estas autoridades.

9. La ley del cuerpo de policía nacional. En dicha ley se establecerá el mecanismo de integración del Cuerpo Técnico de Vigilancia del Tránsito y Transporte Terrestre al cuerpo de policía nacional.

*Quinta.* En el término no mayor de un año, a partir de la entrada en vigencia de esta Constitución, la Asamblea Nacional dictará una reforma del Código Orgánico Tributario que establezca, entre otros aspectos:

1. La interpretación estricta de las leyes y normas tributarias, atendiendo al fin de las mismas y a su significación económica, con el objeto de eliminar ambigüedades.

2. La eliminación de excepciones al principio de no retroactividad de la ley.

3. Ampliar el concepto de renta presunta con el objeto de dotar con mejores instrumentos a la administración tributaria.

4. Eliminar la prescripción legal para tributos tributarios graves, los cuales deben ser tipificados en el Código Orgánico Tributario.

5. La ampliación de las penas contra asesores o asesoras, bufetes de abogados o de abogadas, auditores externos o auditoras externas y otros u otras profesionales que actúen en complicidad para cometer delitos tributarios, incluyendo periodos de inhabilitación en el ejercicio de la profesión.

6. La ampliación de las penas y la severidad de las sanciones contra delitos de evasión fiscal, aumentando los periodos de prescripción.

7. La revisión de atenuantes y agravantes de las sanciones para hacerlas más estrictas.

8. La ampliación de las facultades de la administración tributaria en materia de fiscalización.

9. El incremento del interés moratorio para disuadir la evasión fiscal.

10. La extensión del principio de solidaridad, para permitir que los directores o directoras y asesores o asesoras respondan con sus bienes en caso de convalidar delitos tributarios.

11. La introducción de procedimientos administrativos más expeditos.

*Sexta.* La Asamblea Nacional, en un lapso de dos años, legislará sobre todas las materias relacionadas con esta Constitución. Se le dará prioridad a las leyes orgánicas sobre pueblos indígenas, educación y fronteras.

*Séptima.* A los fines previstos en el artículo 125 de esta Constitución, mientras no se apruebe la ley orgánica correspondiente, la elección de los representantes indígenas a la Asamblea Nacional, a los Consejos Legislativos y a los Concejos Municipales, se regirá por los siguientes requisitos de postulación y mecanismos:

Todas las comunidades u organizaciones indígenas podrán postular candidatos y candidatas que sean indígenas.

Es requisito indispensable, para ser candidato o candidata, hablar su idioma indígena y cumplir con, al menos, una de las siguientes condiciones:

1. Haber ejercido un cargo de autoridad tradicional en su respectiva comunidad.

2. Tener conocida trayectoria en la lucha social en pro del reconocimiento de su identidad cultural.

3. Haber realizado acciones en beneficio de los pueblos y comunidades indígenas.

4. Pertenecer a una organización indígena legalmente constituida con un mínimo de tres años de funcionamiento.

Se establecerán tres regiones: Occidente, compuesta por los Estados Zulia, Mérida y Trujillo; Sur, compuesta por los Estados Amazonas y Apure; y Oriente, compuesta por los Estados Bolívar, Delta Amacuro, Monagas, Anzoátegui y Sucre.

Cada uno de los Estados que componen las regiones elegirá un representante. El Consejo Nacional Electoral declarará electo al candidato o elegida a la candidata que hubiere obtenido la mayoría de los votos válidos en su respectiva región o circunscripción.

Los candidatos o las candidatas indígenas estarán en el tarjetón de su respectivo Estado o circunscripción y todos los electores y electoras de ese Estado podrán votarlos o votarlas.

Para los efectos de la representación indígena en los Consejos Legislativos y en los Concejos Municipales de los Estados y Municipios con población indígena, se tomará el censo oficial de 1992 de la Oficina Central de Estadística e Informática.

Las elecciones se realizarán de acuerdo con las normas y requisitos aquí establecidos.

El Consejo Nacional Electoral garantizará, con apoyo de expertos o expertas indigenistas y organizaciones indígenas, el cumplimiento de los requisitos aquí señalados.

*Octava.* Mientras no se promulguen las nuevas leyes electorales previstas en esta Constitución los procesos electorales serán convocados, organizados, dirigidos y supervisados por el Consejo Nacional Electoral.

Para el primer periodo del Consejo Nacional Electoral, previsto en esta Constitución, todos sus integrantes serán designados o designadas simultáneamente. En la mitad del periodo, dos de sus integrantes serán renovados o renovadas de acuerdo con lo establecido en la ley orgánica correspondiente.

