**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No. 1:18-cv-20818 DPG

PDVSA US LITIGATION TRUST
   Plaintiff,

vs.

LUKOIL PAN AMERICAS LLC; LUKOIL PETROLEUM LTD.; COLONIAL OIL INDUSTRIES, INC.; COLONIAL GROUP, INC.; GLENCORE LTD.; GLENCORE INTERNATIONAL A.G.; GLENCORE ENERGY UK LTD.; MASEFIELD A.G.; TRAFIGURA A.G.; TRAFIGURA TRADING LLC; TRAFIGURA BEHEER B.V.; VITOL ENERGY (BERMUDA) LTD.; VITOL S.A.; VITOL, INC.; FRANCISCO MORILLO; LEONARDO BAQUERO; DANIEL LUTZ; LUIS LIENDO; JOHN RYAN; MARIA FERNANDA RODRIGUEZ;HELSINGE HOLDINGS, LLC; HELSINGE, INC.; HELSINGE LTD., SAINT-HEUER; WALTROP CONSULTANTS, C.A.; GODELHEIM, INC.; HORNBERG INC.; SOCIETE DOBERAN, S.A.; SOCIETE HEDISSON, S.A.; SOCIETE HELLIN, S.A.; GLENCORE DE VENEZUELA, C.A.; JEHU HOLDING INC.; ANDREW SUMMERS; MAXIMILIANO POVEDA; JOSE LAROCCA; LUIS ALVAREZ; GUSTAVO GABALDON; SERGIO DE LA VEGA; ANTONIO MAARRAOUI; CAMPO ELIAS PAEZ; PAUL ROSADO; BAC FLORIDA BANK; EFG INTERNATIONAL A.G.; BLUE BANK INTERNATIONAL N.V.
   Defendants




1

## **TESTIMONY OF EXPERT WITNESS ROGELIO PÉREZ PERDOMO**

### 1. Personal information.

1.1. My full name is José Rogelio Pérez Perdomo, but the name I use in my books and writings is Rogelio Pérez Perdomo.

1.2. I graduated in law from Universidad Central de Venezuela in 1964 and earned the Master in Law degree at Harvard University in 1972. I received the title of Doctor en Ciencias, mención Derecho in 1975 from Universidad Central de Venezuela. This title is the equivalent of a PhD in law. I have taught law full time since 1967, first at Universidad Central de Venezuela, later at Instituto de Estudios Superiores de Administración and since 2002 I split my time between Universidad Metropolitana in Caracas, where I am a full professor (professor titular) and Stanford Law School, California, where I have been a frequent Visiting Professor. In recent years I also have been Visiting Scholar at the Instituto de Investigaciones Jurídicas of Universidad Nacional Autónoma de México (2010) and Visiting Professor for Latin American Studies at Florida International University (2012). Among the appointments I have had in my academic career are Dean at Universidad Metropolitana Law School, in Caracas; Academic Director of Stanford Program for International Legal Studies, in California; and Scientific Director of the International Institute for the Sociology of Law in Oñati, Spain. I have been on the board of several institutions in the area of law, including the International Advisory Board for Law and Justice Reform of the World Bank. In the last ten years I have published nine academic books and a significant number of articles. Most of my publications are in Spanish, but some are in English or other languages. I attach my full curriculum vitae. In my career I have received several important honors. Among the ones I value most are the International Scholarship Award (Law and Society Association, 2011), the Honorary Membership of the Peruvian Academy of Law (2012) and in 2014 I became member of the National Academy of History (Venezuela).

1.3. I consider myself a professor and scholar in law matters. I mostly teach comparative law, jurisprudence and cultural aspects of law. My specific research areas are the working of the justice system, the legal education and the professions of law in Venezuela and Latin America.

