# GACETA OFICIAL

## DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA

| AÑO CXLII – MES III | Caracas, lunes 22 de diciembre de 2014 | Número 40.567 |

## SUMARIO

**ASAMBLEA NACIONAL**
Acuerdo mediante el cual se designa al ciudadano Tarek Williams Saab Halabi, como Defensor del Pueblo de la República Bolivariana de Venezuela.

Acuerdo mediante el cual se designa al ciudadano Manuel Enrique Galindo Ballesteros, como Contralor General de la República Bolivariana de Venezuela.

Acuerdo mediante el cual se designa a la ciudadana Luisa Marvelia Ortega Díaz, como Fiscal General de la República Bolivariana de Venezuela.

**PRESIDENCIA DE LA REPÚBLICA**
Decreto Nº 1.551, mediante el cual se nombra a la ciudadana Soraida Ramírez Osorio, como Presidenta del Consejo Nacional para las Personas con Discapacidad (CONAPDIS).

Decreto Nº 1.552, mediante el cual se nombra a la ciudadana Soraida Ramírez Osorio, como Presidenta de la Fundación «Misión José Gregorio Hernández».

Decreto Nº 1.553, mediante el cual se adscribe al Ministerio del Poder Popular para la Comunicación y la Información, la Fundación Poliedro de Caracas.

**VICEPRESIDENCIA DE LA REPÚBLICA**
Junta Liquidadora de la Superintendencia Nacional de Costos y Precios Justos y del Instituto para la Defensa de las Personas en el Acceso a los Bienes y Servicios
Providencia mediante la cual se transfiere a la Superintendencia Nacional para la Defensa de los Derechos Socio Económicos (SUNDDE), los Procedimientos Administrativos activos, llevados por el Instituto para la Defensa de las Personas en el Acceso a los Bienes y Servicios (INDEPABIS), y a esta Superintendencia.

Fondo de Compensación Interterritorial
Providencia mediante la cual se designa a la ciudadana Joali Gabriela Moreno Pinto, como Gerente General (E) de este Organismo.

**MINISTERIO DEL PODER POPULAR DEL DESPACHO DE LA PRESIDENCIA Y SEGUIMIENTO DE LA GESTIÓN DE GOBIERNO**
Resolución mediante la cual se designa al ciudadano Jorge Luis Oropeza Pariacano, como Director de la Dirección de Administración de la Oficina de Recursos Humanos de este Ministerio, en calidad de Encargado.

**MINISTERIO DEL PODER POPULAR PARA RELACIONES INTERIORES, JUSTICIA Y PAZ**
Resolución mediante la cual se dicta la Homologación de los Rangos de los Funcionarios y Funcionarias Policiales de la extinta Policía Metropolitana de Caracas en condición de Jubilados y Pensionados por Invalidez.

Resolución mediante la cual se designa al ciudadano Balmore José González Guerra, como Director (E) del Despacho del Viceministro del Sistema Integrado de Policía, de este Ministerio.

Oficina de Auditoría Interna
Dirección de Determinación de Responsabilidades
Auto Decisorio mediante el cual se declara la Responsabilidad Administrativa del Oficial José Manuel Bernal Amaya, así como la Responsabilidad Civil (Formulación de Reparo) por el daño causado al Patrimonio de la República, y se declara la Firmeza en Sede Administrativa de la Decisión.- (Se reimprime por error de Imprenta).

**MINISTERIO DEL PODER POPULAR PARA RELACIONES EXTERIORES**
Resolución mediante la cual cesa en sus funciones el ciudadano Orlando Torrealba Jiménez, como Embajador extraordinario y Plenipotenciario de la República Bolivariana de Venezuela en la República de Guatemala.

**MINISTERIO DEL PODER POPULAR PARA LA AGRICULTURA Y TIERRAS**
Resolución mediante la cual se designa como Directores Principales de la Junta Directiva de la Corporación Ganadera Bravos de Apure, S.A., a los ciudadanos que en ella se indican.

Resolución mediante la cual se establece el subsidio al arroz paddy, maíz blanco y maíz amarillo de producción nacional en los estados Barinas y Portuguesa.

Resolución mediante la cual se designa a la ciudadana Lidia Nacaris Pérez de Altuve, como Directora General, Encargada, de la Dirección General de Circuitos Agrícolas Forestal, de este Ministerio.

**MINISTERIO DEL PODER POPULAR PARA EDUCACIÓN UNIVERSITARIA, CIENCIA Y TECNOLOGÍA**
Resoluciones mediante las cuales se otorga el beneficio de Jubilación Especial, a las ciudadanas y ciudadanos que en ellas se mencionan.

Fundación Conciencia Televisión
Providencia mediante la cual se autoriza a la ciudadana Iliana Amengual Capdevielle, en su carácter de Gerente de Administración y Servicios Generales de esta Fundación, para movilizar las Cuentas Bancarias de dicha Fundación, exclusivamente en conjunto con el Presidente y la Directora Ejecutiva, hasta por los montos máximos autorizados para cada uno de ellos, respectivamente.

**MINISTERIO DEL PODER POPULAR PARA TRANSPORTE ACUÁTICO Y AÉREO**
Resolución mediante la cual se establecen las tarifas sobre los servicios y actividades conexas al sector acuático, que presta el Instituto Nacional de los Espacios Acuáticos (INEA).

Junta Interventora
del Instituto Nacional de Aeronáutica Civil
Providencia mediante la cual se dicta las condiciones en las cuales se Regulan las Operaciones de Aeronaves de Aviación General con Matrícula Extranjera hacia y en el territorio nacional.

**MINISTERIO DEL PODER POPULAR PARA LA CULTURA**
Resolución mediante la cual se designa al ciudadano y al ciudadano que en ella se señalan, como Cuentadantes responsables de las Unidades Administrativas, integrantes de la Estructura Financiera del Presupuesto de Gastos del Ejercicio Económico Financiero 2015.

**CONTRALORÍA GENERAL DE LA FUERZA ARMADA NACIONAL BOLIVARIANA**
Orden Administrativa mediante la cual se anula por error material la Orden del Contralor CONGEFANB Nº 007/2014, de fecha 14 de octubre de 2014, donde se delega en el Director de determinación de Responsabilidad Administrativa, ciudadano Coronel Juan Carlos Peñero, la facultad de refrendar documentos para la debida Certificación.

**ALCALDÍA BOLIVARIANA DEL MUNICIPIO SAN JOAQUÍN**
Resoluciones mediante las cuales se otorga Pensión de Jubilación Especial, a los ciudadanos y ciudadanas que en ellas se especifican.

**PROCURADURÍA GENERAL DE LA REPÚBLICA**
Resoluciones mediante las cuales se designa al ciudadano Reinaldo Enrique Muñoz Pedroza, como Viceprocurador General de la República Bolivariana de Venezuela; y se le delega la firma de los actos y documentos que en ellas se indican.

**TRIBUNAL SUPREMO DE JUSTICIA**
Tribunal Disciplinario Judicial
Sentencia mediante la cual se declara la Responsabilidad Disciplinaria a la ciudadana Beatriz del Carmen Ceballos, en su condición de Jueza del Tribunal que en ella se menciona del estado Mérida, por haber incurrido en la falta disciplinaria prevista en la Ley que en ella se especifica.

**PLAINTIFF'S EXHIBIT 46**

417.564   GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA   Lunes 22 de diciembre de 2014

## ASAMBLEA NACIONAL

República Bolivariana de Venezuela
Asamblea Nacional
Caracas - Venezuela

**LA ASAMBLEA NACIONAL
DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA**

En uso de las atribuciones, que le confiere el artículo 279 de la Constitución de la República Bolivariana de Venezuela, y de conformidad con lo aprobado en sesión Extraordinaria del día 22 de diciembre de 2014.

**ACUERDA**

**ÚNICO:** Designar al ciudadano *TAREK WILLIANS SAAB HALABI*, titular de la Cédula de Identidad Nº **8.459.301**, Defensor del Pueblo de la República Bolivariana de Venezuela.

Comuníquese y publíquese.

Dado, firmado y sellado en el Palacio Federal Legislativo, sede de la Asamblea Nacional de la República Bolivariana de Venezuela, en Caracas, a los veintidós días del mes de diciembre de dos mil catorce. Años 204° de la Independencia, 155° de la Federación y 15° de la Revolución Bolivariana.



República Bolivariana de Venezuela
Asamblea Nacional
Caracas - Venezuela

**LA ASAMBLEA NACIONAL
DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA**

En uso de las atribuciones, que le confiere el artículo 279 de la Constitución de la República Bolivariana de Venezuela, y de conformidad con lo aprobado en sesión Extraordinaria del día 22 de diciembre de 2014.

**ACUERDA**

**ÚNICO:** Designar al ciudadano *MANUEL ENRIQUE GALINDO BALLESTEROS*, titular de la Cédula de Identidad Nº **4.285.020**, como Contralor General de la República Bolivariana de Venezuela.

Comuníquese y publíquese.

Dado, firmado y sellado en el Palacio Federal Legislativo, sede de la Asamblea Nacional de la República Bolivariana de Venezuela, en Caracas, a los veintidós días del mes de diciembre de dos mil catorce. Años 204° de la Independencia, 155° de la Federación y 15° de la Revolución Bolivariana.

República Bolivariana de Venezuela
Asamblea Nacional
Caracas - Venezuela

**LA ASAMBLEA NACIONAL
DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA**

En uso de las atribuciones, que le confiere el artículo 279 de la Constitución de la República Bolivariana de Venezuela, y de conformidad con lo aprobado en sesión Extraordinaria del día 22 de diciembre de 2014.

**ACUERDA**

**ÚNICO:** Designar a la ciudadana *LUISA MARVELIA ORTEGA DÍAZ*, titular de la Cédula de Identidad Nº **4.555.631**, Fiscal General de la República Bolivariana de Venezuela.

Comuníquese y publíquese.

Dado, firmado y sellado en el Palacio Federal Legislativo, sede de la Asamblea Nacional de la República Bolivariana de Venezuela, en Caracas, a los veintidós días del mes de diciembre de dos mil catorce. Años 204° de la Independencia, 155° de la Federación y 15° de la Revolución Bolivariana



## PRESIDENCIA DE LA REPÚBLICA

Decreto Nº 1.551                              22 de diciembre de 2014

**NICOLÁS MADURO MOROS
Presidente de la República**

Con el supremo compromiso y voluntad de lograr la mayor eficacia política y calidad revolucionaria en la construcción del Socialismo, la refundación de la patria venezolana, basado en los principios humanistas, sustentado en condiciones morales éticas que persiguen el progreso del país y del colectivo, por mandato del pueblo de conformidad con lo establecido en el artículo 226 de la Constitución de la República Bolivariana de Venezuela; y en ejercicio de las atribuciones que me confieren los numerales 2 y 16 del artículo 236 *ejusdem*, de conformidad con el artículo 46 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, en concordancia con lo dispuesto en los artículos 4º, 18, 19 y el numeral 7 del artículo 20 de la Ley del Estatuto de la Función Pública, concatenado con el artículo 56 de la Ley para las Personas con Discapacidad.

**DECRETO**

**Artículo 1°.** Nombro a la ciudadana **SORAIDA RAMÍREZ OSORIO**, titular de la cédula de identidad Nº V-**10.074.531**, Presidenta del **CONSEJO NACIONAL PARA LAS PERSONAS CON DISCAPACIDAD (CONAPDIS)**, con las competencias inherentes al referido cargo, de conformidad con el ordenamiento jurídico vigente.

**Artículo 2°.** Delego en el Ministro del Poder Popular del Despacho de la Presidencia y Seguimiento de la Gestión de Gobierno, la juramentación de la referida ciudadana.



Lunes 22 de diciembre de 2014   GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA   417.565

**Artículo 3°.** El presente Decreto entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Dado en Caracas, a los veintidós días del mes de diciembre de dos mil catorce. Años 204° de la Independencia, 155° de la Federación y 15° de la Revolución Bolivariana.

Ejecútese,
(L.S.)



NICOLÁS MADURO MOROS

Refrendado
El Vicepresidente Ejecutivo
de la República
(L.S.)

JORGE ALBERTO ARREAZA MONTSERRAT

Refrendado
El Ministro del Poder Popular del
Despacho de la Presidencia y Seguimiento
de la Gestión de Gobierno
(L.S.)

CARLOS ALBERTO OSORIO ZAMBRANO

---

Decreto N° 1.552                22 de diciembre de 2014

**NICOLÁS MADURO MOROS**
**Presidente de la República**

Con el supremo compromiso y voluntad de lograr la mayor eficacia política y calidad revolucionaria en la construcción del Socialismo, la refundación de la patria venezolana, basado en los principios humanistas, sustentado en condiciones morales éticas que persiguen el progreso del país y del colectivo, por mandato del pueblo de conformidad con lo establecido en el artículo 226 de la Constitución de la República Bolivariana de Venezuela; y en ejercicio de las atribuciones que me confieren los numerales 2 y 16 del artículo 236 *ejusdem*, de conformidad con el artículo 46 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, en concordancia con lo dispuesto en los artículos 4°, 18, 19 y el numeral 7 del artículo 20 de la Ley del Estatuto de la Función Pública, concatenado con el artículo 6 del Decreto 498 de fecha 15 de octubre de 2013, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 40.280 de fecha 25 de octubre de 2013.

**DECRETO**

**Artículo 1°.** Nombro a la ciudadana **SORAIDA RAMIREZ OSORIO,** titular de la cédula de identidad N° V-10.074.531, Presidenta de la **FUNDACIÓN "MISIÓN JOSÉ GREGORIO HERNÁNDEZ"**, con las competencias inherentes al referido cargo, de conformidad con el ordenamiento jurídico vigente.

**Artículo 2°.** Delego en el Ministro del Poder Popular del Despacho de la Presidencia y Seguimiento de la Gestión de Gobierno, la juramentación de la referida ciudadana.

---

**Artículo 3°.** El presente Decreto entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Dado en Caracas, a los veintidós días del mes de diciembre de dos mil catorce. Años 204° de la Independencia, 155° de la Federación y 15° de la Revolución Bolivariana.

Ejecútese,
(L.S.)



NICOLÁS MADURO MOROS

Refrendado
El Vicepresidente Ejecutivo
de la República
(L.S.)

JORGE ALBERTO ARREAZA MONTSERRAT

Refrendado
El Ministro del Poder Popular del
Despacho de la Presidencia y Seguimiento
de la Gestión de Gobierno
(L.S.)

CARLOS ALBERTO OSORIO ZAMBRANO

---

Decreto N° 1.553                22 de diciembre de 2014

**NICOLÁS MADURO MOROS**
**Presidente de la República**

Con el supremo compromiso y voluntad de lograr la mayor eficacia política y calidad revolucionaria en la construcción del Socialismo, la refundación de la patria venezolana, basado en principios humanistas, sustentado en condiciones morales y éticas que persiguen el progreso del país y del colectivo, por mandato del pueblo de conformidad con lo establecido en el artículo 226, de la Constitución de la República Bolivariana de Venezuela; y en ejercicio de las atribuciones que me confieren los numerales 2, 11 y 20 del artículo 236 *ejusdem*, en concordancia con el artículo 118 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, y los numerales 2 y 3 del artículo 119 *ibidem*, en Consejo de Ministros,

**CONSIDERANDO**

Que para el cumplimiento de los fines del Estado, el Ejecutivo Nacional debe adaptar su estructura organizativa a las nuevas directrices y políticas de orden social, para lo cual se impone la necesidad de realizar cambios pertinentes que procuren la satisfacción de los intereses colectivos,

**CONSIDERANDO**

Que es potestad del Ejecutivo Nacional, la organización de la Administración Pública Nacional, en sus niveles Central y Descentralizado, atendiendo al principio de competencia de los órganos de la Administración Pública, y en observancia a las competencias materiales que corresponden a cada uno de sus órganos y entes,

**CONSIDERANDO**

Que el Ministerio del Poder Popular para la Comunicación y la Información, es el órgano rector encargado de la política de comunicación, información y publicidad del Gobierno Nacional, que oriente y promueva el acceso de todos los venezolanos y las venezolanas a la información oportuna, veraz, imparcial y sin censura,

**CONSIDERANDO**

Que la **Fundación Poliedro de Caracas**, se creó con el objetivo primordial de contribuir en la organización, producción, prestación y promoción de toda clase de espectáculos y eventos de carácter artístico y cultural, gratuitos o a precios populares, procurando el fomento a la educación y la cultura del pueblo venezolano, fomentando toda manifestación que propenda al fortalecimiento de la identidad caraqueña y la venezolanidad,

**CONSIDERANDO**

Que la Administración Pública Nacional debe optimizar la funcionalidad y aumentar la eficiencia en el cumplimiento del objeto de la **Fundación Poliedro de Caracas**, mediante su adscripción al órgano ministerial rector en la política de comunicación, información y publicidad de la gestión del Gobierno Nacional.

**DECRETO**

**Artículo 1º.** Se adscribe al **MINISTERIO DEL PODER POPULAR PARA LA COMUNICACIÓN Y LA INFORMACIÓN,** la **FUNDACIÓN POLIEDRO DE CARACAS,** cuya creación fue autorizada mediante Decreto Nº 1.695 de fecha 15 de enero de 1997, publicado en la Gaceta Oficial de la República de Venezuela Nº 36.127 de fecha 16 de enero de 1997, cuya última reforma fue dictada mediante Decreto Nº 5.554 de fecha 04 de septiembre de 2007, publicada en la Gaceta Oficial de la República de Venezuela Nº 38.762 de fecha 05 de septiembre de 2007.

**Artículo 2º.** El Ministerio del Poder Popular para la Comunicación y la Información ejercerá la administración, gestión, funcionamiento y operación de la Fundación Poliedro de Caracas, así como la administración de sus bienes. A tal efecto, se ordena a la Ministra para la Comunicación y la Información coordinar con el Jefe de Gobierno del Distrito Capital, la suscripción de una encomienda convenida donde dicho órgano ministerial asuma dichas actividades, hasta tanto se materialice la transferencia a título gratuito de los bienes de dicha Fundación.

**Artículo 3º.** Autorizar que el inmueble denominado "POLIEDRO DE CARACAS", sea administrado y operado por el Ministerio del Poder Popular para la Comunicación y la Información, el cual podrá ejercer dichas facultades de manera directa, o a través del ente que a tal efecto designe.

**Artículo 4º.** Autorizar al Ministerio del Poder Popular para la Comunicación y la Información a realizar todos los trámites jurídicos y administrativos necesarios para asegurar el traspaso de todos los derechos, recursos, contratos y convenios celebrados por la **FUNDACIÓN POLIEDRO DE CARACAS.**

**Artículo 5º.** La variación de adscripción a que se refiere el artículo anterior, será incluida en la futura reforma del Decreto sobre Organización y Funcionamiento de la Administración Pública Nacional.

**Artículo 6º.** El Ministerio del Poder Popular para la Comunicación y la Información, realizará todos los trámites necesarios para protocolizar la reforma del Acta Constitutiva Estatutaria de la **FUNDACIÓN POLIEDRO DE CARACAS,** por ante el Registro Público correspondiente, a los fines de adaptarlas a lo previsto en el presente Decreto, y velará porque se haga efectiva su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela, en cumplimiento de lo previsto en el artículo 112 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública.

**Artículo 7º.** El Consejo Directivo de la **FUNDACIÓN POLIEDRO DE CARACAS,** queda constituido por las ciudadanas y ciudadanos que se indican a continuación:

| PRESIDENTA: | |
|---|---|
| JACQUELINE COROMOTO FARIA PINEDA | |
| C.I. V- 5.051.541 | |
| **MIEMBROS PRINCIPALES** | **MIEMBROS SUPLENTES** |
| CÉSAR GABRIEL TRÓMPIZ CECCONI | EDITHA JOHANNA BRIONES VÉLEZ |
| C.I. Nº V-16.923.784 | C.I. Nº V- 13.493.653 |
| GUSTAVO ADOLFO ARREAZA MONTSERRAT | JOSÉ JESÚS GÓMEZ MARCANO |
| C.I. Nº V- 6.563.568 | C.I. Nº V- 12.225.925 |
| FÉLIX RAMÓN PLASENCIA GONZÁLEZ | FREDDY ALFRED ÑÁÑEZ CONTRERAS |
| C.I. Nº V- 6.366.780 | C.I. Nº V- 13.113.260 |
| BLANCA ELENA REY GONZÁLEZ | ALEJANDRO MIGUEL LÓPEZ RODRÍGUEZ |
| C.I. Nº V- 11.043.139 | C.I. Nº V- 15.913.400 |

**Artículo 8º.** La Ministra del Poder Popular para la Comunicación y la Información, queda encargada de la ejecución del presente Decreto.

**Artículo 9º.** El presente Decreto entrará en vigencia a partir de la fecha de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Dado en Caracas, a los veintidós días del mes de diciembre de dos mil catorce. Años 204º de la Independencia, 155º de la Federación y 15º de la Revolución Bolivariana.

Ejecútese,
(L.S.)



NICOLÁS MADURO MOROS

Refrendado
El Vicepresidente Ejecutivo
de la República
(L.S.)

JORGE ALBERTO ARREAZA MONTSERRAT

Refrendado
El Ministro del Poder Popular del
Despacho de la Presidencia y Seguimiento
de la Gestión de Gobierno
(L.S.)

CARLOS ALBERTO OSORIO ZAMBRANO

Lunes 22 de diciembre de 2014     GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA     417.567

Refrendado
La Ministra del Poder Popular
para Relaciones Interiores,
Justicia y Paz
(L.S.)

     CARMEN TERESA MELÉNDEZ RIVAS

Refrendado
El Ministro del Poder
Popular para Relaciones Exteriores
(L.S.)

     RAFAEL DARÍO RAMIREZ CARREÑO

Refrendado
El Ministro del Poder Popular
de Planificación
(L.S.)

     RICARDO JOSÉ MENÉNDEZ PRIETO

Refrendado
El Ministro del Poder Popular
para Economía, Finanzas y Banca Pública
(L.S.)

     RODOLFO CLEMENTE MARCO TORRES

Refrendado
El Ministro del Poder Popular
para la Defensa
(L.S.)

     VLADIMIR PADRINO LÓPEZ

Refrendado
La Ministra del Poder Popular para
el Comercio
(L.S.)

     ISABEL CRISTINA DELGADO ARRIA

Refrendado
El Encargado del Ministerio del
Poder Popular para Industrias
(L.S.)

     JOSÉ DAVID CABELLO RONDÓN

Refrendado
El Ministro del Poder Popular para
el Turismo
(L.S.)

     ANDRÉS GUILLERMO IZARRA GARCÍA

Refrendado
El Ministro del Poder Popular
para la Agricultura y Tierras
(L.S.)

     JOSÉ LUÍS BERROTERÁN NUÑEZ

Refrendado
EL Ministro del Poder Popular para
Educación Universitaria, Ciencia y Tecnología
(L.S.)

     MANUEL ÁNGEL FERNÁNDEZ MELÉNDEZ

Refrendado
El Ministro del Poder Popular para
la Educación
(L.S.)

     HÉCTOR VICENTE RODRÍGUEZ CASTRO

Refrendado
La Ministra del Poder Popular para
la Salud
(L.S.)

     NANCY EVARISTA PÉREZ SIERRA

Refrendado
El Ministro del Poder Popular para
el Proceso Social de Trabajo
(L.S.)

     JESÚS RAFAEL MARTÍNEZ BARRIOS

Refrendado
El Ministro del Poder Popular para
Transporte Terrestre y Obras Públicas
(L.S.)

     HAIMAN EL TROUDI DOUWARA

Refrendado
El Ministro del Poder Popular para
Transporte Acuático y Aéreo
(L.S.)

     GIUSEPPE ANGELO CARMELO YOFFREDA YORIO

Refrendado
El Ministro del poder popular
para Ecosocialismo, Hábitat y Vivienda.
(L.S.)

     RICARDO ANTONIO MOLINA PEÑALOZA

Refrendado
El Ministro del Poder Popular
de Petróleo y Minería
(L.S.)

     ASDRÚBAL JOSÉ CHÁVEZ JIMÉNEZ

Refrendado
La Ministra del Poder Popular para
la Comunicación y la Información
(L.S.)

     JACQUELINE COROMOTO FARIA PINEDA

Refrendado
El Ministro del Poder Popular para
las Comunas y los Movimientos Sociales
(L.S.)

     ELÍAS JOSÉ JAUA MILANO

Refrendado
El Ministro del Poder Popular para
la Alimentación
(L.S.)

     YVÁN JOSÉ BELLO ROJAS

Refrendado
El Ministro del Poder Popular para
la Cultura
(L.S.)

     REINALDO ANTONIO ITURRIZA LÓPEZ

Refrendado
El Ministro del Poder Popular para
la Juventud y el Deporte
(L.S.)

     ANTONIO ENRIQUE ÁLVAREZ CISNEROS

Refrendado
La Ministra del Poder Popular para
los Pueblos Indígenas
(L.S.)

     ALOHA JOSELYN NÚÑEZ GUTIÉRREZ

Refrendado
La Ministra del Poder Popular
para la Mujer y la Igualdad de Género
(L.S.)

     ANDREÍNA TARAZÓN BOLÍVAR

Refrendado
El Ministro del Poder Popular
para la Energía Eléctrica
(L.S.)

     JESSE ALONSO CHACÓN ESCAMILLO

Refrendado
La Ministra del Poder Popular
para el Servicio Penitenciario
(L.S.)

     MARÍA IRIS VARELA RANGEL

---

# VICEPRESIDENCIA DE LA REPÚBLICA

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**JUNTA LIQUIDADORA DE LA SUPERINTENDENCIA NACIONAL DE**
**COSTOS Y PRECIOS JUSTOS Y DEL INSTITUTO PARA LA DEFENSA**
**DE LAS PERSONAS EN EL ACCESO A LOS BIENES Y SERVICIOS**

Caracas, 15 de diciembre de 2014
204° 155° y 15°

**Providencia N° 004/2014**

La Junta Liquidadora de la Superintendencia Nacional de Costos y Precios Justos (SUNDECOP) y del Instituto para la Defensa de las Personas en el Acceso a los Bienes y Servicios (INDEPABIS), designada mediante Decreto Presidencial N° 796, de fecha 18 de febrero de 2014, publicado en la Gaceta

Oficial de la República Bolivariana de Venezuela Número 40.358, en el ejercicio de las atribuciones conferidas en el numeral 23, del artículo 7, del Reglamento Parcial de la Ley Orgánica de Precios Justos, sobre el Régimen de Supresión del Instituto para la Defensa de las Personas en el Acceso a los Bienes y Servicios (INDEPABIS) y la Superintendencia Nacional de Costos y Precios Justos (SUNDECOP), a los fines de dar cumplimiento a lo establecido en el único aparte del artículo 2 del Decreto con Rango, Valor y Fuerza de la Ley Orgánica de Precios Justos, concatenado con su Disposición Transitoria Tercera, en aras de garantizar la seguridad jurídica, la protección y libre ejercicio de los derechos de los particulares, acordó dictar la siguiente:

### PROVIDENCIA ADMINISTRATIVA

**ARTÍCULO 1.** Transferir a la Superintendencia Nacional para la Defensa de los Derechos Socio Económicos (SUNDDE), los Procedimientos Administrativos activos, llevados por el Instituto para la Defensa de las Personas en el Acceso a los Bienes y Servicios (INDEPABIS), y la Superintendencia Nacional de Costos y Precios Justos (SUNDECOP), para que conozcan, sustancien y decidan conforme a las leyes aplicables.

La Junta Liquidadora y la SUNDDE suscribirán las Actas de Entrega necesarias para la materialización de las transferencias a que se refiere el presente artículo, debiendo cumplir con los requisitos establecidos en el reglamento y demás leyes aplicables.

**ARTÍCULO 2.** Transferir a la Superintendencia de la Actividad Aseguradora (SUDEASEG), a la Superintendencia de las Instituciones del Sector Bancario (SUDEBAN), al Instituto Nacional de Aeronáutica Civil (INAC), los Procedimientos Administrativos activos relacionados con las actividades que a cada uno de los organismos citados competa, para que dentro del marco legal especial que los rige, conozcan, sustancien y decidan dichos procedimientos.

La Junta liquidadora, a los fines de formalizar la transferencia a que se refiere el presente artículo, realizará entrega material de los expedientes administrativos relacionados con cada denuncia, mediante un Acta de Entrega Material, que deberá ser suscrita por la Junta y el Ente receptor.

**ARTÍCULO 3.** Transferir al Ministerio del Poder Popular para Ecosocialismo, Hábitat y Vivienda, en la Dirección General de Gestión del Sistema Nacional de Vivienda y Hábitat, los Procedimientos Administrativos activos relacionados con estafa inmobiliaria, para que conozca, sustancie y decida dichos procedimientos. Así mismo podrá revisar y resolver las Medidas impuestas por los organismos en supresión.

La Junta liquidadora, a los fines de formalizar la transferencia a que se refiere el presente artículo, realizará entrega material de los expedientes administrativos relacionados con cada denuncia, mediante un Acta de Entrega Material, que deberá ser suscrita por la Junta y el Ente receptor.

**ARTÍCULO 4.** Esta Providencia entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela. Comuníquese y publíquese,



*DEYANIRA BRICEÑO GARCÍA*
Presidenta
*Decreto N° 796 Gaceta Oficial N° 40.358*
*de fecha 18 de febrero de 2014*



*NAHUNIMAR JOSÉ CASTILLO VIVENES*
Miembro Principal
*Decreto N° 796*
*Gaceta Oficial N° 40.358*
*de fecha 18 de febrero de 2014*

*MIGUEL ANGEL ZAPATA TORRES*
Miembro Principal
*Decreto N° 796*
*Gaceta Oficial N° 40.358*
*de fecha 18 de febrero de 2014*

*RUBÉN ERNESTO MORENO VÁSQUEZ*
Miembro Principal
*Decreto N° 796*
*Gaceta Oficial N° 40.358*
*de fecha 18 de febrero de 2014*

*REINALDO RAFAEL SIMANCAS QUIÑONES*
Miembro Principal
*Decreto N° 796*
*Gaceta Oficial N° 40.358*
*de fecha 18 de febrero de 2014*

---

**REPÚBLICA BOLIVARIANA DE VENEZUELA**
**FONDO DE COMPENSACIÓN INTERTERRITORIAL**
**DIRECCIÓN EJECUTIVA**
**PROVIDENCIA NÚMERO 0044,**
**CARACAS 15 DE DICIEMBRE DE 2014.**
**204° 155° y 15°**

El Director Ejecutivo (E) del Fondo de Compensación Interterritorial (FCI), en ejercicio de las atribuciones conferidas mediante la Resolución N° 032 de fecha 11 de Octubre de 2013, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.270 de fecha 11 de octubre de 2013, corregida mediante la Resolución N° 036 de fecha 15 de octubre de 2013, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.272 de fecha 15 de octubre de 2013, numeral 6 de la Resolución N° 002 de fecha 26 de enero de 2014, publicada en la Gaceta Oficial N° 40.433 de fecha 13 de junio de 2014 y de las disposiciones contenidas en la Reforma Parcial Reglamento Orgánico de la Secretaría del Consejo Federal de Gobierno dictada mediante Resolución N° 0030 de fecha 30 de julio de 2013, publicada mediante Gaceta Oficial de la República Bolivariana de Venezuela N° 40.229 de fecha 15 de agosto de 2013, y los artículos 34 y 35 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicada en Gaceta Oficial de la República Bolivariana de Venezuela N° 6.147 extraordinaria de fecha 17 de noviembre de 2014, decide:

**Primero.** Designar a la ciudadana **JOALI GABRIELA MORENO PINTO,** venezolana, mayor de edad y titular de la cédula de identidad N° **V-13.218.824,** como **GERENTE GENERAL (E)** del Fondo de Compensación Interterritorial (FCI) del Consejo Federal de Gobierno, cargo adscrito a la Dirección Ejecutiva.

**Segundo.** Delegar en la prenombrada ciudadana, la firma de los actos y documentos siguientes:

1) Comunicaciones y Oficios tanto internos como externos, que emanen del Fondo de Compensación Interterritorial.
2) Certificación de todos los documentos que reposen en los archivos y expedientes del Fondo de Compensación Interterritorial.

**Tercero:** Los actos y documentos que la prenombrada suscriba de conformidad con esta Providencia, deberán indicar inmediatamente bajo la firma, la fecha y número de la Providencia y Gaceta Oficial en la que haya sido publicada, de conformidad con lo establecido en artículo 18, numeral 7 de la Ley Orgánica de Procedimientos Administrativos.

**Cuarto:** La presente designación entrará en vigencia a partir del **26 de Noviembre de 2014.**



Comuníquese y Publíquese,

**GUY VERNÁEZ HERNÁNDEZ**
**Director Ejecutivo (E)**
**Fondo de Compensación Interterritorial**
Resolución N° 032, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.270 de fecha 11 de octubre de 2013, corregida mediante la Resolución N° 036, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.272 de fecha 15 de octubre de 2013, y Resolución N° 002 de fecha 26 de enero de 2014, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.433 de fecha 13 de junio de 2014



Lunes 22 de diciembre de 2014       GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA       417.569

## MINISTERIO DEL PODER POPULAR DEL DESPACHO DE LA PRESIDENCIA Y SEGUIMIENTO DE LA GESTIÓN DE GOBIERNO

República Bolivariana de Venezuela
Ministerio del Poder Popular del Despacho de la Presidencia y
Seguimiento de la Gestión de Gobierno
Despacho del Ministro

Caracas, 12 de diciembre de 2014
**204°, 155° y 15°**

**RESOLUCIÓN Nº 096-14**

El Ministro del Poder Popular del Despacho de la Presidencia y Seguimiento de la Gestión de Gobierno, ciudadano **CARLOS ALBERTO OSORIO ZAMBRANO**, titular de la cédula de identidad Nº **V-6.397.281**, designado mediante Decreto N° 877, de fecha 03 de abril de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.386, de la misma fecha; en el ejercicio de las atribuciones que le confieren los artículos 65 y 78, numerales 2 y 19 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 6.147 Extraordinario, de fecha 17 de noviembre de 2014; y de conformidad con lo establecido en los artículos 5 numeral 2, 19 y 20 de la Ley del Estatuto de la Función Pública, publicada en Gaceta Oficial de la República Bolivariana de Venezuela N° 37.522, de fecha 6 de septiembre de 2002.

**RESUELVE**

**PRIMERO:** Designar al ciudadano **JORGE LUIS OROPEZA PARIACANO**, titular de la cédula de identidad Nº **V-13.748.028**, como **DIRECTOR DE LA DIRECCIÓN DE ADMINISTRACIÓN** de la Oficina de Recursos Humanos del Ministerio del Poder Popular del Despacho de la Presidencia y Seguimiento de la Gestión de Gobierno, en calidad de encargado; quedando facultado para ejercer las atribuciones previstas en los artículos 13 y 14 del Reglamento Interno del Ministerio del Poder Popular del Despacho de la Presidencia y Seguimiento de la Gestión de Gobierno, contenido en Resolución Nº 052-13, de fecha 21 de octubre de 2013, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.282, de fecha 29 de octubre de 2013.

**SEGUNDO:** Se deroga cualquier Resolución que colide con la presente.

**TERCERO:** Mediante la presente Resolución juramento al referido ciudadano.

**CUARTO:** La presente Resolución, entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Conforme a lo dispuesto en el artículo 72 de la Ley Orgánica de Procedimientos Administrativos. Comuníquese y Publíquese.

**CARLOS ALBERTO OSORIO ZAMBRANO**
Ministro del Poder Popular del Despacho de la Presidencia y Seguimiento de la Gestión de Gobierno

## MINISTERIO DEL PODER POPULAR PARA RELACIONES INTERIORES, JUSTICIA Y PAZ

REPÚBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DEL PODER POPULAR PARA
RELACIONES INTERIORES, JUSTICIA Y PAZ
DESPACHO DE LA MINISTRA
204°, 155° y 15°

N° 479       FECHA: 22 DIC. 2014

**RESOLUCIÓN**

La Ministra del Poder Popular para Relaciones Interiores, Justicia y Paz, designada según Decreto N° 1.345 de fecha 24 de octubre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.526 de la misma fecha, en ejercicio de las competencias que le confieren los numerales 2, 3, 12, 19 y 27 del artículo 78 del Decreto N° 1.424 con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 6.147 Extraordinario, de fecha 17 de noviembre de 2014; en concordancia con lo establecido en el artículo 3 numerales 2, 3, 10 y 18 del Decreto N° 8.171, de fecha 29 de marzo de 2011, mediante el cual se establecen las competencias del Ministerio del Poder Popular para Relaciones Interiores y Justicia (hoy Relaciones Interiores, Justicia y Paz), publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.644, de la misma fecha, y de conformidad con lo establecido en el artículo 18 numeral 17 de la Ley Orgánica del Servicio de Policía y del Cuerpo de Policía Nacional Bolivariana; en concordancia con el artículo 21 numeral 3 del Decreto N° 9.045 con Rango, Valor y Fuerza de Ley del Estatuto de la Función Policial, ambos publicados en la Gaceta Oficial de la República Bolivariana de Venezuela N° 5.940 Extraordinario de fecha 7 de diciembre de 2009, y de acuerdo con lo establecido en el artículo 4 y la Disposición Transitoria Primera y Tercera de la Resolución N° 169 de fecha 25 de junio de 2010, mediante la cual se dictan las Normas relativas al Proceso de Homologación y Reclasificación de Grados y Jerarquías de los Funcionarios y Funcionarias Policiales, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.453 de la misma fecha,

**CONSIDERANDO**

Que de conformidad con la Constitución de la República Bolivariana de Venezuela, la protección de los Derechos Humanos representa un deber supremo, traducido en la obligación para el Estado Venezolano de proveer y mantener las condiciones necesarias para que, dentro de una situación de Justicia, paz y libertad, las personas puedan gozar de todos sus derechos fundamentales y sociales, así como de garantizar las condiciones jurídicas y administrativas para que todas las personas sean iguales ante la Ley de manera real y efectiva.

**CONSIDERANDO**

Que corresponde al Ministerio del Poder Popular para Relaciones Interiores, Justicia y Paz adoptar las medidas necesarias para la dirección, administración y funcionamiento de la Policía Metropolitana de Caracas, así como dirigir y controlar las actividades policiales, los recursos humanos y materiales de la referida policía, conforme a lo dispuesto en el artículo 2° del Decreto N° 5.814, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 38.853 de fecha 18 de enero de 2008,

**CONSIDERANDO**

Que de conformidad con lo previsto en la Disposición Transitoria Primera del Decreto con Rango, Valor y Fuerza de Ley del Estatuto de la Función Policial, deberá procederse a la homologación y reclasificación de los grados y jerarquías de los funcionarios y funcionarias policiales en condición de jubilación,

**CONSIDERANDO**

Que de conformidad con lo dispuesto en el artículo 1 de la Resolución N° 169, de fecha 25 de junio de 2010, mediante la cual se dictan las Normas relativas al Proceso de Homologación y Reclasificación de Grados y Jerarquías de los Funcionarios y Funcionarias Policiales, deberán regularse los procedimientos transitorios para la homologación y reclasificación de los grados y jerarquías de los funcionarios y funcionarias policiales, en condición de jubilación, a la nueva organización jerárquica de la carrera policial establecida en el mencionado Decreto con Rango, Valor y Fuerza de Ley del Estatuto de la Función Policial,

**CONSIDERANDO**

Que corresponde al Ministerio del Poder Popular para Relaciones Interiores, Justicia y Paz, dirigir, orientar, supervisar, evaluar y controlar los procedimientos transitorios para la homologación y reclasificación de los rangos y jerarquías de los funcionarios y funcionarias policiales en condición de jubilados,

**CONSIDERANDO**

Que la Resolución N° 169 de fecha 25 de junio de 2010, mediante la cual se dictan las Normas relativas al Proceso de Homologación y Reclasificación de Grados y Jerarquías de los Funcionarios y Funcionarias Policiales, no contempla dentro de los

417.570          GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA          Lunes 22 de diciembre de 2014

procedimientos transitorios la homologación y reclasificación de los grados y jerarquías de los funcionarios y funcionarias policiales que se encuentran en condición de pensionados por invalidez, a la nueva organización jerárquica de la carrera policial establecida en el mencionado Decreto con Rango, Valor y Fuerza de Ley del Estatuto de la Función Policial,

**CONSIDERANDO**

Que el Viceministro o Viceministra del Sistema Integrado de Policía, mediante la Resolución N° 0015 de fecha 6 de febrero de 2012, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.858 de la misma fecha, designó al Equipo Técnico Transitorio de Homologación y Reclasificación de grados y jerarquías de los funcionarios y funcionarias policiales en condición de jubilación del suprimido Cuerpo de Policía Metropolitana de Caracas, dando cabal cumplimiento a las diferentes fases del procedimiento de homologación,

**RESUELVE**

Dictar la siguiente:

**HOMOLOGACIÓN DE LOS RANGOS DE LOS FUNCIONARIOS Y FUNCIONARIAS POLICIALES DE LA EXTINTA POLICÍA METROPOLITANA DE CARACAS EN CONDICIÓN DE JUBILADOS Y PENSIONADOS POR INVALIDEZ.**

**Homologación**

**Artículo 1.** Se homologan los rangos de OCHO MIL TRESCIENTOS SESENTA Y SEIS (8.366) funcionarios y funcionarias policiales de la extinta Policía Metropolitana de Caracas, en condición de jubilados y pensionados por invalidez, de acuerdo con la nueva organización jerárquica de la carrera de policía establecida en el Decreto N° 9.045 con Rango Valor y Fuerza de Ley del Estatuto de la Función Policial, según los rangos que se señalan en la presente Resolución:

| Proceso de Homologación | N° de Funcionarios y Funcionarias Policiales Jubilados y pensionados por invalidez | Nóminas publicadas en la página *web* oficial del Ministerio del Poder Popular para Relaciones Interiores, Justicia y Paz (Anexos) |
|---|---|---|
| COMISIONADO JEFE / COMISIONADA JEFE | 67 | (Ver anexo N° 1) |
| COMISIONADO AGREGADO / COMISIONADA AGREGADA | 134 | (Ver anexo N° 2) |
| COMISIONADO / COMISIONADA | 640 | (Ver anexo N° 3) |
| SUPERVISOR JEFE / SUPERVISORA JEFE | 1193 | (Ver anexo N° 4) |
| SUPERVISOR AGREGADO / SUPERVISORA AGREGADA | 739 | (Ver anexo N° 5) |
| SUPERVISOR / SUPERVISORA | 1007 | (Ver anexo N° 6) |
| OFICIAL JEFE / OFICIAL JEFA | 1263 | (Ver anexo N° 7) |
| OFICIAL AGREGADO / OFICIAL AGREGADA | 367 | (Ver anexo N° 8) |
| OFICIAL | 2956 | (Ver anexo N° 9) |

**Asignación del Nuevo Rango**

**Artículo 2.** El Director o Directora del Cuerpo de Policía Nacional Bolivariana, en virtud de la Supresión y Liquidación de la Policía Metropolitana de Caracas y la transferencia de los funcionarios y las funcionarias policiales jubilados y pensionados por invalidez del extinto cuerpo policial al Cuerpo de Policía Nacional Bolivariana, procederá a dictar o refrendar los actos administrativos de efectos particulares que sean necesarios para la asignación del nuevo rango de cada funcionario o funcionaria policial, conforme a las previsiones contenidas en la Resolución N° 169 contentiva de las Normas relativas al Proceso de Homologación y Reclasificación de Grados y Jerarquías de los Funcionarios y Funcionarias Policiales.

**Efectos**

**Artículo 3.** Los efectos de la homologación de rangos a que se refiere la presente Resolución, serán considerados a partir del 1° de noviembre de 2014.



**Vigencia**

**Artículo 4.** La presente Resolución entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.
Por el Ejecutivo Nacional

CARMEN TERESA MELÉNDEZ RIVAS
MINISTRA

**REPÚBLICA BOLIVARIANA DE VENEZUELA**
**MINISTERIO DEL PODER POPULAR PARA RELACIONES INTERIORES, JUSTICIA Y PAZ**
**DESPACHO DE LA MINISTRA**
**204°, 155° y 15°**

N° 480                                    FECHA: ____

**RESOLUCIÓN**

La Ministra del Poder Popular para Relaciones Interiores, Justicia y Paz, designada mediante Decreto N° 1.345 de fecha 24 de octubre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.526 de la misma fecha, en ejercicio de las competencias que le confiere lo dispuesto en los numerales 2, 19 y 27 del artículo 78 del Decreto N° 1.424 con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública de fecha 17 de noviembre de 2014; en concordancia con lo establecido en el artículo 5, numeral 2, artículo 20 numeral 6 y artículos 71 y 72 de la Ley del Estatuto de la Función Pública; y lo previsto en el artículo 4 literal A, numeral 3, del Reglamento Orgánico del Ministerio del Poder Popular para Relaciones Interiores y Justicia, (actualmente Relaciones Interiores, Justicia y Paz); **Designa** al ciudadano **BALMORE JOSÉ GONZÁLEZ GUERRA**, titular de la cédula de identidad N° V-12.836.449, como **Director (E) del Despacho del Viceministro del Sistema Integrado de Policía**, de este Ministerio.

Comuníquese y Publíquese.
Por el Ejecutivo Nacional,

CARMEN TERESA MELÉNDEZ RIVAS
MINISTRA

MINISTERIO DEL PODER POPULAR PARA LAS RELACIONES INTERIORES, JUSTICIA Y PAZ
OFICINA DE AUDITORÍA INTERNA
DIRECCIÓN DE DETERMINACIÓN DE RESPONSABILIDADES

Caracas, 20 de noviembre del 2014

**AUTO DECISORIO**

**Nº MPPRIJP-AI-PADR-012-2014**

204º, 155º y 15º

**CAPÍTULO I**

**NARRATIVA**

**A.- ANTECEDENTES.**

Quien suscribe, **Germán Rafael Laverde**, titular de la cédula de identidad Nº **V-3.400.167**, Director Encargado de la Oficina de Auditoría Interna del Ministerio del Poder Popular para Relaciones Interiores, Justicia y Paz, designado mediante Resolución Ministerial Nº 124 de fecha 07 de Mayo de 2013, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.161 de fecha 07 de Mayo de 2013, en ejercicio de la competencia consagrada en el artículo 106 de la Ley Orgánica de la Contraloría General de la República y el Sistema Nacional de Contr. o Fiscal, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 6.013 Extraordinaria de fecha 23 de diciembre de 2010, siendo la oportunidad legal prevista en el artículo 103 *eiusdem*, y de conformidad con la atribución conferida en el artículo 14 numeral 24 del Reglamento Interno de esta Oficina de Auditoría Interna, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 39.590 de fecha 10 de enero de 2011, **para decidir** el Procedimiento Administrativo tramitado en este Órgano de Control Fiscal, con motivo al presunto hecho irregular, que consta en las actuaciones administrativas practicadas al Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, por la Dirección de Control Posterior de esta Oficina de Auditoría Interna, las cuales fueron remitidas a la Dirección de Determinación de Responsabilidades, mediante Memorando Nº DCP-062 de fecha 05 de agosto de 2014, recaudos que constan en el Expediente Administrativo identificado con las siglas y número **POTEST. INV. 013-2014**, (Nomenclatura de la Dirección de Control Posterior de esta Oficina de Auditoría Interna), que cursan a los folios uno (01) al ochenta y cinco (85) del expediente administrativo, relacionado con el presunto robo de un Bien Público, correspondiente a un arma de reglamento, Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm, Serial: PX5932E y de su respectivo cargador; que estaban adscritos a este Ministerio por Órgano del Cuerpo de Policía Nacional Bolivariana (CPNB) y que había sido asignado al precitado funcionario para el cumplimiento de la función policial; **mediante el presente Auto Decisorio**, hago constar que en el mismo, las siglas **LOCGRYSNCF**, se refieren a la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal.

**B.- PRESUNTO HECHO IRREGULAR INVESTIGADO.**

De los recaudos y documentos que cursan en el expediente administrativo identificado con las siglas y número **POTEST. INV. 013-2014** (Nomenclatura de la Dirección de Control Posterior), remitidos a la Dirección de Determinación de Responsabilidades, revelan fundados indicios del siguiente hecho, que se presume irregular y el cual se destaca:

El presunto robo de un Bien Público, correspondiente a un arma de reglamento, Tipo Pistola, Marca: Beretta, Modelo: PX5 Storm, Calibre: 9mm, Serial: PX5932E y su respectivo cargador; que estaban adscritos a este Ministerio por Órgano del Cuerpo de Policía Nacional Bolivariana (CPNB) y que habían sido asignados al Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, para el cumplimiento de la función policial.

Sobre la base del hecho antes descrito, se dio inicio al Procedimiento Administrativo para la Determinación de Responsabilidades, mediante Auto de fecha 22 de septiembre de 2014, toda vez que el mismo constituye una presunta irregularidad administrativa, a tenor de lo dispuesto en el artículo 91 numeral 2 de la LOCGRYSNCF, en lo atinente a la **imprudencia**.

En el contenido del citado Auto de Inicio del Procedimiento Administrativo para la Determinación de Responsabilidades, se describió el hecho presuntamente irregular investigado, se identificó como presunto responsable de su comisión, al Oficial (CPNB) **José Manuel Bernal Amaya**, venezolano, mayor de edad, civilmente hábil, titular de la cédula de identidad

Nº **V-19.293.443**, y con domicilio en la Calle Guaicapuro, Vereda 2, Casa Nº 03, Sector Los Magallanes de Catia, Parroquia Sucre, Municipio Bolivariano Libertador, Caracas. Distrito Capital, se le indicó los elementos probatorios y las razones que, presumiblemente, comprometían la responsabilidad del imputado, todo de conformidad con lo dispuesto en el artículo 98 de la LOCGRYSNCF y 88 de su Reglamento.

**C.- DE LA SUSTANCIACIÓN DEL EXPEDIENTE ADMINISTRATIVO.**

Los principales recaudos y actuaciones que cursan en el expediente de Potestad Investigativa identificado con las siglas y número **POTEST. INV. 013-2014**, son los siguientes:

**1.** Auto de Proceder Nº 013-2014 de fecha 20 de junio de 2014, dictado por la Dirección de Control Posterior de esta Oficina de Auditoría Interna, mediante el cual ordenó iniciar la Potestad Investigativa en contra del Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, cursante a los folios cuarenta y seis (46) al cuarenta y nueve (49) y sus respectivos vueltos, del expediente administrativo.

**2.** Oficio Nº DCP-DG-OAI-270 de fecha 25 de junio de 2014, dirigido a la ciudadana **Claudiana Rangel**, Directora de Control del Sector Poderes Nacionales y Seguridad Pública de la Contraloría General de la República, cursante al folio cincuenta (50), del expediente administrativo.

**3.** Oficio Nº DCP-020 de fecha 20 de junio de 2014, mediante el cual se le notificó del inicio de la Potestad Investigativa al Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, cursante a los folios cincuenta y uno (51) al cincuenta y cuatro (54) y sus respectivos vueltos, del expediente administrativo.

**4.** Oficio Nº DCP-021 de fecha 20 de junio de 2014, mediante el cual se citó al Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, para que rindiera declaración en calidad de interesado legítimo, cursante al folio cincuenta y cinco (55), del expediente administrativo.

**5.** Acta de entrevista de fecha 08 de julio de 2014, rendida por el Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, ante la Dirección de Control Posterior de esta Oficina de Auditoría Interna, cursante a los folios cincuenta y seis (56) al cincuenta y ocho (58) y su vuelto, del expediente administrativo.

**6.** Auto de incorporación de documentos de fecha 08 de julio de 2014, cursante al folio cincuenta y nueve (59), del expediente administrativo.

**7.** Auto de Admisión de Pruebas de fecha 08 de Julio de 2014, cursante al folio setenta (70) y su vuelto, del expediente administrativo.

**8.** Auto de Incorporación de Documentos de fechas 11 de julio de 2014, cursante al folio setenta y uno (71), del expediente administrativo.

**9.** Auto de Admisión de Pruebas de fecha 11 de Julio de 2014, cursante al folio setenta y cinco (75), del expediente administrativo.

**10.** Auto de cierre para consignar argumentos y promover pruebas e inicio del lapso de evacuación de fecha 14 de julio de 2014, cursante al folio setenta y seis (76), del expediente administrativo.

**11.** Auto de cierre del lapso para la evacuación de pruebas e inicio del lapso para presentar el informe de resultados de fecha 05 de agosto de 2014, cursante al folio setenta y siete (77), del expediente administrativo.

**12.** Punto de Cuenta DCP-PC-Nº 035 de fecha 05 de agosto de 2014, mediante el cual el ciudadano **Germán Rafael Laverde**, Director General Encargado de ésta Oficina de Auditoría Interna aprobó la suscripción del Informe de Resultados, cursante al folio setenta y ocho (78), del expediente administrativo.

**13.** Informe de fecha 05 de agosto de 2014, contentivo de los Resultados de la Investigación realizada por la Dirección de Control Posterior de esta Oficina de Auditoría Interna, cursante a los folios setenta y nueve (79) al ochenta y cuatro (84) y sus respectivos vueltos, del expediente administrativo.

**14.** Memorando Nº DCP-062 de fecha 05 de agosto de 2014, mediante el cual la Dirección de Control Posterior de esta Oficina de Auditoría Interna, remitió expediente administrativo signado bajo el Nº **POTEST. INV. 013-2014**, a la Dirección de Determinación de Responsabilidades de esta Oficina

**417.572   GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA    Lunes 22 de diciembre de 2014**

de Auditoría Interna, cursante al folio ochenta y cinco (85), del expediente administrativo.

Los principales recaudos y actuaciones que cursan en el expediente contentivo del Procedimiento Administrativo para la Determinación de Responsabilidades identificado con las siglas y número **MPPRIJP-AI-PADR-012-2014**, son los siguientes:

**1.** Auto motivado de fecha 09 de septiembre de 2014, fundamentado en la valoración del informe de resultados y de los recaudos contenidos en el expediente administrativo identificado con las siglas y número **POTEST. INV. 013-2014** (Nomenclatura de la Dirección de Control Posterior), cursante a los folios ochenta y seis (86) al noventa y dos (92) y sus respectivos vueltos, del expediente administrativo.

**2.** Punto de Cuenta Nº 050-2014 de fecha 09 de septiembre de 2014, mediante el cual el ciudadano **Germán Rafael Laverde**, Director General Encargado de este Órgano de Control Fiscal Interno, aprobó iniciar un Procedimiento Administrativo para la Determinación de Responsabilidades, en contra del Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, cursante al folio noventa y tres (93), del expediente administrativo.

**3.** Punto de Cuenta Nº 053-2014 de fecha 22 de septiembre de 2014, mediante el cual el ciudadano **Germán Rafael Laverde**, Director General Encargado de este Órgano de Control Fiscal Interno, aprobó el Auto de Inicio del Procedimiento Administrativo para la Determinación de Responsabilidades, en contra del Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, cursante al folio noventa y cuatro (94), del expediente administrativo.

**4.** Acta de fecha 22 de septiembre de 2014, mediante la cual se acuerda la incorporación del Auto de Inicio, al expediente administrativo, de conformidad con lo establecido en el artículo 89 del Reglamento de la LOCGRYSNCF, cursante al folio noventa y cinco (95), del expediente administrativo.

**5.** Auto de Inicio de fecha 22 de septiembre de 2014, dictado por la Dirección de Determinación de Responsabilidades de esta Oficina de Auditoría Interna, a través del cual se ordenó la apertura de un Procedimiento Administrativo para la Determinación de Responsabilidades, en contra del Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, cursante a los folios noventa y seis (96) al ciento cinco (105) y sus respectivos vueltos, del expediente administrativo.

**6.** Oficio Nº DG-OAI-DDR-119-514 de fecha 23 de septiembre de 2014, dirigido a la ciudadana **Mercedes de Blanco**, Directora de Control del Sector Poderes Nacionales y Seguridad Pública de la Contraloría General de la República, a través del cual se remitió un ejemplar del Auto de Inicio del Procedimiento Administrativo para la Determinación de Responsabilidades, cursante al folio ciento seis (106), del expediente administrativo.

**7.** Oficio Nº MPPRIJP-AI-DDR-122 de fecha 24 de septiembre de 2014, mediante el cual el día **01 de octubre de 2014**, se le notificó al Oficial (CPNB) **José Manuel Bernal Amaya**, ya identificado, de la Apertura del Procedimiento para la Determinación de Responsabilidades iniciado en su contra, de conformidad con lo previsto en el artículo 96 de la **LOCGRYSNCF**, en concordancia con el artículo 90 del Reglamento de la Ley *eiusdem*, previa valoración de los documentos probatorios cursantes al expediente, se acordó formularle cargos al precitado funcionario, por la presunta imprudencia, demostrada en la preservación y salvaguarda de un Bien Público correspondiente a un arma de reglamento Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm, Serial: PX5932E y su respectivo cargador, cuya custodia le habían sido confiadas para el cumplimiento de la función policial, cursante a los folios ciento ocho (108) y ciento nueve (109) y su vuelto, del expediente administrativo.

**8.** En la notificación en referencia, y de conformidad con lo establecido en el artículo 99 de la LOCGRYSNCF, en concordancia con el artículo 91 de su Reglamento, se le informó al precitado funcionario, que contaba con el término de quince (15) días hábiles siguientes, practicada su notificación, para que indicara las pruebas que producirían en el acto oral y público a que se refiere el artículo 100 de la Ley *eiusdem*, así como para que consignara los medios de pruebas documentales y testimoniales, de que dispone el imputado y que a su juicio, desvirtuaran el presunto hecho que se le imputo mediante Auto de Inicio de fecha 22 de septiembre de 2014; asimismo se le comunicó que en virtud de la notificación en comento, quedaba a derecho para todos los efectos de este Procedimiento Administrativo para la Determinación de Responsabilidades, a tenor de lo indicado en el artículo 98 de la referida Ley.

**9.** Auto de incorporación de documento de fecha 22 de octubre de 2014, mediante el cual se dejó constancia, que el presunto responsable presentó ante esta Oficina de Auditoría Interna, escrito constante de dos (2) folios útiles y sus anexos integrados por dos (05) folios útiles, cursante al folio ciento diez (110), del expediente administrativo.

**10.** Auto de fecha 23 de octubre de 2014, mediante el cual la Dirección de Determinación de Responsabilidades de esta Oficina de Auditoría Interna, fijó el décimo quinto (15) día hábil siguiente, para la celebración del acto oral y público, con la finalidad de que el interesado o su(s) apoderado(s), expresaran los argumentos que les asisten para la mejor defensa de sus intereses, cursante al folio ciento dieciocho (118), del expediente administrativo.

**11.** Punto de Cuenta Nº 059-2014 de fecha 23 de octubre de 2014, mediante el cual el ciudadano **Germán Rafael Laverde**, Director General Encargado de

este Órgano de Control Fiscal, aprobó fijar el décimo quinto (15º) día hábil siguiente, para la celebración del acto oral y público, con la finalidad de que el presunto responsable o su(s) apoderado(s) legal(es) expresen en forma oral y pública, ante el titular del Órgano de Control Fiscal, los argumentos que consideran le asisten para la mejor defensa de sus intereses, cursante al folio ciento diecinueve (119), del expediente administrativo.

**12.** Acta de fecha trece (13) de noviembre del 2014, mediante la cual se dejó constancia de la celebración del acto oral y público, cursante a los folios ciento veinte (120) al ciento veintitrés (123) y sus vueltos, del expediente administrativo.

## CAPÍTULO II

### MOTIVA

**A. DEL PROCEDIMIENTO ADMINISTRATIVO PARA LA DETERMINACIÓN DE RESPONSABILIDAD.**

**Análisis del hecho y supuesto generador de Responsabilidad Administrativa.**

Una vez expuesto lo anterior, quien suscribe tiene a bien referirse a las actuaciones administrativas practicadas al Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, por la Dirección de Control Posterior de esta Oficina de Auditoría Interna, las cuales fueron remitidas a la Dirección de Determinación de Responsabilidades, mediante Memorando Nº DCP-062 de fecha 05 de agosto de 2014, recaudos que constan en el expediente administrativo distinguido con las siglas y número **POTEST. INV. 013-2014**, (Nomenclatura de la Dirección de Control Posterior), con ocasión al hecho que se describe a continuación:

El día 13 de diciembre de 2011, siendo aproximadamente las 05:00 a.m., el Oficial (CPNB) **José Manuel Bernal Amaya**, ya identificado, se dirigía hasta la estación del Metro de Propatria, Parroquia Sucre, Municipio Bolivariano Libertador, Caracas, Distrito Capital, con la finalidad de trasladarse hasta el Servicio de Vías Rápidas (Helicoide), para recibir su guardia, y cuando se desplazaba por la calle principal de Propatria, en las inmediaciones del Colegio la Presentación, fue presuntamente interceptado por dos (2) sujetos desconocidos, quienes se desplazaban abordo de una moto, Yamaha, marca XT, color azul, y portando armas de fuego, le indicaron que se detuviera a que alzara las manos, percatándose que dicho funcionario se encontraba armado, motivo por el cual uno de los sujetos lo apuntó en la cabeza y le despojo, de su arma de reglamento Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm, Serial: PX5932E y su respectivo cargador; tal hecho se desprende del informe de fecha 13 de diciembre de 2011, dirigido por el precitado funcionario a la Oficina de Control de Actuación Policial (OCAP) del Cuerpo de Policía Nacional Bolivariana, que riela al folio tres (03) y su vuelto del expediente administrativo.

En consonancia con lo anterior, resulta oportuno acotar, que el presunto robo del identificado Bien Público y de su respectivo cargador, ocurrió cuando el Oficial (CPNB) **José Manuel Bernal Amaya**, estaba franco de servicio; es decir, que no se encontraba desempeñando la función policial, puesto que el día de la ocurrencia del hecho supuestamente irregular, el precitado funcionario presuntamente se dirigía a recibir su guardia en el Servicio de Vías Rápidas (Helicoide) a las 5:30 a.m., tal como lo reconoció en el informe antes indicado; hecho que fue ratificado en la respuesta ofrecida a la pregunta formulada e identificada como cuarta (4), de su acta de entrevista de fecha 08 de julio de 2014, rendida ante la Dirección de Control Posterior de esta Oficina de Auditoría Interna, que riela a los folios cincuenta y siete (57) y cincuenta y ocho (58) y su vuelto del expediente administrativo.

Sin embargo, la afirmación referida a que se dirigía a cumplir con la función policial carece de asidero legal, puesto que se evidencia de la Orden de los Servicios de fecha 13 de diciembre de 2011, suscrita por el Supervisor Agregado (CPNB) **Rafael Suárez**, Supervisor 0 de patrullaje vehicular Grupo "A" y por la Comisionada (CPNB) **Lupi Arellano Lisbey**, quien para la fecha se desempeñaba como Jefa del Servicio Vías Rápidas del Cuerpo de Policía Nacional Bolivariana, que riela a los folios cuarenta (40) al cuarenta y uno (41) y sus respectivos vueltos, del expediente administrativo, que el mismo no se encontraba reflejado en la relación del personal policial que cumpliría funciones ese día en un horario comprendido desde las 07:00 a.m. hasta 18:00 p.m.

En este orden, es oportuno señalar aquí, el Oficio CPNB-DN-Nº 001651 de fecha 29 de marzo de 2011, que riela al folio veintiuno (21) del expediente administrativo, suscrito por el ciudadano **Luis R. Fernández D**, quien para la fecha se desempeñaba como Director Nacional (E) del Cuerpo de Policía Nacional Bolivariana (CPNB), mediante el cual informó a esta Oficina de Auditoría Interna, sobre los lineamientos impartidos por ese cuerpo policial en cuanto al uso y custodia que deben otorgarle los funcionarios policiales a los bienes nacionales que le son asignados para el cumplimiento de la función policial, y que se encuentran vigentes desde el 20 de Diciembre de 2009, y a tal efecto señala lo siguiente: *"...la dotación individual (arma, chaleco antibalas, uniforme, correaje, esposa, bastón plegable), de los funcionarios adscritos a este cuerpo policial es de carácter permanente, están autorizadas a tenerlo bajo su custodia aun cuando no estén dentro del ejercicio de la función policial, a excepción del Radio Transmisor el cual debe reintegrarse en la oficina correspondiente una vez culminada la jornada laboral.*

No obstante de que exista este lineamiento, conviene considerar la conducta desplegada por el Oficial (CPNB) **José Manuel Bernal Amaya**, para el resguardo del arma de reglamento y de su respectivo cargador, que le fue asignada para el cumplimiento de su función policial, mediante Acta de Entrega de Bienes Nacionales, dotación de equipos para la actuación policial de fecha 21 de septiembre de 2010, que riela a los folios once (11) y su vuelto,

Lunes 22 de diciembre de 2014     GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA     417.573

veinticuatro (24) y veinticinco (25), del expediente administrativo, debidamente suscrita por el precitado funcionario, y refrendada con su huella dactilar al momento de recibirla, a través de la cual asumió la responsabilidad del cuidado y arma que se debe en la utilización y administración de los bienes nacionales bajo su custodia; asimismo, se incorpora al reverso de la misma, las Reglas Fundamentales de Seguridad con Armas de Fuego, donde se destaca el compromiso de cuidar y preservar el arma en un lugar seguro, y a tal efecto expresa lo siguiente:

*DECLARACIÓN DEL FUNCIONARIO O FUNCIONARIA*
*"El Funcionario recibe en este acto, los bienes antes identificados en perfecto estado y apto para su uso, igualmente asume la responsabilidad del cuidado y diligencia que se debe en la utilización y administración de los bienes nacionales bajo su custodia, comprometiéndose hacer uso de los equipos en ejercicio de sus funciones con ética, legalidad, transparencia, proporcionalidad y humanismo con estricto apego al respeto y garantías de los derechos humanos. Declarando conocer la normativa legal aplicable en caso de ocurrir alguna irregularidad con el bien (...Omissis)".*

*(...Omissis)*

*REGLAS FUNDAMENTALES DE SEGURIDAD CON ARMAS DE FUEGO*
*Igualmente, se informa al custodia del equipo asignado algunas recomendaciones en cuanto a la precaución que debe mantener para la manipulación del armamento asignado: "(...Omissis...) 4) Guarde sus armas en lugar seguro". Negrillas nuestras.*

Es por ello, que tanto del Acta al supra, como del informe de fecha 13 de diciembre de 2011, dirigido por el precitado funcionario a la Oficina de Control de Actuación Policial (OCAP) del Cuerpo de Policía Nacional Bolivariana, que riela al folio tres (03) y su vuelto del expediente administrativo, así como, del Acta de Entrevista de fecha 08 de julio de 2014, rendida por el presunto responsable José Manuel Bernal Amaya, ante la Dirección de Control Posterior de esta Oficina de Auditoría Interna, que cursa a los folios cincuenta y siete (57) y cincuenta y ocho (58) y su vuelto del expediente administrativo, igualmente, de la Orden de los Servicios de fecha 13 de diciembre de 2011, que cursa a los folios cuarenta (40) al cuarenta y uno (41) y sus respectivos vueltos, se desprenden suficientes elementos de convicción o prueba, que nos hacen presumir que el funcionario investigado desempeñó un comportamiento omisivo o imprudente al no adoptar una conducta diligente, tal como lo hubiera asumido un buen padre de familia, esto es, mediante un modelo de conducta caracterizada por un comportamiento serio y razonable, prudente y diligente ante una situación determinada; conducta que trajo como consecuencia la pérdida del Bien Público antes descrito y su respectivo cargador, produciendo un presunto daño al patrimonio de la República; al **demostrar falta de prudencia, de previsión o precaución en el cuido y guarda de los mismos, al decidir llevarlos consigo mientras transitaba por las adyacencias de la estación del metro Propatria, a sabiendas de que es una zona de alta peligrosidad tanto para la integridad física como para el resguardo de los bienes,** contraviniendo las reglas impuestas al recibir el armamento (Acta de Entrega de Bienes Nacionales).

Se infiere del deber de diligencia y cuidado que reside en un servidor público en preservar y salvaguardar los bienes o derechos del patrimonio del ente u organismo al cual presta servicios, así como la responsabilidad de custodiar el correcto uso de los Bienes que pertenecen al patrimonio público, constituye una obligación ineludible y esencial a la tutela del interés general.

De tal manera, que la conducta asumida por el presunto responsable, Oficial (CPNB) **José Manuel Bernal Amaya,** fue supuestamente **imprudente,** por demostrar falta de prudencia, de precaución o previsión, al llevarlos consigo el día 13 de diciembre de 2011, encontrándose franco de servicio, cuando transitaba aproximadamente a las 05:00 de la mañana, por las adyacencias de la estación del metro Propatria, a sabiendas de que es una zona de alta peligrosidad tanto para la integridad física como para el resguardo de los bienes; no teniendo la prudencia, la precaución o previsión en el cuido y guarda del arma de reglamento Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm, Serial: PX5932E y de su respectivo cargador; conducta que trajo como consecuencia la pérdida de los mismos, ocasionando un daño cierto, determinado y determinable al patrimonio de la República.

El hecho descrito, presuntamente podría configurar el supuesto generador de responsabilidad administrativa, a tenor de lo dispuesto en el numeral 2 del artículo 91 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal, en lo atinente a la **imprudencia,** que establece lo siguiente:

*Artículo 91: "Sin perjuicio de la responsabilidad civil o penal, y de lo que dispongan otras Leyes, constituyen supuestos generadores de responsabilidad administrativa los actos, hechos u omisiones que se mencionan a continuación:*

*(...omissis...)*

*2. La omisión, retardo, negligencia o **imprudencia** en la preservación y salvaguarda de los bienes o derechos del patrimonio de un ente u organismo de los señalados en los numerales 1 al 11 del artículo 9 de esta Ley..." (Negrillas nuestras).*

El incumplimiento en el dispositivo anteriormente transcrito, enumera las formas de actuar (omisión, retardo, negligencia o imprudencia) que son vedadas al funcionario, que por su particular situación dentro del ente administrativo respectivo derivado del cargo que ostenta, incumpla sus deberes y funciones, sin que sea requerido que se materialice el daño.

De allí pues, que el funcionario público se presenta bajo la perspectiva de la normativa en comento, como sujeto de ser declarado responsable

en lo administrativo, en el supuesto de verificarse el incumplimiento de deberes y funciones que se concretan en la preservación y salvaguarda de bienes, es decir, que la conducta del funcionario de la administración pública debe ser diligente, similar a la de un buen *Pater-Familiae* en lo referente a la preservación, cuidado, prudencia y salvaguarda de los bienes bajo su custodia y no una conducta irregular, negligente, imprudente, retardada u omisiva que sea la consecuencia directa del incumplimiento del deber del funcionario, que puede causar un perjuicio a los bienes o patrimonio del ente u organismo.

Siendo así, la **imprudencia** *"es la falta de prudencia, de precaución, omisión de la diligencia debida, defecto de advertencia o previsión de alguna cosa. (...)".*

Imprudencia: En el sentido amplio, se refiere a cualquier profesional que su actuación imprudente, derivada de su ineptitud, exceso de confianza o de cualquier otra causa similar, ocasione un daño a terceros, sancionable penal o civilmente (...)

En este sentido, estaríamos en presencia de un funcionario público imprudente, al demostrar falta de previsión o precaución, en primer lugar decidir portar su arma de reglamento estando franco de servicio, a pesar de la supuesta situación irregular que le había sucedido el día 04 de marzo de 2013, y en segundo lugar al mantener prendas personales de mucho valor (oro) que lo hicieron vulnerable a ser víctima del hampa.

Así pues, que para determinar si una conducta es o no imprudente, basta con precisar su actuación, derivada de su ineptitud, exceso de confianza o de cualquier otra causa similar, que ocasione un daño a terceros, sancionable penal o civilmente (...)

Al respecto, la figura de la **imprudencia,** la doctrina patria en la autora Nélida Peña, en su obra "El Régimen de la Responsabilidad Administrativa", página 235, ha fijado posición en cuanto al supuesto generador de responsabilidad administrativa, en lo atinente a la **imprudencia,** señalando lo siguiente: *"...Además de la negligencia del funcionario, también su **imprudencia,** que es una conducta activa caracterizada por la falta de previsión o precaución, puede dar lugar a que se configure el supuesto generador de responsabilidad administrativa...el funcionario en lugar de incurrir en la irregularidad por omisión o retardo, lo hace por acción, pero sin adoptar las debidas precauciones que le impone el ejercicio de un cargo que comporta la administración de bienes públicos...Desde luego... se produce un daño al patrimonio del ente y en general al patrimonio público...". (Negrillas nuestras).*

Adicionalmente, la situación antes descrita pudo haber generado daño al patrimonio público, cantidad que asciende a **CUATRO MIL OCHOCIENTOS SETENTA Y SEIS BOLÍVARES CON TREINTA Y SIETE CÉNTIMOS (Bs. 4.876,37),** valor de la referida arma policial, tal como consta en la copia certificada de la Factura N° CXC/40003251 de fecha 02 de junio de 2010, emitida por la Compañía Anónima Venezolana de Industrias Militares (CAVIM), que cursa a los folios doce (12) y veintitrés (23) del Expediente Administrativo; situación que de ser verificada pudiera constituir causal de reparo, por lo que es preciso indicar lo establecido en el artículo **1.185** del Código Civil, el cual dispone:

*Artículo 1.185: "El que con intención, o por negligencia o por imprudencia, ha causado un daño a otro, está obligado a repararlo. Debe igualmente reparación quien haya causado un daño a otro, excediendo, en el ejercicio de su derecho, los límites fijados por la buena fe o por el objeto en vista del cual le ha sido conferido ese derecho".*

De allí que, el artículo 85 de la LOCGRYSNCF, establece lo siguiente:

*Artículo 85.- Los órganos de control fiscal procederán a formular reparo cuando, en el curso de las auditorías, fiscalizaciones, inspecciones, exámenes de cuentas e investigaciones que realicen en el ejercicio de sus funciones de control, detecten indicios de que se ha causado daño al patrimonio de un ente u organismo de los señalados en los numerales 1 al 11 del artículo 9 de esta Ley, como consecuencia de actos, hechos u omisiones contrarios a una norma legal o sublegal, al plan de organización, las políticas, normativa interna, los manuales de sistemas y procedimientos que comprenden el control interno, así como por una conducta omisiva o negligente en el manejo de los recursos...".*

Esta responsabilidad civil especial encuentra su fundamento en la noción de responsabilidad propia del derecho natural, la cual postula como elemento esencial que nadie debe causar a otro un daño injusto y, en caso de producirse el mismo, debe ejercerse la respectiva acción resarcitoria a los fines de que dicho daño sea reparado.

**B. RELACIÓN DE CAUSALIDAD DEL HECHO PRESUNTAMENTE IRREGULAR.**

Una vez determinado el carácter presuntamente irregular del hecho investigado por este Órgano de Control Fiscal Interno, resulta necesario verificar la participación del funcionario investigado en la comisión del mismo.

**-A-**
**Relación de causalidad del Oficial (CPNB) José Manuel Bernal Amaya, titular de la cédula de identidad N° V-19.293.443.**

De la revisión de las pruebas documentales y testimoniales cursantes en autos, se desprende que el presunto responsable, Oficial (CPNB) José **Manuel Bernal Amaya,** titular de la cédula de identidad N° **V-19.293.443,** quien para la fecha de la ocurrencia del hecho, se encontraba adscrito al Grupo Motorizado "A" del Servicio de Vías Rápidas (Helicoide) del Cuerpo de Policía Nacional Bolivariana (CPNB), fue supuestamente **imprudente** en la

preservación y salvaguarda del arma policial y de su respectivo cargador, cuya custodia le habían sido confiadas, al demostrar falta de prudencia, de precaución, omisión de la diligencia debida frente a lo que debe ser la responsabilidad asumida por un buen padre de familia en lo referente a la preservación, cuidado y prudencia, en el uso y salvaguarda de los bienes bajo su cuidado; trayendo como consecuencia la pérdida de un Bien Público, correspondiente a un arma de reglamento, Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm, Serial: PX5932E y de su respectivo cargador; ocasionando un daño cierto, determinado y determinable, al patrimonio de la República, al no dar estricto cumplimiento a lo establecido en el reverso del Acta de Entrega de Bienes Nacionales Dotación de Equipos para la Actuación Policial, suscrita por el referido funcionario en fecha 21 de septiembre de 2010, que riela a los folios once (11) y su vuelto, veinticuatro (74) y veinticinco (25), del expediente administrativo, y refrendada con su huella dactilar al momento de recibirla, que establece las Reglas :. Fundamentales de Seguridad con Armas de Fuego, donde se destaca el compromiso de guardar el arma en un lugar seguro, y a tal efecto expresa lo siguiente:

*DECLARACIÓN DEL FUNCIONARIO O FUNCIONARIA*

*"El Funcionario recibe en este acto, los bienes antes identificados en perfecto estado y apto para su uso, igualmente asume la responsabilidad del cuidado y diligencia que se debe en la utilización y administración de los bienes nacionales bajo su custodia, comprometiéndose hacer uso de los equipos en ejercicio de sus funciones con ética, legalidad, transparencia, proporcionalidad y humanismo con estricto apego al respeto y garantías de los derechos humanos. Declarando conocer la normativa legal aplicable en caso de ocurrir alguna irregularidad con el bien ...Omissis)".*

(...Omissis)

*REGLAS FUNDAMENTALES DE SEGURIDAD CON ARMAS DE FUEGO*

*Igualmente, se informa al custodia del equipo asignado algunas recomendaciones en cuanto a la precaución que debe mantener para la manipulación del armamento asignado: "(...Omissis) 4) Guarde sus armas en lugar seguro... Negrillas nuestras.*

Así mismo, se evidencia de las pruebas analizadas, que el día 13 de diciembre de 2011, siendo aproximadamente las 05:00 a.m., el Oficial (CPNB) José Manuel Bernal Amaya, ya identificado, se dirigió hasta la estación del Metro de Propatria, Parroquia Sucre, Municipio Bolivariano Libertador, Caracas, Distrito Capital, con la finalidad de trasladarse hasta el Servicio de Vías Rápidas (Helicoide), para recibir su guardia, y cuando se desplazaba por la calle principal de Propatria, en las inmediaciones del Colegio la Presentación, fue presuntamente interceptado por dos (2) sujetos desconocidos, quienes se desplazaban abordo de una moto, Yamaha, marca XT, color azul, y portando armas de fuego, le indicaron que se detuviera y que alzara las manos, percatándose que dicho funcionario se encontraba armado, motivo por el cual uno de los sujetos lo apuntó en la cabeza y lo despojó, de su arma de reglamento Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm, Serial: PX5932E y su respectivo cargador; tal hecho se desprende del informe de fecha 13 de diciembre de 2011, dirigido por el precitado funcionario a la Oficina de Control de Actuación Policial (OCAP) del Cuerpo de Policía Nacional Bolivariana, que riela al folio tres (03) y su vuelto del expediente administrativo.

En consonancia con lo anterior, resulta oportuno acotar, que el presunto robo del identificado Bien Público y de su respectivo cargador, ocurrió cuando el Oficial (CPNB) José Manuel Bernal Amaya, estaba franco de servicio, es decir, que no se encontraba desempeñando la función policial, puesto que el día de la ocurrencia del hecho supuestamente irregular, el precitado funcionario presuntamente se dirigía a recibir su guardia en el Servicio de Vías Rápidas (Helicoide) a las 5:30 a.m., tal como lo reconoció en el informe antes indicado; hecho que fue ratificado en la respuesta ofrecida a la pregunta formulada e identificada como cuarta (4), de su Acta de entrevista de fecha 08 de julio de 2014, rendida ante la Dirección de Control Posterior de esta Oficina de Auditoría Interna, que riela a los folios cincuenta y siete (57) y cincuenta y ocho (58) y su vuelto del expediente administrativo.

Sin embargo, la afirmación referida a que se dirigía a cumplir con la función policial carece de asidero legal, puesto que se evidencia de la Orden de los Servicios de fecha 13 de diciembre de 2011, suscrita por el Supervisor Agregado (CPNB) Rafael Suárez, Supervisor (E) de patrullaje vehicular Grupo "A" y por la Comisionada (CPNB) Lupi Arellano Lisbey, quien para la fecha se desempañaba como Jefa del Servicio Vías rápidas del Cuerpo de Policía Nacional Bolivariana, que riela a los folios cuarenta (40) al cuarenta y uno (41) y sus respectivos vueltos, del expediente administrativo, el mismo no se encontraba reflejado en la relación del personal policial que cumpliría funciones ese día en un horario comprendido desde las 07:00 a.m. hasta las 18:00 p.m.

Es por ello, que tanto el Acta ut supra, como del informe de fecha 13 de diciembre de 2011, dirigido por el precitado funcionario a la Oficina de Control de Actuación Policial (OCAP) del Cuerpo de Policía Nacional Bolivariana, que riela al folio tres (03) y su vuelto del expediente administrativo, así como, del Acta de Entrevista de fecha 08 de julio de 2014, rendida por el precitado funcionario responsable José Manuel Bernal Amaya, ante la Dirección de Control Posterior de esta Oficina de Auditoría Interna, que cursa a los folios cincuenta y siete (57) y cincuenta y ocho (58) y su vuelto del expediente administrativo, igualmente, de la Orden de los Servicios de fecha 13 de diciembre de 2011, que cursa a los folios cuarenta (40) al cuarenta y uno (41) y sus respectivos vueltos, se desprenden suficientes elementos de convicción o prueba, que nos hacen presumir que el funcionario investigado no cumplió un comportamiento omisivo o imprudente al no adoptar una conducta diligente, tal como lo hubiera asumido un buen padre de familia, esto es, mediante un modelo de conducta caracterizado por un comportamiento serio y razonable, prudente y diligente ante una situación determinada; conducta que trajo como consecuencia la pérdida del Bien Público antes

descrito y su respectivo cargador, produciendo un presunto daño al patrimonio de la República; al **demostrar falta de prudencia, de previsión o precaución en el cuido y guarda de los mismos, al decidir llevarlos consigo mientras transitaba por las adyacencias de la estación del metro Propatria, a sabiendas de que es una zona de alta peligrosidad tanto para la integridad física como para el resguardo de los bienes**, contraviniendo las reglas impuestas al recibir el armamento (Acta de Entrega de Bienes Nacionales).

Se infiere que el deber de diligencia y cuidado que reside en un servidor público en preservar y salvaguardar los bienes o derechos del patrimonio del ente u organismo al cual presta servicios, así como la responsabilidad del custodiar el correcto uso de los Bienes que pertenecen al patrimonio público, constituye una obligación ineludible e esencial a la tutela del interés general.

Es por esta conducta, que el Oficial (CPNB) José Manuel Bernal Amaya, ya identificado, fue supuestamente **imprudente** en la preservación y salvaguarda de un Bien Público, correspondiente, a un arma de reglamento Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm;, Serial:-. PX5932E y su respectivo cargador, por demostrar falta de prudencia, de precaución o previsión, al llevarlos consigo el día 13 de diciembre de 2011, encontrándose franco de servicio, cuando transitaba aproximadamente a las 05:00 de la mañana, por las adyacencias de la estación del metro Propatria, a sabiendas de que es una zona de alta peligrosidad tanto para la integridad física como para el resguardo de los bienes; no teniendo la prudencia, la precaución o previsión; conducta que trajo como consecuencia la pérdida de los mismos, ocasionando un daño cierto, determinado y determinable al patrimonio de la República.

Establecido lo anterior, tenemos que el hecho descrito, presuntamente podría configurar el supuesto generador de responsabilidad administrativa, a tenor de lo dispuesto en el numeral 2 del artículo 91 de la LOCGRYSNCF, en lo atinente a la **imprudencia**, que establece lo siguiente:

*Artículo 91: "Sin perjuicio de la responsabilidad civil o penal, y de lo que dispongan otras Leyes, constituyen supuestos generadores de responsabilidad administrativa los actos, hechos u omisiones que se mencionan a continuación:*

(...omissis...)

*2. La omisión, retardo, negligencia o **imprudencia** en la preservación y salvaguarda de los bienes o derechos del patrimonio de un ente u organismo de los señalados en los numerales 1 al 11 del artículo 9 de esta Ley...". (Negrillas nuestras).*

Adicionalmente, la situación antes descrita pudo haber generado daño al patrimonio público, cantidad que asciende a **CUATRO MIL OCHOCIENTOS SETENTA Y SEIS BOLÍVARES CON TREINTA Y SIETE CÉNTIMOS (Bs. 4.876,37)**, valor de la referida arma policial, tal como consta en la copia certificada de la Factura N° CXC/40003251 de fecha 02 de junio de 2010, emitida por la Compañía Anónima Venezolana de Industrias Militares (CAVIM), que cursa a los folios doce (12) y veintitrés (23), del Expediente Administrativo.

**C.- ELEMENTOS PROBATORIOS DEL ILÍCITO ADMINISTRATIVO IMPUTADO.**

Los elementos probatorios que demuestran la comisión del hecho presuntamente irregular, antes descrito, y la participación del funcionario, plenamente identificado en el mismo, que pudieran comprometer la responsabilidad administrativa y civil son los que a continuación se mencionan:

**A. DOCUMENTALES.**

**A.1.-** Transcripción de Novedad de fecha 13 de diciembre de 2011, suscrita por el Oficial Jefe (CPNB) Rafael Donaire, Jefe de Turno de Guardia, cursante al folio uno (01), del cual se extrae lo siguiente:

*". LLAMADA TELEFÓNICA RECIBIDA: La recibe el OFICIAL JEFE (CPNB) DONAIRE RAFAEL, Credencial N° 0170, Jefe del Grupo "A" de 24 horas, por parte del OFICIAL JEFE (CPNB) TORREALBA MOISES, adscrito al Centro de Operaciones Policiales (C.O.P), quien informo que por los bloques de Propatria unos sujetos desconocidos habían despojado del Arma de reglamento al Oficial (CPNB) Bernal José, adscrito a Vías Rápidas Helicoide, cuando el mismo se dirigía a su lugar de trabajo, por lo que se requería comisiones de este Despacho..."*

**A.2.-** Acta disciplinaria de fecha 13 de diciembre de 2011, emanada de la Oficina de Control disciplinario de Actuación Policial (OCAP) del Cuerpo de Policía Nacional Bolivariana, cursante al folio dos (02), de la cual se desprende lo siguiente:

*"...Estando de turno de guardia, el OFICIAL JEFE (CPNB) DONAIRE RAFAEL, llamada por parte del OFICIAL JEFE (CPNB) TORREALBA MOISES, adscrito al Centro de Operaciones Policiales (C.O.P.), quien informo que por los bloques de Propatria unos sujetos desconocidos habían despojado del Arma de reglamento al Oficial (CPNB) Bernal José, adscrito a Vías Rápidas Helicoide, cuando el mismo se dirigía a su lugar de trabajo, por lo que se requería comisiones de este Despacho, de igual forma el OFICIAL (CPNB) BERNAL JOSE, titular de la Cédula de Identidad numero N° V-19.293.443, hace entrega del informe y copia original de la denuncia del C.I.C.P.C, relacionado con el presunto robo de su arma de reglamento, lo cual se consigna mediante acta, Es todo..."*

**A.3.-** Informe de fecha 13 de diciembre de 2011, dirigido por el funcionario **José Manuel Bernal Amaya**, a la Oficina de Control de Actuación Policial (OCAP) del Cuerpo de Policía Nacional Bolivariana (CPNB), que riela al folio tres (03) y su vuelto, del expediente administrativo, del cual se extrae lo siguiente:

"... *Siendo aproximadamente las 05:00 am de esta misma fecha me dirigía a mi lugar de trabajo en la calle principal de Propatria hava sente (sic) a el (colegio la Presentación) me dirigía a la estación Propatria ya q (sic) recibía guardia a las 5:30 am en la cede (sic) del Helicoide de (Servicio Vías Rápidas) fuí Interceptado por 2 Sujeto (sic) Desconocido (sic) quien portaba Arma de Fuego conduciendo una Moto Marca XT llama color Azul, Bajo Amenaza de Muerte indicando q (sic) no me moviera q (sic) subiera las manos en alto dando q percatando el sujeto q (sic) portaba mi persona un arma de fuego el mismo, uno de los sujetos apuntándome en la cabeza me despojo de mi Arma de Reglamento de la Policía Nacional Marca Beretta PX593ZE y (800 BF), un cargador de la pistola, el otro sujeto indicándole (Mátalo q (sic) es Policía) accion o el Arma de Fuego y no le percuto la misma Arma del sujeto. Dándome una patada en el pecho y tumbándome en el suelo y lo mismos se montaron en la moto XT Yamaha color azul y se dirigieron vía Propatria Casalta. Me dirigí de inmediato a la Cede q (sic) C.I.C.P.C. para pasar lo q (sic) me había sucedido. *"

**A.4.-** Denuncia Nº K-11-2225-04053 de fecha 13 de diciembre de 2011, formulada por el funcionario **José Manuel Bernal Amaya**, ante la Sub Delegación El Oeste Tipo B, del Cuerpo de Investigaciones Científicas, Penales y Criminalísticas (C.I.C.P.C.), cursante al folio cuatro (04) del expediente administrativo, en la cual indicó lo siguiente y cito:

"... *Comparezco por ante este despacho con la finalidad de denunciar que el día de hoy como a eso de las 05:00 horas de la mañana, cuando caminaba hacia la estación del metro de Propatria en las adyacencias del Colegio la Presentación, fue interceptado por dos sujetos desconocidos quienes portando armas de fuego y bajo amenaza de muerte me despojaron de mi arma de reglamento marca Beretta, modelo PX4, 9 milímetros, serial PX593ZE, valorada como en 20.000 bolívares aproximadamente, la misma es asignada por la Policía Nacional Bolivariana, luego dicho sujetos huyeron en vehículo tipo moto, modelo XT, de color azul, desconozco mas datos, luego huyeron en dirección hacia Casalta ...*"

**A.5.-** Auto de intervención temprana de fecha 13 de diciembre de 2011, emanado de la Oficina de Control de Actuación Policial (OCAP) del Cuerpo de Policía Nacional Bolivariana, cursante al folio seis (06), del cual se extrae lo siguiente:

"( ) _LLAMADA TELEFONICA RECIBIDA: La recibe el Oficial Jefe (CPNB) Donaire Rafael, credencial Nº 0170, Jefe de Guardia por el Grupo "A" de 24 horas, por parte del Oficial Jefe (CPNB) Torrealba Moisés, adscrito a puesto de mando, quien informo que por los bloque de Propatria unos sujetos desconocidos habían despojado del arma de Reglamento al Oficial (CPNB) Bernal José, adscrito a Vías Rápidas Helicoides, cuando el mismo se dirigía a su lugar de trabajo, por lo que se requería comisiones de este Despacho, (. )_"

**A.6.-** Acta de Entrega de Bienes Nacionales, Dotación de Equipos para la Actuación Policial, de fecha 21 de septiembre de 2010, cursante a los folios once (11) y su vuelto, veinticuatro (24), veinticinco (25) del expediente administrativo, debidamente suscrita por el Oficial (CPNB) **José Manuel Bernal Amaya**, y refrendada con su huella dactilar al momento de recibirla, mediante la cual asumió la responsabilidad del cuidado de los Bienes Públicos asignados para el cumplimiento de la función policial; asimismo, se incorpora al reverso de la misma, las Reglas Fundamentales de Seguridad con Armas de Fuego, donde se destaca el compromiso de cuidar y preservar el arma en un lugar seguro, (...), y a tal efecto expresa lo siguiente:

_DECLARACIÓN DEL FUNCIONARIO O FUNCIONARIA_
"El Funcionario recibe en este acto, los bienes antes identificados en perfecto estado y apto para su uso, igualmente asume la responsabilidad del cuidado y diligencia que se debe en la utilización o administración de los bienes nacionales bajo su custodia, comprometiéndose hacer uso de los equipos en ejercicio de sus funciones con ética, legalidad, transparencia, proporcionalidad y humanismo con estricto apego al respeto y garantías de los derechos humanos. Declarando conocer la normativa legal aplicable en casó de ocurrir irregularidad en el uso el bien (...Omissis)"

(...Omissis)
_REGLAS FUNDAMENTALES DE SEGURIDAD CON ARMAS DE FUEGO_
Igualmente, se informa al custodia del equipo asignado algunas recomendaciones en cuanto a la precaución que debe mantener para la manipulación del armamento asignado: "(...Omissis) 4) Guarde sus armas en lugar seguro. (...)" Negrillas nuestras.

**A.7.-** Factura Nº CXC/40003251 de fecha 02 de junio de 2010, emitida por la Compañía Anónima Venezolana de Industrias Militares (CAVIM), a través de la cual se evidencia que el valor del Bien Público, Tipo Pistola, Marca, Modelo: PX4 Storm, Serial PX759332E, asciende a la cantidad de **CUATRO MIL OCHOCIENTOS SETENTA Y SEIS BOLÍVARES CON SETENTA Y SIETE CÉNTIMOS (Bs. 4.876,37)**, cursante a los folios doce (12) y veintitrés (23) del Expediente Administrativo.

**A.8.-** Certificación de cargo de fecha 17 de marzo de 2014, relacionado con el presunto responsable **José Manuel Bernal Amaya**, que riela al folio treinta y siete (37) del expediente administrativo.

**A.9.-** Orden de los Servicios de fecha 13 de diciembre de 2011, suscrita por el Supervisor Agregado (CPNB) **Rafael Suárez**, Supervisor (E) de patrullaje vehicular Grupo "A" y por la Comisionada (CPMB) **Lupi Arellano Lisbey**, quien para la fecha se desempeñaba como Jefa del Servicio Vías rápidas, en cuya relación no aparece reflejado el Oficial (CPNB) José **Manuel Bernal Amaya**, que cursa a los folios cuarenta (40) al cuarenta y uno (41) y sus respectivos vueltos del expediente administrativo.

Estos documentos, que no fueron objetados, impugnados ni desconocidos por el imputado, producen la certeza que el Oficial (CPNB) **Eldry José Manuel Bernal Amaya**, titular de la cédula de identidad Nº V-19.293.443, cometió el hecho irregular imputado mediante Auto de Inicio de fecha 22 de septiembre de 2014, al decir llevar consigo el día 13 de diciembre de 2011, encontrándose franco de servicio, un Bien Público, correspondiente a un arma de reglamento Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm, Serial: PX593ZE y su respectivo cargador, mientras transitaba aproximadamente a las 05:00 de la mañana, por las adyacencias de la estación del metro Propatria, a sabiendas de que es una zona de alta peligrosidad tanto para la integridad física como para el resguardo de los bienes; en contravención con lo establecido en las Reglas Fundamentales de Seguridad con Armas de Fuego contempladas al reverso del Acta de Entrega de Bienes Nacionales Dotación de Equipos para la Actuación Policial, suscrita por el precitado funcionario en fecha 21 de septiembre de 2010 y refrendada con su huella dactilar al momento de recibirla, que riela a los folios (11) y su vuelto, veinticuatro (24) y veinticinco (25) del expediente administrativo, donde se destaca la precaución y preservación de guardaría en un lugar seguro, y no habiendo regla legal expresa para valorar su mérito probatorio, de conformidad con lo dispuesto en el artículo 102 de la LOCGRYSNCF, se valoran en base al principio de la sana crítica, entendida ésta como la libertad de apreciar las pruebas, de acuerdo con la lógica y las reglas de la experiencia, que producen certeza acerca de la ocurrencia del hecho imputado.

**B.- TESTIMONIALES.**

**B.1.-** Acta de Entrevista de fecha 17 de febrero de 2014, rendida por el presunto responsable **José Manuel Bernal Amaya**, ante la Oficina de Control de Actuación Policial (OCAP) del Cuerpo de Policía Nacional Bolivariana, que riela a los folios treinta y ocho (38), treinta y nueve (39) y su vuelto, en la cual contestó ante las preguntas formuladas e identificadas como primera (1) tercera (3), cuarta (4), quinta (5), sexta (6), octava (8) y novena (9) de la manera siguiente y cito:

" PRIMERA PREGUNTA: Diga Usted, fecha y hora que sucedieron los hechos los cuales hace mención en el relato? CONTESTO: Un martes 13 de Diciembre de 2011, en propatria adyacente al colegio la Presentación. TERCERA PREGUNTA: ¿Diga Usted, puede indicar como se trasladaban los ciudadanos que efectuaron dicho robo? CONTESTO: "En un XT 601 de color azul" CUARTA PREGUNTA: ¿Diga Usted, puede indicar dicha moto estaba identificada? CONTESTO: "NO" QUINTA PREGUNTA: Diga Usted, puede indicar las características de los ciudadanos que efectuaron dicho robo? CONTESTO: El que estaba armado era un flaco alto no le identifico la cara porque tenía casco "SEXTA PREGUNTA: ¿Diga Usted, puede indicar recibió amenazas por parte de los ciudadanos que efectuaron dicho robo? CONTESTO: "Amenazas de muerte y una patada" OCTAVA PREGUNTA: Diga Usted, puede indicar que tipo de arma tenían el sujeto que efectuó dicho robo? CONTESTO: "Una pistola de color negra" NOVENA PREGUNTA: Diga Usted, puede indicar a quien le comunico sobre dicha novedad? CONTESTO: Al Supervisor Jefe Dominque Jhonny y al Jefe del Grupo Motorizado para el momento..."

Del Acta antes transcrita se desprende que el Oficial **José Manuel Bernal Amaya**, manifestó que el hecho investigado le ocurrió el día 13 de diciembre de 2011, en Propatria adyacente al colegio la Presentación, reconocimiento expreso que ratifica el carácter irregular del hecho imputado mediante Auto de inicio de fecha 22 de septiembre de 2014, que fue fue la conducta presuntamente imprudente asumida por el precitado funcionario al demostrar falta de prudencia, de previsión o precaución, al decir llevar consigo el arma de reglamento antes descrita y su respectivo cargador, día 13 de diciembre de 2011, encontrándose franco de servido, cuando transitaba aproximadamente a las 05:00 de la mañana, por las adyacencias de la estación del metro Propatria, a sabiendas de que es una zona de alta peligrosidad tanto para la integridad física como para el resguardo de los bienes; omitiendo su responsabilidad de guardaría en un lugar seguro,

en contravención con lo establecido en las Reglas Fundamentales de Seguridad con Armas de Fuego contempladas al reverso del Acta de Entrega de Bienes Nacionales Dotación de Equipos para la Actuación Policial, suscrita por el precitado funcionario en fecha 21 de septiembre de 2010 y referendada con su huella dactilar al momento de recibirla, que riela a los folios (11) y su vuelto, veinticuatro (24) y veinticinco (25) del expediente administrativo, donde se destaca la precaución y preservación de guardaría en un lugar seguro.

Tal declaración rendida por el imputado, sin juramento, y libre de coacción y apremio hace prueba en su contra, de conformidad con lo dispuesto en el artículo 1402 del Código Civil, asimilándose a una confesión extrajudicial, dado el carácter administrativo, y no jurisdiccional de este Órgano de Control Fiscal Interno.

**B.2.-** Acta de Entrevista de fecha 08 de julio de 2014, rendida por el presunto responsable **José Manuel Bernal Amaya**, ante la Dirección de Control Posterior de esta Oficina de Auditoría Interna, que riela a los folios cincuenta y siete (57), cincuenta y ocho (58) y su vuelto, a través de la cual contestó ante las preguntas formuladas e identificadas como tercera (3), cuarta (4),

quinta (5), sexta (6), séptima (7), octava (8) y novena (9) de la manera siguiente y cito:

"...*TERCERO: Diga usted, el cargo, código, situación administrativa en que se encuentra actualmente? CONTESTO: Oficial del Cuerpo de Policía Nacional Bolivariana, adscrito al Servicio de Inteligencia y Estrategia ubicado en avenida Sucre de Catia, Caracas. CUARTO: ¿Diga usted, si para la fecha de la ocurrencia de los hechos estaba franco de servicio policial, explique? CONTESTO: Para la hora en que ocurrieron los hechos estaba franco de servicio, eso fue alrededor de las 05:00 am de la mañana cuando me dirigía a prestar servicio policial. QUINTO: ¿Diga usted, fecha, lugar y hora donde fue presuntamente víctima de robo a mano armada por parte de sujetos desconocidos? CONTESTO: Ocurrió por las adyacencias del Colegio la Presentación ubicado en Propatria a 100 metros aproximadamente del Metro de Propatria, en fecha 13 de diciembre de 2011, cuando fui sorprendido por dos (02) sujetos desconocidos quienes abordaban una moto MARCA XT Yamaha, Color Azul, cuando el parrillero desenfunda un arma de fuego y me canta la voz de alto que subiera las manos en alto, el mismo me sube la camisa y se percata que mi persona tenía un arma de fuego me apunto en la cabeza y yo le dije que no me matara, el mismo me despojo de un cargador y de 800 bolívares que llevaba conmigo, el otro sujeto se percato que era policía y le dijo al otro sujeto "Mátalo que es Policía", accionando así el arma de fuego el cual no le provoco dándome una patada en el pecho cayendo al suelo frente a un kiosco detrás de mi, mientras los sujetos emprendieron la huida hacia los bloques de pro-patria. SEXTO: Diga usted, los motivos por el cual cargaba el arma de reglamento el día en que ocurrieron los hechos? CONTESTO: Para esa fecha me correspondía guardia policial y por tal razón tenía conmigo no solo el arma de reglamento sino toda mi dotación policial tales como: uniforme policial, correaje, chaleco los cuales lo llevaba en un bolso. SEPTIMO: Diga usted, en que lugar específico tenía el arma de reglamento la cual le había sido asignada para el cumplimiento de sus funciones policiales, explique? CONTESTO: La llevaba en el lado derecho de mi cintura, cargando una franela holgada y tapándola con el bolso deportivo el cual portaba para el momento de los hechos. OCTAVO: ¿Diga usted, el Cuerpo Policial Nacional Bolivariana al cual se encuentra adscrito dispone de Parque de Armas? CONTESTO. Para esa fecha no tenía Parque de Armas, era obligación de todos los funcionarios llevaran consigo su dotación policial incluyendo el arma de reglamento, igualmente quiero destacar que en dicha sede no contábamos con un lugar adecuado para cambiarnos el uniforme y por tal razón lo teníamos que hacer en cualquier oficina o unidad vehicular, es importante resaltar que debido a que había en un lugar de alta peligrosidad no era ni es recomendable salir uniformado desde mi casa con la intención de resguardar mi integridad física. NOVENA: ¿Diga usted, hacia donde se dirigía el día que presuntamente fue despojado de su arma de reglamento, explique? CONTESTO: Al Comando de Helicoide a cumplir con la labor policial..."* (Subrayado y negrillas Nuestras).

Del Acta antes transcrita se desprende que el Oficial José Manuel Bernal Amaya, reconoció expresamente el hecho irregular imputado, mediante Auto de Inicio de fecha 22 de septiembre de 2014, al admitir que el día 13 de diciembre de 2011, estando franco de servicio, portaba su arma de reglamento y su respectivo cargador, asumiendo una conducta presuntamente imprudente, al demostrar falta de prudencia, de previsión o precaución, al decidir llevarlos consigo cuando transitaba aproximadamente a las 05:00 de la mañana, por las adyacencias de la estación del metro Propatria, a sabiendas de que es una zona de alta peligrosidad tanto para la integridad física como para el resguardo de los bienes; omitiendo su responsabilidad de **guardarla en un lugar seguro**, en contravención con lo establecido en las Reglas Fundamentales de Seguridad con Armas de Fuego contempladas al reverso del Acta de Entrega de Bienes Nacionales Dotación de Equipos para la Actuación Policial, suscrita por el precitado funcionario en fecha 21 de septiembre de 2010 y referidada con su huella dactilar al momento de recibirla, que riela a los folios (11) y su vuelto, veinticuatro (24) y veinticinco (25) del expediente administrativo, donde se destaca la precaución y preservación de guardarla en un lugar seguro.

Tal declaración rendida por el imputado, sin juramento, y libre de coacción y apremio hace prueba en su contra, de conformidad con lo dispuesto en el artículo 1402 del Código Civil, asimilándose a una confesión extrajudicial, dado el carácter administrativo y no jurisdiccional de este Órgano de Control Fiscal Interno.

### D. VALORACIÓN DE LAS PRUEBAS

**D.1.- DE LOS ARGUMENTOS DE DEFENSA EXPUESTOS POR EL OFICIAL (CPNB) ELDRY ALEXANDER CARABALLO BERMÚDEZ.**

De conformidad con lo dispuesto en el artículo 102 de la LOCGRSYNCF, los elementos probatorios que demuestran la condición del hecho, y la responsabilidad de su autor han sido valorados, en base a las reglas expresas que se citan en cada caso, o, en su defecto en atención a las reglas de la sana crítica.

Los alegatos y argumentos del presunto responsable, serán analizados en el siguiente acápite.

**D.2.- DE LOS ARGUMENTOS EXPUESTOS POR EL FUNCIONARIO JOSÉ MANUEL BERNAL AMAYA DURANTE LA ETAPA DE POTESTAD INVESTIGATIVA**

El Auto de Proceder Nº 013-2014 de fecha 20 de junio de 2014, que dio inicio a la potestad investigativa, fue notificado al Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº V-19.293.443, el día 27 de junio de 2014, tal como se evidencia de Oficio Nº DCP-020 de fecha 20 de junio de 2014, que riela a los folios cincuenta y uno (51) al cincuenta y cuatro (54) y sus vueltos del expediente administrativo, en el cual se le indica que a partir de la fecha de su notificación quedaba a derecho para todos los actos procesales teniendo acceso inmediato al expediente.

En este orden el precitado funcionario, consignó el día 08 de julio de 2014, escrito constante de un (01) folio útil, mediante el cual expuso los argumentos y promovió sus pruebas, y sus anexos, constante de tres (3) folios útiles, tal como se evidencia a los folios sesenta (60) al sesenta y nueve (69) del Expediente Administrativo, y a tal efecto alegó fundamentalmente lo siguiente:

*"(...)*

### DE LOS HECHOS

*Que, "(...) Mi persona fue victima de robo de mi ARMA de Reglamento de la Policía Nacional Bolivariana, mi persona Se encontraba Franco de Servicio y me dirigía a mi lugar de trabajo para esa fecha me locaba guardar (Servicio Vías Rápidas, Helicoide) Ya que tenía Formación a las 5:30 am hrs de la mañana y pertenecía a el grupo "A" de la Brigada Motorizada del Servicio de Vías Rápidas, siendo las 05:00 hrs. de la mañana Aproximadamente caminaba hacia la estación propatria en las adyacencias del colegio la presentación cuando fui sorprendido por dos sujetos desconocidos quienes abordaban una MOTO marca YAMAHA color AZUL, donde el parrillero desenfunda un arma de fuego y me canta la voz de alto, y bajo amenaza de arma de fuego alto levanta las manos en alto, mi persona se encontraba Nerviosa y trate de desenfundar el Arma de Reglamento, Dicho Sujeto me dijo que si me movía me disparaba. El mismo me levanto la camisa y se percato que mi persona tenía un arma de fuego me apunto en la cabeza y me quito el Arma de Reglamento Ps5932E BERETTA de la Republica Bolivariana. Yo le dije que no me matara, me despoja de un cargador de la pistola Psk marca BERETTA y de (800 Bsf) el otro sujeto indicándole matalo que es Policía, el mismo sujeto acciono el Arma de fuego y no le provoco, dándome una patada en el pecho y tumbándome al suelo y cayendo frente a un kiosco que se encontraba en la avenida principal, los sujetos desconocidos se montaron en la moto antes mencionada y huyendo hacia los bloques de pro-patria, mi persona adolorida me levante y me dirigí hacia CICPC del Oeste...*"

En relación a este argumento, quien suscribe considera oportuno destacar, los siguientes aspectos:

En primer lugar el Oficial (CPNB) **José Manuel Bernal Amaya**, no promovió ninguna prueba que sustentara su aseveración, referida a que el día y hora de la ocurrencia del hecho objeto de este Procedimiento, se dirigía a cumplir con su labor policial en el Servicio Vías Rápidas, en el Helicoide.

En segundo lugar, conviene resaltar que riela a los folios cuarenta (40) al cuarenta y uno (41) y sus respectivos vueltos, del expediente administrativo, Orden de los Servicios de fecha 13 de diciembre de 2011, suscrita por el Supervisor Agregado (CPNB) **Rafael Suárez**, Supervisor (E) de patrullaje vehicular Grupo "A" y por lo Comisionada (CPNB) **Lupi Arellano Lisbey**, quien para la fecha se desempeñaba como Jefa del Servicio Vías rápidas del Cuerpo de Policía Nacional Bolivariana, según la cual se evidencia que el precitado funcionario no se encontraba reflejado en la relación del personal policial que cumpliría funciones ese día en un horario comprendido desde las 07:00 a.m. hasta 18:00 p.m.

En tal sentido, por las razones expuestas, se desestima este alegato. **Y así se decide.**

En este contexto, resulta oportuno destacar, que el Oficial (CPNB) **José Manuel Bernal Amaya**, consignó como anexos del citado escrito, copias simples las siguientes pruebas documentales:

**a)** Parte Interno Nº 347 de fecha 14 de diciembre de 2011, emanado de la Dirección de Transporte Terrestre, Servicio Vías Rápidas, a través del cual se indicó lo siguiente:

| Nº | MARTES 13/07/00CIC11   HASTA   MIÉRCOLES 14/07/00CIC11 |
|---|---|
|  | Funcionario despojado del Arma de Reglamento |
| 1 | INFORMO EL SUPERVISOR JEFE (PNB) ARGENIZ DIAZ SUPERVISOR GENERAL POR EL SERVICIO DE VIAS RÁPIDAS EN LA UNIDAD RADIO PATRULLERA VR-035 SIENDO CONDUCTDA POR EL OFICIAL ASENCIO DOUGLAS C.I. 17793705 QUE SIENDO ENVIADO POR EL SERVICIO DE LA OCAP A LA COMISARÍA DEL C.I.C.P.C DEL OESTE DONDE SE ENCONTRABA EL OFICIAL (PNB) JOSÉ MANUEL BERNAL AMAYA C.I. 19293447 PERTENECIENTE AL SERVICIO DE MATRIXLLAJE GRUPO A MOTORIZADO EL CUAL INFORMO QUE MINUTOS ANTES FUE DESPOJADO DE SU ARMA DE REGLAMENTO MARCA BERETTA MODELO PX SERIAL PSX932E CALIBRE 9MM EN EL CENTRO COMERCIAL PRO-PATRIA, POR UNOS SUJETOS QUE SE TRASLADABAN EN UNA MOTOCICLETA MARCA YAMAHA MODELO XT COLOR AZUL Y EN UN VEHICULO MARCA TOYOTA MODELO COROLLA COLOR AZUL POR LO CUE SE PROCEDIO A DEJAR CONSTANCIA AL FORMULAR LA DENUNCIA RESPECTIVA. |

**b)** Ordenes de los Servicios de fechas 07, 13, 16, 17 y 18 de diciembre de 2011, emanadas de la Dirección de Transporte Terrestres, Centro de Coordinación Policial Vías Rápidas.

**c)** Oficio Nº DCP-021 de fecha 20 de junio de 2014, mediante el cual la Dirección de Control Posterior de esta Oficina de Auditoría Interna, cito

al Oficial (CPNB) **José Manuel Bernal Amaya**, a fin de que rindiera declaración en calidad de interesado legítimo.

d) Memorando N° CPNB-DTT-SVR-D-6010-2014 de fecha 30 de junio de 2014, suscrito por el Comisionado Agregado (CPNB) **José Francisco Iturriza**, Comandante del Servicio de Vías Rápidas Helicoide, mediante el cual se dejó constancia de la entrega realizada al funcionario **José Manuel Bernal Amaya**, de las Ordenes de los Servicios de fechas 07, 13, 16, 17 y 18 de diciembre de 2011 y el extracto de novedades de fecha 07 de diciembre de 2011.

e) Memorando s/n y s/fecha, emanado de la Dirección de Transporte Terrestre, Servicio Vías Rápidas Helicoide, del cual se extrae lo siguiente y cito:

*" (...) en nombre del personal de "Vías Rápidas Helicoide", y a la vez informarle que se le hace entrega de copias certificadas de la ordenes de servicio a (sic) de (sic) al ciudadano JOSE MANUEL BERNAL AMAYA C.I. N° V19.293.443, con fecha 07 de diciembre de 2011, cuando pertenecía al grupo de motorizados grupo "A", 13 de diciembre 2011, donde presuntamente hubo el robo del bien nacional: (...), el quien no aparece en la orden de los servicios, de dicho día se desconocen los motivos, (...)"*(Negrillas y subrayado nuestro).

Del análisis realizado al contenido de las pruebas documentales supra citadas, quien suscribe, considera oportuno hacer las siguientes consideraciones:

- En el citado extracto de novedad señalado en el literal a, sólo se deja constancia del presunto robo del cual fue objeto el Oficial (CPNB) **José Manuel Bernal Amaya**; evidenciándose que nada aporta para desvirtuar el hecho presuntamente irregular imputado al precitado funcionario.

- En cuanto a las órdenes de los servicios indicadas en el literal b, de fechas 07, 16, 17 y 18, las mismas son **impertinentes**, puesto que no corresponden al día de la ocurrencia del hecho presuntamente irregular investigado, motivo por el cual quien aquí decide, las desestima. **Y así se declara.**

Ahora bien, en relación a la orden de los servicios de fecha 13 de diciembre de 2011, conviene destacar, que si bien es cierto que corresponde al día de la ocurrencia del hecho, no es menos cierto que el precitado funcionario no aparece reflejado en la relación del personal policial que cumpliría funciones ese día en un horario comprendido desde las 07:00 a.m. hasta 18:00 p.m, situación que fue ratificada en la prueba documental a que se hace referencia en el literal e.

El oficio de citación promovido, señalado en el literal c, contiene un acto de mera sustanciación relacionado con el procedimiento de potestad investigativa, iniciado por la Dirección de Control Posterior de esta Oficina de Auditoría Interna, a través del cual se solicitó la comparecencia del precitado funcionario, a los fines de que rindiera declaración en calidad de interesado legítimo sobre los hechos relacionados con el presunto robo de Bien Público, correspondiente a un arma de reglamento Tipo Pistola, Marca: Beretta, Modelo: PX4, Calibre: 9mm, Serial: PX5932E y su respectivo cargador.

El memorando N° CPNB-DTT-SVR-D-6010-2014 de fecha 30 de junio de 2014, indicado en el literal d, es un acto de mero trámite del Servicio de Vías Rápidas Helicoide.

En tal sentido, por las razones expuestas, quien aquí decide **desestima** las pruebas documentales ut supra, por cuanto nada aportan para desvirtuar el hecho presuntamente irregular imputado al Oficial (CPNB) **José Manuel Bernal Amaya. Y así se decide.**

**E. DE LA NOTIFICACIÓN DEL AUTO DE INICIO, DE LOS ALEGATOS EXPUESTOS Y DE LAS PRUEBAS INDICADAS POR EL IMPUTADO EN EL MARCO DEL PROCEDIMIENTO ADMINISTRATIVO PARA LA DETERMINACIÓN DE RESPONSABILIDADES.**

El auto que dio inicio al presente procedimiento administrativo, fue notificado el día **01 de octubre de 2014**, al Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad N° **V-19.293.443**, tal como se evidencia en el Oficio N° **MPPRIJP-AI-DDR-122** de fecha 24 de septiembre de 2014, que riela a los folios ciento ocho (108), y ciento nueve (109) y su vuelto del expediente administrativo, en el cual se le indicó las bases del Procedimiento Administrativo para la Determinación de la Responsabilidad previsto en la LOCGRYSNCF y su Reglamento; asimismo, se le hizo la mención que conforme al artículo 98 *eiusdem*, quedaba a derecho para todos los efectos del procedimiento.

**E.-1.-** En este orden tenemos, que el precitado funcionario presentó en fecha 22 de octubre de 2014, escrito de indicación de pruebas, de conformidad con lo establecido en el artículo 99 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal, en concordancia con el artículo 91 del Reglamento de la aludida Ley, y sus anexos, que riela a los folios ciento once (111) al ciento dieciseis (116), del expediente administrativo que contiene de manera coincidente, los mismos argumentos y pruebas aludido en el escrito presentado ante este Organo de Control Fiscal Interno en fecha 08 de julio de 2014, y a tal efecto no obstante, señaló fundamentalmente lo siguiente y cito:

*"(...)*

**DE LOS HECHOS**

Que: "(...) hago este escrito para narrar lo sucedido el día 13-12-2011 Mi persona fue víctima de robo de mi Arma de Reglamento de la Policía Nacional Bolivariana, mi Persona me

encontraba Franco de Servicio y me dirigía a mi labor de trabajo para esa fecha antes mencionada me tocaba guardia (en el Servicio Vías Rápidas, Helicode) Ya que tenía Formación a las 5:30 am horas de la mañana y pertenecía al grupo "A" de la Brigada Motorizada del Servicio de Vías Rápidas, siendo las 05:00 am hrs. de la mañana Aproximadamente caminaba hacia la estación del Metro de Propatria cuando fui sorprendido por 2 sujetos desconocidos por las advacencias del Colegio la Presentación quienes abordaban una MOTO marca YAMAHA XT color AZUL, donde el parrillero desenfunda un arma de fuego y me canta la vez de alto y bajo amenaza de muerte que levantara las manos en alto, mi persona se encontraba Nervioso y trate de desenfundar el Arma de Reglamento, Dicho sujeto que si me movía me disparaba. El mismo me levanto la camisa y se percato que mi persona tenía un Arma de Reglamento de fuego me apunto en la cabeza y me quito el Arma de Fuego de la Policía Nacional Bolivariana, Yo le dije que no me matara, me despojo de un cargador de la Pistola y 0800 Bolívares Fuertes) el otro sujeto indicándole mátalo que es Policía, el mismo sujeto acciono el Arma de fuego y no le percuto, dándome una patada en el pecho y tumbándome al suelo y cayendo al frente de un kiosco que se encontraba en la Avenida Principal, los Sujetos Desconocidos se montaron en la moto antes mencionada huyendo hacia los Bloques de Propatria, mi persona adolorida me levante del Suelo y me dirigí hacia (C.I.C.P.C.) de Propatria para formular la denuncia del robo de mi Armamento.*

*Que, "igualmente quiero destacar que en dicha Sede Policial no contábamos con un Parque de Armas o Lugar Adecuado para dejar el Arma de Reglamento. Ya para el momento era Obligación de todos los funcionarios llevarse su dotación policial tales: (sic) como (Arma de Reglamento, Chaleco Antibalas, Uniforme Correaje, Esposa, Bastón Plegable,) a excepción del Radio de Trasmisor, el cual debe Reintegrarse en la oficina correspondiente una vez culminada la Jornada Laboral. (...)"*

En este orden, resulta oportuno destacar, que en el referido escrito el presunto responsable Oficial (CPNB) **José Manuel Bernal Amaya**, consignó en copias simples las siguientes pruebas documentales:

1. Parte Interno N° 347 de fecha 14 de diciembre de 2011, emanado de la Dirección de Transporte Terrestre, Servicio Vías Rápidas.

2. Ordenes de los Servicios de fechas 07, 13, 16, 17 y 18 de diciembre de 2011, emanadas de la Dirección de Transporte Terrestres, Servicio Vías Rápidas.

3. Oficio N° DCP-021 de fecha 20 de junio de 2014, mediante la cual la Dirección de Control Posterior de esta Oficina de Auditoría Interna, cito al funcionario **José Manuel Bernal Amaya**, a fin de que rindiera declaración en calidad de interesado legítimo.

4. Memorando N° CPNB-DTT-SVR-D-6010-2014 de fecha 30 de junio de 2014, suscrito por el Comisionado Agregado (CPNB) **José Francisco Iturriza**, Comandante del Servicio de Vías Rápidas Helicoide.

5. Memorando s/n y s/fecha, emanado de la Dirección de Transporte Terrestre, Servicio Vías Rápidas Helicoide.

**E.-2.-** Por su parte, la Dirección de Determinación de Responsabilidades de esta Oficina de Auditoría Interna, mediante Auto de fecha 22 de octubre de 2014, que riela al folio ciento diez (110) del expediente administrativo, se pronunció acerca de la admisión de las citadas pruebas, en los siguientes términos:

*Por cuanto en esta misma fecha, estando dentro del lapso previsto en el artículo 99 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal y 91 de su Reglamento, compareció el Oficial (CPNB) José Manuel Bernal Amaya, titular de la cédula de identidad N° V-19.293.443, a los fines de consignar escrito constante de dos (2) folios útiles y cinco (5) anexos, mediante los cuales indica las pruebas de su juicio considera le favorecen, en el Procedimiento Administrativo para la Determinación de Responsabilidades, que tramita esta Dirección de Determinación de Responsabilidades, contenido en el expediente administrativo identificado con las siglas y número N° MPPRIJP-AI-PADR-012-2014: se acuerda agregarlos a los autos.*

*En este sentido, de conformidad con lo establecido en el citado artículo 91, ésta Dirección de Determinación de Responsabilidades, se pronuncia acerca de la admisión de las pruebas presentadas, en los siguientes términos:*

*PRIMERO: En el respecto en referencia plantea una serie de argumentos que guardan relación con el fondo del asunto; razón por la cual, quien suscribe, los admite, no obstante, su valoración y pronunciamiento se efectuará en la oportunidad en que deba dictarse la decisión que habrá de recaer en el presente procedimiento administrativo.*

*SEGUNDO: El Oficial (CPNB) José Manuel Bernal Amaya, consignó en copias simples, las siguientes pruebas documentales:*

*- Parte Interno N° 347 de fecha 14 de diciembre de 2011, emanado de la Dirección de Transporte Terrestre, Servicio Vías Rápidas.*

417.578     GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA     Lunes 22 de diciembre de 2014

- Órdenes de los Servicios de fechas 07 y 13 de diciembre de 2011, emanadas de la Dirección de Transporte Terrestres, Servicio Vías Rápidas.

- Memorando PNB-SVR-S/N-2014 de fecha 09 de julio de 2014, emanado de la Dirección de Transporte Terrestres, Servicio Vías Rápidas.
- Denuncia Nº K-11-2225-04053 de fecha 13 de diciembre de 2011, formulada por el funcionario **José Manuel Bernal Amaya**, ante la Sub Delegación El Oeste Tipo B, del Cuerpo de Investigaciones Científicas, Penales y Criminalísticas (C.I.C.P.C.).

En cuanto a las pruebas documentales ut supra, quien suscribe, **las admite y se reserva el pronunciamiento respecto de las mismas en la oportunidad en que deba dictarse la decisión que habrá de recaer en el presente procedimiento administrativo, a** excepción de la orden de los servicios de fecha 07 de diciembre de 2011, por cuanto la misma es **Impertinente,** en virtud de que no guarda relación con el hecho imputado.

Ahora bien, quien decide pasa a conocer los alegatos de defensa esgrimidos y las pruebas promovidas de la siguiente manera:

En relación al primer alegato referido a que el día y hora de la ocurrencia del hecho presuntamente irregular investigado, el imputado se dirigía a cumplir con su función policial en el Servicio de Vías Rápidas en el Helicoide; en este sentido, quien suscribe, considera oportuno señalar, que éste argumento ya fue valorado en el presente Auto Decisorio, (último párrafo de la página 21, párrafos 1 al 5 de la página 22), y los argumentos allí expuestos, se dan por reproducidos, a los fines de esta valoración.

En cuanto al segundo argumento referido a que la sede policial no contaba con un parque de armas o lugar adecuado para dejar el arma de reglamento; al respecto cabe acotar que el imputado no puede pretender desplazar su responsabilidad individual a la Institución Policial, al argumentar que no había parque de armas, puesto que el hecho presuntamente irregular investigado fue la conducta asumida por la precitado funcionario en el cuidado y uso de un bien público y su cargador, toda vez, que se comportó con falta de prudencia, de previsión o precaución, frente a lo que debe ser la responsabilidad asumida por un buen funcionario público, trayendo como consecuencia la pérdida de un arma de reglamento Tipo Pistola, Marca: Beretta, Modelo: PX4 Storm, Calibre: 9mm, Serial: PX5932E y su cargador; al llevarlos consigo el día 13 de diciembre de 2011, encontrándose franco de servicio, mientras transitaba aproximadamente a las 05:00 de la mañana, por las adyacencias de la estación del metro Propatria, a sabiendas de que es una zona de alta peligrosidad tanto para la integridad física como para el resguardo de los bienes; contraviniendo las Reglas Fundamentales de Seguridad con Armas de Fuego, plasmadas en el reverso del Acta de Entrega de Bienes Nacionales, dotación de equipos para la actuación policial, de fecha 26 de agosto de 2010, debidamente suscrita por el precitado funcionario, y referindada con su huella dactilar, que cursa a los folios once (11) y su vuelta, veinticuatro (24) y veinticinco (25), del expediente administrativo, donde se destaca el compromiso de guardar el arma en un lugar seguro.

Con fundamento en los razonamientos expuestos, quien suscribe, desestima este argumento. **Y así se decide**

En relación a las pruebas documentales indicadas en los numerales 1 al 5, quien suscribe, considera oportuno destacar, que éstas ya fueron valoradas en el presente Auto Decisorio, (párrafos 6 al 8, de la página 22, página 23, párrafos 1 al 3 de la página 24), y los argumentos allí expuestos, se dan por reproducidos, a los fines de esta valoración.

Por todas las consideraciones que anteceden, y en atención al acervo probatorio cursante en autos, los cuales en ningún momento han sido objetados, impugnados, ni desconocidos en la presente causa por el imputado ni por sus representes legales, quien suscribe, ratifica, en todas y cada una de sus partes la imputación realizada en el Auto de Inicio de fecha 22 de septiembre de 2014, cursante a los folios noventa y seis (96) al ciento cinco (105) y sus respectivos vueltos, del expediente administrativo. **Y así se decide.**

## F. AUDIENCIA ORAL Y PÚBLICA

El día trece (13) de noviembre de 2014, siendo las 10:00 a.m, se llevó a cabo el Acto Oral y Público a que se refiere el artículo 101 de la LOCGRYSNCF y 92 al 97, ambos inclusive, de su Reglamento, tal como consta en los folios ciento veinte (120), al ciento veintitrés (123), y sus vueltos, del expediente administrativo identificado con las siglas y número **MPPREIJP-AI-PADR-012-2014**, relacionado con el Procedimiento Administrativo para la Determinación de Responsabilidades, iniciado por Auto de fecha 22 de septiembre de 2014, al Oficial (CPNB) **José Manuel Bernal Amaya,** titular de la cédula de identidad Nº **V-19.293.443**, imputado en el presente procedimiento, con la finalidad de que expresara en forma oral y pública, los argumentos que considerara le asisten para la mejor defensa de sus derechos e intereses, el cual fue declarado desierto, en virtud que el imputado no compareció personalmente, ni por medio de representante legal, por cuyo motivo, en su beneficio, se acordó una (1) hora de espera, seguidamente siendo las 11:00 A.M, sin haberse hecho presente el imputado, ni por sí ni por medio de representante alguno, se procedió a levantar el acta respectiva.

En este aspecto conviene precisar algunos aspectos relativos al hecho precedentemente expuesto, que de quedar demostrado constituiría el ilícito administrativo tipificado en el numeral 2 del artículo 91 de la LOCGRYSNCF, que disponen:

"Sin perjuicio de la responsabilidad civil o penal, a la que dispongan otras Leyes, constituyen supuestos generadores de responsabilidad administrativa los actos, hechos u omisiones que se mencionan a continuación:

(...omissis...)

2. La omisión, retardo, negligencia o **imprudencia** en la preservación y salvaguarda de los bienes o derechos del patrimonio de un ente u organismo de los señalados en los numerales 1 al 11 del artículo 9 de esta Ley..." (Negrillas nuestras).

De la lectura del artículo parcialmente transcrito relativo a la omisión, retardo, negligencia o imprudencia en la preservación y salvaguarda de bienes o derechos del patrimonio público, está referido, como su texto claramente lo indica, a la falta de actuación, actuación a destiempo, falta de diligencia o falta de cuidado, en el desempeño de las funciones de conservación, resguardo, defensa o protección de bienes o derechos del patrimonio público, que de conformidad con el conjunto de normas que regulan la actividad administrativa inherente al Estado, corresponde a todo funcionario en el ejercicio de sus competencias públicas y a todos aquellos particulares que administren, manejen o custodien recursos afectados al cumplimiento de finalidades públicas provenientes de los entes y organismos sujetos a las disposiciones de la citada Ley y al control, vigilancia y fiscalización de la Contraloría General de la República.

En relación a la **imprudencia** en la preservación y salvaguarda de los bienes del patrimonio público, debe hacerse especial énfasis en la conducta, bien sea activa u omisiva, asumida por un funcionario que, directa o indirectamente, tenga incidencia en el patrimonio público del ente u organismo para el cual presta sus servicios. En este sentido, estaríamos en presencia de un funcionario pública negligente, cuando éste asume una conducta de descuido o falta de cuido, que redunde en detrimento del patrimonio del ente u organismo afectado.

De modo tal, que una actitud de dejadez, desidia o abandono, frente a lo que debe ser la responsabilidad asumida por un buen padre de familia, en perjuicio de los intereses que corresponde tutelar, constituye pues **Imprudencia.**

Así pues, que para determinar si una conducta es o no imprudente, basta con precisar la desidia, el descuido, el abandono o la falta de previsión, sin necesidad de demostrar el dolo o la intención de dañar, pues cuando se tiene incidencia, por mínima o indirecta que ésta sea, en el manejo de los intereses de un ente u organismo, lo menos que debe ser es previsivo y cuidadoso, pues previendo el resultado perjudicial no lo prevé, o previéndolo, no toma las medidas oportunas para evitarlo.

Al respecto, la doctrina patria en la autora Nélida Peña, en su obra "El Régimen de la Responsabilidad Administrativa", página 235, ha fijado posición en cuanto al supuesto generador de responsabilidad administrativa, en lo atinente a la **imprudencia,** señalando lo siguiente: "...*Además de la negligencia del funcionario, también su imprudencia, que es una conducta activa caracterizada por la falta de previsión o de precaución, puede dar lugar a que se configure el supuesto generador de responsabilidad administrativa...el funcionario en lugar de incurrir en la irregularidad por omisión o retardo, lo hace por acción, pero sin adoptar las debidas precauciones que le impone el ejercicio de un cargo que comporta la administración de bienes públicos...Desde luego,...se produce un daño al patrimonio del ente y en general al patrimonio público...*". (Negrillas nuestras).

Precisado estas consideraciones de carácter teórico, debemos advertir que además de la eventual declaratoria de responsabilidad administrativa que pudiera imponerse por el presunto hecho que nos ocupa, de ser verificado el supuesto detrimento patrimonial, el sujeto de la acción deberá responder civilmente con su patrimonio a través de la formulación de reparo impuesto por este Órgano de Control Fiscal Interno, con el objeto de resarcir el daño causado por su conducta, así se desprende de lo previsto en los artículos 82, 84 y 85 de la LOCGRYSNCF, los cuales establecen:

**Artículo 82.** Los funcionarios, funcionarias, empleados, empleadas, obreros y obreras que presten servicios en los entes señalados en el artículo 9, numerales 1 al 11, de esta Ley, así como los particulares a que se refiere el artículo 52 de esta Ley, responden penal, civil y administrativamente de los actos, hechos u omisiones contrarios a norma expresa en que incurran con ocasión del desempeño de sus funciones. (...)

**Artículo 84.** La responsabilidad civil se hará efectiva de conformidad con las leyes que regulen la materia y mediante el procedimiento de reparo regulado en esta Ley y su Reglamento, salvo que se trate de materias reguladas por el Código Orgánico Tributario, en cuyo caso se aplicarán las disposiciones en él contenidas.

**Artículo 85.** Los órganos de control fiscal procederán a formular reparo cuando, en el curso de las auditorías, fiscalizaciones, inspecciones, exámenes de cuentas o investigaciones que realicen en ejercicio de sus funciones de control, detecten indicios de que se ha causado daño al patrimonio de un ente u organismo de los señalados en los numerales 1 al 11 del artículo 9 de esta Ley, como consecuencia de actos, hechos u omisiones contrarios a una norma legal o sublegal, al plan de organización, las políticas, normativa interna, los manuales de sistemas y procedimientos que comprenden el control interno, así como por una conducta omisiva o negligente en el manejo de los recursos...)"

Lunes 22 de diciembre de 2014     GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA     417.579

En efecto, la responsabilidad civil especial encuentra su fundamento en la noción de responsabilidad propia del derecho natural, la cual postula como elemento esencial que nadie debe causar a otro un daño injusto y, en caso de producirse el mismo, debe ejercerse la respectiva acción resarcitoria a los fines de que dicho daño sea reparado, la responsabilidad administrativa y civil así como la consiguiente obligación de reparar el daño causado, estaría configurado con la concurrencia de elementos esenciales, que deben estar plenamente probado, a saber: 1. Una acción u omisión tanto del funcionario públicos como de particulares, que intervinieron en la administración o custodia de los bienes del patrimonio público; 2. Un daño, esto es, una disminución, menoscabo o pérdida específicamente al patrimonio público; y 3. Un nexo o relación de causalidad entre los dos elementos anteriormente enumerados.

Igualmente, se observa que el hecho descrito, causó un daño al patrimonio del Estado, por lo que corresponde precisar el carácter resarcitorio inherente al procedimiento de reparo, en contraposición al carácter sancionatorio que se persigue con el procedimiento administrativo atinente a la declaratoria de responsabilidad administrativa, dado que, en la LOCGRYSNCF, el legislador atendiendo a los principios de economía y celeridad procesal, reunió en un mismo procedimiento estas dos acciones (determinación de responsabilidad administrativa y reparo), las cuales persiguen fines sancionatorios distintos.

Así encontramos; por una parte, la formulación de reparo que es una modalidad especial de persecución de responsabilidad civil en el ámbito administrativo, que principalmente persigue resarcir un daño que se haya causado al patrimonio público por la acción u omisión dolosa o culposa de un agente; por otra parte, tenemos la declaratoria de responsabilidad administrativa, la cual persigue fundamentalmente, sancionar la conducta transgresora de la norma.

Con fundamento en lo esbozado se deduce, que de comprobarse el presunto hecho señalado en los párrafos anteriores, con base a lo previsto en los aludidos artículos 84 y 85 de la LOCGRYSNCF, el presunto responsable de tal actuación, deberá resarcir el daño causado al patrimonio público, cuyo monto asciende a la cantidad de **CUATRO MIL OCHOCIENTOS SETENTA Y SEIS BOLÍVARES CON TREINTA Y SIETE CÉNTIMOS (Bs. 4.876,37)**, valor de la referida arma policial, tal como consta en la copia certificada de la Factura Nº CXC/40003251 de fecha 02 de junio de 2010, emitida por la Compañía Anónima Venezolana de Industrias Militares (CAVIM), que cursa a los folios doce (12) y veintitrés (23) del Expediente Administrativo.

En consecuencia, por las razones desarrolladas en el presente punto, se puede establecer con claridad que el hecho supra citado, da lugar a que este Órgano de Control Fiscal Interno formule reparo de conformidad con lo establecido en el artículo 85 de la LOCGRYSNCF, en concordancia con el artículo 1.185 del Código Civil, por el daño causado al patrimonio público, cantidad que asciende a **CUATRO MIL OCHOCIENTOS SETENTA Y SEIS BOLÍVARES CON TREINTA Y SIETE CÉNTIMOS (Bs. 4.876,37)**, los cuales disponen lo siguiente:

*"Artículo 85. Los órganos de control fiscal procederán a formular reparo cuando, en el curso de las auditorías, fiscalizaciones, inspecciones, exámenes de cuentas o investigaciones que realicen en ejercicio de sus funciones de control, detecten indicios de que se ha causado daño al patrimonio de un ente u organismo de los señalados en los numerales 1 al 11 del artículo 9 de esta Ley, como consecuencia de actos, hechos u omisiones contrarios a una norma legal o sublegal, al plan de organización, las políticas, normativa interna, los manuales de sistemas y procedimientos que comprenden el control interno, así como por una conducta omisiva o negligente en el manejo de los recursos."*

*Artículo 1.185: "El que con intención, o por negligencia o por imprudencia, ha causado un daño a otro, está obligado a repararlo. Debe igualmente reparación quien haya causado un daño a otro, excediendo, en el ejercicio de su derecho, los límites fijados por la buena fe o por el objeto en vista del cual le ha sido conferido ese derecho."*

Esta responsabilidad civil especial encuentra su fundamento en la noción de responsabilidad propia del derecho natural, la cual postula como elemento esencial que nadie debe causar a otro un daño injusto y, en caso de producirse el mismo, debe ejercerse la respectiva acción resarcitoria a los fines de que dicho daño sea reparado.

## CAPÍTULO III

### DISPOSITIVA

En mérito de los razonamientos precedentemente expuestos, quien suscribe, **Germán Rafael Laverde**, titular de la cédula de identidad **Nº V-3.400.167**, Director General Encargado de la Oficina de Auditoría Interna del Ministerio del Poder Popular para Relaciones Interiores, Justicia y Paz, designado mediante Resolución Ministerial Nº 124 de fecha 07 de Mayo de 2013, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.161 de fecha 07 de Mayo de 2013, de conformidad con lo previsto en los artículos 103 y 105, en concordancia con los artículos 86 y 94 de la LOCGRYSNCF, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 6.013 Extraordinario de fecha 23 de diciembre de 2010, para dictar decisiones, en concordancia con lo establecido en el artículo 97 del Reglamento de la ley eiusdem, y en ejercicio de la atribución que me es conferida en el artículo 14 numeral 24 del Reglamento Interno de la Oficina de Auditoría Interna del Ministerio del Poder Popular para Relaciones de Interiores y Justicia, publicado en Gaceta Oficial de la República Bolivariana de Venezuela Nº 39.590 de fecha 10 de enero de 2011, **DECIDO**:

**PRIMERO:** Declarar la **RESPONSABILIDAD ADMINISTRATIVA** del Oficial (CPNB) **José Manuel Bernal Amaya**, venezolano, mayor de edad, civilmente hábil, titular de la cédula de identidad Nº **V-19.293.443**, y con domicilio en la Calle Guacaipuro, Vereda 2, Casa Nº 03, Sector Los Magallanes de Catia, Parroquia Sucre, Municipio Bolivariano Libertador, Caracas, Distrito Capital, por el hecho irregular descrito e imputado en el auto de inicio del procedimiento administrativo para la determinación de responsabilidades de fecha veintidós (22) de septiembre de 2014.

**SEGUNDO:** De conformidad con lo establecido en el artículo 85 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal, en concordancia con el artículo 1.185 del Código Civil, **SE DECLARA LA RESPONSABILIDAD CIVIL (FORMULACIÓN DE REPARO)**, por el daño causado al patrimonio de la República, dada la pérdida del Bien Público identificado como un arma de reglamento, tipo Pistola, Marca Beretta, Modelo PX4 Storm, Calibre 9mm, Serial PX5932E y de su respectivo cargador, propiedad de la República, por Órgano del Cuerpo de Policía Nacional Bolivariana (CPNB), cantidad que asciende a **CUATRO MIL OCHOCIENTOS SETENTA Y SEIS BOLÍVARES CON TREINTA Y SIETE CÉNTIMOS (Bs. 4.876,37)**, valor de la referida arma policial, tal como consta en la copia certificada de la Factura Nº CXC/40003251 de fecha 02 de junio de 2010, emitida por la Compañía Anónima Venezolana de Industrias Militares (CAVIM), cursante a los folios doce (12) y veintitrés (23) del Expediente Administrativo.

**TERCERO:** De conformidad con lo establecido en el artículo 105 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal, el cual señala entre otros aspectos, que la declaratoria de responsabilidad administrativa, de conformidad con lo previsto en los artículos 91 y 92 de la misma Ley, será sancionada con multa prevista en el artículo 94 eiusdem; se impone al Oficial (CPNB) **José Manuel Bernal Amaya**, titular de la cédula de identidad Nº **V-19.293.443**, **MULTA DE QUINIENTAS CINCUENTA (550)** Unidades Tributarias (U.T), que representan la suma de **CUARENTA Y UN MIL OCHOCIENTOS BOLÍVARES CON CERO CÉNTIMOS (Bs. 41.800,00)**.

Esta multa constituye el término medio de los dos extremos que fija el artículo 94 de la Ley eiusdem, que será calculada de la siguiente manera: la base es el término medio entre la sanción menor de cien (100) unidades tributarias y la sanción mayor de mil (1000) unidades tributarias, lo cual equivale a quinientas cincuenta (550) unidades tributarias, y resulta al hacer la compensación que ordena el aparte único del artículo 109 del Reglamento de la Ley eiusdem, en concordancia con el artículo 37 del Código Penal, por darse en el presente caso, la circunstancia agravante prevista en el numeral 2 (la condición de funcionario público), así como la circunstancia atenuante contemplada en el numeral 1 (por no haber constancia de que el mutuado haya sido objeto de alguna de las sanciones establecidas en la Ley), ambas tipificadas en los artículos 107 y 108 del Reglamento de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal.

Se tomó como base de cálculo el valor de la Unidad Tributaria vigente para el año 2011, fecha de la ocurrencia del hecho que era la suma **SETENTA Y SEIS BOLÍVARES (Bs. 76,00)** cada U.T., según Providencia Nº SNAT/2011/0009 de fecha 24 de febrero de 2011, emanada del Servicio Nacional Integrado de Administración Aduanera y Tributaria (SENIAT), publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 39.623 de la misma fecha.

**CUARTO:** Se le notifica al Oficial (CPNB) **José Manuel Bernal Amaya**, plenamente identificado en autos, que de conformidad con lo dispuesto en el artículo 107 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal, en concordancia con el artículo 100 del Reglamento de la Ley eiusdem, podrá interponer contra la presente decisión, el correspondiente **RECURSO DE RECONSIDERACIÓN**, ante este Órgano de Control Interno, dentro de un lapso de **QUINCE (15)** días hábiles siguientes, contados a partir de que conste por escrito la decisión en el presente expediente administrativo; y de acuerdo con lo previsto en el artículo 109 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal, en concordancia con los artículos 97, 98 y 99 de la Ley Orgánica de Procedimientos Administrativos, el **RECURSO DE REVISIÓN**, ante el Ministro del Poder Popular para las Relaciones Interiores, Justicia y Paz, dentro de los **TRES (3)** meses siguientes a la fecha de ocurrencia de los causales que lo hacen procedente, y de conformidad con lo previsto en el artículo 108 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal, el **RECURSO CONTENCIOSO ADMINISTRATIVO DE NULIDAD**, por ante la Corte Primera de lo Contencioso Administrativo, con sede en la ciudad de Caracas, dentro de los **SEIS (06)** meses siguientes contados a partir del día siguiente a su notificación.

**QUINTO:** Remítase un ejemplar de este Auto Decisorio, una vez firme en sede administrativa, a la Contraloría General de la República, a los fines de las sanciones que le corresponde imponer, de manera exclusiva y excluyente, de conformidad con lo dispuesto en el artículo 105 de la LOCGRYSNCF.

**SEXTO:** Remítase un ejemplar de este Auto Decisorio, una vez firme en sede administrativa, al Ministerio del Poder Popular de Economía, Finanzas y Banca Pública a los fines de la expedición de la planilla de liquidación de la multa y la realización de las gestiones de cobro, según lo previsto en el artículo 110 del Reglamento de la LOCGRYSNCF.

**SÉPTIMO:** A los fines de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela, remítase un ejemplar de la presente Decisión, una vez firme en esta sede, a la Secretaría del Consejo de Ministros, de conformidad con lo dispuesto en el artículo 101 del Reglamento de la LOCGRYSNCF.

**OCTAVO:** Remítase un ejemplar de este Auto Decisorio a la Fiscalía General de la República, de conformidad con lo establecido en el artículo 53 de la Ley Contra la Corrupción, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 5.637 Extraordinario de fecha 07 de abril de 2003.

Comuníquese y Publíquese.

ECON. GERMÁN RAFAEL LAVERDE
Director General Encargado de la Oficina de Auditoría Interna
Resolución N° 124 de fecha 07 de Mayo de 2013, publicada en la Gaceta Oficial
de la República Bolivariana de Venezuela N° 40.161 de fecha 07 de Mayo de 2013

REPÚBLICA BOLIVARIANA DE VENEZUELA
OFICINA DE AUDITORÍA INTERNA
DIRECCIÓN DE DETERMINACIÓN DE RESPONSABILIDADES

Caracas, 11 de diciembre de 2014

**AUTO QUE DECLARA LA FIRMEZA EN SEDE ADMINISTRATIVA DE LA DECISIÓN**

Visto que en la Decisión pronunciada por este Órgano de Control Fiscal Interno el día trece (13) de noviembre de 2014, y consignada por escrito en el Expediente Administrativo identificado con las siglas y número MPPRLIP-AI-PADR-012-2014, el día veinte (20) de noviembre de 2014, mediante la cual se declaró **RESPONSABILIDAD ADMINISTRATIVA**, se impuso **SANCIÓN PECUNIARIA DE MULTA** y se formuló **REPARO RESARCITORIO**, al Oficial (CFNB) José Manuel Bernal Amaya, titular de la cédula de identidad N° V-19.293.443, quedó agotada la vía administrativa, por cuanto han transcurrido íntegramente los quince (15) días hábiles desde el pronunciamiento del Auto Decisorio, sin que el precitado ciudadano, o su representante legal, hayan interpuesto el Recurso de Reconsideración de conformidad con lo establecido en el artículo 107 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal, en concordancia con el artículo 109 del Reglamento a la referida Ley, quien suscribe, declara la firmeza del acto administrativo, y a los fines de ejecución de la Decisión de la causa Administrativa, se ordena remitir un ejemplar de la misma y del presente Auto, a los siguientes organismos:

1. Contraloría General de la República, de conformidad con lo dispuesto en el artículo 105 de la Ley Orgánica de la Contraloría General de la República y del Sistema Nacional de Control Fiscal.

2. Secretaría del Consejo de Ministros, a los fines de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela, según lo establecido en el artículo 101 del Reglamento de la Ley *eiusdem*.

3. Ministerio del Poder Popular de Economía, Finanzas y Banca Pública, a los fines de la expedición de la planilla de liquidación y la realización de las gestiones de cobro, de las sanciones pecuniarias impuestas por este Órgano de Control Fiscal Interno, de conformidad con lo dispuesto en el artículo 110 del Reglamento de la Ley *eiusdem*.

4. Fiscalía General de la República, de conformidad con lo establecido en el artículo 53 de la Ley Contra la Corrupción, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 5.637 Extraordinario de fecha 07 de abril de 2003.

Cúmplase.

ECON. GERMÁN RAFAEL LAVERDE
Director General Encargado de la Oficina de Auditoría Interna
Resolución N° 124 de fecha 07 de Mayo de 2013, publicada en la Gaceta Oficial
de la República Bolivariana de Venezuela N° 40.161 de fecha 07 de Mayo de 2013

# MINISTERIO DEL PODER POPULAR PARA RELACIONES EXTERIORES

REPÚBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DEL PODER POPULAR
PARA RELACIONES EXTERIORES
DESPACHO DEL MINISTRO
DM N° 189-E
Caracas,  16 de noviembre de 2014
204°/155°/15°
R E S O L U C I O N

Por disposición del ciudadano Presidente de la República Bolivariana de Venezuela, Nicolás Maduro Moros, según consta en el Punto de Cuenta N° 075 de fecha 09 de julio de 2014 en ejercicio de las atribuciones establecidas en el artículo 236 numeral 16 de la Constitución de la República Bolivariana de Venezuela y de acuerdo a lo previsto en los artículos 7 y 10 de la Ley Orgánica de Servicio Exterior; el Ministro del Poder Popular para Relaciones Exteriores, Rafael Darío Ramírez Carreño, designado mediante Decreto, N° 1.213 de fecha 02 de septiembre de 2014, en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.489 de fecha 03 de septiembre de 2014, en cumplimiento a lo previsto en los artículos 62 y 77, numerales 4 y 19 del Decreto N° 6.217, con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicado en la Gaceta Oficial Extraordinaria N° 5.890 de fecha 31 de julio de 2008.

R E S U E L V E

Cesar al ciudadano **Orlando Torrealba Jiménez**, titular de la cédula de identidad N° V.- 583.801, como Embajador, Extraordinario y Plenipotenciario de la República Bolivariana de Venezuela en la República de Guatemala.

---

De conformidad con el artículo 23 de la Ley Contra la Corrupción, deberá presentar la Declaración Jurada de Patrimonio y anexar fotocopia del comprobante emitido por la Contraloría General de la República y consignarlo ante la Oficina de Recursos Humanos.

Se instruye a la Oficina de Recursos Humanos para que notifique al interesado cumpliendo con lo establecido en el artículo 73 de la Ley Orgánica de Procedimientos Administrativos.

Comuníquese y Publíquese,

Rafael Darío Ramírez Carreño
Ministro del Poder Popular para Relaciones Exteriores

# MINISTERIO DEL PODER POPULAR PARA LA AGRICULTURA Y TIERRAS

**REPÚBLICA BOLIVARIANA DE VENEZUELA. MINISTERIO DEL PODER POPULAR PARA LA AGRICULTURA Y TIERRAS. DESPACHO DEL MINISTRO. RESOLUCIÓN DM/N° 115/2014. CARACAS, 14 DE NOVIEMBRE DE 2014.**

**AÑOS 204°, 155° y 15°**

El Ministro del Poder Popular para la Agricultura y Tierras, **JOSÉ LUIS BERROTERÁN NÚÑEZ**, designado mediante Decreto N° 1.213 de fecha 02 de septiembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.488 de la misma fecha, reimpreso por fallas en los originales según su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.489 de fecha 3 de septiembre de 2014, en ejercicio de las atribuciones conferidas en el artículo 16 de la Ley Orgánica de Procedimientos Administrativos, en los numerales 1, 9, 19 y 27 del artículo 77, del Decreto N° 6.217, con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, en concordancia con lo previsto en el artículo 5, numeral 2 de la Ley del Estatuto de la Función Pública, y con lo dispuesto en la Cláusula 32 y 36 del Acta Constitutiva Estatutaria de la **CORPORACIÓN GANADERA BRAVOS DE APURE S.A.**, adscrita al Ministerio del Poder Popular para la Agricultura y Tierras, e inscrita por ante el Registro Mercantil Primero de la Circunscripción Judicial del estado Apure en fecha 21 de julio de 2014, bajo el N° 11, Tomo 23-A – RM272, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.465 de fecha 31 de julio de 2014,

**RESUELVE**

**Artículo 1.** Se designan como Directores Principales de la Junta Directiva de la **CORPORACIÓN GANADERA BRAVOS DE APURE S.A.**, a los ciudadanos que se indican a continuación, siendo que el ciudadano **TULIO JOSÉ AGUILERA ESPINOZA**, titular de la cédula de identidad N° V-**8.167.387**, es el **PRESIDENTE** de la **CORPORACIÓN GANADERA BRAVOS DE APURE, S.A.** así como de su Junta Directiva, de conformidad con el artículo 36 de los Estatutos Sociales de la sociedad, debidamente publicados en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.465 de fecha 31 de julio de 2014 y en la Resolución DM N° 050/2014 de fecha 04 de agosto de 2014, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.475 de fecha 14 de agosto de 2014.

| PRESIDENTE | |
| --- | --- |
| NOMBRES Y APELLIDOS | CÉDULA DE IDENTIDAD N° |
| TULIO JOSÉ AGUILERA ESPINOZA | V-8.167.387 |

| DIRECTORES PRINCIPALES | |
| --- | --- |
| NOMBRES Y APELLIDOS | CÉDULA DE IDENTIDAD N° |
| ALFREDO EMILIO BALDIZAN SECO | V-5.272.491 |
| ROGER FRANCISCO APONTE | V-3.348.632 |
| SEVERIANO ANTONIO RODRIGUEZ PARILLI | V-8.692.696 |

**Artículo 2.** Queda derogada la designación de los directores principales y suplentes efectuada mediante la Resolución DM N° 050/2014 de fecha 04 de agosto de 2014, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.475 de fecha 14 de agosto de 2014.

**Artículo 3.** La presente Resolución entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese,
Por el Ejecutivo Nacional,



JOSÉ LUIS BERROTERÁN NÚÑEZ
Ministro del Poder Popular para la
Agricultura y Tierras

Lunes 22 de diciembre de 2014    GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA    417.581

REPÚBLICA BOLIVARIANA DE VENEZUELA. MINISTERIO DEL PODER POPULAR PARA LA AGRICULTURA Y TIERRAS. DESPACHO DEL MINISTRO. RESOLUCIÓN DM/N° 124/2014. CARACAS, 17 DE DICIEMBRE DE 2014.

**AÑOS 204°, 155° y 15°**

El Ministro del Poder Popular para la Agricultura y Tierras, **JOSÉ LUIS BERROTERÁN NUÑEZ**, designado mediante Decreto N° 1.213 de fecha 2 de septiembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.488 de la misma fecha, reimpreso por fallas en los originales en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.489 de fecha 3 de septiembre de 2014, de conformidad con lo establecido en el artículo 305 de la Constitución de la República Bolivariana de Venezuela y en ejercicio de las atribuciones previstas en el artículo 16 de la Ley Orgánica de Procedimientos Administrativos; en el artículo 78, numerales 1 y 27 del Decreto N° 1.424 de fecha 17 de noviembre de 2014 con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, en el artículo 20, numeral 22 del Decreto N° 6.071 con Rango, Valor y Fuerza de Ley Orgánica de Seguridad y Soberanía Agroalimentaria, en concordancia con el artículo 14, numerales 1 y 18 del Decreto N° 6.732 sobre Organización y Funcionamiento de la Administración Pública Nacional, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.202 de fecha 17 de junio de 2009, dicta la siguiente,

**RESOLUCIÓN MEDIANTE LA CUAL SE ESTABLECE EL SUBSIDIO AL ARROZ PADDY, MAÍZ BLANCO Y MAÍZ AMARILLO DE PRODUCCIÓN NACIONAL EN LOS ESTADOS BARINAS Y PORTUGUESA.**

**ARTÍCULO 1.** Se establece un subsidio directo, único y transitorio para los rubros arroz paddy, maíz blanco y maíz amarillo de producción nacional, según la siguiente tabla:

| RUBRO | SUBSIDIO (Bs/Kg) |
|---|---|
| Arroz Paddy | 6,10 |
| Maíz Blanco | 4,80 |
| Maíz Amarillo | 4,10 |

**ARTÍCULO 2.** El subsidio a que se refiere el artículo anterior, se pagará a los productores y productoras de los estados Portuguesa y Barinas que hayan arrimado sus cosechas de los rubros objeto de la presente Resolución, entre las fechas establecidas en la siguiente tabla:

| RUBRO | FECHA DEL ARRIME |
|---|---|
| Arroz paddy | Desde el 1° de agosto de 2014 hasta el 16 de septiembre de 2014 |
| Maíz blanco y maíz amarillo | Desde el 1° de agosto de 2014 hasta el 31 de agosto de 2014 |

**ARTÍCULO 3.** Los receptores de los rubros objeto de subsidio, según la presente Resolución, deberán consignar ante la Unidad Estadal del Ministerio del Poder Popular para la Agricultura y Tierras, en un lapso no mayor a treinta (30) días continuos, contados a partir de la entrada en vigencia de la presente Resolución, el expediente de cada uno de los productores y productoras a ser beneficiados con el mencionado subsidio, el cual deberá contener los siguientes documentos:

1. Fotocopia de la cédula de identidad del productor o productora, en cuanto aplique.
2. Boleta de Recepción del producto arrimado.
3. Copia del Registro Único de Información Fiscal (RIF).
4. Número de Registro Único Obligatorio Permanente de Productores y Productoras Agrícolas (RUNOPPA).

Se entiende por receptor, la persona natural o jurídica en cuyo establecimiento se recibe o acopia el producto agrícola con fines de su almacenamiento, clasificación, acondicionamiento, empaque, transporte, distribución, procesamiento, industrialización o comercialización.

**ARTÍCULO 4.** Los receptores deberán estar debidamente autorizados por el Ministerio del Poder Popular para la Agricultura y Tierras, para emitir las boletas de recepción referidas en el artículo 3 de la presente Resolución.

**ARTÍCULO 5.** El Ministerio del Poder Popular para la Agricultura y Tierras, establecerá el mecanismo de pago del subsidio objeto de la presente Resolución, de acuerdo a las características específicas de los rubros y la relación que exista entre el productor o la agroindustria.

**ARTÍCULO 6.** Los productores que hayan recibido financiamiento del Fondo para el Desarrollo Agrario Socialista (FONDAS) o del Banco Agrícola de Venezuela (BAV), para la producción de los rubros objeto de la presente Resolución, en el período lluvioso 2014, que estén obligados a arrimar sus cosechas a través de los Centros de Recepción indicados por estos entes de la Banca Pública Social, sólo podrán presentar Boletas de Recepción del Producto que les emitan dichos Centros, sin que se consideren válidas para efectos del pago de este subsidio, las Boletas de Recepción emitidas por otros receptores; salvo autorización expresa otorgada por el ente de la Banca Pública Social correspondiente.

**ARTÍCULO 7.** Todo aquel productor que obtenga el subsidio objeto de la presente Resolución, mediante acciones fraudulentas o a través del aporte de información falsa, deberá repetir a favor de la Administración Pública, a través del mismo ente que le haya pagado el subsidio, los recursos que reciba por tal concepto, sin menoscabo de las sanciones previstas en la ley para tales hechos.

Asimismo, en caso de que las acciones fraudulentas o informaciones falsas sean detectadas durante la tramitación a que se refiere el artículo 5 de la presente Resolución, el solicitante perderá el derecho a recibir el subsidio, tanto para los rubros previstos en la presente Resolución, como para cualquier otro, en este ciclo y en los sucesivos, dentro del programa de subsidios establecidos por el Ministerio del Poder Popular para la Agricultura y Tierras.

**ARTÍCULO 8.** En los casos en que se verifique el incumplimiento de las disposiciones señaladas en esta Resolución, así como la normativa vigente que rige la materia, el Ministerio del Poder Popular para la Agricultura y Tierras actuará conforme a lo establecido en el Título VII del Decreto N° 6.071 con Rango, Valor y Fuerza de Ley Orgánica de Seguridad y Soberanía Agroalimentaria.

**ARTÍCULO 9.** La presente Resolución entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese,
Por el Ejecutivo Nacional,

**JOSE LUIS BERROTERÁN NUÑEZ**
MINISTRO DEL PODER POPULAR PARA
LA AGRICULTURA Y TIERRAS

REPÚBLICA BOLIVARIANA DE VENEZUELA. MINISTERIO DEL PODER POPULAR PARA LA AGRICULTURA Y TIERRAS. DESPACHO DEL MINISTRO DM/N° 125/2014. CARACAS, 17 DE DICIEMBRE DE 2014.

**AÑOS 204°, 155° y 15°**

El Ministro del Poder Popular para la Agricultura y Tierras, JOSÉ LUIS BERROTERÁN NUÑEZ, designado mediante Decreto N° 1.213 de fecha 2 de septiembre de 2014, publicado en la Gaceta Oficial de la



República Bolivariana de Venezuela Nº 40.488 de la misma fecha, reimpreso por fallas en los originales en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.489 de fecha 3 de septiembre de 2014, de conformidad con el artículo 16 de la Ley Orgánica de Procedimientos Administrativos; en ejercicio de las atribuciones conferidas en los numerales 1, 10 y 27 del artículo 78, del Decreto Nº 1.424 con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública; publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 6.147 Extraordinaria de fecha 17 de noviembre de 2014; y, en el numeral 2 del artículo 5 de la Ley del Estatuto de la Función Pública, dicta la siguiente:

**RESOLUCIÓN**

**Artículo 1.** Se designa a la ciudadana **LIDIA NACARIS PÉREZ DE ALTUVE**, titular de la cédula de identidad número **V-12.479.472**, como **DIRECTORA GENERAL ENCARGADA** de la **DIRECCIÓN GENERAL DE CIRCUITOS AGRÍCOLAS FORESTAL** del Ministerio del Poder Popular para la Agricultura y Tierras.

**Artículo 2.** Se deroga la Resolución dictada por el Ministerio del Poder Popular para la Agricultura y Tierras, DM/Nº 135/2013 de fecha 26 de noviembre 2013, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.303 de fecha 27 de noviembre de 2013.

**Artículo 3.** La presente Resolución entrará en vigencia a partir del 20 de octubre de 2014.

Comuníquese y Publíquese,

Por el Ejecutivo Nacional,

**JOSÉ LUIS BERROTERÁN NÚÑEZ**
Ministro del Poder Popular para
la Agricultura y Tierras

---

# MINISTERIO DEL PODER POPULAR PARA EDUCACIÓN UNIVERSITARIA, CIENCIA Y TECNOLOGÍA

REPÚBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DEL PODER POPULAR PARA
EDUCACIÓN UNIVERSITARIA, CIENCIA Y TECNOLOGÍA
DESPACHO DEL MINISTRO

FECHA: 17/12/2014                N° 256

204º, 155º y 15º

**RESOLUCIÓN**

De conformidad con el Decreto Presidencial Nº 1.213 de fecha 02 de septiembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.489 de fecha 03 de septiembre de 2014 y en ejercicio de las atribuciones conferidas por el numeral 2 del artículo 5 de la Ley del Estatuto de la Función Pública, en concordancia con lo dispuesto en los artículos 62 y 78 numeral 19 del Decreto N° 1.424 de fecha 17 de noviembre de 2014, con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicado en la Gaceta Oficial Extraordinaria N° 6.147 de la República Bolivariana de Venezuela de la misma fecha y, en cumplimiento de lo dispuesto en el único aparte del artículo 12 del Decreto N° 1.289 de fecha 02 de octubre de 2014, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 40.510 de la misma fecha, mediante el cual se dicta el Instructivo que establece las Normas que Regulan los Requisitos y Trámites para la Jubilación Especial de los Funcionarios, Funcionarias, Empleados y Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios y para los Obreros y Obreras al Servicio de la Administración Pública Nacional

**CONSIDERANDO**

Que en fecha 23 de octubre de 2014, mediante planilla FP-026 N° 2014-026, el ciudadano Vicepresidente Ejecutivo de la República Bolivariana de Venezuela, actuando de conformidad con el nombramiento efectuado por el ciudadano Presidente de la República Bolivariana de Venezuela, según Decreto N° 9.401 de fecha 08 de marzo de 2013 y en ejercicio de la delegación conferida en el Decreto N° 9.402 de fecha 11 de marzo 2013 en su artículo 1°, numeral 10, publicados en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.126 de fecha 11 de marzo de 2013, aprobó la Jubilación Especial de conformidad con lo dispuesto en el artículo 21 de la Ley del Estatuto Sobre el Régimen de Jubilaciones y Pensiones de los Trabajadores, y las Trabajadoras de la Administración Pública Nacional, Estadal y Municipal, publicado en la Gaceta Oficial Extraordinaria de la República Bolivariana de Venezuela N° 6.156 de fecha 19 de noviembre de 2014, en concordancia con el artículo 14 de su Reglamento, publicado en la Gaceta Oficial de la República de Venezuela N° 36.618 de fecha 11 de enero de 1999.

**RESUELVE**

**PRIMERO:** Otorgar el beneficio de **JUBILACIÓN ESPECIAL** a la ciudadana **NIVIA PADILLA HERRERA**, titular de la Cédula de Identidad N° V- **11.931.157**, quien cuenta con cincuenta y seis (56) años de edad, y veintitrés (23) años, y siete (07) meses al Servicio de la Administración Pública, quien se ha desempeñado en su último cargo, como **PROFESIONAL I** en el Fondo Nacional de Ciencia, Tecnología e Innovación (FONACIT), ente adscrito al Ministerio del Poder Popular para Educación Universitaria, Ciencia y Tecnología antes denominado

---

Ministerio del Poder Popular para Ciencia, Tecnología e Innovación (MPPCTI), y por haber cumplido los requisitos establecidos en los artículos 4 y 8 del Decreto N° 1.289 de fecha 02 de octubre de 2014, mediante el cual se dicta el Instructivo que establece las Normas que Regulan los Requisitos y Trámites para la Jubilación Especial de los Funcionarios, Funcionarias, Empleados y Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios y para los Obreros y Obreras al Servicio de la Administración Pública

**SEGUNDO:** El monto de la **JUBILACIÓN ESPECIAL** es por la cantidad de **SEIS MIL TRES BOLÍVARES CON 40/100 CÉNTIMOS (Bs. 6.003,40)** mensuales, equivalente al 57,50% del sueldo promedio de los últimos veinticuatro (24) meses en servicio activo, de conformidad con lo establecido en el artículo 08 de la Ley del Estatuto Sobre el Régimen de Jubilaciones y Pensiones de los Trabajadores, y las Trabajadoras de la Administración Pública Nacional, Estadal y Municipal

**TERCERO:** La Oficina de Recursos Humanos del Fondo Nacional de Ciencia, Tecnología e Innovación (FONACIT), queda encargada de ejecutar la presente Resolución. En consecuencia, se autoriza a tramitar lo conducente a los efectos del cálculo y posterior pago de los pasivos laborales que le corresponden a la citada trabajadora, de conformidad con lo establecido en el artículo 141 de la Ley Orgánica del Trabajo, Los Trabajadores y las Trabajadoras y el artículo 92 de la Constitución de la República Bolivariana de Venezuela.

**CUARTO:** La Oficina de Recursos Humanos del Fondo Nacional de Ciencia, Tecnología e Innovación (FONACIT), efectuará la notificación correspondiente, en virtud de lo dispuesto en el artículo 73 de la Ley Orgánica de Procedimientos Administrativos.

Comuníquese y Publíquese,

Por el Ejecutivo Nacional

**MANUEL A. FERNÁNDEZ**
Ministro del Poder Popular para Educación Universitaria, Ciencia y Tecnología
Decreto Nº 1.219, de fecha 02 de septiembre de 2014
Gaceta Oficial Nº 40.489 de fecha 03 de septiembre de 2014

---

REPÚBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DEL PODER POPULAR PARA
EDUCACIÓN UNIVERSITARIA, CIENCIA Y TECNOLOGÍA
DESPACHO DEL MINISTRO

FECHA: 17/12/2014                N° 254

204º, 155º y 15º

**RESOLUCIÓN**

De conformidad con el Decreto Presidencial Nº 1.213 de fecha 02 de septiembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.489 de fecha 03 de septiembre de 2014 y en ejercicio de las atribuciones conferidas por el numeral 2 del artículo 5 de la Ley del Estatuto de la Función Pública, en concordancia con lo dispuesto en los artículos 62 y 78 numeral 19 del Decreto N° 1.424 de fecha 17 de noviembre de 2014, con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicado en Gaceta Oficial Extraordinaria N° 6.147 de la República Bolivariana de Venezuela de la misma fecha y, en cumplimiento de lo dispuesto en el único aparte del artículo 12 del Decreto N° 1.289 de fecha 02 de octubre de 2014, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 40.510 de la misma fecha, mediante el cual se dicta el Instructivo que establece las Normas que Regulan los Requisitos y Trámites para la Jubilación Especial de los Funcionarios, Funcionarias, Empleados y Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios y para los Obreros y Obreras al Servicio de la Administración Pública Nacional.

**CONSIDERANDO**

Que en fecha 23 de octubre de 2014, mediante planilla FP-026 N° 002-14, el ciudadano Vicepresidente Ejecutivo de la República Bolivariana de Venezuela, actuando de conformidad con el nombramiento efectuado por el ciudadano Presidente de la República Bolivariana de Venezuela, según Decreto N° 9.401 de fecha 08 de marzo de 2013 y en ejercicio de la delegación conferida en el Decreto N° 9.402 de fecha 11 de marzo 2013 en su artículo 1°, numeral 10, publicados en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.126 de fecha 11 de marzo de 2013, aprobó la Jubilación Especial de conformidad con lo dispuesto en el artículo 21 de la Ley del Estatuto Sobre el Régimen de Jubilaciones y Pensiones de los Trabajadores, y las Trabajadoras de la Administración Pública Nacional, publicado en la Gaceta Oficial Extraordinaria de la República Bolivariana de Venezuela N° 6.156 de fecha 19 de noviembre de 2014, en concordancia con el artículo 14 de su Reglamento, publicado en la Gaceta Oficial de la República de Venezuela N° 36.618 de fecha 11 de enero de 1999.

**RESUELVE**

**PRIMERO:** Otorgar el beneficio de **JUBILACIÓN ESPECIAL** a el ciudadano **PEDRO JOSÉ TOVAR NAVEA**, titular de la Cédula de Identidad N° V- **4.466595**, quien cuenta con sesenta y un (61) años de edad, y veintiún (22) años, y un (01) mes al Servicio de la Administración Pública, quien se ha desempeñado en su último cargo como **ASISTENTE ADMINISTRATIVO** en la Fundación Instituto de Ingeniería para la Investigación y Desarrollo Tecnológico (FII), ente adscrito al Ministerio del Poder Popular para Educación Universitaria, Ciencia y Tecnología antes denominado Ministerio del Poder Popular para Ciencia, Tecnología e Innovación (MPPCTI), y por haber cumplido los requisitos establecidos en los artículos 4 y 8 del Decreto N° 1.289 de fecha 02 de octubre de 2014, mediante el cual se dicta el Instructivo que establece las Normas que Regulan los Requisitos y Trámites para la Jubilación Especial de los Funcionarios, Funcionarias, Empleados y Empleadas de la Administración Pública Nacional, de los Estados y de

los Municipios y para los Obreros y Obreras al Servicio de la Administración Pública Nacional.

**SEGUNDO:** El monto de la JUBILACIÓN ESPECIAL es por la cantidad de TRES MIL TRESCIENTOS CINCUENTA Y SIETE BOLÍVARES CON 71/100 CÉNTIMOS (Bs. 3.357,71) mensuales, equivalente al 55 % del sueldo promedio de los últimos veinticuatro (24) meses en servicio activo, de conformidad con lo establecido en el artículo 08 de la Ley del Estatuto Sobre el Régimen de Jubilaciones y Pensiones de los Trabajadores, y las Trabajadoras de la Administración Pública Nacional, Estadal y Municipal y visto que la jubilación otorgada bajo el Sistema de Seguridad Social no podrá ser inferior al salario mínimo urbano y el monto aprobado por el Ejecutivo Nacional es inferior, se resuelve elevarlo al salario mínimo vigente para la fecha de la publicación de la presente Resolución a la cantidad de CUATRO MIL OCHOCIENTOS OCHENTA Y NUEVE BOLÍVARES CON ONCE CÉNTIMOS (Bs. 4.889,11), en concordancia con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela y de conformidad con el Decreto N° 1.431 de fecha 17 de noviembre de 2014, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 40.542 de la misma fecha.

**TERCERO:** La Oficina de Recursos Humanos de la Fundación Instituto de Ingeniería para la Investigación y Desarrollo Tecnológico (FII), queda encargada de ejecutar la presente Resolución. En consecuencia, se autoriza a tramitar lo conducente a los efectos del cálculo y posterior pago de los pasivos laborales que le correspondan el al citado trabajador, de conformidad con lo establecido en el artículo 141 de la Ley Orgánica del Trabajo, los Trabajadores y las Trabajadoras y el artículo 92 de la Constitución de la República Bolivariana de Venezuela.

**CUARTO:** La Oficina de Recursos Humanos de la Fundación Instituto de Ingeniería para la Investigación y Desarrollo Tecnológico (FII), efectuará la notificación correspondiente, en virtud de lo dispuesto en el artículo 73 de la Ley Orgánica de Procedimientos Administrativos.

Comuníquese y Publíquese.
Por el Ejecutivo Nacional

**MANUEL A. FERNÁNDEZ**
Ministro del Poder Popular para Educación Universitaria, Ciencia y Tecnología
Decreto N° 1.213, de fecha 02 de septiembre de 2014
Gaceta Oficial N° 40.489 de fecha 03 de septiembre de 2014

**REPÚBLICA BOLIVARIANA DE VENEZUELA**
**MINISTERIO DEL PODER POPULAR PARA**
**EDUCACIÓN UNIVERSITARIA, CIENCIA Y TECNOLOGÍA**
**DESPACHO DEL MINISTRO**

FECHA: 17/12/2014                    N° 255

204º, 155º y 15º
**RESOLUCIÓN**

De conformidad con el Decreto Presidencial N° 1.213 de fecha 02 de septiembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.489 de fecha 03 de septiembre de 2014 y en ejercicio de las atribuciones conferidas por el numeral 2 del artículo 5 de la Ley del Estatuto de la Función Pública, en concordancia con lo dispuesto en los artículos 62 y 78 numeral 19 del Decreto N° 1.424 de fecha 17 de noviembre 2014, con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicado en la Gaceta Oficial Extraordinaria N° 6.147 de la República Bolivariana de la misma fecha y en cumplimiento de lo dispuesto en el único aparte del artículo 12 del Decreto N° 1.289 de fecha 02 de octubre de 2014, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 40.510 de la misma fecha, mediante el cual se dicta el Instructivo que establece las Normas que Regulan los Requisitos y Trámites para la Jubilación Especial de los Funcionarios, Funcionarias, Empleados y Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios y para los Obreros y Obreras al Servicio de la Administración Pública Nacional.

**CONSIDERANDO**

Que en fecha 23 de octubre de 2014, mediante planilla FP-026 N° 005-14, el ciudadano Vicepresidente Ejecutivo de la República Bolivariana de Venezuela, actuando de conformidad con el nombramiento efectuado por el ciudadano Presidente de la República Bolivariana de Venezuela, según Decreto N° 9.401 de fecha 08 de marzo de 2013 y en ejercicio de la delegación conferida en el Decreto N° 9.402 de fecha 11 de marzo 2013 en su artículo 1°, numeral 10, publicados en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.126 de fecha 11 de marzo de 2013, aprobó la Jubilación Especial de conformidad con lo dispuesto en el artículo 21 de la Ley del Estatuto Sobre el Régimen de Jubilaciones y Pensiones de los Trabajadores, y las Trabajadoras de la Administración Pública Nacional, Estadal y Municipal, publicado en la Gaceta Oficial Extraordinaria de la República Bolivariana de Venezuela N° 6.156 de fecha 19 de noviembre de 2014, en concordancia con el artículo 14 de su Reglamento, publicado en la Gaceta Oficial de la República de Venezuela N° 36.618 de fecha 11 de enero de 1999.

**RESUELVE**

**PRIMERO:** Otorgar el beneficio de JUBILACIÓN ESPECIAL al ciudadano ASNALDO ENRIQUE GONZÁLEZ, titular de la Cédula de Identidad N° V- 4.330.233, quien cuenta con sesenta y dos (62) años de edad, y dieciocho (18) años y un (01) mes al Servicio de la Administración Pública, quien se ha desempeñado en su último cargo como PERSONAL DE SEGURIDAD I en la Fundación Instituto de Ingeniería para la Investigación y Desarrollo Tecnológico (FII), ente adscrito al Ministerio del Poder Popular para Educación Universitaria, Ciencia y Tecnología antes denominado Ministerio del Poder Popular para Ciencia, Tecnología e Innovación (MPPCTI), y por haber cumplido los requisitos establecidos en los artículos 4 y 8 del Decreto N° 1.289 de fecha 02 de octubre de 2014, mediante el cual se dicta el Instructivo

que establece las Normas que Regulan los Requisitos y Trámites para la Jubilación Especial de los Funcionarios, Funcionarias, Empleados y Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios y para los Obreros y Obreras al Servicio de la Administración Pública Nacional.

**SEGUNDO:** El monto de la JUBILACIÓN ESPECIAL es por la cantidad de TRES MIL TRESCIENTOS TREINTA Y CINCO BOLÍVARES CON 68/100 CÉNTIMOS (Bs. 3.335,68) mensuales, equivalente al 45 % del sueldo promedio de los últimos veinticuatro (24) meses en servicio activo, de conformidad con lo establecido en el artículo 08 de la Ley del Estatuto Sobre el Régimen de Jubilaciones y Pensiones para la Jubilación Especial de los Trabajadores, y los Trabajadoras de la Administración Pública Nacional, Estadal y Municipal y visto que la jubilación otorgada bajo el Sistema de Seguridad Social no podrá ser inferior al salario mínimo urbano y el monto aprobado por el Ejecutivo Nacional es inferior, se resuelve elevarlo al salario mínimo vigente para la fecha de la publicación de la presente Resolución a la cantidad de CUATRO MIL OCHOCIENTOS OCHENTA Y NUEVE BOLÍVARES CON ONCE CÉNTIMOS (Bs. 4.889,11), en concordancia con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela y de conformidad con el Decreto N° 1.431 de fecha 17 de noviembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° de la misma fecha.

**TERCERO:** La Oficina de Recursos Humanos de la Fundación Instituto de Ingeniería para la Investigación y Desarrollo Tecnológico (FII), queda encargada de ejecutar la presente Resolución. En consecuencia, se autoriza a tramitar lo conducente a los efectos del cálculo y posterior pago de los pasivos laborales que le correspondan el al citado trabajador, de conformidad con lo establecido en el artículo 141 de la Ley Orgánica del Trabajo, los Trabajadores y las Trabajadoras y el artículo 92 de la Constitución de la República Bolivariana de Venezuela.

**CUARTO:** La Oficina de Recursos Humanos de la Fundación Instituto de Ingeniería para la Investigación y Desarrollo Tecnológico (FII), efectuará la notificación correspondiente, en virtud de lo dispuesto en el artículo 73 de la Ley Orgánica de Procedimientos Administrativos.

Comuníquese y Publíquese.
Por el Ejecutivo Nacional

**MANUEL A. FERNÁNDEZ**
Ministro del Poder Popular para Educación Universitaria, Ciencia y Tecnología
Decreto N° 1.213, de fecha 02 de septiembre de 2014
Gaceta Oficial N° 40.489 de fecha 03 de septiembre de 2014

**REPÚBLICA BOLIVARIANA DE VENEZUELA**
**MINISTERIO DEL PODER POPULAR PARA**
**EDUCACIÓN UNIVERSITARIA, CIENCIA Y TECNOLOGÍA**
**DESPACHO DEL MINISTRO**

FECHA: 17/12/2014                    N° 257

204º, 155º y 15º
**RESOLUCIÓN**

De conformidad con el Decreto Presidencial N° 1.213 de fecha 02 de septiembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.489 de fecha 03 de septiembre de 2014 y en ejercicio de las atribuciones conferidas por el numeral 2 del artículo 5 de la Ley del Estatuto de la Función Pública, en concordancia con lo dispuesto en los artículos 62 y 78 numeral 19 del Decreto N° 1.424 de fecha 17 de noviembre de 2014, con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicada en la Gaceta Oficial Extraordinario N° 6.147 de la República Bolivariana de Venezuela de la misma fecha, y en cumplimiento de lo dispuesto en el único aparte del artículo 12 del Decreto N° 1.289 de fecha 02 de octubre de 2014, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 40.510 de la misma fecha, mediante el cual se dicta el Instructivo que establece las Normas que Regulan los Requisitos y Trámites para la Jubilación Especial de los Funcionarios, Funcionarias, Empleados y Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios y para los Obreros y Obreras al Servicio de la Administración Pública Nacional.

**CONSIDERANDO**

Que en fecha 23 de octubre de 2014, mediante planilla FP-026 N° 2014-090, el ciudadano Vicepresidente Ejecutivo de la República Bolivariana de Venezuela, actuando de conformidad con el nombramiento efectuado por el ciudadano Presidente de la República Bolivariana de Venezuela, según Decreto N° 9.401 de fecha 08 de marzo de 2013 y en ejercicio de la delegación conferida en el Decreto N° 9.402 de fecha 11 de marzo 2013 en su artículo 1°, numeral 10, publicados en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.126 de fecha 11 de marzo de 2013, aprobó la Jubilación Especial de conformidad con lo dispuesto en el artículo 21 de la Ley del Estatuto Sobre el Régimen de Jubilaciones y Pensiones de los Trabajadores, y las Trabajadoras de la Administración Pública Nacional, Estadal y Municipal, publicado en la Gaceta Oficial Extraordinaria de la República Bolivariana de Venezuela N° 6.156 de fecha 19 de noviembre de 2014, en concordancia con el artículo 14 de su Reglamento, publicado en la Gaceta Oficial de la República de Venezuela N° 36.618 de fecha 11 de enero de 1999.

**RESUELVE**

**PRIMERO:** Otorgar el beneficio de JUBILACIÓN ESPECIAL a la ciudadana ROSA ALBA BOADA ESCALANTE, titular de la Cédula de Identidad N° V- 10.745.085, quien cuenta con cuarenta y ocho (48) años de edad, y veintiún (21) años, y cuatro (04) meses al Servicio de la Administración Pública, quien se ha desempeñado en su último cargo como PROFESIONAL I en el Fondo Nacional de Ciencia, Tecnología e Innovación (FONACIT), ente adscrito al Ministerio del Poder Popular para Educación Universitaria, Ciencia y Tecnología antes denominado Ministerio del Poder Popular para Ciencia, Tecnología e Innovación

417.584　　GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA　　Lunes 22 de diciembre de 2014

(MPPCTI), y por haber cumplido los requisitos establecidos en los artículos 4 y 8 del Decreto N° 1.289 de fecha 02 de octubre de 2014, mediante el cual se dicta el Instructivo que establece las Normas que Regulan los Requisitos y Trámites para la Jubilación Especial de los Funcionarios, Funcionarias, Empleados y Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios y para los Obreros y Obreras al Servicio de la Administración Pública Nacional.

SEGUNDO: El monto de la JUBILACIÓN ESPECIAL es por la cantidad de CUATRO MIL TRESCIENTOS SESENTA Y CINCO BOLÍVARES CON CÉNTIMOS (Bs. 4.365,25) mensuales, equivalente al 52.50% del sueldo promedio de los últimos veinticuatro (24) meses en servicio activo, de conformidad con lo establecido en el artículo 08 de la Ley del Estatuto Sobre el Régimen de Jubilaciones y Pensiones de los Trabajadores, y las Trabajadoras de la Administración Pública Nacional, Estadal y Municipal y visto que la jubilación otorgada bajo el Sistema de Seguridad Social no podrá ser inferior al salario mínimo urbano y el monto aprobado por el Ejecutivo Nacional es inferior, se resuelve elevarlo al salario mínimo vigente para la fecha de la publicación de la presente Resolución a la cantidad de CUATRO MIL OCHOCIENTOS OCHENTA Y NUEVE BOLÍVARES CON ONCE CÉNTIMOS Bs. 4.889,11), en concordancia con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela y de conformidad con el Decreto N° 1.431 de fecha 17 de noviembre de 2014, publicado en Gaceta Oficial N° 40.542 de la misma fecha.

TERCERO: La Oficina de Recursos Humanos del Fondo Nacional de Ciencia, Tecnología e Innovación (FONACIT), queda encargada de ejecutar la presente Resolución, en consecuencia, se autoriza a tramitar lo conducente a los efectos del cálculo y posterior pago de los pasivos laborales que le correspondan a la citada trabajadora, de conformidad con lo establecido en el artículo 141 de la Ley Orgánica del Trabajo, los Trabajadores y las Trabajadoras y el artículo 92 de la Constitución de la República Bolivariana de Venezuela.

CUARTO: La Oficina de Recursos Humanos del Fondo Nacional de Ciencia, Tecnología e Innovación (FONACIT), efectuará la notificación correspondiente, en virtud de lo dispuesto en el artículo 73 de la Ley Orgánica de Procedimientos Administrativos.

Comuníquese y Publíquese,
Por el Ejecutivo Nacional

MANUEL Á. FERNÁNDEZ
Ministro del Poder Popular para la Educación Universitaria, Ciencia y Tecnología
Decreto N° 1.213, de fecha 02 de septiembre de 2014
Gaceta Oficial N° 40.492 de fecha 03 de septiembre de 2014

**República Bolivariana De Venezuela**
**Ministerio del Poder Popular para la Educación**
**Universitaria, Ciencia y Tecnología**
**Fundación Conciencia Televisión**

Caracas, 08 de diciembre de 2014

**Providencia Administrativa Nº 005**

203º, 155º y 15º

El Consejo Directivo de la Fundación Conciencia Televisión, conformado por los ciudadanos **Gustavo Enrique Castillo Mascareño**, titular de la cédula de identidad N° V-14.512.996, en su carácter de Presidente de la Fundación y los miembros Principales **Miguelángel Liendo Delgado** titular de la cédula de identidad N° V-14.789.149, **Aylema Rondón Torres** titular de la cédula de identidad N° V-6.897.181, **Germania Fernández Ferrante**, titular de la cédula de identidad N° V-15.020.293, y en su condición de miembro suplente: **Marielisa Alvarez Carrillo**, titular de la cédula de identidad N° V- 18.234.475, en sustitución del Miembro principal **Eulalia Tabares Roldan** titular de la cédula de identidad N° V-14.642.153, designados mediante Resolución N° 093, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.178, de fecha 30 de mayo de 2013, actuando de conformidad con las atribuciones conferidas en la cláusula Décima Segunda, numeral 10, de los Estatutos Sociales de la Fundación, debidamente protocolizada ante el Registro Público del Primer Circuito del Municipio Sucre del Estado Miranda, en fecha 10/05/2013, bajo el Numero 23, Folio 115, Tomo 26 del protocolo de transcripción del mencionado año, publicado en Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.166, de fecha 14 de mayo de 2013, en concordancia con el artículo 34 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública

**DECIDEN**

**Artículo 1.-** Se autoriza a la ciudadana **ILIANA AMENGUAL CAPDEVIELLE**, titular de la cédula de identidad N° V-5.459.396, en su carácter de Gerente de Administración y Servicios Generales de la Fundación, designada mediante oficio N° FCTV-0730-2014 del 05 de diciembre de 2014, para movilizar las cuentas Bancarias de la Fundación exclusivamente en conjunto con el Presidente y la Directora Ejecutiva, hasta por los montos máximos autorizados para cada uno de ellos respectivamente.

**Artículo 2.-** Se designa a los ciudadanos **GUSTAVO ENRIQUE CASTILLO MASCAREÑO**, titular de la cédula de identidad N° V-14.512.996, en su carácter de Presidente de la Fundación, la

ciudadana **YOSIELMAR INÉS MONTERO GÓMEZ**, venezolana, titular de la cédula de identidad N° V-15.316.352, en su carácter de Directora Ejecutiva de la Fundación, y la ciudadana **ILIANA AMENGUAL CAPDEVIELLE**, titular de la cédula de identidad N° V-5.459.396, en su carácter de Gerente de Administración y Servicios Generales de la Fundación, como los autorizados ante el Banco Central de Venezuela, para registrar las firmas con ocasión a lo establecido en el Convenio Cambiario N°11, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.391, de fecha 10 de abril de 2014.

**Artículo 3.-** Los actos y documentos firmados de acuerdo a lo establecido en la presente Providencia, deberán indicar inmediatamente, bajo la firma del funcionario delegado, la fecha y número de la Providencia y Gaceta Oficial en la cual haya sido publicada.

**Artículo 4.-** El presente acto de delegación no conlleva ni entraña la facultad para subdelegar las atribuciones aquí delegadas.

**Artículo 5.-** Los funcionarios sujetos de la presente delegación deberan presentar a Consejo Directivo en la forma que este lo indique, el detalle de los actos y documentos sobre los cuales ejerza la presente delegación.

**Artículo 6.-** Se deroga y deja sin efecto la Providencia Administrativa N° 001 de fecha 14 de agosto de 2013, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.252 del 17 de septiembre de 2013.

**Artículo 7.-** La presente Providencia entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Conforme a lo establecido en el artículo 72 de la Ley Orgánica de Procedimientos Administrativos comuníquese y publíquese.

Por el Consejo Directivo,

**Gustavo Castillo Mascareño**
**PRESIDENTE**

**Miguelángel Liendo Delgado**
**MIEMBRO PRINCIPAL**

**Aylema Rondón Torres**
**MIEMBRO PRINCIPAL**

**Marielisa Alvarez Castillo**
**MIEMBRO SUPLENTE**

**Germania Fernández Ferrante**
**MIEMBRO PRINCIPAL**

---

# MINISTERIO DEL PODER POPULAR PARA TRANSPORTE ACUÁTICO Y AÉREO

**REPÚBLICA BOLIVARIANA DE VENEZUELA**
**MINISTERIO DEL PODER POPULAR PARA TRANSPORTE ACUÁTICO Y AÉREO**

**DESPACHO DEL MINISTRO**
**RESOLUCIÓN N° 076 CARACAS, 19 DE DICIEMBRE DE 2014**

AÑOS 204°, 155° y 15°

En ejercicio de las atribuciones que me confieren los artículos 65 y 78, numerales 13 y 27 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, en concordancia con el numeral 2 del Decreto N° 8.559 de fecha 01 de noviembre de 2011, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.791 de fecha 02 de noviembre de 2011 y, según lo dispuesto en el numeral 7 del artículo 71 y numeral 2 del artículo 76 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de los Espacios Acuáticos.

**POR CUANTO**

Corresponde al Ministerio del Poder Popular para Transporte Acuático y Aéreo diseñar, formular y evaluar las políticas, planes y programas, regido por los principios y valores éticos, destinados a garantizar las actividades del Ejecutivo Nacional en materia de circulación, tránsito y transporte acuático y aéreo y servicios conexos, así como la fijación de sus tarifas y fletes,

**POR CUANTO**

El Instituto Nacional de los Espacios Acuáticos como ente de gestión de la Autoridad Acuática, adscrito al Ministerio del Poder Popular para Transporte Acuático y Aéreo, propone la fijación de las tarifas sobre los servicios conexos al sector acuático,

**POR CUANTO**

Fue aprobada por el Instituto Nacional de los Espacios Acuáticos, a través de su Directorio, la propuesta de fijación de tarifas en dólares por los servicios públicos que presta el Instituto Nacional de los Espacios Acuáticos por pilotaje, remolcadores y lanchaje a buques de bandera extranjera, según Acta de Sesión Extraordinaria N° E-002 de fecha 12 de septiembre de 2014.

**RESUELVE**

**Sección I**
**Disposiciones Generales**

**Artículo 1.** La presente Resolución tiene por objeto establecer las tarifas sobre los servicios y actividades conexas al sector acuático, que presta el Instituto Nacional de los Espacios Acuáticos (INEA), de conformidad con la ley.

**Sección II**
**Del Servicio de Pilotaje, Remolcadores y Lanchaje**

**Artículo 2.** Se fijan las tarifas en Unidades Tributarias (U.T.) para buques de bandera nacional, por el servicio obligatorio de pilotaje en cada maniobra del buque, de acuerdo a la siguiente tabla:

**Tabla N°1**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (U.T.) | MEDIA (U.T.) | MÁXIMA (U.T.) |
|---|---|---|---|---|
| 0 | 2.000 | 38 | 43 | 49 |
| 2.001 | 5.000 | 54 | 59 | 63 |
| 5.001 | 10.000 | 81 | 86 | 92 |
| 10.001 | 15.000 | 176 | 182 | 187 |
| 15.001 | 20.000 | 184 | 189 | 194 |
| 20.001 | 25.000 | 191 | 200 | 205 |
| 25.001 | 30.000 | 203 | 214 | 221 |
| 30.001 | 35.000 | 216 | 221 | 227 |
| 35.001 | 40.000 | 230 | 236 | 241 |
| 40.001 | 45.000 | 243 | 248 | 254 |
| 45.001 | 50.000 | 257 | 263 | 268 |
| 50.001 | 70.000 | 292 | 297 | 302 |
| 70.001 | 100.000 | 306 | 311 | 319 |
| 100.001 | 125.000 | 322 | 324 | 329 |
| 125.001 | 150.000 | 333 | 338 | 344 |
| MAS DE 150.001 | | 339 | 344 | 349 |

La tarifa fijada en la Tabla N° 1 del presente artículo, tendrá un ajuste adicional del setenta y cinco por ciento (75%) cuando se efectúen las siguientes maniobras:
a) Maniobra de abarloar o largar el buque del costado de otro buque.
b) Maniobra de entrada o salida de dique.
c) Maniobra para amarrar o largar el buque de una monoboya.

**Artículo 3.** Los buques de bandera nacional, que naveguen utilizando el servicio obligatorio de pilotaje en el canal de navegación del Eje Orinoco-Apure, deberán pagar además de la tarifa establecida en la Tabla N° 1, por concepto de navegación por cada milla recorrida, la tarifa que se especifica a continuación:

**Tabla N°2**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (U.T.) | MEDIA (U.T.) | MÁXIMA (U.T.) |
|---|---|---|---|---|
| 0 | 2.000 | 0,194 | 0,230 | 0,275 |
| 2.001 | 5.000 | 0,324 | 0,369 | 0,437 |
| 5.001 | 10.000 | 0,508 | 0,589 | 0,693 |
| 10.001 | 15.000 | 0,715 | 0,841 | 0,981 |
| 15.001 | 20.000 | 0,841 | 0,981 | 1,154 |
| 20.001 | 25.000 | 1,049 | 1,235 | 1,442 |
| 25.001 | 30.000 | 1,256 | 1,465 | 1,730 |
| 30.001 | 35.000 | 1,463 | 1,719 | 2,018 |
| 35.001 | 40.000 | 1,644 | 1,932 | 2,267 |
| 40.001 | 45.000 | 1,822 | 2,145 | 2,516 |
| 45.001 | 50.000 | 2,006 | 2,358 | 2,765 |
| 50.001 | 70.000 | 2,187 | 2,571 | 3,014 |
| 70.001 | 100.000 | 2,368 | 2,784 | 3,263 |
| 100.001 | 125.000 | 2,549 | 2,997 | 3,512 |
| 125.001 | 150.000 | 2,730 | 3,210 | 3,761 |
| MAS DE 150.001 | | 2,911 | 3,423 | 4,010 |

**Artículo 4.** Se fijan las tarifas en Dólares de los Estados Unidos de América (USD) para buques de bandera extranjera, por el servicio obligatorio de pilotaje en cada maniobra del buque, de acuerdo a la siguiente tabla:

**Tabla N°3**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (USD) | MEDIA (USD) | MÁXIMA (USD) |
|---|---|---|---|---|
| 0 | 2.000 | 762 | 871 | 980 |
| 2.001 | 5.000 | 1.089 | 1.197 | 1.270 |
| 5.001 | 10.000 | 1.633 | 1.742 | 1.851 |
| 10.001 | 15.000 | 3.556 | 3.665 | 3.774 |
| 15.001 | 20.000 | 3.701 | 3.810 | 3.919 |
| 20.001 | 25.000 | 3.846 | 4.028 | 4.137 |
| 25.001 | 30.000 | 4.100 | 4.318 | 4.463 |
| 30.001 | 35.000 | 4.354 | 4.463 | 4.572 |
| 35.001 | 40.000 | 4.645 | 4.753 | 4.862 |
| 40.001 | 45.000 | 4.899 | 5.007 | 5.116 |
| 45.001 | 50.000 | 5.189 | 5.298 | 5.407 |
| 50.001 | 70.000 | 5.878 | 5.987 | 6.096 |
| 70.001 | 100.000 | 6.169 | 6.277 | 6.423 |
| 100.001 | 125.000 | 6.495 | 6.531 | 6.640 |
| 125.001 | 150.000 | 6.713 | 6.822 | 6.931 |
| MAS DE 150.001 | | 6.822 | 6.931 | 7.039 |

La tarifa fijada en la Tabla N° 3 del presente artículo, tendrá un ajuste adicional del setenta y cinco por ciento (75%) cuando se efectúen las siguientes maniobras:
a) Maniobra de abarloar o largar el buque del costado de otro buque.
b) Maniobra de entrada o salida de dique.
c) Maniobra para amarrar o largar el buque de una monoboya.

**Artículo 5.** Los buques de bandera extranjera, que naveguen utilizando el servicio obligatorio de pilotaje en el canal de navegación del Eje Orinoco-Apure, deberán pagar además de la tarifa establecida en la Tabla N°3, por concepto de navegación por cada milla recorrida, la tarifa que se especifica a continuación:

**Tabla N°4**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (USD) | MEDIA (USD) | MÁXIMA (USD) |
|---|---|---|---|---|
| 0 | 2.000 | 3,919 | 4,645 | 5,552 |
| 2.001 | 5.000 | 6,531 | 7,439 | 8,817 |
| 5.001 | 10.000 | 10,233 | 11,865 | 13,970 |
| 10.001 | 15.000 | 14,405 | 16,945 | 19,776 |
| 15.001 | 20.000 | 16,945 | 19,776 | 23,259 |
| 20.001 | 25.000 | 21,155 | 24,892 | 29,065 |
| 25.001 | 30.000 | 25,327 | 29,537 | 34,871 |
| 30.001 | 35.000 | 29,500 | 34,653 | 40,676 |
| 35.001 | 40.000 | 31,605 | 37,229 | 43,724 |
| 40.001 | 45.000 | 33,746 | 39,551 | 46,990 |
| 45.001 | 50.000 | 37,919 | 44,668 | 52,324 |
| 50.001 | 70.000 | 41,319 | 48,670 | 57,001 |
| 70.001 | 100.000 | 44,719 | 52,672 | 61,678 |
| 100.001 | 125.000 | 48,119 | 56,674 | 66,355 |
| 125.001 | 150.000 | 51,519 | 60,676 | 71,032 |
| MAS DE 150.001 | | 54,919 | 64,678 | 75,709 |

**Artículo 6.** Cuando el servicio de pilotaje sea solicitado para asistir a un buque de pasaje dedicado al turismo, tendrá un descuento del treinta por ciento (30%) de la tarifa establecida, sin perjuicio de los demás beneficios que le sean aplicables.

**Artículo 7.** Cuando se solicite el servicio y por causa imputable al piloto, se produzca un retardo mayor de una (1) hora, después de la señalada para la cual se solicitó el piloto a bordo, se producirá un descuento del treinta por ciento (30%) de la tarifa fijada. Dicho descuento no podrá ser reflejado en la relación indicada en el artículo 11 del Reglamento de Pilotaje para los efectos del pago por concepto de concesión.

**Artículo 8.** Cuando estando el piloto a bordo del buque y por causa imputable al armador, representante del armador, Capitán del buque o agente naviero, se produzca un retardo mayor de una (1) hora, desde su embarque, hasta el momento de inicio de la maniobra o cuando el Capitán del buque cancele la misma, se originará un recargo el pago del quince por ciento (15%) de la tarifa fijada, según el caso, el cual deberá ser reflejado en la relación indicada en el artículo 11 del Reglamento de Pilotaje, para efectos del pago por concepto de concesión.

**Artículo 9.** Se fijan las tarifas en Unidades Tributarias (U.T.) para buques de bandera nacional, por el servicio obligatorio de remolcador en cada maniobra del buque, de acuerdo a la siguiente tabla:

**Tabla N°5**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (U.T.) | MEDIA (U.T.) | MÁXIMA (U.T.) |
|---|---|---|---|---|
| 0 | 2.000 | 138 | 139 | 141 |
| 2.001 | 5.000 | 158 | 160 | 162 |
| 5.001 | 10.000 | 176 | 180 | 185 |
| 10.001 | 15.000 | 198 | 203 | 207 |
| 15.001 | 20.000 | 239 | 247 | 252 |
| 20.001 | 25.000 | 257 | 265 | 270 |
| 25.001 | 30.000 | 275 | 283 | 288 |

417.586   GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA   **Lunes 22 de diciembre de 2014**

| | | | | |
|---|---|---|---|---|
| 30.001 | 35.000 | 293 | 301 | 306 |
| 35.001 | 40.000 | 311 | 319 | 324 |
| 40.001 | 45.000 | 329 | 337 | 342 |
| 45.001 | 50.000 | 356 | 355 | 360 |
| 50.001 | 70.000 | 365 | 373 | 378 |
| 70.001 | 100.000 | 383 | 391 | 396 |
| 100.001 | 125.000 | 404 | 412 | 417 |
| 125.001 | 150.000 | 424 | 432 | 439 |
| MAS DE 150.001 | | 445 | 453 | 460 |

**Artículo 10.** Se fijan las tarifas en Dólares de los Estados Unidos de América (USD) para buques de bandera extranjera, por el servicio obligatorio de remolcador en cada maniobra del buque, de acuerdo a la siguiente tabla:

**Tabla N°6**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (USD) | MEDIA (USD) | MÁXIMA (USD) |
|---|---|---|---|---|
| 0 | 2.000 | 2.781 | 2.807 | 2.837 |
| 2.001 | 5.000 | 3.193 | 3.229 | 3.266 |
| 5.001 | 10.000 | 3.556 | 3.629 | 3.737 |
| 10.001 | 15.000 | 3.991 | 4.100 | 4.173 |
| 15.001 | 20.000 | 4.826 | 4.971 | 5.080 |
| 20.001 | 25.000 | 5.189 | 5.334 | 5.443 |
| 25.001 | 30.000 | 5.552 | 5.697 | 5.806 |
| 30.001 | 35.000 | 5.915 | 6.060 | 6.169 |
| 35.001 | 40.000 | 6.277 | 6.423 | 6.531 |
| 40.001 | 45.000 | 6.640 | 6.785 | 6.894 |
| 45.001 | 50.000 | 7.185 | 7.148 | 7.257 |
| 50.001 | 70.000 | 7.366 | 7.511 | 7.620 |
| 70.001 | 100.000 | 7.729 | 7.874 | 7.983 |
| 100.001 | 125.000 | 8.141 | 8.296 | 8.412 |
| 125.001 | 150.000 | 8.554 | 8.718 | 8.841 |
| MAS DE 150.001 | | 8.966 | 9.141 | 9.269 |

**Artículo 11.** Cuando el servicio de remolcadores sea solicitado para asistir a un buque de pasaje dedicado al turismo, tendrá un descuento del treinta por ciento (30%) de la tarifa establecida, sin perjuicio de los demás beneficios que le sean aplicables.

**Artículo 12.** Cuando se solicite el servicio a una hora determinada y por causa imputable al prestador del servicio de remolcadores, se produzca un retardo mayor de una (1) hora, después de la señalada para la cual se solicitó el servicio, se producirá un descuento del veinte por ciento (20%) de la tarifa fijada. Dicho descuento no podrá ser reflejado en la relación indicada en el artículo 11 del Reglamento de Remolcadores, para los efectos del pago por concepto de concesión.

**Artículo 13.** Cuando se solicite el servicio a una hora determinada y por causa imputable al armador, representante del armador, Capitán del buque o agente naviero, se produzca un retardo mayor de una (1) hora o el Capitán del buque cancele la maniobra, se originará un recargo o pago del quince por ciento (15%) de la tarifa fijada, según el caso, el cual deberá ser reflejado en la relación indicada en el artículo 11 del Reglamento de Remolcadores, para efectos del pago por concepto de concesión.

**Artículo 14.** Se fijan las tarifas en Unidades Tributarias (U.T.) para buques de bandera nacional, por el servicio obligatorio de lanchaje en cada maniobra del buque, de acuerdo a la siguiente tabla:

**Tabla N°7**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (U.T.) | MEDIA (U.T.) | MÁXIMA (U.T.) |
|---|---|---|---|---|
| 0 | 2.000 | 31 | 32 | 34 |
| 2.001 | 5.000 | 36 | 38 | 41 |
| 5.001 | 10.000 | 41 | 43 | 45 |
| 10.001 | 15.000 | 45 | 45 | 47 |
| 15.001 | 20.000 | 47 | 49 | 50 |
| 20.001 | 25.000 | 49 | 49 | 51 |
| 25.001 | 30.000 | 49 | 50 | 52 |
| 30.001 | 35.000 | 53 | 54 | 56 |
| 35.001 | 40.000 | 57 | 59 | 60 |
| 40.001 | 45.000 | 61 | 63 | 64 |
| 45.001 | 50.000 | 65 | 67 | 68 |
| 50.001 | 70.000 | 69 | 71 | 72 |
| 70.001 | 100.000 | 73 | 75 | 76 |
| 100.001 | 125.000 | 77 | 79 | 80 |
| 125.001 | 150.000 | 81 | 83 | 84 |
| MAS DE 150.001 | | 85 | 87 | 88 |

En Punta Barima, las tarifas por servicio de lanchaje, tendrán un recargo del cien por ciento (100%), sobre las tarifas indicadas en la Tabla N° 7.

**Artículo 15.** Se fijan las tarifas en Dólares de los Estados Unidos de América (USD) para buques de bandera extranjera, por el servicio obligatorio de lanchaje en cada maniobra del buque, de acuerdo a la siguiente tabla:

**Tabla N°8**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (USD) | MEDIA (USD) | MÁXIMA (USD) |
|---|---|---|---|---|
| 0 | 2.000 | 617 | 653 | 689 |
| 2.001 | 5.000 | 726 | 762 | 835 |
| 5.001 | 10.000 | 835 | 871 | 907 |
| 10.001 | 15.000 | 907 | 943 | 980 |
| 15.001 | 20.000 | 1.004 | 1.040 | 1.076 |
| 20.001 | 25.000 | 1.101 | 1.137 | 1.173 |
| 25.001 | 30.000 | 1.197 | 1.234 | 1.270 |
| 30.001 | 35.000 | 1.294 | 1.330 | 1.267 |
| 35.001 | 40.000 | 1.391 | 1.427 | 1.464 |
| 40.001 | 45.000 | 1.488 | 1.524 | 1.560 |
| 45.001 | 50.000 | 1.594 | 1.621 | 1.657 |
| 50.001 | 70.000 | 1.681 | 1.718 | 1.754 |
| 70.001 | 100.000 | 1.778 | 1.814 | 1.851 |
| 100.001 | 125.000 | 1.875 | 1.911 | 1.947 |
| 125.001 | 150.000 | 1.972 | 2.008 | 2.044 |
| MAS DE 150.001 | | 2.068 | 2.105 | 2.141 |

En Punta Barima, las tarifas por servicio de lanchaje, tendrán un recargo del cien por ciento (100%), sobre las tarifas indicadas en la Tabla N° 8.

**Artículo 16.** Cuando el servicio de lanchaje sea solicitado para asistir a un buque de pasaje dedicado al turismo, tendrá un descuento del treinta por ciento (30%) de la tarifa establecida, sin perjuicio de los demás beneficios que le sean aplicables.

**Artículo 17.** Cuando se solicite el servicio a una hora determinada y por causa imputable a los prestadores del servicio de lanchaje, se produzca un retardo mayor de una (1) hora, después de la señalada para la cual se solicitó el servicio, se producirá un descuento del veinte por ciento (20%) de la tarifa fijada. Dicho descuento no podrá ser reflejado en la relación indicada en el artículo 5 del Reglamento de Lanchaje, para los efectos del pago por concepto de concesión.

**Artículo 18.** Cuando se solicite el servicio a una hora determinada y por causa imputable al armador, representante del armador, Capitán del buque o agente naviero, se produzca un retardo mayor de una (1) hora o el Capitán del buque cancele la maniobra, se originará un recargo o pago del veinte por ciento (20%) de la tarifa fijada, según el caso, el cual deberá ser reflejado en la relación indicada en el artículo 5 del Reglamento de Lanchaje, para efectos del pago por concepto de concesión.

**Artículo 19.** Se fijan las tarifas en Unidades Tributarias (U.T.) para asistir a las Plataformas de Perforación Costa Afuera (MODUS) de bandera nacional, por el servicio obligatorio de pilotaje en cada maniobra, de acuerdo a la siguiente tabla:

**Tabla N°9**

| MODUS DESDE, ARQUEO BRUTO (A.B.) | MODUS HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (U.T.) | MEDIA (U.T.) | MÁXIMA (U.T.) |
|---|---|---|---|---|
| 0 | 2.000 | 77 | 80 | 83 |
| 2.001 | 5.000 | 86 | 89 | 91 |
| 5.001 | 10.000 | 101 | 104 | 107 |
| 10.001 | 15.000 | 154 | 157 | 160 |
| 15.001 | 20.000 | 158 | 161 | 164 |
| 20.001 | 25.000 | 164 | 167 | 170 |
| 25.001 | 30.000 | 169 | 175 | 179 |
| 30.001 | 35.000 | 176 | 179 | 182 |
| 35.001 | 40.000 | 184 | 187 | 190 |
| 40.001 | 45.000 | 191 | 194 | 197 |
| 45.001 | 50.000 | 199 | 202 | 205 |
| 50.001 | 70.000 | 218 | 221 | 224 |
| 70.001 | 100.000 | 226 | 229 | 233 |
| 100.001 | 125.000 | 235 | 236 | 239 |
| 125.001 | 150.000 | 241 | 244 | 247 |
| MAS DE 150.001 | | 244 | 247 | 250 |

El servicio de pilotaje para las Plataformas de Perforación Costa Afuera (MODUS), deberá ser pagado dentro de los primeros cinco (05) días hábiles posteriores al desembarque del piloto. La tramitación, control y pago de todas las obligaciones, serán canalizadas a través de la Capitanía de Puerto respectiva.

Los propietarios, arrendadores, armadores, capitanes de buques o agentes navieros, para las Plataformas de Perforación Costa Afuera que operen en el espacio acuático nacional, están en la obligación de solicitar el servicio de pilotaje, durante las maniobras de prueba, verificación de operación y de posicionamiento.

**Artículo 20.** El servicio de pilotaje para las Plataformas de Perforación Costa Afuera (MODUS) de bandera nacional, deberán pagar además de la tarifa establecida en la Tabla N° 9, por concepto de navegación o condición de tránsito para el desplazamiento de una circunscripción acuática a otra circunscripción acuática por cada milla recorrida, la tarifa que se especifica a continuación:

**Tabla N°10**

| MÓDUS DESDE, ARQUEO BRUTO (A.B.) | MÓDUS HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (U.T.) | MEDIA (U.T.) | MÁXIMA (U.T.) |
|---|---|---|---|---|
| 0 | 2.000 | 0,393 | 0,428 | 0,466 |
| 2.001 | 5.000 | 0,516 | 0,557 | 0,631 |
| 5.001 | 10.000 | 0,633 | 0,712 | 0,806 |
| 10.001 | 15.000 | 0,626 | 0,725 | 0,839 |
| 15.001 | 20.000 | 0,722 | 0,836 | 0,976 |
| 20.001 | 25.000 | 0,901 | 1,031 | 1,196 |
| 25.001 | 30.000 | 1,046 | 1,198 | 1,401 |
| 30.001 | 35.000 | 1,192 | 1,392 | 1,618 |
| 35.001 | 40.000 | 1,315 | 1,531 | 1,787 |
| 40.001 | 45.000 | 1,434 | 1,678 | 1,951 |
| 45.001 | 50.000 | 1,553 | 1,811 | 2,115 |
| 50.001 | 70.000 | 1,633 | 1,913 | 2,236 |
| 70.001 | 100.000 | 1,749 | 2,050 | 2,383 |
| 100.001 | 125.000 | 1,860 | 2,183 | 2,551 |
| 125.001 | 150.000 | 1,976 | 2,317 | 2,700 |
| MÁS DE 150.001 | | 2,102 | 2,458 | 2,872 |

**Artículo 21.** Se fijan las tarifas en Dólares de los Estados Unidos de América (USD) para asistir a las Plataformas de Perforación Costa Afuera (MODUS) de bandera extranjera, por el servicio obligatorio de pilotaje en cada maniobra, de acuerdo a la siguiente tabla:

**Tabla N°11**

| MÓDUS DESDE, ARQUEO BRUTO (A.B.) | MÓDUS HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (USD) | MEDIA (USD) | MÁXIMA (USD) |
|---|---|---|---|---|
| 0 | 2.000 | 1.552 | 1.613 | 1.673 |
| 2.001 | 5.000 | 1.734 | 1.794 | 1.834 |
| 5.001 | 10.000 | 2.036 | 2.097 | 2.157 |
| 10.001 | 15.000 | 3.104 | 3.165 | 3.225 |
| 15.001 | 20.000 | 3.185 | 3.246 | 3.306 |
| 20.001 | 25.000 | 3.306 | 3.367 | 3.427 |
| 25.001 | 30.000 | 3.407 | 3.528 | 3.608 |
| 30.001 | 35.000 | 3.548 | 3.608 | 3.669 |
| 35.001 | 40.000 | 3.709 | 3.770 | 3.830 |
| 40.001 | 45.000 | 3.850 | 3.911 | 3.971 |
| 45.001 | 50.000 | 4.012 | 4.072 | 4.133 |
| 50.001 | 70.000 | 4.395 | 4.455 | 4.516 |
| 70.001 | 100.000 | 4.556 | 4.616 | 4.697 |
| 100.001 | 125.000 | 4.737 | 4.757 | 4.818 |
| 125.001 | 150.000 | 4.858 | 4.919 | 4.979 |
| MÁS DE 150.001 | | 4.919 | 4.979 | 5.040 |

El servicio de pilotaje para las Plataformas de Perforación Costa Afuera (MODUS), deberá ser pagado dentro de los primeros cinco (05) días hábiles posteriores al desembarque del piloto. La tramitación, control y pago de todas las obligaciones, serán canalizadas a través de la Capitanía de Puerto respectiva.

Los propietarios, arrendadores, armadores, capitanes de buques o agentes navieros, para las Plataformas de Perforación Costa Afuera que operen en el espacio acuático nacional, están en la obligación de solicitar el servicio de pilotaje, durante las maniobras de prueba, verificación de operación y de posicionamiento.

**Artículo 22.** El servicio de pilotaje para las Plataformas de Perforación Costa Afuera (MODUS) de bandera extranjera, deberán pagar además de la tarifa establecida en la Tabla N° 11, por concepto de navegación o condición de tránsito para el desplazamiento de una circunscripción acuática a otra circunscripción acuática por cada milla recorrida, la tarifa que se especifica a continuación:

**Tabla N°12**

| MÓDUS DESDE, ARQUEO BRUTO (A.B.) | MÓDUS HASTA, ARQUEO BRUTO (A.B.) | MÍNIMA (USD) | MEDIA (USD) | MÁXIMA (USD) |
|---|---|---|---|---|
| 0 | 2.000 | 7.923 | 8.628 | 9.389 |
| 2.001 | 5.000 | 10.404 | 11.220 | 12.722 |
| 5.001 | 10.000 | 12.769 | 14.367 | 16.248 |
| 10.001 | 15.000 | 12.610 | 14.625 | 16.918 |
| 15.001 | 20.000 | 14.558 | 16.848 | 19.666 |
| 20.001 | 25.000 | 18.157 | 20.791 | 24.106 |
| 25.001 | 30.000 | 21.080 | 24.152 | 28.244 |
| 30.001 | 35.000 | 24.031 | 28.064 | 32.617 |
| 35.001 | 40.000 | 26.511 | 30.863 | 36.027 |
| 40.001 | 45.000 | 28.915 | 33.827 | 39.335 |
| 45.001 | 50.000 | 31.315 | 36.509 | 42.641 |
| 50.001 | 70.000 | 32.917 | 38.565 | 45.070 |
| 70.001 | 100.000 | 35.257 | 41.321 | 48.045 |
| 100.001 | 125.000 | 37.499 | 44.002 | 51.431 |
| 125.001 | 150.000 | 39.827 | 46.716 | 54.436 |
| MÁS DE 150.001 | | 42.365 | 49.544 | 57.909 |

**Artículo 23.** Cuando los servicios de pilotaje, remolcadores y lanchaje, sean prestados directamente por el Instituto Nacional de los Espacios Acuáticos (INEA), la tarifa que se aplicará será la media. Si son prestados por un concesionario, estos podrán establecer sus tarifas dentro de la banda que establece la tarifa mínima y la máxima.

### Sección III
### De los Otros Servicios y Actividades

**Artículo 24.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de servicios y autorizaciones relacionadas con las organizaciones dedicadas a: búsqueda, rescate y salvamento; y las actividades de prevención y combate de contaminación en los espacios acuáticos, salvo en casos de emergencia nacional decretada por el Ejecutivo Nacional, de acuerdo a la siguiente tabla:

**Tabla N°13**

| TRÁMITE | (U.T.) |
|---|---|
| Constancia de prevención anual para organizaciones dedicadas a búsqueda, rescate y salvamento | 60 |
| Constancia de prevención anual para establecimientos comerciales que incluyan entre sus actividades, manejo, almacenamiento y/o disposición de sustancias peligrosas, contaminantes o susceptibles de degradar el ambiente | 30 |
| Constancia de prevención anual para otros establecimientos comerciales que no incluyan entre sus actividades, manejo, almacenamiento y/o disposición de sustancias peligrosas, contaminantes o susceptibles de degradar el ambiente | 20 |
| Autorización de ejecución o funcionamiento de construcciones de cualquier índole permitidas por la ley, que desarrollen actividad comercial ubicadas en aguas territoriales e interiores y en terrenos situados a la orilla del mar, lagos, ríos, sus riberas y demás porciones navegables, en una extensión hasta de ochenta metros (80 mts.) medida hacia la costa o ribera, desde la línea de la más alta marea o desde la línea de más alta crecida en el caso de los ríos navegables, la modificación de estas construcciones y operaciones que en ella se realicen | 120 |
| Autorización de ejecución o funcionamiento de construcciones de cualquier índole permitidas por la ley, que no desarrollen actividad comercial; ubicadas en aguas territoriales e interiores y en terrenos situados a la orilla del mar, lagos, ríos, sus riberas y demás porciones navegables, en una extensión hasta de ochenta metros (80 mts.) medida hacia la costa o ribera, desde la línea de la más alta marea o desde la línea de más alta crecida en el caso de los ríos navegables, la modificación de estas construcciones y operaciones que en ella se realicen | 40 |
| Inspección de trabajos en caliente, a bordo o en tierra | 20 |
| Guardia de prevención durante el suministro de combustible a buque o almacenamiento en tierra (por día) | 15 |
| Supervisión de trabajos de pintura en el casco del buque (por día) | 15 |
| Informes de siniestros y otras actuaciones | 10 |
| Revisión de proyectos de seguridad, prevención y riesgos | 10 |
| Inspecciones de materiales peligrosos | 20 |
| Control de derrames y fugas de materiales peligrosos (por día) | 50 |
| Inspección de trabajos en altura | 20 |
| Guardias de prevención y custodia de pirotécnicos (por día) | 30 |
| Guardias de prevención en reconocimiento de cargas peligrosas (por día) | 20 |

**Artículo 25.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de solicitud de registro de los centros de producción naval principal con capacidad para construir, modificar o reparar buques y accesorios de navegación de acuerdo a la siguiente tabla:

**Tabla N°14**

| REGISTRO, CERTIFICACIÓN INICIAL Y AUTORIZACIÓN DE EXTENSIÓN DE OPERACIÓN | | |
|---|---|---|
| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | ÚNICA (U.T.) |
| 0 | 2.000 | 200 |
| 2.001 | 5.000 | 250 |
| 5.001 | 10.000 | 300 |
| 10.001 | 15.000 | 350 |
| 15.001 | 20.000 | 400 |
| 20.001 | 25.000 | 450 |
| 25.001 | 30.000 | 500 |
| 30.001 | 35.000 | 550 |
| 35.001 | 40.000 | 600 |
| 40.001 | 45.000 | 650 |
| 45.001 | 50.000 | 700 |
| 50.001 | 70.000 | 750 |
| 70.001 | 100.000 | 800 |
| 100.001 | 125.000 | 850 |
| 125.001 | 150.000 | 900 |
| MÁS DE 150.001 | | 950 |

**CERTIFICACIÓN POR RENOVACION**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | ÚNICA (U.T.) |
|---|---|---|
| 0 | 2.000 | 150 |
| 2.001 | 5.000 | 200 |
| 5.001 | 10.000 | 250 |
| 10.001 | 15.000 | 300 |
| 15.001 | 20.000 | 350 |
| 20.001 | 25.000 | 400 |
| 25.001 | 30.000 | 450 |
| 30.001 | 35.000 | 500 |
| 35.001 | 40.000 | 550 |
| 40.001 | 45.000 | 600 |
| 45.001 | 50.000 | 650 |
| 50.001 | 70.000 | 700 |
| 70.001 | 100.000 | 750 |
| 100.001 | 125.000 | 800 |
| 125.001 | 150.000 | 850 |
| MAS DE 150.001 | | 900 |

**Artículo 26.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de solicitud de registro de centros auxiliares de producción naval, en la forma siguiente:

**Tabla N°15**

| TRÁMITE | (U.T.) |
|---|---|
| Registro y Certificación Inicial | 250 |
| Autorización de Extensión de Operación | 300 |
| Certificación por Renovación | 200 |

**Artículo 27.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de evaluación técnica sobre construcciones, modificaciones, reparaciones y mantenimiento de buques y accesorios de navegación, en función de su respectivo Arqueo Bruto (AB) y de acuerdo a la siguiente tabla:

**Tabla N°16**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | ÚNICA (U.T.) |
|---|---|---|
| 0 | 2.000 | 80 |
| 2.001 | 5.000 | 140 |
| 5.001 | 10.000 | 200 |
| 10.001 | 15.000 | 260 |
| 15.001 | 20.000 | 320 |
| 20.001 | 25.000 | 380 |
| 25.001 | 30.000 | 440 |
| 30.001 | 35.000 | 500 |
| 35.001 | 40.000 | 560 |
| 40.001 | 45.000 | 620 |
| 45.001 | 50.000 | 680 |
| 50.001 | 70.000 | 740 |
| 70.001 | 100.000 | 800 |
| 100.001 | 125.000 | 860 |
| 125.001 | 150.000 | 920 |
| MAS DE 150.001 | | 980 |

**Artículo 28.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de seguimiento y control de proyectos de obra naval en buques y accesorios de navegación, en función de su respectivo Arqueo Bruto (AB) y de acuerdo a la siguiente tabla:

**Tabla N°17**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | ÚNICA (U.T.) |
|---|---|---|
| 0 | 2.000 | 40 |
| 2.001 | 5.000 | 70 |
| 5.001 | 10.000 | 100 |
| 10.001 | 15.000 | 130 |
| 15.001 | 20.000 | 160 |
| 20.001 | 25.000 | 190 |
| 25.001 | 30.000 | 220 |
| 30.001 | 35.000 | 250 |
| 35.001 | 40.000 | 280 |
| 40.001 | 45.000 | 310 |
| 45.001 | 50.000 | 340 |
| 50.001 | 70.000 | 370 |
| 70.001 | 100.000 | 400 |
| 100.001 | 125.000 | 430 |
| 125.001 | 150.000 | 460 |
| MAS DE 150.001 | | 490 |

**Artículo 29.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de conformidades técnicas para buques y accesorios de navegación, en función de su respectivo Arqueo Bruto (AB) y de acuerdo a la siguiente tabla:

**Tabla N°18**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | ÚNICA (U.T.) |
|---|---|---|
| 0 | 2.000 | 120 |
| 2.001 | 5.000 | 160 |
| 5.001 | 10.000 | 200 |
| 10.001 | 15.000 | 240 |
| 15.001 | 20.000 | 280 |
| 20.001 | 25.000 | 320 |
| 25.001 | 30.000 | 360 |
| 30.001 | 35.000 | 400 |
| 35.001 | 40.000 | 440 |
| 40.001 | 45.000 | 480 |
| 45.001 | 50.000 | 520 |
| 50.001 | 70.000 | 560 |
| 70.001 | 100.000 | 600 |
| 100.001 | 125.000 | 640 |
| 125.001 | 150.000 | 680 |
| MAS DE 150.001 | | 720 |

Quedan exentos del pago de las tarifas a que se contrae el presente artículo, las embarcaciones artesanales dedicadas a la pesca artesanal y de subsistencia como sustento del pescador y su grupo familiar, las de turismo y las construidas por las comunidades indígenas previa demostración de su condición.

**Artículo 30.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de auditorías de protección de buques e instalaciones portuarias, de acuerdo a la siguiente tabla:

**Tabla N°19**

| TRÁMITE | (U.T.) |
|---|---|
| APROBACIÓN INICIAL DE DOCUMENTOS | |
| Evaluación de la protección del buque | 250 |
| Plan de protección del buque | 150 |
| Evaluación de la protección del buque para plataformas de perforación costa afuera | 400 |
| Plan de protección del buque para plataformas costa afuera | 250 |
| Evaluación de la protección para la instalación portuaria | 300 |
| Plan de protección de la instalación portuaria | 150 |
| DECLARACIÓN DE CUMPLIMIENTO DE LA INSTALACIÓN PORTUARIA | |
| Auditoría de protección de las instalaciones portuarias de verificación inicial | 300 |
| Auditoría de protección de las instalaciones portuarias de verificación intermedia | 240 |
| Auditoría de protección de las instalaciones portuarias de verificación de renovación | 280 |
| CERTIFICADO INTERNACIONAL DE PROTECCIÓN DEL BUQUE | |
| Auditoría de protección de buques de verificación inicial | 300 |
| Auditoría de protección de buques de verificación intermedia | 200 |
| Auditoría de protección de buques de renovación | 240 |
| CERTIFICADO INTERNACIONAL DE PROTECCIÓN DE BUQUES PARA PLATAFORMAS DE PERFORACIÓN COSTA AFUERA | |
| Auditoría de protección de buques de verificación inicial | 600 |
| Auditoría de protección de buques de verificación intermedia | 420 |
| Auditoría de protección de buques de renovación | 400 |

El Presidente del Instituto Nacional de los Espacios Acuáticos (INEA), designará a los funcionarios certificados en materia de protección de buques y de las instalaciones portuarias, para llevar a cabo las auditorías de verificación inicial, verificación intermedia, verificación de renovación y verificación adicional, así como las revisiones para la aprobación de las evaluaciones y los planes de protección.

**Artículo 31.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de expedición de: certificados internacionales de arqueo, francobordo, prevención de la contaminación por hidrocarburos, gestión de la seguridad, tripulación mínima, plan de emergencia por contaminación de hidrocarburos, libro de registro de hidrocarburos y del cuaderno de estabilidad sin avería; certificados de seguridad de construcción, seguridad para buques de carga, seguridad radioeléctrica para buques de carga, exención y del manifiesto de mercancía peligrosa; certificado internacional de prevención de la contaminación para el transporte de sustancias líquidas nocivas a granel y del libro de registro de carga; certificado internacional de aptitud para el transporte de productos químicos peligrosos a granel y el certificado de aptitud para el transporte de productos químicos peligrosos a granel; certificado de aptitud para el transporte de gases licuados a granel; certificado internacional de aptitud para el transporte de gases licuados; certificados de seguridad para buques de gran velocidad, permiso de explotación para buques de gran velocidad y certificado internacional de seguridad para unidades móviles de perforación mar adentro (MODUS) en la forma siguiente:

**Tabla N°20**

| TRÁMITE | (U.T.) |
|---|---|
| Expedición inicial | 20 |
| Modificación | 25 |
| Renovación | 10 |



Lunes 22 de diciembre de 2014    GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA    417.589

**Artículo 32.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de expedición de: documento de cumplimiento del certificado de seguro u otra garantía financiera relativo a la responsabilidad civil por daños causados por la contaminación de las aguas de mar por hidrocarburos transportados, documento de cumplimiento del certificado de seguro u otra garantía financiera relativo a la responsabilidad civil por daños causados por la contaminación de las aguas por hidrocarburos combustible del buque, certificados de exención, documento de cumplimiento relativo al sistemas antiincrustantes, documento demostrativo de cumplimiento del código para buques de suministro mar adentro, certificación de inventario del equipo adjunto al certificado de seguridad de buques de pasaje, certificación de inventario del equipo para el cumplimiento del código internacional de buques de alta velocidad, documento de cumplimiento relativo a la prevención de la contaminación atmosférica, certificación del suplemento del certificado internacional de prevención de la contaminación atmosférica, certificación del suplemento del certificado internacional de prevención de la contaminación por hidrocarburos y constancia de aprobación del manual de arreglos y medios, certificado de seguridad para buque de pasaje en función de sus respectivo Arqueo Bruto (A.B.), en la forma siguiente:

**Tabla N°21**

| TRÁMITE | (U.T.) |
|---|---|
| Expedición inicial | 20 |
| Modificación | 15 |
| Renovación | 10 |

**Artículo 33.** Se fijan las tarifas en Unidades Tributarias (U.T.) por la aprobación y renovación de planes maestros aplicables a todos los puertos y construcciones de tipo portuario en la forma siguiente:

**Tabla N°22**

| TRÁMITE | (U.T.) |
|---|---|
| Aprobación y renovación de plan maestro (comerciales) | 250 |
| Aprobación y renovación de plan maestro (pesqueros) | 200 |
| Aprobación y renovación de plan maestro (deportivos) | 200 |
| Aprobación y renovación de plan maestro (investigación científica) | 100 |
| Aprobación y renovación de plan maestro (pesqueros artesanales) | 75 |

**Artículo 34.** Se fijan las tarifas en Unidades Tributarias (U.T.) por la expedición de certificados de aprobación y renovación en la ejecución de proyectos derivados de los planes maestros, en la forma siguiente:

**Tabla N°23**

| TRÁMITE | (U.T.) |
|---|---|
| Certificado de aprobación y renovación (comerciales) | 150 |
| Certificado de aprobación y renovación (pesqueros) | 150 |
| Certificado de aprobación y renovación (deportivos) | 150 |
| Certificado de aprobación y renovación (investigación científica) | 75 |
| Certificado de aprobación (pesqueros artesanales) | 75 |

**Artículo 35.** Se fijan las tarifas en Unidades Tributarias (U.T.) por la expedición de certificados de aprobación y renovación en la ejecución de proyectos de desarrollo, construcción, modernización y mantenimiento de puertos y construcciones de tipo portuario, en la forma siguiente:

**Tabla N°24**

| TRÁMITE | (U.T.) |
|---|---|
| Certificado de aprobación y renovación (comerciales) | 100 |
| Certificado de aprobación y renovación (pesqueros) | 100 |
| Certificado de aprobación y renovación (deportivos) | 100 |
| Certificado de aprobación y renovación (investigación científica) | 75 |
| Certificado de aprobación y renovación (pesqueros artesanales) | 75 |

**Artículo 36.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de emisión del permiso especial de cabotaje y navegación doméstica por vía de excepción, en función de su respectivo Arqueo Bruto (A.B.) y de acuerdo a la siguiente tabla:

**Tabla N°25**

| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | ÚNICA (U.T.) |
|---|---|---|
| 0 | 2.000 | 0,006 |
| 2.001 | 5.000 | 0,008 |
| 5.001 | 10.000 | 0,010 |
| 10.001 | 15.000 | 0,012 |
| 15.001 | 20.000 | 0,014 |
| 20.001 | 25.000 | 0,016 |
| 25.001 | 30.000 | 0,018 |
| 30.001 | 35.000 | 0,020 |
| 35.001 | 40.000 | 0,022 |
| 40.001 | 45.000 | 0,024 |
| 45.001 | 50.000 | 0,026 |
| 50.001 | 70.000 | 0,028 |
| 70.001 | 100.000 | 0,030 |
| 100.001 | 125.000 | 0,032 |
| 125.001 | 150.000 | 0,034 |
| MAS DE 150.001 | | 0,036 |

**Artículo 37.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de registro y autorización de operación para compañías y agencias navieras; certificadoras, consolidadoras y agenciadoras de carga; transporte multimodal, corretaje marítimo, operadoras de buceo y demás empresas en actividades conexas del sector acuático, de acuerdo a la siguiente tabla:

**Tabla N°26**

| TRÁMITE | (U.T.) |
|---|---|
| Registro y certificación inicial | 900 |
| Autorización de extensión de operación | 800 |
| Verificación por renovación | 700 |

**Artículo 38.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de permiso de explotación y cambio de rutas de transporte masivo de pasajeros, de acuerdo a la siguiente tabla:

**Tabla N°27**

| PERMISO DE EXPLOTACIÓN DE RUTA (POR CADA UNA) | | |
|---|---|---|
| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | ÚNICA (U.T.) |
| 0 | 2.000 | 1.590 |
| 2.001 | 5.000 | 1.680 |
| 5.001 | 10.000 | 1.780 |
| 10.001 | 15.000 | 1.880 |
| 15.001 | 20.000 | 1.980 |
| 20.001 | 25.000 | 2.080 |
| 25.001 | 30.000 | 2.180 |
| 30.001 | 35.000 | 2.280 |
| 35.001 | 40.000 | 2.380 |
| 40.001 | 45.000 | 2.480 |
| 45.001 | 50.000 | 2.580 |
| 50.001 | 70.000 | 2.680 |
| 70.001 | 100.000 | 2.780 |
| 100.001 | 125.000 | 2.880 |
| 125.001 | 150.000 | 2.980 |
| MAS DE 150.001 | | 3.080 |
| RENOVACIÓN DE EXPLOTACIÓN DE RUTA (POR CADA UNA) | | |
| BUQUES DESDE, ARQUEO BRUTO (A.B.) | BUQUES HASTA, ARQUEO BRUTO (A.B.) | ÚNICA (U.T.) |
| 0 | 2.000 | 1.530 |
| 2.001 | 5.000 | 1.630 |
| 5.001 | 10.000 | 1.730 |
| 10.001 | 15.000 | 1.830 |
| 15.001 | 20.000 | 1.930 |
| 20.001 | 25.000 | 2.030 |
| 25.001 | 30.000 | 2.130 |
| 30.001 | 35.000 | 2.230 |
| 35.001 | 40.000 | 2.330 |
| 40.001 | 45.000 | 2.430 |
| 45.001 | 50.000 | 2.530 |
| 50.001 | 70.000 | 2.630 |
| 70.001 | 100.000 | 2.730 |
| 100.001 | 125.000 | 2.830 |
| 125.001 | 150.000 | 2.930 |
| MAS DE 150.001 | | 3.030 |
| Verificación por cambios en la ruta | | 400 |

**Artículo 39.** Se fijan las tarifas en Unidades Tributarias (U.T.) por la evaluación del Sistema de Gestión de Seguridad Integral para Operaciones Portuarias (SISEINOP) de marinas deportivas, en la forma siguiente:

**Tabla N°28**

| TRÁMITE | (U.T.) |
|---|---|
| Evaluación del Sistema de Gestión de Seguridad Integral para Operaciones Portuarias de marinas deportivas | 300 |

**Artículo 40.** Se fijan las tarifas en Unidades Tributarias (U.T.) tomando en cuenta el número de embarcaciones, por concepto de supervisión anual de implementación Sistema de Gestión de Seguridad Integral para Operaciones Portuarias (SISEINOP) de marinas deportivas, según la tabla siguiente:

**Tabla N°29**

| TRÁMITE | (U.T.) |
|---|---|
| Desde 5 hasta 100 embarcaciones | 280 |
| Desde 101 hasta 200 embarcaciones | 290 |
| Más de 200 embarcaciones | 300 |

**Artículo 41.** Se fijan las tarifas en Unidades Tributarias (U.T.) por la evaluación del Sistema de Gestión de Seguridad Integral para Operaciones Portuarias (SISEINOP) para puertos comerciales, en la forma siguiente:

**Tabla N°30**

| TRÁMITE | (U.T.) |
|---|---|
| Evaluación del Sistema de Gestión de Seguridad Integral para Operaciones Portuarias para puertos comerciales | 600 |

**Artículo 42.** Se fijan las tarifas en Unidades Tributarias por la supervisión anual de implementación del Sistema de Gestión de Seguridad Integral para Operaciones Portuarias (SISEINOP) para puertos comerciales, según la tabla siguiente:

**Tabla N°31**

| TRÁMITE | (U.T.) |
|---|---|
| Puertos comerciales pesqueros | 450 |
| Puertos comerciales de carga general | 480 |
| Puertos comerciales ferromineros | 500 |
| Puertos petroleros y terminales químicos | 520 |

Quedan exentos del pago de las tarifas a que se contrae el presente artículo, los puertos públicos, de interés local, de uso público, dedicados a la pesca artesanal y de subsistencia como sustento del pescador y su grupo familiar, y las de turismo, previa demostración de su condición.

**Artículo 43.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de expedición, renovación, legalización y/o certificación de los siguientes documentos: títulos de marina mercante, títulos de marina mercante para la actividad de pesca, refrendos de títulos, dispensas, certificados y formas administrativas en sus diferentes denominaciones, en la forma siguiente:

**Tabla N°32**

| TRÁMITE | (U.T.) |
|---|---|
| Diplomas, títulos y refrendos de títulos de oficial de marina mercante | 1 |
| Diplomas, títulos y refrendos de títulos de oficial de marina mercante para la actividad de pesca | 1 |
| Certificados como inspector naval, instructor de cursos modelo OMI, inspectores marítimos y técnicos en medicina hiperbárica, oficial de protección del buque (OPB), oficial de la compañía para protección marítima (OCPM), oficial de protección de la instalación portuaria (OPIP), persona designada en tierra (PDT) y auditores PBIP e IGS | 45 |
| Certificados de suficiencia, operador general o restringido, de tripulante de unidad móvil de perforación mar adentro (MODUS). | 1 |
| Expedición de certificado de tiempo navegado | 10 |
| Dispensas a gente de mar nacional | 20 |
| Legalizaciones, certificaciones de notas y copias certificadas de documentos | 5 |
| Formas administrativas (Q1, Q2, P, C14, J, H, G, A y B) | 1 |
| Revalida de título a gente de mar | 12 |
| Permiso al personal extranjero titular | 12 |
| Renovación, expedición por pérdida o deterioro de documentos de gente de mar y demás actividades conexas nacional | 5 |
| Renovación, expedición por pérdida o deterioro de documentos de gente de mar extranjera | 50 |

Quedan exentos del pago del derecho establecido en este artículo, las personas naturales que opten al título de Patrón Artesanal; los estudiantes de los Institutos de Educación Náutica inscritos ante el Instituto Nacional de los Espacios Acuáticos (INEA), que realicen pasantías o prácticas a bordo de cualquier buque; y los menores de edad debidamente permisados que soliciten autorización para realizar prácticas de actividades deportivas náuticas de competencia.

**Artículo 44.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de expedición de documentos de la marina mercante nacional, en la forma siguiente:

**Tabla N°33**

| TRÁMITE | (U.T.) |
|---|---|
| Expedición de cédulas marinas personal de nivel gestión y operacional | 2 |
| Expedición por pérdida o deterioro de cédula marina nivel gestión y operacional | 5 |
| Cédulas marinas personal de apoyo | 2 |
| Expedición por pérdida o deterioro de cédula marina personal de apoyo | 9 |
| Visado de rol de tripulantes de buques mayores a 150 (AB) | 15 |
| Visado de rol por por tripulantes pérdida o deterioro de buques mayores a 150 (AB) | 15 |
| Visado de rol de tripulantes de buques menor o igual a 150 (AB) | 10 |
| Visado de rol de tripulante por pérdida o deterioro de buques menor o igual a 150 (AB) | 15 |
| Certificado de buzo | 5 |
| Expedición por pérdida o deterioro del certificado de buzo | 10 |

**Artículo 45.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de expedición, renovación o reposición de credenciales de la gente de mar y demás actividades conexas en la forma siguiente:

**Tabla N°34**

| TRÁMITE | (U.T.) |
|---|---|
| Capitanes de Altura y Jefes de Máquinas | 25 |
| Primeros Oficiales de Navegación y de Máquinas | 20 |
| Segundos Oficiales de Navegación y de Máquinas | 10 |
| Terceros Oficiales de Navegación, de Máquinas y Oficial Electrotécnico | 5 |
| Capitanes Costaneros y de Pesca | 2 |

| Patrones de Primera y Motoristas de Primera | 1 |
|---|---|
| Patrones de Segunda y Motoristas de Segunda | 1 |
| Oficiales de Pesca | 1 |
| Jefes de Máquinas de Buques de Pesca | 1 |

| Oficiales de Máquinas de Buques de Pesca | 1 |
|---|---|
| Capitanes de yates | 20 |
| Patrones Deportivos de Primera | 20 |
| Patrones Deportivos de Segunda | 20 |
| Patrones Deportivos de Tercera | 20 |
| Inspectores de Radiocomunicaciones Marítimas, Auditores PBIP e IGS, OPIP, OPB, OPC, PDT, médicos marítimos y técnicos en medicina hiperbárica | 20 |
| Inspectores Navales | 30 |
| Instructores de buceo | 15 |
| Buzos industriales y de rescate | 25 |
| Buzos deportivos y recreacionales | 20 |
| Expedición por pérdida o deterioro de credenciales | 30 |

Quedan exentos del pago del derecho establecido en este artículo los patrones artesanales, los inspectores del estado rector del puerto, los buzos tácticos, científicos y los dedicados a investigaciones submarinas; así mismo, los veleristas menores de edad y quienes practiquen deportes náuticos.

**Artículo 46.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de supervisión de instituciones de educación náutica, inscritas ante el Instituto Nacional de los Espacios Acuáticos (INEA), en la forma siguiente:

**Tabla N°35**

| TRÁMITE | (U.T.) |
|---|---|
| Supervisión inicial para registro y autorización | 80 |
| Supervisión para autorización de cada nuevo curso | 40 |
| Supervisión por renovación | 60 |

Quedan exentos del pago del derecho establecido en este artículo, las instituciones públicas o privadas que desarrollen actividades sin fines de lucro e interés social durante los cinco (5) años anteriores a la fecha de vigencia de esta Resolución, previa comprobación de tal condición.

**Artículo 47.** Se fijan las tarifas en Unidades Tributarias (U.T.) por concepto de aplicación de pruebas para optar a títulos o licencias, en la forma siguiente:

**Tabla N°36**

| TRÁMITE | (U.T.) |
|---|---|
| Capitanes Costaneros | 7 |
| Patrones de Primera y Motorista de Primera | 6 |
| Patrones de Segunda y Motoristas de Segunda | 6 |
| Capitanes de yates | 7 |
| Patrones Deportivos de Primera | 6 |
| Patrones Deportivos de Segunda | 6 |
| Patrones Deportivos de Tercera | 6 |

Quedan exentos del pago de las tarifas a que se contrae el presente artículo los patrones artesanales de las comunidades indígenas, los dedicados a la pesca artesanal y de subsistencia como sustento del pescador y su grupo familiar, y las de turismo, previa demostración de su condición.

**Disposición Derogatoria**

**Única.** Se deroga la Providencia Administrativa N° 047 de fecha 25 de junio de 2009, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.289 de fecha 21 de octubre de 2009.

**Disposiciones Finales**

**Primera.** Los montos que se perciban por concepto de las tarifas establecidas en la presente Resolución, ingresarán a las cuentas del Instituto Nacional de los Espacios Acuáticos (INEA) y serán administradas por éste de conformidad con la ley.

**Segunda.** Cuando los servicios de pilotaje, remolcadores y lanchaje, referidos al cobro en moneda extranjera sean prestados tanto por el Instituto Nacional de los Espacios Acuáticos (INEA), como por particulares, estos serán depositados directamente en las cuentas establecidas por el Instituto Nacional de los Espacios Acuáticos (INEA).

El Instituto Nacional de los Espacios Acuáticos (INEA), retornará en moneda nacional (Bs.) los servicios prestados por los particulares, según la normativa vigente emanada del Banco Central de Venezuela (BCV).

**Tercera.** La presente Resolución entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

**GIUSEPPE ÁNGELO YOFFREDA YORIO**
**MINISTRO**

Designado mediante Decreto N° 1.211 de fecha 02 de septiembre de 2014
Publicado en la Gaceta Oficial N° 40.488 de la misma fecha.
Reimpreso en la Gaceta Oficial N° 40.489 de fecha 03 de septiembre de 2014

Lunes 22 de diciembre de 2014   GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA   417.591

REPÚBLICA BOLIVARIANA DE VENEZUELA

**MINISTERIO DEL PODER POPULAR PARA
TRANSPORTE ACUÁTICO Y AÉREO
JUNTA INTERVENTORA DEL
INSTITUTO NACIONAL DE AERONÁUTICA CIVIL**

**PROVIDENCIA ADMINISTRATIVA Nº PRE-CJU-GDA-480-14
CARACAS, 01 DE DICIEMBRE DE 2014**

**204°, 155° y 15°**

El Presidente de la Junta Interventora del Instituto Nacional de Aeronáutica Civil, actuando de conformidad con las facultades establecidas en el artículo 9, numeral 3 y 19 del Decreto Nº 1.492, de fecha 27 de noviembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 40.550 de la misma fecha y los artículos 9, 58, 61 y 78 de la Ley de Aeronáutica Civil, publicada en Gaceta Oficial de la República Bolivariana de Venezuela Nº 39.140, de fecha 17 de marzo de 2009.

**POR CUANTO,**

Que la actividad aeronáutica debe ser gestionada eficientemente, de acuerdo a lo previsto en la Constitución de la República Bolivariana de Venezuela y sus leyes, a fin de alcanzar el desarrollo de la misma de manera ordenada, segura y eficaz.

**POR CUANTO,**

Que surge la necesidad de adecuar el acervo jurídico que regulan las operaciones de Aeronaves de Aviación General con Matrícula Extranjera en el territorio nacional, para que cumplan no sólo con la normativa vigente en la materia aeronáutica emanada del Estado venezolano, sino con todo el marco normativo nacional y los Convenios Internacionales válidamente suscritos por el Estado venezolano.

**POR CUANTO,**

Que es competencia del Instituto Nacional de Aeronáutica Civil, como órgano rector, veedor y fiscalizador de la actividad aeronáutica, regular y controlar las actividades de los propietarios o tenedores de Aeronaves de Aviación General con Matrícula Extranjera en el territorio nacional, lo cual lo lleva a avocarse, como en efecto lo hace, mediante la emisión del presente instrumento normativo, destinado a regular las operaciones de las Aeronaves de Aviación General con Matrícula Extranjera en el territorio nacional.

**DICTA,**

La siguiente,

**CONDICIONES MEDIANTE LAS CUALES SE REGULAN LAS
OPERACIONES DE AERONAVES DE AVIACIÓN GENERAL
CON MATRÍCULA EXTRANJERA HACIA Y EN EL
TERRITORIO NACIONAL**

**CAPÍTULO PRIMERO
Disposiciones Generales**

**OBJETO**

**Artículo 1.** La presente Providencia Administrativa tiene por objeto regular el ingreso, permanencia y salida del territorio de la República Bolivariana de Venezuela, de las Aeronaves de Aviación General con Matrícula Extranjera, así como las operaciones aéreas que éstas realicen exclusivamente en aeropuertos controlados por la Autoridad Aeronáutica Nacional.

**DEFINICIONES**

**Artículo 2.** A los efectos de la presente Providencia Administrativa, los términos abajo expuestos tienen la siguiente definición:

A. Admisión Temporal: Es el régimen mediante el cual se introducen mercancías al territorio aduanero nacional, con suspensión del pago de los impuestos de importación y otros recargos o impuestos adicionales que fueren aplicables, con una finalidad determinada, a condición de que sean reexpedidas luego de su utilización, sin haber experimentado modificación alguna.

B. Autoridad Aeronáutica: Se refiere al Instituto Nacional de Aeronáutica Civil.

C. Aeropuertos Controlados: Todo aeropuerto que cuenta con las facilidades de control del servicio de tránsito aéreo y especialmente equipado y usado regularmente para pasajeros y carga en el tráfico aéreo.

D. Aviación General: Comprende toda actividad aeronáutica civil no comercial, en cualquiera de sus modalidades, y está sujeta a lo establecido en la Ley de Aeronáutica Civil y a la Normativa Técnica que se dicte al respecto.

E. Operaciones Aéreas: Es la operación de aeronaves de Aviación General con matrícula extranjera hacia y en el territorio nacional, cuyo fin principal es el traslado no comercial de pasajeros, así como de su carga y equipaje.

**RESTRICCIONES**

**Artículo 3.** Las Aeronaves de Aviación General con Matrícula Extranjera no podrán transportar carga, mercancía, artículos o cualquier otro tipo de efectos que no sean de uso personal de los pasajeros y de los tripulantes, ni aquellos que no sean permitidos o estén prohibidos, de acuerdo a la normativa vigente.

Los propietarios o tenedores de Aeronaves de Aviación General de Matrícula Extranjera no podrán comercializar ni ofrecer operaciones de Servicio Público de Transporte por Vía Aérea ni operaciones de Servicio Especializado de Transporte Aéreo en el territorio de la República Bolivariana de Venezuela.

Los propietarios o tenedores de Aeronaves de Aviación General de Matrícula Extranjera, que incumpla con las disposiciones establecidas en el párrafo precedente serán objeto de la revocatoria del Permiso Operacional concedido, de la negativa para la concesión de nuevos permisos para las aeronaves incursas en la situación de hecho anteriormente expuesta, hasta por un lapso de seis (6) meses contados a partir de la fecha de la revocatoria del permiso en cuestión; todo ello de conformidad con los correspondientes procedimientos administrativos que tenga a bien iniciar y sustanciar la Autoridad Aeronáutica Nacional.

**LIMITACIÓN DE OPERACIONES**

**Artículo 4.** Las Aeronaves de Aviación General con Matrícula Extranjera, deberán ingresar y salir del País por un Aeropuerto Internacional, su operación estará limitada a los aeropuertos controlados y por los puntos o rutas que fije la Autoridad Aeronáutica, respetando las zonas prohibidas, restringidas o peligrosas, así como las que se establezcan por razones de seguridad y de cualquier otra índole.

**VALIDEZ DEL PERMISO**

**Artículo 5.** La autorización otorgada para realizar operaciones aéreas con Aeronaves de Aviación General con Matrícula Extranjera, conservará su validez ante las autoridades competentes, por el período estipulado en la misma, siempre y cuando la mencionada aeronave se encuentre solvente en cuanto a los Derechos Aeronáuticos y multas impuestas por la Autoridad Aeronáutica; así mismo debe mantener la vigencia del Certificado de Aeronavegabilidad, Certificado de Matrícula emitido por el Estado de Matrícula de la Aeronave, Póliza de Seguro de Aviación en cuanto a la responsabilidad civil de los tripulantes y usuarios de la aeronave, así como aquellas que amparan los riesgos a terceros superficiarios.

En el mismo orden de ideas, deberán presentar las licencias y certificados médicos de los tripulantes vigentes, así como todo lo relativo con el otorgamiento por parte de la Autoridad Aduanera y Tributaria del Régimen de la Admisión Temporal.

## SUSPENSIÓN, INHABILITACIÓN, REVOCATORIA Y SANCIONES

**Artículo 6.** Cualquier incumplimiento de las disposiciones establecidas en la presente Providencia Administrativa, dará lugar a la suspensión, inhabilitación y revocatoria del permiso operacional, además de la imposibilidad de solicitar nuevos permisos para las operaciones de Aeronaves de Aviación General con Matrícula Extranjera, hasta por un lapso de seis (6) meses contados a partir de la fecha de la suspensión, inhabilitación y revocatoria, sin menoscabo del establecimiento de las correspondientes sanciones administrativas contempladas en la Ley de Aeronáutica Civil y el ordenamiento jurídico de la República Bolivariana de Venezuela.

## CAPÍTULO SEGUNDO
### Operaciones de Aeronaves de Aviación General con Matrícula Extranjera hacia y en el Territorio Nacional

### OPERACIONES DE INGRESO Y PERMANENCIA DE AERONAVES AL TERRITORIO NACIONAL HASTA POR 72 HORAS

**Artículo 7.** Los propietarios o tenedores legítimos de Aeronaves de Aviación General con Matrícula Extranjera, podrán solicitar el respectivo permiso para ingresar y permanecer en el territorio venezolano hasta por un lapso de setenta y dos (72) horas, siempre que posean los siguientes requisitos: Certificado de Aeronavegabilidad, Certificado de Matrícula emitido por el Estado de Matrícula de la Aeronave, Póliza de Seguro de Aviación vigente en cuanto a la responsabilidad civil de los tripulantes, usuarios de la aeronave y daños contra terceros, licencias y certificados médicos de los tripulantes, y formato de solicitud de ingreso al territorio nacional debidamente llenado y suscrito por el propietario o tenedor legítimo de la aeronave.

Las operaciones aéreas contempladas en el presente Artículo son exclusivamente para el arribo y permanencia de las Aeronaves de Aviación General con Matrícula Extranjera, en el Aeropuerto Internacional de entrada al País solicitado, estando limitadas a un máximo de dos (2) operaciones por cada treinta días (30) calendario, sin la posibilidad de realizar operaciones dentro del Territorio Nacional, para lo cual notificarán a la Autoridad Aeronáutica su llegada, mediante los medios digitales que se establezcan para tal fin.

### INGRESO Y PERMANENCIA DE AERONAVES DENTRO DEL TERRITORIO NACIONAL POR 90 DÍAS CONTINUOS

**Artículo 8.** Los propietarios o tenedores legítimos de Aeronaves de Aviación General con Matrícula Extranjera, requerirán de un Permiso Operacional emitido por la Autoridad Aeronáutica, el cual se expedirá por un período de noventa (90) días continuos. Para realizar una nueva solicitud de Permiso Operacional, los propietarios o tenedores legítimos de Aeronaves de Aviación General con Matrícula Extranjera deberán abandonar efectivamente con las mismas el territorio de la República Bolivariana de Venezuela, una vez finalizado el lapso de noventa (90) días continuos establecido en el párrafo precedente.

Una vez transcurrido un lapso de trescientos sesenta y cinco (365) días continuos, contados a partir de la salida efectiva de la aeronave de Aviación General con Matrícula Extranjera del territorio nacional, el propietario o tenedor legítimo de la misma podrá solicitar nuevamente el correspondiente Permiso Operacional para ingresar al territorio de la República Bolivariana de Venezuela, de acuerdo a las disposiciones del presente Artículo.

En el mismo orden de ideas, el propietario o tenedor legítimo de la aeronave podrá optar por el correspondiente Permiso Operacional, de acuerdo a las disposiciones contempladas en el Artículo 10 de la presente Providencia Administrativa.

### REQUISITOS PARA EL INGRESO Y PERMANENCIA DE AERONAVES AL TERRITORIO NACIONAL POR 90 DÍAS CONTINUOS

**Artículo 9.** Para el ejercicio de las operaciones aéreas de las Aeronaves de Aviación General con Matrícula Extranjera,

contempladas en el artículo precedente, los propietarios o tenedores legítimos de las mismas deberán presentar además de los requisitos establecidos en el Artículo 13 del presente instrumento, el correspondiente Plan de Vuelo, así como consignar todos los datos necesarios que se indiquen en el denominado "Instructivo de Ingreso de Aeronaves de Aviación General con Matrícula Extranjera Hacia y en el Territorio Nacional" publicado a través de los medios que la Autoridad Aeronáutica tenga a bien considerar.

### INGRESO Y PERMANENCIA DE AERONAVES AL TERRITORIO NACIONAL POR UN AÑO CALENDARIO RENOVABLE

**Artículo 10.** Los propietarios o tenedores legítimos de Aeronaves de Aviación General con Matrícula Extranjera, podrán solicitar ante la Autoridad Aeronáutica Nacional, luego de haber disfrutado del correspondiente Permiso Operacional contemplado en el Artículo 8 de la presente Providencia Administrativa, un nuevo permiso para poder ingresar y permanecer en el territorio de la República Bolivariana de Venezuela, operando en los terminales aéreos autorizados al efecto hasta por un lapso de un (01) año calendario; pudiendo solicitar una única prórroga por un periodo igual, atendiendo siempre el otorgamiento y renovación de los Permisos en cuestión, al interés del Estado y al cumplimiento estricto de los requisitos solicitados y exigidos en la presente Providencia Administrativa.

### PRESENTACIÓN DE LA ADMISIÓN TEMPORAL PARA OTORGAMIENTO DEL PERMISO OPERACIONAL

**Artículo 11.** Los propietarios o tenedores legítimos de Aeronaves de Aviación General con Matrícula Extranjera que pretendan solicitar ante la Autoridad Aeronáutica Nacional, el Permiso Operacional contenido en los Artículos 9 y 10, deberán cumplir previamente con la obtención y presentación de la correspondiente autorización o renovación, según sea el caso, del Régimen de Admisión Temporal concedido por la Autoridad Aduanera y Tributaria, y presentarla ante la Autoridad Aeronáutica Nacional como un requisito indispensable tanto para el otorgamiento como para la eventual renovación del Permiso Operacional en cuestión.

### LIMITACIONES AL PERMISO OPERACIONAL

**Artículo 12.** Los permisos operacionales concedidos por la Autoridad Aeronáutica Nacional, a los propietarios o tenedores legítimos de Aeronaves de Aviación General con Matrícula Extranjera, para operar las mismas a tenor de lo contemplado en los artículos precedentes, no deberán poseer una vigencia mayor a los lapsos establecidos y contemplados por el respectivo Régimen de Admisión Temporal establecido por la Autoridad Aduanera y Tributaria.

Los propietarios o tenedores legítimos de Aeronaves de Aviación General con Matrícula Extranjera, que posean un permiso operacional otorgado por la Autoridad Aeronáutica Nacional, al amparo de las disposiciones contempladas en los artículos precedentes de la presente Providencia Administrativa, no podrán utilizar el permiso para operaciones de ingreso y permanencia al territorio nacional, por lapsos menores de setenta y dos (72) horas contempladas en el Artículo 7 de la presente Providencia Administrativa.

### CAPÍTULO TERCERO
### Requisitos para el Otorgamiento de Permisos para Operación de Aeronaves con Matrícula Extranjera dentro del Territorio Nacional

### REQUISITOS PARA LA OPERACIÓN DE AERONAVES CON MATRÍCULA EXTRANJERA DENTRO DEL TERRITORIO NACIONAL

**Artículo 13.** Las aeronaves de Aviación General con Matrícula Extranjera que pretendan operar dentro del territorio nacional, a tenor de las disposiciones contempladas en los artículos 8, 9, 10 y 11 de la presente Providencia Administrativa, deberán cumplir con los siguientes requisitos:

A. Copia del documental donde consta el otorgamiento o la renovación, según sea el caso del Régimen de la Admisión Temporal debidamente otorgado por la Autoridad Aduanera y Tributaria.

B. Formulario de solicitud de permiso para operación de Aeronave de Matrícula Extranjera dentro del territorio nacional.

C. Copia del Certificado de Matrícula del país de origen de la aeronave.

D. Copia del Certificado de Aeronavegabilidad vigente emitido por el Estado de matrícula de la aeronave.

E. Copia de la Póliza de Seguro de Aviación Civil vigente, de acuerdo a lo establecido en la Ley de Aeronáutica Civil, y a las disposiciones en materia de seguros de la aviación civil.

F. Copia de las Licencias y Certificados Médicos vigentes, técnicamente habilitados para operar el tipo de aeronave, emitidos o convalidados por el país de matrícula de la aeronave.

G. Comprobante de cancelación de los Derechos Aeronáuticos correspondientes al permiso de la operación aérea requerida.

H. Solvencia por los Servicios de Control y Apoyo a la Navegación Aérea (Radio Ayuda).

La consignación de los requisitos establecidos en el presente Artículo, se realizará conforme al "Instructivo para Operación de Aeronaves de Aviación General con Matrícula Extranjera Hacia y en el Territorio Nacional", publicado a través de los medios que la Autoridad Aeronáutica tenga a bien considerar.

**TARIFA EN DIVISAS POR CONCESIÓN DE DE LOS PERMISOS OPERACIONALES PARA AERONAVES DE AVIACIÓN GENERAL CON MATRICULA EXTRANJERA**

**Artículo 14.** El pago que realicen los propietarios o tenedores legítimos de las Aeronaves de Aviación General con Matrícula Extranjera, a los efectos de solicitar los Permisos Operacionales contenidos en la presente Providencia Administrativa, deberán ser efectuados en divisas, a saber en Dólares de los Estados Unidos de América, de acuerdo a la tarifa establecida por la Autoridad Aeronáutica Nacional en la presente Providencia Administrativa y de conformidad con las disposiciones contempladas en el Convenio Cambiario vigente.

**MONTO DE LAS TARIFAS POR LA CONCESIÓN DE LOS PERMISOS OPERACIONALES PARA AERONAVES DE AVIACIÓN GENERAL CON MATRÍCULA EXTRANJERA**

**Artículo 15.** A los efectos de la concesión de los Permisos Operacionales contemplados en la presente Providencia Administrativa, las tarifas contempladas en el artículo precedente, serán establecidas de la siguiente manera:

A. Para Permisos Operacionales por lapsos de noventa (90) días continuos, contemplados en el artículo 8 de la presente Providencia Administrativa, la tarifa establecida será por un monto de Cinco Mil Dólares de los Estados Unidos de América (USD 5.000).

B. Para la obtención de los Permisos Operacionales, a tenor de las disposiciones contempladas en el artículo 10 de la presente Providencia Administrativa, la tarifa establecida será por un monto de Veinticinco Mil Dólares de los Estados Unidos de América (USD 25.000) por el primer año del otorgamiento del Permiso Operacional.

C. Para la obtención de la renovación de los Permisos Operacionales, a tenor de las disposiciones contempladas en el artículo 10 de la presente Providencia Administrativa, la tarifa establecida será por un monto de Treinta y Cinco Mil Dólares de los Estados Unidos de América (USD 35.000) por el segundo año del otorgamiento del permiso operacional; que será la única prórroga para este tipo de Permisos Operacionales, otorgada por la Autoridad Aeronáutica Nacional.

**CAPÍTULO CUARTO**
**Disposiciones Derogatorias y Finales**

**DISPOSICIÓN DEROGATORIA**

**Única:** Se deroga la Providencia Administrativa PRE-CJU-GDA-456-13 de fecha 21 de noviembre de 2013, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.309, de fecha 5 de diciembre de 2013.

**DISPOSICIONES FINALES**

**Primera:** Los propietarios o tenedores legítimos de las Aeronaves de Aviación General con Matrícula Extranjera, deberán cumplir con todas y cada una de las disposiciones normativas en materia aduanera y tributaria, migratorias, de seguridad, sanitarias, contempladas en el marco normativo vigente en la República Bolivariana de Venezuela.

**Segunda:** Los propietarios o tenedores legítimos de las Aeronaves de Aviación General con Matrícula Extranjera que operen hacia o en el territorio nacional, deberán así mismo cumplir con la normativa aeronáutica vigente contemplada en la Ley de Reforma Parcial de la Ley de Aeronáutica Civil, las Regulaciones Aeronáuticas Venezolanas y el estamento jurídico dictado y asumido por el Estado venezolano en la materia.

**Tercera:** La presente Providencia Administrativa contentiva de las normas que regulan las operaciones de las Aeronaves de Aviación General con Matrícula Extranjera en el territorio nacional, entrará en vigencia a partir de su publicación en la Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese

**Giuseppe Angelo Yoffreda Yorio**
**Presidente de la Junta Interventora**
Decreto N° 1.492 de fecha 27/11/2014
Gaceta Oficial de la República Bolivariana de Venezuela N° 40.550 de fecha 27/11/2014

**MINISTERIO DEL PODER POPULAR PARA LA CULTURA**

REPÚBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DEL PODER POPULAR PARA LA CULTURA

DESPACHO DEL MINISTRO
RESOLUCIÓN N° 027

CARACAS, 19 DE NOVIEMBRE DE 2014
204°, 155° y 15°

El Ministro del Poder Popular para la Cultura, REINALDO ANTONIO ITURRIZA LÓPEZ, venezolano, mayor de edad, de este domicilio y titular de la cédula de identidad N° V-11.820.025, designado mediante Decreto N° 1.213, de fecha 02 de septiembre de 2014, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.488 de la misma fecha, reimpresa en la Gaceta Oficial de la República Bolivariana de Venezuela N° 40.489 de fecha 03 de septiembre de 2014, en uso de las atribuciones legales previstas en el artículo 27 y disposición transitoria vigésima segunda del Decreto N° 6.732 de fecha 02 de junio de 2009, mediante el cual se dicta el Decreto sobre Organización y Funcionamiento de la Administración Pública Nacional, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.202 de fecha 17 de junio de 2009, en concordancia con lo establecido en los artículos 34 y 78 numerales 19 y 26 del Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Administración Pública, publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 6.147 Extraordinario de fecha 17 de noviembre de 2014, en cumplimiento con los artículos 49 y 51 del Reglamento N° 1 de la Ley Orgánica de la Administración Financiera del Sector Público sobre el Sistema Presupuestario, publicado en la Gaceta Oficial Extraordinaria N° 5.781 de fecha 12 de agosto de 2005

**RESUELVE**

**Artículo 1.** Designar como Cuentadantes responsables de las unidades administrativas integrantes de la estructura financiera del Presupuesto de Gastos del Ejercicio Económico Financiero 2015, a los ciudadanos que

417.594     GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA     Lunes 22 de diciembre de 2014

se indican a continuación

UNIDAD ADMINISTRATIVA CENTRAL

| Cuentadante | Cédula de Identidad | Unidad | Código |
|---|---|---|---|
| Irma Teodarda Ruiz Espinoza | 6.933.984 | Oficina de Administración y Servicios | 00004 |
| Luis Felipe Pellicer Peñuela | 6.097.199 | Archivo General de la Nación | 00057 |

Comuníquese y Publíquese.



REINALDO ITURRIZA
MINISTRO DEL PODER POPULAR PARA LA CULTURA

## CONTRALORÍA GENERAL DE LA FUERZA ARMADA NACIONAL BOLIVARIANA

REPÚBLICA BOLIVARIANA DE VENEZUELA
CONTRALORIA GENERAL DE LA FUERZA ARMADA NACIONAL BOLIVARIANA

Caracas, 18 de Diciembre de 2014

204°, 155° y 15°

ORDEN DEL CONTRALOR

CONGEFANB N°.- 008/2014

CONSIDERANDO:

La necesidad de simplificar los tramites administrativos y para racionalizar las distintas diligencias que realizan las personas ante el Despacho del Ciudadano Contralor General de la Fuerza Armada Nacional Bolivariana en lo referente a la potestad de refrendar documentos para su debida Certificación, que posee conforme a lo dispuesto en el artículo 291 de la Constitución de la República Bolivariana de Venezuela, publicada en Gaceta Oficial N° 5.908 Extraordinario, de fecha 19 de febrero de 2009; en el artículo 16 en su numeral 1° del Decreto Con Rango, Valor y Fuerza de Ley Orgánica de la Fuerza Armada Nacional Bolivariana, publicada en Gaceta Oficial N° 6.156 Extraordinario de fecha 19 de Noviembre de 2014 y en las demás normativas legales y sublegales que rigen la materia.

Asimismo de lo contenido en el articulado que regula "De La Revisión de Oficio", mediante la cual la Ley faculta a la Administración para corregir los errores materiales o de calculo, en cualquier "momento" que hubiese incurrido en los actos administrativos, de acuerdo al contenido del Artículo 84 de la Ley Orgánica de Procedimientos Administrativos publicada en Gaceta Oficial N° 2.818 Extraordinaria del 1° de Julio de 1981, y en el Principio de Publicidad de los actos administrativos indicando que todos los actos de carácter general (Resoluciones, Decretos, Ordenes) deberán ser publicados en la Gaceta Oficial de la República Bolivariana de Venezuela de acuerdo a la Gaceta Oficial 5.890 Extraordinario del 31 de Julio de 2008, Decreto Ley 6.217del 15 de Julio de 2008.

VISTO:

Lo dispuesto en el artículo 27 del Reglamento de la Contraloria General de la Fuerza Armada Nacional Bolivariana, publicada en Gaceta Oficial Número 39.355 de fecha 27 de enero de 2010, el cual establece:

*"Artículo 27. El Contralor General de la Fuerza Armada Nacional Bolivariana podrá delegar en funcionario de la Contraloría, el ejercicio de determinadas atribuciones o la firma de determinados documentos, sin perjuicio de la distribución de funciones y asignación de competencias establecidas en este Reglamento y en las Resoluciones Organizativas. El funcionario delegado no podrá sub-delegar y dará cuenta periódica al Contralor sobre el ejercicio de la delegación, en los plazos y formas que éste determine. En las decisiones y en los documentos emanados de los delegatarios, deberá quedar constancia expresa de que actúan por delegación."*

RESUELVE:

Que, la Orden del Contralor CONGEFANB N° - 007/2014 de fecha 14 de octubre de 2014, se anula por cuanto se cometió error material en la fecha de independencia, fecha de la Federación y en la omisión de la fecha de la Revolución, así como en el número del Decreto Presidencial de la Resolución del Nombramiento del Contralor y su

posterior fecha de publicación en la Gaceta Oficial de la República Bolivariana de Venezuela; y en atención al contenido del artículo 84 de la Ley Orgánica de Procedimientos Administrativos.

Comuníquese y publíquese

JOSE LUIS MAITAN HERRERA
General de División
Contralor General de la Fuerza Armada Nacional Bolivariana
DECRETO N° 1.320 DE FECHA 10/10/14
G.O.R.B.V. N° 40.516 DE FECHA 21/10/14

REPUBLICA BOLIVARIANA DE VENEZUELA
CONTRALORIA GENERAL DE LA FUERZA ARMADA NACIONAL BOLIVARIANA

Caracas, 18 de Diciembre de 2014

204°, 155° y 15°

ORDEN DEL CONTRALOR

CONGEFANB N°.- 010/2014

CONSIDERANDO:

El principio de Simplificación de los tramites administrativos basados en la necesidad de facilitar "al administrado" las distintas diligencias que realizan las personas ante el Despacho del Ciudadano Contralor General de la Fuerza Armada Nacional Bolivariana en lo referente a la potestad de refrendar documentos para su debida Certificación, que posee conforme a lo dispuesto en el artículo 291 de la Constitución de la República Bolivariana de Venezuela, publicada en Gaceta Oficial N° 5.908 Extraordinario, de fecha 19 de febrero de 2009; en el artículo 16 en su numeral 1° del Decreto Con Rango, Valor y Fuerza de Ley Orgánica de la Fuerza Armada Nacional Bolivariana, publicada en Gaceta Oficial N° 6.156 Extraordinario de fecha 19 de Noviembre de 2014 y en las demás normativas legales y sublegales que rigen la materia.

Asimismo de lo contenido en el articulado que regula "De La Revisión de Oficio", mediante la cual la Ley faculta a la Administración para corregir los errores materiales o de cálculo, en cualquier "momento" que hubiese incurrido en los actos administrativos, de acuerdo al contenido del Artículo 84 de la Ley Orgánica de Procedimientos Administrativos publicada en Gaceta Oficial N° 2.818 Extraordinaria del 1° de Julio de 1981, y en el Principio de Publicidad de los actos administrativos indicando que todos los actos de carácter general (Resoluciones, Decretos, Ordenes) deberán ser publicados en la Gaceta Oficial de la República Bolivariana de Venezuela de acuerdo a la Gaceta Oficial 5.890 Extraordinario del 31 de Julio de 2008, Decreto Ley 6.217 del 15 de Julio de 2008.

VISTO:

Lo dispuesto en el artículo 27 del Reglamento de la Contraloria General de la Fuerza Armada Nacional Bolivariana, publicada en Gaceta Oficial Número 39.355 de fecha 27 de enero de 2010, el cual establece:

*"Artículo 27. El Contralor General de la Fuerza Armada Nacional Bolivariana podrá delegar en funcionario de la Contraloría, el ejercicio de determinadas atribuciones o la firma de determinados documentos, sin perjuicio de la distribución de funciones y asignación de competencias establecidas en este Reglamento y en las Resoluciones Organizativas. El funcionario delegado no podrá sub-delegar y dará cuenta periódica al Contralor sobre el ejercicio de la delegación, en los plazos y formas que éste determine. En las decisiones y en los documentos emanados de los delegatarios, deberá quedar constancia expresa de que actúan por delegación."*

RESUELVE :

Delegar en el Director de Determinación de Responsabilidad Administrativa ciudadano Coronel Juan Carlos Piñero Ysea, titular de la cédula de identidad N° 9.976.855, Resolución Ministerial N° 023161 de fecha 27 de julio de 2012, y designado para este cargo por Orden del Contralor General de la FANB, N° CGFANB: 009/2012, la facultad de refrendar documentos para la debida Certificación, mediante la formula "Por Orden del Contralor" estampada en ellos en facsímil.

Apruébese y ratifíquese toda actuación realizada al efecto por el Director de Determinación de Responsabilidad Administrativa.

Comuníquese y publíquese

JOSE LUIS MAITAN HERRERA
General de División
Contralor General de la Fuerza Armada Nacional Bolivariana
DECRETO N° 1.320 DE FECHA 10/10/14
G.O.R.B.V. N° 40.516 DE FECHA 21/10/14

## ALCALDÍA BOLIVARIANA
## DEL MUNICIPIO SAN JOAQUÍN

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUIN**
**DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 110/11/2014**

El Alcalde del Municipio San Joaquín, CHARBEL JEAN ABOU ATTIEH KATTAH, titular de la cédula de identidad Nro. V- 13.667.161, en su carácter de Alcalde electo para el período 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el Artículo 88 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial N° 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Público Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y pensiones de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Publica Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República podrá acordar jubilaciones especiales a funcionarios o funcionarios, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 22 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano ELADIO RAMÓN RODRÍGUEZ, titular de la cédula de identidad N° V- 2.381.845, iniciándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio N° DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta

remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-N° 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano **ELADIO RAMÓN RODRÍGUEZ**, titular de la cédula de identidad N° V-2.381.845.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del calculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTICULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo a los Veintiseis, (26) días del mes de Noviembre de dos mil catorce

**CHARBEL JEAN ABOU ATTIEH KATTAH**
**Alcalde del Municipio San Joaquín**

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUIN**
**DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 111/11/2014**

El Alcalde del Municipio San Joaquín, CHARBEL JEAN ABOU ATTIEH KATTAH, titular de la cédula de identidad Nro. V- 13.667.161, en su carácter de Alcalde electo para el período 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de Diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el Artículo 88 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 24 de mayo de 2010, publicada en la Gaceta Oficial N° 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Publico Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y pensiones de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Pública Nacional, de los Estados o de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República **podrá acordar jubilaciones especiales** a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas Jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 22 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano **SALOMON BALZA,** titular de la cédula de identidad Nº **V-2.761.716,** iniciándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano **SALOMON BALZA,** titular de la cédula de identidad Nº **V-2.761.716.**

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del cálculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTICULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo a los Veintiséis (26) días del mes de Noviembre de dos mil catorce.

**CHARBEL JEAN ATTIEH KATTAH**
Alcalde del Municipio San Joaquín

---

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUIN**
**DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 112/11/2014**

El Alcalde del Municipio San Joaquín, **CHARBEL JEAN ABOU ATTIEH KATTAH,** titular de la cédula de identidad Nro. V- **13.667.161,** en su carácter de Alcalde electo en el periodo 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del

---

dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial Nº 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Publico Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y **pensiones** de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República **podrá acordar jubilaciones especiales** a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas Jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 28 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano **BELKIS BEATRIZ MORENO DE MUÑOZ,** titular de la cédula de identidad Nº V-**3.514.444,** iniciándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano **BELKIS BEATRIZ MORENO DE MUÑOZ,** titular de la cédula de identidad Nº V-**3.514.444.**

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del cálculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la

Lunes 22 de diciembre de 2014   GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA   417.597

Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTICULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTICULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela. Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo, a los Veintiseis (26) días del mes de Noviembre de dos mil catorce (2014)

**SAN JOAQUÍN**
**CHARBEL JEAN ABOU ATTIEH KATTAH**
Alcalde del Municipio San Joaquín

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUIN**
**DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 113/11/2014**

El Alcalde del Municipio San Joaquín, **CHARBEL JEAN ABOU ATTIEH KATTAH**, titular de la cédula de identidad Nro. V- **13.667.161**, en su carácter de Alcalde electo para el periodo 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial N° 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y/ Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Articulo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Publico Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y **pensiones** de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Publica Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República **podrá acordar jubilaciones especiales** a funcionarios o funcionarios, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 19 de Junio de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de Jubilación especial debidamente suscritas por el ciudadano **FELIX FRANCISCO OROPEZA JIMENEZ**, titular de la cédula de identidad N° V- **3.586.006**, iniciándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio N° DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-N° 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTICULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano **FELIX FRANCISCO OROPEZA JIMENEZ**, titular de la cédula de identidad N° V-**3.586.006**.

**ARTICULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del calculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTICULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTICULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo, a los Veintiseis (26) días del mes de Noviembre de dos mil catorce (2014)

**SAN JOAQUÍN**
**CHARBEL JEAN ABOU ATTIEH KATTAH**
Alcalde del Municipio San Joaquín

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUIN**
**DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 114/11/2014**

El Alcalde del Municipio San Joaquín, **CHARBEL JEAN ABOU ATTIEH KATTAH**, titular de la cédula de identidad Nro. V- **13.667.161**, en su carácter de Alcalde electo para el periodo 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial N° 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la

participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Publico Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y **pensiones** de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Publica Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República **podrá acordar jubilaciones especiales** a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 23 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano **TAMIRA MARIA ACOSTA DE FRASER**, titular de la cédula de identidad Nº V- **3.815.790**, iniciándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano **TAMIRA MARIA ACOSTA DE FRASER**, titular de la cédula de identidad Nº **V-3.815.790**.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del calculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTÍCULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo a los Veintiseis (26) días del mes de Noviembre de dos mil catorce (2014).

CHARBEL JEAN ATTIEH KATTAH
Alcalde del Municipio San Joaquín

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUIN**
**DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 115/11/2014**

El Alcalde del Municipio San Joaquín, **CHARBEL JEAN ATTIEH KATTAH**, titular de la cédula de identidad Nro. V- **13.667.161**, en su carácter de Alcalde electo para el período 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial Nº 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Publico Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y **pensiones** de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Publica Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República **podrá acordar jubilaciones especiales** a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 28 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano **EGLEE MERCEDES PALENCIA GARATE**, titular de la cédula de identidad Nº **V-4.101.135**, iniciándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los

Lunes 22 de diciembre de 2014     GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA     417.599

obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano **EGLEE MERCEDES PALENCIA GARATE**, titular de la cédula de identidad N° V-4.101.135.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del calculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTÍCULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo, a los Veintiseis (26) días del mes de Noviembre de dos mil catorce.

**SAN JOAQUÍN**
**CHARBEL JEAN ABOU ATTIEH KATTAH**
Alcalde del Municipio San Joaquín

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUIN**
**DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 116/11/2014**

El Alcalde del Municipio San Joaquín, **CHARBEL JEAN ABOU ATTIEH KATTAH**, titular de la cédula de identidad Nro. V- 13.667.161, en su carácter de Alcalde electo para el período 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial N° 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Publico Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Pública Nacional, de los Estados o de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de

servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República **podrá acordar jubilaciones especiales** a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 27 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano **MANUEL FAUSTINO MUJICA GUZMAN**, titular de la cédula de identidad N° V-4.555.287, incidiéndose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio N° DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-N° 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial N° 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano **MANUEL FAUSTINO MUJICA GUZMAN**, titular de la cédula de identidad N° V-4.555.287.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del calculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTÍCULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo, a los Veintiseis (26) días del mes de Noviembre de dos mil catorce.

**SAN JOAQUÍN**
**CHARBEL JEAN ABOU ATTIEH KATTAH**
Alcalde del Municipio San Joaquín

**REPUBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUIN**
**DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 117/11/2014**

El Alcalde del Municipio San Joaquín, **CHARBEL JEAN ABOU ATTIEH KATTAH**, titular de la cédula de identidad Nro. V- 13.667.161, en su carácter de Alcalde electo para el período 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o

Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial Nº 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80, El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Publico Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y **pensiones** de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Publica Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República **podrá acordar jubilaciones especiales** a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 27 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano **MANUEL FAUSTINO MUJICA GUZMAN**, titular de la cédula de identidad Nº V-4.555.287, incidiéndose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano **MANUEL FAUSTINO MUJICA GUZMAN**, titular de la cédula de identidad Nº V-4.555.287.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del cálculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTÍCULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado

y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTICULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado por el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo a los Veintiséis (26) días del mes de Noviembre de dos mil catorce (2014).

**CHARBEL JEAN ABOU ATTIEH KATTAH**
Alcalde del Municipio San Joaquín

---

**REPUBLICA BOLIVARIANA DE VENEZUELA
ESTADO CARABOBO
MUNICIPIO SAN JOAQUIN
DESPACHO DEL ALCALDE**

**RESOLUCION Nro. 118/11/2014**

El Alcalde del Municipio San Joaquín, **CHARBEL JEAN ABOU ATTIEH KATTAH**, titular de la cédula de identidad Nro. V- **13.667.161**, en su carácter de Alcalde electo para el periodo 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el Artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial Nº 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80, El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Publico Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y **pensiones** de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Publica Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República **podrá acordar jubilaciones especiales** a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 29 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de

solicitud de jubilación especial debidamente suscritas por el ciudadano GIL ANTONIO BELISARIO, titular de la cédula de identidad Nº V-4.797.628, inicándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano GIL ANTONIO BELISARIO, titular de la cédula de identidad Nº V-4.797.628.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del cálculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTÍCULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo a los Veintiséis (26) días del mes de Noviembre de dos mil catorce (2014).

CHARBEL JEAN ABOU ATTIEH KATTAH
Alcalde del Municipio San Joaquín

REPUBLICA BOLIVARIANA DE VENEZUELA
ESTADO CARABOBO
MUNICIPIO SAN JOAQUIN
DESPACHO DEL ALCALDE

**RESOLUCION Nro. 119/11/2014**

El Alcalde del Municipio San Joaquín, CHARBEL JEAN ABOU ATTIEH KATTAH, titular de la cédula de identidad Nro. V- 13.667.161, en su carácter de Alcalde electo para el periodo 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013, Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial Nº 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Público Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y pensiones de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o Empleados o Empleadas de la Administración Pública Nacional, de los

Estados y los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República podrá acordar jubilaciones especiales a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 24 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano RAMON BALDOMERO ROJAS GIMENEZ, titular de la cédula de identidad Nº V- 4.802.361, inicándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo esta remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano RAMON BALDOMERO ROJAS GIMENEZ, titular de la cédula de identidad Nº V-4.802.361.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del cálculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTÍCULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo a los Veintiséis (26) días del mes de Noviembre de dos mil catorce (2014).

CHARBEL JEAN ABOU ATTIEH KATTAH
Alcalde del Municipio San Joaquín

REPUBLICA BOLIVARIANA DE VENEZUELA
ESTADO CARABOBO
MUNICIPIO SAN JOAQUIN
DESPACHO DEL ALCALDE

**RESOLUCION Nro. 120/11/2014**

El Alcalde del Municipio San Joaquín, CHARBEL JEAN ABOU ATTIEH KATTAH, titular de la cédula de identidad Nro. V- 13.667.161, en su carácter de Alcalde electo para el periodo 2013/2017 y debidamente juramentado en SESION EXTRAORDINARIA de fecha once (11) de diciembre de 2013, Publicada en Gaceta Municipal de fecha doce (12) de Diciembre del dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, Los Artículos 3, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial Nº 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y

ancianos el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Público Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y pensiones de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los funcionarios o funcionarias o Empleados o Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República podrá acordar jubilaciones especiales a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 27 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano LOURDES RAMONA MIRANDA DE PEROZO, titular de la cédula de identidad Nº V- 5.921.453, intúladose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo este remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal, y para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano LOURDES RAMONA MIRANDA DE PEROZO, titular de la cédula de identidad Nº V-5.921.453.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del cálculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.

**ARTÍCULO TERCERO:** Se ordena retirar de la Nómina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes Identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo a los Veintiséis (26) días del mes de Noviembre de dos mil catorce.

CHARBEL JEAN ABOU ATTIEH KATTAM
Alcalde del Municipio San Joaquín

---

**REPÚBLICA BOLIVARIANA DE VENEZUELA**
**ESTADO CARABOBO**
**MUNICIPIO SAN JOAQUÍN**
**DESPACHO DEL ALCALDE**

**RESOLUCIÓN Nro. 121/11/2014**

El Alcalde del Municipio San Joaquín, CHARBEL JEAN ABOU ATTIEH KATTAM, titular de la cédula de identidad Nro. V- 13.667.161, en su carácter de Alcalde electo para el período 2013/2017 y debidamente juramentado en SESIÓN EXTRAORDINARIA de fecha doce (11) de diciembre de 2013. Publicada en Gaceta Municipal de fecha doce (12) de Diciembre de dos mil trece (2013) Edición Extraordinaria Nro. 1439; en uso de las atribuciones legales, que le confiere el Artículo 174 de la Constitución de la República Bolivariana de Venezuela, así como el artículo 80 de la misma, el Artículo 88 numerales 2,3 y 16 de la Ley Orgánica del Poder Público Municipal, los Artículos 5, 5 y 6 de la Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, de fecha 22 de mayo de 2010, publicada en la Gaceta Oficial Nº 5.976 extraordinaria de fecha 24 de mayo de 2010 y con el Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 80 de la Constitución de la República Bolivariana de Venezuela, Artículo 80. El Estado garantizará a los ancianos y ancianas el pleno ejercicio de sus derechos y garantías. El Estado, con la participación solidaria de las familias y la sociedad, está obligado a respetar su dignidad humana, su autonomía y les garantizará atención integral y los beneficios de la seguridad social que eleven y aseguren su calidad de vida. Las pensiones y jubilaciones otorgadas mediante el sistema de Seguridad Social no podrán ser inferiores al salario mínimo urbano. A los ancianos y ancianas se les garantizará el derecho a un trabajo acorde con aquellos y aquellas que manifiesten su deseo y estén en capacidad para ello.

**CONSIDERANDO**

Que de conformidad con lo establecido en el Artículo 88 numeral 16 de la Ley Orgánica del Poder Público Municipal, el Alcalde tiene la atribución de conceder ayudas y otorgar becas y pensiones de acuerdo a las Leyes y Ordenanzas.

**CONSIDERANDO**

Que de conformidad con lo establecido en los Artículos 5 y 6 de la Ley del Estatuto Sobre Jubilaciones y Pensiones de los Funcionarios o funcionarias o Empleados o Empleadas de la Administración Pública Nacional, de los Estados y de los Municipios, El Presidente o Presidenta de la República, en Consejo de Ministros podrá establecer requisitos de edad y tiempo de servicio distintos a los previstos en la presente Ley para aquellos organismos o categorías de funcionarios o funcionarias o empleados o empleadas que por razones excepcionales, derivadas de las características del servicio o riesgos para la salud, así lo justifiquen. El régimen que se adopte deberá ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela, así mismo, el Presidente o Presidenta de la República podrá acordar jubilaciones especiales a funcionarios o funcionarias, empleados o empleadas con más de quince años de servicio, que no reúnan los requisitos de edad y tiempo de servicio establecidos en el artículo anterior, cuando circunstancias excepcionales así lo justifiquen. Estas jubilaciones se calcularán en la forma indicada en el artículo 9 de esta Ley y se otorgarán mediante Resolución motivada que se publicará en la Gaceta Oficial de la República Bolivariana de Venezuela.

**CONSIDERANDO**

Que en fecha 22 de Enero de 2014 se recibió ante la Dirección de Talento Humano de la Alcaldía de San Joaquín del Estado Carabobo cartas de solicitud de jubilación especial debidamente suscritas por el ciudadano BELKYS SORAIDA TOVAR, titular de la cédula de identidad Nº V- 7.184.003, iniciándose así la sustanciación del respectivo expediente, el cual fue remitido con sus debidos recaudos ante el Ministerio de Planificación y Finanzas mediante Oficio Nº DTH-0332-2014 de fecha 22 de Junio de 2014 y debidamente recibido en fecha 25 de Julio de 2014, para la revisión y análisis técnico del mismo, resultando técnicamente aprobada por el Ministerio en fecha 08 de Agosto de 2014, quien a su vez remitió el expediente a la Vicepresidencia de la República donde se le dio la debida aprobación y otorgamiento en fecha 24 de Octubre de 2014, siendo este remitida ante la Dirección de Recursos Humanos de la Alcaldía del Municipio San Joaquín del Estado Carabobo mediante Oficio DVPSI-DGSEFP-Nº 634, de fecha 11 de Noviembre de 2014 para así dar fiel cumplimiento al Instructivo que establece las Normas que Regulan la Tramitación de las Jubilaciones Especiales para los Funcionarios y Empleados que prestan servicio en la Administración Pública Nacional, Estadal, Municipal y, para los obreros Dependientes del Poder Público Nacional. Publicada en Gaceta Oficial Nº 38.323, de fecha 28/11/2005.

**RESUELVE**

**ARTÍCULO PRIMERO:** Otorgar Pensión de Jubilación Especial a el Ciudadano BELKYS SORAIDA TOVAR, titular de la cédula de identidad Nº V-7.184.003.

**ARTÍCULO SEGUNDO:** El monto de la Pensiones señalada en el artículo anterior, será el resultante de la aplicación del cálculo establecido en el Artículo 9 Ley de Reforma Parcial de la Ley del Estatuto sobre el Régimen de Jubilaciones y Pensiones de los Funcionarios o Empleados de la Administración Pública Nacional, de los Estados y de los Municipios, garantizando que nunca podrá ser inferior al Salario Mínimo Nacional.



Lunes 22 de diciembre de 2014    GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA    417.603

**ARTÍCULO TERCERO:** Se ordena retirar de la Nomina de la Alcaldía del Municipio San Joaquín del Estado Carabobo al Ciudadano antes identificado y le sea otorgada su liquidación de prestaciones sociales y demás beneficios laborales que correspondan.

**ARTÍCULO CUARTO:** La presente Resolución se hará efectiva a partir de su publicación en Gaceta Oficial de la República Bolivariana de Venezuela.

Comuníquese y Publíquese.

Dado, Firmado y Sellado en el Despacho del Alcalde del Municipio San Joaquín del Estado Carabobo, a los Veintiséis (26) días del mes de Noviembre de dos mil catorce (2014).

CHARBEL SKAFF JOU ATTIEH KATTAH
Alcalde del Municipio San Joaquín

---

## PROCURADURÍA GENERAL DE LA REPÚBLICA

REPÚBLICA BOLIVARIANA DE VENEZUELA
PROCURADURÍA GENERAL DE LA REPÚBLICA
DESPACHO DEL PROCURADOR GENERAL DE LA REPÚBLICA
RESOLUCIÓN N° 078 /2014.

Caracas, 19 de diciembre de 2014.
Año 204° de la Independencia y 155° de la Federación
15° de la Revolución Bolivariana

El Procurador General de la República (E), MANUEL ENRIQUE GALINDO BALLESTEROS, según Resolución N° 013/2013 de fecha 08 de marzo de 2013, publicada en Gaceta Oficial N° 40.126 de fecha 11 de marzo del mismo mes y año; en ejercicio de las atribuciones conferidas por los artículos 248 de la Constitución de la República Bolivariana de Venezuela; 39 del Decreto No. 6.286, con Rango, Valor y Fuerza de Ley de Reforma Parcial del Decreto con Fuerza de Ley Orgánica de la Procuraduría General de la República, de fecha treinta (30) de julio de dos mil ocho (2008), publicado en Gaceta Oficial Extraordinario No. 5.892 de fecha treinta y uno (31) de julio de dos mil ocho (2008); en concordancia con lo dispuesto en numeral 1 del artículo 44 eiusdem,

RESUELVE

Artículo 1: Se designa al ciudadano REINALDO ENRIQUE MUÑOZ PEDROZA, venezolano, mayor de edad, de este domicilio, titular de la cédula de identidad N° V-10.869.426, de profesión Abogado e inscrito en el Instituto de Previsión Social del Abogado bajo el N° 96.868, como VICEPROCURADOR GENERAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA, a partir de la publicación en la Gaceta Oficial de la República Bolivariana de Venezuela de la presente Resolución. En consecuencia el referido ciudadano queda facultado para ejercer las atribuciones inherentes a dicho cargo previstas en el Reglamento Interno de la Procuraduría General de la República.

Comuníquese y publíquese.

MANUEL ENRIQUE GALINDO BALLESTEROS
Procurador General de la República (E)

REPÚBLICA BOLIVARIANA DE VENEZUELA
PROCURADURÍA GENERAL DE LA REPÚBLICA
DESPACHO DEL PROCURADOR GENERAL DE LA REPÚBLICA
RESOLUCIÓN N° 079/2014.

Caracas, 19 de diciembre de 2014.
Año 204° de la Independencia y 155° de la Federación
15° de la Revolución Bolivariana

El Procurador General de la República (E), MANUEL ENRIQUE GALINDO BALLESTEROS, designado conforme Resolución N° 013/2013 de fecha 08 de marzo de 2013, publicada en Gaceta Oficial N° 40.126 de fecha 11 de marzo del mismo mes y año; en ejercicio de las atribuciones conferidas por los artículos 248 de la Constitución de la República Bolivariana de Venezuela; 39 del Decreto N° 6.286, con Rango, Valor y Fuerza de Ley de Reforma Parcial del Decreto con Fuerza de Ley Orgánica de la Procuraduría General de la República, de fecha treinta (30) de julio de dos mil ocho (2008), publicado en Gaceta Oficial Extraordinario No. 5.892 de fecha treinta y uno (31) de julio de dos mil ocho (2008), en concordancia con lo dispuesto en numeral 1 del artículo 44 eiusdem,

RESUELVE

Artículo 1: Se delega en el ciudadano REINALDO ENRIQUE MUÑOZ PEDROZA, venezolano, mayor de edad, de este domicilio, titular de la cédula de identidad N° V-10.869.426de profesión Abogado e inscrito en el Instituto de Previsión Social del

Abogado bajo el N° 96.868, en su carácter de VICEPROCURADOR GENERAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA, a partir de la publicación en la Gaceta Oficial de la República Bolivariana de Venezuela de la presente Resolución, la firma de los documentos y actos que se indican a continuación:

1. Nombrar y remover los funcionarios y funcionarias que ejercen cargos directivos del organismo y aprobar los nombramientos, ascensos, cambios de grado, traslados, jubilaciones, retiros, destituciones y demás actos relativos a la Carrera de la Procuraduría General de la República.

2. Dictar el Reglamento Interno relativo a la estructura organizativa de la Procuraduría General de la República y la distribución de competencias entre las unidades que la conforman, sin perjuicio de lo establecido en las leyes especiales. Este reglamento debe ser publicado en la Gaceta Oficial de la República Bolivariana de Venezuela.

3. Dictar el estatuto relativo al Sistema de la Carrera y remuneraciones de la Procuraduría General de la República; previa aprobación del Presidente de la República, en Consejo de Ministros.

4. Elaborar y presentar al Ejecutivo Nacional el proyecto de presupuesto anual de la Procuraduría General de la República.

5. Elaborar el plan estratégico anual de la Procuraduría General de la República; y aplicar los programas de modernización tecnológica que requiera el mejoramiento organizativo y funcional de la Institución.

6. Comprometer y ejecutar el presupuesto anual de la Procuraduría General de la República y suscribir los contratos que requiera su funcionamiento.

7. Crear y dirigir los comités de asesores que considere convenientes para el mejor cumplimiento de las funciones de la Procuraduría General de la República.

8. Designar representantes de la Procuraduría General de la República ante los distintos organismos nacionales o internacionales.

9. Crear oficinas para que ejerzan con carácter permanente las funciones de la Procuraduría General de la República en las regiones o Estados, a los fines de atender en dichas entidades, asuntos relacionados con la representación y defensa de los derechos, bienes e intereses patrimoniales de la República.

10. Aprobar los manuales de procedimientos que requiera el funcionamiento de la Procuraduría General de la República.

11. Establecer directrices de integración y coordinación con las consultorías jurídicas de los órganos del Poder Público Nacional con las Procuradurías de los Estados y Sindicaturas Municipales, para la mejor defensa de los derechos, bienes e intereses de la República.

12. Redactar y suscribir Oficios dirigidos a los Ministerios, a la Vicepresidencia Ejecutiva, a los distintos entes que conforman la Administración Pública Descentralizada, a los Órganos de los Poderes Legislativo, Judicial, Electoral y Ciudadano y, comunicaciones dirigidas a cualquier persona natural o jurídica relativas a las materias que le competen a la Procuraduría General de la República.

13. Certificación de copias de documentos y expedientes que reposan en el Archivo de la Procuraduría General de la República.

14. Participar, en coordinación con los organismos responsables de las relaciones internacionales y comerciales de la República, en la elaboración de los proyectos de tratados o convenios internacionales, cuyo contenido esté relacionado con los derechos, bienes e intereses patrimoniales de la República.

15. Delegar en los funcionarios del Organismo las atribuciones que tiene asignadas por ley, así como la firma de los documentos que estime necesarios. La resolución mediante la cual se otorgue la delegación debe publicarse en la Gaceta Oficial de la República Bolivariana de Venezuela.

16. Delegar en los funcionarios del organismo la sustituir en los funcionarios de otros organismos del Estado la representación y defensa judicial y extrajudicial de la República.

17. Otorgar poderes o mandatos a particulares, cuando la representación y defensa del interés de la República así lo requiera.

18. Otorgar poderes a abogados que no sean funcionarios de la Procuraduría General de la República, para cumplir actuaciones fuera de la República Bolivariana de Venezuela, en representación y defensa de los derechos, bienes e intereses patrimoniales de la República.

19. Autorizar a los abogados que ejerzan en juicio la representación de la República, a los fines de que puedan convenir, desistir, transigir, comprometer en árbitros, conciliar utilizar otro medio alternativo para la resolución de conflictos, previas instrucciones escritas emanadas de la máxima autoridad del órgano respectivo.

20. Redactar y suscribir opiniones sobre los contratos de interés público nacional.

21. Redactar y suscribir, conforme a las instrucciones de los órganos del Poder Público Nacional, los documentos contentivos de actos, contratos o negocios de su respectiva gestión, relacionados con los derechos, bienes e intereses patrimoniales de la República, cuya competencia no les esté atribuida expresamente por mandato constitucional o legal.

22. Emitir opinión jurídica sobre los proyectos de los convenios o tratados internacionales a ser suscritos por la República, cuyo contenido esté vinculado con sus derechos, bienes e intereses patrimoniales.

23. Redactar y suscribir los documentos de transferencias de titularidad de las tierras, en la cual estén involucrados los derechos e intereses patrimoniales de la República.

24. Recibir y tramitar mediante los órganos competentes, las denuncias sobre hechos o actos que, a su juicio, afecten los derechos, bienes e intereses patrimoniales de la República.

25. Demandar la nulidad de cualquier acto de los órganos y entes del Poder Público Nacional, Estadal y Municipal, por razones de inconstitucionalidad o de ilegalidad.

26. Autorizar, previa y expresamente, la suscripción de los contratos bajo la modalidad de honorarios profesionales de asesoría jurídica y de representación judicial, a ser suscritos por los órganos y entes de la Administración Pública Nacional central y descentralizada.

Comuníquese y publíquese,



**MANUEL ENRIQUE GALINDO BALLESTEROS**
Procurador General de la República (E)

# TRIBUNAL SUPREMO DE JUSTICIA

REPÚBLICA BOLIVARIANA DE VENEZUELA
JURISDICCIÓN DISCIPLINARIA JUDICIAL
TRIBUNAL DISCIPLINARIO JUDICIAL
EXPEDIENTE N° AP61-D-2011-000081

Mediante auto del cuatro (4) de octubre de 2011 este Tribunal Disciplinario Judicial ordenó dar entrada a la denuncia interpuesta por la INSPECTORÍA GENERAL DE TRIBUNALES, contra la ciudadana EDY SIBONEY CALDERÓN SUESCÚN, titular de la cédula de identidad N° V-5.675.425, por actuaciones como jueza integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional.

En ese mismo auto se designó según distribución aleatoria llevada por el Sistema de Gestión Judicial, al Juez Carlos Medina Rojas para el conocimiento del presente asunto.

El once (11) de octubre de 2011 este Tribunal Disciplinario Judicial admitió la denuncia interpuesta por la Inspectoría General de Tribunales contra la ciudadana Edy Siboney Calderón Suescún.

El catorce (14) de febrero de 2012 se dictó auto mediante el cual, visto que se habían practicado todas las notificaciones mandadas, se ordenó la remisión del expediente a la Oficina de Sustanciación a los fines de realizar la investigación correspondiente.

El ocho (8) de marzo de 2012, visto el informe emitido el treinta (30) de septiembre de 2011, en el cual se consideró suficiente la investigación realizada por la Inspectoría General de Tribunales, la Oficina de Sustanciación ordenó la remisión del expediente a este Tribunal Disciplinario Judicial.

Mediante oficio N° 00573/2012 del veintitrés (23) de marzo de 2012 se remitió el expediente de la presente causa judicial a este órgano jurisdiccional.

El veintiocho (28) de marzo de 2012 se dictó auto ordenando el reingreso de la causa.

El diecisiete (17) de mayo de 2012 este Tribunal Disciplinario Judicial ordenó citar al juez investigado para que, una vez constara en autos la práctica de la última de las notificaciones ordenadas, presentara escrito de descargos, de conformidad con lo establecido en el artículo 62 del Código de Ética del Juez Venezolano y la Jueza Venezolana. Asimismo, se ordenó notificar a los terceros intervinientes, a la Inspectoría General de Tribunales y a la Fiscalía General de la República.

El once (11) de junio de 2012 el apoderado judicial de la ciudadana Edy Siboney Calderón Suescún presentó escrito de descargos.

El treinta y uno (31) de julio de 2012 se agregó al expediente, como auto de promoción de pruebas presentado por el representante judicial de la Inspectoría General de Tribunales.

El veintisiete (27) de febrero de 2013 este Tribunal Disciplinario Judicial se pronunció sobre los medios probatorios promovidos en el presente proceso y, en vista de haberse efectuado fuera del lapso previsto en el artículo 62 del Código de Ética del Juez Venezolano y la Jueza Venezolana, se ordenó la notificación de la referida decisión a todos los intervinientes en el presente proceso para que, a partir de que constara en autos la última de las notificaciones ordenadas, iniciara a transcurrir el lapso de evacuación de pruebas.

El diecinueve (19) de junio de 2013 se dictó auto fijando para el dieciséis (16) de julio de 2013 la oportunidad para la celebración de la audiencia oral y pública prevista en el artículo 73 y siguientes del Código de Ética del Juez Venezolano y la Jueza Venezolana.

El seis (6) de agosto de 2013 se dictó auto mediante el cual, en vista de que el dieciséis de julio de 2013 no hubo despacho, se reprogramó la audiencia oral y pública para el diecisiete (17) de septiembre de 2013, a las diez horas de la mañana (10:00 a.m.).

El diecisiete (17) de septiembre de 2013 se celebró la audiencia oral y pública en la cual se llevó a cabo el debate y se difirió la oportunidad para dictar el pronunciamiento decisorio para el veinticuatro (24) de septiembre de 2013, a la una y media horas de la tarde (1:30 p.m.).

El veinticuatro (24) de septiembre de 2013 el Tribunal Disciplinario Judicial, vista la complejidad del caso, decidió diferir la oportunidad para dictar el pronunciamiento decisorio para el ocho (8) de octubre de 2013, a la una y media horas de la tarde (1:30 p.m.).

El ocho (8) de octubre de 2013 el Tribunal Disciplinario Judicial dictó el pronunciamiento decisorio en la presente causa, correspondiendo en esta oportunidad dictar el texto íntegro de la decisión, en cumplimiento del artículo 82 del Código de Ética del Juez Venezolano y la Jueza Venezolana y, al respecto se observa.

I
## DE LA INVESTIGACIÓN

El dos (2) de febrero de 2010 la Inspectoría General de Tribunales comisionó a un inspector de tribunales a los fines de realizar inspección integral sobre las actuaciones de la Jueza Edy Siboney Calderón Suescún, en su condición de integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional.

El primero (1°) de marzo de 2010 se notificó a la jueza Edy Siboney Calderón Suescún de la realización de la inspección integral.

El veinte (20) de mayo de 2010 la Inspectoría General de Tribunales acordó la apertura del expediente N° 100099 a la jueza Edy Siboney Calderón Suescún por sus actuaciones como integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional.

El nueve (9) de diciembre de 2010 la Inspectoría General de Tribunales dictó acto conclusivo mediante el cual imputó a la ciudadana Edy Siboney Calderón Suescún la supuesta comisión de los siguientes ilícitos disciplinarios sancionados con la destitución del cargo. (1) por aparentemente haber incurrido en infracción de ley establecen la Constitución y las leyes, al dictarse una decisión carente de motivación, en la causa judicial N° AP51-O-2007-015381, contentiva de una acción de amparo constitucional interpuesta por la ciudadana Mercedes Xiomara Silva, contra actuaciones y omisiones judiciales de la Jueza Unipersonal N° IX de la Sala de Juicio del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas, en procedimiento de inquisición de paternidad, falta disciplinaria prevista en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos. (2) por supuestamente haber infringido los deberes que le establecen la Constitución y las leyes, al dictarse una decisión inmotivada actuando en sede constitucional en la causa judicial N° AP51-R-2007-022830, del veintisiete (25) de febrero de 2008, en la que se declaró sin lugar la apelación interpuesta por el Ministerio Público y anula la recurrida por considerar que no se valoraron las probanzas aportadas al proceso falta disciplinaria establecida en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos. (3) por supuestamente haber dictado una providencia contraria a la ley por ignorancia, en la causa judicial N° AP51-O-2009-007212, cuando el once (11) de junio de 2009, se oyó en ambos efectos las apelaciones interpuestas contra la decisión proferida por la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, el veintiocho (28) de mayo de 2009, que había declarado sin lugar la acción de amparo interpuesta, falta disciplinaria establecida en el numeral 10 del artículo 39 de la Ley Orgánica del Consejo de la Judicatura, (4) por presuntamente haber incurrido en abuso de autoridad, en la causa judicial N° AP51-O-2009-007212, cuando procedió al margen del debido orden procesal, al permitir que se celebrara la audiencia constitucional sin que los terceros coadyuvantes contaran con la asistencia técnica debida, falta disciplinaria tipificada en el numeral 16 del artículo 40 de la Ley de Carrera Judicial vigente para la época, en que ocurrieron los hechos.



Lunes 22 de diciembre de 2014          GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA          417.605

II

DEL ESCRITO DE PETICIÓN DE SANCIÓN DE INSPECTORÍA GENERAL DE TRIBUNALES

Mediante escrito presentado el nueve (9) de diciembre de 2010 ante la extinta Comisión de Funcionamiento y Reestructuración del Sistema Judicial, la Inspectoría General de Tribunales solicitó la aplicación de la sanción de destitución a la ciudadana Edy Siboney Calderón Suescún, por sus actuaciones como Jueza integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional por los siguientes motivos

Alegó la Inspectoría General de Tribunales que la jueza denunciada incurrió en infracción de los deberes que le establecen la Constitución y las leyes, al haber sido dictada una decisión carente de motivación en la causa judicial N° AP51-O-2007-015381, contentiva de una acción de amparo constitucional interpuesta por la ciudadana Mercedes Xiomara Silva, contra actuaciones y omisiones judiciales de la Jueza Unipersonal N° IX de la Sala de Juicio del Circuito Judicial del Área Metropolitana de Caracas, en el procedimiento de inquisición de paternidad incoado por la referida ciudadana a favor de su hijo"

Argumentó el referido órgano de investigación, que "Consta en la decisión pronunciada por la Sala Constitucional del Tribunal Supremo de Justicia, en fecha 08-05-2008, que el 30-07-2007, la Sala N° IX del Tribunal de Protección del Niño y del Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas, acordó que se practicara la prueba heredo-biológica al niño actor y a los tres adolescentes herederos del cujus de autos"

Asimismo, agregó que "consta que en fecha 01-08-2007, se pidió aclaratoria de la mencionada decisión respecto de que se indique a quien [sic] correspondía pagar los costos de la prueba de ADN, así como en fecha 02-08-2007, se solicitó ampliación del fallo en cuanto a qué el mismo no identificó el tipo de prueba que había de realizarse (con muestras de sangre o con muestras corpóreas externas)"

Que "Igualmente dejó constancia [de] que, el apoderado de los demandados el 02-08-2007 interpuso recurso de apelación contra la decisión que acordó la prueba sobre los adolescentes demandados, ante cuyo recurso el apoderado actor se opuso el 06-08-2007"

Que "Asimismo, se señaló que en fecha 09-08-2007, la Jueza N° 9 del Tribunal de Protección remitió la decisión que declaró sin lugar la recusación que fuera incoada en contra de la Jueza N° 14 del Tribunal de Protección, y en tal virtud remitió las actuaciones al juzgado natural"

Que "[...] el apoderado actor en fecha 14-08-2007 solicitó la revocatoria de dicho auto de mero trámite que ordenó la remisión del expediente y pidió la desaplicación por control difuso del artículo 93 del Código de Procedimiento Civil, para que la Jueza N° 9 continuara conociendo"

Que "[...] en fecha 14-04-2008 la Corte Superior Primera Accidental del Circuito Judicial del Tribunal de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, declaró con lugar la apelación interpuesta por el apoderado demandado, y ordenó al juez de la causa tramitara lo concerniente para que se llevara a cabo la prueba de ADN, sobre muestras orgánicas del cadáver"

Que "La Sala Constitucional consideró necesario hacer el relato anterior para así establecer el hecho lesivo causante del supuesto agravio. Observó que el amparo bajo examen versaba sobre una actuación judicial y unas omisiones de pronunciamiento por parte de la Jueza N° 9 de la Sala de Juicio del Tribunal de Protección del Niño y del Adolescente, como lo fueron el pronunciamiento judicial que ordenó la remisión del expediente al tribunal natural luir una parte y por la otra, las omisiones de pronunciamiento respecto de las solicitudes de aclaratoria y ampliación, de la oposición al recurso de apelación, del recurso de revocatoria y la solicitud de desaplicación por control difuso del artículo 93 del Código de Procedimiento Civil"

Que "[...] determinó que el a quo constitucional obvió la denuncia respecto a que no habían sido proveídas las solicitudes de aclaratoria y ampliación del fallo del 30-07-2007, aún cuando dicho a quo también estimó que no tenía que ser el juez que emitió el acto decisorio quien debía pronunciarse sobre las referidas solicitudes de aclaratoria y ampliación"

Que "Con ello se observa, que tal y como lo estableció el Máximo Tribunal, la decisión de la Corte Superior Primera actuando en sede constitucional, dejó de juzgar sobre el alegato de omisión de pronunciamiento respecto de la solicitud de ampliación, lo que evidencia sin lugar a dudas el quebrantamiento del deber de decidir conforme a lo alegado, lo que se traduce en inmotivación y que en consecuencia, con dicha decisión carente de

motivación, la referida Corte Superior, enervó seriamente las posibilidades de defensa de las partes, por lo que al considerar que la actuación no estuvo sujeta a derecho, revocó la decisión recurrida"

Que "Como se puede colegir, la Alzada a la cual pertenecía la Jueza EDY SIBONEY CALDERON SUESCUN, y que suscribió el fallo infra conjuntamente con las otras dos integrantes para la fecha, al haber emitido un fallo judicial carente de motivación, infringió los deberes contenidos en las siguientes normas legales: [...] A) Artículo 243° del Código de Procedimiento Civil, referido a los requisitos de la sentencia consistente en exponer los motivos de hecho y de derecho, así como la decisión expresa, positiva y precisa con arreglo a la pretensión deducida y a las excepciones o defensas opuestas, sin que en ningún caso pueda absolverse [...] B) Artículo 12, obliga que establece que los jueces deben atenerse en sus decisiones a las normas de derecho a menos que la Ley la faculte para decidir con arreglo a la equidad, debiendo decidir conforme a lo alegado y probado [...] C) Artículo 9 de la Ley Orgánica del Poder Judicial, que contempla que la justicia se debe impartir conforme a la ley y al derecho, con celeridad y eficacia"

Que "Se evidencia entonces que con tal actuación quebrantó la garantía constitucional establecida en el artículo 26 de la Constitución, toda vez que dicha decisión absolutamente inmotivada denota que dista mucho de garantizar una tutela judicial efectiva, transgrediendo así el derecho de los justiciables a una justicia idónea, responsable, accesible y expedita"

Que "Es por ello que no cabe más que concluir, que también quebrantó el derecho preceptuado en el artículo 51 constitucional, que tienen los justiciables de obtener oportuna y adecuada respuesta por parte de un tribunal al que se le dirige una petición, pues era de su competencia resolver, por ende al haber violado este derecho con una sentencia inmotivada, que en nada resuelve lo peticionado, porque simplemente no se pronunció con respecto a ello, debe ser sancionada conforme a la ley, pudiendo ser destituida del cargo que ostenta, a tenor de lo establecido en el mencionado artículo 51 del Texto Fundamental, comportando no sólo un perjuicio para la recta administración de justicia, sino una manifiesta desatención a los requerimientos de los interesados"

Que "[...] la conducta asumida por la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional de la que forman parte la Jueza EDY SIBONEY CALDERON SUESCUN, y quien suscribió conjuntamente los otros tres esta decisión inmotivada, violenta la finalidad del proceso, que es la realización de la justicia, eficacia del proceso judicial establecida en el artículo 257 constitucional"

Que "Todo este cúmulo de quebrantamientos comporta la infracción del deber de impartir judicial conforme a la ley y al derecho, con celeridad y eficacia, preceptuado en [el] artículo 9 de la Ley Orgánica del Poder Judicial, vulnerando el servicio público de la justicia y los derechos fundamentales de los justiciables tales como el de tutela judicial efectiva, el debido proceso, y el de petición y oportuna respuesta, previstos en los artículos 26, 49 y 51 de la Constitución de la República Bolivariana de Venezuela, pues cada vez que el juzgador no decide conforme a los postulados legales y constitucionales, ocasiona dilación en la resolución de las controversias, al tener el justiciable que acudir a una instancia superior a fin de que se revisen las decisiones judiciales que no cumplió con la finalidad otorgada al proceso judicial"

Que "Queda evidenciado que la referida Jueza, incumplió con el deber impuesto en la ley al regular los asuntos que son sometidos a su conocimiento toda vez que al silenciar el pronunciamiento que debía emitir conforme a los requerimientos del accionante, puso en entredicho su idoneidad como administradora de justicia, incurriendo por ende en infracción de normas constitucionales y legales que consagran el debido proceso, la tutela judicial efectiva, el derecho de petición y oportuna respuesta, como ya se indicó, y en tal virtud es que esta Inspectoría General de Tribunales, conforme a lo establecido por el artículo 49.8° constitucional, exige la responsabilidad personal de la juzgadora, y en tal virtud es que esta Institución solicita se le apertura [sic] el procedimiento disciplinario respectivo"

Que "Por todo lo antes expuesto, se estima que la Jueza EDY SIBONEY CALDERON SUESCUN, incurrió en infracción de deberes constitucionales y legales, falta disciplinaria que acarrea la destitución del cargo, a tenor de lo dispuesto en el numeral 11 del artículo 40 de la Ley de Carrera Judicial [...]"

Que incurrió "[...] nuevamente en infracción de los deberes que le establecen la Constitución y las leyes, al haber dictado una decisión inmotivada en la causa judicial N° AP51-R-2007-022830, cuando la Jueza EDY SIBONEY CALDERON SUESCUN, como miembro de la Corte Superior Primera del Circuito Judicial del Tribunal de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de caracas y

Nacional de Adopción Internacional, actuando en sede Constitucional, cuando suscribió la decisión de fecha 25-02-2008, en la que se declaró sin lugar la apelación interpuesta por el Ministerio Público y anuló la recurrida por considerar que no valoró las probanzas aportadas al proceso"

Que en esa oportunidad "[...] la referida Corte Superior, conoció del recurso de apelación interpuesto por la Fiscal Nonagésima Segunda del Ministerio Público en contra de la decisión de primera instancia de fecha 06-12-2007, por considerar que el decreto de adopción plena de la niña M.F., fue dictado antes de haberse cumplido el período de prueba de seis (6) meses, y en virtud de ello, la Alzada dictó decisión en la que declaró nula la sentencia apelada por estimar que la recurrida no valoró las probanzas aportadas al proceso, y por ende procedió a valorar los informes de adaptabilidad, idoneidad, emparentamiento y seguimiento respectivamente, y donde se indicaba que los adoptantes son idóneos para la adopción"

Que la referida decisión "[...] posteriormente fue recurrida, siendo decidido el recurso por la Sala de Casación Social del Tribunal Supremo de Justicia, en fecha 30-10-2008, oportunidad en la que al dictar la decisión N° 1669, la Máxima Sala, declaró con lugar el recurso de Casación interpuesto por la Fiscal Nonagésima Segunda del Ministerio Público, anuló el Fallo recurrido y ordenó la reposición de la causa al estado de llevarse a cabo nuevamente el período de prueba establecido en el artículo 422 de la Ley Orgánica para la Protección del Niño y del Adolescente"

Que "[...] la Sala de Casación Social, estableció que el artículo 422 de la ley que rige la materia, tiene carácter de orden público, y en tal virtud es que radica la importancia del período de prueba en el procedimiento judicial de adopción, el cual no puede ser modificado sino para prorrogarse. Dicha Sala verificó que el período de prueba comenzó a correr el 18 de junio de 2007, y que el decreto de adopción fue acordado por el Tribunal de Protección, el 6 de diciembre de 2007, es decir, antes del cumplimiento total del período de prueba, quebrantando con ello una forma procesal que va en protección de la niña candidata a la adopción, situación írrita esta que luego fue convalidada por la Corte Superior Primera, pues al conocer del recurso, no subsanó el error y decretó la adopción, además de observarse la falta de unanimidad entre los informes emanados del Equipo Multidisciplinario, tanto del Tribunal como de la Oficina de Adopciones"

Que el referido órgano de investigación [...] reprocha el incumplimiento del deber establecido en el artículo 422 de la ley que rige la materia [...]"

Que "Se evidencia claramente que la norma tiene carácter imperativo, ya que establece que para decretarse la adopción debe haberse cumplido un período de prueba de seis (6) meses mínimo, es decir, nunca menos de esos seis (6) meses, sin embargo se observa que el Tribunal de Primera Instancia, quebrantó la norma y lo decretó aún cuando no había transcurrido el plazo mínimo establecido en la ley, y esta irregularidad no fue corregida por la Alzada sino que fue convalidada, siendo esta actuación nugatoria del principio de segunda instancia, pues la esencia del mismo es la corrección de las actuaciones erróneas de la primera instancia"

Que "[...] se observa, que la Corte Superior Primera en referencia, quebrantó el deber establecido en el artículo 12 del Código de Procedimiento Civil [...]"

Que "[...] también se puede verificar el quebrantamiento de la facultad de corregir la aplicación del ordenamiento jurídico cuando administre justicia en virtud de los recursos que las leyes establezcan, establecido en el artículo 4 de la Ley Orgánica del Poder Judicial, así como la infracción del deber de administrar justicia conforme a la ley y al derecho preceptuado en el artículo 9 ejusdem"

Que "Se verificó igualmente que con dicha actuación írrita, se quebrantó la eficacia procesal estatuida en el artículo 257 constitucional, y por ende quebrantó la tutela judicial efectiva y el derecho de petición y oportuna respuesta, preceptuado en los artículos 26 y 51 constitucionales; actuaciones con las que quebrantó el orden público procesal"

Que "[...] el quebrantamiento de deberes legales y constitucionales, conlleva la comisión de un ilícito disciplinario, que denota la indisciplina del operador para continuar en el ejercicio del cargo que viene ostentando, en atención a la responsabilidad que supone la función de juzgar, ya que la función de Juez es administrar justicia dentro de los límites que el ordenamiento le fija. Ello ha sido establecido, por la Sala Político Administrativa del Tribunal Supremo de Justicia, en sentencia N° 2342 del 27-04-2005, dictada en el exp N° 2003-0799 (caso David Alfredo Manrique Matuenga)".

Que "Por todas las razonamientos antes expuestos, se considera que la Jueza EDY SIBONEY CALDERON SUESCUN, como miembro integrante de la Corte Superior Primera del Circuito de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional







Adopción Internacional, **infringió los deberes legales y constitucionales**, cuando quebrantó el orden público al haber acordado la adopción plena de una niña sin que se hubiera cumplido el período de prueba en el plazo mínimo establecido en la ley, falta disciplinaria que acarrea la destitución del cargo a tenor de lo dispuesto en el numeral 11 del artículo 40 de la Ley de Carrera Judicial [...]"

Con respecto al tercer ilícito, alegó la Inspectoría General de Tribunales que "La Jueza EDY SIBONEY CALDERON SUESCUN, dictó una providencia **contraria a la ley por ignorancia**, cuando en fecha 11-06-2009, oyó a dos efectos las apelaciones interpuestas contra la decisión proferida por la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y del Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, en fecha 28-05-2009, que había declarado con lugar la acción de amparo interpuesta, en la causa judicial N° AP51-O-2009-007212"

Que "[...] con dicha actuación la referida Alzada contrarió lo dispuesto en el artículo 35 de la Ley Orgánica de Amparo sobre Derechos y Garantías Constitucionales [...]"

Que "En el caso in comento, la Jueza como integrante de la referida Alzada y como Ponente, declaró con lugar la acción de amparo interpuesta, decisión esta contra la que las partes ejercieron apelación, siendo oídas las mismas a dos efectos, ocasionando con ello que la situación jurídica infringida establecida no fuera restituida, lo que a su vez lesionó más [sic] los derechos y garantías de todas las partes intervinientes en el asunto, tal y como en efecto lo estableció la referida Sala Constitucional"

Que "Se evidencia entonces, que con esa írrita actuación al remitir la causa original a la Sala Constitucional del Tribunal Supremo de Justicia, se causó un agravio por cuanto se hizo inejecutable la decisión donde se había declarado la procedencia de la tutela constitucional que había sido invocada, por lo que ello constituye un acto de ignorancia de la Jueza, ya que según el contenido de la norma, debió oír los recursos interpuestos, solo al efecto devolutivo, remitiendo copia certificada de las actuaciones, en consecuencia esta Inspectoría General de Tribunales, estima que incurrió en falta disciplinaria susceptible de destitución del cargo, a tenor de lo establecido en el numeral '0' del artículo 39 de la Ley Orgánica del Consejo de la Judicatura [...]"

En relación con el cuarto ilícito imputado a la jueza denunciada, la Inspectoría General de Tribunales alegó que la "[...] referida ciudadana [...] incurrió en abuso de autoridad en la causa judicial N° AP51-O-2009-007212, cuando procedió al margen del debido proceso, al permitir que se celebrara la audiencia constitucional sin que los terceros coadyuvantes contaran con la asistencia técnica debida, falta disciplinaria susceptible de destitución del cargo, a tenor de lo dispuesto en el numeral 16 del artículo 40 de la Ley de Carrera Judicial [...]"

Que "[...] en la causa judicial N° AP51-O-2009-007212, se celebró la audiencia constitucional en fecha 18-05-2009, oportunidad en la que por lo que consta en acta de la comparecencia, entre otras personas, de los ciudadanos Norma Corremoto Vásquez Urbina y Ramiro Antonio Vásquez Urbina, quienes participaron en su condición de terceros coadyuvantes, sin la debida asistencia técnica"

Que "Se evidencia de dicha actuación, que la Corte Superior Primera del Circuito Judicial del Tribunal de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción, vulneró el numeral 1 del artículo 49 de la Constitución de la República Bolivariana de Venezuela, relativo al debido proceso, por cuanto dichos ciudadanos sufra mencionados (los terceros coadyuvantes), no tuvieron en la mencionada audiencia constitucional defensa y asistencia jurídica"

Que "Igualmente cabe señalar, que quebrantó asimismo lo preceptuado en el artículo 4 en la Ley de Abogados [...]"

Que "[...] la conducta asumida por la Jueza EDY SIBONEY BALDERON SUESCUN, como integrante de la Corte Superior Primera del Circuito de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, denota absoluta falta de diligencia de la Jueza de la causa, que como directora del proceso debe ordenarlo en todo momento hasta su culminación, garantizando a los justiciables, el ejercicio de los derechos consagrados en la Constitución, actuando por ende, con subversión absoluta del proceso, violentando el derecho a la defensa, pues debían designar un abogado asistente a los terceros coadyuvantes cuando advirtió que no estaban asistidos de letrado"

Que "Esta actuación contraria a la contravención [de] disposiciones constitucionales y legales de orden público, por lo que en criterio de este Organismo, constituye una conducta arbitraria, que evidentemente, se traduce




Lunes 22 de diciembre de 2014      GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA      417.607

en abuso de autoridad, y tanto es así que la propia Sala Constitucional del Tribunal Supremo de Justicia, hizo un llamado de atención a la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, para que en posteriores ocasiones evite situaciones que atenten contra el derecho al debido proceso, a la defensa y a la tutela judicial eficaz de los justiciables"

### III
### DE LOS ALEGATOS DE LA JUEZA DENUNCIADA

El diecisiete (17) de septiembre de 2013 tuvo lugar la celebración de la audiencia, en la cual la parte denunciada alegó lo siguiente

Que su representada ingresó a la carrera judicial por concurso de oposición, siendo nombrada juez clase "A", es decir, juez superior titular. El veinticinco (25) de noviembre de 2010, mediante Oficio Nº CJ-10-2375, la Comisión Judicial del Tribunal Supremo de Justicia suspendió su cargo, sin el goce de su sueldo, a la ciudadana Edy Siboney Calderón Suescún

Alegó como punto previo, que el acto administrativo dictado por la Comisión Judicial del Tribunal Supremo de Justicia violenta la garantía constitucional de estabilidad de la carrera judicial prevista en el artículo 255 de la Constitución de la República Bolivariana de Venezuela, norma que consagra la estabilidad de los jueces que ingresen a la carrera judicial por concurso de oposición hayan sido designados por el Tribunal Supremo de Justicia, tal como es el caso de su representada.

Alegó que la facultad de suspender cautelarmente del cargo a los jueces esta reservada, por el artículo 61 del Código de Ética del Juez Venezolano y la Jueza Venezolana, al Tribunal Disciplinario Judicial

Que la sentencia Nº 516 del 7 de mayo de 2013 dictada por la Sala Constitucional del Tribunal Supremo de Justicia faculta a la Comisión Judicial del Tribunal Supremo de Justicia para destituir o suspender únicamente a los jueces temporales, ocasionales o accidentales, toda vez que la referida sentencia ratifica la estabilidad de los jueces de carrera y que la aplicación de su régimen disciplinario corresponde al Tribunal Disciplinario Judicial

Asimismo, alega que el referido acto violenta los ordinales 1º, 2º, 3º y 4º del artículo 49 de la Constitución de la República Bolivariana de Venezuela al vulnerar el debido proceso, toda vez que -en su criterio- el referido acto administrativo, fue dictado sin procedimiento previo, establece un lapso de suspensión indeterminado y carece de un hecho constitutivo de falta que le sirva de fundamento, por lo cual -en su opinión- carece de tipicidad. Por ello, en criterio del referido abogado, es que la Comisión Judicial del Tribunal Supremo de Justicia incurrió en desviación de poder, de acuerdo al criterio sostenido por la Sala Político Administrativa del Tribunal Supremo de Justicia en sentencia Nº 60 del seis (6) de febrero de 2001

Que de acuerdo al artículo 79 del Reglamento Interno del Tribunal Supremo de Justicia, la Comisión Judicial del Tribunal Supremo de Justicia no tiene competencia para la destitución de jueces titulares

Que a pesar de que la inspección integral efectuada por la Inspectoría General de Tribunales fue dirigida a un órgano colegiado, nunca se incluyó en ella a los otros miembros de la Corte Superior, situación que constituye una violación del derecho a la igualdad

El auto que ordena el inicio de la investigación es impreciso y vulnera el derecho a la defensa, carece de un hecho constitutivo y atenta contra la estabilidad de los jueces de carrera

Que tanto la Inspectoría General de Tribunales como la Oficina de Sustanciación desconocieron los alegatos de defensa presentados por su representada por cuanto tanto el auto conclusivo dictado por la Inspectoría General de Tribunales y el informe de la Oficina de Sustanciación señalan que la jueza denunciada no ha ejercido su derecho a la defensa

Alegó que nunca estuvo a cargo de la Corte Superior, es decir, fue solamente integrante, más no presidente. Asimismo, precisó que solamente actuó como ponente en los ilícitos números 3 y 4, y en los ilícitos 1 y 2 solamente a título de integrante

Con respecto al ilícito número 1, alegó la jueza denunciada que actuó como integrante de la Corte y no como ponente. Argumentó que la Inspectoría General de Tribunales incurrió en falso supuesto, por cuanto en la causa judicial investigada, el juez de primera instancia había sido recusado, por lo que no podía dar respuesta a la aclaratoria y a la ampliación que le fueron solicitadas

Precisó que cuando el expediente había llegado a conocimiento de la Corte Superior, la causa en primera instancia aún estaba en trámite, por lo cual no podía haber pronunciamiento en alzada sobre tal particular. Alegó que la

Sala Constitucional del Tribunal Supremo de Justicia no estableció que su sentencia hubiera sido inmotivada, ni que fuera un acto írrito

Alegó que todos los ilícitos imputados por la Inspectoría General de Tribunales se refieren a aspectos jurisdiccionales y que para que el referido órgano de investigación pueda entrar a analizarlos, se requiere -en criterio de la jueza denunciada- que previamente se determine la idoneidad del juez investigado

Que la Sala Constitucional del Tribunal Supremo de Justicia no aplicó el artículo 27 de la Ley de Amparo sobre Derechos y Garantías Constitucionales, por cuanto no remitió al órgano disciplinario correspondiente copia certificada de decisión alguna que considerara que la Corte Superior había presuntamente violado el orden constitucional

Con respecto al segundo ilícito, referido al caso de adopción de los señores Coquino la Inspectoría General de Tribunales no tomó en consideración lo establecido por la Sala Constitucional del Tribunal Supremo de Justicia y por la doctrina en relación con el vicio de inmotivación, el cual se da, en criterio de la jueza denunciada, cuando no se han esgrimido argumentos para fundamentar el dispositivo, cuando son contradictorios entre sí y se anulan, cuando son tan largos que no permiten comprender las razones de la sentencia, o cuando no hay relación entre la motivación y el dispositivo de la sentencia

En ese procedimiento de adopción, la jueza de primera instancia no dejó transcurrir los 6 meses de período de prueba exigidos por la Ley Orgánica de Protección de Niños, Niñas y Adolescentes, para decretar la adopción. Posteriormente, la Corte Superior, en vista de que la jueza de primera instancia violentó el análisis probatorio, anuló la sentencia de primera instancia de conformidad con lo dispuesto en el artículo 209 del Código de Procedimiento Civil, y entró a conocer el fondo del asunto como un tribunal de primera instancia, dictando una sentencia de fondo, aclarando que ya se habían cumplido los 8 meses que establece el artículo 422 de la Ley Orgánica de Protección de Niños, Niñas y Adolescentes

En cuanto al cuarto ilícito relativo a la ignorancia y error inexcusable, alegó la jueza denunciada que la facultad de declarar la ignorancia y error inexcusable le corresponde al Tribunal Supremo de Justicia y no a la Inspectoría General de Tribunales. Alegó la jueza denunciada, que en ese proceso, el niño tenía problemas físicos y mentales, la mamá tenía problemas mentales, y en la audiencia estuvieron presentes todas esas personas, el DEF del niño, la defensa pública, el fiscal del Ministerio Público. Asimismo, alegó que la situación fue producto de un error material que nadie percibió en el acto del proceso, pero que, a todo evento, la Sala Constitucional del Tribunal Supremo de Justicia observó que igualmente se ejecutó la sentencia que había sido objeto de apelación

Sobre haber oído en ambos efectos un recurso de apelación contra decisiones en materia de amparo, alegó la jueza que eso forma parte de la actividad administrativa del presidente de la Corte Superior. Asimismo, alega que la Inspectoría General de Tribunales trasladó vicios de las sentencias, cometidos en el ejercicio de la función jurisdiccional, y los imputa como ilícitos disciplinarios

También alegó a los demás integrantes de la Corte Superior no fueron investigados ni llamados al presente proceso, aun cuando los demás integrantes también participaron en la emisión de los actos procesales investigados

### IV
### DE LA COMPETENCIA DE TRIBUNAL DISCIPLINARIO JUDICIAL

Corresponde a este Tribunal Disciplinario Judicial, en primer lugar, pronunciarse acerca de su competencia para el conocimiento del presente proceso disciplinario, en los términos siguientes:

La Constitución de la República Bolivariana de Venezuela, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 36.860 del treinta (30) de diciembre de 1999, es el primero de los veintiséis (26) textos constitucionales han regido en Venezuela desde su independencia de España, que incorpora la disciplina del Poder Judicial como un ejercicio encomendado a un órgano jurisdiccional y no a un órgano administrativo.

En este sentido, la Constitución de 1961 establecía que la dirección y vigilancia de los tribunales estaba a cargo de un órgano administrativo distinto e independiente al Máximo Tribunal de la República, conocido como Consejo de la Judicatura

No obstante, con la entrada en vigencia de la Constitución de la República Bolivariana de Venezuela se modificó el sistema anterior, tal como lo establece su artículo 267

_____
"Artículo 267. Corresponde al Tribunal Supremo de Justicia la dirección, el gobierno y la administración del Poder Judicial, la inspección y vigilancia de los

417.608          GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA          Lunes 22 de diciembre de 2014

tribunales de la República de las Defensorías Públicas, igualmente, le corresponde la elaboración y ejecución de su propio presupuesto.

La jurisdicción disciplinaria judicial estará a cargo de los tribunales disciplinarios que determine la ley.

El régimen disciplinario de los magistrados o magistradas y jueces o juezas estará fundamentado en el Código de Ética del Juez Venezolano o Jueza Venezolana, que dictará la Asamblea Nacional. El procedimiento disciplinario será público, oral y breve, conforme al debido proceso, en los términos y condiciones que establezca la ley. Para el ejercicio de estas atribuciones el Tribunal Supremo en pleno creará una Dirección Ejecutiva de la Magistratura, con sus oficinas regionales"

De conformidad con el artículo anterior, se esconden dos potestades, una que corresponde al Tribunal Supremo de Justicia, por órgano de la Dirección Ejecutiva de la Magistratura, para la dirección, gobierno, administración, inspección, vigilancia y autonomía presupuestaria del Poder Judicial, y la otra potestad que es de índole disciplinaria, que corresponde únicamente a los tribunales disciplinarios que se crearen mediante la respectiva ley. Encontramos de este modo, una organización que ejerce las potestades administrativas del Tribunal Supremo de Justicia y por otro lado una organización jurisdiccional que ejerce funciones disciplinarias.

Con fundamento en lo anterior, es intención de la Constitución de la República Bolivariana de Venezuela de 1999, la separación de la organicidad del Tribunal Supremo de Justicia de los órganos encargados de la disciplina judicial, creando de este modo una organización separada, bajo el nombre de Jurisdicción Disciplinaria Judicial, delegando en la Ley la creación de los tribunales encargados que conformarían la referida organización.

Ahora bien, la competencia legal para el ejercicio de la potestad disciplinaria en el Poder Judicial, la encontramos regulada en el artículo 39 del Código de Ética del Juez Venezolano y la Jueza Venezolana:

"Artículo 39. Los órganos que en el ejercicio de la jurisdicción tienen la competencia disciplinaria sobre los jueces y juezas de la República, son el Tribunal Disciplinario Judicial y la Corte Disciplinaria Judicial; los cuales conocerán y aplicarán en primera y segunda instancia respectivamente, los procedimientos disciplinarios por infracción a los principios y deberes contenidos en este Código. El Tribunal Disciplinario Judicial contará con la Secretaría correspondiente y los Servicios de Alguacilazgo"

Como se desprende del artículo en comentarios, el Tribunal Disciplinario Judicial ostenta la competencia de aplicar el régimen disciplinario, lo cual se traduce en la salvaguarda de los principios orientadores y deberes en materia de ética previstos en el señalado código, imponiendo, ante su incumplimiento y previo proceso judicial, las sanciones disciplinarias previstas en los artículos 31, 32 y 33 eiusdem.

Además de lo anterior, es necesario destacar que la potestad jurisdiccional disciplinaria que detentan tanto este Tribunal Disciplinario Judicial como la Corte Disciplinaria Judicial fue delimitada por la sentencia N° 516 del siete (7) de mayo de 2013 dictada por la Sala Constitucional del Tribunal Supremo de Justicia, la cual excluyó del régimen disciplinario previsto en el Código de Ética a los Jueces que no forman parte de la carrera judicial. En efecto la referida sentencia estableció lo siguiente:

Siendo ello así, aún cuando efectivamente el Código de Ética del Juez Venezolano y la Jueza Venezolana fue efectivamente aplicable a todos los jueces -indistintamente de su condición como primarios o de carrera- jurisdiccional, no obstante, el procedimiento para la sanción que de tal Código contempla parecería haber negar aplicación en la defensa, no ser extensible a los Jueces y juezas temporales, ocasionales, accidentales o provisorios, ya que en tal proceso en una garantía de la inamovilidad para la carrera judicial y se sostiene la condición de juez o jueza de carrera a se gana el concurso de oposición público.

Por tanto a fin de no contradecir lo contenido normativo en el artículo 255 de la Constitución de la República Bolivariana de Venezuela, la Sala con carácter vinculante nuevos dicta el presente juicio, la relevancia que hace el artículo 2 del Código de Ética del Juez Venezolano y la Jueza Venezolana a los jueces y juezas temporales ocasionales, accidentales o provisorios y que permite la extensión a esta categoría de jueces y juezas, del régimen disciplinario contemplado en los artículos 51 y siguientes del mencionado Código por cual no solamente de jueces o juezas que hayan ingresado a la carrera judicial correspondiéndole a la Comisión Judicial la competencia para sancionarlos y excluirla de la función jurisdiccional, visto que la tabla en un órgano permanente colegiado y delegado de la Sala Plena de este Tribunal Supremo de Justicia, al que compete coordinar las políticas actividades y desempeño de la Dirección Ejecutiva de la Magistratura, la Escuela Nacional de la Magistratura y la Inspectoría General de Tribunales (artículo 73 del Reglamento Interno del Tribunal Supremo de Justicia), así como también la consideración de la Sala Plena las prácticas de reorganización del Poder Judicial y sus normativa (artículo 79 eiusdem). Así se decide.

De lo expuesto, se colige que este Tribunal Disciplinario Judicial es competente para sustanciar y decidir los procesos disciplinarios que tengan por objeto hechos presuntamente constitutivos de ilícitos disciplinarios, de conformidad con lo establecido en los artículos 31, 32 y 33 del Código de Ética del Juez Venezolano y la Jueza Venezolana, y que hayan sido aparentemente cometidos por jueces que formen parte de la carrera judicial. Así se establece.

En el presente caso, al ser la ciudadana Edy Siboney Calderón Suescún una jueza perteneciente a la carrera judicial, queda claramente establecida la competencia de este Tribunal Disciplinario para aplicar en primera instancia los correspondientes procedimientos disciplinarios. Así se decide.

V
DE LA AUDIENCIA

El diecisiete (17) de septiembre de 2013 tuvo lugar la celebración de la audiencia en la cual las partes expusieron sus alegatos, se dio por finalizado el debate, y se fijó como oportunidad para dar lectura a la decisión que se

adoptará en el presente proceso disciplinario, el veinticuatro (24) de septiembre de 2013 a la una y treinta minutos de la tarde (1:30 p.m.), tal como consta en el acta cursante en el presente expediente disciplinario.

El veinticuatro (24) de septiembre de 2013, vista la complejidad del caso, se difirió la oportunidad para dictar el pronunciamiento decisorio en la presente causa y se fijó como nueva oportunidad el ocho (8) de octubre de 2013, a la una y treinta minutos de la tarde (1:30 p.m.)

El ocho (8) de octubre de 2013 tuvo lugar la lectura de la decisión adoptada en el presente proceso disciplinario, correspondiendo en esta oportunidad dictar el texto íntegro de la decisión, en cumplimiento del artículo 82 del Código de Ética del Juez Venezolano y la Jueza Venezolana, cuya parte dispositiva es del siguiente tenor

"PRIMERO: se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA a la ciudadana Edy Siboney Calderón Suescún, titular de la cédula de identidad N° V-5.675.425, por actuaciones como Jueza integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, de haber incurrido en el ilícito disciplinario previsto en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos, por subsestablecerse haber incurrido el deber de motivar las sentencias en la causa judicial N° AP51-O-2007-015381

SEGUNDO: se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA a la ciudadana Edy Siboney Calderón Suescún de haber incurrido en el ilícito disciplinario previsto en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos, por subsestablecerse haber incumplido el deber de motivar las sentencias en la causa judicial N° AP51-R-2007-012830

TERCERO: se DECLARA la RESPONSABILIDAD DISCIPLINARIA de la ciudadana Edy Siboney Calderón Suescún por la comisión del ilícito disciplinario previsto en el numeral 7 del artículo 37 de la Ley Orgánica del Consejo de la Judicatura, vigente para el momento en que ocurrieron los hechos, por haber sido en ambos efectos un recurso de apelación interpuesto contra la sentencia dictada en amparo dictada el veintiocho (28) de mayo de 2009 en la causa judicial N° AP51-O-2009-007212, actualmente tipificado en el numeral 6 del artículo 31 del Código de Ética del Juez Venezolano y la Jueza Venezolana y, en consecuencia, se le impone la sanción de AMONESTACIÓN ESCRITA

CUARTO: se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA a la ciudadana Edy Siboney Calderón Suescún del ilícito previsto en el numeral 16 del artículo 40 de la Ley de Carrera Judicial vigente para la época en que ocurrieron los hechos, el cual se ha imputado por la Inspectoría General de Tribunales por pretender que se celebrara la audiencia constitucional sin que los terceros involucrados contaran con la asistencia técnica debida en la causa judicial N° AP51-O-2009-007212

QUINTO: se ORDENA remitir copia certificada de la presente decisión a la Inspectoría General de Tribunales, a los fines de que investigue, si lo considera procedente, la actuación del Juez Presidente de la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional en el expediente judicial N° AP51-O-2009-007212

SEXTO: se LEVANTA la medida de suspensión del cargo sin goce de sueldo dictada por la Comisión Judicial del Tribunal Supremo de Justicia contra la ciudadana Edy Siboney Calderón Suescún y, en consecuencia, se ORDENA a la COMISIÓN JUDICIAL DEL TRIBUNAL SUPREMO DE JUSTICIA la REINCORPORACIÓN de la ciudadana Edy Siboney Calderón Suescún al cargo que ocupaba en el Poder Judicial para la fecha de su suspensión u otro de igual jerarquía y remuneración económica

Se hace de conocimiento de las partes del dispositivo de la decisión de conformidad con el artículo 81, último aparte, del Código de Ética del Juez Venezolano y la Jueza Venezolana igualmente la parte dispositiva del que las partes que sanciona será ejecutada una vez que adquiera el carácter de definitivamente firme. Dada, firmada y sellada en la sede del Tribunal Disciplinario Judicial, en la ciudad capital de la República Bolivariana de Venezuela, a los ocho (8) días del mes de octubre de dos mil trece (2013). Años 203° de la Independencia y 154° de la Federación"

VI
CONSIDERACIONES PARA DECIDIR

VI.1 Alega el apoderado judicial de la jueza denunciada, como punto previo la nulidad del acto de la Comisión Judicial del Tribunal Supremo de Justicia que la suspendió sin goce de sueldo del ejercicio de su cargo de jueza de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas, por cuanto, en criterio del referido abogado, el referido órgano del Tribunal Supremo de Justicia no tenía competencia para suspender del cargo sin el goce de los sueldos a los jueces pertenecientes a la carrera judicial

Por su parte, alegó la Inspectoría General de Tribunales, que la nulidad del acto dictado por la Comisión Judicial del Tribunal Supremo de Justicia no puede ser objeto del presente proceso disciplinario judicial, pues, en su opinión, tuvo que haber sido discutido mediante la interposición de un recurso ante la Comisión Judicial del Tribunal Supremo de Justicia en la oportunidad legal correspondiente y que el presente proceso tiene por objeto la determinación de responsabilidad disciplinaria

Observa este Tribunal Disciplinario Judicial, como punto previo, que, en efecto, el acto dictado por la Comisión Judicial del Tribunal Supremo de Justicia constituye un acto emanado de un órgano administrativo, cuya conformidad a derecho solo puede ser revisada por el mismo órgano que lo produjo o por los órganos que forman parte de la jurisdicción contencioso administrativa, en los términos previstos en el artículo 259 de la Constitución de la República Bolivariana de Venezuela

Ciertamente, el acto cuya revocatoria se solicita fue dictado por la Comisión Judicial del Tribunal Supremo de Justicia, por lo cual se hace necesario esclarecer la naturaleza jurídica del referido órgano, a los fines de

determinar si este Tribunal Disciplinario Judicial está facultado por la Ley para revocar el referido acto

La Comisión Judicial del Tribunal Supremo de Justicia es un órgano integrado por un magistrado de cada Sala del Tribunal Supremo de Justicia y dependiente directamente de él, que actuaría también por delegación en todas aquellas funciones administrativas de control y supervisión conferidas, así como cualquier otra establecida en la Normativa especial y que, por supuesto, no involucre el ejercicio de la función jurisdiccional que, con base en el principio de separación de poderes, corresponde de forma exclusiva y excluyente al Tribunal Supremo de Justicia y al resto de los tribunales de la República. De esa manera, es claro que la Comisión Judicial del Tribunal Supremo de Justicia es un órgano de carácter administrativo, así como los actos que de ella emanan, pues "si bien se mantiene inserta dentro del Poder Judicial su naturaleza la califica como un órgano que cumple una actividad esencialmente administrativa, pues aunque depende de forma directa del Tribunal Supremo de Justicia, es evidente que sus funciones se encuentran alejadas del campo jurisdiccional y sólo se materializan en el ámbito administrativo". (SPA-TSJ 28/04/2011, Sentencia N° 505)

En ese sentido, es necesario destacar que las medidas de suspensión de los jueces, sea de manera cautelar o de carácter sancionatorio, son de estricta naturaleza disciplinaria, tal como lo ha establecido la Sala Político Administrativa del Tribunal Supremo de Justicia en sus sentencias Nros. 659, 1760 y 2581 del 24/03/00, 27/07/00 y 15/11/05, respectivamente

No obstante el artículo 259 de la Constitución de la República Bolivariana de Venezuela establece que " Los órganos de la jurisdicción contencioso administrativa son competentes para anular los actos administrativos generales o individuales contrarios a derecho, incluso por desviación de poder, ", de la cual se desprende que son los Tribunales con competencia en la materia contencioso administrativa los órganos facultados por la Constitución para desvirtuar la presunción de legalidad de que goza todo acto administrativo, así como analizar los requisitos que debe cumplir todo acto administrativo, para que con ello se pueda, de ser procedente, anular actos administrativos contrarios a derecho.

Por ende, siendo las medidas de suspensión del cargo sin goce de sueldo dictadas por la Comisión Judicial del Tribunal Supremo de Justicia actos administrativos, únicamente pueden ser anuladas por el mismo órgano que los dicta o por la Sala Político Administrativa del Tribunal Supremo de Justicia

De lo anterior se colige la incompetencia de este Tribunal Disciplinario Judicial para conocer de pretensiones de nulidad de actos dictados por la Comisión Judicial del Tribunal Supremo de Justicia. En consecuencia este órgano jurisdiccional se declara incompetente para conocer de la solicitud de nulidad de la resolución 2010-0147 del veintinueve (29) de noviembre de 2010, mediante la cual la Comisión Judicial del Tribunal Supremo de Justicia suspendió de su cargo sin el goce de sueldo, a la ciudadana Edy Siboney Calderón Suescún del cargo que ostentaba en la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional. Así se decide

VI.2 Además de lo anterior, la parte denunciada alegó la violación del derecho a la igualdad tanto en la investigación como en el presente proceso, por cuanto, en su criterio, los demás miembros de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional también debieron ser investigados y haber participado en el presente proceso, por suscribir las decisiones por las cuales fue imputada

Al respecto, alegó la Inspectoría General de Tribunales que los demás jueces integrantes de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional pueden ser investigados y juzgados en procesos distintos e independientes del presente proceso jurisdiccional, por lo cual, un criterio de la 'representante del referido órgano de investigación, no existiría tal violación del derecho a la igualdad

Como segundo punto previo, observa este Tribunal Disciplinario Judicial que los actos procesales que son objeto del presente proceso fueron realizados por las ciudadanas Leticia Morillo Mores, Zeludeth Sedek de Benshimol, Yunamith Y. Medina y Enoe Carrillo Castellanos, quienes integraron la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional en la oportunidad en la cual fueron dictadas las distintas decisiones por las cuales fue imputada en este proceso jurisdiccional la ciudadana Edy Siboney Calderón Suescún

No obstante, es necesario destacar que, aunque los actos jurídicos objeto del presente proceso hayan sido efectuados por una pluralidad de jueces, todos integrantes de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional es necesario precisar que la responsabilidad disciplinaria es personalísima, de conformidad con lo dispuesto en el artículo 255 de la Constitución de la República Bolivariana de Venezuela, por lo cual nada obsta para que cada juez sea investigado y procesado individualmente. En efecto, el artículo 255 de la Constitución establece lo siguiente.

"Artículo 255

El ingreso a la carrera judicial y el ascenso de los jueces o juezas se hará por concursos de oposición públicos que aseguren la idoneidad y excelencia de los o las participantes y serán seleccionados o seleccionadas por los jurados de los circuitos judiciales, en la forma y condiciones que establezca la ley. El nombramiento y juramento de los jueces o juezas corresponde al Tribunal Supremo de Justicia. La ley garantizará la participación ciudadana en el procedimiento de selección y designación de los jueces o juezas. Los jueces o juezas sólo podrán ser removidos o removidas o suspendidos o suspendidas de sus cargos mediante los procedimientos expresamente previstos en la ley.

La ley propenderá a la profesionalización de los jueces o juezas y las universidades colaborarán en este propósito, organizando en los estudios universitarios de derecho la especialización judicial correspondiente.

Los jueces o juezas son personalmente responsables, en los términos que determine la ley, por error, retardo u omisiones injustificadas, por la inobservancia sustancial de las normas procesales, por denegación, parcialidad y por los delitos de cohecho y prevaricación en que incurran en el desempeño de sus funciones"

Del último aparte de la norma transcrita se desprende que la responsabilidad disciplinaria es personal, por lo cual, cada juez de un tribunal colegiado se encuentra en una especial y singular situación de hecho frente al ilícito imputado, pudiendo resultar que cada uno, se encuentre en una situación jurídica totalmente distinta a la de los demás

Además de lo anterior, es de destacar lo establecido por la Sala Constitucional del Tribunal Supremo de Justicia, mediante sentencia N° 369 dictada el veintisiete (27) de marzo de 2001, en la cual manifestó lo siguiente

"Para que los consorcios existan y surjan varios sujetos (plurales) que litigan en la misma posición de una de las partes, es necesario

1) Que la ley los contemple y ordene la actuación conjunta de las personas como legitimados activos o pasivos (litis consorcio necesario), o cuando por existir una relación sustancial única que interesa a varios sujetos, en indispensable que esa resuelta de modo uniforme para todos

2) Que varias personas puedan ejercer contra una misma persona (o varios, mismo hecho no por actos diferentes), el mismo derecho que origina a todos

a) De que se trate de un mismo hecho, productor de efectos jurídicos (civiles, penales, etc) atribuible a todos. Un mismo hecho sirve de base a la pretensión

b) Que se trata de un derecho o una obligación o prestación comprenda entre varios que deriva de un mismo título (jurídico jurídico del cual deriva el derecho)

c) Que se trate de personas que se encuentran en idéntica situación jurídica con relación al resorte de la causa, por lo que cualquier acción sobre el afecta a todos

Para que pueda existir los consorcios, es un requisito sine qua non, que exista un nexo común entre quienes conforman una misma posición procesal; dicho nexo surge de los supuestos 1 y 2 reseñados."

De lo anterior se desprende, que aquellos procesos que tengan por objeto un mismo hecho atribuible a una pluralidad de sujetos, pueden tener como parte demandada una pluralidad de sujetos, aunque no de manera forzosa o necesaria, sino de manera facultativa, por ello la utilización del 'poder', pues no es imperativo para la resolución del fondo del asunto, que la relación jurídico procesal se conforme con todos los sujetos a quienes sea imputable el hecho objeto del proceso

Corolario de lo anterior, es que en la presente causa, que inició en virtud del acto conclusivo presentado por la Inspectoría General de Tribunales el nueve (9) de diciembre de 2010, por actuaciones realizadas por una la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, que es un órgano jurisdiccional colegiado, no fue violado el derecho a la igualdad, pues, al ser personal la responsabilidad disciplinaria, la Inspectoría General de Tribunales podía incoar y sustanciar el proceso únicamente contra la jueza sometida a procedimiento. Por lo expuesto, se desecha el alegato de violación de la igualdad, alegado por la parte denunciada. Así se decide

En relación con la presunta responsabilidad disciplinaria de la ciudadana Edy Siboney Calderón Suescún, este Tribunal Disciplinario Judicial realizará las siguientes consideraciones

VI.3 Se observa que la Inspectoría General de Tribunales solicita la destitución de la ciudadana Edy Siboney Calderón Suescún, por aparentemente haber incurrido en infracción de los deberes que le establecen la Constitución y las leyes, al haber dictado, como integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, una decisión carente de motivación, en la causa judicial N° AP51-O-2007-015381, contentiva de una acción de amparo constitucional

interpuesta por la ciudadana Mercedes Xiomara Silva, contra actuaciones y omisiones judiciales de la Jueza Unipersonal N° IX de la Sala de Juicio del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas, en el procedimiento de inquisición de paternidad iniciado por la referida ciudadana a favor de su hijo, falta disciplinaria prevista en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos

Al respecto, manifestó el referido órgano de investigación que la jueza denunciada, como integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, omitió pronunciarse sobre el alegato de falta de pronunciamiento en la que supuestamente había incurrido el juez de primera instancia con respecto a las solicitudes de aclaratoria y ampliación que le habían sido presentadas. Asimismo, agregó que la Sala Constitucional del Tribunal Supremo de Justicia anuló la sentencia dictada por la jueza denunciada por haber incurrido en el vicio de inmotivación.

En tal sentido, alegó la jueza denunciada que incurrió en inmotivación y que en la referida sentencia objeto de investigación el manifestó las razones por las cuales consideró que no había existido omisión de pronunciamiento por parte del juez de primera instancia.

Observa este Tribunal Disciplinario Judicial, que la sentencia dictada el trece (13) de septiembre de 2007 en la causa judicial N° AP51-O-2007-015381 por la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, de la cual es integrante la jueza denunciada, fue anulada por la Sala Constitucional del Tribunal Supremo de Justicia por haber incurrido en el vicio de inmotivación mediante sentencia N° 771 del ocho (8) de mayo de 2008, circunstancia que hace necesario a los fines de determinar si existe un ilícito disciplinario, analizar si el supuesto de inmotivación en el que incurrió la referida Corte Superior es absoluta o, por el contrario, se trata de los demás casos de inmotivación que han sido desarrollados por la doctrina y por la jurisprudencia, a saber: a) Que las razones dadas por el sentenciador no guarden relación alguna con la acción o la excepción y deben tenerse por inexistentes jurídicamente; b) Que los motivos se deshayan las unos a los otros por contradicciones graves e irreconciliables y, c) que todos los motivos sean falsos.

Al respecto, se evidencia de la lectura de la decisión suscrita por la jueza denunciada que la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional si presentó argumentos sobre la falta de pronunciamiento que alegó el demandante del amparo en relación con las solicitudes de aclaratoria y ampliación interpuestas ante el juez de primera instancia presunto agraviante, y los argumentos que fundamentaron esa decisión están contenidos en el texto del referido fallo judicial. Ello fue advertido por la Sala Constitucional del Tribunal Supremo de Justicia, que al respecto señaló que "obvió la denuncia respecto a que no le sido provistas las solicitudes de aclaratoria y ampliación del falta que solicitó la parte actora, pese a que indicó que no tenía que ser si juez que emitió el acto decisorio quien debía pronunciarse sobre las referidas solicitudes de aclaratoria y ampliación".

De lo expuesto se colige que el máximo Tribunal de la República Bolivariana de Venezuela conoció los motivos por los cuales la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas, de la cual es integrante la jueza denunciada, desechó el alegato de falta de pronunciamiento del juez de primera instancia en relación con las solicitudes de ampliación y aclaratorias que le habían sido presentadas, sin embargo, los consideró insuficientes para descartar el referido argumento.

Sobre el vicio de inmotivación de las sentencias y la posible responsabilidad disciplinaria que podría generar ya este Tribunal Disciplinario Judicial se ha pronunciado con anterioridad, en el expediente N° AP51-D-2011-000078, en sentencia dictada el veintiocho (28) de febrero de 2013, en la cual manifestó que

Ahora bien, siendo que la imputación presentada por la Inspectoría versa única de la sentencia proferida por la jueza el 27 de septiembre de 2007 en la causa judicial N° 2-M-1526-05, específicamente en relación al pronunciamiento debe advertir este Tribunal Disciplinario Judicial que la sana existencia de tales errores en una decisión judicial no prescindir por la responsabilidad disciplinaria del sentenciador que la dictó, salvo que sea de una magnitud y referación tal que demuestren la indiscreta del juez que esta para el ejercicio del cargo.

En este sentido, podría ser de una magnitud consideradora la ausencia absoluta o manifiesta de motivación de una sentencia puede resultante a más lazos leves del sentenciador se halle incurso en la demora y contraria a los criterios imperantes, si juez como administrador de justicia circunstancia ésta que o podría devenir en la configuración de responsabilidad disciplinaria no así una motivación exigua o insuficiente por parte del juzgador que, en todo

caso, puede ser enervada a través de la interposición de los recursos procesales dispuestos en el Ordenamiento Jurídico para tal fin.

Sobre este aspecto, conviene citar parcialmente lo explanado por el autor español Ramón Finto Torres y otros en su libro titulado "Ley Orgánica del Poder Judicial comentada con jurisprudencia sistematizada y concordancias", página 654, lo referente a la acogida y manifiesta falta de motivación en los siguientes términos

(...) el precepto se interpreta en atención que la falta de motivación del artículo 417.15 no se corresponde con el vicio o defecto suficiente para fundar la anulación de una sentencia. No estamos ante un concepto de técnica procesal referido al

silencio, sobre alguna pretensión, es decir, a la mera incongruencia omisiva. Cuando se habla de servicio y manifiesta falta de motivación se está contemplando otra cuestión cuantitativamente distinto: la radical ausencia de toda fundamentación. Aunque entendida, no sólo en sentido formal sino sustancial. O sea, la que se produce cuando en el texto de una sentencia o de una auto, con independencia de su extensión, no se encuentra la razón decisoria que conduce al fallo o que lleva a establecer los presupuestos de hecho que fuera considerada relevante. En otras palabras, la que se da cuando no cuente con la motivación que debe contener la que haya causa de decisión desmotivada ante el juez. Por tanto, la conducta castigada en el artículo 417.15 de la Ley Orgánica del Poder Judicial consiste en no ofrecer ninguna explicación de por qué se resuelve de un modo y no de otro o parte de los resultados del proceso, lo no refiere al calificativo absoluta. Esta nota distintiva, sin embargo, no basta. La falta de motivación además de absoluta, debe ser manifiesta. Este término encierra el anterior pues significa que es ostensible que la resolución no ofrece las claves de la decisión en la que una culmina, que no depende de operaciones interpretativas adicionales. Para justificar la actuación sancionadora por esa relación muy grave con que una resolución que la haya no es suficiente con que sea restricción caracaza absoluta y manifiestamente de motivación haga falta, le —como aquí es recumbre que en sentencia firme se aprecie tal defecto esencial (...)"(resaltado y subrayado nuestro)

De lo ces parcialmente ilustrada, se desprende que la falta de motivación a diferencia de la motivación exigua o incongruencia omisiva, consiste en la ausencia total el decir, omisión de explicación alguna y además ostensible, esto es, que no depende de operaciones interpretativas adicionales se advierte de que se llevaron al juzgador a dictar su resolución y por tanto, a decidir de una determinada manera respecto al conflicto sometido a su conocimiento.

De lo anterior se desprende, que son sustancialmente distintas la inmotivación absoluta y los demás casos de inmotivación, pues, la inmotivación absoluta debe ser, en primer término, evidente, y con ello se quiere decir, que no puede depender de criterios de interpretación, sino que sea patente. Además, debe ser totalmente inexistente, que haya dejado en evidencia la conducta dolosa o culposa del juzgador que no realizó ningún proceso intelectual destinado a motivar la sentencia, incurriendo en arbitrariedad judicial.

En efecto, tal como lo ha establecido la jurisprudencia de nuestro máximo Tribunal (vid. Sentencia N° 2 del doce (12) de enero de 2011), la motivación de las sentencias constituye un requisito formal que obra en contra de la arbitrariedad, que se traduce en la existencia del deber de los jueces de motivar todas sus decisiones, permitiendo, por una parte, el control jurisdiccional por parte de los tribunales con competencia para conocer de los recursos procesales previstos en la ley, y de otra parte, el control social que ejerce todos los ciudadanos de la República Bolivariana de Venezuela.

En cuanto a la responsabilidad disciplinaria en la que podrían incurrir los jueces por haber incumplido el deber de motivar las sentencias, es de destacar que solamente cuando el juez haya obviado totalmente la expresión de los motivos que justifican su decisión o, cuando los motivos no haya expresado en la sentencia no tengan ningún tipo de relación con la materia decisoria circunstancias estas que podrán ser observadas directamente por este Tribunal Disciplinario Judicial, es que los jueces podrán ser responsables disciplinariamente por haber incurrido en arbitrariedad judicial, conducta que se podría subsumir en lo establecido en el numeral 14 del artículo 33 del Código de Ética del Juez Venezolano y la Jueza Venezolana. Así se establece.

En el presente caso, es necesario destacar que aunque la sentencia dictada el trece (13) de septiembre de 2007 en la causa judicial N° AP51-O-2007-015381 por la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas, de la cual es integrante la jueza denunciada, fue anulada por nuestro máximo Tribunal por considerarla inmotivada, es lo cierto, que riela en los folios 195 al 212 de la pieza 7 del expediente de la presente causa judicial la referida sentencia, en la que se observa que sí contiene una motivación que, aunque fue considerada insuficiente por la Sala Constitucional del Tribunal Supremo de Justicia para considerar válida la sentencia, constituye un esfuerzo intelectual del juzgador para justificar su decisión y no actuar de manera arbitraria, circunstancia esta que excluye cualquier tipo de responsabilidad disciplinaria. Por este motivo, este Tribunal Disciplinario Judicial determina que la jueza denunciada no infringió el deber que tienen los jueces de motivar sus sentencias. En consecuencia, se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA a la ciudadana Edy Siboney Calderón Suescún de haber incurrido en el ilícito disciplinario previsto en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos, por supuestamente haber incumplido el deber de motivar las sentencias en la causa judicial N° AP51-O-2007-015381 como integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y

Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas. Así se decide.

VI.4 Además de lo anterior, también fue imputada a la ciudadana Edy Siboney Calderón Suescún el supuestamente haber infringido los deberes que le establecen la Constitución y las leyes, al haber dictado, como integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas, una decisión inmotivada en la causa judicial N° AP51-R-2007-022820, del veinticinco (25) de febrero de 2008, en la que se declaró sin lugar la apelación interpuesta por el Ministerio Público y anuló la recurrida por considerar que no valoró las probanzas aportadas al proceso, falta disciplinaria establecida en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos.

Sobre el particular, alegó la Inspectoría General de Tribunales que la referida jueza incurrió en inmotivación por haber violado el período de prueba de 6 meses previsto en el artículo 422 de la Ley Orgánica de Protección de Niños, Niñas y Adolescentes aplicable ratione temporis, exigido para decretar adopciones, y que la Sala de Casación Social anuló la referida sentencia.

En su defensa, alegó la jueza denunciada que en la oportunidad en la cual se decidió el fondo de la causa, ya había transcurrido el lapso de 6 meses, que no incurrió en inmotivación y que no fue por ese motivo que fue anulada la sentencia.

Observa este órgano jurisdiccional que, efectivamente, la sentencia objeto de la presente imputación fue anulada por la Sala de Casación Social del Tribunal Supremo de Justicia mediante sentencia N° 1669 del treinta (30) de octubre de 2008, pero no por haber incurrido en inmotivación, sino por incurrir en el motivo de casación por reposición no decretada, al haber convalidado el vicio en el que incurrió el juez de primera instancia al no dejar transcurrir íntegramente el período de prueba de 6 meses, decisión a la que llegó la jueza denunciada por tener un criterio jurídico distinto al del máximo Tribunal, pero que sin dudas forma parte de la autonomía judicial por pertenecer a la esfera de la apreciación de los hechos, la valoración de las pruebas y la aplicación de la consecuencia jurídica que prevé la Ley.

Asimismo se evidencia que, de la lectura de la sentencia dictada por la jueza denunciada, la cual riela a los folios 138 al 162 de la pieza 8 del expediente de la presente causa judicial, se pueden conocer, claramente, los motivos que la fundamentan, por lo cual la jueza denunciada, en el presente caso, no infringió el deber que tiene de motivar las decisiones, de conformidad con la motivación expresada en el punto VI.3 del presente fallo, relacionado con la inmotivación. Así se establece. En consecuencia, se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA a la ciudadana Edy Siboney Calderón Suescún de haber incurrido en el ilícito disciplinario previsto en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos, por supuestamente haber incumplido el deber de motivar las sentencias en la causa judicial N° AP51-R-2007-022820, como integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas. Así se decide.

VI.5 Adicionalmente, fue imputado a la ciudadana Edy Siboney Calderón Suescún, como integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas, el supuestamente haber dictado una providencia contraria a la ley por ignorancia, en la causa judicial N° AP51-O-2009-007212, cuando el once (11) de junio de 2009, se oyeron en ambos

efectos las apelaciones interpuestas contra la decisión proferida por la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, el veintiocho (28) de mayo de 2009, que había declarado con lugar la acción de amparo interpuesta, falta disciplinaria establecida en el numeral 10 del artículo 39 de la Ley Orgánica del Consejo de la Judicatura.

Sobre el particular, alegó la Inspectoría General de Tribunales que la conducta de la jueza denunciada, al haber oído en ambos efectos una apelación en materia de amparo, constituye un desconocimiento de lo dispuesto en el artículo 35 de la Ley Orgánica de Amparo sobre Derechos y Garantías Constitucionales y, que la referida conducta impidió la tutela de los derechos constitucionales puestos en peligro.

En su defensa, alegó la jueza denunciada que la Sala Constitucional del Tribunal Supremo de Justicia, al conocer de la apelación, no calificó su conducta, ni la de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas, como de ignorancia sino como de un mero error y que tal circunstancia no afectó en nada la ejecución de la decisión.

Al respecto, observa este Tribunal Disciplinario Judicial que, efectivamente, la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional erró al haber oído en ambos efectos, mediante autos dictados el once (11) de junio de 2009, los recursos de apelación interpuestos contra la decisión dictada en materia, violando lo previsto en el artículo 35 de la Ley Orgánica de Amparo sobre Derechos y Garantías Constitucionales.

No obstante, es de destacar que para que se configure el ilícito previsto en el numeral 10 del artículo 39 de la Ley Orgánica del Consejo de la Judicatura, se requiere que la existencia en el proceder de los jueces de negligencia, ignorancia o error inexcusables debe haber sido calificada, previamente, por la Sala del Tribunal Supremo de Justicia que sea afín a la materia discutida.

En efecto, la extinta Corte Suprema de Justicia, en Sala Político Administrativa, en sentencia del 23 de febrero de 1994, Magistrado- Ponente Dr. Alfredo Ducharne Alonzo, (con el voto salvado del Magistrado Dr. Luis H. Farías Mata), estableció que:

"En este orden de ideas se observa que por error judicial inexcusable se entiende aquel que no puede justificarse por criterios razonables, que lesiona gravemente la conciencia jurídica, revelando por vía consecuencial, carácter de falta grave que puede conducir a la máxima sanción disciplinaria (destitución). Tal error no es concebible en un Juez y por ello cabe calificarlo de inexcusable, ésto por su carácter absurdo, esa alevitive constituye una crasa ignorancia o una suprema negligencia. No obstante, el presunto error judicial, el Juez que se le impute, debe garantizársele el (debido proceso) por cuanto su calificación incide directamente sobre el destino del Juez afectado.)." [" (énfasis de este Tribunal)]

En el mismo sentido, el artículo 832 del Código de Procedimiento Civil establece que "Se tendrá siempre por inexcusable la negligencia o la ignorancia cuando, aun sin intención, se hubiere dictado providencia manifiestamente contraria a la ley expresa, o se hubiere faltado a algún trámite o solemnidad que la ley misma mande observar bajo pena de nulidad."

Incluso este Tribunal Disciplinario Judicial estableció, en la decisión N° TDJ-SD-2012-289 del cinco (5) de diciembre de 2012, que "En el caso de marras se imputa a las juezas denunciadas el ilícito de error judicial inexcusable y al respecto, debe destacar este Tribunal Disciplinario Judicial que para que se configure, se requiere la realización de dos (2) actuaciones: la primera, en la cual algún juez o jueza actúe con grave ignorancia o negligencia judicial y, la segunda, alguna decisión de cualquiera de las Salas del Tribunal Supremo de Justicia que califique la primera actuación, como un error judicial inexcusable"

De lo anterior se desprende, que la negligencia o ignorancia inexcusables, son especies del error judicial inexcusable, que deben ser declarados por la Sala del Tribunal Supremo de Justicia que sea afín a la materia del error, tal como lo establecido por la sentencia antes citada, al manifestar lo siguiente

"Otro aspecto del supuesto sancionatorio previsto en el numeral 4 del artículo 40 de la Ley de Carrera Judicial, que es necesario evaluar, es cuál o cuáles órganos tienen la facultad de calificar como error judicial inexcusable la actuación de un juez o jueza y, al respecto, es de remarcar que la referida norma otorga esa facultad a la Corte de Apelaciones o al juzgado superior o la respectiva Sala de la Corte Suprema de Justicia, según el caso"

No obstante, se debe señalar, en primer lugar, que a partir de la entrada en vigencia de la Constitución de la República Bolivariana de Venezuela, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 5.453 Extraordinaria de fecha veinte (20) de marzo de 2000 y de conformidad con sus artículos 253 y 335, el Tribunal Supremo de Justicia es el Máximo Tribunal de la República Bolivariana de Venezuela, en sustitución de la Corte Suprema de Justicia, que era el máximo tribunal de la República de Venezuela de acuerdo a lo dispuesto en los artículos 204 y 211 de la Constitución de la República de Venezuela. En consecuencia, es ahora el Tribunal Supremo de Justicia el facultado para calificar como error judicial inexcusable las actuaciones de los jueces

En segundo lugar, se debe indicar que el seis (6) de agosto de 2009 fue publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.236, el Código de Ética del Juez Venezolano y la Jueza Venezolana, que establece en el numeral 20 de su artículo 33 la sanción de destitución del juez o inhabilitación para el ejercicio de cualquier cargo dentro del sistema de justicia a los jueces o juezas que procedan "con error inexcusable e ignorancia de la Constitución de la República, el derecho y el ordenamiento jurídico, declarada por la Sala del Tribunal Supremo de Justicia que conozca de la causa"

Adicionalmente, se debe hacer notar que el veintitrés (23) de agosto de 2010 se publicó en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.493 Ley mediante la cual se reformó el Código de Ética del Juez Venezolano y la Jueza Venezolana que, no obstante, reprodujo íntegramente lo dispuesto en el numeral 20 del artículo 33.

De lo antes expuesto se colige que desde el seis (6) de agosto de 2009 únicamente pueden ser sancionadas disciplinariamente aquellos jueces o juezas que hayan incurrido en error judicial inexcusable, declarado por la Sala del Tribunal Supremo de Justicia que conozca del caso, pues la legislación vigente ya no faculta a las cortes de apelaciones ni a los juzgados superiores a declarar errores judiciales inexcusables, a los fines de que los jueces o juezas sean sancionados disciplinariamente.

En el mismo sentido, el contenido en el numeral 20 del artículo 33 del Código de Ética del Juez Venezolano y la Jueza Venezolana una regulación más favorable a la para ser en el numeral 4 del artículo 40 de la Ley de Carrera Judicial, porque no sanciona un sistema judiciales inexcusables calificados por cortes de apelaciones o juzgados superiores, la primera sería aplicable incluso a los hechos anteriores bajo la vigencia de la referida Ley de Carrera Judicial, como excepción al principio de irretroactividad de la Ley, de conformidad con lo previsto artículo 24 de la Constitución de la República Bolivariana de Venezuela. En consecuencia, se entenderá siempre como único facultado para declarar errores judiciales inexcusables, al Tribunal Supremo de Justicia."

De lo expuesto se colige lo siguiente: (1) que el error judicial inexcusable puede darse por negligencia del juez en los trámites del proceso o por ignorancia del derecho y (2) que la existencia del error judicial inexcusable, en cualquiera de sus especies, debe ser declarada por el Tribunal Supremo de Justicia en la Sala que sea afín con la materia del error. Así se estableció

En el presente caso, se observa que, tal como lo alegó la jueza denunciada, la Sala Constitucional del Tribunal Supremo de Justicia no calificó el proceder de la referida juzgadora como producto de negligencia, ignorancia o error inexcusables, por lo cual, en el presente caso, los hechos de la presente causa no se subsumen en la calificación jurídica propuesta por la Inspectoría General de Tribunales, consistente en el ilícito previsto en el numeral 10 del artículo 39 de la Ley Orgánica del Consejo de la Judicatura, actualmente previsto en el numeral 20 del artículo 33 del Código de Ética del Juez Venezolano y la Jueza Venezolana, circunstancia que habilita a este órgano jurisdiccional a realizar un examen de los ilícitos disciplinarios previstos en la Ley Orgánica del Consejo de la Judicatura con la finalidad de determinar si la conducta realizada por la jueza denunciada se subsume en otro tipo sancionatorio disciplinario

Sobre la facultad de cambiar la calificación propuesta por la Inspectoría General de Tribunales, se este órgano jurisdiccional se pronunció anteriormente mediante sentencia N° TDJ-SD-2012-233 del dieciocho (17) de octubre de 2012 mediante la cual estableció lo siguiente:

"En este contexto, es preciso acotar que el Tribunal Disciplinario Judicial órgano jurisdiccional en materia disciplinaria y en atención al principio iura novit curia, tiene la facultad de establecer de manera definitiva la calificación jurídica sobre los hechos debatidos a lo largo del proceso y por

---

tanto, este ente disciplinario no está obligado a aplicar la calificación jurídica que sobre los hechos realizó en un primer momento la Inspectoría General de Tribunales, o en cerundante, pudiendo en consecuencia apartarse de la calificación jurídica otorgada y aplicar otra sanción en el ejercicio de su potestad disciplinaria siempre y cuando no esé subsumidos los hechos que dio lugar a procedimiento disciplinario (Vid. sentencias Nros 01318 del 12 de noviembre de 2002, 01744 del 7 de octubre de 2004, 00110 del 30 de enero de 2007, 00563 del 24 de abril de 2007, 00081 del 23 de enero de 2008, 0400 del 25 de marzo de 2009, 00066 del 12 de enero de 2011 de la Sala Político-Administrativa del Tribunal Supremo de Justicia)"

En el mismo contexto, la Sala Constitucional del Tribunal Supremo de Justicia, mediante sentencia N° 1319 del ocho (8) de octubre de 2013, estableció lo siguiente:

"Precisado lo anterior y visto que la situación fáctica que conllevó a la apertura del procedimiento disciplinario en contra de la solicitante, ciudadana Yris del Valle Jiménez Omaña, se mantuvo invariable en todo momento durante la tramitación del proceso disciplinario, representado por el hecho de haber desconocido y cuestionado una firme emanada de otro Juzgado por un juez de su misma categoría, planteando un inexistente conflicto de competencia, esta Sala Constitucional concluye que el cambio de calificación jurídica de los hechos efectuado por el Tribunal Disciplinario Judicial y posteriormente confirmado por la Corte Disciplinaria Judicial no representó tal como erróneamente se señala, una transgresión a los derechos fundamentales de la solicitante"

De lo expuesto se colige que, como consecuencia del principio iura novit curia, el juez disciplinario tiene la facultad de establecer de manera definitiva la calificación de los hechos debatidos en el proceso, siempre y cuando la nueva calificación no incluya alguna circunstancia de hecho que merezca ser debatida, por cuanto ello menoscabaría el derecho a la defensa del imputado

En el presente caso, se observa que la jueza denunciada erró al haber oído en ambos efectos, mediante autos dictados el once (11) de junio de 2009, los recursos de apelación interpuestos contra la decisión dictada en materia de amparo el veintiocho (28) de mayo de 2009 en la causa judicial N° AP51-O-2009-007212, violando lo previsto en el artículo 35 de la Ley Orgánica de Amparo sobre Derechos y Garantías Constitucionales.

No obstante, se observa que, rela a los folios 24 y 25 de la pieza 9 del expediente de la presente causa judicial, decisión dictada por la Corte Superior Primera del Circuito Judicial del Tribunal de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, mediante la cual dictó medida de protección a favor del niño solicitante de tutela constitucional, hasta tanto fuese resuelta la acción de amparo constitucional, librándose los oficios correspondientes, los cuales rielan a los folios 26 y 27 de la pieza 9 del expediente

Asimismo, se evidencia del acta contenida en los folios 29 al 35 de la pieza 9 del expediente de la presente causa judicial, que el dieciocho (18) de mayo de 2009 se celebró audiencia constitucional

Posteriormente, tal como se desprende de los folios 36 al 40 de la pieza 9 del expediente de la presente causa judicial, el diecinueve (19) de mayo de 2009 la Corte Superior Primera del Circuito Judicial del Tribunal de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, ordenó la realización de actos para continuar con la ejecución de la medida de protección

El veintiuno (25) de mayo de 2009 se difirió por 5 días de despacho la oportunidad para dictar el fallo

El veintiocho (28) de mayo de 2009 la Corte Superior Primera del Circuito Judicial del Tribunal de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional dictó el fallo definitivo del proceso de amparo, declarando con lugar la demanda de tutela constitucional

De lo expuesto se evidencia que la tutela constitucional que fue brindada al demandante de amparo nunca cesó por el error en el que incurrió la jueza denunciada como integrante de la Corte Superior Primera del Circuito Judicial del Tribunal de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional. Sin embargo, a pesar de no vulnerar la tutela constitucional del accionante en amparo puesto que la medida que a su favor había sido dictada continuó ejecutándose, se subsume en lo previsto en el numeral 7 del artículo 37 de la Ley Orgánica del Consejo de la Judicatura, norma vigente para el momento en que ocurrieron los hechos, consistente en haber incurrido en descuido injustificado; y que actualmente se subsume en el supuesto previsto en el numeral 6 del artículo 31 del Código de Ética del Juez Venezolano y la Jueza Venezolana. Por tal motivo, se DECLARA la RESPONSABILIDAD DISCIPLINARIA de la ciudadana EDY SIBONEY CALDERÓN SUESCÚN y, por tanto, se le impone la sanción de AMONESTACIÓN ESCRITA. Así se decide

VI.5 Finalmente, la Inspectoría General de Tribunales imputó a la ciudadana Edy Siboney Calderón Suescún, el presuntamente haber incurrido en abuso de autoridad, en la causa judicial N° AP51-O-2009-007212, cuando procedió al margen del debido orden procesal, al permitir que se celebrara la audiencia constitucional sin que los terceros coadyuvantes contaran con asistencia técnica debida, falta disciplinaria tipificada en el numeral 16 del artículo 49 de la Ley de Carrera Judicial vigente para la época en que ocurrieron los hechos

Sobre el particular, alegó la Inspectoría General de Tribunales que la conducta de la jueza denunciada no constituye un simple error y que, por el contrario, constituye una violación del derecho a la defensa de los terceros coadyuvantes, quienes no contaron con la debida asistencia técnica en la audiencia constitucional de amparo

Por su parte, argumentó la jueza denunciada que fue un error material el haberles permitido la participación en la audiencia constitucional sin la asistencia técnica debida

Al respecto observa este Tribunal Disciplinario Judicial que de las actas que conforman el expediente de la presente causa judicial se desprende que la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, presidida por la ciudadana Yunamith Medina, permitió la participación en la audiencia constitucional celebrada el dieciocho (18) de mayo de 2009 en la causa N° AP51-O-2009-007212 a los terceros coadyuvantes sin garantizarles que contaran con la asistencia técnica debida, de acuerdo a lo dispuesto en el numeral 1 del artículo 49 de la Constitución de la República Bolivariana de Venezuela. Así se establece

No obstante, para que el referido hecho sea imputable a la jueza investigada, se requiere que la decisión de permitir la participación en la audiencia constitucional celebrada el dieciocho (18) de mayo de 2009 en la causa N° AP51-O-2009-007212 a los terceros coadyuvantes sin garantizarles que contaran con asistencia jurídica, haya sido tomada por la referida ciudadana

En ese orden, es de destacar lo establecido en el artículo 64 de la Ley Orgánica del Poder Judicial

Artículo 64. Son atribuciones y deberes de los presidentes de las Cortes de Apelaciones
1° Presidir la Corte, representarla en los actos oficiales, a menos que se acuerde nombrar otro de sus miembros a tal fin, y dirigir los trabajos del tribunal.
2° Hacer llevar la correspondencia de la Corte y autorizar con su firma las actas, comunicaciones y despachos

De acuerdo al ordinal 1° de la norma transcrita, corresponde al Juez Presidente presidir la Corte de Apelaciones de la cual es integrante, incluso en las audiencias, dirigiendo el debate de las partes

De lo anterior se desprende, que corresponde al Juez Presidente de las Cortes de Apelaciones como lo es la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional de acuerdo a la clasificación prevista en la Ley Orgánica del Poder Judicial, decide cuáles sujetos deben participar y cuáles no en las audiencias realizadas ante el órgano colegiado correspondiente

De lo expuesto, se colige que la decisión de permitir la participación en la audiencia constitucional celebrada el dieciocho (18) de mayo de 2009 en la causa N° AP51-O-2009-007212 a los terceros coadyuvantes sin garantizarles que contaran con la asistencia técnica debida de acuerdo a lo dispuesto en el numeral 1 del artículo 49 de la Constitución de la República Bolivariana de Venezuela, no era responsabilidad de la jueza denunciada. En consecuencia, se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA por el ilícito tipificado en el numeral 16 del artículo 49 de la Ley de Carrera Judicial a la ciudadana EDY SIBONEY CALDERÓN SUESCÚN, que le fue imputado por la Inspectoría General de Tribunales. Así se decide.

En vista de lo anterior, este Tribunal Disciplinario Judicial ordena remitir copia certificada de la presente decisión a la Inspectoría General de Tribunales, a los fines de que investigue, si lo considera procedente, la actuación del Juez Presidente de la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional en el expediente judicial N° AP51-O-2009-007212. Así se decide

Finalmente, observa este Tribunal Disciplinario Judicial que la resolución 2010-0147 del veinticinco (25) de noviembre de 2010, mediante la cual, la Comisión Judicial del Tribunal Supremo de Justicia suspendió de su cargo sin el goce de sueldo, a la ciudadana Edy Siboney Calderón Suescún, estableció como condición resolutoria de su vigencia, la circunstancia de que la Inspectoría General de Tribunales dicte el acto conclusivo de su investigación

Asimismo, se observa que el nueve (9) de diciembre de 2010 la Inspectoría General de Tribunales dictó acto conclusivo en la investigación sustanciada contra la ciudadana Edy Siboney Calderón Suescún, por lo cual se cumplió la condición resolutoria establecida por la Comisión Judicial del Tribunal Supremo de Justicia. Por tal motivo, este Tribunal Disciplinario Judicial LEVANTA la medida de suspensión del cargo sin goce de sueldo dictada por la Comisión Judicial del Tribunal Supremo de Justicia contra la ciudadana Edy Siboney Calderón Suescún y, en consecuencia, se ORDENA a la COMISIÓN JUDICIAL DEL TRIBUNAL SUPREMO DE JUSTICIA la REINCORPORACIÓN de la ciudadana Edy Siboney Calderón Suescún al cargo que ocupaba en el Poder Judicial para la fecha de su suspensión o uno de igual jerarquía y remuneración económica. Así se decide.

417.614     GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA     Lunes 22 de diciembre de 2014

Como consecuencia del anterior pronunciamiento, resulta inoficioso ordenar la remisión del expediente a la Sala Político Administrativa del Tribunal Supremo de Justicia por la declaratoria de incompetencia para examinar la conformidad a derecho de la resolución 2010-0147 del veinticinco (25) de noviembre de 2010, mediante la cual, la Comisión Judicial del Tribunal Supremo de Justicia suspendió de su cargo sin el goce de sueldo, a la ciudadana Edy Siboney Calderón Suescún. Así se decide.

V
DECISIÓN

Por las razones expuestas, este Tribunal Disciplinario Judicial, administrando justicia en nombre de la República Bolivariana de Venezuela por autoridad de ley, bajo la ponencia del Juez Carlos Alfredo Medina Rojas, dicta el siguiente pronunciamiento.

PRIMERO. se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA a la ciudadana Edy Siboney Calderón Suescún, titular de la cédula de identidad Nº V-5.675.425, por actuaciones como Jueza integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, de haber incurrido en el ilícito disciplinario previsto en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos, por supuestamente haber incumplido el deber de motivar las sentencias en la causa judicial Nº AP51-O-2007-015381

SEGUNDO. se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA a la ciudadana Edy Siboney Calderón Suescún de haber incurrido en el ilícito disciplinario previsto en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos, por supuestamente haber incumplido el deber de motivar las sentencias en la causa judicial Nº AP51-R-2007-022830.

TERCERO. se DECLARA LA RESPONSABILIDAD DISCIPLINARIA de la ciudadana Edy Siboney Calderón Suescún por la comisión del ilícito disciplinario previsto en el numeral 7 del artículo 37 de la Ley Orgánica del Consejo de la Judicatura, vigente para el momento en que ocurrieron los hechos, por haber oído en ambos efectos un recursos de apelación interpuestos contra la sentencia de amparo dictada el veintiocho (28) de mayo de 2009, en la causa judicial Nº AP51-O-2009-007212, actualmente tipificado en el numeral 6 del artículo 31 del Código de Ética del Juez Venezolano y la Jueza Venezolana y, en consecuencia, se le impone la sanción de AMONESTACIÓN ESCRITA.

CUARTO. se ABSUELVE de RESPONSABILIDAD DISCIPLINARIA a la ciudadana Edy Siboney Calderón Suescún del ilícito previsto en el numeral 18 del artículo 40 de la Ley de Carrera Judicial vigente para la época en que ocurrieron los hechos, el cual le fue imputado por la Inspectoría General de Tribunales por permitir que se celebrara la audiencia constitucional sin que los terceros coadyuvantes contaran con la asistencia técnica debida en la causa judicial Nº AP51-O-2009-007212.

QUINTO. se ORDENA remitir copia certificada de la presente decisión a la Inspectoría General de Tribunales, a los fines de que investigue, si lo considera procedente, la actuación del Juez Presidente de la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente del Área Metropolitana de Caracas y Nacional de Adopción Internacional en el expediente judicial Nº AP51-O-2009-007212

SEXTO. se LEVANTA la medida de suspensión del cargo sin goce de sueldo dictada por la Comisión Judicial del Tribunal Supremo de Justicia contra la ciudadana Edy Siboney Calderón Suescún y, en consecuencia, se ORDENA a la COMISIÓN JUDICIAL DEL TRIBUNAL SUPREMO DE JUSTICIA REINCORPORACIÓN de la ciudadana Edy Siboney Calderón Suescún al cargo que ocupaba en el Poder Judicial para la fecha de su suspensión o uno de igual jerarquía y remuneración económica.

Publíquese, regístrese, y notifíquese a las intervinientes de conformidad con lo previsto en la parte in fine del artículo 251 del Código de Procedimiento Civil, aplicable supletoriamente de acuerdo a lo establecido en el artículo 6 en el artículo 51 del Código de Ética del Juez Venezolano y la Jueza Venezolana.

Dada, firmada y sellada en la sede del Tribunal Disciplinario Judicial, en la ciudad capital de la República Bolivariana de Venezuela, a los DIECINUEVE (19) días del mes de Noviembre de dos mil trece (2013). Años 203° de la Independencia y 154° de la Federación.

HERNÁN PACHECO ALVIÁREZ
Presidenta

JACQUELINE SOSA MARIÑO          CARLOS MEDINA ROJAS
Jueza                           Juez Ponente

RAQUEL SUE GONZÁLEZ
Secretaria

En fecha diecinueve (19) de Noviembre de dos mil trece (2013), siendo cc y registró la anterior decisión bajo el Nº TDJ-SD-2013-161
Hora: 02:30 p.m.
RAQUEL SUE GONZÁLEZ
Secretaria

Exp. Nº AP51-D-2011-000081
HPA/JSM/CMR/RSG

REPÚBLICA BOLIVARIANA DE VENEZUELA
PODER JUDICIAL
Jurisdicción Disciplinaria Judicial
Corte Disciplinaria Judicial
Expediente No. AP51-R-2014-000026

JUEZ PONENTE: DRA. MERLY MORALES
Caracas, 14 de agosto de 2014

Corresponde a esta Corte Disciplinaria Judicial, conocer del recurso de apelación interpuesto por la ciudadana Andreina Ibarra de Carlo, titular de la cédula de identidad Nº 15.581.383, en su carácter de Inspectora de Tribunales, en contra de la Sentencia Nº TDJ-SD-2013-161, dictada por el Tribunal Disciplinario Judicial (en lo sucesivo TDJ), en fecha 19 de noviembre de 2013, mediante la cual absolvió de responsabilidad disciplinaria a la ciudadana EDY SIBONEY CALDERÓN SUESCÚN, titular de la cédula de identidad Nº V-5.675.425, por las actuaciones realizadas durante su desempeño como Jueza Integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes del Área Metropolitana de Caracas y Nacional de Adopción Internacional, del ilícito disciplinario previsto en los numerales 11 y 16 del artículo 40 de la Ley de Carrera Judicial, igualmente declaró la responsabilidad disciplinaria de la jueza denunciada por haber incurrido en el ilícito disciplinario previsto en el numeral 7 del artículo 37 de la Ley Orgánica del Consejo de la Judicatura, normas vigentes para el momento en que ocurrieron los hechos, imponiendo la sanción de amonestación escrita, de la misma forma, levantó la medida de suspensión del cargo sin goce de sueldo dictada por la Comisión Judicial del Tribunal Supremo de Justicia y ordenó la reincorporación de la prenombrada jueza al cargo que ocupaba en el Poder Judicial.

## ANTECEDENTES

En fecha 2 febrero de 2010, la Inspectoría General de Tribunales (en lo sucesivo IGT), ordenó de oficio hacer Inspección Integral en la Sala N° 1 de la Corte Superior del Circuito de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, con el objeto de determinar cualquier irregularidad que pudiera existir con la actuación de la jueza EDY SIBONEY CALDERÓN SUESCUN, en su condición de Jueza integrante del Tribunal de alzada antes mencionado, a cuyo efecto comisionó a la inspectora de tribunales Laurida Páez Contreras, quien practicó la inspección integral entre el 01 y el 24 de marzo de 2010.

En fecha 20 de mayo de 2010, la IGT acordó abrir expediente administrativo a la jueza denunciada, signado con el N° 100.090, por sus actuaciones como miembro del referido tribunal, con todos los recaudos recabados en la mencionada inspección.

En fecha 16 de septiembre de 2011, la Unidad de Recepción y Distribución de Documentos (URDD) de esta Jurisdicción Disciplinaria Judicial, recibió documento relacionado con la denuncia contra la jueza EDY SIBONEY CALDERÓN SUESCUN, al cual se le asignó el número AP61-D-2011-000081.

En fecha 20 de septiembre de 2011, la Oficina de Sustanciación de esta Jurisdicción acordó entre otras cosas, verificar los requisitos de ley y recabar los elementos indiciarios de los hechos denunciados en el presente proceso.

En fecha 30 de septiembre de 2011, la Oficina de Sustanciación remitió al TDJ el respectivo informe, en el cual concluyó que el expediente se encontraba suficientemente instruido por la IGT.

En fecha 4 de octubre de 2011, el TDJ recibió el expediente administrativo sustanciado por la IGT, contra la ciudadana EDY SIBONEY CALDERÓN SUESCUN, por sus actuaciones como jueza integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, contentivo del escrito de petición de sanción contra la mencionada jueza.

En fecha 21 de octubre de 2011, el TDJ admitió la denuncia interpuesta por la IGT contra la ciudadana EDY SIBONEY CALDERÓN SUESCUN, y ordenó a la Oficina de Sustanciación iniciar la investigación de los hechos denunciados, librando las correspondientes boletas de notificaciones a las partes en el presente proceso.

En fecha 1° de octubre de 2011, el TDJ agregó a los autos escrito constante de dos (2) folios útiles, recibido por la Presidencia de la extinta Comisión de Funcionamiento y Reestructuración del Poder Judicial, a través de la Unidad de Correspondencia interna de la Dirección Ejecutiva de la Magistratura, mediante la cual la ciudadana EDY SIBONEY CALDERÓN SUESCUN, jueza sometida a procedimiento disciplinario, titular del Juzgado Superior Cuarto del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, presentó RENUNCIA al precitado cargo.

En fecha 8 de diciembre de 2011, el TDJ recibió escrito de descargos suscrito por la jueza denunciada respecto a la conclusión del informe presentado por la Oficina de Sustanciación.

En fecha 14 de febrero de 2012, el TDJ, realizada la notificación de las partes, ordenó la remisión del expediente a la Oficina de Sustanciación a fin de proceder a la investigación de los hechos.

En fecha 8 de marzo de 2012, la Oficina de Sustanciación remitió el expediente N° AP61-D-2011-000081, en virtud que consideró suficiente la investigación realizada por la IGT, y ratificó el contenido del informe emitido el 30 de septiembre de 2011.

En fecha 20 de marzo de 2012, la Oficina de Sustanciación recibió escrito de descargos suscrito por la jueza denunciada.

En fecha 28 de marzo de 2012, la Oficina de Sustanciación remitió al TDJ el expediente disciplinario. En esa misma fecha el TDJ recibió la causa en cuestión y asignó el respectivo ponente.

En fecha 17 de mayo de 2012, el TDJ ordenó citar a la jueza denunciada a los fines de que ejerciera su derecho a la defensa.

En fecha 3 de julio de 2012, el TDJ recibió escrito de pruebas consignado por la IGT ante la Unidad de Recepción y Distribución de Documentos en fecha 27 de junio de 2012.

En fecha 11 de julio de 2012, el TDJ recibió escrito de descargo de la jueza denunciada, constante de diecisiete (17) folios útiles.

En fecha 31 de julio de 2012, el TDJ agregó a los autos los medios probatorios consignados por la IGT.

En fecha 27 de febrero de 2013, el TDJ admitió las pruebas documentales promovidas por la IGT y ordenó las respectivas boletas de notificación a los intervinientes en el presente proceso.

En fecha 17 de mayo de 2013, el TDJ ordenó citar a la jueza investigada para que, una vez que conste en autos la práctica de la última de las notificaciones ordenadas, presente escrito de descargos, de conformidad con lo establecido en el artículo 62 del Código de Ética del Juez Venezolano y la Jueza Venezolana (en lo sucesivo Código de Ética).

En fecha 27 de febrero de 2013, el órgano de primera instancia disciplinario se pronunció en cuanto a la admisibilidad de las pruebas promovidas por la IGT.

En fecha 19 de junio de 2013, el Tribunal A-quo, fijó la oportunidad para la realización de la audiencia oral y pública a que se contrae el artículo 62 del Código de Ética, para el día 16 de julio del mismo año.

En fecha 06 de agosto de 2013, se acordó reprogramar la fecha para la celebración de la audiencia oral y pública, en virtud que no hubo despacho en fecha 16 de julio de 2013.

En fecha 13 de septiembre de 2013, se llevó a cabo la audiencia oral y pública, dictando el dispositivo del fallo en fecha 08 de octubre de 2013.

En fecha 19 de noviembre de 2013, el Tribunal A-quo publicó el extenso de la decisión emitida en la audiencia oral y pública, mediante la cual absolvió de responsabilidad disciplinaria a la ciudadana EDY SIBONEY CALDERÓN SUESCUN, titular de la cédula de identidad N° V-5.675.425, por las actuaciones realizadas durante su desempeño como Jueza integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes del Área Metropolitana de Caracas y Nacional de Adopción Internacional, del ilícito disciplinario previsto en los numerales 11 y 16 del artículo 40 de la Ley de Carrera Judicial, igualmente declaró la responsabilidad disciplinaria de la mencionada jueza, por haber incurrido en el ilícito disciplinario previsto en el numeral 7 del artículo 37 de la Ley Orgánica del Consejo de la Judicatura, imponiéndole la sanción de amonestación escrita, normas vigentes para el momento de la ocurrencia de los hechos, de la misma forma, levantó la medida de suspensión del cargo sin goce de sueldo dictada por la Comisión Judicial del Tribunal Supremo de Justicia y ordenó la reincorporación de la jueza al cargo que ocupaba en el Poder Judicial.

En fecha 26 de noviembre de 2013, la IGT interpuso recurso de apelación en contra de la decisión dictada por el TDJ.

En fecha 30 de abril de 2014, el TDJ admitió el mencionado recurso de apelación, oyéndolo en ambos efectos.

En fecha 13 de mayo de 2014, se recibió ante esta Corte Disciplinaria Judicial precedente de la URDD, recurso de apelación, correspondiendo la ponencia a la Dra. MERLY MORALES, quien con tal carácter suscribe el presente fallo.

En fecha 28 de mayo de 2014, esta Alzada fijó la audiencia oral y pública a que se contrae el artículo 84 del Código de Ética, para el décimo (10°) día de despacho siguiente, contados a partir de dicha fecha.

En fecha 05 de junio de 2014, compareció ante esta Corte Disciplinaria Judicial el ciudadano Jesús Reaño, abogado en ejercicio, inscrito en el inpreabogado bajo N° 55.527, quien actuando como apoderado judicial de la jueza denunciada solicito se declarara perimido el recurso de apelación presentado por la representación de la IGT en razón de no haberse presentado la correspondiente formalización y, de la misma forma, se remitiera inmediatamente el presente expediente al Tribunal Disciplinario Judicial para su ejecución.

En fecha 10 de junio de 2014, el apoderado judicial de la jueza denunciada, ratificó su pedimento de perención del recurso presentado por la IGT y la consecuente remisión al Tribunal disciplinario. En la misma fecha, la secretaría de este órgano jurisdiccional agregó a los autos cómputo de los días de despacho que transcurrieron desde el día 28 de mayo de 2014, fecha en la cual se fijó la oportunidad para la celebración de la audiencia oral y pública en el presente causa.

En fecha 29 de julio de 2014, esta Corte Disciplinaria Judicial, actuando de conformidad con lo previsto en el artículo 95 del Código de Ética ordenó librar oficio al Director Ejecutivo de la Magistratura, al Director de Recursos Humanos de la Dirección Ejecutiva de la Magistratura, a los fines de que informaran, con carácter de urgencia, en un lapso no mayor a 48 horas contadas a partir del recibo del correspondiente oficio, sobre la existencia y fecha de una renuncia presentada por la ciudadana EDY SIBONEY CALDERON y de la misma fecha se libraron los correspondientes oficios

En fecha 30 de julio de 2014, fueron agregados a los autos oficios debidamente recibidos en el despacho del Director Ejecutivo de la Magistratura, así como con la Dirección General de Recursos Humanos de la Dirección Ejecutiva de la Magistratura en esa misma fecha.

En fecha 7 de agosto de 2014, esta Corte Disciplinaria Judicial en virtud de la ausencia de respuesta a la orden emanada, acordó ratificar el auto para mejor proveer, dictado en fecha 24 de julio de 2014, otorgando un lapso perentorio de 24 horas, contados a partir de la respectiva notificación, para dar cumplimiento a lo solicitado. De la misma forma, se solicito al Tribunal Disciplinario Judicial, informara con mayor amplitud en un lapso de 24 horas, contadas a partir de la respectiva notificación, el origen de la incorporación a los autos de la renuncia de la jueza sometida a procedimiento en la presente causa. En esa misma fecha se libraron los oficios respectivos, los cuales fueron consignados a los autos, debidamente recibidos en fecha 12 de agosto de 2014.

En fecha 12 de agosto de 2014, el apoderado judicial de la jueza sometida a procedimiento presentó escrito mediante el cual solicito a esta Alzada oficiar al Director Ejecutivo de la Magistratura y a la Rectoría Civil del Área Metropolitano, con el fin de que informaran si la renuncia presentada por su representada fue aceptada. De la misma forma solicito se oficiara al Fondo de Prestaciones Sociales de la Dirección Ejecutiva de la

Magistratura con el fin de que informara si se ha efectuado el pago de las prestaciones sociales de la mencionada jueza. Finalmente también solicito se oficie a la División de Carrera Judicial a fin de que informe el estatus actual de la ciudadana EDY SIBONEY CALDERON.

En fecha 12 de agosto de 2014, se recibió ante esta Corte Disciplinaria Judicial Oficio N° TDJ/IPA-59-2014, emanado del Tribunal Disciplinario Judicial mediante el cual le informo que la renuncia agregada a los autos fue recibida junto con las comunicaciones emanadas de la extinta Comisión de Funcionamiento y Reestructuración del Sistema Judicial, mediante las cuales le hacía entrega del inventario de causas en trámite existentes en la mencionada comisión y que en adelante formarían parte del inventario de causas del Tribunal Disciplinario Judicial.

## DE LA SENTENCIA RECURRIDA

En fecha ocho 08 de octubre de 2013, el TDJ dictó el dispositivo de la sentencia, publicando su texto íntegro en fecha diecinueve 19 de noviembre de 2013, en el cual luego realizar una relación sucinta de las fases del procedimiento, los hechos y argumentos de las partes, así como la valoración de las pruebas producidas por cada una de ellas, en el presente proceso, se pronuncio en relación con la pretensión responsabilidad disciplinaria de la ciudadana EDY SIBONEY CALDERON SUESCUN, con fundamento en las siguientes consideraciones:

- Indica que la IGTI solicitó la destitución de la jueza denunciada, por aparentemente haber incurrido en infracción de los deberes que le establecen la Constitución y las leyes, al haber dictado, como integrante de la Corte Superior Primera, antes identificada, una decisión carente de motivación, en la causa judicial N° AP51-O-2007-015381, contentiva de una acción de amparo constitucional interpuesta por la ciudadana Mercedes Xiomara [...] cuatro actuaciones y omisiones judiciales de la Jueza Unipersonal N° IX de la Sala [...] del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas, en el procedimiento de inquisición de paternidad iniciado por la referida ciudadana a favor de su hijo, falta disciplinaria prevista en el numeral 11 del artículo 40 de la Ley de Carrera Judicial, vigente para el momento en que ocurrieron los hechos, no obstante el TDJ estableció que " (...) es en cuanto destacar que aunque la sentencia dictada el 13 de septiembre de 2007 (sic) en la causa judicial N° AP51-O-2007-015381(sic) por la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas, de la cual es integrante la jueza denunciada fue anulada por nuestro máximo Tribunal por consideraría inmotivada, es lo que se observa (sic) que si contiene una motivación que, aunque fue considerada insuficiente por la Sala Constitucional del Tribunal Supremo de Justicia para considerar válida la sentencia, constituye un esfuerzo intelectual del juzgador para valorar su decisión y no denota de manera arbitraria circunstancia una que excluye cualquier tipo de responsabilidad disciplinaria.

- Igualmente indicó que, la IGTI denunció que la jueza incurrió nuevamente en infracción de los deberes que le establecen la Constitución y las leyes, al haber dictado una decisión inmotivada en la causa judicial N° AP51-N-2007-002830, cuando actuando en este Constitucional, suscitó la demanda de fecha 25-02-2008, en la que se declaró sin lugar la apelación interpuesta por el Ministerio Público, y anuló la recurrida por considerar que no valoro las probanzas aportadas al proceso.

En ese sentido, el TDJ agrego lo siguiente "(...) Observa este órgano jurisdiccional que efectivamente, la sentencia objeto de la presente imputación fue anulada por la Sala de Casación Social del Tribunal Supremo de Justicia mediante sentencia N° 1169 del treinta (30) de octubre de 2008, pero no por haber incurrido en inmotivación sino por incurrir en el motivo de casación por reposición no decretada, al haber convalidado el vicio en el que incurrió el juez de primera instancia al no dejar transcurrir íntegramente el periodo de pruebas de 6 meses, decisión a la que llegó la jueza denunciada por un criterio jurídico distinto al del máximo Tribunal, pero que sin duda forma parte de la autonomía judicial por pertenecer a la esfera de la apreciación de los hechos, la valoración de las pruebas y la aplicación de la consecuencia jurídica que preve la ley."

- Destacó que la IGTI fundamentó parte de su escrito de petición de sanción disciplinaria, en que la Jueza EDY SIBONEY CALDERON SUESCUN, dictó una providencia contraria a la ley por ignorancia, cuando en fecha 11 de junio de 2009, ejió en ambos efectos las apelaciones interpuestas contra la decisión proferida por la Corte Superior Primera, antes identificada, en fecha 28 de mayo de 2009, que había declarado con lugar la acción de amparo interpuesta, en la causa judicial N° AP51-O-2009-007212.

Igualmente la IGTI señaló que la conducta de la jueza denunciada, al haber oído en ambos efectos una apelación en materia de amparo, constituía un desconocimiento de lo dispuesto en el artículo 35 de la Ley Orgánica de Amparo sobre Derechos y Garantías Constitucionales y, que la referida conducta impidió la tutela de los derechos constitucionales puestos en peligro.

Con respecto a este ilícito disciplinario el TDJ concluyó que la mencionada Corte Superior Primera "(...) al haber oído en ambos efectos, mediante autos (sic) dictado (sic) al once (11) de junio de 2009, los recursos de apelación interpuestos contra la [...]

decisión dictada en materia, violando lo previsto en el artículo 35 de la Ley Orgánica de Amparo sobre Derechos y Garantías Constitucionales.

No obstante, es de destacar que para que se configure el ilícito previsto en el numeral 10 del artículo 39 de la Ley Orgánica del Consejo de la Judicatura se requiere que la existencia en el proceder de los jueces de negligencia, ignorancia o error inexcusables debe haber sido calificado, previamente, por la Sala del Tribunal Supremo de Justicia que sea el caso correspondiente.

4.- En relación con el cuarto ilícito imputado a la jueza denunciada, la IGTI alegó que la referida ciudadana incurrió en abuso de autoridad, en la causa judicial N° AP51-O-2009-007212, cuando procedió al margen del debido orden procesal, al permitir que se celebrara la audiencia constitucional sin que los terceros coadyuvantes contaran con la asistencia técnica debida, falta disciplinaria susceptible de destitución del cargo, a tenor de lo dispuesto en el numeral 16 del artículo 40 de la Ley de Carrera Judicial.

En relación a este último ilícito disciplinario imputado a la jueza denunciada por parte de la IGTI, el TDJ estableció que

"(...) de los autos que conforman el expediente de la presente causa judicial se desprende que la Corte Superior Primera (...), presidida por la ciudadana Dynamith Medina, permitió la participación en la audiencia constitucional celebrada el dieciocho (18) de mayo de 2009 en la causa N° AP51-O-2009-007212 a los terceros coadyuvantes sin garantizarles que contaran con la asistencia técnica debida de acuerdo a lo dispuesto en el numeral 1 del artículo 49 de la Constitución de la República Bolivariana de Venezuela

No obstante, para que el referido hecho sea imputable a la jueza investigada, se requiere que la decisión de permitir la participación en la audiencia constitucional celebrada el dieciocho (18) de mayo de 2009 en la causa N° AP51-O-2009-007212 a los terceros coadyuvantes sin garantizarles que contaran con asistencia técnica debida de acuerdo a lo dispuesto en el numeral 1 del artículo 49 de la Constitución de la República Bolivariana de Venezuela, haya sido tomada por la referida ciudadana.

En ese orden, es de destacar lo establecido en el artículo 64 de la Ley Orgánica del Poder Judicial

Artículo 64  Son atribuciones y deberes de los presidentes de las Cortes de Apelaciones

1° Presidir la Corte, representarla en sus actos oficiales, a menos que se acuerde nombrar otro de sus miembros a tal fin, y dirigir los trabajos del tribunal.

2° Hacer llevar la correspondencia de la Corte y autorizar con su firma los actos, comunicaciones y despachos

De acuerdo al ordinal 1° de la norma transcrita, corresponde al Juez Presidente presidir la Corte de Apelaciones de la cual es integrante incluso en las audiencias, dirigiendo el debate de las partes.

De lo anterior se desprende, que corresponde al Juez Presidente de las Cortes de Apelaciones, como lo es la Corte Superior Primera del Circuito Judicial de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional de acuerdo a la clasificación prevista en la Ley Orgánica del Poder Judicial, decidir cuáles sujetos deben participar y cuáles no en las audiencias realizadas ante el órgano colegiado correspondiente.

De lo expuesto, se colige que la decisión de permitir la participación en la audiencia constitucional celebrada el dieciocho (18) de mayo de 2009 en la causa N° AP51-O-2009-007212 a los terceros coadyuvantes sin garantizarles que contaran con la asistencia técnica debida de acuerdo a lo dispuesto en el numeral 1 del artículo 49 de la Constitución de la República Bolivariana de Venezuela, no era responsabilidad de la jueza denunciada.

Declarando finalmente la absolución de responsabilidad disciplinaria de la ciudadana EDY SIBONEY CALDERON SUESCUN, titular de la cédula de identidad N° V-3.675.425, respecto al ilícito disciplinario previsto en los numerales 11 y 16 del artículo 40 de la Ley de Carrera Judicial, del mismo modo, al examinar la imputación formulada por el órgano de investigación, en relación a la causa relacionada con la acción de amparo interpuesta en la causa judicial N° AP51-O-2009-007212, que a decir de la IGTI, resultaba merecedora de la sanción disciplinaria de destitución, el a-quo al analizar dicha conducta, subsumió la misma en una norma jurídica distinta a la invocada por la IGTI, declarando la responsabilidad disciplinaria de la jueza denunciada al encontrarla incursa en el ilícito disciplinario previsto en el numeral 7 del artículo 37 de la Ley Orgánica del Consejo de la Judicatura, normas vigentes para el momento de ocurrido los hechos, imponiendo la sanción de amonestación escrita, de la misma forma, levantó la medida de suspensión del cargo sin goce de sueldo dictado por la Comisión Judicial del Tribunal Supremo de Justicia y ordenó la reincorporación de la prenombrada jueza al cargo que ocupaba en el Poder Judicial

## DE LA COMPETENCIA

Con anterioridad a cualquier pronunciamiento, esta Corte Disciplinaria Judicial debe determinar su competencia para conocer del presente recurso ordinario de apelación y a tal efecto observa lo siguiente:

Establece el artículo 42 del Código de Ética del Juez Venezolano y la Jueza Venezolana lo siguiente:

Artículo 42  Corresponde a la Corte Disciplinaria Judicial, como órgano de alzada, conocer de las apelaciones Interpuestas contra decisiones ya sean interlocutorias o definitivas, y garantizar la correcta interpretación y aplicación del presente Código y el resto de la normativa que guarde relación con la identidad judicial y el desempeño del juez venezolano y jueza venezolana (Negrillas de esta alzada)

Desprendiéndose de la norma ut supra transcrita, la competencia de este [...] jurisdiccional como alzada natural del Tribunal Disciplinario Judicial para conocer de [...]



recurso de apelación que se intentare contra las decisiones que de él emanen, debiendo garantizar la correcta interpretación y aplicación de las normas disciplinarias vigentes y del ordenamiento jurídico patrio.

Corolario de lo anterior, visto que en el caso de marras existe la apelación realizada por la ciudadana Andreina Ibarra de Carío, titular de la cédula de identidad N° V-15.581.383, en su carácter de Inspectora de Tribunales, en contra de la Sentencia N° TDJ-SD-2011-161, dictada por el Tribunal Disciplinario Judicial en fecha 19 de noviembre de 2013, en el procedimiento seguido en contra de la ciudadana EDY SIBONEY CALDERÓN SUESCÚN, titular de la cédula de identidad N° V-5.675.425, por las actuaciones realizadas durante su desempeño como Jueza Integrante de la Corte Superior Primera del Circuito Judicial de Protección de Niños, Niñas y Adolescentes del Área Metropolitana de Caracas y Nacional de Adopción Internacional, en consecuencia, esta Corte Disciplinaria Judicial se declara competente para conocer del presente recurso de apelación. Y así se decide.

II

**MOTIVACIONES PARA DECIDIR**

Determinada la competencia, pasa esta Corte a pronunciarse sobre el recurso de apelación interpuesta y, al respecto, observa:

Revisadas las actas que conforman la presente causa, esta Alzada advierte que en fecha 26 de noviembre de 2013, la ciudadana Andreina Ibarra de Carío, titular de la cédula de identidad N° V- 15.581.383, en su carácter de Inspectora de Tribunales, mediante diligencia que corsa en el folio 128 (pieza 12) del expediente, apeló de la sentencia de fecha 19 de noviembre de 2013 dictada por el a quo, no obstante, se constata que en la oportunidad prevista para la consignación del escrito de fundamentación de su impugnación, la misma no se produjo.

En este sentido, observa esta Alzada que el artículo 84 del Código de Ética establece lo siguiente:

> *Fijación de la audiencia*
> Artículo 84. Al quinto día siguiente al recibo del expediente, la Corte Disciplinaria Judicial debe fijar, por acto expreso y cierto en la cartelera del despacho, el día y la hora de la celebración de la audiencia de apelación, dentro de un lapso no mayor de diez ni mayor a doce días contados a partir de dicha determinación. En la recurrente tendrá un lapso de tres días contados a partir del auto de fijación, para presentar un escrito fundado, en el cual debe expresar concreta y razonadamente cada motivo y alegue pretende, y el mismo no podrá exceder de tres folios útiles y tres vueltos, sin más formalidades. Transcurridos los tres días antes establecidas, si se consignado el escrito de fundamentación, la contraparte podrá, dentro de los tres días siguientes, consignar por escrito los argumentos que a su juicio contradigan los alegatos del recurrente. Dicho escrito no podrá exceder de tres folios útiles y sus vueltos.
> Será declarado perimido el recurso, cuando la formalización no se presente en el lapso a que se confiere este artículo o cuando el escrito no cumpla con los requisitos establecidos. Si la contestación a la formalización no se presente en el lapso a que se concede este artículo o cuando el escrito no cumpla con los requisitos establecidos, la contrarecurrente no podrá intervenir en la audiencia de apelación (Negrillas de esta Corte).

En aplicación del artículo parcialmente transcrito, la apelante tenía la carga de presentar el escrito en el cual expusiera las razones de hecho y de derecho en que fundamentaba su apelación, dentro del lapso de tres (3) días de despacho contados a partir de la fecha en la cual se dictó el auto para la celebración de la audiencia oral y pública. La misma norma sanciona el incumplimiento de esta obligación legal, con la declaratoria de perención del recurso interpuesto.

Así, en el caso bajo examen, se constata en el folio 194 (pieza 12) del expediente, el auto dictado en fecha 28 de mayo de 2014, en el cual se fijó la audiencia oral y pública a la que se contrae el artículo 84 del Código de Ética.

En idéntico sentido, se advierte que los tres (3) días de despacho aludidos en el dispositivo, correspondían a los días 03, 04 y 05 de junio del presente año, computados mediante auto de fecha 10 de junio de 2014, inserto en el folio 196 (pieza 12) del expediente, a partir de la constancia en autos de las notificaciones practicadas con ocasión de la fijación de la audiencia.

Verificados los supuestos que preceden, vista la falta de consignación del escrito fundamentación del recurso de apelación, resulta imperativo para esta Corte declarar perimido el recurso de apelación bajo examen. Y así se declara.

Declarado perimido el recurso interpuesto, considera pertinente esta Alzada, recordar el contenido del único aparte del artículo 87 del Código de Ética, el cual establece lo siguiente:

> *Artículo 87. Concluido el debate oral, los jueces y juezas se deben retirar de la audiencia por un tiempo que no será mayor de setenta minutos. Concluido dicho lapso, pronunciará su fallo en forma oral y reproducirá en todo caso, de manera sucinta y breve la sentencia, dentro de los tres días siguientes, sin formalismos innecesarios y dejando expresa constancia de su publicación. A los efectos del ejercicio de los recursos a que hubiere lugar, se debe dejar transcurrir íntegramente dicho lapso. En casos excepcionales, por la complejidad del asunto debatido, por caso fortuito o de fuerza mayor, la Corte Disciplinaria Judicial puede diferir por una sola vez la oportunidad para dictar la sentencia por un lapso no mayor de tres días, después de concluido el debate oral. En todo caso se debe determinar por auto expreso, en hora y fecha para la cual ha diferido el acto para sentenciar, a los fines de la comprensión de obligatoria del expone.*
> *Podrá también la Corte Disciplinaria Judicial de oficio, hacer pronunciamiento expreso, para anular el fallo recurrido con base en las infracciones de orden público y constitucionales que en él encontrare, aunque no se les haya denunciado.*

En tal sentido, la Sala de Casación Social del Tribunal Supremo de Justicia, mediante sentencia N° 1028, de fecha veintisiete (27) de septiembre de dos mil doce (2012), con ponencia de la Magistrada CARMEN ELVIGIA PORRAS DE ROA, ratificó el

Desprendiéndose del artículo supra transcrito, la facultad que detenta este órgano disciplinario judicial de alzada de, aun de oficio, anular el fallo recurrido al constatar que el mismo este inficionado por vicios de orden público y constitucionales que afecten su validez.

En idéntico sentido, y en cumplimiento de la labor de máximo intérprete de la norma constitucional, ha sido criterio reiterado de la Sala Constitucional del Tribunal Supremo de Justicia que, en aquellos casos en los cuales no se presente el escrito de fundamentación de la apelación, resulta una obligación para todos los Tribunales de la República, examinar de oficio el contenido del fallo apelado con el objeto de constatar si el mismo viola normas de orden público, vulnera o contradice interpretaciones vinculantes de la Sala Constitucional sobre el sentido y aplicación que debe dársele a determinadas normas (Vid. sentencia N° 1.542 de fecha 11 de junio de 2003, ratificada en sentencia N° 150 del 26 de febrero de 2008).

La interpretación concordada del dispositivo normativo y la jurisprudencia de la máxima instancia de interpretación Constitucional, atribuyen al sentenciador esta facultad en aras de garantizar la correcta interpretación y aplicación normativa, en resguardo del orden público y constitucional, lo que indica que, esta facultad opera aún cuando no hayan sido delatadas circunstancias de tal orden, una vez advertida la infracción por el juzgador.

Conforme a lo expuesto, a los fines del dar cumplimiento a la potestad otorgada por el legislador y a la obligación impuesta por la jurisprudencia pacífica y reiterada, observa esta Instancia Superior lo siguiente:

En fecha 20 de mayo de 2010, la IGT acordó abrir expediente administrativo signado con el N° 100.099, a la jueza denunciada por sus actuaciones como miembro de la Sala N° 1 de la Corte Superior del Circuito de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, previa inspección integral realizada en dicho Juzgado. En la misma forma, en fecha 9 de diciembre de 2010, la IGT presentó el correspondiente acto conclusivo.

En fecha 11 de octubre de 2011, el TDJ admitió la denuncia interpuesta por la IGT contra la ciudadana EDY SIBONEY CALDERÓN SUESCÚN, librando las correspondientes boletas de notificaciones a las partes en el presente proceso.

En fecha 19 de octubre de 2011, el TDJ agregó a los autos, escrito de fecha 24 de febrero de 2011, constante de dos (2) folios útiles, remitidos por la presidencia de la extinta Comisión de Funcionamiento y Reestructuración del Poder Judicial, mediante la cual la ciudadana EDY SIBONEY SUESCÚN, fue sometida al procedimiento disciplinario, RENUNCIÓ al cargo que detentaba en el Poder Judicial.

En fecha 19 de noviembre de 2013, habiendo sustanciado suficientemente la causa disciplinaria, el TDJ dictó sentencia mediante la cual, luego de pronunciarse sobre la responsabilidad disciplinaria de la jueza sometida a procedimiento, ordenó su reincorporación al cargo que detentaba y del había sido suspendida con goce de sueldo en fecha 26 de noviembre de 2010.

Ahora bien, de la revisión realizada por esta Alzada a las actas procesales se observa que a quo imbricó que en los folios 217 y 218 de la pieza 11 del presente expediente, escrito constante de dos (2) folios útiles, contentivo de la manifestación unilateral de voluntad de la jueza denunciada, de terminar con la relación de trabajo y presentando el evidente renta ante el Poder Judicial, la cual fue remitida según lo señalado en el propio texto de dicha comunicación, a la Sala Plena del Tribunal Supremo de Justicia, con copia al Director General de la Dirección Ejecutiva de la Magistratura, al Director de Recursos Humanos de la Dirección Ejecutiva de la Magistratura, al Inspector General de Tribunales, a la Comisión de Funcionamiento y Funcionamiento del Sistema Judicial y a la Comisión Judicial del Tribunal Supremo de Justicia, la cual fue agregada a las secretaría del Tribunal Disciplinario Judicial mediante auto secretarial de fecha 19 de octubre 2011.

Visto lo anterior, esta alzada a fin de acreditar la certeza de la incorporación a los autos de la referida documental, solicito mediante auto para mejor proveer dirigido al tribunal Disciplinario Judicial, la ampliación de la información contenida en la nota secretarial supra señalada, confirmando que el mencionado documento fue acompañado a las comunicaciones mediante las cuales la extinta Comisión de Funcionamiento y Reestructuración del Sistema Judicial hizo entrega del inventario de causas en trámite que cursaban por ante ese despacho y que en adelante formarían parte del inventario de causas del Tribunal Disciplinario Judicial, corroborándose la legalidad de la incorporación de la documental antes señalada.

Al respecto, observan quienes aquí deciden que el sentenciador de primera instancia disciplinaria en su fallo, no realizó análisis ni valoración alguna sobre la documental referida a la renuncia de la jueza investigada, ni sobre la normativa contenida en la Ley Orgánica del Consejo de la Judicatura o en el Código de Ética, referida a la presentación de renuncias en el proceso disciplinario, máxime cuando como corolario de sus argumentaciones, ordenó la reincorporación de la jueza sometida a procedimiento disciplinario judicial, por cuanto a la misma sólo se le impuso una sanción de amonestación escrita, por considerarla ajustada a derecho disciplinario establecido el numeral 7 del artículo 37 del Código de Ética.

criterio pacífico y reiterado sostenido en relación al Vicio de Falta de aplicación de una norma jurídica, estableciendo que "(...) tiene lugar cuando el sentenciado no emplea, o niega aplicación a un imperativo legal vigente".

Así, en atención a la definición jurisprudencial del vicio de falta de aplicación, observa esta alzada que en el caso de marras, la recurrida al momento de ordenar la reincorporación de la jueza sometida a procedimiento disciplinario judicial emitió pronunciamiento en sus motivaciones respecto a las normas jurídicas contenidas en el artículo 32 de la Ley Orgánica del Consejo de la Judicatura y el artículo 34 del Código de Ética, mediante las cuales la legislación patria ha venido regulando en el tiempo, lo atinente a las renuncias de los administradores de justicia sometidos a procedimientos disciplinarios, toda vez que involucra la documental consignada a los autos, referida a la renuncia de la jueza investigada.

Tal omisión, a juicio de quienes aquí deciden, afecta el orden constitucional, provocando una infracción a la tutela judicial efectiva al ordenar una reincorporación en atención a la especial situación que reviste la renuncia de la ciudadana EDY SIBONEY CALDERÓN SUESCÚN, lo que torna el fallo en inejecutable, razón por la cual resulta forzoso para quienes suscriben, habiéndose verificado la procedencia del vicio de falta de aplicación de una norma jurídica, anular parcialmente el fallo recurrido, únicamente en lo que respecta a la orden de reincorporación de la jueza denunciada, ello de conformidad con el único aparte del artículo 87 del Código de Ética y en concordancia con el numeral 2° del artículo 313 del Código de Procedimiento Civil. Y así se establece.

Declarada la nulidad del particular antes referido, corresponde a esta alzada, al margen de las consideraciones de fondo esgrimidas por el a-quo para absolver a la jueza denunciada del ilícito disciplinario previsto en los numerales 11 y 16 del artículo 40 de la Ley de Carrera Judicial y declarar su responsabilidad disciplinaria por haber incurrido en el ilícito disciplinario previsto en el numeral 7 del artículo 37 de la Ley Orgánica del Consejo de la Judicatura, dirimir lo atinente a la renuncia por ella presentada en fecha 24 de febrero de 2011, para lo cual observa:

De la revisión de las actas que conforman el presente expediente, así como de los argumentos expuestos por la ciudadana EDY SIBONEY CALDERÓN SUESCÚN, en el decurso de todo el proceso disciplinario llevado ante la primera instancia e incluso ante esta alzada, no se observa que la mencionada juzgadora, estando a derecho, intentara enervar de forma alguna, el documento consignado a los autos por remisión de la presidencia de la extinta Comisión de Funcionamiento y Reestructuración del Sistema Judicial, por el contrario, en diligencia de fecha 12 de agosto de 2014, al realizar la práctica de diligencias a esta alzada, sin negar la existencia de su renuncia, requirió que este organismo verificara si la misma había sido aceptada e igualmente si le habían sido pagadas sus prestaciones sociales, de lo que se colige la aceptación de su renuncia en forma expresa, así es condición de la entrada del órgano jurisdiccional superior que integraba y que forma parte del Poder Judicial documental que valora esta alzada plenamente de conformidad con los artículos 507 y siguientes del Código de Procedimiento Civil. Y así se establece.

A los fines de establecer el alcance de la renuncia antes mencionada, esta Alzada debe necesariamente analizar el contenido de las normas de rango legal que han regido el tema en cuestión, estableciendo en principio el artículo 52 de la Ley Orgánica del Consejo de la Judicatura, la siguiente:

"Artículo 52. Renuncia maliciosa. La renuncia del juez sometido a proceso disciplinario que se dicte la decisión correspondiente, lo inhabilita para ser reincorporado al poder judicial en cualquier cargo, o al Ministerio Público".

De la norma transcrita, se puede colegir claramente que cuando el juez sometido a procedimiento disciplinario, presente la renuncia al cargo por el cual se encuentra investigado, antes de que se haya producido la decisión de mérito del asunto, con el fin de evitar ser sancionado por parte de los órganos jurisdiccionales con competencia en materia disciplinaria, nace en su contra, una presunción legal respecto al carácter malicioso de la renuncia presentada, la cual con base al derecho/garantía a la tutela judicial efectiva y al debido proceso de los justiciables, consagrado en nuestro Texto Fundamental, considera esta instancia una presunción iuris tantum, que pudiese ser desvirtuada con el material probatorio habido en autos al respecto, no obstante, de no ser posible, daría lugar a la inhabilitación para ser reincorporado al poder judicial en cualquier cargo, o al Ministerio Público, sin que la norma estableciera un criterio racional de ponderación para determinar el tiempo de la sanción.

De igual forma, se desprende del texto de la referida norma que el legislador disciplinario no condicionaba la imposición de la sanción de inhabilitación al juez sometido a procedimiento disciplinario que renuncia, a la posterior aceptación por parte del órgano administrativo correspondiente, pues es sola interposición configura la presunción legal de que la misma es maliciosa y acreedora de la sanción de inhabilitación la cual pudiese ser desvirtuada, de ser una presunción iuris tantum.

En el mismo sentido, la norma fue acogida por el legislador disciplinario, quien reguló en su contenido establecido en el artículo 34 del Código de Ética de la siguiente:

"Artículo 34. La renuncia del juez investigado o jueza investigada disciplinariamente ante el Tribunal Disciplinario Judicial manifestada antes de la decisión respectiva, no paralizará la causa. Si la decisión sobre

la investigación da origen al juicio y la decisión definitiva del proceso dispone de la aplicación de alguna sanción disciplinaria, la renuncia será considerada maliciosa y de pleno derecho dará lugar a la inhabilitación para el desempeño de funciones dentro del Sistema de Justicia desde dos años hasta por un máximo de quince años en atención a la gravedad de la falta cometida y la sanción disciplinaria aplicada."

De la inteligencia del artículo transcrito, se desprende, que la renuncia del juez o jueza investigada disciplinariamente antes de la decisión respectiva, no paraliza la causa, debiendo los órganos disciplinarios judiciales continuar los procedimientos incoados hasta determinar la existencia o no de responsabilidad disciplinaria del administrador de justicia sometido a procedimiento, ello en razón de "la sana administración de justicia" el derecho que persigue tutelar la norma disciplinaria vigente. No obstante, si de la investigación se concluye en la posible existencia de responsabilidad disciplinaria originando la tramitación de un proceso judicial y la decisión definitiva de este, disponga la aplicación de alguna sanción disciplinaria, la renuncia presentada por el juez, será considerada maliciosa.

Nótese que la intención del legislador fue establecer en forma imperativa y no discrecional o potestativa la calificación de maliciosa de la renuncia presentada, no obstante, es criterio de quienes aquí suscriben que armonizando dicha norma con los principios constitucionales que informan el debido proceso y la tutela judicial efectiva, la renuncia presentada en el curso de un proceso disciplinario constituye una presunción iuris tantum que puede ser desvirtuada. Y así se establece.

Del mismo modo, al igual que en la norma analizada up-supra, previamente comentada, la legislación vigente, al regular lo atinente a la RENUNCIA en condición o imposición de la sanción de inhabilitación al juez sometido a procedimiento disciplinario que renuncia, a la posterior aceptación por parte del órgano administrativo correspondiente, pues, el hecho generador de sanción resulta de mera actividad, y no se supedita a su materialización a convención, ello por cuanto, lo que persigue la norma bajo análisis es sancionar la intención de evadir su responsabilidad disciplinaria.

Igualmente, la norma disciplinaria contenida en el artículo 34 del Código de Ética, establece como consecuencia jurídica para las renuncias consideradas por el órgano disciplinario como maliciosas, la imposición, de "pleno derecho", de una inhabilitación para el desempeño de funciones dentro del Sistema de Justicia desde dos (2) años hasta por un máximo de quince (15) años en atención a la gravedad de la falta cometida y la sanción disciplinaria aplicada, tomando en consideración que el administrador de justicia, ya no se encuentra en funciones en base a su manifestación unilateral de voluntad de renunciar al cargo que detentaba, lo cual en principio hace innecesario que los órganos disciplinarios se pronuncien sobre la separación definitiva (destitución) del cargo del juez investigado.

En relación a la forma de imposición de la sanción contenida en el artículo 34 del Código de Ética, RODRÍGUEZ, Agustín W., en el Diccionario Latín Jurídico. Locuciones latinas de aplicación jurídica actual, Ed. García Alonso, 1° Ed., 1° reimp, Buenos Aires, 2008, p. 119, establecen que la locución "De pleno derecho", como forma de aplicación de la ley, se explica cuando "(...) para que los efectos jurídicos se produzcan no se requiere cumplimiento de ninguna formalidad, pues son de Derecho, la ley, la razón establecida. Se opone por ministerio de la ley."

En este sentido, en base al principio de progresividad de los derechos, así como en aplicación de las garantías procesales constitucionales, es criterio de esta alzada que el órgano disciplinario judicial al momento de decidir sobre la aplicación de la normativa in comento, deberá primeramente, ponderar las circunstancias de modo, lugar y tiempo que rodearon la presentación de la renuncia por parte del funcionario judicial sometido a procedimiento disciplinario, y considerar la maliciosa, por vía de consecuencia legal, deberá imponer por imperio de la ley, una inhabilitación mínima de 2 años al administrador de justicia, la cual podrá ser graduada hasta un máximo de 15 años, en atención a la gravedad de la falta y las repercusiones que en el sistema de justicia haya tenido.

En el caso bajo estudio, en fecha 20 de mayo de 2010, encontrándose a derecho la jueza investigada respecto a las inspecciones realizadas por la IGT, se acordó abrir expediente administrativo signado con el N° 100.099 (nomenclatura del órgano de inspección y vigilancia), a la jueza denunciada por sus actuaciones como miembro de la Sala N° 1 de la Corte Superior del Circuito de Protección del Niño, Niña y Adolescente de la Circunscripción Judicial del Área Metropolitana de Caracas y Nacional de Adopción Internacional, siendo notificada de la apertura ordenada en fecha 25 de mayo de 2010. De la misma forma, en fecha 26 de noviembre de 2010, la jueza denunciada fue suspendida por la Comisión Judicial del Tribunal Supremo de Justicia hasta tanto la IGT concluyera el correspondiente acto conclusivo, el cual fue presentado en fecha 9 de diciembre de 2010.

En fecha 24 de febrero de 2011, la ciudadana EDY SIBONEY CALDERÓN SUESCÚN, jueza sometida al presente procedimiento disciplinario, RENUNCIÓ al cargo que detentaba en el Poder Judicial, arguyendo que la dedicación exclusiva que atenta el ejercicio de la magistratura, le impedía de proveerse de sustento alguno, en vigencia de la medida de suspensión de ejercicio del cargo sin goce de sueldo declarada por la Comisión Judicial del Tribunal Supremo de Justicia.



Así las cosas, judicializada la disciplina de los jueces de la República por mandato constitucional, en fecha 11 de octubre de 2011, el TDJ admitió la denuncia interpuesta por la "IGT contra la ciudadana EDY SIBONEY CALDERÓN SUESCUN, librando las correspondientes boletas de notificaciones a las partes en el presente proceso

En este sentido, observa esta instancia superior disciplinaria, que la jueza denunciada, sin que hubiesen transcurrido siquiera tres (3) meses desde la suspensión decretada, optó por renunciar al cargo que detentaba como Juez Superior en Materia de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Área Metropolitana de Caracas, sin hacer uso de una serie de recursos -administrativos según la fecha de los hechos y la vigencia de la extinta Comisión de Funcionamiento y Reestructuración del Sistema Judicial- que podía intentar con el fin de enervar la medida provisional dictada

De la misma forma, se observa en el primer semestre del año 2011 se constituyó la Jurisdicción Disciplinaria Judicial, cuyo objetivo no es otro que contribuir con la "sana administración de justicia", garantía que protege especialmente a los sujetos pasivos (jueces y juezas) de la norma especial disciplinaria, quienes esperaban la materialización del mandato constitucional, que les garantizara la ejecución de una tutela judicial efectiva y el ejercicio pleno de, as de derechos contenido en el artículo 49 constitucional, lo cual en procura de la defensa de sus derechos, la jueza denunciada debió esperar ajustada a las premisas habidas en el Código de Ética, con el fin de solicitar en el desarrollo de un proceso de carácter jurisdiccional, la tutela de sus derechos ante el novísimo órgano disciplinario judicial

En base a las consideraciones que preceden, infiere esta Alzada que la renuncia presentada por la ciudadana EDY SIBONEY CALDERÓN SUESCUN, al margen de las notificaciones por ella expuestas, y de su participación en el proceso disciplinario incoado en su contra, la cual se materializó en la asistencia a todos los actos procesales a los cuales fue compelida por el órgano jurisdiccional y en el cumplimiento de las respectivas cargas procesales, comportó una actuación dolosa, pues tal y como fue analizado, la jueza denunciada se apartó de todos los mecanismos procesales que tenía a disposición para ejercer su defensa e intentar enervar la eficacia de la medida de suspensión decretada

[texto ilegible continúa...]

[columna derecha parcialmente legible]

III
DECISIÓN

Con fundamento en los razonamientos expuestos, esta Corte Disciplinaria Judicial administrando justicia en nombre de la República y por autoridad de la Ley, declara: PRIMERO: PERIMIDO el recurso de apelación interpuesto por la ciudadana Andreina Ibarra de Caño, titular de la cédula de identidad N° V- 15.581.383, en su carácter de Inspectora de Tribunales, en contra de la Sentencia N° TDJ-SD-2013-161, dictada por el Tribunal Disciplinario Judicial, en fecha 19 de noviembre de 2013 SEGUNDO: ANULA de oficio el particular sexto de la sentencia recurrida, referido a la orden de reincorporación de la jueza denunciada, por encontrarse inficionado del vicio de falta de aplicación de una norma jurídica. TERCERO: SE INHABILITA a la ciudadana EDY SIBONEY CALDERÓN SUESCUN, titular de la cédula de identidad N° V - 5.675.425, para el desempeño de funciones dentro del Sistema de Justicia, por un periodo de tres (3) años contados a partir de la publicación de la presente decisión, en gaceta oficial de la República Bolivariana de Venezuela, de conformidad con el artículo 34 del Código de Ética. CUARTO: IMPROCEDENTE la solicitud realizada en fecha 12 de agosto de 2014, por el ciudadano NEIL JESÚS REAÑO, abogado en ejercicio, inscrito en el inpreabogado bajo el N° 56.522, en su carácter de apoderado judicial de la ciudadana EDY SIBONEY CALDERÓN.

Publíquese, regístrese notifíquese y déjese copia.

De conformidad con el artículo 89 del Código de Ética, remítase copia certificada al Tribunal Supremo de Justicia, al Poder Ciudadano, a la Comisión Nacional del Sistema de Justicia, a la Dirección Ejecutiva de la Magistratura y al Sistema de Registro de Información Disciplinaria Judicial

Se ordena la publicación del presente fallo en la Gaceta Oficial de la República Bolivariana de Venezuela, de conformidad con lo previsto en el artículo 82 del Código de Ética

Dada, sellada y firmada en la Secretaría de la Corte Disciplinaria Judicial Caracas, a los catorce (14) días del mes de agosto de dos mil catorce (2014). Año 204 de la Independencia y 155 de la Federación.
JUEZ PRESIDENTE,

TULIO JIMÉNEZ RODRÍGUEZ      JUEZ VICEPRESIDENTE,

ANA CECILIA ZULUETA RODRÍGUEZ

JUEZA PONENTE,

MERLY J. MORALES HERNÁNDEZ.

Secretaria,
MARIANELA GIL MARTÍNEZ

417.620   GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA   Lunes 22 de diciembre de 2014

## REPÚBLICA BOLIVARIANA DE VENEZUELA
### JURISDICCIÓN DISCIPLINARIA JUDICIAL
### CORTE DISCIPLINARIA JUDICIAL

Exp. No. AP61-R-2014-000026

Quien suscribe, **ANA CECILIA ZULUETA RODRÍGUEZ**, concurre con el dispositivo contenido el fallo que antecede; sin embargo, manifiesta su discenso con la motivación que determinó la nulidad parcial de la sentencia recurrida, por las razones que a continuación se expresan:

Esta Alzada conoció el recurso de apelación interpuesto por la Inspectoría General de Tribunales contra la decisión N° TDJ-SD-2013-161 de fecha 19 de noviembre de 2013 dictada por el Tribunal Disciplinario Judicial y anuló parcialmente de oficio el particular sexto de la recurrida, referido a la orden de reincorporación de la jueza denunciada, por considerar que tal pronunciamiento se encontraba inficionado del vicio de falta de aplicación de una norma jurídica.

La mayoría sentenciadora, para fundamentar su decisión, indicó que la recurrida en la oportunidad de reincorporar a la jueza sometida a procedimiento disciplinario, había inobservado que cursaba en el expediente la renuncia presentada en fecha 24 de febrero de 2011 ante la Comisión Judicial del Tribunal Supremo de Justicia, la cual había sido debidamente incorporada a los autos el 19 de octubre de 2011 por la secretaria del Tribunal Disciplinario Judicial, y aun así, no había sido objeto de análisis y valoración, lo cual se traducía en el vicio de falta de aplicación de una norma.





Quien suscribe observa, que el vicio invocado y que sirvió de fundamento para declarar la nulidad parcial del fallo apelado, se configura cuando el sentenciador niega la aplicación de una disposición legal vigente a una determinada relación jurídica que está bajo su alcance.

Sobre el vicio en referencia, la Sala de Casación Civil del Tribunal Supremo de Justicia ha sostenido, que tal delación se produce cuando el Juez, aun reconociendo que la norma regula un determinado supuesto de hecho, niega la subsunción de éste en el derecho. Esta omisión, a juicio del Máximo Tribunal, conduce a la transgresión directa de la norma, ya que, bajo este supuesto, la situación sometida a su conocimiento ha debido ser decidida de conformidad con el precepto legal que efectivamente aportaba la solución a la controversia (vid sentencias N° 016, de fecha 25 de enero de 2008, caso: Diego Orozco Bernal contra Diego Orozco Arria y otros, ratificada en sentencia N° RC 00095 del 26 de febrero de 2009, Caso: Amalia Clemencia Cordido Santana).



Lo anterior permite evidenciar, que en el caso bajo análisis, el vicio de falta de aplicación de la norma se habría producido si la recurrida, habiendo apreciado la documental contentiva de la renuncia presentada por la Jueza, no hubiese aplicado la norma correspondiente a la resolución de la controversia, es decir, la contenida en el artículo 34 del Código de Ética. Esta circunstancia no se produjo en la causa bajo examen, ya que, tal como fue afirmado por la mayoría sentenciadora, "... [el a quo] inobservó la documental (...) el sentenciador de primera instancia disciplinaria en su fallo, no realizó análisis o valoración alguna sobre la documental referida a la renuncia de la jueza investigada ni sobre la normativa contenida en la Ley Orgánica del Consejo de la Judicatura o en el Código de Ética, referida a la presentación de renuncias (sic) en el proceso disciplinario".

En el contexto que precede, quien concurre observa que, si bien el *a quo* no incurrió en falta de aplicación de una norma jurídica, se constata en el contenido de la recurrida su omisión en la apreciación de la documental que riela a los folios 217 y 218 de la pieza 11 del expediente, contentiva de la renuncia en referencia, circunstancia que, a juicio de quien suscribe, da lugar al vicio de silencio de pruebas.

En este orden, cuando el juzgador niega o no fija un hecho que resulta constatado con las pruebas, u omite total o parcialmente el análisis de las mismas sin pronunciarse sobre su mérito, se produce el denominado vicio de falso supuesto negativo o silencio de pruebas.

Ciertamente, ha sido criterio del máximo Tribunal que cuando el juzgador no toma en cuenta la mención contenida en el instrumento o actas del expediente, se produce el denominado falso supuesto negativo, que debe denunciarse como silencio de pruebas, toda vez que se refiere a un error de percepción de las actas del expediente que da lugar al quebrantamiento del artículo 509 del Código de Procedimiento Civil, referido al deber de los jueces de pronunciarse sobre todas y cada una de las pruebas cursantes en el expediente así sea en forma breve o concreta (vid. Sentencia de la Sala de Casación Civil del Tribunal Supremo de Justicia números 248, 187, 038 y 184 de fecha 29/04/2008, 26/05/10, 21/02/2013 y 18/04/2013, respectivamente).

En el mismo orden de ideas, resulta necesario indicar que la procedencia del vicio y la consecuente nulidad del fallo se producen si el juzgador constata que las pruebas aportadas al juicio y silenciadas por el tribunal de instancia, son trascendentes en la



causa, al punto de modificar el fallo apelado (vid. sentencia de la Sala de Casación Civil N° Rc 00701 de fecha 10/08/2007).

Con fundamento en el razonamiento que precede, al constatarse que en autos cursaba la renuncia presentada el 24 de febrero de 2011, debidamente incorporada al proceso, ésta debió haber sido apreciada y valorada por el *a quo* toda vez que resultaba determinante en la decisión de la controversia al constituir el presupuesto de la sanción a imponer; por tanto, su omisión provocó el vicio de silencio de pruebas.

En consecuencia, quien suscribe estima que la omisión constatada por la mayoría sentenciadora debió subsumirse en el vicio de silencio de pruebas, y no en la falta de aplicación de una norma jurídica.

Queda así expresado el voto concurrente de quien suscribe.

EL JUEZ PRESIDENTE,

**TULIO JIMÉNEZ RODRÍGUEZ**

LA JUEZA VICEPRESIDENTA-CONCURRENTE,

**ANA CECILIA ZULOETA RODRÍGUEZ**

LA JUEZA,

**MERLY JAQUELINE MORALES HERNÁNDEZ**

La Secretaria,

**MARIANELA GIL MARTÍNEZ**

Exp. No. AP61-R-2014-000026

Hoy Primero (1ro) de Octubre del año dos mil catorce (2014), siendo las 03.10 p.m, se publicó la anterior decisión bajo el N° 36

LA SECRETARIA



**Estimados usuarios**

El Servicio Autónomo
Imprenta Nacional  y Gaceta Oficial
facilita a todas las personas naturales,
jurídicas y nacionalizadas
la realización de los trámites
legales para la solicitud
de la Gaceta Oficial
sin intermediarios.

Recuerde que a través
de nuestra página usted puede
consultar o descargar
de forma rápida y gratuita
la Gaceta Oficial visite:

http://www.

imprentanacional.gob.ve

DILE NO
A LOS GESTORES

GACETA OFICIAL
DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA









Síguenos en Twitter
@oficialgaceta
@oficialimprenta

# GACETA OFICIAL
## DE LA REPÚBLICA BOLIVARIANA
## DE VENEZUELA

DEPÓSITO LEGAL: ppo 187207DF1

**AÑO CXLII – MES III**       **Número 40.567**

**Caracas, lunes 22 de diciembre de 2014**

*Esquina Urapal, edificio Dimase, La Candelaria*
*Caracas – Venezuela*
Tarifa sujeta a publicación de fecha 14 de noviembre de 2003
en la Gaceta Oficial N° 37.818
http://www.minci.gob.ve

**Esta Gaceta contiene 64 Págs. costo equivalente
a 26,05 % valor Unidad Tributaria**

## LEY DE PUBLICACIONES OFICIALES
(22 DE JULIO DE 1941)

*Artículo 11.* La GACETA OFICIAL, creada por Decreto Ejecutivo del 11 de octubre de 1872, continuará editándose en la Imprenta Nacional con la denominación GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA.

*Artículo 12.* La GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA se publicará todos los días hábiles, sin perjuicio de que se editen números extraordinarios siempre que fuere necesario; y deberán insertarse en ella su retardo los actos oficiales que hayan de publicarse.

*Parágrafo único:* Las ediciones extraordinarias de la GACETA OFICIAL tendrán una numeración especial

*Artículo 13.* En la GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA se publicarán los actos de los Poderes Públicos que deberán insertarse y aquellos cuya inclusión sea considerada conveniente por el Ejecutivo Nacional.

*Artículo 14.* Las leyes, decretos y demás actos oficiales tendrán carácter de públicos por el hecho de aparecer en la GACETA OFICIAL DE LA REPÚBLICA BOLIVARIANA DE VENEZUELA, cuyos ejemplares tendrán fuerza de documentos públicos.

EL SERVICIO AUTÓNOMO IMPRENTA NACIONAL Y GACETA OFICIAL de la República Bolivariana de Venezuela advierte que esta publicación se procesa por reproducción fotomecánica directa de los originales que recibe del Consejo de Ministros, en consecuencia esta Institución no es responsable de los contenidos publicados.

