Sentencia N° 2.241 de la Sala Constitucional del Tribunal Supremo de Justicia de fecha 24 de septiembre de 2002:

PLAINTIFF'S
EXHIBIT

47

tabbies



LA REPUBLICA BOLIVARIANA DE VENEZUELA
EN SU NOMBRE
EL TRIBUNAL SUPREMO DE JUSTICIA

**SALA CONSTITUCIONAL**

Magistrado-Ponente: **JOSE M. DELGADO OCANDO**

El 25 de octubre de 2000, los ciudadanos **ANDRÉS VELÁSQUEZ**, **ELÍAS MATA** y **ENRIQUE MÁRQUEZ**, venezolanos y titulares de las cédulas de identidad números 3.852.529, 5.623.688 y 7.761.751, respectivamente, asistidos por la abogada Valentina Gómez Millán, inscrita en el Instituto de Previsión Social del Abogado bajo el n° 57.884, interpusieron ante esta Sala Constitucional del Tribunal Supremo de Justicia, recurso de nulidad por inconstitucionalidad contra el último aparte del artículo 80 de la **LEY ORGÁNICA DE LA ADMINISTRACIÓN FINANCIERA DEL SECTOR PÚBLICO**, sancionada por la entonces Comisión Legislativa Nacional, el 27 de julio de 2000, y publicada en Gaceta Oficial n° 37.029, del 5 de septiembre de 2000.

En esa misma fecha, se dio cuenta en Sala, y se acordó pasar las actuaciones al Juzgado de Sustanciación.

Mediante auto del 7 de noviembre de 2000, el Juzgado de Sustanciación admitió en cuanto ha lugar en derecho el recurso de nulidad interpuesto y, conforme al artículo 116 de

la Ley Orgánica de la Corte Suprema de Justicia, dispuso la notificación por oficio a los ciudadanos Presidente de la Asamblea Nacional, Fiscal General de la República y Procurador General de la República. Asimismo, en virtud de que los recurrentes solicitaron que se dictara sentencia sin relación ni informes por ser el asunto tratado de mero derecho, todo ello conforme al artículo 135 *eiusdem*, se ordenó la remisión de las actuaciones a esta Sala, a fin de que se dictara la correspondiente decisión previa.

Efectuadas las correspondientes notificaciones, el Juzgado de Sustanciación ordenó la remisión del expediente a la Sala, en la cual se dio cuenta de las actuaciones precedentes el 12 de diciembre de 2000, siendo designado ponente el Magistrado doctor José Manuel Delgado Ocando.

El 19 de diciembre de 2000 la abogada Aurilivi Linares Martínez, inscrita en el Instituto de Previsión Social bajo el n° 61.423, en su condición de representante de la Procuraduría General de la República presentó escrito con la opinión del órgano representado respecto del recurso de nulidad interpuesto.

Mediante decisión del 24 de octubre de 2001, la Sala declaró ha lugar la solicitud formulada por la parte actora, referida a la tramitación del recurso interpuesto como de mero derecho, y en tal sentido suprimió la primera etapa de la relación, mantuvo el acto de informes orales y redujo a cinco (5) días de despacho la segunda etapa de la relación. Igualmente, ordenó al Juzgado de Sustanciación que notificara a la Defensoría del Pueblo y que ordenara la publicación del cartel a que hace referencia el artículo 116 de la Ley Orgánica de la Corte Suprema de Justicia.

Por auto del 14 de noviembre de 2001 la Sala ordenó al Juzgado de Sustanciación que, una vez hecha la notificación y publicado el cartel, devolviera el expediente a la Secretaría de la Sala, al objeto de que ésta fijara el quinto día de despacho siguiente para que tuviera lugar el acto de informes orales.

Luego de practicada la notificación ordenada y consignado el cartel de emplazamiento a los interesados en los términos ordenados en las decisiones del 24 de octubre y 14 de noviembre de 2001, el Juzgado de Sustanciación remitió el expediente, el 20 de febrero de 2002, a la Secretaría de la Sala que, el 26 de febrero de 2002, fijó el quinto día de despacho siguiente para que tuviera lugar el acto de informes orales.

El 7 de febrero de 2002 tuvo lugar la audiencia pública para la presentación oral de los informes, a la que comparecieron los abogados Jesús Olivo y Mary Madrid, inscritos en

el Instituto de Previsión Social del Abogado bajo los números 65.817 y 40.927, respectivamente, asistiendo a los ciudadanos Andrés Velásquez, Elías Mata y Enrique Márquez, y la abogada Roraima Pérez, inscrita en el Instituto de Previsión Social del Abogado bajo el n° 53.472, en su carácter de apoderada judicial de la Procurador General de la República. En el acta de dicha audiencia se dejó constancia de la comparecencia de los referidos abogados y de la no comparecencia del Presidente de la Asamblea Nacional, del Fiscal General de la República y del Defensor del Pueblo.

Cumplida la tramitación legal del presente expediente, pasa esta Sala a dictar sentencia, previas las consideraciones siguientes:

# I
## ALEGATOS DE LOS RECURRENTES

Los recurrentes fundamentan su recurso de nulidad en los siguientes alegatos:

Que el 5 de septiembre de 2000 se publicó en Gaceta Oficial n° 37.029, la Ley Orgánica de la Administración Financiera del Sector Público, sancionada por la Comisión Legislativa Nacional en ejercicio de las atribuciones conferidas por el artículo 6, numeral 1, del Decreto mediante el cual la Asamblea Nacional Constituyente estableció el Régimen de Transición del Poder Público, publicado en Gaceta Oficial n° 36.920, del 28 de marzo de 2000.

Que el artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público establece en su último párrafo que *"una vez sancionada la ley de endeudamiento anual, el Ejecutivo Nacional procederá a celebrar las operaciones de crédito público en las mejores condiciones financieras que puedan obtenerse e informará periódicamente a la Asamblea Nacional"*.

Que la disposición contenida en el artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público emanó de la Comisión Legislativa Nacional, la cual conforme al artículo 6, numeral 1, del Decreto mediante el cual se estableció el Régimen de Transición del Poder Público, tenía atribuida la competencia para legislar en todas las materias reservadas al Poder Nacional, mientras se instalaba y entraba en funcionamiento la Asamblea Nacional.

Que al tener rango de ley nacional la normativa contentiva de la disposición impugnada, y al atribuírsele a esta Sala Constitucional, de acuerdo con los artículos 262, 266, numeral 1, y 336 de la Constitución de la República Bolivariana de Venezuela, el control concentrado de la constitucionalidad de las leyes es competencia de esta Sala el conocimiento del recurso de nulidad interpuesto.

Que el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público es *"claramente inconstitucional por contradecir un precepto constitucional, y lo mismo se desprende tanto de la letra de la Constitución como de la exposición de motivos de la misma; así tenemos que la Constitución en su artículo 150 señala: La celebración de los contratos de interés público requerirán la aprobación de la Asamblea Nacional en los casos que determine la ley. No podrá celebrarse contrato alguno de interés público municipal, estadal o nacional con entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela, ni traspasarse a ellos sin la aprobación de la Asamblea Nacional"*.

Que igualmente, la Constitución de la República Bolivariana de Venezuela establece en su artículo 187, numeral 9, que *"corresponde a la Asamblea Nacional autorizar al Ejecutivo Nacional para celebrar contratos de interés nacional, en los casos establecidos en la ley, e igualmente autorizar los contratos de interés público municipal, estadal o nacional con Estado o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela"*.

Que de la lectura de ambos artículos *"se desprende claramente que para la celebración de contratos de interés público nacional sólo se requerirá la aprobación de la Asamblea Nacional únicamente en aquellos casos que así lo determine la ley, en otras palabras, salvo que la ley diga lo contrario, no se requerirá la aprobación de la Asamblea Nacional, lo cual podríamos decir, es la regla pero en ambas normas encontramos tajantemente establecida y con carácter de mandato a la excepción, y son los casos de contratos de interés público municipal, estadal o nacional, a celebrarse con Estados o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela"*.

Que en tal sentido, *"la autorización de la Asamblea Nacional para celebrar cada uno de los convenios con entes extranjeros o no domiciliados en Venezuela, es obligatoria, de manera que, cuando el último párrafo del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público prevé que con la sola aprobación de la ley de endeudamiento, el Ejecutivo Nacional está autorizado para celebrar las operaciones de*

*crédito público que considere convenientes con la sola obligación de mantener informada a la Asamblea Nacional de sus actuaciones, está contraviniendo literalmente el mandato constitucional al que nos referimos supra".*

Que la intención del constituyente de establecer expresamente este control por parte de la Asamblea Nacional respecto de determinados actos del Ejecutivo Nacional, específicamente, en la celebración de ciertos contratos de crédito público, *"la podemos encontrar incluso, con la lectura de la exposición de motivos del constituyente, cuando en la Sección Cuarta referida a los contratos de interés público dice textualmente lo siguiente: 'En materia de contratos de interés público se mantiene, en general, la regulación constitucional existente, aunque se mejora su redacción. Se prevé, así, como regla general que los contratos de interés público nacional deberán ser aprobados por la Asamblea nacional en los casos que determine la ley. No obstante, se establece con carácter preceptivo esta aprobación en los supuestos de contratos de interés público nacional, estadal o municipal si los mismos pretenden celebrarse con Estados o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela".*

Que de acuerdo a lo indicado en la exposición de motivos de la Constitución de la República Bolivariana de Venezuela, la intención del constituyente fue *"darle a las negociaciones de interés público, como lo son las operaciones de crédito público, una celeridad y efectividad que con la Constitución de 1961 carecían y las cuales eran resueltas con el uso indiscriminado de la excepción primera establecida en el artículo 126"* de dicho texto constitucional.

