# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:18-CIV-20818-GAYLES/OTAZO-REYES

PDVSA US LITIGATION TRUST,

     Plaintiff,

v.

LUKOIL PAN AMERICAS LLC, *et al.*,

     Defendants.

_____/

### **REPORT AND RECOMMENDATION**

THIS CAUSE was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, pursuant to Title 28, United States Code, Section 636, for a report and recommendation on dispositive matters [D.E. 220]. The following matters fall within the scope of the referral order:

(1)    Defendants Lukoil Pan Americas LLC, Colonial Oil Industries, Inc., Colonial Group, Inc., Paul Rosado, Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Sergio de la Vega, Vitol Inc., Vitol Energy (Bermuda) Ltd., Antonio Maarraoui, Trafigura Trading, LLC, BAC Florida Bank, Francisco Morillo, Leonardo Baquero, Helsinge Holdings, LLC, Helsinge, Inc., Helsinge Ltd., Daniel Lutz, Luis Liendo, John Ryan, Luis Alvarez, and Maximiliano Poveda's (collectively, "Defendants") Motion to Dismiss for Lack of Standing (hereafter, "Motion to Dismiss") [D.E. 517, 522 (under seal)];[1]

---

[1] In accordance with the undersigned's Scheduling Order, as modified, Defendants have until December 13, 2018 "to answer, move, or otherwise respond to Plaintiff's Amended Complaint. This would be the Defendants' first responsive pleadings, and thus all defenses and motions under Federal Rules of Civil Procedure are preserved." See Scheduling Order [D.E. 253 at 3]; Paperless Order [D.E. 635]. For the avoidance of confusion, the undersigned notes that the collective "Defendants" as defined above does not encompass all named defendants in the case.

(2)     Plaintiff PDVSA U.S. Litigation Trust's ("Plaintiff" or "Trust") Memorandum of Law on Standing [D.E. 518, 519 (under seal)];[2]

(3)     Defendants' Response in Support of their Motion to Dismiss for Lack of Standing [D.E. 532];

(4)     Plaintiff's Reply Brief on Standing [D.E. 533, 535 (under seal)]; and

(5)     Defendants' Notice of Supplemental Authority in Support of their Motion to Dismiss for Lack of Standing [D.E. 626].

The undersigned held an evidentiary hearing on the issue of Plaintiff's standing on August 2 and 3, 2018 (hereafter, "Standing Hearing") [D.E. 555, 558].  At the Standing Hearing, the parties presented respective experts on Venezuelan law and Plaintiff presented a handwriting expert. See Exhibit and Witness List [D.E. 569 at 10, 15-16].

Upon a thorough review of the evidence, the arguments presented by the parties and the applicable law, the undersigned concludes that the Trust lacks standing to pursue this action as the purported assignee of claims belonging to PDVSA.  Therefore, the undersigned respectfully recommends that Defendants' Motion to Dismiss be GRANTED and that this action be DISMISSED for lack of subject matter jurisdiction.

## PROCEDURAL BACKGROUND

The Trust commenced this action on March 3, 2018 [D.E. 1].  The Trust filed an Amended Complaint on March 5, 2018 [D.E. 12].  In its amended pleading, the Trust alleges that Defendants engaged in a conspiracy to: "fix prices, rig bids, and eliminate competition in the purchase and sale of crude oil and hydrocarbon products by PDVSA; misappropriate PDVSA proprietary data and intellectual property; and systematically loot PDVSA by causing corrupt

---

[2]  PDVSA is the Venezuelan state-owned energy company Petroleos de Venezuela, S.A.  See Am. Compl. [D.E. 12 at 2].

PDVSA officials not to collect monies due PDVSA, to pay inflated prices for products and services acquired by PDVSA, to accept artificially low prices for products sold by PDVSA, to overlook the failure to deliver products and services paid for by PDVSA, and to fraudulently conceal what was owed to PDVSA." See Am. Compl. [D.E. 12 at 2-3].

In the section of the Amended Complaint entitled "Parties," the Trust alleges: "Plaintiff PDVSA US Litigation Trust is a trust established pursuant to the laws of New York to investigate and pursue claims against Defendants and others." Id. ¶ 8. No additional facts regarding the establishment of the Trust were alleged in the Amended Complaint; and no documentation, such as the Trust Agreement establishing the Trust, was attached to the pleading.

The Amended Complaint consists of nineteen counts:

| | | |
|---|---|---|
| Count I | | PDVSA Sales of Hydrocarbon Products – Violations of Section I of the Sherman Act. |
| Count II | | PDVSA Purchases of Light Crude Products – Violations of Section I of the Sherman Act. |
| Count III | | PDVSA Sales of Hydrocarbon Products – Violations of Section 2(c) of the Robinson-Patman Act. |
| Count IV | | PDVSA Purchases of Light Crude Products – Violations of Section 2(c) of the Robinson-Patman Act. |
| Count V | | Violations of the Florida Deceptive and Unfair Trade Practices Act. |
| Count VI | | Violations of the U.S. Racketeer Influenced and Corrupt Organizations Act Under 18 U.S.C. § 1962(c). |
| Count VII | | Violations of the U.S. Racketeer Influenced and Corrupt Practices Act Under 18 U.S.C. § 1962(d). |
| Count VIII | | Violations of the Civil Remedies for Criminal Practices Act. |
| Count IX | | Fraud. |
| Count X | | Civil Conspiracy. |

| | |
|---|---|
| Count XI | Aiding and Abetting Breach of Fiduciary Duty. |
| Count XII | Aiding and Abetting Fraud. |
| Count XIII | PDVSA Purchases of Light Crude Products – Breach of Contract. |
| Count XIV | PDVSA Sales of Hydrocarbon Products – Breach of Contract. |
| Count XV | Unjust Enrichment. |
| Count XVI | Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. |
| Count XVII | Violation of the Stored Communications Act, 18 U.S.C. § 2701. |
| Count XVIII | Violation of the Wire and Electronic Communications Interception and Interception of Oral Communications Act (Federal Wiretap Act), 18 U.S.C. § 2510. |
| Count XIX | Violation of the Florida Uniform Trade Secrets Act, CH. 688. |

Id. at 27-58.  In its Prayer for Relief, the Trust seeks various forms of damages, interest, costs, fees, and injunctive relief.  Id. at 58-59.

At the time it commenced the action, the Trust also filed Plaintiff's *Ex Parte* Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction and Delayed Service (hereafter, "Injunction Motion") [D.E. 5].  On March 5, 2018, the Court entered a TRO requiring the preservation of records and documents and directing Defendants to file responses to the Injunction Motion by a set deadline [D.E. 9].  On March 26, 2018, certain Defendants filed a response to the Injunction Motion, in which they argued that, "[a]s a threshold matter, Plaintiff lacks standing to assert the pleaded claims both as a matter of Venezuelan and New York law." See Defendants' Joint Response in Opposition to Plaintiff's Motion for a Preliminary Injunction (hereafter, "Injunction Response") [D.E. 161 at 1].  According to Defendants, "the Court lacks jurisdiction and, before permitting or considering further action or argument in this case, should first determine whether the Plaintiff can meet its burden to establish standing at the Preliminary

Injunction phase." Id. at 2.[3]  While arguing that the standing issue raised by Defendants is prudential rather than jurisdictional, Plaintiff agreed to the issue being addressed preliminarily. See Transcript of Status Conference Held Before The Honorable Darrin P. Gayles on April 4, 2018 [D.E. 234 at 8, 10-11].

On April 16, 2018, the undersigned entered a Scheduling Order prescribing a procedure and schedule for the parties to conduct discovery on the issue of Plaintiff's standing.  See Scheduling Order [D.E. 253].  Thereafter, the undersigned issued a series of Discovery Orders [D.E. 278, 355, 370, 390, 396, 404, 442, 475, 507] and modified the Scheduling Order twice [D.E. 356, 498].

