**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:18-CIV-20818-GAYLES/OTAZO-REYES**

PDVSA US LITIGATION TRUST,

      Plaintiff,

v.

LUKOIL PAN AMERICAS LLC, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendants Trafigura Trading, LLC, Lukoil Pan Americas LLC, Colonial Oil Industries, Inc., Colonial Group, Inc., Paul Rosado, Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Sergio de la Vega, Vitol Inc., Vitol Energy (Bermuda) Ltd., Antonio Maarraoui, BAC Florida Bank, Francisco Morillo, Leonardo Baquero, Helsinge Holdings, LLC, Helsinge, Inc., Helsinge Ltd., Daniel Lutz, Luis Liendo, John Ryan, and Luis Alvarez's (collectively "Defendants") Motion, by Order to Show Cause, for Sanctions and Other Relief Against Plaintiff PDVSA US Litigation Trust ("Plaintiff" or the "Trust") (hereafter, "Motion for Sanctions"), filed on June 14, 2018 [D.E. 430]; and Defendant Maximiliano Poveda's Joinder in the Motion for Sanctions, filed on June 15, 2018 [D.E. 434].[1] These matters were referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, pursuant to Title 28, United States Code, Section 636 [D.E. 220].   The undersigned held Show Cause Hearings on this matter on July 6, 2018 and January 25, 2019

---

[1]  PDVSA is the Venezuelan state-owned energy company Petroleos de Venezuela, S.A.  See Am. Compl. [D.E. 12 at 2].

[D.E. 485, 664].  For the reasons stated below, the undersigned respectfully recommends that the Motion for Sanctions [D.E. 430] be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

The Trust commenced this action on March 3, 2018 [D.E. 1].  The Trust filed an Amended Complaint on March 5, 2018 [D.E. 12].  In its amended pleading, the Trust alleges that Defendants engaged in a conspiracy to: "fix prices, rig bids, and eliminate competition in the purchase and sale of crude oil and hydrocarbon products by PDVSA; misappropriate PDVSA proprietary data and intellectual property; and systematically loot PDVSA by causing corrupt PDVSA officials not to collect monies due PDVSA, to pay inflated prices for products and services acquired by PDVSA, to accept artificially low prices for products sold by PDVSA, to overlook the failure to deliver products and services paid for by PDVSA, and to fraudulently conceal what was owed to PDVSA."  See Am. Compl. [D.E. 12 at 2-3].

In the section of the Amended Complaint entitled "Parties," the Trust alleges: "Plaintiff PDVSA US Litigation Trust is a trust established pursuant to the laws of New York to investigate and pursue claims against Defendants and others."  Id. at 4.

The Amended Complaint consists of nineteen counts:

| | |
|---|---|
| Count I | PDVSA Sales of Hydrocarbon Products – Violations of Section I of the Sherman Act. |
| Count II | PDVSA Purchases of Light Crude Products – Violations of Section I of the Sherman Act. |
| Count III | PDVSA Sales of Hydrocarbon Products – Violations of Section 2(c) of the Robinson-Patman Act. |
| Count IV | PDVSA Purchases of Light Crude Products – Violations of Section 2(c) of the Robinson-Patman Act. |
| Count V | Violations of the Florida Deceptive and Unfair Trade Practices Act. |

| | |
|---|---|
| Count VI | Violations of the U.S. Racketeer Influenced and Corrupt Organizations Act Under 18 U.S.C. § 1962(c). |
| Count VII | Violations of the U.S. Racketeer Influenced and Corrupt Practices Act Under 18 U.S.C. § 1962(d). |
| Count VIII | Violations of the Civil Remedies for Criminal Practices Act. |
| Count IX | Fraud. |
| Count X | Civil Conspiracy. |
| Count XI | Aiding and Abetting Breach of Fiduciary Duty. |
| Count XII | Aiding and Abetting Fraud. |
| Count XIII | PDVSA Purchases of Light Crude Products – Breach of Contract. |
| Count XIV | PDVSA Sales of Hydrocarbon Products – Breach of Contract. |
| Count XV | Unjust Enrichment. |
| Count XVI | Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. |
| Count XVII | Violation of the Stored Communications Act, 18 U.S.C. § 2701. |
| Count XVIII | Violation of the Wire and Electronic Communications Interception and Interception of Oral Communications Act (Federal Wiretap Act), 18 U.S.C. § 2510. |
| Count XIX | Violation of the Florida Uniform Trade Secrets Act, CH. 688. |

Id. at 27-58.

In its Prayer for Relief, the Trust seeks various forms of damages, interest, costs, fees, and injunctive relief. Id. at 58-59. According to the PDVSA U.S. Litigation Trust Agreement (hereafter, "Trust Agreement") [D.E. 430-1 at 35-53], Defendants' purported misconduct "caused and continues to cause vast damages to PDVSA and the people of Venezuela;" therefore, "in order to obtain compensation for PDVSA and the people of Venezuela, PDVSA is authorizing the engagement of United States law firms and investigators to further investigate,

commence one or more civil actions (the "Assigned Actions"), and prosecute the Assigned Actions to conclusion." Id. at 35.  The Trust Agreement further states that PDVSA entered into it "to ensure the engagement of legal counsel and the investigators . . . and to provide for the orderly and consensual distribution of the Proceeds of the Assigned Actions, whether by pre-suit settlement, post-suit settlement, or judgment, to PDVSA." Id.

