**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 18-20818-CIV-GAYLES/OTAZO-REYES**

**PDVSA U.S. LITIGATION TRUST,**

      **Plaintiff,**

    v.

**LUKOIL PAN AMERICAS LLC, et al.,**

      **Defendants.**

_____/

**AMENDED ORDER**[1]

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss for Lack of Standing (the "Motion") [ECF Nos. 517, 522 (under seal)].[2] The action was referred to Magistrate Judge Alicia Otazo-Reyes, pursuant to 28 U.S.C. § 636(b)(1)(B), for a ruling on all pretrial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters. [ECF No. 220]. Following limited discovery, briefing, and an evidentiary hearing on August 2 and 3, 2018, Judge Otazo-Reyes issued her report finding that Plaintiff has no standing and recommending that the Court dismiss this action for lack of subject matter jurisdiction (the "Report") [ECF No. 636]. Plaintiff has timely objected to the Report [ECF No. 646].[3]

---

[1] The Court amends its March 8, 2019 Order [ECF No. 679] only to correct a scrivener's error.

[2] The moving Defendants are Lukoil Pan Americas LLC; Colonial Oil Industries, Inc.; Colonial Group, Inc.; Paul Rosado; Glencore Ltd..; Glencore Energy UK Ltd.; Gustavo Gabaldon; Sergio de la Vega; Vitol Energy (Bermuda) Ltd.; Vitol, Inc.; Trafigura Tradng, LLC, Francisco Morillo; Leonardo Baquero; Daniel Lutz; Luis Liendo; John Ryan; Helsinge Holdings, LLC; Helsinge, Inc.; Helsinge Ltd; Maximiliano Poveda; Luis Alvarez; Antonio Maarraoui; and BAC Florida Bank.

[3] Defendants filed a response to the objections [ECF No. 652] and Plaintiff filed a reply [ECF No. 655]. On January 29, 2019, the Court directed the parties to address whether the United States Department of the Treasury's designation of Petroleos de Venezuela, S.A. ("PDVSA"), pursuant to Executive Order 13850, has any bearing on the Motion. In their supplemental responses, the parties agreed that Executive Order 13850 does not invalidate the assignment. [ECF Nos. 668, 669].

## BACKGROUND[4]

Petróleos de Venezuela, S.A. ("PDVSA") is a Venezuelan state-owned energy company. [ECF No. 12 at ¶ 1]. According to the Amended Complaint, Defendants[5] conspired to deprive PDVSA of competitive prices for the sale and purchase of oil products and additives causing billions of dollars in damages. [ECF No. 12]. Based on these allegations, PDVSA has standing to bring the claims against Defendants. However, for reasons too speculative to address in this Order, PDVSA assigned its interest in the claims to Plaintiff PDVSA US Litigation Trust ("Plaintiff") via a Litigation Trust Agreement (the "Trust Agreement"). [ECF No. 517-4]. Without this assignment, Plaintiff has no standing.

Assignees, in general, may obtain Article III standing by virtue of a valid assignment. *See Sprint Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008). The assignment in this action, however, is of questionable authenticity and legality. Indeed, the very individuals who could testify as to the authenticity of their signatures on the Trust Agreement are unavailable, in part, due to political unrest in Venezuela.[6] And, even if Plaintiff could authenticate the Trust Agreement, it violates New York's ban on champerty. Finally, the Venezuelan National Assembly has declared that the Trust Agreement is invalid and unconstitutional. This unequivocal

---

[4] The Court incorporates the Report's recitation of the factual and procedural background.

