## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

PDVSA US LITIGATION TRUST,

          Plaintiff,

   v.

LUKOIL PAN AMERICAS LLC, et al.,

          Defendants.

No. 1:18-cv-20818 (DPG)

## DEFENDANTS' VERIFIED MOTION FOR ATTORNEYS' FEES
## AND NON-TAXABLE EXPENSES AND COSTS[1]

Defendants Trafigura Trading LLC, Colonial Oil Industries, Inc., Colonial Group, Inc., Paul Rosado, Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Sergio de la Vega, Vitol Inc., Vitol Energy (Bermuda) Ltd., Antonio Maarraoui, BAC Florida Bank, and Luis Alvarez (collectively "Defendants"), pursuant to Local Rule 7.3(a) respectfully move this Court to award reasonable attorneys' fees and non-taxable expenses and costs to Defendants, against Plaintiff PDVSA US Litigation Trust ("Plaintiff") pursuant to this Court's Order dated March 19, 2019 [ECF No. 685] (the "Order"). In support of this Motion, Defendants state as follows:

---

[1] In accordance with Local Rule 7.3(a)(2)-(7), included with this Motion are declarations submitted on behalf of each defendant or group of defendants: i) identifying the amounts sought; ii) the terms of any applicable fee agreement; iii) the identity, experience and qualifications for each timekeeper for whom fees are sought; iv) the number of hours reasonably expended by each such timekeeper; v) a description of the tasks done during those hours; vi) the hourly rates claimed for each timekeeper; and vii) a description of all incurred and claimed fees and non-taxable expenses (accompanied with corresponding invoices or receipts). *See* Exhibits 1–6.

I.      <u>MEMORANDUM OF LAW</u>

A.      **Defendants Are Entitled to Recover Their Fees and Costs.**

On March 19, 2019, the Court entered the Order granting Defendants' Motion, by Order to Show Cause, for Sanctions and Other Relief Against Plaintiff [ECF No. 430] (the "Motion for Sanctions") and imposing sanctions, in the form of attorneys' fees and costs, against Plaintiff. *See* ECF No. 685. Specifically, the Court found Defendants are entitled to recover their "reasonable attorneys' fees and costs incurred in connection with their preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions in accordance with Local Rule 7.3." *Id.* The Court further ordered Defendants to file their request for attorneys' fees and costs within sixty days of the Order, on or before May 20, 2019. On May 17, 2019, the Court extended the deadline for filing the request to May 28, 2019. *See* Paperless Order [ECF No. 700].

B.      **Amount of Fees and Costs Sought.**

Defendants seek a total of **$359,313.65** in attorneys' fees and non-taxable costs for the time and expense incurred preparing for the cancelled depositions of Dr. Cabeza and Mr. Pedroza, as well as for the time and expense litigating the Motion for Sanctions. Specifically, the following Defendants seek the following amounts:

- Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Luis Alvarez, and Sergio de la Vega: <u>$233,001.60</u>. *See* Declaration of Attorneys' Fees and Costs (executed by Jessica Carey).

- Trafigura Trading LLC: <u>$59,656.50</u>. *See* Declarations of Attorneys' Fees and Costs (executed by Adam Wolfson and Edward M. Mullins).

- Vitol Inc., Vitol Energy (Bermuda) Ltd., and Antonio Maarraoui: <u>$12,100.48</u>. *See* Joint Declaration of Alexander L. Kaplan & Gerald E. Greenberg.

- Colonial Oil Industries, Inc., Colonial Group, Inc., and Paul Rosado: $16,743.67.  *See* Declaration of David M. Burkoff.

- BAC Florida Bank:  $37,811.40.  *See* Declaration of Nicolas Swerdloff.

### C.      Reasonableness of Attorneys' Fees

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." *Norman* v. *Hous. Auth. of Montgomery*, 836 F. 2d 1292, 1299 (11th Cir. 1988) (citing *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983)).  The resulting figure is known as the "lodestar."  In this Circuit, courts analyze twelve factors to determine the reasonableness of attorneys' fees.  *See Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (establishing guidelines for courts to follow in determining fee requests).[2]  Each of the *Johnson* factors is addressed below.

