# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:18-CV-20818-GAYLES/OTAZO-REYES

PDVSA US LITIGATION TRUST,

      Plaintiff,

v.

LUKOIL PAN AMERICAS LLC, *et al.*,

      Defendants.

_____/

### REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendants Trafigura Trading, LLC, Colonial Oil Industries, Inc., Colonial Group, Inc., Paul Rosado, Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Sergio de la Vega, Vitol Inc., Vitol Energy (Bermuda) Ltd., Antonio Maarraoui, BAC Florida Bank, and Luis Alvarez's (collectively "Defendants") Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs (hereafter, "Motion for Fees and Costs"), filed on May 28, 2019 [D.E. 702]. This matter was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, pursuant to Title 28, United States Code, Section 636 [D.E. 220, 709]. For the reasons stated below, the undersigned respectfully recommends that the Motion for Fees and Costs [D.E. 702] be GRANTED IN PART AND DENIED IN PART.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff PDVSA U.S. Litigation Trust (hereafter, "Plaintiff" or the "Trust") commenced this action on March 3, 2018 [D.E. 1].[1] The Trust filed an Amended Complaint on March 5, 2018

---

[1] PDVSA is the Venezuelan state-owned energy company Petroleos de Venezuela, S.A. See Am. Compl. [D.E. 12 at 2].

[D.E. 12]. In its amended pleading, the Trust alleged that Defendants engaged in a conspiracy to: "fix prices, rig bids, and eliminate competition in the purchase and sale of crude oil and hydrocarbon products by PDVSA; misappropriate PDVSA proprietary data and intellectual property; and systematically loot PDVSA by causing corrupt PDVSA officials not to collect monies due PDVSA, to pay inflated prices for products and services acquired by PDVSA, to accept artificially low prices for products sold by PDVSA, to overlook the failure to deliver products and services paid for by PDVSA, and to fraudulently conceal what was owed to PDVSA." See Am. Compl. [D.E. 12 at 2-3].

In the section of the Amended Complaint entitled "Parties," the Trust alleged: "Plaintiff PDVSA US Litigation Trust is a trust established pursuant to the laws of New York to investigate and pursue claims against Defendants and others." Id. at 4.

The Amended Complaint consists of nineteen counts:

| | |
|---|---|
| Count I | PDVSA Sales of Hydrocarbon Products – Violations of Section I of the Sherman Act. |
| Count II | PDVSA Purchases of Light Crude Products – Violations of Section I of the Sherman Act. |
| Count III | PDVSA Sales of Hydrocarbon Products – Violations of Section 2(c) of the Robinson-Patman Act. |
| Count IV | PDVSA Purchases of Light Crude Products – Violations of Section 2(c) of the Robinson-Patman Act. |
| Count V | Violations of the Florida Deceptive and Unfair Trade Practices Act. |
| Count VI | Violations of the U.S. Racketeer Influenced and Corrupt Organizations Act Under 18 U.S.C. § 1962(c). |
| Count VII | Violations of the U.S. Racketeer Influenced and Corrupt Practices Act Under 18 U.S.C. § 1962(d). |
| Count VIII | Violations of the Civil Remedies for Criminal Practices Act. |

| Count IX | Fraud. |
| Count X | Civil Conspiracy. |
| Count XI | Aiding and Abetting Breach of Fiduciary Duty. |
| Count XII | Aiding and Abetting Fraud. |
| Count XIII | PDVSA Purchases of Light Crude Products – Breach of Contract. |
| Count XIV | PDVSA Sales of Hydrocarbon Products – Breach of Contract. |
| Count XV | Unjust Enrichment. |
| Count XVI | Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. |
| Count XVII | Violation of the Stored Communications Act, 18 U.S.C. § 2701. |
| Count XVIII | Violation of the Wire and Electronic Communications Interception and Interception of Oral Communications Act (Federal Wiretap Act), 18 U.S.C. § 2510. |
| Count XIX | Violation of the Florida Uniform Trade Secrets Act, CH. 688. |

Id. at 27-58.

In its Prayer for Relief, the Trust sought various forms of damages, interest, costs, fees, and injunctive relief.  Id. at 58-59.  According to the PDVSA U.S. Litigation Trust Agreement (hereafter, "Trust Agreement") [D.E. 430-1 at 35-53], Defendants' purported misconduct "caused and continues to cause vast damages to PDVSA and the people of Venezuela;" therefore, "in order to obtain compensation for PDVSA and the people of Venezuela, PDVSA is authorizing the engagement of United States law firms and investigators to further investigate, commence one or more civil actions (the "Assigned Actions"), and prosecute the Assigned Actions to conclusion." Id. at 35.  The Trust Agreement further states that PDVSA entered into it "to ensure the engagement of legal counsel and the investigators . . . and to provide for the orderly and consensual

distribution of the Proceeds of the Assigned Actions, whether by pre-suit settlement, post-suit settlement, or judgment, to PDVSA." Id.

On April 16, 2018, pursuant to Defendants' Joint Request [D.E. 193], the undersigned entered a Scheduling Order prescribing a procedure and schedule for the parties to conduct discovery on the issue of the Trust's standing to bring this action. See Scheduling Order [D.E. 253]. The Scheduling Order stated that each side would take no more than four fact depositions as to the issue of standing and that these depositions were to be completed by May 4, 2018. Id. at 2.

On April 24, 2018, Defendants informed the Court that for two of the four fact depositions to which they were entitled, they intended to depose a corporate representative of PDVSA and Reinaldo Munoz Pedroza ("Mr. Pedroza"), the Procurador General of Venezuela, who, as "General Attorney," purportedly "duly authorized" the Trust Agreement under Venezuelan law. See Notice of Issues to be Addressed During April 25, 2018 Telephonic Discovery Conference [D.E. 276 at 6]; Trust Agreement [D.E. 430-1 at 47, 49]. On that same date, Defendants noticed the deposition of PDVSA's corporate representative, to be conducted on May 3, 2018. See Notice of Deposition of PDVSA [D.E. 277-1].

