UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:18-cv-20818-GAYLES-OTAZO-REYES

PDVSA US LITIGATION TRUST,

        Plaintiff

vs.

LUKOIL PAN AMERICAS LLC; LUKOIL
PETROLEUM LTD.; COLONIAL OIL INDUSTRIES,
INC.; COLONIAL GROUP, INC.; GLENCORE LTD.;
GLENCORE INTERNATIONAL, A.G.; GLENCORE
ENERGY UK LTD.; MASEFIELD A.G.;
TRAFIGURA AG; TRAFIGURA TRADING LLC;
TRAFIGURA BEHEER B.V.; VITOL ENERGY
(BERMUDA) LTD.; VITOL S.A.; VITOL, INC.;
FRANCISCO MORILLO; LEONARDO BAQUERO;
DANIEL LUTZ; LUIS LIENDO; JOHN RYAN;
MARIA FERNANDA RODRIGUEZ; HELSINGE
HOLDINGS, LLC; HELSINGE, INC.; HELSINGE
LTD.; SAINT-HELIER; WALTROP CONSULTANTS
C.A.; GODELHEIM, INC.; HORNBERG INC.;
SOCIETE HELLIN, S.A.; GLENCORE DE
VENEZUELA, C.A.; JEHU HOLDING INC.;
ANDREW SUMMERS; MAXIMILIANO POVEDA;
JOSE LAROCCA; LUIS ALVAREZ;
GUSTAVO GABALDON; SERGIO DE LA VEGA;
ANTONIO MAARRAOUI; CAMPO ELIAS PAEZ;
PAUL ROSADO; BAC FLORIDA BANK;
EFG INTERNATIONAL A.G.;
BLUE BANK INTERNATIONAL N.V.,

        Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PDVSA'S MOTION FOR
<u>SUBSTITUTION AS REAL PARTY IN INTEREST AND TO INTERVENE</u>**

## PRELIMINARY STATEMENT

Defendants respectfully request that the Court deny the motion to substitute or intervene, ECF 732, for the following reasons, each of which independently supports denial of the motion.

At the outset, this Court lacks subject matter jurisdiction to entertain a motion to intervene or substitute because the original Plaintiff, the so-called "PDVSA Trust," did not have standing and the action therefore was dismissed in a final judgment and is a nullity.  There is no "case" in which to intervene.  Nor can the movant retroactively create subject matter jurisdiction by seeking to substitute or intervene.

Moreover, the movant, who is aligned with the former Maduro regime and not the U.S.-recognized government of Venezuela (which owns PDVSA), itself lacks Article III standing to serve as a plaintiff in this case and is not the real party in interest under Rule 17.  Every court that has reviewed the arguments raised by the movant has rejected them and found the Maduro administration and its appointees legally incapable of bringing a case in the United States on behalf of Venezuela or PDVSA.  Recognizing that fatal flaw, the movant seeks to invent "uncertainty as to the status of PDVSA" where there is none and use that to be a placeholder plaintiff, a mechanism the Eleventh Circuit has flatly rejected.

Finally, even if the movant were the proper party, it cannot  intervene at this late stage of the case (after dismissal and confirmation by the Eleventh Circuit).  The movant has known about this case for years and did nothing to intervene or substitute as a plaintiff while it was pending and the statute of limitations was running.  The movant should not be permitted now to revive the case, to the prejudice of Defendants, because it chose not to pursue its alleged claims in a timely fashion.

For all these reasons, the motion should be denied.

## ARGUMENT

## I.    THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION

"Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *University of South Ala. v. Am. Tobacco*, 168 F. 3d 405, 410 (11th Cir. 1999); *see also Invention Submission Corp. v. Dudas*, 413 F.3d 411, 415 (4th Cir. 2005) ("Because our order stated that the district court lacked jurisdiction, the court was not free to do anything else but to dismiss the case."). An intervenor or substitute plaintiff with purported standing cannot retroactively create jurisdiction where there was none. *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926) ("An existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit or action by which a third person is permitted to make himself a party. . . . As the record does not show that at the time the petition to intervene was presented there was pending any suit or proceeding within the court's jurisdiction, that petition was not allowable."); *accord Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 110–11 (2d Cir. 2013) (allowing intervention "in order to revive claims that were dismissed . . . for want of jurisdiction" would violate "the long recognized rule that if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff"). Holding otherwise would require "revisiting issues [of standing] that were decided explicitly or by necessary implication in [the] prior appeal," an outcome that the law-of-the-case doctrine precludes. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) (per curiam).