*Novena.* Mientras no se dicten las leyes relativas al Capítulo IV del Título V de esta Constitución, se mantendrán en vigencia las leyes orgánicas del Ministerio Público y de la Contraloría General de la República. En cuanto a la Defensoría del Pueblo, el o la titular será designado o designada de manera provisoria por la Asamblea Nacional Constituyente. El Defensor o Defensora del Pueblo adelantará lo correspondiente a la estructura organizativa, integración, establecimiento de presupuesto e infraestructura física, tomando como base las atribuciones que le establece esta Constitución.

*Décima.* Lo dispuesto en el numeral 4 del artículo 167 de esta Constitución sobre la obligación que tienen los Estados de destinar un mínimo del cincuenta por ciento del situado constitucional a la inversión, entrará en vigencia a partir del primero de enero del año dos mil uno.

*Decimoprimera.* Hasta tanto se dicte la legislación nacional relativa al régimen de las tierras baldías, la administración de las mismas continuará siendo ejercida por el Poder Nacional, conforme a la legislación vigente.

*Decimosegunda.* La demarcación del hábitat indígena a que se refiere el artículo 119 de esta Constitución, se realizará dentro del lapso de dos años contados a partir de la fecha de entrada en vigencia de esta Constitución.

*Decimotercera.* Hasta tanto los Estados asuman por ley estadal las competencias referidas en el numeral 7 del artículo 164 de esta Constitución, se mantendrá el régimen vigente.

*Decimocuarta.* Mientras no se dicte la legislación que desarrolle los principios de esta Constitución sobre el régimen municipal, continuarán plenamente vigentes las ordenanzas y demás instrumentos normativos de los Municipios, relativos a las materias de su competencia y al ámbito fiscal propio, que tienen atribuido conforme al ordenamiento jurídico aplicable antes de la sanción de esta Constitución.

*Decimoquinta.* Hasta tanto se apruebe la legislación a que se refiere el artículo 105 de esta Constitución, se mantendrá en vigencia el ordenamiento jurídico aplicable antes de la sanción de esta Constitución.

*Decimosexta.* Para el enriquecimiento del acervo histórico de la Nación, el cronista de la Asamblea Nacional Constituyente coordinará lo necesario para salvaguardar las grabaciones o registros que de las sesiones y actividades de la Asamblea Nacional Constituyente se realizaron en imagen, en sonido; en documentos escritos, digitales, fotográficos o hemerográficos; y en cualquier otra forma de documento elaborado.

Todos estos documentos quedarán bajo la protección del Archivo General de la Nación.

*Decimoséptima.* El nombre de la República, una vez aprobada esta Constitución, será "República Bolivariana de Venezuela", tal como está previsto en su artículo uno. Es obligación de las autoridades e instituciones, tanto públicas como privadas, que deban expedir registros, títulos o cualquier otro documento, utilizar el nombre de "República Bolivariana de Venezuela", de manera inmediata.

En trámites rutinarios las dependencias administrativas agotarán el inventario documental de papelería; su renovación se hará progresivamente con la mencionada denominación, en un plazo que no excederá de cinco años.

La circulación de monedas acuñadas y billetes emitidos con el nombre de "República de Venezuela", estará regulada por la reforma de la Ley del Banco Central de Venezuela contemplada en la Disposición Transitoria cuarta de esta Constitución, en función de hacer la transición a la denominación "República Bolivariana de Venezuela".

*Decimoctava.* A los fines de asegurar la vigencia de los principios establecidos en el artículo 113 de esta Constitución, la Asamblea Nacional dictará una ley que establezca, entre otros aspectos, el organismo de supervisión, control y fiscalización que deba asegurar la efectiva aplicación de estos principios y las disposiciones y demás reglas que los desarrollen.

La persona que presida o dirija este organismo será designada por el voto de la mayoría de los diputados o diputadas a la Asamblea Nacional, previo informe favorable de una comisión especial designada de su seno al efecto.

La ley establecerá que los funcionarios o funcionarias de la Administración Pública y los jueces o juezas llamados o llamadas a conocer y decidir las controversias relacionadas con las materias a que se refiere el artículo 113 de esta Constitución, observen, con carácter prioritario y excluyente, los principios allí definidos y se

abstengan de aplicar cualquier disposición susceptible de generar efectos contrarios a ellos.

La ley establecerá en las concesiones de servicios públicos, la utilidad para el concesionario o concesionaria y el financiamiento de las inversiones estrictamente vinculadas a la prestación del servicio, incluyendo las mejoras y ampliaciones que la autoridad competente considere razonables y apruebe en cada caso.

## DISPOSICIÓN FINAL

*Única.* Esta Constitución entrará en vigencia el mismo día de su publicación en la Gaceta Oficial de la República de Venezuela, después de su aprobación por el pueblo mediante referendo.