1.4. I have given written testimony and opinions, both in Spanish and English, in areas related to the functioning of the legal system. I do not keep complete records of them. They include opinions to the Venezuelan Supreme Court in 1996 and



2001. Among the opinions I have given in English one was related to a mining conflict between the Venezuelan Corporación Venezolana de Guayana and the Canadian company Minca; another was in relation to a conflict between two private businesses in matters of grain export-import. My opinions as an expert have always been consistent with my writings as a scholar. I have no direct relation with PDVSA or the Venezuelan Government.

## 2. Opinion regarding the trust constituted by PDVSA on litigious rights

2.1 On July 27, 2017, the PDVSA US Litigation Trust Agreement was established to claim the damages caused to Petróleos de Venezuela S.A, hereinafter PDVSA, for illicit activities suffered by the company. My opinion has been required as an expert, regarding the validity of the execution of that contract in accordance with Venezuelan law. The legality of the constitution of this trust has been questioned and I am being consulted on two central issues related to the arguments presented as an expert by lawyer Rafael Badell Madrid.

2.2 The first argument is that the contract is invalid since it is a contract of national public interest, which would require the approval of the National Assembly of the Republic.

2.3 The second argument is that the contract is not valid because of the quality of the signatories. It was signed by the Minister of Petroleum and the Republic Attorney General on behalf of PDVSA, and that, since this is a company whose statutes establish that the President of the Board of Directors is the person who should contract on its behalf. For this reason, the contract would be null. Part of this argument is that the contract would be null because the opinion of the Attorney General of the Republic is missing.

2.4 The two arguments are partially inconsistent, insofar as the second highlights PDVSA's freestanding status from the Venezuelan state, and the first, that the PDVSA contracts are in the national public interest and must be authorized by the National Assembly, the legislative body of the Republic.

2.5. In this opinion, it is going to stand out that the contracts of national public interest are contracts with certain characteristics, in which the Bolivarian Republic of Venezuela is part. Therefore, they must be signed by the Executive Power with the approval of the Legislative Power. PDVSA's contracts, as a company of the Venezuelan state, cannot be of national public interest in the sense defined by Venezuelan law. Secondly, the Minister of Popular Power of

Petroleum is the representative of the state's shares in PDVSA, thus configuring the assembly of shareholders, and that the articles of association of the company give "the supreme direction and administration of the company" (Statutes, seventh clause) and that the Attorney General of the Republic, in the exercise of its functions, endorsed the constitution of the trust.

### 3. The PDVSA US Litigation Trust Agreement is not a "national public interest contract" in the terms defined by Venezuelan domestic law

3.1 The articles 150 and 187, numeral 9, of the Bolivarian Republic of Venezuela Constitution[1] establish that it corresponds to the National Executive Power, previously authorized by the National Assembly, to conclude contracts of national public interest.

3.2 The definition of a national public interest contract has been carried out by the Constitutional Chamber of the Supreme Court of Justice, which is responsible for interpreting the constitutional provision, in accordance with article 335 of the Constitution. The Constitutional Chamber is a seven-member chamber that can still revoke decisions of the other Supreme Court chambers if they have entered into a constitutional interpretation topic or have undermined constitutional rights.

3.3 The Constitutional Chamber judgment, number 2,241, dated September 24, 2002, "Andrés Velásquez et al." case, constitutes the relevant precedent in the precise determination of the limits and requirements to consider a contract of national public interest. This judgement is very important because under the previous constitution the definition was not clear and the Venezuelan legal scholars had discussed abundantly such subject.

3.4 The following is the text of the referred judgement:

> "The contracts of national public interest include all the contracts entered into by the Republic, through the competent bodies of the National Executive, whose subject is decisive or essential for the realization of the purposes and tasks of the Venezuelan state in

---

[1] **Article 150.** The execution of contracts of national public interest will require the approval of the National Assembly in the cases determined by law. No contract of municipal, state or national public interest may be entered into with foreign official States or entities or with companies not domiciled in Venezuela, nor may they be transferred to them without the approval of the National Assembly. The law may require in the contracts of public interest, certain conditions of nationality, domicile or of another order, or require special guarantees.
**Article 187.** Corresponds to the National Assembly (...) 9. Authorize the National Executive to enter into contracts of national interest, in the cases established by law. Authorize municipal, state or national public interest contracts with states or official foreign entities or companies not domiciled in Venezuela.



order to satisfy the individual and coinciding interests of the national community and not only of a particular sector of the same... This implies the assumption of obligations whose total or partial payment is stipulated to be made in the course of several fiscal years subsequent to the one in which the subject of the contract was caused, in view of the implications that the adoption of such commitments may imply for the economic and social life of the nation".