Que con la Constitución de 1961 *"se creó una situación de hecho en la cual cada vez que se quería celebrar un contrato, ya sea con entidades extranjeras o nacionales, los mismos eran calificados como necesarios para el normal desarrollo de la administración pública y así se obviaba el lento procedimiento de aprobación por parte del Congreso de Nacional, para cada una de las contrataciones".*

Que a los efectos de resolver dicha situación, el constituyente de 1999 pretendió establecer dos condiciones*: "1) darle la potestad al legislativo de establecer los casos específicos en los cuales hacer uso de su poder constitucional de control sobre los otros órganos del Poder Público, lo cual sería en el caso que nos ocupa, qué tipo de operaciones de crédito público celebradas por el Ejecutivo Nacional requerirán de autorización de la Asamblea Nacional para su ejecución mediante ley especial y 2) mantener la necesidad de autorización de la Asamblea Nacional para los casos de contratos de interés público*

*municipal, estadal o nacional a celebrarse con Estados o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela".*

Que de acuerdo con lo antes expuesto, cuando el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público establece que una vez sancionada la ley de endeudamiento anual, el Ejecutivo Nacional procederá a celebrar las operaciones de crédito público en las mejores condiciones financieras que puedan obtenerse e informará periódicamente a la Asamblea Nacional, *"lo que está haciendo es generalizar en cuanto a cada uno de los convenios a realizarse y en cuanto a los entes con los que se está contratando, es decir, con la sola aprobación de la ley de endeudamiento la Asamblea Nacional estaría dando una autorización general para todas las operaciones de crédito público, incluidas las que se celebren con Estados o entidades extranjeras o empresas no domiciliadas en Venezuela".*

Que al establecer semejante autorización general, el último párrafo del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público *"está contraviniendo el mandato constitucional de autorización por cada una de las operaciones de interés público, como son las operaciones de crédito público que tengan como contraparte los entes ya señalados".*

Que la disposición contenida en el último párrafo del referido artículo 80, vulnera los principios consagrados en los artículos 7 (supremacía de la constitución) y 137 (principio de legalidad) de la Constitución de la República Bolivariana de Venezuela, los cuales *"son base del Estado democrático y social de Derecho y de Justicia establecido en el artículo 2 de la Constitución y constituyen garantías de los valores superiores en él propugnados ya que el respeto y la sumisión por parte de quienes conforman y ejercen el Poder Público a la Ley Suprema, permite que se cumplan con los fines expresados en el Preámbulo de la Constitución".*

Que cuando el legislador dicta el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público, quebrantó el principio de legalidad y de supremacía de la Constitución ya que *"aun cuando (...) actuó en ejercicio de sus atribuciones constitucionales, no respetó el límite establecido por ella misma en los artículos 150 y 187, numeral 9, en otras palabras, si bien es cierto que el legislador está plenamente facultado para legislar sobre la materia referida a los contratos de interés público, dicha atribución tiene un límite constitucional invariable y es aquél según el cual toda operación de crédito público que celebre el Ejecutivo Nacional con Estado, entes*

*oficiales extranjeros o empresas no domiciliadas en Venezuela requerirán de la autorización previa de la Asamblea Nacional".*

Que con base en los artículos de la Constitución invocados y de acuerdo al razonamiento anterior, cuando la Comisión Nacional Legislativa estableció en el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público que con la sola aprobación de la ley de endeudamiento el Ejecutivo Nacional ya quedaba autorizado para celebrar aquellas operaciones de crédito público que considerara convenientes, con el solo deber de mantener informada a la Asamblea Nacional, incurre *"en violación directa a las normas constitucionales, pues está contraviniendo el precepto constitucional de autorización de la Asamblea Nacional para efectuar operaciones de crédito público con Estados, entes oficiales extranjeros o empresas no domiciliadas en Venezuela, que es en definitiva lo que la Constitución establece expresamente para la materia sobre los contratos de interés público en su artículo 150".*

Que si bien es cierto que la separación en ramas del Poder Público es un principio fundamental para el establecimiento y ejercicio del poder en cualquier Estado democrático, no es menos cierto que cada uno de los órganos que integran dichas ramas debe ejercer algún control sobre las actividades que realizan los otros, motivo por el cual es necesario atender a lo que el constituyente pretendió con las disposiciones contenidas en los artículos 150 y 187, numeral 9, de la Constitución de la República Bolivariana de Venezuela.

Que a los efectos de precisar con mayor detenimiento la vulneración de las disposiciones constitucionales antes referidas, resulta necesario tomar en consideración el significado de algunos términos contenidos en la Ley Orgánica de la Administración Financiera del Sector Público, en la que crédito público se define como *"la capacidad de los entes regidos por ella para endeudarse por lo cual, operaciones de crédito público son, de acuerdo con el artículo 77 ejusdem, cada uno de los convenios por los cuales dicho endeudamiento se materializa".*

Que la ley de endeudamiento *"es aquella que contendrá los límites máximos del endeudamiento, es decir, el monto máximo de las operaciones de crédito público a contratar, el endeudamiento neto así como el monto máximo de las letras del tesoro que podrán estar en circulación dentro de un determinado ejercicio presupuestario (artículo 80 LOAFSP) pero en sí, ella no supone aprobación a operaciones de crédito público, supone aprobación a la intención de celebrarlas ya que la operación sólo podrá ser determinada*

*cuando exista o se concrete la voluntad de ambas partes contratantes en celebrarla bajo condiciones contractuales y financieras específicas"*.

Que precisamente en el punto de la contratación es que el control del Legislativo Nacional sobre el Ejecutivo Nacional juega un papel preponderante, ya que las operaciones de crédito público *"suponen un contrato en el cual el establecimiento del organismo con el cual se contrata, los plazos de pago, interés que la deuda generará, garantías a ser acordadas y demás fijación de condiciones financieras, lo individualizará y estas condiciones, si no se tratan de verificar al máximo que sean las mejores condiciones financieras que puedan obtenerse, en un momento determinado podrían significar un perjuicio al régimen económico y fiscal del país que en definitiva afectaría el sistema económico no sólo del país sino de cada uno de sus habitantes"*.

Que tal situación puede percibirse con claridad con un ejemplo en el cual *"se celebró una operación de crédito público en la cual parte de sus condiciones son la fijación de un bajo interés que la deuda generará pero con un plazo muy corto para el inicio de los pagos que amortizaran la deuda, independientemente de que dicha operación se encuentre dentro de los límites de montos aprobados por la ley de endeudamiento, si para el momento particular, Venezuela no tenía la liquidez monetaria necesaria para empezar a efectuar los pagos, la balanza de pagos se desequilibrará siendo necesario obtener los recursos de donde no estaba previsto, produciendo un desequilibrio presupuestario y fiscal"*.

Que la razón por la cual la Constitución establece un mandato expreso de autorización previa por la Asamblea Nacional cuando la operación de crédito público se celebre con entes foráneos, es que cuando se celebran tales operaciones el dinero destinado al pago de las obligaciones contraídas sale de Venezuela, de la economía nacional, y *"más aún, nuestra línea de crédito se podría ver afectada así como la percepción de una economía establece y sana que los organismos extranjeros puedan tener sobre el país"*.