On June 14, 2018, Defendants filed a Motion, by Order to Show Cause, for Sanctions and Other Relief against Plaintiff (hereafter, "Sanctions Motion") [D.E. 430].  Therein, Defendants contend that Plaintiff failed to fully comply with the discovery contemplated by the Scheduling Orders.  Id.  Defendants seek as sanctions: 1) the dismissal of Plaintiff's claims; 2) in the alternative, an order precluding Plaintiff from claiming that PDVSA properly created the Trust or properly assigned claims to the Trust, and/or from offering or relying on any evidence from PDVSA in attempting to prove its standing; and 3) an award of attorneys' fees and costs.  Id. After a hearing, the undersigned directed Plaintiff to "supplement the record explaining how it proposes to authenticate the Trust Agreement, upon which Plaintiff's standing is predicated, at the anticipated hearing on standing." See Order [D.E. 482 at 1].  On July 13, 2018, Plaintiff filed its Memorandum Responding to the Court's Inquiry as to What Evidence Plaintiff Will Offer to Authenticate the PDVSA U.S. Litigation Trust Agreement (hereafter, "Plaintiff's Evidentiary Proffer") [D.E. 494].  On July 18, 2018 Defendants filed their Response to Plaintiff's Evidentiary

---

[3]  Defendants attached to their Injunction Response a copy of the Trust Agreement that they claimed to have obtained on their own [D.E. 161 at 5-6; D.E. 161-1].

Proffer [D.E. 502]. After receiving the parties' submissions, the undersigned decided to defer ruling on the Sanctions Motion pending the Standing Hearing. See Order [D.E. 508 at 3].

## THE PARTIES' ARGUMENTS RE: PLAINTIFF'S STANDING

### 1.   *Defendants' Arguments*

First. The Trust Agreement upon which Plaintiff relies to establish its Article III standing to pursue the foregoing claims against Defendants is inadmissible because none of the signatories to the instrument appeared during discovery to: authenticate their signatures; establish their authority to sign it; or demonstrate that they understood it.

Second. Even if the Trust Agreement were admissible, the instrument is void under New York law, which expressly governs it, because: it violates New York's ban on champerty; it lacks a notarized certificate of acknowledgment by the individual who signed on behalf of PDVSA; and it purports to assign an indefinite trust corpus, namely, PDVSA's claims against Defendants.

Third. Even if the Trust Agreement were valid under New York law, the case should be dismissed on non-justiciable political question grounds. Two resolutions from Venezuela's National Assembly state that: (1) the Trust is "unconstitutional;" and (2) one of the Trust's signatories "usurped" his office. According to Defendants, a finding that Plaintiff has standing pursuant to the Trust Agreement would contravene the U.S. State Department's support for the Venezuelan National Assembly and undermine U.S. foreign policy.

Fourth. Even if the Court finds the standing issue to be justiciable, the Trust Agreement is void under Venezuelan law because: the signatories lacked legal authority; and the Trust Agreement is a "national interest contract" that lacks the required approval by the Venezuelan National Assembly.

Fifth. Contrary to Plaintiff's contention, the act of state doctrine does not apply to PDVSA's act of assigning its claims against Defendants because: the act was not performed solely within Venezuela's borders; and PDVSA authorized the bringing of suit in the United States.

### 2.      *Plaintiff's Arguments*

First. The standing issue raised by Defendants is prudential, not jurisdictional; and it can be cured at any time during the course of litigation on the merits.

Second. Defendants lack standing to challenge the validity of the Trust Agreement because they are not parties to it.

Third. Even if Defendants had standing to challenge the validity of the Trust Agreement under Venezuelan law, the creation of the Trust falls within the act of state doctrine and, in any event, the Trust Agreement is valid under Venezuelan law.

Fourth. The signatures on the Trust Agreement have been properly authenticated in multiple ways.

Fifth. The Trust Agreement is not void as champertous or maintenance and Defendants have no standing to raise such claims.

Sixth. The Trust Agreement does not violate United States foreign policy.

Seventh. The Trust Agreement complies with the requirements of New York law.

The undersigned addresses the parties' respective arguments below.

## **DISCUSSION**

### 1.      *Whether the issue of Plaintiff's standing is jurisdictional.*

Article III of the United States Constitution "restricts the jurisdiction of the federal courts to litigants who have standing to sue." Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1001 (11th

Cir. 2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).  "The irreducible constitutional minimum of standing comprises three elements: injury in fact, causation, and redressability."  Id.  "A plaintiff has injury in fact if he suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent."  Id. at 1002.  In this case, the Trust has not sustained any injury itself, but relies on the assignment of PDVSA's claims to it by operation of the Trust Agreement.  According to the United States Supreme Court: "Lawsuits by assignees, including assignees for collection only, are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'"  Sprint Comm'n Co, L.P. v. APCC Servs., Inc., 554 U.S. 269, 285 (2008) (quoting Vermont Agency Nat. Res. v. United States ex rel Stevens, 529 U.S. 765, 777-78 (2000)).  In Vermont Agency, the Supreme Court stated that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor."  Vermont Agency, 529 U.S. at 773.

In Sprint, the Supreme Court described the contours of the assignments at issue as follows:

> The present litigation involves a group of aggregators who have taken claim assignments from approximately 1,400 payphone operators.  Each payphone operator signed an Assignment and Power of Attorney Agreement (Agreement) in which the payphone operator "assigns, transfers and sets over to [the aggregator] for purposes of collection all rights, title and interest of the [payphone operator] in the [payphone operator's] claims, demands or causes of action for 'Dial-Around Compensation' . . . due the [payphone operator] for periods since October 1, 1997." App. to Pet. for Cert. 114.  The Agreement also "appoints" the aggregator as the payphone operator's "true and lawful attorney-in-fact."  Ibid.    The Agreement provides that the aggregator will litigate "in the [payphone operator's] interest."  Id., at 115.  And the Agreement further stipulates that the assignment of the claims "may not be revoked without the written consent of the [aggregator]."  Ibid.   The aggregator and payphone operator then separately agreed that the aggregator would remit all proceeds to the payphone operator and that the payphone operator would pay the aggregator for its services (typically via a quarterly charge).

Sprint, 554 U.S. at 272.

The Supreme Court only considered the issue of prudential standing after finding that these claims' assignees had Article III standing.  See Sprint, 554 U.S. at 289.  As defined by the Supreme Court, "prudential standing doctrine embodies judicially self-imposed limits on the exercise of federal jurisdiction." Id. (quoting Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004)).   The Supreme Court found that the prudential standing issue was not applicable to the assignees, because they were "suing based on injuries originally suffered by third parties" but had been assigned "all rights, title and interest in claims based on those injuries." Id. at 290.  Thus, the assignees were "asserting first-party, not third-party legal rights." Id.

Circuit courts that have analyzed the issue of an assignee's standing have done so in the jurisdictional context of Article III.  See e.g., US Fax Law Center, Inc. v. iHire, Inc., 476 F.3d 1112, 1120 (10th Cir. 2007) (given that the assignment of Telephone Consumer Protection Act ("TCPA") claims was invalid because such claims "are in the nature of personal-injury, privacy claims," assignee lacked constitutional standing); Dougherty v. Carlisle Transp. Prods., Inc., 610 F. App'x 91, 93-94 (3d Cir. 2015) (given that the assignment of a claim was champertous under Pennsylvania law, assignee was not permitted to litigate it, notwithstanding the Sprint decision finding that an assignee of a legal claim for money owned had Article III standing).

In the Southern District of Florida, the issue of an assignee's standing has been similarly treated as a threshold jurisdictional inquiry.  See MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm. Inc., 281 F. Supp. 3d 1309, 1314-15 (S.D. Fla. 2017) (dismissing complaint after finding that factual allegations did not support purported assignees' claim that they had

Article III standing);[4]

In arguing that Article III standing analysis should be bypassed in favor of prudential standing analysis only, Plaintiff improperly invites the Court to follow a different path than that followed by the Supreme Court, the Tenth and Third Circuits, and the Southern District of Florida. Moreover, given that prudential standing analysis involves a further limitation on the exercise of federal jurisdiction, Sprint, 554 U.S. at 289, prudential standing considerations necessarily follows a finding of constitutional standing.