On April 16, 2018, pursuant to Defendants' Joint Request [D.E. 193], the undersigned entered a Scheduling Order prescribing a procedure and schedule for the parties to conduct discovery on the issue of the Trust's standing to bring this action.  See Scheduling Order [D.E. 253].  The Scheduling Order stated that each side would take no more than four fact depositions as to the issue of standing and that these depositions were to be completed by May 4, 2018.  Id. at 2.

On April 24, 2018, Defendants informed the Court that for two of the four fact depositions to which they were entitled, they intended to depose a corporate representative of PDVSA and Reinaldo Munoz Pedroza ("Mr. Pedroza"), the Procurador General of Venezuela, who, as "General Attorney," purportedly "duly authorized" the Trust Agreement under Venezuelan law.  See Notice of Issues to be Addressed During April 25, 2018 Telephonic Discovery Conference [D.E. 276 at 6]; Trust Agreement [D.E. 430-1 at 47, 49].  On that same date, Defendants noticed the deposition of PDVSA's corporate representative, to be conducted on May 3, 2018.  See Notice of Deposition of PDVSA [D.E. 277-1].

The undersigned held a Telephonic Discovery Hearing on April 25, 2018, at which depositions of PDVSA's corporate representative and Mr. Pedroza were discussed [D.E. 279].  As to the availability of PDVSA's corporate representative for deposition, Plaintiff's counsel informed the undersigned as follows:

THE COURT: PDVSA, when will you know if PDVSA is available for deposition and where that deposition would take place?

MR. BOIES: I will know that within the same 48 hours that I will know about the documents and maybe sooner. I may know that as early as the end of the day based on assuming the conversation [with PDVSA's General Counsel] that's scheduled to go forward actually goes forward.  I will know that within the 48 hours that we conferred to before.

THE COURT: Okay. Then what is the position on if PDVSA does not voluntarily offer its corporate representative for deposition on the service of a subpoena on PDVSA? Is it your contention that you [don't] have authority to accept such a subpoena? It is your contention that such a deposition has to take place in Venezuela? Give us some idea of what the disputes are so I can give you some guidance.

MR. BOIES: Sure. If PDVSA would not produce one voluntarily, I will ask for their permission to accept service of a subpoena on their behalf. I believe that they will want that deposition to take place in Venezuela because that's where they are located and that's where all of the high officials of the Government are. Now, we have talked about the possibility of having a deposition taken by video conference.

THE COURT: It sounds to me like that's the only viable way to do it.

MR. BOIES: I think you are right, Your Honor, but I will know about the subpoena issue and whether they will do it voluntarily, which I am going to strongly urge them to do − I will know that within the next 48 hours.

THE COURT: All right. So as to that entity, then, I will again allow you the 48-hour time period to meet and confer and it sounds to me that it might be a good idea to circle back on Monday to see if you have resolved these issues or if you need my further assistance, but let's keep that in mind as a possibility.

See Transcript of 4/25/2018 Hearing [D.E. 314 at 58-59].

As to Mr. Pedroza's availability for deposition, Plaintiff's counsel made the following

representations:

MR. BOIES: In Venezuela there are two people who divide the responsibilities that are united in the Attorney General of the United States, and this individual is one of those two people. He is a high government official. We do not control him. I am not sure, really, what relevant factual information they are going to have on standing, but I have met this person and I think he might very well be prepared to

make himself available for a deposition, but that is a decision that he and the Venezuela government would make. I could not control that. . . .

THE COURT: Mr. Boies, what is your plan? Are you going to pick up the phone and call [Mr. Pedroza] and ask him do you want to appear for deposition and if he says no, that's the end of it? How are we going to handle this?

MR. BOIES: I think I would write him just – my Spanish is not great and his English is not great so I think that I would write him so that there is no misunderstanding and make the request for him to appear for deposition. If he declines, I don't think there is a practical solution because I don't think that he is subject to process in the United States. And even if it would be appropriate to do so with a person of his position in a foreign sovereign government –

THE COURT: All right. Within the next 48 hours, I am assuming when you said you write him, you send him an e-mail because of snail mail.

MR. BOIES: I will write him [a] letter that I will e-mail to him.

THE COURT: So, within 48 hours you will be able to say whether he says yea or nay?

MR. BOIES: Yes.

Id. at 61, 64-65. The undersigned then ordered the parties to meet and confer on, *inter alia*, the availability of PDVSA's corporate representative and Mr. Pedroza for deposition by April 27, 2018. See First Discovery Order [D.E. 278 at 3].