[5] The named Defendants are: Lukoil Pan Americas LLC; Lukoil Petroleum Ltd.; Colonial Oil Industries, Inc.; Colonial Group, Inc.; Glencore Ltd.; Glencore International A.G.; Glencore Energy UK Ltd.; Masefield A.G.; Trafigura A.G.; Trafigura Trading LLC; Trafigura Beheer B.V.; Vitol Energy (Bermuda) Ltd.; Vitol S.A.; Vitol, Inc.; Francisco Morillo; Leonardo Baquero; Daniel Lutz; Luis Liendo; John Ryan; Helsinge Holdings, LLC; Helsinge, Inc.; Helsinge Ltd., Saint-Hélier; Waltrop Consultants, C.A.; Godelheim, Inc.; Hornberg Inc.; Societe Doberan, S.A.; Societe Hedisson, S.A.; Societe Hellin, S.A.; Glencore de Venezuela, C.A.; Jehu Holding lnc.; Andrew Summers; Maximiliano Poveda; Jose Larocca; Luis Alvarez; Gustavo Gabaldon; Sergio De La Vega; Antonio Maarraoui; Campo Elias Paez; Paul Rosado; BAC Florida Bank; EFG International A.G.; and Blue Bank International N.V.

[6] The record is replete with allegations that key witnesses could not travel or be deposed due to political upheaval and bans on travel in Venezuela. In addition, since this litigation was filed, the United States withdrew its recognition of Nicolas Maduro as the president of Venezuela and officially recognized the President of the National Assembly, Juan Guaidó, as the Interim President of Venezuela and affirmed its support of the National Assembly as "the only legitimate branch of government duly elected by the Venezuelan people." [ECF No. 665-1].

declaration by the only governing body in Venezuela recognized by the United States, the questionable authority of the Venezuelan officials who signed the Trust Agreement, and the political unrest in Venezuela exemplify the problems with Plaintiff's purported standing. While the Court is mindful of the suffering of the people of Venezuela[7] and severity of the allegations against Defendants, it cannot create standing where there is none. Plaintiff has no standing and is not the proper party to bring these claims.

## DISCUSSION

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review, if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the report and recommendation to which *no* specific objection is made are reviewed only for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

In her Report, Judge Otazo-Reyes made the following findings: (1) the issue of Plaintiff's standing is jurisdictional as opposed to prudential; (2) Plaintiff failed to carry its burden of proving the admissibility of the Trust Agreement; (3) Defendants have standing to challenge the validity of PDVSA's purported assignment of its claims to Plaintiff; (4) the Trust Agreement is void under New York law; and (5) the Trust Agreement is invalid under Venezuelan law. Judge Otazo-Reyes declined to address the Act of State or political question doctrines and their applicability to the

---

[7] As discussed below, even if Plaintiff had standing and prevailed on its claims, PSDVA would only receive 34% of the recovery. *See infra* § IV.

issue of Plaintiff's standing. The Court has conducted a *de novo* review of the record and the law and agrees, in part, with the Report's recommendations as set forth below.

**I.      Standing**

"[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). To establish Article III constitutional standing, "the plaintiff must show an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017) (quoting *Spokeo, Inc. v. Robbins,* 136 S. Ct. 1540, 1547 (2016)). The "irreducible constitutional minimum of standing" requires an "injury in fact" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

In addition to Article III standing, a plaintiff must have prudential standing. Prudential standing does not relate to the Court's constitutional power to adjudicate the case. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Rather, it encompasses "three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* at 126 (internal quotations and citations omitted).

As Judge Otazo-Reyes correctly concluded in her Report, the Court must first determine if Plaintiff has Article III standing before it evaluates prudential standing.[8] *See Sprint*, 554 U.S. at

---

[8] Because the Court finds Plaintiff does not have Article III standing, which a Court may address *sua sponte*, it does not address Plaintiff's arguments that Defendants have no standing to challenge the assignment. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.") (internal

289 (first addressing whether the assignees had Article III standing before addressing prudential concerns). Plaintiff's sole basis for standing is the assignment set forth in the Trust Agreement. "[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vermont Agency of Natural Res. V. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000). However, if the Trust Agreement is inadmissible or void, Plaintiff cannot establish that it suffered an injury in fact sufficient to establish constitutional standing. *See US Fax Law Center, Inc. v. iHire, Inc.,* 476 F.3d 1112, 1120 (10th Cir. 2007) (finding no Article III standing where the assignment was invalid under Colorado law because "an invalid assignment defeats standing if the assignee has suffered no injury in fact himself."); *MSP Recovery, LLC v. Allstate Ins. Co.*, 276 F. Supp. 3d 1311, 1217 (S.D. Fla. 2017) (dismissing action for lack of Article III standing where assignment was invalid); *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 281 F. Supp. 3d 1278, 1282 (S.D. Fla. 2017).