### 1.      The Time and Labor Required

In seeking an award of fees, attorneys have an obligation to exercise "billing judgment." *Hensley*, 461 U.S. at 434.  As demonstrated by the Declarations, Defendants' counsel exercised billing judgment by efficiently staffing the case.  While a large total number of attorneys worked on the matters subject to the show-cause order, the number of attorneys who worked on those mattes for each defendant was reasonable, and as explained below, this was a complex and novel case.  Indeed, the number of attorneys and hours expended by Defendants was required by the efforts of Plaintiff itself, who aggressively litigated this case with eight counsel-of-record, and additional counsel that did not make appearances.

---

[2] Decisions of the Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit pursuant to *Bonner* v. *City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Throughout the meet-and-confer process, Plaintiff has contended that no attorneys beyond Defendants' local counsel needed to attend the show cause hearings, and therefore the recovery of any travel time would be unreasonable. However, the complexity of the matters to be discussed at the show cause hearings, as explained below, and non-local counsel's critical involvement in—and first-hand knowledge of—the attorney preparation and logistical arrangements for the depositions at issue on the motion to show cause, both warranted travel by counsel based outside of Florida. *Johnson* v. *Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) ("Since [Defendants] had the right to retain more than one attorney, the exclusion of out-of-town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel.").

Plaintiff has also questioned whether Defendants exercised billing judgment in sending multiple attorneys to attend the show cause hearings instead of merely one or two attorneys to appear on behalf of all defendants and present oral argument. That contention is baseless. Plaintiff made a choice to sue more than 40 defendants and subsequently conducted itself in discovery in a fashion warranting a show cause motion. When this Court held hearings on that motion, the complexity of the underlying discovery history and uniqueness of each Defendant's contribution to the strategy for the cancelled depositions made participation of multiple counsel a necessity. Of course, each Defendant had a right to have its own counsel present at any hearing where its interests may be affected. *See Saregama India Ltd.* v. *Taylor*, No. 08-20373-CIV, 2010 WL 11504375, at *8 (S.D. Fla. July 14, 2010) ("The defendants respond that the presence of multiple attorneys from multiple firms was necessary because the plaintiff sued multiple defendants and each is entitled to have their own counsel. . . . The undersigned recognizes that the presence of multiple defendants necessitated multiple attorneys and that the performance of

4

distinct work by the attorneys may not always be visible to the opposing party."), *report and recommendation adopted sub nom. Saregama India Ltd.* v. *Mosley*, No. 08-20373-CIV, 2010 WL 11505542 (S.D. Fla. Aug. 30, 2010).  Nor is it unreasonable that some Defendants were represented by multiple lawyers at a given hearing.  "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."  *See Norman*, 836 F.2d at 1302.  Thus, it is not unreasonable for a senior lawyer delivering oral argument to be accompanied by a junior colleague who may help him prepare for his argument, take notes during the hearing, and subsequently provide a summary for the client, as was the case for Paul, Weiss at the July 6, 2018 hearing.  Indeed, such division of labor is customary.  *See Univ. Coll. of Univ. of Ala.*, 706 F.2d at 1208 ("The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work.").

Additionally, Plaintiff's meet-and-confer position that only lawyers who were scheduled to take the cancelled depositions should have participated in briefing the Motion by Order to Show Cause also ignores the history and context of these proceedings.  Indeed, Defendants' Motion, by Order to Show Cause, for Sanctions and Other Relief Against Plaintiff [ECF No. 430] initially implicated complex evidentiary issues and sought broader relief than monetary recovery for the cancelled depositions, with the potential to affect all Defendants.  And while Defendants do not purport to seek recovery on sanctions grounds on which they did not prevail, the allocation of attorney labor on the Motion across law firms not only made sense—it was efficient and a good example of "billing judgment."  Indeed, for the non-deposing parties to take on a meaningful share of drafting responsibilities, given the other expenditures of time and

money that the deposing parties had already incurred, was an efficient and equitable allocation of resources. Under Plaintiff's reasoning, only law firms that act as first chairs in depositions should draft sanctions briefs pertaining to those depositions—a proposition that is unsupported by actual practice or logic.