The undersigned held a Telephonic Discovery Hearing on April 25, 2018, at which the depositions of PDVSA's corporate representative and Mr. Pedroza were discussed [D.E. 279]. Based on the representations made at that hearing, the undersigned ordered the parties to meet and confer on, *inter alia*, the availability of PDVSA's corporate representative and Mr. Pedroza for deposition by April 27, 2018. See First Discovery Order [D.E. 278 at 3]. At a Continued Telephonic Discovery Conference on April 30, 2018, Plaintiff's counsel represented that Plaintiff had arranged for PDVSA's corporate representative and Mr. Pedroza to be available for deposition.

See Transcript of 4/30/2018 Hearing [D.E. 357 at 12-13]. The undersigned incorporated Plaintiff's agreement to produce the PDVSA corporate representative and Mr. Pedroza in a contemporaneous discovery order. See Second Discovery Order [D.E. 355 at 2] ("Defendants have identified and Plaintiff has agreed to produce for deposition: the 30(b)(6) representatives of the Trust and PDVSA, respectively; and Reinaldo Munoz Pedroza."). The deadline to complete all fact depositions on the issue of the Trust's standing was extended to May 22, 2018. See Supplemental and Amended Scheduling Order [D.E. 356 at 2].

On May 8, 2018, the undersigned held a Follow-Up Telephonic Hearing [D.E. 369], at which the parties agreed to work together to schedule the depositions of Mr. Pedroza and the corporate representative of PDVSA, Dr. Hilda Cabeza ("Dr. Cabeza"). See Transcript of 5/8/2018 Hearing [D.E. 373 at 33-36]. The undersigned then ruled that Defendants could depose Mr. Pedroza and Dr. Cabeza as PDVSA's Rule 30(b)(6) representative and extended the deadline to complete all fact depositions on the issue of standing to the week of May 28, 2018. See Third Discovery Order [D.E. 370 at 3].

The undersigned held a hearing on May 23, 2018, at which Plaintiff's counsel represented that the deposition of Mr. Pedroza was scheduled to take place on May 30, 2018 in New York. See Transcript of 5/23/2018 Hearing [D.E. 395 at 28]. Plaintiff's counsel also stated that Dr. Cabeza was available for a deposition to be taken by video conference in Venezuela, but that she was unable to travel to the United States for political reasons. Id. at 29, 34. Counsel further stated that they would try to accommodate Defendants' request to depose PDVSA's corporate representative by either: having the deposition by video conference in Venezuela, which Defendants declined due to Venezuela's restrictions on foreign depositions; bringing Dr. Cabeza to another country for the deposition; or finding someone else who could be educated as a Rule

30(b)(6) witness to testify at a deposition in the United States. Id. at 39-40. The undersigned incorporated the parties' agreement regarding Mr. Pedroza into a contemporaneous discovery order. See Fourth Discovery Order [D.E. 390 at 3] ("With regard to the pending depositions on Plaintiff's standing, the deposition of Mr. Reinaldo Munoz Pedroza is scheduled to take place on May 30, 2018 in New York."). The undersigned also prescribed a deadline of May 25, 2018, for the parties to file a joint notice disclosing the deponent's identity, date and location for the deposition of PDVSA's Rule 30(b)(6) representative. Id.

On May 25, 2018, the Trust filed its Notice to the Court with Regard to Depositions, in which it stated that the parties had advised each other that the deposition of PDVSA's corporate representative, would take place on June 7, 2018 in Madrid, Spain [D.E. 398]. Email correspondence between the parties showed that Plaintiff's counsel had identified Dr. Cabeza as the corporate representative who would appear at that deposition. See Email Correspondence [D.E. 399-4 at 2]. However, Mr. Pedroza's deposition, which had been scheduled to take place in New York on May 30, 2018, was cancelled because "the President of Venezuela had restricted travel of government officials outside the country." See Emails from Plaintiff's counsel, George Carpinello, dated May 27, 2018 [D.E. 430-1 at 7-8].

On May 29, 2018, the undersigned held a hearing at which Plaintiff's counsel confirmed that Dr. Cabeza's deposition would go forward on June 8, 2018 in Madrid, Spain, but that they were still determining whether Mr. Pedroza could be produced for deposition. See Transcript of 5/29/2018 Hearing [D.E. 408 at 46-52]. On May 30, 2018, the undersigned issued the Fifth Discovery Order, which stated: "With regard to the pending depositions on the issue of Plaintiff's standing, those depositions must be completed by **June 11, 2018**." See Fifth Discovery Order [D.E. 404 at 4] (emphasis in original).

On June 7, 2018, the Honorable Andrea M. Simonton, United States Magistrate Judge, presided over an emergency telephonic hearing due to the undersigned's absence from the Southern District of Florida. See Order [D.E. 422 at 1]. At the telephonic hearing, Plaintiff advised that the deposition of Dr. Cabeza as PDVSA's corporate representative, which had been scheduled for Friday, June 8, 2018 in Madrid, Spain "was cancelled because the President of Venezuela precluded Dr. Cabeza from leaving Venezuela for the deposition." Id.

On June 14, 2018, Defendants filed a Motion, by Order to Show Cause, for Sanctions (hereafter, "Motion for Sanctions") [D.E. 430]. Defendants argued that the Trust failed to fully comply with the discovery contemplated by the Scheduling Orders issued by the undersigned. Id. Defendants sought as sanctions: (1) the dismissal of Plaintiff's claims; (2) in the alternative, an order precluding Plaintiff from claiming that PDVSA properly created the Trust or properly assigned claims to the Trust, and/or from offering or relying on any evidence from PDVSA in attempting to prove its standing; and (3) an award of attorneys' fees and costs. Id. Defendant Maximiliano Poveda joined the Motion for Sanctions on June 15, 2018 [D.E. 434]. On June 28, 2018, Plaintiff filed its Opposition to Defendants' Motion for Sanctions (hereafter, "Sanctions Response") [D.E. 459]. On June 29, 2018, Defendants Francisco Morillo, Leonardo Baquero, Helsinge Holdings, LLC, Helsinge, Inc., Helsinge Ltd., Daniel Lutz, Luis Liendo, and Maria Fernanda Rodriguez filed a Notice of Facts in Support of Defendants' Motion for Sanctions (hereafter, "Notice of Facts") [D.E. 466]. Defendants filed their Reply in Further Support of their Motion for Sanctions (hereafter, "Sanctions Reply") on July 5, 2018 [D.E. 478]. On July 10, 2018, Defendants filed a Notice of Supplemental Authority [D.E. 486].