Here, the Court has no subject matter jurisdiction over this case. On March 19, 2019, this Court ruled that the PDVSA Trust did not have standing and that the Court did not have subject-matter jurisdiction and therefore dismissed this case. ECF 684. That decision was affirmed on

appeal.  *See* ECF 731.  The Eleventh Circuit's mandate issued on May 17, 2021, and said only that "[i]t is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court."  Thus, the mandate confirms that there is no active case pending in this Court and that this Court cannot therefore entertain movant's motion.  The mandate did not remand the case for further proceedings, much less authorize the movant to file a motion to substitute or intervene despite this Court's lack of subject-matter jurisdiction.  Under the mandate rule, a district court "cannot vary [an appellate court's mandate], or examine it for any other purpose than execution; or give any other or further relief."  *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1510-11 (11th Cir. 1987) (en banc).  Nor can the Court "intermeddle with [the mandate], further than to settle so much as has been remanded," which here is nothing.  *Id.*  A necessary implication of this Court's ruling and the Eleventh Circuit's affirmance is that this Court lacks authority to entertain any new substantive motions in this case.

Judge Cohn addressed this exact situation in *Live Entertainment, Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273 (S.D. Fla. 2003).  There, Live Entertainment brought a lawsuit, even though it lacked standing  and was not the proper party in interest because the agreement at issue was never lawfully assigned to it.  *Id*. at 1275.  Maverick Limited moved to intervene and substitute "because it, and not Live Entertainment, is the real party in interest because the attempted assignment from Maverick Limited to Live Entertainment failed as a matter of law."  *Id*.  Judge Cohn denied Maverick Limited's motion to substitute or intervene because Live Entertainment had no standing to bring the case in the first place.  *Id*. at 1277-80.  The same result is compelled here.

## II.    THE MOVANT DOES NOT HAVE STANDING

The movant purports to represent "the current governing body of" Petróleos de Venezuela, S.A. that claims to be "the de facto governing body of PDVSA," ECF 732 5-6, *which is not the*

*PDVSA management recognized by the United States.* In January 2019, the President of the United States stated, "[t]oday, I am officially recognizing the President of the Venezuelan National Assembly, Juan Guaidó, as the Interim President of Venezuela. In its role as the only legitimate branch of government duly elected by the Venezuelan people, the National Assembly invoked the country's constitution to declare Nicolas Maduro illegitimate, and the office of the presidency therefore vacant." *See Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela* (Jan. 23, 2019), https://ec.usembassy.gov/statement-from-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-Guaidó-as-the-interim-president-of-venezuela/.

Subsequently, on February 5, 2019, the National Assembly adopted the Statute to Govern a Transition to Democracy to Reestablish the Validity of the Constitution of the Republic of Venezuela. *Jiménez v. Palacos*, 2019 WL 3526479, at *6 (Del. Ch. Ct. Aug. 2, 2019). That Statute identified Mr. Guaidó as "the legitimate President in Charge of Venezuela" and "specifically empowered [Mr.] Guaidó to 'appoint an *ad hoc* Managing Board' of PDVSA 'to exercise PDVSA's rights as a shareholder of PDV Holding[.]'" *Id.* On February 8, 2019, Mr. Guaidó appointed the ad hoc Managing Board of PDVSA and on February 13, 2019, the National Assembly approved this action by resolution. *Id.*; *see also PDVSA U.S. Litigation Trust v. Lukoil Pan Americas LLC*, 372 F. Supp. 3d 1353, 1362 (S.D. Fla. 2019) ("Earlier in this case, Plaintiff argued there is no doubt that PDVSA is an instrumentality of the Venezuelan government and that the Act of State and the international comity doctrines foreclose the Court from adjudicating the legality of action taken by the Venezuelan government."). Most recently, the Biden Administration confirmed that "[t]he U.S. stance on Maduro's lack of legitimacy hasn't changed since Biden took office. . . . The U.S. doesn't accept Maduro as Venezuela's legitimate president

and instead recognizes Guaidó, the leader of the National Assembly, as the interim president." Bloomberg, *U.S. Rejects Maduro's Call for Biden to Lift Venezuela Sanctions* (June 20, 2021), https://www.bloomberg.com/news/articles/2021-06-20/u-s-rejects-maduro-s-call-for-biden-to-lift-venezuela-sanctions.

The movant does not contest that it does not represent either the Guaidó administration or the ad hoc Managing Board of PDVSA that he appointed and the National Assembly confirmed; in fact, the movant expressly "acknowledges that the U.S. Government has recognized a government separate from the *de facto* government of Venezuela and that an alternative board of directors of PDVSA has been recognized by U.S. courts for certain purposes." ECF 732 at 5-6. Although the movant does not spell out the implications of that admission, they are plain: The movant is not the legitimate PDVSA to which any purported injuries sufficient to support Article III standing belong. The so-called PDVSA before this Court, albeit not a stranger in this litigation, is on the face of the motion an entity separate and apart from the PDVSA that might in appropriate circumstances rightfully invoke this Court's jurisdiction.