Aprobada por el pueblo de Venezuela, mediante referendo constituyente, a los quince días del mes de diciembre de mil novecientos noventa y nueve, y proclamada por la Asamblea Nacional Constituyente en Caracas, a los veinte días del mes de diciembre de mil novecientos noventa y nueve. Año 189° de la Independencia y 140° de la Federación.

EL PRESIDENTE,

LUIS MIQUILENA

EL PRIMER VICEPRESIDENTE,

ISAÍAS RODRÍGUEZ

EL SEGUNDO VICEPRESIDENTE,

ARISTÓBULO ISTÚRIZ

LOS CONSTITUYENTES,

**CONSTITUYENTES NACIONALES**
ALFREDO PEÑA
ALLAN BREWER CARÍAS
ANGELA ZAGO
EARLE HERRERA
EDMUNDO CHIRINOS
EUSTOQUIO CONTRERAS
GUILLERMO GARCÍA PONCE
HERMANN ESCARRÁ
JESÚS RAFAEL SULBARÁN
LEOPOLDO PUCHI
LUIS VALLENILLA
MANUEL QUIJADA
MARISABEL DE CHÁVEZ
PABLO MEDINA

PEDRO ORTEGA DÍAZ
REYNA ROMERO GARCÍA
RICARDO COMBELLAS
TAREK WILLIAM SAAB
VINICIO ROMERO MARTÍNEZ

**CONSTITUYENTES POR DISTRITO FEDERAL**
DESIRÉE SANTOS AMARAL
ELIÉZER REINALDO OTAIZA CASTILLO
ERNESTO ALVARENGA
FREDDY ALIRIO BERNAL ROSALES
JULIO CÉSAR ALVÁREZ
NICOLÁS MADURO MOROS
SEGUNDO MELÉNDEZ
VLADIMIR VILLEGAS

**CONSTITUYENTES POR AMAZONAS**
LIBORIO GUARULLA GARRIDO
NELSON SILVA

**CONSTITUYENTES POR ANZOÁTEGUI**
ÁNGEL RODRÍGUEZ
DAVID DE LIMA SALAS
DAVID FIGUEROA
ELÍAS LÓPEZ PORTILLO
GUSTAVO PEREIRA

**CONSTITUYENTES POR APURE**
CRISTÓBAL JIMÉNEZ
RAFAEL RODRÍGUEZ FERNÁNDEZ

**CONSTITUYENTES POR ARAGUA**
ALBERTO JORDÁN HERNÁNDEZ
ANTONIO DI GIAMPAOLO BOTTINI
CARLOS TABLANTE
HUMBERTO PRIETO
OSCAR FEO

**CONSTITUYENTES POR BARINAS**
FRANCISCO EFRAÍN VISCONTI OSORIO
JOSÉ LEÓN TAPIA CONTRERAS

**CONSTITUYENTES POR BOLÍVAR**
ALEJANDRO DE JESÚS SILVA MARCANO
ANTONIO BRICEÑO

DANIEL DÍAZ
LEONEL JIMÉNEZ CARUPE
VICTORIA MATA

**CONSTITUYENTES POR CARABOBO**
ELIO GÓMEZ GRILLO
MANUEL VADELL GRATEROL
AMÉRICO DÍAZ NÚÑEZ
BLANCANIEVE PORTOCARRERO
DIEGO SALAZAR
FRANCISCO JOSÉ AMELIACH ORTA
JUAN JOSÉ MARÍN LAYA
OSCAR NAVAS TORTOLERO
SAÚL ORTEGA

**CONSTITUYENTES POR COJEDES**
HAYDÉE DE FRANCO
JUAN BAUTISTA PÉREZ

**CONSTITUYENTES POR DELTA AMACURO**
CÉSAR PÉREZ MARCANO
RAMÓN ANTONIO YÁNEZ

**CONSTITUYENTES POR FALCÓN**
JESÚS MONTILLA APONTE
SOL MUSSETT DE PRIMERA
YOEL ACOSTA CHIRINOS

**CONSTITUYENTES POR GUÁRICO**
ÁNGEL EUGENIO LANDAETA
PEDRO SOLANO PERDOMO
RUBEN ALFREDO ÁVILA ÁVILA

**CONSTITUYENTES POR LARA**
ANTONIO JOSÉ GARCÍA GARCÍA
ENRIQUE PERAZA
HENRI FALCÓN
LENÍN ROMERO
LUIS REYES REYES
MIRNA TERESA VIES DE ÁLVAREZ
REINALDO ROJAS
**CONSTITUYENTES POR MÉRIDA**
ADÁN CHÁVEZ FRÍAS
FLORENCIO ANTONIO PORRAS ECHEZURÍA
PAUSIDES SEGUNDO REYES GÓMEZ