3.5 The following paragraphs are the analysis of the different elements of the definition of "contract of national public interest" as formulated by the decision of the Constitutional Chamber of the Supreme Court of Justice because this is central for this case.

3.6 The National Executive Power is the only entity that can act on the Republic's behalf. It is important to have in mind the distinction between the central level of the public administration and the decentralized level. The public business enterprises are part of this decentralized level. When they subscribe a contract, they commit this specific business and they do not commit the Republic as such.

3.7 In this case, the entity that acted in the contract (trust) is PDVSA, whose nature corresponds to a **state-owned business** (empresa del estado), organizational figure of the decentralized National Public Administration that is defined by article 103 of the Decree with Rank Value and Force of Organic Statute of the Public Administration.[2] Thus, it is a **decentralized entity** with business purposes, owned by the Venezuelan State[3]. Therefore, its legal nature is opposed to that of a governmental body of the National Executive. Therefore, this identification criterion rules out characterizing the contract as a 'national public interest contract'.

3.8 It stands out that the lawyer Rafael Badell Madrid, in his report, has added to this criterion of categorization of contracts of national public interest the phrase: "or a decentralized entity". This sentence is not contained in the decision of the aforementioned Constitutional Chamber and is clearly aimed at unduly expanding the notion of 'national public interest contract'.

3.9 <u>The aim should be decisive or essential for the realization of the purposes and tasks of the Venezuelan State and satisfy the individual and coinciding interests</u>

---

[2] "Legal person of public law constituted according to the rules of private law, in which the Republic, the states, the metropolitan districts and the municipalities, or any of the functionally decentralized entities referred to by said Decree with Rank, Value and Force of Organic Statute, alone or jointly, have a participation greater than fifty percent (50%) of the share capital ".

[3] Constitution of the Bolivarian Republic of Venezuela. "Article 303. For reasons of economic sovereignty, politics and national strategy, the State shall keep all of the shares of Petróleos de Venezuela, SA, or of the body created for the management of the oil industry, except for the subsidiaries, associations strategic, companies and any other that has been constituted or constituted as a result of the development of business of Petróleos de Venezuela "



of the national community and not only of a particular sector of the same. The purpose of the trust is to agree on the transfer of fiduciary assets inherent to litigation, provided that (a) Petróleos de Venezuela, S.A. irrevocably transfers, assigns and delivers to the trustee, all of their rights, titles and respective interests in the claims provided and the assigned actions; and (b) Petróleos de Venezuela, S.A. by this means irrevocably transfers, assigns and delivers to the trustees, all their rights, titles and interests in any privilege of immunity that is attached to any document or communication (whether written or oral) associated with the submitted claims, which will be deposited in trust, for the benefit of Petróleos de Venezuela, SA

3.10 Regarding the subject of the trust that we are dealing with, it is not the realization of the purposes and tasks of the Venezuelan State, as it refers to litigious actions whose results are not guaranteed.

3.11 Such argument does not mean, that the defense of PDVSA's patrimony and the repression of the unlawful acts that could be presented in the corporation is not a matter that calls for the communion of efforts, but this is part of the ordinary management of any company to control its administration and identify ways of correction or compensation

3.12 The contracts of national public interest are the ones typically oriented to the basic satisfaction of the interests of the national community whose subject is decisive or essential for the realization of the purposes and tasks of the Venezuelan state. In this regard, according to the tradition, those related to the construction of roads, railways, broad spectrum telecommunications, among other cases of preponderance and important engineering works, mass services, and borrowing operations and can be qualified as contracts of national public interest according to the characterizing notes that the Constitutional Chamber has established. In short, this criterion also rules out that the contract (trust) under analysis can be considered a 'national public interest contract', as defined by the Constitutional Chamber of the Supreme Court of Justice.