Que en tal sentido, cuando el constituyente estableció la necesidad de un control previo sobre el Ejecutivo cuando el mismo efectúe operaciones de crédito público con Estados, entidades oficiales extranjeras o empresas no domiciliadas en Venezuela, *"lo hizo con la intención de asegurar que las mejores condiciones financieras efectivamente se estén obteniendo y no dejar en manos de un solo órgano del Poder Público la*

*responsabilidad de tomar decisiones trascendentales para la sana economía del país así como de la imagen que de nosotros el mundo financiero internacional pueda tener".*

Que en el supuesto negado que se considere que con la sola aprobación de la ley de endeudamiento ya el Ejecutivo Nacional está facultado para celebrar cualquier tipo de operaciones de crédito público, ello *"abriría la posibilidad de que el Ejecutivo, cuando efectivamente celebre el convenio, incurra en el vicio de usurpación de funciones, vgr. si el Ejecutivo celebra una operación de crédito público con el Banco Interamericano de Desarrollo sin previamente haber obtenido la autorización de la Asamblea Nacional, se estaría omitiendo el control constitucional que sobre la materia está expresamente preceptuado y la incompetencia constitucional se materializaría por la invasión del mandato de control previo del Legislativo en las operaciones de crédito público celebradas con Estados, entes oficiales extranjeros o empresas no domiciliadas en Venezuela y el Ejecutivo las concrete sin haber cumplido con este requisito previo".*

Que tal actuación por parte del Ejecutivo Nacional sería contraria a lo establecido en el artículo 137 de la Constitución, *"y traería como consecuencia la nulidad del acto, tal y como lo prevé el artículo 138 de la Constitución, según el cual toda autoridad usurpada es ineficaz y sus actos son nulos".*

Con fundamento en los argumentos previos, los recurrentes solicitaron sea declarada la nulidad por razones de inconstitucionalidad del último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público publicada en Gaceta Oficial n° 37.029, del 5 de septiembre de 2000.

## II
## OPINIÓN DE LA PROCURADURÍA GENERAL DE LA REPÚBLICA

En su escrito de informes presentado con motivo del recurso de nulidad interpuesto en el presente caso, la representante de la Procuraduría General de la República expuso los siguientes alegatos:

Que antes de contradecir los alegatos esgrimidos por la parte recurrente en cuanto a la presunta inconstitucionalidad de la disposición impugnada, es necesario precisar algunos contenidos en torno a la naturaleza de las operaciones de crédito público y su origen legal.

Que de acuerdo al autor Héctor Villegas, el crédito público *"constituye la aptitud política, económica, jurídica y moral de un Estado para obtener dinero o bienes en préstamo, basada en la confianza de que goza por su patrimonio, los recursos de que pueda disponer y su conducta"*, y que en tal sentido *"la actividad financiera pública de un Estado tiende en su cometido más elemental e indeclinable, a la obtención y a la aplicación de unos recursos para la satisfacción de necesidades públicas"*.

Que el Estado venezolano tiene como propósito cumplir con una serie de finalidades establecidas en la Constitución de la República Bolivariana de Venezuela, pero para la realización efectiva de dichas finalidades en lo económico, político y social, mediante los planes y proyectos que en tal sentido adopta el Gobierno, requiere de recursos económicos y financieros, con los cuales no cuenta en muchas ocasiones, motivo por el cual se ve en la necesidad de *"acudir a las fuentes de financiamiento interno e externo que le permitan obtener dichos recursos"*.

Que el mecanismo idóneo con que cuenta el Estado para obtener dichos recursos es el crédito público, pues *"éste constituye el instrumento capaz de permitirle al Estado venezolano, manifestado a través del Poder Ejecutivo –órgano ejecutor de las políticas del Estado-, constituir y desarrollar obras que tiendan a mejorar el nivel de vida del venezolano y satisfacer las necesidades del gasto público que implica el funcionamiento del Estado"*.

Que resulta necesario precisar cuál es el marco legal que rige las operaciones de crédito público, pues en opinión de los recurrentes, éstas *"son contratos de interés público nacional que requieren de la aprobación de la Asamblea Nacional, de conformidad con lo dispuesto en los artículos 150 y 187, numeral 9, de la Constitución"*.

Que si bien las operaciones de crédito público y empréstitos son incluidas por autores como Alfredo Morles Hernández en la categoría de contratos de interés público, *"no es menos cierto que su régimen es especial y por tanto diferente al de los contratos de interés público nacional destinados a satisfacer necesidades de interés general, tales como la construcción de viviendas, carreteras u hospitales"*.

Que las operaciones de crédito público están vinculadas al concepto de Hacienda Pública Nacional, la cual es definida por el autor Luis Casado Hidalgo *"como el conjunto de*

*bienes, rentas y deudas que conforman el activo y el pasivo de la Nación y de todos los demás bienes y rentas cuya administración corresponde al Poder Nacional".*

Que bajo este concepto (Hacienda Pública Nacional) se fundamenta la competencia atribuida al Presidente de la República por los numerales 11 y 12 del artículo 236 de la Constitución de la República Bolivariana de Venezuela, por cuanto es el Ejecutivo Nacional *"quien elabora y suscribe los contratos relativos a las operaciones de crédito público, dentro de los límites y aprobación que le establece la Asamblea Nacional. Estos límites legales están contenidos en la Ley Orgánica de la Administración Financiera del Sector Público, en la Ley de Presupuesto y en la Ley que Autoriza al Ejecutivo Nacional para la Contratación y Ejecución de Operaciones de Crédito Público (ahora Ley de Endeudamiento Anual)".*

Que por tal razón, cuando la Asamblea Nacional aprueba las leyes mencionadas, está ejerciendo el control legislativo sobre las actuaciones del Poder Ejecutivo, en ejercicio de sus competencias, tal y como lo dispone el numeral 6, del artículo 187 de la Constitución de la República Bolivariana de Venezuela, según el cual "corresponde a la Asamblea Nacional discutir y aprobar el presupuesto nacional y todo proyecto de ley concerniente al régimen tributario y al crédito público".

Que precisamente, cuando la Asamblea Nacional ejerce su competencia (control) constitucional al aprobar las leyes concernientes al presupuesto y a las operaciones de crédito público, pues en ellas *"está autorizando los límites para la celebración de los contratos sobre operaciones de crédito público que suscriba el Ejecutivo Nacional, ya sea con Estados, o entidades extranjeras o no domiciliadas en Venezuela, quedando como única obligación de éste, el informar a la Asamblea Nacional todo lo relacionado a dichas operaciones, tal y como lo disponen los artículos 79 y 80 de la Ley Orgánica de la Administración Financiera del Sector Público".*

Que consecuencia de lo anterior es que *"estos contratos de interés público nacional -operaciones de crédito público- incluyendo los suscritos con Estados o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela, no están sometidos al control de aprobación previo de la Asamblea Nacional, previsto en los artículos 150 y 187, numeral 9, sino a un régimen de información por parte del Ejecutivo al Poder Legislativo, toda vez que, en los mismos tienen un procedimiento especial para su aprobación, que es el contemplado por las leyes que regulan la materia".*

Que al aprobar la Asamblea Nacional la Ley de Presupuesto y la Ley que Autoriza al Ejecutivo Nacional para la Contratación y Ejecución de Operaciones de Crédito Público (hoy Ley de Endeudamiento), *"está directamente aprobándole al ejecutivo Nacional, la contratación de operaciones de crédito público, pues los referidos cuerpos normativos establecen el marco general, que le impone los límites y montos al Ejecutivo para celebrar los contratos sobre operaciones de crédito público"*.

Que la afirmación anterior es corroborada por el artículo 76 de la Ley Orgánica de la Administración Financiera del Sector Público al disponer que *"las operaciones de crédito público se regirán por las disposiciones de esta Ley, su reglamento, las previsiones de la ley del marco plurianual del presupuesto y por las leyes especiales, decretos, resoluciones y convenios relativos a cada operación"*.

Que las operaciones de crédito público se encuentran expresamente reguladas por la Ley Orgánica de la Administración Financiera del Sector Público, la Ley de Presupuesto y la Ley de Endeudamiento, de conformidad con la Constitución de la República Bolivariana de Venezuela, *"por lo que el control ejercido por la Asamblea Nacional sobre la contratación de estas operaciones por parte del Ejecutivo Nacional, Estadal, Municipal y de otros entes públicos, no se rige por lo previsto en los artículos 150 y 187, numeral 9, de la Constitución"*.

Que distinto es el régimen aprobatorio para los contratos de interés público nacional que están expresamente regulados por los artículos 150 y 187, numeral 9, de la Constitución, por cuanto los contratos a que alude la referida disposición constitucional, *"tienen como objeto la satisfacción directa de necesidades de carácter general, tal y como fue señalado precedentemente"*.

Que consecuencia de lo anterior, es que el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público "se encuentra en total concordancia con la Constitución, toda vez, que siendo aprobadas por ley las operaciones de crédito público, se hace innecesario un control de aprobación previo, sobre las mismas, por cuanto están debidamente autorizadas por la Asamblea Nacional, estableciéndose como única obligación del Ejecutivo Nacional, el mantener informado al Poder Legislativo.

Que respecto de la presunta vulneración por parte del último párrafo del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público de los artículos 7 y 137 de la Constitución de la República Bolivariana de Venezuela, resultaba pertinente

indicar que el principio de legalidad consagrado en las disposiciones contenidas en los artículos antes referidos, constituye el marco de referencia de la actuación de los órganos del Poder Público, no siendo el mismo susceptible de infracción sino sólo en aquellos casos en que se alegue *"la infracción de otra norma"*.