Plaintiff argues that, because it has pled a valid assignment, Defendants' challenge to the validity of the assignment does not raise an issue of subject matter jurisdiction but one of prudential standing that does not affect jurisdiction. Plaintiff misapprehends Defendants' subject matter jurisdiction challenge as a facial one, but it is actually a factual one, which challenges the Court's "very power to hear the case." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In such challenges, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

Based on the foregoing analysis, the undersigned concludes that Plaintiff's standing as an assignee of PDVSA's claims is a threshold issue that must be addressed as a Fed. R. Civ. P. 12(b)(1) factual challenge to subject matter jurisdiction. Lawrence, 919 F.2d at 1529. Thus, the undersigned rejects Plaintiff's argument that the challenge be addressed solely as one to its prudential standing that should abide a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The undersigned next considers the grounds advanced by Defendants in support of their contention that Plaintiff lacks constitutional standing.

---

[4] On appeal, the parties settled the case and jointly moved for vacatur of the district court's order, which was granted after remand. See MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm. Inc., No. 18-10739-FF, 2018 WL 4183397 (11th Cir. July 9, 2018); Order, Case No. 17-cv-21996-UU [D.E. 113].

**2.** **Whether Plaintiff has failed to carry its burden of proving the admissibility of the Trust Agreement upon which it relies to establish its Article III standing as assignee of PDVSA and to support its claim that the purported assignment is valid.**

### A. The Trust Agreement.

The Trust Agreement, which is dated July 27, 2017, recites:

(1)    That PDVSA is the owner of "Contributed Claims" against so-called "Conspirators," whose purported "misconduct has caused and continues to cause vast damages to PDVSA and the people of Venezuela." See Trust Agreement, Pl.'s Ex 1, at 1.[5]

(2)    That PDVSA has authorized "the engagement of United States law firms and investigators to further investigate, commence one or more civil actions (the 'Assigned Actions'), and prosecute the Assigned Actions to conclusion." Id.

(3)    That PDVSA and Boies Schiller Flexner LLP (the "US Law Firm Appointer") "are appointing the Litigation Trustees to hold and pursue the Assigned Actions." Id. See also Amendment Number One to Trust Agreement, dated April 10, 2018 (hereafter, "Amendment One"), Pl.'s Ex 2.[6]

The following three Litigation Trustees were appointed:    Alexis Arellano ("Mr. Arellano") (the "PDVSA Appointee"); and Vincent Andrews ("Mr. Andrews") and Edward P. Swyer ("Mr. Swyer") (together, the "US Law Firm Appointees). See Trust Agreement, Pl.'s Ex. 1 at 8.

Mr. Arellano purportedly signed the Trust Agreement.   Id. at 15-16. Mr. Andrews and

---

[5] At the Standing Hearing, the undersigned reserved ruling on the admissibility of the Trust Agreement. See Transcript of Continued Standing Hearing held on August 3, 2018 (hereafter, "8/3/18 Transcript") [D.E. 562 at 79-80].
[6] Amendment One eliminated from the Trust Agreement the second US Law Firm Appointer, Meister Seelin & Fein LLP; and replaced the Trust Agreement's definition of "PDVSA Appointer" from "The Minister of the People's Petroleum Power" to "The President of PDVSA." See Trust Agreement, Pl.'s Ex. 1 at 1, 8; Amendment One Pl.'s Ex. 2 at 1, 2.

Mr. Swyer signed the Trust Agreement and acknowledged their respective signatures before notaries. Id. See also Pl.'s Ex. 1A. Mr. Andrews and Mr. Swyer also signed Amendment One and acknowledged their respective signatures before notaries. See Amendment One, Pl.'s Ex. 2.[7]

Two Venezuelan officials also purportedly signed the Trust Agreement. See Trust Agreement, Pl.'s Ex. 1 at 15-16. One such signatory is the original PDVSA Appointer, Nelson Martinez, as Minister of the Peoples Petroleum Power, Bolivarian Republic of Venezuela ("Mr. Martinez"). Id. As noted above, however, Amendment One changed the definition of PDVSA Appointer from "The Minister of the People's Petroleum Power," namely, Mr. Martinez, to "The President of PDVSA." The gentleman holding that title is Manuel Quevedo ("Mr. Quevedo"). See Motion to Dismiss [D.E. 517 at 14].

The Second Venezuelan official who purportedly signed the Trust Agreement is Reinaldo Muñoz Pedroza, as "Procurador General de la Republica," Bolivarian Republic of Venezuela ("Mr. Pedroza"), who, as "General Attorney" purportedly "duly authorized" the Trust Agreement under Venezuelan law. See Trust Agreement, Pl.s's Ex. 1 at 8, 13, 15-16. Shortly before the Standing Hearing, Plaintiff submitted an acknowledgment of signature and apostille dated July 12, 2018, for Mr. Pedroza's signature on the Trust Agreement. See Pl.'s Ex. 1B. At the Standing Hearing, the undersigned reserved ruling on the admissibility of Mr. Pedroza's acknowledgment. See 8/3/18 Transcript [D.E. 562 at 81]. The undersigned finds that, given Mr. Pedroza's failure to submit for deposition, as discussed below, it would be unfair to admit this last minute, untested acknowledgement of his signature on the Trust Agreement. Accordingly, Plaintiff's Exhibit 1B is excluded.

---

[7] Defendants do not challenge Mr. Andrews' and Mr. Swyer's acknowledgments of their respective signatures, as shown on Pl.'s Exs. 1A and 2A. See 8/3/18 Transcript [D.E. 562 at 80].

## B.    Standing discovery.

During the course of standing discovery, conducted pursuant to the undersigned's Scheduling Orders [D.E. 253, 356, 498] and Discovery Orders [D.E. 278, 355, 370, 390, 396, 404, 442, 475, 507], Defendants attempted but did not succeed in deposing the Venezuelan officials who purportedly signed and/or authorized the Trust Agreement, namely: Mr. Arellano (the PDVSA appointed trustee); Mr. Martinez (the original PDVSA appointer of the PDVSA trustee); and Mr. Pedroza, the "General Attorney" who purportedly authorized the Trust Agreement.  During standing discovery, Defendants also sought the deposition of Mr. Quevedo, the replacement PDVSA appointer of the PDVSA trustee pursuant to Amendment One.

On April 25, 2018, the undersigned prescribed a deadline of April 27, 2018 for the parties to meet and confer regarding the availability of Mr. Pedroza, Mr. Martinez, Mr. Arellano and Mr. Quevedo for deposition by Defendants.  See First Discovery Order [D.E. 278 at 3].  The undersigned prescribed the same deadline regarding the availability of PDVSA's corporate representative for deposition by Defendants.  Id.

As of May 1, 2018, Plaintiff had agreed to produce for deposition Mr. Pedroza and a Rule 30(b)(6) representative of PDVSA.  See Second Discovery Order [D.E. 355 at 2].

On May 9, 2018, the undersigned ruled that Defendants could depose Dr. Hilda Cabeza ("Dr. Cabeza") as PDVSA's Rule 30(b)(6) representative and Mr. Pedroza.  See Third Discovery Order [D.E. 370 at 3].  Noting that Defendants had indicated their desire to depose Mr. Arellano, the undersigned prescribed a deadline of May 22, 2018 for Plaintiff to inform Defendants whether it could produce Mr. Arellano, or his replacement, if any, as the PDVSA appointed litigation trustee.  Id.[8]

---

[8] The Trust had claimed that Mr. Arellano could not be located.  See Motion to Dismiss [D.E. 517 at 14]; see also Transcript of May 8, 2018 Telephonic Hearing [D.E. 373 at 29]:

Plaintiff never produced Mr. Arellano or his replacement for deposition.[9]  With regard to Mr. Martinez, who Defendants also expressed they wanted to depose, the undersigned prescribed a deadline of May 9, 2018 for Defendants to notify Plaintiff if they wished to substitute another deponent in his place.  Id.[10]  Should Defendants still seek Mr. Martinez's deposition, Plaintiff had until May 22, 2018 to inform Defendants whether he could be produced.  Id.  Plaintiff never produced Mr. Martinez for deposition.[11]

On May 23, 2018, the undersigned noted that Mr. Pedroza's deposition had been scheduled for May 30, 2018 in New York.  See Fourth Discovery Order [D.E. 390 at 3].  The undersigned also prescribed a deadline of May 25, 2018, for the parties to file a joint notice disclosing the deponent's identity, date and location for the deposition of PDVSA's Rule 30(b)(6) representative.  Id.  On June 7, 2018, the Honorable Andrea M. Simonton, United States

---

THE COURT:  All right.  So, you are telling me that you cannot locate Mr. Arellano, that you have made due diligence efforts.  You are representing as an officer of the court that you have exhausted your abilities to locate Mr. Arellano and are not able to determine his whereabouts at this time.  Is that correct?