At a Continued Telephonic Discovery Conference on April 30, 2018, Plaintiff's counsel made the following representation regarding the depositions of PDVSA's corporate representative and Mr. Pedroza:

MR. BOIES: Under the scheduling order, each side was given the opportunity to take four depositions. The defendants gave us a list of witnesses in the order in which they would like them to be made available. We have been able to arrange to make available the first three witnesses that they requested, which is the 30(b)(6) deposition of the Trust, a 30(b)(6) deposition of PDVSA and a deposition of the Procurador General or General Attorney of Venezuela, [Mr. Pedroza] . . . . So, what we have agreed to do is to produce the first three, to continue to work on producing one of the next requested priority deponents, but if that fails, to produce Algamex.

See Transcript of 4/30/2018 Hearing [D.E. 357 at 12-13].   The undersigned incorporated Plaintiff's agreement to produce the PDVSA corporate representative and Mr. Pedroza in a contemporaneous discovery order.   See Second Discovery Order [D.E. 355 at 2] ("Defendants have identified and Plaintiff has agreed to produce for deposition: the 30(b)(6) representatives of the Trust and PDVSA, respectively; and Reinaldo Munoz Pedroza.").   The deadline to complete all fact depositions on the issue of the Trust's standing was extended to May 22, 2018.   See Supplemental and Amended Scheduling Order [D.E. 356 at 2].

On May 8, 2018, the undersigned held a Follow-Up Telephonic Hearing [D.E. 369], at which the following exchange occurred:

> THE COURT: All right. And there is some indication that the two that we have, apparently, agreement on, which is [Mr. Pedroza] and the 30(b)(6) representative of PDVSA whose name appears to be Hilda Cabeza, those two can't travel and are not available and there is some indication that you all want to extend that deadline. . . . So, let's sort of sidetrack ourselves into [Mr. Pedroza] and Ms. Cabeza and their availabilities and when their depositions will take place.

> MR. ENCINOSA: Your Honor, [Mr. Pedroza] we have been told by plaintiff can be available for deposition in the United States. They said New York. We may have to agree to New York even though the obligation should be to produce him in the forum, during the week of May 28th and the defendants are generally in agreement to slightly extend the schedule to accommodate that deposition occurring during the week of May 28th. With respect to Ms. Cabeza, although initially we are told she might also be in New York or in the United States, we were told today, I believe, by plaintiff that she is not available or willing to travel to the United States for deposition and could only be made available for deposition according to the defendant by video conference during the week of May 21st. The defendants' position with respect to that is that the PDVSA 30(b)(6) should be, pursuant to the default rule, made available for deposition in the forum here in Miami. We are fine to do it the week of May 21st. We are fine to extend it out to the week of May 28th as we are willing to do it to [Mr. Pedroza].

> THE COURT: Is Ms. Cabeza willing to travel sometime before May 28th or she doesn't want to travel at all?

> MR. BOIES: Your Honor, this is David Boies. We have not been able to get her to agree to travel, and contrary to what defendant keeps saying, I don't think that

there is any obligation on the part of the Trust to compel people who it does not control to come to the United States. We have convinced [Mr. Pedroza] to come to the United States. We tried to convince Dr. Cabeza, but, I mean, for example, in terms of the forum, we are taking the deposition of Trafigura. Trafigura is producing their 30(b)(6) deponent not in the forum. They are producing them in Houston, Texas.

THE COURT: Hang on just one second. Ms. Cabeza is the representative of PDVSA who technically is not a party. It's the Litigation Trust who is the parties. I know there are all those issues. So, I am not going to require that she travel to the United States. She is not a party. She is a witness. So, what do you want to do with her? Do you want to take her video deposition by May 21st or do you want to hold out hope that she will travel to the U.S. and extend her deadline to May 28th? It's up to you.

MR. ENCINOSA: Your Honor, for the sake of clarity and for the record, the argument we are making is based on the case law we cited regarding the assignment of claims and that the assignor stands in the shoes for full respect of discovery of the assignee.

THE COURT: Right, and the cases you cited to me have to do with production of discoverable information and documents. I did not see any case there talking about depositions or location of deposition or anything along those lines. So, that's my ruling. What do you want to do? Do you want to take her by May 21st? Do you want to extend her time to the 28th to see if she changes her mind?

MR. ENCINOSA: Your Honor, to the extent that she changes her mind, we would be willing to extend it to the 28th and to the fact Your Honor requires the deposition to proceed by video conference if she is not willing to travel here, we can do it the week of the 21st. So, if Your Honor wants to leave it open in the order for her to change her mind, we will be happy to do that.

THE COURT: All right. I will leave it open for [Mr. Pedroza] and Ms. Cabeza, their depositions to be taken by May 28th. . . .

MR. BOIES: Your Honor, this is David Boies. We will work with defendants. With this guidance from the Court, I think we can work with defendants to come up with specific dates that are convenient for everybody.

See Transcript of 5/8/2018 Hearing [D.E. 373 at 33-36]. The undersigned then ruled that Defendants could depose Mr. Pedroza and Hilda Cabeza ("Dr. Cabeza") as PDVSA's Rule 30(b)(6) representative and extended the deadline to complete all fact depositions on the issue of standing to the week of May 28, 2018. See Third Discovery Order [D.E. 370 at 3].