## II. Admissibility of the Trust

The Court agrees with the Report's finding that the Trust Agreement is inadmissible. The Trust Agreement contains five signatures: (1) Alexis Arellano, the PDVSA Appointed Litigation Trustee; (2) Edward P. Swyer, a US Law Firm Appointed Litigation Trustee; (3) Vincent Andrews, a US Law Firm Appointed Litigation Trustee; (4) Nelson Martínez, the former Venezuelan Petroleum Minister; and (5) Reinaldo Muñoz Pedroza, the Venezuelan Procurador General. Only Mr. Andrews and Mr. Swyer, the US Law Firm appointees, acknowledged their signatures on the Trust Agreement.[9] Plaintiff was unable to authenticate the other three signatures, including anyone with

---

quotations and citations omitted); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) ("[The Court is] obliged to consider questions of standing regardless of whether the parties have raised them.").

9   Mr. Andrews and Mr. Swyer also signed Amendment Number One to the Trust Agreement which eliminated from the Trust Agreement the second US Law Firm Appointer and replaced the Trust Agreement's definition of "PDVSA Appointer" from "The Minister of the People's Petroleum Power" to "The President of PDVSA." *See* Trust Agreement, Pl.'s Ex. 1 at 1, 8; Amendment One Pl. Ex. 2 at 1, 2.

authority to take action on behalf of PDVSA.[10] Mr. Arellano never acknowledged his signature and never appeared for deposition.[11] Just before the hearing, Plaintiff submitted an acknowledgement of signature and apostille for Mr. Pedroza. However, Defendants were not able to depose Mr. Pedroza because, according to Plaintiff, then President Maduro had restricted the travel of government officials. Because Defendants were not provided the opportunity to depose Mr. Pedroza as to his eleventh-hour acknowledgment, Judge Otazo-Reyes excluded it from consideration. Finally, at the hearing, Plaintiff attempted to introduce Mr. Martinez's alleged acknowledgement of his signature, signed on August 1, 2018, one day before the hearing. On Defendants' motion, Judge Otazo-Reyes excluded the acknowledgement as untimely.[12]

Plaintiff then tried to authenticate the signatures on the Trust Agreement via the testimony of George Carpinello, Plaintiff's counsel. Judge Otazo-Reyes properly precluded Mr. Carpinello from testifying. *See Putnam v. Head,* 268 F.3d 1223, 1246 (11th Cir. 2001) ("rules of professional conduct generally disapprove of lawyers testifying at proceedings in which they are also advocates."). Finally, Plaintiff endeavored to authenticate the signatures via a handwriting expert, Ruth Brayer. The Court agrees with the Report's finding that Ms. Brayer's proffered opinions do not meet *Daubert* standards. Accordingly, the Court finds that Plaintiff has failed to establish the admissibility of the Trust Agreement. Without an admissible Trust Agreement, Plaintiff cannot

---

[10] Defendants' Venezuelan law experts contend that neither Mr. Martinez nor Mr. Pedroza had the authority to execute the Trust Agreement on behalf of PDVSA.

[11] Less than two days before the hearing, Plaintiff attempted to introduce a "Notice of Appointment of Successor Trustee," appointing Marcos Rojas as a successor trustee to Mr. Arellano. Plaintiff also sought to introduce Mr. Rojas as a witness. Judge Otazo-Reyes excluded the evidence as untimely. [ECF No. 564]. The Court affirms Judge Otazo-Reyes's decision to exclude the evidence and, therefore, overrules Plaintiff's Objections set forth at ECF No. 600.

[12] Plaintiff has objected to Judge Otazo-Reyes's Order Striking Mr. Martinez's Acknowledgment [ECF No. 565]. The Court agrees with Judge Otazo-Reyes's decision to exclude the evidence and, therefore, overrules Plaintiff's Objections set forth at ECF No. 601.

establish its Article III standing and this action must be dismissed for lack of subject matter jurisdiction.