Furthermore, contrary to Plaintiff's objection, the discovery undertaken related to Plaintiff's standing was not "limited" in a way that renders Defendants' billed hours unreasonable.  As the Report and Recommendation and the subsequent Order granting the motion to dismiss show, both the facts developed through that discovery and those facts that Defendants were unable to assess when the deponents became unavailable to Defendants, played a crucial role in the outcome of the standing challenge.  The scope of document discovery confirms the extent of the labor required:  Plaintiff was ordered to produce "all" documents related to standing, including over 20 versions of the Trust Agreement and documents requiring translations, which Defendants incorporated into their deposition strategies.  Furthermore, the depositions that did take place—those of David Boies and the Algamex Rule 30(b)(6) witnesses—explored different issues from those that Defendants would have pursued in the depositions of the Venezuelan witnesses.  While the former focused on the champertous implications of the litigation's origin, the impact of the sanctions regime applicable to Venezuela on the origins of the Trust, and the circumstances surrounding the appointment of the U.S. Trustees, the latter would have been largely devoted to questions of the signatories' authority to enter into the Trust Agreement, the witnesses' understanding of the relevant Venezuelan laws, and the appointment and intended role of the PDVSA-appointed Trustee.  Of course, since the depositions of the Venezuelan witnesses did not take place, Plaintiff can only speculate about

Defendants' deposition strategy and claim there would have been overlap with other fact discovery.

### 2.      The Novelty and Difficulty of the Case

This case was uniquely challenging for a number of reasons.  First, Plaintiff filed a 59-page, nineteen-count complaint naming 43 defendants and alleging that "PDVSA has suffered billions of dollars in losses" as a result of Defendants' purported acts.  *See* Am. Compl. [ECF No. 12] ¶¶ 10–52, 136–321.  Second, Plaintiffs' bought a wide array of claims against the Defendants, including but not limited to, bid-rigging, price-fixing and anti-competition claims under the Sherman Act and Robinson-Patman Act (Counts I-IV), a claim under the Florida Deceptive and Unfair Trade Practices Act (Count V), racketeering claims under the Racketeer Influenced and Corrupt Practices Act and the Florida state-law equivalent (Counts VI-VIII), claims for fraud and conspiracy to commit fraud (Counts IX, X & XII), computer fraud claims under the Computer Fraud and Abuse Act and the Stored Communications Act (Counts XVI & XVII), a wiretapping claim under the Wire and Electronic Communications Interception and Interception of Oral Communications Act (Count XVIII), and a claim for the alleged theft of trade secrets under the Uniform Trade Secrets Act (Count XIX).  *Id*.  Third, Plaintiffs sought "many billions of dollars" in alleged damages for alleged "misdeeds" that took place from 2004 through the present.  *Id*. at ¶¶ 7, 223.

Beyond this, contesting Plaintiffs' standing was also uniquely challenging for a number of reasons.  Specifically, Plaintiffs were forced to investigate the circumstances surrounding the creation and establishment of the mysterious PDVSA US Litigation Trust.  Additionally, challenging Plaintiffs' standing raised unique questions under U.S. and Venezuelan law, including issues regarding the constitutional, public and administrative laws of Venezuela, and

issues concerning the Act of State Doctrine (first raised by Plaintiff) and the Political Question Doctrine, and New York's laws on champerty and maintenance and the establishment and formation of trusts.

### 3.    Skill Requisite to Perform the Legal Service Properly

This factor is addressed to the Court's assessment of the attorneys based upon its observation of "the attorney's work product, . . . his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718.  In making this assessment, the Court is to apply its expertise gained from its own career, both as a lawyer and as a judge.  *Id*.  This criterion asks, initially, whether Defendants' lawyers were competent and experienced to perform the job assigned and, thereby, whether they are deserving of the prevailing rates for lawyers engaged in litigation. This case required highly skilled attorneys, particularly because of the size and scope of the dispute, the number and complexity of the legal issues (including foreign law issues and foreign language components), and the expedited and sensitive nature of the case.   Defendants respectfully submit that the written and oral presentations to the Court were of a high quality and served to aid the Court in its consideration of the issues presented.  Further, counsel invested a reasonable amount of time in preparing for the depositions of Reinaldo Munoz and Hilda Cabeza given the issues presented in the case.

### 4.    The Preclusion of Other Employment Due to Acceptance of the Case

While this case did not preclude counsel from other employment, given the complexity of the issues and the amount of work that was required in a short period of time, this case certainly consumed much of the time of the lawyers involved and required the expenditure of significant efforts and resources.

### 5.      The Customary Fee

The Eleventh Circuit has provided guidance on how to determine whether a requested rate is reasonable: "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman*, 836 F.2d at 1299.