On July 12, 2018, Plaintiff filed a Notice of Discovery Issues Requested to be Addressed in Advance of Hearing on Motion to Authenticate the Trust (hereafter, "Rule 31 Notice"), in which

it requested leave to conduct depositions upon written questions, pursuant to Federal Rule of Civil Procedure 31, of Mr. Pedroza and two other witnesses [D.E. 487]. Defendants filed their Response (hereafter, "Rule 31 Notice Response") on July 16, 2018 [D.E. 497]. On July 19, 2018, the undersigned issued the Eighth Discovery Order denying Plaintiff's request to take Rule 31 depositions by written questions of its own witnesses who had not appeared for Rule 30 depositions by oral examination [D.E. 507].

On July 19, 2018, the undersigned also issued an Order deferring ruling on the Motion for Sanctions pending a hearing on the issue of Plaintiff's standing, which was held on August 2 and 3, 2018. See Order [D.E. 508 at 3]; Paperless Minute Entries [D.E. 555, 558]. On November 5, 2018, the undersigned issued a Report and Recommendation (hereafter, "Standing R&R") recommending that this action be dismissed for lack of subject matter jurisdiction [D.E. 636]. On March 8, 2019, the Court adopted in part the undersigned's Standing R&R and dismissed this action without prejudice for lack of subject matter jurisdiction [D.E. 679].[2]

On November 5, 2018, the undersigned also issued an Order setting a Show Cause Hearing and concluding that, given the recommended dismissal, the only relief to be addressed in the Motion for Sanctions was Defendants' request for an award of attorneys' fees and costs, incurred in connection with the preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions. See Order [D.E. 637]. On January 25, 2019, the undersigned held the Show Cause Hearing. See Paperless Minute Entry [D.E. 664]. On February 11, 2019, the undersigned issued a Report and Recommendation (hereafter, "Sanctions R&R") on the Motion for Sanctions recommending that the Motion be granted, as previously limited, and that sanctions be imposed against the Trust pursuant to Federal Rule of Civil Procedure 37(b) [D.E.

---

[2] The Order was later amended on March 19, 2019 only to correct a scrivener's error. See Amended Order [D.E. 684 at 1 n.1].

670].  On March 19, 2019, the Court adopted the undersigned's Sanctions R&R in its entirety and granted in part the Motion for Sanctions, stating that "[s]anctions, in the form of attorney's fees and costs, shall be imposed against Plaintiff[.]"  See Order [D.E. 685 at 2].  In its Order, the Court directed Defendants "to file their request for reasonable attorneys' fees and costs incurred in connection with their preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions in accordance with Southern District of Florida Local Rule 7.3."  Id.

On May 28, 2019, Defendants timely filed their Motion for Fees and Costs, seeking a total of $383,791.19 in attorneys' fees and costs, comprised of $368,870.96 in fees and $14,920.23 in costs [D.E. 702].[3]

On June 11, 2019, Plaintiff filed its Opposition to Defendants' Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs (hereafter, "Response") [D.E. 704].  On June 18, 2019, Defendants filed their Reply in Further Support of Their Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs (hereafter, "Reply") [D.E. 705].

**APPLICABLE LAW**

Under Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, when a party has been found to have failed to comply with a court order without substantial justification, the court must order that the disobedient party "pay the reasonable expenses, including attorney's fees, caused by the failure . . . ."  Fed. R. Civ. P. 37(b)(2)(C).

---

[3] Initially, Defendants requested a total of $359,313.65 in attorneys' fees and non-taxable costs.  See Motion for Fees and Costs [D.E. 702 at 2].  Defendants later stated that the initial amount requested was incorrect due to an error in calculation and clarified that the correct amount sought was $383,791.19.  See Reply in Further Support of their Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs (hereafter, "Reply") [D.E. 705 at 5 n.1].

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The product of this calculation is known as the lodestar. See Key W. Tourist Dev. Ass'n v. Zazzle, Inc., No. 10-CV-10100, 2013 WL 12248141, at *5 (S.D. Fla. Jan. 9, 2013), report and recommendation adopted, No. 10-CV-10100, 2013 WL 12248227 (S.D. Fla. Mar. 12, 2013)).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). However, the "[C]ourt . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Id. (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

## DEFENDANTS' SUBMISSIONS

In support of the Motion for Fees and Costs, Defendants submitted the following Declarations:

1. The Declaration of Attorneys' Fees and Costs for Paul, Weiss, Rifkind, Wharton & Garrison, LLP (hereafter, "Paul Weiss") by Jessica S. Carey (hereafter, "Carey Decl.") [D.E. 702-1 at 1-5]. The Carey Decl. references two exhibits:

    a. Amended Exhibit A, detailing the fees and costs incurred by Paul Weiss' timekeepers in connection with the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions [D.E. 703-1 at 1-6].

    b. Exhibit B, consisting of Paul Weiss' invoices for the fees and costs set forth in the table designated as Amended Exhibit A [D.E. 702-1 at 13-190].

2.   The Declaration of Attorneys' Fees and Costs for Quinn Emmanuel Urquhart & Sullivan, LLP (hereafter, "Quinn Emmanuel") by Adam Wolfson (hereafter, "Wolfson Decl.") [D.E. 702-2 at 1-4].  The Wolfson Decl. references one exhibit:

    a.   Exhibit A, consisting of Quinn Emmanuel's invoice for the fees and costs incurred by its timekeepers in connection with the litigation of the Motion for Sanctions [D.E. 702-2 at 5-97].

3.   The Declaration of Attorneys' Fees and Costs for Reed Smith LLP (hereafter, "Reed Smith") by Edward M. Mullins (hereafter, "Mullins Decl.") [D.E. 702-3 at 1-4].  The Mullins Decl. references two exhibits:

    a.   Exhibit A, consisting of the *curriculum vitae* of Reed Smith timekeeper Mr. Mullins [D.E. 702-3 at 5-25].

    b.   Composite Exhibit B, consisting of Reed Smith's invoices for the fees and costs incurred by its timekeepers in connection with the litigation of the Motion for Sanctions [D.E. 702-3 at 26-43].