Given these indisputable facts, both the Political Question and Act of State doctrines bar recognition of the movant's standing to bring this action. The United States' recognition of President Guaidó and the National Assembly as the legitimate government of Venezuela compels the conclusion that the acts of their government carried out in Venezuela (such as the appointment of the legitimate PDVSA Board) are entitled to the judicial deference that the Act of State doctrine affords. Were this Court to allow Mr. Maduro's PDVSA to prosecute claims as if it were Venezuela's national oil company, it would effectively negate President Guaidó's determination that his appointees, and only them, can direct the company's acts, including any decision to participate in this litigation. Moreover, the Court cannot allow Mr. Maduro's appointees to make

decisions for the legitimate PDVSA without second guessing the United States Executive Branch's foreign policy decision to declare the Maduro regime illegitimate and recognize instead the Guaidó administration and National Assembly as the legitimate government of Venezuela entitled to exercise all incidental powers including the power to appoint PDVSA's management.  *See Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918) ("Who is the sovereign, de jure or de facto, of a territory is not a judicial, but is a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges, as well as all other officers, citizens and subjects of that government."); *PDVSA U.S. Litigation Trust*, 372 F. Supp. 3d at 1362 ("The Act of State doctrine prevents courts from adjudicating an action where the relief sought or the defense interposed requires a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." (quoting *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l.*, 493 U.S. 400, 405 (1990)).

The movant does not dispute that the Political Question and Act of State Doctrines apply. Instead, it argues that there is "uncertainty as to the status of PDVSA" and that its motion "is being made by the current governing body of PDVSA that is undisputedly the de facto governing body of PDVSA, is in control of PDVSA assets, in Venezuela, and is recognized as such by the de facto government of Venezuela."  ECF 732 at 5-6.  But there is no "uncertainty" as to the status of Venezuela and PDVSA, and the movant's illegitimate and supposedly de facto control of PDVSA's assets does not create any.

In addition to the clear proclamations of the Executive Branch, every court that has reviewed these questions has concluded that the Maduro regime does not control PDVSA as a

matter of law and that the de jure/de facto distinction argued here is legally irrelevant.[1]  There is no basis to reach a different conclusion here.

The only authority to which the movant points to support its assertion that the status of Venezuela or PDVSA is uncertain in fact confirms that the movant is not the real party in interest here.  *See Jiménez v. Palacios*, 2019 WL 3526479, at *9-20 (Del. Ch. Ct. Aug. 2, 2019).  In *Jiménez*, the Maduro-appointed PDVSA board sued the Guaidó-appointed PDVSA board seeking a declaration that the Maduro appointees were the rightful board of PDVSA.  *Id*. at *1.  The court rejected that claim and held that only the Guaidó-appointed PDVSA board had the right to act for PDVSA in U.S. courts.  The court first held under the Political Question Doctrine that "the applicable rule is clear: the Executive Branch's decision to recognize a foreign state 'conclusively binds' all domestic courts, such that they must accept that decision."  *Id*. at *10.  The court applied

---

[1]  *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) (citing *Guaranty Trust Co. v. United States*, 304 U.S. 126 (1938)) (recognizing "Guaidó as the rightful leader of Venezuela" and PDVSA because, under *Guaranty Trust Co. v. United States*, "[w]hat government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government. . . .  Its action in recognizing a foreign government and in receiving its diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination, although they are free to draw for themselves its legal consequences in litigations pending before them"); *Impact Fluid Solutions LP v. Bariven SA*, Case No. 4:19-cv-00652, slip op. at 13 (S.D. Tex. May 20, 2020) (explaining that the U.S. executive branch recognized the Guaidó government as legitimate, that the U.S. courts were bound to follow that determination, and that allowing the Maduro regime to participate could "provide legitimacy to the unrecognized regime"); *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, Case No. 20-MC-40-LJV, 2021 WL 1884110, at *7 (W.D.N.Y. May 11, 2021) ("[A]s long as Guaidó's appointment of the Ad Hoc Board is a valid act of state, the Ad Hoc Board is the only entity authorized to appoint counsel in this case."); *see also Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, Case No. 18-7044, slip op. at 1 (D.C. Cir. May 1, 2019) (rejecting the pro se application and request by the Maduro regime "to bar Juan Guaidó and his representatives from arguing this appeal on behalf of Venezuela" because "the Executive Branch of the United States recognized Guaidó as the Interim President of Venezuela"); *Comparelli v. Bolivarian Republic of Venezuela*, Case No. 1:14-cv-24414, slip op. at 2-3 (S.D. Fla. Feb. 9, 2021) (recognizing the Guaidó government and not the Maduro regime as the Venezuela government).

that rule to the Executive Branch's recognition of Guaidó and concluded that "[t]he determinations of the Executive Branch are unambiguous: Guaidó is recognized, the National Assembly is legitimate, and neither Maduro nor the Constituent Assembly are legitimate parts of the Venezuelan government." *Id*. at *11.