**CONSTITUYENTES POR MIRANDA**
ELÍAS JAUA MILANO
FREDDY GUTIÉRREZ
HAYDÉE MACHÍN
JOSÉ GREGORIO VIELMA MORA
JOSÉ VICENTE RANGEL ÁVALOS
LUIS GAMARGO
MIGUEL MADRIZ
RAÚL ESTÉ
RODOLFO SANZ
WILLIAN LARA
WILLIAM OJEDA

**CONSTITUYENTES POR MONAGAS**
JOSÉ GREGORIO BRICEÑO TORREALBA
MARELIS PÉREZ MARCANO
NUMA ROJAS VELÁSQUEZ

**CONSTITUYENTES POR NUEVA ESPARTA**
ALEXIS NAVARRO ROJAS
VIRGILIO ÁVILA VIVAS

**CONSTITUYENTES POR PORTUGUESA**
ANTONIA MUÑOZ
MIGUEL A. GARRANCHÁN VELÁSQUEZ
WILMAR ALFREDO CASTRO SOTELDO

**CONSTITUYENTES POR SUCRE**
JESÚS MOLINA VILLEGAS
JOSÉ LUIS MEZA
LUIS AUGUSTO ACUÑA CEDEÑO

**CONSTITUYENTES POR TÁCHIRA**
MARÍA IRIS VARELA RANGEL
RONALD BLANCO LA CRUZ
SAMUEL LÓPEZ
TEMÍSTOCLES SALAZAR

**CONSTITUYENTES POR TRUJILLO**
GERARDO MÁRQUEZ
GILMER VILORIA

**CONSTITUYENTES POR VARGAS**
ANTONIO RODRÍGUEZ
JAIME BARRIOS

**CONSTITUYENTES POR YARACUY**
BRAULIO ÁLVAREZ
NÉSTOR LEÓN HEREDIA

**CONSTITUYENTES POR ZULIA**
ALBERTO URDANETA
ATALA URIANA
FROILÁN BARRIOS NIEVES
GASTÓN PARRA LUZARDO
GEOVANY DARÍO FINOL FERNÁNDEZ
JORGE LUIS DURÁN CENTENO
LEVY ARRÓN ALTER VALERO
MARÍA DE QUEIPO
MARIO ISEA BOHÓRQUEZ
RAFAEL COLMENÁREZ
ROBERTO JIMÉNEZ MAGGIOLO
SILVESTRE VILLALOBOS
YLDEFONSO FINOL

**CONSTITUYENTES POR LAS COMUNIDADES INDÍGENAS**
GUILLERMO GUEVARA
JOSÉ LUIS GONZÁLEZ
NOELÍ POCATERRA DE OBERTO

LOS SECRETARIOS,

ELVIS AMOROSO        ALEJANDRO ANDRADE

Cúmplase,
(L.S.)

LUIS MIQUILENA
PRESIDENTE DE LA ASAMBLEA NACIONAL CONSTITUYENTE

# Asamblea Nacional de la República Bolivariana de Venezuela



## Enmienda N° 1 de la Constitución de la República Bolivariana de Venezuela de fecha 15 de febrero de 2009

**LA ASAMBLEA NACIONAL**
**DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA**

**DECRETA**

la siguiente,

**ENMIENDA N° 1 DE LA CONSTITUCIÓN**
**DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA**

*Artículo 1.* Se enmienda la Constitución de la República Bolivariana de Venezuela, mediante la modificación de los artículos 160, 162, 174, 192 y 230, en la forma siguiente:

**Artículo 160.** El gobierno y administración de cada Estado corresponde a un Gobernador o Gobernadora. Para ser Gobernador o Gobernadora se requiere ser venezolano o venezolana, mayor de veinticinco años y de estado seglar.

El Gobernador o Gobernadora será elegido o elegida por un período de cuatro años por mayoría de las personas que voten. El Gobernador o Gobernadora podrá ser reelegido o reelegida.

**Artículo 162.** El Poder Legislativo se ejercerá en cada Estado por un Consejo Legislativo conformado por un número no mayor de quince ni menor de siete integrantes, quienes proporcionalmente representarán a la población del Estado y de los Municipios. El Consejo Legislativo tendrá las atribuciones siguientes:

1. Legislar sobre las materias de la competencia estadal.

2. Sancionar la Ley de Presupuesto del Estado.

3. Las demás que establezcan esta Constitución y la ley.

Los requisitos para ser integrante del Consejo Legislativo, la obligación de rendición anual de cuentas y la inmunidad en su jurisdicción territorial, se regirán por las normas que esta Constitución establece para los diputados y diputadas a la Asamblea Nacional, en cuanto les sean aplicables. Los legisladores o legisladoras estadales serán elegidos o elegidas por un período de cuatro años, pudiendo ser reelegidos o reelegidas. La ley nacional regulará el régimen de la organización y el funcionamiento del Consejo Legislativo.