3.13 The contract should establish obligations whose payment is stipulated to be made in the course of several fiscal years subsequent to the year in which the subject of the contract has been caused, in view of the implications that the adoption of such commitments may generate in the economic and social life of the nation. In the contract (trust) that we are dealing with, the determination on the quantification of the earned income or yields that are expected to be obtained in favor PDVSA is not possible beforehand. It is not a liquid contractual amount, let alone composed of tangible and determined assets, goods or rights that may be transacted. The contract does not provide for monitary obligations by PDVSA, or



even less by the Republic. For this reason, the contract (trust) cannot be considered a national public interest contract.

3.14 According to the above considerations, it is concluded that the contract (trust) does not have any of the requirements to be considered a 'national public interest contract'.

3.15 In judgment 618, dated July 20, 2016, case "Brigitte Acosta and Central Bank of Venezuela", the Constitutional Chamber expressly ratified the criteria previously analyzed, and it was also reiterated that contracts of national public interest are always signed by the National Executive, its governmental bodies, states or municipalities and in no case by decentralized entities[4].

3.16 Based on the assertions noted above, it can be concluded that the contract (trust) signed by PDVSA and the Attorney General is not a contract of national public interest. Therefore, authorization of the National Assembly, provided in articles 150 and 187, numeral 9, both of the Constitution of the Bolivarian Republic of Venezuela, are not required for the validity of the contract.

## 4. Jurisdiction of the Attorney General of the Republic in relation to this contract.

4.1 It is argued that the Attorney General of the Republic does not have the faculty to establish a trust in the name of PDVSA or to transfer or assign the litigious rights and other titles of PDVSA

---

[4] "Now, so that the potential loan contract to be subscribed by the Central Bank of Venezuela with the Latin American Reserve Fund (FLAR), could be considered as a national public interest contract, and, therefore, subject to the approval of the National Assembly and that requires the consultation of the Attorney General's Office, as expressly stated in article 247 of the Constitution of the Bolivarian Republic of Venezuela, the elements must be configured concomitantly to qualify it as a national public interest, according to the criterion established by this Supreme Court, in the many times mentioned sentence. Thus, this Chamber will proceed to verify, then, if the potential contract (...) complies with the elements to qualify it as a national public interest, according to the jurisprudential criteria stated

*1.- That they be celebrated by the Republic, through the organs that compose the National Executive competent in this matter. (...)*

Thus, this Chamber specified that the Central Bank of Venezuela is a legal entity of public law, constitutional, endowed with autonomy to exercise the policies of its competence, which is not part of the Central Administration (...) it form part of the so-called Administration with functional autonomy, which constitutes a fundamental element for the fulfillment of the purposes assigned by law; therefore, it requires a special regulation and organization, its own and different from the ordinary one applicable to other public or private entities.

(...) On the basis of the factual and legal arguments presented above, the potential contract (...) should not be considered as a national public interest contract, and, therefore, is not subject to the authorization of the National Assembly, nor does it require consultation with the Attorney General's Office, the advisory body of the National Executive, as expressly stated in article 247 of the Constitution. "