Que el artículo 137 de la Constitución de la República Bolivariana de Venezuela no consagra derecho alguno a favor de los particulares, y que de acuerdo a la jurisprudencia de la Sala Político Administrativa de la antigua Corte Suprema de Justicia y de la Sala Político Administrativa de este Tribunal Supremo de Justicia, *"resulta improcedente la denuncia de los recurrentes, pues desconocen lo que es el ejercicio de la función legislativa por parte de los miembros de la Asamblea Nacional y el sometimiento de este cuerpo a las normas constitucionales, como su marco de referencia, por constituir la Constitución la norma fundamental del Estado"*.

Que siendo la Constitución el marco de referencia del ejercicio de las competencias atribuidas por aquella a la Asamblea Nacional, no resulta comprensible *"que el cuerpo legislativo viole al dictar las leyes, el principio de legalidad, cuando su norte fundamental es el respecto de la Constitución, como norma fundamental y programática que es, en el ordenamiento jurídico"*.

Que ha de tenerse en cuenta, a propósito del principio de legalidad, que los numerales 11, 12 y 14 del artículo 236 de la Constitución de la República Bolivariana de Venezuela atribuyen en forma expresa al Presidente de la República las competencias específicas en materia de Hacienda Pública Nacional, las cuales comprenden *"la elaboración del presupuesto nacional, los empréstitos y la celebración de los contratos de interés nacional, bajo los cuales están contempladas las operaciones de crédito público"*.

Que al dictar la Ley Orgánica de la Administración Financiera del Sector Público y las demás leyes mencionadas, la Asamblea Nacional se ajustó a las competencias que le atribuye el artículo 187, por cuanto a través de la aprobación de tales leyes *"controla las operaciones de crédito público –contratos de interés nacional de naturaleza sui generis-, por tratarse de negociaciones sometidas a un régimen legal especial"*.

Que resulta necesario examinar el contenido de las disposiciones contenidas en los numerales 1, 6 y 9 del artículo 187 de la Constitución, a fin de precisar que entre las competencias atribuidas a la Asamblea Nacional se encuentran la de aprobar y dictar las leyes relativas al crédito público, así como la regulación mediante ley de algunos contratos

de interés público nacional, "entre los que se encuentran los contratos relativos a las operaciones de crédito público".

Que al no ser aplicable a los contratos celebrados en el marco de operaciones de crédito público nacional la previsión establecida en el artículo 150 de la Constitución de la República Bolivariana de Venezuela, en virtud de estar éstos sometidos a un régimen especial establecido en la ley, de conformidad con lo establecido en el numeral 9, del artículo 187, del mismo Texto Constitucional, no es posible afirmar que se haya producido la violación del principio de legalidad.

Que en cuanto a la denuncia de presunta usurpación de funciones, es pertinente señalar que los recurrentes reconocen que la aprobación por parte de la Asamblea Nacional de la Ley de Endeudamiento Anual *"lleva consigo la aprobación y autorización de los contratos sobre operaciones de crédito público, que son una especie de contratos públicos de interés nacional"*, pero que a pesar de ello *"pretenden señalar que en los casos en que el Ejecutivo Nacional contrate una operación de crédito público con Estados, o entidades extranjeras o no domiciliadas en Venezuela, sin someterse al control de la Asamblea Nacional, se estaría omitiendo el control constitucional, configurándose la incompetencia constitucional y la usurpación de funciones"*.

Que la incompetencia como vicio de ilegalidad se manifiesta, de acuerdo con la autora Beatrice Sansó, *"en todo acto dictado por un funcionario que no esté dotado de atribución expresa legal para ello"*, mientras que la usurpación de funciones, conforme a la doctrina y a la jurisprudencia de la Sala Político Administrativa de la antigua Corte Suprema de Justicia *"vendría a constituir el ilegal ejercicio de las competencias atribuidas constitucionalmente a unos poderes por parte de otros que no las detentan"*.

Que de acuerdo con lo anterior, existe *"una enorme diferencia entre lo que se entiende por incompetencia legal o extralimitación de atribuciones y el concepto de usurpación de funciones, ya que la primera es indicativa de que el órgano de la Administración, ha dictado o realizado una actividad para la cual no tiene atribuida competencia por el ordenamiento jurídico, mientras que la usurpación de funciones supone la invasión de un órgano de los poderes públicos –ya sea horizontal o vertical- en las competencias atribuidas constitucionalmente a otro poder"*.

Que en criterio de la Procuraduría General de la República, no se materializa en el presente caso el vicio de usurpación de funciones, por cuanto la aprobación por parte de la

Asamblea Nacional de las leyes de presupuesto y endeudamiento anual, conduce *"inevitablemente a la autorización al Poder Ejecutivo Nacional, para suscribir contratos relativos a las operaciones de crédito público –contratos de interés público nacional-, ya sean éstos suscritos con Estados, entidades nacionales o extranjeras (...) quedando sometido este poder a un control de información –último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público- puesto que el control de aprobación previsto en la Constitución de 1999, se cumplió al aprobar y dictar la Asamblea Nacional, los respectivos proyectos de leyes sometidos a su consideración por el Ejecutivo Nacional"*.

Que en conclusión, aun siendo las operaciones de crédito público contratos de interés público nacional, es preciso advertir que aquellas se encuentran sometidas a un régimen constitucional especial *"que los difiere en esencia de los contratos de interés público nacional, en sentido estricto, toda vez que los mismos tienen una función distinta a la de satisfacer necesidades de interés general –contratos de obras, servicios públicos-, que no es otra que la de dotar de recursos al Poder Ejecutivo para cumplir con las finalidades mismas del Estado"*.

Con base en los razonamientos previos, al representante de la Procuraduría General de la República solicitó que el recurso de nulidad por inconstitucionalidad interpuesto contra el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público publicada en Gaceta Oficial n° 37.029, del 5 de septiembre de 2000, fuera declarado sin lugar.

### III
### DE LA COMPETENCIA

En el presente caso, se interpuso un recurso de nulidad por razones de inconstitucionalidad contra el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público, publicada en Gaceta Oficial n° 37.029, del 5 de septiembre de 2000.

Actualmente, tal y como lo estableciera la Sala desde su decisión n° 6/2000, del 27 de febrero, *caso: Milagros Gómez y otros*, la competencia para declarar la nulidad total o parcial de las leyes nacionales que coliden con lo establecido en la Constitución, en tanto

norma suprema y fundamento de todo el ordenamiento jurídico, corresponde a esta Sala Constitucional del Tribunal Supremo de Justicia, de acuerdo a lo dispuesto en el artículo 336, numeral 1, de la Constitución de la República Bolivariana de Venezuela.

En razón de lo anterior, y visto que en el caso planteado, los ciudadanos Andrés Velásquez, Elias Mata y Enrique Márquez interpusieron recurso de nulidad por razones de inconstitucionalidad contra el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público publicada en Gaceta Oficial n° 37.029, del 5 de septiembre de 2000, disposición de rango legal emanada de la Comisión Legislativa Nacional, esta Sala Constitucional resulta competente para conocer de la presente impugnación. Así se decide.

## IV
## MOTIVACIONES PARA DECIDIR

Tratándose el presente, según lo decidido por esta Sala en sentencia n° 2.051/2001 del 24 de octubre, de un caso de mero de derecho, le corresponde pronunciarse sobre el recurso de nulidad por inconstitucionalidad incoado y, a tal efecto, procede a exponer las motivaciones siguientes:

Los ciudadanos recurrentes presentan como denuncia principal que el contenido del último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público, al establecer un sistema de información periódica -y no de autorización previa- por parte del Ejecutivo Nacional a la Asamblea Nacional de las operaciones de crédito público que aquél realice una vez aprobada la ley de endeudamiento anual, sin excluir aquéllas en las que se celebren contratos de interés público nacional con Estados, entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, infringe las disposiciones contenidas en los artículos 150, primer aparte, y 187, numeral 9, de la Constitución de la República Bolivariana de Venezuela, en los que se consagra un sistema de control previo por parte de la Asamblea Nacional en aquellos casos donde se celebren contratos de interés público (categoría en la que serían subsumibles los contratos celebrados con motivo de operaciones de crédito público) nacional, estadal y municipal con Estados, entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, y que en razón de ello también resultan vulnerados por la referida disposición legal los artículos 2, 7 y 137 del Texto Constitucional.

La Procuraduría General de la República, al rebatir el recurso de nulidad interpuesto, aduce como argumento principal en su escrito de informes que, si bien dentro de las operaciones de crédito público puede estar contemplada la celebración de contratos de interés público nacional por parte del Estado venezolano con Estados, entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, la celebración de dichos contratos no está sometida al sistema de control previo por parte de la Asamblea Nacional que preceptúan los artículos 150 y 137, numeral 9, de la Constitución de la República Bolivariana de Venezuela, aplicable en criterio de la Procuraduría sólo a aquellos contratos que tienen por objeto la satisfacción directa de necesidades de carácter general (por ejemplo, construcción de carreteras, autopistas u hospitales), sino a un sistema de información por parte del Ejecutivo a la Asamblea Nacional, ya que en tales casos (donde se celebran contratos de interés público nacional en el marco de operaciones de crédito público) el órgano legislativo nacional ejercería su control previo mediante la sanción de las leyes que establecen el marco en que el Ejecutivo Nacional, en tanto representante del Estado venezolano, puede celebrar operaciones de crédito público con otros Estados, entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela.