MR. D. BOIES:  That is correct, Your Honor.  Moreover I have told counsel that if we were able to locate him we would immediately tell them that we have located him, but I represent to the Court that we have used every [ ] means that I know of that we could use to try to locate him.  And we have been unable to do so and they are going to take the Procurador General's deposition and they can ask him, and I believe he will conf[irm], that he tried as well to find this person in Venezuela.

[9]  At the Standing Hearing, Plaintiff included in its witness list an unnamed "PDVSA Representative" who would testify "[i]f available."  See Plaintiff's Witness List [D.E. 543-1 at 2].  Defendants filed a Motion to Strike the Unnamed "PDVSA Representative" [D.E. 545].  The undersigned granted Defendants' Motion to Strike [D.E. 564].  Plaintiff also proffered a "Notice of Appointment of Successor Trustee" as Exhibit 63, which it might offer.  See Plaintiff's Exhibit List [D.E. 544-1 at 9].  Plaintiff's Exhibit 63 consists of various documents dated July 27-30, 2018, whereby Mr. Quevedo appoints an individual named Marcos Alejandro Rojas ("Mr. Rojas") as the PDVSA appointed litigation trustee in place of Mr. Arellano [D.E. 583-48].  The undersigned excluded Plaintiff's Exhibit 63.  See 8/3/18 Transcript [D.E. 562 at 101].  Defendant has objected to the undersigned's rulings regarding Mr. Rojas and Pl.'s Ex 63 [D.E. 600].

[10]  Mr. Martinez had reportedly been arrested and imprisoned in Venezuela on charges of corruption and executing contracts without proper authorization.  See Motion to Dismiss [D.E. 517 at 14] (citing November 30, 2017 news reports).

[11]  Plaintiff attempted to introduce at the Standing Hearing Mr. Martinez's purported acknowledgment of his signature on the Trust Agreement, which Defendants opposed.  See Defendants' Motion to Exclude Plaintiff's Exhibit 64 [D.E. 551].  The undersigned granted Defendants' Motion [D.E. 565].  Plaintiff has objected to the undersigned's ruling [D.E. 601].

Magistrate Judge, presided over an emergency telephonic hearing due to the undersigned's absence from the Southern District of Florida. See Order [D.E. 422 at 1]. At the telephonic hearing, Plaintiff advised that the deposition of Dr. Cabeza as PDVSA's corporate representative, which had been scheduled for Friday, June 8, 2018 in Madrid, Spain "was cancelled because the President of Venezuela precluded Dr. Cabeza from leaving Venezuela for the deposition." Id. Similarly, Mr. Pedroza's deposition, which had been scheduled to take place in New York on May 30, 2018, was cancelled because "the President of Venezuela had restricted travel of government officials outside the country." See Emails from Plaintiff's counsel, George Carpinello, dated May 27, 2018 [D.E. 430-1 at 7-8].

On July 19, 2018, the undersigned denied Plaintiff's request "to conduct Rule 31 depositions by written questions of its own witnesses who ha[d] not appeared for Rule 30 depositions by oral examination." See Eighth Discovery Order [D.E. 507 at 1-2].

Defendants were able to take the deposition of Plaintiff's counsel, David Boies ("Mr. Boies"). See Excerpt of Transcript of Confidential Videotape Deposition of David Boies (hereafter, "Boies Depo.") [D.E. 436-1 (sealed)]. Mr. Boies testified that Mr. Pedroza, who knows Mr. Arellano, was the individual who secured Mr. Arellano's signature on the Trust Agreement. Id. at 17. Mr. Boies also testified that, to verify Mr. Martinez's signature on the Trust Agreement and the seal that appears next to the signature, he would begin his inquiry with Mr. Pedroza. Id. at 33. As noted above, however, Mr. Pedroza's scheduled deposition during the standing discovery period was cancelled as a result of an order issued by the President of Venezuela.

## C.    Plaintiff's proffered handwriting expert.

Plaintiff attempted to remedy the failure to authenticate the signatures of Mr. Arellano, Mr. Martinez and Mr. Pedroza during the standing discovery period by proffering the testimony of a handwriting expert, Ruth Brayer ("Ms. Brayer"), who testified at the Standing Hearing. See Transcript of Standing Hearing held on August 2, 2018 (hereafter, "8/2/18 Transcript") [D.E. 561 at 126-200].

Initially, Defendants challenged Ms. Brayer's qualifications as a handwriting expert based on her being a graphologist and her lack of membership in the American Board of Forensic Document Examiners ("ABFDE").   After hearing the argument of counsel, the undersigned decided "to allow Ms. Brayer to testify as a handwriting expert." Id. at 149. However, the undersigned reserved "on what weight I will give to that testimony and the potential that I may eventually find either that she is not qualified or that her methodology is not -- does not meet the *Daubert* requirements." Id. at 150.

Ms. Brayer testified that she had been "hired to compare question signatures to known signatures by the same people and to come up with some—with an expert opinion whether they are written by the same person or not." Id. at 151. Ms. Brayer relied on signatures appearing on a Venezuelan government online publication known as "the Gaceta Oficial" provided to her by Plaintiff's counsel as the purported originals of Mr. Pedroza's and Mr. Martinez's signatures. Ms. Brayer admitted that she had no knowledge regarding what is the Gaceta Oficial. Nevertheless, she concluded that Mr. Pedroza's and Mr. Martinez's respective signatures appearing on the Trust Agreement were executed by the same individuals whose signatures

16

appear in the Gaceta Oficial online exemplars she utilized as purported originals.[12]  With regard to Mr. Arellano, Ms. Brayer considered as exemplars business documents from Ecuador purportedly signed by him.  However, in one of the documents, handwritten initials appear next to Mr. Arellano's purported signature.  Rather than inquiring into this fact, Ms. Brayer assumed that Mr. Arellano had two signature styles, one with and one without the handwritten initials.

The undersigned finds that, even assuming that she is qualified as a handwriting expert, Ms. Brayer's proffered expert opinions regarding Mr. Pedroza's, Mr. Martinez's and Mr. Arellano's respective signatures do not meet the *Daubert* standards.  Her testimony at the Standing Hearing was contrived, equivocal, evasive and, frankly, non-scientific.  Moreover, her methodology is highly suspect.  She used as purported originals for Mr. Pedroza's and Mr. Martinez's signatures documents provided to her by Plaintiff's counsel from an online Venezuelan government publication regarding which she admitted she had no knowledge.  And she disregarded the appearance of initials next to one of Mr. Arellano's purported original signatures on business documents, explaining it away as variations in signature styles.  Therefore, the undersigned rejects and excludes Ms. Brayer's handwriting opinions based on the unreliability of her methodology under *Daubert*.  See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).  See also McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (The gatekeeping function requires the trial court "to conduct an exacting analysis of the proffered expert's methodology" to ensure it meets the standards of admissibility under *Daubert*).  Accordingly, the undersigned concludes that Ms. Brayer did not succeed in

---

[12]  Given Ms. Brayer's complete lack of knowledge regarding the provenance of these purported exemplars, Plaintiff's Exhibits 37G and 37H are excluded as the purported original signatures of Mr. Pedroza and Mr. Martinez that she utilized.

remedying Plaintiff's failure to authenticate the signatures of Mr. Arellano, Mr. Martinez and Mr. Pedroza during the standing discovery period.