The undersigned held a hearing on May 23, 2018, at which Plaintiff's counsel made the following representation:

> THE COURT: Okay. Mr. Boies, when is the deposition of [Mr. Pedroza] taking place and where?
>
> MR. BOIES: It is taking place, Your Honor, on May 30th in New York, and I think the parties have agreed to that.

See Transcript of 5/23/2018 Hearing [D.E. 395 at 28]. Plaintiff's counsel also stated that Dr. Cabeza was available for a deposition to be taken by video conference in Venezuela, but that she was unable to travel to the United States for political reasons. Id. at 29, 34. Counsel further stated that they would try to accommodate Defendants' request to depose PDVSA's corporate representative by either having the deposition by video conference in Venezuela, which Defendants declined due to Venezuela's restrictions on foreign depositions; bringing Dr. Cabeza to another country for the deposition; or finding someone else who could be educated as a Rule 30(b)(6) witness to testify at a deposition in the United States. Id. at 39-40. The undersigned incorporated the parties' agreement regarding Mr. Pedroza into a contemporaneous discovery order. See Fourth Discovery Order [D.E. 390 at 3] ("With regard to the pending depositions on Plaintiff's standing, the deposition of Mr. Reinaldo Munoz Pedroza is scheduled to take place on May 30, 2018 in New York."). The undersigned also prescribed a deadline of May 25, 2018, for the parties to file a joint notice disclosing the deponent's identity, date and location for the deposition of PDVSA's Rule 30(b)(6) representative. Id.

On May 25, 2018, the Trust filed its Notice to the Court with Regard to Depositions, in which it stated that the parties had advised each other that the deposition of PDVSA's corporate representative would take place on June 7, 2018 in Madrid, Spain [D.E. 398]. Email correspondence between the parties showed that Plaintiff's counsel had identified Dr. Cabeza as

the corporate representative who would appear at that deposition.  See Email Correspondence [D.E. 399-4 at 2].  However, Mr. Pedroza's deposition, which had been scheduled to take place in New York on May 30, 2018, was cancelled because "the President of Venezuela had restricted travel of government officials outside the country."  See Emails from Plaintiff's counsel, George Carpinello, dated May 27, 2018 [D.E. 430-1 at 7-8].

On May 29, 2018, the undersigned held a hearing at which the following exchange occurred:

> MR. BOIES: At the aftermath of the elections down in Venezuela and other political events, people were told, high officials in Venezuela were told that they could not travel to the United States, which because we were going to have [Mr. Pedroza] travel to the United States and have a deposition taken, presented a problem and that deposition will not go forward tomorrow. Originally, we were told and we informed counsel that it might not be possible for Dr. Cabeza to leave the country either. **We have, in consultation with both [Mr. Pedroza] and other government officials and Dr. Cabeza, confirmed that she will be able to travel to Spain for her deposition. We are going to request that it be moved from the 7th to the 8th, but she will be able to be deposed.** With respect to [Mr. Pedroza] that is a deposition that we have not yet been able to figure out how we can take other than by the Hague Convention, which is obviously a very lengthy, lengthy process. So, we have -- I think it's fair to say that we have three of the four depositions gelled, but the fourth one came ungelled as a result of the political situation in Venezuela.

> THE COURT: All right. Is his problem that he cannot leave Venezuela because of the elections or can he travel to Spain like Dr. Cabeza did and just not travel to the U.S.?

> MR. BOIES: Right now he is not able to travel outside of Venezuela. We are trying any way that we can to find a way to have a deposition taken. We continue to believe, contrary to the belief of defendants, that deposition by videotape can be taken in Venezuela, but we are trying to see if there is a way that we can get an exception for [Mr. Pedroza] for this case. We have not succeeded in doing that. We were first informed of this, I think, on Friday or Saturday after the elections.

> THE COURT: Now, wasn't the Procurador General the one who said in his opinion that depositions by video could be taken in Venezuela?

MR. BOIES: Yes. So, I think, you know, a real possibility would be, if the defendants were prepared to do this, to have his deposition taken by video in Venezuela. . . .

MR. BIRENBOIM: I think defendants would still have an issue, Your Honor. The basis for our position, and I'm not going to reargue it, but it's not because it was said in the State Department bulletin. It's because Venezuela is a signatory to the Hague Convention and there is a section of the Hague Convention for the voluntary taking of depositions that a nation can either sign onto or not sign onto, and Venezuela declined to do that; therefore, the depositions must take place in Venezuela under the regular Hague accord, which Mr. Boies referred to. And while, obviously, we have not looked at anything the Procurador General may provide on this, at least from our perspective right now, the nation of Venezuela has signed on to certain parts of the Hague Convention and it has not signed on to others. What it has not signed onto is the voluntary taking of depositions. So, until Venezuela changes its status with the Hague, I think our position is clear.

THE COURT: Well, it's up to you, obviously, but the point I was making is, this is the gentleman who opines that it can be done and it would be his deposition that would be taken. So, I don't know who would complain. I don't know if your concern is the plaintiffs would then turn around and say the deposition is not admissible in proceedings here. I don't know if you are concerned that somebody would come and, you know, interrupt the deposition and say you are doing something illegal and, therefore, you know, it cannot go forward anymore. I don't know what your concerns are. I am just saying that in terms of, you know, this being the person who says it can be done and this being his deposition, it might be something that you might consider as to whether it is feasible to get it done by video. But if you can't, and if you don't want to, I can't force you. Obviously, it's your call.