**III.    Sanctions**

Judge Otazo-Reyes also excluded the Trust as a sanction for Plaintiff's failure to comply with standing discovery.  While the Court acknowledges Plaintiff's repeated discovery violations, often followed by dubious excuses, it does not find that the violations warrant the extreme sanction of excluding the Trust Agreement.  This issue, however, is moot, as the Court finds the Trust Agreement inadmissible.[13]

**IV.    The Trust is Void under New York Law on Champerty**

The Court agrees with the Report's finding that, even if it were admissible, the assignment in the Trust Agreement is void under New York law.[14]  New York's champerty statute expressly prohibits the assignment of claims "with the intent and for the primary purpose of bringing a lawsuit."  *See Justinian Capital SPC v. WestLB AG*, 65 N.E. 3d 1253, 1254 (N.Y. 2016).  *See also Aretakis v. Caesars Entertainment*, No. 16-cv-8751, 2018 WL 1069450, at *10 (S.D. Fla. 2018) (holding assignment was void where "portions of the purported assignment make plain that the purpose of the assignment was to allow Plaintiff to prepare and file a lawsuit seeking to obtain the funds to which Plaintiff claims [assignor] is entitled.").  Here, the "primary purpose" of the Trust Agreement "is to facilitate the prosecution and resolution of the Assigned Actions and to liquidate the Liquidation Trust Assets with no objective to continue or engage in the conduct of a trade or business."  [ECF No. 517-4].  Indeed, only 34% of any recovery goes to PDVSA.  The remaining

---

[13]    Judge Otazo-Reyes has recommended that the Court grant Defendants' Motion for Order to Show Cause, for Sanctions and Other Relief. [ECF No. 430]. The Court reserves ruling on the sanctions motion and any award of fees until after Defendants have had an opportunity to respond to Plaintiff's objections to the Report and Recommendation [ECF No. 670].

[14]    The Trust Agreement's choice of law provision provides that the Trust Agreement is governed by New York law.

7

66% is split between Plaintiff's lawyers, investigator, and financier.[15] The clear purpose of the Trust Agreement was to bring this lawsuit – with attorneys and investors as the primary beneficiaries. As a result, the Trust Agreement is void under New York law and cannot provide a basis for Plaintiff's standing to bring this action.

Despite the choice of law provision in the Trust Agreement, Plaintiff argues that New York law does not apply where the transferred claims are federal claims. This objection is without merit. Federal courts have applied New York's champerty ban to federal claims filed in federal court. *See Koro Company, Inc. v. Bristol-Myers Company,* 568 F. Supp. 280, 288 (D.D.C. 1983) (applying New York's champerty law to the assignment of an antitrust claim). Plaintiff also contends that the champerty statute is inapplicable because Plaintiff is not technically a "corporation" or an "association." The Court disagrees. *See Mohonk Trust v. Board of Assessors*, 392 N.E.2d 876, 879 (N.Y. 1979) ("Although the word 'corporation' is strictly defined in the law, the word 'association' is a broad term which may be used to include a wide assortment of differing organizational structures including trusts . . ."). Finally, the Court agrees with the Report's findings that the safe harbor provisions in the champerty statute do not apply.[16]

## V.    Venezuelan Law and the Act of State Doctrine

Judge Otazo-Reyes, relying on the testimony of Professor Jose Ignacio Hernandez, found that the Trust Agreement was void under Venezuelan law because it was a "public order obligation" that could not be transferred to third parties. [ECF No. 570-2, ¶ 85]. Plaintiff has now offered an untimely expert report to rebut Professor's Hernandez's opinions. In light of the Court's

---

[15]     The identities of Plaintiff's investigator and financier and the specifics of the financial arrangements were submitted to the Court under seal.

[16]     Because the Court finds that the Trust Agreement is void under New York's champerty law, it declines to address whether the lack of certificates of acknowledgement violate New York Trust law or whether the Trust Agreement fails to sufficiently define its corpus.

dispositive rulings as to the admissibility of the Trust Agreement and New York's champerty law, it declines to make a formal ruling on Venezuelan law. However, the Court notes that the National Assembly's declaration that the Trust Agreement is unconstitutional certainly lends credence to Judge Otazo-Reyes's recommendation. Indeed, if the Court were to hold otherwise, it would be ruling in direct contravention to a resolution by a foreign sovereign – likely in violation of the Act of State doctrine.