Plaintiff objects that Defendants' billing rates are unreasonable.   They were not. Although the general rule is that "[t]he rate of attorney's fees is that of the place where the case is filed," *Cullens* v. *Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994), there is an exception where the party can show that there are no lawyers in that locality with the expertise to handle the case.  *See ACLU of Ga.* v. *Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).  Here, Plaintiff purported to form a Trust organized under and governed by New York law with the express purpose of bringing this action in Florida.  It should come as no surprise, then, that Defendants required the assistance of out-of-town specialists—lawyers from large markets who had experience in similarly complex multi-jurisdictional matters and, in particular, lawyers equipped to analyze the validity, *under New York law*, of the Trust Agreement on which Plaintiff's entire case rested.  "[I]f the client needs to go to a different city to find that specialist," as Defendants did here, "he will expect to pay the rate prevailing in that city. In such a case, there is no basis for concluding that the specialist's ordinary rate is unreasonably high." *Maceira* v. *Pagan*, 698 F.2d 38, 40 (1st Cir. 1983), *cited by Cullens*, 29 F.3d at 1494.  As further explained below, that expertise yielded results.  *See* Report and Recommendation on Motion to Dismiss [ECF No. 638] at 21, 25, 26, 36 (recommending dismissal of the case on various New York law grounds, including champerty); Am. Order on Motion to Dismiss [ECF No. 684] at 8, 11 (adopting Report

and Recommendation and dismissing the case on various grounds, including champerty under New York law).

Indeed, Defendants' hourly rates are reasonable on their face because they were charged to and paid by their sophisticated clients for this litigation, which suggests the hourly rates were reasonable to defend a complaint seeking billions of dollars in damages.  Further, Defendants submit that, upon information and belief, their rates are similar (and in some instances lower) than those charged by Plaintiff's counsel, which itself is relevant to the analysis.  *See, e.g.*, *Blum* v. *Stenson*, 465 U.S. 886, 896 n.11 (1984) (rate typically charged in private non-contingent representation "[a]ffords relevant comparison"); *Royal Bahamian Ass'n, Inc.* v. *QBE Ins. Corp.*, No. 10-21511-CIV, 2011 WL 13220459, at *13 (S.D. Fla. May 18, 2011) ("Defendant often paid its own counsel and support staff of similar experience levels at comparable or higher rates than those Plaintiff requests. . . . It is difficult for Defendant to hire one of the more-expensive firms in South Florida and then claim that the generally lower rates requested by Plaintiff are too high."), *report and recommendation adopted*, No. 10-21511-CIV, 2011 WL 13220497 (S.D. Fla. June 20, 2011).

During the meet-and-confer process, Defendants requested, but have not yet received, Plaintiff's submission of "an affidavit giving its firm's hourly rates for the matter and includ[ing] any contingency, partial contingency, or other arrangements that could change the effective hourly rate" in connection with its objection to Defendants' hourly rates, as required by Local Rule 7.3(a).  Based on publicly available information collected by the Defendants since the meet-and-confers, Plaintiff's counsel's rates are in line with those of Defendants' counsel.  For example, in litigation in New York, attorneys who have appeared on behalf of Plaintiff in this matter have disclosed rates ranging from $950 to $990 per hour.  *See* Ex. A to the Declaration of

Adam R. Shaw, *In re Echevarria*, No. 17 Civ. 8026 (S.D.N.Y. Feb. 15, 2018), ECF No. 16-1 (disclosing rates for Adam R. Shaw and George Carpinello). And David Boies—one of the country's leading trial lawyers whose hourly rate reportedly exceeds $1,850 per hour[3]—has been personally involved in this litigation, further confirming that this case does not present run-of-the-mill issues underserving of his expertise or the engagement of non-local counsel. In short, Plaintiff filed a complaint seeking billions of dollars in damages and David Boies himself often flew to Florida to litigate these issues related to standing, yet Plaintiff now objects that Defendants felt compelled to hire lawyers of equal caliber (and equally expensive) in response.

### 6.    Awards in Similar Cases

Given the complexity and uniqueness of this case, Defendants are not aware of any fee awards arising under similar circumstances in similar cases in this District involving multiple parties and counsel from multiple jurisdictions as well as central, dispositive issues of foreign law.

Plaintiff has pointed Defendants to cases—most of them brought under fee-shifting statutes in which the expectation *ab initio* is that the prevailing party may recover attorneys' fees—that it argued were comparable and which awarded lower fees. However, this case is dissimilar not only for its complexity and the intensity of labor required, but also for Plaintiff's conduct throughout the course of standing discovery. Here, Plaintiff repeatedly failed to comply with this Court's discovery orders knowing that it exposed itself to sanctions and while fully aware of the identity and provenance of its opposing counsel. While courts in the Southern District of Florida may, as a matter of policy, discourage litigants suing under fee-shifting

---

[3]    James B. Stewart, *David Boies Pleads Not Guilty*, N.Y. Times (Sep. 21, 2018), https://www.nytimes.com/2018/09/21/business/david-boies-pleads-not-guilty.html.

statutes from strategically retaining expensive, out-of-town counsel, those incentive concerns are not present here.  To the contrary, by awarding Defendants the attorneys' fees actually incurred, this Court could ensure that Plaintiff's extraordinary behavior in discovery remains so.  And, indeed, courts routinely reimburse parties for travel costs caused by opposing parties' own actions.  *See, e.g.*, *Topp, Inc.* v. *Uniden Am. Corp.*, No. 05-21698-CIV-MORE, 2007 U.S. Dist. LEXIS 53750 (S.D. Fla. July 25, 2007) (reimbursing travel time in connection with last minute deposition cancellation).  Nothing compels a different result for compensable attorney time. *Brown Jordan Int'l, Inc.* v. *Carmicle*, No. 14-60629-CV, 2017 WL 5633312, at *5 (S.D. Fla. Aug. 7, 2017) ("Since Defendant's own conduct was a substantial contributing factor to the time Plaintiffs' counsel spent on this case, his opposition now to the fee award sought is unpersuasive."), *report and recommendation adopted*, No. 0:14-CV-60629, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017).

**7.      Experience, Reputation and Ability of the Attorneys**

The Court, having reviewed the written work product, observed counsel at the hearings, having the full background provided in the exhibits hereto, and being familiar with the local and national firms involved, is in a position to make its own assessment of Defendants' counsel. Information on the experience and background of the attorneys for whose fees Defendants seek reimbursement in this matter are provided in the accompanying declarations.

**8.      Whether the Fee Is Fixed or Contingent**

Defendants' counsel did not act on fixed or contingent fee arrangements and instead billed their clients hourly rates within the range of hourly rates charged locally for non-contingent work on cases of this nature.

**9.      Time Limitations Imposed by the Client or the Circumstances**

As noted above, Defendants had to conduct fact and expert discovery and brief the issue on Plaintiffs' standing on an abbreviated schedule. This added additional pressure to the normal demands of litigation and required a significant expenditure of time and resources. Indeed, Defendants conducted (or attempted to conduct) the necessary discovery and briefed the standing issue in a span of approximately four months. *See, e.g.*, Scheduling Order [ECF No. 253]; Second Suppl. & Am. Scheduling Order [ECF No. 498].

## 10. The Results Obtained

As set forth above, Defendants' counsel obtained excellent results and, beyond obtaining the Order that is the subject of the instant Motion, also obtained an order dismissing the case for lack of standing. *See* Am. Order on Motion to Dismiss [ECF No. 684]. Where "the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F. at 1302.

## 11. Undesirability of the Case

While this case was not an "undesirable" case, it certainly required the expenditure of significant time and resources.

## 12. The Nature and Length of the Professional Relationship with the Client

Given the number of parties involved, this factor differs for each of the Defendants and their respective counsel. Notwithstanding, given the seriousness and severity of the allegations raised by Plaintiff, as well as the amount at issue, in addition to having to retain counsel with the resources to work on large and complex disputes, Defendants were forced to retain counsel that they could trust and rely upon.

## D. Certification of Good Faith Effort to Resolve Issues by Agreement.

Defendants certify that, pursuant to Local Rule 7.3(b), Defendants made a good faith effort to resolve issues concerning the amount of fees and costs by agreement with counsel for Plaintiff.

The Parties met and conferred on several dates to discuss Plaintiff's objections to Defendants' requests for attorneys' fees and costs, which Plaintiff will file on June 11, 2019. Upon discussion with Plaintiff, Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Luis Alvarez, and Sergio de la Vega ("Glencore Defendants") withdrew certain entries that are no longer reflected in Exhibit A to the Declaration of Jessica Carey (Exhibit 1).  The Glencore Defendants and Plaintiff have agreed to a 5% reduction of the time billed for 12, 61, 73, 75, 79, 82, 85, 92, 93, 100, 108, 114, 116, 117, 118, 122, 129, 137, 145, and 146; and a 33%, 50%, and 22% reduction, to entries 13, 30, and 55 respectively.

However, Trafigura Trading LLC, Vitol Inc., Vitol Energy (Bermuda) Ltd., Antonio Maarraoui, Colonial Oil Industries, Inc., Colonial Group, Inc., Paul Rosado, and BAC Florida were unable to resolve Plaintiff's objections to their entries.

## II.   CONCLUSION

For all the foregoing reasons, Defendants respectfully move the Court to enter an order awarding Defendants their attorneys' fees and costs in the amounts requested herein.

Dated: May 28, 2019

Respectfully submitted,

By: */s/ Edward M. Mullins*
Edward Mullins, Esq.
Florida Bar No. 863920
Email: emullins@reedsmith.com
**REED SMITH LLP**
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

William A. Burck, Esq.
*Admitted Pro Hac Vice*
Email: williamburck@quinnemanuel.com
Ethan Glass, Esq.
*Admitted Pro Hac Vice*
Email: ethanglass@quinnemanuel.com
Adam Wolfson, Esq.
*Admitted Pro Hac Vice*
Email: adamwolfson@quinnemanuel.com]
Stephen Hauss, Esq.
*Admitted Pro Hac Vice*
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Attorneys for Defendants TRAFIGURA
TRADING, LLC and JOSE LAROCCA*

By: /s/ *Bruce Birenboim*
Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458
Email: srosenthal@podhurst.com
Robert C. Josefsberg, Esq.
Florida Bar No. 040856
Email: rjosefsberg@podhurst.com
**PODHURST ORSECK, P.A.**
One S.E. 3rd Ave., Suite 2300
Miami, FL 33131
Main Tel: (305) 358-2800
Facsimile: (305) 358-2382

Bruce Birenboim, Esq.
*Admitted Pro Hac Vice*
Email: bbirenboim@paulweiss.com
Brad S. Karp, Esq.
*Admitted Pro Hac Vice*
Email: bkarp@paulweiss.com
Jessica S. Carey, Esq.
*Admitted Pro Hac Vice*
Email: jcarey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Adam B. Schwartz, Esq.
*Admitted Pro Hac Vice*
Email: aschwartz@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

*Attorneys for Defendants GLENCORE LTD.,
GLENCORE ENERGY UK LTD., GUSTAVO
GABALDON, LUIS ALVAREZ and SERGIO DE
LA VEGA*

15

By: */s/ David M. Burkoff*
Benjamine Reid, Esq.
Florida Bar Number 183522
Email: breid@carltonfields.com
Clifton R. Gruhn, Esq.
Florida Bar Number 72542
Email: cgruhn@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
Miami Tower
100 S.E. Second St., Ste. 4200
Miami, Florida 33131-2113
Telephone: (305) 539-7228
Fax: (305) 530-0055

David M. Burkoff, Esq.
*Admitted Pro Hac Vice*
Email: dburkoff@huntermaclean.com
Allan C. Galis, Esq.
*Admitted Pro Hac Vice*
Email: agalis@huntermaclean.com
**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**
200 E. Saint Julian St., P.O. Box 9848
Savannah, GA 31412-0048
Tel: (912) 236-0261
Fax: (912) 236-4936

*Attorneys for Defendants COLONIAL GROUP, INC., COLONIAL OIL INDUSTRIES, INC. and PAUL ROSADO*

By: */s/ Alice K. Sum*
Alice K. Sum, Esq.
Florida Bar No. 354510
Email: asum@fowler-white.com
**FOWLER WHITE BURNETT, P.A.**
Brickell Arch
B1395 Brickell Avenue, 14th Floor
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

*Attorneys for Defendant BAC FLORIDA BANK*

By: */s/ Gerald E. Greenberg*
Gerald E. Greenberg, Esq.
Florida Bar No. 440094
Email: ggreenberg@gsgpa.com
Adam M. Schachter, Esq.
Florida Bar No. 647101
Email: aschachter@gsgpa.com
**GELBER SCHACHTER &GREENBERG, P.A.**
1221 Brickell Avenue, Suite 2010
Miami, Florida 33131
Telephone: (305) 728-0950
Facsimile: (305) 728-0951
E-service: efilings@gsgpa.com

Neal S. Manne
*Admitted Pro Hac Vice*
nmanne@susmangodfrey.com
Alexander L. Kaplan
*Admitted Pro Hac Vice*
akaplan@susmangodfrey.com
Weston O'Black
*Admitted Pro Hac Vice*
woblack@susmangodfrey.com
Michael C. Kelso
*Admitted Pro Hac Vice*
mkelso@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Defendants VITOL INC., VITOL ENERGY (BERMUDA) LTD., and ANTONIO MAARRAOUI*

16