4.   The Joint Declaration of Attorneys' Fees and Costs for Susman Godfrey L.L.P. (hereafter, "Susman Godfrey") and Gelber, Schachter & Greenberg, P.A. (hereafter, "Gelber Schachter") by Alexander L. Kaplan and Gerald E. Greenberg (hereafter, "Kaplan/Greenberg Decl.") [D.E. 702-4 at 1-6].  The Kaplan/Greenberg Decl. references four exhibits:

    a.   Exhibit 1, consisting of Susman Godfrey's invoices for the fees and costs incurred by its timekeepers in connection with the litigation of the Motion for Sanctions [D.E. 702-4 at 7-35].

    b.   Exhibit 2, consisting of Gelber Schachter's invoices for the fees and costs incurred by its timekeepers in connection with the litigation of the Motion for Sanctions [D.E. 702-4 at 36-41].

    c.   Exhibit 3, consisting of the professional biographies of Susman Godfrey's timekeepers [D.E. 702-4 at 42-50].

    d. Exhibit 4, consisting of the professional biography of Gelber Schacter's sole timekeeper [D.E. 702-4 at 51-54].

5. The Declaration of Attorneys' Fees and Costs for Hunter, Maclean, Exley and Dunn, P.C. (hereafter, "Hunter Maclean") and Carlton Fields Jorden Burt, P.A. (hereafter, "Carlton Fields") by David M. Burkoff (hereafter, "Burkoff Decl.") [D.E. 702-5 at 1-4]. The Burkoff Decl. references six exhibits:

    a. Exhibits A-C, consisting of the professional biographies of Hunter Maclean's timekeepers [D.E. 702-5 at 5-14].

    b. Exhibit D, consisting of the professional biography of Carlton Fields' sole timekeeper [D.E. 702-5 at 15-20].

    c. Exhibit E, consisting of a table detailing the fees and costs incurred by: (1) Hunter Maclean's timekeepers in connection with both the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions; and (2) Carlton Fields' sole timekeeper in connection with the litigation of the Motion for Sanctions [D.E. 702-5 at 21-25].

    d. Exhibit F, consisting of Hunter Maclean's and Carlton Fields' invoices for the fees and costs set forth in the table designated as Exhibit E [D.E. 702-5 at 26-92].

6. The Declaration of Attorneys' Fees and Costs for Hughes Hubbard & Reed LLP (hereafter, "Hughes Hubbard") by Nicolas Swerdloff (hereafter, "Swerdloff Decl.") [D.E. 702-6 at 1-2]. The Swerdloff Decl. references one exhibit:

    a. Exhibit A, consisting of a Hughes Hubbard invoice for the fees and costs incurred by its timekeepers in connection with the cancelled depositions of Dr. Cabeza and Mr. Pedroza [D.E. 702-6 at 3-17].

## ATTORNEYS' FEES

The Declarations and their supporting Exhibits reflect that eight law firms expended a total of 501.204 hours[4] in connection with their preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions.   As detailed in the following sections: a total of 145.959 hours[5] were expended by three of the law firms in preparing for the cancelled depositions of Dr. Cabeza and Mr. Pedroza; and a total of 355.245 hours[6] were expended by seven of the law firms in connection with the litigation of the Motion for Sanctions.

### I.   HOURS EXPENDED PREPARING FOR CANCELLED DEPOSITIONS

As previously stated, a total of 145.959 hours were expended by three of the law firms in preparing for the cancelled depositions of Dr. Cabeza and Mr. Pedroza.   Those hours are apportioned as follows:

---

[4] Plaintiff's comparable computation of hours yielded 501.2, a difference of 0.004 hours.  See Declaration of George F. Carpinello (hereafter, "Carpinello Decl.") Ex. A [D.E. 704-2 at 1].  The undersigned is confident that her figure is correct.

[5] Plaintiff's comparable computation of this figure yielded 145.96 hours, a difference of 0.001 hours.  See Carpinello Decl. Ex. A [D.E. 704-2 at 1].  The undersigned is confident that her figure is correct.

[6] Plaintiff's comparable computation of this figure yielded 355.24 hours, a difference of 0.005 hours.  See Carpinello Decl. Ex. A [D.E. 704-2 at 1].  The undersigned is confident that her figure is correct.

| A.  CAREY DECL. - PAUL WEISS[7] | | |
|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| Jessica Carey, *Partner* | 4.65 | $1,134–$1,233 |
| Bruce Birenboim, *Partner* | 0.7 | $1,323–$1,404 |
| Adam Schwartz, *Counsel* | 3.2 | $945–$1,013 |
| Emily A. Weissler, *Associate* | 56.14 | $779–$846 |
| Lissette Duran, *Associate* | 1.3 | $779–$846 |
| Juan J. Gascon, *Associate* | 11.874 | $549–$662 |
| Shawn Muscat, *Paralegal* | 12.3 | $315–$329 |

See Carey Decl. Am. Ex. A [D.E. 703-1 at 1-2].  Note: to compute the hours for Paul Weiss'
timekeepers, the undersigned applied the agreed upon percentage reductions referenced in
Amended Exhibit A to the Carey Decl.  Id.

| B.  BURKOFF DECL. - HUNTER MACLEAN[8] | | |
|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| David M. Burkoff, *Partner* | .425 | $375-385 |
| Allan C. Galis, *Partner* | 1.23 | $270-300 |
| Heather Lundy, *Partner* | 1.34 | $270 |

See Burkoff Decl. [D.E. 702-5 at 3-4]; Burkoff Decl. Ex. E [D.E. 702-5 at 21-25].  Note: to
compute the hours for Hunter Maclean's timekeepers, the undersigned applied the percentage

---

[7] Paul Weiss served as co-counsel for Defendants Glencore Ltd., Glencore Energy UK Ltd., Gustavo
Gabaldon, Sergio de la Vega, and Luis Suarez.  See Carey Decl. [D.E. 702-1 at 1].
[8] Hunter Maclean, as lead counsel, and Carlton Fields, as local counsel, represented Defendants Colonial
Oil Industries, Inc., Colonial Group, Inc., and Paul Rosado. See Burkoff Decl. [D.E. 702-5 at 2].

reductions referenced in Exhibit E to the Burkoff Decl.  See Burkoff Decl. Ex. E [D.E. 702-5 at 21-25].

| C.  SWERDLOFF DECL. - HUGHES HUBBARD[9] | | |
|---|---|---|
| TIMEKEEPER | HOURS BILLED | HOURLY RATE SOUGHT |
| Nicolas Swerdloff, *Partner* | 3.0 | $892.50 |
| Jeffrey Goldberg, *Associate* | 49.8 | $705.50 |

See Swerdloff Decl. [D.E. 702-6 at 1-2].

## II.   HOURS EXPENDED FOR LITIGATION OF THE MOTION FOR SANCTIONS

As previously stated, a total of 355.245 hours were expended by seven of the law firms in connection with the litigation of the Motion for Sanctions.  Those hours are apportioned as follows:

---

[9] Hughes Hubbard represented Defendant BAC Florida Bank. See Swerdloff Decl. [D.E. 702-6 at 1].

| A. CAREY DECL. - PAUL WEISS | | |
|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| Jessica Carey, *Partner* | .59 | $1,134–$1,233 |
| Bruce Birenboim, *Partner* | 51.69 | $1,323–$1,404 |
| Adam Schwartz, *Counsel* | 20.525 | $945–$1,013 |
| Maxwell Kosman, *Associate* | 27.515 | $860–$927 |
| Emily A. Weissler, *Associate* | 30.1 | $779–$846 |
| Lissette Duran, *Associate* | 3.8 | $779–$846 |
| Juan J. Gascon, *Associate* | 5.9 | $549–$662 |
| Melina Meneguin-Layerenza, *Associate* | 34.895 | $549–$662 |
| Shawn Muscat, *Paralegal* | 31.3 | $315–$329 |

See Carey Decl. Am. Ex. A [D.E. 703-1 at 3-6]. Note: to compute the hours for Paul Weiss' timekeepers, the undersigned applied the agreed upon percentage reductions referenced in Amended Exhibit A to the Carey Decl. Id.

| B. WOLFSON DECL. - QUINN EMMANUEL[10] | | |
|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| Adam B. Wolfson, *Partner* | 41.3 | $920 |
| William Burck, *Partner* | 5.0 | $1,350 |
| Stephen Hauss, *Partner* | 1.0 | $920 |

See Wolfson Decl. [D.E. 702-2 at 3-4].

---

[10] Quinn Emmanuel served as co-counsel for Defendant Trafigura Trading, LLC. See Wolfson Decl. [D.E. 702-2 at 1].

| C.  MULLINS DECL. - REED SMITH[11] | | |
|---|---|---|
| TIMEKEEPER | HOURS BILLED | HOURLY RATE SOUGHT |
| Edward M. Mullins, *Partner* | 0.9 | $600 |
| M. Cristina Cardenas, *Partner* | 0.4 | $600 |
| Christina Olivos, *Associate* | 29.4 | $400 |
| Cynthia Benavides, *Paralegal* | 4.5 | $190 |
| Susan Sanchez, *Paralegal* | 1.8 | $190 |
| Kevin Hernandez, *Paralegal* | 0.9 | $190-265 |

See Mullins Decl. [D.E. 702-3 at 3-4].

| D.  KAPLAN/GREENBERG DECL. - SUSMAN GODFREY & GELBER SCHACHTER[12] | | |
|---|---|---|
| TIMEKEEPER | HOURS BILLED | HOURLY RATE SOUGHT |
| Alexander Kaplan, *Partner*, Susman Godfrey | 5.37 | $600 |
| Michael Kelso, *Associate*, Susman Godfrey | 15.84 | $375 |
| Gerald E. Greenberg, *Partner*, Gelber Schachter | 3.1 | $575 |

See Kaplan/Greenberg Decl. [D.E. 702-4 at 4-5].

---

[11] Reed Smith served as co-counsel for Defendants Trafigura Trading, LLC and Jose Larroca.  See Mullins Decl. [D.E. 702-3 at 1].
[12] Susman Godfrey and Gelber Schachter represented Defendants Vitol Inc., Vitol Energy (Bermuda) Ltd., and Antonio Maarraoui.  See Kaplan/Greenberg Decl. [D.E. 702-4 at 2].

| E. BURKOFF DECL. - HUNTER MACLEAN & CARLTON FIELDS | | |
|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| David M. Burkoff, *Partner*, Hunter Maclean | 25.655 | $375-385 |
| Allan C. Galis, *Partner*, Hunter Maclean | 4.335 | $270-300 |
| Heather Lundy, *Partner*, Hunter Maclean | 0.7 | $270 |
| Clifton R. Gruhn, *Shareholder*, Carlton Fields | 8.73 | $430 |

See Burkoff Decl. [D.E. 702-5 at 3-4]; Burkoff Decl. Ex. E [D.E. 702-5 at 21-25].  Note: to compute the hours for Hunter Maclean's and Carlton Fields' timekeepers, the undersigned applied the percentage reductions referenced in Exhibit E to the Burkoff Decl.  See Burkoff Decl. Ex. E [D.E. 702-5 at 21-25].

### III.    TOTAL HOURS EXPENDED

The total of 501.204 hours expended by the above referenced eight law firms are apportioned as follows:

| A.  CAREY DECL. - PAUL WEISS | | |
| --- | --- | --- |
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| Jessica Carey, *Partner* | 5.24 | $1,134–$1,233 |
| Bruce Birenboim, *Partner* | 52.39 | $1,323–$1,404 |
| Adam Schwartz, *Counsel* | 23.725 | $945–$1,013 |
| Maxwell Kosman, *Associate* | 27.515 | $860-$927 |
| Emily A. Weissler, *Associate* | 86.24 | $779–$846 |
| Lissette Duran, *Associate* | 5.1 | $779–$846 |
| Juan J. Gascon, *Associate* | 17.774 | $549–$662 |
| Melina Meneguin-Layerenza, *Associate* | 34.895 | $549–$662 |
| Shawn Muscat, *Paralegal* | 43.6 | $315–$329 |

See Carey Decl. Am. Ex. A [D.E. 703-1 at 1-6].  Note: to compute the hours for Paul Weiss'

timekeepers, the undersigned applied the agreed upon percentage reductions referenced in

Amended Exhibit A to the Carey Decl.  Id.

| B.  WOLFSON DECL. - QUINN EMMANUEL | | |
| --- | --- | --- |
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| Adam B. Wolfson, *Partner* | 41.3 | $920 |
| William Burck, *Partner* | 5.0 | $1,350 |
| Stephen Hauss, *Partner* | 1.0 | $920 |

See Wolfson Decl. [D.E. 702-2 at 3-4].

| C.  MULLINS DECL. - REED SMITH | | |
|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| Edward M. Mullins, *Partner* | 0.9 | $600 |
| M. Cristina Cardenas, *Partner* | 0.4 | $600 |
| Christina Olivos, *Associate* | 29.4 | $400 |
| Cynthia Benavides, *Paralegal* | 4.5 | $190 |
| Susan Sanchez, *Paralegal* | 1.8 | $190 |
| Kevin Hernandez, *Paralegal* | 0.9 | $190-265 |

See Mullins Decl. [D.E. 702-3 at 3-4].

| D.  KAPLAN/GREENBERG DECL. - SUSMAN GODFREY & GELBER SCHACHTER | | |
|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE SOUGHT** |
| Alexander Kaplan, *Partner*, Susman Godfrey | 5.37 | $600 |
| Michael Kelso, *Associate*, Susman Godfrey | 15.84 | $375 |
| Gerald E. Greenberg, *Partner*, Gelber Schachter | 3.1 | $575 |

See Kaplan/Greenberg Decl. [D.E. 702-4 at 4-5].

| E.  BURKOFF DECL. - HUNTER MACLEAN & CARLTON FIELDS | | |
|---|---|---|
| TIMEKEEPER | HOURS BILLED | HOURLY RATE SOUGHT |
| David M. Burkoff, *Partner*, Hunter Maclean | 26.08 | $375-385 |
| Allan C. Galis, *Partner*, Hunter Maclean | 5.565 | $270-300 |
| Heather Lundy, *Partner*, Hunter Maclean | 2.04 | $270 |
| Clifton R. Gruhn, *Shareholder*, Carlton Fields | 8.73 | $430 |

See Burkoff Decl. [D.E. 702-5 at 3-4]; Burkoff Decl. Ex. E [D.E. 702-5 at 21-25].  Note: to compute the hours for Hunter Maclean's and Carlton Fields' timekeepers, the undersigned applied the percentage reductions referenced in Exhibit E to the Burkoff Decl.  See Burkoff Decl. Ex. E [D.E. 702-5 at 21-25].

| F.  SWERDLOFF DECL. - HUGHES HUBBARD | | |
|---|---|---|
| TIMEKEEPER | HOURS BILLED | HOURLY RATE SOUGHT |
| Nicolas Swerdloff, *Partner* | 3.0 | $892.50 |
| Jeffrey Goldberg, *Associate* | 49.8 | $705.50 |

See Swerdloff Decl. [D.E. 702-6 at 1-2].

## **REASONABLENESS OF REQUESTED ATTORNEYS' FEES**

### I.      **Reasonable Hourly Rate**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299 (citing Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984)).  "The

general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed." Am. Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (quoting Cullens v. Georgia Dep't. of Transp., 29 F.3d 1489, 1494 (11th Cir.1994)).  "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." Norman, 836 F.2d at 1292 (citing N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1338 (11th Cir. 1987)).  "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." Barnes, 168 F.3d at 437 (citing Cullens, 29 F.3d at 1494).

Plaintiff argues that Defendants have asked for reimbursement at unreasonably high rates. See Response [D.E. 704 at 11].  In support of its position, Plaintiff submits the expert opinion of Jeffrey Rynor, Esq., who: has practiced as an attorney in both state and federal courts within the Southern District of Florida for over 35 years, handling hundreds of cases; is the former president of the Dade County Bar Association; is currently a member of the Florida Bar's Board of Governors; and, through his years of practice, has become "knowledgeable about the quality of the bar in this district and the attorneys' rates reasonably charged in this district." See Declaration of Jeffrey Rynor (hereafter, the "Rynor Decl.") [D.E. 704-6 at 2-4].  After reviewing the issues presented in this action, Mr. Rynor opined that: (1) local law firms are capable of handling "a complex matter such as this one at local market rates"; and (2) reasonable rates for similar cases in the Southern District of Florida "should be in the range of $550 to $675 per hour for partners, $250 to $400 per hour for associates, and $125 to $175 per hour for paralegals." See Rynor Decl. [D.E. 704-6 at 3-4] (footnote omitted).

Defendants argue that the "participation of attorneys based in New York and other major legal markets was warranted [in this case] due to the complex nature of the claims that a New York trust plaintiff put at issue—particularly arcane questions of New York law and their interface with Venezuelan law." Reply [D.E. 705 at 6]. Defendants argue therefore, that the attorneys based in New York and other major legal markets are entitled to recover non-local rates for their work. See Motion for Fees and Costs [D.E. 702 at 4, 11]; Reply [D.E. 705 at 5-9, 14].[13] However, Defendants have not satisfied their burden of showing that there were no attorneys in the area who were willing and able to handle this case—a requirement for establishing entitlement to non-local rates. See Barnes, 168 F.3d at 437. Moreover, the involvement of local attorneys in this action demonstrates that attorneys in the Southern District of Florida were willing and able to handle this case. In light of the foregoing, the undersigned finds that Defendants are not entitled to an award of non-local rates. Id.

Taking into consideration the documentation provided by Defendants in support of the Motion for Fees and Costs, the parties' arguments, the Rynor Decl., and applying her own expertise, the undersigned finds that the following hourly rates are reasonable in the local market for the following timekeepers: $625 for partners, shareholders, and counsel; $350 for associates; and $125 for paralegals. Therefore, the undersigned will adjust downwards any hourly rates that exceed these figures. See also Graves v. Plaza Med. Centers, Corp., No. 10-23382-CV, 2018 WL 3699325, at *5 (S.D. Fla. May 23, 2018), report and recommendation adopted, No. 10-CV-23382-, 2018 WL 3697475 (S.D. Fla. July 13, 2018) (awarding certain partners hourly rates of $625 per hour based on their experience); BASF Corp. v. Collision One, Inc., No. 09-CV-60328, 2010 WL

---

[13] Timekeepers from the following law firms are non-local: Paul Weiss; Quinn Emmanuel; Susman Godfrey; and Hunter Maclean. See Motion for Fees and Costs [D.E. 702 at 15-16]. Timekeepers from the following firms are local: Reed Smith; Gelber Schachter; Carlton Fields; and Hughes Hubbard. See id.; Motion for Sanctions [D.E. 430 at 20].

1797750, at *1 (S.D. Fla. May 4, 2010) (finding an hourly rate of $350 for an associate was reasonable); Simmons v. Twin 918 Inc., No. 19-CV-23737, 2019 WL 7283218, at *3 (S.D. Fla. Dec. 27, 2019) (finding an hourly rate of $125 for a paralegal was reasonable).

## II.      Number of Hours Reasonably Expended

"Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Barnes, 168 F.3d at 428. "The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended." Hensley, 461 U.S. at 434. "In ascertaining the number of hours reasonably expended on the litigation, the district court should exclude any excessive, redundant, or otherwise unnecessary hours from the amount claimed. [T]he hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Domond v. PeopleNetwork APS, 750 F. App'x 844, 848 (11th Cir. 2018) (citations and quotations omitted) (alteration in original).      Another factor for the Court's consideration in assessing the reasonableness of hours expended is the degree of success obtained. See Hensley, 461 U.S. at 436 (If a party "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.").

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (citing Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994) ("In a case like this one, where the fee motion and supporting documents are so voluminous, it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction. Accordingly, on remand the district

court need not engage in an hour-by-hour analysis."). When engaging in an across the board analysis, "it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction." Loranger, 10 F.3d at 783.

As noted above, the eight law firms expended 501.204 hours in connection with their preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions. Plaintiff argues that these hours should be reduced across the board by 40% because: (1) they are unreasonably high; and (2) Defendants were unsuccessful in obtaining all of the relief sought in the Motion for Sanctions. See Response [D.E. 704 at 16-18].

With regard to the first argument, the undersigned does not find the hours expended by each of the eight law firms to be unreasonable, given the complexity of the issues presented in this case.

With regard to the second argument, the undersigned notes the following procedural facts. On November 5, 2018 the undersigned *sua sponte* narrowed the scope of the Motion for Sanctions in light of the Standing R&R. See Order [D.E. 637]. As a result, the only relief addressed thereafter was Defendants' request for an award of attorneys' fees and costs incurred in connection with the preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions. Id. By that time, the Motion for Sanctions had been fully briefed. See Motion for Sanctions, filed on June 14, 2018 [D.E. 430]; Sanctions Response, filed on June 28, 2018 [D.E. 459]; Notice of Facts, filed on June 29, 2018 [D.E. 466]; Sanctions Reply, filed on July 5, 2018 [D.E. 478]; and Notice of Supplemental Authority, filed on July 10, 2018 [D.E. 486]. Moreover, Defendants' counsel's participation in the Show Cause Hearing held on January 25, 2019 was limited by the undersigned's narrowing of the scope of the Motion for Sanctions. See Order [D.E. 637]; Paperless Minute Entry [D.E. 664].

Given these circumstances, the undersigned finds no justification for reducing the number of hours expended in litigating the Motion for Sanctions.  See Hensley, 461 U.S. at 435 ("[T]he fee award should not be reduced simply because the [moving party] failed to prevail on every contention raised in the lawsuit. . . .  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.") (citation omitted); Aqua Massage Int'l, Inc. v. Licht, No. 03-CV-60493, 2005 WL 8136511, at *3 (S.D. Fla. Mar. 11, 2005) (When the moving party has "obtained excellent results, the attorney should recover for all hours reasonably expended on the litigation.").

### III.    Adjusted Award of Attorneys' Fees

Applying the downward adjustments to the hourly rates determined above to the total hours billed by each timekeeper, where applicable, results in the following computations: [14]

---

[14] The total dollar value for each timekeeper is rounded to the nearest dollar.

| A.  PAUL WEISS | | | |
|---|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE** | **TOTAL** |
| Jessica Carey, *Partner* | 5.24 | $625 | $3,275 |
| Bruce Birenboim, *Partner* | 52.39 | $625 | $32,744 |
| Adam Schwartz, *Counsel* | 23.725 | $625 | $14,828 |
| Maxwell Kosman, *Associate* | 27.515 | $350 | $9,630 |
| Emily A. Weissler, *Associate* | 86.24 | $350 | $30,184 |
| Lissette Duran, *Associate* | 5.1 | $350 | $1,785 |
| Juan J. Gascon, *Associate* | 17.774 | $350 | $6,221 |
| Melina Meneguin-Layerenza, *Associate* | 34.895 | $350 | $12,213 |
| Shawn Muscat, *Paralegal* | 43.6 | $125 | $5,450 |

| B.  QUINN EMMANUEL | | | |
|---|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE** | **TOTAL** |
| Adam B. Wolfson, *Partner* | 41.3 | $625 | $25,813 |
| William Burck, *Partner* | 5.0 | $625 | $3,125 |
| Stephen Hauss, *Partner* | 1.0 | $625 | $625 |

| C.  REED SMITH | | | |
|---|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE** | **TOTAL** |
| Edward M. Mullins, *Partner* | 0.9 | $600 | $540 |
| M. Cristina Cardenas, *Partner* | 0.4 | $600 | $240 |
| Christina Olivos, *Associate* | 29.4 | $350 | $10,290 |
| Cynthia Benavides, *Paralegal* | 4.5 | $125 | $563 |
| Susan Sanchez, *Paralegal* | 1.8 | $125 | $225 |
| Kevin Hernandez, *Paralegal* | 0.9 | $125 | $113 |

| D.  SUSMAN GODFREY | | | |
|---|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE** | **TOTAL** |
| Alexander Kaplan, *Partner* | 5.37 | $600 | $3,222 |
| Michael Kelso, *Associate* | 15.84 | $350 | $5,544 |

| E.  GELBER SCHACHTER | | | |
|---|---|---|---|
| **TIMEKEEPER** | **HOURS BILLED** | **HOURLY RATE** | **TOTAL** |
| Gerald E. Greenberg, *Partner* | 3.1 | $575 | $1,783 |

| F.  HUNTER MACLEAN[15] | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS BILLED | HOURLY RATE | TOTAL |
| David M. Burkoff, *Partner* | 20.005 | $375 | $7,502 |
| David M. Burkoff, *Partner* | 6.075 | $385 | $2,339 |
| Allan C. Galis, *Partner* | 3.865 | $270 | $1,044 |
| Allan C. Galis, *Partner* | 1.7 | $300 | $510 |
| Heather Lundy, *Partner* | 2.04 | $270 | $551 |

| G.  CARLTON FIELDS | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS BILLED | HOURLY RATE | TOTAL |
| Clifton R. Gruhn, *Shareholder* | 8.73 | $430 | $3,754 |

| H.  HUGHES HUBBARD | | | |
|---|---|---|---|
| TIMEKEEPER | HOURS BILLED | HOURLY RATE | TOTAL |
| Nicolas Swerdloff, *Partner* | 3.0 | $625 | $1,875 |
| Jeffrey Goldberg, *Associate* | 49.8 | $350 | $17,430 |

---

[15] Because Mr. Burkoff's and Mr. Galis' hourly rates increased during the pendency of this case, the undersigned reviewed each entry in Exhibit E of the Burkoff Decl. to determine how many hours each timekeeper billed at each rate.  See Burkoff Decl. [D.E. 702-5 at 3]; Burkoff Decl. Ex. E. [D.E. 702-5 at 22-25].

## IV.    Total Fee Award by Law Firm

Based on the above computations, the total recommend fee award for each law firm is as follows:

| LAW FIRM | FEE AWARD |
|---|---|
| PAUL WEISS | $116,330 |
| QUINN EMMANUEL | $29,563 |
| REED SMITH | $11,971 |
| SUSMAN GODFREY | $8,766 |
| GELBER SCHACHTER | $1,783 |
| HUNTER MACLEAN | $11,946 |
| CARLTON FIELDS | $3,754 |
| HUGHES HUBBARD | $19,305 |
| **TOTAL FEE AWARD** | **$203,418** |

## NON-TAXABLE EXPENSES AND COSTS

Together, the law firms of Paul Weiss, Reed Smith, Susman Godfrey, Hunter Maclean, and Carlton Fields have submitted documentation for a total of $14,920.23 in non-taxable expenses and costs in connection with their preparation for the cancelled depositions of Dr. Cabeza and Mr. Pedroza and the litigation of the Motion for Sanctions.  See Carey Decl. [D.E. 702-1 at 4]; Carey Decl. Am. Ex. A [D.E. 703-1 at 2, 6]; Mullins Decl. [D.E. 702-3 at 3]; Mullins Decl. Comp. Ex. B. [D.E. 702-3 at 34]; Kaplan/Greenberg Decl. [D.E. 702-4 at 5]; Kaplan/Greenberg Decl. Ex. 1 [D.E. 702-4 at 29-30]; See Burkoff Decl. Exs. E & F [D.E. 702-5 at 23-24, 52, 64, 68, 78].

Plaintiff concedes that Paul Weiss is entitled to $6,314.65 in non-taxable expenses and costs, which represents the sum of the court reporter's and videographer's invoices for the cancelled depositions of Dr. Cabeza and Mr. Pedroza.  See Response [D.E 704 at 24]; Carpinello Decl. Ex. D. [D.E. 704-5 at 1-3].

The bulk of the remainder of the non-taxable expenses and costs relates to non-local counsel from Paul Weiss, Susman Godfrey, and Hunter Maclean's travel to the Southern District of Florida for attendance at hearings relating to the Motion for Sanctions.  See Carey Decl. [D.E.

702-1 at 4]; Carey Decl. Am. Ex. A [D.E. 703-1 at 2, 6]; Mullins Decl. [D.E. 702-3 at 3]; Mullins Decl. Comp. Ex. B. [D.E. 702-3 at 34]; Kaplan/Greenberg Decl. [D.E. 702-4 at 5]; Kaplan/Greenberg Decl. Ex. 1 [D.E. 702-4 at 29-30]; See Burkoff Decl. Exs. E & F [D.E. 702-5 at 23-24, 52, 64, 68, 78].[16] However, the undersigned finds that such travel expenses and costs are not reasonably recoverable because Defendants have failed to show that there were no attorneys in the area who were willing and able to handle this case. See Martinez v. Hernando Cty. Sheriff's Office, 579 F. App'x 710, 714 (11th Cir. 2014) ("We respect [the plaintiff's] right to retain counsel of his choice, but, like the district court, we do not think it reasonable to pass the costs of [his attorney's] travel on to the [defendant] without a showing of a lack of local counsel.").

In light of the foregoing, the undersigned finds it reasonable to award Paul Weiss $6,314.65 in non-taxable expenses and costs in connection with the cancelled depositions of Dr. Cabeza and Mr. Pedroza.

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendants' Motion for Fees and Costs [D.E. 702] be GRANTED IN PART AND DENIED IN PART and that, pursuant to Rule 37(b) Defendants be awarded attorneys' fees in the amount of **$203,418.00** and non-taxable costs in the amount of **$6,314.65**, for a total award of **$209,732.65**, which is apportioned as follows:

---

[16] Of the remainder, a *de minimis* amount of less than $250.00 consists of other miscellaneous expenses such as parking and reprographics.

| LAW FIRM | FEE AWARD | COST AWARD | TOTAL AWARD |
|----------|-----------|------------|-------------|
| PAUL WEISS | $116,330 | $6,314.65 | **$122,644.65** |
| QUINN EMMANUEL | $29,563 | $0.00 | **$29,563.00** |
| REED SMITH | $11,971 | $0.00 | **$11,971.00** |
| SUSMAN GODFREY | $8,766 | $0.00 | **$8,766.00** |
| GELBER SCHACHTER | $1,783 | $0.00 | **$1,783.00** |
| HUNTER MACLEAN | $11,946 | $0.00 | **$11,946.00** |
| CARLTON FIELDS | $3,754 | $0.00 | **$3,754.00** |
| HUGHES HUBBARD | $19,305 | $0.00 | **$19,305.00** |
| **TOTAL AWARD** | | | **$209,732.65** |

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen** days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles.  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 31st day of January, 2020.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Darrin P. Gayles
        Counsel of Record