Turning to the Act of State doctrine, the court held that "the act of state doctrine resolves the question of who constitutes the PDVSA board. The Guaidó government's reconstitution of the PDVSA board was the official act of a recognized sovereign taken wholly within its own territory. Under the act of state doctrine, this Court must accept that action as valid without further inquiry." *Id*. at *13.  The Maduro regime argued, just as it does here, "that the Guaidó government in fact does not control any territory or a people and therefore does not qualify as a state for purposes of the act of state doctrine." *Id*. at *16.  The court rejected this argument.  "[A]lthough the Guaidó government's de facto control over territory and people has momentous implications beyond these pages, it does not matter for the purpose of this legal analysis.  The Executive's de jure recognition of the Guaidó government standing alone establishes statehood sufficient to invoke the act of state doctrine." *Id*. at *18.  The Delaware Supreme Court affirmed for the reasons stated in the Chancery Court's opinion.  *Jimenez v. Palacios*, 237 A.3d 68 (Del. 2020) (Table Op.).[2]

---

[2] Not only did these cases correctly find that the Act of State Doctrine bars movant from arguing that it is the lawful representative of PDVSA, but movant is also barred from relitigating this issue under the doctrine of collateral estoppel after having the issue determined against it in prior lawsuits.  *See Quinn v. Monroe Cty.*, 330 F.3d 1320, 1329 (11th Cir. 2003) ("We give preclusive effect to the judgment of a state court provided that two conditions are met: (1) the courts of the state from which the judgment emerged would do so themselves; and (2) the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process."); *Hercules Inc. v. AIU Ins. Co.*, 783 A.2d 1275, 1278 (Del. 2000) (Under Delaware law, "[t]he doctrine of collateral estoppel provides that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."); *Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th

## III.    THE MOVANT IS NOT THE REAL PARTY IN INTEREST, AS REQUIRED BY FEDERAL RULE 17

Federal Rule of Civil Procedure 17 requires that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a).  "The real party in interest requirement of Rule 17(a) . . . applies to intervenors as well as plaintiffs . . . ."  *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) (en banc) (internal quotation marks and citation omitted).  Under certain narrow circumstances, the real party in interest may seek to be substituted as a party in a case, but the Rules Committee specifically cautions that the rule "should not be misunderstood or distorted" insofar as the substitution process is "intended to prevent forfeiture when determination of the correct party to sue *is difficult or when an understandable mistake has been made*."  Fed. R. Civ. P. 17 note (1966) (emphasis added).  But identification of the correct party was never difficult here, and the movant fails to identify an understandable mistake.

Movant incorrectly argues in its brief that, even if it is not the real party in interest, it should be allowed to intervene anyway "to preserve the causes of action against any possible claim of expiration of statute of limitations."  ECF 732 at 6.  The Eleventh Circuit has already explicitly rejected the use of "placeholder" plaintiffs.  As the Court held, "Rule 17 was not promulgated to allow lawyers to file placeholder actions . . . to keep a limitations period open while they investigate their claims and track down the proper parties."  *In re Engle Cases*, 767 F.3d 1082, 1113 (11th Cir. 2014).  Adopting the approach proposed by the movant here and thus "compel[ling] courts to allow substitution any time the real plaintiff is waiting in the wings," the

---

Cir. 1984) (explaining that, under the federal rule, collateral estoppel may be properly invoked by a non-party to previous litigation "if the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action").

Eleventh Circuit explained, "would read [the reasonable mistake] limitation out of existence and enable, in fact encourage, lawyers to file complaints without proper authorization or investigation." *Id.* Permitting such an outcome would run counter to the premise of Rule 17, as explained in the advisory committee notes:

> [Rule 17] does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitation period.

Rule 17 notes (1966).  The movant's attempt to sue despite not being the legitimate PDVSA is foreclosed by Eleventh Circuit precedent and contrary to Rule 17.

## IV.   THE MOVANT CANNOT SATISFY RULE 24 BECAUSE IT LACKS AN INTEREST IN THIS CASE AND, EVEN IF IT DID, ANY MOTION TO INTERVENE IS YEARS TOO LATE AND WOULD PREJUDICE DEFENDANTS

The movant claims it is entitled to intervene as of right in this case.  Under Rule 24, a motion to intervene as of right must be "timely" and the movant must "claim[] an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2) (emphasis added).  The movant cannot meet either of these requirements.

*First*, as discussed above, the movant has failed to carry its burden to establish that it has any interest in this case because any interest in the property that is the subject of this action

exclusively belongs to the PDVSA controlled by Guaidó appointees.  Intervention should be denied for this reason alone.

**Second**, the movant's intervention bid should independently be denied because it is untimely.  As the pre-split Fifth Circuit held, "intervention attempts after final judgments are ordinarily looked upon with a jaundiced eye.  Interventions after judgment have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court."  *United States v. United States Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977); *see also Stallworth v. Monsanto Co.*, 558 F. 2d 257, 265-66 (5th Cir. 1977) (citing *Moten v. Bricklayers, Masons & Plasterers, Int'l Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976)); *Moten*, 543 F.2d at 228 (affirming the lower court's denial of a motion to intervene and stating that "cases in this Circuit permitting post-judgment intervention should not be controlling where clear opportunity for pre-judgment intervention (a procedure not formally sought herein) was not taken").[3]

Even without a "jaundiced eye," this motion—first brought post-judgment, post-appeal, and post-mandate—is untimely in the extreme.  Courts in the Eleventh Circuit look to four factors in assessing timeliness:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-

---

[3] Rule 60 does not apply here.  It only provides that "[o]n just terms, a court may relieve ***a party or its legal representative*** from a final judgment, order or proceeding for the following reasons: . . . mistake, inadvertence, surprise or excusable neglect"; or "for any other reason justifying relief from the operation of the judgement."  Fed. R. Civ. P. 60(b)(1), (b)(6) (emphasis added).  The movant is neither a party to this action nor a party's legal representative, and thus cannot avail itself of Rule 60.  And even if it were entitled to invoke the Rule, the movant has shown no mistake, inadvertence, surprise, or excusable neglect, and relief would not be just for the same reasons Rule 24 intervention is unjust.  *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) ("The party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result.").

be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir. 1983).  The first three of these factors strongly favors denial of the motion, and the last factor does not apply.

### A.    The Motion Was Filed Years After This Court Dismissed This Case, Even After that Dismissal Was Affirmed by the Eleventh Circuit

In *Jefferson County*, the movants were denied intervention as untimely in part because they "knew at an early stage in the proceedings that their rights could be adversely affected, as was evidenced by their conversations with the City regarding the tactics the City should take in defending the action; yet they failed to seek intervention." *Id*. at 1516.  The same is true here.  As in *Moten*, the movant's "decision not to seek intervention much earlier may have been an informed, tactical one," which cannot excuse its delay.  543 F.2d 224 at 228.

The Maduro regime has had actual notice of the claims in this case and this litigation since at least 2017.[4]  The PDVSA Trust originally brought this case to challenge purported conduct dating back to 2004 pursuant to a purported trust agreement allegedly signed in 2017 by two Maduro regime figures: "Nelson Martinez, the former Venezuelan Petroleum Minister; and [] Reinaldo Muñoz Pedroza, the Venezuelan Procurador General."  *PDVSA U.S. Litigation Trust*,

---

[4]   The Guaidó administration also has long known about this case and chosen not to try to intervene.  In fact, on April 4, 2018, the National Assembly expressly recognized this case, *see* ECF 517-3, and on May 7, 2020, the Guaidó administration sent a letter about this case to the Eleventh Circuit.  *See* Letter from Carlos Vecchio to David M. Smith, *PDVSA US Litigation Trust v. Lukoil Pan Americas, LLC*, No. 19-10950 (11th Cir. May 11, 2020).  The Guaidó administration has not hesitated to participate in U.S. litigation when it believes it has a valid claim.  *See Rusoro*, Case No. 18-7044, slip op. at 1; *Impact Fluid Solutions*, Case No. 4:19-cv-00652, slip op. at 4; *Caballero*, 2021 WL 1884110, at *3.  In fact, in March of 2019, the Guaidó administration appeared in another case contemporaneously pending in this District, *Comparelli*, but has never appeared in this case.

372 F. Supp. 3d at 1359.  The Maduro regime purportedly chose to execute that agreement rather than bring the case in PDVSA's own name.

The Maduro regime also was aware of the case during standing discovery:  It agreed to produce a Rule 30(b)(6) representative of PDVSA as well as  Mr. Pedroza.  ECF 670 at 6, adopted by ECF 685; *see also id*. at 10 (reporting that PDVSA consulted with counsel in this case about the depositions of Mr. Pedroza and the Rule 30(b)(6) representative).  Then, in June 2018, Mr. Maduro "directed Ms. Cabeza [the PDVSA Rule 30(b)(6) representative] not to attend the deposition," which resulted in the Court sanctioning the PDVSA Trust.  *Id*. at 13.  The Maduro regime nevertheless chose not to intervene.

The Maduro regime was likewise aware, in August 2018, that Defendants contested the original Plaintiff's standing and that this Court would hold an evidentiary hearing.  "Just before the hearing, Plaintiff submitted an acknowledgement of signature and apostille for Mr. Pedroza. . . . Finally, at the hearing, Plaintiff attempted to introduce Mr. Martinez's alleged acknowledgement of his signature, signed on August 1, 2018, one day before the hearing."  *PDVSA U.S. Litigation Trust*, 372 F. Supp. 3d at 1359.  The Maduro regime still chose not to intervene.

The Maduro regime was similarly aware of this Court's decision on standing.  On November 5, 2018, Magistrate Judge Otazo-Reyes issued her Report and Recommendation.  *See* ECF 636.  The PDVSA Trust objected to that Report and Recommendation on November 19, 2018.  Again, the Maduro regime chose not to intervene.  On March 19, 2019, this Court adopted the Report and Recommendation, and the PDVSA Trust then appealed to the Eleventh Circuit.  Yet again, the Maduro regime chose not to intervene in the proceeding before the appellate court.  Only after the Eleventh Circuit affirmed this Court's dismissal did the Maduro regime claim to control the real party in interest and seek to intervene.

The movant's reliance on *Meek v. Metro County Dade Florida* to justify its untimely motion is misplaced. *See* ECF 732 at 4. In that case, the movants had unsuccessfully sought to intervene months before the judgment and brought a second motion to intervene between judgment and appeal. 985 F.2d 1471, 1474 (11th Cir. 1993) ("This is an appeal from the district court's denial of a post-judgment motion to intervene *for purposes of appeal*." (emphasis added); *see also id*. at 1476 (explaining that the district court judgment was entered on August 14, 1992, and amended on September 11, 1992; that four people filed motions to intervene "as parties for purposes of appeal" on September 1; and "[t]hat same day the district court denied the motions without explanation, although the court's order did refer" to the Court's earlier denial of intervention). Here, by contrast, the movant waited until after the judgment of dismissal had been affirmed by the Eleventh Circuit.

## B.      Allowing Anyone to Intervene Would Prejudice Defendants

*First*, it would prejudice Defendants if the movant (or anyone else) were able to avoid the proper application of the statutes of limitation with respect to its purported claims. Many of the claims in the March 2018 Complaint were not timely even then, and much less now, almost three years later. There can be no dispute that the Maduro regime and the Guaidó administration were long aware of any potential claims. This would mean that at least those claims with two and three year limitations are barred, *see, e.g.*, 18 U.S.C. § 1030(g), 18 U.S.C. § 2701, 18 U.S.C. § 2520(e), Fla. Stat. § 688.007, and it is likely that the Maduro regime was aware of potential claims well before then. Avoiding the statute of limitations is an explicit motivation behind the motion. ECF 732 at 6 ("[T]he PDVSA seeks to preserve the causes of action against any possible claim of expiration of statute of limitations."). Thus, it would be prejudicial to Defendants to allow the Maduro regime's years-late motion. As one court put it,

> [T]here would be significant, cognizable prejudice to the defendants if intervention were allowed to permit the assertion [of] the class claims in these cases. . . . [A]bsent a tolling of the statute of limitations, the individual and class claims [the movant] seeks to assert would be barred by the statute of limitations. Statutes of limitations are, among other things, designed to avoid litigation of stale claims and unfairness to defendants. . . . It would, therefore, be prejudicial to require the [Defendants] to attempt to litigate such claims now.

*Flemming v. Lind Waldock.*, 127 F.R.D. 30, 36 (D. Mass. 1989).

*Second*, allowing the Maduro regime or anyone else to circumvent the statute of limitations would prejudice Defendants here by depriving them of years' worth of discovery (had the claims survived a motion to dismiss for failure to state a claim). On its own terms, the Complaint already covers alleged events covering decades. And Defendants were unable to obtain even the depositions to which the Maduro regime committed in the standing phase, for which this Court imposed sanctions. *See* ECF 685 (granting sanctions for failing to produce two PDVSA witnesses); *see also* ECF 670 (recommending the sanctions). And now, years later, the ability of Defendants to defend themselves in the litigation process has been irrevocably harmed. No one— not the Maduro regime, not the Guaidó administration, not anyone who claims to have an interest in this case—should be allowed to sit idly by for years, fail to afford Defendants the rights to which they are entitled under the Federal Rules, and then claim to continue a dismissed case.

## C. Denying the Motion to Intervene Would Not Prejudice the Maduro Regime

The third factor supports denial "where the movant has no identity of interest with a party and thus could not be bound, or where his interest is identical with a party and consequently he is adequately represented, we would find no prejudice sufficient to give weight to the third factor." *Jefferson County*, 720 F.2d at 1517. The movant does not address this prong of the inquiry. And had the movant thought its interests were not protected by the original parties to this case, it could have sought to intervene before judgment, before appeal, or before affirmance. Moreover, as

16

discussed above, the Maduro regime is not entitled to bring claims on behalf of PDVSA, which is legally under the control of Guaidó appointees, and as such, it would suffer no prejudice from its motion being denied regardless of when it sought to intervene.

**D.     There Are No Unusual Circumstances Militating Either For or Against a Determination that the Application Is Timely**

The movant does not address this prong, and there is no evidence that the movant's untimeliness was caused by one of the parties.  *See Jefferson County*, 720 F.2d at 1519 (providing as an example of unusual circumstances that, "when the defendants sought permission to inform the would-be intervenors of their rights at an earlier point in the litigation, the plaintiffs thwarted the attempt. When the would-be intervenors ultimately did move to intervene, plaintiffs complained that intervention should not be allowed because the motion was untimely."). Thus, this prong does not apply.

## CONCLUSION

Defendants respectfully request that the Court deny the motion to substitute or intervene.

Dated: July 1, 2021

Respectfully submitted,

*/s/ Luis S. Konski*
Luis S. Konski
Fla. Bar No. 207837
Email: LKonski@fowler-white.com
**FOWLER WHITE BURNETT, P.A.**
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:     (305) 789-9201

*Counsel for Defendant BAC FLORIDA BANK*

*/s/ Christina Olivos*
Edward Mullins, Esq.
Florida Bar No. 863920
Email: emullins@reedsmith.com
Christina Olivos, Esq.
Florida Bar No. 119580
Email: colivos@reedsmith.com
**REED SMITH LLP**
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

William A. Burck, Esq.
*Admitted Pro Hac Vice*

17

By: /s/ David M. Burkoff
Benjamine Reid, Esq.
Florida Bar Number 183522
Email: breid@carltonfields.com
Clifton R. Gruhn, Esq.
Florida Bar Number 72542
Email: cgruhn@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136-4118
Telephone: (305) 539-7228
Fax: (305) 530-0055

David M. Burkoff, Esq.
*Admitted Pro Hac Vice*
Email: dburkoff@huntermaclean.com
Allan C. Galis, Esq.
*Admitted Pro Hac Vice*
Email: agalis@huntermaclean.com
**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**
200 E. Saint Julian Street
P.O. Box 9848
Savannah, GA 31412-0048
Tel: (912) 236-0261
Fax: (912) 236-4936

*Attorneys for Defendants COLONIAL GROUP, INC.,*
*COLONIAL OIL INDUSTRIES, INC. and PAUL ROSADO*

By: /s/ Bruce Birenboim
Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458
Email: srosenthal@podhurst.com
Robert C. Josefsberg, Esq.
Florida Bar No. 040856
Email: rjosefsberg@podhurst.com
**PODHURST ORSECK, P.A.**
One S.E. 3rd Ave., Suite 2300
Miami, FL 33131
Main Tel: (305) 358-2800

Email: williamburck@quinnemanuel.com
Ethan Glass, Esq.
*Admitted Pro Hac Vice*
Email: ethanglass@quinnemanuel.com
Stephen Hauss, Esq.
*Admitted Pro Hac Vice*
Email: stephenhauss@quinnemanuel.com
Adam B. Wolfson, Esq.
*Admitted Pro Hac Vice*
Email: adamwolfson@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Attorneys for Defendant Trafigura Trading, LLC and Jose Larroca*

**CLARKE SILVERGLATE, P.A.**

/s/ Spencer Silverglate
Spencer H. Silverglate
Florida Bar. No. 769223
ssilverglate@cspalaw.com
mpedraza@cspalaw.com
Francisco Ramos, Jr.
Florida Bar No. 114766
framos@cspalaw.com
socd@cspalaw.com
cdeleon@cspalaw.com
799 Brickell Plaza, Suite 900
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile: (305) 377-3001

**PORTER HEDGES, LLP**

/s/ Stephen H. Lee
Stephen H. Lee, Esq.
*Admitted Pro Hac Vice*
slee@porterhedges.com
1000 Main Street, 36th Floor

18

Facsimile: (305) 358-2382

Bruce Birenboim, Esq.
*Admitted Pro Hac Vice*
Email: bbirenboim@paulweiss.com
Brad S. Karp, Esq.
*Admitted Pro Hac Vice*
Email: bkarp@paulweiss.com
Jessica S. Carey, Esq.
*Admitted Pro Hac Vice*
Email: jcarey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants GLENCORE LTD., GLENCORE ENERGY UK LTD., GUSTAVO GABALDON, LUIS ALVAREZ and SERGIO DE LA VEGA*

By: */s/Israel J. Encinosa*
Alex M. Gonzalez
Florida Bar No. 991200
alex.gonzalez@hklaw.com
Israel J. Encinosa
Florida Bar No. 0046083
israel.encinosa@hklaw.com
Brian A. Briz
Florida Bar No. 657557
brian.briz@hklaw.com
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799
David Kully (admitted *pro hac vice*)
david.kully@hklaw.com

*Attorneys for Defendants HELSINGE, INC., HELSINGE LTD., HELSINGE HOLDINGS, LLC, DANIEL LUTZ, LUIS LIENDO AND MARIA FERNANDA RODRIGUEZ*

Houston, Texas 77002
Telephone: 713-226-6686

*Attorneys for Defendant Maximiliano Poveda*

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/   Donald Hayden*
Donald J. Hayden, Esq.
Florida Bar No. 97136
Etan Mark, Esq.
Florida Bar No. 720852
George T. Breur, Esq.
Florida Bar No. 33283
don@markmigdal.com
etan@markmigdal.com
george@markmigdal.com
eservice@markmigdal.com

*Counsel for John Ryan*

**GELBER SCHACHTER & GREENBERG, P.A.**

*/s/ Gerald E. Greenberg*
Gerald E. Greenberg
Florida Bar No. 440094
ggreenberg@gsgpa.com
Adam M. Schachter
Florida Bar No. 647101
aschachter@gsgpa.com
SunTrust International Center
One Southeast Third Avenue
Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
Facsimile: (305) 728-0951
E-service: efilings@gsgpa.com

**GUNSTER**

*/s/ Jorge Guttman*
Jorge D. Guttman, Esq.
Florida Bar No. 015319
jguttman@gunster.com
Jonathan H. Kaskel, Esq.
Florida Bar No. 52718
jkaskel@gunster.com
600 Brickell Avenue Suite 3500
Miami, Florida 33131
Telephone: (305) 376-6000
Facsimile: (305) 376-6010

**MAYER BROWN LLP**

*/s/ Adam Hudes*
Adam L. Hudes, Esq.
*Admitted Pro Hac Vice*
ahudes@mayerbrown.com
Stephen M. Medlock, Esq.
*Admitted Pro Hac Vice*
smedlock@mayerbrown.com
1999 K Street NW
Washington, D.C. 20006-1101
Telephone: (202) 263-3312
Facsimile: (202) 263-5312

Michael P. Lennon, Jr.
*Admitted Pro Hac Vice*
mlennon@mayerbrown.com
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone: (713) 238-2667
Facsimile: (713) 238-4613

*Attorneys for Defendant LUKOIL PAN
AMERICAS, LLC*

*/s/ Colette L. McCrone*
Colette L. McCrone
Florida Bar No. 1011554
Mark J. MacDougall (admitted *pro hac
vice*)
mmacdougall@akingump.com
Thomas P. McLish (admitted *pro hac vice*)

**SUSMAN GODFREY L.L.P.**

*/s/ Michael C. Kelso*
Neal S. Manne
*Admitted Pro Hac Vice*
nmanne@susmangodfrey.com
Alexander L. Kaplan
*Admitted Pro Hac Vice*
akaplan@susmangodfrey.com
Weston O'Black
*Admitted Pro Hac Vice*
woblack@susmangodfrey.com
Michael C. Kelso
*Admitted Pro Hac Vice*
mkelso@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Michael Gervais
*Admitted Pro Hac Vice*
mgervais@susmangodfrey.com
1900 Avenue of the Stars, Suite
1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

*Counsel for Vitol Inc., Vitol Ener
(Bermuda) Ltd., and Antonio
Maarraoui*

tmclish@akingump.com
Stacey H. Mitchell (admitted *pro hac vice*)
shmitchell@akingump.com
Jason Gangwer (admitted *pro hac vice*)
jgangwer@akingump.com
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
2001 K Street NW
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288

*Attorneys for Defendants
Francisco Morillo and Leonardo Baquero*