**Artículo 174.** El gobierno y la administración del Municipio corresponderán al Alcalde o Alcaldesa, quien será también la primera autoridad civil. Para ser Alcalde o Alcaldesa se requiere ser venezolano o venezolana, mayor de veinticinco años y de estado seglar. El Alcalde o Alcaldesa será elegido o elegida por un período de cuatro años por mayoría de las personas que votan, y podrá ser reelegido o reelegida.

**Artículo 192.** Los diputados o diputadas a la Asamblea Nacional durarán cinco años en el ejercicio de sus funciones, pudiendo ser reelegidos o reelegidas.

**Artículo 230.** El período presidencial es de seis años. El Presidente o Presidenta de la República puede ser reelegido o reelegida.

*Artículo 2.* Imprímase íntegramente la Constitución de la República Bolivariana de Venezuela, y publíquese a continuación de esta Constitución la Enmienda sancionada y anótese al pie de los artículos 160, 162, 174, 192 y 230 del texto constitucional la referencia de número y fecha de esta Enmienda.

Sancionada por la Asamblea Nacional a los catorce días del mes de enero de dos mil nueve y aprobada por el pueblo soberano de la República Bolivariana de Venezuela, mediante referendo constitucional, a los quince días del mes de febrero de dos mil nueve. Año 198° de la Independencia y 149° de la Federación.

**CILIA FLORES**
Presidenta de la Asamblea Nacional

**SÁUL ORTEGA CAMPOS**     **JOSÉ ALBORNOZ URBANO**
Primer Vicepresidente         Segundo Vicepresidente

**AMAZONAS**

MONTENEGRO NÚÑEZ JUAN ANTONIO

PALAU RAZINO DIÓGENES EDGILDO

YGARZA JULIO HARON

**ANZOÁTEGUI**

TACHINAMO GARCÍA HENRY JOSÉ

ARÓNICA CARREYO EDUARDO

RODRÍGUEZ KAUSRO CARMEN ANTONIA

SÁNCHEZ CHACÓN LUIS EDUARDO

MÁRQUEZ RODRÍGUEZ HUGO RAFAEL

RODRÍGUEZ GAMBOA ÁNGEL LUIS

HERRERA SILVA EARLE JOSÉ

RODRÍGUEZ LONGART VICENTE JOSÉ

**APURE**

EL GATRIF MIZHER FAHD

ESPINOZA LEÓN CARLOS ROQUE

GONZÁLEZ WILFREDO

DELGADO CRIMEJO RAFAEL ANTONIO

JIMÉNEZ CRISTÓBAL LEOBARDO

**ARAGUA**

GÓMEZ ABREU EDIS EMILIO

QUERALES RODRÍGUEZ WILLIAM ANTONIO

NIEVES COLMENARES ELEAZAR

FIGUERA GONZÁLEZ OSCAR RAMÓN

AMOROSO ELVIS EDUARDO

GARCÍA ISMAEL CONCEPCIÓN

BASTIDAS MARTÍNEZ PEDRO ANTONIO

DAZA ROY ALBERTO

ESCARRÁ MALAVÉ CARLOS

**BARINAS**

PÉREZ BETANCOURT WILMER RAFAEL

GUALDRÓN GONZALO JOSÉ

GRATEROL CAMACHO JESÚS ERNESTO

PEÑA GONZÁLEZ GEOVANNY JOSÉ

AZUAJE CORDERO WILMER JOSÉ

**BOLÍVAR**

GIL BARRIOS RAFAEL DARÍO

MARCANO CASTILLO ÁNGEL BAUTISTA

CABELLO ROJAS DILUVINA DE JESÚS

RÍOS BOLÍVAR RAFAEL ÁNGEL

EL ZABAYAR SAMARA ADEL

SOLÍS SORRENTINO DENNIS CLARET

MOLINA JUAN JOSÉ

MEDINA CARRASCO PASTORA COROMOTO

**CARABOBO**

MONTILLA ORTEGA CARMEN SARITA

ISRRAEL ANTONIO SOTILLO INFANTE

GÓMEZ DENIS OSMAR ENRIQUE

GARCÍA PRADO ORLANDO FEDOR

ÁLVAREZ BRAÇAMONTE RAÚL JESÚS

AMELIACH ORTA FRANCISCO JOSÉ

GÓMEZ LÓPEZ DOUGLAS EDUARDO

VÁSQUEZ GUZMÁN FERNANDO ANTONIO

VALLES ESCUELA LAURA MARÍA

**COJEDES**

PIRELA SÁNCHEZ HAYDEN OVANDO

PÉREZ JUAN BAUTISTA

SALAZAR ASDRÚBAL COROMOTO

MILANO RODRÍGUEZ JHONNY OWE

**DELTA AMACURO**

MARCANO RODRÍGUEZ OMAR

TAMARONIS LOA DEL VALLE

HERNÁNDEZ RODRÍGUEZ HENRY JOSÉ

GONZÁLEZ CAMEJO ENRIQUE JOSÉ

**DISTRITO CAPITAL**

SANTOS AMARAL DESIRÉE

GARCÍA BRAVO REINALDO ALFREDO

MEDINA ROJAS CARLOS ALFREDO

DUGARTE PADRÓN JUAN CARLOS

BLANCO LUIS BELTRÁN

VIVAS VELAZCO DARÍO

SILVA MAGALLANES TIRSO DEL VALLE

LANDER MORENO PEDRO TOMÁS

RÍOS FLOR MARÍA

**FALCÓN**

MÉNDEZ GONZÁLEZ ANDRÉS ELOY

MANAURE REYES ALEYDYS ARGELIA

DAAL ULISES RAMÓN

BALDAYO LÓPEZ HENRY RAFAEL

ELZAGA ROJAS MARIS NOHEMÍ

CASTELLAR PADILLA ALBERTO EFRAÍN

**GUÁRICO**

CONTRERAS DÍAZ EUSTOQUIO

MARÍN LAYA JUAN JOSÉ

OROPEZA SUÁREZ MARÍA ANTONIA

ROJAS ROJAS MIGUEL RAFAEL

**LARA**

ESCALONA COLINA JOSÉ RAFAEL

GONZÁLEZ PASTOR PAUCIDES

LUGO RODRÍGUEZ IVÁN JOSÉ

PERAZA ROJAS DENIS ALBERTO

CONTRERAS HERNÁNDEZ LUIS ANTONIO

URDANETA PEREIRA BRICCIO JOSÉ

MORA JOSÉ DAVID

FERRER GERMÁN DARÍO

CALZADILLA PERAZA JOSÉ SIMÓN

MÉRIDA

BRICEÑO MÉNDEZ MANUEL JOSÉ

CAMACHO ARAUJO OBDULIO JOSÉ

ÁVILA ÁVILA MARÍA ALEJANDRA

RAMÍREZ ROSALES JOSÉ OSCAR

CARMONA RODRÍGUEZ OSMAR

IGLESIAS PINO WILMER ARQUÍMEDES

MIRANDA

RUÍZ ESPINOZA MODESTO ANTONIO

LEONETT CANALES FÉLIX

MONTIEL MEDINA AUGUSTO VLADIMIR

BARRERA MORALES MAIGUALIDA ESTHER

MATUTE GUAYANO ROMELIA CELESTINA

JIMÉNEZ RODRÍGUEZ TULIO AMADO

ÁLVAREZ GONZÁLEZ JESÚS ALBERTO

CABELLO PALMA GIRARDOT JOSÉ

FIGUEROA CHACÍN SANTANA

DOMÍNGUEZ VALDERRAMA JESÚS ENRIQUE

PÉREZ MARCANO MARELIS JOSEFINA

NUEVA ESPARTA

MILLÁN LARIN JUAN JOSÉ

GARCÍA HERNÁNDEZ JUAN SALVADOR

MORALES AURORA JOSEFINA

BRAVO QUEVEDO IROSHIMA JENNIFER

ECHEZURÍA RODRÍGUEZ CARLOS FRANCISCO

MACHÍN FERRER HAYDÉE JOSEFINA

GAMARGO LAGONELL LUIS ALFREDO

ÁLVAREZ ALFONSO CARMEN TRINIDAD

MONAGAS

VILLALBA SÁNCHEZ MANUEL ENRIQUE

DÍAZ SALAZAR LUIS ÁNGEL

HERNÁNDEZ CEDEÑO RÉGULO FELIPE

PACHECO OSORIO MARÍA DEL ROSARIO

PORTUGUESA

HERNÁNDEZ PARRA PORFIRIO DE JESÚS

MURGA RIVAS ALFREDO

RODRÍGUEZ GARCÍA JOSÉ ERNESTO

LARA BARRIOS ZARK ALFREDO

TORREALBA OJEDA FRANCISCO ALEJANDRO

GUTIÉRREZ BRICEÑO RICARDO ANTONIO

**SUCRE**

JIMÉNEZ ÁLVAREZ BERNARDO JOSÉ

GARCÍA FONT HERMES GREGORIO

VALLENILLA MENDOZA YARITZA MARGARITA

RODRÍGUEZ JOSÉ DEL CARMEN

REGNAULT ROJAS JOSÉ RAMÓN

MARCANO GONZÁLEZ ERASMO ARISTALCO

**TÁCHIRA**

GARCÍA JARPA JULIO FERNANDO

MOGOLLÓN DE GUERRERO SANTA XIOMARA

TASCÓN GUTIÉRREZ LUIS

SANGUINO CÁRDENAS JOSÉ RICARDO

VARELA RANGEL MARÍA IRIS

LUCENA GONZÁLEZ EDGAR DE JESÚS

PACHECO ALVIÁREZ HERNÁN

**TRUJILLO**

MORENO VILORIA JULIO BERNARDO

PÉREZ CRISTANCHO OSCAR FRANCISCO

MENDOZA JOVER JUAN JOSÉ

LEAL BRICEÑO ORÉSTENES JESÚS

GIL RODRÍGUEZ MALAQUIAS

**YARACUY**

GAMARRA MANZÁBEL CARLOS ALBERTO

CAPELLA MATEO RICARDO

ALVAREZ BRAULIO JOSÉ

SÁEZ BORDONES CARMEN LISETH

SÁNCHEZ LÓPEZ TOMÁS RAFAEL

**VARGAS**

ESCALONA PRADO SIMÓN ENRIQUE

VERA ROJAS OSWALDO EMILIO

D'AMELIO CARDIET TANIA

DE FREITAS RODRÍGUEZ JOSÉ GUIDO

**ZULIA**

ORTEGA RÍOS CALIXTO ANTONIO

RÍOS BECERRA EDIS ALFONSO

BRICEÑO DE QUEIPO MARÍA DE LA PAZ

CEDEÑO MÁRQUEZ JENNY ELINA

ISEA BOHÓRQUEZ MARIO RICARDO

CABELLO LISANDRO JOSÉ

SAAB SAAB IMAD

OSORIO LÓPEZ OMAR JESÚS

GONZÁLEZ GONZÁLEZ LIBES DE JESÚS

QUINTERO VALENCIA ROBERTO ANTONIO

SOLÍS RINCÓN RAFIC

PEÑA PINEDA ELISEO RAMÓN

MONTIEL ARCADIO JOSÉ

PALOMARES VERDE ÉNDER DE JESÚS

LÓPEZ ALMAO FRANCISCO

**REPRESENTACIÓN INDÍGENA**

POCATERRA DE OBERTO NOELÍ

PÉREZ RAMOS ESTEBAN ARGELIO

POYO CASCANTE JOSÉ AMADOR

IVÁN ZERPA GUERRERO
Secretario

VÍCTOR CLARK BOSCÁN
Subsecretario

Plaza Pérez Bonalde de Catia Parroquia Sucre Municipio Libertador, en Caracas, a los diecinueve días del mes de febrero de dos mil nueve. Años 198° de la Independencia, 149° de la Federación y 11° de la Revolución Bolivariana.

Cúmplase,
(L.S.)

Refrendado
El Vicepresidente Ejecutivo
(L.S.)

RAMON ALONZO CARRIZALEZ RENGIFO

DIEGO CHAVEZ FRIAS

Refrendado
El Ministro del Poder Popular del
Despacho de la Presidencia
(L.S.)

LUIS RAMON REYES REYES

Refrendado
El Ministro del Poder Popular para
Relaciones Interiores y Justicia
(L.S.)

TARECK EL AISSAMI

Refrendado
El Ministro del Poder Popular para
Relaciones Exteriores
(L.S.)

NICOLAS MADURO MOROS

Refrendado
El Ministro del Poder Popular para
Economía y Finanzas
(L.S.)

ALI RODRIGUEZ ARAQUE

Refrendado
El Ministro del Poder Popular para
la Defensa
(L.S.)

GUSTAVO REYES RANGEL BRICEÑO

Refrendado
El Ministro del Poder Popular para
las Industrias Ligeras y Comercio
(L.S.)

WILLIAN ANTONIO CONTRERAS

Refrendado
El Ministro del Poder Popular para
las Industrias Básicas y Minería
(L.S.)

RODOLFO EDUARDO SANZ

Refrendado
La Ministra del Poder Popular para
el Turismo
(L.S.)

OLGA CECILIA AZUAJE

Refrendado
El Ministro del Poder Popular para
la Agricultura y Tierras
(L.S.)

ELIAS JAUA MILANO

Refrendado
El Ministro del Poder Popular para
la Educación Superior
(L.S.)

LUIS ACUÑA CEDEÑO

Refrendado
El Ministro del Poder Popular para
la Educación
(L.S.)

HECTOR NAVARRO

Refrendado
El Ministro del Poder Popular para
la Salud
(L.S.)

JESUS MARIA MANTILLA OLIVEROS

Refrendado
El Ministro del Poder Popular para
el Trabajo y Seguridad Social
(L.S.)

ROBERTO MANUEL HERNANDEZ

Refrendado
El Ministro del Poder Popular para
la Infraestructura
(L.S.)

DIOSDADO CABELLO RONDON

Refrendado
El Ministro del Poder Popular para
la Energía y Petróleo
(L.S.)

RAFAEL DARIO RAMIREZ CARREÑO

Refrendado
La Ministra del Poder Popular para
el Ambiente
(L.S.)

YUVIRI ORTEGA LOVERA

Refrendado
El Ministro del Poder Popular para
la Planificación y Desarrollo
(L.S.)

HAIMAN EL TROUDI

# GACETA OFICIAL

## DE LA REPUBLICA BOLIVARIANA
## DE VENEZUELA

**DEPOSITO LEGAL ppo 187207DF1**

AÑO CXXXVI—MES V        N° 5.908 Extraordinario

**Caracas, jueves 19 de febrero de 2009**

www.gacetaoficial.gov.ve
San Lázaro a Puente Victoria N° 89
CARACAS - VENEZUELA
Tarifa sujeta a publicación de fecha 14 de noviembre de 2003
en la Gaceta Oficial N° 37.818

Esta Gaceta contiene 48 Págs. costo equivalente
a 18,05 % valor Unidad Tributaria

**LEY DEL 22 DE JULIO DE 1941**

**Art. 11.-** La GACETA OFICIAL, creada por Decreto Ejecutivo del 11 de octubre de 1872, continuará editándose en la Imprenta Nacional con la denominación GACETA OFICIAL DE LA REPUBLICA DE VENEZUELA.

**Art. 12.-** La GACETA OFICIAL DE LA REPUBLICA DE VENEZUELA, se publicará todos los días hábiles, sin perjuicio de que se editen números extraordinarios siempre que fuere necesario; y deberán insertarse en ella sin retardo los actos oficiales que hayan de publicarse.

**Parágrafo Unico.-** Las ediciones extraordinarias de la GACETA OFICIAL tendrán una numeración especial.

**Art. 13.-** En la GACETA OFICIAL DE LA REPUBLICA DE VENEZUELA, se publicarán los actos de los Poderes Públicos que deberán insertarse y aquéllos cuya inclusión sea conveniente por el Ejecutivo Nacional.

**Art. 14.-** Las Leyes, Decretos y demás actos oficiales tendrán carácter de públicos por el hecho de aparecer en la GACETA OFICIAL DE LA REPUBLICA DE VENEZUELA, cuyos ejemplares tendrán fuerza de documentos públicos.

---

**El DIRECTOR GENERAL DE LA IMPRENTA NACIONAL Y GACETA OFICIAL DE LA REPUBLICA BOLIVARIANA DE VENEZUELA** advierte, que esta publicación se procesa por reproducción fotomecánica directa de los originales que recibe del Consejo de Ministros, originados en los diferentes Despachos de la Administración Pública y que por consiguiente, sus trabajadores gráficos no son responsables de inserciones cuyos originales lleguen en forma defectuosa.

---

Refrendado
La Ministra del Poder Popular para
Ciencia y Tecnología
(L.S.)

NURIS ORIHUELA GUEVARA

Refrendado
El Ministro del Poder Popular para
la Comunicación y la Información
(L.S.)

JESSE CHACON ESCAMILLO

Refrendado
El Ministro del Poder Popular para
la Economía Comunal
(L.S.)

PEDRO MOREJON CARRILLO

Refrendado
El Ministro del Poder Popular para
la Alimentación
(L.S.)

FELIX RAMON OSORIO GUZMAN

Refrendado
El Ministro del Poder Popular para
la Cultura
(L.S.)

HECTOR ENRIQUE SOTO CASTELLANOS

Refrendado
El Ministerio del Poder Popular para
la Vivienda y Hábitat
(L.S.)

FRANCISCO DE ASIS SESTO NOVAS

Refrendado
La Ministra del Poder Popular para
la Participación y Protección Social
(L.S.)

ERIKA DEL VALLE FARIAS PEÑA

Refrendado
La Ministra del Poder Popular para
el Deporte
(L.S.)

VICTORIA MERCEDES MATA GARCIA

Refrendado
La Ministra del Poder Popular para
las Telecomunicaciones y la Informática
(L.S.)

SOCORRO ELIZABETH HERNANDEZ

Refrendado
La Ministra del Poder Popular para
los Pueblos Indígenas
(L.S.)

NICIA MALDONADO MALDONADO

Refrendado
La Ministra de Estado para
Asuntos de la Mujer
(L.S.)

MARIA LEON