"The Litigation Trust Agreement is executed, in addition to the Minister of People's Power for Petroleum, by the Attorney General of the Republic. However, this Office (Attorney General of the Republic) does not have the power to set up a trust on behalf of PDVSA or to transfer or assign PDVSA's litigious rights and titles. The Attorney General only signed the Agreement, which cannot be considered as a substitution of the formalities required by articles 11, 12 and 13 of the LOPGR, all of which refer to the previous study of the situation to draft a legal opinion that analyzes the case and decides on the possibility -or not- of signing a contract that directly or indirectly affects the interests of the Republic and contains arbitration clauses. Moreover, having in mind that the Litigation Trust Agreement includes a section by which PDVSA waived its rights of jurisdiction and venue (Section 9(5) of the Agreement) by consenting the exclusive jurisdiction of the state of New York state and federal courts, The Attorney General of the Republic needed to draft a previous opinion, let alone the content of article 151 of the Constitution"

4.2 In this regard, it is necessary to point out that the Office of the Attorney General of the Bolivarian Republic of Venezuela is a constitutional body whose main function is to advise, defend and judicially and extra-judicially represent the rights and interests of the Republic, both nationally and internationally.[5]

---

[5] See: **Constitution of the Bolivarian Republic of Venezuela. "Article 247.** The Attorney General's Office advises, defends and judicially and extrajudicially represents the patrimonial interests of the Republic, and will be consulted for the approval of national public interest contracts. The organic law will determine its organization, competence and functioning "; and **Organic Law of the Attorney General of the Republic "Article 2.** In exercise of the powers conferred by the Constitution of the Bolivarian Republic of Venezuela, exclusive powers of the Attorney General of the Republic provide legal advice to the organs of the National Public Power and exercise the defense and judicial and extrajudicial representation of rights, assets and patrimonial interests of the Republic, both nationally and internationally. The powers and legal preconditions of representation and defense provided for in this article may not be exercised by any other body or official of the State, without previous and express substitution granted by the Attorney General or Attorney General of the Republic" **Specific competences in international action. Article 14.** The Office of the Attorney General of the Republic, in the exercise of its jurisdiction over the judicial and extrajudicial defense of the assets, rights and patrimonial interests of the Republic, in the national territory and outside it ..." **"Full representation. Article 30**. The Office of the Attorney General of the Republic preserves in its entirety the representation and defense of the rights, assets and interests of the Republic, both nationally and internationally, even when other officials are invested with the same attribution by substitution granted by the Attorney General or Attorney General of the Republic " **"Intervention in judicial processes. Article 76.** The Office of the Attorney General of the Republic may intervene in all judicial proceedings in which the autonomous Institutes, public Institutes, national organs and public entities, as well as the state and municipal entities, are parties, when, in their opinion, they affect the same. property rights and patrimonial interests of the Republic"



4.3 Based on the above, the legal system sets a constitutional regime of legal defense of the state with broad scope and conceived for an adequate and balanced protection of the rights and interests of the Republic, implies that its jurisdiction is exercised before i) the direct affectation: developing the representation and defense of the Republic and all its entities -of indistinct or undifferentiated legal personality with it[6]-, as well that before ii) the indirect affectation: that includes the intervention for the sake of the patrimonial defense of the functionally decentralized public entities, even those constituted for business purposes, of distinct or differentiated juridical personality of the Republic[7]-.

4.4 The contract transferred PDVSA's assets inherent to litigation to the trust it created. This transfer is irrevocable and assigns and delivers to the trustee all rights, titles and interests in the claims. The trust controls the litigation, but PDVSA will receive the benefits of any recovery, once the contingencies have been deducted.

4.5 The Attorney General in executing the constitution of the Litigation Trust Agreement acts within the scope of its powers by virtue of being the competent constitutional body for the judicial and extrajudicial defense of assets, rights and patrimonial interests of the Republic, whether they are directly affected or indirectly -in case of intervening in the patrimonial defense of state enterprises- in the national territory and outside of it. Therefore, the Attorney General has the power to determine the most suitable legal forms for this defense, as it was done is the case of the constitution of the PDVSA US Litigation Trust.

4.6 It is argued that the Litigation Trust Agreement contains an arbitration clause that submits any dispute arising from that contract to arbitration before an international entity such as the Arbitration Center of the International Chamber of Commerce (ICC) in New York City. It is argued that there is no evidence that the Attorney General issued his prior and express opinion regarding the legality and validity of the arbitration clause, in accordance with the provisions of Article 12 of the Organic Statue of the Attorney General's Office of the Republic[8].

---

[6] **Decree with Rank, Value and Force of Organic Law of the Public Administration. "Article 15.** (...) It is understood as public entities, the administrative units of the Republic, of the states, of the metropolitan districts and of the municipalities to which they belong. they assign them functions that have juridical effects, or whose action has regulatory character (...) ".

[7] **Decree with Rank, Value and Force of Organic Law of the Public Administration. "Article 15.** (...) It shall have the character of being an entity any functionally decentralized administrative organization with its own legal personality; subject to control, evaluation and monitoring of their actions by their governing bodies, ascription and the guidelines issued by the body responsible for central planning.

[8] **Organic Law of the Attorney General of the Republic "Article 12.** The contracts to be signed by the Republic that establish clauses of arbitration, both national and international, must be

4.7 It is pertinent to clarify that Article 12 of the Attorney General's Statute refers to contracts "... *to be signed by the Republic that establish arbitration clauses ...*". In this case it is not a contract subscribed by the Republic, but by a state business, for which the aforementioned provision does not apply. Consequently, this argument is inapplicable

4.8 It should be added that the activity carried out by PDVSA is of an economic nature. Its actions require speed. On contrary, if each contract that establishes arbitration clauses will require the opinion of the Attorney General's Office, it would delay the performance of the company and all companies of the Bolivarian Republic of Venezuela. Moreover, all contracts that have subscribed PDVSA and that do not contain the express Attorney General's opinion would be null, which is not the purpose pursued by that rule.

4.9 The report referred to in Article 12 of the aforementioned statue, constitutes an internal administrative action in the exercise of the advisory function that corresponds to a preparatory phase for the formation of the Attorney General's opinion. The Attorney General's signature on the contract implies that his office has reviewed it and that the contract has his approval.

## 5 The Minister of Petroleum has the legal power to celebrate the PDVSA US Litigation Trust Agreement

5.1 Attorney Badell's document argues that the Minister of Popular Power of Petroleum did not have the capacity to sign the Litigation Trust Agreement on behalf of PDVSA. This argument lacks of support according to the Venezuelan law for the following reasons:

5.2 PDVSA is a state-owned business, whose sole shareholder is the Republic,[9] incorporated under the form of a limited company. The decision of the Constitutional Chamber of the Supreme Court No. 464 of March 18, 2002, explained the legal nature of PDVSA in the following terms: "(...) the legal nature of Petróleos de Venezuela S.A. is that of a limited company that, as such and due to the flexibility and independence of its administration, ***is subject to the entire private law regime of the public limited companies.***". However, the regulations of the Statute that Reserves to the State the Industry and Trade of Hydrocarbons and other legal regulations have to be attended.

5.3 The Organic Statute on Hydrocarbons provides in its article 8 that the Minister of Popular Power of Petroleum is responsible for the formulation,

---

submitted to the prior and express opinion of the Attorney General of the Republic."
[9]**Constitution of the Bolivarian Republic of Venezuela. "Article 303.** For reasons of economic sovereignty, politics and national strategy, the State shall keep all of the shares of Petróleos de Venezuela, SA, or of the body created for the management of the oil industry, except for the subsidiaries, strategic associations, companies and any other that has been constituted or constituted as a result of the development of business of Petróleos de Venezuela "



regulation and monitoring of the policies and planning, execution and supervision of all the activities in the field of hydrocarbons, which includes the following: development, conservation, harnessing and control of said resources; as well as the markets research, the analysis and pricing of hydrocarbons and their products. In this regard, the Minister of Popular Power of Petroleum is the competent national body about everything related to the administration of hydrocarbons. Consequently, he has the power to inspect the works and activities inherent to them, as well as to supervise the operations that cause the taxes, rates or contributions established in this statute and review the respective accounting.

5.4 Likewise, the Minister of Popular Power of Petroleum has within its power, according to what is established in the aforementioned article 78 numeral 14 of the Decree with Rank, Value and Force of the Organic Statute of the Public Administration, to exercise the representation of the shares belonging to the Republic. in the state companies assigned to it -as in the case of PDVSA-, as well as exercising the corresponding shareholding control.

5.5 This is how the law gives the Minister broad powers as the highest authority in the field of hydrocarbons and that he legally represents the owner of the entire share capital of PDVSA, its quality is unquestionable to execute the contract (trust) on behalf of PDVSA. It is noteworthy that, statutorily, the "supreme administration" of PDVSA is vested in its sole shareholder represented by the Minister of Popular Power of Petroleum.[10]

5.6 In conclusion, PDVSA is a limited company whose sole shareholder is the Republic and the Minister of Petroleum is the representative of the Republic's shares. As such, the Minister of Popular Power of Petroleum was fully empowered to form the PDVSA US Litigation Trust Agreement. The Minister is acting a representative of the shareholder and not as part of the Executive Power.

## 6. The present case in the context of the Venezuelan political situation

6.1 It is well known in the world that the political and economic situation in Venezuela is very difficult and that at least part of the responsibility for this situation is due to repeated acts of corruption in the public administration and state companies

6.2 The purpose of the PDVSA US trust agreement is to safeguard the interests of PDVSA and ultimately of the country by trying to recover significant amounts of

---

[10] Constitutive Act-Statutes of Petróleos de Venezuela, S.A. "Seventh Clause. The supreme direction and administration of society lies in the Assembly."



money that the managers handled illicitly to the detriment of PDVSA.

6.3 The form of a trust in which PDVSA is only a party to claim these litigious rights obeys the intention to isolate the claim of these rights from the vicissitudes of Venezuelan politics. Those who seek the nullity of this agreement basically want to frustrate the recovery and benefit the corrupt management.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April __09__, 2018.

ROGELIO PÉREZ PERDOMO

**EXHIBIT "A"**

**EXHIBIT "A"**

# Rogelio Pérez-Perdomo

Law degree and PhD in law at Universidad Central de Venezuela (1964 and 1974)
LLM Harvard Law School (1972)

Professor of Law and former Law Dean at Universidad Metropolitana, Caracas
Frequent visiting professor since 1998 at Stanford Law School
Also taught in Mexico, Chile, Colombia, and Peru

Member of the National Academy of History of Venezuela
Honorary Member of the Peruvian Academy of Law
Scientific Director of the Oñati International Institute of Sociology of Law in 1992-93 (Spain) and Fellow of this Institute from 1993 onward
Academic Director, Stanford Program for International Legal Studies (1999-2002)
Former President of the Research Committee on Sociology of Law of the International Sociological Association
Member of the board of several academic journals in the Americas and Europe

Many publications in the areas of history of law, comparative law and law and society in Spanish, English and other languages – selected works below:

Stanford University Press:
*Legal cultures in the age of globalization/ Latin America and Latin Europe* (co-edited with Lawrence Friedman, 2003)
*Latin American lawyers/ A historical introduction* (2006)
*Law in many societies* (co-edited with Lawrence Friedman & Manuel Gómez, 2011)
*The civil law tradition*, 3rd edition (coauthored with John H. Merryman, 2007)

More recently:
*Big law in Latin America and Spain* (co-edited with Manuel Gómez, Palgrave Macmillan, 2018).

In Spanish, most recent books are:
*Justicia e injusticias en Venezuela* (Universidad Metropolitana and Academia Nacional de la Historia, 2011)
*Los juristas académicos de Venezuela* (Universidad Metropolitana, 2014)
*Ideas del derecho y cultura jurídica en Venezuela* (Universidad Metropolitana, 2018)

(*abstract of cv, English*)
2018



PLAINTIFF'S EXHIBIT 35A