Precisados así los límites de la controversia de mero derecho suscitada en la presente causa, pasa la Sala a examinar el contenido del último aparte de la disposición legal presuntamente inconstitucional, la cual se encuentra ubicada en el Capítulo II "De la Autorización para Celebrar Operaciones de Crédito Público", del Título III "Del Sistema de Crédito Público", de la Ley Orgánica de la Administración Financiera del Sector Público, la cual establece:

> "**Artículo 80.** Conjuntamente con el proyecto de ley de presupuesto, el Ejecutivo presentará a la Asamblea Nacional, para su autorización mediante ley especial que será promulgada simultáneamente con la ley de presupuesto, el monto máximo de las operaciones de crédito público a contratar durante el ejercicio presupuestario respectivo por la República, el monto máximo de endeudamiento neto que podrá contraer durante ese ejercicio; así como el monto neto que podrá contraer durante ese ejercicio; así como el monto máximo de letras del tesoro que podrán estar en circulación al cierre del respectivo ejercicio presupuestario.
>
> Los montos máximos referidos se determinarán, de conformidad con las previsiones de la ley del marco plurianual del presupuesto, atendiendo a la capacidad de pago y a los requerimientos de un desarrollo ordenado de la economía, y se tomarán como referencia los ingresos fiscales previstos para el año, las exigencias del servicio de la deuda existente, el producto interno bruto, el ingreso de exportaciones y aquellos índices macroeconómicos

elaborados por el Banco Central de Venezuela u otros organismos especializados, que permitan medir la capacidad económica del país para atender las obligaciones de la deuda pública.

Una vez sancionada la ley de endeudamiento anual, el Ejecutivo Nacional procederá a celebrar las operaciones de crédito público en las mejores condiciones financieras que puedan obtenerse e informará periódicamente a la Asamblea Nacional" (Subrayado de la Sala).

Por su parte, las disposiciones constitucionales presuntamente vulneradas por el último aparte del precitado artículo 80, se encuentran, la primera de ellas, en la sección cuarta "De los Contratos de Interés Público", del Capítulo I "Disposiciones Fundamentales", correspondiente al Título IV "Del Poder Público" de la Constitución de la República Bolivariana de Venezuela, en la cual se consagra:

"**Artículo 150.** La celebración de los contratos de interés público nacional requerirá la aprobación de la Asamblea Nacional en los casos que determine la ley.

No podrá celebrarse contrato alguno de interés público municipal, estadal o nacional con Estado o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela, ni traspasarse a ellos sin la aprobación de la Asamblea Nacional.

La ley podrá exigir en los contratos de interés público determinadas condiciones de nacionalidad, domicilio o de otro orden, o requerir especiales garantías" (Subrayado de la Sala).

La segunda de las disposiciones presuntamente vulneradas se encuentra en la sección primera "Disposiciones Generales", del Capítulo I "Del Poder Legislativo Nacional", correspondiente al Título V, "De la Organización del Poder Público Nacional" de la Constitución de la República Bolivariana de Venezuela, donde se dispone lo siguiente:

"**Artículo 187.** Corresponde a la Asamblea Nacional:

(...omissis...)

9. Autorizar al Ejecutivo Nacional para celebrar contratos de interés nacional, en los casos establecidos en la ley. Autorizar los contratos de interés público municipal, estadal o nacional con Estados, entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela" (Subrayado de la Sala).

Como cuestión preliminar al examen de las razones esgrimidas tanto por la parte recurrente como por la Procuraduría General de la República, resulta necesario precisar que, en criterio de esta Sala, la Constitución vigente eliminó la distinción que la Constitución de la República de Venezuela de 1961 establecía entre contratos de interés público y contratos de interés nacional, por cuanto de la letra misma de los artículos 150 y 187, numeral 9, antes citados, se evidencia la adopción por el constituyente de la categoría genérica "contratos de interés público", de la cual serían especies las de contratos de interés público "nacional, "estadal" y "municipal", siendo así irrelevante en el presente caso entrar a examinar las distinciones o similitudes que en el pasado pudieran haberse formulado entre nociones jurídicas que, en la actualidad, se encuentran debidamente formuladas por el Texto Constitucional.

También considera esta Sala que en el encabezado y en el primer aparte del artículo 150 de la Constitución de la República Bolivariana de Venezuela se consagraron dos supuestos de hecho distintos, que dan lugar a dos mecanismos de control por parte de la Asamblea Nacional sobre los contratos de interés público nacional celebrados por el Ejecutivo Nacional, correspondiendo el primero de ellos al ejercicio por el órgano legislativo nacional con posterioridad a la celebración del contrato -como condición de eficacia de la contratación- sólo en aquellos casos en que expresamente lo determine la ley; y el segundo, al ejercicio por el órgano legislativo nacional con anterioridad a la celebración del contrato -como condición de validez de la contratación- en todos aquellos casos en que la República (así como los Estados y Municipios) a través del Ejecutivo Nacional, suscriba contratos con Estados, entidades oficiales extranjeras y sociedades no domiciliadas en Venezuela.

En cuanto a las dudas que pudieran surgir respecto a este segundo mecanismo de control por parte de la Asamblea Nacional, si se refiere a un control previo a la celebración y, en consecuencia, necesario para la validez del contrato o si se trata de un control posterior a la celebración y entonces necesario para la eficacia del contrato, en vista del uso por parte del constituyente del término *aprobación* en el primer aparte del artículo 150 de la Constitución, y del término *autorización*, en la segunda parte del numeral 9 del artículo 187 del mismo Texto Constitucional, debe esta Sala dejar sentado que, en virtud de la expresión *"no podrá celebrarse contrato alguno de interés público municipal, estadal o nacional..."* contenida en la primera de las referidas disposiciones constitucionales (artículo

150), debe concluirse que este segundo mecanismo de control consiste en una autorización que debe ser otorgada en forma previa a la celebración del contrato de interés público nacional, estadal o municipal por el órgano legislativo nacional, al efecto de que la contratación a celebrar pueda reconocerse como válida, de acuerdo con la Constitución.

Ciertamente, *"si el contrato no puede celebrarse, evidentemente, se trata de una autorización, de una condicio iuris para su validez, y el texto mismo de la norma confirma que se trata de un acto previo, pues –insistimos- el contrato <no podrá celebrarse>. Entonces, la disposición contenida en el artículo 187, numeral 9 es la que debe prevalecer y aparece correctamente redactada: corresponde a la Asamblea Nacional autorizar al Ejecutivo Nacional para celebrar contratos de interés nacional y autorizar los contratos de interés municipal, estadal y nacional con Estado o entidades nacional extranjeras o con sociedades no domiciliadas en Venezuela"* (Jesús Caballero Ortiz, "Los contratos administrativos, los contratos de interés público y los contratos de interés nacional en la Constitución de 1999", en*Libro Homenaje a la Universidad Central de Venezuela*, Caracas, TSJ, 2001, p. 147).

Precisado lo anterior, pasa la Sala a examinar si efectivamente, tal y como lo sostienen los recurrentes, sin contradicción por parte de la Procuraduría General de la República, el Ejecutivo Nacional al realizar operaciones de crédito público puede celebrar contratos susceptibles de ser incluidos en la noción de contrato de interés público nacional, de acuerdo al significado que se atribuye a dicha expresión jurídica, propia de nuestra tradición constitucional.

A los efectos de precisar el sentido de la noción de *contrato de interés público*, expresión que aparece por primera vez en la Constitución de 1893 y se mantiene en los Textos Constitucionales de 1901, 1904, 1909, 1914, 1922, 1925, 1925, 1928, 1929, 1931, 1936, 1945, 1947, 1951, 1961, hasta la vigente de 1999, la doctrina nacional ha propuesto distintas interpretaciones, como la desarrollada por el autor Eloy Lares Martínez, quien al referirse a la expresión examinada, para entonces contenida en el artículo 126 de la Constitución de 1961 señaló: *"existe una expresión genérica –la de contratos de interés público- que consideramos administrativo y expresiones específicas que son: contratos de interés nacional, contratos de interés estadal y contratos de interés municipal, ya que el interés público puede ser nacional, estadal o municipal"* ("Contratos de Interés Nacional", en *Libro Homenaje al Profesor Antonio Moles Caubet*, Tomo I, Caracas, UCV, 1981, p. 117),

En tal sentido, para el autor citado es necesario, pero no suficiente, que una de las partes en la contratación fuera la República, debiendo además exigirse que el contrato celebrado tuviera por finalidad el atender, de modo inmediato y directo, requerimientos de interés general (Cfr. _Manual de Derecho Administrativo,_ Caracas, UCV, 1996, p. 321).

Un sector de la doctrina, en armonía con la actual regulación constitucional de los contratos de interés público, ha sostenido, atendiendo a la división en tres niveles político-territoriales del Poder Público, que los contratos de interés público constituyen el género mientras que los contratos de interés público nacional, estadal y municipal constituyen especies de aquél (Cfr. Allan R. Brewer Carías, _Estudios de Derecho Público_ Tomo I, Caracas, 1983, pp. 186 y 187), mientras que otro sector, apartándose de las interpretaciones precedentes, y haciendo énfasis en aspectos cuantitativos, ha expresado que cuando en los textos constitucionales se adopta la fórmula _contrato de interés público_, ha sido para referirse a aquellas "grandes contrataciones" susceptibles de comprometer gravemente el patrimonio económico de la República, de exponerla a pérdidas graves o inclusive a reclamaciones internacionales que pudieran llegar a atentar contra la soberanía o la integridad del país (Cfr. José Melich Orsini, La Noción de Contrato de Interés Público, en _Revista de Derecho Público n° 7_, Caracas, 1981, p. 61)

Profundizando en el criterio cuantitativo acogido por la última de las interpretaciones referidas, se ha advertido en distintos análisis respecto del sentido que ha de atribuírsele que la noción de contrato de interés público, que la gran preocupación del constituyente, al aprobar los textos de las Constituciones antes indicadas, ha girado en torno a cuestiones como los compromisos económicos o financieros que pueden resultar a cargo del Estado, el temor a que se malgasten o dilapiden los fondos públicos, la necesidad de conservar los bienes patrimoniales o los recursos naturales del Estado, o que los mismos no sirvan para beneficiar a unos pocos en detrimento de todos, los requerimientos, inherentes a todo sistema democrático de gobierno, de control sobre los poderes de la Administración, para evitar abusos, favoritismos, etc (Cfr. Gonzalo Pérez Luciani, "Contratos de Interés Nacional, Contratos de Interés Público y Contratos de Empréstito Público", en _Libro Homenaje al Doctor Eloy Lares Martínez_, Tomo I, Caracas, 1984, p. 103).

La discusión doctrinal existente durante la vigencia de la Constitución de 1961, entre las expresiones contrato de interés público y contrato de interés nacional, ha sido, como se indicara previamente, resuelta por la Constitución de la República Bolivariana de

Venezuela, ya que en su artículo 150 estableció claramente la relación de género-especies que existe entre la noción de contrato de interés público y las nociones de contrato de interés público nacional, estadal y municipal, en las cuales lo determinante sería la participación de la República, los Estados o los Municipios.

Sin embargo, la Constitución vigente no indica qué sentido ha de atribuírsele a la noción de contrato de interés público, motivo por el cual esta Sala, tomando en consideración las interpretaciones previamente examinadas, en tanto máximo y último intérprete del Texto Constitucional, considera que son subsumibles en dicho género todos aquellos contratos celebrados por la República, los Estados o los Municipios en los cuales esté involucrado el interés público nacional, estadal o municipal, entendido éste, de acuerdo con el autor Héctor J. Escola, como *"el resultado de un conjunto de intereses individuales compartidos y coincidentes de un grupo mayoritario de individuos, que se asigna a toda la comunidad como consecuencia de esa mayoría, y que encuentra su origen en el quehacer axiológico de esos individuos, apareciendo con un contenido concreto y determinable, actual, eventual o potencial, personal y directo respecto de ellos, que pueden reconocer en él su propio querer y su propia valoración, prevaleciendo sobre los intereses individuales que se le opongan o afecten, a los que desplaza o sustituye, sin aniquilarlos"* (*El Interés Público como Fundamento del Derecho Administrativo*, Buenos Aires, Depalma, 1989, pp. 249 y 250).

En tal sentido, estarán incluidos dentro de la especie de contratos de interés público nacional, todos aquellos contratos celebrados por la República, a través de los órganos competentes para ello del Ejecutivo Nacional cuyo objeto sea determinante o esencial para la realización de los fines y cometidos del Estado venezolano en procura de dar satisfacción a los intereses individuales y coincidentes de la comunidad nacional y no tan solo de un sector particular de la misma, como ocurre en los casos de contratos de interés público estadal o municipal, en donde el objeto de tales actos jurídicos sería determinante o esencial para los habitantes de la entidad estadal o municipal contratante, que impliquen la asunción de obligaciones cuyo pago total o parcial se estipule realizar en el transcurso de varios ejercicios fiscales posteriores a aquél en que se haya causado el objeto del contrato, en vista de las implicaciones que la adopción de tales compromisos puede implicar para la vida económica y social de la Nación.

Precisado así el significado que ha de atribuirse a la noción de *contratos de interés público nacional*, contenida en los artículos 150 y 187, numeral 9, de la Constitución de la

República Bolivariana de Venezuela, es menester examinar de seguida cuáles son las operaciones de crédito público que puede celebrar la República, en vista de su capacidad para endeudarse, a tenor de lo previsto en el artículo 77 de la Ley Orgánica de la Administración Financiera del Sector Público, a los efectos de establecer si dentro de tales operaciones pueden celebrarse contratos de interés público nacional:

> "**Artículo 77.** Son operaciones de crédito público:
>
> 1.La emisión y colocación de títulos, incluidas las letras del tesoro, constitutivos de empréstitos o de operaciones de tesorería.
>
> 2. La apertura de créditos de cualquier naturaleza.
>
> 3 .La contratación de obras, servicios o adquisiciones cuyo pago total o parcial se estipule realizara en el transcurso de uno o más ejercicios posteriores a aquél en que se haya causado el objeto del contrato, siempre que la operación comporte un financiamiento.
>
> 4. El otorgamiento de garantías.
>
> 5. La consolidación, conversión, unificación o cualquier forma de refinanciamiento o reestructuración de deuda pública existente".

De acuerdo con el contenido de la disposición transcrita, es claro que tales operaciones de crédito público pueden consistir en la celebración de contratos de financiamiento de determinadas obras, reformas, prestación de servicios, etc, o de empréstitos -entendidos como operación mediante la cual el Estado recurre al mercado interno o externo en demanda de fondos, con la promesa de reembolsar el capital en diferentes formas y términos, y de pagar determinado interés (Héctor B. Villegas, *"Curso de Finanzas, Derecho Financiero y Tributario"*, Buenos Aires, Depalma, 1999, p. 768)-, susceptibles de ser calificados como *contratos de interés público nacional*, por parte de la República con Estados, entidades oficiales extranjeras o sociedades mercantiles no domiciliadas en Venezuela, siendo precisamente esta situación, la que da lugar a la demanda de inconstitucionalidad del último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público, en la medida que ésta faculta al Ejecutivo Nacional a realizar, sin necesidad de autorización previa por parte de la Asamblea Nacional, operaciones de crédito público en las mejores condiciones financieras que puedan obtenerse, una vez sancionada la ley de endeudamiento anual.

Tal regulación por parte de la Ley Orgánica de la Administración Financiera del Sector Público, a pesar de la prohibición general consagrada para todos los entes regidos por dicho instrumento normativo en su artículo 79, de acuerdo con la cual ninguno de ellos (incluida la República) puede celebrar ninguna operación de crédito público sin la autorización de la Asamblea Nacional, mediante ley especial, podría llevar a pensar que, siguiendo el alegato de la Procuraduría General de la República, la autorización a que alude el primer aparte del artículo 150 de la Constitución de la República Bolivariana de Venezuela, estaría contenida en la Ley de Endeudamiento Anual que para el Ejercicio Fiscal de cada año sancione la Asamblea Nacional, por cuanto en dicha normativa se establecen los montos máximos hasta por los que el Ejecutivo Nacional puede efectuar operaciones de crédito público para el financiamiento de programas y proyectos nacionales, del pago del servicio de la deuda pública externa e interna, de la gestión fiscal, y de compromisos y transferencias, que son especificados en forma detallada por el legislador (Cfr. Ley Especial de Endeudamiento Anual para el Ejercicio Fiscal del año 2002, en Gaceta Oficial n° 5.564-A, del 24 de diciembre de 2001).

Sin embargo, no comparte esta Sala el argumento esgrimido por la Procuraduría General de la República, según el cual no es aplicable el control previo (autorización) a los contratos celebrados por el Ejecutivo Nacional con Estados, entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, con motivo de la realización de operaciones de crédito público, previsto en el primer aparte del artículo 150 y en la segunda parte del numeral 9 del artículo 187 de la Constitución de la República Bolivariana de Venezuela, por cuanto la Asamblea Nacional ejercería en tales casos su control previo mediante la aprobación de la Ley de Endeudamiento para el Ejercicio Fiscal correspondiente, de conformidad con lo establecido en la Ley Orgánica de la Administración Financiera del Sector Público. Tampoco considera pertinente el alegato de que el último aparte del artículo 80 *eiusdem* pueda establecer una excepción a la regla establecida en el artículo 79 del mismo texto legal, y en las disposiciones constitucionales antes referidas, por las razones que se expresan a continuación.

En primer lugar, no corresponden a la misma categoría jurídica las *operaciones de crédito público* que efectúa el Ejecutivo Nacional y los *contratos de interés público nacional* que puede celebrar el Ejecutivo Nacional en nombre de la República, en cuanto las primeras suponen la celebración de contratos como los antes indicados (de interés público nacional) con Estados o entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, pero no necesariamente, ya que, tal y como lo establece el

citado artículo 77 de la Ley Orgánica de la Administración Financiera del Sector Público, aquéllas (las operaciones de crédito público) pueden consistir en la realización de otras operaciones, que no implican contratación alguna, como la prevista en el numeral 1° de la referida disposición legal; de manera que cuando la Asamblea Nacional sanciona la Ley de Endeudamiento Anual para un determinado Ejercicio Fiscal, sólo fija el marco general en que el Ejecutivo Nacional puede efectuar operaciones de crédito público, es decir, en el que éste puede contraer obligaciones, deudas, en nombre de la República, pero no está controlando o autorizando los términos, estipulaciones, condiciones o acuerdos que pueden contener los contratos de interés público nacional que, en el marco de operaciones de crédito público, pueda celebrar el Ejecutivo Nacional con Estados o entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, con base, por ejemplo, en los numerales 3 y 5 del mencionado artículo 77, ya que tal control sólo puede tener lugar cuando se está ante la inminente celebración de un específico y determinado contrato de los previstos en los artículos 150, primer aparte, y 197, numeral 9, segunda parte, de la Constitución.

En segundo lugar, considera esta Sala que la Ley Orgánica de la Administración Financiera del Sector Público únicamente puede autorizar al Ejecutivo Nacional a celebrar operaciones de crédito público mediante la sola aprobación de la Ley de Endeudamiento para el Ejercicio Fiscal respectivo, sin necesidad del control consagrado en los artículos 150 y 187, numeral 9, de la Constitución de la República Bolivariana de Venezuela, cuando tales operaciones consistan en, por ejemplo, la emisión o colocación de títulos o la celebración de contratos de interés público nacional con sociedades domiciliadas en Venezuela, pero no cuando tales operaciones impliquen la celebración de contratos de interés público nacional con Estados o entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, pues en tales casos es ineludible la aplicación del sistema del control previo o autorización para la contratación por parte de la Asamblea Nacional.

Tal razonamiento tiene su basamento, por un lado, en el argumento esgrimido por los recurrentes en su escrito de impugnación, de acuerdo con el cual si bien es posible que el Ejecutivo Nacional negocie una determinada contratación en términos de intereses favorables para la Nación, también lo es, por ejemplo, que el término para cumplir las obligaciones contraídas con motivo de dicha negociación sea insuficiente o no viable financieramente para el Estado venezolano, ante la necesidad de destinar dichos recursos a la realización de los fines y cometidos que el Texto Constitucional le impone, al definirlo en su artículo 2 como Estado democrático y social de Derecho y de Justicia (ver sentencia

n° 85/2002, del 24 de enero), y por otro, en las interpretaciones examinadas precedentemente, que registran la preocupación percibida por los redactores de las Constituciones de Venezuela en cuanto a la inconveniente o imprudente celebración en diferentes períodos de nuestra historia republicana, de contratos de interés público nacional por parte del Ejecutivo Nacional, sin el control previo por el órgano legislativo nacional, en tanto representante por excelencia de la soberanía popular, en los que la Nación ha adquirido importantes compromisos económicos y financieros que luego, más que redundar en beneficios para el sistema económico del país y de contribuir en la mejora de la calidad de vida de los venezolanos, han producido verdaderos perjuicios para la economía nacional, durante varios ejercicios fiscales posteriores, en franco deterioro de las condiciones de vida de las generaciones futuras. De allí que el artículo 312 de la Constitución vigente establezca:

> "**Artículo 312.** <u>La ley fijará límites al endeudamiento público de acuerdo con un nivel prudente en relación con el tamaño de la economía, la inversión reproductiva y la capacidad de generar ingresos para cubrir el servicio de la deuda pública</u>. Las operaciones de crédito público requerirán, para su validez, una ley especial que las autorice, salvo las excepciones que establezca la ley orgánica. La ley especial indicará las modalidades de las operaciones y autorizará los créditos presupuestarios correspondientes en la respectiva ley de presupuesto.
>
> La ley especial de endeudamiento anual será presentada a la Asamblea Nacional conjuntamente con la Ley de Presupuesto.
>
> El Estado no reconocerá otras obligaciones que las contraídas por órganos legítimos del Poder Nacional, de acuerdo con la ley" (Subrayado de la Sala).

Sin duda, tal y como se desprende de la exposición de motivos, entendida como instrumento útil mas no vinculante para la interpretación del Texto Constitucional (ver sentencia n° 93/2000, del 6 de febrero), el carácter preceptivo con que el constituyente de 1999 consagró este segundo mecanismo de control previo y autorizatorio para la celebración de contratos de interés público nacional por parte del Ejecutivo Nacional con Estados o entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, responde a la necesidad manifestada por los recurrentes de proteger a la comunidad nacional de contrataciones internacionales que, al no estar sometidas al control detenido por parte del órgano representativo en todo Estado democrático de la voluntad popular

nacional, puedan celebrarse de manera ligera o negligente con graves efectos y consecuencias para la vida de los habitantes de Venezuela.

Si bien no escapa a la consideración de esta Sala el hecho de que varias de las operaciones de crédito público que realiza la República con fundamento en lo dispuesto por el artículo 77 de la Ley Orgánica de la Administración Financiera del Sector Público, como las previstas en su numeral 1 (emisión y colocación de títulos), no podrían dar lugar, de acuerdo a la interpretación establecida precedentemente, a contratos de interés público nacional, en la medida que éstas, más que pensando en la satisfacción del interés público de la comunidad nacional, son efectuadas continuamente por los órganos competentes de Poder Ejecutivo Nacional con el propósito de obtener rápidamente, ante contingencias en la dinámica económica, recursos que permitan, por ejemplo, financiar el funcionamiento de la Administración Pública, siendo en tales circunstancias no sólo irrazonable sino imposible ante las circunstancias fácticas, el pretender someter a la autorización de la Asamblea Nacional la realización de cada una de dichas operaciones, aun cuando estén involucradas, por ejemplo, sociedades no domiciliadas en Venezuela u organismos multilaterales; existen otras operaciones de crédito público que sí son generadoras de contratos de interés público nacional, y por tanto, de obligatorio control previo por parte de la Asamblea Nacional, como es el caso de aquellas operaciones en las que se acuerde el préstamo de recursos, con el consecuente endeudamiento para la Nación, o se acuerde el refinanciamiento de la deuda pública externa, entre otras.

En tercer lugar, advierte la Sala que cuando las disposiciones contenidas en los artículos 150 y 187, numeral 9, segunda parte, de la Constitución de la República Bolivariana de Venezuela establecen el control previo por parte de la Asamblea Nacional sobre los contratos de interés público que celebre la República, los Estados o los Municipios con Estados o entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, no incluyen distinciones en cuanto a la forma de ejercer dicho control en el caso de la República, respecto a la forma de controlar a los Estados y Municipios, es decir, no señala que al Ejecutivo Nacional lo controlará mediante la aprobación de leyes, y a los Ejecutivos Estadales y Municipales mediante una autorización del contrato en particular a celebrar, siendo igualmente inadmisible suponer que, mediante la aprobación de leyes nacionales pueda la Asamblea Nacional ejercer dicho control sobre los Estados y Municipios, ya que a éstos no les sería aplicable tal normativa de carácter nacional.

Por las razones precedentemente expuestas, al no haberse fijado en el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público una excepción o referencia al control preceptivo (autorización) por parte de la Asamblea Nacional sobre la celebración por parte del Ejecutivo Nacional, en el marco de operaciones de crédito público, de contratos *de interés público nacional*, en concordancia con lo previsto en los artículos 150, primer aparte, y 187, numeral 9, segunda parte, de la Constitución de la República Bolivariana de Venezuela, sino en lugar de ello una autorización general mediante la aprobación de la Ley de Endeudamiento Anual y un régimen de información periódica a la Asamblea Nacional, resultó vulnerado el sentido, propósito y razón de las disposiciones constitucionales contenidas en los artículos antes mencionados, así como las contenidas en los artículos 2 y 7 del mismo Texto Constitucional, en las que se define al Estado venezolano como Democrático y Social de Derecho y de Justicia, y, asimismo, se consagra el principio de la supremacía constitucional.

Por tales motivos, esta Sala declara con lugar el recurso de nulidad por razones de inconstitucionalidad interpuesto y anula el último aparte del artículo 80 de la Ley Orgánica de la Administración Financiera del Sector Público, por contrariar en forma directa y manifiesta lo establecido en los artículos 150, primer aparte, y 187, numeral 9, segunda parte, de la Constitución, al no consagrar la obligación constitucional del Ejecutivo Nacional de requerir la autorización de la Asamblea Nacional para la celebración de contratos de interés público nacional, en el marco de operaciones de crédito público, cuando dichos contratos sean celebrados con Estados, entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela. Así se decide.

Ahora bien, considerando que con fundamento en la disposición anulada el Ejecutivo Nacional, una vez sancionada la Ley de Endeudamiento Anual, podía efectuar operaciones de crédito público que no implicaran la celebración de contratos de interés público nacional con Estados, entidades oficiales extranjeras o sociedades no domiciliadas en Venezuela, las cuales son fundamentales para el normal funcionamiento de los órganos y entes que conforman el Estado, y que tal autorización, cuando no está referida a la celebración de contratos de interés público nacional con las entidades extranjeras antes mencionadas, no colide con lo establecido en el primer parte del artículo 150, ni con lo previsto en el artículo 187, numeral 9, de la Constitución de la República Bolivariana de Venezuela, en aras de armonizar la regulación constitucional con la normativa contenida en

la Ley Orgánica de la Administración Financiera del Sector Público, la disposición objeto de la nulidad queda redactada como sigue:

"**Artículo 80.** Conjuntamente con el proyecto de ley de presupuesto, el Ejecutivo presentará a la Asamblea Nacional, para su autorización mediante ley especial que será promulgada simultáneamente con la ley de presupuesto, el monto máximo de las operaciones de crédito público a contratar durante el ejercicio presupuestario respectivo por la República, el monto máximo de endeudamiento neto que podrá contraer durante ese ejercicio; así como el monto neto que podrá contraer durante ese ejercicio; así como el monto máximo de letras del tesoro que podrán estar en circulación al cierre del respectivo ejercicio presupuestario.

Los montos máximos referidos se determinarán, de conformidad con las previsiones de la ley del marco plurianual del presupuesto, atendiendo a la capacidad de pago y a los requerimientos de un desarrollo ordenado de la economía, y se tomarán como referencia los ingresos fiscales previstos para el año, las exigencias del servicio de la deuda existente, el producto interno bruto, el ingreso de exportaciones y aquellos índices macroeconómicos elaborados por el Banco Central de Venezuela u otros organismos especializados, que permitan medir la capacidad económica del país para atender las obligaciones de la deuda pública.

Una vez sancionada la ley de endeudamiento anual, el Ejecutivo Nacional podrá celebrar operaciones de crédito público en las mejores condiciones financieras que puedan obtenerse e informará periódicamente a la Asamblea Nacional, salvo aquellas que impliquen la celebración de contratos de interés público nacional, estadal o municipal con Estados o entidades oficiales extranjeras o con sociedades no domiciliadas en Venezuela, en cuyo caso se requerirá la autorización previa de la Asamblea Nacional".

De conformidad con lo previsto en los artículos 119 y 120 de la Ley Orgánica de la Corte Suprema de Justicia, esta Sala, atendiendo a razones de seguridad jurídica, para evitar un desequilibrio en la estructura y funcionamiento de la Administración Pública y la preservación del interés general de la Nación, fija los efectos de esta decisión *ex nunc*, es decir, que éstos comenzarán a computarse a partir de la publicación del presente fallo en la Gaceta Oficial de la República Bolivariana de Venezuela, tal y como lo acordó en su decisión n° 1674/2002, del 18 de julio. Así se declara.

**V**
**DECISIÓN**

Por las razones anteriormente expuestas, este Tribunal Supremo de Justicia, en Sala Constitucional, administrando justicia en nombre de la República y por autoridad de la ley declara:

1°- **CON LUGAR** el recurso de nulidad por inconstitucionalidad interpuesto por los ciudadanos Andrés Velásquez, Elías Mata y Enrique Márquez, asistidos por la abogada Valentina Gómez Millán, contra el último aparte del artículo 80 de la **LEY ORGÁNICA DE LA ADMINISTRACIÓN FINANCIERA DEL SECTOR PÚBLICO**, sancionada por la entonces Comisión Legislativa Nacional, el 27 de julio de 2000, y publicada en Gaceta Oficial n° 37.029, del 5 de septiembre de 2000.

2°-Se **ANULA** el último aparte de la disposición contenida en el artículo 80 de la **LEY ORGÁNICA DE LA ADMINISTRACIÓN FINANCIERA DEL SECTOR PÚBLICO**, sancionada por la entonces Comisión Legislativa Nacional, el 27 de julio de 2000, y publicada en Gaceta Oficial n° 37.029, del 5 de septiembre de 2000, la cual queda redactada de la siguiente manera:

> "**Artículo 80.** Conjuntamente con el proyecto de ley de presupuesto, el Ejecutivo presentará a la Asamblea Nacional, para su autorización mediante ley especial que será promulgada simultáneamente con la ley de presupuesto, el monto máximo de las operaciones de crédito público a contratar durante el ejercicio presupuestario respectivo por la República, el monto máximo de endeudamiento neto que podrá contraer durante ese ejercicio; así como el monto neto que podrá contraer durante ese ejercicio; así como el monto máximo de letras del tesoro que podrán estar en circulación al cierre del respectivo ejercicio presupuestario.
>
> Los montos máximos referidos se determinarán, de conformidad con las previsiones de la ley del marco plurianual del presupuesto, atendiendo a la capacidad de pago y a los requerimientos de un desarrollo ordenado de la economía, y se tomarán como referencia los ingresos fiscales previstos para el año, las exigencias del servicio de la deuda existente, el producto interno bruto, el ingreso de exportaciones y aquellos índices macroeconómicos elaborados por el Banco Central de Venezuela u otros organismos especializados, que permitan medir la capacidad económica del país para atender las obligaciones de la deuda pública.
>
> Una vez sancionada la ley de endeudamiento anual, el Ejecutivo Nacional podrá celebrar operaciones de crédito público en las mejores condiciones financieras que puedan obtenerse e informará periódicamente a la Asamblea Nacional, salvo aquellas que impliquen la celebración de contratos de interés público nacional, estadal o municipal con Estados o entidades oficiales

extranjeras o con sociedades no domiciliadas en Venezuela, en cuyo caso se requerirá la autorización previa de la Asamblea Nacional".

3°-Se **FIJAN** los efectos de este fallo, a partir de la publicación del mismo en la Gaceta Oficial de la República Bolivariana de Venezuela. En consecuencia, por razones de seguridad jurídica, y a los fines de evitar un desequilibrio en la estructura y funcionamiento de la Administración Pública y la preservación del interés general de la Nación, se deja a salvo la validez de los contratos de interés público nacional que pudieran haber sido celebrados por el Ejecutivo Nacional, en el marco de la realización de operaciones de crédito público, sin la autorización previa de la Asamblea Nacional, tal y como lo preceptúan los artículos 150, primer aparte, y 187, numeral 9, segunda parte, de la Constitución de la República Bolivariana de Venezuela.

4°- Conforme a lo dispuesto por los artículos 119 y 120 de la Ley Orgánica de la Corte Suprema de Justicia, se **ORDENA** publicar el presente fallo en la Gaceta Oficial de la República Bolivariana de Venezuela, en cuyo sumario se indicará con precisión el siguiente título:

"SENTENCIA DE LA SALA CONSTITUCIONAL DEL TRIBUNAL SUPREMO DE JUSTICIA QUE ANULA EL ÚLTIMO APARTE DEL ARTÍCULO 80 DE LA **LEY ORGÁNICA DE LA ADMINISTRACIÓN FINANCIERA DEL SECTOR PÚBLICO**, SANCIONADA POR LA ENTONCES COMISIÓN LEGISLATIVA NACIONAL, EL 27 DE JULIO DE 2000, Y PUBLICADA EN GACETA OFICIAL Nº 37.029, DEL 5 DE SEPTIEMBRE DE 2000".

Publíquese, regístrese y notifíquese. Cúmplase lo ordenado

Dada, firmada y sellada en el Salón de Despacho de la Sala Constitucional del Tribunal Supremo de Justicia, en Caracas, a los 24 días del mes de septiembre dos mil dos. Años: **192º** de la Independencia y **143º** de la Federación.

El Presidente,


IVÁN RINCÓN URDANETA

El Vicepresidente,

JESÚS     EDUARDO     CABRERA
ROMERO

Los Magistrados,

ANTONIO JOSÉ GARCÍA GARCÍA                JOSÉ M. DELGADO OCANDO
                                                    Ponente

PEDRO RAFAEL RONDÓN HAAZ

El Secretario,

JOSÉ LEONARDO REQUENA CABELLO

JMDO/ns
Exp. n° 00-2874.