In light of the foregoing analysis, the undersigned concludes that Plaintiff has failed to carry its burden of proving the admissibility of the Trust Agreement upon which it relies to establish its Article III standing as assignee of PDVSA. Therefore, the Trust Agreement, Plaintiff's Exhibit 1, is excluded.[13]

### D.     Defendants' additional challenges to Plaintiff's standing due to Plaintiff's failure to provide standing discovery.

In addition to challenging the authenticity of Mr. Arellano's, Mr. Martinez's and Mr. Pedroza's respective signatures on the Trust Agreement, Defendants argue that they have been precluded from exploring the following standing-related questions due to Plaintiff's failure to produce these individuals for deposition during standing discovery:

> What were the circumstances of the signatures? What authorizations did the signatories obtain, if any, before signing the Trust Agreement? What were PDVSA's normal procedures for transferring assets of the alleged size here (billions of dollars), and what did its corporate organizational documents require for such transfers? Did the signatories or anyone authorized to act on PDVSA's behalf read the Trust Agreement? Did the signatories have an understanding of what "claims" were ostensibly transferred pursuant to the Trust Agreement, and which were not transferred? Given that PDVSA subsidiaries typically entered the contracts with oil companies, did PDVSA take any steps to transfer claims from those subsidiaries to the parent corporation (so that it could, in turn, transfer them to the Trust)?

See Defendants' Response to Plaintiff's Evidentiary Proffer [D.E. 502 at 6-7]. These questions, which Plaintiff has failed to answer in the course of standing discovery, go to the validity of PDVSA's assignment of the claims that the Trust asserts in this action against Defendants. Thus, in addition to the undersigned's determination that Plaintiff has failed to carry its burden of proving the admissibility of the Trust Agreement, the undersigned further finds that Plaintiff has

---

[13]  As a housekeeping matter, the undersigned has reviewed Plaintiff's Exhibit 40 and finds it irrelevant to the issue of Plaintiff's standing; therefore, it is excluded.

failed to support its claim that it holds a valid assignment from PDVSA by not complying with standing discovery.

> **3.    Whether Defendants lack standing to challenge the validity of PDVSA's purported assignment of its claims to the Trust.**

Plaintiff contends that Defendants lack standing to challenge the validity of the Trust Agreement because they are not parties to it.  This argument does not require much discussion given the consideration of similar challenges as those presented here by Defendants by the United States Supreme Court, the Tenth and Third Circuits, and the Southern District of Florida, as discussed above.  See Sprint, 554 U.S. at 285; US Fax Law Center, 476 F.3d at 1120; Dougherty, 610 F. App'x at 93-94; MAO-MSO Recovery, 281 F. Supp. 3d at 1314-15.

Indeed, a case upon which Plaintiff relies for this argument actually involved challenges to plaintiffs' standing to assert their claims, much like Defendants are doing here with regard to Plaintiff.  See Rajamin v. Deutsche Bank Nat. Tr. Co., 757 F.3d 79, 83 (2d Cir. 2014) (complaint dismissed on the grounds that "plaintiffs lacked standing to pursue claims based on alleged violations of agreements to which plaintiffs [we]re not parties").

Plaintiff also quotes Coursen v. JP Morgan Chase & Co., No. 8:12-cv-690-T-26EAJ, 2013 WL 5437341 (M.D. Fla. Sept. 27, 2013) for the bare proposition that "a non-party to the assignment lacks standing to contest it."  Id. at *11.  However, Plaintiff fails to provide the context for that statement, namely a discussion of standing under Florida law to enforce a note and mortgage, and the conclusion that plaintiff in that case could not assert various consumer fraud claims based on her home's foreclosure.  Id. at *12-17.  Thus, Coursen is wholly inapposite.

Plaintiff also cites Paramount Disaster Recovery LLC v. Amica Mut. Ins. Co., No. 2:16-CV-14566-ROSENBERG/MAYNARD, 2017 WL 6948728, at *3 (S.D. Fla. Dec. 6, 2017) for

the proposition that a non-party to a contingency contract lacked standing to raise arguments based on alleged flaws in the contract. In Paramount, the court rejected the defendant's argument that deficiencies in the contingency contract rendered the plaintiff's assignment invalid. Id. at *4. As stated by the Paramount court: "Under Florida law, a nonparty to an agreement has no standing to challenge the rights of the parties in the agreement." Id. at *3. In this case, however, Defendants are challenging the validity of PDVSA's assignment of its claims to the Trust for purposes of Plaintiff's jurisdictional standing to bring claims against them. Thus, Paramount is also inapposite.

Accordingly, the undersigned finds no merit in Plaintiff's argument that Defendants lack standing to make their jurisdictional challenge.[14]

Given the foregoing determinations, the undersigned concludes that Plaintiff lacks standing to proceed with its purportedly assigned claims against Defendants and that this action is subject to dismissal for lack of subject matter jurisdiction. In an abundance of caution, however, the undersigned addresses the parties' additional arguments.

### 4. *Whether Plaintiff lacks standing because the Trust Agreement that purports to assign PDVSA's claims to the Trust is void under New York law, which expressly governs it.*

Defendants advance three separate grounds in support of their argument that the Trust Agreement is void under its governing New York law, hence the assignment of PDVSA's claims is similarly void: (1) the Trust Agreement violates New York's ban on champerty; (2) the Trust Agreement lacks certificates of acknowledgement, as required by New York law; and (3) the Trust Agreement fails to sufficiently identify the claims purportedly assigned by PDVSA. The undersigned addresses each of these arguments in turn.

---

[14] The undersigned finds that Plaintiff's numerous other cited cases in lengthy footnotes in support of its challenge to Defendants' standing are similarly inapposite.

## A.    Champerty.

Defendants argue that PDVSA's assignment of its claims to the Trust is void because such assignment violates New York's ban on champerty.  New York law provides that

> no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon. . .

N.Y Jud. Law § 489(1).  According to the Court of Appeals of New York, "the statute prohibits the purchase of notes, securities, or other instruments or claims with the intent and for the primary purpose of bringing a lawsuit."  Justinian Capital SPC v. WestLB AG, 65 N.E.3d 1253, 1254 (N.Y. 2016).  In Justinian, a company assigned its claims against a bank to a third party to commence litigation to recover the company's bank investment losses.  Id.  The third party was to "remit the recovery from such litigation to the company, minus a cut" and "partner with specific law firms to conduct litigation."  Id. at 1255.   The Court of Appeals found the assignment to be champertous and affirmed dismissal of the complaint.  Id. at 1259.

Here, the terms of the Trust Agreement and the results of standing discovery reveal that the Trust's purpose is "to facilitate the prosecution of claims PDVSA has against various entities and individuals and the distribution of the Proceeds thereof."  See Trust Agreement, Pl.'s Ex 1, at 1; see also Motion to Dismiss [D.E. 522 (under seal) at 20] (citing Boies Depo [D.E. 436-1 (under seal)]).  Further, an Engagement Letter prescribes the procedure for the distribution of the Proceeds.  See Motion to Dismiss [D.E. 522 (under seal) at 15] (citing Engagement Letter [D.E. 522-2 (under seal)]).

Plaintiff argues, however, that Defendants lack standing to assert champerty under Florida law.  Plaintiff also argues that PDVSA's assignment of claims to the Trust does not

violate N.Y Jud. Law § 489(1) because: the Trust is not a "corporation or association;" the Trust does not have as its sole purpose bringing litigation; the champerty law is not applicable here, where the assignor of the claims, namely PDVSA, is the sole beneficiary of the Trust; and the value of the work expended before the assignment exceeds the $500,000 champerty safe harbor threshold.[15]   The undersigned addresses each of these arguments in turn.

Plaintiff's Florida law argument lacks merit because it disregards the Trust Agreement's choice of New York law.  With regard to New York law, Plaintiff first argues that the Trust does not fall within the scope of N.Y Jud. Law § 489(1) because it is not technically a "corporation" or an "association," which are the two entities listed in the statute.  However, Plaintiff does not provide any authority for such a literal reading of the statute.  Plaintiff further argues that, notwithstanding the explicit language of the Trust Agreement, the Trust does not have as its sole purpose bringing litigation.  Plaintiff claims that other purposes of the Trust are to pursue pre-suit settlement, to cooperate with law enforcement agencies, to engage investigators, and to hold and dispose of assets.  However, these activities are all predicated on the Trust's pursuit of PDVSA's claims through litigation, as it has done here.  Plaintiff further argues that N.Y Jud. Law § 489(1) does not apply because PDVSA is both the assignor and the sole beneficiary of the Trust.  However, PDVSA's position is no different than that of the assignor in <u>Justinian</u>, where the Court of Appeals of New York applied N.Y Jud. Law § 489(1).  <u>See</u> <u>Justinian</u>, 65 N.E.3d at 1254.  Finally, Plaintiff argues that it is eligible for the safe harbor provision in N.Y Jud. Law § 489(2) because the value of the work expended before the assignment exceeds $500,000.  However, the safe harbor only applies if the assignee pays a purchase price for the assigned claims that exceeds $500,000 or had a bona fide obligation to pay such purchase price independently of the outcome of the lawsuit.  <u>Id.</u> at 1259.  Here, there is no evidence of any

_____

[15]   N.Y Jud. Law § 489(2) provides a safe harbor for assignments that exceed that amount in value.

payment by the Trust to PDVSA and no commitment to make any payment other than the distribution of the Proceeds from the prosecution of PDVSA's claims. See Trust Agreement, Pl.'s Ex 1, at 1. Therefore, the Trust does not qualify for N.Y Jud. Law § 489(2)'s safe harbor provision.

Based on the foregoing analysis, the undersigned concludes that, like the assignment in Justinian, PDVSA's assignment of its claims to the Trust violates N.Y Jud. Law § 489(1).[16]

## B.    Certificates of acknowledgement.

Defendants also argue that the Trust Agreement lacks mandatory certificates of acknowledgement under New York trust law, which makes the Trust invalid and the assignment of PDVSA's claims null and void.

New York trust law provides:

> Every lifetime trust shall be in writing and shall be executed and acknowledged by the person establishing such trust and, unless such person is the sole trustee, by at least one trustee thereof, in the manner required by the laws of this state for the recording of a conveyance of real property or, in lieu thereof, executed in the presence of two witnesses who shall affix their signatures to the trust instrument.

N.Y. Est. Powers & Trusts Law § 7-1.17(a).

In this case, PDVSA established the Trust through the actions of Mr. Martinez, who purportedly signed the Trust Agreement as Minister of the People's Petroleum Power, Bolivarian Republic of Venezuela. See Trust Agreement, Pl.'s Ex. 1 at 1-2, 15-16. Plaintiff never produced Mr. Martinez for deposition, but attempted to introduce at the Standing Hearing his purported acknowledgment of his signature on the Trust Agreement, which the undersigned excluded. Therefore, Plaintiff has not complied with N.Y. Est. Powers & Trusts Law § 7-1.17(a)'s requirement that the Trust Agreement be "executed and acknowledged" by Mr. Martinez as the

---

[16]   Plaintiff argues that champerty is a fact-intensive issue that must be decided by a jury. However, Justinian was decided prior to trial. And Plaintiff had ample opportunity during the course of standing discovery to provide support for its position that PDVSA's assignment of claims to the Trust is valid.

person establishing the Trust.   Plaintiff argues that an acknowledgement by Mr. Pedroza is adequate to satisfy N.Y. Est. Powers & Trusts Law § 7-1.17(a) because as "General Attorney" he "duly authorized" the Trust Agreement under Venezuelan law.   See Trust Agreement, Pl.s's Ex. 1 at 8, 13.   However, Mr. Martinez is the individual through whom PDVSA purportedly established the Trust, not Mr. Pedroza.   See id. at 1-2, 8.   Moreover, as discussed above, Mr. Pedroza's purported acknowledgement of his signature on the Trust Agreement and apostille dated July 12, 2018 have been excluded, given Mr. Pedroza's failure to appear for deposition. Therefore, Mr. Pedroza's late submission does not satisfy N.Y. Est. Powers & Trusts Law § 7-1.17(a).[17]

Plaintiff first argues that N.Y. Est. Powers & Trusts Law § 7-1.17(a) should be disregarded.  According to Plaintiff, the Trust was formed by Venezuelan officials in Venezuela, hence Venezuelan law applies to its formation.  See Plaintiff's Reply Brief on Standing [D.E. 533 at 11 n.4].  However, this argument disregards the fact that two of the trustees, Mr. Andrews and Mr. Swyer, executed and acknowledged the Trust Agreement in New York and that they are "Parties" to the Trust Agreement.  See Trust Agreement, Pl.'s Ex. 1, at 1, 15-16; Pl.'s Ex. 1A.

Plaintiff next argues that Defendants lack standing to challenge the validity of the Trust or the assignment of PDVSA's claims.   The undersigned already discussed and rejected this argument above.

Plaintiff next argues that N.Y. Est. Powers & Trusts Law § 7-1.17(a) is not applicable here because it only applies to a "person" establishing a "life time trust."   See Plaintiff's Reply Brief on Standing [D.E. 533 at 12].  Plaintiff offers no authority for this proposition.

---

[17]   Plaintiff has submitted the acknowledged signatures of Mr. Andrews and Mr. Swyer, who are two of the three trustees, without objection by Defendants.  Therefore, Plaintiff has complied with N.Y. Est. Powers & Trusts Law § 7-1.17(a) as it pertains to trustees.

Based on the foregoing analysis, the undersigned concludes that the Trust Agreement does not comply with N.Y. Est. Powers & Trusts Law § 7-1.17(a).

### C.   Identification of claims.

Defendants also argue that the Trust is invalid under New York law because its corpus is not sufficiently defined.   The Trust Agreement defines the "Contributed Claims" as claims against so-called "Conspirators," whose purported "misconduct has caused and continues to cause vast damages to PDVSA and the people of Venezuela." See Trust Agreement, Pl.'s Ex 1, at 1.   No further details are provided regarding the identity of the alleged "Conspirators" or the nature of PDVSA's purported claims against them.   New York trust law requires "a fund or other property sufficiently designated or identified to enable title of the property to pass to the trustee." In re Doman, 68 A.D.3d 862, 863 (N.Y. App. Div. 2009).   Plaintiff cites Sterling Nat. Bank v. Polyseal Packaging Corp., 104 A.D.3d 466 (N.Y. App. Div. 2013) as "upholding [an] assignment that did not name potential defendants or specific causes of action."   See Plaintiff's Reply Brief on Standing [D.E. 533 at 14].   However, in Sterling what the court did was reject the defendant's contention that the assignment was invalid because it predated the invoices sent by the assignor, stating: "An assignment may properly relate to a future right which is adequately identified." Sterling, 104 A.D.3d at 467.   Thus, there was no identification issue in Sterling. Plaintiff also cites Amusement Indus. v. Stern, No. 07 Civ. 11586 (LAK)(GWG), 2011 WL 6811018 (S.D.N.Y. Dec. 28, 2011) for the proposition that the "assignment of all rights to claims that 'arise' under certain conditions is effective to incorporate claims that were unknown to the parties at the time of the assignment." See Plaintiff's Reply Brief on Standing [D.E. 533 at 14]. Nothing in Amusement Indus. supports this proposition.   Rather, the Amusement Indus. court's ruling was that, absent the assignor's allegation that it retained any legal interest in a contract

after assigning "all its rights and interests" in the contract, the assignor lacked standing to bring any claim for payments pursuant to the contract.  <u>Amusement Indus.</u>, 2011 WL 6811018, at *5.

Based on the foregoing analysis, the undersigned concludes that the Trust Agreement fails to sufficiently identify the "Contributed Claims."

Having considered and found merit in Defendants' three arguments regarding the Trust's and the Trust Agreement's failure to comply with various aspects of New York law, the undersigned concludes that the assignment of PDVSA's claims under the Trust Agreement's governing law is void and that this action is subject to dismissal due to the Trust's lack of standing.

### 5. *Whether the political question doctrine and the act of state doctrine and international comity are applicable in this case.*

Defendants argue that the Trust's validity under Venezuelan law presents a non-justiciable political question requiring the Court to dismiss the case pursuant to the political question doctrine.  Plaintiff responds that the political question doctrine addresses separation of powers within the United States and that, in any event, the Court is bound to follow the position of the United States executive branch, which recognizes the government of Venezuela's current President.

Plaintiff argues that the act of state doctrine and international comity preclude the Court from invalidating acts of Venezuelan officials performed within Venezuela, under Venezuelan law, transferring Venezuelan assets.  Defendants respond that the act of state doctrine does not apply to PDVSA's assignment of its claims to the Trust because the assignment was not performed solely within the borders of Venezuela and the Trust Agreement is governed by New York law.

Both sides' arguments are aimed at precluding analysis of the Trust Agreement's compliance with Venezuelan law. Yet each side has presented expert testimony on that very issue, which the undersigned is bound to evaluate to make this report complete. Therefore, the undersigned declines the parties' respective invitations to short-circuit the Venezuelan law analysis by invoking prudential doctrines that, in any event, are of doubtful application in this case.

### 6. *Whether the Trust Agreement is void or valid under Venezuelan law.*

Defendants argue that the Trust Agreement is void under Venezuelan law. In support of this proposition, Defendants presented the testimony of their Venezuelan law experts, Professor Jose Ignacio Hernandez ("Mr. Hernandez") and Rafael Badell Madrid ("Mr. Badell Madrid"), at the Standing Hearing. See 8/2/18 Transcript [D.E. 561 at 22-126]. Plaintiff counters that the Trust Agreement is valid under Venezuelan law and proffered the testimony of its expert, Professor Rogelio Perez Perdomo ("Mr. Perdomo"). See 8/3/18 Transcript [D.E. 562 at 12-67].

### A. Mr. Hernandez's expert testimony.

Mr. Hernandez was admitted as an expert in Venezuelan law, particularly, constitutional law, administrative law, Venezuelan oil law and regulations, and commercial law. Defendants engaged Mr. Hernandez to determine if the Trust Agreement is a valid and binding contract according to Venezuelan law. Mr. Hernandez's understanding of the purpose of the Trust Agreement was for the oil minister, acting on behalf of PDVSA, to transfer PDVSA's litigation rights to allow the Trust to conduct investigations and file claims in order to recover presumptive damage suffered by PDVSA's property, without any payment to PDVSA for the transfer of those claims. Mr. Hernandez opined that the Trust Agreement is not a valid and binding contract according to Venezuelan law for the following four reasons:

1.	The National Assembly of Venezuela, in a final and binding decision enacted by the legislative power in Venezuela, has declared that the Trust Agreement is invalid and unconstitutional and is a "national interest contract" that requires, but lacks, the National Assembly's prior authorization.

2.	Mr. Martinez, who allegedly signed the Trust Agreement on behalf of PDVSA in his capacity as the Minister of the People's Petroleum Power, did not have the legal authority to do so because only PDVSA's board of directors and PDVSA's president have the competence to enter into an agreement on behalf of PDVSA.

3.	Mr. Pedroza, who allegedly signed the Trust Agreement as Procurador General of Venezuela, does not exercise the legal representation of PDVSA and has no competence to sign agreements related to PDVSA's activities.

4.	The Trust Agreement improperly delegates the investigation of damage to public property to a third party because, according to Venezuelan law, such investigation must be conducted by certain Venezuelan entities and is not delegable.

Mr. Hernandez explained the bases for his opinions as follows:

Opinion # 1

The National Assembly has two powers: (1) to enact laws; and (2) to exercise control over the other branches of government.  Pursuant to this oversight function, the National Assembly issued an "Acuerdo," dated April 24, 2018, which declared the Trust Agreement to be a national interest contract and invalid.  See Def.'s Ex. 6.  In addition, the Trust Agreement meets the definition of a national interest contract under Venezuelan law, namely: a contract

between the executive branch and a foreign entity, which has special impact on the national

sovereignty, and has a deep economic impact.[18]

Opinion # 2

According to the Venezuelan Commercial Code and PDVSA's bylaws, the board of

directors of PDVSA must authorize that entity to enter into a contract, and the contract must be

signed by PDVSA's president. Mr. Martinez's execution of the Trust Agreement on behalf of

PDVSA did not follow this procedure. Venezuela's organic law on hydrocarbons did not confer

on Mr. Martinez the broad discretionary power to enter into the Trust Agreement on behalf of

PDVSA; and the Venezuelan state, as the sole shareholder of PDVSA, could not act in lieu of the

board of directors. As a result, the Trust Agreement is a nullity.

Opinion # 3

Mr. Pedroza purportedly signed the Trust Agreement invoking the competence of the

Procurador General to control this kind of agreement, but he did not have such competence.

Additionally, Mr. Pedroza is not the legitimate Procurador General of Venezuela because he was

not appointed by presidential decree with prior authorization from the National Assembly.[19]

Opinion # 4

The proper authorities to investigate the damage to Venezuelan property described in the

Trust Agreement are: the general controller office; PDVSA's internal audit office; the public

prosecutor; and the National Assembly. This is based on the constitution, the general controller

organic law, the anti-corruption organic law and the internal rule of debate of the National

Assembly.

---

[18] According to Mr. Hernandez, a state-owned enterprise, such as PDVSA, is part of the executive branch of the Venezuelan government.

[19] After the Standing Hearing, Defendants filed a resolution issued by the National Assembly on September 12, 2018, stating that Mr. Pedroza had usurped the office of Procurador General [D.E. 626].

On cross-examination, Mr. Hernandez testified that he had no knowledge of any Venezuelan court decisions relating to the National Assembly's "Acuerdo" or the Trust Agreement. Mr. Hernandez also acknowledged an earlier expert opinion in which he stated that, in practice, PDVSA has no autonomy from the state; and explained that, in his view, the Venezuelan government had destroyed PDVSA's autonomy in violation of Venezuelan law.

### B.      Mr. Badell Madrid's expert testimony.

Mr. Badell Madrid was admitted as an expert in Venezuelan law, specifically in the areas of constitutional, public, and administrative law. Defendants engaged Mr. Badell Madrid to render opinions regarding whether Mr. Martinez, in his capacity as oil minister, was authorized to sign contracts on behalf of PDVSA; whether Mr. Pedroza, as Procurador General of Venezuela, was competent to sign the Trust Agreement and, if so, under what formalities or requirements; and whether the Trust Agreement is a national interest contract under Venezuelan law. Mr. Badell Madrid fully agreed with Mr. Hernandez's opinions, and rendered the following opinions and rationales:

1.      Mr. Martinez, in his capacity as oil minister, lacked competence to sign the Trust Agreement on behalf of PDVSA. There is no provision in Venezuelan law that allows it and, by contrast, there are multiple provisions providing that resolutions issued by PDVSA must be signed by an officer or an official representing PDVSA.

2.      Mr. Pedroza is usurping the office of Procurador General and all of his acts are null and void. In addition, he has no authority to sign any contract, agreement or resolution that relates to PDVSA. In any event, prior to signing the Trust Agreement, Mr. Pedroza should have issued a written opinion because the Trust Agreement is a national interest contract and because

it includes an arbitration clause.[20]  A procedure has been established for the issuance of such written opinions by the Procurador General and, according to the Venezuelan Supreme Court of Justice, the procedure must be followed in all cases that directly or indirectly affect the interests of the Republic.   Additionally, the Procurador General's written opinion must be submitted, along with the contract, to the National Assembly for approval or rejection.  The failure to satisfy these requirements renders the Trust Agreement null and void.

3.      The Trust Agreement is a national interest contract entered into with a foreign entity that requires, but lacks, authorization from the National Assembly.  Hence, it is null and void.[21]

On cross-examination, Mr. Badell Madrid testified that he had no knowledge of any Venezuelan court having held the acts of Mr. Pedroza, as Procurador General of Venezuela, or the acts of Mr. Martinez, as oil minister, to be invalid or null and void.  Mr. Badell Madrid also had no knowledge of any Venezuelan court having declared the creation of the Trust and the assignment of PDVSA's claims to the Trust to be invalid. Mr. Badell Madrid acknowledged that contracts into which PDVSA or its affiliates enter in the ordinary course of business need not be approved by the National Assembly.   Mr. Badell Madrid further acknowledged that retaining counsel to engage in litigation falls within PDVSA's and its affiliates' ordinary course of business.

---

[20]  See Trust Agreement, Pl.'s Ex. 1 at 12-13.
[21]  Mr. Badell Madrid further opined that the Trust Agreement compromises the interests of the Republic of Venezuela because it exposes the Republic to suits for damages by the alleged "Conspirators" referenced in the Trust Agreement.

### C.   Mr. Perdomo's expert testimony.

Mr. Perdomo was admitted as an expert in Venezuelan constitutional law.[22]   Mr. Perdomo testified that he disagrees completely with the opinions expressed by Defendants' Venezuelan law experts, Mr. Hernandez and Mr. Badell Madrid.  He opined as follows:

1.   The Trust is not a national public interest contract.

2.   Mr. Martinez, as oil minister, and Mr. Pedroza, as Procurador General, had the authority to sign the Trust Agreement.

Mr. Perdomo explained the bases for his opinions as follows:

Opinion # 1

The Supreme Court of Venezuela has decided that a national public interest contract: has to be engaged in by the Republic of Venezuela, not one of its decentralized entities; has to be a very important contract; and should imply payments by the Republic during several years, thereby representing an important commitment for the Venezuelan economy.[23]   Under this definition, the Trust Agreement is not a national public interest contract because it was entered into by PDVSA, which is a decentralized unit of the public administration of Venezuela. Additionally, the Trust Agreement does not involve anything that is really important to the state, such as communications, telecommunications, railroads or big highways.  Finally, the Trust Agreement does not require yearly payments by the Republic of Venezuela but contemplates, instead, that the Republic will receive money indirectly as a result of litigation of PDVSA's claims.  The Trust Agreement does not contemplate obligations in the form of payments on the part of the Republic.

---

[22]  Plaintiff also proffered Mr. Perdomo as an expert in the Venezuelan legal system, but the undersigned limited his testimony in this area to general opinions regarding this topic rather than allow Plaintiff to sweep into it specific matters regarding which Mr. Perdomo acknowledged he had no expertise.
[23]  For this definition, Mr. Perdomo relied on the "Velasquez" decision issued by the Supreme Court of Venezuela.  See Pl.'s Ex. 47.

Opinion # 2(a)

The organic law of public administration confers on each minister control of the decentralized entities that are under the minister's power.[24]  Thus, Mr. Martinez as the oil minister has the power to intervene in the business of PDVSA and make decisions on its behalf. Formalities should not trump the actions of the people.  There is no Venezuelan court decision stating that the oil minister's role with regard to PDVSA as the sole shareholder, or his exercise of all the shares of PDVSA, is unconstitutional.

Opinion # 2(b)

Mr. Pedroza was not operating illegally as Procurador General of Venezuela at the time of his execution of the Trust Agreement.  He properly holds that title in an "acting" capacity. The process by which Mr. Pedroza became Procurador General of Venezuela has not been contested in any Venezuelan court.  It is common for the Procurador General to approve contracts, and there was nothing improper with Mr. Pedroza signing the Trust Agreement, which represented his approval of the contract.

According to Mr. Perdomo, the National Assembly's "Acuerdo" regarding the Trust Agreement is a political statement that does not have the effect of making it void.  He has no knowledge of any court in Venezuela having declared the Trust to be invalid.  In his opinion, the Trust is legal according to Venezuelan law.

---

[24]  Mr. Perdomo also attempted to proffer an opinion that the organic law of hydrocarbons gives the oil minister supreme powers over any matter related to hydrocarbons.  Because Mr. Perdomo had previously testified that he did not regard himself as an expert in hydrocarbon laws, the undersigned did not allow him to proffer this opinion.

### D.     Evaluation of expert testimony.

Not surprisingly, the parties' respective experts on Venezuelan law have diametrically opposing views regarding the validity of the Trust Agreement and the Trust it purports to establish under that country's laws.

Whether the Trust Agreement is valid:

- Mr. Hernandez expressed the view that the Trust Agreement is not a valid and binding contract, relying in part on the National Assembly's "Acuerdo" declaring the Trust Agreement invalid and unconstitutional.

- Mr. Perdomo opined that the Trust is legal and called the "Acuerdo" a political statement with no legal effect.

Whether the Trust Agreement is a public interest contract:

- Mr. Badell Madrid characterized the Trust Agreement as a public interest contract that requires the approval of the National Assembly.

- Mr. Perdomo opined that the Trust Agreement does not meet the Venezuelan Supreme Court's definition of public interest contract.

Whether Mr. Martinez was a proper signatory on behalf of PDVSA:

- According to Mr. Hernandez and Mr. Badell Madrid, Mr. Martinez lacked the legal authority to execute the Trust Agreement on behalf of PDVSA, and thereby assign PDVSA's claims to the Trust because only PDVSA's board of directors and president had that authority.

- Mr. Perdomo opined that, as oil minister, Mr. Martinez had broad powers to make decisions on PDVSA's behalf and that any formalities could be disregarded.

Whether Mr. Pedroza was a proper signatory as Procurador General:

- Mr. Hernandez deemed Mr. Pedroza to be lacking the competence to sign agreements related to PDVSA's activities. Both Mr. Hernandez and Mr. Badell Madrid opined that Mr. Pedroza does not legally hold the office of Procurador General of Venezuela.

- According to Mr. Perdomo, Mr. Pedroza properly holds the title of Procurador General of Venezuela in an "acting" capacity; and the approval of contracts, such as the Trust Agreement, is a common function of that office.

Whether the Trust may properly carry out its ostensible purpose:

- Mr. Hernandez opined that the Trust Agreement improperly delegates the investigation of damage to public property to a third party because, according to Venezuelan law, such investigation must be conducted by certain Venezuelan entities, namely, the general controller office, PDVSA's internal audit office, the public prosecutor, and the National Assembly; and that function may not be delegated. Mr. Perdomo did not address this contention.

The foregoing summary shows that the opposing experts' opinions are in equipoise, except for Mr. Hernandez's opinion that the investigation of damage to public property may not be delegated to a third party, such as the Trust. That opinion stands unrebutted. Moreover, the undersigned found Mr. Hernandez to be extremely knowledgeable, articulate and logical in his explanations of Venezuelan law. Therefore, the undersigned accepts Mr. Hernandez's unchallenged opinion on this point; and concludes that the Trust Agreement is invalid under Venezuelan law on the basis that it illegally delegates the investigation of damage to public property allegedly sustained by PDVSA to the Trust.

## CONCLUSION

Having considered Defendants' jurisdictional arguments, the undersigned concludes that the Trust lacks standing to assert PDVSA's purportedly assigned claims in this action, on the grounds that Plaintiff has failed to carry its burden of proving the admissibility of the Trust Agreement upon which it relies to establish its Article III standing as assignee of PDVSA; and that Plaintiff has failed to support its claim that it holds a valid assignment from PDVSA by not complying with standing discovery. The undersigned further concludes that Plaintiff lacks standing due to the Trust's and the Trust Agreement's failure to comply with various aspects of its governing New York law, which renders the assignment of PDVSA's claims void. The Trust Agreement is also invalid under Venezuelan law on the basis that it illegally delegates to the Trust the investigation of damage to public property allegedly sustained by PDVSA.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendants' Motion to Dismiss be GRANTED and that this action be DISMISSED for lack of subject matter jurisdiction.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have <u>fourteen</u> days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See <u>Resolution Tr. Corp. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 5 day of November, 2018.


ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


cc:     United States District Judge Darrin P. Gayles
        Counsel of Record