MR. BIRENBOIM: Your Honor, with all due respect, it is not our call. It is illegal for counsel to take a voluntary deposition in Venezuela, even with the permission of the deponent. That's our reading of the law. So, I don't concur in the view that this is just up to us. There are many situations where counsel could take depositions in violation of the laws of the country just by getting someone on the phone and taking a deposition but that's not the way we typically operate. The second point I would make, Your Honor, is one needs to step back and remember that this is the plaintiff in the case who is not apparently able to produce what I think everyone agrees, including Mr. Boies, who referred to [Mr. Pedroza] over and over and over again as a central person on the issue of this trust agreement. This is plaintiff's burden to produce a central witness in a jurisdiction where the deposition could be taken. If that can't be done, then it can't be done, and we will argue what flows from that. But we certainly don't expect to see any declarations from that person or any evidence from that person or any experts relying on that person. . . .

THE COURT: I understand, and you're making your record that in your view it is illegal -- notwithstanding the Procurador General's opinion, it would be illegal for you to take deposition by video in Venezuela. You have made that position perfectly clear. We also know that at this point in time he cannot travel outside of Venezuela due to political reasons, orders of the Government or whatever it is that Mr. Boies is alluding to. So, the question is how long -- and I think what you are sort of hinting on is for me to give them a deadline and say, produce him by this deadline or not produce him. I think that's where you are going.

MR. BIRENBOIM: I think, Your Honor, that is correct, that unless this schedule is going to change we would just like the clarity of knowing at some point in time that he is able to leave and go to Madrid or the United States, or not. That's it.

THE COURT: How long do you need to figure that out Mr. Boies?

MR. BOIES: Your Honor, I wish I could give you a really definitive answer, but I think that Dr. Cabeza's deposition, if we take her on the 8th -- if we cannot produce the Procurador General, I think the 8th is a Friday. If we cannot produce her by the following Monday, I think we will have to say we cannot produce them.

THE COURT: By the 11th then?

MR. BOIES: Yes.

THE COURT: All right. There is the deadline, by June 11th. Produce them by then or state that you cannot.

See Transcript of 5/29/2018 Hearing [D.E. 408 at 46-52] (emphasis added). On May 30, 2018, the undersigned issued the Fifth Discovery Order, which stated: "With regard to the pending depositions on the issue of Plaintiff's standing, those depositions must be completed by **June 11, 2018**." See Fifth Discovery Order [D.E. 404 at 4] (emphasis in original).

On June 7, 2018, the Honorable Andrea M. Simonton, United States Magistrate Judge, presided over an emergency telephonic hearing due to the undersigned's absence from the Southern District of Florida. See Order [D.E. 422 at 1]. At the telephonic hearing, Plaintiff advised that the deposition of Dr. Cabeza as PDVSA's corporate representative, which had been scheduled for Friday, June 8, 2018 in Madrid, Spain "was cancelled because the President of

Venezuela precluded Dr. Cabeza from leaving Venezuela for the deposition." Id.  Plaintiff's

counsel explained:

> MR. CARPINELLO: We were advised very late in the evening two days ago that
> the President of the Republic had directed Ms. Cabeza not to attend the
> deposition. We were -- we had made plans to attend. We had made travel plans, as
> I'm sure many of the defendants did. We had reserved the location and hotels, and
> we were surprised by that development. We have -- we obviously do not control
> PDVSA. And given the political situation in Venezuela, it's difficult for us to
> predict how the republic will respond on any issue. But we are trying -- we are
> working with the republic and making an attempt to get that remedied and to
> arrange the deposition and are considering alternatives, including another 30(b)(6)
> representative.

See Transcript of 6/7/2018 Hearing [D.E. 423 at 12].

On June 14, 2018, Defendants filed the instant Motion for Sanctions [D.E. 430].

Defendants contend that the Trust failed to fully comply with the discovery contemplated by the

Scheduling Orders. Id.  Defendants sought as sanctions: 1) the dismissal of Plaintiff's claims; 2)

in the alternative, an order precluding Plaintiff from claiming that PDVSA properly created the

Trust or properly assigned claims to the Trust, and/or from offering or relying on any evidence

from PDVSA in attempting to prove its standing; and 3) an award of attorneys' fees and costs.

Id.  Defendant Maximiliano Poveda joined the Motion for Sanctions on June 15, 2018 [D.E.

434].  On June 28, 2018, Plaintiff filed its Opposition to Defendants' Motion for Sanctions

(hereafter, "Sanctions Response") [D.E. 459].  On June 29, 2018, Defendants Francisco Morillo,

Leonardo Baquero, Helsinge Holdings, LLC, Helsinge, Inc., Helsinge Ltd., Daniel Lutz, Luis

Liendo, and Maria Fernanda Rodriguez filed a Notice of Facts in Support of Defendants' Motion

for Sanctions [D.E. 466].  Defendants filed their Reply in Further Support of their Motion for

Sanctions (hereafter, "Sanctions Reply") on July 5, 2018 [D.E. 478].  On July 10, 2018,

Defendants filed a Notice of Supplemental Authority [D.E. 486].

On July 12, 2018, Plaintiff filed a Notice of Discovery Issues Requested to be Addressed in Advance of Hearing on Motion to Authenticate the Trust (hereafter, "Rule 31 Notice"), in which it requested leave to conduct depositions upon written questions pursuant to Federal Rule of Civil Procedure 31 of Mr. Pedroza and two other witnesses [D.E. 487]. Defendants filed their Response (hereafter, "Rule 31 Notice Response") on July 16, 2018 [D.E. 497]. On July 19, 2018, the undersigned issued the Eighth Discovery Order denying Plaintiff's request to take Rule 31 depositions by written questions of its own witnesses who had not appeared for Rule 30 depositions by oral examination [D.E. 507].

On July 19, 2018, the undersigned also issued an Order deferring ruling on the Sanctions Motion pending a hearing on the issue of Plaintiff's standing (hereafter, "Standing Hearing"), which was held on August 2 and 3, 2018. See Order [D.E. 508 at 3]; Paperless Minute Entries [D.E. 555, 558]. On November 5, 2018, the undersigned issued a Report and Recommendation (hereafter, "Standing R&R") recommending that the action be dismissed for lack of subject matter jurisdiction [D.E. 636]. The Standing R&R is currently pending before the District Judge. Also on November 5, 2018, the undersigned issued an Order setting a Show Cause Hearing and concluding that, given the recommended dismissal, the only relief to be addressed in the Motion for Sanctions is Defendants' request for an award of attorney's fees and costs, incurred in connection with the preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions. See Order [D.E. 637].

On January 24, 2019, Defendants filed their Submission in Connection with January 25, 2019 Show Cause Hearing (hereafter, "Show Cause Submission"), in which they state that they have incurred substantial costs and attorneys' fees in connection with the two cancelled depositions and the litigation of the Motion for Sanctions, including: approximately $130,630 by

Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Sergio de la Vega, and Luis Alvarez; approximately $50,000 by Helsinge, Inc., Helsinge, Ltd., Helsinge Holdings, LLC, Daniel Lutz, and Luis Liendo; approximately $45,000 by Trafigura Trading LLC and Jose Larocca; approximately $25,000 by Francisco Morillo and Leonardo Baquero; approximately $14,000 by Vitol Inc., Vitol Energy (Bermuda) Ltd., and Antonio Maarraoui; and approximately $12,000 by Colonial Group, Inc., Colonial Oil Industries, Inc., and Paul Rosado [D.E. 662 at 3]. Plaintiff filed a response to the Show Cause Submission on that same day [D.E. 663]

## APPLICABLE LAW

District courts have broad discretion to impose appropriate sanctions for discovery violations under Rule 37(b), which states:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders.  They may include the following:
>
> (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)   striking pleadings in whole or in part;
>
> (iv)    staying further proceedings until the order is obeyed;
>
> (v)     dismissing the action or proceeding in whole or in part;
>
> (vi)    rendering a default judgment against the disobedient party; or
>
> (vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  See also, Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993).

Rule 37(b) further provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). A court may impose sanctions under Rule 37(b) for a variety of purposes, including: "1) compensating the court and other parties for the added expense caused by the abusive conduct; 2) compelling discovery; 3) deterring others from engaging in similar conduct; and 4) penalizing the guilty party or attorney." Bobroff v. Univ. of Miami, No. 15-22695-CIV, 2016 WL 6433095, at *3 (S.D. Fla. Oct. 31, 2016) (citations omitted). To avoid Rule 37(b) sanctions, the opposing party must prove that its discovery conduct was substantially justified, meaning that it was a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." Devaney v. Cont'l Am. Ins. Co., 989 F.2d 1154, 1163 (11th Cir. 1993) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

## DISCUSSION

Defendants seek sanctions pursuant to Rule 37(b) for the last-minute cancellations of the depositions of Mr. Pedroza and Dr. Cabeza, which they argue violated the undersigned's discovery orders and caused Defendants to incur attorneys' fees and costs estimated to be in excess of $250,000. See Motion for Sanctions [D.E. 430]; Show Cause Submission [D.E. 662].[2] Thus, the undersigned must determine 1) whether the Trust violated a discovery order; and 2) whether the violation was substantially justified.[3]

---

[2] As stated by the undersigned at the January 25, 2019 Show Cause Hearing, Defendants must comply with Southern District of Florida Local Rule 7.3 in submitting their exact request for fees and costs.

[3] Defendants also seek sanctions under Rule 37(d) which provides for sanctions when a party fails to attend its own deposition or respond to discovery requests. See Motion for Sanctions [D.E. 430 at 15]; Fed. R. Civ. P. 37(d). However, neither PDVSA nor Mr. Pedroza is a party in this case.

## I.    Whether the Trust Violated a Discovery Order

With regard to Mr. Pedroza, based on Plaintiff's representation at the April 30, 2018 Continued Telephonic Discovery Conference that it had agreed to produce him, the undersigned incorporated that agreement into the Second Discovery Order.  See Transcript of 4/30/2018 Hearing [D.E. 357 at 12-13]; Second Discovery Order [D.E. 355 at 2].  As reflected in the Third Discovery Order, by the May 8, 2018 Follow-Up Telephonic Hearing, Plaintiff had agreed to produce Mr. Pedroza in New York during the week of May 28, 2018.  See Transcript of 5/8/2018 Hearing [D.E. 373 at 33-34]; Third Discovery Order [D.E. 370 at 3].  Plaintiff unequivocally told the undersigned on May 23, 2018 that Mr. Pedroza's deposition was taking place on May 30, 2018 in New York; hence, the Fourth Discovery Order incorporated that representation.  See Transcript of 5/23/2018 Hearing [D.E. 395 at 28]; Fourth Discovery Order [D.E. 390 at 3].  Therefore, the undersigned finds that the Trust's failure to produce Mr. Pedroza, despite its repeated representations that it would produce him, was in violation of the Second, Third, and Fourth Discovery Orders.

With regard to Dr. Cabeza, the undersigned incorporated Plaintiff's agreement to produce a corporate representative of PDVSA into the Second Discovery Order.  See Transcript of 4/30/2018 Hearing [D.E. 357 at 12-13]; Second Discovery Order [D.E. 355 at 2].  At the May 8, 2018 Follow-Up Telephonic Hearing, Plaintiff identified Dr. Cabeza as the PDVSA corporate representative to be deposed; hence, in the Third Discovery Order the undersigned ruled that Defendants could depose her.  See Transcript of 5/8/2018 Hearing [D.E. 373 at 33-36]; Third Discovery Order [D.E. 370 at 3].  Thus, the undersigned finds that the Trust's failure to produce PDVSA's corporate representative was in direct violation of the Second and Third Discovery Orders.

Regarding whether the Trust violated the Fifth Discovery Order, by May 25, 2018, Plaintiff represented to counsel and the Court that Dr. Cabeza had been designated as the PDVSA corporate representative who would appear for deposition on June 7, 2018 in Madrid, Spain. See Notice to the Court with Regard to Depositions [D.E. 398]; Email Correspondence [D.E. 399-4 at 2]. Plaintiff reiterated this representation at the May 29, 2018 hearing at which its counsel unambiguously stated: "We have, in consultation with both [Mr. Pedroza] and other government officials and Dr. Cabeza, **confirmed that she will be able to travel to Spain for her deposition. We are going to request that it be moved from the 7th to the 8th, but she will be able to be deposed."** See Transcript of 5/29/2018 Hearing [D.E. 408 at 47] (emphasis added). To support its argument that it did not violate any court order, the Trust relies on the undersigned's statement during the May 29, 2018 hearing that, by June 11, 2018, the Trust should produce Dr. Cabeza and Mr. Pedroza or state that it could not. Id. at 52; Sanctions Response [D.E. 459 at 21-23]. Plaintiff's reliance is misplaced. Based on the Trust's repeated and unequivocal representations that it was voluntarily producing Dr. Cabeza and Mr. Pedroza, the undersigned was led to believe that these were the only outstanding fact witness depositions on the issue of Plaintiff's standing and that Dr. Cabeza's deposition was going forward on June 8, 2018. Consequently, the undersigned explicitly set a final deadline to complete those depositions by June 11, 2018. See Fifth Discovery Order [D.E. 404 at 4]. Accordingly, the Trust's failure to produce PDVSA's corporate representative by that date was also in violation the Fifth Discovery Order.

The Trust contends that even though it stipulated to the production of these witnesses multiple times over the course of several discovery hearings and even though those stipulations were made enforceable by their incorporation into the undersigned's discovery orders, the

Trust's last-minute cancellation of these depositions should not be deemed a violation of those discovery orders.  The undersigned finds no merit in this contention since it would nullify the effect of the undersigned's careful planning of standing discovery and issuance of the discovery orders based on the parties' agreement.  See Burger King Corp. v. Majeed, 805 F. Supp. 994, 1005 (S.D. Fla. 1992) ("If the parties submit such stipulation to the court and it is 'So ordered and approved' by the court, the noncompliance by one of the parties with such stipulation . . . has a double aspect both as a contract and as a court order.") (citations omitted).

The Trust further maintains that these depositions were immaterial to the issue of standing.  See Sanctions Response [D.E. 459 at 11-14].  Given that the Trust's failure to produce these witnesses contributed to the undersigned concluding that the Trust failed to carry its burden of proving the admissibility of the Trust Agreement upon which it relied to establish its Article III standing and of proving that it holds a valid assignment from PDVSA, the undersigned has found that the depositions were material.  See Standing R&R [D.E. 636 at 18-19].

The Trust also argues that, because it offered Defendants the opportunity to depose these witnesses by video or through written questions as alternatives to in-person depositions, sanctions are not warranted.  See Sanctions Response [D.E. 459 at 18-21].  These alternatives were rejected by Defendants during the discovery hearings.  Defendants declined to conduct a video deposition in Venezuela and provided extensive briefing regarding Venezuela's prohibition against conducting depositions in its territory outside the ambit of the Hague Convention's process.  See Defendants' Notice of Issues to be Addressed During May 23, 2018 Telephonic Hearing [D.E 388 at 12-13]; Sanctions Reply [D.E. 478 at 9-11].  That option was

not feasible in the agreed timeframe contemplated for addressing the standing issue.[4] Defendants similarly rejected Plaintiff's proposal of a deposition on written questions. See Rule 31 Notice Response [D.E 497 at 7-9].[5] Approximately one month after the June 11, 2018 deadline to complete these depositions expired, Plaintiff attempted to cure its discovery deficiencies by seeking leave to take depositions on written questions of its own witnesses, including Mr. Pedroza, and the undersigned denied that request. See Rule 31 Notice [D.E. 487]; Eighth Discovery Order [D.E. 507].

Notwithstanding Plaintiff's attempts to offer alternatives, the fact remains that the Trust unambiguously agreed to produce Dr. Cabeza and Mr. Pedroza for in-person depositions, and those agreements were embodied in the undersigned's discovery orders. Therefore, Plaintiff's failure to produce those witnesses violated those discovery orders.

## II.   **Whether the Violation was Substantially Justified**

From its inception, the Trust sought to recover damages for Defendants' alleged misconduct against PDVSA, which it claimed "has caused and continues to cause vast damages to PDVSA and the people of Venezuela." See Trust Agreement [D.E. 430-1 at 35]. See also Am. Compl. [D.E. 12]. PDVSA allegedly authorized this action "in order to obtain compensation for PDVSA and the people of Venezuela," and entered into the Trust Agreement "to provide for the orderly and consensual distribution of the Proceeds . . . to PDVSA." See Trust Agreement [D.E. 430-1 at 35]. PDVSA, as the purported assignor, could not seek to reap the benefits of litigation without assuming the burden of participating in discovery. See

---

[4] Indeed, Plaintiff's counsel acknowledged that seeking to conduct depositions pursuant to the Hague Convention would be a lengthy process. See Transcript of 5/29/2018 Hearing [D.E. 408 at 47]; Transcript of 7/6/2018 Show Cause Hearing [D.E. 483 at 33-34].

[5] Notably, when Defendants proposed that Plaintiff take the depositions of Defendants Francisco Morillo and Leonardo Baquero by written questions, Plaintiff stated: "No, Your Honor, just like the defendants wouldn't want to take our depositions by written questions, we don't want to take our depositions of them by written questions." See Transcript of 5/23/2018 Hearing [D.E. 395 at 57].

JPMorgan Chase Bank v. Winnick, 228 F.R.D. 505, 507 (S.D.N.Y. 2005) (holding that an assignee had the duty to produce its assignor's "documents, information, and witness testimony" because "the assignees are suing in the shoes of the original lenders, having purchased the right to bring the lawsuit, there is nothing unfair about imposing on them the cost of purchasing cooperation or otherwise complying with discovery obligations"); Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 149 (S.D.N.Y. 1997) ("It would be patently unfair if [the assignee] were able to continue to discover relevant information from [its adversary] while relegating [its adversary] to seek information from [the assignor] as a non-party."). Likewise, Mr. Pedroza, as the Venezuelan government official who purportedly "duly authorized" the Trust Agreement, was an essential witness on the issue of the Trust's standing whose appearance at deposition was unambiguously promised by Plaintiff's counsel, only to be reneged upon at the last minute.

The Trust argues that even if its failure to produce Dr. Cabeza and Mr. Pedroza did violate a court order, the circumstances were beyond the Trust's control. See Sanctions Response [D.E. 459 at 14-17]. In so doing, the Trust attempts to conveniently distance itself from PDVSA, the entity poised to directly benefit from this action, and Mr. Pedroza, the Venezuelan official who allegedly made the Trust legal under Venezuelan law. See Trust Agreement [D.E. 430-1 at 35, 47, 49]. However, the Trust had the burden of proving that it held a valid assignment from PDVSA. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (holding that the plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the elements of standing). Thus, Plaintiff was obligated to produce discovery from PDVSA and the Venezuelan official who allegedly authorized the Trust to support its position. JPMorgan Chase Bank, 228 F.R.D. at 507; Bank of New York, 171 F.R.D. at 149.

As such, reasonable people could not differ as to the inappropriateness of the Trust's unilateral cancellation of these Court-ordered depositions. Devaney, 989 F.2d at 1163. Therefore, the Trust's discovery violations were not substantially justified, and Rule 37(b) sanctions are warranted.

### RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendants' Motion for Sanctions [D.E. 430] be GRANTED and that sanctions be imposed against the Trust pursuant to Rule 37(b). To that end, the undersigned further RESPECTFULLY RECOMMENDS that, should the District Judge adopt the undersigned's Recommendation, Defendants be required to submit within 60 days of the Court's Order a request for their reasonable attorneys' fees and costs incurred in connection with their preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions in accordance with Local Rule 7.3.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have fourteen days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 11 day of February, 2019.


ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:     United States District Judge Darrin P. Gayles
        Counsel of Record