The Act of State doctrine prevents courts from adjudicating an action where "the relief sought or the defense interposed . . . require[s] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l.*, 493 U.S. 400, 405 (1990). The doctrine "'is not some vague doctrine of abstention but a principle of decision binding on federal and state courts alike'; 'the act within its own boundaries of one sovereign State . . . becomes . . . a rule of decision for the courts of this country.'" *Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. B.V.*, 809 F.3d 737, 743 (2d Cir. 2016) (quoting *W.S. Kirkpatrick & Co.*, 493 U.S. at 406); *see also Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1253 (11th Cir. 2006) ("The act of state doctrine is a judicially-created rule of decision . . ."). The doctrine applies when an action cannot be decided without the "court having to inquire into the legal validity" of a foreign sovereign's activity and conduct. *Hourani v. Mirtchev*, 796 F.3d 1, 15 (D.C. Cir. 2015). Indeed, "[w]hen it is made to appear that the foreign government has acted in a given way . . . the details of such action or the merit of the result cannot be questioned but must be accepted by our courts as a rule for their decision." *Konowaloff v. Metropolitan Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012) (quoting *Ricaud v. American Metal Co.*, 246 U.S. 304, 309 (1990)). The foreign government need not be a

party to the litigation for the doctrine to apply. Rather, its application "turns on what must be adjudicated." *Hourani*, 796 F.3d at 15.

Earlier in this case, Plaintiff argued there is no "doubt that PDVSA is an instrumentality of the Venezuelan government" and that the Act of State and the international comity doctrines foreclose the Court from adjudicating the legality of action taken by the Venezuelan government. [ECF No. 646, p. 30-31]. Subsequently, on January 23, 2019, the United States recognized Juan Guaidó as the Interim President of Venezuela and reaffirmed its recognition of the National Assembly as Venezuela's only legitimate branch of government. The United States' recognition of the National Assembly, as opposed to the Maduro regime, "is retroactive in effect and validates all the actions and conduct of the government so recognized from the commencement of its existence." *United States v. Pink,* 315 U.S. 203, 223 (1942) (quoting *Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918)). Therefore, if the National Assembly's declaration that the Trust Agreement is unconstitutional is considered an official act of the government of Venezuela, the Act of State doctrine would preclude this Court from ruling otherwise. *See Konowaloff*, 702 F.3d at 143 ("After the Executive Branch's recognition of a foreign state, the act of state doctrine applies retroactively to acts that were undertaken by the foreign state prior to official United States recognition."). The Venezuelan government, now recognized by the United States government, has declared the Trust Agreement at issue to be invalid. But given the current turmoil in Venezuela and the uncertainty concerning Venezuelan leadership, and because the Court has already determined that Plaintiff does not have standing, the Court declines to apply the Act of State doctrine here. The principles behind the doctrine, however, clearly support the Court's reticence to enforce the Trust Agreement.

## CONCLUSION

Accordingly, after careful consideration, it is **ORDERED AND ADJUDGED** as follows:

(1)   Judge Otazo-Reyes's Report and Recommendation [ECF No. 636] is **ADOPTED in PART**;

(2)   Defendants' Motion to Dismiss for Lack of Standing (the "Motion") [ECF Nos. 517, 522 (under seal)] is **GRANTED**. This action shall be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

(3)   Campo Elias Paez's Motion to Quash Service of Process [ECF No. 272] and Campo Elias Paez's Motion to Quash Renewed Service of Process [ECF No. 604] are **DENIED as MOOT.**

(4)   Plaintiff's Objections to the Order Striking a Witness and the Order Excluding Admission of Plaintiff Exhibit 63 [ECF No. 600] are **OVERRULED**.

(5)   Plaintiff's Objections to the Order Striking Plaintiff's Exhibit 64 [ECF No. 601] are **OVERRULED**.

(6)   This action shall be **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of March, 2019.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE